**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| V. | ) | |
| | ) | |
| ACUSHNET COMPANY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**ACUSHNET COMPANY'S ANSWER TO CALLAWAY'S COMPLAINT
AND DEMAND FOR JURY TRIAL**

Defendant Acushnet Company ("Acushnet"), files this Answer in response to the Complaint and Demand for Jury Trial ("Complaint") of Callaway Golf Company ("Callaway"), and states in numbered paragraphs corresponding to the numbered paragraphs of the Complaint, as follows:

**ANSWER**

**PARTIES**

1. Plaintiff Callaway Golf Company ("Callaway Golf") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Carlsbad, California.

ANSWER: Acushnet lacks information sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies them.

2. Callaway Golf is the parent company of the Top-Flite Golf Company ("Top-Flite"), which is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Chicopee, Massachusetts.

ANSWER: Acushnet lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies the same.

3. Defendant Acushnet Company ("Acushnet"), upon information and belief, is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Fairhaven, Massachusetts.

ANSWER: Acushnet admits the allegations in paragraph 3.

4. Acushnet, upon information and belief, is a wholly-owned operating company of Fortune Brands, Inc. ("Fortune Brands").

ANSWER: Acushnet admits the allegations in paragraph 4.

5. Fortune Brands, upon information and belief, is a publicly-traded corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Lincolnshire, Illinois.

ANSWER: Acushnet admits that Fortune Brands is a publicly-traded corporation organized and existing under the laws of the State of Delaware, otherwise denied.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

ANSWER: Acushnet admits that plaintiff purports to invoke the jurisdiction of this Court under Sections 1331 and 1338(a) of Title 28 of the United States Code. Further answering, Acushnet states that this Court should stay the exercise of any jurisdiction it possesses in favor of the first-filed *inter partes* reexamination requests pending before the United States Patent and Trademark Office involving the same parties and the same patents.

7. Acushnet is subject to personal jurisdiction in this District because, upon information and belief, Acushnet is a Delaware corporation and is doing and has done substantial business in this District, including business relating to the sale and distribution of the infringing products as described below.

ANSWER: Acushnet admits that it is subject to personal jurisdiction in this District because Acushnet is a Delaware corporation and is doing and has done business in this District, including business related to the sale and distribution for sale of golf balls, otherwise the allegations of paragraph 7 are denied.

    8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

ANSWER: Acushnet admits the allegations in paragraph 8.

    9. Callaway Golf is the owner, by assignment, of United States Patent Nos. 6,210,293, 6,503,156, 6,506,130 and 6,595,873 (the "'293, '156, '130, and '873 patents, respectively).

ANSWER: Acushnet admits that assignments for the '293, '156, '130, and '873 patents were recorded by the United States Patent and Trademark Office on September 26, 2003 and that Callaway Golf asserts that Callaway Golf is the owner by assignment of the '293, '156, '130, and '873 patents, otherwise, Acushnet is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 and therefore denies the same.

## BACKGROUND

    10. In 2003, Callaway Golf acquired the intellectual property assets of Top-Flite's predecessor-in-interest, then also known as "The Top-Flite Golf Company," and before that as "Spalding Sports Worldwide, Inc."

ANSWER: Acushnet is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies the same.

    11. Among the assets Callaway Golf acquired was a family of patents that cover a unique blend of materials and properties for golf balls (collectively "the Sullivan patents").

ANSWER: Denied.

3

12. The Sullivan patents disclose technological breakthroughs relating to golf ball construction, particularly the use of a polyurethane cover on a multi-layer solid core golf ball, resulting in performance that had previously eluded in the industry.

ANSWER: Denied.

13. The Sullivan patents include, but are not limited to, the '293, '156, '130 and '873 patents.

ANSWER: Acushnet is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 and therefore denies the same.

14. The technology claimed in the Sullivan patents revolutionized the game of golf. In fact, within two years of introduction, the vast majority of professional golfers on the PGA Tour had switched from older golf ball constructions to those incorporating the claimed technology. Some commentators have noted that the technology in the Sullivan patents has done more to change the game of golf than any other equipment advance in the history of the game.

ANSWER: Denied.

15. Golf balls with the patented technology offer superior performance, including longer distance, better feel, and improved wear resistance compared to prior art golf balls.

ANSWER: Denied.

16. Callaway Golf and Top-Flite have both had success in selling golf balls embodying this technology, including the Callaway Golf® Rule 35®, CTU 30 and Callaway Golf® HX® series of golf balls, the Ben Hogan® series of golf balls, and the Strata® Tour Ace™, Strata® Tour Premier™ and Top-Flite® Strata® TL-Tour™ lines of golf balls.

ANSWER:  Acushnet admits that the above mentioned balls were offered in the market. Acushnet is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 16 and therefore denies the same.

17. Acushnet makes and sells golf balls under the Titleist® brand.

ANSWER:  Acushnet admits the allegations in paragraph 17.

18. Among these balls are the Titleist Pro V1®, Titleist Pro V1x™, and Titleist Pro V1*™ (collectively "the Pro V1 balls").

ANSWER:  Acushnet admits that the Titleist Pro V1®, Titleist Pro V1x™, and Titleist Pro V1*™ are Titleist products and that Acushnet makes and sells the Titleist Pro V1® and Titleist Pro V1x™ golf balls, otherwise Acushnet denies the allegations of paragraph 18.

19. Acushnet has had great success selling the Pro V1 balls. Acushnet has sold almost a billion dollars worth of Pro V1 balls since 2000 by incorporating the technology disclosed in the Sullivan patents. Based upon publicly available data, Callaway Golf estimates that Acushnet continues to sell Pro V1 balls at a rate in excess of $200 million per year.

ANSWER:  Acushnet admits that it has sold the Titleist Pro V1 golf balls. Acushnet denies the remaining allegations of this paragraph.

20. Acushnet touts the Pro V1 balls as the best selling golf balls of all time, and as "The #1 Ball in Golf."

ANSWER:  Acushnet is the owner of the trademark "The #1 Ball in Golf," and has used that trademark in selling its Titleist brand golf balls. In fact, Acushnet sought registration of this trademark in 1988 and has been using it in connection with the sale of Titleist golf balls for over 15 years. Otherwise, Acushnet is without information or

knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 and therefore denies the same.

    21.    The Pro V1 balls embody the technology of the Sullivan patents, and in particular, embody one or more claims of each of the '293, '156, '130 and '873 patents.

ANSWER:    The allegations in paragraph 21 are vague and ambiguous and therefore Acushnet denies the same.

    22.    Acushnet has no credible defense to Callaway Golf's infringement claims. Instead, realizing that Callaway Golf was prepared to enforce its rights, Acushnet preemptively filed a request for re-examination of the Sullivan patents with the United States Patent and Trademark Office ("PTO"). In that request, Acushnet claims that prior art already disclosed or discussed by Top-Flite in the applications that matured into the Sullivan patents somehow presents new issues of patentability. Moreover, the prior art Acushnet now claims raises new issues of patentability for the Sullivan patents is the same art that Acushnet dismissed in its own arguments to the PTO when it was belatedly seeking a patent on virtually the same technology—almost four years after the first Sullivan application was filed.

ANSWER:    Denied. Further answering, Acushnet admits that it filed requests for *inter partes* reexamination of the '293, '156, '130 and '873 patents in the United States Patent and Trademark Office ("PTO"). All of the requests were filed before this action and pose substantial new questions of patentability not previously considered by the PTO. As soon as all requests for reexamination have been granted by the PTO, Acushnet intends to ask this Court to stay this proceeding in favor of the earlier filed *inter partes* proceeding in the PTO.

### COUNT I—INFRINGEMENT OF THE '293 PATENT

    23.    Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 22 as if fully set forth herein.

ANSWER:    Acushnet incorporates herein and realleges its answers to paragraphs 1-22.

24.     Callaway Golf is the owner by assignment of United States Patent No. 6,210,293, entitled "Multi-layer golf ball" ("the '293 patent"), which was duly and legally issued by the United States Patent and Trademark Office on April 3, 2001. A copy of the '293 patent is attached as Exhibit A to this Complaint.

ANSWER: Acushnet admits that a copy of the '293 patent is attached as Exhibit A to the complaint and the '293 Patent was issued by the United States Patent and Trademark Office on April 3, 2001 and is entitled "Multi-layer Golf Ball," otherwise, Acushnet is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 and therefore denies the same.

25.     Acushnet has infringed and both induced and contributed to infringement of one or more claims of the '293 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

ANSWER:     Denied.

26.     Acushnet has and has had actual notice of the '293 patent.

ANSWER:     Denied. Further answering, Acushnet admits that over four years ago, the prior owner of the '293 patent called this patent to Acushnet's attention, but never brought suit and appeared to abandon its contention.

27.     Acushnet has and has had constructive notice of the '293 patent pursuant to 35 U.S.C. § 287(a).

ANSWER:     Acushnet is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 27 and therefore denies the same.

28.     Acushnet's infringement of the '293 patent has been and continues to be willful.

ANSWER:     Denied.

## COUNT II – INFRINGEMENT OF THE '156 PATENT

    29.    Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 22 as if fully set forth herein.

ANSWER:    Acushnet incorporates herein and realleges its answers to paragraphs 1-22.

    30.    Callaway Golf is the owner by assignment of United States Patent No. 6,503,156 B1, entitled "Golf ball having multi-layer cover with unique outer cover characteristics" ("the '156 patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 7, 2003. A copy of the '156 patent is attached as Exhibit B to this Complaint.

ANSWER:    Acushnet admits that a copy of the '156 patent is attached as Exhibit B to the Complaint and the '156 patent was issued by the United States Patent and Trademark Office on January 7, 2003 and is entitled "Golf ball having multi-layer cover with unique outer cover characteristics," otherwise Acushnet is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 and therefore denies the same.

    31.    Acushnet has infringed and both induced and contributed to the infringement of one or more claims of the '156 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

ANSWER:    Denied.

    32.    Acushnet has and has had actual notice of the '156 patent.

ANSWER:    Denied. Further answering, Acushnet admits that over four years ago, the prior owner of the '156 patent called another patent in this patent family to Acushnet's attention but never brought suit and appeared to abandon its contention.

    33.    Acushnet has and has had constructive notice of the '156 patent pursuant to 35 U.S.C. § 287(a).

ANSWER:    Acushnet is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 33 and therefore denies the same.

    34.    Acushnet's infringement of the '156 patent has been and continues to be willful.

ANSWER:    Denied.

### COUNT III – INFRINGEMENT OF THE '130 PATENT

    35.    Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 22 as if fully set forth herein.

ANSWER:    Acushnet incorporates herein and realleges its answers to paragraphs 1-22.

    36.    Callaway Golf is the owner by assignment of United States Patent No. 6,506,130 B2, entitled "Multi-layer golf ball" ("the '130 patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 14, 2003. A copy of the '130 patent is attached as Exhibit C to this Complaint.

ANSWER:    Acushnet admits that a copy of the '130 patent is attached as Exhibit C to the Complaint and the '130 patent was issued by the United States Patent and Trademark Office on January 14, 2003 and is entitled "Multi-layer golf ball," otherwise Acushnet is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 and therefore denies the same.

    37.    Acushnet has infringed and both induced and contributed to the infringement of one or more claims of the '130 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

ANSWER:    Denied.

    38.    Acushnet has and has had actual notice of the '130 patent.

9

ANSWER:   Denied.  Further answering, Acushnet admits that over four years ago, the prior owner of the '130 patent called another patent in this patent family to Acushnet's attention but never brought suit and appeared to abandon its contention.

      39.     Acushnet has and has had constructive notice of the '130 patent pursuant to 35 U.S.C. § 287(a).

ANSWER:   Acushnet is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 39 and therefore denies the same.

      40.     Acushnet's infringement of the '130 patent has been and continues to be willful.

ANSWER:   Denied.

### COUNT IV – INFRINGEMENT OF THE '873 PATENT

      41.     Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 22 as if fully set forth herein.

ANSWER:   Acushnet incorporates herein and realleges its answers to paragraphs 1-22.

      42.     Callaway golf is the owner by assignment of United States Patent No. 6,595,873 B2, entitled "Multi-layer golf ball" ("the '873 patent"), which was duly and legally issued by the United States Patent and Trademark Office on July 22, 2003.  A copy of the '873 patent is attached as Exhibit D to this Complaint.

ANSWER:   Acushnet admits that a copy of the '873 patent is attached as Exhibit D to the Complaint, that the United States Patent and Trademark Office issued the '873 Patent on July 22, 2003 and that the '873 patent is entitled "Multi-layer golf ball," otherwise Acushnet is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies the same.

      43.     Acushnet has infringed and both induced and contributed to the infringement of the '873 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

ANSWER:   Denied.

44. Acushnet has and has had actual notice of the '873 patent.

ANSWER: Denied. Further answering, Acushnet admits that over four years ago, the prior owner of the '873 patent called another patent in this patent family to Acushnet's attention but never brought suit and appeared to abandon its contention.

45. Acushnet has and has had constructive notice of the '873 patent pursuant to 35 U.S.C. § 287(a).

ANSWER: Acushnet is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 45 and therefore denies the same.

46. Acushnet's infringement of the '873 patent has been and continues to be willful.

ANSWER: Denied.

## FIRST DEFENSE
### (Failure to State a Claim)

47. The Complaint fails to state a claim on which relief can be granted.

## SECOND DEFENSE
### (Non-Infringement)

48. Acushnet does not infringe, has not infringed, and does not and has not induced or contributed to infringement of any valid claim of the '293, '156, '130, or '873 patents ("patents-in-suit").

## THIRD DEFENSE
### (Invalidity Under 35 U.S.C. §§ 101 *et seq.*)

49. Each claim of the patents-in-suit is invalid for failure to comply with one or more provisions of the Patent Act (35 U.S.C. §§ 101 *et seq.*).

## FOURTH DEFENSE
### (Inequitable Conduct)

50. Each of the patents-in-suit are unenforceable because of material misrepresentations made to the PTO.

51. Each of the patents-in-suit claim priority back to United States Patent Application No. 08/870,585 filed on June 6, 1997 ("the '585 Application").

52. The first office action issued in connection with the '585 Application included a rejection of all claims as being obvious under 35 U.S.C. § 103 over United States Patent No. 5,314,187 to James R. Proudfit ("Proudfit"). This office action was mailed by the PTO on July 8, 1998.

53. Despite attempts to distinguish the pending claims from the Proudfit patent, the PTO issued a final rejection on December 21, 1998 in which it maintained that the claims were unpatentable over Proudfit.

54. Upon information and belief, on April 9, 1999 patent examiner Graham and patentee's counsel, Brian Bembenick held a personal interview at the PTO and discussed Proudfit. Upon information and belief, Mr. Bembenick convinced the Examiner that if a persuasive declaration under 37 C.F.R. § 1.131 was submitted to antedate or swear behind Proudfit in United States Patent Application No. 08/926,246 ("the '246 Application"), that declaration should be persuasive in the '585 Application.

55. In the Appeal Brief filed in the USPTO on September 20, 1999, patentee's counsel Mr. Klein argued that the rejection to Proudfit was improper. Specifically, Mr. Klein told the Patent Office that:

> More importantly, Appellant has submitted evidence in the form of a Declaration under 37 C.F.R. 1.131 (copy attached hereto as Attachment A) in a related application (U.S. Serial No. 08/926,246) which removes

> Proudfit ('187) patent as prior art by antedating the Proudfit ('187) patent. This Declaration has been held by the Examiner in the copending 08/926,246 application (who is the same Examiner in the present application) to be effective for antedating Proudfit ('187). Moreover, in an interview conducted on April 9, 1999, the Examiner indicated that such a Declaration, even though not timely in the present application would be entered if it was found persuasive in the copending 08/926,246 application (see Interview Summary Record of April 9, 1999).

(Appeal Br. Filed Sep. 20, 1999 at 6.)

56. Following the submission of the aforementioned Rule 1.131 declaration, the Examiner withdrew the rejection of the claims over the Proudfit patent.

57. Upon information and belief, the claims of the '585 Application were not entitled to the same filing date as the claims of the '246 Application. Therefore, Proudfit was and continues to be prior art to the claims of the '585 Application under 35 U.S.C. § 102(b). Section 715 of the Manual of Patent Examination Procedure prohibits the use of a declaration to antedate a reference that qualifies as prior art under § 102(b). Therefore, Proudfit could not have been properly antedated by a declaration.

58. In fact, Acushnet has requested that the patents-in-suit be reexamined and that the Proudfit patent be applied to each of the claims of the patents in suit because Proudfit renders each claim invalid under one or more sections of the Patent Act.

59. Upon information and belief, Mr. Klein and/or Mr. Bembenick and/or other attorneys at the law firm of Fay, Sharpe, Fagan, Minnich & McKee, LLP were familiar with the family of patents to which the patents-in-suit belong. Upon information and belief, Mr. Klein and/or Mr. Bembenick and/or other attorneys at the law firm of Fay, Sharpe, Fagan, Minnich & McKee, LLP knew or should have known that Proudfit could not be properly antedated, but still submitted the declaration of Michael Sullivan in an attempt to deceive the PTO. This deception resulted in the withdrawal of a prior art rejection.

60. Because each of the patents-in-suit appear to claim priority to the '585 Application, each of the patents in suit is unenforceable because of the intentional submission of an improper Rule 1.131 declaration.

### FIFTH DEFENSE
### (Unclean Hands)

61. Callaway Golf is not entitled to any relief in this action because it has come to this court with unclean hands.

### SIXTH DEFENSE
### (Waiver/Laches)

62. Callaway Golf's claims are barred by at least one of the equitable doctrines of waiver and/or laches.

### SEVENTH DEFENSE
### (Estoppel/Stay of Litigation)

63. On January 17, 2006 Acushnet filed requests with the USPTO seeking the reexamination of each of the patents-in-suit under 35 U.S.C. § 301 *et seq.*.

64. The inter partes reexamination proceedings permitted under title 35 are "intended to reduce expensive patent litigation in U.S. district courts by giving third-party requesters, in addition to the existing ex parte reexamination in Chapter 30 of title 35, the option of interpartes reexamination proceedings in the PTO." (145 Cong. Rec. S14696-03 (Nov. 17, 1999).)

65. Callaway brought this suit against Acushnet knowing Acushnet had requested that the PTO reevaluate the validity of these patents in light of numerous facts that were not before the patent Examiner during the original prosecution of the patents-in-suit.

66. Despite knowing of Acushnet's invalidity contentions and the possibility of the patents-in-suit being rendered invalid by the PTO, Callaway Golf brought suit in this Court.

67. Callaway Golf should be barred from pursuing its claims under the equitable doctrine of estoppel until the substantial new questions of patentability raised in the four requests for reexamination filed by Acushnet have been resolved by the PTO. Therefore, pursuant to 35 U.S.C. § 318, this Court should stay this litigation until the PTO has passed upon the issues raised in the requests for reexamination in order to serve the interests of justice.

**PRAYER FOR RELIEF**

Wherefore, Acushnet prays for a judgment as follows:

1. That Callaway take nothing and be granted no relief;

2. That Callaway's alleged claims for relief, and each of them, be dismissed with prejudice;

3. That Acushnet be awarded its attorneys' fees pursuant to 35 U.S.C. § 285 by reason of Callaway's misconduct causing this to be an "exceptional case";

4. That Acushnet be awarded its costs; and

5. That Acushnet be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted,

| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
|---|---|
| Alan M. Grimaldi | By: /s/ David E. Moore |
| Joseph P. Lavelle | Richard L. Horwitz (#2246) |
| Andrew R. Sommer | David E. Moore (#3983) |
| HOWREY LLP | Hercules Plaza, 6th Floor |
| 1299 Pennsylvania Avenue, N.W. | 1313 N. Market Street |
| Washington, D.C. 20004 | Wilmington, DE 19801 |
| Telephone (202) 783-0800 | Telephone (302) 984-6000 |
| | rhorwitz@potteranderson.com |
| Dated: March 1, 2006 | dmoore@potteranderson.com |

Attorneys for Defendant

721845

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 1, 2006, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF.

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114

I hereby certify that on March 1, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Frank E. Scherkenbach
Fish & Richardson P.C.
225 ranklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

John V. Picone, III
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
picone@fr.com

David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
shuman@fr.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869