IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

        Plaintiff,

    v.

ACUSHNET COMPANY,

        Defendant.

C. A. No. 06-91 (SLR)

**PLAINTIFF CALLAWAY GOLF COMPANY'S OPPOSITION
TO DEFENDANT ACUSHNET COMPANY'S MOTION TO STAY LITIGATION**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

John V. Picone III
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel:  (650) 839-5070
Fax:  (650) 839-5071

David S. Shuman
12290 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff
Callaway Golf Company*

DATED: May 19, 2006

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................1

II.     NATURE AND STAGE OF PROCEEDING .......................................4

III.    SUMMARY OF ARGUMENT ............................................................6

IV.     ADDITIONAL RELEVANT FACTUAL BACKGROUND..............7

        A.      On Average, *Inter Partes* Reexaminations Take Much
                Longer to Resolve Than A Lawsuit In This Court ...................7

        B.      Status Of Callaway Golf Petitions To Suspend Or
                Vacate The Reexaminations ...................................................7

V.      ARGUMENT .......................................................................................8

        A.      The Court Will Not Grant Motions To Stay Absent
                Extraordinary Circumstances..................................................8

        B.      The Plain Language of the 1996 Agreement Controls.............9

        C.      Acushnet's Public Policy Argument Makes No Sense ..........11

        D.      A Stay Will Not Promote Judicial Economy And Will
                Prejudice Callaway Golf .......................................................11

                1.      The PTO can only address a very limited subset
                        of Acushnet's defenses and it cannot address any
                        of Callaway Golf's claims .........................................12

                2.      Discovery is needed to address Acushnet's
                        invalidity arguments..................................................12

                3.      A stay would prejudice Callaway Golf ........................13

        E.      Seeking A Stay Under 35 U.S.C. § 318 Is Right Of The
                Patent Owner Not The Party Challenging The Validity
                Of The Patent ......................................................................14

        F.      Acushnet Filed For And Received A Patent On
                Essentially The Same Technology – Three Years After
                Callaway Golf Filed Its Patents – Now Acushnet Is
                Claiming That Callaway Golf's Patents Are Invalid ..............15

VI.     CONCLUSION..................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)...............................................................9

*Flex-Foot, Inc. v. CRP, Inc.,*
    238 F.3d 1362 (Fed. Cir. 2001)..............................................................11

*Gioello Enterprise Ltd. v. Mattel, Inc.,*
    2001 WL 125340 (D. Del. 2001) ..............................................................8

*Hemstreet v. Spiegel, Inc.,*
    851 F.2d 348 (Fed. Cir. 1988)................................................................11

*Joy Manufacturing Co. v. National Mine Service Co.,*
    810 F.2d 1127 (Fed. Cir. 1987).........................................................9, 10

*Lear v. Adkins,*
    395 U.S. 653 (1969)................................................................................11

*Rohm & Haas Co. v. Brotech Corp.,*
    1992 U.S. Dist. LEXIS 3252 (D. Del. 1992) ..........................................8

*In re Sernaker,*
    702 F.2d 989 (Fed. Cir. 1983)................................................................12

## FEDERAL STATUTES

35 U.S.C. §§ 301 .........................................................................................7

35 U.S.C. 314(c) .......................................................................................13

37 C.F.R. § 1.987 ......................................................................................13

35 U.S.C. § 318..........................................................................................14

## I.    INTRODUCTION

Delaying this lawsuit while the United States Patent and Trademark Office (PTO) conducts an *inter partes* reexamination: (1) would reward Acushnet's breach of a 1996 settlement agreement, which was entered into to resolve prior golf ball patent litigation in this Court between the parties and their predecessors, and which requires any future disputes over patents to be resolved by a lawsuit in this forum; (2) would be highly prejudicial to Callaway Golf, by delaying for as much as five or six years, the resolution of many patent issues that cannot and will not be addressed by the Patent Office; (3) would not efficiently resolve even the narrow subset of validity issues that could possibly be addressed in the PTO, particularly given the unusual fact that Acushnet sought and received its own patents on substantially the same subject matter set forth in the patents-in-suit and had those patents issued over much of what it now alleges to be invalidating prior art; and (4) would prevent, or at best delay, a full and fair resolution of an important issue of assignor estoppel regarding these patents-in-suit.

Of those four reasons why Acushnet's request for stay should be denied, three are typically not present where the Court is called upon to weigh the pros and cons of a stay pending reexamination.  The special factors here are: (1) a settlement agreement that precludes reexamination entirely; (2) the existence (and assertion against others) of Acushnet's own patents on subject matter it *now* says should never have been patented; and (3) a legitimate jurisdictional question of assignor estoppel, which the PTO is ill-equipped to resolve.

First, this case involves an agreed-to dispute resolution procedure that precludes reexamination entirely.  Acushnet's recently-filed  request for *inter partes* reexamination breached a settlement agreement signed by the parties in 1996, which contains a detailed dispute resolution procedure dictating that, if a multi-step negotiation and mediation process fails to resolve any future patent dispute, a lawsuit in this Court is ultimately the

"*exclusive*" method and venue for doing so.[1]  Until Acushnet improperly ran off to the PTO, the parties had adhered to this settlement process in good faith.  In fact, Callaway Golf has been trying to resolve this dispute with Acushnet for more than 18 months in accordance with the agreement, including participating in multiple face-to-face negotiations, a private mediation session, and several mediation sessions conducted by Magistrate Judge Thynge.  Acushnet's breach of the parties' agreement by launching its reexamination requests should not be rewarded by granting Acushnet the tactical advantage of indefinitely delaying this lawsuit.  For this reason alone, Callaway Golf respectfully submits that Acushnet's motion should be denied.

Second, Acushnet's reexamination request to the PTO involves only a small subset of the issues in this lawsuit, because reexaminations are strictly limited by statute to only those validity challenges that are based upon patents and printed publications.  Thus, the issues of unenforceability, validity based upon prior public use, prior sales and offers for sale, prior invention, written description and best mode are left to be resolved by the District Court.  Therefore, unless Acushnet succeeds in the challenging and time consuming task of invalidating all asserted claims of all four patents-in-suit, multiple validity and enforceability issues would still need to be resolved here in Delaware after this suit has languished on the docket for five or six years.[2]  And of course, the PTO will

---

[1]   To avoid unnecessary motion practice, Callaway Golf has asked Acushnet to consent to an amendment of its complaint to add a count for Acushnet's breach of the parties' 1996 Settlement Agreement ("1996 Agreement").  Acushnet said it is considering the request, but has not communicated a decision.  Callaway Golf intends to amend its complaint, by motion if necessary, and then seek an injunction to force Acushnet's compliance with the 1996 Agreement and to refrain from participating in the on-going reexaminations.

[2]   Callaway Golf examined every single *inter partes* reexamination request filed to date with the PTO.  As explained further below, on average, it takes more than three years to reach a point where the PTO has completed its *inter partes* reexamination and the case is ripe for the first appellate review by the Board of Patent Appeals and Interferences ("BPAI").  Moreover, though it has been more than six years since the procedure first became available, no case has yet been decided by the BPAI, nor, of course, have any *inter partes* reexamination cases been addressed by the Federal

not address infringement and damages at all.  By far the better course would be for the parties to work toward resolving all of these non-reexamination issues in this Court in parallel with any reexamination that the PTO allows to proceed.[3]

Third, even with regard to the limited validity issues that the PTO can address, this Court is far better situated to provide a resolution.  Acushnet's invalidity case turns on hiding or explaining away the fact that before Acushnet knew that Callaway Golf's predecessor-in-interest had much earlier invented and applied for the patents-in-suit Acushnet itself thought it had invented essentially the same thing, sought and got patents of its own, and made this admittedly "revolutionary" technology a centerpiece of its marketing for the infringing products.  [Declaration of Thomas L. Halkowski in Support of Plaintiff Callaway Golf Company's Opposition to Defendant Acushnet Company's Motion to Stay Litigation Pending *Inter Partes* Reexamination by the U.S. Patent Office ("Halkowski Decl."), Ex. A (News Release re Pro V1) at p. 2, bullet-point three].  While highly relevant (if not dispositive), this sort of evidence requires discovery to fully develop and, even then, is not the sort of issue the PTO typically sees or has any special expertise in handling.   In addition, this is principally an obviousness case.  Secondary considerations will be highly probative and the PTO does not have the tools to fully deal with this issue, because it cannot compel disclosure of evidence that is both probative and often found in the defendant's own files.  Reexamination, however, allows Acushnet to selectively present favorable evidence.  Congress recognized this and the PTO has adopted regulations that allow the PTO to suspend a reexamination and defer to the District Court if the issues presented by parallel proceedings require the Court's power to compel production of evidence and to weigh conflicting evidentiary positions.

---

Circuit – the final appellate step in the proceedings.  Thus, by anyone's interpretation, a delay of approximately five years or more for a final resolution of an *inter partes* reexamination is not a "minimal" delay, as Acushnet says.

[3]    Callaway Golf has asked the Patent Office to vacate the reexaminations for several reasons, the primary one being Acushnet's breach of the 1996 Agreement.

Fourth, and finally, the inventor of the patents-in-suit, Michael J. Sullivan, was employed by Callaway Golf's predecessor for years, but left to join Acushnet as its Vice President of Intellectual Property just as Acushnet was introducing the accused product. He is now Acushnet's Vice President of Research and Development.  Thus, this case potentially involves application of the doctrine of assignor estoppel.  Callaway Golf will not be able to obtain discovery to resolve this issue unless the case proceeds in the District Court.  Ultimately, if the reexamination results in an appeal to the Federal Circuit, there would not be a sufficient record to resolve the application of the doctrine. After four, five, or more years of delay, the Federal Circuit could end up remanding this dispute to the District Court to develop the record on this important jurisdictional issue.

## II.     NATURE AND STAGE OF PROCEEDING

In 1996, Callaway Golf's predecessor, Spalding Sports Worldwide, Inc. ("Spalding"), and Acushnet entered into a Settlement Agreement regarding Acushnet's infringement of certain Spalding golf ball patents [D.I. 10,  Ex. L].  That agreement governs how and where all future patent disputes between the parties and their successors would be resolved.

Section 19 of the agreement sets out a detailed procedure that the parties are required to follow if they have **any dispute** relating to patents.  Specifically, section 19.1 provides:

> **Any dispute arising out of or relating to patents**, including the above mentioned patents, other intellectual property owned or controlled by the parties, or claims relating to advertising **shall be resolved in accordance with the procedures** specified in this Section, **which shall be the sole and exclusive procedure for the resolution of any such dispute**.

[D.I. 10,  Ex. L at 15 (emphasis added)]

Sections 19.2-19.6 detail a procedure involving elaborate negotiations and mediations. This is the process that the parties followed with respect to this dispute since August of 2004. [*Id.* at 16-17].

Section 19.7 then provides,

> At the conclusion of a referral to the Magistrate or other judge as set forth in 19.6, **should the dispute remain unresolved, either party may initiate legal proceedings but *only* in the United States Court for the District of Delaware, and no other**. Said court retains jurisdiction of the parties for such purposes.

[*Id.* at 18 (emphasis added)].

On April 3, 2001 the first of the asserted patents, the '293 patent, issued to Spalding. On December 6, 2001, shortly after the first patent issued, Spalding sent Acushnet a letter regarding potential infringement. [Ex. A to the Declaration of Peter A. Arturi ("Arturi Decl.")]. Though Acushnet now contends in its motion to stay that "[t]he validity of the patents-in-suit is the central issue in this case", Acushnet at that time denied infringement and stonewalled on that issue for more than two years. [D.I. 10 at 4]. Thus, the parties continued negotiating during 2002, but were unable to reach agreement. [Arturi Decl. at ¶ 3].

In May 2003, Spalding divested its sporting goods business and changed its corporate name to "The Top-Flite Golf Company" (Top-Flite). In September 2003, Callaway Golf purchased the assets of Top-Flite, including the patents-in-suit, and created a wholly owned subsidiary of Callaway Golf of the same name. Callaway Golf owns the patents-in-suit. [Declaration of Steven C. McCracken ("McCracken Decl.") at 2]. Callaway Golf and its new wholly owned subsidiary, also called "The Top-Flite Golf Company" (hereafter collectively "Callaway Golf") renewed the earlier discussions regarding alleged infringement by Acushnet's Pro V1 line of golf balls.[4] [*Id.* at ¶¶ 3-4].

---

[4]    The Pro V1 line of golf balls are a multi-layer golf ball sold under the "Titleist" brand name and include three variants: Pro V1, Pro V1★ and the Pro V1x.

As Acushnet acknowledges, a series of negotiations and mediations pursuant to the 1996 agreement ensued. [D.I. 10 at 9]. The last several mediations occurred before Magistrate Thynge; the parties in fact sent a joint letter to the Magistrate, citing and explaining the parties' 1996 agreement as the justification for requesting the Court's assistance. [Halkowski Decl., Exs. B and C; D.I. 10, Exhibit L, ¶ 19 at 15-18; McCracken Decl. at ¶ 4].

Unfortunately, after trying to reach an agreement for 18 months, it became clear that the parties had reached an impasse and had exhausted the 1996 Agreement's pre-lawsuit dispute resolution procedures. Thus, on January 17, 2006, Steven McCracken, Callaway Golf's Senior Executive Vice President and Chief Administrative Officer, informed Joseph Nauman, his counterpart at Acushnet, that Callaway Golf planned to file its complaint the next day. [D.I. 10 at 9, *see also*, McCracken Decl. at ¶ 7].

Callaway Golf believes Acushnet then strung along the mediation process, so that it would have time to prepare and preemptively file its reexamination requests. Regardless of Acushnet's motives, however, the fact Acushnet filed first is immaterial to the Court's disposition of this motion.

## III. SUMMARY OF ARGUMENT

1. **Acushnet's request for a stay should be denied because it violates the terms of the parties' 1996 Agreement governing any future patent-related disputes and Acushnet should not benefit from its breach.**

2. **Judicial economy will not be advanced by granting a stay because reexaminations are slow, limited in scope and lack the power to compel production of critical discovery. Moreover, a stay will prejudice Callaway Golf because its dispute will lie dormant for years to come, allowing Acushnet to continue to reap the benefits of its willful infringement.**

3. **Acushnet has patents of its own on virtually identical technology, filed three years *after* the patents-in-suit. The PTO has, on more than six separate occasions, looked at this technology and found it patentable. Nothing indicates that this time will be different. Thus, it is likely that after waiting five years or more, this case will be right back before this Court. The best and most efficient proceeding to prepare this**

**case for a potential review by the Federal Circuit is to quickly conclude this lawsuit.**

## IV.    ADDITIONAL RELEVANT FACTUAL BACKGROUND

### A.    On Average, *Inter Partes* Reexaminations Take Much Longer to Resolve Than A Lawsuit In This Court

Legislation establishing *inter partes* reexaminations passed in November 1999 and became effective in 2000.[5]  Since that time, there have been just over 140 *inter partes* requests filed.  [Declaration of Rolf Hille at ¶ 2].  Callaway Golf analyzed the transactional history of every single case to determine how long it takes for these petitions to make their way through the PTO.  [*Id.*]

On average, it takes the PTO almost a year and half to issue an action closing prosecution, which means the examiner's decision is final and the case is eligible for appeal to the BPAI.  [*Id.* at ¶ 3].    Before a party can actually file an appeal to the BPAI, however, it generally takes another four months for the PTO to issue a "right of appeal" notice.  [*Id.* at ¶ 5].  For the cases that have been appealed, it has taken almost three years from granting a request for *inter partes* reexamination before the issue was ripe for the BPAI.  [*Id.*]  To date, after more than five years, no decisions in *inter partes* reexaminations have been completed by the BPAI [*Id.* at ¶ 6]; much less have become sufficiently ripe for a subsequent appeal to the Federal Circuit Court of Appeals.  [*Id.* at ¶ 7].

### B.    Status Of Callaway Golf Petitions To Suspend Or Vacate The Reexaminations

On January 17, 2006, Acushnet filed four requests for *Inter Partes* reexamination regarding each of the patents-in-suit.  Each of the petitions is nearly identical, since the patents-in-suit are related, and each petition relies on the same 5 pieces of prior art.  On March 21, 2006, Callaway Golf filed a petition to suspend the *inter partes*

---

[5]    *Inter partes* reexaminations only allow invalidity challenges based upon printed publications and patents.  *See* 35 U.S.C. §§ 301 and 311.  The PTO will not consider any of Acushnet's other defenses.

reexaminations proceedings so that the parties could pursue discovery related to non-obviousness and assignor estoppel. The petition was rejected by the PTO as "untimely" under PTO rules, because it had not yet issued any decision on Acushnet's requests. On April 6 and 7, the PTO ordered reexaminations of the patents-in-suit, but it still has not issued an office action on the merits.

After the issuance of the PTO's reexamination orders, on April 6 and 7, 2006 Callaway Golf timely filed a Petition to Vacate the Reexamination Orders as Ultra Vires for violating the terms of the parties 1996 Agreement. [D.I. 10, Ex. G]. Then, on April 28, 2006, Callaway Golf filed a Renewed Petition to Suspend *Inter Partes* Reexamination proceedings so that it can seek discovery regarding assignor estoppel and non-obviousness. [*Id*. at Ex. H]. Acushnet opposed both of these petitions. The PTO has not issued a determination on either petition.

## V.    ARGUMENT

### A.    The Court Will Not Grant Motions To Stay Absent Extraordinary Circumstances

"The decision to stay proceedings pending the outcome of reexamination rests within the discretion of the Court." *Rohm & Haas Co. v. Brotech Corp.*, 1992 U.S. Dist. LEXIS 3252, at *4 (D. Del. 1992). Within this discretion, "[c]ourts clearly have the authority to order their cases to trial." [Halkowski Decl., Ex. D (*Arthrocare Corp. v. Smith & Nephew, Inc.*, Case No. 01-504-SLR, (November 27, 2002, order denying stay pending reexamination), at 1)]. In deciding whether a stay is warranted, the Court's discretion is guided by several factors:

> (1) whether a stay would unduly prejudice [the patentee] or present a clear tactical advantage for [the alleged infringer], (2) whether a stay will simplify the issues, and (3) whether discovery is complete and whether a trial date has been set.

*Gioello Enter. Ltd. v. Mattel, Inc.*, 2001 WL 125340, at *1 (D. Del. 2001) (citations omitted.)

This Court previously explained that "its primary purpose is to manage litigation in an expeditious manner in order to create an appropriate record (through motion practice or trial) for review by the Federal Circuit, the court generally will not stay its cases pending reexamination proceedings absent extraordinary circumstances." [Halkowski Decl. at 2 (emphasis added)]. In this instance, the most expedient and comprehensive way to present all the issues to the Federal Circuit (instead of a narrow subset of issues in the reexamination) is to fully litigate all the disputed issues using the parties' chosen method and the parties' chosen venue.[6] There are no extraordinary circumstances warranting a stay, notwithstanding Acushnet's hyperbole. In fact, as noted above, this case presents unusual reasons why a stay is particularly inappropriate.

**B.    The Plain Language of the 1996 Agreement Controls**

The language of the 1996 Agreement is extremely broad in scope – it encompasses "any dispute" and it mandates that the parties use the specified process as the "exclusive procedure" to resolve the dispute. The plain meaning of the 1996 agreement (and the interpretation that the parties agreed to in writing and followed for at least 18 months) allows only one way to ultimately resolve any patent dispute - through a lawsuit in the District Court of Delaware. The 1996 Agreement does not give the parties the option of seeking recourse to the PTO, International Trade Commission or any other administrative agency or adjudicative body. Instead it clearly and unequivocally states that all patent disputes will be resolved through negotiation, followed by non-binding, pre-lawsuit mediation and then, if necessary, a lawsuit ("legal proceedings") in the District Court of Delaware.

The language in the 1996 Agreement is far different than that of *Joy Manufacturing Co. v. National Mine Service Co.*, 810 F.2d 1127 (Fed. Cir. 1987), which

---

[6]    A decision not to stay the present case will not result in a "duplication of effort" because, as the Federal Circuit has noted, "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988).

Acushnet cites.  The agreement in that case stated in relevant part:  "During the term of this Agreement, NATIONAL will not file *any suit in any United States Court* or any Court in any foreign country challenging or contesting the validity of the Licensed Patents . . . ."  *Id.* at 1129 (emphasis in original).  There the Federal Circuit noted that, "[t]he agreement was a *limited* settlement, which by its own terms (Article VII) does not purport to resolve all potential conflict between the parties over the *validity* of the '864 patent."  *Id.* at 1130 (emphasis in original).  Under these specific and limited terms, the Federal Circuit found that this particular agreement did not prohibit either party from initiating reexamination procedures in the PTO.

Unlike Joy Manufacturing, the 1996 Agreement is not a limited settlement.  Rather it is a universal settlement designed by the parties to encompass all patent (and other intellectual property) related disputes.  And unlike Joy Manufacturing, which merely precluded the parties from using certain venues for presenting challenges to patent validity, here the 1996 Agreement specifically requires that this district will be the exclusive venue and procedure for resolving all patent-related disputes between the parties.  Moreover, Acushnet's argument that an *inter partes* reexamination is an "administrative" rather than a "legal" proceeding supports the proper reading of the agreement – the agreement allows only a legal proceeding (in Delaware), so to the extent *inter partes* reexamination is not a "legal proceeding", this is another reason Acushnet's resort to reexamination is precluded.  Had the parties wanted the option to file reexaminations with, or otherwise resort to, the PTO, they certainly could have included this option.[7]  However, the parties chose not to, instead choosing the final dispute resolution method as a lawsuit in the District Court of Delaware.

---

[7]    Although *inter partes* reexaminations were not available in 1996, the substantively similar *ex parte* reexaminations were and the parties could have included it as an alternative method to resolve certain aspects of a potential patent dispute.

**C.      Acushnet's Public Policy Argument Makes No Sense**

Acushnet's purported public policy arguments to support its stay motion are based upon its interpretation and misapplication of *Lear v. Adkins*, 395 U.S. 653 (1969).  *Lear* dealt with a license agreement and posed the question whether a licensee could challenge the validity of a patent it was licensing.  The Supreme Court ruled that a licensee could challenge the validity of the patent and Acushnet now claims that adopting the plain meaning of the contract would violate *Lear*.

Acushnet fails to mention that the Federal Circuit has consistently distinguished *Lear* in cases, like this one, where a settlement agreement is involved.  The Federal Circuit has stated

> *Lear*, however, did not involve a settlement of litigation, but only the right of a patent licensee to challenge the validity of the licensed patent.  The enforcement of settlement of litigation involves another public policy totally absent in *Lear*: the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage the parties to enter into them.

*Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988).

The Federal Circuit has even upheld clauses in settlement agreements prohibiting a party from challenging the validity of a patent altogether.  *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001) (holding that the defendant was contractually estopped from challenging the validity of a patent based upon the clear and unambiguous language in a previous settlement agreement between the parties).

Thus, it is clear that parties are free to reach a more limited agreement specifying the manner and place in which to litigate future validity questions.  Acushnet can challenge validity, but it has to do it in this Court.

**D.      A Stay Will Not Promote Judicial Economy And Will Prejudice Callaway Golf**

Acushnet's motion vastly overstates the complexity of the field of art at issue in an attempt to make its argument that the expertise of the PTO is needed to deal with so-

called "100 new questions of patentability".  Acushnet's reexamination papers advance only 5 pieces of art.[8]  [Halkowski Decl., Exs. E-H (Tables from Requests for Reexamination showing asserted prior art).]  Acushnet essentially makes the same argument over and over for each of the patents-in-suit.  Therefore, Acushnet's 100+ new questions of patentability really boil down to analyzing five pieces of prior art.  To force the parties and the Court to wait years to resolve these limited validity issues does nothing to make ultimate resolution of this case more efficient.

### 1.    The PTO can only address a very limited subset of Acushnet's defenses and it cannot address any of Callaway Golf's claims

Even if Acushnet is permitted to proceed with its reexamination filings, those petitions only address a very limited subset of the issues in this case.  The Patent Office cannot address any of Acushnet's other defenses that it has asserted, or may assert, such as unenforceability and invalidity based on prior public use, best mode, on-sale bar, and prior invention.   A stay will also mean that Callaway Golf's patent rights, including infringement and damages, are left unresolved for years.  Ultimately, all these issues will need to be framed for any appeal to the Federal Circuit.  The most efficient and comprehensive way to do that is to expeditiously conclude this lawsuit.

### 2.    Discovery is needed to address Acushnet's invalidity arguments

Callaway Golf needs the Court's discovery process to adequately address Acushnet's claims – in either this lawsuit or the reexamination.  Acushnet has essentially articulated an obviousness case.  The Federal Circuit has stated on several occasions that the PTO must consider secondary considerations of non-obviousness, such as commercial success, simultaneous invention copying, and long-felt but unmet need.  *See, In re Sernaker*, 702 F.2d 989, 996 (Fed. Cir. 1983).   Much of this evidence is in the hands of Acushnet and other third parties.  The PTO, however, has no subpoena power or

---

[8]    The cited art includes the Nesbitt patent (USP No. 4,431,193 ), two Molitor patents (USP Nos. 4,274,637 and 4,674,751), the Wu patent (USP No. 5,334,673), and the Proudfit patent (USP No. 5,314,187).

authority to order discovery.  Only via discovery available in the District Court can Callaway Golf show that the commercial success of Acushnet's infringing products is indeed due to the patented technology—a fact that Acushnet presently denies.  Even more fundamentally, the District Court has the ability to determine whether the claims of Callaway Golf's patents do, in fact, cover Acushnet's products, which is necessary in order to establish a nexus between Acushnet's activities and any commercial success or copying.

Congress and the PTO recognize the necessity of considering all the facts before making a determination.  The Manual of Patent Examining Procedure (MPEP) provides, "where there is good cause for the Director of the USPTO to suspend (stay) reexamination proceedings pending conclusion of litigation, a suspension shall be effected."  MPEP § 2686.04(111).[9]  Good cause includes <u>at least situations</u> where (1) "there is an issue that cannot be decided in the *reexamination proceeding* but affects the resolution of the proceeding" or (2) "there is an issue common to the litigation and the reexamination that can best be decided in court *due to the availability in court of discovery and subpoena power* (e.g., an issue heavily dependent on presentation of conflicting/contested evidence by the two parties)."  MPEP § 2686.04(111) (emphasis added).

### 3.     A stay would prejudice Callaway Golf

The delay due to relying upon the parties' pre-lawsuit dispute resolution procedures has already severely prejudiced Callaway Golf.  An additional stay of an undefined period of years will cause more prejudice.  Reexamination proceedings are not always "conducted with what the court would consider 'special dispatch'. . . ." [Halkowski Decl., at 2].  Indeed, the record plainly shows that the *inter partes* re-

---

[9]     *See also*, the Code of Federal Regulations states that "if a patent in the process of inter partes reexamination is or becomes involved in litigation, the Director shall determine whether or not to suspend the *inter partes* reexamination proceeding." 37 C.F.R. § 1.987 and 35 U.S.C. 314(c).

examination process is slow and will likely extend for five or more years until it is finally resolved.

An additional delay will make it difficult for Callaway Golf to compete in the premium golf ball industry. Acushnet will be able to use its enormous profits from the infringing sales to continue to market its infringing products aggressively and pour money into further research and development. Although Callaway Golf may be able to recoup direct financial loses, the goodwill that golfers would associate with Callaway Golf having the best golf ball today and the time-to-market with any further technological advancements will be lost.[10]

### E.    Seeking A Stay Under 35 U.S.C. § 318 Is The Right Of The Patent Owner Not The Party Challenging The Validity Of The Patent

Acushnet states that Congress envisioned that litigation could be stayed pending conclusion of the reexamination. What Acushnet leaves out of its motion is the relevant text from 35 U.S.C. § 318, which ***allows only the patent owner to move for a stay***:

> Once an order for *inter partes* reexamination of a patent has been issued under § 313, the ***patent owner*** may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice. (emphasis added).

The section makes no mention of allowing the third-party requestor to move for a stay. Other sections dealing with *inter partes* reexamination make clear that Congress had no difficulty distinguishing between the rights of the patent owner and the third party requestor. In this section, however, the law is silent as to the ability of the third party requestor to seek a stay, so there is nothing to indicate that Congress desired to provide that option to a third-party requestor like Acushnet.

---

[10]    Moreover, some important witnesses in this case are elderly and some are in poor health. A stay of any significance could possibly result in important testimonial evidence being lost forever.

**F.     Acushnet Filed For And Received A Patent On Essentially The Same Technology – Three Years *After* Callaway Golf Filed Its Patents – Now Acushnet Is Claiming That Callaway Golf's Patents Are Invalid**

Acushnet cannot have it both ways – if its patents are valid – then so are Callaway Golf's patents because the claims are virtually identical.[11]  Acushnet obviously believes its patents are valid because it told the PTO as much during prosecution, even when confronted with some of the same prior art that it is ironically relying upon in its reexamination filings to attack Callaway Golf's patents.  Moreover, Acushnet accused Callaway Golf of infringement in 2001 after Callaway Golf introduced its first multi-layer golf ball and forced Callaway Golf to pay a significant license fee for the "Hebert patent."

Acushnet claims that the PTO "is well-suited to bring its considerable expertise to bear" in the reexamination.  Callaway Golf believes that the PTO already has done so.  The PTO has, on six occasions, using several different examiners, reviewed Callaway Golf's and Acushnet's patents on the same subject matter and found all of them patentable.  There is no reason to believe that the PTO will ultimately find otherwise on this occasion.  Thus, a stay and the five or six year delay will only harm Callaway Golf and eventually put the parties back before this Court to resolve the same issues that are presently before it.

## VI.     CONCLUSION

A stay of litigation pending reexamination is properly granted only under truly extraordinary circumstances.  [Halkowski Decl., Ex. D].  To the extent any extraordinary circumstances exist in this case, they weigh heavily against a stay of these proceedings.

---

[11]   United States Patent No. 5,885,172 the "Hebert patent" was filed in 1996, approximately three years after Callaway Golf's priority date.  [Halkowski Decl., Ex. I].  The claims of the Hebert patent are virtually identical to many of the claims in the patents-in-suit.  In some instances, they are even broader.  Nonetheless, Acushnet told the PTO that much of the prior art cited in its reexamination requests was "not material to patentability" when prosecuting its own patent.  [*See* Halkowski Decl., Exs. J and K, where Acushnet states that the Nesbitt '193, Proudfit '187 and Wu '637 patents (all cited in the reexamination request) were not material to the application that matured into the Hebert patent.]

For all of these reasons, Callaway Golf respectfully requests that Acushnet's Motion to Stay this case be denied.

Dated:  May 19, 2006                    FISH & RICHARDSON P.C.


                                        By:  /s/ *Thomas L.  Halkowski*
                                             Thomas L. Halkowski (#4099)
                                             919 N. Market Street, Suite 1100
                                             P.O. Box 1114
                                             Wilmington, DE 19899-1114
                                             Tel:  (302) 652-5070
                                             Fax:  (302) 652-0607

                                             Frank E. Scherkenbach
                                             225 Franklin Street
                                             Boston, MA 02110-2804
                                             Tel:  (617) 542-5070
                                             Fax:  (617) 542-8906

                                             John V. Picone III
                                             500 Arguello Street, Suite 500
                                             Redwood City, CA 94063
                                             Tel:  (650) 839-5070
                                             Fax:  (650) 839-5071

                                             David S. Shuman
                                             12290 El Camino Real
                                             San Diego, CA 92130
                                             Tel: (858) 678-5070
                                             Fax:  (858) 678-5099

                                             Attorneys for Plaintiff
                                             CALLAWAY GOLF COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2006, I electronically filed **PLAINTIFF**

**CALLAWAY GOLF COMPANY'S OPPOSITION TO DEFENDANT ACUSHNET**

**COMPANY'S MOTION TO STAY LITIGATION PENDING *INTER PARTES***

**REEXAMINATION BY THE U.S. PATENT OFFICE** with the Clerk of Court using

CM/ECF which will send electronic notification of such filing(s) to the following

Delaware counsel.  In addition, the filing will also be sent via hand delivery:


Richard L. Horwitz                          Attorneys for Defendant
David E. Moore                              ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19801



I hereby certify that on May 19, 2006, I have mailed by United States Postal

Service, the document(s) to the following non-registered participants:

Joseph P. Lavelle                           Attorneys for Defendant
Andrew R. Sommer                            ACUSHNET COMPANY
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004




_/s/ Thomas L. Halkowski_
Thomas L. Halkowski

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

                Plaintiff,

    v.                                        C. A. No. 06-91 (SLR)

ACUSHNET COMPANY,

                Defendant.

**[PROPOSED] ORDER DENYING ACUSHNET COMPANY'S
MOTION TO STAY LITIGATION PENDING *INTER PARTES*
REEXAMINATION BY THE U.S. PATENT OFFICE**

        AND NOW, the Court, having considered the motion to stay this case and all supporting memoranda, declarations and exhibits filed by Acushnet Company, and Callaway Golf Company's opposition to the motion to stay and all supporting memoranda, declarations and exhibits,

        IT IS HEREBY ORDERED that the Motion is DENIED and that the within action will proceed to resolution.

        SO ORDERED, this ___ day of _____, 2006.

_____
United States District Judge