IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

Plaintiff,

v.

ACUSHNET COMPANY,

Defendant.

C. A. No. 06-91 (SLR)

**DECLARATION OF THOMAS L. HALKOWSKI IN SUPPORT OF
PLAINTIFF CALLAWAY GOLF COMPANY'S MOTION
FOR LEAVE TO AMEND COMPLAINT**

I, Thomas L. Halkowski, declare as follows:

1.      I am a principal of Fish & Richardson P.C., counsel of record in this action for Callaway Golf Company ("Callaway"). I am a member of the Bar of the State of Delaware and am admitted to this Court. I have personal knowledge of the matters stated in this declaration and would testify truthfully to them if called upon to do so.

2.      Attached as Exhibit A is a true and correct copy of the 1996 Settlement Agreement entered into between Acushnet Company and Spalding & Evenflo Companies, Inc.

3.      Attached as Exhibit B is a true and correct copy of a May 6, 2006 e-mail from John Picone to Alan Grimaldi.

4.      Attached as Exhibit C is a true and correct copy of a May 6, 2006 e-mail from Joseph Lavelle to John Picone.

5.      Attached as Exhibit D is a true and correct copy of a June 13, 2006 e-mail from John Picone to Alan Grimaldi and Joseph Lavelle attaching Callaway Golf's Proposed Amended Complaint.

6.      Attached as Exhibit E is a true and correct copy of a June 14, 2006 e-mail from Alan Grimaldi to John Picone.

7.    Attached as Exhibit F is a true and correct copy of a June 14, 2006 e-mail from Alan Grimaldi to John Picone.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of June, 2006, at Wilmington, Delaware.


/s/ *Thomas L. Halkowski*
Thomas L. Halkowski

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2006, I electronically filed the **DECLARATION OF**

**THOMAS L. HALKOWSKI IN SUPPORT OF PLAINTIFF CALLAWAY GOLF**

**COMPANY'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** with

the Clerk of Court using CM/ECF which will send electronic notification of such filing(s)

to the following Delaware counsel.  In addition, the filing will also be sent via hand

delivery:

Richard L. Horwitz                             Attorneys for Defendant
David E. Moore                                 ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19801


I hereby certify that on June 15, 2006, I have mailed by United States Postal

Service, the document(s) to the following non-registered participants:

Joseph P. Lavelle                              Attorneys for Defendant
Andrew R. Sommer                               ACUSHNET COMPANY
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004


/s/ *Thomas L. Halkowski*
Thomas L. Halkowski

50354779.doc

# EXHIBIT A

*Copy*

# SETTLEMENT AGREEMENT

between

**SPALDING & EVENFLO COMPANIES, INC.,**
a Delaware corporation,
for itself and on behalf of its Spalding Sports Worldwide Division,
with principal offices in Tampa, Florida;

-and-

**LISCO INC.,**
a Delaware corporation
and wholly owned subsidiary of said SPALDING & EVENFLO COMPANIES, INC.
(hereinafter jointly and severally referred to as "Spalding");

-and-

**ACUSHNET COMPANY,**
a Delaware corporation,
(hereinafter "Acushnet"),
with principal offices in Fairhaven, Massachusetts.

# SETTLEMENT AGREEMENT

Parties:   SPALDING & EVENFLO COMPANIES, INC.
           LISCO, INC.
           ACUSHNET COMPANY

RECITALS                                                              PAGE

1.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

2.   '959 PATENT RIGHTS' LICENSE . . . . . . . . . . . . . . . . . . . . . . . . . .   5

3.   '304 PATENT RIGHTS' LICENSE . . . . . . . . . . . . . . . . . . . . . . . . . .   5

4.   HIGH ACID PATENT RIGHTS' LICENSE . . . . . . . . . . . . . . . . . . . .   7

5.   MULTIPLE LICENSES AND ROYALTIES . . . . . . . . . . . . . . . . . . . .   7

6.   SETTLEMENT OF ADVERTISING CLAIMS . . . . . . . . . . . . . . . . . .   8

7.   WAIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

8.   PAYMENT, COSTS AND FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

9.   DISMISSAL OF CURRENT ACTIONS . . . . . . . . . . . . . . . . . . . . . . .  10

10.  DISCLOSURE OF APPLICATIONS . . . . . . . . . . . . . . . . . . . . . . . . .  11

11.  EFFECT OF AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

12.  CONFIDENTIALITY AND PUBLIC ANNOUNCEMENT . . . . . . . . . . . .  12

13.  NON-ADMISSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

14.  SUPERSESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

15.  SUCCESSORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

16.  EXPIRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

17.  EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

18.  GOVERNING LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

19.  DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## SETTLEMENT AGREEMENT

between

SPALDING & EVENFLO COMPANIES, INC., a Delaware corporation, for itself and on behalf of its Spalding Sports Worldwide Division, with principal offices in Tampa, Florida;

-and-

LISCO INC., a Delaware corporation and wholly owned subsidiary of said SPALDING & EVENFLO COMPANIES, INC. (hereinafter jointly and severally referred to as "Spalding");

-and-

ACUSHNET COMPANY, a Delaware corporation, (hereinafter "Acushnet"), with principal offices in Fairhaven, Massachusetts.

WHEREAS:

A.     Spalding and Acushnet are parties to a Settlement Agreement dated November 15, 1990, which, for its term of ten (10) years, in situations of patent infringement, requires them, prior to filing suit, to first notify each other of adverse patent claims, and seek a non-litigious resolution thereof, including non-binding mediation, if necessary;

B.     Spalding asserted that the manufacture and sale by Acushnet of Titleist DT 90, Titleist DT 100 and Pinnacle Performance golf balls infringed Lisco Inc.'s U.S. Patent No. 5,329,959 for "Golf Ball Cover Compositions" (the "'959 Patent") and, additionally, that the manufacture and sale by Acushnet of Super Pinnacle Plus golf balls infringed Lisco Inc.'s U.S. Patent No.

5,368,304 for "Low Spin Golf Ball" (the "'304 Patent"), which assertions were denied by Acushnet;

C.     Acushnet asserted that Spalding's 1995 print advertisements mentioning Acushnet golf balls were actionably false, inaccurate, disparaging and unfair and those assertions were denied by Spalding;

D.     Spalding filed two patent infringement actions (Civil Actions Nos. 95-CV-366 and 95-CV-640) against Acushnet in the United States District Court for the Northern District of Ohio respectively alleging infringement of its '959 Patent through the manufacture and sale of Titleist DT 90, Titleist DT 100 and Pinnacle Performance golf balls and infringement of its '304 Patent through the sale *inter alia* of Super Pinnacle Plus golf balls, and filed another action (Civil Action No. 95-CV-387) seeking a declaration that certain of its 1995 print advertisements were not actionably false, inaccurate, disparaging or unfair and asserting that 1995 Acushnet print advertisements mentioning Spalding golf balls were actionably false, inaccurate, disparaging and unfair, which assertions have been denied by Acushnet;

E.     Acushnet filed a declaratory judgement action against the '959 and '304 Patents in the District Court of Massachusetts (95-CV-10384) and also therein brought an action (95-CV-10376) alleging *inter alia* false advertising and breach of contract by Spalding;

-2-

F.    Acushnet's Massachusetts' actions were transferred to the United States District Court for the Northern District of Ohio and all of said actions have now been transferred from said court to the U.S. District Court of Delaware, whose jurisdiction the parties accept; and

G.    The parties desire to:  (i) settle their present disputes relating to the manufacture, sale and advertising of golf balls as aforesaid; (ii) avoid other and similar patent disputes; and (iii) strengthen the procedure for attempting to resolve expeditiously such new intellectual property and advertising disputes as may arise between them.

NOW, THEREFORE, the parties agree as follows:

1.    DEFINITIONS

In this Settlement Agreement, the following terms shall have the meanings indicated:

1.1    Golf Balls:  Balls for use in playing, practicing or simulating the game of golf.

1.2    Golf Ball Business:  The business of and the technology used in making, using and selling golf balls in the United States and foreign countries as participated in by the parties, their affiliates, subsidiaries or related companies.

1.3    Spalding's '959 Patent Rights:  The domestic and foreign patents and applications therefor identified as A-1 on Exhibit A, including without limitation any and all divisionals, continuations, continuations in part applications currently filed and foreign counterparts thereof or applications currently filed which otherwise emanate from the same roots as do the listed patents, whether or not they can be viewed as improvements thereof.

-3-

1.4    Spalding's '304 Patent Rights: The domestic and foreign patents and applications therefor identified as A-2 on Exhibit A, including without limitation any and all divisionals, continuations, continuations in part applications currently filed and foreign counterparts thereof or applications currently filed which otherwise emanate from the same roots as do the listed patents, whether or not they can be viewed as improvements thereof.

1.5    High Acid Ionomeric Resin: Resin comprised of an alpha olefin and an alpha, beta ethylenically unsaturated carboxylic acid, wherein the latter comprises greater than 16% (by weight) of the total weight of the resin.

1.6    High Acid Patent Rights:    Any and all foreign or domestic patents or applications:  (1) currently issued or on file and identified as A-3 on Exhibit A; or (2) filed by any of the parties within three years of the Effective Date of this Settlement Agreement, directed to an invention relating to Golf Balls which invention includes in at least one independent claim a cover composition which comprises one or more High Acid Ionomeric Resin(s).   However, such High Acid Patent Rights do not include, either implicitly or explicitly, (a) other patented technology claimed alone; or (b) separately patentable technology claimed in combination with a High Acid Ionomeric Resin; or (c) any patented multilayer golf ball technology, except to the extent such technologies in (a), (b), and (c) preceding are included in Spalding's '304 Patent Rights.

1.7    Spalding's Patent Rights: The Patent Rights defined in items 1.3, 1.4 and as applicable in 1.6.

PENY3-494402.3

1.8    Disclosure Group: The senior management of either party, a major stockholder of either party, and the management of any parent of a party, their counsel and auditors who need to know of the terms and conditions of this Settlement Agreement, or any of them.

1.9    Third Party:    Any corporation, company, entity or individual not in the Disclosure Group.

1.10    Net Sales: The invoice price less any sales taxes or freight charges paid by the seller and any discounts given to the buyer.

2.    '959 PATENT RIGHTS' LICENSE

2.1    In consideration of the one time payment by Acushnet to Spalding of the sum of US$ 535,000.00, Spalding agrees to, and does hereby grant Acushnet, its subsidiaries and affiliates, an irrevocable, non-exclusive, paid up, non-transferrable (except to any successor(s) of substantially all of the assets of Acushnet's Golf Ball Business) license under Spalding's '959 Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof.

2.2    Acushnet expressly does not waive its right to contest, nor is it estopped from contesting, the validity, enforceability or non-infringement of the Spalding '959 Patent Rights, nor does it concede or otherwise acknowledge the validity, enforceability or non-infringement thereof or of any of them, and Spalding agrees never to assert such waiver or estoppel by reason of this Settlement Agreement.

3.    '304 PATENT RIGHTS' LICENSE

3.1    In consideration of the one time payment by Acushnet to Spalding of the sum of US$ 100,000.00, Spalding agrees to and does hereby grant Acushnet, its subsidiaries and affiliates, an irrevocable, non-exclusive, paid up, non-transferrable (except to any successor(s) of substantially all of the assets of Acushnet's Golf Ball Business) license under Spalding's '304 Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof, provided the average diameter of such Golf Balls is less than 1.70 inches.

3.2    Acushnet expressly does not waive its right to contest nor is it estopped from contesting the validity, enforceability or non-infringement of the Spalding '304 Patent Rights, nor does it concede or otherwise acknowledge the validity, enforceability or non-infringement thereof or of any of them and Spalding agrees never to assert such waiver or estoppel by reason of this Settlement Agreement.

3.3    Spalding agrees to and does hereby grant Acushnet, its subsidiaries and affiliates, an irrevocable, non-exclusive, non-transferable (except to any successor(s) of substantially all assets of Acushnet's Golf Ball Business) license under Spalding's '304 Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof, the average diameter of such Golf Balls being 1.70 inches or more under all claims thereof, in consideration of the payment to Spalding by Acushnet of a royalty which shall be the greater of (a) or (b):

a)    a percentage of the Net Sales of Golf Balls sold by Acushnet after the Effective Date of the Settlement Agreement, applicable as follows:

0-500,000 dozen            5%

500,001-1,000,000 dozen    4%

        1,000,001-2,000,000 dozen 3%

        over 2,000,000 dozen     2%; or

b)    $100,000 for each complete calendar year or, if for a period less than a complete calendar year, a pro rata share of $100,000.00.

Such royalty shall be paid quarterly in payments made not later than thirty (30) days following the close of the quarters ending in March, June, September and December in which the sales occurred.

## 4.    HIGH ACID PATENT RIGHTS' LICENSE

4.1    Each party agrees to and does hereby grant to the other, its subsidiaries and affiliates, an irrevocable, non-exclusive, non-transferrable (except to any successor(s) of substantially all of the assets of its Golf Ball Business) license under its High Acid Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof, subject only to the payment of a single three percent (3%) royalty on the Net Sales of its Golf Balls falling within the issued claims of said High Acid Patent Rights.

4.2    Both parties expressly do not agree to waive their rights to contest nor are they estopped by this license from contesting the validity, enforceability or non-infringement of the High Acid Patent Rights held by the other, nor do they acknowledge the validity thereof.

5.    <u>MULTIPLE LICENSES AND ROYALTIES</u>

5.1    For any particular Golf Ball model, at most one royalty rate shall apply, as set forth in item 3.3 or 4.1, even though more than one license, as set forth in items 2.1, 3.1, 3.3 and 4.1, may apply.

5.2    For any Golf Ball model containing High Acid Ionomeric Resin which is covered by any '959 Patent Right which also qualifies as a High Acid Patent Right, the license provided in item 2.1 shall control to the exclusion of the royalty rates set forth in items 3.3 and 4.1.

5.3    For any Golf Ball model containing High Acid Ionomeric Resin which is covered by any '304 Patent Right which also qualifies as a High Acid Patent Right, the following royalties shall apply:

    a)    the royalty rate set forth in item 3.3 shall control to the exclusion of the royalty rate set forth in item 4.1 for Golf Balls with an average diameter of 1.70 inches or greater; and

    b)    the royalty rate set forth in item 4.1 shall control to the exclusion of the license set forth in item 3.1 for Golf Balls with an average diameter of less than 1.70 inches.

6.    <u>SETTLEMENT OF ADVERTISING CLAIMS</u>

6.1    Spalding has discontinued and agrees not to resume publication of the advertisements attached hereto as Exhibit E and will pay to Acushnet in full settlement of Acushnet's alleged damages' claims arising out of Spalding's 1995 advertising campaign using such advertisements the sum of US$ 400,000.00.

6.2    Acushnet has discontinued and agrees not to resume publication of the advertisements attached hereto as Exhibit F and will pay to Spalding in full settlement of Spalding's alleged damages claims arising out of Acushnet's 1995 comparative advertising campaign using such advertisements the sum of US$ 100,000.00.

6.3    The parties agree: (i) to utilize demonstrably accurate characterizations when mentioning competing brands of each other by name in the advertising of Golf Balls; and (ii) to recite the methodology being employed, establishing comparisons used in comparative advertising. It is understood and agreed that nothing herein shall prohibit or prevent either party from accurate and fair comparative advertising.

6.4    This Settlement does not constitute an admission of the inaccuracy, truth or falsity of the contested advertisements by either party.

6.5    Spalding agrees to avoid statements for the next fifteen (15) years which might imply that Z-Balata is natural balata (i.e., Z-Balata is longer than other balata balls) and to use Z-Balata always in combination and in the context of a 2-piece construction, and not "balata" alone as in the phrase "balata ball." Moreover, Spalding agrees to avoid in its advertisements phraseology which implies that a golf ball sold under the trademark "Z-balata" is a balata golf ball, such as the phraseology: "Z-balata and other balata balls." However, Spalding, with proper substantiation, is entitled to indicate that its "Z-Balata" golf balls have "balata like" characteristics or possess "balata feel".

6.6    Acushnet agrees to withdraw its opposition to Trademark Application Serial No. 74/513,523 at the United States Patent and Trademark Office (Opposition No. 99000) without prejudice and Spalding agrees to consent thereto.

7.    <u>WAIVER</u>

The parties agree to and do hereby waive any damages for past infringement of any of their respective rights, as well as any damages for unfair competition, except as specified herein.

8.    <u>PAYMENT, COSTS AND FEES</u>

8.1    Acushnet, within five (5) business days of receipt of the signed original of this Settlement Agreement, shall pay to Spalding by check:  the sum of U.S.$ 335,000.00, being the net amount currently due Spalding as a result of this Settlement Agreement.

8.2    The parties agree to be responsible for their own costs and legal fees arising out of any presently pending litigation between them which relates to the Golf Ball Business and the implementation of this Settlement Agreement.

9.    <u>DISMISSAL OF CURRENT ACTIONS</u>

9.1    Concurrent with the execution of this Settlement Agreement, the parties shall take such steps as are necessary to terminate promptly, in accordance herewith, all litigation pending between them which relates to the Golf Ball Business.

9.2    Such steps shall, without limitation, include termination of the following:

9.2.1    Civil Action No. 96-73 MMS, United States District Court for the District of Delaware by Stipulation of Dismissal as annexed in Exhibit B or as otherwise may be required by the court.

-10-

9.2.2   Civil Action No. 96-78 MMS, United States District Court for the District of Delaware by Stipulation of Dismissal as annexed in Exhibit C or as otherwise may be required by the court.

9.2.3   Opposition No. 99000 at the United States Trademark and Patent Office, Trademark Trial and Appeal Board, by Stipulation of Dismissal as annexed in Exhibit D.

9.3   Upon execution of this Settlement Agreement by both parties:

9.3.1   Spalding's counsel and Acushnet's counsel shall sign and file the Stipulations of Dismissal described in 9.2.1 and 9.2.2 as set forth in Exhibits B and C;

9.3.2   Spalding's counsel and Acushnet's counsel shall sign a Stipulation of Dismissal as described in 9.2.3 as set forth in Exhibit D.

10.   DISCLOSURE OF APPLICATIONS

10.1   Within thirty (30) days of the Effective Date of the Settlement Agreement both parties simultaneously shall exchange any and all pending applications which fall within the scope of the patent rights defined in items 1.6-1.7.

10.2   Both parties agree to exchange any and all applications filed after the Effective Date of the Settlement Agreement which fall within the scope of the patent rights defined in items 1.6-1.7 not later than thirty (30) days after the filing date of any such application.

10.3   Each party agrees to hold the existence and contents of the other's applications subject to items 10.1-10.2 in confidence while such information is not available to the public and to limit the disclosure of such information during that period to the Disclosure Group and Third Parties who are full-time employees of either party.

-11-

11.    EFFECT OF AGREEMENT

This Settlement Agreement is intended by the parties, and each of them, to settle fully and compromise the disputes hereinbefore mentioned.

12.    CONFIDENTIALITY AND PUBLIC ANNOUNCEMENT

12.1    All terms and conditions of this Settlement Agreement shall be held in confidence for a period of five years and may be disclosed during such period only to the Disclosure Group or, with respect only to identification of the licensed patents, persons within the employ of a party who would be benefitted by such knowledge provided, however, that the parties may disclose the terms of this Settlement Agreement when relevant, subject to an appropriate protective order.  In such case, however, each party shall seek to restrict by motion or otherwise, disclosure of this Settlement Agreement to the least number of persons who need to know.

12.2    No public announcement concerning this Settlement shall be made by either party except that the litigation has been resolved amicably.

12.3    Notice of a claimed breach of this confidentiality provision shall be in writing and addressed to:

If Spalding is alleged to have breached:

> Mr. Scott Creelman
> Senior Vice President and
> General Manager - Golf Products Worldwide
> Spalding Sports Worldwide
> 425 Meadow Street
> P.O. Box 901
> Chicopee, Massachusetts  01021

with a copy to:

> Robert K. Adikes, Esq.
> Vice President & General Counsel
> Spalding & Evenflo Companies, Inc.
> P.O. Box 30101
> Tampa, Florida  33630

If Acushnet is alleged to have breached:

> Mr. Walter Uihlein
> President and Chief Operating Officer
> Acushnet Company
> 333 Bridge Street
> Fairhaven, Massachusetts  02719

with a copy to:

> Gilbert L. Klemann, II, Esq.
> Senior Vice President & General Counsel
> American Brands, Inc.
> 1700 East Putnam Avenue
> Old Greenwich, Connecticut  06870

and shall in good faith identify the suspected breaching party and/or persons.  Upon the dispatch of a claim under this Section 12.3, the party alleging the breach may release such

confidential information as it deems necessary to counter the alleged breach and mitigate damage to itself or competitive advantage to the alleged breaching party.

     12.4   The foregoing notwithstanding, nothing herein shall release any party or counsel of their obligations under any protective order entered in the litigations settled hereby and all claims, causes of action, damages and remedies are reserved by the parties for any breach of such protective orders.

13.    NON-ADMISSION

The agreement of the parties to the terms of this Settlement Agreement is not an admission of the truth of any allegations made by one against the other nor of any liability to each other. Acushnet does not admit the validity or enforceability of the Spalding Patent Rights nor the allegation that any of its previously manufactured Golf Balls infringed such rights, nor the validity of the allegations made by Spalding concerning the falsity of Acushnet's advertising. Further the agreement of Spalding to the terms of this Settlement Agreement is not an admission of any of the allegations made by Acushnet against Spalding nor of any liability by Spalding to Acushnet.

14.    SUPERSESSION

This Settlement Agreement embodies the entire understanding of the parties with respect to the matters mentioned and supersedes all prior written or oral understandings or communications with regard to such matters, with the exception of Sections 1-10 and 12-15 of the November 15, 1990 Settlement Agreement.

15.  SUCCESSORS

This Settlement Agreement is binding upon the parties hereto, their affiliated, related and controlled companies, as well as their representatives and the successors, transferees and assigns of substantially all of their respective Golf Ball Businesses.

16.  EXPIRATION

This Settlement Agreement shall expire upon the expiration of the last to expire patent subject of this Settlement Agreement.

17.  EFFECTIVE DATE

This Settlement Agreement is effective the date of execution by the last party to execute it.

18.  GOVERNING LAW

This Settlement Agreement shall be governed by the laws of the State of Delaware without reference to conflicts of law, except where the law of the United States is controlling.

19.  DISPUTE RESOLUTION

19.1   Any dispute arising out of or relating to patents, including the above mentioned patents, other intellectual property owned or controlled by the parties, or claims relating to advertising shall be resolved in accordance with the procedures specified in this Section, which shall be the sole and exclusive procedure for the resolution of any such disputes.

19.2    The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Settlement Agreement promptly by negotiation between executives who have authority to settle the controversy and who are at higher level of management than the persons with direct responsibility for administration of this Settlement Agreement.    Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within 15 days after delivery of the notice, the receiving party shall submit to the other a written response.    The notice and the response shall include: (a) a statement of each party's position and a summary of arguments supporting that position, and (b) the name and title of the executive who will represent that party and of any other person who will accompany the executive.    Within 30 days after delivery of the disputing party's notice, the executives of both parties shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute.    All reasonable requests for information made by one party to the other will be honored.

19.3    If the matter has not been resolved by these persons within 45 days of the disputing party's notice, the dispute shall be referred to more senior executives of both parties who have authority to settle the dispute and who shall likewise meet to attempt to resolve the dispute.

19.4    All negotiations pursuant to item 19.2 and 19.3 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

19.5    If the dispute has not been resolved by negotiation within 45 days of the disputing party's notice, or if the parties fail to meet within 30 days, the parties shall endeavor to settle the dispute by non-binding mediation under the then current CPR Model Mediation

Procedure for Business Disputes in effect on the Effective Date of this Settlement Agreement. Unless otherwise agreed, the parties will select a mediator from the CPR Panels of Neutrals and shall notify CPR to initiate the selection process.

19.6     If the parties fail to achieve acceptable resolution of the dispute at conclusion of the foregoing steps, the dispute shall be referred to Magistrate Judge Mary Pat Trostle or, in the event Magistrate Judge Trostle is unavailable, another judge with authority to mediate disputes within the United States District Court for the District of Delaware.

19.7    At the conclusion of a referral to the Magistrate or other judge as set forth in 19.6, should the dispute remain unresolved, either party may initiate legal proceedings but only in the United States District Court for the District of Delaware, and no other.  Said court retains jurisdiction of the parties for such purposes.

IN WITNESS WHEREOF, the parties through their duly authorized agents, have executed this Settlement Agreement.

Place: _Tampa, FL_
Date: _7-31-96_
Witness: _Karen A. Thomas_

SPALDING & EVENFLO COMPANIES, INC.

By: _____

Its: _President_

Place: _Tampa, Fl_
Date: _7/31/96_
Witness: _Donald R. Beh_

LISCO, INC.

By: _(L) Michael Light_

Its: _V.P. Treasurer_

Place: _Fairhaven, MA_
Date: _8-5-96_
Witness: _Joseph J. Newmon_

ACUSHNET COMPANY

By: _____

Its: _President_

-18-

EXHIBIT A1

## Spalding's '959 Patent Rights

1.    Patents.

      U.S. Patent No. 5,329,959

2.    Applications.

      (no foreign filings)

EXHIBIT A2

Spalding's '304 Patent Rights

1.    Patents.

U.S. Patent No. 5,368,304

2.    Applications.

U.S. Application Serial No. 240,259; filed May 10, 1994
U.S. Application Serial No. 255,442; filed June 6, 1994
U.S. Application Serial No. 331,018; filed October 28, 1994

3.    Foreign Applications.

| | |
|---|---|
| Great Britian: | Patent Application No. 9407471.3, filed April 15, 1994 |
| Canada: | Patent Application No. 2,116,510, filed February 25, 1994 |
| Australia: | Patent Application No. 57,506/94, filed March 3, 1994 |
| Japan: | Patent Application No. 111,680/94, filed April 28, 1994 |
| Taiwan: | Patent Application No. 83102820, filed March 31, 1994 |
| Thailand: | Patent Application No. 022167, filed April 19, 1994 |
| Korea: | Patent Application No. 5054/94, filed March 15, 1994 |

EXHIBIT A3

1.  Spalding's U.S. Patents and Applications Relating to High Acid Ionomers

U.S. Patent Application Serial No. 776,803, filed October 15, 1991 (abandoned in favor of U.S. Patent Application Serial No. 596,690, filed February 5, 1996).

U.S. Patent Application Serial No. 264,997, filed June 24, 1994.

U.S. Patent Application Serial No. 901,680, filed on June 19, 1992 (abandoned in favor of U.S. Patent Application Serial No. 601,380, filed on February 14, 1996).

U.S. Patent Application Serial No. 493,089, filed June 21, 1995.

U.S. Patent Application Serial No. 649,050, filed May 16, 1996.

U.S. Patent Application Serial No. 412,051, filed March 28, 1995.

U.S. Patent Application Serial No. 070,510, filed June 1, 1993 (abandoned in favor of U.S. Patent Application Serial No. 562,540, filed November 20, 1995).

U.S. Patent Application Serial No. 225,442, filed June 8, 1994.

U.S. Patent Application Serial No. 359,620, filed December 22, 1994 and issued on August 6, 1996 as U.S. Patent No. 5,542,677.

U.S. Patent Application Serial No. 551,254, filed on October 31, 1995.

U.S. Patent Application Serial No. 681,870, filed on July 29, 1996.

U.S. Patent Application Serial No. 661,608, filed on June 11, 1996.

2.     <u>Spalding's Foreign Patents and Applications Relating to High Acid Ionomers</u>

Corresponding to U.S. Patent Application Serial No. 776,803:

|  |  |
|---|---|
| Australia: | 25299/92, filed September 23, 1992 |
| Canada: | 2,078,842, filed September 23, 1992 |
| Japan: | 301,614/92, filed October 15, 1992 |
| Great Britain: | 9221416.2, filed October 13, 1992 |

Corresponding to U.S. Patent Application Serial No. 901,660:

|  |  |
|---|---|
| Australia: | 32032/93, filed January 27, 1993 |
| Canada: | 2,088,140, filed January 26, 1993 |
| Japan: | 170,960/93, filed June 18, 1993 |
| Korea: | 4037/93, filed March 17, 1993 |
| Taiwan: | 82100909, filed February 10, 1993 |
| Thailand: | 018925, filed May 10, 1993 |
| Great Britain: | 9304805.6, filed March 3, 1993 |

Corresponding to U.S. Patent Application Serial No. 070,510

|  |  |
|---|---|
| Japan: | 12,239/94, filed January 11, 1994 |
| Great Britain: | 9400790.3, filed January 17, 1994 |

Corresponding to U.S. Patent Application Serial No. 054,406:

|  |  |
|---|---|
| Great Britian: | 9407471.3, filed April 15, 1994 |
| Canada: | 2,116,510, filed February 25, 1994 |
| Australia: | 57,506/94, filed March 3, 1994 |
| Japan: | 111,680/94, filed April 28, 1994 |
| Taiwan: | 83102820, filed March 31, 1994 |
| Thailand: | 022167, filed April 19, 1994 |
| Korea: | 5054/94, filed March 15, 1994 |

UNITED STATES DISTRICT COURT          <u>EXHIBIT B</u>
FOR THE DISTRICT OF DELAWARE

SPALDING & EVENFLO COMPANIES, INC.
and
LISCO, INC.,

Plaintiffs,

v.                          Civil Action No. <u>96-73-MMS</u>

ACUSHNET COMPANY
and
AMERICAN BRANDS, INC.,

Defendants.

STIPULATION OF DISMISSAL

Pursuant to 41(a)(1)(ii) of the Federal Rules of Civil Procedure and a

Settlement Agreement of August 5, 1996, the terms of which are incorporated herein by

reference, the parties to the above action stipulate and agree that all claims in the action,

including both the complaint and all counterclaims, be, and hereby are, dismissed with

prejudice, and that each party shall bear its own costs and attorneys' fees.

The parties also stipulate and agree that the court shall retain jurisdiction to

resolve any and all disputes arising out of the Settlement Agreement in accordance with the

terms of the Settlement Agreement.

STIPULATED AND AGREED THIS 9th day of AUGUST, 1996.

Kenneth E. Fink, Esq. (Del. Bar #2388)
FERRY, JOSEPH & FINK
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555


Attorneys for Spalding & Evenflo
Companies, Inc. and Lisco, Inc.


*Of Counsel:*

Christopher B. Fagan
Richard M. Klein
FAY, SHARPE, BEALL, FAGAN,
  MINNICH & McKEE
1100 Superior Avenue, Suite 700
Cleveland, Ohio 44144-2518
(216) 861-5582

William J. Wade (Del. Bar #704)
Robert W. Whetzel (Del. Bar #2288)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

Attorneys for Acushnet Company


*Of Counsel:*

David Weild, III
Rory J. Radding
Peter D. Vogl
Scott B. Familant
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

<u>EXHIBIT C</u>

| | |
|---|---|
| ACUSHNET COMPANY | |
| Plaintiff, | |
| v. | Civil Action No. 96-78-MMS |
| SPALDING & EVENFLO COMPANIES, INC. and LISCO, INC., | |
| Defendants. | |

## STIPULATION OF DISMISSAL

Pursuant to 41(a)(1)(ii) of the Federal Rules of Civil Procedure and a Settlement Agreement of August 5, 1996, the terms of which are incorporated herein by reference, the parties to the above action stipulate and agree that all claims in the action, including both the complaint and all counterclaims, be, and hereby are, dismissed with prejudice, and that each party shall bear its own costs and attorneys' fees.

The parties also stipulate and agree that the court shall retain jurisdiction to resolve any and all disputes arising out of the Settlement Agreement in accordance with the terms of the Settlement Agreement.

STIPULATED AND AGREED THIS 9th day of AUGUST, 1996.

_____
Kenneth E. Fink, Esq. (Del. Bar #2388)
FERRY, JOSEPH & FINK
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware  19899
(302) 575-1555


Attorneys for Spalding & Evenflo
Companies, Inc. and Lisco, Inc.


*Of Counsel:*

Christopher B. Fagan
Richard M. Klein
FAY, SHARPE, BEALL, FAGAN,
  MINNICH & McKEE
1100 Superior Avenue, Suite 700
Cleveland, Ohio  44144-2518
(216) 861-5582

_____
William J. Wade (Del. Bar #704)
Robert W. Whetzel (Del. Bar #2288)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
(302) 658-6541


Attorneys for Acushnet Company


*Of Counsel:*

David Weild, III
Rory J. Radding
Peter D. Vogl
Scott B. Familant
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090

EXHIBIT D

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the Matter of Application Serial No. 74/471,964
Published in the Official Gazette on June 6, 1995 TM 292 and
Application Serial No. 74/513,523 Published in the Official
Gazette on August 15, 1995 TM 184

EXPRESS MAIL CERTIFICATION
"Express Mail" label No. TB686-762-1310S
Date of Deposit 8/9/96 . I hereby certify
that this paper or fee is being deposited with the United
States Postal Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on the date
indicated above and is addressed to the Assistant
Commissioner of Trademarks, 2900 Crystal Drive,
Arlington, VA 22202-3513.

_Ismael Maldonado_
(Type or print name of person mailing paper or fee)

_[signature]_
(Signature of person mailing paper or fee)

---

ACUSHNET COMPANY,

               Opposer,

       v.

SPALDING & EVENFLO
COMPANIES, INC.,

              Applicant.

Opposition No. 99,000

STIPULATION OF DISMISSAL

ACUSHNET COMPANY and SPALDING & EVENFLO COMPANIES,

INC., by their attorneys, pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil

Procedure and Rule 2.106(c) of the Trademark Rules of Practice, stipulate and agree that the

above-captioned opposition proceeding should be dismissed without prejudice.

STIPULATED AND AGREED THIS 5th day of AUGUST, 1996.

Christopher B. Fagan
Richard M. Klein
FAY, SHARPE, BEALL, FAGAN,
  MINNICH & McKEE
1100 Superior Avenue, Suite 700
Cleveland, Ohio 44144-2518
(216) 861-5582

Attorneys for Spalding & Evenflo
Companies, Inc.

David Weild, III
William G. Pecau
Catherine H. Stockel
Gianni P. Servididio
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, New York 10036

Attorneys for Acushnet Company



# They say if you whack a Titleist DT enough times, it won't be worth playing.

## Well, let's see.

**1.** Because it's a 3-piece ball, a Titleist DT simply can't stand up over 18 holes. The solid center will shift off-center in the windings, and the windings will begin to break, making it unreliable after even just a few holes. *The new 2-piece Top-Flite SD performs the same, shot after shot after shot.*

**2.** The construction of the Titleist DT gives it less distance, which can put pressure on your game. *The new Top-Flite SD has at its heart the legendary distance that has always been a Top-Flite trademark.*

**3.** With its traditional 3-piece design and high-tension windings, the Titleist DT does have a high spin rate. *However, with its modern 2-piece design and advanced core and cover materials, the new Top-Flite SD actually spins more. Up to 20% more.*

**4.** Putting with a Titleist DT can be an adventure — that off-center center (see whack #1) can make even the best putts roll erratically. *The new Top-Flite SD, with its solid, 2-piece construction, rolls true every time.*

**5.** The tough, Surlyn cover of the Titleist DT will reduce cuts and abrasions. Unfortunately, it also reduces feel. *The new, thin, cut-resistant Zylin-s cover of the Top-Flite SD gives it not only superior life but superior feel.*

The overall spin and distance give the new Top-Flite SD superior tee-to-green performance. And if the Titleist DT can't hold up on this page, how's it going to hold up on the golf course?



**TOP-FLITE**
**SD**
*The Longest Balls*



NO. OF BLOWS — DRIVER AT 135 FT/SEC.

OUT OF ROUND — INCHES

Top-Flite Z-Balata

Titleist Tour Balata

Maxfli HT

## Does your game start to fall apart after only a few holes? It's not you. It's your wound balata ball.



The chart above demonstrates what happens after just a few drives: many wound balata golf balls go out of round. Look at the Top-Flite Z-Balata.

Wound balata balls like the Tour Balata and Maxfli HT begin to lose their shape — actually and quickly. And you wonder why you can't square it up through poor shots on the back nine.

The Top-Flite Z-Balata on the other hand, keeps its shape. Because of its unique

design, it can make quite a difference, especially on the first shot in your game.

The Top-Flite Z-Balata has the highest spin rate of all balata balls for greater control on the added confidence to attack tough pin placements. In addition it's the longest balata ball you can play.

Add to all that our proprietary Z-Balata cover core technology that yields greater resilience and consistent performance.

Which all leads to one conclusion. If you decide to play a performing balata, the choice is open — choose Top-Flite.



## TOP-FLITE
## Z-BALATA
### The Longest Balls

**1. The Reliability Question.** A Titleist DT² simply can't stand up over 18 holes. After repeated blows from a golf club, the windings around the solid core will begin to break, making it unreliable after even just a few holes. *The new, 2-piece Top-Flite SD™ performs consistently, shot after shot.*

**2. The Spin Question.** With its Surlyn® cover and high-tension windings, the Titleist DT claims to have a high spin rate. *However, with its modern design and soft Zylin-S cover material, the new Top-Flite SD actually spins more. Up to 20% more.*

**3. The Distance Question.** The wound construction of the Titleist DT gives it less distance. *The new Top-Flite SD has the legendary distance that has always been a Top-Flite trademark. Couldn't you use a few more yards?*

**4. Are you putting a ball or an egg?** Putting with a Titleist DT can be an adventure — a ball that's out of round will make even the best putts roll

# They say if you whack a Titleist DT enough times, it won't be worth playing.

# Well, let's see.

inconsistently. *The new Top-Flite SD, with its 2-piece construction, rolls true every time.*



The new Top-Flite SD was Tour tested by Payne Stewart.

**5. The Feel Question.** The hard, Surlyn cover of the Titleist DT will reduce cuts and abrasions. Unfortunately, it also reduces feel. *The new Zylin-S cover and soft core of the Top-Flite SD give it not only excellent durability but the soft feel you expect from a superior tee-to-green performance ball.*

Which brings us to our last shot. If the Titleist DT can't compete with the Top-Flite SD on this page, how can it compete on the course?



*TOP-FLITE SD® The Longest Balls*



## Does your game start to fall apart after only a few holes? It's not you. It's your wound balata ball.

*Z-Balata 100*

The chart also demonstrates what happens after a few holes using each ball type...

As you can see, these balls are the lowest of balata and Maxfli HT tend to lose their shape dramatically and quickly. No wonder why you start missing those short strokes putts on the back nine.

The Top-Flite Z-Balata on the other hand, doesn't lose its shape. That's because it

is a two-piece ball, which can make quite a difference not only on the chart but in your game.

The Top-Flite Z-Balata has the highest spin rate of all balata balls for greater control and the added confidence to attack tough pin placements. In addition, it's the longest balata ball you can play.

Add to all that our proprietary Z-Balata cover and you're looking at a ball with a softer feel and cut-resistant performance.

Which all leads to one simple conclusion. If you want the best-performing balata balls, pick up a dozen Top-Flite Z-Balata. Instead of a ball you'll be nagging at.

### TOP-FLITE
### Z-BALATA
*The Longest Balls*





X-ray of a Titleist DT
that has gone out of round.

# They say if you whack a Titleist DT enough times, it won't be worth playing.

# Well, let's see.

**1** The Reliability Question.

● A Titleist DT simply cannot [...] [...] 18 hole. After [...] from a golf club [...] model [...] [...] to crack, makin it unreliable aher [...] it [...] holes [...]

**2** The Spin Question. Wat [...] Sach [...] not number the Titleist DT [...] rate. However with extra [...] Sam mittered the [...] [...] [...] Up to 20 times.

**3** The Distance Question [...] The wound [...] tion of the Titleist DT [...] less distance [...]

[...] Top Flite St [...] legendary [...] that has [...] [...] Top Fli [...] Goddch's [...] Go no [...]





**4** Are you putting a ball [...] in a egg? Prove [...] [...] in the ele ment [...] a round will add [...] to the [...] [...] [...] String [...] [...]



**5** The Feel Question. The har Fee [...] Titleist DT's Durant [...] [...] [...] maxie [...] [...] [...] Top Flite SI [...] [...] [...] [...] [...] The soht feel you expect [...] [...] [...] wound balls.

[...] can harden. If the Titleist DT [...] [...] new Top Flite [...] [...] lasts an [...] [...]

**TOP-FLITE**
**SD**
*The Longest Balls*



CAUTION! NEW PINNACLE GOLF BALLS HAVE A HIGH ENERGY CORE FOR UNSURPASSED DISTANCE.







In searching for the

longest golf ball,

just look at the one

out past the Top-Flite.

# NO BALL GOES FARTHER

(The key words are *no*, *ball*, *goes*, and *farther*.)

Pinnacle Distance Is Longer Than Top-Flite® XL™ And Magna™

Top-Flite Magna High Trajectory    -11.9 yds

-9.6 yds

Top-Flite Magna Tour Trajectory    -8.0 yds

-10.9 yds

Top-Flite XL Tour Trajectory    -8.8 yds

-8.1 yds



DISTANCE
HIGH ENERGY CORE
FOR MAXIMUM DISTANCE



15 BALL PACK
CUT-PROOF GUARANTEE

Pinnacle Performance Is Longer Than Top-Flite Z-Balata™ And SD™

Top-Flite Z-Balata 90    -12.2 yds

-10.5 yds

Top-Flite SD 90    -3.8 yds

-2.6 yds



PERFORMANCE
DISTANCE WITH ADDED SPIN



15 BALL PACK
CUT-PROOF GUARANTEE

The Pinnacle Test Methodology Reflects Launch Conditions Used By The USGA To Determine Conformance To The Overall Distance Standard.
©1995 Acushnet Company. Member of the National Golf Foundation. All Top-Flite product names are registered trademarks or trademarks of Spalding Sports Worldwide.

Golf Digest    July 1995

# EXHIBIT B

**John Picone**

| | |
|---|---|
| **From:** | John Picone |
| **Sent:** | Saturday, May 06, 2006 8:29 AM |
| **To:** | GrimaldiA@howrey.com |
| **Cc:** | rhorwitz@potteranderson.com; Thomas Halkowski; Joseph P. Lavelle (LavelleJ@howrey.com); John Picone |
| **Subject:** | Callaway Golf: Revised Discovery Order |

**Attachments:** 50345611 (2) (2).doc

Alan:

I incorporated Acushnet's proposed dates.  In order to reduce the number of issues in dispute, Callaway Golf accepted Acushnet's proposals regarding the number of interrogatories, requests for admission and the hours limitations for expert depositions.  After your review, please let me know if you have any questions.  If the draft is acceptable, I will have Mr. Halkowski file it with the Court on Monday morning.

Also, Callaway Golf is willing to continue the May 9th hearing for one or two days to accommodate your travel schedule.  Although we could do the hearing on Wednesday afternoon, we have a preference for conducting the hearing on Thursday.  Please have Mr. Horwitz coordinate with Mr. Halkowski to request a short continuance from the Court.

Lastly, I ask you to reconsider your decision regarding stipulating to Callaway Golf's Amended Complaint.  Rule 15 requires that leave to amend be freely given and absent a reasoned rationale for denying Callaway Golf's request, Acushnet should not force the parties to engage in unnecessary motion practice.  I will forward you a draft of the proposed amendments for your consideration.

Regards,

JVP



50345611 (2)
(2).doc (68 KB)

# EXHIBIT C

## John Picone

| | |
|---|---|
| **From:** | Lavelle, Joseph [LavelleJ@howrey.com] |
| **Sent:** | Saturday, May 06, 2006 8:54 AM |
| **To:** | John Picone; Grimaldi, Alan |
| **Cc:** | rhorwitz@potteranderson.com; Thomas Halkowski |
| **Subject:** | RE: Callaway Golf: Revised Discovery Order |

John--
Thank you for your accomodation on the schedule. by copy of this, I ask Rich horwitz to coordinate with Mr. Halkoski, and to reschedule this for plaintiff's preference, if that works for the Court. We will adjust our schedule to accomodate plaintiff if it works for the Court.

John, we may have a few revisions of this for you, as to the dates we propose. We will get them to you today later. We will consider your request on the motion to amend and advise you.

Regards, Joe

---

**From:** John Picone [mailto:Picone@fr.com]
**Sent:** Saturday, May 06, 2006 11:29 AM
**To:** Grimaldi, Alan
**Cc:** rhorwitz@potteranderson.com; Thomas Halkowski; Lavelle, Joseph; John Picone
**Subject:** Callaway Golf: Revised Discovery Order

Alan:

I incorporated Acushnet's proposed dates. In order to reduce the number of issues in dispute, Callaway Golf accepted Acushnet's proposals regarding the number of interrogatories, requests for admission and the hours limitations for expert depositions. After your review, please let me know if you have any questions. If the draft is acceptable, I will have Mr. Halkowski file it with the Court on Monday morning.

Also, Callaway Golf is willing to continue the May 9th hearing for one or two days to accommodate your travel schedule. Although we could do the hearing on Wednesday afternoon, we have a preference for conducting the hearing on Thursday. Please have Mr. Horwitz coordinate with Mr. Halkowski to request a short continuance from the Court.

Lastly, I ask you to reconsider your decision regarding stipulating to Callaway Golf's Amended Complaint. Rule 15 requires that leave to amend be freely given and absent a reasoned rationale for denying Callaway Golf's request, Acushnet should not force the parties to engage in unnecessary motion practice. I will forward you a draft of the proposed amendments for your consideration.

Regards,

JVP

<<50345611 (2) (2).doc>>

---------------------------------------------------------------------------------------

This email and any attachments contain information from the law firm of Howrey LLP, which may be co
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the con
If you receive this email in error, please notify us by reply email immediately so that we can arrange for

# EXHIBIT D

**From:** John Picone
**Sent:** Tuesday, June 13, 2006 8:10 AM
**To:** Grimaldi, Alan; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
**Cc:** John Picone
**Subject:** Callaway Golf v. Acushnet: Draft Amended Complaint

Gentlemen:

Please find attached a copy of Callaway Golf's Amended Complaint.
As recently as May 5, the parties discussed Acushnet's potential
stipulation to this filing to avoid unnecessary motion practice.
Acushnet agreed to consider Callaway Golf's request for a
stipulation, but I have not received an answer regarding that
request.  Please let me know by close of business tomorrow if
Acushnet will stipulate, otherwise Callaway Golf will have to
file a motion to amend with the Court.  Given that Rule 15
requires that leave to amend shall be freely given, Callaway Golf
hopes that Acushnet will not precipitate motion practice on this
issue by refusing to stipulate.

Lastly, I noted that Mr. Nauman alleged that the 1996 Settlement
Agreement was confidential and that Callaway Golf breached that
confidentiality provision in his declaration accompanying
Acushnet's reply to Callaway Golf's opposition to the motion to
stay.  The 1996 Settlement Agreement is not confidential.  Please
review section 12.1 of the 1996 Settlement Agreement, which
states the confidentiality provisions applicable to that
agreement sunset five years after execution.

Please call me if you have any questions.

Regards,

JVP



50353991.DOC (78 KB)

# EXHIBIT E

## John Picone

| | |
|---|---|
| **From:** | Grimaldi, Alan [GrimaldiA@howrey.com] |
| **Sent:** | Wednesday, June 14, 2006 8:42 AM |
| **To:** | John Picone; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com |
| **Subject:** | Re: Callaway Golf v. Acushnet: Draft Amended Complaint |

We can't stipulate to the amendment- both Lavelle and I are out of town and will get to the PO when we return. Thanks. Alan

ALAN GRIMALDI
HOWREY LLP

-----Original Message-----
From: John Picone
To: Grimaldi, Alan; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
CC: John Picone
Sent: Wed Jun 14 11:33:10 2006
Subject: RE: Callaway Golf v. Acushnet: Draft Amended Complaint

Gentlemen:

I did not hear from anyone yesterday regarding the draft protective order of the draft amended complaint.

Please contact me today and let me know if Acushnet has any comments regarding the draft protective order and whether or not Acushnet is prepared to stipulate to Callaway Golf's amended complaint.

Regards,

JVP

From: John Picone
Sent: Tuesday, June 13, 2006 8:10 AM
To: Grimaldi, Alan; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
Cc: John Picone
Subject: Callaway Golf v. Acushnet: Draft Amended Complaint

Gentlemen:

Please find attached a copy of Callaway Golf's Amended Complaint. As recently as May 5, the parties discussed Acushnet's potential stipulation to this filing to avoid unnecessary motion practice. Acushnet agreed to consider Callaway Golf's request for a stipulation, but I have not received an answer regarding that request. Please let me know by close of business tomorrow if Acushnet will stipulate, otherwise Callaway Golf will have to file a motion to amend with the Court. Given that Rule 15 requires that leave to amend shall be freely given, Callaway Golf hopes that Acushnet will not precipitate motion practice on this issue by refusing to stipulate.

Lastly, I noted that Mr. Nauman alleged that the 1996 Settlement Agreement was confidential and that Callaway Golf breached that confidentiality provision in his declaration accompanying Acushnet's reply to Callaway Golf's opposition to the motion to stay. The 1996 Settlement Agreement is not confidential. Please review section 12.1 of the 1996 Settlement Agreement, which states the confidentiality provisions applicable to that agreement sunset five years after execution.

Please call me if you have any questions.

Regards,

JVP

<< File: 50353991.DOC >>

-------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which may be cc
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the con
If you receive this email in error, please notify us by reply email immediately so that we can arrange for

EXHIBIT F

**From:** Grimaldi, Alan [mailto:GrimaldiA@howrey.com]
**Sent:** Wednesday, June 14, 2006 11:52 AM
**To:** John Picone; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
**Cc:** Lavelle, Joseph
**Subject:** Re: Callaway Golf v. Acushnet: Draft Amended Complaint


John
We view this as going beyond the kinds of courtesies that we have offered to one another ie extensions of time, off the record discussions etc. While I don't think I need to justify position of client we will oppose Rule 15 attempt on grounds that it would be futile ie agreement does not on its face preclude reexams. By the way, while I have not seen it for a while I believe we were referring to the Hebert license as the one which is confidential.
Alan

ALAN GRIMALDI
HOWREY LLP

-----Original Message-----
From: John Picone
To: Grimaldi, Alan; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
CC: John Picone
Sent: Wed Jun 14 14:23:02 2006
Subject: RE: Callaway Golf v. Acushnet: Draft Amended Complaint

Alan:


Can you please provide me Acushnet's basis for refusing to stipulate?



Regards,



JVP

---

From: Grimaldi, Alan [mailto:GrimaldiA@howrey.com]
Sent: Wednesday, June 14, 2006 8:42 AM
To: John Picone; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
Subject: Re: Callaway Golf v. Acushnet: Draft Amended Complaint

We can't stipulate to the amendment- both Lavelle and I are out of town and will get to the PO when we return. Thanks.
Alan

ALAN GRIMALDI
HOWREY LLP

-----Original Message-----
From: John Picone
To: Grimaldi, Alan; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
CC: John Picone
Sent: Wed Jun 14 11:33:10 2006
Subject: RE: Callaway Golf v. Acushnet: Draft Amended Complaint

Gentlemen:

I did not hear from anyone yesterday regarding the draft protective order of the draft amended complaint.

Please contact me today and let me know if Acushnet has any comments regarding the draft protective order and whether or not Acushnet is prepared to stipulate to Callaway Golf's amended complaint.

Regards,

JVP

From: John Picone
Sent: Tuesday, June 13, 2006 8:10 AM
To: Grimaldi, Alan; Lavelle, Joseph; Sommer, Andrew; rhorwitz@potteranderson.com
Cc: John Picone
Subject: Callaway Golf v. Acushnet: Draft Amended Complaint

Gentlemen:

Please find attached a copy of Callaway Golf's Amended Complaint. As recently as May 5, the parties discussed Acushnet's potential stipulation to this filing to avoid unnecessary motion practice. Acushnet agreed to consider Callaway Golf's request for a stipulation, but I have not received an answer regarding that request. Please let me know by close of business tomorrow if Acushnet will stipulate, otherwise Callaway Golf will have to file a motion to amend with the Court. Given that Rule 15 requires that leave to amend shall be freely given, Callaway Golf hopes that Acushnet will not precipitate motion practice on this issue by refusing to stipulate.

Lastly, I noted that Mr. Nauman alleged that the 1996 Settlement Agreement was confidential and that Callaway Golf breached that confidentiality provision in his declaration accompanying Acushnet's reply to Callaway Golf's opposition to the motion to stay. The 1996 Settlement Agreement is not confidential. Please review section 12.1 of the 1996 Settlement Agreement, which states the confidentiality provisions applicable to that agreement sunset five years after execution.

Please call me if you have any questions.

Regards,

JVP

<< File: 50353991.DOC >>

---

This email and any attachments contain information from the law firm of Howrey LLP, which may be confidential and/or privileged.
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this email is prohibited.
If you receive this email in error, please notify us by reply email immediately so that we can arrange for the retrieval of the original documents at no cost to you.