# FISH & RICHARDSON P.C.



Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

**Thomas L. Halkowski**
(302) 778-8407

Email
halkowski@fr.com

**VIA ECF**

June 16, 2006

Chief Judge Sue L. Robinson
United States District Court
for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:     *Callaway Golf Company v. Acushnet Company*
        USDC-D. Del. - C. A. No. 06-91 (SLR)

Dear Chief Judge Robinson:

I am writing on behalf of plaintiff Callaway Golf to: (i) address defendant Acushnet's letter to the Court of June 12 [D.I. 29], which attached a copy of a USPTO decision regarding one of Callaway Golf's petitions in the pending reexaminations; and (ii) provide the Court with a copy of Callaway Golf's Petition for Reconsideration of that USPTO decision, attached hereto as Exhibit 1.

First, Acushnet's letter did not point out that the USPTO itself stated explicitly in its decision that the *inter partes* reexamination statute, 35 U.S.C. § 317(b), allows "a court validity challenge and inter partes reexamination" to occur "simultaneously". [D.I. 29, Ex. A at 6].

In addition, as Callaway Golf's attached Petition for Reconsideration shows, Callaway Golf contends that the USPTO erred in its decision because:

- Like this Court, the USPTO should apply the terms and conditions of the 1996 Settlement Agreement. The Federal Circuit has stated that "although other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of the contract here involved, that is not sufficient reason for the board to decline to consider the agreement, its construction, or its validity if necessary to decide the issues properly before it." *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1324 (Fed. Cir. 1983); *see also Danskin, Inc. v. Dan River, Inc.*, 498 F.2d 1386 (Cust. & Pat.App. 1974) (party precluded from challenging a trademark application due to prior settlement agreement).

- Enforcing the 1996 Settlement Agreement would not violate public policy, and the USPTO's reasoning in reaching its decision is based upon a misinterpretation and misapplication of *Lear v. Adkins*, 395 U.S. 653 (1969). Specifically, the USPTO's decision ignores settled Federal Circuit precedent

FISH & RICHARDSON P.C.

Chief Judge Sue L. Robinson
June 16, 2006
Page 2

distinguishing *Lear* and holding that parties can fashion settlement agreements that foreclose future validity challenges. *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988); *Foster v. Hallco Mfg. Co., Inc.,* 947 F.2d 469, 476-77 (Fed.Cir.1991) (*Lear* does not bar enforcement of settlement agreement and consent decree); *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001) (holding that the defendant was contractually estopped from challenging the validity of a patent based upon the clear and unambiguous language in a previous settlement agreement between the parties).

Finally, in its letter to the Court, Acushnet implies that the USPTO's decision is final. It is not. Callaway Golf believes that the USPTO's decision is in error and will pursue the appropriate appellate avenues if the Director does not reconsider the initial, erroneous decision on the petition.

Respectfully,

/s/ *Thomas L. Halkowski*

Thomas L. Halkowski

TLH:sb

Enclosure

cc     Clerk of Court
       Richard L. Horowitz (via ECF and hand delivery)
       David E. Moore (via ECF and hand delivery)
       Alan M. Grimaldi (via e-mail)
       Joseph P. Lavelle (via e-mail)
       Andrew R. Sommer (via e-mail)

50355468 (2).doc

# Exhibit 1

# OFFICIAL COMMUNICATION FACSIMILE

## CENTRAL REEXAMINATION UNIT (FAX NO: 571-273-9900)

**Number of pages including this page    42**

| | |
|---|---|
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,120 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,210,293 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,121 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,503,156 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,122 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,506,130 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,123 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,595,873 | ) |

The following documents are attached to this facsimile communication cover sheet, which was facsimiled to the United States Patent and Trademark Office on June 16, 2006: Petition to the Director for Reconsideration, Exhibits A-D, and a Certification Under 37 C.F.R. § 1.903.

Respectfully submitted,

Date: June 16, 2006

Dorothy P. Whelan (Reg. No. 33,814)
J. Patrick Finn III (Reg. No. 44,109)

Fish & Richardson P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Fax: (612) 288-9696
60364264.doc

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,120 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,210,293 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,121 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,503,156 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,122 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,506,130 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,123 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,595,873 | ) |

Central Reexamination Unit
571-273-9900

### PETITION TO THE DIRECTOR FOR RECONSIDERATION

On April 6 and 7, 2006, the Patent and Trademark Office ("the USPTO") ordered reexamination of the four patents that are subject to the above-captioned *inter partes* reexamination proceedings. The patent owner, Callaway Golf, petitioned the USPTO to vacate the reexamination orders as *ultra vires*. On June 7, 2006, the USPTO issued its decision dismissing the petition. Callaway Golf contends that the dismissal was in error and seeks reconsideration of that petition pursuant to 37 C.F.R. § 1.181(a)(1) and/or (3). This petition is timely in that it is being filed within the two-month time limit prescribed by 37 C.F.R. § 1.181(f).

1

## PROCEDURAL HISTORY

1.  Callaway Golf's predecessor-in-interest, Spalding World Wide Sports
    ("Spalding"), and Acushnet were parties to prior, unrelated patent litigation. To
    resolve those claims, the parties entered into a series of settlement agreements,
    with the final settlement agreement being the 1996 Settlement Agreement. [Ex.
    A, 1996 Settlement Agreement.] The 1996 Settlement Agreement required a
    multi-step alternative dispute resolution process for any intellectual property
    dispute, including patent disputes. The agreement specified that if the alternative
    dispute resolution process was unsuccessful, the only other method and venue for
    resolution of any patent-related dispute was a lawsuit in the District Court for the
    District of Delaware.

2.  The parties incorporated the 1996 Settlement Agreement into their Federal Rule
    of Civil Procedure 41 Stipulations of Dismissal of the prior patent litigation. [Ex.
    B & C, 1996 Stipulations of Dismissal incorporating the 1996 Settlement
    Agreement.] The Dismissals were filed in, and accepted by, the Delaware District
    Court. [Ex. D, Docket of Dismissals in the lawsuits resolved by the 1996
    Settlement Agreement.] The Court specifically retained jurisdiction over the
    parties in relation to disputes arising under the 1996 Settlement Agreement.

3.  Prior to filing the subject *inter partes* reexamination requests, Callaway Golf and
    Acushnet participated in the mandatory alternative dispute resolution process
    specified by the 1996 Settlement Agreement, including a non-binding mediation
    before Magistrate Judge Thynge of the Delaware District Court. That mediation
    process was unsuccessful, and the present patent dispute between the parties was
    not resolved.

4.  On January 17, 2006, Acushnet filed the subject *inter partes* reexamination
    requests in violation of the 1996 Settlement Agreement.

2

5. On February 9, 2006, Callaway Golf filed suit against Acushnet in the United States District Court for the District of Delaware as required by the 1996 Settlement Agreement. That suit involves the four above-referenced U.S. patents and includes, among other issues, the same validity issues raised by Acushnet's requests for reexamination.

6. On March 21, 2006, Callaway Golf filed a petition, requesting that *inter partes* reexamination proceedings 95/000120-123 be suspended.

7. On March 24, 2006, Acushnet filed an opposition to the March 21, 2006 patent owner petition.

8. On March 31, 2006, the Director issued a decision discarding the March 2006 petition and opposition papers as improper because reexamination had not yet been ordered.

9. Reexamination was subsequently ordered, control nos. 95/000120-123, on April 6 and 7, 2006.

10. On April 13, 2006, Callaway Golf filed a petition under 37 CFR 1.181 to vacate the reexamination orders as *ultra vires*.

11. On April 27,2006, Acushnet filed an opposition to Callaway Golf's April 13,2006 petition to vacate.

12. On April 28, 2006, Callaway Golf filed its Renewed Petition To Suspend *Inter Partes* Reexamination. The Director has not issued a decision on that petition.

13. On June 7, 2006, the Office of Patent Legal Administration dismissed Callaway Golf's petition to vacate the reexamination orders as *ultra vires*.

3

## THE USPTO HAS THE AUTHORITY AND DUTY TO APPLY THE 1996 SETTLEMENT AGREEMENT IN DETERMINING WHETHER TO PROCEED WITH THE REEXAMINATIONS

In footnote 3 of its decision dismissing the petition to vacate, the USPTO stated that it did not make any determination regarding the validity or the applicability of the 1996 Settlement Agreement to Acushnet's reexamination requests. But the USPTO has the ability and authority, and indeed the duty, to apply the 1996 Settlement Agreement to this case. In analogous trademark proceedings, the Federal Circuit has held that it is an error for the USPTO to refuse to apply the terms and conditions of settlement agreements to contested proceedings before the USPTO. The Federal Circuit stated that "although other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of the contract here involved, that is not sufficient reason for the board to decline to consider the agreement, its construction, or its validity if necessary to decide the issues properly before it." *Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705 F.2d 1316, 1324 (Fed. Cir. 1983); *see also Danskin, Inc. v. Dan River, Inc.*, 498 F.2d 1386 (Cust. & Pat.App.1974) (party precluded from challenging a trademark application due to prior settlement agreement). Failure to properly construe and apply the terms and conditions of the 1996 Settlement Agreement is an abdication of the USPTO's duty, pursuant to its own rules, to entertain a petition to vacate a reexamination request where there is no discretion to grant the request. *See* MPEP § 2646 (I)(emphasis in original). That is the case here.

The USPTO maintains that since "any party at any time" can file a request for *inter partes* reexamination, the USPTO must "faithfully follow" to conclusion the "mandatory requirements" of the *inter partes* reexamination. [Decision at 4.] *Selva & Sons, Inc.* involved an analogous statutory scheme and yet the Federal Circuit found it to be an error by the USPTO to ignore the existence of a settlement agreement. In fact, the operative statutory language in question in *Selva & Sons, Inc.* was virtually indistinguishable from this case, stating that "any person" is able to file a petition to cancel a registration. 15 U.S.C. § 1064. Thus, it was clear error for the USPTO to refuse

4

to consider the applicability of the 1996 Settlement Agreement to Acushnet's standing to make its reexamination requests.[1]

Construing and applying the settlement agreement at issue here is straightforward. The language of the 1996 Settlement Agreement is extremely broad in scope – it encompasses "any dispute" and it mandates that the parties use the specified process and venue as the "sole and exclusive procedure" to resolve the dispute.[2] [Ex. A, §19.1 at 15.] The plain meaning of the 1996 Settlement Agreement (and the interpretation that the parties agreed to in writing and followed for at least 18 months) allows only one way to ultimately resolve any patent dispute – only through litigation proceedings filed only in the District of Delaware. The 1996 Settlement Agreement does not give the parties the option of seeking recourse through the USPTO, International Trade Commission, or any other administrative agency or adjudicative body. Instead, it clearly and unequivocally states that all patent disputes will be resolved through negotiation, followed by non-binding, pre-lawsuit mediation and then, if necessary, a lawsuit ("legal proceedings") in the District Court of Delaware.[3]

_____

[1] The USPTO's absolutism in claiming that once an *inter partes* reexamination request is made that it must proceed to its statutory conclusion is contravened by current law. For example, 35 U.S.C. § 294 states that voluntary arbitration agreements made pursuant to written agreements to settle disputes of patent validity or infringement "shall be valid, irrevocable, and enforceable." *Id.* Confronted with such an agreement that stated that arbitration was the sole and exclusive method of resolving disputes regarding validity, the USPTO would be bound to vacate the reexamination in favor of the parties' agreed upon method of dispute resolution.

[2] The parties' choice of law is Delaware. [Ex. A at §18, at 15.] In this case, the language of the contract should be construed using Delaware law. *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001). Under Delaware law, the meaning of contract terms "[a]bsent ambiguity,[are] determined solely by reference to their language." *Harrah's Entertainment, Inc. v. JCS Holding Co.*, 802 A.2d 294, 309 (Del. Ch. 2002). Acushnet must "show that the instruments in question can be reasonably read to have two or more meanings" in order to demonstrate ambiguity. *Id.* However, "because the thoughts of party litigants may differ relating to the meaning of stated language does not in itself establish in a legal sense that the language is ambiguous." *Id.* Here, there scope of the 1996 Settlement Agreement is beyond dispute. It states that "any dispute" is subject to the exclusive dispute resolution procedures of section 19. [Ex. A, at § 19,at 15.] There is no opt-out or alternative. Any distinction between "legal" and "administrative" proceedings is irrelevant since the 1996 Settlement Agreement encompasses "any disputes." *Id.*

[3] In its opposition to Callaway Golf's Petition to Vacate the *Inter Partes* Reexaminations Acushnet simply stated, without analysis or support, that Callaway Golf waived its right to enforce the 1996 Settlement Agreement. Acushnet is wrong. Contractual requirements or conditions may be waived, however "the standards for proving waiver under Delaware law are quite exacting." *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 444 (Del.Supr. 2005) (internal quotations and citations omitted). "Waiver is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those

The USPTO's observation that the parties could not have excluded *inter partes* reexamination proceedings in the agreement, because those proceedings were not available at the time the settlement was entered, is therefore both irrelevant and wrong. [Decision at 5.] The parties excluded all proceedings other than legal proceedings in Delaware District Court. It is immaterial what other, non-legal proceedings existed then or were subsequently created, regardless of forum.

## ENFORCING THE 1996 SETTLEMENT AGREEMENT WOULD NOT VIOLATE PUBLIC POLICY

The USPTO found that the provisions of the 1996 Settlement Agreement specifying the Delaware District Court as the exclusive venue for resolving patent disputes violated public policy. The decision, however is based upon a misinterpretation and misapplication of *Lear v. Adkins*, 395 U.S. 653 (1969). [Decision at 5.] *Lear* dealt with a *license agreement* and resolved the narrow question of licensee estoppel -- whether a licensee could challenge the validity of a patent it was licensing. The Supreme Court ruled that a licensee could challenge the validity of a licensed patent and rejected the claim that the mere fact that the licensee received some benefit from the agreement precluded a later challenge to validity. *Id.* at 669-70. *Lear* did not address the more fundamental issues of whether parties can, as part of a settlement agreement, agree to forebear from any challenge to validity in the first place, or agree to challenge validity only in specified ways.[4] The USPTO's decision thus improperly applies *Lear's* policy arguments regarding license agreements to the 1996 Settlement Agreement and impermissibly expands the scope of *Lear* to reach the unaddressed question of the legitimacy of settlement agreements that specify whether or how parties may challenge validity.

The Federal Circuit, on the other hand, has addressed this very question, in a series of cases that the decision dismissing the petition ignores. The Federal Circuit has

---

contractual rights." *Id.* (internal quotations and citations omitted). There is no evidence that Callaway Golf had either full knowledge or intent to waive its rights under the 1996 Settlement Agreement. .

[4] In fact, the license agreement in question in *Lear* actually contained a provision that allowed the licensee to terminate the agreement if the patents were found invalid. The cited portions of the agreement are silent, however, on the issue of whether a settlement agreement can preclude future challenges to validity. *See Lear*, 395 U.S. at 657.

6

consistently distinguished *Lear* in cases, like this one, where a ***settlement agreement*** is involved:

> *Lear*, however, did not involve a settlement of litigation, but only the right of a patent licensee to challenge the validity of the licensed patent. The enforcement of settlement of litigation involves another public policy totally absent in *Lear*: the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage the parties to enter into them.

*Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988); s*ee also Foster v. Hallco Mfg. Co.* 947 F.2d 469, 476-77 (Fed.Cir.1991) (*Lear* does not bar enforcement of settlement agreement and consent decree).

Moreover, the Federal Circuit has upheld clauses in settlement agreements prohibiting a party from challenging the validity of a patent altogether. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001) (holding that the defendant was contractually estopped from challenging the validity of a patent based upon the clear and unambiguous language in a previous settlement agreement between the parties). Thus, it is clear that parties are free to reach a more limited agreement specifying the manner and place in which to litigate future validity questions.

Since misplaced reliance on *Lear* is the basis on which the USPTO's decision rests, the USPTO should reconsider that decision, and reverse it.

### THE EXEMPLARY LANGUAGE IN MPEP § 2646 DOES NOT LIMIT THE CIRCUMSTANCES WHERE THE USPTO CAN VACATE REEXAMINATION ORDERS

The USPTO's decision denying Callaway Golf's petition to vacate implies that the list of examples in MPEP § 2646(I) operates as a limitation upon the circumstances where the USPTO is authorized to vacate reexamination orders. That is not the law. Specifically, the phrases "such as" and "for example" used in MPEP § 2646(I) have been interpreted by courts in other instances to hold that the cited exemplars are "clearly not an exhaustive list, but [] merely a list of clarifying examples." *See Hertz Corp. v. Pap*, 923 F. Supp. 914, 920 (N.D. Tex. 1995) (referring to the use of "such as"); *see also Smith v. United States*, 347 F.3d 922, 928 (Fed. Cir. 2004)(rejecting the government's argument

7

that a list starting with "for example" is limited to the listed items and stating "for an 'example' is illustrative and informative, but not limiting.").

Thus, the USPTO is empowered, and indeed required, to step outside the bounds of exemplary language in the MPEP when circumstances warrant. *See Blacklight Power Inc. v. Rogan,* 295 F.3d 1269, 1273 (Fed. Cir. 2002) (upholding the decision of the Director to withdraw an application related to "cold fusion" after payment of the issue fee despite the strict language of 37 CFR 1.313.). Here, the USPTO must consider and should adhere to the decisive importance the Federal Circuit has placed on the important public policy of encouraging settlement and the finality of those settlements. In confirming that settlement agreement provisions barring validity challenges can and should be enforced, the Federal Circuit already has weighed the policy of "enforcing settlement agreements and *res judicata*" against the "federal patent laws' prescription of full and free competition in the use of ideas that are in reality a part of the public domain" and found that settlement of litigation is "more strongly favored by the law." *Flex-Foot, Inc.*, 238 F.3d at 1368-69. There is neither reason nor authority for the USPTO to reach a different result in light of this clear direction from the appellate body that reviews USPTO decisions.

## VACATING THE REEXAMINATIONS WOULD NOT LEAVE AN "UNRESOLVED SUBSTANTIAL NEW QUESTION OF PATENTABILITY"

The USPTO's decision incorrectly found that granting Callaway Golf's petition to vacate the reexamination proceeding would leave an "unresolved substantial new question of patentability...." [Decision at 6.] This statement ignores the fact that all of the questions relating to patentability raised in the reexaminations, and others which cannot and will not be dealt with in the reexaminations, will be resolved via the method, and in the forum, agreed to by the parties in their settlement -- the pending lawsuit in the United States District Court for the District of Delaware.

This is simply not a case of a party or the public being deprived of decisions on allegedly important questions of patentability. As the USPTO knows, the reexaminations will in fact only address a subset of the validity issues relating to these patents. For example, the reexaminations will not address other defenses that Acushnet has asserted or

8

may assert in the District Court, such as unenforceability and invalidity based on prior public use or sale, best mode, and prior invention. Since all of the validity issues raised in the reexaminations will be addressed fully and fairly in the District Court -- with all the tools of litigation available to develop the type of record necessary to fully consider those issues -- there is no "public interest" that would be frustrated if these reexaminations were dismissed. The only "interest" at stake in the USPTO is Acushnet's misuse of that proceeding to promote its strategic interest, not the public interest. Indeed, the public interest is in judicial economy and efficiency -- an interest more fully promoted by enforcing the 1996 Settlement Agreement.

Nor does the issue before the USPTO on this petition raise broad questions or implications as to the appropriate jurisdiction of the USPTO on the one and the District Courts on the other. This is a unique situation that simply involves enforcing a **specific** settlement agreement between **specific** parties. The USPTO should decline Acushnet's invitation to use Acushnet's breach of a valid settlement agreement as a jumping-off point for reaffirming the USPTO's vital role in the statutory scheme. No one, least of all patent owner Callaway Golf, questions that.

## *HEINL V. GODICI* IS INAPPOSITE TO THIS CASE AS IT DEALS WITH AN ENTIRELY UNRELATED ISSUE

The USPTO's reliance on *Heinl v. Godici* is misplaced. That case did not involve a previous settlement agreement, or any kind of agreement, between the parties. It only addressed the narrow issue of when an appeal from an adverse action by the USPTO was ripe for judicial review. *Heinl v. Godici*, 143 F. Supp.2d 593, 596-97 (E.D. Va. 2001). The District Court found that the decision to allow reexamination of a patent was a non-final agency action, for which judicial review was not yet available. The District Court examined the issue of *ultra vires* only in the context of whether the facts of that case constituted "brazen defiance" of the USPTO's authority such that the "courts need not await the conclusion of the underlying proceedings" before granting review. *Id.* at 601. The District Court did not consider any of the issues present in this case.

9

## CONCLUSION

For the foregoing reasons, Callaway Golf asks the USPTO to reconsider its decision dismissing the petition to vacate the reexaminations.

The Director is authorized to charge any fees or credit any overpayments to Deposit Account No. 06-1050.

Respectfully submitted,

Date: June 16, 2006

Dorothy P. Whelan (Reg. No. 33,814)
J. Patrick Finn III (Reg. No. 44,109)

Fish & Richardson P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

# Exhibit A

*Copy*

## SETTLEMENT AGREEMENT

between

**SPALDING & EVENFLO COMPANIES, INC.,**
a Delaware corporation,
for itself and on behalf of its Spalding Sports Worldwide Division,
with principal offices in Tampa, Florida;

-and-

**LISCO INC.,**
a Delaware corporation
and wholly owned subsidiary of said SPALDING & EVENFLO COMPANIES, INC.
(hereinafter jointly and severally referred to as "Spalding");

-and-

**ACUSHNET COMPANY,**
a Delaware corporation,
(hereinafter "Acushnet"),
with principal offices in Fairhaven, Massachusetts.

# SETTLEMENT AGREEMENT

Parties:    SPALDING & EVENFLO COMPANIES, INC.
LISCO, INC.
ACUSHNET COMPANY

RECITALS                                                    PAGE

1.   DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

2.   '959 PATENT RIGHTS' LICENSE . . . . . . . . . . . . . . . . . . . . . . . . . .   5

3.   '304 PATENT RIGHTS' LICENSE . . . . . . . . . . . . . . . . . . . . . . . . . .   5

4.   HIGH ACID PATENT RIGHTS' LICENSE . . . . . . . . . . . . . . . . . . . . .   7

5.   MULTIPLE LICENSES AND ROYALTIES . . . . . . . . . . . . . . . . . . . . .   7

6.   SETTLEMENT OF ADVERTISING CLAIMS . . . . . . . . . . . . . . . . . . .   8

7.   WAIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

8.   PAYMENT, COSTS AND FEES . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

9.   DISMISSAL OF CURRENT ACTIONS . . . . . . . . . . . . . . . . . . . . . . .   10

10.  DISCLOSURE OF APPLICATIONS . . . . . . . . . . . . . . . . . . . . . . . . .   11

11.  EFFECT OF AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

12.  CONFIDENTIALITY AND PUBLIC ANNOUNCEMENT . . . . . . . . . . . .   12

13.  NON-ADMISSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

14.  SUPERSESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

15.  SUCCESSORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

16.  EXPIRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

17.  EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

18.  GOVERNING LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

19.  DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

## SETTLEMENT AGREEMENT

between

SPALDING & EVENFLO COMPANIES, INC., a Delaware corporation, for itself and on behalf of its Spalding Sports Worldwide Division, with principal offices in Tampa, Florida;

-and-

LISCO INC., a Delaware corporation and wholly owned subsidiary of said SPALDING & EVENFLO COMPANIES, INC. (hereinafter jointly and severally referred to as "Spalding");

-and-

ACUSHNET COMPANY, a Delaware corporation, (hereinafter "Acushnet"), with principal offices in Fairhaven, Massachusetts.

WHEREAS:

A.    Spalding and Acushnet are parties to a Settlement Agreement dated November 15, 1990, which, for its term of ten (10) years, in situations of patent infringement, requires them, prior to filing suit, to first notify each other of adverse patent claims, and seek a non-litigious resolution thereof, including non-binding mediation, if necessary;

B.    Spalding asserted that the manufacture and sale by Acushnet of Titleist DT 90, Titleist DT 100 and Pinnacle Performance golf balls infringed Lisco Inc.'s U.S. Patent No. 5,329,959 for "Golf Ball Cover Compositions" (the "'959 Patent") and, additionally, that the manufacture and sale by Acushnet of Super Pinnacle Plus golf balls infringed Lisco Inc.'s U.S. Patent No.

5,368,304 for "Low Spin Golf Ball" (the "'304 Patent"), which assertions were denied by
Acushnet;

C.    Acushnet asserted that Spalding's 1995 print advertisements mentioning Acushnet golf
balls were actionably false, inaccurate, disparaging and unfair and those assertions were denied
by Spalding;

D.    Spalding filed two patent infringement actions (Civil Actions Nos. 95-CV-366 and 95-
CV-640) against Acushnet in the United States District Court for the Northern District of Ohio
respectively alleging infringement of its '959 Patent through the manufacture and sale of Titleist
DT 90, Titleist DT 100 and Pinnacle Performance golf balls and infringement of its '304 Patent
through the sale *inter alia* of Super Pinnacle Plus golf balls, and filed another action (Civil
Action No. 95-CV-387) seeking a declaration that certain of its 1995 print advertisements were
not actionably false, inaccurate, disparaging or unfair and asserting that 1995 Acushnet print
advertisements mentioning Spalding golf balls were actionably false, inaccurate, disparaging
and unfair, which assertions have been denied by Acushnet;

E.    Acushnet filed a declaratory judgement action against the '959 and '304 Patents in the
District Court of Massachusetts (95-CV-10384) and also therein brought an action (95-CV-
10376) alleging *inter alia* false advertising and breach of contract by Spalding;

-2-

F.    Acushnet's Massachusetts' actions were transferred to the United States District Court for the Northern District of Ohio and all of said actions have now been transferred from said court to the U.S. District Court of Delaware, whose jurisdiction the parties accept; and

G.    The parties desire to:  (i) settle their present disputes relating to the manufacture, sale and advertising of golf balls as aforesaid; (ii) avoid other and similar patent disputes; and (iii) strengthen the procedure for attempting to resolve expeditiously such new intellectual property and advertising disputes as may arise between them.

NOW, THEREFORE, the parties agree as follows:

1.    DEFINITIONS

In this Settlement Agreement, the following terms shall have the meanings indicated:

1.1    Golf Balls:  Balls for use in playing, practicing or simulating the game of golf.

1.2    Golf Ball Business:  The business of and the technology used in making, using and selling golf balls in the United States and foreign countries as participated in by the parties, their affiliates, subsidiaries or related companies.

1.3    Spalding's '959 Patent Rights:  The domestic and foreign patents and applications therefor identified as A-1 on Exhibit A, including without limitation any and all divisionals, continuations, continuations in part applications currently filed and foreign counterparts thereof or applications currently filed which otherwise emanate from the same roots as do the listed patents, whether or not they can be viewed as improvements thereof.

-3-

1.4    Spalding's '304 Patent Rights: The domestic and foreign patents and applications therefor identified as A-2 on Exhibit A, including without limitation any and all divisionals, continuations, continuations in part applications currently filed and foreign counterparts thereof or applications currently filed which otherwise emanate from the same roots as do the listed patents, whether or not they can be viewed as improvements thereof.

1.5    High Acid Ionomeric Resin: Resin comprised of an alpha olefin and an alpha, beta ethylenically unsaturated carboxylic acid, wherein the latter comprises greater than 16% (by weight) of the total weight of the resin.

1.6    High Acid Patent Rights:    Any and all foreign or domestic patents or applications: (1) currently issued or on file and identified as A-3 on Exhibit A; or (2) filed by any of the parties within three years of the Effective Date of this Settlement Agreement, directed to an invention relating to Golf Balls which invention includes in at least one independent claim a cover composition which comprises one or more High Acid Ionomeric Resin(s).    However, such High Acid Patent Rights do not include, either implicitly or explicitly, (a) other patented technology claimed alone; or (b) separately patentable technology claimed in combination with a High Acid Ionomeric Resin; or (c) any patented multilayer golf ball technology, except to the extent such technologies in (a), (b), and (c) preceding are included in Spalding's '304 Patent Rights.

1.7    Spalding's Patent Rights: The Patent Rights defined in items 1.3, 1.4 and as applicable in 1.6.

-4-

1.8    Disclosure Group:  The senior management of either party, a major stockholder of either party, and the management of any parent of a party, their counsel and auditors who need to know of the terms and conditions of this Settlement Agreement, or any of them.

1.9.    Third Party:    Any corporation, company, entity or individual not in the Disclosure Group.

1.10    Net Sales:  The invoice price less any sales taxes or freight charges paid by the seller and any discounts given to the buyer.

## 2.    '959 PATENT RIGHTS' LICENSE

2.1    In consideration of the one time payment by Acushnet to Spalding of the sum of US$ 535,000.00, Spalding agrees to, and does hereby grant Acushnet, its subsidiaries and affiliates, an irrevocable, non-exclusive, paid up, non-transferrable (except to any successor(s) of substantially all of the assets of Acushnet's Golf Ball Business) license under Spalding's '959 Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof.

2.2    Acushnet expressly does not waive its right to contest, nor is it estopped from contesting, the validity, enforceability or non-infringement of the Spalding '959 Patent Rights, nor does it concede or otherwise acknowledge the validity, enforceability or non-infringement thereof or of any of them, and Spalding agrees never to assert such waiver or estoppel by reason of this Settlement Agreement.

-5-

3.    '304 PATENT RIGHTS' LICENSE

3.1    In consideration of the one time payment by Acushnet to Spalding of the sum
of US$ 100,000.00, Spalding agrees to and does hereby grant Acushnet, its subsidiaries and
affiliates, an irrevocable, non-exclusive, paid up, non-transferrable (except to any successor(s)
of substantially all of the assets of Acushnet's Golf Ball Business) license under Spalding's '304
Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof,
provided the average diameter of such Golf Balls is less than 1.70 inches.

3.2    Acushnet expressly does not waive its right to contest nor is it estopped from
contesting the validity, enforceability or non-infringement of the Spalding '304 Patent Rights,
nor does it concede or otherwise acknowledge the validity, enforceability or non-infringement
thereof or of any of them and Spalding agrees never to assert such waiver or estoppel by
reason of this Settlement Agreement.

3.3    Spalding agrees to and does hereby grant Acushnet, its subsidiaries and affiliates,
an irrevocable, non-exclusive, non-transferable (except to any successor(s) of substantially all
assets of Acushnet's Golf Ball Business) license under Spalding's '304 Patent Rights to make,
use, offer to sell, sell and import Golf Balls under all claims thereof, the average diameter of
such Golf Balls being 1.70 inches or more under all claims thereof, in consideration of the
payment to Spalding by Acushnet of a royalty which shall be the greater of (a) or (b):

a)    a percentage of the Net Sales of Golf Balls sold by Acushnet after the
Effective Date of the Settlement Agreement, applicable as follows:

0-500,000 dozen         5%

500,001-1,000,000 dozen   4%

-6-

1,000,001-2,000,000 dozen 3%

over 2,000,000 dozen        2%; or

b)      $100,000 for each complete calendar year or, if for a period less than a complete calendar year, a pro rata share of $100,000.00.

Such royalty shall be paid quarterly in payments made not later than thirty (30) days following the close of the quarters ending in March, June, September and December in which the sales occurred.

4.      HIGH ACID PATENT RIGHTS' LICENSE

4.1      Each party agrees to and does hereby grant to the other, its subsidiaries and affiliates, an irrevocable, non-exclusive, non-transferrable (except to any successor(s) of substantially all of the assets of its Golf Ball Business) license under its High Acid Patent Rights to make, use, offer to sell, sell and import Golf Balls under all claims thereof, subject only to the payment of a single three percent (3%) royalty on the Net Sales of its Golf Balls falling within the issued claims of said High Acid Patent Rights.

4.2      Both parties expressly do not agree to waive their rights to contest nor are they estopped by this license from contesting the validity, enforceability or non-infringement of the High Acid Patent Rights held by the other, nor do they acknowledge the validity thereof.

-7-

5.    MULTIPLE LICENSES AND ROYALTIES

    5.1    For any particular Golf Ball model, at most one royalty rate shall apply, as set forth in item 3.3 or 4.1, even though more than one license, as set forth in items 2.1, 3.1, 3.3 and 4.1, may apply.

    5.2    For any Golf Ball model containing High Acid Ionomeric Resin which is covered by any '959 Patent Right which also qualifies as a High Acid Patent Right, the license provided in item 2.1 shall control to the exclusion of the royalty rates set forth in items 3.3 and 4.1.

    5.3    For any Golf Ball model containing High Acid Ionomeric Resin which is covered by any '304 Patent Right which also qualifies as a High Acid Patent Right, the following royalties shall apply:

        a)    the royalty rate set forth in item 3.3 shall control to the exclusion of the royalty rate set forth in item 4.1 for Golf Balls with an average diameter of 1.70 inches or greater; and

        b)    the royalty rate set forth in item 4.1 shall control to the exclusion of the license set forth in item 3.1 for Golf Balls with an average diameter of less than 1.70 inches.

6.    SETTLEMENT OF ADVERTISING CLAIMS

    6.1    Spalding has discontinued and agrees not to resume publication of the advertisements attached hereto as Exhibit E and will pay to Acushnet in full settlement of Acushnet's alleged damages' claims arising out of Spalding's 1995 advertising campaign using such advertisements the sum of US$ 400,000.00.

-8-

6.2    Acushnet has discontinued and agrees not to resume publication of the advertisements attached hereto as Exhibit F and will pay to Spalding in full settlement of Spalding's alleged damages claims arising out of Acushnet's 1995 comparative advertising campaign using such advertisements the sum of US$ 100,000.00.

6.3    The parties agree: (i) to utilize demonstrably accurate characterizations when mentioning competing brands of each other by name in the advertising of Golf Balls; and (ii) to recite the methodology being employed, establishing comparisons used in comparative advertising. It is understood and agreed that nothing herein shall prohibit or prevent either party from accurate and fair comparative advertising.

6.4    This Settlement does not constitute an admission of the inaccuracy, truth or falsity of the contested advertisements by either party.

6.5    Spalding agrees to avoid statements for the next fifteen (15) years which might imply that Z-Balata is natural balata (i.e., Z-Balata is longer than other balata balls) and to use Z-Balata always in combination and in the context of a 2-piece construction, and not "balata" alone as in the phrase "balata ball." Moreover, Spalding agrees to avoid in its advertisements phraseology which implies that a golf ball sold under the trademark "Z-balata" is a balata golf ball, such as the phraseology: "Z-balata and other balata balls." However, Spalding, with proper substantiation, is entitled to indicate that its "Z-Balata" golf balls have "balata like" characteristics or possess "balata feel".

6.6    Acushnet agrees to withdraw its opposition to Trademark Application Serial No. 74/513,523 at the United States Patent and Trademark Office (Opposition No. 99000) without prejudice and Spalding agrees to consent thereto.

-9-

7.    WAIVER

The parties agree to and do hereby waive any damages for past infringement of any of their respective rights, as well as any damages for unfair competition, except as specified herein.

8.    PAYMENT, COSTS AND FEES

8.1    Acushnet, within five (5) business days of receipt of the signed original of this Settlement Agreement, shall pay to Spalding by check: the sum of U.S.$ 335,000.00, being the net amount currently due Spalding as a result of this Settlement Agreement.

8.2    The parties agree to be responsible for their own costs and legal fees arising out of any presently pending litigation between them which relates to the Golf Ball Business and the implementation of this Settlement Agreement.

9.    DISMISSAL OF CURRENT ACTIONS

9.1    Concurrent with the execution of this Settlement Agreement, the parties shall take such steps as are necessary to terminate promptly, in accordance herewith, all litigation pending between them which relates to the Golf Ball Business.

9.2    Such steps shall, without limitation, include termination of the following:

9.2.1    Civil Action No. 96-73 MMS, United States District Court for the District of Delaware by Stipulation of Dismissal as annexed in Exhibit B or as otherwise may be required by the court.

-10-

9.2.2   Civil Action No. 96-78 MMS, United States District Court for the District of Delaware by Stipulation of Dismissal as annexed in Exhibit C or as otherwise may be required by the court.

9.2.3   Opposition No. 99000 at the United States Trademark and Patent Office, Trademark Trial and Appeal Board, by Stipulation of Dismissal as annexed in Exhibit D.

9.3   Upon execution of this Settlement Agreement by both parties:

9.3.1   Spalding's counsel and Acushnet's counsel shall sign and file the Stipulations of Dismissal described in 9.2.1 and 9.2.2 as set forth in Exhibits B and C;

9.3.2   Spalding's counsel and Acushnet's counsel shall sign a Stipulation of Dismissal as described in 9.2.3 as set forth in Exhibit D.

## 10.   DISCLOSURE OF APPLICATIONS

10.1   Within thirty (30) days of the Effective Date of the Settlement Agreement both parties simultaneously shall exchange any and all pending applications which fall within the scope of the patent rights defined in items 1.6-1.7.

10.2   Both parties agree to exchange any and all applications filed after the Effective Date of the Settlement Agreement which fall within the scope of the patent rights defined in items 1.6-1.7 not later than thirty (30) days after the filing date of any such application.

10.3   Each party agrees to hold the existence and contents of the other's applications subject to items 10.1-10.2 in confidence while such information is not available to the public and to limit the disclosure of such information during that period to the Disclosure Group and Third Parties who are full-time employees of either party.

-11-

11.   EFFECT OF AGREEMENT

This Settlement Agreement is intended by the parties, and each of them, to settle fully and compromise the disputes hereinbefore mentioned.

12.   CONFIDENTIALITY AND PUBLIC ANNOUNCEMENT

12.1    All terms and conditions of this Settlement Agreement shall be held in confidence for a period of five years and may be disclosed during such period only to the Disclosure Group or, with respect only to identification of the licensed patents, persons within the employ of a party who would be benefitted by such knowledge provided, however, that the parties may disclose the terms of this Settlement Agreement when relevant, subject to an appropriate protective order.  In such case, however, each party shall seek to restrict by motion or otherwise, disclosure of this Settlement Agreement to the least number of persons who need to know.

12.2    No public announcement concerning this Settlement shall be made by either party except that the litigation has been resolved amicably.

12.3    Notice of a claimed breach of this confidentiality provision shall be in writing

and addressed to:

If Spalding is alleged to have breached:

> Mr. Scott Creelman
> Senior Vice President and
> General Manager - Golf Products Worldwide
> Spalding Sports Worldwide
> 425 Meadow Street
> P.O. Box 901
> Chicopee, Massachusetts  01021

with a copy to:

> Robert K. Adikes, Esq.
> Vice President & General Counsel
> Spalding & Evenflo Companies, Inc.
> P.O. Box 30101
> Tampa, Florida  33630

If Acushnet is alleged to have breached:

> Mr. Walter Uihlein
> President and Chief Operating Officer
> Acushnet Company
> 333 Bridge Street
> Fairhaven, Massachusetts  02719

with a copy to:

> Gilbert L. Klemann, II, Esq.
> Senior Vice President & General Counsel
> American Brands, Inc.
> 1700 East Putnam Avenue
> Old Greenwich, Connecticut  06870

and shall in good faith identify the suspected breaching party and/or persons.  Upon the

dispatch of a claim under this Section 12.3, the party alleging the breach may release such

-13-

confidential information as it deems necessary to counter the alleged breach and mitigate damage to itself or competitive advantage to the alleged breaching party.

  12.4 The foregoing notwithstanding, nothing herein shall release any party or counsel of their obligations under any protective order entered in the litigations settled hereby and all claims, causes of action, damages and remedies are reserved by the parties for any breach of such protective orders.

## 13. NON-ADMISSION

The agreement of the parties to the terms of this Settlement Agreement is not an admission of the truth of any allegations made by one against the other nor of any liability to each other. Acushnet does not admit the validity or enforceability of the Spalding Patent Rights nor the allegation that any of its previously manufactured Golf Balls infringed such rights, nor the validity of the allegations made by Spalding concerning the falsity of Acushnet's advertising. Further the agreement of Spalding to the terms of this Settlement Agreement is not an admission of any of the allegations made by Acushnet against Spalding nor of any liability by Spalding to Acushnet.

## 14. SUPERSESSION

This Settlement Agreement embodies the entire understanding of the parties with respect to the matters mentioned and supersedes all prior written or oral understandings or communications with regard to such matters, with the exception of Sections 1-10 and 12-15 of the November 15, 1990 Settlement Agreement.

-14-

15.    SUCCESSORS

This Settlement Agreement is binding upon the parties hereto, their affiliated, related and controlled companies, as well as their representatives and the successors, transferees and assigns of substantially all of their respective Golf Ball Businesses.


16.    EXPIRATION

This Settlement Agreement shall expire upon the expiration of the last to expire patent subject of this Settlement Agreement.


17.    EFFECTIVE DATE

This Settlement Agreement is effective the date of execution by the last party to execute it.


18.    GOVERNING LAW

This Settlement Agreement shall be governed by the laws of the State of Delaware without reference to conflicts of law, except where the law of the United States is controlling.


19.    DISPUTE RESOLUTION

19.1    Any dispute arising out of or relating to patents, including the above mentioned patents, other intellectual property owned or controlled by the parties, or claims relating to advertising shall be resolved in accordance with the procedures specified in this Section, which shall be the sole and exclusive procedure for the resolution of any such disputes.


-15-

19.2    The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Settlement Agreement promptly by negotiation between executives who have authority to settle the controversy and who are at higher level of management than the persons with direct responsibility for administration of this Settlement Agreement. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within 15 days after delivery of the notice, the receiving party shall submit to the other a written response. The notice and the response shall include: (a) a statement of each party's position and a summary of arguments supporting that position, and (b) the name and title of the executive who will represent that party and of any other person who will accompany the executive. Within 30 days after delivery of the disputing party's notice, the executives of both parties shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored.

19.3    If the matter has not been resolved by these persons within 45 days of the disputing party's notice, the dispute shall be referred to more senior executives of both parties who have authority to settle the dispute and who shall likewise meet to attempt to resolve the dispute.

19.4    All negotiations pursuant to item 19.2 and 19.3 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

19.5    If the dispute has not been resolved by negotiation within 45 days of the disputing party's notice, or if the parties fail to meet within 30 days, the parties shall endeavor to settle the dispute by non-binding mediation under the then current CPR Model Mediation

-16-

Procedure for Business Disputes in effect on the Effective Date of this Settlement Agreement. Unless otherwise agreed, the parties will select a mediator from the CPR Panels of Neutrals and shall notify CPR to initiate the selection process.

19.6    If the parties fail to achieve acceptable resolution of the dispute at conclusion of the foregoing steps, the dispute shall be referred to Magistrate Judge Mary Pat Trostle or, in the event Magistrate Judge Trostle is unavailable, another judge with authority to mediate disputes within the United States District Court for the District of Delaware.

19.7    At the conclusion of a referral to the Magistrate or other judge as set forth in
19.6, should the dispute remain unresolved, either party may initiate legal proceedings but only
in the United States District Court for the District of Delaware, and no other.  Said court
retains jurisdiction of the parties for such purposes.


IN WITNESS WHEREOF, the parties through their duly authorized agents, have executed this
Settlement Agreement.

Place:  _TAmpa, FL_
Date:  _7-31-96_
Witness: _Aaron A. Thomas._

SPALDING & EVENFLO COMPANIES, INC.

By: _Jon L. Whiting_
Its: _President_


Place:  _Tampa, Fl_
Date:  _7/31/96_
Witness: _Don R Bh_

LISCO, INC.

By _W Michael Kiplot_
Its: _V.P. Treasurer_


Place: _Fairhaven, MA_
Date: _8-5-96_
Witness: _Joseph J. Newman_

ACUSHNET COMPANY

By: _Robert S. Lull_
Its: _President_


-18-

**EXHIBIT A1**

Spalding's '959 Patent Rights

1.    Patents.

U.S. Patent No. 5,329,959

2.    Applications.

(no foreign filings)

EXHIBIT A2

## Spalding's '304 Patent Rights

1.    Patents.

U.S. Patent No. 5,368,304

2.    Applications.

U.S. Application Serial No. 240,259; filed May 10, 1994
U.S. Application Serial No. 255,442; filed June 6, 1994
U.S. Application Serial No. 331,018; filed October 28, 1994

3.    Foreign Applications.

| | |
|---|---|
| Great Britian: | Patent Application No. 9407471.3, filed April 15, 1994 |
| Canada: | Patent Application No. 2,116,510, filed February 25, 1994 |
| Australia: | Patent Application No. 57,506/94, filed March 3, 1994 |
| Japan: | Patent Application No. 111,680/94, filed April 28, 1994 |
| Taiwan: | Patent Application No. 83102820, filed March 31, 1994 |
| Thailand: | Patent Application No. 022167, filed April 19, 1994 |
| Korea: | Patent Application No. 5054/94, filed March 15, 1994 |

1.    Spalding's U.S. Patents and Applications Relating to High Acid Ionomers

U.S. Patent Application Serial No. 776,803, filed October 15, 1991
(abandoned in favor of U.S. Patent Application Serial No. 596,690, filed
February 5, 1996).

U.S. Patent Application Serial No. 264,997, filed June 24, 1994.

U.S. Patent Application Serial No. 901,680, filed on June 19, 1992
(abandoned in favor of U.S. Patent Application Serial No. 601,380, filed on
February 14, 1996).

U.S. Patent Application Serial No. 493,089, filed June 21, 1995.

U.S. Patent Application Serial No. 649,050, filed May 16, 1996.

U.S. Patent Application Serial No. 412,051, filed March 28, 1995.

U.S. Patent Application Serial No. 070,510, filed June 1, 1993
(abandoned in favor of U.S. Patent Application Serial No. 562,540, filed
November 20, 1995).

U.S. Patent Application Serial No. 225,442, filed June 8, 1994.

U.S. Patent Application Serial No. 359,620, filed December 22, 1994 and
issued on August 6, 1996 as U.S. Patent No. 5,542,677.

U.S. Patent Application Serial No. 551,254, filed on October 31, 1995.

U.S. Patent Application Serial No. 681,870, filed on July 29, 1996.

U.S. Patent Application Serial No. 661,608, filed on June 11, 1996.

2.    <u>Spalding's Foreign Patents and Applications Relating to High Acid Ionomers</u>

Corresponding to U.S. Patent Application Serial No. 776,803:

| | |
|---|---|
| Australia: | 25299/92, filed September 23, 1992 |
| Canada: | 2,078,842, filed September 23, 1992 |
| Japan: | 301,614/92, filed October 15, 1992 |
| Great Britain: | 9221416.2, filed October 13, 1992 |

Corresponding to U.S. Patent Application Serial No. 901,660:

| | |
|---|---|
| Australia: | 32032/93, filed January 27, 1993 |
| Canada: | 2,088,140, filed January 26, 1993 |
| Japan: | 170,960/93, filed June 18, 1993 |
| Korea: | 4037/93, filed March 17, 1993 |
| Taiwan: | 82100909, filed February 10, 1993 |
| Thailand: | 018925, filed May 10, 1993 |
| Great Britain: | 9304805.6, filed March 3, 1993 |

Corresponding to U.S. Patent Application Serial No. 070,510

| | |
|---|---|
| Japan: | 12,239/94, filed January 11, 1994 |
| Great Britain: | 9400790.3, filed January 17, 1994 |

Corresponding to U.S. Patent Application Serial No. 054,406:

| | |
|---|---|
| Great Britian: | 9407471.3, filed April 15, 1994 |
| Canada: | 2,116,510, filed February 25, 1994 |
| Australia: | 57,506/94, filed March 3, 1994 |
| Japan: | 111,680/94, filed April 28, 1994 |
| Taiwan: | 83102820, filed March 31, 1994 |
| Thailand: | 022167, filed April 19, 1994 |
| Korea: | 5054/94, filed March 15, 1994 |

# Exhibit B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SPALDING & EVENFLO COMPANIES, INC.
   and
LISCO, INC.,

           Plaintiffs,

             v.

ACUSHNET COMPANY
   and
AMERICAN BRANDS, INC.,

           Defendants.

Civil Action No. 96-73-MMS

FILED

## STIPULATION OF DISMISSAL

Pursuant to 41(a)(1)(ii) of the Federal Rules of Civil Procedure and a
Settlement Agreement of August 5, 1996, the terms of which are incorporated herein by
reference, the parties to the above action stipulate and agree that all claims in the action,
including both the complaint and all counterclaims, be, and hereby are, dismissed with
prejudice, and that each party shall bear its own costs and attorneys' fees.

The parties also stipulate and agree that the court shall retain jurisdiction to
resolve any and all disputes arising out of the Settlement Agreement in accordance with the
terms of the Settlement Agreement.

STIPULATED AND AGREED THIS  9th  day of AUGUST, 1996.

Kenneth E. Fink, Esq. (Del. Bar #2388)
FERRY, JOSEPH & FINK
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware  19899
(302) 575-1555

William J. Wade (Del. Bar #704)
Robert W. Whetzel (Del. Bar #2288)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square .
P.O. Box 551
Wilmington, Delaware  19899
(302) 658-6541

Attorneys for Spalding & Evenflo
Companies, Inc. and Lisco, Inc.

Attorneys for Acushnet Company

*Of Counsel:*

Christopher B. Fagan
Richard M. Klein
FAY, SHARPE, BEALL, FAGAN,
   MINNICH & McKEE
1100 Superior Avenue, Suite 700
Cleveland, Ohio  44144-2518
(216) 861-5582

*Of Counsel:*

David Weild, III
Rory J. Radding
Peter D. Vogl
Scott B. Familant
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090

- 2 -

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EXHIBIT C

ACUSHNET COMPANY

Plaintiff,

v.

SPALDING & EVENFLO COMPANIES, INC.
and
LISCO, INC.,

Defendants.

Civil Action No. 96-78-MMS

FILED

## STIPULATION OF DISMISSAL

Pursuant to 41(a)(1)(ii) of the Federal Rules of Civil Procedure and a Settlement Agreement of August 5, 1996, the terms of which are incorporated herein by reference, the parties to the above action stipulate and agree that all claims in the action, including both the complaint and all counterclaims, be, and hereby are, dismissed with prejudice, and that each party shall bear its own costs and attorneys' fees.

The parties also stipulate and agree that the court shall retain jurisdiction to resolve any and all disputes arising out of the Settlement Agreement in accordance with the terms of the Settlement Agreement.

STIPULATED AND AGREED THIS 9th day of AUGUST, 1996.

Kenneth E. Fink, Esq. (Del. Bar #2388)
FERRY, JOSEPH & FINK
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555


Attorneys for Spalding & Evenflo
Companies, Inc. and Lisco, Inc.


*Of Counsel:*

Christopher B. Fagan
Richard M. Klein
FAY, SHARPE, BEALL, FAGAN,
  MINNICH & McKEE
1100 Superior Avenue, Suite 700
Cleveland, Ohio  44144-2518
(216) 861-5582


William J. Wade (Del. Bar #704)
Robert W. Whetzel (Del. Bar #2288)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
(302) 658-6541


Attorneys for Acushnet Company


*Of Counsel:*

David Weild, III
Rory J. Radding
Peter D. Vogl
Scott B. Familant
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, New York 10036
(212) 790-9090


- 2 -

# Exhibit D

Final two entries in the 96-73 case (Spalding v. Acushnet):

| 08/09/1996 | 80 | STIPULATION of dismissal with prejudice; each party shall bear its own costs and attorneys' fees (copy to MMS) (ds) (Entered: 08/12/1996) |
|---|---|---|
| 08/09/1996 | | Case closed (ds) (Entered: 08/12/1996) |

Final two entries in the 96-78 case (Acushnet v. Spalding):

| 08/09/1996 | 37 | STIPULATION of dismissal with prejudice; each party shall bear its own costs and attorneys' fees (copy to MMS) (ds) (Entered: 08/12/1996) |
|---|---|---|
| 08/09/1996 | | Case closed (ds) (Entered: 08/12/1996) |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,120 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,210,293 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,121 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,503,156 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,122 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,506,130 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,123 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,595,873 | ) |

Central Reexamination Unit
571-273-9900

## CERTIFICATION UNDER 37 C.F.R. § 1.903

In accordance with the requirements of 37 C.F.R. § 1.903, Patent Owner,
Callaway Golf Company ("Callaway Golf"), hereby certifies that service of the
accompanying Petition to the Director for Reconsideration for the above-referenced *inter
partes* reexamination proceedings was made by U.S. first class mail on June 16, 2006, to
the following attorneys for Acushnet Company:

> Alan M. Grimaldi (Reg. No. 26,599)
> Joseph P. Lavelle (Reg. No. 31,036)
> Andrew R. Sommer (Reg. No. 53,932)
> Howrey LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004

The Director is authorized to charge any fees or credit any overpayments to Deposit Account No. 06-1050.

Respectfully submitted,

Date: June 16 2006

Dorothy P. Whelan (Reg. No. 33,814)
J. Patrick Finn III (Reg. No. 44,109)

Fish & Richardson P.C.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

60364269.doc