IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>ACUSHNET COMPANY,<br><br>        Defendant. | C. A. No. 06-91 (SLR) |

**REPLY IN SUPPORT OF
CALLAWAY GOLF'S MOTION TO AMEND THE COMPLAINT**

        **FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

John V. Picone III
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

David S. Shuman
12290 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Plaintiff
Callaway Golf Company*

DATED: July 7, 2006

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT..........................................................................................................1

    A. There Is No Legitimate Dispute That The 1996 Settlement Agreement Applies To This Dispute .......................................1

    B. The PTO Refused To Interpret The Meaning And Application Of The 1996 Settlement Agreement – So There Is Nothing For This Court To Give "Deference" To ...................................................................................................................3

    C. The 1996 Settlement Agreement Does Not Allow The Parties To Resolve Its Disputes By *Inter Partes* Reexaminations......................................................................................................4

        1. Whether *inter partes* reexaminations are a legal proceeding or not is either irrelevant or helpful to Callaway Golf ..................................................................................................4

        2. *Inter partes* reexaminations are clearly a form of dispute resolution .........................................................................................5

    D. Acushnet's Public Policy Argument Continues To Ignore Contrary Controlling Federal Circuit Law ....................................7

III. CONCLUSION.......................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Flex-Foot, Inc. v. CRP, Inc.*,
  238 F.3d 1362 (Fed. Cir. 2001)..................................................................................8

*Hemstreet v. Spiegel, Inc.*,
  851 F.2d 348 (Fed. Cir. 1988).....................................................................................8

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.*,
  748 F. Supp. 247 (D. Del. 1990).................................................................................4

I. INTRODUCTION

Acushnet's lone reason to deny Callaway Golf's motion to amend is that the amendment would be futile. What is futile is not Callaway Golf's attempt to enforce the 1996 Settlement Agreement, but Acushnet's attempt to now disavow the 1996 Settlement Agreement, to ignore that it has acted for years in accordance with it, and to hope Acushnet can prevail by simply ignoring both controlling Federal Circuit case law and controlling provisions of the Agreement.

Callaway Golf has demonstrated, through this, and previous filings with this Court and the U.S. Patent and Trademark Office ("PTO"), that the 1996 Settlement Agreement is valid and prohibits Acushnet from challenging patent validity except via a lawsuit in United States District Court of Delaware. This Court does not need to give deference to the PTO regarding interpretation and application of the 1996 Settlement Agreement because contrary to Acushnet's assertions, the PTO has flatly **refused** to interpret the meaning of the Agreement. Thus, this Court is Callaway Golf's only venue to enforce the terms bargained for under the Agreement. Since Callaway Golf has met its burden to show that amending the complaint to add a claim for breach of contract is not futile, and in fact is necessary given the PTO's position, Callaway Golf asks this Court to grant its Motion to Amend.

II. ARGUMENT

    A. **There Is No Legitimate Dispute That The 1996 Settlement Agreement Applies To This Dispute**

Acushnet premises much of its opposition on its new-found and unsupported allegation that 1996 Settlement Agreement does not "apply to disputes between Acushnet and non-parties to the agreement." [D.I. 36 at 7]. Acushnet's claim that Callaway Golf is not entitled to the rights under the 1996 Settlement Agreement is revisionist history, as Acushnet has never previously suggested that the 1996 Settlement Agreement did not

apply to this dispute.  It is also contrary to the plain reading of the Agreement and basic principles of contract law.

Addressing first the belated claim that the 1996 Settlement Agreement does not apply to this dispute, Acushnet apparently forgot to re-read its own submissions to this Court.  Mr. Nauman, Acushnet's Executive Vice President, Corporate and Legal, declared under oath in support of Acushnet's Motion to Stay that he "negotiated and witnessed the signing of the 1996 Settlement Agreement".  [Ex. A, Nauman Decl., ¶ 2].[1]  He went on to declare that **"[p]ursuant to Paragraph 19.5 of the [1996 Settlement] Agreement**, I was present at the mediation proceeding before David W. Plant between Acushnet and Callaway Golf . . . on August 3, 2005".  [*Id.* at ¶ 4 (emphasis added)].  Mr. Nauman also states that "[p]ursuant to Paragraph 19.6 of the Agreement, I was present at a mediation proceeding before Magistrate Judge Mary Pat Thynge on October 28, 2005." [*Id.* at ¶ 5].[2]  Mr. Nauman also confirmed that he attended other dispute resolution procedures prescribed by the 1996 Settlement Agreement.  [*Id.* at ¶ 3].  Acushnet's Motion to Stay, itself, acknowledged that the parties engaged "in years of mediation and dispute resolution" pursuant to the Agreement.  [D.I. 10 at 4].  For example, Acushnet said that "**[c]onsistent with the Agreement**, the parties had a mediation before David W. Plant in Boston on August 3, 2005." [*Id.* at 9].  A few pages later, Acushnet observed that:

> The Agreement includes two parts that may be of some
> relevance to this litigation: (1) a dispute resolution clause;
> and (2) a forum selection clause in the event of litigation.
> The dispute resolution portion of the agreement requires
> that the parties first conduct a non-binding mediation.  In
> the event that the first non-binding mediation does not
> resolve the dispute, the parties were to refer the dispute to

---

[1]  Unless otherwise noted, all exhibit references are to the accompanying Declaration of Thomas L. Halkowski in Support of Plaintiff Callaway Golf Company's Reply to Acushnet's Opposition to Callaway Golf's Motion to Amend the Complaint.

[2]  Mr. Nauman made virtually identical statements just a few days ago in a declaration submitted by Acushnet in support of its opposition to Callaway's petition for reconsideration from the PTO's decision.  [*See* Ex. B at ¶¶ 2-4].

2

>        Magistrate Judge Thynge.  **The parties complied with
>        these provisions**."

[*Id.* at 9-10 (citations omitted)(emphasis added)].[3] All of these statements are flatly inconsistent with Acushnet's present argument.  Indeed, they show that Acushnet's new argument does not appear to have been made in good faith.

      Acushnet's attempt to now run away from the 1996 Settlement Agreement altogether also ignores the key provision of the Agreement on successors.  Section 15, titled "Successors," says "[t]his Settlement Agreement is binding upon the parties hereto, their affiliated, related and controlled companies, as well as their representatives and the **successors**, transferees and assigns of substantially all of their respective Golf Ball Businesses." [D.I. 36, Ex. A, at Section 15, p.15 (emphasis added)].  Acushnet admits that Spalding became Top-Flite and that Callaway Golf purchased substantially all of the golf ball assets from Top-Flite Golf in 2003.  [*See, e.g.,* D.I. 36 at 3].  Thus, Callaway Golf is without question a successor-in-interest to Spalding under the agreement and as a successor-in-interest is entitled to the rights (and assumed the responsibilities) under the 1996 Settlement Agreement.  *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252-53 (D. Del. 1990) (stating that "[a]s a successor in interest SGK retained these rights when they assumed Ziegler's position under the contracts.").  Only by ignoring the successor provision entirely can Acushnet make its present argument that the 1996 Settlement Agreement does not apply.

      **B.    The PTO Refused To Interpret The Meaning And Application Of The 1996 Settlement Agreement – So There Is Nothing For This Court To Give "Deference" To**

    Contrary to Acushnet's assertions, the PTO did not reject Callaway Golf's petition to vacate the reexamination orders as *ultra vires* based on the 1996 Settlement Agreement.  To the contrary, the PTO explicitly said it did not and would not interpret the Agreement, stating:

---

[3]   *See also*, Ex. C, Acushnet's Opp. to Callaway Golf's Petition to Reconsider, at 2 and 2n.1.

3

> Patent owner [Callaway Golf] has not established the
> Office has jurisdiction to make a determination regarding
> the validity and applicability of the Settlement Agreement,
> or to make any findings regarding the facts alleged in
> patent owner's petition or the third party requester's
> opposition to patent owner's petition. No such
> determination has been, or will be, undertaken by the
> Office.

[*See* D.I. 36, Ex. C at 4n.3]. Acushnet's assertion to the contrary is false. Acushnet, itself, confirms the error of its argument in its most recent filing with the PTO, where Acushnet argues that "[n]othing in the reexamination statute suggests that the PTO has the authority to consider such a claim…" [Ex. C at 9]. Again, Acushnet is willing to tell this Court one thing and tell the PTO another in an apparent attempt to deceive both entities. Since it is clear that the PTO refused to interpret and apply the terms and conditions of the 1996 Settlement Agreement, and despite what Acushnet says in its opposition it actually agrees with that decision, there is no PTO decision for this Court to defer to.[4]

### C. The 1996 Settlement Agreement Does Not Allow The Parties To Resolve Its Disputes By *Inter Partes* Reexaminations

Acushnet again ignores the plain language of the agreement in arguing: (1) that reexaminations are not legal proceedings; and (2) that reexaminations are not a form of dispute resolution.

#### 1. Whether *inter partes* reexaminations are a legal proceeding or not is either irrelevant or helpful to Callaway Golf

Callaway Golf has already fully briefed this issue in its Opposition to Motion to Stay this action. [*See* D.I. 10 at 4-5 and 9-11]. Put simply, the 1996 Settlement

---

[4] The PTO's decision, while not based upon interpretation and application of the 1996 Settlement Agreement is still nonetheless subject to reconsideration. Moreover, while the PTO did venture that the 1996 Settlement Agreement would be void for public policy reasons, Callaway Golf has asked the PTO to reconsider that decision because the PTO – like Acushnet, as discussed below – simply ignored controlling Federal Circuit law in reaching that conclusion. *See infra* section II.D. In addition, the PTO, like Acushnet in its motion to stay these proceedings, misinterpreted *Lear v. Adkins*, a case that Acushnet does not even cite to in its opposition here. As such, again, no deference should be given to the PTO's decision on this issue.

Agreement states that the dispute resolution procedures of Section 19 "**shall be** the **sole and exclusive procedure** for the **resolution of . . . disputes**" [19.1]; and that, as part of the dispute resolution procedure, the parties must first participate in a specified series of negotiations and mediations; and, ultimately, "should the dispute remain unresolved, either party **may** initiate **legal proceedings** but only in the United States Court for the District of Delaware, and no other." [D.I. 36, Ex. A at 18 (emphasis added)]. Thus, whether or not an *inter partes* reexamination is a legal proceeding is irrelevant. What is relevant is that reexamination is not a proceeding in District Court and it is not permitted by the Agreement. Additionally, if Acushnet is correct that *inter partes* reexamination is **not** a "legal proceeding", that is another reason the Agreement precludes resort to reexamination, because the Agreement **only** allows legal proceedings. Since this issue has already been fully briefed, Callaway Golf will not further burden the Court with argument, but respectfully refers the Court to the earlier briefing for more detailed analysis and citations. [*See* D.I. 16, at 4-5 and 9-11].

### 2. *Inter partes* reexaminations are clearly a form of dispute resolution

In another new-found position, Acushnet next argues that the 1996 Settlement Agreement does not apply because *inter partes* reexaminations are not a form of "dispute resolution". [D.I. 36 at 10-12]. Like Acushnet's other arguments, this one also fails both factually and legally. First, the 1996 Settlement Agreement applies to all "disputes" between the parties that involve intellectual property. [*Id.,* Ex. A at 15]. Here, the dispute is clear: Callaway Golf claims that Acushnet infringes its patents and Acushnet claims that Callaway Golf's patents are invalid. Acushnet previously represented to this Court that the *inter partes* reexaminations will address all issues relating to patentability. [*See* D.I. 22 at 10-11]. Indeed, that is the primary basis on which Acushnet has sought to stay this litigation. One wonders how Acushnet can logically tell this Court to stay its own dispute resolution process in favor of a proceeding that Acushnet now says is **not** a

5

dispute resolution procedure.  If the reexaminations are not going to resolve any disputes, that is an additional reason to deny Acushnet's Motion to Stay.

Moreover, not only do Acushnet's own words suggest that it considers *inter partes* reexaminations to be a form of dispute resolution, but Acushnet's own actions further demonstrate this point.  For example, Acushnet says it waited to file its *inter partes* reexaminations until after the parties had completed all the negotiations and mediations required by the 1996 Settlement Agreement.  Had Acushnet believed that *inter partes* reexaminations were not "a dispute resolution procedure" pursuant to the 1996 Settlement Agreement, Acushnet could have filed its requests much earlier – for example, when the parties first discussed Acushnet's potential infringement in December 2001.  [Ex. A, Nauman Decl. at ¶ 3].  That Acushnet filed the reexamination requests at the time and in the manner it did confirms that Acushnet believes that its requests are another step in resolving the overall dispute between the parties.

Acushnet's claim that *inter partes* reexaminations were "created by Congress to be a cost-effective alternative to litigation in federal court" is also inconsistent with its present argument that reexaminations are not a "dispute resolution procedure".  [*See* D.I. 10 at 1].  Congress certainly intended for *inter partes* reexaminations to be a dispute resolution process when it made the statements Acushnet relied on in its Motion to Stay. [5]

Not surprisingly, Acushnet cites no authority to support its argument that *inter partes* reexaminations are not a dispute resolution procedure.  None of the cases it cites has anything to do with **inter partes** reexaminations.  Instead, they relate to *ex parte*

---

[5] *See Id.,* at 1, *citing* 145 CONG. REC. E1789-1790 (Aug. 5, 1999); *see also* Ex. D (Acushnet's Opposition to Suspend *Inter Partes* Reexamination) at 1-2 (citing 145 CONG. REC. E1788-02, 1999 WL 593941 (Cong. Rec.) (Aug. 3, 1999); *see also* 145 CONG. REC. S13258-02, 13259 (comments from Sen. Hatch stating that inter partes reexaminations are intended to reduce litigation by providing a "viable, loss-costly alternative to patent litigation")].  According to the Legislative History, "[n]umerous witnesses have suggested that the volume of lawsuits in district courts will be reduced if third parties can be encouraged to use reexamination by giving them an opportunity to argue their case for patent invalidity in the USPTO." 145 CONG. REC. H11769-01, H11805-06.

reexaminations. And of course none of the cited case law deals with the contractual issues present in this case. As such, Acushnet has no legal authority to support its argument.

### D. Acushnet's Public Policy Argument Continues To Ignore Contrary Controlling Federal Circuit Law

Acushnet continues to argue that any agreement that prohibits a party from seeking reexamination of a patent is void as a violation of public policy. In making this argument, Acushnet, once again, ignores contrary controlling Federal Circuit law. Callaway Golf has previously dealt with this issue in its Opposition to Acushnet's Motion to Stay and in its Petition to the PTO to Reconsider, which Callaway Golf recently provided to the Court.[6] There, Callaway Golf pointed out that the Federal Circuit has upheld clauses in settlement agreements prohibiting a party from challenging the validity of a patent altogether. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001) (holding that the defendant was contractually estopped from challenging the validity of a patent based upon the clear and unambiguous language in a previous settlement agreement between the parties). In fact, in reaching these decisions, the Federal Circuit emphasized that enforcing these types of settlement agreements promotes an important public policy: "the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage the parties to enter into them." *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988).

Acushnet obviously has no response to this dispositive Federal Circuit law, as Callaway Golf has now cited and argued that law repeatedly and Acushnet continues to ignore it.

### III. CONCLUSION

For the foregoing reasons, and those contained in its opening memorandum, Callaway Golf respectfully requests this Court grant its Motion to Amend the Complaint.

---

[6] *See* Docket Entries 16 and 33, respectively, for these briefings.

Dated: July 7, 2006            FISH & RICHARDSON P.C.

By: /s/ *Thomas L. Halkowski*
    Thomas L. Halkowski (#4099)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE 19899-1114
    Tel: (302) 652-5070
    Fax: (302) 652-0607

    Frank E. Scherkenbach
    225 Franklin Street
    Boston, MA 02110-2804
    Tel: (617) 542-5070
    Fax: (617) 542-8906

    John V. Picone III
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Tel: (650) 839-5070
    Fax: (650) 839-5071

    David S. Shuman
    12290 El Camino Real
    San Diego, CA 92130
    Tel: (858) 678-5070
    Fax: (858) 678-5099

Attorneys for Plaintiff
CALLAWAY GOLF COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2006, I electronically filed the **REPLY IN SUPPORT OF CALLAWAY GOLF'S MOTION TO AMEND THE COMPLAINT** with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the filing will also be sent via hand delivery:

| | |
|---|---|
| Richard L. Horwitz | Attorneys for Defendant |
| David E. Moore | ACUSHNET COMPANY |
| Potter Anderson & Corroon LLP | |
| Hercules Plaza, 6th floor | |
| 1313 N. Market Street | |
| Wilmington, DE 19801 | |

I hereby certify that on July 7, 2006, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

| | |
|---|---|
| Joseph P. Lavelle | Attorneys for Defendant |
| Andrew R. Sommer | ACUSHNET COMPANY |
| Howrey LLP | |
| 1299 Pennsylvania Avenue, N.W. | |
| Washington, DC 20004 | |

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski