IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 06-91 (SLR) |
| ACUSHNET COMPANY, | |
| Defendant. | |

---

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

For its Complaint, Plaintiff alleges:

### PARTIES

1.    Plaintiff Callaway Golf Company ("Callaway Golf") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Carlsbad, California.

2.    Callaway Golf is the parent company of The Top-Flite Golf Company ("Top-Flite"), which is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Chicopee, Massachusetts.

3.    Defendant Acushnet Company ("Acushnet"), upon information and belief, is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Fairhaven, Massachusetts.

4.    Acushnet, upon information and belief, is a wholly-owned operating company of Fortune Brands, Inc. ("Fortune Brands").

5.    Fortune Brands, upon information and belief, is a publicly-traded corporation

organized and existing under the laws of the State of Delaware, having a principal place of business in Lincolnshire, Illinois.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.     Acushnet is subject to personal jurisdiction in this District because, upon information and belief, Acushnet is a Delaware corporation and is doing and has done substantial business in this District, including business relating to the sale and distribution for sale of the infringing products as described below.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

9.     Callaway Golf is the owner, by assignment, of United States Patent Nos. 6,210,293, 6,503,156, 6,506,130 and 6,595,873 (the "'293, '156, '130 and '873" patents, respectively).

## BACKGROUND

10.     In 2003, Callaway Golf acquired the intellectual property assets of Top-Flite's predecessor-in-interest, then also known as "The Top-Flite Golf Company," and before that as "Spalding Sports Worldwide, Inc."

11.     Among the assets Callaway Golf acquired was a family of patents that cover a unique blend of materials and properties for golf balls (collectively "the Sullivan patents").

12.     The Sullivan patents disclose technological breakthroughs relating to golf ball construction, particularly the use of a polyurethane cover on a multi-layer solid-core golf ball, resulting in performance that had previously eluded the industry

13.     The Sullivan patents include, but are not limited to, the '293, '156, '130 and '873

patents.

14.     The technology claimed in the Sullivan patents revolutionized the game of golf.
In fact, within two years of introduction, the vast majority of professional golfers on the PGA
Tour had switched from older golf ball constructions to those incorporating the claimed
technology.  Some commentators have noted that the technology in the Sullivan patents has done
more to change the game of golf than any other equipment advance in the history of the game.

15.     Golf balls with the patented technology offer superior performance, including
longer distance, better feel, and improved wear resistance, compared to prior art golf balls.

16.     Callaway Golf and Top-Flite have both had success selling golf balls embodying
this technology, including the Callaway Golf® Rule 35®, CTU 30 and Callaway Golf® HX®
series of golf balls, the Ben Hogan® series of golf balls, and the Strata® Tour Ace™, Strata®
Tour Premier™ and Top-Flite® Strata® TL-Tour™ lines of golf balls.

17.     Acushnet makes and sells golf balls under the Titleist® brand.

18.     Among these balls are the Titleist Pro V1®, Titleist Pro V1x™, and Titleist Pro
V1*™ (collectively "the Pro V1 balls").

19.     Acushnet has had great success selling the Pro V1 balls.  Acushnet has sold
almost a billion dollars' worth of Pro V1 balls since 2000 by incorporating the technology
disclosed in the Sullivan patents.  Based upon publicly available data, Callaway Golf estimates
that Acushnet continues to sell Pro V1 balls at a rate in excess of $200 million per year.

20.     Acushnet touts the Pro V1 balls as the best selling golf balls of all time, and as
"The #1 Ball in Golf."

21.     The Pro V1 balls embody the technology of the Sullivan patents, and in particular,

embody one or more claims of each of the '293, '156, '130 and '873 patents.

22.     Acushnet has no credible defense to Callaway Golf's infringement claims. Instead, realizing that Callaway Golf was prepared to enforce its rights, Acushnet preemptively filed a request for re-examination of the Sullivan patents with the United States Patent and Trademark Office ("PTO").  In that request, Acushnet claims that prior art already disclosed or discussed by Top-Flite in the applications that matured into the Sullivan patents somehow presents new issues of patentability.  Moreover, the prior art Acushnet now claims raises new issues of patentability for the Sullivan patents is the same art that Acushnet dismissed in its own arguments to the PTO when it was belatedly seeking a patent on virtually the same technology -- almost four years after the first Sullivan application was filed.

23.     In 1996, Callaway Golf's predecessor-in-interest, Spalding World Wide Sports Inc., ("Spalding") sued Acushnet for patent infringement regarding two-piece golf ball technology.  To resolve Spalding's claims of patent infringement and Acushnet's related unfair competition counter-claims, the parties entered into a settlement agreement on August 5, 1996. Among the terms and conditions of the settlement agreement is the requirement that the parties resolve any and all patent-related disputes exclusively via a lawsuit in this Court.  Specifically, the parties agreed in relevant part that "[a]ny dispute arising out of or relating to patents . . . shall be resolved in accordance with the procedures specified in this Section, which shall be the sole and exclusive procedure for resolution of any disputes."  1996 Settlement Agreement ("1996 Settlement Agreement") between Callaway Golf's predecessor-in-interest, Spalding and Acushnet, attached hereto as Exhibit E, at section 19.1, p. 15.  Section 19 goes on to specify that after the parties undertake a multi-step, pre-lawsuit dispute resolution process, including

4

mediation before Magistrate Judge Thynge, "either party may initiate legal proceedings, but only in the United States District Court for the District of Delaware, and no other. Said court retains jurisdiction of the parties for such purposes." *Id.* at section 19.7, p. 18. The 1996 Settlement Agreement remains in effect today and this Court retains jurisdiction over any disputes "arising out of or relating to patents" between the parties.

24.     In August 2004 Callaway Golf initiated the pre-lawsuit dispute resolution procedures mandated by the 1996 Settlement Agreement. Callaway Golf and Acushnet both acknowledged that Callaway Golf was obligated to follow the procedures in the 1996 Settlement Agreement as a successor to Spalding. Moreover, section 15 of the 1996 Settlement Agreement specifies that the 1996 Settlement Agreement "is binding upon the parties hereto . . . as well as their representatives, successors, transferees and assigns of substantially all of the their respective Golf Ball Businesses." *Id.* at section 15, p. 15; *see also* section 1.2, p. 3, defining "Golf Ball Business".

25.     For approximately the next 18 months, the parties engaged in the pre-lawsuit dispute resolution procedure mandated by the 1996 Settlement Agreement. Specifically, Acushnet and Callaway Golf engaged in negotiations by and between senior executives in an attempt to resolve the dispute. In addition, as required by the settlement agreement, the parties participated in a non-binding mediation, as well as several non-binding mediation sessions before Magistrate Judge Thynge of this Court.

26.     On or about March 17, 2006, Acushnet breached the terms and conditions of the Settlement Agreement by filing four *inter partes* reexamination requests with the PTO for the patents-in-suit, numbers, 95/000120-123.

## COUNT I - INFRINGEMENT OF THE '293 PATENT

27.    Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 26 as if fully set forth herein.

28.    Callaway Golf is the owner by assignment of United States Patent No. 6,210,293, entitled "Multi-layer golf ball" ("the '293 patent"), which was duly and legally issued by the United States Patent and Trademark Office on April 3, 2001.  A copy of the '293 patent is attached as Exhibit A to this Complaint.

29.    Acushnet has infringed and both induced and contributed to the infringement of one or more claims of the '293 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

30.    Acushnet has and has had actual notice of the '293 patent.

31.    Acushnet has and has had constructive notice of the '293 patent pursuant to 35 U.S.C. § 287(a).

32.    Acushnet's infringement of the '293 patent has been and continues to be willful.

## COUNT II - INFRINGEMENT OF THE '156 PATENT

33.    Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 26 as if fully set forth herein.

34.    Callaway Golf is the owner by assignment of United States Patent No. 6,503,156 B1, entitled "Golf ball having multi-layer cover with unique outer cover characteristics" ("the '156 patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 7, 2003.  A copy of the '156 patent is attached as Exhibit B to this Complaint.

6

35.    Acushnet has infringed and both induced and contributed to the infringement of one or more claims of the '156 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

36.    Acushnet has and has had actual notice of the '156 patent.

37.    Acushnet has and has had constructive notice of the '156 patent pursuant to 35 U.S.C. § 287(a).

38.    Acushnet's infringement of the '156 patent has been and continues to be willful.

## COUNT III - INFRINGEMENT OF THE '130 PATENT

39.    Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 26 as if fully set forth herein.

40.    Callaway Golf is the owner by assignment of United States Patent No. 6,506,130 B2, entitled "Multi-layer golf ball" ("the '130 patent"), which was duly and legally issued by the United States Patent and Trademark Office on January 14, 2003.  A copy of the '130 patent is attached as Exhibit C to this Complaint.

41.    Acushnet has infringed and both induced and contributed to the infringement of one or more claims of the '130 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

42.    Acushnet has and has had actual notice of the '130 patent.

43.    Acushnet has and has had constructive notice of the '130 patent pursuant to 35 U.S.C. § 287(a).

44.    Acushnet's infringement of the '130 patent has been and continues to be willful.

7

## COUNT IV - INFRINGEMENT OF THE '873 PATENT

45.     Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 26 as if fully set forth herein.

46.     Callaway Golf is the owner by assignment of United States Patent No. 6,595,873 B2, entitled "Multi-layer golf ball" ("the '873 patent"), which was duly and legally issued by the United States Patent and Trademark Office on July 22, 2003.  A copy of the '873 patent is attached as Exhibit D to this Complaint.

47.     Acushnet has infringed and both induced and contributed to the infringement of one or more claims of the '873 patent by making, using, selling and/or offering to sell infringing golf balls, including without limitation its Pro V1 balls.

48.     Acushnet has and has had actual notice of the '873 patent.

49.     Acushnet has and has had constructive notice of the '873 patent pursuant to 35 U.S.C. § 287(a).

50.     Acushnet's infringement of the '873 patent has been and continues to be willful.

## COUNT V- BREACH OF CONTRACT

51.     Callaway Golf incorporates and realleges the allegations of paragraphs 1 through 26 as if fully set forth herein.

52.     As noted above, Callaway Golf and Acushnet had a binding and enforceable agreement to resolve any and all patent and intellectual property-related disputes using the procedures outlined in the 1996 Settlement Agreement.  In fact, in fulfillment of the final step of the pre-lawsuit dispute resolution procedures required by the 1996 Settlement Agreement, the parties jointly wrote to this Court, citing the 1996 Settlement Agreement and seeking Magistrate

Judge Thynge's assistance in mediating the dispute.

53.    At all times, Callaway Golf performed all the duties and conditions of the 1996 Settlement Agreement. .

54.    Acushnet breached its obligation to exclusively resolve all patent disputes via a lawsuit in the District Court of Delaware by filing its *inter partes* reexamination requests with the PTO to resolve issues of alleged invalidity of Callaway Golf's patents.  This Court already has jurisdiction over the same issues, which are disputed in the present litigation.

55.    Callaway Golf has no adequate remedy at law to cure Acushnet's breach of the 1996 Settlement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Callaway Golf prays:

1.    That this Court enjoin Defendant, its agents and employees, and any others acting in concert with it, from infringing, inducing the infringement of, or contributing to the infringement of U.S. Patent Nos. 6,210,293, 6,503,156, 6,506,130 and 6,595,873;

2.    That this Court award Callaway Golf its damages resulting from Defendant's infringement, including lost profits on certain sales and a reasonable royalty on others;

3.    That this Court award Callaway Golf treble damages as a result of Defendant's willful misconduct;

4.    That this Court declare this case an exceptional case pursuant to 35 U.S.C. § 285;

5.    That the Court require Acushnet to specifically perform the terms and conditions of the 1996 Settlement Agreement, including, but not limited to, requiring Acushnet to forbear from further participation in the *inter partes* reexamination proceedings, numbers, 95/000120-

9

123 currently before the PTO;

      6.      That this Court award Callaway Golf damages as a result of Defendant's breach of

the 1996 Settlement Agreement.

      7.      That this Court award Callaway Golf its costs and attorneys' fees and such other

relief as is just.

## JURY DEMAND

Callaway Golf demands trial by jury.

            **FISH & RICHARDSON P.C.**

Date:  June 15, 2006      By:  */s/ Thomas L. Halkowski*
                    Thomas L. Halkowski (#4099)
                    919 N. Market Street, Suite 1100
                    P.O. Box 1114
                    Wilmington, DE 19899-1114
                    (302) 652-5070 Telephone
                    (302) 652-0607 Facsimile

                    Frank E. Scherkenbach
                    225 Franklin Street
                    Boston, MA 02110-2804
                    (617) 542-5070 Telephone
                    (617) 542-8906 Facsimile

                    John V. Picone III
                    500 Arguello Street, Suite 500
                    Redwood City, CA 94063
                    (650) 839-5070 Telephone
                    (650) 839-5071 Facsimile

                    David S. Shuman
                    12290 El Camino Real
                    San Diego, CA 92130
                    (858) 678-5070 Telephone
                    (858) 678-5099 Facsimile

                    Attorneys for Plaintiff
                    Callaway Golf Company