IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

Plaintiff,

v.

ACUSHNET COMPANY,

Defendant.

C. A. No. 06-91 (SLR)

**PLAINTIFF CALLAWAY GOLF COMPANY'S OPPOSITION
TO DEFENDANT ACUSHNET COMPANY'S MOTION TO CERTIFY UNDER 28
U.S.C. § 1292(b) THE COURT'S ORDER DENYING A STAY OF THE LITIGATION
PENDING *INTER PARTES* REEXAMINATION**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12290 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff
Callaway Golf Company*

DATED: December 14, 2006

## Table of Contents

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.  CERTIFICATION IS IMPROPER UNDER § 1292(B)......................................2

  A.  This Court's Decision to Deny Acushnet's Motion to
      Stay is Discretionary and Does Not Involve a
      Controlling Issue of Law. ........................................................................3

    1.  The Decision Whether to Stay Litigation
        Pending Reexamination Is a Matter of
        Discretion. ...................................................................................3

    2.  The District Court's Decision on a Motion to
        Stay is Not a "Controlling Issue of Law." ...................................5

    3.  The Federal Circuit Will Not Accept
        Interlocutory Appeal on this Issue. ..............................................7

    4.  There Is No Bright-Line Rule in Favor of
        Staying Litigation Pending *Inter Partes*
        Reexamination. ..............................................................................9

    5.  Acushnet's "First to File" Argument Is Factually
        Incomplete and Legally Irrelevant. .............................................10

  B.  Any "Ground for Disagreement" Among Courts
      Regarding Whether to Grant a Stay Is Simply a Result
      of Each Court's Discretionary Authority to Manage Its
      Docket. ..................................................................................................14

  C.  Immediate Appeal Would Not Materially Advance the
      Litigation; It Would Delay Any Resolution for Many
      Years. ....................................................................................................15

II.  THE COURT SHOULD NOT STAY THE LITIGATION
     PENDING ANY APPEAL, IF ALLOWED. ...................................................17

III.  CONCLUSION ................................................................................................18

## Table of Authorities

Page(s)

**Cases**

*Barnes v. American Tobacco Co., Inc.*,
176 F.R.D. 479 (E.D. Pa. 1997)...................................................................... 5, 6

*Convole, Inc. v. Compaq Computer Corp.*,
2006 WL 2788234 at *2 (S.D.N.Y., Sept. 27, 2006)............................................ 1, 5

*Echostar Techs. Corp. v. TiVo, Inc.*,
2006 WL 2501494 at *4 (E.D. Tex., July 14, 2006).............................................. 9

*Enzo Biochem, Inc. v. Applera Corp.*,
2006 WL 2927500 at *15 (D. Conn. 2006) ...................................................... 7, 8

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)...................................................................... 3

*Habisat Belting, Inc. v. Rexnord Indus., Inc.*,
161 Fed. App'x. 952 (Fed. Cir. 2006) .............................................................. 10

*IMAX Corp. v. In-Three, Inc.*,
385 F. Supp. 2d 1030  (C.D. Cal. 2005) .......................................................... 14

*In re Am. Acad. Of Sci. Tech. Ctr.*,
367 F.3d 1359 (Fed. Cir. 2004)...................................................................... 15

*In re Convertible Rowing Exerciser Patent Litig.*,
903 F.2d 822 (Fed. Cir. 1990)........................................................................ 7

*In re Kester*,
2006 WL 2540393 (D. Kan. 2006) ................................................................. 5

*In re Orthopedic Bone Screw Products Liability Litigation*,
1996 WL 557334 at *3 (E.D. Pa. 1996) .......................................................... 6, 7

*In re Yamamoto*,
740 F.2d 1569 (Fed. Cir. 1984)................................................................... 12, 17

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974).......................................................................... 6

*Landis v. North Am. Co.*,
299 U.S. 248 (1936).................................................................................. 3, 8

*Mann Mfg. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971) ...................................................................... 11

*Markman v. Westview Indus.*,
517 U.S. 370 (1996).................................................................................. 12

**Table of Authorities**
**(continued)**

Page(s)

*Medichem, S.A. v. Rolabo, S.L.*,
    353 F.3d 928 (Fed. Cir. 2003)................................................................. 3

*NTP, Inc. v. Research In Motion, Ltd.*,
    397 F. Supp. 2d 785 (E.D. Va. 2005) ............................................... 4, 15

*Nystrom v. TREX Co., Inc.*,
    339 F.3d 1347 (Fed. Cir. 2003)............................................................. 7

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985)............................................................. 4

*Schine v. Schine*,
    367 F.2d 685 (2d Cir. 1966)................................................................. 5

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005)........................................... 2, 16

*Standard Havens Prods., Inc. v. Gencor Inds., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991).......................................................... 12

*Symbol Techs. v. Lemelson Medical, Education & Research
    Foundation*,
    56 U.S.P.Q.2d 1381 (Fed. Cir. 2000)................................................. 8

*Texaco, Inc. v. Duhe*,
    44 F. Supp. 2d 809 (W.D. La. 1998).................................................. 5

*Ungar v. Dunkin Donuts of Am., Inc.*,
    531 F.2d 1211 (3d Cir. 1976)............................................................. 5

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
    766 F. Supp. 212 (D. Del. 1991)........................................................ 4

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001)....................................................... 3, 4

*Xerox Corp. v. 3Com Corp.*,
    69 F. Supp. 2d 404  (W.D.N.Y. 1999) .............................................. 4

**Statutes**

16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal
    Practice and Procedure:  Jurisdiction 2d § 3930 at 429 (1996) ............................ 6

28 U.S.C. § 1292(b) ............................................................................ passim

28 U.S.C. § 1338................................................................................ 14

iii

**Table of Authorities**
**(continued)**

**Page(s)**

28 U.S.C. § 1404(a) ........................................................................................ 6

35 U.S.C. § 318 .............................................................................................. 8

37 C.F.R. § 1.907(b) ................................................................................. 14, 17

**Introduction**

Acushnet's motion to certify is the latest in a long string of attempts to prevent Callaway Golf from having its day in court.  Acushnet's delay tactics began during the prolonged pre-filing mediation process – required by a previous settlement agreement between the parties – in which Acushnet continually dragged its feet and requested extensions.  Then, in the middle of the mediation procedure, Acushnet raced to the Patent and Trademark Office to request reexamination actions on each of Callaway Golf's asserted patents, in violation of the previous settlement agreement.  Acushnet then asked this Court last May to stay the litigation pending the outcome of the reexaminations, despite the fact that <u>no *inter partes* reexamination has yet to make it through the PTO and reach the Federal Circuit in the five years since *inter partes* reexaminations came into being</u>.  The Court denied Acushnet's motion to stay, noting that reexaminations seldom offer any assistance in the resolution of parallel litigation.  Now, in a last-ditch effort to further delay this matter, Acushnet has filed this motion to certify the Court's denial for interlocutory appeal under 28 U.S.C. § 1292(b).  As with Acushnet's underlying motion to stay, this motion should be denied.

First, interlocutory appeal is improper here because the Court's decision not to grant the stay is not a controlling question of law, but instead is a discretionary decision based on the specific facts of this case.  It is well settled that "fact-dependent matters that are within the district court's discretion … do not involve a 'controlling issue of law' under § 1292(b)."  *Convole, Inc. v. Compaq Computer Corp.*, 2006 WL 2788234 at *2 (S.D.N.Y., Sept. 27, 2006).  For that reason alone, Acushnet's motion to certify should be denied.  The case-by-case nature in which these issues are decided also means that the issue presents no far-reaching issue of general applicability that might weigh in favor of certification.

Second, the Court's denial of the stay does not present any fundamental difference of opinion among the courts regarding a legal issue.  Instead, courts generally

consider similar factors in ruling on motions to stay.  Different courts reach different conclusions because of the specific facts at issue in each case, as well as the way in which each court exercises its inherent power to manage its own docket.  Those case-by-case variations do not represent a difference of opinion between the courts, and therefore they could not be resolved by an appeal.

Finally, an immediate appeal of this case will not materially advance the ultimate termination of the litigation.  Instead, it could lead to the opposite result, putting this case on hold for five years or more while the reexamination and accompanying appeals work their way through the PTO, the Board of Patent Appeals and Interferences, and the Federal Circuit.  This case is now scheduled to go to trial in less than a year.  The best way to advance its ultimate termination is to hold that date.  As another court recently stated in denying a request for stay pending reexamination:  "Firm trial settings resolve cases and reduce litigation costs."  *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662-63 (E.D. Tex. 2005).

For these reasons, Callaway Golf respectfully requests that the Court deny Acushnet's motion to certify.


**Argument**

## I.      CERTIFICATION IS IMPROPER UNDER § 1292(B).

Certification of an order for interlocutory appeal is improper under 28 U.S.C. § 1292(b) unless Acushnet satisfies each of the following three conditions:  (1) the order must involve a controlling issue of law; (2) there must be substantial ground for difference of opinion on the issue; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  As discussed below, Acushnet's motion fails all three requirements for certification.

A.    **This Court's Decision to Deny Acushnet's Motion to Stay is Discretionary and Does Not Involve a Controlling Issue of Law.**

Even Acushnet's statement of the "controlling issue of law" proves that the issue of whether to grant a motion to stay of litigation is a discretionary issue for the trial court in which that litigation is pending.  Acushnet states (at 1) that the issue is "in what circumstances should a District Court normally stay or decline to stay patent litigation when the patents-at-issue are the subject of a pending first-filed *inter partes* reexamination between the parties to the litigation." [D.I. 66 at 1].  By its very nature, that statement is not an issue of law.  Instead it is a request for guidance – or as Acushnet terms it, a "policy question" – regarding how district courts should "normally" exercise their discretion.  A factual issue within the discretion of the district court is not a "controlling issue of law" within the scope of § 1292(b).

1.    **The Decision Whether to Stay Litigation Pending Reexamination Is a Matter of Discretion.**

It is well settled that the decision whether to stay proceedings in a matter is left to the discretion of the trial court.  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  In particular, the Federal Circuit has recognized time and again that district courts have ultimate discretion regarding whether to stay patent litigation in light of a co-pending reexamination procedure in the Patent and Trademark Office.  *See Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed. Cir. 2003) ("[A] stay of proceedings in the district court pending the outcome of the parallel proceedings in the PTO remains an option within the district court's discretion."); *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination") (citations omitted); *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The [district] court is not required to stay judicial resolution in view of the reexaminations."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602-03 (Fed.

Cir. 1985) (recognizing that district court decisions on stays have varied and stating that "[s]uch judicial discretion is in harmony with the Congressional purpose").

As the district court in the recent Blackberry litigation stated:  "A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze."  *NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (citing *Viskase Corp.* 261 F.3d at 1328).

In exercising their discretion, district courts look to the facts of each case to determine whether to stay litigation pending reexamination by the PTO.  For instance, courts generally consider:  (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  *See Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

In denying Acushnet's motion to stay in this case, the Court considered these factors and concluded that the reexaminations will not simplify the issues in question, stating that "[reexamination] has never been a good experience for me in terms of helping me resolve anything."  [D.I. 58 (Hearing Transcript, October 18, 2006) p. 3, ll. 4-12] That determination, based on the Court's experience and its consideration of the facts of the present case, is exactly the type of discretionary decision that the Federal Circuit leaves to the district courts.  *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602-03 (Fed. Cir. 1985) (recognizing that a stay determination for the purpose of reexamination is a matter of judicial discretion).

As discussed below, in the face of this well-settled precedent entrusting rulings on stays to the discretion of the trial courts, Acushnet does not cite a single case holding that a court's decision whether or not to grant a stay presents a controlling issue of law.

4

## 2. The District Court's Decision on a Motion to Stay is Not a "Controlling Issue of Law."

Courts have routinely found that a district court's exercise of its discretion does not present a "controlling issue of law" sufficient to satisfy the requirements of § 1292(b). *See e.g., Convole, Inc. v. Compaq Computer Corp.*, 2006 WL 2788234 at *2 (S.D.N.Y., Sept. 27, 2006) ("Fact-dependent matters that are within the district court's discretion … do not involve a 'controlling issue of law' under § 1292(b)."); *In re Kester*, 2006 WL 2540393 (D. Kan. 2006) (recognizing that "[m]anagement of the court's docket is a discretionary matter" left to the court, and finding that the exercise of that discretion therefore "did not involve a controlling issue of law" under § 1292(b)); *Texaco, Inc. v. Duhe*, 44 F. Supp. 2d 809, 812 (W.D. La. 1998) ("Whether the state court may more fully resolve the issues being litigated is a discretionary matter, not a controlling issue of law for 1292 review."); *Schine v. Schine*, 367 F.2d 685, 688 (2d Cir. 1966) (holding that an order denying defendants' motion for a separate trial did not meet the requirements for certification of an interlocutory appeal; "whether the district court judge abused his discretion in granting or denying a separate trial ... may rarely, if ever, involve a 'controlling question of law'" under § 1292(b)).

Third Circuit authority is in line with other courts in finding that discretionary decisions are not "controlling issues of law." For example, in *Barnes v. American Tobacco Co., Inc.*, the defendant sought interlocutory appeal regarding the district court's decision to certify a class. *Barnes v. American Tobacco Co., Inc.*, 176 F.R.D. 479 (E.D. Pa. 1997). The court declined to certify the issue for appeal, noting that the defendant's "questions of law" were simply disagreements with the Court's exercise of its discretion in light of the facts. *Id.* at 494. Citing to Third Circuit precedent, the court concluded: "In this Circuit, such disagreements do not constitute controlling issues of law under § 1292(b) and cannot be the basis for interlocutory appeal." *Id.* at 495-6 (citing *Ungar v. Dunkin Donuts of Am., Inc.*, 531 F.2d 1211 (3d Cir. 1976)). *See also In re Orthopedic*

*Bone Screw Products Liability Litigation*, 1996 WL 557334 at *3 (E.D. Pa. 1996)

(holding that the court's decision to dismiss plaintiff's claims without prejudice and allow

it to refile is "a matter within the discretion of the court" and therefore "not appropriate

for certification under 28 U.S.C. § 1292(b)").

      Commentators also have acknowledged this rule.  Wright & Miller advise as

follows:

> Ordinarily a district court should refuse to certify ... matters
> [involving exercises of judicial discretion], not only
> because of a low probability of reversal, but also because
> the recognition of discretion results from a studied
> determination that appellate courts generally should not
> interfere.

16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and

Procedure:  Jurisdiction 2d § 3930 at 429 (1996).

      Acushnet points out that in the *Katz* case, the Third Circuit court reasoned that a

trial court's breach of discretion could theoretically rise to a level that would support

interlocutory review.  *Katz v. Carte Blanche Corp*., 496 F.2d 747 (3d Cir. 1974). The

type of discretionary breaches that the *Katz* court envisioned (in 1974) as potentially

presenting a controlling issue of law, however, are far from the Court's denial of the stay

in our case.  Here is what the *Katz* court had in mind:

> [A] district court could so abuse the discretion vested in it
> by 28 U.S.C. § 1404(a) as to commit error reversible after
> final judgment.  It could, for example, in a case in which
> credibility of witnesses was crucial, transfer to a venue in
> which the critical witness on one side was beyond the reach
> of a subpoena and available for testimony only by
> deposition.  That would be an exercise of discretion.  It
> might also be a ground for the grant of a new trial after
> final hearing.

*Id*. at 755-56.  The Court's sound denial of the stay in this case, unlike the hypothetical

situation discussed in *Katz*, involved the Court's authority to manage its own docket,

does not affect the merits of the case, and would not be a "ground for the grant of a new

trial."  Moreover, recent cases within the Third Circuit – including *Barnes* and

*Orthopedic Bone Screw* – have found that disagreements over a court's exercise of discretion do not constitute controlling issues of law. *See Barnes*, 176 F.R.D. 479 (E.D. Pa. 1997); *In re Orthopedic Bone Screw Products Liability Litigation*, 1996 WL 557334 at *3 (E.D. Pa. 1996).

There is no disagreement on this issue, which explains why Acushnet could not and did not cite a single case holding that a district court's decision not to stay litigation pending reexamination in the PTO presents a controlling issue of law. That is a fatal defect in Acushnet's motion to certify, and the Court should deny Acushnet's motion on this ground alone.

### 3. The Federal Circuit Will Not Accept Interlocutory Appeal on this Issue.

Even if this Court were to certify the issue for interlocutory appeal, the Federal Circuit almost assuredly would not accept the appeal.

As the Federal Circuit itself has advised, it "rarely grant[s]" interlocutory appeals, even when the issue has been certified by the district court. *See Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003) ("Such appeals are rarely granted.") As the court explained in *Nystrom*, the Federal Circuit has "absolute discretion" regarding whether to entertain an interlocutory appeal, "in much the same manner that the Supreme Court today refuses to entertain applications for writs of certiorari." *Id.; see also In re Convertible Rowing Exerciser Patent Litig.*, 903 F.2d 822 (Fed. Cir. 1990) (denying as frivolous a petition for rehearing of decision not to accept interlocutory appeal and noting that it may deny requests for appeal "without specifying the grounds upon which such a denial is based").

A very recent decision by the Federal Circuit illustrates just how high the bar is for interlocutory appeals. In *Enzo Biochem, Inc. v. Applera Corp.*, the district court certified its claim construction order for interlocutory appeal, noting that some of its constructions conflicted with another court's construction of the very same patents in

7

pending litigation in a different district. *Enzo Biochem, Inc. v. Applera Corp.*, 2006 WL
2927500 at *15 (D. Conn. 2006). The plaintiff and defendants both the petitioned the
Federal Circuit for permission to appeal the claim construction order under § 1292(b).
[December 14, 2006 Declaration of Thomas Halkowski, Ex. 1, Order on Petition for
Permission to Appeal, *Enzo v. Applera,* No. M835 (Fed. Cir., Nov. 27, 2006).] The claim
construction issue presented on appeal was clearly a "controlling issue of law" (as
opposed to an issue of discretion), there obviously was ground for difference of opinion
between at least two courts, and the issue was one on which the resolution of two cases
would turn. Nevertheless, the Federal Circuit declined to take the appeal, simply noting:
"We determine that granting the petitions in these circumstances is not warranted." *Id.*

Considering the Federal Circuit's refusal to accept the interlocutory appeal in
*Enzo*, it is extremely unlikely that it would accept any appeal from the Court's
discretionary order denying the stay, even if the Court were to certify.[1]

A review of the cases cited by Acushnet in which the Federal Circuit did allow
interlocutory appeals further demonstrates how different those cases are from the denial
of the stay in this case. For example, the *Symbol* case involved a novel question of law
with wide-ranging applicability: whether the equitable doctrine of laches could be
applied to patent prosecution. *Symbol Techs. v. Lemelson Medical, Education &
Research Foundation*, 56 U.S.P.Q.2d 1381, 1382 (Fed. Cir. 2000). In granting the rare
interlocutory appeal in that case, the Federal Circuit noted that its decision would impact
not only the case at hand, "but many other cases as well." *Id.* Acushnet's request for a
stay, on the other hand, has no far-reaching impact. The "issue of controlling law"
Acushnet wishes to present to the Federal Circuit is whether to stay litigation based on an

---

[1] In an attempt to bolster the importance of the issue, Acushnet characterizes the issue
here as one of "statutory interpretation." (D.I. 66 at 8-9) The Court's discretion to stay
litigation is not based on any statute, but instead is based on its inherent power to
manage its own docket. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The only
statutory provision relating to a stay of litigation pending reexamination is 35 U.S.C.
§ 318, but that section provides for a stay at the request of the "patent owner."
Therefore, this is not an issue of statutory interpretation.

*inter partes* reexamination filed <u>before</u> the co-pending litigation.  (D.I. 66 at 1)  Yet Acushnet admits throughout its brief that this case is the <u>first and only</u> reported case ever to have presented that particular combination of facts.  Necessarily, then, the impact of any ruling by the Federal Circuit on Acushnet's "issue of law" would extend no further than the instant litigation.  Considering the Federal Circuit's reluctance to grant interlocutory appeals in the first place, it is unrealistic to expect that it would be willing to consider Acushnet's appeal.

Moreover, simply certifying the issue for appeal would prejudice Callaway Golf by requiring it to defend against a frivolous appeal and would distract both parties from the resolution of the issues in this case.  Accordingly, this Court should deny Acushnet's motion to certify the issue for interlocutory appeal.

### 4.   There Is No Bright-Line Rule in Favor of Staying Litigation Pending *Inter Partes* Reexamination.

Acushnet states that in every reported case involving a request for a stay pending *inter partes* reexamination, the district court has granted the stay.  That statement is both incomplete and uninformative.

First, by considering only reported opinions, Acushnet's analysis does not capture those cases in which a court has denied a request for stay without preparing a formal decision for publication in the federal reporters.  Accordingly, the Court should not put too much stock in any tally (particularly one with such a small sample size) comparing how often requests for stays are granted versus how often they are denied.

Second, in the three cases cited by Acushnet, the courts did not recognize or attempt to establish any general rule requiring the grant of a stay when the patents are in *inter partes* reexamination.  Instead, as the *Echostar* court noted, "each motion to stay pending reexamination filed in this Court is considered on a case by case basis with each cause of action presenting distinct circumstances."  *Echostar Techs. Corp. v. TiVo, Inc.*, 2006 WL 2501494 at *4 (E.D. Tex., July 14, 2006).  Moreover, in *Habasit*, the Federal

9

Circuit dismissed the plaintiff's appeal, refusing to review the district court's ruling on the defendant's motion to stay. *Habisat Belting, Inc. v. Rexnord Indus., Inc.*, 161 Fed. App'x. 952, 953 (Fed. Cir. 2006). Accordingly, at best, Acushnet's cases simply reaffirm that courts rule on motions to stay based on the facts of each particular case, and the Federal Circuit does not interfere with the discretion of district courts to manage their own dockets.

> 5.    **Acushnet's "First to File" Argument Is Factually Incomplete and Legally Irrelevant.**

Acushnet devotes a considerable portion of its brief (D.I. 66 at 6-11) to the argument that the litigation should be stayed in favor of the reexamination proceedings because the reexamination proceedings were filed first. Acushnet neglects to mention that the reexamination proceedings were filed first only because Acushnet violated the settlement agreement between the parties. After full briefing on the issue, the Court recently granted Callaway Golf's motion to amend its Complaint to allege breach of the settlement agreement. [D.I. 58 (Hearing Transcript, October 18, 2006, p. 3, ll.] More importantly, Acushnet fails to explain how the "first to file" issue is relevant in any way to its motion for certification. It is simply a pretext for seeking certification (really reconsideration) by the Court based on new argument. It does not change the fact that the Court's denial of the motion to stay is a discretionary decision and not a "controlling issue of law."

> a.    **The First-Filed Issue Is Irrelevant to this Motion.**

Despite spending the better part of six pages discussing the "first-filed" issue, Acushnet never addresses the question of why the "first-filed" issue matters to the resolution of the issue in front of this Court right now: whether to certify the denial of the stay for interlocutory appeal. The answer is simple: it doesn't. The relevant issue now is whether Acushnet's motion to certify satisfies each of the three requirements for interlocutory appeal, namely: (1) whether the denial of the stay involves a controlling

issue of law; (2) whether there is substantial ground for difference of opinion on the issue; and (3) whether an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). The "first-filed" issue is irrelevant to each of those requirements.

Instead, Acushnet's argument essentially urges reconsideration of the underlying decision to deny the stay, as does footnote 4 on page 18 of Acushnet's brief, which advises the Court that Acushnet would not object if the Court simply reversed its earlier ruling and granted the stay. Acushnet cannot meet the requirements for seeking reconsideration, and it cannot be allowed to end-run those requirements by styling its motion as one for "certification" instead.

> **b.    The "First-Filed" Rule Does Not Make Sense in the Reexamination Context, Because the Reexamination Will Not Resolve Most of the Issues In This Litigation.**

Ultimately, setting aside that Acushnet's "first-filed" argument relies on its own breach of contract in requesting the reexaminations, and ignoring that the "first-filed" issue is irrelevant to the issues presented in this motion, Acushnet's argument fails because it overlooks crucial differences between PTO proceedings and district court litigation.

The reason no court has applied anything like a "first-filed" rule where the PTO is involved is because, conceptually and procedurally, a PTO proceeding is not at all like a district court litigation. The point of the "first-filed" cases, including those cited by Acushnet, is that two related actions should be <u>consolidated</u> in the jurisdiction of the "first-filed" action. *See Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). That issue makes sense when both actions are litigations, which can be consolidated in either of the jurisdictions.

When one of the actions is a litigation and the other is a proceeding in the PTO, application of the "first-filed" approach makes no sense for several reasons.

First, with regard to the only issue that both the PTO and a district court can address – the validity of the claims – the two jurisdictions apply different standards and consider different evidence. *See Standard Havens Prods., Inc. v. Gencor Inds., Inc.*, 953 F.2d 1360, 1366 (Fed. Cir. 1991) ("[W]e note that the Board's reexamination proceeding considering patentability and the district court's infringement suit considering validity are distinct proceedings, with different records and different standards of proof.") (denying a stay). For example, in ruling on the patentability of claims, the PTO does not attempt to apply the "correct" claim construction, as is required of this Court. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984) Instead, the PTO applies the broadest possible claim construction to consider whether the claims, interpreted as broadly as possible, encompass any prior art. *Id.* That is quite different from the approach that district courts must take in construing the claims for the jury. *Markman v. Westview Indus.*, 517 U.S. 370 (1996). For that reason alone, the PTO's analysis in the reexamination would not aid this Court, as urged by Acushnet (at 17).

In addition, the evidence that can be brought to bear on validity determinations in Court is different from that considered by the PTO. For example, in a case such as this where secondary considerations of non-obviousness (such as failure of others, motivation to try, commercial success, etc.) will be highly probative, the PTO proceedings are at a disadvantage, because the PTO cannot, for example, compel disclosure of evidence from defendant's files. Accordingly, a determination of whether to stay litigation pending an alleged "first-filed" reexamination is unlike the "first-filed" cases in which the choice is between two similarly-situated forums.

Moreover, the "first-filed" analogy cannot apply in this context because patent litigation presents issues that cannot be considered by the PTO or "consolidated" with a reexamination proceeding. For example, in addition to its patent infringement claims, Callaway Golf also has asserted a breach of contract claim in this case, alleging that Acushnet has violated the terms of the 1996 Settlement Agreement by filing its *inter*

12

*partes* reexamination requests. [D.I. 67; Callaway Golf's Amended Complaint, ¶¶ 51-55] That claim will not be resolved in the Patent Office; the only place it can be resolved is in this Court. The PTO itself has acknowledged this. [December 14, 2006 Declaration of Thomas Halkowski, Ex. 2, Decision on Petition to Vacate Order Granting Reexamination at p.4, n.3 (June 7, 2006).] Moreover, the primary remedy Callaway Golf seeks for Acushnet's breach – the termination of the improper reexamination proceedings – would be unavailable and moot if Acushnet gets its way and the litigation is stayed pending the resolution of the reexamination.

Indeed, the reexamination proceedings simply cannot resolve the vast majority of issues pending in this litigation, including:

- whether Acushnet's accused golf balls infringe the asserted claims of the patents-in-suit;

- whether that infringement is or has been willful;

- what is the proper measure of Callaway Golf's damages for Acushnet's infringement;

- whether the asserted claims of the patents-in-suit are valid in light of Acushnet's invalidity arguments not based on prior art, such as prior use, best mode, on-sale bar, or prior invention;

- whether the patents-in-suit are unenforceable due to inequitable conduct (see Acushnet's Answer to Callaway Golf's Amended Complaint [D.I. 60 at ¶¶ 59-69];

- whether Callaway Golf's claims are barred by unclean hands [*id*. at ¶ 70];

- whether Callaway Golf's claims are barred by waiver and/or laches [*id*. at ¶ 71];

- whether Callaway Golf's claims are barred by estoppel [*id*. at ¶ 72-76];

- whether Callaway Golf lacks standing [*id*. at ¶ 77]; and

- whether the 1996 Settlement Agreement is unenforceable [*id*. at ¶ 78].

If the Court stays the litigation pending resolution of the reexaminations, all of those issues will remain unresolved for many years, until the reexamination ends and the litigation resumes. *See IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1033 (C.D.

Cal. 2005) ("the Court concludes that the myriad issues in this case that will remain unresolved and unaddressed pending the (potentially) two-year examination justify allowing this case to go forward").

On the other hand, a final result in the litigation can render the reexamination moot and would cause the PTO to cancel the reexamination. *See* 37 C.F.R. § 1.907(b) ("Once a final decision has been entered against a party in a civil action arising in whole or in part under 28 U.S.C. § 1338 that the party has not sustained its burden of proving invalidity of any patent claim-in-suit, then neither that party nor its privies may thereafter request *inter partes* reexamination of any such patent claim on the basis of issues which that party, or its privies, raised or could have raised in such civil action, <u>and an *inter partes* reexamination requested by that party, or its privies, on the basis of such issues may not thereafter be maintained by the Office</u>.") (emphasis added).

Accordingly, if anything, Acushnet's "first-filed" analogy favors staying the reexamination pending the resolution of the litigation, not the other way around, since district court litigation is the one setting in which all of the issues in the case can be resolved.

**B.     Any "Ground for Disagreement" Among Courts Regarding Whether to Grant a Stay Is Simply a Result of Each Court's Discretionary Authority to Manage Its Docket.**

The second requirement for certification under § 1292(b) is that there must be substantial ground for difference of opinion on the issue for appeal. 28 U.S.C. § 1292(b). For the reasons discussed above, Acushnet has not satisfied this condition, either.

For decades, courts have exercised their discretion in determining whether to stay litigation pending reexamination of the patents-in-suit. That courts sometimes have granted a stay and other times have denied it is not evidence of "grounds for disagreement," but instead is the result of the unique facts of each case. For that reason, the Federal Circuit has never interjected any bright-line rules, and if presented with the issue here, almost certainly would decline the appeal.

**C.    Immediate Appeal Would Not Materially Advance the Litigation; It Would Delay Any Resolution for Many Years.**

The third and final requirement for certification under § 1292(b) is that an immediate appeal from the order at issue must materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Again, as with the first two issues, Acushnet motion does not satisfy this requirement.

As discussed in Callaway Golf's Opposition to Acushnet's Motion to Stay Litigation (at 7), *inter partes* reexamination proceedings take a very long time to reach resolution.  [D.I. 16]  In their current form, *inter partes* reexaminations have been allowed for five years now, but not a single *inter partes* reexamination case has been completed by the BPAI [D.I. 20 (Declaration of Rolf Hille in Support of Calloway Golf's Opposition to Acushnet's Motion to Stay) at ¶ 6]), much less become sufficiently ripe for a subsequent appeal to the Federal Circuit.  [*Id*. at ¶ 7]

As the district court stated in denying a motion to stay in *NTP, Inc. v. Research In Motion, Ltd.*:  "Reality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeals."  *Id.*, 397 F. Supp. 2d at 788.  *See also In re Am. Acad. Of Sci. Tech. Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004) (affirming the claim construction of the Board of Patent Appeals and Interferences in a case where, after numerous rehearing requests and appeals, the PTO's findings were not confirmed until ten years after a reexamination was first requested).

Acushnet urges (at 3) that if the Court stays the litigation pending the reexamination, and "if the patents are declared invalid by the PTO, this case is over."  First, based on the records of previously-filed *inter partes* reexaminations, such an ultimate resolution is at least five years away.  Even then, reexaminations proceed on a claim-by-claim basis, and the PTO would have to find every single claim of each of the four patents (including any amendments that Callaway Golf may make) invalid for it to

15

resolve the validity of all of the patent claims in this litigation. Finally, even then the

case would not be over, because Callaway Golf's breach of contract claim would survive.

Accordingly, the only thing a stay would accomplish in this case would be to delay

Callaway Golf's day in Court, likely until 2011 or 2012, whereas moving forward with

the litigation will certainly produce a much earlier resolution. As the Court recently

stated in *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660 (E.D. Tex.

2005):

> Although there may be circumstances that warrant a stay,
> the Court is unwilling to adopt a *per se* rule that patent
> cases should be stayed during reexamination because some
> of the relevant claims may be affected. To do so would not
> promote the efficient and timely resolution of patent cases,
> but would invite parties to unilaterally derail timely patent
> case resolution by seeking reexamination. Some of the
> claims may change in this case, but the Court is of the
> opinion that the interests of justice will be better served by
> dealing with that contingency when and if it occurs, rather
> than putting this case indefinitely on hold. Firm trial
> settings resolve cases and reduce litigation costs.
> Accordingly, the possibility of issue simplification is not
> sufficiently persuasive in this case.

*Id.* at 662-63.

Moreover, any additional delay will make it difficult for Callaway Golf to

compete in the premium golf ball industry. Acushnet will be able to use its enormous

profits from the infringing sales to continue to market its infringing products aggressively

and pour money into further research and development. Although Callaway Golf may be

able to recoup direct financial loses, the goodwill that golfers would associate with

Callaway Golf having the best golf ball today and the time-to-market with any further

technological advancements will be lost.

Acushnet argues (D.I. 66 at 11) that the claims are "moving targets" in the

litigation as a result of the reexamination proceedings. That is not true. The

reexamination results are not final until the examiner issues a final office action and

issues the reexamination certificate, the Board of Patent Appeals rules on any appeal, and

the Federal Circuit rules on a further appeal.  Any initial office actions or other decisions by the PTO throughout that process are not final, and they will not have any affect on the litigation.  Moreover, at the current pace, the reexamination certainly will not be final and the appeals exhausted before December 3, 2007, the first day of trial in the litigation.  As discussed above, if the district court litigation reaches final judgment first, it will control the reexamination, rather than the reverse.  *See* 37 C.F.R. § 1.907(b).

Moreover, the reexamination will be of no assistance to this Court in construing the asserted claims, because, as discussed above, the PTO applies a different claim construction standard.  *See In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

Finally, each of the cases cited by Acushnet (at 16-18) involve situations in which the court found that it would materially advance the litigation to have a particular issue resolved by the appellate court, after which the litigation would immediately resume. The case at hand is quite different.  If the Federal Circuit were to take the appeal and grant Acushnet's motion to stay, the litigation would not continue.  Instead, the litigation would then stop completely, while the parties waited years for final resolution of the reexamination proceedings.  Callaway Golf fails to understand how putting the litigation on hold for half a decade can possibly "materially advance the litigation."

## II.    THE COURT SHOULD NOT STAY THE LITIGATION PENDING ANY APPEAL, IF ALLOWED.

As discussed above, even if this Court were to certify the issue, the Federal Circuit is very unlikely to accept the interlocutory appeal.  Such appeals are "rarely granted," and when they are, it is because they truly involve controlling issues of law that have wide-ranging effect, unlike the discretionary decision that is the subject of Acushnet's present motion.  That is reason enough for this Court to deny Acushnet's motion to certify.

If the Court is inclined to grant Acushnet's motion to certify – despite all of the arguments set forth herein – Callaway Golf asks the Court not to stay the litigation

17

pending the appeal.  The appeals process itself would take a considerable amount of time and, as noted above, in all likelihood the Federal Circuit would not accept Acushnet's appeal, which would put the parties right back in front of this Court.  If the Court were to stay the litigation in the interim, a very significant amount of time would be wasted.  All of this would cause detriment to Callaway Golf, because Acushnet would continue to sell its infringing products unimpeded.  Moreover, a stay pending appeal would play right into Acushnet's ultimate litigation strategy of delaying at all cost – an approach that has already been rejected once by this Court.  Accordingly, the litigation should not be stayed pending any appeal.

## III.  CONCLUSION

For all of these reasons, Callaway Golf respectfully requests that Acushnet's Motion to Certify be denied.

Dated: December 14, 2006          FISH & RICHARDSON P.C.


By: /s/ *Thomas L. Halkowski*
        Thomas L. Halkowski (#4099)
        919 N. Market Street, Suite 1100
        P.O. Box 1114
        Wilmington, DE 19899-1114
        Tel:  (302) 652-5070
        Fax:  (302) 652-0607

        Frank E. Scherkenbach
        225 Franklin Street
        Boston, MA 02110-2804
        Tel:  (617) 542-5070
        Fax:  (617) 542-8906

        Roger A. Denning
        12290 El Camino Real
        San Diego, CA 92130
        Tel: (858) 678-5070
        Fax:  (858) 678-5099

        Attorneys for Plaintiff
        CALLAWAY GOLF COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2006, I electronically filed **PLAINTIFF CALLAWAY GOLF COMPANY'S OPPOSITION TO DEFENDANT ACUSHNET COMPANY'S MOTION TO CERTIFY UNDER 28 U.S.C. §1292(b) THE COURT'S ORDER DENYING A STAY OF THE LITIGATION PENDING *INTER PARTES* REEXAMINATION** with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.  In addition, the filing will also be sent via hand delivery:

Richard L. Horwitz                              Attorneys for Defendant
David E. Moore                                   ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19801

I hereby certify that on December 14, 2006, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Joseph P. Lavelle                               Attorneys for Defendant
Andrew R. Sommer                                ACUSHNET COMPANY
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

        Plaintiff,

    v.

ACUSHNET COMPANY,

        Defendant.

C. A. No. 06-91 (SLR)

**[PROPOSED] ORDER DENYING ACUSHNET COMPANY'S MOTION TO CERTIFY UNDER 28 U.S.C. § 1292(b) THE COURT'S ORDER DENYING A STAY OF THE LITIGATION PENDING *INTER PARTES* REEXAMINATION**

AND NOW, the Court, having considered the Motion To Certify and all supporting memoranda, declarations and exhibits filed by Acushnet Company, and Callaway Golf Company's opposition to the Motion To Certify and all supporting memoranda, declarations and exhibits,

IT IS HEREBY ORDERED that the Motion is DENIED and that the within action will proceed to resolution.

SO ORDERED, this _____ day of _____, 2006.

_____
United States District Judge