IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ACUSHNET COMPANY'S OPPOSITION TO PLAINTIFF CALLAWAY GOLF COMPANY'S MOTION TO DISQUALIFY DEFENDANT ACUSHNET COMPANY'S EXPERT DAVID FELKER

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 783-0800

*Attorneys for Defendant*
*Acushnet Company*

Dated: January 31, 2007
Public Version Dated: February 7, 2007
776715/30030

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................1

II.  FACTUAL BACKGROUND ...............................................................3

     A.   ████████████████ ............................................................3

     B.   Dr. Felker's Employment and Consultancy with Callaway........................4

     C.   Dr. Felker's Engagement by Acushnet ........................................6

III. ARGUMENT ....................................................................................7

     A.   Callaway Must Show that it Disclosed Privileged Information
          to Dr. Felker that Relates to this Litigation...................................7

     B.   Dr. Felker's Alleged Exposure to ██████████████ Is
          Not a Basis to Disqualify Him ...............................................11

          1.   █████████████████████████
               ................................................................11

          2.   ██████████████████████████████
               ................................................................12

          3.   Any Privilege Covering the ████████████ May
               Have Been Waived ...............................................14

     C.   Dr. Felker's Alleged Exposure to Callaway's General Patent
          Strategy is Not a Basis to Disqualify Him ....................................17

     D.   Dr. Felker's Exposure to Callaway's Confidential Technical
          Information Is Not a Basis to Disqualify Him ................................19

     E.   Policy Considerations Favor Allowing Dr. Felker to Consult
          With and Testify For Acushnet................................................22

     F.   At a Minimum, the Court Should Conduct an Evidentiary
          Hearing to Resolve this Motion ..............................................24

IV.  CONCLUSION..................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
2000 U.S. Dist. LEXIS 321 (S.D.N.Y. Jan. 20, 2000)....................................21, 22, 23

*Chamberlain Group, Inc. v. Interlogix, Inc.*,
2002 U.S. Dist. LEXIS 6998 (N.D. Ill. Apr. 19, 2002) ...................................... *passim*

*In re Data General Corp. Antitrust Litigation*,
MDL Docket No. 369, 1986 U.S. Dist. LEXIS 21923,
5 Fed. R. Serv. 3d 510 (N.D. Cal. Aug. 1, 1986)....................................................21, 22

*Eastman Kodak Co. v. Agfa-Gevaert N.V.*,
2003 U.S. Dist. LEXIS 23260 (W.D.N.Y. Dec. 4, 2003)...............................20, 22, 24

*Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*,
202 F.R.D. 426 (E.D. Pa. 2001)................................................................10, 12, 16, 19

*In re JDS Uniphase Corp. Securities Litigation*,
2006 U.S. Dist. LEXIS 75123 (N.D. Cal. Sept. 29, 2006) ...........................................7

*Koch Refining Co. v. Jennifer L. Boudreaux MV*,
85 F.3d 1178 (5th Cir. 1996) .......................................................................7, 9, 22, 23

*Peralta v. Cendant Corp.*,
190 F.R.D. 38 (D. Conn. 1999)....................................................................................16

*Space Systems/Loral v. Martin Marietta Corp.*,
1995 U.S. Dist. LEXIS 22305 (N.D. Cal. Nov. 15, 1995)...................................8, 9, 20

*United Rentals, Inc. v. Pruett*,
296 F. Supp. 2d 220 (D. Conn. 2003)..........................................................................23

*United States ex rel. Cherry Hill Convalescent Center, Inc. v. Healthcare
Rehabilitation Systems, Inc.*,
994 F. Supp. 244 (D.N.J. 1997) ..........................................................................8, 9, 25

*Viskase Corp. v. W.R. Grace & Co.*,
1992 U.S. Dist. LEXIS 619 (N.D. Ill. Jan. 24, 1992) .......................................10, 18, 19

*Wang Laboratories, Inc. v. Toshiba Corp.*,
762 F. Supp. 1246 (E.D. Va. 1991) .......................................................................21, 22

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (Ct. App. 2002)..................................23

Acushnet Company ("Acushnet") hereby opposes Plaintiff Callaway Golf Company's ("Callaway") Motion to Disqualify Acushnet's Expert David Felker.

## I.    INTRODUCTION

Callaway fails to establish that Dr. Felker was exposed to confidential or privileged information that is relevant to this litigation, which is necessary to warrant the "extreme sanction" of disqualification.  While Callaway spends a large portion of its brief detailing the confidential information that passed between Callaway and Dr. Felker, Callaway fails to mention that the vast majority of this information has nothing whatsoever to do with this litigation or the scope of Felker's potential testimony in this case.

The only disclosure of information Callaway alleges that <u>may</u> bear on the issues that Dr. Felker might testify about is the alleged disclosure of the to Dr. Felker.



In addition, Callaway's brief suggests that Callaway has waived privilege on the

███████████████ by showing it to Dr. Felker to refresh his recollection before his testimony in the Maxfli case, in which case Dr. Felker should also not be disqualified.

The rest of Callaway's arguments reduce to the fact that Dr. Felker worked for Callaway and was exposed to general technical and strategic information. There is no allegation, however, that any of the remaining information disclosed to Dr. Felker has anything to do with this litigation or the patents-in-suit. This is because Callaway acquired the patents-in-suit from Spalding after Dr. Felker left Callaway. Indeed, the patents-in-suit did not even issue to Spalding until after Dr. Felker left Callaway's employment in 2000. Thus, Dr. Felker was not involved in the development of the patented technology, nor did he have any involvement with the patents-in-suit themselves. Cases that have dealt with expert disqualification consistently refuse to disqualify an expert unless there is a direct relationship between the confidential or privileged information received by the expert and the litigation for which the expert is being offered.

Policy reasons also favor allowing Acushnet to use Dr. Felker as an expert. Dr. Felker was retained by Acushnet as an expert in its ongoing litigation with Bridgestone Sports, in which Bridgestone Sports accused the same golf balls that are accused here of infringement. Thus, Dr. Felker has already spent significant time learning the details of the accused golf balls, and it would be prejudicial to force Acushnet to retain a different expert at this time. Moreover, since the golf ball industry is fairly limited, it would be difficult for Acushnet to find a similarly-qualified expert who has not worked for Callaway or Acushnet in the past.

At a minimum, the Court should hold an evidentiary hearing to examine closer the facts surrounding the alleged disclosures to Dr. Felker. ████████████████ ████████████████████████████████████ Callaway has also refused to allow Acushnet to ask Dr. Felker what his recollections are regarding the circumstances under which the

2

information set forth by Callaway was allegedly disclosed to him.  Without such information, and without allowing Acushnet the opportunity to question Callaway's affiants or Dr. Felker about the veracity of the facts set forth in Callaway's motion, Acushnet is put at a disadvantage because all of the facts relevant to this motion are in Callaway's possession.

## II.    FACTUAL BACKGROUND



---

[1] The Declaration of Brian A. Rosenthal in Support of Acushnet Company's Opposition to Plaintiff Callaway Golf Company's Motion to Disqualify Defendant Acushnet Company's Expert David Felker ("Rosenthal Decl.") is submitted herewith.



### B.     Dr. Felker's Employment and Consultancy with Callaway

Acushnet asked Callaway to discuss the facts alleged in Callaway's brief, and the declarations submitted in support thereof, with Dr. Felker. Callaway has refused to allow Acushnet to do so. Rosenthal Decl ¶ 7. Accordingly, Acushnet has not provided a declaration of Dr. Felker regarding the facts set forth in Callaway's motion. If the Court permits Acushnet to question Dr. Felker, Acushnet will inquire as to those facts and submit a declaration by Dr. Felker.

Acushnet does not dispute that Dr. Felker was employed by Callaway until October of 2000 and signed Employment Agreements with Callaway. Rider Decl. Exs. A and C. Acushnet also does not dispute that Dr. Felker was engaged by Callaway as a consultant, and signed a Consulting Agreement effective April 1, 2001, effective until December 31, 2002. Rider Decl. Ex. G. Each of these agreements had confidentiality clauses that prohibit Dr. Felker's disclosure, at any time, of confidential information received during the course of his employment or consultancy with Callaway.

4

Dr. Felker's Employment Agreements and Consulting Agreement are each governed by California law.  Rider Decl. Ex. A, at 12, ¶ 18(c), Ex. C, at 13, ¶ 19(c), Ex. G, at 10, ¶ 22.  Consistent with California's broad right-to-work laws, Dr. Felker's Employment Agreements and Consulting Agreement contain conflict of interest provisions that are explicitly limited to the term of the agreement.



Accordingly, as of January 1, 2003, Dr. Felker no longer had any legal relationship to Callaway Golf. Dr. Felker did testify in a case between Callaway Golf and Dunlop Slazenger Group Americas, Inc. ("Dunlop"), in depositions in 2002 and at trial in 2004.[2] However, as Callaway admits, Dr. Felker was a fact witness in that case. [D.I. 77 at 3.]

Importantly, Dr. Felker's employment with Callaway ended before Callaway acquired the patents-in-suit. The patents-in-suit[3] were developed by Callaway's predecessor, Spalding Sports Worldwide, Inc. ("Spalding"). In May 2003, Spalding divested its sporting goods business and changed its name to "The Top-Flite Golf Company" ("Top-Flite"). D.I. 16 at 5. In September 2003, Callaway purchased the assets of Top-Flite, including the patents-in-suit. *Id.* Thus, Dr. Felker, whose employment by Callaway terminated in 2000, and whose consultancy ended on December 31, 2002, was never employed by Callaway during the time frame in which Callaway acquired the patents-in-suit.

### C.     Dr. Felker's Engagement by Acushnet

In 2001, Acushnet engaged Dr. Felker as an expert witness in two litigations between Acushnet Nitro Leisure Products ("Nitro"), which involved the ProV1 golf ball, accused of infringement in this case. Rosenthal Decl. ¶ 2. Acushnet also engaged Dr. Felker as an expert witness in Acushnet's litigation with Bridgestone Sports on or about June 28, 2005. *Id.* at ¶ 3. In that litigation, Bridgestone Sports accuses several Acushnet golf balls of patent infringement, including the products Callaway accused of infringement in this case. *Id.*. Dr. Felker spent over 500 hours on the Nitro cases and has

---

[2] *Callaway Golf Company v. Dunlop Slazenger Group Americas, Inc.*, C.A. No. 01-669-RRM (D. Del.).

[3] U.S. Patent Nos. 6,210,293 ("the '293 patent"), 6,503,156 ("the '156 patent"), 6,506,130 ("the '130 patent"), and 6,595,873 ("the '873 patent") (collectively, the "patents-in-suit").

spent over 250 hours on the Bridgestone Sports case for Acushnet. *Id.* at ¶¶ 2-3. As a result, Dr. Felker has spent hundreds of hours becoming familiar with the accused products in this case.

As of December 15, 2006, Acushnet engaged Dr. Felker to be an expert witness for Acushnet in the present litigation against Callaway. *Id.* at ¶ 4. Acushnet promptly notified Callaway, pursuant to the Protective Order, of Dr. Felker's engagement. *Id.* Callaway timely objected. *Id.* at ¶ 5. Acushnet has had no substantive communications with Dr. Felker since his engagement regarding any issues involved in this litigation. *Id.* at ¶ 6. Acushnet has not provided any documents it has received from Callaway to Dr. Felker. *Id.*

### III.    ARGUMENT

#### A.    Callaway Must Show that it Disclosed Privileged Information to Dr. Felker that Relates to this Litigation

Disqualification of an expert witness is a "drastic measure that courts should impose only hesitantly, reluctantly and rarely." *In re JDS Uniphase Corp. Secs. Litig.*, 2006 U.S. Dist. LEXIS 75123, at *10 (N.D. Cal. Sept. 29, 2006) (internal quotations omitted); *see also Chamberlain Group, Inc. v. Interlogix, Inc.*, 2002 U.S. Dist. LEXIS 6998, at *12 (N.D. Ill. Apr. 19, 2002) (refusing to grant "the extreme sanction of disqualification"). As the party moving for disqualification, Callaway has a high burden of showing that disqualification is appropriate. *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). Moreover, it is not enough for Callaway to show simply that confidential or privileged information was disclosed to Dr. Felker. Instead, Callaway must show that the confidential information bears a direct relationship to the subject matter of the current lawsuit on which Dr. Felker may testify. Even Callaway admits in its motion that the disclosed information must be "relevant to the current litigation." [D.I. 77 at 15.]

The high degree of relevance necessary to warrant disqualification was made clear in *Space Systems/Loral*, a case relied upon by Callaway. *Space Systems/Loral v. Martin Marietta Corp.*, 1995 U.S. Dist. LEXIS 22305 (N.D. Cal. Nov. 15, 1995). In that case, the court considered the defendants' motion to disqualify two experts, both of whom were former employees of the defendant. *Id.* at *4-*5. There, the court set forth the two-part test required to disqualify an expert, including, "Did the adversary disclose confidential information to the expert that is relevant to the current litigation?" *Id.* at *6 (emphasis added).

The court disqualified the first expert, Muhlfelder, because he had significant involvement in the design of the very satellite technology (the "Series 7000") that was accused of patent infringement. *Id.* at *6-*7. On the other hand the court denied the motion to disqualify the second expert, Kaplan. In contrast to Muhlfelder, Kaplan was not directly involved in the design of the accused Series 7000 technology, but instead was involved in the design of earlier systems that evolved into the accused technology. *Id.* at *8. The court found that this confidential information was too far removed from the issues involved in the litigation to warrant disqualification of Kaplan. *Id.* at *9. The court also agreed with plaintiff's argument that even if Kaplan was exposed to any minimal relevant confidential information, the defendant "would have to produce this information during discovery anyway." *Id.* at *9. Thus, the court refused to disqualify Kaplan even though the technology he helped design was allegedly "operationally similar" to the accused technology. Accordingly, Callaway must satisfy a high burden to show that the information disclosed to Dr. Felker is directly relevant to this litigation.

One district court provided a useful discussion of the types of information whose disclosure can lead to expert disqualification. In *United States ex rel. Cherry Hill Convalescent Center, Inc. v. Healthcare Rehab Systems, Inc.*, 994 F. Supp. 244 (D.N.J. 1997), the defendant moved to disqualify the plaintiff's proposed expert, an accounting firm that had previously done confidential work with the defendant. *Id.* at 248. The

8

defendant argued that the accounting firm had received defendant's confidential business and financial records during the time frame relevant to the current litigation. *Id.* at 246. The court denied the defendant's motion to disqualify, despite the fact that the disclosed records were relevant to the litigation. In doing so, the court distinguished between confidential information that could be discovered in litigation and confidential information that could not be discovered in litigation:

> Defendants argue that [the proposed expert] should be disqualified because it personnel were privy to information relevant to this litigation, but not confidential information directly about or regarding the instant matter. The court finds it necessary to make a distinction between confidential business and financial records and confidential communications related to a particular litigation. The court accepts the argument that [the proposed expert] must have been privy to business and financial information of [defendant], such as billing and reimbursement data, which it had a legal and professional duty to keep confidential and which may be relevant to this litigation. Neither party disputes that this type of information, when relevant, is discoverable.
>
> <u>Confidential business information, however, may be distinguished from confidential communications or documents pertaining to litigation.... Nothing ... indicates that any communications which can readily fall within the work product doctrine or within the scope of the attorney-client privilege were exchanged.</u>

994 F. Supp. at 250-51(emphasis added). The court also clarified what is meant by confidential information of the type whose disclosure can disqualify an expert:

> Confidential information, in the context of expert disqualification, includes: "'discussion of the [retaining party's] strategies in the litigation, the kinds of expert [the part] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses.'"

994 F. Supp. at 250 (quoting *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1182 (5th Cir. 1996)). Thus, the *Cherry Hill* court, like the *Space Systems/Loral* court, put little weight in the disclosure of confidential information that does not relate directly to the litigation in which the expert is offered. Moreover, these cases also make clear that little weight should be given to the fact that confidential information has been

9

disclosed to a potential expert if that information would be discoverable anyway. *See also Chamberlain Group,* 2002 U.S. Dist. LEXIS 6998, at *10 ("Interlogix fails to offer evidence that Dr. Rhyne was exposed to confidential patent information that is not subject to discovery in this action.").

Similarly, in *Viskase Corp. v. W.R. Grace & Co.*, 1992 U.S. Dist. LEXIS 619 (N.D. Ill. Jan. 24, 1992), the Court refused to disqualify the defendant's proposed expert. There, the proposed expert was a former employee of the plaintiff's predecessor with licensing responsibilities. *Id.* at *6. While the proposed expert had access to plaintiff's confidential information about products similar to those involved in the litigation, the court found that the defendant had not shown a close enough relationship between the confidential information and the present litigation.

> Although Friedlander did acquire licensing experience while employed by
> Union Carbide, he had no involvement with the resins or patents directly
> at issue in this case. Essentially, then, his position is indistinct from any
> other expert who acquired licensing experience from some company other
> than plaintiff. He has general experience, but no experience specific to the
> products or patents in suit. Thus, the Court finds that there is not a
> substantial relationship between the confidential information Friedlander
> would have acquired while employed by Union Carbide and the matters to
> which he would be expected to testify in this case.

*Id.* at *6 (emphasis added). *See also Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 426, 429 (E.D. Pa. 2001) (refusing to disqualify proposed experts who were former employees of defendant because the experts were not privy to confidential information about the accused products, even though they were involved in the development of defendant's related technology).

These cases show that while the disclosure of confidential information to a potential expert may be grounds for disqualification, the party seeking disqualification has a high burden to meet. That party must show that the information is directly relevant to the present litigation and that such information is not otherwise discoverable (i.e. it is

protected by privilege or work product immunity).  Callaway has not met its burden in this case.

**B.     Dr. Felker's Alleged Exposure to the ████████ ███████ Is Not a Basis to Disqualify Him**

Callaway's principal argument in favor of disqualifying Dr. Felker is its allegation that Dr. Felker was exposed to an ████████████████████████ ████████████████████████  [D.I. 77 at 20.]  However, Callaway has failed to show why ██████ is relevant to this litigation at all, except for the fact that it ████████████████████  Even if ████████ is relevant, this ██████████████████ does not necessarily relate to the issues presented in this litigation about which Dr. Felker may testify.[4]

Moreover, Callaway admits that it showed this ████████ to Dr. Felker after Callaway terminated his Consulting Agreement for the purpose of refreshing Dr. Felker's recollection for testimony at trial.  Thus, it appears that Callaway has waived any attorney client privilege on that document, and it would be subject to discovery by Acushnet.  In either case, Callaway has failed to carry its burden of showing that privileged information directly relevant to this case was disclosed to Dr. Felker that warrants his disqualification.



*See* Rosenthal Decl. Ex. C.

---

[4] Acushnet has not, at this point, decided whether or on what issues Dr. Felker will testify.  At this point, Acushnet has only designated Dr. Felker as a consultant to receive confidential information under the Protective Order.



. *See Greene, Tweed of Delaware, Inc.*, 202 F.R.D. at 429 (refusing to disqualify expert, noting "the party requesting disqualification may not meet its burden with 'mere conclusory or ipse dixit assertions'") (internal quotations omitted). For this reason, disclosure of the opinion to Dr. Felker should not be a basis to disqualify him.



---

[5] Acushnet requested this information, in order to better evaluate the relevance of this opinion letter to the issues in this case, but Callaway refused to provide this information. Rosenthal Decl. ¶ 6.





Regardless of whether the ███████████ is relevant to this case, its disclosure is still insufficient to disqualify Dr. Felker, for Callaway appears to have waived attorney-client privilege with respect to that letter. Callaway admits in its motion that it showed Dr. Felker the ███████████ after Dr. Felker's employment and Consulting Agreement were terminated. Callaway alleges that it showed the ███████ ██████ to Dr. Felker in August of 2004, while preparing to testify as a fact witness for Callaway in the Maxfli case. [D.I. 77 at 22.] Moreover, Callaway admits that the ███████████ was shown to Dr. Felker to refresh his recollection before he testified in open court. [D.I. 77 at 22.] This disclosure thus had the effect of waiving attorney-client privilege with respect to that ███████.

14

In August of 2004, at the time Callaway allegedly disclosed the  to Dr. Felker, he was no longer retained by Callaway under the Consulting Agreement.



Thus, it is clear that Dr. Felker was not being paid according to the Consulting Agreement in 2004, since the Consulting Agreement was no longer in effect at that time.

Since the disclosure of the ████████████████ was made to Dr. Felker after he was no longer an employee of Callaway and after the termination of his Consulting Agreement, such disclosure waived privilege with respect to that

disclosure for at least one of two reasons. *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999). First, if Callaway showed documents to Dr. Felker that he had previously not seen while employed at Callaway, privilege on those documents would be waived. *Id.* Thus, Callaway must establish, to maintain its claim that the ███████ ███████████ remained privileged when it was shown to Dr. Felker in 2004, that he saw the same opinion letter while employed at Callaway. Callaway's brief and supporting declarations are vague on this point, generally stating that Dr. Felker saw ███████ ████ prepared by Callaway Golf's outside counsel." Without further examination of exactly which ███████ were disclosed to Dr. Felker before and after he left Callaway, Callaway has not met its burden.

Second, Callaway states that Dr. Felker refreshed his recollection in preparation for testimony by reference to the ████████████████ [D.I. 77 at 22 ("[a]s recently as August of 2004, Dr. Felker has refreshed his memory regarding Callaway Golf's relevant privileged information")]. Taking Callaway at its word that Dr. Felker's recollection was refreshed specifically by the ███████████████████████ its privileged status. *Peralta*, 190 F.R.D. at 41-42 ("As to any communication between defendant's counsel and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously, no attorney-client privilege applies.") (emphasis added).

Since Callaway waived privileged on the ██████████████ when it showed ██████ to Dr. Felker to refresh his recollection for testimony after he left Callaway, Callaway has failed to establish that Dr. Felker was shown non-waived privileged information relevant to this litigation that would warrant his disqualification. *Greene, Tweed of Delaware, Inc.*, 202 F.R.D. at 429 (the moving party "has the burden of showing the existence of confidentiality and its non-waiver").

16

### C.   Dr. Felker's Alleged Exposure to Callaway's General Patent Strategy is Not a Basis to Disqualify Him

Callaway spends a large portion of its brief arguing that Dr. Felker was exposed to privileged or strategic discussions involving the "golf ball patent landscape." [D.I. 77 at 2, 6-11.] In doing so, Callaway alleges that Dr. Felker directed the work of Callaway's outside counsel in evaluating third-party golf ball patents, and their impact on Callaway's golf ball business and patent applications. Callaway also alleges that the information reviewed by Dr. Felker included approximately 35 opinion letters prepared by Callaway related to those patents.

Importantly, ███████████████████████████████ Callaway does not allege that any of the patents reviewed by Dr. Felker, or discussed with Dr. Felker, have any relevance to the present litigation. As discussed above, Callaway bears the burden of showing that the confidential information disclosed to Dr. Felker is related to this case. The fact that Dr. Felker may have had access to Callaway's patent strategies not related to this case does not warrant disqualification. *See Chamberlain Group*, 2002 U.S. Dist. LEXIS 6998, at *12 ("[A]n expert's exposure to trial strategy in an unrelated and different action is insufficient to warrant the extreme sanction of disqualification.").

An examination of each of the disclosures Callaway allegedly made to Dr. Felker show that they are not relevant to this litigation:

- Dr. Felker's analysis, in conjunction with outside counsel (Mr. Fowler), of the "golf ball patent landscape" regarding Callaway's freedom to operate. [D.I. 77 at 7-8.] There is no allegation that any of the patents involved in this review bear any relationship to the patents-in-suit.

███████████████████████████████████

17

- Dr. Felker's review of recently issued golf ball patents with Mr. Catania, in-house patent counsel for Callaway. [D.I. 77 at 9.] There is no allegation that any of the patents reviewed by Dr. Felker and Mr. Catania were related to the patents-in-suit.

- Dr. Felker's review of Callaway's golf ball patent applications. [D.I. 77 at 9-10.] Callaway's golf ball patent applications are not at issue in this lawsuit, and Callaway does not allege that any of these applications bear any relevance to the issues Dr. Felker will address in this litigation.

- Dr. Felker's engagement as a fact witness for the Maxfli litigation. [D.I. 77 at 10-11.] There is no allegation that any of the material disclosed to Dr. Felker during this engagement bears any relationship to the patents-in-suit or this case.

Accordingly, while Callaway attempts to establish with mere volume that Dr. Felker has access to relevant privileged information regarding patent strategy, Callaway has failed to establish that any of this work relates at all to the patents-in-suit.

This is similar to the situation faced by the court in *Viskase*. *Viskase*, 1992 U.S. Dist. LEXIS 619, at *2-*3. There, the proposed expert was formerly a Licensing Manager at the predecessor to plaintiff. *Id.* at *2-*3. Despite the fact that the proposed expert had broad knowledge of plaintiff's licensing practices as a result, the court still found that there was not a close enough relationship between his involvement and the issues involved in the lawsuit. *Id.* at *6.

18

Moreover, Callaway's reliance on the fact that Dr. Felker had a confidentiality agreement with Callaway while he was employed by Callaway, and during the term of his Consulting Agreement, is misplaced. The fact that a former employee had a confidentiality agreement does not preclude an expert when there is no reason to believe that his testimony will require the disclosure of confidential information. *Greene, Tweed of Delaware, Inc.*, 202 F.R.D. at 429 (refusing to disqualify a former employee of the other party despite the existence of a confidentiality agreement); *Viskase*, 1992 U.S. Dist. LEXIS 619, at *9 ("[T]here is no indication that Friedlander's consultation as an expert in this case would result in a breach of any employment agreement because plaintiff has not established that Friedlander's testimony would require the disclosure of Union Carbide's confidential technologies or trade secrets. Accordingly, the existence of such an employment agreement would not require the disqualification of Friedlander.").

### D. Dr. Felker's Exposure to Callaway's Confidential Technical Information Is Not a Basis to Disqualify Him

Callaway also argues that Dr. Felker should be disqualified because of his exposure to Callaway's technical information during his employment at Callaway. Again, however, Callaway fails to show how any of the technical information Dr. Felker was exposed to has any relevance to the present litigation.

Acushnet does not dispute that Dr. Felker was involved in the development of Callaway golf balls while employed by Callaway, including the Rule 35 ball. However, all of the development that is relevant to this case took place not at Callaway, but at Spalding, since the patents-in-suit were developed at Spalding. While the relevant development work took place at Spalding, Dr. Felker was at Callaway, completely uninvolved with the development of the patents-in-suit. Moreover, Callaway did not acquire the patents-in-suit until 2003, <u>after</u> Dr. Felker stopped working for Callaway. Hence, there can be no credible argument that Dr. Felker had any involvement with the

19

development of the patented technology, or with the acquisition of the patents-in-suit from Spalding.

Dr. Felker's role at Callaway is similar to that of Mr. Kaplan in the *Space Systems/Loral* case. *Space Systems/Loral*, 1995 U.S. Dist. LEXIS 22305, at \*8. There, as discussed above, Mr. Kaplan was employed by the defendant's predecessor and worked on precursor systems to the accused technology. *Id.* However, Kaplan left the defendant's employment before the development of the accused technology. *Id.* at 9 Accordingly, the court found that there was not a close enough relationship between the confidential technical information that Kaplan acquired while employed by the defendant and the issues presented by the present case. *Id.* Similarly, at no time was Dr. Felker employed by Spalding, where the development of the patents-in-suit took place, nor was Dr. Felker employed by Callaway after the acquisition of the patents-in-suit.

The cases relied upon by Callaway are readily distinguishable, as those cases involved former employees who had been exposed to confidential information directly relevant to the technology at issue in the lawsuit.

The *Eastman Kodak* case, relied on by Callaway, involved a former employee who was an active member of the research project that developed the technology of the patents-in-suit. *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 2003 U.S. Dist. LEXIS 23260, at \*9-\*10 (W.D.N.Y. Dec. 4, 2003). There, the defendant wanted to use an expert who had been a senior scientist for 18 years with plaintiff Kodak. The court recognized that "[t]he critical question then is whether [the proposed expert] received confidential information 'that is relevant' to the current patent litigation" during his former employment. *Id.* at \*5. After conducting a factual hearing, the court found that the proposed expert had been an active member of the research project that created the patented technology at issue in the lawsuit. *Id.* at \*8. On that basis, the court determined that the information Kodak disclosed to the proposed expert concerned the "specific technology at issue in this lawsuit," and thus disqualified the expert. *Id.* at \*12.

20

Similarly, the *Bristol-Myers Squibb* case, also relied on by Callaway, is different from the facts here. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 2000 U.S. Dist. LEXIS 321 (S.D.N.Y. Jan. 20, 2000). There, the court found that the defendant's expert witness, who had previously consulted with plaintiff, received confidential information directly relevant to the expert witness's testimony. *Id.* at *14-*15. Such is not the case here.

The *Wang Labs* case relied on by Callaway is easily distinguishable. *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246 (E.D. Va. 1991). There, the defendant's proposed expert had previously been retained by plaintiff for the same litigation. *Id.* at 1247. During the course of that engagement, the plaintiff showed the expert work product related to the litigation in which the plaintiff outlined potential defenses to its lawsuit. *Id.* Under those circumstances, the court disqualified the expert. The situation presented here is not even close to the facts of *Wang Labs*, since Callaway has not even alleged that Dr. Felker was exposed to any materials discussing this litigation.

The *Data General* case relied on by Callaway does not provide sufficient details of its facts to warrant a comparison to this case. *In re Data General Corp. Antitrust Litig.*, MDL Docket No. 369, 1986 U.S. Dist. LEXIS 21923, 5 Fed. R. Serv. 3d 510 (N.D. Cal. Aug. 1, 1986). There, while the court disqualified defendants' proposed experts, it did so without any discussion of what particular areas of testimony the experts would address. *Id.* at *4-*5. Moreover, the court appeared concerned that the plaintiff had "raid[ed] plaintiffs' roster of former employees." *Id.* at *5. This is not the case here, as Acushnet has been working with Dr. Felker long before it retained him in this litigation. Rosenthal Decl. ¶¶ 2-3. In addition, there the court found that it would be difficult for the experts to distinguish between privileged information and non-privileged information. *Data General*, 1986 U.S. Dist. LEXIS 21923, at *9-*10. In this case, Dr. Felker will have no difficulty doing so, since the issues that are relevant to this litigation are not related to the privileged information Dr. Felker may have received.

21

Dr. Felker's situation is much different from that facing the courts in *Eastman Kodak, Bristol-Myers Squibb, Wang Labs,* and *Data General.* Here, the patents-in-suit were developed at Spalding, not at Callaway, while Dr. Felker was working for Callaway. Callaway did not acquire the patents-in-suit, or even begin negotiations with Spalding to do so, until after Dr. Felker left Callaway. Thus, Dr. Felker was not exposed at all to the development of the technology of the patents-in-suit.

### E.     Policy Considerations Favor Allowing Dr. Felker to Consult With and Testify For Acushnet

Courts are permitted to examine policy interests in determining whether to disqualify an expert. In particular, "[t]he main policy objectives militating against disqualification are ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *Koch,* 85 F.3d at 1183 (internal quotations removed). Here, those policy objectives counsel against disqualification.

Acushnet did not hire Dr. Felker just for this litigation with Callaway. Instead, Acushnet previously hired Dr. Felker for its litigations with Nitro and Bridgestone Sports. Rosenthal Decl ¶¶ 2-3. Thus, there can be no argument that Acushnet hired Dr. Felker in bad faith. *See Chamberlain Group,* 2002 U.S. Dist. LEXIS 6998, at * 14 (refusing to disqualify an expert noting, "There is no indication that Chamberlain's choice of Dr. Rhyne is in bad faith because he has served as Chamberlain's expert in six other proceedings."). In addition, both the Nitro cases and the Bridgestone Sports case involved the Acushnet golf balls that are accused of infringement in this case. Rosenthal Decl ¶¶ 2-3. Dr. Felker has spent hundreds of hours in those cases becoming familiar with the accused Acushnet golf balls. *Id.* Forcing Acushnet to find another expert witness would require a new expert to start fresh in his or her analysis of the accused golf balls, which would prejudice Acushnet.

In addition, the golf ball field has relatively few companies from which potential experts in this country might be found. The two largest golf ball companies in the United States are Callaway and Acushnet. Thus, it would be very difficult for Acushnet to find another expert witness who is as qualified as Dr. Felker, but who does not have present or prior affiliation with Callaway or Acushnet. Granting Callaway's motion would have the effect of forcing Acushnet to look beyond former employees of Callaway and Acushnet. This substantially narrows the field of potential experts, and would prejudice Acushnet's ability to retain an expert witness with the requisite specialized knowledge in this field. Courts have considered the difficulty in retaining a replacement expert as a factor in considering disqualification. *Bristol-Myers Squibb*, 2000 U.S. Dist. LEXIS 321, at *15.

There is also a public policy interest in allowing Dr. Felker the right to work as an independent expert consultant. This policy interest was recognized by the court in *Koch*, 85 F.3d at 1183. This policy is particularly important here because the Employment and Consulting Agreements between Dr. Felker and Callaway are governed by California law. Rider Decl. Ex. A, at 12, ¶ 18(c), Ex. C, at 13, ¶ 19(c), Ex. G, at 10, ¶ 22. California law "strongly favors employee mobility." *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462, 125 Cal. Rptr. 2d 277 (Ct. App. 2002). In particular, California prohibits former employers to make or enforce contractual provisions that restrict activities of former employees that "will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets," "because it creates an after-the-fact covenant not to compete restricting employee mobility." *Whyte*, 101 Cal. App. 4th at 1446 (rejecting the "inevitable disclosure" doctrine as contrary to California law); *see* Business and Professions Code Section 16660. Accordingly, Callaway's argument that Dr. Felker will inevitably disclose information he learned while at Callaway is one that is not accepted by California law, the law that governed Dr. Felker's relationship with Callaway. *See also United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 231-32 (D. Conn. 2003).

Callaway's arguments are also at odds with the very terms of its agreements with Dr. Felker and its representations to him upon leaving Callaway's employment. The Employment and Consulting Agreements explicitly limited the conflict of interest provisions to the term of those agreements. Rider Decl. Ex. A at 4, ¶¶ 7(a), (d); Ex. C, at 3, ¶¶ 7(a), (d), and (e); Ex. C, at 6, ¶ 12. By now arguing that Dr. Felker should not be allowed to consult with Acushnet in this litigation, Callaway seeks to extend the explicit terms of its own contracts with Dr. Felker without compensating Dr. Felker for that extension. Moreover, Callaway explicitly told Dr. Felker when he left Callaway that he would be free to pursue conflicting opportunities at other golf ball companies upon the expiration of his Consulting Agreement. Rider Decl. Ex. J ("This letter will further serve to confirm that it is not a violation of your Consulting Agreement to contact other golf companies now and inform them you will be available to provide services following December 31, 2002."). If Callaway's arguments are accepted, however, Dr. Felker's ability to work as an independent consultant in this relatively small industry would be severely limited.

Thus, both policy considerations and Callaway's own agreements with Dr. Felker bar Callaway's objections to Acushnet's use of Dr. Felker as an expert in this case.

## F.    At a Minimum, the Court Should Conduct an Evidentiary Hearing to Resolve this Motion

While Acushnet believes that Callaway has failed to meet its burden of showing that Dr. Felker was exposed to privileged material that relates to the current litigation, at a minimum, the Court should conduct an evidentiary hearing to more closely examine the facts at issue here. This is particularly true since Callaway has refused to allow Acushnet to examine Dr. Felker outside of the presence of Callaway. Courts regularly conduct such evidentiary hearings in the course of deciding motions to disqualify experts. *See, e.g., Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 2003 U.S. Dist. LEXIS 23260, at *2

24

(W.D.N.Y. Dec. 4, 2003); *United States ex rel. Cherry Hill Convalescent Center, Inc. v. Healthcare Rehab Systems, Inc.*, 994 F. Supp. 244, 246 (D.N.J. 1997).

Specifically, Acushnet should be allowed to cross-examine Callaway's affiants to probe at least the following factual issues:

- What specific documents were shown to Dr. Felker?

- When were the documents shown to Dr. Felker?

- Was there an agreement governing the consulting relationship between Dr. Felker and Callaway after the termination of his Consulting Agreement on December 31, 2002, and if so, what were the terms of such agreement?



With respect to the ▮▮▮▮▮▮▮▮▮▮ as described above, the specifics of the opinion letter could be crucial to determining whether the letter is in fact even remotely relevant to the issues involved in this litigation. Thus, at a minimum, the Court should examine the opinion letter *in camera* to determine the extent, if any, of its relevance to this litigation.

In addition, Acushnet should be permitted to question Dr. Felker about his recollection of what was disclosed to him and when. For example, Acushnet should be permitted to ask Dr. Felker about the following facts:

- Does Dr. Felker remember receiving ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- When, if at all, was Dr. Felker exposed to confidential Callaway documents after his Consulting Agreement terminated on December 31, 2002?

- Was there an agreement governing the consultation of Dr. Felker with Callaway after the termination of his Consulting Agreement on December 31, 2002, and if so, what were its terms?

Such a hearing would likely be helpful in this case because of the gaps in the facts that are left open by Callaway's declarations, and the vague statements contained therein. The fact that Callaway has refused to allow Acushnet to test these facts by questioning Dr. Felker provides an unfair advantage to Callaway since only Callaway has access to the relevant facts. Thus, if the Court decides that there has been any disclosure here that may warrant disqualification, Acushnet requests that the Court conduct a hearing to examine the facts surrounding such disclosure.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny Callaway's motion to disqualify Dr. Felker, or at a minimum conduct an evidentiary hearing, including a review of the '███████████ allegedly disclosed to Dr. Felker after his consultancy with Callaway.

Respectfully submitted,

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 783-0800

Dated: January 31, 2007
Public Version Dated: February 7, 2007
776715/30030

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Telephone (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

26

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 7, 2007, the attached document was

hand delivered to the following persons and was electronically filed with the Clerk of the Court

using CM/ECF which will send notification to the registered attorney(s) of record that the

document has been filed and is available for viewing and downloading:

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114

I hereby certify that on February 7, 2007, I have Electronically Mailed the documents to

the following:

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030