IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

                Plaintiff,

    v.

ACUSHNET COMPANY,

                Defendant.

**REDACTED VERSION**

C. A. No. 06-91 (SLR)

## PLAINTIFF CALLAWAY GOLF COMPANY'S *REPLY* IN SUPPORT OF ITS MOTION TO DISQUALIFY DEFENDANT ACUSHNET COMPANY'S EXPERT DAVID FELKER

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
W. Chad Shear
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED: February 7, 2007

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................1

II.     DISCUSSION ..............................................................................................1

        A.      Callaway Golf's Privileged Analysis of the '831 Patent
                Is Relevant to this Litigation..................................................................2

                1.      Dr. Felker Reviewed and Discussed Callaway
                        Golf's Legal Analysis Regarding the '831 Patent
                        While at Callaway Golf Ball Company. .....................................2

                2.      The '831 Patent Is Substantially Similar to the
                        Patents-in-Suit...........................................................................2

                3.      Acushnet's Own Discovery Requests Contradict
                        Its Current Position that the '831 Patent is
                        Unrelated to this Case. ..............................................................3

                4.      The Analysis of the '831 Patent – Whether
                        Related to Non-Infringement or Invalidity – Is
                        Relevant to Issues in this Case....................................................5

                5.      Callaway Golf Has Not Waived Any Privilege
                        Associated with the Opinion Letter Related To
                        the '831 Patent. .........................................................................6

                        a.      Under *Peralta*, All Communications
                                Between Callaway Golf's Counsel and
                                Dr. Felker Regarding the '831 Patent
                                Remain Privileged............................................................6

                        b.      The '831 Patent Opinion Is Also Work
                                Product, Therefore Showing It to Dr.
                                Felker During the *Maxfli* Litigation Does
                                Not Constitute Waiver of the Privilege.............................8

        B.      Dr. Felker's Access to Other Privileged Information
                Regarding Golf Ball Patents Also Necessitates
                Disqualification.......................................................................................10

        C.      Dr. Felker's Role in Developing the Rule 35 Ball Is
                Directly Relevant to the Issues in This Case. ..........................................10

        D.      The Relevant Policy Considerations Clearly Favor Dr.
                Felker's Disqualification as Acushnet's Expert in this
                Case........................................................................................................11

III.    CONCLUSION............................................................................................13

## TABLE OF AUTHORITIES

<u>Page(s)</u>

**CASES**

*BASF Aktiengesellschaft v. Reilly Industries, Inc.*,
    224 F.R.D. 438 (S.D. In. 2004)............................................................9, 10

*In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust*
    *Litigation*, 658 F.2d 1355 (9th Cir. 1981)...............................................7

*Koch Refining, Co. v. Jennifer L. Boudreaux MV*,
    85 F.3d 1178 (5th Cir. 1996) ..................................................................12

*Peralta v. Cedant Corp.*,
    190 F.R.D. 38 (D. Conn. 1999)................................................7, 8, 9, 10

*Surles v. Air France*,
    2001 WL. 815522 (S.D.N.Y. 2001) ........................................................8

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)................................................................................7

*Wade Williams Distribution, Inc. v. American Broadcasting Co.*,
    2004 WL. 1487702 (S.D.N.Y. 2004)......................................................8

*Wang Laboratoriess, Inc. v. Toshiba Corp.*,
    762 F. Supp. 1246 (E.D. Va. 1991) .......................................................1

## I.      INTRODUCTION

Acushnet does not dispute that Dr. David Felker has been exposed to significant privileged and confidential information of Callaway Golf, including legal analysis regarding a patent – the '831 patent – related to the patents-in-suit. Instead, Acushnet attempts to downplay the importance of Dr. Felker's knowledge, but those attempts miss the mark. First, Acushnet argues that the '831 patent and the related legal analysis are irrelevant to the case at hand. But, Acushnet, itself, has served several document requests on Callaway Golf *seeking documents, including opinion letters, relating to the '831 patent*. Second, Acushnet argues that Callaway Golf waived the privilege. Acushnet, however, relies upon case law that actually supports Callaway Golf's position. Finally, Acushnet's "policy considerations" all boil down to money – Dr. Felker's desire to make more and Acushnet's desire to pay less. Neither of those desires even approaches the policy concerns that support disqualification: the sanctity of Callaway Golf's attorney-client privilege and the integrity of the judicial process.

## II.     DISCUSSION

As presented in Callaway Golf's opening brief, disqualification is appropriate where: (1) it was objectively reasonable for the moving party to believe it had a confidential relationship with the expert; and (2) the moving party gave the expert confidential or privileged information relevant to the current litigation. *See, e.g., Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). Acushnet concedes that Callaway Golf has a reasonable belief of confidentiality with Dr. Felker. The only remaining issue is whether Dr. Felker received confidential or privileged information relevant to this case. As discussed below, Callaway Golf has met that burden as well.

1

**A.      Callaway Golf's Privileged Analysis of the '831 Patent Is Relevant to this Litigation.**

          **1.      Dr. Felker Reviewed and Discussed Callaway Golf's Legal Analysis Regarding the '831 Patent While at Callaway Golf Ball Company.**

As Callaway Golf's opening brief discusses in detail, when Dr. Felker was Vice President of Research and Development of Callaway Golf Ball Company, he had hundreds of conversations with Callaway Golf's outside counsel – Charles Fowler – to develop Callaway Golf's strategy regarding golf ball patents. One of the patents addressed in those discussions and in a written opinion was the '831 patent, which at the time was owned by Top-Flite.[1] This opinion and these discussions exposed Dr. Felker to significant privileged work product and attorney-client communications of Callaway Golf.

          **2.      The '831 Patent Is Substantially Similar to the Patents-in-Suit.**

Acushnet argues in its opposition, without analysis, that the '831 patent is not similar to the patents at issue in this case. Acushnet's argument lacks merit.

The '831 patent stems from the same family of applications as all four of the patents-at-issue. All of these patents claim priority – through continuations and continuations-in-part – to Application No. 08/070,510 ("the '510 application"), filed on June 1, 1993. [Declaration of Thomas L. Halkowski In Support Of Callaway Golf's Mot. To Disqualify Felker ("Halkowski Decl."), Ex. A; *see also* U.S. Patent Nos. 6,506,130; 6,503,156; 6,210,293; 6,595,873.] For that reason, the specifications and drawings of the '831 patents are very similar to those for the patents-in-suit, even using the same reference numbers to identify the features of the golf balls in the drawings. [*Id.*]

---

[1]  To the extent any doubt exists regarding whether Dr. Felker was privy to Mr. Fowler's analysis and discussions regarding the '831 patent, Callaway Golf is prepared to provide additional support *in camera*.

At a more detailed level, the '831 patent and those at issue here all relate to an improved golf ball that has a two-piece cover (12) made of a hard inner cover layer (14) and a soft outer cover layer (16). [Halkowski Decl., Ex. A, Col. 4: 58-60, Fig. 2; *see also* U.S. Patent No. 6,506,130, Col. 5: 16-18, Fig. 2.] Each patent describes the "present invention" using the same words:

> The present invention relates to improved multi-layer golf balls, particularly a golf ball comprising a multi-layered cover 12 over a solid core 10, and a method for making the same. … The multi-layered cover 12 comprises two layers: a first or inner layer or ply 14 and a second or outer layer or ply 16.

[Halkowski Decl., Ex. A, Cols. 4:64-5:8; U.S. Patent No. 6,506,130, Col. 5:23-27; U.S. Patent No. 6,503,156, Col. 5:16-20; U.S. Patent No. 6,210,293, Col. 5:48-52; U.S. Patent No. 6,595,873, Col. 5:40-44.] The patents all go on to describe that the inner layer (14) is comprised of an ionomer blend, the outer layer (16) is softer than the inner layer (14), and the outer layer (16) is comprised of an ionomer or ionomer blend. [Halkowski Decl., Ex. A, Col. 5:8-13; U.S. Patent No. 6,506,130, Cols. 5:29-33; 6:31-45.]

Finally, these similarities also resonate throughout the claims. For example, Claim 1 of the '831 patent and Claim 1 of the '130 patent includes limitations for a golf ball comprising a core, an inner cover layer formed over the core having a Shore D hardness of at least 65 (60 in the '130 patent), and an outer cover layer formed over the inner cover layer having a Shore D hardness of no more than 50 (64 in the '130 patent). [*See* Halkowski Decl., Ex. A, Claim 1, Col. 43:17-34; U.S. Patent No. 6,506,130, Claim 1. Cols. 21:60-22:5.] Accordingly, contrary to Acushnet's unsupported statements, the '831 patent is closely related to the patents asserted in this case.

### 3.    Acushnet's Own Discovery Requests Contradict Its Current Position that the '831 Patent is Unrelated to this Case.

The crux of Acushnet's opposition is its argument that the '831 patent is irrelevant to the present litigation because it is not one of the asserted patents, and therefore Dr. Felker's knowledge of privileged communications regarding the '831 patent

can be overlooked.  But in discovery in this case – when Acushnet requested documents

from Callaway Golf and before the present issue arose – Acushnet took the opposite

position, defining the term "Related Patents" in its discovery requests to include all

patents that claim priority through the '510 application, which includes the '831 patent:

> "Related Patents" shall mean all issued United States
> patents claiming priority under one or more sections of
> Title 35 of the United States Code to United States Patent
> Application Serial No. 08/070,510 filed on June 1, 1993
> and titled "Improved Multi-Layer Golf Ball" …

[Declaration of Thomas L. Halkowski In Support Of Callaway Golf's Reply

("Halkowski Reply Decl."), Ex. 1.]

Acushnet then went on to request that Callaway Golf produce all documents

relating to the '831 patent and all other Related Patents:

> Acushnet's Request for Production No. 3:  All documents
> referring, relating or constituting any portion of any File
> History of any patent application claiming priority under
> the United States Patent Act to the '510 Patent Application
> or any patent application shown in the Chart appended as
> Exhibit A to this set of Requests for Production.

[*Id.*]

Acushnet even requested that Callaway Golf produce all documents relating to

any prior art search relating to the '831 patent and all other Related Patents:

> Acushnet's Request for Production No. 10:  All Documents
> or Things referring or relating to any prior art search
> conducted by or on behalf of Callaway or Spaulding
> referring to any of the Patents-in-Suit or any Related
> Patents or Related Patent Applications.

[*Id.*]

Finally, Acushnet went so far as to request that Callaway Golf produce *all*

*documents relating to any investigations or opinions relating to the '831 patent* and all

other Related Patents:

> Acushnet's Request for Production No. 20:  All Documents
> and Things that comprise, refer or relate to any searches,
> investigations, opinions or evaluations as to the novelty,
> operability, patentability, validity, enforceability, claim

4

> construction, scope or value of the Patents-in-Suit, or any
> Related Patents or Related Patent Applications.

[*Id.*] The information Acushnet requested in discovery is the very same information that Acushnet now argues is irrelevant. Presumably, when Acushnet issued its discovery requests to Callaway Golf, it believed that the '831 patent was related to this litigation. It should not be heard to argue the opposite now.

**4.      The Analysis of the '831 Patent – Whether Related to Non-Infringement or Invalidity – Is Relevant to Issues in this Case.**

Contrary to Acushnet's argument, Dr. Felker's knowledge of the '831 patent analysis is related to this litigation regardless of whether that analysis concerned infringement or validity. First, any examination of whether Callaway Golf's Rule 35 golf ball infringed the '831 patent would also be relevant to the issue of whether Acushnet's Pro V1 golf ball – which has a soft outer cover and a hard inner cover, just like Callaway Golf's Rule 35 ball – infringes the asserted patents. Similarly, any consideration of whether the '831 patent is valid in light of prior art – any prior art – is intertwined with the issue of whether the asserted patents are valid in light of the prior art. Either way, Dr. Felker's work in this case would be influenced, whether intentionally or not, by his previous exposure to Callaway Golf's work product and privileged communications.

Acushnet concedes (at 14) that Dr. Felker's exposure to the analysis of the '831 patent would be relevant to this case if that analysis involved the same prior art Acushnet has asserted against the patents-in-suit. By stopping there, however, Acushnet ignores that any patent analysis, whether for purposes of infringement or validity, involves an evaluation of the scope of the claims, an interpretation of the limitations in light of the specification and drawings, and an analysis of the prosecution history. Because he was involved in that analytical process for the '831 patent for Callaway Golf, Dr. Felker

5

cannot engage in the same process regarding the asserted patents without relying, consciously or not, on his knowledge of Callaway Golf's privileged information.[2]

> **5.     Callaway Golf Has Not Waived Any Privilege Associated with the Opinion Letter Related To the '831 Patent.**

As a last ditch effort, Acushnet asserts that Callaway Golf may have waived the privilege over the '831 analysis by showing the opinion to Dr. Felker again after he left Callaway Golf's employ and had become a fact witness and non-testifying consultant for the *Maxfli* litigation. Acushnet's argument is based on a misstatement of the case law. The *Peralta* case, upon which Acushnet relies, clearly holds that Callaway Golf has *not* waived any privilege.

> **a.     Under *Peralta*, All Communications Between Callaway Golf's Counsel and Dr. Felker Regarding the '831 Patent Remain Privileged.**

The Supreme Court has held that attorneys' conversations with corporate employees are covered by the attorney-client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981). Although in *Upjohn* the majority discussed the privilege only as it applies to existing corporate employees, Chief Justice Burger's concurrence outlined his view that the privilege extends to cover former employees, as well. *Id.* at 403 (Burger, C.J. concurring). Following *Upjohn*, the Ninth Circuit extended the attorney-client privilege specifically to cover certain communications between corporate counsel and **former employees**. *See In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981). Acushnet's opposition is not based on *Upjohn* or *In re Petroleum Products*, however. Instead, it focuses on *Peralta v. Cedant Corp.*, 190 F.R.D. 38 (D. Conn. 1999).

---

[2]  Acushnet's reference to letters between Callaway Golf and Spaulding/Top-Flite regarding one of the asserted patents is nothing but an attempt to divert attention from the issue at hand. Those letters were exchanged pursuant to Rule 408 of the Federal Rule of Evidence, which prevents their use in litigation on the merits of this dispute. Setting Rule 408 aside, in no way do the letters provide Acushnet an excuse to now access Callaway Golf's privileged analysis through Dr. Felker.

In *Peralta*, the plaintiff in an employment discrimination suit subpoenaed plaintiff's former supervisor at the defendant corporation, who also was no longer employed by the defendant corporation. During the former supervisor's deposition, plaintiff's counsel specifically asked questions about her communications with defendant corporation's counsel in preparing for the deposition and at the breaks during the course of the deposition. Defendant corporation's counsel objected to the questions, asserting the attorney-client privilege. Plaintiff subsequently filed a motion challenging defendant corporation's privilege assertions. After a lengthy analysis, the *Peralta* court held that any privileged information that the former supervisor "obtained [] while an employee of [the defendant corporation], including any information conveyed by counsel during that period, remains privileged upon the termination of [the] employment." *Id.* at 41 (emphasis added). Moreover, any conversations between corporate counsel and the former supervisor that related to corporate counsel learning the facts related to the underlying cause of action also were found to be privileged, **regardless of when they occurred**. *Id.* The only communications the *Peralta* court found not to be covered by the privilege were those conversations that dealt with the strategy of how the former supervisor should answer questions during her deposition in the case, and questions related to the conversations between corporate counsel and the former supervisor at the breaks during the course of the deposition. *Id.*; *see also Surles v. Air France*, 2001 WL 815522 *6 (S.D.N.Y. 2001) ("The vast majority of federal cases hold that the communications between company counsel and former company employees are protected by the attorney-client privilege if they are focused on exploring what the former employee knows as a result of his former employment about the circumstances giving rise to the lawsuit"); *Wade Williams Distribution, Inc. v. American Broadcasting Co.*, 2004 WL 1487702 *1 (S.D.N.Y. 2004) (citing *Peralta* for the proposition that "any privileged information obtained by the witness while an employee ..., including any information conveyed by counsel during that period, remains privileged upon the

termination of the witness' employment.  But if counsel informed the witness of facts developed during the litigation, such as testimony of other witnesses, of which the witness **would not have had prior or independent personal knowledge**, such communications would not be privileged." (citations omitted; emphasis added)).

Here, Callaway Golf did not waive the privilege by showing Dr. Felker, in the *Maxfli* case, documents and analysis regarding the '831 patent, because he already had seen that information during his work for Callaway Golf.  As established above, Dr. Felker received a copy of the opinion regarding the '831 patent while he was Vice President of Callaway Golf Ball.  Dr. Felker's confidentiality obligations to Callaway Golf extend into perpetuity.  Thus, Dr. Felker's communications with Callaway Golf's counsel regarding the '831 patent opinion remained privileged even after Dr. Felker left Callaway Golf.  *See Peralta*, 190 F.R.D. at 41.  When Dr. Felker subsequently reviewed the '831 patent opinion while serving as a fact witness and a non-testifying consultant during the *Maxfli* case, he was not exposed to any "new" information.  Because he had "prior or independent personal knowledge" regarding the '831 patent opinion, his subsequent review of that opinion did not serve as a waiver.[3]  *Id.*

> **b.    The '831 Patent Opinion Is Also Work Product, Therefore Showing It to Dr. Felker During the *Maxfli* Litigation Does Not Constitute Waiver of the Privilege.**

In addition to the attorney-client protections affirmed by *Peralta*, information concerning the '831 patent opinion is also protected by the work product immunity.  The work product doctrine is distinct from, and in a significant sense broader than, the attorney client privilege.  *See BASF Aktiengesellschaft v. Reilly Industries, Inc.*, 224

---

[3]  During the *Maxfli* case, Dr. Felker was compensated as a non-testifying consultant at the rate of $275 per hour.  This work, however, in no way eliminates the four confidentiality agreements that Dr. Felker had previously signed that protect Callaway Golf confidential and privileged information.  These agreements plainly support Callaway Golf's understanding that its prior communications with Dr. Felker were protected by a continuing attorney-client privilege.

F.R.D. 438, 440-41 (S.D. In. 2004). The work product doctrine exists to protect the work of an attorney from encroachment by opposing counsel. *Id.* To claim protection under the doctrine, materials must have been prepared in anticipation of litigation. *Id.*

The work product doctrine can be waived. However, disclosure of work product to third parties does not waive work product immunity unless it substantially increases the opportunities for adversaries to obtain the information. *Id.*; *Peralta*, 190 F.R.D. at 42 ("disclosure of work product information to third persons does not waive work product immunity."). "Accordingly, waiver would not occur if disclosure of otherwise protected work product was made to a third party with common legal interest *or* would not otherwise substantially increase the ability of an adversary to gain the information." *BASF*, 224 F.R.D. at 442 (italics original).

Here, when Callaway Golf allowed Dr. Felker to review the opinion regarding the '831 patent – an opinion he had first received as an employee of Callaway Golf in anticipation of potential litigation – Callaway Golf did not substantially increase the ability of an adversary to gain the information. At the time, Dr. Felker was acting as a non-testifying consultant to Callaway Golf, and was under a running confidentiality obligation to Callaway Golf. Had opposing counsel in the *Maxfli* case asked any questions related to the '831 patent opinion, Callaway Golf's counsel would have properly raised privilege objections, just as Callaway Golf is asserting here. Moreover, at the time of the *Maxfli* case, this suit had not yet been initiated, nor had the parties even entered mediation, nor had Acushnet retained Dr. Felker to act as a consulting expert against Callaway Golf. Accordingly, there was no substantial risk that Acushnet, or any other adversary for that matter, would obtain the information contained in the '831 patent opinion.

Acushnet's waiver argument, thus, lacks any basis in fact or applicable law. Simply put, Callaway Golf has done nothing to waive the privilege and work product protections which cover the '831 patent opinion.

**B.      Dr. Felker's Access to Other Privileged Information Regarding Golf Ball Patents Also Necessitates Disqualification.**

As discussed in Callaway Golf's opening brief, in addition to the analysis of the '831 patent, Dr. Felker also received ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ regarding golf ball patents and had hundreds of meetings with Callaway Golf's in-house and outside counsel to develop Callaway Golf's strategy for navigating the patent landscape.

The privileged information Dr. Felker received – which related to Callaway Golf's release of its Rule 35 ball – is also relevant to this case. Callaway Golf's Rule 35 ball is very similar to Acushnet's accused ProV1 golf balls. They are both multi-layer premium golf balls with a soft outer cover and a hard inner cover. In discussing hundreds of golf ball patents with Callaway Golf's attorneys to consider their relevance to the Rule 35 golf ball, Dr. Felker gained an intimate understanding of Callaway Golf's attorneys' legal opinions regarding all of those patents. Considering the level of interaction Dr. Felker had with Callaway Golf's attorneys – literally hundreds of meetings – Dr. Felker has likely been exposed to Callaway Golf's legal analysis regarding any patent that Acushnet may assert as prior art in this case. Dr. Felker cannot now be allowed to turn around and use that knowledge *against* Callaway Golf.

**C.      Dr. Felker's Role in Developing the Rule 35 Ball Is Directly Relevant to the Issues in This Case.**

Dr. Felker's knowledge of privileged Callaway Golf information is more than sufficient to preclude him from serving as an expert against Callaway Golf. Yet, Dr. Felker also possesses substantial non-privileged, confidential information of Callaway Golf relating to the technical development of the Rule 35, the CTU 30, and the HX golf balls. This additional work further supports a finding that Dr. Felker should be precluded from now acting as an expert against Callaway Golf.

Acushnet's opposition attempts to trivialize the relevance in this case of the development and sale of the Rule 35, the CTU 30 and the HX golf balls. Contrary to Acushnet's implication, Callaway Golf anticipates that the Rule 35, the CTU, and the HX



golf balls will be central to the damages analysis in this case. Those three models of golf balls will support Callaway Golf's claim for lost profits and lost market share in this case. Moreover, Dr. Felker was not merely a technician working on the low levels of the Rule 35 project; he was Vice President of Research and Development. As such, he should not be allowed to consult with counsel opposite Callaway Golf in a case like this, where he was intimately and extensively involved with underlying confidential facts.

**D.     The Relevant Policy Considerations Clearly Favor Dr. Felker's Disqualification as Acushnet's Expert in this Case.**

As stated in Callaway Golf's opening brief, the Court may also look to the relevant policy considerations in determining whether to disqualify Dr. Felker. The Court must balance the policy directed at avoiding conflicts of interests and the overall integrity of the judicial process against allowing experts to pursue their professional calling and ensuring that opposing parties have access to qualified experts. *See Koch Refining, Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1182 (5th Cir. 1996). On all counts, the analysis favors disqualifying Dr. Felker.

There is a clear conflict of interest in allowing Dr. Felker to act as Acushnet's expert or consultant in this suit. Dr. Felker was Callaway Golf Ball's Vice President, he signed no fewer than four confidentiality provisions, and he received substantial amounts of privileged information that is directly relevant to this case. If Dr. Felker is permitted to serve as an expert or consultant for Acushnet, it would undermine not only Callaway Golf's privileged information, but also the integrity of the judicial process. The attorney-client privilege is a central tenet of our judicial system. If Dr. Felker is allowed to consult for Acushnet in this case, it would call into question whether a company's privileged communications with its employees – its officers, no less – are truly safe, or whether the company is subject to the risk that a competitor may later hire those employees as litigation consultants to gain access to the company's privileged information.

11

In its opposition, Acushnet argues that Dr. Felker should not be disqualified because: (1) Dr. Felker's right to work as a consultant would be impeded; (2) Acushnet should be permitted to take advantage of the economies of scale in using Dr. Felker as an expert in this litigation and in its pending suit against Bridgestone; and (3) there are few qualified experts that Acushnet could retain.

First, Callaway Golf is not seeking to restrain Dr. Felker from serving as an expert for Acushnet in the Bridgestone litigation or any other case except this one where he would be working directly against Callaway Golf. Dr. Felker will still be able to make a living through his executive search firm and as an expert consultant, and he may even continue as an expert consultant for Acushnet in other matters. Thus, precluding Dr. Felker from acting as an expert consultant directly adverse to Callaway Golf would result in a relatively minor limitation on Dr. Felker.

Acushnet's argument regarding economies of scale is a trivial consideration, particularly given the fundamental concerns regarding Acushnet's potential exposure to Callaway Golf's privileged information should Dr. Felker be allowed to consult for Acushnet. Acushnet complains that it has          invested in Dr. Felker, between the prior *Nitro* and *Bridgestone* cases, and that it would be unfair for Acushnet to have to start from scratch with a new expert. To put Acushnet's alleged "burden" into perspective, consider that, from 1996 to 2004, Callaway Golf paid Dr. Felker, as an employee and consultant,          [Declaration of Michael J. Rider In Support of Callaway Golf's Reply, ¶ 4.] If anyone has a right to complain about sunk costs, it is Callaway Golf.

Acushnet's argument boils down to a complaint that it hoped to get a "two-for-one" deal by using Dr. Felker in both this case and the co-pending Bridgestone case. Everyone likes a bargain, but that does not give Acushnet the right to take advantage of Callaway Golf's privileged information. Moreover, at the time Acushnet hired Dr. Felker for the Bridgestone case –



Accordingly, when Acushnet hired Dr. Felker, knowing full well his employment and consulting history with Callaway Golf, they could not have had a reasonable expectation that they could also use him for this case.

Finally, Acushnet's unsupported argument that there are a limited number of qualified experts that it could retain in this case borders on the ridiculous. There are a substantial number of experts who are qualified but who do not have Dr. Felker's exposure to Callaway Golf's privileged information. Moreover, given the Court's current scheduling order in this case, and the fact that Callaway Golf raised this issue immediately after Acushnet disclosed Dr. Felker, Acushnet had, and still has, plenty of time to engage another expert before expert reports are due.[4]

Accordingly, the relevant policy considerations strongly favor preventing Dr. Felker from serving as an expert or consultant for Acushnet in this case.

**III.    CONCLUSION**

Callaway Golf has met its burden of showing that: (1) Callaway Golf had a reasonable expectation of confidentiality with regard to the information shared over the years with Dr. Felker; and (2) Dr. Felker received privileged information relevant to this litigation. Moreover, Callaway Golf has also shown that the relevant policy considerations favor preventing Dr. Felker from serving as a consultant or expert for Acushnet in this litigation. Accordingly, Callaway Golf respectfully requests that the

---

[4] Despite any arguments to the contrary by Acushnet, if Dr. Felker is disqualified, no need exists for any extension of the current schedule. Callaway Golf objected to Acushnet's retention of Dr. Felker in this case on December 28, 2006, just over a week after Acushnet disclosed Dr. Felker. *See* Halkowski Decl., Ex. C. Acushnet had, and still has, ample opportunity to secure the services of an alternate expert and should not be permitted to delay the resolution of this litigation by having waited until mid-February 2007 to start any such search.

13


REDACTED

Court grant its motion and disqualify Dr. Felker as Acushnet's expert or consultant in this case.

Dated:  February 7, 2007                    FISH & RICHARDSON P.C.

                                            By:  /s/ *Thomas L. Halkowski*
                                                 Thomas L. Halkowski (#4099)
                                                 919 N. Market Street, Suite 1100
                                                 P.O. Box 1114
                                                 Wilmington, DE 19899-1114
                                                 Tel:  (302) 652-5070
                                                 Fax:  (302) 652-0607

                                                 Frank E. Scherkenbach
                                                 225 Franklin Street
                                                 Boston, MA 02110-2804
                                                 Tel:  (617) 542-5070
                                                 Fax:  (617) 542-8906

                                                 Roger A. Denning
                                                 12390 El Camino Real
                                                 San Diego, CA 92130
                                                 Tel:  (858) 678-5070
                                                 Fax:  (858) 678-5099

                                                 Attorneys for Plaintiff
                                                 CALLAWAY GOLF COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2007, I electronically filed the **PLAINTIFF CALLAWAY GOLF COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY DEFENDANT ACUSHNET COMPANY'S EXPERT DAVID FELKER** with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel.  In addition, the filing will also be sent via hand delivery:

Richard L. Horwitz                      Attorneys for Defendant
David E. Moore                          ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19801


I hereby certify that on February 7, 2007, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Joseph P. Lavelle                       Attorneys for Defendant
Andrew R. Sommer                        ACUSHNET COMPANY
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004



                                   /s/ Thomas L. Halkowski
                                   Thomas L. Halkowski

1