IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>          Plaintiff,<br><br>   v.<br><br>ACUSHNET COMPANY,<br><br>          Defendant. | C. A. No. 06-91 (SLR) |

**PLAINTIFF CALLAWAY GOLF COMPANY'S
NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
TO ACUSHNET COMPANY**

**TO DEFENDANT ACUSHNET COMPANY AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, plaintiff Callaway Golf Company ("Callaway Golf") will take the deposition of Acushnet Company ("Acushnet") at a mutually agreed upon location, commencing at 9:30 a.m. on April 4, 2007, or at another time agreed upon by the parties, or ordered by the Court. The deposition will continue from day to day thereafter until complete. The deposition will take place upon oral examination pursuant to the Federal Rules of Civil Procedure before an officer duly authorized by law to administer oaths and record testimony. Some or all of the deposition testimony may be recorded stenographically and may be recorded by videotape. Some or all of the deposition testimony may involve real-time computer connection between the deposition taker and stenographer using software such as "LiveNote."

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Acushnet is obligated to designate one or more of its officers, directors, or managing agents, and/or one or more other persons who consent to testify on its behalf concerning the matters set forth in Attachment A. Acushnet is requested to set forth, for each person designated, the matters on which the person will testify.

Dated: March 14, 2007　　　　　FISH & RICHARDSON P.C.

　　　　　　　　　　　　　　　By: */s/ Thomas L. Halkowski*
　　　　　　　　　　　　　　　　　Thomas L. Halkowski (#4099)
　　　　　　　　　　　　　　　　　919 N. Market Street, Suite 1100
　　　　　　　　　　　　　　　　　P.O. Box 1114
　　　　　　　　　　　　　　　　　Wilmington, DE 19899-1114
　　　　　　　　　　　　　　　　　Tel: (302) 652-5070
　　　　　　　　　　　　　　　　　Fax: (302) 652-0607

　　　　　　　　　　　　　　　　　Frank E. Scherkenbach
　　　　　　　　　　　　　　　　　225 Franklin Street
　　　　　　　　　　　　　　　　　Boston, MA 02110-2804
　　　　　　　　　　　　　　　　　Tel: (617) 542-5070
　　　　　　　　　　　　　　　　　Fax: (617) 542-8906

　　　　　　　　　　　　　　　　　David S. Shuman
　　　　　　　　　　　　　　　　　12290 El Camino Real
　　　　　　　　　　　　　　　　　San Diego, CA 92130
　　　　　　　　　　　　　　　　　Tel: (858) 678-5070
　　　　　　　　　　　　　　　　　Fax: (858) 678-5099

　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　CALLAWAY GOLF COMPANY

AcushnetNOD.doc

# ATTACHMENT A

## DEFINITIONS

As used in these Requests, the following terms have the meanings indicated:

(a) "Callaway Golf" means Callaway Golf Company, including its officers, directors, employees, agents, and attorneys.

(b) "Top-Flite Golf" means Top-Flite Golf Company, including its officers, directors, employees, agents, and attorneys.

(c) "Acushnet," "Defendant," "you," or "your" means Acushnet Company, including its past and present officers, directors, employees, consultants, agents, and attorneys and others acting or purporting to act on its behalf, and including their predecessors, subsidiaries, parents, and affiliates.

(d) The phrase the "'293 patent" means U.S. Patent No. 6,210,293.

(e) The phrase the "'156 patent" means U.S. Patent No. 6,503,156.

(f) The phrase the "'130 patent" means U.S. Patent No. 6,506,130.

(g) The phrase the "'873 patent" means U.S. Patent No. 6,595,873.

(h) The phrase "Patents-in-Suit" means the '293, '156, '130, and '873 Patents.

(i) The phrase "Hebert Patents" means U.S. Patent No. 5,885,172, U.S. Patent No. 6,132,324, and any genealogically related patents.

(j) The word "Document" is used herein in its broadest sense to include everything that is contemplated by Rule 26 and Rule 34 of the Federal Rules of Civil Procedure, including Documents stored in hard copy or electronic form. Electronic Documents include electronic mail and Documents stored on any media accessible by electronic means. A comment or notation appearing on any "Document" and not a part of the original text is to be considered a separate "Document."

(k) The term "Accused Products" means all versions and/or variants of the "Pro V1" golf ball, including, but not limited to, all versions and variants of the Pro V1, Pro V1 392, ◄ Pro V1 • 392 ►, ◄•Pro V1 392•►, ◄ Pro V1-392 ►, Pro V1★, ◄ Pro

V1★ 392 ▶, Pro V1x, ◀•Pro V1x 332•▶, ◀ Pro V1x-332 ▶, ◀ – Pro V1 – ▶, ◀ – Pro V1x – ▶, and/or any other Pro V1 variants or versions in development.

      (l)    "Thing" means any tangible object other than a Document.

      (m)    "Person" or "Persons" includes not only natural individuals, but also, without limitation, firms, partnerships, associations, corporations, and other legal entities, and divisions, departments, or other units thereof.

      (n)    "Including" shall mean "including but not limited to."

      (o)    The terms "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the individual request more inclusive.

      (p)    The singular and masculine form of any noun or pronoun shall embrace and be read and applied as embracing the plural, the feminine, and the neuter, except where circumstance clearly make it inappropriate.

      (q)    The terms "refer," "referring," "relate," or "relating" as used herein include, but are not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing, evidencing, identifying, concerning, mentioning, in connection with, pertaining to, respecting, regarding, responding to, or in any way factually or logically relevant to the matter described in the request.

## TOPICS

1. The process(es) followed by Defendant in designing, specifying, developing, implementing, testing, maintaining and updating the Accused Products.

2. The design and development of the Accused Products, including layer thicknesses; materials used; and those materials' physical properties, alone and in combination with each other.

3. The chemical composition and physical properties of the inner and outer cover layers of the Accused Products.

4. The manufacturing guidelines, manuals, or specifications for the Accused Products.

5. Testing procedures and results concerning the Accused Products and the inner and outer cover layers thereof before, during and after manufacture, including an identification of what kinds of tests are performed by Acushnet or on Acushnet's behalf; results of Shore D hardness testing; results of flex modulus testing; and analysis of chemical components.

6. Identification of all existing and planned future golf ball products of Defendant having multiple layers over a solid core.

7. All facts and circumstances surrounding Acushnet's decisions to (1) discontinue the manufacture of golf balls with wound cores; (2) transition to multi-layer golf balls with solid cores; and (3) launch the first Pro V1 product.

8. Any comparisons, including chemical and physical testing, done by, analyzed by, or reviewed by Acushnet concerning the Accused Products and any other products, including other solid core multi-layer golf balls and wound golf balls.

9. Any study, comparison, evaluation, opinion or testing regarding any solid core multi-layer golf balls, including the Callaway Golf Rule 35 golf ball.

10. Any analysis, belief, or opinion, including opinions of counsel, you have received regarding the validity, enforceability and/or infringement by you or any other party of the Patents-in-Suit.

11. Identification of persons responsible for the design, specification, development, implementation or testing of the Accused Products, and the specific responsibilities of each such person in that regard.

12. Any analysis, belief or opinion as to the value of any intellectual property related to multi-layer solid core golf balls including the Patents-in-Suit and the Hebert Patents.

13. Your knowledge of the Patents-in-Suit, including when and how you first learned about each of the Patents-in-Suit.

14. The design, specification, development, implementation and testing of Acushnet products that embody any claims of either of the Hebert Patents.

15. Any analysis, belief, or opinion regarding the validity, enforceability and/or infringement by any party of either of the Hebert Patents, including statements made by you to the U.S. Patent and Trademark Office during prosecution of the Hebert Patents.

16. Advertising and marketing efforts for the Accused Products, including the identities of all individuals responsible for advertising and marketing the Accused Products and their responsibilities.

17. The identities of all professional golfers who have at any time endorsed or been under contract to endorse any of the Accused Products.

18. Any analysis, discussion or decision on the part of Acushnet to enter into a license for technology embodied in the Accused Products, including any of the terms and value of any such license.

19. All communications between you and any third party, including but not limited to, third party advertising agencies, media outlets, professional golfers and/or third party material suppliers, regarding the Accused Products.

20. The revenue, income, and profits to Acushnet realized from the sale and/or licensing of the Accused Products worldwide from 2000 to the present, including, but not limited to, on a monthly, quarterly, and/or yearly basis, by product and date: (a) the units

sold and/or licensed; (b) the average sale and/or license price (billed); (c) the gross revenue generated; (d) the gross profit margin; and (e) the net profit margin.

21. The costs associated with the manufacturing, sale and/or licensing of the Accused Products, including without limitation, on a monthly, quarterly, and/or yearly basis, by product and date: (a) the costs of goods sold and/or licenses and (b) the average costs of goods sold and/or licensed.

22. Licensing of any patents covering the Accused Products or other multi-layer premium golf balls.

23. Identification of golf balls that compete or have competed with the Accused Products from 2000 to the present, i.e. golf balls in the premium golf ball market.

24. Communications or statements regarding any impact that the Accused Products and/or other multi-layer premium golf balls have had on the game of golf, including golf courses.

25. Praise for the Accused Products and/or other multi-layer premium golf balls.

26. All efforts and the results of such efforts by Acushnet to license golf ball patents, including the Hebert Patents, that cover any element of the Accused Products.

27. All discussions and/or considerations by Acushnet to license golf ball related patents that are owned by others and that cover multi-layer constructions.

28. Acushnet's corporate decisions, if any, arising from the consideration, evaluation, opinions and analysis of the Patents-in-Suit and the Accused Products.

29. Acushnet's manufacturing trials for the Accused Products, including documentation of scrap materials resulting from the trials.

30. Acushnet's communications regarding and efforts to report an appropriate reserve on its financial statements, including its balances sheets, pursuant to Financial Accounting Standard No. 5 ("FAS 5").

# CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2007 2007, I electronically filed with the Clerk of Court PLAINTIFF CALLAWAY GOLF COMPANY'S FIRST NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the filing will also be sent via hand delivery:

**BY EMAIL AND BY HAND**
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899

Attorneys for Defendant
ACUSHNET COMPANY

**BY PERSONAL SERVICE**

I hereby certify that on March 14, 2007, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

**BY EMAIL AND U.S. MAIL**
Alan M. Grimaldi, Esq.
Joseph P. Lavelle
Brian Rosenthal
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004

Attorneys for Defendant
ACUSHNET COMPANY

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski

AcushnetNOD.doc