IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | ) |
| | ) C.A. No. 06-91 (SLR) |
| Plaintiff, | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| ACUSHNET COMPANY, | ) **PUBLIC VERSION** |
| | ) |
| Defendant. | ) |

**ACUSHNET'S NOTICE OF DEPOSITION OF CALLAWAY GOLF
PURSUANT TO RULE 30(b)(6)**

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

Dated: April 2, 2007
Public Version Dated: April 12, 2007

789019 / 30030

PLEASE TAKE NOTICE that Defendant Acushnet Company ("Acushnet") will take the deposition upon oral examination of Plaintiff Callaway Golf Company ("Callaway") pursuant to Federal Rule of Civil Procedure 30(b)(6), before an authorized court reporter, commencing at 9:00 A.M. on April 10, 2007 at the offices of Howrey LLP, 1299 Pennsylvania Ave., N.W., Washington, D.C. 20004, or at such other time and place as agreed to by the parties. The deposition will continue from day to day until completed, shall be transcribed, and may be videotaped. You are invited to attend and cross-examine the witness.

In accordance with Rule 30(b)(6), Callaway shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf concerning the matters set forth in Attachment A hereto.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: April 2, 2007
Public Version Dated: April 12, 2007

789019 / 30030

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

## ATTACHMENT A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Notice of Deposition is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## DEFINITIONS

The Definitions set forth in Defendant's First Set of Interrogatories to Plaintiff are hereby incorporated by reference.

1. "Callaway" means Callaway Golf Company, and any parent subsidiary, partner (including general and limited partners) member and/or affiliated entities, past or present, of Callaway, and any person or entity, past or present, acting on behalf of Callaway, including each of its present officers, executives, general partners, limited partners, directors, employees, attorneys, agent and/or representatives. The term "Callaway" shall include all predecessors in interest to all or any portion of its golf ball-related business, including, without limitation, the Top-Flite Golf Company.

2. "Spalding" means Spalding Sports Worldwide, Inc. and any parent, subsidiary, partner (including general and limited partners) member and/or affiliated entities, past or present of Spalding, and any person or entity, past or present, acting on behalf of Spalding, including each of its present and former officers, executives, general partners, limited partners, directors, employees, attorneys agents and/or representatives. "Spalding" shall include all predecessors and successors in interests to all or any portion of its golf ball-related business, including, without limitation, the Top-Flite Golf Company.

3. "Covered Product" means any product manufactured by Callaway Golf Company or Spalding, or any of its subsidiary or predecessor companies that is covered by any claim of any of the Patents-in-Suit, including but not limited to the Callaway HX Tour, HX Tour 56, HX

Hot, HX Pearl, CTU 30 Blue, CTU 30 Red, HX Blue, HX Red, Rule 35 Firmfeel, and Rule 35 Softfeel golfballs as well as the Top-Flite Tour Premier, Top-Flite Tour Ace, Top-Flite TL-Tour, Ben Hogan Apex Tour Black, Ben Hogan Apex Tour Red, Ben Hogan Hawk, and Ben Hogan Tour Deep golf balls.

## MATTERS ON WHICH EXAMINATION IS REQUESTED

1. Callaway's document retention policies.

2. Callaway's efforts to gather and produce documents and information in response to Acushnet's discovery requests, including any search for responsive electronic documents.

3. Callaway's preservation or destruction of documents relating to this lawsuit.

4. The location of documents relating to this lawsuit.

5. The custodians of documents for documents requested in Acushnet's requests for production.

6. An identification of Callaway's parents, subsidiaries, divisions, and other operations, the relationship between such entities, and Callaway's ability to gather documents from its parents, subsidiaries, divisions, and any other operations.

7. Communications between Callaway and any third party concerning Acushnet, the Patents-in-Suit, or this litigation.

8. All communications between Callaway and Spalding concerning the Patents-in-Suit.





13. The Shore D hardness and Flexural Modulus of Estane® 58134 Polyurethane.

14. The Shore D hardness and Flexural Modulus of 1605 Surlyn® (also known as 8940 Surlyn®).

15. The methacrylic acid content of 1605 Surlyn® (also known as 8940 Surlyn®).

16. Annual projected sales and profits for each Covered Product for each year that such projections were made.

17. The product plan for each Covered Product.

18. Market research conducted or commissioned by Callaway or Spalding concerning any of the Covered Products, any competing golf ball products manufactured by any person and/or any other golf ball products manufactured by Acushnet.

19. All comparisons made by Callaway or Spalding between Covered Products and any other product, including the Accused Products made by Acushnet.

20. The structure and composition of each version of each Covered Product, including without limitation the composition, Shore D hardness, flexural modulus, and thickness of each cover layer of each Covered product and each material or blend of materials used in each such layer.

21. The market for each Covered Product including without limitation the identity of each of Callaway's competitors, each competing product, competitive strengths and weaknesses of each Covered Product and competing product and each Covered Product's market share.

22. The marketing of each Covered Product including pricing, promotion, and distribution strategies.

23. Advertising conducted by Callaway or on Callaway's behalf for each Covered Product.

24. Actual sales of each Covered Product including without limitation total sales in units and dollars and gross and net profit margins from the time each Covered Product was first sold through the most recent period for which such data is available.

25. Manufacturing costs, costs of goods sold, and standard costs for each Covered Product from the time each Covered Product was first sold through the most recent period for which such data is available including without limitation how such costs are calculated.

26. Income and profit and loss for each Callaway division or operating group responsible for manufacturing, selling and/or marketing one or more of the Covered Products on an annual and quarterly or monthly basis from the time each Covered Product was first made or sold through the most recent period for which such data is available.

27. Callaway's capacity to manufacture and sell each Product from 2001 to the present.

28. Spalding's capacity to manufacture and sell each Product from 2001 to the present.

29. Callaway's capacity to manufacture three-piece golf balls with an ionomer inner cover layer and polyurethane outer cover layer from 2001 to the present.

30. Spalding's capacity to manufacture and sell three-piece golf balls with an ionomer inner cover layer and polyurethane outer cover layer from 2001 to the present.

31. Callaway's patent licensing policies and practices.

32. Licenses or other agreements entered into by Callaway or Spalding that concern or cover any of the Covered Products or any technology incorporated in or used to manufacture the Covered Products, including any royalties received or paid by Callaway.

33. Licenses or other agreements entered into by Callaway concerning or involving patents relating to golf balls other than the Patents-in-Suit, including any royalties received or paid by Callaway.

34. Licenses or other agreements entered into by Callaway or Spalding involving the Patents-in-Suit.

35. All instances in which Callaway or Spalding has asserted, either formally or informally, one or more of the Patents-in-Suit against any other party, including the circumstances surrounding such instances and all communications or investigations related to such assertions.

36. License negotiations engaged in by Callaway or Spalding that concern golf ball related patents, but that did not result in an executed agreement.

37. Products sold by Callaway (or any other company whose financial statements are consolidated with those of Callaway) other than the Covered Products and the impact of sales of the Covered Products on sales of such other products.

38. Any communications involving Callaway that discuss the validity or enforceability of the Patents-in-Suit.

39. Callaway's valuation of Spalding prior to Callaway's acquisition of Spalding, including all factors that lead Callaway to value Spalding's intellectual property at $49 million in Callaway's 2003 annual report.

40. All valuations of the Spalding performed by anyone, including valuations of any intellectual property, including without limitation valuations performed by Oaktree Capital Management, LLC, Kroll Zolfo Cooper, McKinsey & Company, and Callaway.

41. The conception, reduction to practice, diligence up to reduction to practice and other alleged inventive activities for the subject matter of the Patents-in-Suit.

42. The preparation, filing and prosecution of the applications which resulted in the issuance of the Patents-in-Suit and the other members of the '510 patent family.

43. The reexaminations currently pending in the Patent and Trademark Office regarding the Patents-in-Suit.

44. The methods and apparatus employed by Callaway to generate, measure, calculate, and/or determine the Shore D hardness and flexural modulus of golf ball cover layers.

45. Callaway's efforts to generate, measure, calculate, and/or determine the Shore D hardness and flexural modulus of any golf ball cover layer disclosed in U.S. Patent No. 5,334,673 to Wu.

46. Callaway's efforts to generate, measure, calculate, and/or determine the Shore D hardness and flexural modulus of any cover layer of any version of the Pro V1, Pro V1x, and Pro V1★ golf balls.

47. Callaway's relationship with its domestic and foreign distributors including without limitation any agreements with those distributors, Callaway's sales to those distributors, Callaway's practices with respect to those distributors concerning pricing, payment terms, returns and credits for defective or obsolete merchandise and any benefit Callaway receives from its relationship with those distributors.

48. Callaway's patent marking policies including how it decides to mark each of its products with each patent number, and including an identification of each product that Callaway has marked with the Patents-in-Suit.

49. All opinions, investigations, or analyses of the validity, enforceability, or infringement by any party, of the Patents-in-Suit performed by Callaway or Spalding, or at Callaway's or Spalding's direction.

50. The damages Callaway contends it is entitled to by virtue of the alleged infringement of the Patents-in-Suit by Acushnet, including without limitation a) the theory or theories under which such damages are sought, whether lost profits, reasonable royalty, or otherwise; b) the methodology or methodologies by which such damages are calculated; c) all facts relevant to such theories and methodologies; d) the calculation and amount of each item of damages under such theories and methodologies.

51. If Callaway contends that it is entitled to lost profits damages, an identification of which entity (Callaway or Spalding)'s alleged lost profits Callaway contends should govern the calculation of lost profits, which specific products Callaway contends it or Spalding would have

been sold but for Acushnet's alleged infringement, and for each such product all facts supporting Callaway's claim that it is entitled to lost profits related to such products.

      52.    Callaway's responses to each of Acushnet's interrogatories including any investigation performed by Callaway for purposes of responding to Acushnet's interrogatories.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on April 12, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114

I hereby certify that on April 12, 2007, I have Electronically Mailed the documents to the following:

| | |
|---|---|
| Frank E. Scherkenbach<br>Fish & Richardson P.C.<br>225 Franklin Street<br>Boston, MA 02110-2804<br>scherkenbach@fr.com | Robert A. Denning<br>David S. Shuman<br>Fish & Richardson P.C.<br>12290 El Camino Real<br>San Diego, CA 92130<br>denning@fr.com<br>shuman@fr.com |

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030