IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ACUSHNET'S STATUS REPORT REGARDING ISSUES
RELEVANT TO THE AUGUST 1, 2007 STATUS CONFERENCE
ON ACUSHNET'S MOTION TO STAY PENDING RE-EXAMINATION**

Acushnet hereby brings to the Court's attention certain PTO developments concerning the patents-in-suit and highlights recent decisions that bear upon whether to stay this case pending the final outcome of the *inter partes* reexaminations at the PTO. Trial in this case is on-calendar for December 3, 2007, and scheduled for a two-week period. The Court has therefore set aside August 1 to revisit the stay question in advance of the parties' beginning extensive trial preparation.

### I. STATUS OF PROCEEDINGS BEFORE THE PTO

1. Before Callaway filed its complaint in this case, Acushnet, on January 7, 2006, filed requests for *inter partes* reexamination regarding all four patents-in-suit. Shortly thereafter, the PTO ordered a reexamination of these patents, finding in its order for each of them that there was "[a] substantial question of patentability." (PTO Orders Granting Reexamination of the Patents, Exhibits A-D to Acushnet's Brief in Support of Motion to Stay Litigation [D.I. 10]). Acushnet requested the Court to stay further district court litigation pending the final outcome of the PTO's *inter partes* reexaminations. [D.I. 9-10] While the Court rejected Acushnet's request, it did so without prejudice.

2. In November 2006, Acushnet moved to certify for interlocutory appeal the Court's denial of Acushnet's stay motion. [D.I. 66, 75]. Acushnet argued that an interlocutory appeal was warranted as the question of when a District Court should stay patent litigation when the patents-in-suit were the subject of a first-filed *inter partes* patent reexamination between the parties was a question of first impression, and a successful appeal resulting in a stay would materially advance the litigation because of the binding nature of a finding of invalidity by the PTO in the reexamination process. While the Court also denied this request, it again did so without prejudice, and at that time determined that, "[t]he issue of the reexamination and the timing of the ... litigation shall be addressed once again at the conclusion of discovery, at an in-person conference ... on Wednesday, August 1, 2007." [D.I. 93].

3. Today the PTO's *inter partes* reexaminations continue to proceed expeditiously, as the statute governing these reexaminations requires. *See* 35 U.S.C. § 314(c). In particular, on January 30 and February 27, 2007, the PTO issued four Office Actions by which an examiner with special expertise in golf ball art rejected every claim of each of the four patents-in-suit. In these findings, the examiner devoted more than 400 pages of analysis and found the patents-in-suit obvious on multiple grounds, and over precisely the same prior art that Acushnet asserts before this Court invalidates the patents. (*See* Exhibits A-D hereto). In responses to these detailed Office Actions, Callaway has submitted papers urging the PTO to reconsider its initial judgments. And, on May 29 and 30, 2007, Acushnet filed its comments to the PTO's invalidity determinations, urging the PTO to uphold its initial judgments of invalidity as to each of the patents. The PTO is thus now reviewing the examiner's initial determinations. Based on the speed with which the PTO has acted already in this matter, a time period of approximately four months seems likely for the PTO to issue a final Office Action. Such Action would therefore be expected in October 2007, roughly four months after Acushnet filed its comments.

4. When the Court last considered a stay, the PTO of course had only granted reexamination of all four patents-in-suit, finding "a substantial question of patentability" for all the patents. (*See* Exhibits A-D, PTO Orders Granting Reexamination.) Now, however, the PTO

2

examiner has looked far more closely at the patents and determined the patents should never have issued.

## II.   STATUS OF THE LITIGATION

### A.   The litigation is ideally situated for a stay

5. As of August 1, 2007, this case is especially ripe for the issuance of a stay. Not only has a logical break point been reached in these proceedings, but the Court itself is about to embark upon a series of time and resource-consuming processes which could likely be avoided if the case were stayed until the PTO completes its investigation into the validity of the patents Callaway is asserting. In addition, many of Callaway's original claims of prejudice should a stay be granted are no longer applicable, further suggesting the appropriateness of a stay at this point.

6. Presently, fact discovery has closed, with the exception of a few depositions. In addition, large volumes of documents have been produced by both of the parties to one another. This has created a record that will be available should litigation be necessary after the PTO has completed its reexamination. Indeed, one of Callaway's premier objections to Acushnet's earlier stay request was its asserted need to develop a factual record. Such a record has been developed now.

7. Callaway has still to depose Mr. Nauman, Acushnet's General Counsel, and Mr. Lester, Acushnet's Patent Counsel. These depositions are likely to center on Callaway's claims of willful infringement. Also, Acushnet has yet to depose Mr. Greg Norman (a professional golfer), whom Callaway indicate it will call at trial. Related to this, Callaway has indicated it wishes to depose Mr. Davis Love III (also a professional golfer). Were the Court to permit such depositions, those would need to take place before trial. Callaway also seeks to depose Acushnet's Chairman and Chief Executive Officer, Mr. Uihlein, which is the subject of Callaway's pending request to the Court.

8. While much of discovery has occurred, the case is at the stage where the demands on the Court's time and further demands on the parties' time are only just beginning. A hearing on

Summary Judgment and Claim Constructions is scheduled for September 28; trial is scheduled to start on December 3 and run for two weeks. Neither party has of yet filed a summary judgment motion, or an opening Claim Construction brief; but opening briefs are due for both parties on August 6, and it is expected that both parties will file summary judgment motions. *Daubert* motions, too, have not yet been filed; those are due on September 7. Between the parties, there are a total of eight experts who may be offered at trial. In essence, the Court has not yet faced pre-trial motions from the parties, nor have the parties undertaken detailed and expensive trial preparation, which will soon need to begin, however, to prepare for the December trial, if this matter is not stayed. Finally, the Court has yet to rule on Callaway's request to take the deposition of Wally Uihlien.

9. All of these pre-trial and trial tasks for the Court become moot if the PTO upholds its invalidity finding against the patents-in-suit. Furthermore, even if the PTO alters its invalidity findings, trial preparation and pre-trial motion will very likely have to take place on different terms over those expected now. In particular, if the PTO modifies its Office Actions by amending the patent's claims, then much work done in preparation for trial, including the claim construction and summary judgment briefing work, will likely need to be redone. Also, if the claims are amended, Callaway will not be entitled to damages from Acushnet, except prospectively. *See Bloom Engineering Co., Inc. v. N. American Manuf. Co.*, 129 F.3d 1247, 1249-50 (Fed. Cir. 1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent cannot be enforced against infringing activity that occurred before issuance of the reexamination certificate.")

### B.   There is no real prejudice to Callaway in granting a stay

10. Only Callaway argues it will face any costs of a stay; yet those costs, if any, are minimal. In its earlier briefing, Callaway maintained it would be harmed by a stay as it needed to develop the factual record. Such a record has been developed. Callaway also maintained that it would be harmed by a stay because it could not recover losses sustained in that time. Now,

however, Callaway has submitted a damages report which makes clear that it in fact feels able to quantify its damages on an ongoing basis.

### III.     CASE LAW DEVELOPMENTS

11. When Acushnet filed its request for a stay of this litigation [D.I. 9], every reported court decision in which a party had requested litigation be stayed pending the results of PTO *inter partes* reexaminations resulted in such a stay being granted. Since then, courts have continued to grant such stays, recognizing the benefits to judicial economy of allowing the PTO process to run to a conclusion, as well as acknowledging the Congressional purpose behind the provision of *inter partes* review. *See Cima Labs, Inc. v. Actavis Group HF*, 2007 U.S. Dist. LEXIS 41516 at *25 (D. N.J. June 7, 2007) (granting stay of litigation where an *inter partes* reexamination had been ordered preceding the filing of the complaint, and rejecting plaintiff's claim of prejudice based on further damages suffered and possible delay, noting "a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." (*citing ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. at 1378, 1381 (N.D. Cal. 1994))); *Anascape, Ltd. v. Microsoft Corp.*, 475 F.Supp. 2d 612, 615 (E.D. Tex. 2007) (granting stay of litigation regarding patents subject to *inter partes* reexaminations, denying stay for patents subject to *ex parte* reexaminations, noting that "Courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers."); *eSoft, Inc. v. Blue Coat Systems, Inc.*, 2007 U.S. Dist. LEXIS 11261 at *15 (D. Colo. Feb. 15, 2007) (granting stay in light of *inter partes* reexamination following completion of discovery, and noting "high likelihood that the results of the PTO's reexamination would have a dramatic effect on the issues before the court, up to and including dismissal of the entire action if the patent claims are cancelled."); *Tesco Corp. v. Varco I/P, Inc.*, 2006 U.S. Dist. LEXIS 82047 (S.D. Tex. Nov. 9, 2006) (granting stay until PTO determines whether to conduct *inter partes* reexamination, inviting defendant to apply for continued stay if PTO conducts reexaminations).

In one unpublished opinion, involving an *inter partes* PTO reexamination, a court can be seen to have refused a stay to a defendant. *See Mars, Inc. v. JCM American Corp.*, 2006 U.S. Dist. LEXIS 84565 (D. N.J. Nov. 21, 2006). However, in that case the court reasoned that a stay was unlikely to provide gains in judicial economy due to a second, parallel district court case proceeding in Nevada, where a stay pending PTO *inter partes* reexamination proceedings was only requested in New Jersey. *Id.* at *17-*22.

12. As courts have continued to recognize, the PTO was established as a specialist body to rule on the validity of patents in reexamination, and Congress intended especially by its recent *inter partes* reexamination legislation that courts allow the reexamination process to reduce their workload, and allow such determinations to be made by an experienced body in the relevant art. *See eSoft, Inc.*, 2007 U.S. Dist. LEXIS 11261 at *4 ("Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation.") (*citing Canady v. Erbe Elektronedizin GmbH*, 271 F.Supp. 2d 64, 78 (D. D.C. 2002)).

IV.     CONCLUSION

For all the reasons given above, Acushnet respectfully renews its request that a stay of all proceedings be issued pending final disposition of the PTO proceedings.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: July 27, 2007

809398 / 30030

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## **CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on July 27, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on July 27, 2007, I have Electronically Mailed the document to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
shuman@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030