# EXHIBIT A
# PART 1

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ALAN M. GRIMALDI
HOWREY LLP
1299 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004

## Transmittal of Communication to Third Party Requester
### *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,123*.

PATENT NUMBER *6,595,873*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,123 | 01/17/06 | 6,595,873 | |

| EXAMINER |
|---|
| O'NEILL, M. |

DOROTHY P. WHELAN
FISH & RICHARDSON P.C.
P.O. BOX 1022
MINNEAPOLIS, MN 55440-1022

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

01/30/07

# *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

| **OFFICE ACTION IN INTER PARTES REEXAMINATION** | **Control No.** 95/000,123 | **Patent Under Reexamination** 6595873 |
| | **Examiner** Michael O'Neill | **Art Unit** 3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on _____

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response:*
      2 MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
      30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO-1449 or PTO/SB/08
3. ☐ _____

**PART II. SUMMARY OF ACTION:**

1a. ☒ Claims 1-6 are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2.  ☐ Claims _____ have been canceled.
3.  ☐ Claims _____ are confirmed. [Unamended patent claims]
4.  ☐ Claims _____ are patentable. [Amended or new claims]
5.  ☒ Claims 1-6 are rejected.
6.  ☐ Claims _____ are objected to.
7.  ☐ The drawings filed on _____        ☐ are acceptable      ☐ are not acceptable.
8.  ☐ The drawing correction request filed on _____ is:   ☐ approved.  ☐ disapproved.
9.  ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
        ☐ been received.   ☐ not been received.      ☐ been filed in Application/Control No _____.
10. ☐ Other _____

Application/Control Number: 95/000,123                                         Page 2
Art Unit: 3993

## DETAILED ACTION

This first Action on the merits is being mailed after the order granting reexamination.

### *Reexamination Procedures*

In order to ensure full consideration of any amendments, affidavits or declarations, or

other documents as evidence of patentability, such documents must be submitted in response to

this Office action. Submissions after the next Office action, which is intended to be an Action

Closing Prosecution (ACP), will be governed by 37 CFR 1.116(b) and (d), which will be strictly

enforced.

### *Statutory Basis for Grounds of Rejections - 35 USC § 102 and 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

### *Third Party Requester's Grounds of Rejections*

#### *Re. Claim 1*

**Ground #1.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

Application/Control Number: 95/000,123                                    Page 3
Art Unit: 3993

**Ground #2.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

**Ground #3.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673, (Wu).

**Ground #4.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

**Ground #5.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #6.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #7.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

### Re. Claim 2

**Ground #8.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #9.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #10.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #11.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

Application/Control Number: 95/000,123                                    Page 4
Art Unit: 3993

    **Ground #12.** The requester submits that claim 2 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,274,637.

    **Ground #13.** The requester submits that claim 2 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #14.** The requester submits that claim 2 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.


*Re. Claim 3*

    **Ground #15.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

    **Ground #16.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,274,637.

    **Ground #17.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #18.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751.

    **Ground #19.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,274,637.

    **Ground #20.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

**Ground #21.** The requester submits that claim 3 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 4*

**Ground #22.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #23.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #24.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #25.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

**Ground #26.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #27.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #28.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 5*

**Ground #29.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #30.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #31.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #32.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

**Ground #33.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #34.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #35.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 6*

**Ground #36.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #37.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #38.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

Application/Control Number: 95/000,123                                    Page 7
Art Unit: 3993

**Ground #39.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751.

**Ground #40.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,274,637.

**Ground #41.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

**Ground #42.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

### *Summary of Grounds Adopted vel non*

Proposed Grounds Adopted by the Examiner: 2-7, 9-11,16-21, 23-25, 30-35 and 37-42.

Proposed Grounds Not Adopted by the Examiner: 1, 8, 12-15, 22, 26-29 and 36.

### *Summary of the Grounds of Rejections*

Claims 1-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637).

Claims 1-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 (Nesbitt) mentioning Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637) in

view of Wu, U.S. Pat. No. 5,334,673, (Wu) as evidenced by Exhibit C.

Application/Control Number: 95/000,123                                          Page 8

Art Unit: 3993

Claims 1-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 (Nesbitt) mentioning Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637) in

view of Molitor et al., U.S. Pat. No. 4,674,751 (Molitor '751).


Claims 1, 3, 5 and 6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over

Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637

(Molitor '637).


Claims 1, 3, 5 and 6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over

Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No. 5,334,673 (Wu).


Claims 1, 3, 5 and 6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over

Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,674,751

(Molitor '751).

Application/Control Number: 95/000,123                                          Page 9

Art Unit: 3993

## Proposed Third Party Requester's Rejections

### *Issue of Inherency*

Multiple proposed rejections that the third party requester submits are based on the

inherent properties of the materials.  In order to prove the inherent properties of these materials

the requester has provided "product data sheets" for the following materials: SURLYN (Exhibit

I) and ESTANE (Exhibit J).  These "product data sheets" have publication dates later than the

critical date of the claimed inventions.  Also, the third party requester has provided other

Exhibits to prove or evidence inherency, e.g. Exhibit C (description of a golf product

performance characteristics); Exhibits G and L (patent owners admissions).

MPEP § 2124 lists exceptions to the rule that the publication date must precede the

critical data of the claimed invention: "...facts [that] include the characteristics and properties of

a material... ".  The Shore D hardness and flexural modulus are characteristics and properties of a

material.  Thus, it is appropriate to use these "product data sheets" to show such a universal fact

as the inherent properties of a known material.  Moreover, See also MPEP § 2112.01: "Where

the claimed and prior art products are identical or substantially identical in structure or

composition, or are produced by identical or substantially identical processes, a prima facie case

of either anticipation or obviousness has been established. *In re Best*, 562 F.2d 1252, 1255, 195

USPQ 430, 433 (CCPA 1977)."  And, "Products of identical chemical composition can not have

mutually exclusive properties." "A chemical composition and its properties are inseparable.

Therefore, if the prior art teaches the identical chemical structure, the properties applicant

discloses and/or claims are necessarily present. *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d

1655, 1658 (Fed. Cir. 1990)."

<u>Re. Claim 1</u>

**Proposed Third Party Requester Rejection:  Ground #1**

The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b) as being

anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

In the request on pages 14 through 18 the third party requester proposes that claim 1 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637.  The third

party requester points out that Molitor '637 is incorporated by reference into Nesbitt because

Nesbitt refers to Molitor '637.  (See Nesbitt col. 3, ll. 54-60).

This rejection is **<u>not adopted</u>**.

MPEP § 608.01(p) states that

> [m]ere reference to another application, patent, or publication is not an
> incorporation of anything therein into the application containing such reference
> for the purpose of the disclosure required by 35 U.S.C. 112, first paragraph. *In re
> de Seversky*, 474 F.2d 671, 177 USPQ 144 (CCPA 1973).  37 CFR 1.57(b)(1)
> limits a proper incorporation by reference (except as provided in 37 CFR 1.57(a))
> to instances only where the perfecting words "incorporated by reference" or the
> root of the words "incorporate" (e.g., incorporating, incorporated) and "reference"
> (e.g., referencing) appear. The requirement for specific root words will bring
> greater clarity to the record and provide a bright line test as to where something is
> being referred to is an incorporation by reference.  The Office intends to treat
> references to documents that do not meet this "bright line" test as noncompliant
> incorporations by reference and may require correction pursuant to 37 CFR
> 1.57(g). If a reference to a document does not clearly indicate an intended
> incorporation by reference, examination will proceed as if no incorporation by
> reference statement has been made and the Office will not expend resources
> trying to determine if an incorporation by reference was intended.  In addition to
> other requirements for an application, the referencing application must include an
> identification of the referenced patent, application, or publication. See 37 CFR
> 1.57(b)(2).  Particular attention should be directed to specific portions of the
> referenced document where the subject matter being incorporated may be found.

Application/Control Number: 95/000,123         Page 11

Art Unit: 3993

Thus, the reference to or the mentioning of another document does not confer an "incorporation

by reference" of material especially "essential material" as defined in 37 CFR 1.57(c) which

would be needed in this case to supply a basis for a rejection of the subject matter of this claimed

invention, i.e. a reference must provide an enabling disclosure for all of the claimed structural

features in the claim in order to anticipate the claim.

**Proposed third party requester rejection:  Ground #2**

The requester submits on pages 14-18 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al.,

U.S. Pat. No. 4,274,637, (Molitor '637).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 1 | Nesbitt (primary) with Molitor '637 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches.**" (Nesbitt, col. 3, ll. 19-23). |

Application/Control Number: 95/000,123                    Page 12

Art Unit: 3993

| said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60). <br> Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
|---|---|
| an outer cover layer disposed on said inner cover layer, | "An **outer layer**, ply, lamination or **cover** 16 ... is then **remolded onto the inner ply or layer 14** ..." (Nesbitt, col. 2, ll. 43-47). |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the **outer layer or cover** 16 of soft, low flexural modulus resin such as SURLYN type 1855, **may be in the range of 0.020 inches and 0.100 inches.**" (Nesbitt, col. 3, ll. 22-25). |
| and said outer cover layer comprising a polyurethane material, | Molitor '637: ESTANE 58133 is a polyurethane material. (Molitor, col. 18) |
| wherein said golf ball has an overall diameter of 1.680 inches or more, | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ..." (Nesbitt, col. 2: ll. 50-52). <br> "This center or core 12 and inner layer of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ..." (Nesbitt, col. 3, ll. 34-38). |
| said inner cover layer having a Shore D hardness of at least 60, | "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, ll. 36-38). <br> Sullivan '873 Patent: "Type 1605 SURLYN (now designated SURLYN 8940) ('873 patent, col. 2, ll. 46-47. |
| and said outer cover layer having a Shore D hardness of less than 64. | Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of compositions suitable for the inner cover layer 14. Of particular interest in this case are Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid.  Also, as mentioned above,

Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane

identified as ESTANE 58133. A review of the scientific literature yields that ESTANE 58133

has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU Product Data

Sheet". A Shore D hardness of 55 is within the range claimed of Shore D hardness less than 64.

Therefore, Molitor '637's teaching of using ESTANE 58133 inherently meets the claim

limitation of providing a outer cover layer of polyurethane material having a Shore hardness of

less than 64. Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN

9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness

of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as

admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

Application/Control Number: 95/000,123                                      Page 14
Art Unit: 3993

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334. Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

     This rejection of claim 1 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


**Proposed third party requester rejection: Ground #3**

     The requester submits on pages 18-20 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat.

No. 5,334,673, (Wu).

     Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

     Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations. As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 1 | Nesbitt (primary) mentioning Molitor '637 with Wu (teaching) |
|---------|-------------------------------------------------------------|

Application/Control Number: 95/000,123                                  Page 15

Art Unit: 3993

| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract, and FIGS. 1 & 2) |
|---|---|
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches.**" (Nesbitt, col. 3, ll. 19-23). |
| said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60). <br> Molitor **'637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An **outer layer**, ply, lamination or **cover** 16 ... is then **remolded onto the inner ply or layer 14 ...**" (Nesbitt, col. 2, ll. 43-47). <br> **Wu**: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66). |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The **thickness of the outer layer or cover** 16 of soft, low flexural modulus resin such as SURLYN type 1855, **may be in the range of 0.020 inches and 0.100 inches.**" (Nesbitt, col. 3, ll. 22-25). |
| and said outer cover layer comprising a polyurethane material, | Molitor **'637**: ESTANE 58133 is a polyurethane material. (Molitor, col. 18) <br> Wu: "[t]he present invention is a golf ball product made from a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents or difunctional glycols. The term "golf ball product" as used in the specification and claims means a cover, a core, a center or a one-piece golf ball. The cover of a golf ball made in accordance with the present invention has been found to have good shear resistance, cut resistance, |

Application/Control Number: 95/000,123

Art Unit: 3993

Page 16

| | durability and resiliency. **Preferably, the polyurethane composition of the present invention is used to make the cover of a golf ball.**" (Wu, col. 2, ll. 33-44). |
|---|---|
| wherein said golf ball has an overall diameter of 1.680 inches or more, | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ..." (Nesbitt, col. 2: ll. 50-52).<br>"This center or core 12 and inner layer of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ..." (Nesbitt, col. 3, ll. 34-38).<br><u>Wu</u>: "[t]he size of the mold cups is about that of a conventional golf ball mold, i.e. nominally 1.68 inches (4.25 cm) for American sized balls and nominally 1.62 inches (4.10 cm) for British sized balls." (Wu, col. 5, ll. 47-50). |
| said inner cover layer having a Shore D hardness of at least 60, | "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, ll. 36-38).<br>Sullivan '873 Patent: "Type 1605 SURLYN (now designated SURLYN 8940) ('873 patent, col. 2. ll. 46-47. |
| and said outer cover layer having a Shore D hardness of less than 64. | <u>Molitor '637</u> teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><u>Wu</u>: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, inter alia, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention. More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38). |

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular polyurethane materials for the use as an outer layer. Wu teaches that polyurethane was being used as the outer layer of golf ball *circa* 1993. Wu further teaches in col. 1:36-46 that SURLYN covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

Application/Control Number: 95/000,123                                    Page 18
Art Unit: 3993

 This rejection of claim 1 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.


**Proposed third party requester rejection:  Ground #4**

 The requester submits on pages 20-22 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al.,

U.S. Pat. No. 4,674,751, (Molitor '751).

 Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

 Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 1 | Nesbitt (primary) mentioning Molitor '637 with Molitor '751 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches.**" (Nesbitt, col. 3, ll. 19-23). |

Application/Control Number: 95/000,123

Page 19

Art Unit: 3993

| said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br>Molitor '**637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
|---|---|
| an outer cover layer disposed on said inner cover layer, | "An **outer layer**, ply, lamination or **cover** 16 ... is then **remolded** onto the inner ply or layer 14 ..." (Nesbitt, col. 2, ll. 43-47). |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The **thickness** of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, **may be in the range of 0.020 inches and 0.100 inches.**" (Nesbitt, col. 3, ll. 22-25). |
| and said outer cover layer comprising a polyurethane material, | Molitor '637: ESTANE 58133 is a polyurethane material. (Molitor, col. 18) |
| wherein said golf ball has an overall diameter of 1.680 inches or more, | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ..." (Nesbitt, col. 2: ll. 50-52).<br>"This center or core 12 and inner layer of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ..." (Nesbitt, col. 3, ll. 34-38). |
| said inner cover layer having a Shore D hardness of at least 60, | "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, ll. 36-38).<br>Sullivan '873 Patent: "Type 1605 SURLYN (now designated SURLYN 8940) ('873 patent, col. 2. ll. 46-47. |
| and said outer cover layer having a Shore D hardness of less than 64. | Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |

As shown above in the claim chart, Nesbitt mentioning Molitor '637 suggests the use of a soft outer cover layer including a polyurethane material. In an analogous golf ball, Molitor '751 teaches that:

It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core a **cover having a shore C hardness less than 85**, preferably 70-80, and most preferably 72-76. The novel **cover of the golf ball** of the invention is made of a composition comprising a blend of

> **(1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness greater than 55.**

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, **but also includes balls having a separate solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls have non-wound cores.**

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L). Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art "translates" a Shore C value to a Shore D value is by taking the known Shore hardness values with a given range, in this instance Shore C, for given materials, in this instance polyurethane golf ball covers materials, and taking corresponding measurements with a different set of Shore gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs from performing this procedure wherein the range of known Shore C values are the abscissa and the range of measured Shore D values are the ordinate. Then, said plot can be use to read

Application/Control Number: 95/000,123                                    Page 21

Art Unit: 3993

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

> As stated in the request on page 21

> It would have been obvious to one of ordinary skill in the art at the time of the
> invention to substitute the soft outer cover layer of Nesbitt and replace it with an
> outer cover layer made of the soft polyurethane material taught by Molitor '751 to
> provide a golf ball that includes "playability properties as good or better than
> balata-covered wound balls but are significantly more durable," and "have better
> wood playability properties than conventional two-piece balls, and permit
> experienced golfers to apply spin so as to fade or draw a shot" while having
> improved puttability. (Molitor '751, col. 2, ll. 61-68)

> This rejection of claim 1 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


**Proposed third party requester rejection: Ground #5**

The requester submits on pages 22-25 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of

Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests certain claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to |

Application/Control Number: 95/000,123

Page 22

Art Unit: 3993

| | |
|---|---|
| | a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) "Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, | "The **thickness of the inner layer** can be within the range of **about 0.0250 to 0.2875** inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, ll. 37-40) "The preferred dimensions are ... and **inner layer thickness of 0.037 inch...**" (Proudfit, col. 7, ll. 43-44) |
| said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6." <br><br> **TABLE 6** <br> Composition of Inner Layer of Cover <br> (Parts by Weight) <br><br> | Ionomer Type | Blend Ratio | <br> \|---\|---\| <br> \| Sodium- Surlyn 8940 \| 75% \| <br> \| Zinc- Surlyn 9910 \| 25% \| <br><br> (Proudfit, col. 8, ll. 22-30) |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| and said outer cover layer comprising a polyurethane material, | "... an **outer layer** of soft material such as balata or a **blend of balata and other elastomers.**" (Proudfit, col. 5, ll. 15-17) |
| wherein said golf ball has an overall diameter of 1.680 inches or more, | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of |

| | 1.575 inch). and an outer layer thickness of 0.0525 inch (**total ball diameter of 1.680 inch**)." (Proudfit, col. 7, ll. 43-47) |
| said inner cover layer having a Shore D hardness of at least 60, | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>See below with respect to Shore D hardness. |
| and said outer cover layer having a Shore D hardness of less than 64. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

As shown above Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and outer layer) with the layers within the range of claimed thicknesses each layer made from a material having the mechanical properties substantially similar to the claimed mechanical properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical properties of the claimed invention. However, Proudfit either incorporates by reference these mechanical and chemical properties and/or the materials used within the Proudfit golf ball inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and SURLYN 9910 would be low acid ionomer resins containing no more

than 16% by weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I,

SURLYN 8940 has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see

Exhibit I. Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit

discloses the outer layer being a blend of balata. An example of the blend is disclosed in Table 7

reproduced below.

**TABLE 7**

| Composition of Outer Layer (Parts by Weight) | |
|---|---|
| Trans PolyIsoprene (TP-301) | 80.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

        While Proudfit lacks disclosing the outer layer being made from polyurethane, in an

analogous golf ball, Molitor '637 teaches using polyurethane, see Molitor '637, col. 5, ll. 33-41

and col. 18, examples 16 and 17. The request points out on page 25, ll. 7-15, why the use of

polyurethane to one of ordinary skill in the art would be readily apparent given that those skilled

in the art were more critical of the mechanical properties of a particular material then the

chemical composition (material type) of the material and those remarks are incorporated herein.

In other words, it was not critical to the "golf ball inventions" of those skilled in the art as to

what materials were used to construct the golf balls so long as the materials had the desired

Application/Control Number: 95/000,123                               Page 25
Art Unit: 3993

mechanical properties which would yield the particular mechanical performance parameters the

inventors were trying to achieve, e.g. improved processability; improved durability; cost

effectiveness; user acceptance of performance (similar "click" and "feel" to balata) of the golf

ball product made from those materials.  The request on page 25, ll. 16-25, explains why one of

ordinary skill in the art would be motivated to substitute the outer cover layer taught in Molitor

'637 for the outer cover layer disclosed in Proudfit and those remarks are incorporated herein.

 Therefore, one of ordinary skill in the art would find the claimed invention as obvious for

the motivation given in the request on page 25, ll. 16-25.

 This rejection of claim 1 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


**Proposed third party requester rejection:  Ground #6**

 The requester submits on pages 26-27 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S.

Pat. No. 5,334,673.

 Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

 Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests certain claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |

| | |
|---|---|
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) "Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, | "The **thickness of the inner layer** can be within the range of **about 0.0250 to 0.2875** inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, ll. 37-40) "The preferred dimensions are ... and **inner layer thickness of 0.037 inch...**" (Proudfit, col. 7, ll. 43-44) |
| said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6." <br><br> **TABLE 6** <br> Composition of Inner Layer of Cover <br> (Parts by Weight) <br><br> | Ionomer Type | Blend Ratio | <br> |---|---| <br> | Sodium- Surlyn 8940 | 75% | <br> | Zinc- Surlyn 9910 | 25% | <br><br> (Proudfit, col. 8, ll. 22-30) |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| and said outer cover layer comprising a polyurethane material, | "... an **outer layer** of soft material such as balata or **a blend of balata and other elastomers.**" (Proudfit, col. 5, ll. 15-17) |
| wherein said golf ball has an overall diameter of 1.680 inches or more, | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch). and an outer layer thickness of 0.0525 inch (**total** |

Application/Control Number: 95/000,123
Art Unit: 3993

| | ball diameter of 1.680 inch)." (Proudfit, col. 7, ll.43-47) |
|---|---|
| said inner cover layer having a Shore D hardness of at least 60, | "The composition of the inner cover layer is described in Table 6." . |
| | **TABLE 6** |
| | Composition of Inner Layer of Cover (Parts by Weight) |
| | |
| | Ionomer Type | Blend Ratio |
| | Sodium- Surlyn 8940 | 75% |
| | Zinc- Surlyn 9910 | 25% |
| | (Proudfit, col. 8, ll. 22-30) |
| and said outer cover layer having a Shore D hardness of less than 64. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

As expressed in the request on page 26 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer.  Proudfit lacks in disclosing the use of polyurethane as

the material for the outer cover layer.  Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

**TABLE 7**

Composition of Outer Layer
(Parts by Weight)

| | |
|---|---|
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls.  As

admitted by the patent owner

> Despite all the benefits of balata, balata covered golf balls are easily cut and/or damaged if mis-hit.
> Golf balls produced with balata or balata-containing cover compositions therefore have a
> relatively short lifespan.

Application/Control Number: 95/000,123                                    Page 28
Art Unit: 3993

(Sullivan '873, col. 1, ll. 39-42). The next step in golf ball cover technology to overcome the

problems with balata was the use of SURLYN as an outer cover. However, as described in the

request on page 26 Wu teaches the problem with SURLYN as a outer cover on a golf ball.

> **The problem with SURLYN covered golf balls ... is that they lack the "click" and "feel"**
> **which golfers had become accustomed to with balata.** "Click" is the sound when the ball is hit
> by a golf club and "feel" is the overall sensation imparted to the golfer when the ball is hit.
>
> It has been proposed to employ polyurethane as a cover stock for golf balls because, like
> SURLYN, it has a relatively low price compared to balata and provides superior cut resistance
> over balata. **However, unlike SURLYN covered golf balls, polyurethane-covered golf balls**
> **can be made to have the "click" and "feel" of balata.**

(Wu col. 1, ll. 36-46 (emphasis added)).

As explained in the request on page 26, line 22 through page 27, line 27 those skilled in

the art at the time the claimed invention was made were more critical of the mechanical

properties of the materials that constructed the layers which impacted the performance of the golf

ball more than the materials themselves. See Exhibit G. As identified above Proudfit lacks

disclosing polyurethane as the outer cover layer. In analogous golf ball device, Wu's

polyurethane material inherently has a flexural modulus of 23,000 psi as averred within the Rule

132 Declaration of Jeffrey L. Dalton at para. 7. Proudfit's outer cover layer material is disclosed

as having a flexural modulus of between about 20,000 psi and 25,000 psi. (Proudfit, col. 6, ll.

28-31) Thus, Wu's cover material's flexural modulus falls within the range of Proudfit's cover

material. Moreover, Wu's polyurethane material inherently has a Shore D hardness of about 58.

See Decl. of Dalton at para. 6. Thus, as evidenced by this declaration, Wu's polyurethane

material falls within the claimed range of the outer layer material have a Shore D hardness of

less than 64.

Application/Control Number: 95/000,123                    Page 29
Art Unit: 3993

Thus, as pointed out in the request on page 27, lines 3-18, one of ordinary skill in the art

at the time the invention was made would find it obvious to substitute Wu's polyurethane golf

ball cover material for Proudfit's balata-blend cover material for the advantages described in this

part of the request which are incorporated herein.

This rejection of claim 1 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


**Proposed third party requester rejection:  Ground #7**

The requester submits on pages 27-29 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of

Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests certain claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) "Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball |

| | which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
|---|---|
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material."  (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, | "The **thickness of the inner layer** can be within the range of **about 0.0250 to 0.2875** inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, ll. 37-40)<br>"The preferred dimensions are ... and **inner layer thickness of 0.037 inch...**" (Proudfit, col. 7, ll. 43-44) |
| said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30) |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| and said outer cover layer comprising a polyurethane material, | "... an **outer layer** of soft material such as balata or **a blend of balata and other elastomers.**" (Proudfit, col. 5, ll. 15-17) |
| wherein said golf ball has an overall diameter of 1.680 inches or more, | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch). and an outer layer thickness of 0.0525 inch (**total ball diameter of 1.680 inch**)."  (Proudfit, col. 7, ll.43-47) |
| said inner cover layer having a Shore D hardness of at least 60, | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30) |

| and said outer cover layer having a Shore D hardness of less than 64. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64. |

As expressed in the request on page 27 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer.  Proudfit lacks in disclosing the use of polyurethane as

the material for the outer cover layer.  Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

**TABLE 7**

| Composition of Outer Layer (Parts by Weight) | |
|---|---|
| Trans Polylsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls.  As

admitted by the patent owner:

> [d]espite all the benefits of balata, balata covered golf balls are easily cut and/or damaged if mis-
> hit.  Golf balls produced with balata or balata-containing cover compositions therefore have a
> relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42).  With this disadvantage of balata covered golf balls, golf ball

designers looked for materials that would provide the same "click" and "feel" golfers expected

and have increased durability.

As pointed out in the request on page 28, lines 4-15, in an analogous golf ball, Molitor

'751 teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having playability
> properties similar to wound, balata-covered balls is to provide about an inner resilient molded core
> **a cover having a shore C hardness less than 85,** preferably 70-80, and most preferably 72-76.

Application/Control Number: 95/000,123                                          Page 32

Art Unit: 3993

> The novel cover of the golf ball of the invention is made of a composition comprising a blend of (1) a **thermoplastic urethane having a shore A hardness less than 95** and (2) an ionomer having a shore D hardness greater than 55. The ionomer comprises olefinic groups having two to four carbon atoms copolymerized with acrylic or methacrylic acid groups and cross-linked with metal ions, preferably sodium or zinc ions. **The primary components of the blended cover are set at a weight ratio so as to result in a cover material after molding having a shore C hardness within the range of 70 to 85, preferably 72 to 76.** Preferably, the urethane component of the cover material has a tensile strength greater than 2500 psi and an elongation at break greater than 250%. A preferred cover material comprises about 8 parts of the thermoplastic urethane and between 1 and 4 parts ionomer. Preferably, the cover is no greater than 0.060 inch thick. Thinner covers appear to maximize the short iron playability characteristics of the balls.

(Molitor '751, col. 33-57 (emphasis added)).  Thus, Molitor '751 teaches having a outer cover

layer with a Shore C hardness less than 85 and preferably between 72 and 76.  Moreover,

Molitor '751 teaches what golf balls are included in the definition of "two-piece" ball within its

instant specification.

> The phrase "two-piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, **but also includes balls having a separate solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls having non-wound cores.**

Molitor '751, col. 3, ll. 7-12 (emphasis added)).  Proudfit, likewise, teaches the two-piece golf

balls can fit within this definition.

> FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material.

(Proudfit, col. 7, ll. 21-24).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76.  As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73.  Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material.  How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance a polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A).  A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate.  Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C.  This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

As stated in the request on page 29

> Therefore, it would have been obvious to one of ordinary skill in the art at the
> time of the invention to substitute the soft outer cover layer of Nesbitt and replace
> it with an outer cover layer made of the soft polyurethane material taught by
> Molitor '751 to provide a golf ball that includes "playability properties as good or
> better than balata-covered wound balls but are significantly more durable," and
> "have better wood playability properties than conventional two-piece balls, and
> permit experienced golfers to apply spin so as to fade or draw a shot" while
> having improved puttability. (Molitor '751, col. 2, ll. 61-68)

This rejection of claim 1 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

<u>Re. Claim 2</u>

**Proposed third party requester rejection: Ground #8**

The requester submits on pages 29 and 30 of the request that claim 2 is unpatentable

under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193, (Nesbitt).

**This rejection is <u>not adopted</u> for the same reasoning as Ground #1 was not adopted**

**and is incorporated herein.**

**Proposed third party requester rejection: Ground #9**

As an alternative to Ground #8, the requester submits on pages 29 and 30 of the request

that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat.

No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

The below claim chart identifies the new limitations introduced by dependent claim 2.

| Claim 2 | Nesbitt |
|---|---|
| wherein said inner cover layer has a thickness of about 0.050 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, ll. 19-23). |
| said outer cover layer has a thickness of about 0.055 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, ll. 22-25). |

Thus, because all new limitations of claim 2 are found within Nesbitt and from the above

analysis within Ground #2 claim 1 is obvious by Nesbitt in view of Molitor '637, claim 2 is

likewise obvious by Nesbitt in view of Molitor '637.

Application/Control Number: 95/000,123                                    Page 35
Art Unit: 3993

This rejection of claim 2 based on Nesbitt in view of Molitor '637 was proposed by the
third party requester in the request for reexamination and is being adopted essentially as
proposed in the request.


**Proposed third party requester rejection:  Ground #10**

Also as an alternative to Ground #8, the requester submits on pages 29 and 30 of the
request that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S.
Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673, (Wu).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view
of Wu.

The below claim chart identifies the new limitations introduced by dependent claim 2.

| Claim 2 | Nesbitt |
|---|---|
| wherein said inner cover layer has a thickness of about 0.050 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches."  (Nesbitt, col. 3, ll. 19-23). |
| said outer cover layer has a thickness of about 0.055 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, may be in the range of 0.020 inches and 0.100 inches."  (Nesbitt, col. 3, ll. 22-25). |

Thus, because all new limitations of claim 2 are found within Nesbitt and from the above
analysis within Ground #3 claim 1 is obvious by Nesbitt in view of Wu, claim 2 is likewise
obvious by Nesbitt in view of Wu.

This rejection of claim 2 based on Nesbitt in view of Wu was proposed by the third party
requester in the request for reexamination and is being adopted essentially as proposed in the
request.

**Proposed third party requester rejection: Ground #11**

Also as an alternative to Ground #8, the requester submits on pages 29 and 30 that claim

2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No.

4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

The below claim chart identifies the new limitations introduced by dependent claim 2.

| Claim 2 | Nesbitt |
|---|---|
| wherein said inner cover layer has a thickness of about 0.050 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, ll. 19-23). |
| said outer cover layer has a thickness of about 0.055 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, ll. 22-25). |

Thus, because all new limitations of claim 2 are found within Nesbitt and from the above

analysis within Ground #4 claim 1 is obvious by Nesbitt in view of Molitor '751, claim 2 is

likewise obvious by Nesbitt in view of Molitor '751.

This rejection of claim 2 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

**Proposed third party requester rejection: Ground #12**

The requester submits on pages 30 and 31 of the request that claim 2 is unpatentable

under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in

view of Molitor et al., U.S. Pat. No. 4,274,637.

**This rejection is <u>not adopted</u>.**

Proudfit's preferred embodiment's inner layer is 0.037 inches thick, see col. 7:43-44.

Claim 2 requires the inner layer to be about 0.050 inches thick. Those skilled in the art measure

thickness to the thousandths of an inch. The difference between the Proudfit preferred

embodiment and the claimed invention is 0.013 inches or thirteen hundredths of an inch. This

difference equates to a difference of a factor of ten. Further, the requester admits that it is not the

chemical but the mechanical properties of the materials used in making golf balls important to

those skilled in the art. One of the mechanical properties in constructing a golf ball with

materials is the thickness to make a given layer. Therefore, for these reasons this proposed

rejection is not adopted.


**Proposed third party requester rejection: Ground #13**

The requester submits on pages 30 and 31 of the request that claim 2 is unpatentable

under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in

view of Wu, U.S. Pat. No. 5,334,673, (Wu).

**This rejection is <u>not adopted</u>.**

Proudfit's preferred embodiment's inner layer is 0.037 inches thick, see col. 7:43-44.

Claim 2 requires the inner layer to be about 0.050 inches thick. Those skilled in the art measure

thickness to the thousandths of an inch. The difference between the Proudfit preferred

embodiment and the claimed invention is 0.013 inches or thirteen hundredths of an inch. This

difference equates to a difference of a factor of ten. Further, the requester admits that it is not the

chemical but the mechanical properties of the materials used in making golf balls important to

those skilled in the art.  One of the mechanical properties in constructing a golf ball with

materials is the thickness to make a given layer.  Therefore, for these reasons this proposed

rejection is not adopted.

**Proposed third party requester rejection: Ground #14**

  The requester submits on pages 30 and 31 that claim 2 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751, (Molitor '751).

  **This rejection is <u>not adopted</u>.**

  Proudfit's preferred embodiment's inner layer is 0.037 inches thick, see col. 7:43-44.

Claim 2 requires the inner layer to be about 0.050 inches thick.  Those skilled in the art measure

thickness to the thousandths of an inch.  The difference between the Proudfit preferred

embodiment and the claimed invention is 0.013 inches or thirteen hundredths of an inch.  This

difference equates to a difference of a factor of ten.  Further, the requester admits that it is not the

chemical but the mechanical properties of the materials used in making golf balls important to

those skilled in the art.  One of the mechanical properties in constructing a golf ball with

materials is the thickness to make a given layer.  Therefore, for these reasons this proposed

rejection is not adopted.

Application/Control Number: 95/000,123                                                    Page 39
Art Unit: 3993

<u>Re. Claim 3</u>

**Proposed third party requester rejection: Ground #15**

The requester submits that claim 3 is unpatentable under 35 U.S.C. § 102(b) as being

anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

In the request on pages 32 through 36 the third party requester proposes that claim 3 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637.  The third

party requester points out that Molitor '637 is incorporated by reference into Nesbitt because

Nesbitt refers to Molitor '637.  (See Nesbitt col. 3, ll. 54-60).

**This rejection is <u>not adopted</u> for the same reasoning as Ground #1 and such**

**reasoning is incorporated herein.**

**Proposed third party requester rejection: Ground #16**

The requester submits on pages 32 through 36 that claim 3 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al.,

U.S. Pat. No. 4,274,637, (Molitor '637).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 3 | Nesbitt (primary) with Molitor '637 (teaching) |
|---|---|
| A multi-layer golf ball comprising: | "The disclose embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a |

Application/Control Number: 95/000,123                                          Page 40

Art Unit: 3993

| | sphere." (Nesbitt, col. 2, ll. 31-34). |
|---|---|
| an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, | "Disposed on the spherical center or core 12 is a first layer, lamination , ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, ll. 34-37).<br>"[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, ll. 36-38).<br>"[A] center or core 12 ... is molded with a layer of hard, high modulus SURLYN resin, such as SURLYN type 1605..." (Nesbitt, col. 3, ll. 27-29). |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61).<br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | see below |
| an outer cover layer having a Shore D hardness of about 64 or less disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br>Molitor '637: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60) See below why this cover material has inherently a Shore D hardness of 55.<br>"[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover layer comprising a polyurethane based material and | Molitor '637: See TABLE 10 which teaches ESTANE 58133 is a thermoplastic polyurethane, thus is a polyurethane based material. Moreover, Molitor '637 teaches the cover materials include "polyurethanes such as are prepared from polyols and organic polyisocyanates". (Molitor '637, col. 5, ll. 39-41; col. 18, ll. 32-60 (Examples 16 and 18)). |
| said outer cover layer having a thickness of from about 0.010 to about 0.070 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, ll. 22-25). |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

Application/Control Number: 95/000,123                                      Page 41

Art Unit: 3993

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

 This rejection of claim 3 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


**Proposed third party requester rejection: Ground #17**

 The requester submits on pages 36 through 38 that claim 3 under 35 U.S.C. § 103(a) as

being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Patent No. 5,334,673,

(Wu).

Application/Control Number: 95/000,123                               Page 42

Art Unit: 3993

Claim 3 is rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt mentioning

Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations. As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 3 | Nesbitt (primary) mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A multi-layer golf ball comprising: | "The disclose embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, | "Disposed on the spherical center or core 12 is a first layer, lamination , ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, ll. 34-37). "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, ll. 36-38). "[A] center or core 12 ... is molded with a layer of hard, high modulus SURLYN resin, such as SURLYN type 1605..." (Nesbitt, col. 3, ll. 27-29). |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61). Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557.  (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | see below |
| an outer cover layer having a Shore D hardness of about 64 or less disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60). "[C]enter or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of |

| | a soft, low flexural modulus resin such as SURLYN 1855." (Nesbitt, col. 3, ll. 33-38 and Nesbitt, figure 1). Molitor '637: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60) See below why this cover material has inherently a Shore D hardness of 55. Wu: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, inter alia, the time, temperature, type of curative, and amount of catalyst used.  It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition.  A hardness about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention.  More preferred is a hardness of about 12D to 20D."  (Wu, col. 6, ll. 27-38). |
|---|---|
| said outer cover layer comprising a polyurethane based material and | Molitor '637: See TABLE 10 which teaches ESTANE 58133 is a thermoplastic polyurethane, thus is a polyurethane based material. Moreover, Molitor '637 teaches the cover materials include "polyurethanes such as are prepared from polyols and organic polyisocyanates". (Molitor '637, col. 5, ll. 39-41; col. 18, ll. 32-60 (Examples 16 and 18)). |
| said outer cover layer having a thickness of from about 0.010 to about 0.070 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, ll. 22-25). |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14.  Of particular interest in this case are

Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557.  The use of SURLYN grades for golf ball covers are also disclosed in U.S. Pat. No.

4,690,981.  The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid."  '981 Pat., col. 3, ll. 59-60.  Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer. Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993. Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

Application/Control Number: 95/000,123                                            Page 45

Art Unit: 3993

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

       This rejection of claim 3 based on Nesbitt mentioning Molitor '637 in view of Wu as

evidenced by Exhibit C was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


**Proposed third party requester rejection: Ground #18**

       The requester submits on pages 38 through 40 that claim 3 under 35 U.S.C. § 103(a) as

being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No.

4,674,751, (Molitor '751).

Application/Control Number: 95/000,123                                   Page 46

Art Unit: 3993

     Claim 3 is rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt mentioning

Molitor '637 in view of Molitor '751.

     Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer .

| Claim 3 | Nesbitt (primary) mentioning Molitor '637 with Molitor '751 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a **sphere**.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37).<br><br>"[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, ll. 36-38).<br>"[A] center or core 12 ... is molded with a layer of hard, high modulus SURLYN resin, such as SURLYN type 1605..." (Nesbitt, col. 3, ll. 27-29).<br><br>also see below |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | see below |
| an outer cover layer having a Shore D | "An **outer layer**, ply, lamination or **cover** 16 ... is then |

| | |
|---|---|
| hardness of about 64 or less disposed on said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | remolded onto the inner ply or layer 14 ..." (Nesbitt, col. 2, ll. 43-47).<br>"[C]enter or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin such as SURLYN 1855." (Nesbitt, col. 3, ll. 33-38 and Nesbitt, figure 1).<br>"Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br>See figure 1 of Nesbitt for the disclosure of a plurality of dimples on the outer layer. |
| said outer cover layer comprising a polyurethane material and | Molitor '637: ESTANE 58133 is a polyurethane material. (Molitor, col. 18) |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as SURLYN type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, ll. 22-25). |

As shown above in the claim chart, Nesbitt mentioning Molitor '637 suggests the use of a soft outer cover layer including a polyurethane material. In an analogous golf ball, Molitor '751 teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core a cover having a shore C hardness less than 85, preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of the invention is made of a composition comprising a blend of (1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness greater than 55.

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, but also includes balls having a separate solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls have non-wound cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L). Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art "translates" a Shore C value to a Shore D value is by taking the known Shore hardness values with a given range, in this instance Shore C, for given materials, in this instance polyurethane golf ball covers materials, and taking corresponding measurements with a different set of Shore gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs from performing this procedure wherein the range of known Shore C values are the abscissa and the range of measured Shore D values are the ordinate. Then, said plot can be use to read equivalent Shore D value for any given Shore C value within the known range of Shore C. This is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness value for any given Shore C hardness value.

As stated in the request on page 39

> It would have been obvious to one of ordinary skill in the art at the time of the
> invention to substitute the soft outer cover layer of Nesbitt and replace it with an
> outer cover layer made of the soft polyurethane material taught by Molitor '751 to
> provide a golf ball that includes "playability properties as good or better than

balata-covered wound balls but are significantly more durable," and "have better
wood playability properties than conventional two-piece balls, and permit
experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, ll. 61-68)

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

This rejection of claim 3 based on Nesbitt mentioning Molitor '637 in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

**Proposed third party requester rejection:  Ground #19**

The requester submits on pages 40 through 43 that claim 3 under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Molitor '637.

Claim 3 is rejected under 35 U.S.C. 103(a) as being unpatentable over Proudfit in view of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses, teaches or suggests certain claim limitations.

| Claim 3 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls,** and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a spherical core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24; Figs 1 and 2)<br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55)<br>See figure 1 of Proudfit for the disclosure of a spherical shaped core. |
| an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |

| | See below for Shore D limitation. |
|---|---|
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; | "The composition of the inner cover layer is described in Table 6." <br><br> **TABLE 6** <br> Composition of Inner Layer of Cover (Parts by Weight) <br><br> Ionomer Type — Blend Ratio <br> Sodium- Surlyn 8940 — 75% <br> Zinc- Surlyn 9910 — 25% <br><br> (Proudfit, col. 8, ll. 22-30) <br> See below for % by weight limitation. |
| and having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard SURLYNS" in U.S. Patent No. 4,884,814." (Proudfit, col. 5, l. 66 - col. 6, l. 1.) "Specific standard SURLYN resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc)...." (Proudfit, col. 6, ll. 6-7.) |
| an outer cover layer having a Shore D hardness of about 64 or less disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material**." (Proudfit, col. 7, ll. 21-24) <br> "... an **outer layer** of soft material such as balata or **a blend of balata and other elastomers**." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| and said outer cover layer comprising a polyurethane material and | "... an **outer layer** of soft material such as balata or **a blend of balata and other elastomers**." (Proudfit, col. 5, ll. 15-17) |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |

As shown above Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and outer layer) with the layers within the range of claimed thicknesses each layer made from a material having the mechanical properties substantially similar to the claimed mechanical properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical properties of the claimed invention. However, Proudfit either incorporates by

reference these mechanical and chemical properties and/or the materials used within the Proudfit

golf ball inherently have these mechanical and chemical properties.  For instance, Proudfit

incorporates by reference U.S. Pat. No. 4,690,981 in the background of this invention.  (Proudfit,

col. 1, ll.39-43).  The '981 patent discloses the preferably amount of unsaturated carboxylic acid

is "from about 5[%] to about 15% by weight."  ('981 Pat, col. 3, ll. 59-60).  If Proudfit discloses

using blends SURLYN the chemical for making the inner cover and the '981 Patent is the

formulation for ionomer known in the art as SURLYN, then inherently grades of SURLYN such

as SURLYN 8940 and SURLYN 9910 would be low acid ionomer resins containing no more

than 16% by weight of an alpha, beta-unsaturated carboxylic acid.  As taught from Exhibit I,

SURLYN 8940 has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, <u>see</u>

Exhibit I.  Therefore, this cover blend inherently has a hardness of 60 or more.  Proudfit

discloses the outer layer being a blend of balata.  An example of the blend is disclosed in Table 7

reproduced below.

**TABLE 7**

| Composition of Outer Layer (Parts by Weight) | |
|---|---|
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 42.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer.  As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit·is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52.  Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

While Proudfit lacks disclosing the outer layer being made from polyurethane, in an

analogous golf ball, Molitor '637 teaches using polyurethane, see Molitor '637, col. 5, ll. 33-41

and col. 18, examples 16 and 17. The request points out on page 42, ll. 17-25, why the use of

polyurethane to one of ordinary skill in the art would be readily apparent given that those skilled

in the art were more critical of the mechanical properties of a particular material then the

chemical composition (material type) of the material and those remarks are incorporated herein.

In other words, it was not critical to the "golf ball inventions" of those skilled in the art as to

what materials were used to construct the golf balls so long as the materials had the desired

mechanical properties which would yield the particular mechanical performance parameters the

inventors were trying to achieve, e.g. improved processability; improved durability; cost

effectiveness; user acceptance of performance (similar "click" and "feel" to balata) of the golf

ball product made from those materials. The request on page 43, ll. 1-9, explains why one of

ordinary skill in the art would be motivated to substitute the outer cover layer taught in Molitor

'637 for the outer cover layer disclosed in Proudfit and those remarks are incorporated herein.

Therefore, one of ordinary skill in the art would find the claimed invention as obvious for

the motivation given in the request on page 43, ll. 1-9.

This rejection of claim 3 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

**Proposed third party requester rejection:  Ground #20**

The requester submits on pages 43 through 45 that claim 3 under 35 U.S.C. § 103(a) as

being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673

(Wu).

Claim 3 is rejected under 35 U.S.C. 103(a) as being unpatentable over Proudfit in view of

Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests certain claim limitations.

| Claim 3 | Proudfit |
|---------|----------|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a spherical core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24; Figs 1 and 2)<br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55)<br>See figure 1 of Proudfit for spherical shaped core. |
| an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br>See below with respect to the Shore D limitation |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; | "The composition of the inner cover layer is described in Table 6." |

Application/Control Number: 95/000,123                                      Page 55

Art Unit: 3993

| | TABLE 6 | |
|---|---|---|
| | Composition of Inner Layer of Cover (Parts by Weight) | |
| | Ionomer Type | Blend Ratio |
| | Sodium- Surlyn 8940 | 75% |
| | Zinc- Surlyn 9910 | 25% |
| | (Proudfit, col. 8, ll. 22-30) See below for the % by weight limitation. | |
| and having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard SURLYNS" in U.S. Patent No. 4,884,814." (Proudfit, col. 5, l. 66 - col. 6, l. 1.) "Specific standard SURLYN resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc)...." (Proudfit, col. 6, ll. 6-7.) | |
| an outer cover layer having a Shore D hardness of about 64 or less disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material**." (Proudfit, col. 7, ll. 21-24) "... an **outer layer** of soft material such as balata or a **blend of balata and other elastomers**." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. | |
| and said outer cover layer comprising a polyurethane material and | "... an **outer layer** of soft material such as balata or a **blend of balata and other elastomers**." (Proudfit, col. 5, ll. 15-17) | |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) | |

Wu teaches that polyurethane was being used as the outer layer of golf ball *circa* 1993.

Wu further teaches in col. 1:36-46 that SURLYN covered golf balls lack the "click" and "feel"

of balata which golfers have become accustomed to such sensations and polyurethane covered

golf balls can be made to have a similar "click" and "feel" of balata. Wu also at least teaches

that polyurethanes made according to its invention will have Shore D hardness directly

proportional to the degree of cure of the cover; and this Shore D hardness ranges from 10 to 30,

preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This teaching of Shore D hardness is

Application/Control Number: 95/000,123                                    Page 56
Art Unit: 3993

directed to an intermediate curing step product prior to the final molding process to finish the

golf ball. Exhibit C demonstrates the actual finished golf ball product having the cover layer that

Wu teaches within its disclosure. Exhibit C teaches that the golf ball taught therein is covered by

the following patents: 4,783,078; 4,846,910; 4,858,923; 4,904,320; 4,915,390; 5,007,594;

5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673 Patent teaches the cover sock of the

Exhibit C finished golf ball. Exhibit C teaches that the golf ball taught therein has a cover

material made from an "elastomer", having a thickness of .050", and 58 Shore D hardness. All

three properties are within the range of mechanical properties of the claim invention

(polyurethane is an elastomer, cover layer thickness ranges from 0.010 to 0.070 inches and the

Shore D hardness is less that 64). Because it has been admitted by the inventor of the Sullivan

'893 patent that the particular chemical properties of the materials (the chemical composition)

used in the construction of a golf ball lack criticality as compared to the mechanical properties

(the Shore D hardness, flexural modulus, layer thickness) of those compounds used for

constructing the different layers (Exhibit G at 334), one of ordinary skill in the art at the time the

invention was made would find it obvious to incorporate the teachings of Wu which inherently

include the teachings of Shore hardness for the fully cured cover layer as taught in Exhibit C as

obvious equivalent materials in order to achieve the same end result of providing a cover layer

that has the same "click" and "feel" of a balata cover which the extra durability of an elastomeric

material.

This rejection of claim 3 based on Proudfit in view of Wu as evidenced by Exhibit C was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.

**Proposed third party requester rejection:  Ground #21**

The requester submits on pages 43 through 45 that claim 3 under 35 U.S.C. § 103(a) as

being obvious over Proudfit in view of Molitor '751.

Claim 3 is rejected under 35 U.S.C. 103(a) as being unpatentable over Proudfit in view of

Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests certain claim limitations.

| Claim 3 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a spherical core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24; Figs 1 and 2)<br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55)<br>See figure 1 of Proudfit for spherical shaped core. |
| an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br>See below with respect to the Shore D limitation. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of alpha, beta-unsaturated carboxylic acid; | "The composition of the inner cover layer is described in Table 6." |