IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ACUSHNET COMPANY,<br><br>　　　　　Defendant. | C. A. No. 06-91 (SLR)<br><br>PUBLIC VERSION |

**PLAINTIFF CALLAWAY GOLF COMPANY'S**
***RESPONSE*** **TO ACUSHNET'S JULY 27, 2007 STATUS REPORT**

The Court has made clear that absent extraordinary circumstances a stay will not be granted simply because a litigant challenges an issued patent in a reexamination proceeding. Consistent with this approach, the Court rejected Acushnet's prior request for a stay, stating that "[reexamination] has never been a good experience for me in terms of helping me resolve anything." [D.I. 58 (Hearing Transcript, October 18, 2006) at 3: 4-12)]. Now, after the parties have – as Acushnet says – done so much work to get this matter prepared for the upcoming trial, there is *less* reason for the Court to change its original decision.

The trial in December will allow all relevant evidence to be assessed (including critical information that Callaway Golf is precluded from submitting to the PTO), will allow all the issues to be addressed (rather than just the few presented to the PTO by Acushnet), and after appeals are exhausted, will *moot* Acushnet's reexamination challenges as matter of law. Conversely, Acushnet wants to stay this suit until the PTO resolves the few issues presented in Acushnet's reexamination challenges. Yet, based upon the PTO's track record on all *inter partes* reexaminations, Acushnet's stay would put this suit on hold until sometime around the year *2013*. At that juncture, of course,

significant additional fact discovery and a new round of supplemental expert reports and depositions would be required. Thus, many years from now, all the disputed issues presented in this matter would finally, again, be ready for trial.

Moreover, granting a stay would reward Acushnet's strategic ploy of filing reexamination requests just prior to this litigation:

**REDACTED**

Callaway Golf, therefore, respectfully submits that no reason exists for changing the Court's initial decision and requests that Acushnet's latest attempt to derail the upcoming December trial be rejected.

I.   **ACUSHNET'S REEXAMINATION EFFORT WAS LAUNCHED IN VIOLATION OF THE PARTIES' 1996 SETTLEMENT AGREEMENT**

Callaway Golf has briefed Acushnet's violation of the 1996 Agreement between the parties which explicitly requires that

**REDACTED**   *See* D.I. 16, at 4-6; and D.I. 70, at 10.[1] Acushnet's ploy of seeking reexamination was launched while the parties

**REDACTED**

required under the parties' 1996 Settlement Agreement. The existence of the Settlement

---

[1] On this point, Acushnet has taken inconsistent positions, arguing here that the 1996 Settlement Agreement does not apply to disputes between Callaway Golf and Acushnet (*see* D.I. 36, at 6-7),
**REDACTED**
Acushnet argued still another position in a 2000 litigation with Spalding. There, Acushnet asserted that while the 1996 Settlement did apply to Top-Flite's successors and assigns, it did so only with respect to disputes related to golf balls – an argument that the Court in that case found persuasive. *See id.*, Ex. 2, at 10-12; and Ex. 3, at 21 (Hearing Transcripts from *Acushnet, Co. v. Spalding Sports Worldwide*, Case No.. 00-11631-DPW).

2

Agreement and Acushnet's breach of it are reason alone not to revisit the stay, and readily distinguish this case from those Acushnet cites where some courts have granted stays.[2]

## II.    A STAY WOULD IDLE THIS CASE UNTIL THE YEAR *2013*

Despite the "special dispatch" cited by Acushnet, the PTO *inter partes* reexamination proceedings, in reality, take a long time. This case is no exception. In fact, the Patent Office has already taken longer than it normally does to issue an office action in this matter – over one year just to issue a first office action. [Declaration of Rolf Hille (Hille Decl.) at ¶ 10.] The proceedings are still at an early stage while the parties await the next PTO office action. Acushnet offers its opinion that the next action may be issued by the PTO in October, but simply ignores the extensive considerations and reviews that must yet occur.

---

[2] Acushnet, as it did in its prior filings to this Court, again implies that courts have been uniformly staying litigation to allow *inter partes* reexamination to proceed. But, a mere handful of courts have even addressed this issue, and a decision whether to stay litigation pending a reexamination is, in any event, subject to a trial court's sound discretion. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The [district] court is not required to stay judicial resolution in view of the reexaminations.").

Callaway Golf previously addressed a variety of distinguishing facts regarding the few cases cited by Acushnet's motion for certification. D.I. 70, at 9-10. The cases cited in Acushnet's recent "Update" present more of the same fodder. *See, e.g., Cima*, 2007 WL 1672229 *10 (D.N.J. 2007) (quoting *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 64 (D.N.J.1992)) (noting – in contrast to the status of this litigation – that "discovery is in its beginning stage in both cases with a trial date far from being set. Indeed, '[m]ost often, cases have been denied a stay due to the late stage of litigation, the fact that discovery was or would be almost completed, or the matter had been marked for trial.'"). Other courts have simply refused such requests for stays. *See, e.g., Bacus*, 2005 WL 475158 at *17 (N.D. Ill.) (denying stay, *inter alia*, because the *inter partes* re-exam would not resolve all claims in the case and because "the Patent Office proceeding has been pending for over eighteen months, and there is no indication that it is anywhere near conclusion. Thus the requested stay could stall for an extended period a case that is already over two years old.").

Moreover, Acushnet also fails to advise the Court that in one of the few cases it relies upon the stay request was actually denied-in-part. *Anascape, Ltd. v. Microsoft Corp*, 475 F. Supp. 2d 612, 614-17 (E.D. Tex. 2007) (determining the plaintiff would suffer unfair prejudice if the entire case were stayed and ***denying stay*** with respect to four of the seven patents that were undergoing *inter partes* re-examination) (recognizing use of a request for examination can serve "***as a tactical tool to delay a case and impose costs, with no real expectation that any controversy will be resolved***.").

3

First, whenever the Patent Office decides to issue a "final" office action (which has not yet happened), both parties will file responses. [*Id.* at ¶¶ 3-6.] The Patent Office may then issue a notice closing prosecution. Next, the Patent Office will issue a Right of Appeal Notice. At that point, the appeals process within the Patent Office begins. [*Id.*]; *see also* 35 U.S.C. § 315.

If and when the appeals process begins, a study of **all** *inter partes* reexaminations shows that the process slows down even further. [Hille Decl. at ¶¶ 5-9.] Since the *inter partes* procedure first became available in 1999, only two *inter partes* reexaminations – out of over 200 that have been filed – have even gotten a decision from the Board of Patent Appeals and Interferences (BPAI). In both of those cases it took over 4 years for the Board to reach its decision. [*Id.* at ¶¶ 6-7.] Because the reexaminations concerning the patents-in-suit are moving even slower than the two cases that have received Board decisions, a decision from the Board in this matter cannot be expected before 2011. After a decision is entered by the Board, a rehearing can then be requested by either party.

Finally, after the re-hearing is considered and ruled upon, the case may then be ripe for an appeal to the Federal Circuit. [*Id.* at ¶¶ 7-9.] Accounting for time on appeal, it will take, under a conservative estimate, until sometime in or around 2013 before a final decision is reached regarding Acushnet's reexamination challenge to the asserted patents and this matter is again ready to proceed in this Court. A table comparing the few *inter partes* proceedings that have received a BPAI decision and the status of the challenges presented by Acushnet readily shows the lengthy delay that would be caused by waiting for Acushnet's reexamination challenges to be addressed [Hille Decl. at ¶ 10]:

| Status of *Inter Partes* Reexaminations That Have Received a Board Decision | | | | | | |
|---|---|---|---|---|---|---|
| Docket No. | Request Date | First Office Action | Action Closing Prosecution | Right of Appeal Notice | BPAI Decision | Appeal to Fed. Cir. |
| 95/000,006 | 12/04/2002 | 02/06/2003 – 2 months after request | 10/07/2003 -- 10 months after request | 03/02/04 – 15 months after request | 03/26/2007 – 4 years and 4 months after request | Not yet ripe |
| 95/000,009 | 01/08/2003 | 04/07/2003 – 3 months after request | 04/07/2003 – 3 months after request | 07/31/2003 – 7 months after request | 03/27/2007 – 4 years and 3 months after request | Not yet ripe |
| Status of *Inter Partes* Reexaminations for the Patents-In-Suit | | | | | | |
| 95/000,120 | 01/17/2006 | 02/27/2007 – over 13 months after request | No action yet | No notice yet | | |
| 95/000,121 | 01/17/2006 | 02/27/2007 – over 13 months after request | No action yet | No notice yet | | |
| 95/000,122 | 01/17/2006 | 01/30/2007 – over 1 year after request | No action yet | No notice yet | | |
| 95/000,123 | 01/17/2006 | 01/30/2007 – over 1 year after request | No action yet | No notice yet | | |

As reflected in the above data, since 1999 not a single *inter partes* reexamination has reached the stage of even being ripe for an appeal to the Federal Circuit. Meanwhile, during the many years it will take to formally address Acushnet's reexamination challenges, Acushnet will be free to continue willfully infringing the asserted patents, and Callaway Golf will continue to suffer extensive damages. For example, during the half-decade or more of delay that Acushnet would enjoy it would be able to use its enormous profits from the infringing sales to continue to market its infringing products aggressively and pour money into further research and development and marketing. Although

Callaway Golf may be able to recoup direct financial loses, the goodwill that golfers would associate with Callaway Golf having the best golf ball today and the financial ability to develop and get to market with further technological advancements will be lost.

Thus, the delay that would result from staying this litigation and the irreparable harm to Callaway Golf, further support a denial of Acushnet's request for a stay.

### III. THE LIMITED REEXAMINATION WILL BE INFERIOR TO A FULL TRIAL ON THE MERITS

Setting aside the inordinate delay that would be required to wait for a resolution of Acushnet's reexamination challenges to the asserted patents, the PTO's proceeding is also substantively inferior because it: (i) is based upon an artificially broad claim construction; and (ii) significantly limits consideration of key evidence that would otherwise be presented at any trial regarding the validity of the asserted patents.

The PTO is not authorized to properly construe the claims of the asserted patents. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984). Instead, the PTO is obligated to assume the broadest possible claim construction and apply that approach to its analysis. *Id.* That is quite different from the approach that district courts must take in construing the claims for the jury. *Markman v. Westview Indus.*, 517 U.S. 370 (1996). Thus, the Court's careful construction of the few key claim terms in dispute here will ultimately result in a more accurate assessment of the patents' validity. More specifically, the Patent Office so far has accepted Acushnet's evidence regarding hardness measurements of plaques of raw materials used in golf balls. [*See, e.g.,* Halkowski Decl. Ex. 6, at 15] But this is not accord with the claim language, which refers to the hardness of golf ball "layers" which hardness is affected not only by the material used but also by the hardness of adjacent materials. [*Id.* at 10-11] Using the proper "on the ball" claim construction

confirms that none of the alleged prior art satisfies the limitations of Callaway Golf's claims. This will be the subject of the upcoming *Markman* hearing – a procedure that is again not available during re-examination.

Second, the principal validity issue concerning the asserted patents concerns Acushnet's claims that the inventions would have been obvious to one of ordinary skill. A critical component to any obviousness assessment are the many objective indicia of non-obviousness (*e.g.*, long-felt need in the marketplace, subsequent praise by others, commercial success). In this case, Callaway Golf has developed extensive testimony and uncovered numerous documents that establish each of these factors as well as a direct nexus between the success of the accused Acushnet ProVI family of golf balls and the elements of the claimed inventions. Yet, little of this evidence can even be shown to the PTO, because it has been deemed confidential and the PTO does not permit filing under seal.[3] Thus, apart from the undue delay that would result from staying the litigation during Acushnet's reexamination challenges, the PTO's process is substantively inferior to a trial where the claims are properly construed and all the relevant evidence can be presented.

IV. **THIS SUIT IS ON-TRACK FOR TRIAL IN DECEMBER 2007, AND WILL ALLOW *ALL* ISSUES TO BE RESOLVED AND WILL STATUTORILY *MOOT* THE PENDING REEXAMINATIONS**

After extensive work, the parties have nearly completed both fact and expert discovery in this matter, are finishing summary judgment motions to be submitted next

---

[3] Moreover, Acushnet as part of its "comments" on Callaway's response to the PTO's initial office action, submitted a document purporting to be a DuPont publication. *See* Halkowski Decl. Ex. 4. Acushnet then used data from the second page of the document as support for its arguments regarding a key piece of prior art, the Molitor '751 patent. However, Callaway has obtained a true copy of the DuPont publication and it turns out that the second page of the exhibit submitted by Acushnet is not in fact a part of the actual DuPont publication. *Compare id.*, Exh. 4; *with* Exh. 5.

7

week, and are preparing for the upcoming trial in December. This case is unusual due to the relative simplicity of the claim construction and summary judgment issues. As will be evident from the parties' upcoming filings, there are just two key disputed claim terms – one concerns the term "core" and the other concerns whether "hardness" should be measured on or off the ball.[4] Determining their meaning will be far simpler than the typical patent issues addressed by the Court, especially since in many of Acushnet's patents – **REDACTED** – Acushnet itself conducts hardness measurements "on the ball". As for summary judgment motions, Callaway anticipates submitting no more than two motions, each of which turns on a discrete legal issue. Thus, rather than have this case put on hold for many years while awaiting resolution of Acushnet's reexamination challenges, *all* the issues between the parties can be resolved at trial this December – a trial where both sides will be able to present all the relevant evidence, including certain extensive and compelling evidence of non-obviousness which cannot even be presented to the PTO.

Moreover, once all issues have been addressed at the December trial in this matter and appeals have been exhausted, Acushnet's reexamination challenges will be statutorily mooted by a final decision in this litigation. *See* 35 U.S.C. § 317(b) ("Once a final decision has been entered against a party in a civil action arising in whole or in part under 28 U.S.C. § 1338, that the party has not sustained its burden of proving invalidity of any patent claim in suit … an *inter partes* reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office") (emphasis

---

[4] Indeed, once the claims have been construed, Callaway Golf anticipates that Acushnet will be compelled to concede infringement – consistent with Acushnet's prior representations to the Court that "it's no secret that the primary argument Acushnet is going to advance in this case is one of invalidity." [D.I. 112, at 68:8-10 (February 8, 2007 Hearing).] Callaway Golf also asserts that the accused products infringe even under Acushnet's proposed constructions.

added); *see also* 35 C.F.R. § 1.907(b) (to same effect).[5] Accordingly, a prompt trial in this litigation is the best avenue for fully, fairly, and promptly resolving all of the issues between the parties.

## V.    CONCLUSION

For the foregoing reasons and those set forth in its opposition to Acushnet's prior requests for to stay this litigation, Callaway Golf respectfully requests that the Court deny Acushnet's latest effort to derail this suit from moving forward to trial in December.

Respectfully submitted.

Dated:  August 6, 2007                     FISH & RICHARDSON P.C.

By:  /s/ *Thomas L. Halkowski*
_____
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099
Attorneys for Plaintiff
CALLAWAY GOLF COMPANY

---

[5] No reexamination certificate can issue until: (i) an action closing prosecution and a right of appeal notice have been issued by the PTO; (ii) all appeals have been exhausted at the BPAI; and (iii) all appeals to the Federal Circuit regarding the PTO's determinations have been resolved. *See* 35 U.S.C. § 316(a). Because this process would conservatively take until sometime around the year 2013, the current litigation between the parties in this Court will moot the pending reexaminations proceedings long before any certificate ever issues.