IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

                    Plaintiff,

        v.

ACUSHNET COMPANY,

                    Defendant.

C. A. No. 06-91 (SLR)

**PUBLIC VERSION**

## CALLAWAY GOLF COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff
Callaway Golf Company*

DATED:  August 13, 2007

## TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDING...............................................1

II.  SUMMARY OF ARGUMENT ..........................................................................2

III. FACTUAL BACKGROUND ...............................................................................2

    A.    In 1996, to resolve five separate actions between the parties, a Settlement Agreement was reached that both settled those disputes and governed how *all* future patent disputes would be resolved ........................................................2

        1.    The 1996 Agreement remains in effect today................................3

        2.    The 1996 Agreement applies to Callaway Golf............................3

        3.    The 1996 Agreement dictates that the "sole and exclusive" method to resolve a patent dispute, once mediation has failed, is by filing an action in the United States District Court for the District of Delaware. ...................................................................3

    B.    Until Acushnet filed for *inter partes* reexamination, the Parties consistently acted in accordance with the 1996 Settlement Agreement..........................................................4

IV.  LEGAL BACKGROUND ....................................................................................6

V.   ARGUMENT .........................................................................................................8

    A.    A valid contract exists between Callaway Golf and Acushnet that both parties have abided by for years. ................8

    B.    Acushnet Breached the 1996 Settlement Agreement...............................10

        1.    Acushnet Breached the 1996 Settlement Agreement by Filing Requests for *Inter Partes* Reexamination with the PTO.......................................................10

        2.    The 1996 Settlement Agreement Does Not Allow The Parties To Resort to Reexamination .........................11

            a.    Whether *inter partes* reexaminations are a legal proceeding or not is irrelevant..............................12

            b.    *Inter partes* reexaminations are clearly a form of dispute resolution.................................................12

i

**TABLE OF CONTENTS (cont'd)**

**Page**

C.    Callaway Golf Has Been Damaged by Acushnet's
Breach of the 1996 Settlement Agreement ..............................................13

VI.    CONCLUSION...................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*American General Corp. v. Continental Airlines Corp.*,
    622 A.2d 1 (Del. Ch. 1992), *aff'd*, 1992 WL 426435, (Del. 1992)................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).......................................................................................................7

*Citadel Holding Corp. v. Roven*,
    603 A.2d 818 (Del. 1992) ............................................................................................7

*City Investing Co. Liquidating Trust v. Continental Casualty Co.*,
    624 A.2d 1191 (Del. 1993) ..........................................................................................7

*E.I. Du Pont Nemours & Co. v. Admiral Insurance Co.*,
    711 A.2d 45 (Del. Super. Ct. 1995) ............................................................................7

*Goodman v. Mead Johnson & Co.*,
    534 F.2d 566 (3d Cir. 1976)........................................................................................7

*HSMY, Inc. v. Getty Petroleum Marketing*,
    417 F. Supp. 2d 617 (D. Del. 2006).............................................................................8

*Haft v. Dart Group Corp.*,
    877 F. Supp. 896 (D. Del. 1995)..................................................................................8

*National Fire & Marine Insurance Co. v. Robin James Construction, Inc.*,
    478 F. Supp. 2d 660 (D. Del. 2007)....................................................................6, 7, 8

*Pellaton v. Bank of New York*,
    592 A.2d 473 (Del. 1991) ............................................................................................7

*Reiver v. Murdoch & Walsh, P.A.*,
    625 F. Supp. 998 (D. Del. 1985)..................................................................................8

*Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.*,
    616 A.2d 1192 (Del. 1992) ..........................................................................................7

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.*,
    748 F. Supp. 247 (D. Del. 1990)..................................................................................8

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ............................................................................................8

**Page(s)**

**STATUTES**

Fed. R. Civ. P. 56(c) ...........................................................................................................6

In 1996, Callaway Golf's predecessor-in-interest in the patents-in-suit, Spalding, entered into a settlement agreement with Acushnet to resolve various patent related claims. The Agreement included

**REDACTED**

In January of 2006, Acushnet breached that Agreement by filing four *inter partes* reexamination requests – one for each of the patents-in-suit – with the United States Patent and Trademark Office. There are no facts in dispute regarding what occurred.

Callaway Golf and its predecessor, Spalding, followed the procedures in the Agreement by

**REDACTED**

That is when Acushnet breached the Agreement by racing to the PTO to file its requests for reexamination. Callaway Golf filed this infringement action shortly thereafter and added the instant breach of contract claim, with the Court's permission, in October of 2006.

Because there are no facts in dispute, and because Acushnet breached the 1996 Agreement in filing the reexamination requests, Callaway Golf respectfully moves for summary judgment that Acushnet has breached the 1996 Settlement Agreement and Callaway Golf is, therefore, entitled to damages in the form of, at least, its attorney fees related to the reexaminations.

## I.    NATURE AND STAGE OF THE PROCEEDING

Callaway Golf sued Acushnet Company for willfully infringing U.S. Patent Nos. 6,210,293 ("the '293 patent"), 6,503,156 ("the '156 patent"), 6,506,130 ("the '130 patent") and 6,595,873 ("the '873 patent") on February 9, 2006. The complaint was later amended with leave of Court to add a claim for breach of contract. The parties have engaged in extensive fact

discovery, have exchanged expert reports, and are now completing expert depositions. The claim construction and summary judgment hearing is scheduled for September 28, 2007, and the pre-trial conference is set for November 21, 2007. Trial is set for December 3, 2007.

## II.    SUMMARY OF ARGUMENT

In 1996, Callaway Golf's predecessor, Spalding Sports Worldwide, Inc. ("Spalding"), and Acushnet entered into a Settlement Agreement to resolve a dispute regarding, among other issues, Spalding's claims that Acushnet was infringing certain Spalding golf ball patents (not the patents at issue here). In addition to resolving the existing dispute, the Agreement also sets forth

**REDACTED**

Acushnet breached that agreement when it sought *inter partes* reexamination for the four patents-in-suit at the United States Patent and Trademark Office.

## III.    FACTUAL BACKGROUND

### A.    In 1996, to resolve five separate actions between the parties, a Settlement Agreement was reached that both settled those disputes and governed how *all* future patent disputes would be resolved

The 1996 Agreement was entered to resolve a multi-action battle between Callaway Golf's predecessor, Spalding Sports Worldwide, Inc., and Acushnet regarding, among other issues, Acushnet's infringement of certain Spalding golf ball patents [Halkowski Decl. Ex. 1].[1] The Agreement is still in effect today and governs how and where all future patent disputes between the parties and their successors would be resolved.

---

[1]    All exhibit citations refer to the accompanying declaration of Thomas L. Halkowski, unless otherwise noted.

1.    **The 1996 Agreement remains in effect today**

**REDACTED**

One of the patents identified by number in the Settlement Agreement is U.S. Patent No. 5,368,304, and that patent does not expire until April 28, 2013.

**REDACTED**

2.    **The 1996 Agreement applies to Callaway Golf**

Section 15 of the Agreement, titled **REDACTED**    says

**REDACTED**

Acushnet admits that Spalding's golf ball business became The Top-Flite Golf Company and that Callaway Golf purchased substantially all of the golf ball assets from Top-Flite Golf in 2003. [*See, e.g.,* D.I. 36 at 3]. Acushnet further admits that the parties are bound by the terms of the Agreement. [DI. 24 – Declaration of Joseph Nauman ("Nauman Decl."), at 4, ¶ 12] Accordingly, Callaway Golf is without question a successor-in-interest to Spalding under the agreement and as a successor-in-interest is entitled to the rights (and assumed the responsibilities) under the 1996 Settlement Agreement.

3.    **The 1996 Agreement dictates that the "sole and exclusive" method to resolve a patent dispute, once mediation has failed, is by filing an action in the United States District Court for the District of Delaware.**

Section 19 of the Agreement sets out a detailed procedure that the parties are required to follow if they have        **REDACTED**        . Specifically, section 19.1 provides:

**REDACTED**

3

**REDACTED**

Sections 19.2-19.6 of the Agreement detail a

procedure involving elaborate negotiations and mediation.

If mediation failed to resolve the dispute, the terms of Section 19.7 set forth the next step

for the parties –

**REDACTED**

B.    **Until Acushnet filed for *inter partes* reexamination, the Parties acted in accordance with the 1996 Settlement Agreement**

On April 3, 2001, the first of the asserted patents, the '293 patent, issued to Spalding. On

December 6, 2001, Spalding sent Acushnet a letter regarding potential infringement. [Halkowski

Decl. Ex. 2; Ex. A to D.I. 19 – Declaration of Peter A. Arturi ("Arturi Decl.")]. Though

Acushnet now states to the Court that "[t]he validity of the patents-in-suit is the central issue in

this case," at that time Acushnet initially denied infringement and continued to do so until it

produced documents in this case demonstrating that it can no longer deny infringement. [D.I. 10

at 4; and Halkowski Decl. Ex. 3, Transcript of February 8, 2007 Hearing at 68:8-10 ("... it's no

secret that the primary argument that Acushnet is going to advance is one of invalidity.")]. Thus,

the parties continued negotiating pursuant to the terms of the Agreement during 2002, but were

unable to reach agreement. [D.I. 19, Arturi Decl. at ¶ 3].

In May 2003, Spalding divested its golf ball business and changed its corporate name to

"The Top-Flite Golf Company" (Top-Flite). In September 2003, Callaway Golf purchased the

assets of Top-Flite, including all of its golf ball manufacturing assets and the patents-in-suit, and

4

created a wholly owned subsidiary of Callaway Golf of the same name. [D.I. 18] Callaway Golf

now owns the patents-in-suit. [Halkowski Decl Exs. 5 - 8 – Requests for *Inter Partes*

Reexamination; D.I. 18, Declaration of Steven C. McCracken ("McCracken Decl.") at ¶ 2].

Callaway Golf and its new wholly owned subsidiary, also called "The Top-Flite Golf Company"

(hereafter collectively "Callaway Golf") then renewed the earlier discussions regarding

infringement by Acushnet's Pro V1 line of golf balls.[2] [*Id.* at ¶¶ 3-4]. At that time, Acushnet

continued to deny infringement.

  As Acushnet acknowledges, after Callaway Golf reengaged Acushnet on this issue, a

series of additional negotiations and mediations ensued

**REDACTED**

  [D.I. 24 – Nauman Decl., at ¶ 4] .

**REDACTED**

      D.I. 17, Ex. B (Acushnet's comments on the joint letter to Court);

D.I. 18, McCracken Decl. at ¶ 4)]. The joint letter to Magistrate Judge Thynge stated:

> I write on behalf of The Top-Flite Golf Company and its parent
> Callaway Golf Company (collectively "Callaway Golf"), and the
> Acushnet Company to seek your assistance in resolving another
> golf ball dispute between the companies.
>
> There was a prior case in this court between Top-Flite's
> predecessor. Spalding & Evenflo Companies ("Spalding"), and the
> Acushnet Company. That prior case was a patent, false advertising
> and contract dispute about certain golf balls. It was resolved by
> settlement in 1996. A copy of the confidential settlement
> agreement is attached to this letter.
>
> As the Court will see from both                    **REDACTED**
>                   **REDACTED**                    and the stipulated dismissals

---

[2]    The Pro V1 line of golf balls are a multi-layer golf ball sold under the "Titleist" brand name
and includes three variants: Pro V1, Pro V1 Star and Pro V1x.

5

filed in the prior case (attached as exhibits B and C to the
settlement agreement), this Court retained jurisdiction over the
parties for the purposes of resolving "any and all disputes arising
out of the Settlement Agreement."

**REDACTED**

I therefore write to request the Court's assistance in overseeing a
mediation of the current golf ball dispute between Callaway Golf
and Acushnet, which is based o the alleged infringement by
Acushnet of several Callaway Golf patents.

[Halkowski Decl. Ex. 4 – August 26, 2005 letter to Magistrate Judge Thynge]  Magistrate Judge

Thynge agreed to help, and so a second mediation was conducted before Magistrate Judge

Thynge on October 28, 2005.  [D.I. 24 – Nauman Decl. at ¶ 4]   Unfortunately,  it became clear

that the parties had reached an impasse after they had tried to reach an agreement for 18 months.

**REDACTED**

Thus, on January 17, 2006, Steven McCracken, Callaway Golf's Senior Executive Vice

President and Chief Administrative Officer, informed Joseph Nauman, his counterpart at

Acushnet, that Callaway Golf planned to file its complaint the next day by depositing them in the

mail after business closed.  [*Id.* at ¶ 8].  Having obviously worked for months in advance on

preparing them, Acushnet immediately and preemptively filed four voluminous *inter partes*

reexamination requests with the PTO on that same day.  [Halkowski Decl Exs. 5 - 8 – Requests

for *Inter Partes* Reexamination]  Callaway Golf formally filed this action – properly set in the

United States District Court for the District of Delaware,          **REDACTED**          - shortly

thereafter.

IV.    **LEGAL BACKGROUND**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to

summary judgment if a court determines from its examination of "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any," that there

are no genuine issues of material fact and that the moving party is entitled to judgment as a

6

matter of law.  Fed. R. Civ. P. 56(c); *Nat'l Fire & Marine Ins. Co. v. Robin James Construction, Inc.*, 478 F. Supp. 2d 660, 661 - 662 (D. Del. 2007).  In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).  "[T]he mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue." *Nat'l Fire & Marine Ins. Co.,* 478 F. Supp. 2d at 662, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Interpreting a contractual provision is a question of law.[3]  *Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del. 1991).  The Court must first attempt to ascertain the parties' intent from the language of the contract.  *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del. 1992). The principal question is whether the contractual language is ambiguous.  *E.I. Du Pont Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 56 (Del. Super. Ct. 1995).  Contractual language is not ambiguous merely because parties in litigation disagree concerning the provision's proper construction.  *City Investing Co. Liquidating Trust v. Continental Casualty Co.,* 624 A.2d 1191, 1198 (Del. 1993);  *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192,  1196 (Del. 1992).  The Court may not consider extrinsic evidence in an effort to construe an unambiguous contract.  *City Investing Co. Liquidating Trust,*624 A.2d at 1198; *Citadel Holding Corp.,*603 A.2d at 822;  *Pellaton*, 592 A.2d at 478.  "When the contractual provision is clear and unambiguous, the court will give the provision's terms their plain meaning."  *E.I. Du Pont Nemours & Co.*, 711 A.2d at 57.

---

[3]

**REDACTED**

"In order to establish a claim for breach of contract under Delaware law, the plaintiff must establish: 'first, the existence of a contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff.'" *Nat'l Fire & Marine Ins. Co.*, 478 F. Supp. 2d at 661-662 , citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *HSMY, Inc. v. Getty Petroleum Mktg.,* 417 F. Supp. 2d 617, 620 (D. Del. 2006).

"In a breach of contract action, a plaintiff's damages are 'generally measured by what is necessary to put [plaintiff] in as good a position as [he] would have occupied had there been full performance of the contract.'" *Haft v. Dart Group Corp.*, 877 F. Supp. 896, 901-902 (D. Del. 1995) citing *American General Corp. v. Continental Airlines Corp.*, 622 A.2d 1, 8 (Del. Ch. 1992), *aff'd*, 1992 WL 426435, (Del. 1992); *Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1009 (D. Del. 1985).

## V.     ARGUMENT

### A.     A valid contract exists between Callaway Golf and Acushnet that both parties have abided by for years.

In settling the patent and false advertising lawsuits in 1996, Acushnet and Callaway Golf's predecessor-in-interest, Spalding, agreed that should ⸳

<strong>REDACTED</strong>

Acushnet acknowledges that when Callaway Golf obtained Top-Flite's assets, including its intellectual property rights, the rights and obligations under the 1996 Settlement Agreement passed to Callaway Golf. [D.I. 24 – Nauman Decl. ¶12] *See e.g., Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252-53 (D. Del. 1990) (stating that "[a]s a successor in interest SGK retained these rights when they assumed Ziegler's position under the contracts.").

Acushnet's acknowledgement of Callaway Golf as a successor is consistent with both

parties' behavior over the last several years.  As Acushnet has acknowledged, the parties have

spent extensive time and money                    **REDACTED**


        D.I. 10 at 4, stating that the parties have engaged "[i]n years of mediation

and dispute resolution" .       **REDACTED**        After negotiations among the high-level

executives failed, a first mediation was held in front of David Plant, an independent mediator

agreed to by the parties.  [Halkowski Decl. Ex. 9 - April 15, 2005 letter from David Plant to

Messrs. Scherkenbach and Grimaldi]  The all-day mediation session with Mr. Plant came only

after months of preparation and the exchange of lengthy briefs.  When that mediation failed to

resolve the issues, the parties sought out and scheduled a second mediation in front of Magistrate

Judge Thynge on October 28, 2005.  Again, preparations were extensive, briefs were exchanged,

and another day was spent trying to resolve the issues in front of Magistrate Judge Thynge.  As

Joseph Nauman, Acushnet's Legal and Corporate Executive Vice President, noted in his

declaration filed under the penalty of perjury with *this* Court,

                            **REDACTED**

    4.              **REDACTED**          I was present
    at a mediation proceeding before David W. Plant between
    Acushnet and Callaway Golf Company ("Callaway") of August 3,
    2005.

    5.              **REDACTED**          I was present
    at a mediation proceeding before Magistrate Judge Mary Pat
    Thynge on October 28, 2005.

[D.I. 24 – Nauman Decl., ¶¶ 4 and 5]

        In addition, in preparation for both mediations, the parties repeatedly invoked Paragraph

19.2 to request :              **REDACTED**

9

**REDACTED**

Callaway Golf invoked this provision to request

financial information, and Acushnet used it to request information regarding **REDACTED**

[Halkowski Decl. Exs. 10 - 11]  None of this course of conduct –

**REDACTED**

as well as the citation and reliance upon the Agreement by Acushnet's

Legal and Corporate Executive Vice President in his declaration  – would have occurred if both

parties had not understood there to be a binding contract between the parties entered into in

1996.

B.    **Acushnet Breached the 1996 Settlement Agreement**

   1.    **Acushnet Breached the 1996 Settlement Agreement by Filing
            Requests for *Inter Partes* Reexamination with the PTO**

Acushnet breached the 1996 Settlement Agreement when it filed requests for *inter partes*

reexamination for each of the patents in suit.  [Halkowski Decl. Exs. 5 – 8 – four Requests for

Inter Partes reexaminations]  This was in direct contravention of the Agreement.

   The Agreement explicitly states that it provides the

**REDACTED**

---
4

**REDACTED**

**REDACTED**                    Thus, any dispute relating to patents must be resolved using

the procedures set forth in the agreement – there are no alternatives.

Specifically,


**REDACTED**


### 2.    The 1996 Settlement Agreement Does Not Allow The Parties To Resort to Reexamination

The Agreement does not allow either party to pursue reexamination proceedings as a way

to resolve the dispute.  Acushnet may argue that the Agreement requires only that

**REDACTED**          must be filed in this Court, and that the reexaminations are not          **REDACTED**

It is irrelevant, however, whether or not reexamination is considered a    **REDACTED**    or

indeed whether it is considered a form of    **REDACTED**    Either way, the Agreement is clear

that the parties agreed to resolve any dispute over a patent dispute through

**REDACTED**          Reexamination is not an option under the Agreement; it

simply is not permitted.  An agreement need not include a laundry list of everything that is *not*

permitted if it states what is *only* permitted.  Indeed, that is the point of using the broad, clear

language that appears in the Agreement.  If Acushnet's contrary "logic" were correct, there

would be no end to the list items "not permitted."  Acushnet's filing of the reexamination

requests was a plain breach of the 1996 Settlement Agreement.

11

     a.     **Whether *inter partes* reexaminations are a** REDACTED **or not is irrelevant.**

The language of the 1996 Agreement is broad in scope – it encompasses "any dispute" and it mandates that the parties use the specified process as the "exclusive procedure" to resolve the dispute. The Agreement allows only one way to ultimately resolve any patent dispute –

**REDACTED** The 1996 Agreement does not give the parties the option of seeking recourse in the PTO, International Trade Commission or any other adjudicative body. Instead it clearly and unequivocally states that all patent disputes will be resolved through

**REDACTED**

Therefore, whether or not an *inter partes* reexamination is a REDACTED irrelevant. Reexamination is not a proceeding available in this Court and, thus, is not permitted by the Agreement.

Even accepting Acushnet's premise that *inter partes* reexamination is **not** a

REDACTED

**REDACTED** that does justify Acushnet's breach. Simply put, the Agreement **only** allows Had the parties wanted the option to pursue non-legal proceedings, as Acushnet labels its reexamination challenges, they certainly could have included this option. *Ex parte* reexamination and ITC proceedings certainly existed at the time the agreement was signed. However, the parties chose not to provide for any administrative options in the PTO or the ITC, and instead agreed that the final dispute resolution method would be the filing of a lawsuit in the District Court for the District of Delaware.

     b.     *Inter partes* **reexaminations are clearly a form of dispute resolution.**

Acushnet has previously argued that the 1996 Settlement Agreement does not apply because *inter partes* reexaminations are not a form of **REDACTED** [D.I. 36 at 10-12]. This argument is specious on its face. Acushnet filed the reexaminations because there was a dispute with Callaway Golf over the validity of these patents.

First, the 1996 Settlement Agreement applies to

**REDACTED** Here, the dispute is clear:

12

Callaway Golf claims that Acushnet infringes its patents and Acushnet claims that Callaway

Golf's patents are invalid.  Acushnet previously (and repeatedly) represented to this Court that

the *inter partes* reexaminations will address all issues relating to patentability.  [*See* D.I. 22 at

10-11].  Indeed, that is the primary basis on which Acushnet sought to stay this litigation three

times.  One wonders how Acushnet can possibly tell this Court to stay the litigation –  **REDACTED**

in favor of a proceeding that Acushnet at the same time argues is **not**

**REDACTED**

### C.    Callaway Golf Has Been Damaged by Acushnet's Breach of the 1996 Settlement Agreement

As a direct result of Acushnet's breach of the 1996 Settlement Agreement, Callaway Golf

has been damaged.  Because of Acushnet's breach, Callaway Golf has been forced to hire and

pay counsel to represent it in four inter partes reexaminations before the PTO, as well as to make

submissions and participate in hearings in this case related to the reexamination (for example,

Acushnet's multiple attempts to stay this litigation because of the reexamination filings).  At a

minimum, Callaway Golf is entitled to it attorneys fees incurred as a result of Acushnet's breach.

While it is impossible to make Callaway Golf whole because the "reexamination bell" cannot be

unrung, a step in the right direction is awarding the legal fees that Callaway Golf has had to pay

and will continue to incur in prosecuting the reexamination proceedings, as well as the legal fees

---

[5] The timing of Acushnet's reexamination requests  also suggests that Acushnet considers
reexamination to be a form     **REDACTED**        .  Acushnet has said it waited to file its requests
until after the parties had completed                        **REDACTED**
                          [Halkowski Decl. Exs. 5 - 8 (Requests for Inter Partes Reexaminations)]
Had Acushnet believed that reexaminations were not '              **REDACTED**
                                  Acushnet could have filed its requests much earlier – for
example, when the parties first discussed Acushnet's potential infringement in December 2001.
[D.I. 24, Nauman Decl. at ¶ 3].

that it has incurred in this action related to the reexaminations.  Callaway Golf is prepared to a

statement as to those fees if this motion is granted.

## VI.    CONCLUSION

For the reasons set forth above, summary judgment should be granted in favor of

Callaway Golf that Acushnet breached the 1996 Settlement Agreement.


Dated:  August 7, 2007                    FISH & RICHARDSON P.C.



By:   */s/ Thomas L. Halkowski*
      Thomas L. Halkowski (#4099)
      919 N. Market Street, Suite 1100
      P.O. Box 1114
      Wilmington, DE 19899-1114
      Tel:  (302) 652-5070
      Fax:  (302) 652-0607

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA 02110-2804
      Tel:  (617) 542-5070
      Fax:  (617) 542-8906

      David J. Miclean
      500 Arguello Street, Suite 500
      Redwood City, CA 94063
      Tel:  (650) 839-5070
      Fax:  (650) 839-5071

      Roger A. Denning
      12390 El Camino Real
      San Diego, CA 92130
      Tel: (858) 678-5070
      Fax:  (858) 678-5099


      **ATTORNEYS FOR PLAINTIFF**
      **CALLAWAY GOLF COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2007, the attached document was electronically filed with the Clerk of Court using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 13, 2007, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz                          Attorneys for Defendant
David E. Moore                              ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE 19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                      Attorneys for Defendant
Joseph P. Lavelle                           ACUSHNET COMPANY
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com


_/s/ Thomas L. Halkowski_____
Thomas L. Halkowski