IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

Plaintiff,

v.

ACUSHNET COMPANY,

Defendant.

C. A. No. 06-91 (SLR)

**PUBLIC VERSION**

## CALLAWAY GOLF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED:  August 13, 2007

## TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDING...............................................1

II.  SUMMARY OF ARGUMENT ...........................................................................2

III. FACTUAL BACKGROUND...............................................................................5

IV.  LEGAL BACKGROUND ...................................................................................6

    A.   Legal Standard for Summary Judgment ....................................................6

    B.   Law of Anticipation ..................................................................................7

        1.   Incorporation by reference ............................................................7

        2.   Inherent anticipation .....................................................................8

V.   ARGUMENT.......................................................................................................8

    A.   The Nesbitt Patent Does Not Refer to the Molitor Patent
        for Its Disclosure of Polyurethane; Therefore, It Does
        Not Incorporate That Disclosure by Reference. .........................................8

        1.   Nesbitt Does Not Identify Polyurethane "With
            Detailed Particularity." ..................................................................9

        2.   Nesbitt Does Not Clearly Indicate Where in the
            Molitor Patent the Allegedly Incorporated
            Disclosure Can Be Found. ...........................................................12

    B.   The Limitation of "An Outer Cover Having a Shore D
        Hardness of 64 or Less" Is Not Inherently Disclosed in
        Any of Acushnet's Prior Art Patents. .......................................................14

        1.   Nesbitt Does Not Inherently Disclose an Outer
            Cover Layer Having a Shore D Hardness of 64
            or Less Because "Plaque" Hardness is Not
            Representative or Predictive of On-the-Ball
            Hardness...........................................................................................14

            a.   Hardness is Not a Fundamental or
                Inherent Property of a Polymer
                Composition...................................................................15

            b.   Acushnet Can Prove No More Than a
                "Possibility or Probability" That Nesbitt's
                Outer Cover Layer Would Have a Shore
                D Hardness of 64 or Less, Which is Not

i

# TABLE OF CONTENTS (cont'd)

Page

Enough to Show That Property is
Inherently Disclosed. ........................................................18

2. Neither the Proudfit Patent Nor the Ultra Tour
Balata Golf Ball Anticipates Claim 1 or 2 of the
'130 Patent....................................................................................19

a. Acushnet Cannot Show That Proudfit's
Disclosure of a Balata Outer Cover Layer
Inherently Discloses an Outer Cover
Layer Having a Shore D Hardness of 64
or Less.............................................................................20

b. Acushnet Has No Evidence That the
Ultra Tour Balata Golf Ball Includes A
Blend of Two or More Low-Acid
Ionomers in the Inner Cover Layer..................................22

VI.   CONCLUSION...................................................................................................24

## CASES

*Advanced Display System, Inc. v. Kent State University*,
   212 F.3d 1272 (Fed. Cir. 2000)..............................................................7, 9, 13

*Avia Group International, Inc. v. L.A. Gear California, Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988)..........................................................................6

*C.R. Bard, Inc. v. M3 System, Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998).......................................................................22

*Celotex Corp. v. Catrett*,
   477 U.S. 316 (1986)...........................................................................6, 22, 23

*Crown Operations International, Ltd. v. Solutia Inc.*,
   289 F.3d 1367 (Fed. Cir. 2002)................................................................7, 8, 19

*Richardson v. Suzuki Motor Co., Ltd.*,
   868 F.2d 1226 (Fed. Cir. 1989).......................................................................22

*In re Seversky*,
   474 F.2d 671 (C.C.P.A. 1973) .........................................................................8

*Trintec Industrial, Inc. v. TOP-U.S.A. Corp.*,
   295 F.3d 1292 (Fed. Cir. 2002)..................................................................8, 19

## STATUTES

35 U.S.C. § 102(b) ...................................................................................................7

In reviewing and issuing the four patents-in-suit, three different patent examiners collectively considered every one of the five prior art references on which Acushnet relies to prove invalidity.  The Nesbitt patent in particular, on which Acushnet bases the majority of its anticipation arguments, was considered by every one of those examiners and indeed is discussed in detail – and repeatedly distinguished – in the very specification of the patents in suit.[1] Acushnet nevertheless argues the claimed inventions are "anticipated" by the Nesbitt patent and another cited reference, the Proudfit patent, because the examiners allegedly failed to appreciate a critical "incorporation by reference" in the Nesbitt patent and the "inherency" of certain other golf ball properties (properties Acushnet now says every person of skill would have appreciated). There may be a case where an examiner simply made a mistake and overlooked anticipating art which was in front of him or her, but this is not it.  The three examiners who reviewed these patents did not all err.  Neither incorporation by reference nor inherency applies here, so Acushnet cannot rely on those doctrines to plug the admitted gaps in the disclosures on which it relies.  Its anticipation arguments therefore fail as a matter of law, and Callaway Golf respectfully requests summary judgment that Acushnet cannot carry its burden at trial of proving anticipation by clear and convincing evidence.

## I.   NATURE AND STAGE OF THE PROCEEDING

On February 9, 2006, Callaway Golf sued Acushnet Company for willfully infringing U.S. Patents Nos. 6,210,293 ("the '293 patent"), 6,503,156 ("the '156 patent"), 6,506,130 ("the '130 patent") and 6,595,873 ("the '873 patent").  The parties have engaged in extensive fact discovery, have exchanged expert reports, and are have completed the depositions of all of the technical experts.  The claim construction and summary judgment hearing is scheduled for

---

[1]   With a few small exceptions not relevant here, the specifications of the patents in suit are substantively identical.

September 28, 2007, and the pre-trial conference is set for November 21, 2007.  Trial is set to

commence on December 3, 2007.

## II.   SUMMARY OF ARGUMENT

Callaway Golf respectfully requests the Court to enter summary judgment on the

following issues:

(1)   the Nesbitt '193 patent does not contain or incorporate by reference any
discussion of polyurethane, and therefore the Nesbitt '193 patent does not
anticipate any of the asserted claims that recite polyurethane for the outer cover
layer (claims 1, 2, 4 and 5 of the '293 patent; claims 4 and 5 of the '130 patent;
claims 1-11 of the '156 patent; and claims 1 and 3 of the '873 patent);

(2)   the Nesbitt '193 patent also does not disclose (expressly or inherently) an outer
cover layer that has a Shore D value of 64 or less, and therefore it does not
anticipate any of the asserted claims that contain that limitation (claims 1, 2, 4 and
5 of the '293 patent; claims 1, 2, 4 and 5 of the '130 patent, claims 1-3, 5 and 9 of
the '156 patent; and claims 1 and 3 of the '873 patent);

(3)   like the Nesbitt '193 patent, the Proudfit '187 patent does not disclose (expressly
or inherently) an outer cover layer that has a Shore D value of 64 or less, and
therefore it does not anticipate any of the asserted claims that contain that
limitation (claims 1, 2, 4 and 5 of the '293 patent; claims 1, 2, 4 and 5 of the '130
patent, claims 1-3, 5 and 9 of the '156 patent; and claims 1 and 3 of the '873
patent); and

(4)   finally, Acushnet cannot show that the Wilson Ultra Tour Balata golf ball has an
inner cover layer that comprises a blend of two or more low-acid ionomers, and
therefore it does not anticipate any of the asserted claims that contain that
limitation (claims 1-2 of the '293 patent; claims 1-2 and 4 of the '130 patent;
claims 1-7 of the '156 patent; and claim 1 of the '873 patent).

### Incorporation by Reference

Acushnet argues that each of the claims-in-suit is anticipated by a 1984 patent to Dennis

Nesbitt.  Although Nesbitt's patent discloses a golf ball having an outer cover and an inner cover,

both made of an ionomer, it provides no suggestion of using polyurethane for the outer cover

layer – a key aspect of the patents-in-suit.  Acushnet has tried to piece together an anticipation

case based on Nesbitt by arguing that Nesbitt "incorporates by reference" another patent, the

2

Molitor '637 patent, which mentions polyurethane as one of many possible compositions for a single-layer "cellular" (or "foamed") golf ball cover.

Acushnet's attempt to rely on incorporation by reference fails both parts of the legal test governing that doctrine: (1) the Nesbitt patent does not identify the references to polyurethane in the Molitor patent "with detailed particularity;" and (2) the Nesbitt patent does not "clearly indicate" where the supposedly incorporated disclosure of polyurethane is found within the Molitor patent. Accordingly, Nesbitt does not incorporate by reference Molitor's mention of polyurethanes, and therefore Nesbitt cannot anticipate any of the asserted claims of the patents-in-suit that require polyurethane.

### Inherency

Although most of the asserted claims require that the outer golf ball layer exhibit a Shore D hardness of 64 or less, neither of Acushnet's primary prior references – the Nesbitt patent or the Proudfit patent – discloses any Shore D hardness value for any golf ball component. To fill this second, critical gap, Acushnet conjures Shore D values from references where none is disclosed and argues that the claims are therefore "inherently" anticipated.

In addition, to arguing that the Nesbitt patent inherently discloses the missing limitation of "an outer cover layer having a Shore D hardness of 64 or less," Acushnet has advocated a claim construction that directly contradicts the language of the claims and the specification, so that, for purposes of showing Shore D hardness by inherency, it can rely on disclosures of "plaque" Shore D hardnesses reported in polymer datasheets for the raw materials, rather than the Shore D hardness of the outer cover layer of an actual prior art golf ball. For the reasons set forth in Callaway Golf's claim construction brief, Acushnet's construction should be rejected in favor of what the claim actually states – that the Shore D hardness of 64 or less is a property of

the golf ball "layer" itself, not a generic reference to the raw material.  Once the proper claim construction is applied, Acushnet's "inherency" argument fails because the Shore D values reported in a polymer datasheet simply indicate the hardness of a layer ingredient measured on a flat, rectangular "slab" or "plaque" of that polymer, which is not the same as the hardness of a golf ball layer made from that material.

Acushnet's attempt to find an inherent disclosure of an outer-cover Shore D hardness of 64 or less in the Proudfit patent is similarly unavailing.  First, Acushnet attempts to argue that the inherent properties of the Proudfit patent can be proved by measuring the properties of the Wilson Ultra Tour Balata golf ball, a separate prior art reference with no established connection to the Proudfit patent.  Acushnet's attempt to knit the Proudfit patent and the Wilson Ultra Tour Balata ball into a single reference fails as a matter of law, leaving Proudfit without any disclosure of the required outer-cover hardness.

Acushnet also tries to use the Proudfit patent to prove the composition of the Wilson Ultra Tour Balata ball, but fails to establish that any low-acid ionomer blend described in the Proudfit patent is actually present in the inner cover layer of the Wilson ball.  Without any evidence that actually establishes the composition of the Ultra Tour Balata ball, Acushnet cannot show that the ball anticipates the two asserted claims that do not require polyurethane in the outer cover layer, but that do require a particular blend of ionomers in the inner cover layer.

Collectively, these failings leave Acushnet without an anticipation case, so Callaway Golf respectfully seeks summary judgment of no anticipation.

4

III.   **FACTUAL BACKGROUND**

The patents-in-suit relate, generally, to a multi-layer golf ball including a core, an inner cover made of a low acid ionomer[2], and an outer cover made of polyurethane.[3]   The inner cover layer and outer cover layer are applied in particular thicknesses to achieve specific hardnesses, as measured by the "Shore D" hardness of the layers.[4]

In response to Callaway Golf's interrogatory responses, Acushnet simply incorporated the invalidity positions it took in its Requests for Inter Partes Reexamination filed in the U.S. Patent & Trademark Office.  [Halkowski Decl. Ex. 15[5] (Acushnet's Interrogatory Responses) at Resp. No. 4.]  There, Acushnet explained that its anticipation defense relied on three references:  U.S. Patent No. 4,431,193 to Nesbitt; U.S. Patent No. 5,314,187 to Proudfit, and the Wilson Ultra Tour Balata golf ball.  [Halkowski Decl. Ex. 13, Request for Inter Partes Reexamination of '293 Patent]  Although the Nesbitt patent lacks any disclosure of polyurethane, Acushnet argued that the Nesbitt patent "incorporated by reference" U.S. Patent No. 4,274,637 to Molitor, which includes polyurethane as one of many possible compositions for a single-layer "foamed" golf ball cover.  [Halkowski Decl. Ex. 13, Request for Inter Partes Reexamination of '293 patent, at 14-17, and Ex. 2, '637 patent col. 3:27-55.]  Acushnet also argued that, although Nesbitt lacked any express disclosure of Shore D hardnesses, the claimed feature of "an outer cover having a

---

[2]   An "ionomer" is a type of ion-containing polymer made from a carboxylic acid.  "Low-acid" refers to an ionomer formulation that contains no more than 16% acid by weight.

[3]   Two of the asserted claims, '130 claims 1 and 2, do not require that the outer cover layer include polyurethane.

[4]   Although the parties dispute the specific meaning of the term "Shore D hardness" in the patent claims, they agree that a "Shore D hardness" is a measurement of hardness obtained by applying a durometer to the surface of the material being tested.  [*See, e.g.* Halkowski Decl. Ex. 1, 8/2/07 William MacKnight Dep. Tr. at 80:8-25.]

[5]   All exhibit citations refer to the accompanying declaration of Thomas L. Halkowski, unless otherwise noted.

5

Shore D hardness of 64 or less" was present in Nesbitt under the doctrine of inherency.

[Halkowski Decl. Ex. 14, Request for Inter Partes Reexamination of '130 Patent, at 20.]

Acushnet further argued in the PTO that claims 1 and 2 of the '130 patent – the only two asserted claims that do not require polyurethane in the outer cover layer – are anticipated by the Proudfit patent and the Wilson Ultra Tour Balata golf ball. [*Id.* at 14-17, 29-30.] Those claims still require the cover layers to have specific Shore D hardnesses, however, and because Proudfit, like Nesbitt, lacks any express disclosure of Shore D hardnesses, Acushnet again argued that the requisite outer-cover hardness was present by inherency. [*Id.* at 15-17.] Specifically, Acushnet claimed that hardness measurements it had obtained from a Wilson Ultra Tour Balata ball were indicative of the inherent properties of the Proudfit patent. [*Id.* at 17 (chart, citing Hebert Decl. ¶ 7).]

Acushnet's anticipation arguments were later included in the report of its expert, Robert J. Statz, whom Callaway Golf deposed on July 31 and August 1, 2007.

## IV.   LEGAL BACKGROUND

### A.   Legal Standard for Summary Judgment

Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Also, "a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).

6

Summary judgment of no anticipation is appropriate when the moving party shows that the challenger, who bears the burden of proving invalidity at trial, has failed to produce clear and convincing evidence that the prior art discloses all limitations of the patent claim. *See Crown Operations Int'l., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377-78 (Fed. Cir. 2002) (affirming grant of summary judgment of no anticipation) (citation omitted).

### B.    Law of Anticipation

Under 35 U.S.C. § 282, a patent enjoys a presumption of validity, which can be overcome only through clear and convincing evidence. *Id.* at 1377 (citation omitted).  One way a challenger may invalidate a patent claim is to show that it is "anticipated" by a prior art reference under 35 U.S.C. § 102(b).  Where a prior art reference does not expressly disclose a limitation set forth in the claim, that missing element may still be deemed present for purposes of section 102(b) if the reference either: (1) incorporates by reference the missing element by a sufficiently specific reference to another publication; or (2) discloses the missing limitation under the principle of inherency.  *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

#### 1.    Incorporation by reference

"Material not explicitly contained in [a single prior art document] may still be considered for purposes of anticipation if that material is incorporated by reference into the document." *Advanced Display*, 212 F.3d at 1282.  Whether a patent incorporates material by reference is a question of law.  *Id.* at 1283.  "Further, the standard of one reasonably skilled in the art should be used to determine whether the host document describes the material to be incorporated by reference with sufficient particularity."  *Id.*

The host document must "clearly identify[] the subject matter which is incorporated and where it is to be found."  *Id.* at 1282 (citation omitted).  Specifically, "the host document must

7

identify *with detailed particularity* what specific material it incorporates and *clearly indicate* where that material is found in the various documents." *Id*. at 1282 (emphasis added); *see also* Manual of Patent Examining Procedure § 608.01(p) (8th ed. Aug. 2001) ("Particular attention should be directed to specific portions of the referenced document where the subject matter being incorporated may be found."). "Mere reference to another application, or patent, or publication is not an incorporation of anything ..." *In re Seversky*, 474 F.2d 671, 674 (C.C.P.A. 1973).

### 2.    Inherent anticipation

A party seeking to invalidate a patent can also use the doctrine of inherency to show that a limitation not expressly called out in the prior art reference would be inherent in that reference, but "[i]nherent anticipation requires that the missing descriptive material is '*necessarily present*,' not merely probably or possibly present, in the prior art." *Trintec Indus., Inc. v. TOP-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (citations omitted) (emphasis added). "Inherency 'may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.'" *Crown*, 289 F.3d at 1377 (quoting *Continental Can Co., USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991)). Where a challenger's anticipation argument relies on inherency, and inherency cannot be shown by clear and convincing evidence, summary judgment of no anticipation is warranted. *See Crown*, 289 F.3d at 1377-78.

## V.    ARGUMENT

### A.    The Nesbitt Patent Does Not Refer to the Molitor Patent for Its Disclosure of Polyurethane; Therefore, It Does Not Incorporate That Disclosure by Reference.

Acushnet has argued that, even though Nesbitt does not disclose the use of polyurethane for the outer cover layer, it still anticipates the asserted claims of the patents-in-suit because it refers to the Molitor '637 patent and, according to Acushnet, therefore incorporates by reference

Molitor's disclosure of polyurethane.  However, for a document to incorporate by reference a

disclosure in a separate document, it must (1) "identify with detailed particularity what specific

material it incorporates" and (2) "clearly indicate where that material is found in the various

documents."  *Advanced Display*, 212 F.3d 1282.  This determination is to be made from the

perspective of one of ordinary skill in the art.  *Id.* at 1283.

    Nesbitt's only mention of the Molitor '637 patent is in the following excerpt:

> The inner, intermediate, or first layer or ply 14 and the outer cover, second
> layer or ply 16 or either of the layers may be cellular when formed of a
> foamed natural or synthetic material.  Polymeric materials are preferably
> such as ionomer resins which are foamable.  Reference is made to the
> application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat.
> No. 4,274,637 which describes a number of foamable compositions of a
> character which may be employed for one or both layers 14 and 16 for the
> golf ball of this invention.

[Halkowski Decl. Ex. 3, '193 patent, col. 3:51-61.]

    Acushnet contends that this passage incorporates by reference Molitor's disclosure of

polyurethane as a cover material.  Under the two-part test of *Advanced Display*, however, this

argument fails as a matter of law.

### 1.   Nesbitt Does Not Identify Polyurethane "With Detailed Particularity."

    Acushnet admits that Nesbitt does not mention polyurethane or any material that a person

of skill in the art would specifically recognize as polyurethane.  Instead, Nesbitt teaches only the

use of an ionomer resin for the outer cover layer, and polyurethane is indisputably not an

ionomer resin.  [*See id.* col. 3:54-56 ("Polymeric materials are preferably such as ionomer resins

which are foamable.").]

    Indeed, Nesbitt's reference to Molitor '637 – on which Acushnet's argument depends –

immediately follows Nesbitt's statement that ionomers are the preferred materials for the outer

cover.  Only after stating that polymeric materials are "preferably such as ionomer resins which

are foamable" does Nesbitt refer to the Molitor patent, which, he states, "describes a number of foamable compositions of a character which may be employed for one or both layers . . . ." [*Id.* 3:54-60.] Accordingly, one of ordinary skill reading that passage would conclude that Nesbitt is referring to Molitor – the vast majority of which is about foamable ionmer resins – for its discussion of foamable ionomer resins.

Mr. Nesbitt himself has testified that he understood his reference to the Molitor patent to be limited to ionomers. Acushnet deposed Mr. Nesbitt, who is now retired and living in Florida, and asked him what the language of his patent cited above means to him. Mr. Nesbitt was very clear:

> Q:   When you read the paragraph in your patent application and you
>      saw the reference to the Molitor '637 patent –
> A:   Right
> Q:   – you just thought that's foamed ionomer resins?
> A:   Right.
> Q:   And you didn't think beyond that, that it could refer to other
>      materials other than ionomer resins?
> A:   No. Because if you look at my patent, it says over and over again
>      that the ionomer cover can be foamed or not foamed and that's the
>      same foam that Molitor did in his ionomer foam. The 10-piece
>      ball that was in his test, it was ionomer, and it was foamed.

[Halkowski Decl. Ex. 4, 4/11/07 Dennis Nesbitt Dep. Tr. at 192:16-193:4.]

Mr. Nesbitt unequivocally denied that his patent was meant to incorporate by reference Molitor's specific mention of polyurethane golf ball covers:

> Q.   In your '193 patent Mr. Rosenthal earlier referenced you to a
>      paragraph that talked about the Molitor patent. Do you remember
>      that?
> A.   I remember that.
> Q.   If somebody read that to themself and said to you, "Oh, you must
>      have been referring to polyurethane as a potential outer cover
>      material," what would you say to that?
> A.   No way.

[Halkowski Decl. Ex. 4, Nesbitt Dep. Tr. at 235:13-21.]

Acushnet's contrary argument ignores the context in which Nesbitt refers to the Molitor patent and instead focuses entirely on the fact that Molitor's '637 patent lists polyurethane among eight other broad categories of foamable compounds:

- vinyl resins (5:34);
- "polyolefins such as polyethylene, polypropylene, transpolyisoprene, and the like, including copolymers of olefins" (5:37-39);
- polyamides (5:41);
- polystyrene, including ABS copolymer (5:42-44);
- acrylic resins (5:44-46);
- polyphenylene oxide resins (5:49-51);
- ionomer resins, such as Surlyn (3:30-35, 5:21-23); and
- balata (5:24).

Not only does the Nesbitt patent make clear that it refers to Molitor for its discussion of foamed ionomers – not polyurethanes – the Molitor patent itself emphasizes that ionomer resins are the preferred material. [Halkowski Decl. Ex. 2, '637 patent, col. 3:20 and abstract ("It is preferred that the golf ball cover be formed from ionic copolymers . . . ."). Given the breadth of Molitor's list of foamable compositions, and given that, among these compositions, only ionomer resins are the subject of any emphasis, Nesbitt's reference to the Molitor patent lacks the "detailed particularity" that would be necessary to incorporate by reference Molitor's passing mention of polyurethane covers.

This conclusion is underscored by the fact that Nesbitt's reference to the Molitor '637 patent does not point out any particular section within Molitor. Therefore, one of skill in the art would naturally understand the general reference in Nesbitt to pertain to the general subject matter of the Molitor '637 patent.

There is no dispute as to the general subject matter of Molitor '637. Even Michael Sullivan – who is the inventor of the patents-in-suit, but is now the Vice-President of Research and Development for Acushnet, the party accused of infringing his patents – confirmed that he

11