# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY

    Plaintiff,

v.

ACUSHNET COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. 06-91 (SLR)

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## ACUSHNET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF <u>NO BREACH OF CONTRACT (COUNT V)</u>

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: August 7, 2007
Public Version Dated: August 14, 2007

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

I.     INTRODUCTION ....................................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ......................................................1

III.   SUMMARY OF ARGUMENT ...............................................................................2

IV.    STATEMENT OF RELEVANT FACTS .................................................................3

V.     ARGUMENT............................................................................................................5

       A.    Applicable Legal Standard............................................................................5

       B.    The 1996 Agreement Does Not Prohibit Either Party from Seeking
             Reexamination and hence Summary Judgment is Appropriate .............................6

             1.    The PTO Has Already Rejected Callaway's Arguments. ...........................6

             2.    The Plain Meaning of the 1996 Agreement Supports the
                   Conclusion that Acushnet Did Not Breach the Dispute
                   Resolution Clause .........................................................................7

             3.    Callaway's Broad Reading of the Agreement Renders the
                   Agreement Void on Public Policy Grounds.............................................13

             4.    Callaway Never Indicated that It Considered Acushnet's
                   Reexamination Requests a Breach of the 1996 Agreement.......................15

VI.    CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Alpine Inv. Partners v. LJM2 Capital Mgmt. L.P.*,
  794 A.2d 1276, (Del. Ch. 2002)...................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................5

*In re Baker Hughes*,
  215 F.3d 1297 (Fed. Cir. 2000)...............................................................................14

*Blacklight Power, Inc. v. Rogan*,
  295 F.3d 1269 (Fed. Cir. 2002)...............................................................................13

*Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)....................................................................................................14

*Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*,
  467 U.S. 837 (1984)..................................................................................................7

*In re Etter*,
  756 F.2d 852 (Fed. Cir. 1985).............................................................10, 12, 13, 14

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000)...............................................................................10

*Houston Atlas, Inc. v. Del Maritime Scientific, Inc.*,
  217 U.S.P.Q. (BNA) 1032 (N.D. Tex. 1982)..........................................................13

*Joy Manufacturing Co. v. National Mine Serv. Co.*,
  810 F.2d 1127 (Fed. Cir. 1987)..........................................................................11, 12

*Joy Technologies, Inc. v. Manbeck*,
  959 F.2d 226 (Fed. Cir. 1992)............................................................................10, 11

*Newton v. Rumery*,
  480 U.S. 386 (1987)................................................................................................14

*PIC Inc. v. The Prescon Corp.*,
  485 F. Supp. 1302 (D. Del. 1980).............................................................................6

*Patlex Corp. v. Mossinghoff*,
  758 F.2d 594 (Fed. Cir. 1985)...........................................................................13, 14

*Phillips Home Builders v. Travelers Insurance Co.*,
   700 A.2d 127 (Del. 1997) .........................................................................5, 8, 9

*Sony Computer Entm't Am. Inc. v. Dudas*,
   Civ. No. 1:05CV1447, 2006 WL 1472462 (E.D. Va. May 22, 2006) ...................10

*Suter v. Munich Reinsurance*,
   223 F.3d 150 (3d Cir. 2000).................................................................................14

*United Paperworkers International Union v. Misco, Inc.*,
   484 U.S. 29 (1987).................................................................................................14

*United States v. Utah Construction & Mining Co.*,
   384 U.S. 394 (1966)................................................................................................6

## RULES AND STATUTES

35 U.S.C. § 2(a)(1) ..................................................................................................7

35 U.S.C. § 131 ........................................................................................................7

35 U.S.C. § 311 *et seq*............................................................................................1

35 U.S.C. § 312(a) ..................................................................................................10

35 U.S.C. § 314(a) .............................................................................................7, 10

35 U.S.C. § 314(b)(2) .............................................................................................10

35 U.S.C. § 315(b)...................................................................................................10

35 U.S.C. § 316(a) ..................................................................................................13

37 C.F.R. § 1.555....................................................................................................14

145 Cong. Rec. E1789-E1790 (Aug. 5, 1999).................................................6, 14

Fed. R. Civ. P. 56(c) ................................................................................................5

## I.    INTRODUCTION

Defendant Acushnet Company ("Acushnet") files this Memorandum in Support of Its Motion for Summary Judgment of No Breach of Contract (Count V).  Acushnet will show that it did not breach a 1996 Settlement Agreement ("the 1996 Agreement," attached as Ex. A) between Acushnet and Spalding by filing an *inter partes* reexamination requesting that the PTO reexamine the four patents-in-suit.

## II.    NATURE AND STAGE OF PROCEEDINGS

Callaway alleges that Acushnet's Pro V1 line of golf balls infringes the four patents-in-suit.  Acushnet, however, maintains that each of the patents-in-suit is not infringed and that the patents are invalid over the teachings of the prior art.  A two-week jury trial on the patents-in-suit is scheduled to begin in this Court on December 3, 2007.

On January 17, 2006, three weeks before Callaway sued Acushnet, Acushnet filed an *inter partes* reexamination under 35 U.S.C. § 311 *et seq.* ("the reexamination request") requesting the PTO to reexamine the four patents-in-suit.  The PTO subsequently ordered reexamination of all the patents-in-suit.  (*See* PTO Orders Granting Reexamination, attached as Exs. A-D to Acushnet's Motion to Stay Litigation [D.I. 10]).

Callaway attempted to forestall the reexamination on multiple occasions by filing, *inter alia*, a Petition to Vacate the Order Granting Reexamination (Ex. B), based primarily on Acushnet's alleged breach of the 1996 Agreement, and a Petition to Suspend *Inter Partes* Reexamination Proceedings (Ex. C) – both of which were denied by the PTO.[1]  (*See* PTO Denial of Petition to Vacate Order Granting Reexamination (Ex. D); *see also* PTO Denial of Petition to Suspend *Inter Partes* Reexamination Proceedings (Ex. E).)

---

[1] As the PTO issued denials of both petitions separately for each patent, Acushnet attaches as exhibits only one of the four substantially similar denials for each request by Callaway (Exs. D-E).

The PTO rejected Callaway's argument.  It found that: (1) there is no authority for Callaway's contention that private parties may by contract negate the applicability of the reexamination statute; (2) the contractual provisions, if read to preclude Acushnet from seeking reexamination, would be void as contrary to public policy; and (3) Callaway failed to point to any authority suggesting that the PTO ordered reexamination was "contrary to a statutory prohibition barring the order."  (Decision Denying Pet. to Vacate, Ex. D at 5.)

On June 15, 2006, after Callaway's efforts to vacate the PTO's decision to reexamine the patents-in-suit had failed, Callaway filed an amended complaint, adding Count V, which alleged that Acushnet breached the 1996 Agreement by filing for a reexamination of the patents-in-suit. [D.I. 32].  As set forth in its Answer to Callaway's Amended Complaint, Acushnet denies that it breached the 1996 Agreement. [D.I. 60].

On January 30, 2007, the PTO, based on its examiner's reexamination of the '130 and '873 patents, issued office actions rejecting each and every claim of both of these patents in light of the same prior art now before this Court. (*See* PTO Office Actions, attached as Exs. A-B to Acushnet's Status Report [D.I. 185].)  Thereafter, on February 27, the PTO rejected each and every claim of the '293 and '156 patents, again in light of prior art now before this Court. (*See* PTO Office Actions, attached as Exs. C-D to Acushnet's Status Report [D.I. 185].)  Both parties have responded to the PTO's rejections and await the PTO's next office action, which will be the Action Closing Prosecution (ACP).

## III.  SUMMARY OF ARGUMENT

Summary judgment of no breach of contract should be granted in this case for several independent reasons, as there are no material facts in dispute.

First, the Court should give deference to the PTO's prior determination that the 1996 Agreement would be void as contrary to public policy to the extent it were construed to restrict access to the reexamination process.

Second, the 1996 Agreement on its face is between Acushnet and Spalding, and does not apply to this dispute.

Third, to the extent the 1996 Agreement does apply, it has not been breached by Acushnet. Section 19 of the 1996 Agreement describes a dispute resolution process between Acushnet and Spalding (§§ 19.1-19.6) and provides that, should that dispute resolution process fail to resolve the dispute, either party "may initiate legal proceedings but only in the United States District Court for the District of Delaware, and no other." (§ 19.7). Acushnet and Callaway first met in a process that resembled the pre-suit dispute resolution provisions of section 19, and a suit and counterclaims were later filed in this district court (and no other) in order to resolve Callaway's infringement claims, as the contract contemplates. However, nowhere does the 1996 Agreement purport to preclude either party from asking the PTO to reexamine a patent. Under Federal Circuit case law, a PTO reexamination proceeding is a public administrative proceeding, not a private dispute resolution forum. Indeed, the reexamination of a patent is an executive power exclusively of the PTO that this or any other district court has no jurisdiction even to undertake. Similarly, the PTO cannot adjudicate the parties' dispute, which is Callaway's infringement claim. Hence, there could be no breach of the 1996 Agreement in petitioning the PTO for reexamination, even if that agreement applies.

Fourth, if the 1996 Agreement is construed to preclude the parties from participating in patent reexamination proceedings, then the dispute resolution clause is void as against public policy.

## IV.    STATEMENT OF RELEVANT FACTS

In 1996, Spalding & Evenflow Companies, Inc. ("Spalding") and its subsidiary Lisco, Inc. entered a Settlement Agreement with Acushnet to resolve an advertising and patent dispute unrelated to the patents at issue here. At the time, Spalding was a privately held company, having been purchased and "taken private" by a management team backed by investment

3

bankers. Acushnet had dealt with the management of Spalding for many years and was comfortable in negotiating in good faith with that management team.

On May 3, 2003, Spalding divested its sporting goods business and changed its corporate name to "The Top-Flite Golf Company" ("Top-Flite"). [D.I. 16, Callaway's Opp. To Motion to Stay at 5]. Spalding (now called Top-Flite) was later placed into bankruptcy by its owners. Spalding's golf-related assets, including the 1996 Agreement, were then bought out of the bankruptcy estate by Callaway during a competitive auction.

Section 19 of the 1996 Agreement describes a dispute resolution procedure relating to patents. Specifically, Section 19.1 provides:

> Any dispute arising out of or relating to patents, including the above mentioned patents, other intellectual property owned or controlled by the *parties*, or claims related to advertising shall be resolved in accordance with the procedures specified in this Section, which shall be the sole and exclusive procedure for the resolution of any such dispute.

(Emphasis added). Sections 19.2-19.6 detail a procedure involving negotiations and mediations. Section 19.7 then provides,

> At the conclusion of a referral to the Magistrate or other judge as set forth in 19.6, should the dispute remain unresolved, either party may initiate legal proceedings but only in the United States Court for the District of Delaware, and no other. Said court retains jurisdiction of the parties for such purposes.

In 2004, Callaway and Acushnet began discussing an infringement dispute relating to the patents-in-suit and embarked on a process to attempt to resolve the dispute. [D.I. 24, Nauman Dec. ¶3]. For this purpose, Callaway and Acushnet followed a protocol generally resembling the provisions of the 1996 Agreement.

In August 2005, Callaway and Acushnet conducted mediation before David W. Plant over Callaway infringement claims. [*Id.* at ¶4]. Two months later, they conducted mediation before Magistrate Judge Mary Pat Thynge. [*Id.* at ¶5]. In early 2006, they conducted additional high-level negotiations, but to no avail. [*Id.* at ¶¶6-8]. Although Acushnet informed Callaway then that Acushnet would request reexamination of the patents-in-suit, Callaway at no time

suggested to Acushnet that it viewed such action as a breach of the 1996 Agreement. [*Id.* at ¶¶6-7]. During the negotiations Callaway in fact proposed that it would ask the PTO to reexamine one of Acushnet's patents. [*Id.*].

Six months later, on June 15, 2006, after Callaway's efforts to vacate the PTO's reexaminations of the patents-in-suit failed, it filed an amended complaint alleging that Acushnet breached the 1996 Agreement by filing for the reexaminations. [D.I. 32].

## V.    ARGUMENT

### A.    Applicable Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Id.*. at 248.

The 1996 Agreement states that it "shall be governed by the laws of the State of Delaware without reference to conflicts of law, except where the law of the United States is controlling." (Ex. A § 18).

Where a contract is clear on its face and not ambiguous, the Court may construe the contract and apply it as a matter of law. *Phillips Home Builders v. Travelers Ins. Co.,* 700 A.2d 127, 129 (Del. 1997) ("[I]f the relevant contract language is clear and unambiguous, courts must give the language its plain meaning."). Moreover, "for a court to add a limitation that is not found within the express language of the contract is untenable. That is because, 'absent grounds for reformation, it is not the proper role of a court to rewrite or supply omitted provisions to a written agreement.'" *Alpine Inv. Partners v. LJM2 Capital Mgmt. L.P.,* 794 A.2d 1276, 1286 (Del. Ch. 2002) (quoting *Cincinnati SMSA Ltd. v. Cincinnati Bell Cellular Sys.,* 708 A.2d 989, 992 (Del.1998)).

**B.    The 1996 Agreement Does Not Prohibit Either Party from Seeking Reexamination and Hence Summary Judgment Is Appropriate.**

**1.    The PTO Has Already Rejected Callaway's Arguments.**

As noted above, the PTO has already rejected the same claim Callaway makes here.  In a petition to the Director of the PTO, Callaway asked the PTO to dismiss the pending reexaminations based on the 1996 Agreement.

In a detailed written decision, the PTO thoroughly rejected Callaway's arguments.  (Ex. D.)  The PTO Director found no basis to conclude that the 1996 Agreement bars or prohibits the conduct of the *inter partes* reexaminations, which authority Congress vested in the PTO in 2000 (years after the 1996 Agreement was signed) in order to create an inexpensive alternative to federal court litigation.  145 CONG. REC. E1789-E1790 (Aug. 5, 1999).[2]  Indeed, the PTO found that to the extent that the 1996 Agreement was construed to preclude a reexamination, the contractual provision would be void as contrary to public policy.  (Ex. D at 5.)  The PTO stated:

> [A] contractual provision preventing a party from seeking reexamination would be void as being contrary to public policy.
> ***
> [P]reventing a third party requestor (and a potential licensee of the subject patent) from requesting reexamination of a patent would be contrary to the public policy embodied in the *Lear v. Adkins* decision.

(*Id.*)

In some cases, prior administrative adjudications can preclude relitigating the same issues in federal court.  *See United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966); *PIC*

---

[2] When passing the *inter partes* reexamination statute Congress stated:

> Title V is intended to reduce expensive patent litigation in U.S. district courts by giving third-party requesters, in addition to the existing *ex parte* reexamination in Chapter 30 of title 35, the option of *inter partes* reexamination proceedings in the PTO.  Congress enacted legislation to authorize *ex parte* reexamination of patents in 1980, but such reexamination has been used infrequently since a third party who requests reexamination cannot participate at all after initiating the proceedings.  145 CONG. REC. at E1789.

*Inc. v. The Prescon Corp.,* 485 F. Supp. 1302, 1308 (D. Del. 1980). Without deciding whether

the PTO's decision is preclusive here, the Court should, at a minimum, give appropriate

deference to the PTO's determination. *See Chevron, U.S.A., Inc. v. Nat'l Resources Def.*

*Council, Inc.,* 467 U.S. 837, 844 (1984).

The PTO is the agency charged by statute with the examination and reexamination of

patents. 35 U.S.C. §§ 2(a)(1) ("The United States Patent and Trademark Office ... shall be

responsible for the granting and issuing of patents...."); 131 ("The Director shall cause an

examination to be made of the application ...."); 314(a) ("reexamination shall be conducted

according to the procedures established for initial examination....") Here, that administrative

agency has determined that the 1996 Agreement does not bar Acushnet from invoking the

reexamination remedy that Congress created. Such an agency determination as to when the

procedures it oversees are available and what the relevant public policy as to access to its

remedies ought to be is a determination on a matter within the PTO's area of expertise that is

entitled to deference in a federal court. *Chevron,* 467 U.S. at 844. The PTO has reviewed the

arguments Callaway makes here and found them wrong on several grounds. (Ex. D at 5.)

In such a case, the Court should be most reluctant to grant Callaway a remedy based on

what is in all events a most dubious claim that a ten-year-old agreement between Acushnet and

Spalding gives Callaway the right to interfere with the Congress's carefully crafted *inter partes*

reexamination statute as administered by the PTO. The Court should decline to grant the relief

sought in Callaway's claim in deference to the PTO decision.

### 2. The Plain Meaning of the 1996 Agreement Supports the Conclusion that Acushnet Did Not Breach the Dispute Resolution Clause.

While Callaway's effort to amend the 1996 Agreement to read into it an absent

prohibition relating to reexamination is misplaced as matter of sound public policy (as the PTO

has already determined), Callaway is completely wrong regarding the plain meaning of the 1996

Agreement. By simply reading the Agreement, and especially in light of the applicable Federal

7

Circuit precedent, the Court will conclude that the Agreement does not prohibit either party from seeking or participating in a reexamination proceeding before the PTO. As a result, the contract claim Callaway seeks to assert should fail, and the Court should grant summary judgment for Acushnet on this claim.

### a.  The 1996 Agreement Does Not Apply to this Dispute.

The 1996 Agreement between Acushnet and Spalding provides that, in the event an intellectual property or advertising dispute arises between Acushnet and **Spalding,** the parties are to engage in specified dispute resolution procedures. (Ex. A at ¶¶ 19.2-19.4.) The Agreement does not define the term "parties," though the signatories to the Agreement are Spalding, Lisco, Inc., and Acushnet.[3]

On its face, the Agreement does not in any way purport to apply to disputes between Acushnet and **third-parties** to the agreement, like Callaway. Thus, while Callaway claims to be a "successor" to the agreement, it simply is not a **party** to the Agreement, and hence the Agreement does not apply to this dispute.[4] *See Phillips Home Builders,* 700 A.2d at 129 ("[I]f the relevant contract language is clear and unambiguous, courts must give the language its plain meaning."). Simply stated, the 1996 Agreement, on its face, obligates only the *parties* to mediate disputes between them and to file suits only in this Court. Nothing in that agreement obligates Acushnet to mediate disputes with third-parties to the Agreement, or with successors to parties or with any such strangers to the Agreement.

---

[3] Section 1.8 of the 1996 Agreement defines a "Disclosure Group" to include senior management of a party, major stockholders of a party, and the management of a parent to a party. Under Section 1.9, any company that is not in the Disclosure Group is deemed a "Third-Party." Thus, under the terms of the agreement, Callaway is unambiguously a "third party" to the 1996 Agreement.

[4] Callaway pleads that Acushnet and Callaway acted as if the dispute resolution provisions of the 1996 Agreement apply to them. (Amended Complaint [D.I. 30] at ¶¶ 24-25.) Even assuming such for purposes of this motion, Acushnet's willingness to use a dispute resolution process similar to what was in the 1996 Agreement in no way establishes in Callaway a right to enforce a contract that on its face does not apply to this dispute.

It would be manifestly unjust to apply the 1996 Agreement to the present dispute between Acushnet and Callaway. Settlement agreements, particularly having long-term provisions requiring the parties' high-level executives to routinely meet and to attempt cooperatively to mediate their disputes, often rely on the fact that the parties have built a working, non-adversarial relationship. Acushnet and Spalding had such a relationship. Acushnet and Callaway, on the other hand, do not.

It would be peculiar indeed if a stranger to the 1996 Agreement were able to buy the contract at a public auction and assert that Acushnet now must mediate with a different company with whom it had no contract to mediate and where the requisite atmosphere between them does not exist. Here, Callaway is a public company, with its own financial objectives and a history of adversity with Acushnet. In raising intellectual property disputes with Acushnet, Callaway has consistently demonstrated an adversarial, confrontational approach to such matters. While Callaway may (or may not) be a "successor" to the 1996 Agreement, nothing on its face says that Acushnet must negotiate or pursue dispute resolution procedures with "successors" of Spalding.

By its terms the 1996 Agreement only applies to disputes between Acushnet and Spalding (the "parties" to the agreement). Because the language of the 1996 Agreement is clear, the 1996 Agreement does not apply here and summary judgment for Acushnet is proper. *See Phillips Home Builders*, 700 A.2d at 129.

### b. The 1996 Agreement Does Not Preclude "Administrative Proceedings" such as PTO Reexamination.

Nothing on the face of the Agreement prohibits either party from asking the PTO to reexamine a patent. And the Court should not graft such a prohibition onto the language of the Agreement, as Callaway urges. Rather, the Agreement requires that *the parties* try to resolve disputes between them using an alternative dispute resolution process and that, if ADR fails, they may bring a lawsuit, but only in this District Court.

A reexamination is not a dispute between the parties within the meaning of the

Agreement, nor is it a legal action as contemplated by the Agreement. Rather, under the Patent Act, reexaminations are conducted when the PTO determines that prior art raises "substantial new questions of patentability." 35 U.S.C. § 312(a). The principal parties to the *inter partes* reexamination in the PTO are Callaway and the PTO. Acushnet has the right to file "written comments" in response to Callaway's statements to the PTO and will have a right of appeal. *See* 35 U.S.C. §§ 314(b)(2), 315(b). Yet as in all matters of patent examination, the PTO is charged with representing the public interest in issuing presumptively valid patents, *see In re Gartside,* 203 F.3d 1305, 1318 (Fed. Cir. 2000); it is not setting about to resolve private party disputes.

Reexamination, whether *ex parte* or *inter partes*, is a neutral proceeding where the focus is taking a second look and curing defects which occurred during previous proceedings in the PTO. *In re Etter*, 756 F.2d 852,  856-858 (Fed. Cir. 1985); *see also Sony Computer Entm't Am. Inc. v. Dudas*, No. 1:05CV1447, 2006 WL 1472462, at *9 (E.D. Va. May 22, 2006) (Section 314(a) provides that "reexamination shall be conducted according to the procedures established for initial examination under the provisions of sections 132 and 133.").

Here, nothing in the Agreement prohibits the PTO from exercising its statutory duty, or prohibits either party from petitioning the PTO to review patents that should never have issued. The forum selection provision embodied in section 19.7 of the Agreement addresses only "legal proceedings" and the proper United States District Court in which to file those proceedings. *See also* Ex. A § 19.7, last sentence ("Said court retains jurisdiction of the parties for such purposes."). The Agreement does not mention or prohibit PTO "administrative proceedings," such as reexamination. And this Court certainly could not entertain a patent reexamination even if asked to. Reexamination, an administrative proceeding, cannot be filed in United States District Court – either by the third party requester or by the PTO. *See Joy Techs., Inc. v. Manbeck*, 959 F.2d 226, 229 (Fed. Cir. 1992) (noting that the plaintiff admitted that the PTO could not bring a declaratory judgment action for patent invalidity in district court).

The Federal Circuit's cases draw a clear distinction between "administrative proceedings" in the PTO and "legal proceedings" in a federal court. *See Joy Mfg. Co. v. Nat'l Mine Serv. Co.*, 810 F.2d 1127, 1130 (Fed. Cir. 1987) ("the district court correctly refused to equate a *request for administrative reexamination* ... with filing a suit in a United States Court." (emphasis added)); *Joy Techs*, 959 F.2d at 229 (finding that reexamination is an "administrative proceeding," and that there was "no basis" for the plaintiff "to recharacterize the statutory procedure established by Congress in the reexamination statute" to be akin to federal court litigation).

In a case on point, in *Joy Manufacturing*, the patent owner moved in district court to enforce a settlement agreement. 810 F.2d 1127. The patent owner argued that by filing an *ex parte* reexamination request in the PTO, the licensee had breached a settlement agreement.[5] *Id.* at 1128. The patent owner requested an injunction preventing the third party requester from "further proceeding in the reexamination procedures in the PTO; to withdraw its reexamination requests and to retrieve all documents from the PTO." *Id.* The Federal Circuit concluded that "[t]he settlement agreement by its literal terms [did] not proscribe the conduct of which" the patent owner complained. *Id.* at 1129. Further, in denying the patentee's motion, the Court

---

[5] The agreement in that case stated in pertinent part: "(a) During the term of this Agreement, NATIONAL will not file any suit in any United States Court or any Court in any foreign country challenging or contesting the validity of the Licensed Patents...." *Joy Mfg.*, 810 F.2d at 1129. While the contractual language at issue in the present case is both similar and different than that in *Joy Manufacturing*, the fact that the Agreement in this case uses the language "legal proceedings" and not "administrative proceedings" is dispositive under the Federal Circuit precedent cited above. Also, it is clear from the context of the Agreement that the parties were referring to district court litigation in the use of "legal proceedings." Leading into the provisions of Section 19, the whereas clauses of the 1996 Agreement provide that under a prior ten-year Spaulding-Acushnet November 15, 1990 Settlement Agreement, the parties had agreed "in situations of patent infringement" "prior to filing suit" "first to notify each other of adverse patent claims, and seek a non-litigious resolution thereof, including non-binding mediation, if necessary." (Ex. A, clause A). The parties further noted that, in the disputes settled by the instant agreement, Spaulding and Acushnet had filed actions and counter-actions in separate federal district courts, which actions were then transferred to a third district court, Delaware, the court that the parties adopted as "the United States District Court" and "no other" in which to initiate future legal action (*id.* § 19.7). (*Id.*, clauses B-F).

stated:

> Turning to "patent law," the district court correctly refused to equate "a request for administrative reexamination … with filing a suit in a United States Court. Its reliance on *Etter* as support for this legal conclusion was entirely appropriate. The *Etter* decision turned on the precise issue here, namely that reexamination and civil litigation were distinctly different proceedings.

*Joy Mfg.*, 810 F.2d at 1130 (quoting *In re Etter*, 756 F.2d at 857 ("The intent that reexamination proceedings and court actions involving challenges to validity be distinct and independent is reflected in the legislative history of § 303.")).

Callaway argues that section 19 of the 1996 Agreement prohibits Acushnet to exercise any activities relating to Callaway's patents, except to mediate and then sue in federal court in Delaware. Callaway's argument is unsupported by the language of the contract.

Callaway ignores the fundamental difference between the dispute resolution mechanisms specified in the Agreement and a PTO reexamination. Each of the dispute resolution mechanisms in the Agreement defines ways for the parties to try to resolve their private dispute. None of these provisions purport to constrain in any way a party's ability to seek patents or to avail itself of the PTO and the statutes Congress has enacted regarding the examination and reexamination of patents.[6]

Reexamination is not a 'dispute resolution" process between private parties. *Joy Mfg.*, 810 F.2d at 1130. Hence, it is not prohibited by Section 19 of the Agreement. Reexamination is fundamentally a sovereign government's exercise of its statutory duty to issue valid patents. *See In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) ("When a "substantial question" exists respecting the correctness of [the grant of a patent], it does not conflict but coincides with the nature of the grantee's right when the government reexamines the propriety of the grant it has made, and thereafter reaffirms the grant, substitutes a new grant (amended or new claims), or withdraws the

---

[6] Under Callaway's reading the parties could not seek additional patents or file an interference, or petition the PTO to act in any way, if those additional patents or other PTO action might relate to a dispute. Plainly this is not what the drafters intended.

grant in whole or in part...."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985) ("The reexamination statute's purpose is to <u>correct errors made by the government, to remedy</u> <u>defective governmental (not private) action</u>, and if need be to remove patents that should never have been granted.") (emphasis added); *see also Blacklight Power, Inc. v. Rogan*, 295 F.3d 1269, 1274 (Fed. Cir. 2002) ("The PTO's responsibility for issuing sound and reliable patents is critical to the nation."). Nothing in the 1996 Agreement could even plausibly constrict the PTO's exercise of its statutory authority, or prohibit either party from participating in that process. *See In re Etter*, 756 F.2d at 857 ("litigation and reexamination are distinct proceedings, with ***distinct parties***, purposes, procedures, and outcomes.") (emphasis added).

These cases are dispositive of the present dispute. Here, the 1996 the Agreement states that any "legal proceeding" is to be brought in the United States District Court for the District of Delaware, and no other district court. Callaway brought its case in this district. However, the clause relating to "legal proceedings" does not preclude administrative reexaminations, which are substantially different than "legal proceedings," as recognized by the Federal Circuit in *Joy Mfg.* and *Etter*.

### 3.   Callaway's Broad Reading of the Agreement Renders the Agreement Void on Public Policy Grounds.

In its decision denying Callaway's Petition to Vacate Order Granting Reexamination based on Acushnet's alleged breach of the 1996 Agreement, the PTO found that, if the 1996 Agreement were so broad as to preclude Acushnet from seeking reexamination, it would be void as contrary to public policy. (PTO Decision on Petition to Vacate Order Granting Reexamination, Ex. D at 5.) Although this Court may not be bound by the PTO's decision, Supreme Court precedent strongly favors adherence to the PTO's position on this issue.

A strong public policy supports the PTO's duty to cancel claims that are unpatentable. *See* 35 U.S.C. § 316(a); *Houston Atlas, Inc. v. Del Mar Scientific, Inc.*, 217 U.S.P.Q. (BNA) 1032, 1037 (N.D. Tex. 1982) (noting that there is an important public interest "in eliminating worthless patents"). The Federal Circuit has recognized that "[w]hen Congress voted the

reexamination statute into law, it had before it a voluminous record to the effect that the procedure was an important step forward for the United States patent system and for the public interest that the system is charged to serve." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985).[7]  The public interest "lies in having valid patents upheld and invalid patents rendered invalid, and <u>hence patents should be reexamined when a substantial question of patentability is raised</u>." *In re Baker Hughes*, 215 F.3d 1297, 1302 (Fed. Cir. 2000) (emphasis added); *see also* 37 C.F.R. § 1.555 ("A patent by its very nature is affected with a public interest.").  The Federal Circuit has held that "[t]he innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of a patent thought 'doubtful.'" *In re Etter*, 756 F.2d at 857.

A broad contractual provision preventing a party from seeking reexamination of <u>any</u> patents held by the parties involved in a dispute between them is thus void as being contrary to public policy. *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (concluding that a forum selection clause, while generally enforceable, will not be enforced where it violates the strong public policy of the forum in which suit is brought); *Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("The relevant principle is well established: a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement."); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987) ("[A] court may refuse to enforce contracts that violate ... public policy."); *Suter v. Munich Reinsurance*, 223 F.3d 150, 155-56 (3d Cir. 2000) (*citing Bremen* for the proposition that federal forum selection clauses should not be enforced where they are contrary to public policy.)  This applies with even greater force when, as in the present case, it is an alleged successor to a party that entered the settlement agreement who is attempting to prevent the reexamination of patents.

---

[7] Even though Congress had provided for the *ex parte* reexamination procedures, it found that those procedures did not adequately address these public policy interests.  Therefore, in 1999 Congress provided for a new *inter partes* reexamination procedure to be administered by the Director of the PTO.  145 CONG. REC. E1789-E1790 (Aug. 5, 1999).

Although the 1996 Agreement addresses only dispute resolving "legal proceedings" and is silent regarding reexamination proceedings, if the Court construes the 1996 Agreement as precluding the parties from seeking reexamination of any patents owned or controlled by the parties, then paragraph 19 is far too broad, and void as contrary to public policy. To construe a mediation and forum selection clause in the manner advanced by Callaway leaves out the very entity that is charged with protecting the public interest. The public has a strong interest in administrative agencies correcting errors. If a patent is indeed "worthless," there is a strong public policy in not allowing it to be deemed "presumed valid" in a court of law. The presumption of validity is a formidable obstacle to overcome, and the patentee should not enjoy that right when a substantial question of patentability is known to exist and was simply not known to the PTO when it initially granted the patent.

### 4.     Callaway Never Indicated that It Considered Acushnet's Reexamination Requests a Breach of the 1996 Agreement.

It is also undisputed that Callaway *never* indicated to Acushnet during any of its negotiations that it considered Acushnet's intent to request reexamination of the patents-in-suit as a breach of the 1996 Agreement's dispute resolution clause. [D.I. 24, Nauman Dec. at ¶ 7]. Indeed, during the negotiations, Callaway proposed that it would ask the PTO to reexamine one of Acushnet's patents. [*Id.* at ¶¶6-7]. On January 17, 2006, Acushnet filed the reexamination request before Callaway filed the original Complaint in this action on February 9, 2006. Despite knowing that Acushnet requested that the PTO reexamine the patents-in-suit, Callaway filed its complaint against Acushnet without including a breach of contract claim – consistent with its course of dealings with Acushnet that it did not consider the reexamination request a breach.

It was only when the PTO decided to reexamine the patents-in-suit, and denied Callaway's Petition to Vacate, that Callaway then sought to include the breach of contract claim and enjoin Acushnet from proceeding in the reexamination. Thus, the course of dealings between the parties indicates that Acushnet did not breach the 1996 Agreement.

## VI.    CONCLUSION

Therefore, for all of the foregoing reasons, Acushnet requests that its Motion for

Summary Judgment of No Breach of Contract be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle                              By:    */s/ David E. Moore*
Kenneth W. Donnelly                                   Richard L. Horwitz (#2246)
Brian A. Rosenthal                                    David E. Moore (#3983)
HOWREY LLP                                            Hercules Plaza 6th Floor
1299 Pennsylvania Avenue, N.W.                        1313 N. Market Street
Washington, D.C. 20004                                Wilmington, DE 19899
Tel: (202) 783-0800                                   Tel: (302) 984-6000
                                                      rhorwitz@potteranderson.com
Dated: August 7, 2007                                 dmoore@potteranderson.com
Public Version Dated: August 14, 2007
812421 / 30030                                 *Attorneys for Defendant Acushnet Company*

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 14, 2007, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on August 14, 2007, I have Electronically Mailed the document to

the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030