## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY    )
                         )
            Plaintiff,   )        C.A. No. 06-91 (SLR)
                         )
        v.               )        **JURY TRIAL DEMANDED**
                         )
ACUSHNET COMPANY,        )        **PUBLIC VERSION**
                         )
            Defendant.   )
                         )

## APPENDIX IN SUPPORT OF ACUSHNET'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NOS. 6,210,293; 6,506,130; 6,503,156; AND 6,595,873

### VOLUME 4 OF 4

### EXHIBITS 45 TO 55

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for Defendant Acushnet Company*

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: August 7, 2007
Public Version Dated: August 14, 2007

# TABLE OF CONTENTS

| | |
|---|---|
| Appendix A | '293 Claim Chart |
| Appendix B | '130 Claim Chart |
| Appendix C | '156 Claim Chart |
| Appendix D | '873 Claim Chart |
| Exhibit 1 | '293 Patent |
| Exhibit 2 | '130 Patent |
| Exhibit 3 | '156 Patent |
| Exhibit 4 | '873 Patent |
| Exhibit 5 | Proudfit '187 |
| Exhibit 6 | Science and Golf II |
| Exhibit 7 | Science and Golf III |
| Exhibit 8 | Wu '67 |
| Exhibit 9 | Bellis Decl |
| Exhibit 10 | Nesbitt '193 |
| Exhibit 11 | AC0072945 |
| Exhibit 12 | Molitor '637 |
| Exhibit 13 | Molitor '751 |
| Exhibit 14 | |
| Exhibit 15 | Kolychek covered golf balls '282 |
| Exhibit 16 | |
| Exhibit 17 | |
| Exhibit 18 | Love Decl. |
| Exhibit 19 | USGA Conforming Balls |
| Exhibit 20 | '428 Patent |
| Exhibit 21 | |
| Exhibit 22 | |
| Exhibit 23 | |
| Exhibit 24 | |
| Exhibit 25 | |
| Exhibit 26 | CW0324119 |
| Exhibit 27 | ASTM D 2240 |
| Exhibit 28 | Callaway Response to Office Action on '293 95000120 |
| Exhibit 29 | '873 file history |
| Exhibit 30 | |
| Exhibit 31 | GB2248067A[1] |
| Exhibit 32 | |
| Exhibit 33 | Wu Excerpts |
| Exhibit 34 | |
| Exhibit 35 | Office Action re '29 |
| Exhibit 36 | |
| Exhibit 37 | |
| Exhibit 38 | Joint Claim Chart |
| Exhibit 39 | AC0116196 |
| Exhibit 40 | |

Exhibit 41        PTO Bd of Patent App.
Exhibit 42
Exhibit 43
Exhibit 44        AC0000616.UR.
Exhibit 45        CW00512231.
Exhibit 46        CW00615792
Exhibit 47        CW 0302942-947
Exhibit 48
Exhibit 49        Titlesit Press Web
Exhibit 50
Exhibit 51
Exhibit 52
Exhibit 53
Exhibit 54
Exhibit 55        File history for the '873

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 14, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 14, 2007, I have Electronically Mailed the document to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
shuman@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030

# EXHIBIT 45

**Properties of SURLYN® ionomer resins (nominal values)—TABLE II** [1]

| PROPERTY [1] | ASTM METHOD | SURLYN® 8020 (1856) 1.24 | SURLYN® 8528 (1559) .94 | SURLYN® 8660 (1559) 1.27 | SURLYN® 8920 (1707) 1.05 | SURLYN® 8940 (1605) 1.00 | SURLYN® 9020 (1855) 1.38 | SURLYN® 9450 (1652) 1.07 | SURLYN® 9520 (1659) 1.15 | SURLYN® 9650 (1557) 1.16 | SURLYN® 9720 (1801) 1.27 | SURLYN® 9910 (1796) 1.35 | SURLYN® 9950 (1705) 1.29 | SURLYN® 9970 (1792) 1.33 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **General** | | | | | | | | | | | | | | |
| Cation Type, Na or Zn | | Na | Na | Na | Zn | Na | Zn | Zn | Zn | Zn | Zn | Zn | Zn | Zn |
| Melt Flow Index, g/10 min | D-1238 | 1.0 | 1.3 | 10.0 | 0.9 | 2.8 | 1.0 | 5.5 | 1.1 | 5.5 | 1.0 | 0.7 | 5.5 | 14.0 |
| Specific Gravity | D-792 | 0.95 | 0.94 | 0.94 | 0.95 | 0.95 | 0.96 | 0.95 | 0.95 | 0.96 | 0.96 | 0.97 | 0.96 | 0.96 |
| Density, lb/in³ | | 0.034 | 0.034 | 0.034 | 0.034 | 0.034 | 0.035 | 0.034 | 0.034 | 0.034 | 0.035 | 0.035 | 0.035 | 0.034 |
| Area Yield, m²/lb @ 25 mm (0.010 in) | | 4.1 (19.8) | 4.2 (20.1) | 4.2 (20.1) | 4.1 (19.8) | 4.1 (19.8) | 4.1 (19.8) | 4.2 (20.1) | 4.1 (19.8) | 4.2 (20.0) | 4.1 (19.8) | 4.1 (19.8) | 4.1 (19.8) | 4.1 (19.8) |
| **Toughness** | | | | | | | | | | | | | | |
| Tensile Impact @ -29°C (73°F), kJ/m² (lb·ft/in²) | D-3025 | 1325 (630) | 1160 (550) | 730 (345) | 865 (410) | 1020 (485) | 1055 (610) | 925 (440) | 1190 (570) | 870 (460) | 1200 (570) | 1020 (485) | 1020 (485) | 730 (345) |
| Tensile Impact @ -40°C (-40°F), kJ/m² (lb·ft/in²) | D-1822S | 870 (415) | 935 (445) | 565 (270) | 565 (270) | 760 (360) | 760 (360) | 560 (265) | 1020 (485) | 895 (425) | 895 (425) | 895 (425) | 895 (425) | 730 (345) |
| Notched Izod, J/m (lb·ft/in) | D-256 | No break | 810 (11.4) | 855 (15.0) | 635 (11.9) | 1025 (19.2) | No break | No break | 540 (10.1) | 775 (14.5) | No break | 355 (6.6) | No break | No break |
| **Mechanical** | | | | | | | | | | | | | | |
| Tensile Strength @, MPa (kpsi) | D-638 | 31.0 (4.5) | 29.0 (4.2) | 23.4 (3.4) | 37.2 (5.4) | 33.1 (4.8) | 25.2 (3.6) | 21.4 (3.1) | 25.5 (3.7) | 22.1 (3.2) | 30.2 (4.4) | 24.8 (3.6) | 28.3 (4.1) | 22.1 (3.2) |
| Yield Strength @, MPa (kpsi) | D-638 | ~1 (~1.8) | 12.4 (1.8) | 12.4 (1.8) | 15.2 (2.2) | 15.9 (2.3) | 12.4 (1.8) | 13.1 (1.9) | 12.4 (1.8) | 12.4 (1.8) | 11.7 (1.7) | 12.8 (1.9) | 12.4 (1.8) | 12.4 (1.8) |
| Elongation, % | D-638 | 530 | 450 | 470 | 350 | 470 | 510 | 500 | 410 | 410 | 460 | 290 | 410 | 460 |
| Ross Flex %, Pierced — Cycles to Failure @ 21°C (73°F) | D-1052 | 570,000 | 3000 | 1500 | 500 | 1000 | 90,000 | 1500 | 1500 | 1500 | 3000 | 1000 | 3000 | 3000 |
| MIT Flex %, Cycles to Failure | Du Pont | 50,000 | <100 | <100 | <100 | <100 | 30,000 | <100 | <100 | <100 | <100 | <100 | <100 | <100 |
| | D-790 | 1000 | 2100 | 600 | 600 | 1200 | 3400 | 3400 | 4600 | 1700 | 3400 | 1000 | 1000 | 3300 |
| Flexural Modulus, MPa (kpsi) | D-790 | 100 (14) | 220 (32) | 320 (34) | 250 (55) | 350 (51) | 100 (14) | 130 (19) | 260 (38) | 220 (32) | 250 (36) | 330 (48) | 250 (37) | 190 (28) |
| Hardness, Shore D | D-2240 | 56 | 60 | 62 | 66 | 65 | 54 | 54 | 63 | 63 | 63 | 64 | 65 | 62 |
| Abrasion Resistance, NBS Index | D-1630 | 150 | 600 | 170 | 840 | 370 | 220 | 170 | 290 | 270 | 360 | 610 | 130 | 130 |
| **Optical** | | | | | | | | | | | | | | |
| Haze @ .94 cm (0.25 in) Thick Molding, % | D-1003A | 19 | 6 | 11 | 4 | 5 | 7 | 31 | 26 | 27 | 12 | 15 | 8 | 7 |
| **Thermal** | | | | | | | | | | | | | | |
| Heat Deflection Temp @ 455 kPa (66 psi), °C (°F) | D-648 | 40 (104) | 44 (111) | 42 (108) | 45 (113) | 44 (111) | 40 (104) | 41 (106) | 42 (108) | 46 (115) | 43 (109) | 44 (111) | 47 (117) | 40 (104) |
| Vicat Point, °C — Rate B | D-1525/270 | 61 (142) | 57 (135) | 53 (128) | 63 (145) | 63 (145) | 79 (174) | 79 (174) | 74 (165) | 48 (118) | 71 (160) | 56 (131) | 66 (151) | 66 (151) |
| Melting Point, °C (°F) | DTA* | 92 (198) | 94 (203) | 95 (203) | 84 (184) | 83 (184) | 81 (178) | 81 (178) | 96 (205) | 92 (198) | 91 (196) | 92 (198) | 88 (191) | 88 (191) |
| Freezing Point, °C (°F) | DTA* | 76 (167) | 76 (167) | 74 (165) | 52 (126) | 70 (158) | 54 (147) | 54 (147) | 74 (165) | 73 (163) | 76 (167) | 64 (148) | 74 (165) | 66 (151) |
| Coef of Therm. Exp. (-20°C to 32°C), $10^{-5}$ cm/cm/°C | D-696 | 17 | 17 | 14 | 14 | 17 | 16 | 16 | 16 | 16 | 16 | 14 | 14 | 14 |
| Flammability, minimum (inches) | D-635 | 22.9 (0.9) | 22.9 (0.9) | 25.4 (1.0) | 25.4 (1.0) | 25.4 (1.0) | 25.4 (1.0) | 17.8 (0.7) | 17.8 (0.7) | 25.4 (1.0) | 20.3 (0.8) | 20.3 (0.8) | 22.9 (0.9) | 27.9 (1.1) |
| Flammability, (Motor Veh. Safety Standard 302) | | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass |
| Thermal Conductivity, $10^{-4}$ cal/cm²sec°C/cm | | 5.9 | 6.0 | 5.9 | 5.7 | 5.9 | 5.8 | 5.9 | 6.0 | 5.8 | 6.0 | 5.8 | 5.8 | 5.8 |
| Specific Heat, cal/g/°C (BTU/lb/°F) | | | | | | | | | | | | | | |
| —at 30°C (86°F), X | | | | | | | 0.43 | | | | | | | |
| —at 40°C (104°F), X | | | | | | | 0.55 | | | | | | | |
| —at Melting Point, X | | | | | | | 0.88 | | | | | | | |
| —at 150°C (302°F), X | | | | | | | 0.55 | | | | | | | |

1. The physical properties reported here are intended, primarily, to allow comparisons between resins in our SURLYN® product line. It should be recognized that even ASTM testing methods allow alternative methods for sample preparation, or give a given property. Data determined by various alternatives should not necessarily be compared. Unless test conditions are adequately defined, it may be misleading to directly compare values at various supplier product data.

2. SURLYN® 9320 is allowed for wire and cable applications. It has the same UL ratings and other properties as 9721 but with antioxidant added.

3. Material dried 16 hours in a vacuum.

4. Type IV Bars, compression molded, cross head speed 5.0 cm/min. (2 in/min).

5. Nondistinguishable.

6. Compression molded samples 3.2 mm (0.125 in) thick, placed 2.5 mm (0.10 in) wide.

7. Accelerated stress crack test on a strip 25 mil thick, tested through 90° at 70°C, cycles loaded with 1 kg load in tension = 94 bends.

8. DTA = Differential thermal analysis.

HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

CW 00512231

# EXHIBIT 46

G-5

# Estane®
*Polyurethanes*

# POLYMER AND COMPOUND PRODUCT LINE

# BFGoodrich
## Chemical Division

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 00615791

| Estane Polyurethane Polymers | Specific Gravity ASTM D 792 | Hardness ASTM D 2240 pts. | Hardness ASTM D 2240 pts. | Tensile Strength ASTM D 412 MPa | Tensile Strength ASTM D 412 psi | Elongation % | Modulus at 100% Elongation MPa | Modulus at 100% Elongation psi | Modulus at 300% Elongation MPa | Modulus at 300% Elongation psi | Tear Propagation kN/m / lbf/in | Graves Tear ASTM D 1004 kN/m | Graves Tear ASTM D 1004 lbf/in | Viscosity mPa·s (cP) | Suggested Uses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Polymers 5701 F-1 | 1.20 | 87A | 70A | 37.9 | 5,500 | 430 | 4.8 | 700 | 11.7 | 1,700 | 49.0 | 63.0 | 360 | 300–700 | Binders, coated fabrics, adhesive blending resins. |
| 5702 F-1 | 1.20 | 70A | 70A | 24.1 | 3,500 | 655 | 1.4 | 200 | 2.8 | 400 | 22.8 | 30.6 | 175 | 180–280 | Fabric coating, "tie coat" for transfer coating process, blending resin for coatings and inks. |
| 5702 F-2 | 1.20 | 70A | 70A | 24.1 | 3,500 | 655 | 1.4 | 200 | 2.8 | 400 | 22.8 | 30.6 | 175 | 230–450 | |
| 5703 F-1 | 1.20 | 70A | 70A | 24.1 | 3,500 | 655 | 1.4 | 200 | 2.8 | 400 | 22.8 | 30.6 | 175 | 180–280 | Shoe construction adhesives, commercial adhesives, fabric lamination tape, sheet adhesives, binders. |
| 5703 F-2 | 1.20 | 70A | 70A | 24.1 | 3,500 | 655 | 1.4 | 200 | 2.8 | 400 | 22.8 | 30.6 | 175 | 230–450 | |
| 5707 F-1 | 1.20 | 95A, 70C, 50D | 80A | 52.7 | 7,650 | 330 | 11.0 | 1,600 | 42.2 | 6,130 | 63.0 | 99.8 | 570 | 670–1,200 | Binders, outerwear, leather finishes by direct coating. Gloves, rainwear by transfer coating. Fabric coating for crash, boots, purses and luggage, fine film coating. |
| 5708 F-1 | 1.20 | 87A | | 47.5 | 6,900 | 510 | 4.8 | 690 | 14.5 | 2,100 | 75.3 | 99.1 | 515 | 420–780 | Fabric coating. |
| 5710 F-1 | 1.20 | 78A | | 54.4 | 7,900 | 415 | 3.7 | 535 | 13.4 | 1,950 | 20.1 | 52.5 | 300 | 400–800 | Fabric coating by direct and transfer methods; binders, commercial coating systems. |
| 5714 F-1 | 1.11 | ~80A | | 39.1 | 5,670 | 520 | 4.1 | 600 | 8.2 | 1,190 | 33.3 | 53.4 | 305 | 600–1,200 | Fabric coating, tarpaulins. |
| 5715 | 1.20 | 97A | 63D | 42.4 | 6,150 | 300 | 9.6 | 1,400 | 42.4 | 6,130 | 21.0 | 45.5 | 260 | 100–200 | Binders, leather dressing, commercial coatings, paper and foil coatings. |

| Estane Polyurethane Adhesive Polymers | Specific Gravity ASTM D 792 | Hardness ASTM D 2240 pts. | Hardness ASTM D 2240 pts. | Tensile Strength ASTM D 412 MPa | Tensile Strength ASTM D 412 psi | Elongation % | Modulus at 100% Elongation MPa | Modulus at 100% Elongation psi | Modulus at 300% Elongation MPa | Viscosity mPa·s (cP) | Stiffness –29°C (–20°F) MPa | Stiffness –29°C (–20°F) psi | Heat Resistance 32°C (171°F) MPa | Heat Resistance 32°C (171°F) psi | Vicat Softening Point ASTM D 1525 °C | Open Tack Time | Suggested Uses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5711 | 1.20 | 95A | 85A | 42.7 | 6,200 | 650 | 6.4 | 930 | 7.5 | 1,800–5,000 | 15.8 | 2,300 | 6.2 | 900 | 116 | Short | High speed assembly of footwear where manual tooling. |
| 5712 | 1.20 | 95A | 75A | 38.6 | 5,600 | 660 | 5.5 | 800 | 8.6 | 2,100–3,000 | 9.6 | — | 6.1 | 1,350 | 109 | Medium | water-based laminants, hot melt sealing, heat activated "open tack" sealing, hot melt |
| 5715 | 1.20 | 93A | | 41.3 | 6,000 | 450 | 4.1 | 580 | 25.5 | 100,000 | 516.8 | 75,000 | 55.1 | 8,000 | 257 | Long | adhesives in sheet and tape form. |
| 5716 | 1.20 | 95A | 93A | | 6,000 | 350 | | | | 17,000 | 826.0 | 120,000 | 82.7 | 12,000 | 186 | | |

| Estane Polyurethane Compounds | Specific Gravity ASTM D 792 | Hardness ASTM D 2240 pts. | Hardness ASTM D 2240 pts. | Tensile Strength ASTM D 412 MPa | Tensile Strength ASTM D 412 psi | Ultimate Elongation % ASTM D 412 | Modulus at 100% Elongation MPa | Modulus at 100% Elongation psi | Modulus at 300% Elongation MPa | Modulus at 300% Elongation psi | Stiffness –29°C (–20°F) MPa | Stiffness –29°C (–20°F) psi | Stiffness 23°C (73°F) MPa | Stiffness 23°C (73°F) psi | Melt Activation °F | Compression Set ASTM D 395 at 70°C, % | Taber Abrasion CS17 Wheel 1,000 g Weight Loss, mg per 1,000 Cycles | Suggested Uses |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Molding Compounds 58103 / 58110 / 58113 | 1.20 / 1.21 / 1.22 | 78A / 75A / 85D / 55D | | 28.2 / 34.5 / 34.5 | 4,100 / 5,000 / 5,000 | 330 / 480 / 500 | 11.7 / 9.3 / 13.1 | 1,700 / 1,350 / 1,900 | 25.8 / 9.6 / 25.5 | 3,750 / 1,400 / 3,700 | 15.8 / 56 / 826.0 | 2,300 / ... / 120,000 | 6.2 / 55.1 / 82.7 | 900 / 8,000 / 12,000 | 116 / 240 / 186 | 25 / 69 / 67 | —/ 0.2 / 3.7 | Injection molding. |
| General Purpose Compounds for Molding and Extrusion 58091 / 58092 / 58300 | 1.16 / 1.25 / 1.20 | 70D / 55A / 80A | 48D | 27.6 / 34.5 / 34.5 | 4,000 / 5,000 / 5,000 | 380 / 450 / 730 | — / 21.4 / — | — / 3,100 / — | 9.6 / 21.4 / 6.9 | 1,400 / 3,100 / 1,000 | — / 9.0 / — | — / 1,300 / — | 10.0 / 15.8 / 4.0 | ... / 2,300 / 590 | 212 / 187 / 162 | 100 / 65 / 69 | 20 / 2.6 / 3.4 | Extrusion—tubing, shapes, sheet. Injection molding, automotive parts, appliance and industrial parts. Injection molding, extrusion-film, sheet, tubing and shapes. Extrusion, injection molding—hose, and wire jacketing, molded junctions. |
| Compounds for Calendering, Zimmer and Bera Coating, and Extrusion 58600 / 58610 / 58630 | 1.22 / 1.22 / 1.14 | 93A / 87A / 44A | | 58.6 / 57.9 / 44.8 | 8,500 / 8,400 / 6,500 | 410 / 520 / 510 | 1.4 / 5.5 / 4.5 | 1,550 / 800 / 650 | 33.8 / 14.5 / 16.3 | 4,900 / 2,100 / 1,500 | — / — / — | — / — / — | 11.2 / 6.4 / 4.1 | 1,700 / 930 / 590 | 85 / 70 / 70 | — / — / — | 4 / 7.5 / 4 | Calenders, Zimmer and Bera coaters. Industrial coated fabrics and films. Used extrusion. |
| Flame-Retarded Extrusion Compounds 58950 / 58970 | 1.28 / 1.18 | 97A / 85D | 90A | 13.1 / 29.6 | 4,000 / 4,300 | 550 / 650 | 4.8 / 11.0 | 700 / 1,000 | 14.5 / 14.5 | 2,100 / 2,100 | 16.5 | 2,400 | 5.5 | 800 | 75 / 107 | 84 / 78 | 4.2 / 3 | Flame-retarded extrusions. |
| Extrusion Compounds for Applications Regulated by FDA and USDA 58271 / 58277 | 1.21 / 1.25 | 86A / 95A | 48D | 34.5 / 34.5 | 5,000 / 5,000 | 570 / 410 | 8.3 / 11.0 | 1,200 / 1,600 | 8.3 / 27.6 | 1,200 / 4,000 | 537.0 / 523.6 | 78,000 / 76,000 | 19.0 / 14.5 | 2,760 / 2,100 | 70 / 109 | 67 / 65 | 2.5 / 2.6 | Extrusion. |

HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

CW 00615792

Sp. Gr.  1605   .950 (Virgin)

Sp. Gr.  1855   .960 — Sp. Gr. + TiO₂  =  .980

Sp. Gr.  Estane   1.21 (Virgin) Sp. Gr. + TiO₂  =  1.23

Concept  A   outer cover   1855  Surlyn

Concept  B      "       "   58134  Estane

Concept  A

    Inner shell   3.904 × .950   =   3.709 grams

    Outer shell   7.580 × .980   =   7.428

    Total cover                       11.137 grams.

less Ball wgt (unpainted)           — 45.303

∴ Core should weigh 34.2 grams nominal (Clebound.)

    "       "     "     "    35.0     "    "    "    (molded) + .6g.

Concept  B                          34.8    "

    Inner shell   3.904 × .950   =   3.709 g.

    Outer shell   7.580 × 1.23   =   9.323 g.

    Total cover                      13.032

    less ball wgt (unpainted)        45.303

                                     32.27

∴ Core should weigh 32.27 (Clebound) + .6g.

                   33.07 ( molded ) + .6g.

                   32.9

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 00615810

# EXHIBIT 47

5314187

| SERIAL NUMBER (Series of 1970) | 07/905895 | PATENT DATE MAY 24 1994 | | PATENT NUMBER | |
|---|---|---|---|---|---|

| NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 895 | 06/29/92 | 273 | | 2204 1512 | Zemel |

. PROUDFIT, HUMBOLDT, TN.

CONTINUING DATA*************
.IED      THIS APPLN IS A CIP OF   07/733,789 07/26/91     abnd

FOREIGN/PCT APPLICATIONS***********
.ERIFIED

FOREIGN FILING LICENSE GRANTED 07/16/92

| Foreign priority claimed ☐ yes ☐ no 35 USC 119 conditions met ☐ yes ☐ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| Verified and Acknowledged Examiner's Initials | | TN | 3 | 27 | 4 | $902.00 | |

CHESTNUT, Attorney John W. Chestnut
Allegretti, Fallon, Lung mess & chestnut
120 SOUTH WACKER DR. STE. 960
CHICAGO, IL 60606-4002

GOLF BALL WITH IMPROVED COVER

U.S. DEPT. of COMM.-Pat. & TM Office—PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE | CLAIMS ALLOWED | |
|---|---|---|---|
| 8/26/93 | I Zemel Assistant Examiner  W.M. Docket Clerk | Total Claims 25 | Print Claim 1 |
| ISSUE FEE | JAMES J. SEIDLECK SUPERVISORY PATENT EXAMINER GROUP 150 Primary Examiner | DRAWING | |
| Amount Due $170.00  Date Paid 9-20-93 | | Sheets Drwg. 3  Figs. Drwg. 4  Print Fig. | |
| ISSUE CLASSIFICATION | | ISSUE BATCH NUMBER P97 | |
| Label Area | Class 273  Subclass 235 R. | | |

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436

CW 0302865

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application of: | ) | GOLF BALL WITH IMPROVED COVER |
| | ) | |
| JAMES R. PROUDFIT | ) | Group 1512 |
| | ) | |
| Serial No. 905,895 | ) | Examiner: I. Zemel |
| | ) | |
| Filed: June 29, 1992 | ) | |

Hon. Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

I hereby certify that this paper is being
deposited with the United States Postal Service as
first class mail in an envelope addressed to:
Commissioner of Patent and Trademarks, Washington
D. C. 20231 on __July 15, 1993__
(Date of Deposit)
__John W. Chestnut__, Reg. No. 24,096
Name of applicant, assignee, or
Registered Representative
__John W. Chestnut__
Signature
7-15-93

## DECLARATION OF JAMES R. PROUDFIT

I, James R. Proudfit, declare as follows:

1.    I am the named inventor in this application, and I am Research Associate of Wilson Sporting Goods Co., the assignee of this application.

2.    Attached hereto as Exhibits A-H, are comparisons between commercial golf balls made in accordance with this invention and prior commercial golf balls.  Exhibits A-H were prepared under my direction for distribution at a Wilson sales meeting.  The following golf balls are referred to in the attached exhibits.  A two-piece golf ball includes a solid core and a cover.  A three-piece golf ball includes a center, a layer of elastic linings, and a cover.

| Name | Description |
|---|---|
| Ultra Tour Balata | Two-piece balata/Surlyn covered golf ball made by Wilson in accordance with this application |

CW 0302942

| | |
|---|---|
| Ultra 90 and Ultra 100 | Surlyn covered two-piece golf balls made by Wilson |
| Ultra Competition 90 and Ultra Competition 100 | Surlyn covered two-piece golf balls made by Wilson. The cover includes a blend of hard and soft Surlyn. |
| Titleist Tour 100 | Three-piece balata covered golf ball made by Titleist (Acushnet) |
| Precept Pro Model | Three-piece balata covered golf ball made by Bridgestone |
| Maxfli HT 100 | Three-piece balata covered golf ball made by Dunlop |
| Tour Edition 100 | Two-piece Surlyn covered golf ball made by Spalding |

3.    The Titleist Tour 100 and Maxfli HT 100 are popular golf balls on the professional golf PGA Tour. Each of those balls is advertised as a balata covered ball, and I do not believe that either cover includes any Surlyn or other ionomer resin. The Precept Pro Model is also advertised as a balata covered ball, and I do not believe that the cover includes any ionomer resin.

4.    The Spalding Tour Edition 100 is also used by some professional golfers. I believe that this cover is made from a relatively soft ionomer resin and does not include any balata.

5.    The Ultra and Ultra Competition golf balls are prior golf balls made by Wilson. The covers of these balls are made from Surlyn ionomer resins and do not include any balata.

6.    Exhibits A and B refer to the moment of inertia of the foregoing golf balls. Surlyn covered two-piece golf balls generally have a higher moment of inertia than balata covered

-2-

CW 0302943

three piece balls.  It is harder to stop the spin of a spinning ball having a high moment of inertia, and such a ball will retain its spin better after impact with the ground.  The Surlyn/balata two-piece Ultra Tour Balata ball has a moment of inertia which is comparable to Surlyn covered two-piece balls and which is significantly higher than the balata covered three-piece balls.

7.    Exhibits C-F refer to infrared spectroscopy data of the outer surface of some of the foregoing balls.

8.    Exhibit G compares spin, moment of inertia, and durability of the three Wilson balls.  The Surlyn covered Ultra and Ultra Competition travel somewhat farther when hit by a driver than the balata/Surlyn Ultra Tour Balata ball.  However, the Ultra Tour Balata ball has a much higher spin when hit with either a driver or a 9 iron.  The cut resistance of the balata/Surlyn covered ball is almost as good as the Surlyn covered balls, and the abrasion resistance of the balata/Surlyn covered balls is better than the Surlyn balls.  That is surprising because the outer layer of the balata/Surlyn cover is primarily balata, and the balata ordinarily has much poorer cut resistance and abrasion resistance than Surlyn.

9.    Exhibit H compares four competitive golf balls which are promoted for use by skilled golfers who traditionally have preferred balata covered balls over Surlyn covered balls.  The Titleist Tour 100 and Dunlop HT balls are advertised as balata covered balls.  I believe that the Tour Edition 100 ball

-3-

CW 0302944

has a cover which is formed from soft ionomer resin.  Exhibit H
shows that the spin rate of the balata/Surlyn Ultra Tour Balata
ball is comparable to the spin rates of the balata Titleist Tour
100 and balata Dunlop HT 100 balls.  However, the cut resistance
and abrasion resistance of the balata/Surlyn Ultra Tour Balata
ball is significantly better than the cut resistance and abrasion
resistance of the other balls.

10.  Cut resistance as referred to in Exhibits G and H
was measured by a drop test machine which was developed to
simulate an Iron Byron swing machine swinging a 9 iron at a speed
of 70 mph and striking the ball just above the centerline.  A
photograph of the drop tester is attached as Exhibit I.  The drop
tester consists of a 4 kilogram mass with a simulated blade of a
9-iron that is suspended 32" above the ball under test.  When the
release is pulled, the mass falls and strikes the ball.  During
its descent the mass has an automatic catch mechanism that is
triggered to prevent the ball from being struck on the rebound.
The height of the drop and mass of the weight were calculated to
provide the same momentum upon impact as that provided by the
Iron Byron system.  Balls tested on each system produced similar
markings due to the impact.  Each ball is struck only once and is
then removed from the fixture for evaluation.  The ball then gets
a scale rating depending on the severity of the mark or cut.

11.  Abrasion resistance in Exhibits G and H was
measured by using a abrader box to simulate a golf ball that has

-4-

CW 0302945

been hit against a cart path or tree or has been struck out of a
sand trap. A photograph of the abrader box is attached as
Exhibit J. The abrader box is a 10-3/4" hexagonal by 12" deep
box that is lined with 100 grit sandpaper on the sides.
Contained in the bottom of the box is a 9-5/8" rotating disk that
is covered with 220 grit sandpaper and is driven by an external
motor at 1725 revolutions per minute. This provides a spinning
and throwing motion to simulate an actual golf ball in flight.
Eight balls at a time are placed in the abrader box and tested
for 20 seconds. At least one of each ball under test is placed
in the box for each run. After the test the balls are evaluated
for surface appearance and scuff resistance.

      12. Exhibits K-N are photographs of three of each of
the following balls which were tested for cut resistance.

| Exhibit | Description |
| --- | --- |
| K | balata/Surlyn Ultra Tour Balata balls |
| L | balata Titleist Tour 100 balls |
| M | Surlyn Ultra balls |
| N | same balata composition as Exhibit K but no inner layer of Surlyn |

      13. The line of impact of the wedge on each ball is
between the two black lines. The cut in each of the balata
Titleist Tour 100 balls is clearly evident. The cover is cut
completely through, and the elastic windings are clearly visible.
The balls are not satisfactory for play and would be discarded by
a golfer. The balata/Surlyn Ultra Tour Balata balls and the

-5-

CW 0302946

Surlyn Ultra balls are not cut and exhibit only slight marring. The balls are playable, and in my opinion most average golfers would continue to play with them.

14.   The balata layer of the Ultra Tour Balata ball also includes polybutadiene and the other ingredients which are listed in Table 7 of the application in addition to synthetic balata.   Exhibit N is a photograph of three balls which includes a single layer cover which is formed from the same composition which is used to make the outer balata layer of the Ultra Tour Balata ball.   After being tested for cut resistance, the single layer cover of each ball was cut cleanly through to the solid core.

15.   I hereby declare that all statements made herein of my knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under §1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Dated: 9 July 1993          James R. Proudfit

-6-

CW 0302947

# EXHIBIT 48

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 49



## Titleist Pro V1

The new Titleist Pro V1® golf ball is designed for serious golfers of all levels that demand Tour-validated technology and performance. Featuring an improved, higher coverage 392 dimple design, along with a new staggered-wave parting line and exclusive A.I.M. (Alignment Integrated Marking)™ alignment, the new Pro V1 golf ball provides long, consistent distance with the driver and long irons, while maintaining soft feel and high performance into and around the green with Drop-And-Stop™ control.

- New, staggered-wave parting line – longer distance from enhanced ball flight
- New, higher coverage 392 dimple design – penetrating trajectory for long, consistent distance
- New, A.I.M. (Alignment Integrated Marking) alignment – integrated alignment guide for improved putting alignment
- Longer driver distance
- Soft compression for outstanding feel

The new Pro V1 is a Urethane Elastomer™ covered 3-piece multi-component golf ball featuring enhanced aerodynamics with slightly higher flight for longer distance, soft feel and Drop-And-Stop™ control.

| Comparison | Specifications | |
|---|---|---|
| Core | Material | Polybutadiene |
| | Type | Solid |
| | Diameter | 1.530" |
| Casing | Material | Ionomer |

# Titleist: Products: Golf Balls: Titleist Pro V1

- Drop-And-Stop control
- The most durable of all Titleist Tour-played golf balls

MSRP: $58

| | |
|---|---|
| Thickness | .045" |
| Cover | Urethane Elastomer |
| Thickness | .030" |
| Composition | |
| Dimples | |
| Shape | Spherical |
| Pattern | Icosahedral |
| Parting Line | Staggered Wave |
| Total number | 392 |
| Number of layers | 5 |

# EXHIBIT 50

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 51

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 52

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 53

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 54

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 55



PW 7042093

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

**December 01, 2006**

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:

APPLICATION NUMBER: *09/776,278*
FILING DATE: *February 02, 2001*
PATENT NUMBER: *6,595,873*
ISSUE DATE: *July 22, 2003*

By Authority of the

**Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office**

M. Tavec

**M. TARVER**

**Certifying Officer**

02-05-01                    A

Form 3.54 Division-continuation
program application transmittal form
37 C.F.R. 1.53(b)



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Docket No. P-3724-2-F1-C1-C1
SLD 2 0035-3-3-1-1-1
IN RE APPLICATION OF: Sullivan
Prior application: 09/470,196

The Assistant Commissioner for Patents
Washington, D.C. 20231
**Box Patent Application**

Sir:

This is a request for filing a continuation application under 37 C.F.R. 1.53(b), of pending prior application **U.S. Serial No. 09/470,196 filed on December 21, 1999.**

Inventors:    Michael J. Sullivan

For:    **IMPROVED MULTI-LAYER GOLF BALL**

1.    **Papers Enclosed Which Are Required For Filing Date under 37 CFR 1.53(b) (Regular) or 37 CFR 1.153 (Design) Application**

      47    Pages of specification
      2    Pages of claims
      1    Page of Abstract
      1    Sheets of drawing

2.    _____    A PRELIMINARY AMENDMENT is enclosed. (Copies of a Notice of Appeal and One-Month Extension of Time filed concurrently herewith in the parent case are also enclosed).

3.    _____    Applicant claims small entity status.

4.    _____    Request and Certification Under 35 U.S.C. 122(b)(2)(B)(i)

### CERTIFICATE OF EXPRESS MAIL

I hereby certify that this **TRANSMITTAL LETTER and associated papers** are being deposited with the United States Postal Service by Express Mail Procedure in an envelope addressed to: Assistant Commissioner for Patents, Box Patent Application, Washington, D.C. 20231 on _____ 2/5/01 _____. **Express Mailing Label No.** EL 545794627US _____.

Keith A. Johne

CW 0308891

– 2 –

5.     x     The filing fee is calculated below.

| CLAIMS AS FILED IN THE PRIOR APPLICATION LESS ANY CLAIMS CANCELED BY PRELIMINARY AMENDMENT | | | |
|---|---|---|---|
| Basic Filing Fee  (Large Entity) | | | $ 710.00 |
| | | No. of Extra Claims Present | Additional Rate |
| Total Claims | 8 | 0 | $0.00 |
| Indep. Claims | 3 | 0 | $0.00 |

                                        **Total fee       $     710.00**

6.     xxx     A check in the amount of $710.00 is enclosed.

7.     xxx     The Commissioner is hereby authorized to charge any fees which may be required, or credit any overpayment to Account No. 06-0308.

8.     XXX     The prior application is assigned of record to Spalding Sports Worldwide, Inc., as recorded in the U.S. Patent and Trademark Office.

9.     ____     An Application Data Sheet is enclosed.

10.     xxx     The power of attorney in the prior application is to Donald R. Bahr, Reg. No. 21,001, Christopher B. Fagan, Reg. No. 22,987, Richard M. Klein, Reg. No. 33,000, and Diane F. Covello, Reg. No. 34,164  A copy of the powers in the prior application is enclosed.  Please address all future communications to:

                    Diane F. Covello, Esq.
                    Senior Patent Counsel
                    Michelle Bugbee
                    Associate Patent Counsel
                    Spalding Sports Worldwide, Inc.
                    425 Meadow Street
                    PO Box 901
                    Chicopee, MA  01021-0901

11.     Please direct all phone calls to Richard M. Klein or Mark E. Bandy at telephone No. (216)861-5582.

CW 0308892

- 3 -

_2/2/2001_
Date

_[signature]_
Richard M. Klein
Reg. No. 33,000
Mark E. Bandy
Reg. No. 35,788
FAY, SHARPE, FAGAN,
  MINNICH & McKEE, LLP
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114
(216) 861-5582

C:\DATA\FORMS\APLTRACO.NDV

CW 0308893

P3724-2-F1-C1-C1(SLD 2 0035-3-3-1-1-1)

IMPROVED MULTI-LAYER GOLF BALL

### Field of the Invention

This application is a continuation application of U.S.
5    Application Serial No. 09/470,196 filed December 21, 1999, which is a
continuation application of U.S. Application Serial No. 08/870,585
filed June 6, 1997, which is a continuation application of U.S.
Application Serial No. 08/556,237 filed on November 9, 1995, now
abandoned, which is a continuation-in-part of U.S. Application Serial
10   No. 08/070,510 filed June 1, 1993.

The present invention relates to golf balls and, more
particularly, to improved standard and oversized golf balls comprising
multi-layer covers which have a comparatively hard inner layer and a
relatively soft outer layer such as that produced by the use of a
15   polyurethane based outer layer. The improved multi-layer golf balls
provide for enhanced distance and durability properties over single
layer cover golf balls while at the same time offering enhanced "feel"
and spin characteristics generally associated with soft balata and
balata-like covers of the prior art.

20

### Background of the Invention

Traditional golf ball covers have been comprised of
balata or blends of balata with elastomeric or plastic materials.
25   The traditional balata covers are relatively soft and flexible.

CW 0308894

Upon impact, the soft balata covers compress against the surface of the club producing high spin. Consequently, the soft and flexible balata covers provide an experienced golfer with the ability to apply a spin to control the ball in flight in order to produce a

5    draw or a fade, or a backspin which causes the ball to "bite" or stop abruptly on contact with the green. Moreover, the soft balata covers produce a soft "feel" to the low handicap player. Such playability properties (workability, feel, etc.) are particularly important in short iron play with low swing speeds and are

10    exploited significantly by relatively skilled players.

Despite all the benefits of balata, balata covered golf balls are easily cut and/or damaged if mis-hit. Golf balls produced with balata or balata-containing cover compositions therefore have a relatively short lifespan.

15    As a result of this negative property, balata and its synthetic substitutes, transpolyisoprene and trans-polybutadiene, have been essentially replaced as the cover materials of choice by new cover materials comprising ionomeric resins.

Ionomeric resins are polymers containing interchain ionic

20    bonding. As a result of their toughness, durability and flight characteristics, various ionomeric resins sold by E. I. DuPont de Nemours & Company under the trademark "Surlyn®" and more recently, by the Exxon Corporation (see U. S. Patent No. 4,911,451) under the trademarks "Escor®" and the trade name "Iotek", have become the

25    materials of choice for the construction of golf ball covers over the traditional "balata" (transpolyisoprene, natural or synthetic) rubbers. As stated, the softer balata covers, although exhibiting

CW 0308895

enhanced playability properties, lack the durability (cut and abrasion resistance, fatigue endurance, etc.) properties required for repetitive play.

Ionomeric resins are generally ionic copolymers of an
5   olefin, such as ethylene, and a metal salt of an unsaturated carboxylic acid, such as acrylic acid, methacrylic acid, or maleic acid. Metal ions, such as sodium or zinc, are used to neutralize some portion of the acidic group in the copolymer resulting in a thermoplastic elastomer exhibiting enhanced properties, i.e.
10  durability, etc., for golf ball cover construction over balata. However, some of the advantages gained in increased durability have been offset to some degree by the decreases produced in playability. This is because although the ionomeric resins are very durable, they tend to be very hard when utilized for golf ball
15  cover construction, and thus lack the degree of softness required to impart the spin necessary to control the ball in flight. Since the ionomeric resins are harder than balata, the ionomeric resin covers do not compress as much against the face of the club upon impact, thereby producing less spin. In addition, the harder and
20  more durable ionomeric resins lack the "feel" characteristic associated with the softer balata related covers.

As a result, while there are currently more than fifty (50) commercial grades of ionomers available both from DuPont and Exxon, with a wide range of properties which vary according to the
25  type and amount of metal cations, molecular weight, composition of the base resin (i.e., relative content of ethylene and methacrylic

-3-

CW 0308896

and/or acrylic acid groups) and additive ingredients such as reinforcement agents, etc., a great deal of research continues in order to develop a golf ball cover composition exhibiting not only the improved impact resistance and carrying distance properties

5    produced by the "hard" ionomeric resins, but also the playability (i.e., "spin", "feel", etc.) characteristics previously associated with the "soft" balata covers, properties which are still desired by the more skilled golfer.

Consequently, a number of two-piece (a solid resilient

10    center or core with a molded cover) and three-piece (a liquid or solid center, elastomeric winding about the center, and a molded cover) golf balls have been produced by the present inventor and others to address these needs.  The different types of materials utilized to formulate the cores, covers, etc. of these balls

15    dramatically alters the balls' overall characteristics.

In addition, multi-layered covers containing one or more ionomer resins have also been formulated in an attempt to produce a golf ball having the overall distance, playability and durability characteristics desired.    For example, this was addressed by

20    Spalding & Evenflo Companies, Inc., the assignee of the present invention, in U.S. Patent No. 4,431,193 where a multi-layered regular sized, golf ball is disclosed.

In the '193 patent, a multi-layer golf ball is produced by initially molding a first cover layer on a spherical core and

25    then adding a second layer.  The first layer is comprised of a hard, high flexural modulus resinous material such as type 1605

-4-

CW 0308897

Surlyn® (now designated Surlyn® 8940). Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi. An outer layer of a comparatively

5    soft, low flexural modulus resinous material such as type 1855 Surlyn® (now designated Surlyn® 9020) is molded over the inner cover layer. Type 1855 Surlyn® (Surlyn® 9020) is a zinc ion based low acid (10 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 14,000 psi.

10    The '193 patent teaches that the hard, high flexural modulus resin which comprises the first layer provides for a gain in coefficient of restitution over the coefficient of restitution of the core. The increase in the coefficient of restitution provides a ball which serves to attain or approach the maximum

15    initial velocity limit of 255 feet per second as provided by the United States Golf Association (U.S.G.A.) rules. The relatively soft, low flexural modulus outer layer provides essentially no gain in the coefficient of restitution but provides for the advantageous "feel" and playing characteristics of a balata covered golf ball.

20    Unfortunately, however, while a ball of the '193 patent does exhibit enhanced playability characteristics with improved distance (i.e. enhanced C.O.R. values) over a number of other then known multi-layered balls, the ball suffers from poor cut resistance and relatively short distance (i.e. lower C.O.R. values)

25    when compared to two-piece, single cover layer balls commercially available today. These undesirable properties make the ball

-5-

CW 0308898

produced in accordance with the '193 patent unacceptable by today's standards.

The present invention is directed to new multi-layer golf ball compositions which provide for enhanced coefficient of restitution (i.e. enhanced resilience or carrying distance) and/or durability properties when compared to the multi-layer balls found in the prior art, as well as improved outer cover layer softness and durability. As such, the playability characteristics (i.e., "feel", "click", "spin", etc.) are not diminished.

These and other objects and features of the invention will be apparent from the following summary and description of the invention, the drawings and from the claims.

Summary of the Invention

The present invention is directed to improved multi-layer golf ball cover compositions and the resulting multi-layer golf balls produced using the improved compositions. The novel multi-layer golf ball covers of the present invention include a first or inner layer or ply of a high acid (greater than 16 weight percent acid) ionomer blend or, more preferably, a low acid (16 weight percent acid or less) ionomer blend and second or outer layer or ply comprised of a comparatively softer, low modulus ionomer, ionomer blend or other non-ionomeric thermoplastic or thermosetting elastomer such as polyurethane or polyester elastomer. The multi-layer golf balls of the invention can be of standard or enlarged size. Preferably, the inner layer or ply incudes a blend of low

-6-



PH 7042093

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

**December 01, 2006**

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE
RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS
OF:

APPLICATION NUMBER: *09/776,278*
FILING DATE: *February 02, 2001*
PATENT NUMBER: *6,595,873*
ISSUE DATE: *July 22, 2003*

By Authority of the

**Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office**

*M. Tarver*

**M. TARVER**

**Certifying Officer**

02-05-01                    A



Form 3.54 Division-continuation
program application transmittal form
37 C.F.R. 1.53(b)



### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Docket No. P-3724-2-F1-C1-C1
SLD 2 0035-3-3-1-1-1
IN RE APPLICATION OF: Sullivan
Prior application: 09/470,196

The Assistant Commissioner for Patents
Washington, D.C. 20231
**Box Patent Application**

Sir:

      This is a request for filing a continuation application under 37 C.F.R.
1.53(b), of pending prior application **U.S. Serial No. 09/470,196 filed on December 21,
1999.**

Inventors:    Michael J. Sullivan

For:   **IMPROVED MULTI-LAYER GOLF BALL**

1.    **Papers Enclosed Which Are Required For Filing Date under 37 CFR 1.53(b)
(Regular) or 37 CFR 1.153 (Design) Application**

      __47__  Pages of specification
      __2__  Pages of claims
      __1__  Page of Abstract
      __1__  Sheets of drawing

2.    _____  A PRELIMINARY AMENDMENT is enclosed.  (Copies of a Notice of
        Appeal and One-Month Extension of Time filed concurrently herewith in
        the parent case are also enclosed).

3.    _____  Applicant claims small entity status.

4.    _____  Request and Certification Under 35 U.S.C. 122(b)(2)(B)(i)

### CERTIFICATE OF EXPRESS MAIL

I hereby certify that this **TRANSMITTAL LETTER and associated papers** are being deposited with the United
States Postal Service by Express Mail Procedure in an envelope addressed to: Assistant Commissioner for Patents,
Box Patent Application, Washington, D.C. 20231 on _____ 2/5/01 _____. **Express Mailing Label**
No. EL 545794627US .

Keith A. Johns

CW 0308891

– 2 –

5.    x    The filing fee is calculated below.

<table>
<tr><td colspan="4"><strong>CLAIMS AS FILED IN THE PRIOR APPLICATION LESS ANY CLAIMS CANCELED BY PRELIMINARY AMENDMENT</strong></td></tr>
<tr><td colspan="3">Basic Filing Fee (Large Entity)</td><td>$ 710.00</td></tr>
<tr><td></td><td></td><td>No. of Extra Claims Present</td><td>Additional Rate</td></tr>
<tr><td>Total Claims</td><td>8</td><td>0</td><td>$0.00</td></tr>
<tr><td>Indep. Claims</td><td>3</td><td>0</td><td>$0.00</td></tr>
<tr><td colspan="2"></td><td>Total fee</td><td>$   710.00</td></tr>
</table>

6.    xxx    A check in the amount of $710.00 is enclosed.

7.    xxx    The Commissioner is hereby authorized to charge any fees which may be required, or credit any overpayment to Account No. 06-0308.

8.    XXX    The prior application is assigned of record to Spalding Sports Worldwide, Inc., as recorded in the U.S. Patent and Trademark Office.

9.    ____    An Application Data Sheet is enclosed.

10.   xxx    The power of attorney in the prior application is to  Donald R. Bahr, Reg. No. 21,001, Christopher B. Fagan, Reg. No. 22,987, Richard M. Klein, Reg. No. 33,000, and Diane F. Covello, Reg. No. 34,164  A copy of the powers in the prior application is enclosed.  Please address all future communications to:

            Diane F. Covello, Esq.
            Senior Patent Counsel
            Michelle Bugbee
            Associate Patent Counsel
            Spalding Sports Worldwide, Inc.
            425 Meadow Street
            PO Box 901
            Chicopee, MA  01021-0901

11.    Please direct all phone calls to Richard M. Klein or Mark E. Bandy at telephone No. (216)861-5582.

– 3 –

_____2/2/2001_____
Date



Richard M. Klein
Reg. No. 33,000
Mark E. Bandy
Reg. No. 35,788
FAY, SHARPE, FAGAN,
  MINNICH & McKEE, LLP
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114
(216) 861-5582

C:\DATA\FORMS\APLTRACO.NDV

CW 0308893

P3724-2-F1-C1-C1(SLD 2 0035-3-3-1-1-1)

IMPROVED MULTI-LAYER GOLF BALL

## Field of the Invention

This application is a continuation application of U.S.
5       Application Serial No. 09/470,196 filed December 21, 1999, which is a
continuation application of U.S. Application Serial No. 08/870,585
filed June 6, 1997, which is a continuation application of U.S.
Application Serial No. 08/556,237 filed on November 9, 1995, now
abandoned, which is a continuation-in-part of U.S. Application Serial
10      No. 08/070,510 filed June 1, 1993.

The present invention relates to golf balls and, more
particularly, to improved standard and oversized golf balls comprising
multi-layer covers which have a comparatively hard inner layer and a
relatively soft outer layer such as that produced by the use of a
15      polyurethane based outer layer. The improved multi-layer golf balls
provide for enhanced distance and durability properties over single
layer cover golf balls while at the same time offering enhanced "feel"
and spin characteristics generally associated with soft balata and
balata-like covers of the prior art.

20

## Background of the Invention

Traditional golf ball covers have been comprised of
balata or blends of balata with elastomeric or plastic materials.
25      The traditional balata covers are relatively soft and flexible.

CW 0308894

Upon impact, the soft balata covers compress against the surface of the club producing high spin.  Consequently, the soft and flexible balata covers provide an experienced golfer with the ability to apply a spin to control the ball in flight in order to produce a

5 draw or a fade, or a backspin which causes the ball to "bite" or stop abruptly on contact with the green.  Moreover, the soft balata covers produce a soft "feel" to the low handicap player.  Such playability properties (workability, feel, etc.) are particularly important in short iron play with low swing speeds and are

10 exploited significantly by relatively skilled players.

Despite all the benefits of balata, balata covered golf balls are easily cut and/or damaged if mis-hit.  Golf balls produced with balata or balata-containing cover compositions therefore have a relatively short lifespan.

15 As a result of this negative property, balata and its synthetic substitutes, transpolyisoprene and trans-polybutadiene, have been essentially replaced as the cover materials of choice by new cover materials comprising ionomeric resins.

Ionomeric resins are polymers containing interchain ionic

20 bonding.  As a result of their toughness, durability and flight characteristics, various ionomeric resins sold by E. I. DuPont de Nemours & Company under the trademark "Surlyn®" and more recently, by the Exxon Corporation (see U. S. Patent No. 4,911,451) under the trademarks "Escor®" and the trade name "Iotek", have become the

25 materials of choice for the construction of golf ball covers over the traditional "balata" (transpolyisoprene, natural or synthetic) rubbers.  As stated, the softer balata covers, although exhibiting

CW 0308895

enhanced playability properties, lack the durability (cut and abrasion resistance, fatigue endurance, etc.) properties required for repetitive play.

5    Ionomeric resins are generally ionic copolymers of an olefin, such as ethylene, and a metal salt of an unsaturated carboxylic acid, such as acrylic acid, methacrylic acid, or maleic acid. Metal ions, such as sodium or zinc, are used to neutralize some portion of the acidic group in the copolymer resulting in a

10   thermoplastic elastomer exhibiting enhanced properties, i.e. durability, etc., for golf ball cover construction over balata. However, some of the advantages gained in increased durability have been offset to some degree by the decreases produced in playability. This is because although the ionomeric resins are very durable, they tend to be very hard when utilized for golf ball

15   cover construction, and thus lack the degree of softness required to impart the spin necessary to control the ball in flight. Since the ionomeric resins are harder than balata, the ionomeric resin covers do not compress as much against the face of the club upon impact, thereby producing less spin. In addition, the harder and

20   more durable ionomeric resins lack the "feel" characteristic associated with the softer balata related covers.

As a result, while there are currently more than fifty (50) commercial grades of ionomers available both from DuPont and Exxon, with a wide range of properties which vary according to the

25   type and amount of metal cations, molecular weight, composition of the base resin (i.e., relative content of ethylene and methacrylic

-3-

CW 0308896

and/or acrylic acid groups) and additive ingredients such as reinforcement agents, etc., a great deal of research continues in order to develop a golf ball cover composition exhibiting not only the improved impact resistance and carrying distance properties

5    produced by the "hard" ionomeric resins, but also the playability (i.e., "spin", "feel", etc.) characteristics previously associated with the "soft" balata covers, properties which are still desired by the more skilled golfer.

Consequently, a number of two-piece (a solid resilient

10   center or core with a molded cover) and three-piece (a liquid or solid center, elastomeric winding about the center, and a molded cover) golf balls have been produced by the present inventor and others to address these needs. The different types of materials utilized to formulate the cores, covers, etc. of these balls

15   dramatically alters the balls' overall characteristics.

In addition, multi-layered covers containing one or more ionomer resins have also been formulated in an attempt to produce a golf ball having the overall distance, playability and durability characteristics desired. For example, this was addressed by

20   Spalding & Evenflo Companies, Inc., the assignee of the present invention, in U.S. Patent No. 4,431,193 where a multi-layered regular sized, golf ball is disclosed.

In the '193 patent, a multi-layer golf ball is produced by initially molding a first cover layer on a spherical core and

25   then adding a second layer. The first layer is comprised of a hard, high flexural modulus resinous material such as type 1605

-4-

CW 0308897

Surlyn® (now designated Surlyn® 8940). Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi. An outer layer of a comparatively

5    soft, low flexural modulus resinous material such as type 1855 Surlyn® (now designated Surlyn® 9020) is molded over the inner cover layer. Type 1855 Surlyn® (Surlyn® 9020) is a zinc ion based low acid (10 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 14,000 psi.

10    The '193 patent teaches that the hard, high flexural modulus resin which comprises the first layer provides for a gain in coefficient of restitution over the coefficient of restitution of the core. The increase in the coefficient of restitution provides a ball which serves to attain or approach the maximum

15    initial velocity limit of 255 feet per second as provided by the United States Golf Association (U.S.G.A.) rules. The relatively soft, low flexural modulus outer layer provides essentially no gain in the coefficient of restitution but provides for the advantageous "feel" and playing characteristics of a balata covered golf ball.

20    Unfortunately, however, while a ball of the '193 patent does exhibit enhanced playability characteristics with improved distance (i.e. enhanced C.O.R. values) over a number of other then known multi-layered balls, the ball suffers from poor cut resistance and relatively short distance (i.e. lower C.O.R. values)

25    when compared to two-piece, single cover layer balls commercially available today. These undesirable properties make the ball

-5-

CW 0308898

produced in accordance with the '193 patent unacceptable by today's standards.

The present invention is directed to new multi-layer golf ball compositions which provide for enhanced coefficient of
5    restitution (i.e, enhanced resilience or carrying distance) and/or durability properties when compared to the multi-layer balls found in the prior art, as well as improved outer cover layer softness and durability. As such, the playability characteristics (i.e., "feel", "click", "spin", etc.) are not diminished.

10    These and other objects and features of the invention will be apparent from the following summary and description of the invention, the drawings and from the claims.

## Summary of the Invention

The present invention is directed to improved multi-layer
15    golf ball cover compositions and the resulting multi-layer golf balls produced using the improved compositions. The novel multi-layer golf ball covers of the present invention include a first or inner layer or ply of a high acid (greater than 16 weight percent acid) ionomer blend or, more preferably, a low acid (16 weight
20    percent acid or less) ionomer blend and second or outer layer or ply comprised of a comparatively softer, low modulus ionomer, ionomer blend or other non-ionomeric thermoplastic or thermosetting elastomer such as polyurethane or polyester elastomer. The multi-layer golf balls of the invention can be of standard or enlarged
25    size. Preferably, the inner layer or ply incudes a blend of low

-6-

CW 0308899

acid ionomers and has a Shore D hardness of 60 or greater and the outer cover layer comprised of polyurethane and has a Shore D hardness of about 45 (i.e., Shore C hardness of about 65).

It has been found that multi-layer golf balls having inner and outer cover layers exhibit higher C.O.R. values and have greater travel distance in comparison with balls made from a single cover layer. In addition, it has been found that use of a inner cover layer constructed of a blend of low acid (i.e., 16 weight percent acid or less) ionomer resins produces softer compression and higher spin rates than inner cover layers constructed of high acid ionomer resins. This is compounded by the fact that the softer polyurethane outer layer adds to the desirable "feel" and high spin rate while maintaining respectable resiliency. The soft outer layer allows the cover to deform more during impact and increases the area of contact between the club face and the cover, thereby imparting more spin on the ball. As a result, the soft polyurethane cover provides the ball with a balata-like feel and playability characteristics with improved distance and durability.

Consequently, the overall combination of inner and outer cover layers made from blends of low acid ionomer resins and polyurethane results in a standard size or oversized golf ball having enhanced resilience (improved travel distance) and durability (i.e. cut resistance, etc.) characteristics while maintaining and in many instances, improving the balls playability properties.

-7-

CW 0308900

The combination of a low acid ionomer blend inner cover layer with a soft, relatively low modulus ionomer, polyurethane based elastomer outer cover layer provides for good overall coefficient of restitution (i.e., enhanced resilience) while at the
5    same time demonstrating improved compression and spin.  The outer cover layer generally contributes to a more desirable feel and spin, particularly at lower swing speeds with highly lofted clubs such as half wedge shots.

Two principal properties involved in golf ball
10   performance are resilience and hardness.  Resilience is determined by the coefficient of restitution (C.O.R.), the constant "e" which is the ratio of the relative velocity of two elastic spheres after direct impact to that before impact.  As a result, the coefficient of restitution ("e") can vary from 0 to 1, with 1 being equivalent
15   to an elastic collision and 0 being equivalent to an inelastic collision.

Resilience (C.O.R.), along with additional factors such as club head speed, angle of trajectory and ball configuration (i.e., dimple pattern) generally determine the distance a ball will
20   travel when hit.  Since club head speed and the angle of trajectory are factors not easily controllable by a manufacturer, factors of concern among manufacturers are the coefficient of restitution (C.O.R.) and the surface configuration of the ball.

The coefficient of restitution (C.O.R.) in solid core
25   balls is a function of the composition of the molded core and of the cover.    In balls containing a wound core (i.e., balls

-8-

comprising a liquid or solid center, elastic windings, and a cover), the coefficient of restitution is a function of not only the composition of the center and cover, but also the composition and tension of the elastomeric windings. Although both the core

5   and the cover contribute to the coefficient of restitution, the present invention is directed to the enhanced coefficient of restitution (and thus travel distance) which is affected by the cover components.

In this regard, the coefficient of restitution of a golf
10   ball is generally measured by propelling a ball at a given speed against a hard surface and measuring the ball's incoming and outgoing velocity electronically. As mentioned above, the coefficient of restitution is the ratio of the outgoing velocity to the incoming velocity. The coefficient of restitution must be
15   carefully controlled in all commercial golf balls in order for the ball to be within the specifications regulated by the United States Golf Association (U.S.G.A.). Along this line, the U.S.G.A. standards indicate that a "regulation" ball cannot have an initial velocity (i.e., the speed off the club) exceeding 255 feet per
20   second. Since the coefficient of restitution of a ball is related to the ball's initial velocity, it is highly desirable to produce a ball having sufficiently high coefficient of restitution to closely approach the U.S.G.A. limit on initial velocity, while having an ample degree of softness (i.e., hardness) to produce
25   enhanced playability (i.e., spin, etc.).

-9-

CW 0308902

The hardness of the ball is the second principal property involved in the performance of a golf ball. The hardness of the ball can affect the playability of the ball on striking and the sound or "click" produced. Hardness is determined by the

5   deformation (i.e., compression) of the ball under various load conditions applied across the ball's diameter (i.e., the lower the compression value, the harder the material). As indicated in U.S. Patent No. 4,674,751, softer covers permit the accomplished golfer to impart proper spin. This is because the softer covers deform on

10   impact significantly more than balls having "harder" ionomeric resin covers. As a result, the better player is allowed to impart fade, draw or backspin to the ball thereby enhancing playability. Such properties may be determined by various spin rate tests such as the "nine iron" spin rate test described below in the Examples.

15   Accordingly, the present invention is directed to an improved multi-layer cover which produces, upon molding each layer around a core (preferably a solid core) to formulate a multi-layer cover, a golf ball exhibiting enhanced distance (i.e., resilience) without adversely affecting, and in many instances, improving the

20   ball's playability (hardness/softness) and/or durability (i.e., cut resistance, fatigue resistance, etc.) characteristics.

These and other objects and features of the invention will be apparent from the following detailed description.

-10-

CW 0308903

### Brief Description of the Drawings

FIG. 1 is a cross-sectional view of a golf ball embodying the invention illustrating a core 10 and a cover 12 consisting of an inner layer 14 and an outer layer 16 having dimples 18; and

5      FIG. 2 is a diametrical cross-sectional view of a golf ball of the invention having a core 10 and a cover 12 made of an inner layer 14 and an outer layer 16 having dimple 18.

### Detailed Description of the Invention

The present invention relates to improved multi-layer
10    golf balls, particularly a golf ball comprising a multi-layered cover 12 over a solid core 10, and method for making same.

The multi-layered cover 12 comprises two layers: a first or inner layer or ply 14 and a second or outer layer or ply 16. The inner layer 14 is comprised of a low acid (i.e. 16 weight
15    percent acid or less) ionomer blend. Preferably, the inner layer is comprised of a blend of two or more low acid (i.e. 16 weight percent acid or less) ionomer resins neutralized to various extents by different metal cations. The inner cover layer may or may not include a metal stearate (e.g., zinc stearate) or other metal fatty
20    acid salt. The purpose of the metal stearate or other metal fatty acid salt is to lower the cost of production without affecting the overall performance of the finished golf ball.

The low acid ionomers which may be suitable for use in formulating the inner layer compositions of the subject invention
25    are ionic copolymers which are the metal, i.e., sodium, zinc,

-11-

CW 0308904

magnesium, etc., salts of the reaction product of an olefin having from about 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having from about 3 to 8 carbon atoms. Preferably, the ionomeric resins are copolymers of ethylene and either acrylic or

5    methacrylic acid. In some circumstances, an additional comonomer such as an acrylate ester (i.e., iso- or n-butylacrylate, etc.) can also be included to produce a softer terpolymer. The carboxylic acid groups of the copolymer are partially neutralized (i.e., approximately 10-75%, preferably 30-70%) by the metal ions. Each

10   of the low acid ionomer resins which may be included in the inner layer cover compositions of the invention contains 16% by weight or less of a carboxylic acid.

The inner layer compositions include the low acid ionomers such as those developed and sold by E. I. DuPont de

15   Nemours & Company under the trademark "Surlyn®" and by Exxon Corporation under the trademark "Escor®" or tradename "Iotek", or blends thereof.

The low acid ionomeric resins available from Exxon under the designation "Escor®" and or "Iotek", are somewhat similar to

20   the low acid ionomeric resins available under the "Surlyn®" trademark. However, since the Escor®/Iotek ionomeric resins are sodium or zinc salts of poly(ethylene-acrylic acid) and the "Surlyn®" resins are zinc, sodium, magnesium, etc. salts of poly(ethylene-methacrylic acid), distinct differences in properties

25   exist.

-12-

CW 0308905

When utilized in the construction of the inner layer of a multi-layered golf ball, it has been found that the low acid ionomer blends extend the range of compression and spin rates beyond that previously obtainable. More preferably, it has been

5    found that when two or more low acid ionomers, particularly blends of sodium and zinc high acid ionomers, are processed to produce the covers of multi-layered golf balls, (i.e., the inner cover layer herein) the resulting golf balls will travel further and at an enhanced spin rate than previously known multi-layered golf balls.

10    Such an improvement is particularly noticeable in enlarged or oversized golf balls.

For example, the normal size, multi-layer golf ball taught in 4,650,193 does not incorporate blends of low acid ionomeric resins of the present invention in the inner cover layer.

15    In addition, the multi-layered ball disclosed in the '193 patent suffers substantially in durability in comparison with the present invention.

Furthermore, as shown in the Examples, use of a inner layer formulated from blends of lower acid ionomers produces multi-

20    layer golf balls having enhanced compression and spin rates. These are the properties desired by the more skilled golfer.

With respect to the outer layer 16 of the multi-layered cover of the present invention, the outer cover layer is comparatively softer than the low acid ionomer blend based inner

25    layer. The softness provides for the enhanced feel and playability characteristics typically associated with balata or balata-blend

-13-

balls. The outer layer or ply is comprised of a relatively soft, low modulus (about 1,000 psi to about 10,000 psi) and low acid (less than 16 weight percent acid) ionomer, ionomer blend or a non-ionomeric elastomer such as, but not limited to, a

5   polyurethane, a polyester elastomer such as that marketed by DuPont under the trademark Hytrel®, a polyurethane sold by BASF under the designation Baytec® or a polyester amide such as that marketed by Elf Atochem S.A. under the trademark Pebax®. The outer layer is fairly thin (i.e. from about 0.010 to about 0.070 in thickness,

10  more desirably 0.03 to 0.06 inches in thickness for a 1.680 inch ball and 0.04 to 0.07 inches in thickness for a 1.72 inch ball), but thick enough to achieve desired playability characteristics while minimizing expense.

       Preferably, the outer layer includes a blend of hard and
15  soft (low acid) ionomer resins such as those described in U. S. Patent Nos. 4,884,814 and 5,120,791, both incorporated herein by reference. Specifically, a desirable material for use in molding the outer layer comprises a blend of a high modulus (hard), low acid, ionomer with a low modulus (soft), low acid, ionomer to form

20  a base ionomer mixture. A high modulus ionomer herein is one which measures from about 15,000 to about 70,000 psi as measured in accordance with ASTM method D-790. The hardness may be defined as at least 50 on the Shore D scale as measured in accordance with ASTM method D-2240.

25       A low modulus ionomer suitable for use in the outer layer blend has a flexural modulus measuring from about 1,000 to about

-14-

CW 0308907

10,000 psi, with a hardness of about 20 to about 40 on the Shore D scale.

The hard ionomer resins utilized to produce the outer cover layer composition hard/soft blends include ionic copolymers
5    which are the sodium, zinc, magnesium or lithium salts of the reaction product of an olefin having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having from 3 to 8 carbon atoms. The carboxylic acid groups of the copolymer may be totally or partially (i.e. approximately 15-75 percent) neutralized.

10    The hard ionomeric resins are likely copolymers of ethylene and either acrylic and/or methacrylic acid, with copolymers of ethylene and acrylic acid being the most preferred. Two or more types of hard ionomeric resins may be blended into the outer cover layer compositions in order to produce the desired
15    properties of the resulting golf balls.

As discussed earlier herein, the hard ionomeric resins introduced under the designation Escor® and sold under the designation "Iotek" are somewhat similar to the hard ionomeric resins sold under the Surlyn® trademark. However, since the
20    "Iotek" ionomeric resins are sodium or zinc salts of poly(ethylene-acrylic acid) and the Surlyn® resins are zinc or sodium salts of poly(ethylene-methacrylic acid) some distinct differences in properties exist. As more specifically indicated in the data set forth below, the hard "Iotek" resins (i.e., the acrylic acid based
25    hard ionomer resins) are the more preferred hard resins for use in formulating the outer layer blends for use in the present

-15-

CW 0308908

invention. In addition, various blends of "Iotek" and Surlyn® hard
ionomeric resins, as well as other available ionomeric resins, may
be utilized in the present invention in a similar manner.

5     Examples of commercially available hard ionomeric resins
which may be used in the present invention in formulating the inner
and outer cover blends include the hard sodium ionic copolymer sold
under the trademark Surlyn®8940 and the hard zinc ionic copolymer
sold under the trademark Surlyn®9910. Surlyn®8940 is a copolymer
of ethylene with methacrylic acid and about 15 weight percent acid
10    which is about 29 percent neutralized with sodium ions. This resin
has an average melt flow index of about 2.8. Surlyn®9910 is a
copolymer of ethylene and methacrylic acid with about 15 weight
percent acid which is about 58 percent neutralized with zinc ions.
The average melt flow index of Surlyn®9910 is about 0.7. The
15    typical properties of Surlyn®9910 and 8940 are set forth below in
Table 1:

TABLE 1

Typical Properties of Commercially Available Hard

Surlyn® Resins Suitable for Use in the Inner and Outer Layer

20    Blends of the Present Invention

| | ASTM D | 8940 | 9910 | 8920 | 8528 | 9970 | 9730 |
|---|---|---|---|---|---|---|---|
| Cation Type | | Sodium | Zinc | Sodium | Sodium | Zinc | Zinc |
| Melt flow index, gm/10 min. | D-1238 | 2.8 | 0.7 | 0.9 | 1.3 | 14.0 | 1.6 |
| Specific Gravity, g/cm³ | D-792 | 0.95 | 0.97 | 0.95 | 0.94 | 0.95 | 0.95 |
| Hardness, Shore D | D-2240 | 65 | 64 | 66 | 60 | 62 | 63 |
| Tensile Strength, (Kpsi), MPa | D-638 | (4.8) 33.1 | (3.6) 24.8 | (5.4) 37.2 | (4.2) 29.0 | (3.2) 22.0 | (4.1) 28.0 |

-16-

CW 0308909

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Elongation, % | D-638 | 470 | 290 | 350 | 450 | 460 | 460 |
| Flexural Modulus, (Kpsi) MPa | D-790 | (51) 350 | (48) 330 | (55) 380 | (32) 220 | (28) 390 | (30) 330 |
| Tensile Impact (23°C) KJ/m, (ft.-lbs./in²) | D-1822S | 1028 (485) | 1020 (485) | 865 (410) | 1160 (550) | 760 (360) | 1240 (590) |
| Vicat Temperature, °C | D-1525 | 63 | 62 | 58 | 73 | 61 | 73 |

Examples of the more pertinent acrylic acid based hard ionomer resin suitable for use in the present inner and outer cover composition sold under the "Iotek" tradename by the Exxon Corporation include Iotek 4000, Iotek 4010, Iotek 8000, Iotek 8020 and Iotek 8030. The typical properties of these and other Iotek hard ionomers suited for use in formulating the inner and outer layer cover compositions are set forth below in Table 2:

-17-

CW 0308910

### TABLE 2

### Typical Properties of Iotek Ionomers

| Resin Properties | ASTM Method | Units | 4000 | 4010 | 8000 | 8020 | 8030 |
|---|---|---|---|---|---|---|---|
| Cation type | | | zinc | zinc | sodium | sodium | sodium |
| Melt Index | D-1238 | g/10 min. | 2.5 | 1.5 | 0.8 | 1.6 | 2.8 |
| Density | D-1505 | kg/m³ | 963 | 963 | 954 | 960 | 960 |
| Melting Point | D-3417 | °C | 90 | 90 | 90 | 87.5 | 87.5 |
| Crystallisation Point | D-3417 | °C | 62 | 64 | 56 | 53 | 55 |
| Vicat Softening Point | D-1525 | °C | 62 | 63 | 61 | 64 | 67 |
| % Weight Acrylic Acid | | | 16 | | 11 | | |
| % of Acid Groups cation neutralized | | | 30 | | 40 | | |

| Plaque Properties (3 mm thick, compression molded) | ASTM Method | Units | 4000 | 4010 | 8000 | 8020 | 8030 |
|---|---|---|---|---|---|---|---|
| Tensile at break | D-638 | MPa | 24 | 26 | 36 | 31.5 | 28 |
| Yield point | D-638 | MPa | none | none | 21 | 21 | 23 |
| Elongation at break | D-638 | % | 395 | 420 | 350 | 410 | 395 |
| 1% Secant modulus | D-638 | MPa | 160 | 160 | 300 | 350 | 390 |
| Shore Hardness D | D-2240 | -- | 55 | 55 | 61 | 58 | 59 |

| Film Properties (50 micron film 2.2:1 Blow-up ratio) | | | 4000 | 4010 | 8000 | 8020 | 8030 |
|---|---|---|---|---|---|---|---|
| Tensile at Break MD | D-882 | MPa | 41 | 39 | 42 | 52 | 47.4 |
| TD | D-882 | MPa | 37 | 38 | 38 | 38 | 40.5 |
| Yield point MD | D-882 | MPa | 15 | 17 | 17 | 23 | 21.6 |
| TD | D-882 | MPa | 14 | 15 | 15 | 21 | 20.7 |
| Elongation at Break MD | D-882 | % | 310 | 270 | 260 | 295 | 305 |
| TD | D-882 | % | 360 | 340 | 280 | 340 | 345 |
| 1% Secant modulus MD | D-882 | MPa | 210 | 215 | 390 | 380 | 380 |
| TD | D-882 | MPa | 200 | 225 | 380 | 350 | 345 |
| Dart Drop Impact | D-1709 | g/micron | 12.4 | 12.5 | 20.3 | | |

-18-

CW 0308911

| Resin Properties | ASTM Method | Units | 7010 | 7020 | 7030 |
|---|---|---|---|---|---|
| Cation type | | | zinc | zinc | zinc |
| Melt Index | D-1238 | g/10 min | 0 8 | 1 5 | 2.5 |
| Density | D-1505 | kg/m³ | 960 | 960 | 960 |
| Melting Point | D-3417 | °C | 90 | 90 | 90 |
| Crystallization Point | D-3417 | °C | -- | -- | -- |
| Vicat Softening Point | D-1525 | °C | 60 | 63 | 62 5 |
| %Weight Acrylic Acid | | | -- | -- | -- |
| % of Acid Groups Cation Neutralized | | | -- | -- | -- |

| Plaque Properties (3 mm thick, compression molded) | ASTM Method | Units | 7010 | 7020 | 7030 |
|---|---|---|---|---|---|
| Tensile at break | D-638 | MPa | 38 | 38 | 38 |
| Yield Point | D-638 | MPa | none | none | none |
| Elongation at break | D-638 | % | 500 | 420 | 395 |
| 1% Secant modulus | D-638 | MPa | -- | -- | -- |
| Shore Hardness D | D-2240 | -- | 57 | 55 | 55 |

Comparatively, soft ionomers are used in formulating the hard/soft blends of the inner and outer cover compositions. These ionomers include acrylic acid based soft ionomers. They are generally characterized as comprising sodium or zinc salts of a terpolymer of an olefin having from about 2 to 8 carbon atoms, acrylic acid, and an unsaturated monomer of the acrylate ester class having from 1 to 21 carbon atoms. The soft ionomer is preferably a zinc based ionomer made from an acrylic acid base polymer in an unsaturated monomer of the acrylate ester class. The soft (low modulus) ionomers have a hardness from about 20 to about 40 as measured on the Shore D scale and a flexural modulus from about 1,000 to about 10,000, as measured in accordance with ASTM method D-790.

-19-

CW 0308912

Certain ethylene-acrylic acid based soft ionomer resins developed by the Exxon Corporation under the designation "Iotek 7520" (referred to experimentally by differences in neutralization and melt indexes as LDX 195, LDX 196, LDX 218 and LDX 219) may be
5   combined with known hard ionomers such as those indicated above to produce the inner and outer cover layers.  The combination produces higher C.O.R.s at equal or softer hardness, higher melt flow (which corresponds to improved, more efficient molding, i.e., fewer rejects) as well as significant cost savings versus the inner and
10  outer layers of multi-layer balls produced by other known hard-soft ionomer blends as a result of the lower overall raw materials costs and improved yields.

While the exact chemical composition of the resins to be sold by Exxon under the designation Iotek 7520 is considered by
15  Exxon to be confidential and proprietary information, Exxon's experimental product data sheet lists the following physical properties of the ethylene acrylic acid zinc ionomer developed by Exxon:

-20-

CW 0308913

### TABLE 3

#### Physical Properties of Iotek 7520

| | Property | ASTM Method | Units | Typical Value |
|---|---|---|---|---|
| | Melt Index | D-1238 | g/10 min. | 2 |
| 5 | Density | D-1505 | kg/m³ | 0.962 |
| | Cation | | | Zinc |
| | Melting Point | D-3417 | °C | 66 |
| | Crystallization Point | D-3417 | °C | 49 |
| 10 | Vicat Softening Point | D-1525 | °C | 42 |

#### Plaque Properties (2 mm thick Compression Molded Plaques)

| | Tensile at Break | D-638 | MPa | 10 |
|---|---|---|---|---|
| | Yield Point | D-638 | MPa | None |
| 15 | Elongation at Break | D-638 | % | 760 |
| | 1% Secant Modulus | D-638 | MPa | 22 |
| | Shore D Hardness | D-2240 | | 32 |
| | Flexural Modulus | D-790 | MPa | 26 |
| | Zwick Rebond | ISO 4862 | % | 52 |
| 20 | De Mattia Flex Resistance | D-430 | Cycles | >5000 |

In addition, test data collected by the inventor indicates that Iotek 7520 resins have Shore D hardnesses of about 32 to 36 (per ASTM D-2240), melt flow indexes of 3±0.5 g/10 min (at 190°C. per ASTM D-1288), and a flexural modulus of about 2500-3500 psi (per ASTM D-790). Furthermore, testing by an independent

-21-

testing laboratory by pyrolysis mass spectrometry indicates that Iotek 7520 resins are generally zinc salts of a terpolymer of ethylene, acrylic acid, and methyl acrylate.

5    Furthermore, the inventor has found that a newly developed grade of an acrylic acid based soft ionomer available from the Exxon Corporation under the designation Iotek 7510, is also effective, when combined with the hard ionomers indicated above in producing golf ball covers exhibiting higher C.O.R. values at equal or softer hardness than those produced by known hard-soft

10    ionomer blends.    In this regard, Iotek 7510 has the advantages (i.e. improved flow, higher C.O.R. values at equal hardness, increased clarity, etc.) produced by the Iotek 7520 resin when compared to the methacrylic acid base soft ionomers known in the art (such as the Surlyn 8625 and the Surlyn 8629 combinations

15    disclosed in U.S. Patent No. 4,884,814).

In addition, Iotek 7510, when compared to Iotek 7520, produces slightly higher C.O.R. valves at equal softness/hardness due to the Iotek 7510's higher hardness and neutralization. Similarly, Iotek 7510 produces better release properties (from the

20    mold cavities) due to its slightly higher stiffness and lower flow rate than Iotek 7520.    This is important in production where the soft covered balls tend to have lower yields caused by sticking in the molds and subsequent punched pin marks from the knockouts.

According to Exxon, Iotek 7510 is of similar chemical

25    composition as Iotek 7520 (i.e. a zinc salt of a terpolymer of ethylene, acrylic acid, and methyl acrylate) but is more highly

-22-

CW 0308915

neutralized. Based upon FTIR analysis, Iotek 7520 is estimated to be about 30-40 wt.-% neutralized and Iotek 7510 is estimated to be about 40-60 wt.-% neutralized. The typical properties of Iotek 7510 in comparison of those of Iotek 7520 are set forth below:

5

TABLE 4

Physical Properties of Iotek 7510
in Comparison to Iotek 7520

|  | IOTEK 7520 | IOTEK 7510 |
|---|---|---|
| MI, g/10 min | 2.0 | 0.8 |
| Density, g/cc | 0.96 | 0.97 |
| Melting Point, °F | 151 | 149 |
| Vicat Softening Point, °F | 108 | 109 |
| Flex Modulus, psi | 3800 | 5300 |
| Tensile Strength, psi | 1450 | 1750 |
| Elongation, % | 760 | 690 |
| Hardness, Shore D | 32 | 35 |

It has been determined that when hard/soft ionomer blends are used for the outer cover layer, good results are achieved when the relative combination is in a range of about 90 to about 10 percent hard ionomer and about 10 to about 90 percent soft ionomer. The results are improved by adjusting the range to about 75 to 25 percent hard ionomer and 25 to 75 percent soft ionomer. Even better results are noted at relative ranges of about 60 to 90 percent hard ionomer resin and about 40 to 60 percent soft ionomer resin.

-23-

CW 0308916

Specific formulations which may be used in the cover composition are included in the examples set forth in U. S. Patent No. 5,120,791 and 4,884,814. The present invention is in no way limited to those examples.

5      Moreover, in alternative embodiments, the outer cover layer formulation may also comprise a soft, low modulus non-ionomeric thermoplastic elastomer including a polyester polyurethane such as B.F.Goodrich Company's Estane® polyester polyurethane X-4517. According to B.F.Goodrich, Estane® X-4517 has

10     the following properties:

<div align="center">

Properties of Estane® X-4517

</div>

| | |
|---|---|
| Tensile | 1430 |
| 100% | 815 |
| 200% | 1024 |
| 300% | 1193 |
| Elongation | 641 |
| Youngs Modulus | 1826 |
| Hardness A/D | 88/39 |
| Dayshore Rebound | 59 |
| | |
| Solubility in Water | Insoluble |
| Melt processing temperature | >350°F (>177°C) |
| Specific Gravity ($H_2O$=1) | 1.1-1.3 |

Other soft, relatively low modulus non-ionomeric thermoplastic elastomers may also be utilized to produce the outer

25     cover layer as long as the non-ionomeric thermoplastic elastomers produce the playability and durability characteristics desired without adversely effecting the enhanced spin characteristics produced by the low acid ionomer resin compositions. These include, but are not limited to thermoplastic polyurethanes such

-24-

CW 0308917

as: Texin thermoplastic polyurethanes from Mobay Chemical Co. and the Pellethane thermoplastic polyurethanes from Dow Chemical Co.; Ionomer/rubber blends such as those in Spalding U.S. Patents 4,986,545; 5,098,105 and 5,187,013; and, Hytrel polyester

5   elastomers from DuPont and pebax polyesteramides from Elf Atochem S.A.

Similarly, a castable, thermosetting polyurethane produced by BASF under the trade designation Baytec® has also shown enhanced cover formulation properties. According to BASF, Baytec®

10  (such as Baytec® RE 832), relates to a group of reactive elastomers having outstanding wear resistance, high mechanical strength, high elasticity and good resistance to weathering, moisture and chemicals. The Baytec® RE-832 system gives the following typical physical properties:

| | Property | ASTM Test Method | Unit | Value |
|----|----------|------------------|------|-------|
| 15 | Tear Strength Die C | D624 | pli | 380 |
| | Stress at | | | |
| | 100% Modulus | D412 | psi | 320 |
| 20 | 200% Modulus | | | 460 |
| | 300% Modulus | | | 600 |
| | Ultimate Strength | D412 | psi | 900 |
| | Elongation at Break | D412 | % | 490 |
| 25 | Taber Abrasion | D460, H-18 | mg/1000 cycles | 350 |

-25-

CW 0308918

| Component[1] Properties | Part A (Isocyanate) | Part B (Resin) |
|---|---|---|
| Viscosity @ 25°C, mPa·s | 2500 | 2100 |
| Density @ 25°C, g/cm | 1.08 | 1.09 |
| NCO, % | 9.80 | ——— |
| Hydroxyl Number, Mg KOH/g | ——— | 88 |

[1]Component A is a modified diphenylmethane diisocyanate (mDI) prepolymer and component B is a polyether polyol blend.

In preparing golf balls in accordance with the present invention, a hard inner cover layer is molded (by injection molding or by compression molding) about a core (preferably a solid core). A comparatively softer outer layer is molded over the inner layer.

The conventional solid core is about 1.545 inches in diameter, although it can range from about 1.495 to about 1.575 inches. Conventional solid cores are typically compression molded from a slug of uncured or lightly cured elastomer composition comprising a high cis content polybutadiene and a metal salt of an α, β, ethylenically unsaturated carboxylic acid such as zinc mono or diacrylate or methacrylate. To achieve higher coefficients of restitution in the core, the manufacturer may include fillers such as small amounts of a metal oxide such as zinc oxide. In addition, larger amounts of metal oxide than those that are needed to achieve the desired coefficient are often included in conventional cores in order to increase the core weight so that the finished ball more closely approaches the U.S.G.A. upper weight limit of 1.620 ounces. Other materials may be used in the core composition including compatible rubbers or ionomers, and low molecular weight fatty

-26-

acids such as stearic acid.  Free radical initiators such as peroxides are admixed with the core composition so that on the application of heat and pressure, a complex curing cross-linking reaction takes place.

5          The inner cover layer which is molded over the core is about 0.100 inches to about 0.010 inches in thickness, preferably about 0.0375 inches thick.  The outer cover layer is about 0.010 inches to about 0.050 inches in thickness, preferably 0.0300 inches thick.  Together, the core, the inner cover layer and the outer
10    cover layer combine to form a ball having a diameter of 1.680 inches or more, the minimum diameter permitted by the rules of the United States Golf Association and weighing about 1.620 ounces.

Additional materials may be added to the cover compositions (both inner and outer cover layer) of the present
15    invention including dyes (for example, Ultramarine Blue sold by Whitaker, Clark and Daniels of South Plainsfield, N.J.) (see U.S. Patent No. 4,679,795); pigments such as titanium dioxide, zinc oxide, barium sulfate and zinc sulfate; and UV absorbers; antioxidants; antistatic agents; and stabilizers.  Further, the
20    cover compositions of the present invention may also contain softening agents, such as plasticizers, processing aids, etc. and reinforcing material such as glass fibers and inorganic fillers, as long as the desired properties produced by the golf ball covers are not impaired.

-27-

CW 0308920

The various cover composition layers of the present invention may be produced according to conventional melt blending procedures. In the case of the outer cover layer, when a blend of hard and soft, low acid ionomer resins are utilized, the hard

5   ionomer resins are blended with the soft ionomeric resins and with a masterbatch containing the desired additives in a Banbury mixer, two-roll mill, or extruder prior to molding. The blended composition is then formed into slabs and maintained in such a state until molding is desired. Alternatively, a simple dry blend

10  of the pelletized or granulated resins and color masterbatch may be prepared and fed directly into the injection molding machine where homogenization occurs in the mixing section of the barrel prior to injection into the mold. If necessary, further additives such as an inorganic filler, etc., may be added and uniformly mixed before

15  initiation of the molding process. A similar process is utilized to formulate the low acid ionomer resin compositions used to produce the inner cover layer.

The golf balls of the present invention can be produced by molding processes currently well known in the golf ball art.

20  Specifically, the golf balls can be produced by injection molding or compression molding the inner cover layer about wound or solid molded cores to produce an intermediate golf ball having a diameter of about 1.50 to 1.67 inches, preferably about 1.620 inches. The outer layer is subsequently molded over the inner layer to produce

25  a golf ball having a diameter of 1.680 inches or more. Although either solid cores or wound cores can be used in the present

-28-

CW 0308921

invention, as a result of their lower cost and superior performance, solid molded cores are preferred over wound cores.

In compression molding, the inner cover composition is formed via injection at about 380°F to about 450°F into smooth
5   surfaced hemispherical shells which are then positioned around the core in a mold having the desired inner cover thickness and subjected to compression molding at 200° to 300°F for about 2 to 10 minutes, followed by cooling at 50° to 70°F for about 2 to 7 minutes to fuse the shells together to form a unitary intermediate
10  ball. In addition, the intermediate balls may be produced by injection molding wherein the inner cover layer is injected directly around the core placed at the center of an intermediate ball mold for a period of time in a mold temperature of from 50°F to about 100°F. Subsequently, the outer cover layer is molded
15  about the core and the inner layer by similar compression or injection molding techniques to form a dimpled golf ball of a diameter of 1.680 inches or more.

After molding, the golf balls produced may undergo various further processing steps such as buffing, painting and
20  marking as disclosed in U.S. Patent No. 4,911,451.

The resulting golf ball produced from the low acid ionomer resin inner layer and the relatively softer, low flexural modulus outer layer provide for an improved multi-layer golf ball which provides for desirable coefficient of restitution,
25  compression, spin and durability properties while at the same time

-29-

CW 0308922

offering the feel characteristics associated with soft balata and balata-like covers of the prior art.

The present invention is further illustrated by the following examples in which the parts of the specific ingredients 5 are by weight. It is to be understood that the present invention is not limited to the examples, and various changes and modifications may be made in the invention without departing from the spirit and scope thereof.

## Example 1

10 Several intermediate balls (cores plus inner cover layers) were prepared in accordance with conventional molding procedures described above. The inner cover compositions were molded around 1.545 inch diameter cores weighing 36.5 grams such that the inner cover had a wall thickness of about 0.0675 inches, 15 with the overall ball measuring about 1.680 inches in diameter.

The cores utilized in the examples were comprised of the following ingredients: high cis-polybutadiene, zinc diacrylate, zinc oxide, zinc stearate, peroxide, calcium carbonate, etc. The molded cores exhibited Riehle compressions of about 60 and C.O.R. 20 values of about .800. A representative formulation of the molded cores is set forth below:

-30-

CW 0308923

| MATERIAL | WEIGHT |
|---|---|
| BR-1220 (high cis-polybutadiene) | 70.70 |
| Taktene 220 (high cis-polybutadiene) | 29.30 |
| React Rite ZDA (zinc diacrylate) | 31.14 |
| 5 | Zinc Oxide | 6.23 |
| Zinc Stearate | 20.15 |
| Limestone | 17.58 |
| Ground Flash | 20.15 |
| (20-60 Mesh) | |
| 10 | Blue Masterbatch | .012 |
| Luperco 231XL or Trigonox 29/40 | .89 |
| Papi 94 | .50 |

15 $^1$Blue Masterbatch consists of unknown compositions used only for internal identification purposes and has no effect on physical properties.

The inner cover compositions designated herein as compositions A-E utilized to formulate the intermediate balls are set forth in Table 7 below. The resulting molded intermediate

20 balls were tested to determine the individual compression (Riehle), C.O.R., Shore C hardness, spin rate and cut resistance properties. These results are also set forth in Table 7 below.

The data of these examples are the average of twelve intermediate balls produced for each example. The properties were

25 measured according to the following parameters:

Coefficient of restitution (C.O.R.) was measured by firing the resulting golf ball in an air canon at a velocity of 125 feet per second against a steel plate positioned 12 feet from the muzzle of the canon. The

30 rebound velocity was then measured. The rebound velocity was divided by the forward velocity to give a coefficient of restitution.

Shore hardness was measured in accordance with ASTM test 2240.

-31-

CW 0308924

Cut resistance was measured in accordance with the following procedure: A golf ball is fired at 135 feet per second against the leading edge of a pitching wedge wherein the leading edge radius is 1/32 inch, the loft

5 angle is 51 degrees, the sole radius is 2.5 inches and the bounce angle is 7 degrees.

The cut resistance of the balls tested herein was evaluated on a scale of 1 to 5. The number 1 represents a cut that extends completely through the cover to the

10 core. A 2 represents a cut that does not extend completely through the cover but that does break the surface. A 3 does not break the surface of the cover but does leave a permanent dent. A 4 leaves only a slight crease which is permanent but not as severe as 3. A 5

15 represents virtually no visible indentation or damage of any sort.

The spin rate of the golf ball was measured by striking the resulting golf balls with a pitching wedge or 9 iron wherein the club head speed is about 105 feet

20 per second and the ball is launched at an angle of 26 to 34 degrees with an initial velocity of about 110 to 115 feet per second. The spin rate was measured by observing the rotation of the ball in flight using stop action Strobe photography.

25 Initial velocity is the velocity of a ball when struck at a hammer speed of 143.8 feet per second in accordance with a test as prescribed by the U.S.G.A.

As will be noted, compositions A, B and C include high acid ionomeric resins (16% or more acid), with composition B

30 further including zinc stearate. Composition D represents the inner layer (i.e. Surlyn 1605) used in U.S. Patent No. 4,431,193. Composition E provides a hard, low acid ionomeric resin blend.

The purpose behind producing and testing the balls of Table 5 was to provide a subsequent comparison in properties with

35 the multi-layer golf balls of the present invention.

**Table 5**

-32-

CW 0308925

Molded Intermediate Golf Balls

| Ingredients of Inner Cover Compositions | A | B | C | D | E |
|---|---|---|---|---|---|
| Iotek 959 | 50 | 50 | -- | -- | -- |
| Iotek 960 | 50 | 50 | -- | -- | -- |
| Zinc Stearate | -- | 50 | -- | -- | -- |
| Surlyn 8162 | -- | -- | 75 | -- | -- |
| Surlyn 8422 | -- | -- | 25 | -- | -- |
| Surlyn 1605 | -- | -- | -- | 100 | -- |
| Iotek 7030 | -- | -- | -- | -- | 50 |
| Iotek 8000 | -- | -- | -- | -- | 50 |

| Properties of Molded Intermediate Balls | | | | | |
|---|---|---|---|---|---|
| Compression | 58 | 58 | 60 | 63 | 62 |
| C.O.R. | .811 | .810 | .807 | .793 | .801 |
| Shore C Hardness | 98 | 98 | 97 | 96 | 96 |
| Spin Rate (R.P.M.) | 7,367 | 6,250 | 7,903 | 8,337 | 7,956 |
| Cut Resistance | 4-5 | 4-5 | 4-5 | 4-5 | 4-5 |

As shown in Table 5 above, the high acid ionomer resin inner cover layer (molded intermediate balls A-C) have lower spin rates and exhibit higher resiliency characteristics than the low acid ionomer resin based inner cover layers of balls D and E.

Multi-layer balls in accordance with the present invention were then prepared. Specifically, the inner cover compositions used to produce intermediate golf balls from Table 5 were molded over the solid cores to a thickness of about 0.0375 inches, thus forming the inner layer. The diameter of the solid core with the inner layer measured about 1.620 inches. Alternatively, the intermediate golf balls of Table 5 were ground down using a centerless grinding machine to a size of 1.620 inches in diameter to produce an inner cover layer of 0.0375 inches.

-33-

CW 0308926

The size of 1.620 inches was determined after attempting to mold the outer cover layer to various sizes (1.600", 1.610", 1.620", 1.630" and 1.640") of intermediate (core plus inner layer) balls. It was determined that 1.620" was about the largest "intermediate" ball (i.e., core plus inner layer) which could be easily molded over with the soft outer layer materials of choice. The goal herein was to use as thin an outer layer as necessary to achieve the desired playability characteristics while minimizing the cost of the more expensive outer materials. However, with a larger diameter final golf ball and/or if the cover is compression molded, a thinner cover becomes feasible.

With the above in mind, an outer cover layer composition was blended together in accordance with conventional blending techniques. The outer layer composition used for this portion of the example is a relatively soft cover composition such as those listed in U.S. Patent No. 5,120,791. An example of such a soft cover composition is a 45% soft/55% hard low acid ionomer blend designated by the inventor as "TE-90". The composition of TE-90 is set forth as follows:

### Outer Cover Layer Composition TE-90

| | |
|---|---|
| Iotek 8000 | 22.7 weight % |
| Iotek 7030 | 22.7 weight % |
| Iotek 7520 | 45.0 weight % |
| White MB[1] | 9.6 weight % |

[1]White MB consists of about 23.77 weight percent $TiO_2$; 0.22 weight percent Uvitex OB, 0.03 weight percent Santonox R, 0.05 weight percent Ultramarine blue and 75.85 weight percent Iotek 7030.

-34-

The above outer layer composition was molded around each
of the 1.620 diameter intermediate balls comprising a core plus one
of compositions A-D, respectively.  In addition, for comparison
purposes, Surlyn® 1855 (new Surlyn® 9020), the cover composition of
5   the '193 patent, was molded about the inner layer of composition D
(the intermediate ball representative of the '193 patent).  The
outer layer TE-90 was molded to a thickness of approximately 0.030
inches to produce a golf ball of approximately 1.680 inches in
diameter.  The resulting balls (a dozen balls for each example)
10  were tested and the various properties thereof are set forth in
Table 6A as follows:

### Table 6A
### Finished Balls

| Ingredients: | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| Inner Cover Composition | A | B | C | D | D |
| Outer Cover Composition | TE-90 | TE-90 | TE-90 | TE-90 | Surlyn® 9020 |
| **Properties of Molded Finished Balls:** | | | | | |
| Compression | 63 | 63 | 69 | 70 | 61 |
| C.O.R. | .784 | .778 | .780 | .770 | .757 |
| Shore C Hardness | 88 | 88 | 88 | 88 | 89 |
| Spin (R.P.M.) | 8,825 | 8,894 | 8,874 | 8,990 | 8,846 |
| Cut Resistance | 3-4 | 3-4 | 3-4 | 3-4 | 1-2 |

-35-

CW 0308928

As it will be noted in finished balls 1-4, by creating a multi-layer cover utilizing the high acid ionomer resins in the inner cover layer and the hard/soft low acid ionomer resins in the outer cover layer, higher compression and increased spin rates are
5    noted over the single layer covers of Table 5. In addition, both the C.O.R. and the Shore C hardness are reduced over the respective single layer covers of Table 5. This was once again particularly true with respect to the multi-layered balls containing the high acid ionomer resin in the inner layer (i.e. finished balls 1-4).
10    In addition, with the exception of prior art ball 5 (i.e. the '193 patent), resistance to cutting remains good but is slightly decreased. As noted above, the prior art ball of the '193 patent suffers substantially in durability (as well as in resiliency) in comparison to the balls of the invention.
15    Furthermore, it is also noted that the use of the high acid ionomer resins as the inner cover material produces a substantial increase in the finished balls overall distance properties. In this regard, the high acid ionomer resin inner covers of balls 1-3 produce an increase of approximately 10 points
20    in C.O.R. over the low acid ionomer resin inner covers of balls 4 and about a 25 point increase over the prior art balls 5. Since an increase in 3 to 6 points in C.O.R. results in an average increase of about 1 yard in distance, such an improvement is deemed to be significant.

-36-

CW 0308929

Several other outer layer formulations were prepared and tested by molding them around the core and inner cover layer combination to form balls each having a diameter of about 1.68 inches. First, B.F.Goodrich Estane® X-4517 polyester polyurethane was molded about the core molded with inner layer cover formulation A. DuPont Surlyn® 9020 was molded about the core which was already molded with inner layer D. Similar properties tests were conducted on these golf balls and the results are set forth in Table 6B below:

-37-

CW 0308930

### Table 6B

### Finish Balls

| Ingredients: | 6 | 7 |
|---|---|---|
| Inner Cover Layer Composition | A | D |
| Outer Cover Layer Composition | Estane® 4517 | Surlyn® 9020 |
| Properties of Molded Finished Balls: | | |
| Compression | 67 | 61 |
| C.O.R. | .774 | .757 |
| Shore C Hardness | 74 | 89 |
| Spin (R.P.M.) | 10,061 | 8,846 |
| Cut Resistance | 3-4 | 1-2 |

The ball comprising inner layer formulation D and Surlyn® 9020 identifies the ball in the Nesbitt 4,431,193 patent. As is noted, the example provides for relatively high softness and spin rate though it suffers from poor cut resistance and low C.O.R. This ball is unacceptable by today's standards.

As for the Estane® X-4517 polyester polyurethane, a significant increase in spin rate over the TE-90 cover is noted along with an increased compression. However, the C.O.R. and Shore C values are reduced, while the cut resistance remains the same. Furthermore, both the Estane® X-4517 polyester polyurethane and the Surlyn® 9020 were relatively difficult to mold in such thin sections.

-38-

CW 0308931

## Example 2

In order to analyze the change in characteristics produced by multi-layer golf balls (standard size) having inner cover layers comprised of ionomer resin blends of different acid
5    levels, a series of experiments were run. Specifically, 14 tests were performed, varying the type of core, inner cover layer and outer cover layer. The results are shown below:

-39-

CW 0308932

## Table 7

| SAMPLE # | CORE | INNER LAYER | THICKNESS | COVER/COR | OUTER COVER | THICKNESS | COMP (SR/1A3) | CER | SHORE D | BFLH |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 1042 YELLOW | NONE | — | SEE BELOW | TOP GRADE | 0.055" | 61 | .800 | 63 | 7331 |
| 9 | 1042 YELLOW | NONE | — | SEE BELOW | 959/960 | 0.055" | 56 | .808 | 73 | 6516 |
| 10 | SPECIAL 1.47" | 959/960 | 0.050" | 651/805 | 959/960 | 0.055" | 48 | .830 | 73 | 6258 |
| 11 | 1042 YELLOW | NONE | — | SEE BELOW | SD 90 | 0.055" | 62 | .792 | 63 | 8421 |
| 12 | SPECIAL 1.47" | TOP GRADE | 0.050" | 661/799 | SD 90 | 0.055" | 55 | .811 | 63 | 8305 |
| 13 | SPECIAL 1.47" | 959/960 | 0.050" | 651/805 | SD 90 | 0.055" | 53 | .813 | 63 | 8254 |
| 14 | SPECIAL 1.47" | TOP GRADE | 0.050" | 661/799 | TOP GRADE | 0.055" | 51 | .819 | 68 | 7300 |
| 15 | 1042 YELLOW | NONE | — | SEE BELOW | 2-BALATA | 0.055" | 67 | .782 | 55 | 9479 |
| 16 | SPECIAL 1.47" | 959/960 | 0.050" | 651/805 | 2-BALATA | 0.055" | 61 | .800 | 55 | 9036 |
| 17 | SPECIAL 1.47" | TOP GRADE | 0.050" | 661/799 | 2-BALATA | 0.055" | 60 | .798 | 55 | 9262 |

1042 YELLOW=COMP#72, COR=.780
SPECIAL 1.47" CORE=COMP#67, COR=.782

-40-

CW 0308933

In this regard, "Top Grade" or "TG" is a low acid inner cover ionomer resin blend comprising of 70.6% Iotek 8000, 19.9% Iotek 7010 and 9.6% white masterbatch. "959/960" is a 50/50 wt/wt blend of Iotek 959/960. In this regard, Escor® or Iotek 959 is a sodium ion neutralized ethylene-acrylic neutralized ethylene-acrylic acid copolymer. According to Exxon, Ioteks 959 and 960 contain from about 19.0 to about 21.0% by weight acrylic acid with approximately 30 to about 70 percent of the acid groups neutralized with sodium and zinc ions, respectively. The physical properties of these high acid acrylic acid based ionomers are as follows:

| PROPERTY | ESCOR® (IOTEK) 959 | ESCOR® (IOTEK) 960 |
|---|---|---|
| Melt Index g/10 min | 2.0 | 1.8 |
| Cation | Sodium | Zinc |
| Melting Point, °F | 172 | 174 |
| Vicat Softening Point, °F | 130 | 131 |
| Tensile @ Break, psi | 4600 | 3500 |
| Elongation @ Break, % | 325 | 430 |
| Hardness, Shore D | 66 | 57 |
| Flexural Modulus, psi | 66,000 | 27,000 |

-41-

CW 0308934

Furthermore, the low acid ionomer formulation for "SD 90" and "Z-Balata" are set forth below:

| SD Cover | ZB Cover |
|---|---|
| 17.2% Surlyn 8320 | 19% Iotek 8000 |
| 7.5% Surlyn 8120 | 19% Iotek 7030 |
| 49% Surlyn 9910 | 52.5% Iotek 7520 |
| 16.4% Surlyn 8940 | 9.5% white MB |
| 9.7% white MB | |

The data clearly indicates that higher C.O.R. and hence increase travel distance can be obtained by using multi-layered covered balls versus balls covered with single layers. However, some sacrifices in compression and spin are also noted. Further, as shown in comparing Example Nos. 12 vs. 13, Example Nos. 17 vs. 16, etc., use of lower acid level inner cover layers and relatively soft outer cover layers (i.e., 50 wt. % or more soft ionomer) produces softer compression and higher spin rates than the golf balls comprised of high acid inner cover layers. Consequently, use of blends of low acid ionomer resins to produce the inner layer of a multi-layer covered golf ball, produces not only enhanced travel distance but also enhanced compression and spin properties.

<u>Example 3</u>

Multi-layer oversized golf balls were produced utilizing different ionomer resin blends as the inner cover layer (i.e., core plus inner cover layer is defined as "mantel"). The "ball data" of

-42-

CW 0308935

the oversized multi-layer golf balls in comparison with production samples of "Top-Flite® XL" and "Top-Flite® Z-Balata" is set forth below.

Table 8

| | | 18 | 19 | 20 | 21 Top-Flite® XL | 22 Top-Flite® Z-Balata 90 |
|---|---|---|---|---|---|---|
| 5 | **Core Data** | | | | | |
| | Size | 1.43 | 1.43 | 1.43 | 1.545 | 1.545 |
| | COR | .787 | .787 | .787 | ---- | ---- |
| | | | | | | |
| | **Mantel Data** | | | | | |
| | Material | TG | TG | TG | ---- | ---- |
| 10 | Size | .161 | 1.61 | 1.61 | ---- | ---- |
| | Thickness | .090 | .090 | .090 | ---- | ---- |
| | | | | | | |
| | **Mantel Data (cont'd)** | | | | | |
| | Shore D | 68 | 68 | 68 | ---- | ---- |
| 15 | Compression | 57 | 57 | 57 | ---- | ---- |
| | COR | .815 | .815 | .815 | ---- | ---- |
| | | | | | | |
| | **Ball Data** | | | | | |
| | Cover | TG | 2B | SD | TG | 2B |
| 20 | Size | 1.725 | 1.723 | 1.726 | 1.681 | 1.683 |
| | Weight | 45.2 | 45.1 | 45.2 | 45.3 | 45.5 |
| | Shore D | 68 | 56 | 63 | 68 | 56 |
| | Compression | 45 | 55 | 49 | 53 | 77 |
| | COR | .820 | .800 | .810 | .809 | .797 |
| | Spin | 7230 | 9268 | 8397 | 7133 | 9287 |

25    The results indicate that use of multi-layer covers enhances C.O.R. and travel distance. Further, the data shows that use of a blend of low acid ionomer resins (i.e., "Top Grade") to form the inner cover layer in combination with a soft outer cover

-43-

CW 0308936

("ZB" or "SD") produces enhanced spin and compression characteristics. The overall combination results in a relatively optimal golf ball with respect to characteristics of travel distances, spin and durability.

5

## Example 4

### Castable Polyurethane Covered Multi-layer Balls

A limited number of samples were made using BASF Baytec® RE232 polyurethane as a cover material over four different types of mantle cores. Controls included Z-Balata 100s along with the same

10    mantle cores used for the polyurethane samples covered with Z-Balata cover stock. Mantle cores were made up of 82 and 58 compression cores covered with Iotek 8030/7030.

### Castable PU Molding Process

Materials used:

15                   Baytec® RE832, mix ratio 9 parts A/12 parts B
                     1  -  1.57" i.d. smooth cavity
                     2  -  1.68" i.d. dimpled cavities
                     1  -  2" hose clamp
                     1  -  bench vise or large C-clamp

20    (The smooth and dimpled cavities are the same O.D.)

The mantle core is 1.57" and fits snugly in the 1.57" cavity. The hose clamp is attached to the 1.57" cavity and a mantle core is placed in inside. Urethane is mixed and poured into one of the dimpled cavities and the two halves are placed together

25    and clamped, forcing out excess material and forming half the cover. The hose clamp is used to keep the two mold halves aligned

-44-

CW 0308937

during curing. When the cover material is set up enough (about 5 minutes), the two halves are separated and the 1.57" mold is replaced with the other 1.68" mold and the process is repeated. Both halves of the cover are now cast and the entire assemble is
5    placed in an 125f oven for 1 hour after which it can be opened and the ball removed.

All samples were finished using normal production equipment and procedures. The properties of the finished balls are set forth below:

-45-

CW 0308938

Table 9

| | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|---|---|---|---|---|---|---|---|
| **CORE DATA** | | | | | | | |
| Size | 1.47" | 1.47" | 1.47" | 1.47 | 1.47" | 1.47" | 1.47" |
| Weight | 32.2 | 32 | 32.2 | 37.7 | 32.2 | 32 | 32.2 |
| Comp | 82 | 58 | 82 | 65 | 82 | 58 | 82 |
| COR | 768 | 772 | 768 | 794 | 768 | 772 | 768 |
| **MANTLE DATA** | | | | | | | |
| Material | Iotek 8030/7030 | Iotek 8030/7030 | Iotek 8030/7030 | None | Iotek 8030/7030 | Iotek 8030/7030 | Iotek 8030/7030 |
| Weight | 37.8 | 38.1 | 37.9 | | 37.8 | 38.1 | 37.9 |
| Size | 1.57" | 1.57" | 1.57" | | 1.57" | 1.57" | 1.57" |
| Comp | 70 | 48 | 69 | | 70 | 48 | 69 |
| COR | 781 | 785 | 786 | | 781 | 785 | 786 |
| **BALL DATA** | | | | | | | |
| Cover Material | Baytec RE832 | Baytec RE832 | Baytec RE832 | Baytec RE832 | Z-Balata | Z-Balata | Z-Balata |
| Weight | 45.4 | 45.5 | 45.2 | 45.3 | 44.8 | 45 | 45 |
| Comp | 75 | 64 | 73 | 60 | 65 | 50 | 65 |
| COR | 771 | 763 | 770 | 792 | 775 | 774 | 778 |
| Shore C | 65 | 65 | 65 | 65 | 84 | 84 | 84 |
| Spin (rpm) | 9560 | 8790 | 9265 | 8776 | 8702 | 9072 | 8643 |
| Cut (1-good, 4-poor) | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Scuff (1-good, 4-poor) | 1.5 | 1.5 | 1.5 | 2 | 3 | 3 | 3 |

-46-

Table 9 contains the construction details and test results. Multilayer balls with the thermoset urethane covers (Examples 23-25) were softer in compression and similar in COR to the multi-layer balls with the Z-Balata cover (Examples 27-29).

5    Shore C was much lower for the urethane balls and they were more resistant to scuff than any of the Z-Balata covered balls. Guillotine cut resistance was about the same. Spin rate comparison shows that the urethane samples are better than the Z-Balata covered balls.

10    Test results indicate that a very good multi-layer ball can be made using castable polyurethane cover material. Further, advantages include the molding very thin covers, molding over very soft compression core/mantle, and low cost tooling.

The invention has been described with reference to the
15    preferred embodiment. Obviously, modifications and alterations will occur to others upon reading and understanding the proceeding detailed description. It is intended that the invention be construed as including all such modifications and alterations insofar as they come within the scope of the appended claims or the
20    equivalents thereof.

-47-

CW 0308940

I claim:

1.    A golf ball comprising:

a core;

an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover

5    layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover

10    layer comprising a polyurethane material.

2.    The golf ball according to claim 1, wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

3.    The golf ball according to claim 1, wherein said inner cover layer has a thickness of about 0.050 inches, said outer cover layer has a thickness of about 0.055 inches, and said golf ball has an overall diameter of 1.680 inches or more.

4.    A multi-layer golf ball comprising:

a spherical core;

an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, said inner cover layer comprising an ionomeric

5    resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi; and

an outer cover layer having a Shore D hardness of about 64 or less disposed about said inner cover layer and defining a plurality of dimples to

10    form a multi-layer golf ball, said outer cover layer comprising a polyurethane

−48−

CW 0308941

based material and said outer cover layer having a thickness of from about 0.010 to about 0.070 inches.

5.    A golf ball according to claim 4, wherein said inner cover layer has a thickness of about 0.100 to about 0.010 inches, said golf ball having an overall diameter of 1.680 inches or more.

6.    A golf ball according to claim 4 wherein said inner cover layer has a thickness of about 0.050 inches and said outer cover layer has a thickness of about 0.055 inches, said golf ball having an overall diameter of 1.680 inches or more.

7.    A multi-layer golf ball comprising:
        a spherical core;
        an inner cover layer disposed over said spherical core to form a spherical intermediate ball, said inner cover layer having a Shore D hardness of at least 60, said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi, and said inner cover layer having a thickness from about 0.100 to about 0.010 inches; and
        a dimpled outer cover layer disposed over said spherical intermediate ball to form a multi-layer golf ball, said outer cover having a Shore D hardness of 64 or less, said outer layer comprising a polyurethane, said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi, and said outer cover layer having a thickness of from about 0.010 to about 0.070 inches.

8.    The multi-layer golf ball of claim 7 wherein the Shore D hardness of said outer cover layer is less than the Shore D hardness of said inner cover layer.

−49−

CW 0308942

## ABSTRACT

The present invention is directed to an improved multi-layer golf ball comprising a core, an inner cover layer and an outer cover layer. The inner cover layer is comprised of a low acid ionomer blend which may or may not include a filler such as zinc-stearate. The outer cover layer is comprised of a soft, non-ionomeric thermoplastic or thermosetting elastomer such as polyurethane, polyester or polyesteramide. The resulting multi-layered golf ball of the present invention provides for enhanced distance without sacrificing playability or durability when compared to known multi-layer golf balls.

CW 0308943



FIG. 1



FIG. 2

CW 0308944

Please type a plus sign (+) here:  +

| | |
|---|---|
| **ASSOCIATE POWER OF ATTORNEY** ] | Application Serial No.  Unassigned 09/470,196 |
| **PATENT APPLICATION** ] | Filing Date:  December 21, 1999 |
| ] | Inventor(s):  Michael J. Sullivan |
| Address to: ] | Group Art Unit:  Unassigned 3711 |
| Assistant Commissioner for Patents ] | Examiner:  Unassigned M. Graham |
| Washington, DC 20231 ] | Attorney Docket No.:  P-3724-2-F1-C1 |

Dear Sir:

Please recognize Diane F. Covello, Registration No. 34,164, as my associate

attorney in the above-referenced patent application as follows:

Diane F. Covello, Esq.                    (413) 322-2466

Patent Counsel
Spalding Sports Worldwide
425 Meadow Street
P.O. Box 901
Chicopee, MA 01021-0901, USA


If you have any questions, please contact me.

                                   Respectfully submitted,

Reg. No. 33,000                    Richard M. Klein, Esq.
                                   Attorney for Applicant
Phone (216) 861-5582               Fay, Sharpe, Fagan, Minnich &
                                   McKee, LLP
                                   1100 Superior Avenue
DFC/db                             Seventh Floor
                                   Cleveland, Ohio 44114-2518

Date:  3/21/2000


mailed via 1st class mail to PTO 5/30/2000

Docket No.: P-3724-2/SLD 2 035-3-3

## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name.

I believe I am an original and first inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### IMPROVED MULTI-LAYER GOLF BALL

the specification of which is attached hereto.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 Code of Federal Regulations § 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

None

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code § 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

None

CW 0308946

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

Donald R. Bahr, Reg. No. 21,011
Christopher B. Fagan, Reg. No. 22,987
Richard M. Klein, Reg. No. 33,000

Address all telephone calls to: Richard M. Klein
at telephone number: (216) 861-5582
Address all correspondence to:

Donald R. Bahr, Esq.
SPALDING & EVENFLO COMPANIES, INC.
5730 North Hoover Boulevard
Tampa, Florida 33634

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor: Michael J. Sullivan

Inventor's signature _Michael J. Sullivan_

Date: _October 31, 1995_

Residence:        58 Marlborough Street
                  Chicopee, Massachusetts  01021

Citizenship:  U.S.A.

Post Office Address:        58 Marlborough Street
                           Chicopee, Massachusetts  01021

CW 0308947

PATENT NUMBER

**6595873**

6595873

## U.S. **UTILITY** Patent Application

| O.I.P.E. | PATENT DATE |
|---|---|
| SCANNED HM    O.A. | JUL 22 2003 |

| APPLICATION NO. | CONT/PRIOR | CLASS | SUBCLASS | ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 09/776278 | D | 473 | 374 | 3711 | GORDEN |

APPLICANTS: Michael Sullivan

TITLE: Multi-layer golf ball

PTO-2040
12/99

BEST AVAILABLE COPY

### ISSUING CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | |
|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
| 473 | 374 | | |

INTERNATIONAL CLASSIFICATION

| | |
|---|---|
| A63B | 37/12 |

☐ Continued on Issue Slip Inside File Jacket

8/2/03   Formal Drawings (/  shts) set /    2/2/01

| TERMINAL DISCLAIMER | DRAWINGS | | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | Sheets Drwg. | Figs. Drwg. | Print Fig. | Total Claims | Print Claim for O.G. |
| | | 2 | | 6 | |

☐ The term of this patent subsequent to ___ (date) has been disclaimed.

☐ The term of this patent shall not extend beyond the expiration date of U.S. Patent No. 6,210,293

☒ The terminal ___ months of this patent have been disclaimed.

NOTICE OF ALLOWANCE MAILED

3/21/3

ISSUE FEE

| Amount Due | Date Paid |
|---|---|
| 1300 | 5-14-03 |

ISSUE BATCH NUMBER

_(Assistant Examiner)_ 3-20-03 _(Date)_

Mark S. Graham
Primary Examiner

_(Primary Examiner)_ _(Date)_

_(Legal Instruments Examiner)_ 3/24/03 _(Date)_

**WARNING:**
The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(Rev. 6/99)

FILED WITH: ☐ DISK (CRF)  ☐ FICHE  ☐ CD-ROM
(Attached in pocket on right inside flap)

ISSUE FEE IN FILE

(FACE)

CW 0308948



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 473 | 373 | 6-27-01 | RG |
| | 374 | | |
| | 370 | | |
| | 371 | | |
| | 372 | | |
| | 376 | | |
| | 377 | | |
| | 378 | | |
| Updated Search | | 11-20-02 | RG |
| Updated Search | | 3-20-03 | RG |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | Date | Exmr. |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 473 | 374 | 3-20-03 | RG |

(RIGHT OUTSIDE)

BEST AVAILABLE COPY

CW 0308949

ISSUE SLIP STAPLE AREA (for additional cross references)

| POSITION | INITIAL | ID NO. | DATE |
|---|---|---|---|
| FEE DETERMINATION | | | |
| O.I.P.E. CLASSIFIER | | | |
| FORMALITY REVIEW | r | 02 | 03/19/01 |
| RESPONSE FORMALITY REVIEW | | | |

BEST AVAILABLE COPY

## INDEX OF CLAIMS

| | | | |
|---|---|---|---|
| ✓ | ..................... Rejected | N | ............... Non-elected |
| = | ..................... Allowed | I | ............... Interference |
| – | (Through numeral)... Canceled | A | ............... Appeal |
| ÷ | ..................... Restricted | O | ............... Objected |

| Claim | | Date | Claim | | Date | Claim | | Date |
|---|---|---|---|---|---|---|---|---|
| Final | Original | | Final | Original | | Final | Original | |
| | 1 | | | 51 | | | 101 | |
| | 2 | | | 52 | | | 102 | |
| | 3 | | | 53 | | | 103 | |
| | 4 | | | 54 | | | 104 | |
| | 5 | | | 55 | | | 105 | |
| | 6 | | | 56 | | | 106 | |
| | 7 | | | 57 | | | 107 | |
| | 8 | | | 58 | | | 108 | |
| | 9 | | | 59 | | | 109 | |
| | 10 | | | 60 | | | 110 | |
| | 11 | | | 61 | | | 111 | |
| | 12 | | | 62 | | | 112 | |
| | 13 | | | 63 | | | 113 | |
| | 14 | | | 64 | | | 114 | |
| | 15 | | | 65 | | | 115 | |
| | 16 | | | 66 | | | 116 | |
| | 17 | | | 67 | | | 117 | |
| | 18 | | | 68 | | | 118 | |
| | 19 | | | 69 | | | 119 | |
| | 20 | | | 70 | | | 120 | |
| | 21 | | | 71 | | | 121 | |
| | 22 | | | 72 | | | 122 | |
| | 23 | | | 73 | | | 123 | |
| | 24 | | | 74 | | | 124 | |
| | 25 | | | 75 | | | 125 | |
| | 26 | | | 76 | | | 126 | |
| | 27 | | | 77 | | | 127 | |
| | 28 | | | 78 | | | 128 | |
| | 29 | | | 79 | | | 129 | |
| | 30 | | | 80 | | | 130 | |
| | 31 | | | 81 | | | 131 | |
| | 32 | | | 82 | | | 132 | |
| | 33 | | | 83 | | | 133 | |
| | 34 | | | 84 | | | 134 | |
| | 35 | | | 85 | | | 135 | |
| | 36 | | | 86 | | | 136 | |
| | 37 | | | 87 | | | 137 | |
| | 38 | | | 88 | | | 138 | |
| | 39 | | | 89 | | | 139 | |
| | 40 | | | 90 | | | 140 | |
| | 41 | | | 91 | | | 141 | |
| | 42 | | | 92 | | | 142 | |
| | 43 | | | 93 | | | 143 | |
| | 44 | | | 94 | | | 144 | |
| | 45 | | | 95 | | | 145 | |
| | 46 | | | 96 | | | 146 | |
| | 47 | | | 97 | | | 147 | |
| | 48 | | | 98 | | | 148 | |
| | 49 | | | 99 | | | 149 | |
| | 50 | | | 100 | | | 150 | |

If more than 150 claims or 10 actions
staple additional sheet here

(LEFT INSIDE)

CW 0308950

*02-05-01*

*A*



Form 3.54 Division-continuation
program application transmittal form
37 C.F.R. 1.53(b)



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Docket No. P-3724-2-F1-C1-C1
SLD 2 0035-3-3-1-1-1
IN RE APPLICATION OF: Sullivan
Prior application: 09/470,196

The Assistant Commissioner for Patents
Washington, D.C. 20231
**Box Patent Application**

Sir:

This is a request for filing a continuation application under 37 C.F.R. 1.53(b), of pending prior application **U.S. Serial No. 09/470,196 filed on December 21, 1999.**

Inventors:    Michael J. Sullivan

For:    **IMPROVED MULTI-LAYER GOLF BALL**

1.    **Papers Enclosed Which Are Required For Filing Date under 37 CFR 1.53(b) (Regular) or 37 CFR 1.153 (Design) Application**

    _47_  Pages of specification
    _2_   Pages of claims
    _1_   Page of Abstract
    _1_   Sheets of drawing

2.    ____    A PRELIMINARY AMENDMENT is enclosed.  (Copies of a Notice of Appeal and One-Month Extension of Time filed concurrently herewith in the parent case are also enclosed).

3.    ____    Applicant claims small entity status.

4.    ____    Request and Certification Under 35 U.S.C. 122(b)(2)(B)(i)

### CERTIFICATE OF EXPRESS MAIL

I hereby certify that this **TRANSMITTAL LETTER and associated papers** are being deposited with the United States Postal Service by Express Mail Procedure in an envelope addressed to: Assistant Commissioner for Patents, Box Patent Application, Washington, D.C. 20231 on ____*2/2/01*____.  **Express Mailing Label No.** *EL 545794627US*.

*Keith a. John*

  - 2 -

5.    x    The filing fee is calculated below.

| CLAIMS AS FILED IN THE PRIOR APPLICATION LESS ANY CLAIMS CANCELED BY PRELIMINARY AMENDMENT | | | |
|---|---|---|---|
| Basic Filing Fee  (Large Entity) | | | $ 710.00 |
| | | No. of Extra Claims Present | Additional Rate |
| Total Claims | 8 | 0 | $0.00 |
| Indep. Claims | 3 | 0 | $0.00 |

Total fee    $    710.00

6.    xxx    A check in the amount of $710.00 is enclosed.

7.    xxx    The Commissioner is hereby authorized to charge any fees which may be required, or credit any overpayment to Account No. 06-0308.

8.    XXX    The prior application is assigned of record to Spalding Sports Worldwide, Inc., as recorded in the U.S. Patent and Trademark Office.

9.    ___    An Application Data Sheet is enclosed.

10.    xxx    The power of attorney in the prior application is to  Donald R. Bahr, Reg. No. 21,001, Christopher B. Fagan, Reg. No. 22,987, Richard M. Klein, Reg. No. 33,000, and Diane F. Covello, Reg. No. 34,164  A copy of the powers in the prior application is enclosed.  Please address all future communications to:

Diane F. Covello, Esq.
Senior Patent Counsel
Michelle Bugbee
Associate Patent Counsel
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA  01021-0901

11.    Please direct all phone calls to Richard M. Klein or Mark E. Bandy at telephone No. (216)861-5582.

CW 0308952

- 3 -

__2/2/2001__
Date

[signature]

Richard M. Klein
Reg. No. 33,000
Mark E. Bandy
Reg. No. 35,788
FAY, SHARPE, FAGAN,
  MINNICH & McKEE, LLP
1100 Superior Avenue, 7th Floor
Cleveland, Ohio 44114
(216) 861-5582

C:\DATA\FORMS\APLTRACO.NDV

CW 0308953

6595873






FIG. 1



FIG. 2

CW 0308954

P3724-2-F1-C1-C1(SLD 2 0035-3-3-1-1-1)

## IMPROVED MULTI-LAYER GOLF BALL

### Field of the Invention

5          This application is a continuation application of U.S.
Application Serial No. 09/470,196 filed December 21, 1999, now US 6,210,293, which is a
continuation application of U.S. Application Serial No. 08/870,585
filed June 6, 1997, now Abandoned which is a continuation application of U.S.
Application Serial No. 08/556,237 filed on November 9, 1995, now
abandoned, which is a continuation-in-part of U.S. Application Serial
10         No. 08/070,510 filed June 1, 1993, now Abandoned.

The present invention relates to golf balls and, more
particularly, to improved standard and oversized golf balls comprising
multi-layer covers which have a comparatively hard inner layer and a
relatively soft outer layer such as that produced by the use of a
15         polyurethane based outer layer.  The improved multi-layer golf balls
provide for enhanced distance and durability properties over single
layer cover golf balls while at the same time offering enhanced "feel"
and spin characteristics generally associated with soft balata and
balata-like covers of the prior art.

20

### Background of the Invention

Traditional golf ball covers have been comprised of
balata or blends of balata with elastomeric or plastic materials.
25         The traditional balata covers are relatively soft and flexible.

CW 0308955



Upon impact, the soft balata covers compress against the surface of the club producing high spin. Consequently, the soft and flexible balata covers provide an experienced golfer with the ability to apply a spin to control the ball in flight in order to produce a draw or a fade, or a backspin which causes the ball to "bite" or stop abruptly on contact with the green. Moreover, the soft balata covers produce a soft "feel" to the low handicap player. Such playability properties (workability, feel, etc.) are particularly important in short iron play with low swing speeds and are exploited significantly by relatively skilled players.

Despite all the benefits of balata, balata covered golf balls are easily cut and/or damaged if mis-hit. Golf balls produced with balata or balata-containing cover compositions therefore have a relatively short lifespan.

As a result of this negative property, balata and its synthetic substitutes, transpolyisoprene and trans-polybutadiene, have been essentially replaced as the cover materials of choice by new cover materials comprising ionomeric resins.

Ionomeric resins are polymers containing interchain ionic bonding. As a result of their toughness, durability and flight characteristics, various ionomeric resins sold by E. I. DuPont de Nemours & Company under the trademark "Surlyn®" and more recently, by the Exxon Corporation (see U. S. Patent No. 4,911,451) under the trademarks-"Escor®" and the trade name "Iotek", have become the materials of choice for the construction of golf ball covers over the traditional "balata" (transpolyisoprene, natural or synthetic) rubbers. As stated, the softer balata covers, although exhibiting

CW 0308956

enhanced playability properties, lack the durability (cut and abrasion resistance, fatigue endurance, etc.) properties required for repetitive play.

Ionomeric resins are generally ionic copolymers of an olefin, such as ethylene, and a metal salt of an unsaturated carboxylic acid, such as acrylic acid, methacrylic acid, or maleic acid. Metal ions, such as sodium or zinc, are used to neutralize some portion of the acidic group in the copolymer resulting in a thermoplastic elastomer exhibiting enhanced properties, i.e. durability, etc., for golf ball cover construction over balata. However, some of the advantages gained in increased durability have been offset to some degree by the decreases produced in playability. This is because although the ionomeric resins are very durable, they tend to be very hard when utilized for golf ball cover construction, and thus lack the degree of softness required to impart the spin necessary to control the ball in flight. Since the ionomeric resins are harder than balata, the ionomeric resin covers do not compress as much against the face of the club upon impact, thereby producing less spin. In addition, the harder and more durable ionomeric resins lack the "feel" characteristic associated with the softer balata related covers.

As a result, while there are currently more than fifty (50) commercial grades of ionomers available both from DuPont and Exxon, with a wide range of properties which vary according to the type and amount of metal cations, molecular weight, composition of the base resin (i.e., relative content of ethylene and methacrylic

-3-

CW 0308957

and/or acrylic acid groups) and additive ingredients such as reinforcement agents, etc., a great deal of research continues in order to develop a golf ball cover composition exhibiting not only the improved impact resistance and carrying distance properties

5    produced by the "hard" ionomeric resins, but also the playability (i.e., "spin", "feel", etc.) characteristics previously associated with the "soft" balata covers, properties which are still desired by the more skilled golfer.

Consequently, a number of two-piece (a solid resilient

10   center or core with a molded cover) and three-piece (a liquid or solid center, elastomeric winding about the center, and a molded cover) golf balls have been produced by the present inventor and others to address these needs. The different types of materials utilized to formulate the cores, covers, etc. of these balls

15   dramatically alters the balls' overall characteristics.

In addition, multi-layered covers containing one or more ionomer resins have also been formulated in an attempt to produce a golf ball having the overall distance, playability and durability characteristics desired. For example, this was addressed by

20   Spalding & Evenflo Companies, Inc., the assignee of the present invention, in U.S. Patent No. 4,431,193 where a multi-layered regular sized, golf ball is disclosed.

In the '193 patent, a multi-layer golf ball is produced by initially molding a first cover layer on a spherical core and

25   then adding a second layer. The first layer is comprised of a hard, high flexural modulus resinous material such as type 1605

-4-

Surlyn® (now designated Surlyn® 8940). Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi. An outer layer of a comparatively soft, low flexural modulus resinous material such as type 1855 Surlyn® (now designated Surlyn® 9020) is molded over the inner cover layer. Type 1855 Surlyn® (Surlyn® 9020) is a zinc ion based low acid (10 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 14,000 psi.

The '193 patent teaches that the hard, high flexural modulus resin which comprises the first layer provides for a gain in coefficient of restitution over the coefficient of restitution of the core. The increase in the coefficient of restitution provides a ball which serves to attain or approach the maximum initial velocity limit of 255 feet per second as provided by the United States Golf Association (U.S.G.A.) rules. The relatively soft, low flexural modulus outer layer provides essentially no gain in the coefficient of restitution but provides for the advantageous "feel" and playing characteristics of a balata covered golf ball.

Unfortunately, however, while a ball of the '193 patent does exhibit enhanced playability characteristics with improved distance (i.e. enhanced C.O.R. values) over a number of other then known multi-layered balls, the ball suffers from poor cut resistance and relatively short distance (i.e. lower C.O.R. values) when compared to two-piece, single cover layer balls commercially available today. These undesirable properties make the ball

-5-

produced in accordance with the '193 patent unacceptable by today's standards.

The present invention is directed to new multi-layer golf ball compositions which provide for enhanced coefficient of restitution (i.e, enhanced resilience or carrying distance) and/or durability properties when compared to the multi-layer balls found in the prior art, as well as improved outer cover layer softness and durability. As such, the playability characteristics (i.e., "feel", "click", "spin", etc.) are not diminished.

These and other objects and features of the invention will be apparent from the following summary and description of the invention, the drawings and from the claims.

## Summary of the Invention

The present invention is directed to improved multi-layer golf ball cover compositions and the resulting multi-layer golf balls produced using the improved compositions. The novel multi-layer golf ball covers of the present invention include a first or inner layer or ply of a high acid (greater than 16 weight percent acid) ionomer blend or, more preferably, a low acid (16 weight percent acid or less) ionomer blend and second or outer layer or ply comprised of a comparatively softer, low modulus ionomer, ionomer blend or other non-ionomeric thermoplastic or thermosetting elastomer such as polyurethane or polyester elastomer. The multi-layer golf balls of the invention can be of standard or enlarged size. Preferably, the inner layer or ply incudes a blend of low

-6-

CW 0308960

acid ionomers and has a Shore D hardness of 60 or greater and the outer cover layer comprised of polyurethane and has a Shore D hardness of about 45 (i.e., Shore C hardness of about 65).

It has been found that multi-layer golf balls having inner and outer cover layers exhibit higher C.O.R. values and have greater travel distance in comparison with balls made from a single cover layer. In addition, it has been found that use of a inner cover layer constructed of a blend of low acid (i.e., 16 weight percent acid or less) ionomer resins produces softer compression and higher spin rates than inner cover layers constructed of high acid ionomer resins. This is compounded by the fact that the softer polyurethane outer layer adds to the desirable "feel" and high spin rate while maintaining respectable resiliency. The soft outer layer allows the cover to deform more during impact and increases the area of contact between the club face and the cover, thereby imparting more spin on the ball. As a result, the soft polyurethane cover provides the ball with a balata-like feel and playability characteristics with improved distance and durability.

Consequently, the overall combination of inner and outer cover layers made from blends of low acid ionomer resins and polyurethane results in a standard size or oversized golf ball having enhanced resilience (improved travel distance) and durability (i.e. cut resistance, etc.) characteristics while maintaining and in many instances, improving the balls playability properties.

-7-

CW 0308961




The combination of a low acid ionomer blend inner cover layer with a soft, relatively low modulus ionomer, polyurethane based elastomer outer cover layer provides for good overall coefficient of restitution (i.e., enhanced resilience) while at the same time demonstrating improved compression and spin. The outer cover layer generally contributes to a more desirable feel and spin, particularly at lower swing speeds with highly lofted clubs such as half wedge shots.

Two principal properties involved in golf ball performance are resilience and hardness. Resilience is determined by the coefficient of restitution (C.O.R.), the constant "e" which is the ratio of the relative velocity of two elastic spheres after direct impact to that before impact. As a result, the coefficient of restitution ("e") can vary from 0 to 1, with 1 being equivalent to an elastic collision and 0 being equivalent to an inelastic collision.

Resilience (C.O.R.), along with additional factors such as club head speed, angle of trajectory and ball configuration (i.e., dimple pattern) generally determine the distance a ball will travel when hit. Since club head speed and the angle of trajectory are factors not easily controllable by a manufacturer, factors of concern among manufacturers are the coefficient of restitution (C.O.R.) and the surface configuration of the ball.

The coefficient of restitution (C.O.R.) in solid core balls is a function of the composition of the molded core and of the cover. In balls containing a wound core (i.e., balls

-8-

CW 0308962

comprising a liquid or solid center, elastic windings, and a cover), the coefficient of restitution is a function of not only the composition of the center and cover, but also the composition and tension of the elastomeric windings. Although both the core

5   and the cover contribute to the coefficient of restitution, the present invention is directed to the enhanced coefficient of restitution (and thus travel distance) which is affected by the cover components.

        In this regard, the coefficient of restitution of a golf

10  ball is generally measured by propelling a ball at a given speed against a hard surface and measuring the ball's incoming and outgoing velocity electronically.     As mentioned above, the coefficient of restitution is the ratio of the outgoing velocity to the incoming velocity.     The coefficient of restitution must be

15  carefully controlled in all commercial golf balls in order for the ball to be within the specifications regulated by the United States Golf Association (U.S.G.A.).     Along this line, the U.S.G.A. standards indicate that a "regulation" ball cannot have an initial velocity (i.e., the speed off the club) exceeding 255 feet per

20  second. Since the coefficient of restitution of a ball is related to the ball's initial velocity, it is highly desirable to produce a ball having sufficiently high coefficient of restitution to closely approach the U.S.G.A. limit on initial velocity, while having an ample degree of softness (i.e., hardness) to produce

25  enhanced playability (i.e., spin, etc.).

-9-

CW 0308963



The hardness of the ball is the second principal property involved in the performance of a golf ball. The hardness of the ball can affect the playability of the ball on striking and the sound or "click" produced. Hardness is determined by the deformation (i.e., compression) of the ball under various load conditions applied across the ball's diameter (i.e., the lower the compression value, the harder the material). As indicated in U.S. Patent No. 4,674,751, softer covers permit the accomplished golfer to impart proper spin. This is because the softer covers deform on impact significantly more than balls having "harder" ionomeric resin covers. As a result, the better player is allowed to impart fade, draw or backspin to the ball thereby enhancing playability. Such properties may be determined by various spin rate tests such as the "nine iron" spin rate test described below in the Examples.

Accordingly, the present invention is directed to an improved multi-layer cover which produces, upon molding each layer around a core (preferably a solid core) to formulate a multi-layer cover, a golf ball exhibiting enhanced distance (i.e., resilience) without adversely affecting, and in many instances, improving the ball's playability (hardness/softness) and/or durability (i.e., cut resistance, fatigue resistance, etc.) characteristics.

These and other objects and features of the invention will be apparent from the following detailed description.

-10-

CW 0308964

 

Brief Description of the Drawings

FIG. 1 is a cross-sectional view of a golf ball embodying the invention illustrating a core 10 and a cover 12 consisting of an inner layer 14 and an outer layer 16 having dimples 18; and

5          FIG. 2 is a diametrical cross-sectional view of a golf ball of the invention having a core 10 and a cover 12 made of an inner layer 14 and an outer layer 16 having dimple 18.

Detailed Description of the Invention

The present invention relates to improved multi-layer

10    golf balls, particularly a golf ball comprising a multi-layered cover 12 over a solid core 10, and method for making same.

The multi-layered cover 12 comprises two layers: a first or inner layer or ply 14 and a second or outer layer or ply 16. The inner layer 14 is comprised of a low acid (i.e. 16 weight

15    percent acid or less) ionomer blend. Preferably, the inner layer is comprised of a blend of two or more low acid (i.e. 16 weight percent acid or less) ionomer resins neutralized to various extents by different metal cations. The inner cover layer may or may not include a metal stearate (e.g., zinc stearate) or other metal fatty acid salt. The purpose of the metal stearate or other metal fatty

20    acid salt is to lower the cost of production without affecting the overall performance of the finished golf ball.

The low acid ionomers which may be suitable for use in formulating the inner layer compositions of the subject invention

25    are ionic copolymers which are the metal, i.e., sodium, zinc,

-11-

CW 0308965



magnesium, etc., salts of the reaction product of an olefin having
from about 2 to 8 carbon atoms and an unsaturated monocarboxylic
acid having from about 3 to 8 carbon atoms.   Preferably, the
ionomeric resins are copolymers of ethylene and either acrylic or
5   methacrylic acid.   In some circumstances, an additional comonomer
such as an acrylate ester (i.e., iso- or n-butylacrylate, etc.) can
also be included to produce a softer terpolymer.   The carboxylic
acid groups of the copolymer are partially neutralized (i.e.,
approximately 10-75%, preferably 30-70%) by the metal ions.   Each
10   of the low acid ionomer resins which may be included in the inner
layer cover compositions of the invention contains 16% by weight or
less of a carboxylic acid.

        The inner layer compositions include the low acid
ionomers such as those developed and sold by E. I. DuPont de
15   Nemours & Company under the trademark "Surlyn®" and by Exxon
Corporation under the trademark "Escor®" or tradename "Iotek", or
blends thereof.

        The low acid ionomeric resins available from Exxon under
the designation "Escor®" and or "Iotek", are somewhat similar to
20   the low acid ionomeric resins available under the "Surlyn®"
trademark.   However, since the Escor®/Iotek ionomeric resins are
sodium or zinc salts of poly(ethylene-acrylic acid) and the
"Surlyn®" resins are zinc, sodium, magnesium, etc. salts of
poly(ethylene-methacrylic acid), distinct differences in properties
25   exist.

                              -12-



When utilized in the construction of the inner layer of a multi-layered golf ball, it has been found that the low acid ionomer blends extend the range of compression and spin rates beyond that previously obtainable.  More preferably, it has been found that when two or more low acid ionomers, particularly blends of sodium and zinc high acid ionomers, are processed to produce the covers of multi-layered golf balls, (i.e., the inner cover layer herein) the resulting golf balls will travel further and at an enhanced spin rate than previously known multi-layered golf balls.  Such an improvement is particularly noticeable in enlarged or oversized golf balls.

For example, the normal size, multi-layer golf ball taught in 4,650,193 does not incorporate blends of low acid ionomeric resins of the present invention in the inner cover layer.  In addition, the multi-layered ball disclosed in the '193 patent suffers substantially in durability in comparison with the present invention.

Furthermore, as shown in the Examples, use of a inner layer formulated from blends of lower acid ionomers produces multi-layer golf balls having enhanced compression and spin rates.  These are the properties desired by the more skilled golfer.

With respect to the outer layer 16 of the multi-layered cover of the present invention, the outer cover layer is comparatively softer than the low acid ionomer blend based inner layer.  The softness provides for the enhanced feel and playability characteristics typically associated with balata or balata-blend

-13-

CW 0308967



balls. The outer layer or ply is comprised of a relatively soft, low modulus (about 1,000 psi to about 10,000 psi) and low acid (less than 16 weight percent acid) ionomer, ionomer blend or a non-ionomeric elastomer such as, but not limited to, a

5  polyurethane, a polyester elastomer such as that marketed by DuPont under the trademark Hytrel®, a polyurethane sold by BASF under the designation Baytec® or a polyester amide such as that marketed by Elf Atochem S.A. under the trademark Pebax®. The outer layer is fairly thin (i.e. from about 0.010 to about 0.070 in thickness,

10 more desirably 0.03 to 0.06 inches in thickness for a 1.680 inch ball and 0.04 to 0.07 inches in thickness for a 1.72 inch ball), but thick enough to achieve desired playability characteristics while minimizing expense.

Preferably, the outer layer includes a blend of hard and

15 soft (low acid) ionomer resins such as those described in U. S. Patent Nos. 4,884,814 and 5,120,791, both incorporated herein by reference. Specifically, a desirable material for use in molding the outer layer comprises a blend of a high modulus (hard), low acid, ionomer with a low modulus (soft), low acid, ionomer to form

20 a base ionomer mixture. A high modulus ionomer herein is one which measures from about 15,000 to about 70,000 psi as measured in accordance with ASTM method D-790. The hardness may be defined as at least 50 on the Shore D scale as measured in accordance with ASTM method D-2240.

25 A low modulus ionomer suitable for use in the outer layer blend has a flexural modulus measuring from about 1,000 to about

-14-

CW 0308968



10,000 psi, with a hardness of about 20 to about 40 on the Shore D scale.

The hard ionomer resins utilized to produce the outer cover layer composition hard/soft blends include ionic copolymers which are the sodium, zinc, magnesium or lithium salts of the reaction product of an olefin having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having from 3 to 8 carbon atoms. The carboxylic acid groups of the copolymer may be totally or partially (i.e. approximately 15-75 percent) neutralized.

The hard ionomeric resins are likely copolymers of ethylene and either acrylic and/or methacrylic acid, with copolymers of ethylene and acrylic acid being the most preferred. Two or more types of hard ionomeric resins may be blended into the outer cover layer compositions in order to produce the desired properties of the resulting golf balls.

As discussed earlier herein, the hard ionomeric resins introduced under the designation Escor® and sold under the designation "Iotek" are somewhat similar to the hard ionomeric resins sold under the Surlyn® trademark. However, since the "Iotek" ionomeric resins are sodium or zinc salts of poly(ethylene-acrylic acid) and the Surlyn® resins are zinc or sodium salts of poly(ethylene-methacrylic acid) some distinct differences in properties exist. As more specifically indicated in the data set forth below, the hard "Iotek" resins (i.e., the acrylic acid based hard ionomer resins) are the more preferred hard resins for use in formulating the outer layer blends for use in the present

-15-

CW 0308969

invention. In addition, various blends of "Iotek" and Surlyn® hard ionomeric resins, as well as other available ionomeric resins, may be utilized in the present invention in a similar manner.

Examples of commercially available hard ionomeric resins which may be used in the present invention in formulating the inner and outer cover blends include the hard sodium ionic copolymer sold under the trademark Surlyn®8940 and the hard zinc ionic copolymer sold under the trademark Surlyn®9910. Surlyn®8940 is a copolymer of ethylene with methacrylic acid and about 15 weight percent acid which is about 29 percent neutralized with sodium ions. This resin has an average melt flow index of about 2.8. Surlyn®9910 is a copolymer of ethylene and methacrylic acid with about 15 weight percent acid which is about 58 percent neutralized with zinc ions. The average melt flow index of Surlyn®9910 is about 0.7. The typical properties of Surlyn®9910 and 8940 are set forth below in Table 1:

### TABLE 1

### Typical Properties of Commercially Available Hard
### Surlyn® Resins Suitable for Use in the Inner and Outer Layer
### Blends of the Present Invention

| | ASTM D | 8940 | 9910 | 8920 | 8528 | 9970 | 2730 |
|---|---|---|---|---|---|---|---|
| Cation Type | | Sodium | Zinc | Sodium | Sodium | Zinc | Zinc |
| Melt flow index, gms/10 min. | D-1238 | 2.8 | 0.7 | 0.9 | 1.3 | 14.0 | 1.6 |
| Specific Gravity, g/cm³ | D-792 | 0.95 | 0.97 | 0.95 | 0.94 | 0.95 | 0.95 |
| Hardness, Shore D | D-2240 | 66 | 64 | 66 | 60 | 62 | 63 |
| Tensile Strength, (kpsi), MPa | D-638 | (4.8) 33.1 | (3.6) 24.8 | (5.4) 37.2 | (4.2) 29.0 | (3.2) 22.0 | (4.1) 28.0 |

-16-

CW 0308970

 

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Elongation, % | D-638 | 470 | 290 | 350 | 450 | 460 | 460 |
| Flexural Modulus, (kpsi) MPa | D-790 | (51) 350 | (48) 330 | (55) 380 | (32) 220 | (28) 190 | (30) 210 |
| Tensile Impact (23°C) KJ/m, (ft.-lbs./in²) | D-1822S | 1020 (485) | 1020 (485) | 865 (410) | 1160 (550) | 760 (360) | 1240 (590) |
| Vicat Temperature, °C | D-1525 | 63 | 62 | 58 | 73 | 61 | 73 |

Examples of the more pertinent acrylic acid based hard ionomer resin suitable for use in the present inner and outer cover composition sold under the "Iotek" tradename by the Exxon Corporation include Iotek 4000, Iotek 4010, Iotek 8000, Iotek 8020 and Iotek 8030. The typical properties of these and other Iotek hard ionomers suited for use in formulating the inner and outer layer cover compositions are set forth below in Table 2:

-17-

CW 0308971

 

## TABLE 2

## Typical Properties of Iotek Ionomers

| Resin Properties | ASTM Method | Units | 4000 | 4010 | 8000 | 8020 | 8030 |
|---|---|---|---|---|---|---|---|
| Cation type | | | zinc | zinc | sodium | sodium | sodium |
| Melt index | D-1238 | g/10 min. | 2.5 | 1.5 | 0.8 | 1.6 | 2.8 |
| Density | D-1505 | kg/m³ | 963 | 963 | 954 | 960 | 960 |
| Melting Point | D-3417 | °C | 90 | 90 | 90 | 87.5 | 87.5 |
| Crystallization Point | D-3417 | °C | 62 | 64 | 56 | 53 | 55 |
| Vicat Softening Point | D-1525 | °C | 62 | 63 | 61 | 64 | 67 |
| % Weight Acrylic Acid | | | 16 | | 11 | | |
| % of Acid Groups cation neutralized | | | 30 | | 40 | | |

| Plaque Properties (3 mm thick, compression molded) | ASTM Method | Units | 4000 | 4010 | 8000 | 8020 | 8030 |
|---|---|---|---|---|---|---|---|
| Tensile at break | D-638 | MPa | 24 | 26 | 36 | 31.5 | 28 |
| Yield point | D-638 | MPa | none | none | 21 | 21 | 23 |
| Elongation at break | D-638 | % | 395 | 420 | 350 | 410 | 395 |
| 1% Secant modulus | D-638 | MPa | 160 | 160 | 300 | 350 | 390 |
| Shore Hardness D | D-2240 | -- | 55 | 55 | 61 | 58 | 59 |

| Film Properties (50 micron film 2.2:1 Blow-up ratio) | | | 4000 | 4010 | 8000 | 8020 | 8030 |
|---|---|---|---|---|---|---|---|
| Tensile at Break    MD | D-882 | MPa | 41 | 39 | 42 | 52 | 47.4 |
|                     TD | D-882 | MPa | 37 | 38 | 38 | 38 | 40.5 |
| Yield point    MD | D-882 | MPa | 15 | 17 | 17 | 23 | 21.6 |
|                TD | D-882 | MPa | 14 | 15 | 15 | 21 | 20.7 |
| Elongation at Break    MD | D-882 | % | 310 | 270 | 260 | 295 | 305 |
|                        TD | D-882 | % | 360 | 340 | 280 | 340 | 345 |
| 1% Secant modulus MD | D-882 | MPa | 210 | 225 | 390 | 380 | 380 |
|                   TD | D-882 | MPa | 200 | 225 | 380 | 350 | 345 |
| Dart Drop Impact | D-1709 | g/micron | 12.4 | 12.5 | 20.3 | | |

-18-

CW 0308972



| Resin Properties | ASTM Method | Units | 7010 | 7020 | 7030 |
|---|---|---|---|---|---|
| Cation type | | | zinc | zinc | zinc |
| Melt Index | D-1238 | g/10 min. | 0.8 | 1.5 | 2.5 |
| Density | D-1505 | kg/m³ | 960 | 960 | 960 |
| Melting Point | D-3417 | °C | 90 | 90 | 90 |
| Crystallization Point | D-3417 | °C | -- | -- | -- |
| Vicat Softening Point | D-1525 | °C | 60 | 63 | 62.5 |
| %Weight Acrylic Acid | | | -- | -- | -- |
| % of Acid Groups Cation Neutralized | | | -- | -- | -- |

| Plaque Properties (3 mm thick, compression molded) | ASTM Method | Units | 7010 | 7020 | 7030 |
|---|---|---|---|---|---|
| Tensile at break | D-638 | MPa | 38 | 38 | 38 |
| Yield Point | D-638 | MPa | none | none | none |
| Elongation at break | D-638 | % | 500 | 420 | 395 |
| 1% Secant modulus | D-638 | MPa | -- | -- | -- |
| Shore Hardness D | D-2240 | -- | 57 | 55 | 55 |

Comparatively, soft ionomers are used in formulating the hard/soft blends of the inner and outer cover compositions. These ionomers include acrylic acid based soft ionomers. They are generally characterized as comprising sodium or zinc salts of a terpolymer of an olefin having from about 2 to 8 carbon atoms, acrylic acid, and an unsaturated monomer of the acrylate ester class having from 1 to 21 carbon atoms. The soft ionomer is preferably a zinc based ionomer made from an acrylic acid base polymer in an unsaturated monomer of the acrylate ester class. The soft (low modulus) ionomers have a hardness from about 20 to about 40 as measured on the Shore D scale and a flexural modulus from about 1,000 to about 10,000, as measured in accordance with ASTM method D-790.

-19-

CW 0308973

Certain ethylene-acrylic acid based soft ionomer resins developed by the Exxon Corporation under the designation "Iotek 7520" (referred to experimentally by differences in neutralization and melt indexes as LDX 195, LDX 196, LDX 218 and LDX 219) may be

5    combined with known hard ionomers such as those indicated above to produce the inner and outer cover layers.  The combination produces higher C.O.R.s at equal or softer hardness, higher melt flow (which corresponds to improved, more efficient molding, i.e., fewer rejects) as well as significant cost savings versus the inner and

10   outer layers of multi-layer balls produced by other known hard-soft ionomer blends as a result of the lower overall raw materials costs and improved yields.

While the exact chemical composition of the resins to be sold by Exxon under the designation Iotek 7520 is considered by

15   Exxon to be confidential and proprietary information, Exxon's experimental product data sheet lists the following physical properties of the ethylene acrylic acid zinc ionomer developed by Exxon:

-20-



TABLE 3

Physical Properties of Iotek 7520

| | Property | ASTM Method | Units | Typical Value |
|---|---|---|---|---|
| | Melt Index | D-1238 | g/10 min. | 2 |
| 5 | Density | D-1505 | kg/m$^3$ | 0.962 |
| | Cation | | | Zinc |
| | Melting Point | D-3417 | °C | 66 |
| | Crystallization Point | D-3417 | °C | 49 |
| 10 | Vicat Softening Point | D-1525 | °C | 42 |

| | Plaque Properties (2 mm thick Compression Molded Plaques) | | | |
|---|---|---|---|---|
| | Tensile at Break | D-638 | MPa | 10 |
| | Yield Point | D-638 | MPa | None |
| 15 | Elongation at Break | D-638 | % | 760 |
| | 1% Secant Modulus | D-638 | MPa | 22 |
| | Shore D Hardness | D-2240 | | 32 |
| | Flexural Modulus | D-790 | MPa | 26 |
| | Zwick Rebond | ISO 4862 | % | 52 |
| 20 | De Mattia Flex Resistance | D-430 | Cycles | >5000 |

In addition, test data collected by the inventor indicates that Iotek 7520 resins have Shore D hardnesses of about 32 to 36 (per ASTM D-2240), melt flow indexes of 3±0.5 g/10 min (at 190°C. per ASTM D-1288), and a flexural modulus of about 2500-3500 psi (per ASTM D-790). Furthermore, testing by an independent

-21-

CW 0308975



testing laboratory by pyrolysis mass spectrometry indicates that Iotek 7520 resins are generally zinc salts of a terpolymer of ethylene, acrylic acid, and methyl acrylate.

Furthermore, the inventor has found that a newly developed grade of an acrylic acid based soft ionomer available from the Exxon Corporation under the designation Iotek 7510, is also effective, when combined with the hard ionomers indicated above in producing golf ball covers exhibiting higher C.O.R. values at equal or softer hardness than those produced by known hard-soft ionomer blends. In this regard, Iotek 7510 has the advantages (i.e. improved flow, higher C.O.R. values at equal hardness, increased clarity, etc.) produced by the Iotek 7520 resin when compared to the methacrylic acid base soft ionomers known in the art (such as the Surlyn 8625 and the Surlyn 8629 combinations disclosed in U.S. Patent No. 4,884,814).

In addition, Iotek 7510, when compared to Iotek 7520, produces slightly higher C.O.R. valves at equal softness/hardness due to the Iotek 7510's higher hardness and neutralization. Similarly, Iotek 7510 produces better release properties (from the mold cavities) due to its slightly higher stiffness and lower flow rate than Iotek 7520. This is important in production where the soft covered balls tend to have lower yields caused by sticking in the molds and subsequent punched pin marks from the knockouts.

According to Exxon, Iotek 7510 is of similar chemical composition as Iotek 7520 (i.e. a zinc salt of a terpolymer of ethylene, acrylic acid, and methyl acrylate) but is more highly

-22-

CW 0308976

 

neutralized. Based upon FTIR analysis, Iotek 7520 is estimated to be about 30-40 wt.-% neutralized and Iotek 7510 is estimated to be about 40-60 wt.-% neutralized. The typical properties of Iotek 7510 in comparison of those of Iotek 7520 are set forth below:

TABLE 4

Physical Properties of Iotek 7510
in Comparison to Iotek 7520

|  | IOTEK 7520 | IOTEK 7510 |
|---|---|---|
| MI, g/10 min | 2.0 | 0.8 |
| Density, g/cc | 0.96 | 0.97 |
| Melting Point, °F | 151 | 149 |
| Vicat Softening Point, °F | 108 | 109 |
| Flex Modulus, psi | 3800 | 5300 |
| Tensile Strength, psi | 1450 | 1750 |
| Elongation, % | 760 | 690 |
| Hardness, Shore D | 32 | 35 |

It has been determined that when hard/soft ionomer blends are used for the outer cover layer, good results are achieved when the relative combination is in a range of about 90 to about 10 percent hard ionomer and about 10 to about 90 percent soft ionomer. The results are improved by adjusting the range to about 75 to 25 percent hard ionomer and 25 to 75 percent soft ionomer. Even better results are noted at relative ranges of about 60 to 90 percent hard ionomer resin and about 40 to 60 percent soft ionomer resin.

-23-

CW 0308977

 

Specific formulations which may be used in the cover composition are included in the examples set forth in U. S. Patent No. 5,120,791 and 4,884,814. The present invention is in no way limited to those examples.

5    Moreover, in alternative embodiments, the outer cover layer formulation may also comprise a soft, low modulus non-ionomeric thermoplastic elastomer including a polyester polyurethane such as B.F.Goodrich Company's Estane® polyester polyurethane X-4517. According to B.F.Goodrich, Estane® X-4517 has

10    the following properties:

### Properties of Estane® X-4517

| | |
|---|---|
| Tensile | 1430 |
| 100% | 815 |
| 200% | 1024 |
| 300% | 1193 |
| Elongation | 641 |
| Youngs Modulus | 1826 |
| Hardness A/D | 88/39 |
| Dayshore Rebound | 59 |
| | |
| Solubility in Water | Insoluble |
| Melt processing temperature | >350°F (>177°C) |
| Specific Gravity (H$_2$O=1) | 1.1-1.3 |

Other soft, relatively low modulus non-ionomeric thermoplastic elastomers may also be utilized to produce the outer

25    cover layer as long as the non-ionomeric thermoplastic elastomers produce the playability and durability characteristics desired without adversely effecting the enhanced spin characteristics produced by the low acid ionomer resin compositions. These include, but are not limited to thermoplastic polyurethanes such

-24-

CW 0308978

as: Texin thermoplastic polyurethanes from Mobay Chemical Co. and
the Pellethane thermoplastic polyurethanes from Dow Chemical Co.;
Ionomer/rubber blends such as those in Spalding U.S. Patents
4,986,545; 5,098,105 and 5,187,013; and, Hytrel polyester

5   elastomers from DuPont and pebax polyesteramides from Elf Atochem
S.A.

        Similarly, a castable, thermosetting polyurethane
produced by BASF under the trade designation Baytec® has also shown
enhanced cover formulation properties. According to BASF, Baytec®

10  (such as Baytec® RE 832), relates to a group of reactive elastomers
having outstanding wear resistance, high mechanical strength, high
elasticity and good resistance to weathering, moisture and
chemicals. The Baytec® RE-832 system gives the following typical
physical properties:

| Property | ASTM Test Method | Unit | Value |
|---|---|---|---|
| Tear Strength Die C | D624 | pli | 180 |
| Stress at | | | |
| 100% Modulus | D412 | psi | 320 |
| 200% Modulus | | | 460 |
| 300% Modulus | | | 600 |
| Ultimate Strength | D412 | psi | 900 |
| Elongation at Break | D412 | % | 490 |
| Taber Abrasion | D460, H-18 | mg/1000 cycles | 350 |

-25-



| Component¹ Properties | Part A (Isocyanate) | Part B (Resin) |
|---|---|---|
| Viscosity @ 25°C, mPa•s | 2500 | 2100 |
| Density @ 25°C, g/cm | 1.08 | 1.09 |
| NCO, % | 9.80 | ____ |
| Hydroxyl Number, Mg KOH/g | ____ | 88 |

¹Component A is a modified diphenylmethane diisocyanate (mDI) prepolymer and component B is a polyether polyol blend.

In preparing golf balls in accordance with the present invention, a hard inner cover layer is molded (by injection molding or by compression molding) about a core (preferably a solid core). A comparatively softer outer layer is molded over the inner layer.

The conventional solid core is about 1.545 inches in diameter, although it can range from about 1.495 to about 1.575 inches. Conventional solid cores are typically compression molded from a slug of uncured or lightly cured elastomer composition comprising a high cis content polybutadiene and a metal salt of an $\alpha$, $\beta$, ethylenically unsaturated carboxylic acid such as zinc mono or diacrylate or methacrylate. To achieve higher coefficients of restitution in the core, the manufacturer may include fillers such as small amounts of a metal oxide such as zinc oxide. In addition, larger amounts of metal oxide than those that are needed to achieve the desired coefficient are often included in conventional cores in order to increase the core weight so that the finished ball more closely approaches the U.S.G.A. upper weight limit of 1.620 ounces. Other materials may be used in the core composition including compatible rubbers or ionomers, and low molecular weight fatty

-26-

CW 0308980

acids such as stearic acid.  Free radical initiators such as peroxides are admixed with the core composition so that on the application of heat and pressure, a complex curing cross-linking reaction takes place.

5          The inner cover layer which is molded over the core is about 0.100 inches to about 0.010 inches in thickness, preferably about 0.0375 inches thick.  The outer cover layer is about 0.010 inches to about 0.050 inches in thickness, preferably 0.0300 inches thick.  Together, the core, the inner cover layer and the outer

10   cover layer combine to form a ball having a diameter of 1.680 inches or more, the minimum diameter permitted by the rules of the United States Golf Association and weighing about 1.620 ounces.

          Additional materials may be added to the cover compositions (both inner and outer cover layer) of the present

15   invention including dyes (for example, Ultramarine Blue sold by Whitaker, Clark and Daniels of South Plainsfield, N.J.) (see U.S. Patent No. 4,679,795); pigments such as titanium dioxide, zinc oxide, barium sulfate and zinc sulfate; and UV absorbers; antioxidants; antistatic agents; and stabilizers.  Further, the

20   cover compositions of the present invention may also contain softening agents, such as plasticizers, processing aids, etc. and reinforcing material such as glass fibers and inorganic fillers, as long as the desired properties produced by the golf ball covers are not impaired.

-27-

The various cover composition layers of the present
invention may be produced according to conventional melt blending
procedures.  In the case of the outer cover layer, when a blend of
hard and soft, low acid ionomer resins are utilized, the hard
5    ionomer resins are blended with the soft ionomeric resins and with
a masterbatch containing the desired additives in a Banbury mixer,
two-roll mill, or extruder prior to molding.  The blended
composition is then formed into slabs and maintained in such a
state until molding is desired.  Alternatively, a simple dry blend
10   of the pelletized or granulated resins and color masterbatch may be
prepared and fed directly into the injection molding machine where
homogenization occurs in the mixing section of the barrel prior to
injection into the mold.  If necessary, further additives such as
an inorganic filler, etc., may be added and uniformly mixed before
15   initiation of the molding process.  A similar process is utilized
to formulate the low acid ionomer resin compositions used to
produce the inner cover layer.

The golf balls of the present invention can be produced
by molding processes currently well known in the golf ball art.
20   Specifically, the golf balls can be produced by injection molding
or compression molding the inner cover layer about wound or solid
molded cores to produce an intermediate golf ball having a diameter
of about 1.50 to 1.67 inches, preferably about 1.620 inches.  The
outer layer is subsequently molded over the inner layer to produce
25   a golf ball having a diameter of 1.680 inches or more.  Although
either solid cores or wound cores can be used in the present

-28-

CW 0308982



invention, as a result of their lower cost and superior performance, solid molded cores are preferred over wound cores.

In compression molding, the inner cover composition is formed via injection at about 380°F to about 450°F into smooth

5    surfaced hemispherical shells which are then positioned around the core in a mold having the desired inner cover thickness and subjected to compression molding at 200° to 300°F for about 2 to 10 minutes, followed by cooling at 50° to 70°F for about 2 to 7 minutes to fuse the shells together to form a unitary intermediate

10   ball. In addition, the intermediate balls may be produced by injection molding wherein the inner cover layer is injected directly around the core placed at the center of an intermediate ball mold for a period of time in a mold temperature of from 50°F to about 100°F. Subsequently, the outer cover layer is molded

15   about the core and the inner layer by similar compression or injection molding techniques to form a dimpled golf ball of a diameter of 1.680 inches or more.

After molding, the golf balls produced may undergo various further processing steps such as buffing, painting and

20   marking as disclosed in U.S. Patent No. 4,911,451.

The resulting golf ball produced from the low acid ionomer resin inner layer and the relatively softer, low flexural modulus outer layer provide for an improved multi-layer golf ball which provides for desirable coefficient of restitution,

25   compression, spin and durability properties while at the same time

-29-

CW 0308983

offering the feel characteristics associated with soft balata and balata-like covers of the prior art.

The present invention is further illustrated by the following examples in which the parts of the specific ingredients are by weight. It is to be understood that the present invention is not limited to the examples, and various changes and modifications may be made in the invention without departing from the spirit and scope thereof.

Example 1

Several intermediate balls (cores plus inner cover layers) were prepared in accordance with conventional molding procedures described above. The inner cover compositions were molded around 1.545 inch diameter cores weighing 36.5 grams such that the inner cover had a wall thickness of about 0.0675 inches, with the overall ball measuring about 1.680 inches in diameter.

The cores utilized in the examples were comprised of the following ingredients: high cis-polybutadiene, zinc diacrylate, zinc oxide, zinc stearate, peroxide, calcium carbonate, etc. The molded cores exhibited Riehle compressions of about 60 and C.O.R. values of about .800. A representative formulation of the molded cores is set forth below:

-30-

CW 0308984



| MATERIAL | WEIGHT |
|---|---|
| BR-1220 (high cis-polybutadiene) | 70.70 |
| Taktene 220 (high cis-polybutadiene) | 29.30 |
| React Rite ZDA (zinc diacrylate) | 31.14 |
| 5    Zinc Oxide | 6.23 |
| Zinc Stearate | 20.15 |
| Limestone | 17.58 |
| Ground Flash | 20.15 |
| (20-40 Mesh) | |
| 10    Blue Masterbatch | .012 |
| Luperco 231XL or Trigonox 29/40 | .89 |
| Papi 94 | .50 |

15    ¹Blue Masterbatch consists of unknown compositions used only for internal identification purposes and has no effect on physical properties.

      The inner cover compositions designated herein as compositions A-E utilized to formulate the intermediate balls are set forth in Table 7 below. The resulting molded intermediate

20   balls were tested to determine the individual compression (Riehle), C.O.R., Shore C hardness, spin rate and cut resistance properties. These results are also set forth in Table 7 below.

      The data of these examples are the average of twelve intermediate balls produced for each example. The properties were

25   measured according to the following parameters:

      Coefficient of restitution (C.O.R.) was measured by firing the resulting golf ball in an air canon at a velocity of 125 feet per second against a steel plate positioned 12 feet from the muzzle of the canon. The

30   rebound velocity was then measured. The rebound velocity was divided by the forward velocity to give a coefficient of restitution.

      Shore hardness was measured in accordance with ASTM test 2240.

-31-



Cut resistance was measured in accordance with the following procedure: A golf ball is fired at 135 feet per second against the leading edge of a pitching wedge wherein the leading edge radius is 1/32 inch, the loft angle is 51 degrees, the sole radius is 2.5 inches and the bounce angle is 7 degrees.

The cut resistance of the balls tested herein was evaluated on a scale of 1 to 5. The number 1 represents a cut that extends completely through the cover to the core. A 2 represents a cut that does not extend completely through the cover but that does break the surface. A 3 does not break the surface of the cover but does leave a permanent dent. A 4 leaves only a slight crease which is permanent but not as severe as 3. A 5 represents virtually no visible indentation or damage of any sort.

The spin rate of the golf ball was measured by striking the resulting golf balls with a pitching wedge or 9 iron wherein the club head speed is about 105 feet per second and the ball is launched at an angle of 26 to 34 degrees with an initial velocity of about 110 to 115 feet per second. The spin rate was measured by observing the rotation of the ball in flight using stop action Strobe photography.

Initial velocity is the velocity of a ball when struck at a hammer speed of 143.8 feet per second in accordance with a test as prescribed by the U.S.G.A.

As will be noted, compositions A, B and C include high acid ionomeric resins (16% or more acid), with composition B further including zinc stearate. Composition D represents the inner layer (i.e. Surlyn 1605) used in U.S. Patent No. 4,431,193. Composition E provides a hard, low acid ionomeric resin blend.

The purpose behind producing and testing the balls of Table 5 was to provide a subsequent comparison in properties with the multi-layer golf balls of the present invention.

<u>Table 5</u>

-32-



### Molded Intermediate Golf Balls

| Ingredients of Inner Cover Compositions | A | B | C | D | E |
|---|---|---|---|---|---|
| Iotek 959 | 50 | 50 | -- | -- | -- |
| Iotek 960 | 50 | 50 | -- | -- | -- |
| Zinc Stearate | -- | 50 | -- | -- | -- |
| Surlyn 8162 | -- | -- | 75 | -- | -- |
| Surlyn 8422 | -- | -- | 25 | -- | -- |
| Surlyn 1605 | -- | -- | -- | 100 | -- |
| Iotek 7030 | -- | -- | -- | -- | 50 |
| Iotek 8000 | -- | -- | -- | -- | 50 |

| Properties of Molded Intermediate Balls | | | | | |
|---|---|---|---|---|---|
| Compression | 58 | 58 | 60 | 63 | 62 |
| C.O.R. | .811 | .810 | .807 | .793 | .801 |
| Shore C Hardness | 98 | 98 | 97 | 96 | 96 |
| Spin Rate (R.P.M.) | 7,367 | 6,250 | 7,903 | 8,337 | 7,956 |
| Cut Resistance | 4-5 | 4-5 | 4-5 | 4-5 | 4-5 |

As shown in Table 5 above, the high acid ionomer resin inner cover layer (molded intermediate balls A-C) have lower spin rates and exhibit higher resiliency characteristics than the low acid ionomer resin based inner cover layers of balls D and E.

Multi-layer balls in accordance with the present invention were then prepared. Specifically, the inner cover compositions used to produce intermediate golf balls from Table 5 were molded over the solid cores to a thickness of about 0.0375 inches, thus forming the inner layer. The diameter of the solid core with the inner layer measured about 1.620 inches. Alternatively, the intermediate golf balls of Table 5 were ground down using a centerless grinding machine to a size of 1.620 inches in diameter to produce an inner cover layer of 0.0375 inches.

-33-

CW 0308987



The size of 1.620 inches was determined after attempting to mold the outer cover layer to various sizes (1.600", 1.610", 1.620", 1.630" and 1.640") of intermediate (core plus inner layer)

5    balls.    It was determined that 1.620" was about the largest "intermediate" ball (i.e., core plus inner layer) which could be easily molded over with the soft outer layer materials of choice. The goal herein was to use as thin an outer layer as necessary to achieve the desired playability characteristics while minimizing the cost of the more expensive outer materials.    However, with a

10   larger diameter final golf ball and/or if the cover is compression molded, a thinner cover becomes feasible.

With the above in mind, an outer cover layer composition was blended together in accordance with conventional blending techniques.    The outer layer composition used for this portion of

15   the example is a relatively soft cover composition such as those listed in U.S. Patent No. 5,120,791.    An example of such a soft cover composition is a 45% soft/55% hard low acid ionomer blend designated by the inventor as "TE-90".    The composition of TE-90 is set forth as follows:

20        **Outer Cover Layer Composition TE-90**

|  |  |
|---|---|
| Iotek 8000 | 22.7 weight % |
| Iotek 7030 | 22.7 weight % |
| Iotek 7520 | 45.0 weight % |
| White MB[1] | 9.6 weight % |

25   [1]White MB consists of about 23.77 weight percent $TiO_2$; 0.22 weight percent Uvitex OB, 0.03 weight percent Santonox R, 0.05 weight percent Ultramarine blue and 75.85 weight percent Iotek 7030.

-34-

 

The above outer layer composition was molded around each of the 1.620 diameter intermediate balls comprising a core plus one of compositions A-D, respectively. In addition, for comparison purposes, Surlyn® 1855 (new Surlyn® 9020), the cover composition of the '193 patent, was molded about the inner layer of composition D (the intermediate ball representative of the '193 patent). The outer layer TE-90 was molded to a thickness of approximately 0.030 inches to produce a golf ball of approximately 1.680 inches in diameter. The resulting balls (a dozen balls for each example) were tested and the various properties thereof are set forth in Table 6A as follows:

### Table 6A

### Finished Balls

| Ingredients: | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| Inner Cover Composition | A | B | C | D | D |
| Outer Cover Composition | TE-90 | TE-90 | TE-90 | TE-90 | Surlyn® 9020 |
| Properties of Molded Finished Balls: | | | | | |
| Compression | 63 | 63 | 69 | 70 | 61 |
| C.O.R. | .784 | .778 | .780 | .770 | .757 |
| Shore C Hardness | 88 | 88 | 88 | 88 | 89 |
| Spin (R.P.M.) | 8,825 | 8,854 | 8,814 | 8,990 | 8,846 |
| Cut Resistance | 3-4 | 3-4 | 3-4 | 3-4 | 1-2 |

-35-

CW 0308989

As it will be noted in finished balls 1-4, by creating a
multi-layer cover utilizing the high acid ionomer resins in the
inner cover layer and the hard/soft low acid ionomer resins in the
outer cover layer, higher compression and increased spin rates are
5   noted over the single layer covers of Table 5.  In addition, both
the C.O.R. and the Shore C hardness are reduced over the respective
single layer covers of Table 5.  This was once again particularly
true with respect to the multi-layered balls containing the high
acid ionomer resin in the inner layer (i.e. finished balls 1-4).
10  In addition, with the exception of prior art ball 5 (i.e. the '193
patent), resistance to cutting remains good but is slightly
decreased.  As noted above, the prior art ball of the '193 patent
suffers substantially in durability (as well as in resiliency) in
comparison to the balls of the invention.

15      Furthermore, it is also noted that the use of the high
acid ionomer resins as the inner cover material produces a
substantial increase in the finished balls overall distance
properties.  In this regard, the high acid ionomer resin inner
covers of balls 1-3 produce an increase of approximately 10 points
20  in C.O.R. over the low acid ionomer resin inner covers of balls 4
and about a 25 point increase over the prior art balls 5.  Since an
increase in 3 to 6 points in C.O.R. results in an average increase
of about 1 yard in distance, such an improvement is deemed to be
significant.

-36-

CW 0308990

Several other outer layer formulations were prepared and tested by molding them around the core and inner cover layer combination to form balls each having a diameter of about 1.68 inches. First, B.F.Goodrich Estane® X-4517 polyester polyurethane was molded about the core molded with inner layer cover formulation A. DuPont Surlyn® 9020 was molded about the core which was already molded with inner layer D. Similar properties tests were conducted on these golf balls and the results are set forth in Table 6B below:

-37-

CW 0308991




### Table 6B

### Finish Balls

| Ingredients: | 6 | 7 |
|---|---|---|
| Inner Cover Layer Composition | A | D |
| Outer Cover Layer Composition | Estane® 4517 | Surlyn® 9020 |
| Properties of Molded Finished Balls: | | |
| Compression | 67 | 61 |
| C.O.R. | .774 | .757 |
| Shore C Hardness | 74 | 89 |
| Spin (R.P.M.) | 10,061 | 8,846 |
| Cut Resistance | 3-4 | 1-2 |

The ball comprising inner layer formulation D and Surlyn® 9020 identifies the ball in the Nesbitt 4,431,193 patent. As is noted, the example provides for relatively high softness and spin rate though it suffers from poor cut resistance and low C.O.R. This ball is unacceptable by today's standards.

As for the Estane® X-4517 polyester polyurethane, a significant increase in spin rate over the TE-90 cover is noted along with an increased compression. However, the C.O.R. and Shore C values are reduced, while the cut resistance remains the same. Furthermore, both the Estane® X-4517 polyester polyurethane and the Surlyn® 9020 were relatively difficult to mold in such thin sections.

-38-

CW 0308992

### Example 2

In order to analyze the change in characteristics produced by multi-layer golf balls (standard size) having inner cover layers comprised of ionomer resin blends of different acid levels, a series of experiments were run. Specifically, 14 tests were performed, varying the type of core, inner cover layer and outer cover layer. The results are shown below:

-39-

CW 0308993




Table 7

| Sample # | CORE | INNER LAYER | THICKNESS | COMP/COR | OUTER COVER | THICKNESS | COMP (Shiele) | COR | SHORE D | SPIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 1042 YELLOW | NONE | --- | SEE BELOW | TOP GRADE | 0.055" | 61 | .800 | 68 | 7331 |
| 9 | 1042 YELLOW | NONE | --- | SEE BELOW | 959/960 | 0.055" | 56 | .808 | 73 | 6516 |
| 10 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | 959/960 | 0.055" | 48 | .830 | 73 | 6258 |
| 11 | 1042 YELLOW | NONE | --- | SEE BELOW | SD 90 | 0.055" | 62 | .792 | 63 | 8421 |
| 12 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | SD 90 | 0.055" | 55 | .811 | 63 | 8265 |
| 13 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | SD 90 | 0.055" | 53 | .813 | 63 | 8254 |
| 14 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | TOP GRADE | 0.055" | 51 | .819 | 68 | 7390 |
| 15 | 1042 YELLOW | NONE | --- | SEE BELOW | Z-BALATA | 0.055" | 67 | .782 | 55 | 9479 |
| 16 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | Z-BALATA | 0.055" | 61 | .800 | 55 | 9026 |
| 17 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | Z-BALATA | 0.055" | 60 | .798 | 55 | 9262 |

1042 YELLOW=COMP=72, COR=.780
SPECIAL 1.47" CORE=COMP=67, COR=.782

5

10

15

- 40 -

CW 0308994



In this regard, "Top Grade" or "TG" is a low acid inner cover ionomer resin blend comprising of 70.6% Iotek 8000, 19.9% Iotek 7010 and 9.6% white masterbatch. "959/960" is a 50/50 wt/wt blend of Iotek 959/960. In this regard, Escor® or Iotek 959 is a
5    sodium ion neutralized ethylene-acrylic neutralized ethylene-acrylic acid copolymer. According to Exxon, Ioteks 959 and 960 contain from about 19.0 to about 21.0% by weight acrylic acid with approximately 30 to about 70 percent of the acid groups neutralized with sodium and zinc ions, respectively. The physical properties
10   of these high acid acrylic acid based ionomers are as follows:

| PROPERTY | ESCOR® (IOTEK) 959 | ESCOR® (IOTEK) 960 |
|---|---|---|
| Melt Index g/10 min | 2.0 | 1.8 |
| Cation | Sodium | Zinc |
| Melting Point, °F | 172 | 174 |
| Vicat Softening Point, °F | 130 | 131 |
| Tensile @ Break, psi | 4600 | 3500 |
| Elongation @ Break, % | 325 | 430 |
| Hardness, Shore D | 66 | 57 |
| Flexural Modulus, psi | 66,000 | 27,000 |

-41-

CW 0308995



Furthermore, the low acid ionomer formulation for "SD 90" and "Z-Balata" are set forth below:

| SD Cover | ZB Cover |
|---|---|
| 17.2% Surlyn 8320 | 19% Iotek 8000 |
| 7.5% Surlyn 8120 | 19% Iotek 7030 |
| 49% Surlyn 9910 | 52.5% Iotek 7520 |
| 16.4% Surlyn 8940 | 9.5% white MB |
| 9.7% white MB | |

The data clearly indicates that higher C.O.R. and hence increase travel distance can be obtained by using multi-layered covered balls versus balls covered with single layers. However, some sacrifices in compression and spin are also noted. Further, as shown in comparing Example Nos. 12 vs. 13, Example Nos. 17 vs. 16, etc., use of lower acid level inner cover layers and relatively soft outer cover layers (i.e., 50 wt. % or more soft ionomer) produces softer compression and higher spin rates than the golf balls comprised of high acid inner cover layers. Consequently, use of blends of low acid ionomer resins to produce the inner layer of a multi-layer covered golf ball, produces not only enhanced travel distance but also enhanced compression and spin properties.

Example 3

Multi-layer oversized golf balls were produced utilizing different ionomer resin blends as the inner cover layer (i.e., core plus inner cover layer is defined as "mantel"). The "ball data" of

-42-

CW 0308996



the oversized multi-layer golf balls in comparison with production samples of "Top-Flite® XL" and "Top-Flite® Z-Balata" is set forth below.

### Table 8

| | 18 | 19 | 20 | 21 Top-Flite® XL | 22 Top-Flite® Z-Balata 90 |
|---|---|---|---|---|---|
| **Core Data** | | | | | |
| Size | 1.43 | 1.43 | 1.43 | 1.545 | 1.545 |
| COR | .787 | .787 | .787 | —— | —— |
| **Mantel Data** | | | | | |
| Material | TG | TG | TG | —— | —— |
| Size | .161 | 1.61 | 1.61 | —— | —— |
| Thickness | .090 | .090 | .090 | —— | —— |
| **Mantel Data (cont'd)** | | | | | |
| Shore D | 68 | 68 | 68 | —— | —— |
| Compression | 57 | 57 | 57 | —— | —— |
| COR | .815 | .815 | .815 | —— | —— |
| **Ball Data** | | | | | |
| Cover | TG | ZB | SD | TG | ZB |
| Size | 1.725 | 1.723 | 1.726 | 1.681 | 1.683 |
| Weight | 45.2 | 45.1 | 45.2 | 45.3 | 45.5 |
| Shore D | 68 | 56 | 63 | 68 | 56 |
| Compression | 45 | 55 | 49 | 53 | 77 |
| COR | .820 | .809 | .810 | .809 | .797 |
| Spin | 7230 | 9268 | 8397 | 7133 | 9287 |

The results indicate that use of multi-layer covers enhances C.O.R. and travel distance. Further, the data shows that use of a blend of low acid ionomer resins (i.e., "Top Grade") to form the inner cover layer in combination with a soft outer cover

-43-

CW 0308997

("ZB" or "SD") produces enhanced spin and compression characteristics. The overall combination results in a relatively optimal golf ball with respect to characteristics of travel distances, spin and durability.

5

## Example 4

## Castable Polyurethane Covered Multi-layer Balls

A limited number of samples were made using BASF Baytec® RE232 polyurethane as a cover material over four different types of mantle cores. Controls included Z-Balata 100s along with the same

10    mantle cores used for the polyurethane samples covered with Z-Balata cover stock. Mantle cores were made up of 82 and 58 compression cores covered with Iotek 8030/7030.

## Castable PU Molding Process

Materials used:

Baytec® RE832, mix ratio 9 parts A/12 parts B
15
1  -  1.57" i.d. smooth cavity
2  -  1.68" i.d. dimpled cavities
1  -  2" hose clamp
1  -  bench vise or large C-clamp

20    (The smooth and dimpled cavities are the same O.D.)

The mantle core is 1.57" and fits snugly in the 1.57" cavity. The hose clamp is attached to the 1.57" cavity and a mantle core is placed in inside. Urethane is mixed and poured into one of the dimpled cavities and the two halves are placed together
25    and clamped, forcing out excess material and forming half the cover. The hose clamp is used to keep the two mold halves aligned

-44-

CW 0308998

 

during curing. When the cover material is set up enough (about 5 minutes), the two halves are separated and the 1.57" mold is replaced with the other 1.68" mold and the process is repeated. Both halves of the cover are now cast and the entire assemble is placed in an 125f oven for 1 hour after which it can be opened and the ball removed.

All samples were finished using normal production equipment and procedures. The properties of the finished balls are set forth below:

-45-

CW 0308999

 

Table 9

| | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|---|---|---|---|---|---|---|---|---|
| **CORE DATA** | | | | | | | | |
| Size | 1.47" | 1.47" | 1.47" | 1.47" | 1.47 | 1.47" | 1.47" | 1.47" |
| Weight | 32.2 | 32 | 32.2 | 32 | 37.7 | 32.2 | 32 | 32.2 |
| Comp | 82 | 58 | 82 | 58 | 85 | 82 | 58 | 82 |
| COR | 768 | 772 | 768 | 772 | 794 | 768 | 772 | 768 |
| | | | | | | | | |
| **MANTLE DATA** | | | | | | | | |
| Material | Iotek 8030/7030 | Iotek 8030/7030 | Iotek 8030/7030 | Iotek 8030/7030 | None | Iotek 8030/7030 | Iotek 8030/7030 | Iotek 8030/7030 |
| Weight | 37.8 | 38.1 | 37.9 | 38.1 | | 37.8 | 38.1 | 37.9 |
| Size | 1.57" | 1.57" | 1.57" | 1.57" | | 1.57" | 1.57" | 1.57" |
| Comp | 70 | 48 | 69 | 48 | | 70 | 48 | 69 |
| COR | 781 | 785 | 786 | 788 | | 781 | 785 | 786 |
| | | | | | | | | |
| **BALL DATA** | | | | | | | | |
| Cover Material | Baytec RES32 | Baytec RES32 | Baytec RES32 | Baytec RES32 | Z-Balata | Z-Balata | Z-Balata | Z-Balata |
| Weight | 45.4 | 45.5 | 45.5 | 45.2 | 45.3 | 44.8 | 45 | 65 |
| Comp | 75 | 64 | 73 | 60 | 80 | 66 | 50 | 65 |
| COR | 771 | 763 | 770 | 761 | 792 | 775 | 774 | 778 |
| Shore C | 65 | 65 | 65 | 65 | 84 | 84 | 84 | 84 |
| Spin (rpm) | 9560 | 8769 | 9285 | 8760 | 8796 | 8702 | 9072 | 8643 |
| Cut (1-good, 4-poor) | 2 | 2 | 2 | 1.5 | 2 | 2 | 2 | 2 |
| Scuff (1-good, 4-poor) | 1.5 | 1.5 | 1.5 | 1.5 | 2 | 3 | 3 | 3 |

- 46 -

CW 0309000

 

Table 9 contains the construction details and test results. Multilayer balls with the thermoset urethane covers (Examples 23-25) were softer in compression and similar in COR to the multi-layer balls with the Z-Balata cover (Examples 27-29). Shore C was much lower for the urethane balls and they were more resistant to scuff than any of the Z-Balata covered balls. Guillotine cut resistance was about the same. Spin rate comparison shows that the urethane samples are better than the Z-Balata covered balls.

Test results indicate that a very good multi-layer ball can be made using castable polyurethane cover material. Further, advantages include the molding very thin covers, molding over very soft compression core/mantle, and low cost tooling.

The invention has been described with reference to the preferred embodiment. Obviously, modifications and alterations will occur to others upon reading and understanding the proceeding detailed description. It is intended that the invention be construed as including all such modifications and alterations insofar as they come within the scope of the appended claims or the equivalents thereof.

-47-

CW 0309001

I claim:

1.    A golf ball comprising:

a core;

an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material.

2.    The golf ball according to claim 1, wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

3.    The golf ball according to claim 1, wherein said inner cover layer has a thickness of about 0.050 inches, said outer cover layer has a thickness of about 0.055 inches, and said golf ball has an overall diameter of 1.680 inches or more.

4.    A multi-layer golf ball comprising:

a spherical core;

an inner cover layer having Shore D hardness of at least 60 disposed on said spherical core, said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi; and

an outer cover layer having a Shore D hardness of about 64 or less disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, said outer cover layer comprising a polyurethane

-48-

CW 0309002

based material and said outer cover layer having a thickness of from about 0.010 to about 0.070 inches.

5. A golf ball according to claim 4, wherein said inner cover layer has a thickness of about 0.100 to about 0.010 inches, said golf ball having an overall diameter of 1.680 inches or more.

6. A golf ball according to claim 4 wherein said inner cover layer has a thickness of about 0.050 inches and said outer cover layer has a thickness of about 0.055 inches, said golf ball having an overall diameter of 1.680 inches or more.

7. A multi-layer golf ball comprising:

a spherical core;

an inner cover layer disposed over said spherical core to form a spherical intermediate ball, said inner cover layer having a Shore D hardness of at least 60, said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi, and said inner cover layer having a thickness from about 0.100 to about 0.010 inches; and

a dimpled outer cover layer disposed over said spherical intermediate ball to form a multi-layer golf ball, said outer cover having a Shore D hardness of 64 or less, said outer layer comprising a polyurethane, said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi, and said outer cover layer having a thickness of from about 0.010 to about 0.070 inches.

8. The multi-layer golf ball of claim 7 wherein the Shore D hardness of said outer cover layer is less than the Shore D hardness of said inner cover layer.

–49–

CW 0309003



## ABSTRACT

The present invention is directed to an improved multi-layer golf ball comprising a core, an inner cover layer and an outer cover layer. The inner cover layer is comprised of a low acid ionomer blend which may or may not include a filler such as zinc-stearate. The outer cover layer is comprised of a soft, non-ionomeric thermoplastic or thermosetting elastomer such as polyurethane, polyester or polyesteramide. The resulting multi-layered golf ball of the present invention provides for enhanced distance without sacrificing playability or durability when compared to known multi-layer golf balls.

CW 0309004

Please type a plus sign (where:  +

| | |
|---|---|
| **ASSOCIATE POWER OF ATTORNEY** ] | Application Serial No. ~~Unassigned~~ 09/470,196 |
| **PATENT APPLICATION** ] | Filing Date: December 21, 1999 |
| ] | Inventor(s): Michael J. Sullivan |
| Address to: ] | Group Art Unit: ~~Unassigned~~ 3711 |
| Assistant Commissioner for Patents ] | Examiner: ~~Unassigned~~ M. Graham |
| Washington, DC  20231 ] | Attorney Docket No.: P-3724-2-F1-C1 |

Dear Sir:

Please recognize Diane F. Covello, Registration No. 34,164, as my associate

attorney in the above-referenced patent application as follows:

Diane F. Covello, Esq.                    (413) 322-2466

Patent Counsel
Spalding Sports Worldwide
425 Meadow Street
P.O. Box 901
Chicopee, MA  01021-0901, USA

If you have any questions, please contact me.

Respectfully submitted,

Reg. No. 33,000

Richard M. Klein, Esq.
Attorney for Applicant
Phone (216) 861-5582
Fay, Sharpe, Fagan, Minnich &
McKee, LLP
1100 Superior Avenue
DFC/db
Seventh Floor
Cleveland, Ohio  44114-2518

Date: 3/21/2000

mailed via 1st class mail to PTO 5/30/2000

 

Docket No.: P-3724-2/SLD 2 035-3-3

## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name.

I believe I am an original and first inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### IMPROVED MULTI-LAYER GOLF BALL

the specification of which is attached hereto.

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 Code of Federal Regulations § 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

None

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code § 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

None

CW 0309006

 

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

Donald R. Bahr, Reg. No. 21,011
Christopher B. Fagan, Reg. No. 22,987
Richard M. Klein, Reg. No. 33,000

Address all telephone calls to: Richard M. Klein
at telephone number: (216) 861-5582
Address all correspondence to:

Donald R. Bahr, Esq.
SPALDING & EVENFLO COMPANIES, INC.
5730 North Hoover Boulevard
Tampa, Florida 33634

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor: Michael J. Sullivan

Inventor's signature _Michael J. Sullivan_

Date: _October 31, 1995_

Residence:     58 Marlborough Street
               Chicopee, Massachusetts   01021

Citizenship: U.S.A.

Post Office Address:     58 Marlborough Street
                         Chicopee, Massachusetts   01021

CW 0309007



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

CONFIRMATION NO. 1289

Bib Data Sheet

| SERIAL NUMBER 09/776,278 | FILING DATE 02/02/2001 RULE | CLASS 473 | GROUP ART UNIT 3711 | ATTORNEY DOCKET NO. P-3724-2-F1-C1-C1 |
|---|---|---|---|---|

**APPLICANTS**

  Michael J. Sullivan, Chicopee, MA;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
    THIS APPLICATION IS A CON OF 09/470,196 12/21/1999 GRAHAM
    WHICH IS A CON OF 08/870,585 06/06/1997 ABN
    WHICH IS A CON OF 08/556,237 11/09/1995 ABN
    WHICH IS A CIP OF 08/070,510 06/01/1993 ABN

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* 03/07/2001**

| Foreign Priority claimed ☐ yes ☒ no  35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance  Verified and Acknowledged _Kalun Mirkan_ Examiner's Signature _RG_ Initials | | STATE OR COUNTRY MA | SHEETS DRAWING 1 | TOTAL CLAIMS 8 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|---|

**ADDRESS**

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee , MA 01021-0901

**TITLE**

Multi-layer golf ball

| FILING FEE RECEIVED 710 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees ☐ 1.16 Fees ( Filing ) ☐ 1.17 Fees ( Processing Ext. of time ) ☐ 1.18 Fees ( Issue ) ☐ Other _____ ☐ Credit |
|---|---|---|

CW 0309008



PATENT APPLICATION SERIAL NO. *09 - 776 278*

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

02/09/2001 TGEDAMU1 00000094 .09776278

01 FC:101                    710.00 OP

PTO-1556
(5/87)
*U.S. GPO: 1999-459-082/19144

CW 0309009

# PATENT APPLICATION FEE DETERMINATION RECORD
## Effective October 1, 2000

Application or Docket Number

09 776278

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 8 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 8 - minus 20= | 0 |
| INDEPENDENT CLAIMS | 3 - minus 3 = | 0 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

| SMALL ENTITY TYPE ☐ | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| | RATE | FEE | | RATE | FEE |
| BASIC FEE | | 355.00 | OR | BASIC FEE | 710.00 |
| | X$ 9= | | OR | X$18= | |
| | X40= | | OR | X80= | |
| | +135= | | OR | +270= | |
| | TOTAL | | OR | TOTAL | 710 |

\* If the difference in column 1 is less than zero, enter "0" in column 2

## No Change   CLAIMS AS AMENDED - PART II

| | (Column 1) | | (Column 2) | (Column 3) |
|---|---|---|---|---|
| **AMENDMENT A** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA |
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| SMALL ENTITY | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| | RATE | ADDI- TIONAL FEE | | RATE | ADDI- TIONAL FEE |
| | X$ 9= | | OR | X$18= | |
| | X40= | | OR | X80= | |
| | +135= | | OR | +270= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | (Column 1) | | (Column 2) | (Column 3) |
|---|---|---|---|---|
| **AMENDMENT B** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA |
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| | RATE | ADDI- TIONAL FEE | | RATE | ADDI- TIONAL FEE |
|---|---|---|---|---|---|
| | X$ 9= | | OR | X$18= | |
| | X40= | | OR | X80= | |
| | +135= | | OR | +270= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | (Column 1) | | (Column 2) | (Column 3) |
|---|---|---|---|---|
| **AMENDMENT C** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA |
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | |

| | RATE | ADDI- TIONAL FEE | | RATE | ADDI- TIONAL FEE |
|---|---|---|---|---|---|
| | X$ 9= | | OR | X$18= | |
| | X40= | | OR | X80= | |
| | +135= | | OR | +270= | |
| | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\*If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
    The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 8/00)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-706/30103

CW 0309010

BEST AVAILABLE COPY

| CLAIMS ONLY | | SERIAL NO. | | FILING DATE |
| APPLICANT(S) | | | | |

### CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | ☆ | | ☆ | | ☆ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | / | | | | | | 51 | | | | | | |
| 2 | | / | | | | | 52 | | | | | | |
| 3 | | / | | | | | 53 | | | | | | |
| 4 | / | | | | | | 54 | | | | | | |
| 5 | | / | | | | | 55 | | | | | | |
| 6 | | / | | | | | 56 | | | | | | |
| 7 | / | | | | | | 57 | | | | | | |
| 8 | | / | | | | | 58 | | | | | | |
| 9 | | | | | | | 59 | | | | | | |
| 10 | | | | | | | 60 | | | | | | |
| 11 | | | | | | | 61 | | | | | | |
| 12 | | | | | | | 62 | | | | | | |
| 13 | | | | | | | 63 | | | | | | |
| 14 | | | | | | | 64 | | | | | | |
| 15 | | | | | | | 65 | | | | | | |
| 16 | | | | | | | 66 | | | | | | |
| 17 | | | | | | | 67 | | | | | | |
| 18 | | | | | | | 68 | | | | | | |
| 19 | | | | | | | 69 | | | | | | |
| 20 | | | | | | | 70 | | | | | | |
| 21 | | | | | | | 71 | | | | | | |
| 22 | | | | | | | 72 | | | | | | |
| 23 | | | | | | | 73 | | | | | | |
| 24 | | | | | | | 74 | | | | | | |
| 25 | | | | | | | 75 | | | | | | |
| 26 | | | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | | | | | | | 78 | | | | | | |
| 29 | | | | | | | 79 | | | | | | |
| 30 | | | | | | | 80 | | | | | | |
| 31 | | | | | | | 81 | | | | | | |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| TOTAL IND. | 3 | | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | 5 | | | | | | TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | 8 | | | | | | TOTAL CLAIMS | | | | | | |

*MAY BE USED FOR ADDITIONAL CLAIMS OR AMENDMENTS*

FORM PTO-2022 (1-98)

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

*U.S. GPO: 1996-443-593/89152

CW 0309011

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE APPLICATION OF | : | Michael J. Sullivan |
| FOR | : | **IMPROVED MULTI-LAYER GOLF BALL** |
| SERIAL NO. | : | Unknown |
| FILED | : | Herewith |
| ATTORNEY DOCKET NO. | : | P3724-2-F1-C1-C1 (SLD20035-3-3-1-1-1) |

Cleveland, Ohio 44114-2518
February 2, 2001

### INFORMATION DISCLOSURE STATEMENT

Assistant Commissioner of Patents
Washington, D.C. 20231

Dear Sir:

       Applicants submit herewith patents, publications or other information of which they are aware, which they believe may be material to the examination of the above-identified application and in respect of which there may be a duty to disclose in accordance with 37 C.F.R. 1.56.

       This Information Disclosure Statement is not intended to constitute an admission that any patent, publication or other information referred to herein or submitted herewith is "prior art" for this invention unless specifically designated as such.

       In accordance with 37 C.F.R. 1.97(g) and (h), the filing of this Information Disclosure Statement shall not be construed to mean that a search has been made or that no other material information as defined in 37 C.F.R. 1.56(b) exists.

       The following list of art includes all patents, publications, or other information previously cited by or submitted to the Office in one or



- 2 -

more prior applications from which the present application claims priority. These one or more prior applications are identified in the papers accompanying the filing of this application. In accordance with §609 MPEP, it is not necessary to submit copies of the art listed below.

It is respectfully requested that the attached documents be considered and officially cited in examination of this application.

Respectfully submitted,

FAY, SHARPE, FAGAN,
    MINNICH & McKEE, LLP

Richard M. Klein
Reg. No. 33,000
Mark E. Bandy
Reg. No. 35,788
1100 Superior Avenue
Suite 700
Cleveland, Ohio 44114-2518
(216) 861-5582

CW 0309013

 

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/01 | SULLIVAN | M | P-3724-2-F1- |

QM12/0703

DIANE F. COVELLO, ESQ.
SPALDING SPORTS WORLDWIDE, INC.
425 MEADOW STREET
PO BOX 901
CHICOPEE MA 01021-0901

| EXAMINER |
|---|
| GORDON, R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | 3 |

DATE MAILED: 07/03/01

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)
*U.S. GPO: 2000-473-000/44602

1- File Copy

CW 0309014

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit | |
| | Raeann Gorden | 3711 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136 (a).  In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒   Responsive to communication(s) filed on <u>02 February 2001</u> .

2a)☐ This action is **FINAL**.          2b)☒   This action is non-final.

3)☐   Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒   Claim(s) *1-8* is/are pending in the application.

     4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐   Claim(s) _____ is/are allowed.

6)☒   Claim(s) *1-8* is/are rejected.

7)☐   Claim(s) _____ is/are objected to.

8)☐   Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☒   The specification is objected to by the Examiner.

10)☐   The drawing(s) filed on _____ is/are objected to by the Examiner.

11)☐   The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved.

12)☐   The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13)☐   Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All   b)☐ Some * c)☐ None of:

         1.☐ Certified copies of the priority documents have been received.

         2.☐ Certified copies of the priority documents have been received in Application No. _____ .

         3.☐ Copies of the certified copies of the priority documents have been received in this National Stage
application from the International Bureau (PCT Rule 17.2(a)).

     * See the attached detailed Office action for a list of the certified copies not received.

14)☒   Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

15)☒ Notice of References Cited (PTO-892)                                  18)☐ Interview Summary (PTO-413) Paper No(s). _____ .
16)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)   19)☐ Notice of Informal Patent Application (PTO-152)
17)☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) *2* .   20)☐ Other:  .

U.S. Patent and Trademark Office
PTO-326 (Rev. 01-01)                                    Office Action Summary                                    Part of Paper No. 3

CW 0309015

Application/Control Number: 09/776,278                                    Page 2
Art Unit: 3711

# DETAILED ACTION

## *Specification*

1.       The specification is objected to as failing to provide proper antecedent basis for

the claimed subject matter.  See 37 CFR 1.75(d)(1) and MPEP § 608.01(o).  Correction

of the following is required: Claim 7, an outer cover layer having a modulus in a range of

about 1,000 to about 30,000 psi is not in the specification.

## *Claim Rejections - 35 USC § 103*

2.       The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

3.       Claims 1 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Proudfit in view of Nakamura.  Proudfit discloses a golf ball comprising a core, an inner

cover layer, and an outer cover layer.  The inner cover layer is made from an ionomer

(col 5, line 57) and has a thickness from 0.0250 to 0.2875 inch (col 7, line 38).  The

outer cover layer is made from an elastomer (col 6, line 28) and has a thickness from

0.0450 to 0.0650 inch.  The diameter of the golf ball is 1.680 inches (col 7, line 40).

Proudfit does not disclose an inner cover layer with a carboxylic acid.  However.

Nakamura teaches an ionomer comprising 10 to 20% by weight of an alpha, beta-

unsaturated carboxylic acid.   Since the addition of acids to ionomers is very common,



Application/Control Number: 09/776,278                                   Page 3
Art Unit: 3711

one of ordinary skill in the art would have added an acid to the inner cover layer of

Proudfit to increase the flexibility of the composition.

### Double Patenting

4.      The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.  See *In re Goodman*, 11
F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225
USPQ 645 (Fed. Cir. 1985); *In re Van Omum*, 686 F.2d 937, 214 USPQ 761 (CCPA
1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*,
418 F.2d 528, 163 USPQ 644 (CCPA 1969).
        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be
used to overcome an actual or provisional rejection based on a nonstatutory double
patenting ground provided the conflicting application or patent is shown to be commonly
owned with this application.  See 37 CFR 1.130(b).
        Effective January 1, 1994, a registered attorney or agent of record may sign a
terminal disclaimer.  A terminal disclaimer signed by the assignee must fully comply with
37 CFR 3.73(b).

5.      Claims 1-8 are rejected under the judicially created doctrine of obviousness-type

double patenting as being unpatentable over claims 1-8 of U.S. Patent No. 6,210,293.

Although the conflicting claims are not identical, they are not patentably distinct from

each other because the '293 patent and the present application claim golf balls

comprising a core, an inner cover layer and an outer cover layer.  The inner cover layer

is made from ionomer and acid and the outer cover layer is made form a polyurethane.

### Conclusion

6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Raeann Gorden whose telephone number is (703) 308-

CW 0309017

Application/Control Number: 09/776,278                              Page 4
Art Unit: 3711

8354. The examiner can normally be reached Monday-Thursday and alternating Fridays

from 8:30 AM to 6:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jeanette Chapman, can be reached on 703-308-1310. The fax number for

the organization where this application or proceeding is assigned is 703-308-7768.

Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is 703-308-

1148.


rg
06/27/01

Mark S. Graham
Primary Examiner

| | | | |
|---|---|---|---|
| ***Notice of References Cited*** | Application/Control No.<br>09/776,278 | Applicant(s)/Patent Under Reexamination<br>SULLIVAN, MICHAEL J. | |
| | Examiner<br>Raeann  Gorden | Art Unit<br>3711 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification | |
|---|---|---|---|---|---|---|
| | A | US-US006210293B- | 04-2001 | Sullivan | 473 | 374 |
| | B | US-US005314187A- | 05-1994 | Proudfit | 473 | 373 |
| | C | US-US005068151A- | 11-1991 | Nakamura | 473 | 374 |
| | D | US-US004431193A- | 02-1984 | Nesbitt | 473 | 373- |
| | E | US- | - | | | |
| | F | US- | - | | | |
| | G | US- | - | | | |
| | H | US- | - | | | |
| | I | US- | - | | | |
| | J | US- | - | | | |
| | K | US- | - | | | |
| | L | US- | - | | | |
| | M | US- | - | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | - - | | | | |
| | O | - - | | | | |
| | P | - - | | | | |
| | Q | - - | | | | |
| | R | - - | | | | |
| | S | - - | | | | |
| | T | - - | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                         Notice of References Cited                         Part of Paper No. 3

| Subst. Form PTO-1449 | Atty. Docket No.: SLD 2 035-3-3-1-1 −1  P-3724-2-F1-C1 −C1 | | Serial No.: Unknown |
|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 1 of 10 | Applicants: Sullivan | | |
| | Filing Date: Herewith | | Group: 3711 |

**U.S. PATENT DOCUMENTS**

| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|---|
| RG | | 2,741,480 | 04/1956 | Smith | | | |
| | | 2,973,800 3/1961 | 09/1958 | Muccino | | | |
| | | 3,053,539 9/1962 | 06/1959 | Piechowski | | | |
| | | 3,264,272 | 08/1966 | Rees | | | |
| | | 3,313,545 4/1967 | 09/1963 | Bartsch | | | |
| | | 3,373,123 | 03/1968 | Brice | | | |
| | | 3,384,612 | 05/1968 | Brandt et al. | | | |
| | | 3,395,109 | 07/1968 | Molitor et al. | | | |
| | | 3,458,205 7/1969 | 04/1965 | Smith et al. | | | |
| | | 3,502,338 | 03/1970 | Cox | | | |
| | | 3,534,965 | 10/1970 | Harrison et al. | | | |
| | | 3,572,721 | 03/1971 | Harrison et al. | | | |
| | | 3,883,145 | 05/1975 | Cox et al. | | | |
| | | 3,979,126 | 09/1976 | Dusbiber | | | |
| ✓ | | 3,989,568 | 11/1976 | Isaac | | | |

**FOREIGN PATENT DOCUMENTS**

| | | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|---|
| RG | | 494,031 | 10/1938 | GB | | | |
| | | 2,245,580 | 01/1992 | GB | | | |
| | | 2,248,067 | 03/1992 | GB | | | |
| | | 2,264,302 | 11/1992 | GB | | | |
| ✓ | | 2,291,811 2 | 1996 | GB | | | |

**OTHER ART**

| RG | A General Reference Manual, "The Chemistry of Polyurethane Coatings," Mobay Corporation, 1-16 (1988) |
|---|---|
| | Product Announcement, "New Polyurea System Offering Rapid Mold Times and Excellent Thermal Stability for Automotive Fascias Is Introduced by Mobay," PRNewswire, March 1, 1998 |
| | Cytec Industries, Inc., "TMXDI (META) Aliphatic Isocyanates," brochure, pp. 2-11, 9/94 |
| ✓ | Bayer Corporation, "Engineering Polymers RIM and Part Mold Design," brochure, pp. 1-85, 5/95 |

| Examiner: *[signature]* | Date Considered: 6-27-01 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.



| Subst. Form PTO-1449 | Atty. Docket No.: SLD 2 035-3-3-1-1 —1<br>P-3724-2-F1-C1 —C1 | Serial No.: ~~Unknown~~ |
|---|---|---|
| APPLICANT'S(S') INFORMATION<br>DISCLOSURE STATEMENT<br>Page 2 of 10 | Applicants: Sullivan | 09/116,278 |
| | Filing Date:  Herewith | Group: 3711 |

### U.S. PATENT DOCUMENTS

| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|---|
| RG | | 4,076,255 | 02/1978 | Moore et al. | | | |
| | | 4,085,937 | 04/1978 | Schenk | | | |
| | | 4,123,061 | 10/1978 | Dusbiber | | | |
| | | 4,190,711 | 02/1980 | Zdrahala et al. | | | |
| | | 4,218,543 | 08/1980 | Weber et al. | | | |
| | | 4,248,432 | 02/1981 | Hewitt et al. | | | |
| | | 4,272,079 | 06/1981 | Nakade et al. | | | |
| | | 4,274,637 | 06/1981 | Molitor | | | |
| | | 4,337,946 | 07/1982 | Saito et al. | | | |
| | | 4,431,193 | 02/1984 | Nesbitt | | | |
| | | 4,442,282 | 04/1984 | Kolycheck | | | |
| | | 4,570,937 | 02/1986 | Yamada | | | |
| | | 4,582,887 | 04/1986 | Dominguez et al. | | | |
| | | 4,590,219 | 05/1986 | Nissen et al. | | | |
| | | 4,607,090 | 08/1986 | Dominguez | | | |
| | | 4,650,193 | 03/1987 | Molitor et al. | | | |

### FOREIGN PATENT DOCUMENTS

| Initial | | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|---|
| RG | | 2,291,812 | 1996 | GB | | | |
| | | 2,137,841 | ~~1994~~ 6/1995 | Canada | | | |
| | | 0,589,647 | ~~1993~~ 3/1994 | EP Patent Application | | | |
| | | 0,630,665 | 1994 | EP Patent Application | | | |
| | | 0,637,459 | ~~1994~~ 2/1995 | EP Patent Application | | | |

### OTHER ART

| RG | Bayer Corporation, "Engineering Polymers Properties Guide Thermoplastics and Polyurethanes," brochure, pp. 2-7, 28-29 |
|---|---|
| | A Properties Guide, "Engineering Polymers Thermoplastics and Thermosets," Miles Inc., 1-23 (1994) |
| | Polyurethane Handbook "Chemistry-Raw Materials-Processing Applications-Proeprties," edited by Oertel et al., Hanser/Gardner Publications, Inc., 101,102 (1994) |

| Examiner: _Theresa A. Johnson_ | Date Considered: 6-27-01 |
|---|---|

*    EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609;  Draw line through citation if in conformance and not considered.  Include copy of this form with next communication to applicant.

CW 0309021



| Subst. Form PTO-1449 | | Atty. Docket No.: SLD 2 035-3-3-1-1 –1 P-3724-2-F1-C1 –C1 | | | Serial No.: Unknown 591776,278 | | |
|---|---|---|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 3 of 10 | | Applicants: Sullivan | | | | | |
| | | Filing Date:  Herewith | | | Group: 3711 | | |

| U.S. PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
| RC | | 4,674,751 | 06/1987 | Molitor et al. | | | |
| | | 4,679,795 | 07/1987 | Melvin et al. | | | |
| | | 4,688,801 | 08/1987 | Reiter | | | |
| | | 4,690,981 | 09/1987 | Statz | | | |
| | | 4,695,055 | 9/1987 | Newcomb et al. | | | |
| | | 4,714,253 | 12/1987 | Nakahara et al. | | | |
| | | 4,762,322 | 08/1988 | Molitor et al. | | | |
| | | 4,798,386 | 01/1989 | Berard | | | |
| | | 4,848,770 | 07/1989 | Shama | | | |
| | | 4,852,884 | 08/1989 | Sullivan | | | |
| | | 4,858,923 | 08/1989 | Gobush et al. | | | |
| | | 4,858,924 | 08/1989 | Saito et al. | | | |
| | | 4,878,674 | 11/1989 | Newcomb et al. | | | |
| | | 4,884,814 | 12/1989 | Sullivan | | | |
| | | 4,911,451 | 03/1990 | Sullivan et al. | | | |
| U | | 4,919,434 | 04/1990 | Saito | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Document No. | Date | Country | Class | Subcl. | Translation? |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER ART | |
|---|---|
| RC | Translated Claims for JP 1,795,357 publ. 1/19/93 |
| | DuPont NUCREL 035 Resin, DuPont Company, Wilmington, DE 1989 (no date) |
| | ESCOR ACID TERPOLYMERS, EXXON Chemical Co. |
| | Translated Claims for JP 1,771,941 publ. 8/6/92 |

| Examiner: [signature] | Date Considered: 6-27-01 |
|---|---|

*    EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered.  Include copy of this form with next communication to applicant.

CW 0309022



| Subst. Form PTO-1449 | | Atty. Docket No.: SLD 2 035-3-3-1-1–1 P-3724-2-F1-C1–C1 | | | Serial No.: Unknown 69/776.278 | | | |
|---|---|---|---|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 4 of 10 | | Applicants: Sullivan | | | | | | |
| | | Filing Date: Herewith | | | | Group: 3711 | | |

## U.S. PATENT DOCUMENTS

| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|---|
| RL | | 4,957,297 | 09/1990 | Newcomb et al. | | | |
| | | 4,979,746 | 12/1990 | Gentiluomo | | | |
| | | 4,984,804 | 01/1991 | Yamada et al. | | | |
| | | 4,986,545 | 01/1991 | Sullivan | | | |
| | | 5,002,281 | 03/1991 | Nakahara et al. | | | |
| | | 5,006,297 | 04/1991 | Brown et al. | | | |
| | | 5,019,319 | 05/1991 | Nakamura et al. | | | |
| | | 5,026,067 | 06/1991 | Gentiluomo | | | |
| | | 5,035,425 | 07/1991 | Edwards | | | |
| | | 5,045,591 | 09/1991 | Meyer et al. | | | |
| | | 5,048,838 | 09/1991 | Chikaraishi et al. | | | |
| | | 5,068,151 | 11/1991 | Nakamura | | | |
| | | 5,072,944 | 12/1991 | Nakahara et al. | | | |
| | | 5,096,201 | 03/1992 | Egashira et al. | | | |
| | | 5,098,105 | 03/1992 | Sullivan | | | |
| ✓ | | 5,104,126 | 04/1992 | Gentiluomo | | | |

## FOREIGN PATENT DOCUMENTS

| | | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## OTHER ART

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Examiner: _Roeann Khader_    Date Considered: 10-27-01

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

CW 0309023

09/778,278

| Subst. Form PTO-1449 | | Atty. Docket No.: SLD 2 035-3-3-1-1-1 | | | Serial No.: Unknown | | |
|---|---|---|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 5 of 10 | | P-3724-2-F1-C1-C1 | | | | | |
| | | Applicants: Sullivan | | | | | |
| | | Filing Date: Herewith | | | Group: 3711 | | |

### U.S. PATENT DOCUMENTS

| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|---|
| PG | | 5,120,791 | 06/1992 | Sullivan | | | |
| | | 5,142,835 | 09/1992 | Mrocca | | | |
| | | 5,150,906 | 09/1992 | Molitor et al. | | | |
| | | 5,156,405 | 10/1992 | Kitaoh et al. | | | |
| | | 5,184,828 | 02/1993 | Kim et al. | | | |
| | | 5,187,013 | 02/1993 | Sullivan | | | |
| | | 5,197,740 | 03/1993 | Pocklington et al. | | | |
| | | 5,219,973 | 06/1993 | Slack et al. | | | |
| | | 5,222,739 | 06/1993 | Horiuchi et al. | | | |
| | | 5,244,969 | 09/1993 | Yamada | | | |
| | | 5,253,871 | 10/1993 | Viollaz | | | |
| | | 5,273,286 | 12/1993 | Sun | | | |
| | | 5,273,287 | 12/1993 | Molitor et al. | | | |
| | | 5,274,041 | 12/1993 | Yamada | | | |
| | | 5,281,651 | 01/1994 | Arjunan et al. | | | |
| | | 5,300,334 | 04/1994 | Niederst et al. | | | |

### FOREIGN PATENT DOCUMENTS

| | | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### OTHER ART

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| Examiner: | Date Considered: 6-25-07 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

81776278

| Subst. Form PTO-1449 | | Atty. Docket No.: SLD 2 035-3-3-1-1—1 P-3724-2-F1-C1—C1 | | | Serial No.: Unknown | | |
|---|---|---|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 6 of 10 | | Applicants: Sullivan | | | | | |
| | | Filing Date: Herewith | | | Group: 3711 | | |

**U.S. PATENT DOCUMENTS**

| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|---|
| *(initials)* | | 5,304,608 | 04/1994 | Yabuki et al. | | | |
| | | 5,306,760 | 04/1994 | Sullivan | | | |
| | | 5,312,857 | 05/1994 | Sullivan | | | |
| | | 5,314,187 | 05/1994 | Proudfit | | | |
| | | 5,324,783 | 06/1994 | Sullivan | | | |
| | | 5,330,837 | 07/1994 | Sullivan | | | |
| | | 5,334,673 | 08/1994 | Wu | | | |
| | | 5,338,610 | 08/1994 | Sullivan | | | |
| | | 5,368,304 | 11/1994 | Sullivan et al. | | | |
| | | 5,368,806 | 11/1994 | Harasin et al. | | | |
| | | 5,387,750 | 02/1995 | Chiang | | | |
| | | 5,403,010 | 04/1995 | Yabuki et al. | | | |
| | | 5,439,227 | 08/1995 | Egashira et al. | | | |
| | | 5,480,155 | 01/1996 | Molitor et al. | | | |
| | | 5,482,285 | 01/1996 | Yabuki et al. | | | |
| | | 5,484,870 | 01/1996 | Wu | | | |

**FOREIGN PATENT DOCUMENTS**

| | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**OTHER ART**

| | | |
|---|---|---|
| | | |
| | | |
| | | |

| Examiner: *(signature)* | Date Considered: 6-27-07 |
|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

09/776,278 

| Subst. Form PTO-1449 | Atty. Docket No.: SLD 2 035-3-3-1-1-1 | Serial No.: Unknown |
|---|---|---|
| | P-3724-2-F1-C1 -C1 | |
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 7 of 10 | Applicants: Sullivan | |
| | Filing Date: Herewith | Group: 3711 |

### U.S. PATENT DOCUMENTS

| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|---|
| Ra | | 5,490,673 | 02/1996 | Hiraoka | | | |
| | | 5,490,674 | 02/1996 | Hamada et al. | | | |
| | | 5,492,972 | 02/1996 | Stefani | | | |
| | | 5,553,852 | 09/1996 | Higuchi et al. | | | |
| | | 5,586,950 | 12/1996 | Endo | | | |
| | | 5,628,699 | 05/1997 | Maruko et al. | | | |
| | | 5,668,239 | 09/1997 | Nodelman et al. | | | |
| | | 5,674,137 | 10/1997 | Maruko et al. | | | |
| | | 5,688,191 | 11/1997 | Cavallaro et al. | | | |
| | | 5,692,974 | 12/1997 | Wu et al. | | | |
| | | 5,730,665 | 03/1998 | Shimosaka et al. | | | |
| | | 5,733,206 | 03/1998 | Nesbitt et al. | | | |
| | | 5,733,207 | 03/1998 | Sullivan et al. | | | |
| | | 5,733,428 | 03/1998 | Calabria et al. | | | |
| | | 5,739,247 | 04/1998 | Lesko et al. | | | |
| | | 5,739,253 | 04/1998 | Nodelman et al. | | | |

### FOREIGN PATENT DOCUMENTS

| | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### OTHER ART

| | |
|---|---|
| | |
| | |

| Examiner: | Date Considered: 10-27-01 |
|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

CW 0309026

09/776,278

| Subst. Form PTO-1449 | | Atty. Docket No.: SLD 2 035-3-3-1-1 −1 P-3724-2-F1-C1−C1 | | | Serial No.: ~~Unknown~~ | | |
|---|---|---|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 8 of 10 | | Applicants: Sullivan | | | | | |
| | | Filing Date: : Herewith | | | Group: 3711 | | |

| U.S. PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
| MG | | 5,750,580 | 05/1998 | Mayer et al. | | | |
| | | 5,759,676 | 06/1998 | Cavallaro et al. | | | |
| | | 5,779,561 | 07/1998 | Sullivan et al. | | | |
| | | 5,779,562 | 07/1998 | Melvin et al. | | | |
| | | 5,779,563 | 07/1998 | Yamagishi et al. | | | |
| | | 5,783,293 | 07/1998 | Lammi | | | |
| | | 5,792,008 | 08/1998 | Kakiuchi et al. | | | |
| | | 5,797,808 | 08/1998 | Hayashi et al. | | | |
| | | 5,800,284 | 09/1998 | Sullivan et al. | | | |
| | | 5,803,831 | 09/1998 | Sullivan et al. | | | |
| | | 5,810,678 | 09/1998 | Cavallaro et al. | | | |
| | | 5,813,923 | 09/1998 | Cavallaro et al. | | | |
| | | 5,816,937 | 10/1998 | Shimosaka et al. | | | |
| | | 5,820,488 | 10/1998 | Sullivan et al. | | | |
| | | 5,820,489 | 10/1998 | Sullivan et al. | | | |
| | | 5,820,491 | 10/1998 | Hatch et al. | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Document No. | Date | Country | Class | Subcl. | Translation? |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER ART | | |
|---|---|---|
| | | |
| | | |
| | | |

| Examiner: | | Date Considered: 10-27-01 |
|---|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

CW 0309027

09/776,278

| Subst. Form PTO-1449 | Atty. Docket No.: SLD 2 035-3-3-1-1-1<br>P-3724-2-F1-C1-C1 | Serial No.: Unknown | | |
|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT<br>Page 9 of 10 | Applicants: Sullivan | | | |
| | Filing Date: Herewith | Group: 3711 | | |

### U.S. PATENT DOCUMENTS

| Initial* | Document No. | Date | Name | Class | Subcl. | Filing Date |
|---|---|---|---|---|---|---|
| KG | 5,827,167 | 10/1998 | Dougan et al. | | | |
| | 5,830,087 | 11/1998 | Sullivan et al. | | | |
| | 5,833,553 | 11/1998 | Sullivan et al. | | | |
| | 5,833,554 | 11/1998 | Sullivan et al. | | | |
| | 5,836,833 | 11/1998 | Shimosaka et al. | | | |
| | 5,849,168 | 12/1998 | Lutz | | | |
| | 5,856,388 | 01/1999 | Harris et al. | | | |
| | 5,863,264 | 01/1999 | Yamagishi et al. | | | |
| | 5,873,796 | 02/1999 | Cavallaro et al. | | | |
| | 5,885,172 | 03/1999 | Hebert et al. | | | |
| | 5,888,437 | 03/1999 | Calabria et al. | | | |
| | 5,891,973 | 04/1999 | Sullivan et al. | | | |
| | 5,897,884 | 04/1999 | Calabria et al. | | | |
| | 5,899,822 | 05/1999 | Yamagishi et al. | | | |
| | 5,902,192 | 05/1999 | Kashiwagi et al. | | | |
| | 5,908,358 | 06/1999 | Wu | | | |

### FOREIGN PATENT DOCUMENTS

| | Document No. | Date | Country | Class | Subcl. | Translation? |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### OTHER ART

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

| Examiner: | Date Considered: 10-27-01 |
|---|---|

*    EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

CW 0309028

09/776,278

| Subst. Form PTO-1449 | | Atty. Docket No.: SLD 2 035-3-3-1-1−1 P-3724-2-F1-C1−C1 | | | Serial No.: Unknown | | |
|---|---|---|---|---|---|---|---|
| APPLICANT'S(S') INFORMATION DISCLOSURE STATEMENT Page 10 of 10 | | Applicants: Sullivan | | | | | |
| | | Filing Date: Unknown | | | Group: 3711 | | |

| U.S. PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Initial* | | Document No. | Date | Name | Class | Subcl. | Filing Date |
| | | 5,919,100 | 07/1999 | Boehm et al. | | | |
| | | 5,919,862 | 07/1999 | Rajagopalan | | | |
| | | 5,922,252 | 07/1999 | Stanton et al. | | | |
| | | 5,929,189 | 07/1999 | Ichikawa et al. | | | |
| | | 5,935,021 | 08/1999 | Kashiwagi et al. | | | |
| | | 5,947,842 | 09/1999 | Cavallaro et al. | | | |
| | | 5,947,843 | 09/1999 | Calabria et al. | | | |
| | | 5,959,059 | 09/1999 | Vedula et al. | | | |
| | | 5,976,035 | 11/1999 | Umezawa et al. | | | |
| | | 5,984,807 | 11/1999 | Wai et al. | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Document No. | Date | Country | Class | Subcl. | Translation? |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| OTHER ART |
|---|
| |
| |
| |

| Examiner: | Date Considered: 10-27-01 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if in conformance and not considered. Include copy of this form with next communication to applicant.

C:\DATA\WEB\SL203531.449

CW 0309029

P-3724-2-F1-C1-C1                              PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

**In re patent application of** Michael J. Sullivan

**Serial No.:**   09/776,278                  **Examiner:** R. Gorden

**Filing Date:** February 2, 2001            **Group Art Unit:** 3711

**For:** IMPROVED MULTI-LAYER GOLF BALL

Commissioner for Patents & Trademarks
Washington, DC  20231

Sir:

## RESPONSE

        This is in response to the Office Action of July 3, 2001.  Please consider the
following remarks.

---

### CERTIFICATE OF MAILING (37 C.F.R. 1.8a)

I hereby certify that this correspondence is being deposited with the United States Postal Service as
First Class mail in an envelope addressed to:  Commissioner of Patents & Trademarks, Washington,
D.C.  20231, on this 19th day of _September_, 2001.

_Laura J. Nolan_
Laura J. Nolan

CW 0309030



## REMARKS

Reconsideration and entry of the amendment are respectfully requested. Claims 1 to 8 are currently pending, and no claims have been amended.

The Office Action mailed July 3, 2001 addressed Claims 1 to 8. Claims 1 to 8 were rejected.

The specification was objected to by the Examiner as failing to provide proper antecedent basis for the claimed subject matter, and correction was required. The Examiner stated that in claim 7, an outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi is not in the specification.

The present application is a continuation of several applications which relate back to U.S. Patent Application Serial No. 08/556,237, filed on November 9, 1995. Original claim 6 (initially mislabeled as claim 8 in the specification) specifies that the outer cover layer has a flex modulus in a range of about 1,000 to about 30,000 psi. Specifically, claim 6 reads as follows:

[8.] 6. A multi-layer golf ball comprising:

a spherical core;

an inner cover layer molded over said spherical core to form a spherical intermediate ball, said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi;

an outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, the outer layer comprising a non-ionomeric elastomer selected from the group consisting of polyester elastomer, polyester, polyether polyurethane and polyester amide, **said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi.** (Emphasis added.)

Since the limitation directed to the flex modulus of the outer cover was included in original claim 6 (labeled as claim 8 when filed), it is part of the specification. A copy of pages 48 to 50 of the original specification directed to claims 1 to 6 is attached for the Examiner's convenience. Applicant therefore respectfully submits that the

CW 0309031



specification provides proper antecedent basis for the claimed subject matter, therefore
Applicant respectfully requests that the objection be reconsidered and withdrawn.

Claims 1 and 3 were rejected under 35 U.S.C. 103(a) as being unpatentable
over Proudfit in view of Nakamura. The Examiner stated that Proudfit discloses a golf
ball comprising a core, an inner cover layer and an outer cover layer. The Examiner
further stated that the inner cover layer is made from an ionomer and the outer cover is
made from an elastomer, but Proudfit does not disclose an inner cover layer with a
carboxylic acid. The Examiner further stated that Nakamura teaches an ionomer
comprising 10 to 20% by weight of an alpha, beta-unsaturated carboxylic acid. The
Examiner concluded that since the addition of acids to ionomers is very common, one
of ordinary skill in the art would have added an acid to the inner cover layer of Proudfit
to increase the flexibility of the composition.

Proudfit discloses a golf ball comprising a core, an inner cover layer, and an
outer cover layer. The inner cover layer is made from an ionomer, and the outer cover
layer is made from an elastomer. Proudfit does not disclose an inner cover layer with a
carboxylic acid. Additionally, the elastomer of the outer cover layer of Proudfit is a
natural or synthetic balata (see column 5, line 15 to column 6, line 31). Applicant's
invention is not directed to a golf ball comprising a balata outer cover layer. The cover
of Applicant's golf ball comprises a polyurethane. The present application, at page 2,
lines 11 to 14, distinguishes the use of a polyurethane cover over a balata cover, such
as the cover claimed by Proudfit. Specifically, the specification states: "Despite all the
benefits of balata, balata covered golf balls are easily cut and/or damaged if mis-hit.
Golf balls produced with balata or balata-containing cover compositions therefore have
a relatively short lifespan." Since, as discussed above, the primary reference, Proudfit,
is deficient because it does not disclose a golf ball with an outer cover layer comprising
polyurethane, the addition of Nakamura as a secondary reference does not cure this
deficiency. Neither Proudfit alone as the primary reference, nor in combination with
Nakamura, produces a golf ball comprising an inner cover layer comprising at least one
ionomer resin having less than 16 % acid and an outer cover layer comprising a
polyurethane. Adding the ionomer of Nakamura to Proudfit does not produce

CW 0309032



Applicant's golf ball, which comprises an inner cover layer having less than 16 % acid and an outer cover layer comprising a polyurethane.

For at least these reasons, Applicant respectfully submits that claims 1 and 3 are not obvious under 35 U.S.C. § 103(a) over Proudfit in view of Nakamura. Applicant therefore respectfully requests that the rejection of claims 1 and 3 under 35 U.S.C. § 103(a) as obvious over Proudfit in view of Nakamura be reconsidered and withdrawn.

Claims 1 to 8 were rejected under the judicially created doctrine of obvious-type double patenting as being unpatentable over claims 1 to 8 of U.S. Patent No. 6,210,293. The Examiner stated that although the conflicting claims are not identical, they are not patentably distinct from each other because the '293 patent and the present application claim golf balls comprising a core, an inner cover layer and an outer cover layer, and the inner cover layer is made from ionomer and the outer cover layer is made from a polyurethane.

Although Applicant respectfully disagrees with the Examiner, in an effort to hasten prosecution, Applicant herein submits a Terminal Disclaimer which disclaims the terminal portion of any patent granting from the instant application, as required under MPEP § 1490. Applicant respectfully submits that this overcomes the rejection.

The Examiner is invited to telephone Applicant's attorney if it is deemed that a telephone conversation will hasten prosecution of the application.

CW 0309033



## CONCLUSION

Applicant respectfully requests reconsideration and allowance of each of the presently rejected claims, claims 1 to 8. Applicant respectfully requests allowance of claims 1 to 8, the claims currently pending.

Respectfully submitted,

Michael J. Sullivan

Customer No. 24492
Phone: (413) 322-2937

Date: *September 19*, 2001

By: *Michelle Bugbee*
Michelle Bugbee, Reg. No. 42,370
Spalding Sports Worldwide
Attorneys for Applicant
425 Meadow Street
P.O. Box 901
Chicopee, MA  01021-0901

cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

CW 0309034



SEP 2 5 2001

OIPE

PATENT & TRADEMARK OFFICE

RECEIVED

OCT 1 2001

TECHNOLOGY CENTER R3700

I claim:

1. A golf ball comprising:

a core;

an inner cover layer having a Shore D hardness of 60 or more molded on said core, the inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

an outer cover layer having a Shore D hardness of 64 or less molded on said inner cover layer, said outer cover layer comprising a relatively soft polymeric material selected from the group consisting of non-ionomeric thermoplastic and thermosetting elastomers.

2.    A golf ball according to claim 1, wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches and the outer cover layer has a thickness of about 0.010 to about 0.70 inches, the golf ball having an overall diameter of 1.680 inches or more.

3.    A golf ball according to claim 1 wherein the inner cover layer has a thickness of about 0.050 inches and the outer cover layer has a thickness of about 0.055 inches, the golf ball having an overall diameter of 1.680 inches or more.

-48-

CW 0309035



4. A golf ball according to claim 1 wherein the outer layer comprises a polyurethane based material.


5. A multi-layer golf ball comprising:

a spherical core;

an inner cover layer having a Shore D hardness of about 60 or more molded over said spherical core, said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi;

an outer cover layer having a Shore D hardness of about 64 or less molded over said spherical intermediate ball to form a multi-layer golf ball, the outer layer comprising polyurethane based material.


8. A multi-layer golf ball comprising:

a spherical core;

an inner cover layer molded over said spherical core to form a spherical intermediate ball, said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi;

an outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, the outer layer

-49-

CW 0309036

10    comprising a non-ionomeric elastomer selected from the group consisting of polyester elastomer, polyester, polyether polyurethane and polyester amide, said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi.

-50-

CW 0309037

*Terminal Disclaimer*
*ih m oga —*
*10/2/01*

P-3724-2-F1-C1-C1

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:     Michael J. Sullivan

Serial No.:     09/776,278

Filed:     February 2, 2001

Group No.     3711

Examiner:     R. Gorden

For:     Improved Multi-Layer Golf Ball

**Commissioner of Patents and Trademarks**

**Washington, D.C. 20231**

## TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION (37 CFR 1.321(b))

### Identification Of Person(s) Making This Disclaimer

Name(s) of disclaimant(s):     Richard M. Klein

having an address of:     Fay, Sharpe, Fagan, Minnich & McKee, LLP

    1100 Superior Avenue, Seventh Floor

    Cleveland, OH 44114-2518

represent that I am

    __ an inventor of this invention

    __ an assignee of this invention

    XX Attorney of record in the present application

RECEIVED OCT 1 2001 TECHNOLOGY CENTER R3700

---

**CERTIFICATE OF MAILING (37 CFR 1.8a)**

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an enveloped addressed to the: Assistant Commissioner of Patents and Trademarks, Washington, D.C. 20231

Laura J. Nolan

Date: September 19 ,2001

(Terminal Disclaimer to Obviate a Double Patenting Rejection (37CFR 1.321(b))

{9-4}-page 1 of 4)

*note - See fee on th 6*

CW 0309038

 
### Identity of Assignee and Title of Disclaimant (if applicable)

The assignee is

Name of assignee:          Spalding Sports Worldwide, Inc.

Address of assignee:       425 Meadow Street

                           Chicopee, MA 01013

Title of disclaimant authorized to sign on behalf of assignee:

                           Counsel

### Recordal of Assignment in PTO

XX the assignment to Spalding Sports Worldwide, Inc. from Lisco Inc.
    was recorded on Reel: 010232; Frame: 0251 on April 23, 1999;
    the assignment to Lisco Inc. was recorded on Reel: 7750; Frame: 0242
    on November 9, 1995

___ authorization for recordal of the assignment is separately attached

### Extent of Interest

The extent of my (our) interest is in

    XX the whole of this invention

    ___ a sectional interest in this invention as follows (here
        state the exact interest of the disclaimant(s):

### Statement Pursuant to 37 C.F.R. 3.73(b)

I the undersigned, have reviewed all the evidentiary documents in the chain
of title of the

    XX  patent application
    ___  patent

matter identified above and, to the best of my knowledge and belief, title is in the
assignee identified above which is seeking to take action.

(Terminal Disclaimer to Obviate a Double Patenting Rejection (37CFR 1.321(b))
{9-4}-page 2 of 4)

CW 0309039



## Disclaimer

I hereby disclaim the terminal part of any patent granted on the above-identified application, which would extend beyond the expiration date of the full statutory term of:

XX United States Patent No. <u>6,210,293</u>, as presently
   shortened by any terminal disclaimer

__ Any patent granted on application number:

and hereby agree that any patent so granted on the above-identified application shall be enforceable only for and during such period that the legal title to said patent shall be the same as the legal title to

XX United States Patent No. <u>6,210,293</u>

__ Any patent granted on application number:

this agreement to run with any patent granted on the above-identified application and to be binding upon the grantor, its successors or assigns.

Petitioner does not disclaim any terminal part of any patent granted on the above-identified application prior to the expiration date of the full statutory term of

XX United States Patent No. <u>6,210,293</u> as presently
   shortened by any terminal disclaimer

__ Any patent granted on application number:

In the event that it later: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321(a), has all claims canceled by a reexamination certificate, or is otherwise terminated prior to expiration of its statutory term as presently shortened by any terminal disclaimer, except for the separation of legal title stated above.

(Terminal Disclaimer to Obviate a Double Patenting Rejection (37CFR 1.321(b))
{9-4}--page 3 of 4)

CW 0309040



## Fee Status

### *(37 CFR 1.20(d) and 37 CFR 1.321)*

XX other than a small entity -- fee $110.00

__ small entity--fee $55.00

      __ verified statement attached

      __ verified statement filed on _____

## Fee Payment

__ Attached is a check in the sum of $_____

__ The fee for this Disclaimer was previously paid on ;_____.
XX Charge Account **17-0150** for any fee deficiency required by this paper.

XX Charge Account **17-0150** the sum of **$110.00**. A duplicate of this disclaimer is
    XX attached.

## Declaration

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

**Spalding Sports Worldwide, Inc.**

Date: 9/4/2001

By: _Richard M. Klein_
Richard M. Klein, Counsel
Reg. No. 33,000
Fay, Sharpe, Fagan, Minnich & McKee, LLP
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114-2518

TECHNOLOGY CENTER 3700
OCT 1 2001
RECEIVED

(Terminal Disclaimer to Obviate a Double Patenting Rejection (37CFR 1.321(b))
{9-4}--page 4 of 4)

CW 0309041

 

## Fee Status

*(37 CFR 1.20(d) and 37 CFR 1.321)*

XX other than a small entity -- fee $110.00

__ small entity--fee $55.00

    __ verified statement attached

    __ verified statement filed on _____

## Fee Payment

__ Attached is a check in the sum of $_____

__ The fee for this Disclaimer was previously paid on : _____.

XX Charge Account **17-0150** for any fee deficiency required by this paper.
    or 06-0308 (RMK 10/4/2001)

XX Charge Account **17-0150** the sum of **$110.00**. A duplicate of this disclaimer is
    XX attached.
    or 06-0308 (RMK 10/4/2001)

## Declaration

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

**Spalding Sports Worldwide, Inc.**

Date: 9/4/2001

By: _Richard M. Klein_ (RMK 10/4/2001)
Richard M. Klein, Counsel
Reg. No. 33,000
Fay, Sharpe, Fagan, Minnich & McKee, LLP
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114-2518

(Terminal Disclaimer to Obviate a Double Patenting Rejection (37CFR 1.321(b))

(9-4)--page 4 of 4)

CW 0309042

*7 Confirmation of T.D.fee
Ln Morga —
10/4/01 (US 3711)

# FAY. SHARPE. FAGAN. MINNICH & McKEE. LLP

PATENT TRADEMARK AND COPYRIGHT LAW

1100 SUPERIOR AVENUE

SEVENTH FLOOR

CLEVELAND. OHIO 44114 - 2518

TELEPHONE (216) 861-5582

FAX (216) 241-1666

E-MAIL: fs@faysharpe.com

MARK E. BANDY
JOSEPH D. DREHER
CHRISTOPHER B. FAGAN
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY. JR.

*NOT ADMITTED IN OHIO

SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI
PHILIP J. MOY. JR.
TIMOTHY E. NAUMAN
PATRICK R. ROCHE
MARK S. SVAT

COLLEEN FLYNN GOSS
JOHN P. CORNELY
JAMES E. SCARBROUGH
ANN M. SKERRY, PH.D.
W. SCOTT HARDERS
BRIAN D. BEMBENICK
DAVID B. CUPAR
JASON A. WORGULL
ERIK J. OVERBERGER
SCOTT C. RAND*
EDWARD T. KENNEDY
ANUJ K. WADHWA

JOSEPH E. WATERS
PATRICK D. FLOYD

OF COUNSEL

RICHARD J. MINNICH
SUE ELLEN PHILLIPS

REGISTERED PATENT AGENT
THOMAS TILLANDER

ALBERT P. SHARPE. III
1959-2001

October 4, 2001

Richard M. Klein
RKlein@faysharpe.com

CONFIRMATION COPY

**VIA FACSIMILE**
**CONFIRMATION COPY BY MAIL**

LaShawn Morgan
U.S. Patent and Trademark Office
Washington, D.C. 20231

RE:    U.S. Patent Application Serial No. 09/776,278
For: **IMPROVED MULTI-LAYER GOLF BALL**
Attorney Docket No. P-3724-2-F1-C1-C1
Our Reference No. SLD 2 0035-3-3-1-1-1

Dear Ms. Morgan:

It is our understanding, that the U.S. Patent and Trademark Office believes that a deficiency may exist in the Terminal Disclaimer that we submitted on September 19, 2001 concerning the above-identified U.S. Patent application. Evidently, the Terminal Disclaimer indicated that fees associated with the filing of the Disclaimer should be charged to Account No. 17-0150. I, Richard M. Klein, as an agent for Spalding Sports Worldwide, Inc. executed the Terminal Disclaimer. However, according to your accounting records, I am not authorized to charge any fees to Spalding's Account No. 17-0150. In order to correct this deficiency, I have included herewith a new page 4 wherein I have authorized that any fees concerning the Terminal Disclaimer should be charged to our firm's account, i.e. Account No. 06-0308. This we believe, should alleviate the deficiency as previously noted by the U.S. Patent and Trademark Office.

CW 0309043

LaShawn Morgan
U.S. Patent and Trademark Office
October 4, 2001
Page 2


Kindly review the above information and the attached materials, and if you have any further questions concerning the same, please feel free to contact us at your convenience.

Very truly yours,

FAY, SHARPE, FAGAN,
    MINNICH & McKEE, LLP

Richard M. Klein

RMK/lab

cc: Michelle Bugbee, Esq.
Enclosure

N:\SLD\20035\3B1C\LAB0275A.WPD

*[handwritten notes in top margin, illegible]*

# FAY. SHARPE. FAGAN. MINNICH & McKEE. LLP

PATENT TRADEMARK AND COPYRIGHT LAW

1100 SUPERIOR AVENUE

SEVENTH FLOOR

CLEVELAND. OHIO 44114-2518

TELEPHONE (216) 861-5582

FAX (216) 241-1666

E-MAIL: fs@faysharpe.com

MARK E. SANDY
JOSEPH D. DREHER
CHRISTOPHER B. FAGAN
JUDE A. FRY
STEVEN M. HAAS
MICHAEL E. HUDZINSKI
RICHARD M. KLEIN
THOMAS E. KOCOVSKY, JR.

*NOT ADMITTED IN OHIO

SANDRA M. KOENIG
SCOTT A. McCOLLISTER
JAMES W. McKEE
JAY F. MOLDOVANYI
PHILIP J. MOY, JR.
TIMOTHY E. NAUMAN
PATRICK R. ROCHE
MARK S. SVAT

COLLEEN FLYNN GOSS
JOHN P. CONNELY
JAMES E. SCARBROUGH
ANN M. SKERRY, PH.D.
W. SCOTT SANDERS
BRIAN G. SENDERICK
DAVID B. CUPAR
JASON A. WONGULL
ERIK J. OVERBROEGED
SCOTT C. RAND*
EDWARD T. KENNEDY
ANUJ K. WADHWA

JOSEPH E. WATERS
PATRICK D. FLOYD

OF COUNSEL
RICHARD J. MINNICH
SUE ELLEN PHILLIPS

REGISTERED PATENT AGENT
THOMAS TILLANDER

ALBERT P. SHARPE, III
1886-2001

October 4, 2001

Richard M. Klein
RKlein@faysharpe.com

**VIA FACSIMILE
CONFIRMATION COPY BY MAIL**

## FAX RECEIVED

OCT 05 2001

## GROUP 3700

LaShawn Morgan
U.S. Patent and Trademark Office
Washington, D.C. 20231

RE:  U.S. Patent Application Serial No. 09/776,278
For: IMPROVED MULTI-LAYER GOLF BALL
Attorney Docket No. P-3724-2-F1-C1-C1
Our Reference No. SLD2.0035-3-3-1-1-1

Dear Ms. Morgan:

It is our understanding, that the U.S. Patent and Trademark Office believes that a deficiency may exist in the Terminal Disclaimer that we submitted on September 19, 2001 concerning the above-identified U.S. Patent application. Evidently, the Terminal Disclaimer indicated that fees associated with the filing of the Disclaimer should be charged to Account No. 17-0150. I, Richard M. Klein, as an agent for Spalding Sports Worldwide, Inc. executed the Terminal Disclaimer. However, according to your accounting records, I am not authorized to charge any fees to Spalding's Account No. 17-0150. In order to correct this deficiency, I have included herewith a new page 4 wherein I have authorized that any fees concerning the Terminal Disclaimer should be charged to our firm's account, i.e. Account No. 06-0308. This we believe, should alleviate the deficiency as previously noted by the U.S. Patent and Trademark Office.

10/05/2001 LMORGAN  00000001 060308  09776278

01 FC:148      110.00 CH

CW 0309045

LaShawn Morgan
U.S. Patent and Trademark Office
October 4, 2001
Page 2

    Kindly review the above information and the attached materials, and if you have any further questions concerning the same, please feel free to contact us at your convenience.

Very truly yours,

FAY, SHARPE, FAGAN,
    MINNICH & McKEE, LLP

Richard M. Klein

RMK/lab

cc: Michelle Bugbee, Esq.
Enclosure
N:\SLD\200350\B1C\LAB0275A.WPD

CW 0309046

## Fee Status

*(37 CFR 1.20(d) and 37 CFR 1.321)*

XX other than a small entity -- fee $110.00

___ small entity—fee $55.00

     ___ verified statement attached

     ___ verified statement filed on _____

## Fee Payment

___ Attached is a check in the sum of $_____

___ The fee for this Disclaimer was previously paid on : _____.

XX Charge Account **17-0150** for any fee deficiency required by this paper.
     or 06-0308 (Rmk 10/17/01)

XX Charge Account **17-0150** the sum of **$110.00**. A duplicate of this

disclaimer is      or 06-0308 (Rmk 10/17/01)

     XX attached.

### Declaration

     I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

**Spalding Sports Worldwide, Inc.**

Date: 9/4/2001      By: _____ (Rmk 10/17/01)
                 Richard M. Klein, Counsel
                 Reg. No. 33,000
                 Fay, Sharpe, Pagan, Minnich & McKee, LLP
                 1100 Superior Avenue, Seventh Floor
                 Cleveland, OH 44114-2518

(Terminal Disclaimer to Obviate a Double Patenting Rejection (37CFR 1.321(b)))
                 (9-4)—page 4 of 4)

CW 0309047

#6

**FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP**
**1100 SUPERIOR AVENUE, SEVENTH FLOOR**
**CLEVELAND, OHIO 44114-2518**
**(216) 861-5582**

FAX RECEIVED

OCT 05 2001

GROUP 3700

| | |
|---|---|
| DATE: | October 4, 2001 |
| TO: | U.S. Patent and Trademark Office |
| ATTENTION: | LaShawn Morgan |
| FACSIMILE NO.: | 703-305-3579     3711 |
| FROM: | Richard M. Klein |
| RE: | U.S. Patent Application No.09/776,278 |
| | Attorney Docket No. P-3724-2-F1-C1-C1 |
| | Our Reference No. SLD20035-3-3-1-1-1 |

Total number of pages (including this cover sheet):   4

Please call us immediately at (216) 861-5582 if the telecopy you receive is
incomplete or illegible.  Our facsimile numbers are (216) 241-1666 and (216) 241-
5147.

Comments:

The documents accompanying this facsimile transmission include information from the firm of Fay,
Sharpe, Fagan, Minnich & McKee, LLP that might be legally privileged and/or confidential.  The information
is intended for the use of only the individual or entity named on this cover sheet.  If you are not the
intended recipient, any disclosure, copying, or distribution of these documents, or the taking of any action
based on the contents of this transmission, is prohibited.  If you have received this transmission in error,
these documents should be returned to this firm as soon as possible, and we ask that you notify us
immediately by telephone so we can arrange for their return to us without cost to you.

CW 0309048



UNITED STATES PATENT AND TRADEMARK OFFICE



UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

7590      12/17/2001

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA  01021-0901

| EXAMINER |
|---|
| GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 12/17/2001

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

CW 0309049

| *Office Action Summary* | Application No. | Applicant(s) |
| | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit |
| | Raeann Gorden | 3711 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>04 October 2001</u> .

2a)☐ This action is FINAL.  2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-8</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☒ Claim(s) <u>1 and 3</u> is/are allowed.

6)☒ Claim(s) <u>2 and 4-8</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐ The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____ .

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15)☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

| | |
|---|---|
| 1)☐ Notice of References Cited (PTO-892) | 4)☐ Interview Summary (PTO-413) Paper No(s). _____ . |
| 2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948) | 5)☐ Notice of Informal Patent Application (PTO-152) |
| 3)☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ . | 6)☐ Other: _____ |

CW 0309050

Application/Control Number: 09/776,278                                    Page 2
Art Unit: 3711

## DETAILED ACTION

### *Specification*

The specification is objected to as failing to provide proper antecedent basis for

the claimed subject matter. See 37 CFR 1.75(d)(1) and MPEP § 608.01(o). Correction

of the following is required: Claim 7, an outer cover layer having a modulus in a range of

about 1,000 to about 30,000 psi is not in the specification.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of
> making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the
> art to which it pertains, or with which it is most nearly connected, to make and use the same and shall
> set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 2 and 4-8 are rejected under 35 U.S.C. 112, first paragraph, as containing

subject matter which was not described in the specification in such a way as to

reasonably convey to one skilled in the relevant art that the inventor(s), at the time the

application was filed, had possession of the claimed invention. The Shore D hardness

for the outer cover layer is 20 to 40 according to the specification (page 15, line 1).

### *Allowable Subject Matter*

Claims 1 and 3 are allowed.

CW 0309051

Application/Control Number: 09/776,278                                    Page 3
Art Unit: 3711

### *Terminal Disclaimer*

The terminal disclaimer filed on 9-25-01 disclaiming the terminal portion of any

patent granted on this application which would extend beyond the expiration date of

6,210,293 has been reviewed and is accepted.  The terminal disclaimer has been

recorded.

### *Response to Arguments*

Applicant's arguments filed 10-4-01 have been fully considered but they

are not persuasive.   The objection to the specification has been maintained.   In order

to overcome the objection applicant is required to include the subject in the

specification.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Raeann Gorden whose telephone number is (703) 308-

8354. The examiner can normally be reached Monday-Thursday and alternating Fridays

from 8:30 AM to 6:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Paul Sewell can be reached on 703-308-2126.  The fax number for the

organization where this application or proceeding is assigned is 703-308-7768.

Application/Control Number: 09/776,278                                    Page 4
Art Unit: 3711

Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is 703-308-

1148.


rg
12/13/01

Mark S. Graham
Primary Examiner

MAR 14 '02 07:05PM PATENT DEPT                                          P.1/8

#9/A
H11/
420

P-3724-2-F1-C1-C1                    PATENT
IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of  Michael J. Sullivan
Serial No.:  09/776,278                    Examiner:  R. Gorden
Filing Date:  February 2, 2001            Group Art Unit:  3711
For: IMPROVED MULTI-LAYER GOLF BALL

Commissioner for Patents & Trademarks
Washington, DC  20231

FAX RECEIVED
MAR 14 2002
GROUP 3700

Sir:

AMENDMENT

In response to the Office Action of December 17, 2001, please amend the
above-identified application as follows:

CERTIFICATE OF MAILING/TRANSMISSION (37 C.F.R. 1.8a)

I hereby certify that this correspondence is, on the date shown below, being:

MAILING                                    FACSIMILE

___   deposited with the United States Postal        XX   transmitted by facsimile
      Service with sufficient postage as first class       to the Patent and Trademark
      mail, in an envelope addressed to the Assistant      Office to Examiner R. Gorden
      Commissioner for Patents, Washington,                in TC3700 at 703-872-9302.
      D.C. 20231.

Date:  March 14        , 2002            _Michelle Bugbee_
                                            Michelle Bugbee

Received from < 4133222575 > at 3/14/02 6:05:12 PM [Eastern Standard Time]

CW 0309054

09/776,278                                          P-3724-2-FJ-C1-C1

## IN THE SPECIFICATION

Please replace the paragraph beginning at page 24, line 5, with the following

rewritten paragraph:



Moreover, in alternative embodiments, the outer cover layer formulation may

also comprise a soft, low modulus, non-ionomeric thermoplastic elastomer having a

flex modulus in a range of about 1,000 to about 30,000 psi, including a polyester

polyurethane such as B.F. Goodrich Company's Estane® polyester polyurethane X-

4517. According to B.F. Goodrich, Estane® X-4517 has the following properties:

## REMARKS

Reconsideration and entry of the amendment are respectfully requested. Claims

1 to 8 are currently pending, and no claims have been amended.

The Office Action mailed December 17, 2001 addressed Claims 1 to 8. Claims

2 and 4 to 8 were rejected, and claims 1 and 3 were allowed. Applicant notes the

allowance with appreciation.

The specification was objected to by the Examiner as failing to provide proper

antecedent basis for the claimed subject matter, and correction was required. The

Examiner stated that in claim 7, an outer cover layer having a modulus in a range of

about 1,000 to about 30,000 psi is not in the specification.

The specification has been amended to state that the outer cover layer preferably

comprises "a soft, low modulus non-ionomeric thermoplastic elastomer having a flex

modulus in a range of about 1,000 to about 30,000 psi,...". Support for this

amendment may be found in original claim 6 of a parent application, U.S. Patent

Application Serial No. 08/556,237, filed on November 9, 1995. Original claim 6

(initially mislabeled as claim 8 in the specification) specifies that the outer cover layer

has a flex modulus in a range of about 1,000 to about 30,000 psi. Specifically, claim 6

reads as follows:

[8.] 6. A multi-layer golf ball comprising:

a spherical core;



CW 0309055

09/776,278                                                    P-3724-2-F1-C1-CJ

an inner cover layer molded over said spherical core to form a spherical intermediate ball, said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and having a modulus of from about 15,000 to about 70,000 psi;

an outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, the outer layer comprising a non-ionomeric elastomer selected from the group consisting of polyester elastomer, polyester, polyether polyurethane and polyester amide, said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. (Emphasis added.)

Applicant therefore respectfully submits that the specification provides proper antecedent basis for the claimed subject matter, therefore Applicant respectfully requests that the objection be reconsidered and withdrawn.

Claims 2 and 4 to 8 were rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The Examiner stated that the Shore D hardness for the outer cover layer is 20 to 40 according to the specification (page 15, line 1).

Applicant respectfully submits that the Shore D hardness for the outer cover layer is not 20 to 40. Applicant respectfully submits that the specification, at page 15, line 1, which is continued from page 14, lines 25 and 26, is describing the Shore D (20 to 40) hardness of a low modulus ionomer suitable for use in the outer layer blend. The Shore D hardness of the outer cover layer, which in claims 2, 4 and 7 is "less than 64" or "64 or less", is supported by the specification. See, for example, the table on page 24, describing Estane® X-4517 as having a Shore D hardness of 39, and Table 9, which shows that the golf balls having an outer cover layer of polyurethane have a Shore C of 65. A Shore C of 65 converts to a Shore D of less than 64, approximately 40 to 50, as shown by both Table 4 on page 14 of GB2276628 and a comparison chart from the Rex Gauge Company (copies attached as Appendix A and Appendix B). Applicant respectfully submits that this overcomes the rejection of claims 2 and 4 to 8

3

Received from < 4133222575 > at 3/14/02 6:05:12 PM [Eastern Standard Time]



CW 0309056

09/776,278                                      P-3724-2-FJ-C1-C1

under 35 U.S.C. § 112, first paragraph.  Applicant therefore respectfully requests that the rejection of claims 2 and 4 to 8 be reconsidered and withdrawn.

Attached hereto is a marked-up version of the changes made to the application by this Amendment.  The Examiner is invited to telephone Applicant's attorney if it is deemed that a telephone conversation will hasten prosecution of the application.

## CONCLUSION

Applicant respectfully requests reconsideration and allowance of each of the presently rejected claims, claims 2 and 4 to 8.  Applicant respectfully requests allowance of claims 1 to 8, the claims currently pending.

Respectfully submitted,

MICHAEL J. SULLIVAN

Customer No. 24492
Phone: (413) 322-2937

By: _Michelle Bugbee_
Michelle Bugbee, Reg. No. 42,370
Spalding Sports Worldwide
Attorneys for Applicant
425 Meadow Street
P.O. Box 901
Chicopee, MA  01021-0901

Date: _March 14_ , 2002

cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

4

CW 0309057



09/776,278                                      P-3724-2-F1-C1-C1

<u>VERSION WITH MARKINGS TO SHOW CHANGES MADE</u>

<u>IN THE SPECIFICATION</u>

Please replace the paragraph beginning at page 24, line 5, with the following rewritten paragraph:

Moreover, in alternative embodiments, the outer cover layer formulation may also comprise a soft, low modulus, non-ionomeric thermoplastic elastomer <u>having a flex modulus in a range of about 1,000 to about 30,000 psi,</u> including a polyester polyurethane such as B.F. Goodrich Company's Estane® polyester polyurethane X-4517. According to B.F. Goodrich, Estane® X-4517 has the following properties:

Received from < 4133222575 > at 3/14/02 6:05:12 PM [Eastern Standard Time]



CW 0309058

MAR 14 '02  07:07PM PATENT DEPT                                          P.6/8



*Appendix A – Page 1*

2766628

## (12) UK Patent Application (19) GB (11) 2 276 628 (13) A

(43) Date of A Publication 05.10.1994

(21) Application No 9404469.0

(22) Date of Filing 08.03.1994

(30) Priority Data
(31) 05082714    (32) 17.03.1993    (33) JP

(71) Applicant(s)
Bridgestone Sports Co Ltd

(Incorporated in Japan)

45 Higashimatsushita-cho, Kanda, Chiyoda-ku, Tokyo,
Japan

(72) Inventor(s)
Yoshinori Egashira
Hisashi Yamagishi
Hideo Watanabe
Jun Shindo

(74) Agent and/or Address for Service
Mewburn Ellis
York House, 23 Kingsway, LONDON, WC2B 6HP,
United Kingdom

(51) INT CL$^5$
A63B 37/00

(52) UK CL (Edition M)
C3V VEM
C3M MXC M119 M127 M153 M170
C3W W113  W207 W209 W213
U1S S1156

(56) Documents Cited
GB 2264302 A        GB 2214515 A
WPI Abstract Accession No 91-026451/04 & JP
2297384A WPI Abstract Accession No 90-144918/19 &
JP 2092378A

(58) Field of Search
UK CL (Edition M) C3M MXC , C3V VEM
INT CL$^5$ A63B
Online databases : WPI

(54) Golf balls

(57) A solid golf ball includes a solid core enclosed in a cover. The resin component of the cover consists of 30 to 100% by weight of an ethylene-methacrylic acid-acrylate terpolymer ionomer resin having a flexural modulus of 2,500 - 14,000 psi and a Shore D hardness of 20 - 59 and 70 to 0% by weight of an ethylene-(meth)acrylic acid copolymer ionomer resin having a flexural modulus of 20,000 - 30,000 psi and a Shore D hardness of 56 - 64. The core is made of a rubber composition comprising 100 parts by weight of a base rubber and 0.2 - 1.5 parts by weight of pentachlorothiophenol and/or metal salt thereof and has a distortion of 2.3 - 3.3 mm under a load of 100 kg. The ball is excellent in spin receptivity, burring resistance, and repulsion.

GB 2 276 628

Received from < 4133222575 > at 3/14/02 6:05:12 PM [Eastern Standard Time]

CW 0309059

MAR 14 '02  07:07PM PATENT DEPT                                    P. 7/8

Appendix A - Page 2

## Table 4 (Contd.)

| Ball properties | | Examples 1 | 2 | 3 | 4 | 5 | 6 | 7 | Comparative Examples 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Weight (g) | | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 | 45.2 |
| Surface hardness | Shore C | | 82 | | 79 | 76 | | | | | | | |
| | Shore D | 60 | 57 | 49 | 55 | 53 | 51 | 58 | 59 | 58 | 53 | 61 | 59 |
| Distortion (mm) | | 2.39 | 2.43 | 2.57 | 2.47 | 2.44 | 2.52 | 2.40 | 2.37 | 2.38 | 2.40 | 2.30 | 2.36 |
| Initial speed (m/sec.) | | 77.09 | 76.83 | 76.57 | 76.81 | 76.59 | 76.62 | 76.80 | 77.22 | 77.26 | 76.10 | 77.15 | 77.01 |
| Burring test | Eagle PW | ○ or | ○ | ○ | △ or ○ | ○ or △ | ○ | ○ or △ | △ or × | △ | × | × | △ |
| | Rextar, HT305 PW | △ or ○ | ○ | ○ | ○ or △ | △ or ○ | ○ | ○ | × or △ | △ | △ | △ or × | △ or × |
| | MSX PW | ○ | ○ | ○ | ○ | ○ | ○ | ○ | △ | △ | △ or × | △ or × | △ |

— 14 —

Received from < 4133222575 > at 3/14/02 6:05:12 PM [Eastern Standard Time]



CW 0309060

 

MAR 14 '02  07:08PM PATENT DEPT                                              P.8/8

Appendix B

# Comparison Chart  *This chart is for comparison purposes only. This is **not** and **cannot** be used as a conversion chart.*

| | |
|---|---|
| A | 10 20 30 40 50 60 70 80 90 100 |
| B | 10 20 30 40 50 60 70 80 90 100 |
| C | 10 20 30 40 50 60 70 80 90 100 |
| D | 10 20 30 40 50 60 70 80 90 100 |
| DO | 10 20 30 40 50 60 70 80 90 100 |
| O | 10 20 30 40 50 60 70 80 90 100 |
| OO | 10 20 30 40 50 60 70 80 90 100 |
| M | 30 40 50 60 70 80 90 |

© 2001 Rex Gauge Company, Inc. all rights reserved
1250 Busch Pkwy Buffalo Grove IL 60089
Toll Free 1-800-927-3982 | Phone 847-465-9009 | International 011 01 847-465-9009
Fax 847-465-8229 | E-mail info@durometer.com

A division of Schultco Precision Manufacturing, Inc.

Received from < 4133222575 > at 3/14/02 6:05:12 PM [Eastern Standard Time]



CW 0309061

 

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

7590     06/19/2002

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA   01021-0901

| EXAMINER |
|---|
| GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 06/19/2002     *10*

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

CW 0309062

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit |
| | Raeann Gorden | 3711 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on *14 March 2002* .

2a)☐  This action is **FINAL**.    2b)☒  This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) *1-8* is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) *1-8* is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☐  The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐  The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

   If approved, corrected drawings are required in reply to this Office action.

12)☐  The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some * c)☐ None of:

      1.☐  Certified copies of the priority documents have been received.

      2.☐  Certified copies of the priority documents have been received in Application No. _____ .

      3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

14)☐  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

   a) ☐ The translation of the foreign language provisional application has been received.

15)☒  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

| | |
|---|---|
| 1) ☒ Notice of References Cited (PTO-892) | 4) ☐ Interview Summary (PTO-413) Paper No(s). _____ . |
| 2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948) | 5) ☐ Notice of Informal Patent Application (PTO-152) |
| 3) ☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ . | 6) ☐ Other: . |

CW 0309063

MAR 14 '02  07:08PM PATENT DEPT                                    P.8/8

*Appendix B*

# Comparison Chart
*This chart is for comparison purposes only.*
*This is not and cannot be used as a conversion chart.*

| Scale | Values |
|---|---|
| A | 10 20 30 40 50 60 70 80 90 100 |
| B | 10 20 30 40 50 60 70 80 90 100 |
| C | 10 20 30 40 50 60 70 80 90 100 |
| D | 10 20 30 40 50 60 70 80 90 100 |
| DO | 10 20 30 40 50 60 70 80 90 100 |
| O | 10 20 30 40 50 60 70 80 90 100 |
| OO | 10 20 30 40 50 60 70 80 90 100 |
| M | 30 40 50 60 70 80 90 |

© 2001 Rex Gauge Company, Inc. all rights reserved
1250 Busch Pkwy Buffalo Grove IL 60089
Toll Free 1-800-927-3962 | Phone 847-465-9009 | International 011 01 847-465-9009
Fax 847-465-0229 | E-mail info@durometer.com

A division of Schultea Precision Manufacturing, Inc.

CW 0309061



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

7590    06/19/2002

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA  01021-0901

| EXAMINER |
|---|
| GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 06/19/2002    /D

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

CW 0309062

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit | |
| | Raeann Gorden | 3711 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>14 March 2002</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-8</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-8</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐ The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12)☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____ .

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15)☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

| | |
|---|---|
| 1)☒ Notice of References Cited (PTO-892) | 4)☐ Interview Summary (PTO-413) Paper No(s). _____ . |
| 2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948) | 5)☐ Notice of Informal Patent Application (PTO-152) |
| 3)☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ . | 6)☐ Other: |

CW 0309063

Application/Control Number: 09/776,278                              Page 2
Art Unit: 3711

### DETAILED ACTION

The indicated alllowability of clams 1 and 3 has been withdrawn.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 2 and 4-8 are rejected under 35 U.S.C. 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention. The Shore D hardness less than 64 for the outer cover layer has not been disclosed.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 1 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt in view of Sullivan '814 and Wu. Nesbitt discloses a golf ball comprising a core, an inner cover layer, and an outer cover layer. The inner cover layer has a thickness

CW 0309064

Application/Control Number: 09/776,278                              Page 3
Art Unit: 3711

form 0.020 to 0.070 inch and is made from a high flexural modulus ionomer. The outer

cover layer has a thickness from 0.020 to 0.10 inch and is made from a low flexural

modulus ionomer. The golf ball has an overall diameter of 1.68 inches. Nesbitt further

discloses the inner cover layer material may include Surlyn 1605, which has a 15% acid

content. Nesbitt does not disclose a blend of ionomers for the inner cover layer.

Sullivan teaches a blend ionomers for the cover layer. One skilled in the art would have

included additional ionomers to provide improve the durability. Nesbitt also does not

disclose polyurethane for the outer cover. Wu teaches a polyurethane cover. One

skilled in the art would have modified the cover material with polyurethane since it is

known to provide good shear resistance, cut resistance, durability, and resiliency (Wu

col 2).


### Response to Arguments

Applicant's arguments filed 3-14-02 have been fully considered but they are not

persuasive.  The 35 U.S.C. 112, first paragraph rejection is maintained. Applicant does

not disclose a Shore D hardness less than 64 for the outer cover layer. Applicant

argues the specification discloses a Shore D hardness of 39 (page 24) and a Shore C

hardness of 65 (table), which converts to approximately 41 on the Shore D scale. The

entire range is not fully disclosed.

CW 0309065

Application/Control Number: 09/776,278                                    Page 4
Art Unit: 3711

### Conclusion

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Raeann Gorden whose telephone number is (703) 308-
8354. The examiner can normally be reached Monday-Thursday and alternating Fridays
from 8:30 AM to 6:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Paul Sewell can be reached on 703-308-2126. The fax number for the
organization where this application or proceeding is assigned is 703-308-7768.

Any inquiry of a general nature or relating to the status of this application or
proceeding should be directed to the receptionist whose telephone number is 703-308-
1148.

rg
June 6, 2002

Mark S. Graham
Primary Examiner

CW 0309066

| *Notice of References Cited* | | Application/Control No. 09/776,278 | Applicant(s)/Patent Under Reexamination SULLIVAN, MICHAEL J. | |
|---|---|---|---|---|
| | | Examiner Raeann Gorden | Art Unit 3711 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-5334673 | 08-1994 | Wu | 473/378 |
| | B | US-4431193 | 02-1984 | Nesbitt | 473/373 |
| | C | US-5387470 | 02-1995 | Parnell | 428/215 |
| | D | US-4884814 | 12-1989 | Sullivan | 473/378 |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                     Notice of References Cited                     Part of Paper No. 10

CW 0309067

SEP 16 '02  11:53AM PATENT DEPT

P.1/6

P-3724-2-F1-C1-C1                    PATENT
IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of  Michael J. Sullivan
Serial No.:  09/776,278                 Examiner:  R. Gorden
Filing Date:  February 2, 2001          Group Art Unit:  3711
For: IMPROVED MULTI-LAYER GOLF BALL

Commissioner for Patents & Trademarks
Washington, DC  20231

FAX RECEIVED
SEP 16 2002
GROUP 3700

Sir:

## RESPONSE

In response to the Office Action of June 19, 2002, please consider the following remarks:

---

### CERTIFICATE OF MAILING/TRANSMISSION (37 C.F.R. 1.8a)

I hereby certify that this correspondence is, on the date shown below, being:

MAILING                                  FACSIMILE

___   deposited with the United States Postal      XX   transmitted by facsimile
      Service with sufficient postage as first class      to the Patent and Trademark
      mail, in an envelope addressed to the Assistant      Office to Examiner R. Gorden
      Commissioner for Patents, Washington,            in TC3700 at 703-872-9302.
      D.C. 20231.

Date:  _____9|16_____, 2002

Laura J. Nolan

Received from < 4133222575 > at 9/16/02 11:52:26 AM [Eastern Daylight Time]

CW 0309068

09/776,278                                          P-3724-2-F1-C1-C1

### REMARKS

Reconsideration of the application and entry of the amendment are respectfully requested. Claims 1 to 8 are currently pending, and no claims have been amended.

The Office Action mailed June 19, 2002 addressed Claims 1 to 8. Claims 1 to 8 were rejected.

Claims 2 and 4 to 8 were rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The Examiner stated that the Shore D hardness less than 64 for the outer cover has not been disclosed.

Applicant respectfully submits that the Shore D hardness of less than 64 for the outer cover layer has been disclosed. Applicant respectfully submits that original claims 1 and 5 of a parent application, U.S. Patent Application Serial No. 08/556,237, filed on November 9, 1995, disclose "an outer cover layer having a Shore D hardness of 64 or less" and "an outer cover layer having a Shore D hardness of about 64 or less" respectively. Since the original claims are considered part of the specification, Applicant respectfully submits that the Shore D hardness of 64 or less has been disclosed. Applicant would be amenable to amending the specification to contain this specific language if required by the Examiner. Applicant respectfully submits that this overcomes the rejection of claims 2 and 4 to 8 under 35 U.S.C. § 112, first paragraph. Applicant therefore respectfully requests that the rejection of claims 2 and 4 to 8 be reconsidered and withdrawn.

Claims 1 and 3 were rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt in view of Sullivan '814 and Wu. The Examiner stated that Nesbitt discloses a golf ball comprising a core, an inner cover layer and an outer cover layer. The Examiner further stated that the inner cover layer has a thickness from 0.020 to 0.070 inches and is made from a high flexural modulus ionomer, and the outer cover has a thickness of from 0.020 to 0.10 inches and is made from a low flexural modulus ionomer. The Examiner further stated that the golf ball has an overall diameter of 1.68 inches, and the inner cover layer material may include Surlyn 1605 which has a 15%

2

CW 0309069

09/776,278                                    P-3724-2-F1-C1-C1

acid content. The Examiner further stated that Nesbitt does not disclose a blend of
ionomers for the inner cover layer, but Sullivan teaches a blend of ionomers for the
cover layer, and one skilled in the art would have included additional ionomers to
improve the durability. The Examiner concluded that Nesbitt also does not disclose
polyurethane for the outer cover, but Wu teaches a polyurethane cover, and one skilled
in the art would have modified the cover material with polyurethane since it is known to
provide good shear resistance, cut resistance, durability, and resiliency.

Applicant respectfully submits that the Examiner has failed to make out a *prima
facie* case of obviousness. Nesbitt, the primary reference, discloses a golf ball
comprising a core and a multi-layer cover. The inner cover layer comprises a hard,
high flexural modulus ionomer, and the outer cover layer comprises a soft, low flexural
modulus ionomer. Nesbitt uses as examples Surlyn® 1605 and 1855 ionomers, high
and low flexural modulus ionomers respectively. Nesbitt does not disclose a multi-
layer cover where the inner cover layer comprises a high acid ionomer containing no
more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and the outer
cover layer comprises a polyurethane material.

Sullivan discloses a two piece golf ball having a core and a cover, wherein the
cover is formed from a blend of a hard and a soft ionomer. The hard and soft ionomers
are very specific ionomers, and the soft ionomer is a terpolymer. The two ionomers
are blended in specific ratios. Sullivan does not disclose blending two ionomers
wherein at least one of the ionomers contains no more than 16% by weight of an alpha,
beta-unsaturated carboxylic acid.

Applicant respectfully submits that there is no motivation or teaching to combine
Nesbitt and Sullivan. There is no motivation to substitute the blend of a hard ionomer
and soft ionomer terpolymer of Sullivan for the low acid ionomer of Nesbitt because
Nesbitt as an inner cover containing a high flexural modulus ionomer and an outer
cover containing a low flexural modulus ionomer. Additionally, Applicant respectfully
submits that there is no motivation, teaching or suggestion in Sullivan to use a blend of
ionomer resins of any type in an <u>inner</u> cover layer. Instead, the only specific teaching
in Sullivan shows blends of ionomers in golf ball <u>outer</u> covers of two piece golf balls.

3

CW 0309070

SEP 16 '02  11:55AM PATENT DEPT                                     P.4/6

09/776,278                                        P-3724-2-F1-C1-C1

Wu is directed to a golf ball having a core and a single layer cover comprising a specific polyurethane. Wu does not disclose a multi-layer cover.

Since, as discussed above, the primary reference, Nesbitt, is deficient because it does not disclose a golf ball having a multi-layer cover, wherein the inner cover layer comprises a blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and the outer cover layer comprises a polyurethane material, the addition of Sullivan and/or Wu as a secondary reference does not cure this deficiency. Applicant respectfully submits that even if Sullivan is combined with Nesbitt, Sullivan is not directed to a blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid, therefore the combination would not produce a golf ball having a cover layer containing blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. Furthermore, Applicant respectfully submits that one skilled in the art would not be motivated by Wu to add a polyurethane cover to Nesbitt because Nesbitt has a multi-layer cover with specific features, and Wu has a single layer cover. Even if both Sullivan and Wu were combined with Nesbitt, Applicant's golf ball would not be produced because neither Nesbitt alone as the primary reference, nor in combination with Sullivan and/or Wu, produces a golf ball comprising an inner cover layer comprising a blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and an outer cover layer comprising a polyurethane. Both Wu and Sullivan are directed to golf balls with single cover layers, therefore, there is no motivation to substitute either the blend of ionomers of Sullivan's outer cover or the specific polyurethane of Wu's outer cover for the inner cover layer of Nesbitt.

Furthermore, Applicant respectfully submits that a prior art patent, such as Nesbitt, Sullivan or Wu, must be considered as a whole, and it is impermissible to pick and choose from one reference only so much of it as will support a given position to the exclusion of other parts necessary for the full appreciation of what the reference fairly suggests to one skilled in the art. Applicant respectfully submits that the Examiner is

4

CW 0309071



SEP 16 '02  11:55AM PATENT DEPT                                          P.5/6

09/776,278                                    P-3724-2-F1-C1-C1

picking and choosing cover materials from prior art patents directed to golf balls with a
single layer cover in an attempt to recreate Applicant's invention.

Applicant respectfully submits that one skilled in the art would not add the
ionomer blend of Sullivan to the cover of Nesbitt because Sullivan's ionomer blend is a
very specific blend of a hard ionomer and a soft terpolymer ionomer and the cover of
Sullivan is a single layer, nor would one skilled in the art add the polyurethane of Wu
to the cover of Nesbitt because the cover of Wu is a single layer and one would not add
the single layer polyurethane cover of Wu to the multi-layer cover of Nesbitt since it
would not necessarily achieve the same goals as a specific combination of cover layers
such as that in Nesbitt.

For at least these reasons, Applicant respectfully submits that claims 1 and 3 are
not obvious under 35 U.S.C. § 103(a) over Nesbitt in view of Sullivan and Wu.
Applicant therefore respectfully requests that the rejection of claims 1 and 3 under 35
U.S.C. § 103(a) as obvious over Nesbitt in view of Sullivan and Wu be reconsidered
and withdrawn.

The Examiner is invited to telephone Applicant's attorney if it is deemed that a
telephone conversation will hasten prosecution of the application.

5

Received from < 4133222575 > at 9/16/02 11:52:26 AM [Eastern Daylight Time]

CW 0309072



09/776,278                                        P-3724-2-F1-C1-C1

## CONCLUSION

Applicant respectfully requests reconsideration and allowance of each of the presently rejected claims, claims 1 to 8. Applicant respectfully requests allowance of claims 1 to 8, the claims currently pending.

Respectfully submitted,

MICHAEL J. SULLIVAN

Customer No. 24492                    By: _Michelle Bugbee_
Phone: (413) 322-2937                 Michelle Bugbee, Reg. No. 42,370
                                      Spalding Sports Worldwide
                                      Attorneys for Applicant
Date: _September 16_, 2002            425 Meadow Street
                                      P.O. Box 901
                                      Chicopee, MA  01021-0901
cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

Received from < 4133222575 > at 9/16/02 11:52:26 AM [Eastern Daylight Time]

CW 0309073



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

7590    11/25/2002

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA  01021-0901

| EXAMINER |
|---|
| GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | #72 |

DATE MAILED: 11/25/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

CW 0309074

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit |
| | Raeann Gorden | 3711 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>*16 September 2002*</u> .

2a)☒  This action is **FINAL**.        2b)☐  This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) *1-8* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) *1-8* is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☐  The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐  The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12)☐  The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐  Certified copies of the priority documents have been received.

      2.☐  Certified copies of the priority documents have been received in Application No. _____ .

      3.☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

14)☐  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15)☒  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1)☐  Notice of References Cited (PTO-892)
2)☐  Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐  Information Disclosure Statement(s) (PTO-1449) Paper No(s) _____ .

4)☐  Interview Summary (PTO-413) Paper No(s). _____ .
5)☐  Notice of Informal Patent Application (PTO-152)
6)☐  Other: .

Application/Control Number: 09/776,278                                     Page 2
Art Unit: 3711

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 2 and 4-8 are rejected under 35 U.S.C. 112, first paragraph, as containing

subject matter which was not described in the specification in such a way as to enable

one skilled in the art to which it pertains, or with which it is most nearly connected, to

make and/or use the invention. The Shore D hardness less than 64 for the outer cover

layer has not been disclosed.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 1 and 3 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Nesbitt in view of Sullivan '814 and Wu. Nesbitt discloses a golf ball comprising a core,

an inner cover layer, and an outer cover layer. The inner cover layer has a thickness

form 0.020 to 0.070 inch and is made from a high flexural modulus ionomer. The outer

cover layer has a thickness from 0.020 to 0.10 inch and is made from a low flexural

CW 0309076

modulus ionomer. The golf ball has an overall diameter of 1.68 inches. Nesbitt further

discloses the inner cover layer material may include Surlyn 1605, which has a 15% acid

content. Nesbitt does not disclose a blend of ionomers for the inner cover layer.

Sullivan teaches a blend ionomers for the cover layer. One skilled in the art would have

included additional ionomers to provide improve the durability. Nesbitt also does not

disclose polyurethane for the outer cover. Wu teaches a polyurethane cover. One

skilled in the art would have modified the cover material with polyurethane since it is

known to provide good shear resistance, cut resistance, durability, and resiliency (Wu

col 2).

### Response to Arguments

Applicant's arguments filed 9-16-02 have been fully considered but they are not

persuasive. The 35 U.S.C. 112, first paragraph rejection is maintained. To overcome

the rejection, applicant is required to amend the specification to include the hardness for

the outer cover layer as well as provide a copy of the originally filed claims from the

parent application which applicant seeks to claim priority. Applicant's arguments in

regards to the prior art rejection are not persuasive. Applicant argues there is no

motivation to modify Nesbitt with Sullivan and Wu by substituting the materials for the

cover layers. The primary reference, Nesbitt, discloses applicant's invention but fails to

disclose the materials for the cover layers. Applicant claims an inner cover layer

comprising at least two ionomers, wherein at least one of the ionomers contain no more

than 16% acid. Nesbitt discloses an inner cover layer comprising one ionomer with an

CW 0309077

Application/Control Number: 09/776,278                                    Page 4
Art Unit: 3711

acid content less than 16%. Sullivan teaches cover compositions comprising at least

two ionomers. Although Sullivan does not mention the acid content of the ionomers it is

well known that the Surlyn ionomers taught by Sullivan are not high acid ionomers and

contain less than 16% acid. The Wu reference is also used a secondary reference to

teach the polyurethane for the outer cover layer. The Nesbitt reference discloses a soft

outer cover layer but only discloses soft ionomers. Since polyurethanes are known in

the golfing art for providing softer covers with increased durability and resiliency the

modification is within the capabilities of one skilled in the art.


### Conclusion

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action. In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action. In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Raeann Gorden whose telephone number is (703) 308-

CW 0309078

Application/Control Number: 09/776,278                                         Page 5
Art Unit: 3711

8354. The examiner can normally be reached Monday-Thursday and alternating Fridays

from 8:30 AM to 6:00 PM.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Paul Sewell can be reached on 703-308-2126.  The fax number for the

organization where this application or proceeding is assigned is 703-308-7768.

    Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is 703-308-

1148.

rg
November 20, 2002

Mark S. Graham
Primary Examiner

CW 0309079

JAN 21 '03 07:43AM PATENT DEPT

*(handwritten)* 1-23-03
P.1
13/AMDT
BNS

P-3724-2-F1-C1-C1       PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of Michael J. Sullivan

Serial No.:   09/776,278        Examiner: R. Gorden

Filing Date:   February 2, 2001       Group Art Unit: 3711

For: IMPROVED MULTI-LAYER GOLF BALL

Box AF
Commissioner for Patents & Trademarks
Washington, DC  20231

**FAX RECEIVED**

JAN 2 1 2003

**GROUP 3700**

Sir:

### RESPONSE TO FINAL OFFICE ACTION UNDER 37 CFR § 1.116

This is in response to the Final Office Action mailed November 25, 2002, in connection with the present application. Entry of the following amendment to the application is requested.

---

#### CERTIFICATE OF MAILING/TRANSMISSION (37 C.F.R. 1.8a)

I hereby certify that this correspondence is, on the date shown below, being:

MAILING                         FACSIMILE

___    deposited with the United States Postal Service with sufficient postage as first class mail, in an envelope addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231.

**XX**    transmitted by facsimile to the Patent and Trademark Office to Examiner R. Gorden in TC3700 at 703-872-9303.

Date: ___1/21___ , 2003

Laura J. Nolan

Received from < 4133222575 > at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309080



09/776,278                                          P-3724-2-F1-C1-C1

## IN THE SPECIFICATION

Please replace the paragraph beginning at page 24, line 23 with the following rewritten paragraph:

Other soft, relatively low modulus non-ionomeric thermoplastic elastomers may also be utilized to produce the outer cover layer as long as the non-ionomeric thermoplastic elastomers produce the playability and durability characteristics desired without adversely effecting the enhanced spin characteristics produced by the low acid ionomer resin compositions. Preferably, the non-ionomeric thermoplastic elastomers have a Shore D hardness of 64 or less. These include, but are not limited to thermoplastic polyurethanes such as: Texin® thermoplastic polyurethanes from Mobay Chemical Co. and the Pellethane® thermoplastic polyurethanes from Dow Chemical Co.; Ionomer/rubber blends such as those in Spalding U.S. Patents 4,986,545; 5,098,105 and 5,187,013; and, Hytrel® polyester elastomers from DuPont and Pebax® polyetheramides from Elf Atochem S.A.

## REMARKS

Reconsideration of the application and entry of the amendment are respectfully requested. Claims 1 to 8 are currently pending, and no claims have been amended.

The Final Office Action mailed November 25, 2002 addressed claims 1 to 8. Claims 1 to 8 were rejected.

Claims 2 and 4 to 8 were rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The Examiner stated that the Shore D hardness less than 64 for the outer cover has not been disclosed.

Applicant respectfully submits that the Shore D hardness of less than 64 for the outer cover layer has been disclosed. Applicant respectfully submits that original claims 1 and 5 of a parent application, U.S. Patent Application Serial No. 08/556,237, filed on November 9, 1995, disclose "an outer cover layer having a Shore D hardness of 64 or less" and "an outer cover layer having a Shore D hardness of about 64 or less"

2

CW 0309081

09/776,278                                    P-3724-2-F1-C1-C1

respectively. Since the original claims are considered part of the specification, Applicant respectfully submits that the Shore D hardness of 64 or less has been disclosed. As required by the Examiner in the Final Office Action, the specification has been amended to include the hardness for the outer cover layer, and a copy of the originally filed claims is attached to this response. Applicant respectfully submits that this overcomes the rejection of claims 2 and 4 to 8 under 35 U.S.C. § 112, first paragraph. Applicant therefore respectfully requests that the rejection of claims 2 and 4 to 8 be reconsidered and withdrawn.

Claims 1 and 3 were rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt in view of Sullivan '814 and Wu. The Examiner stated that Nesbitt discloses a golf ball comprising a core, an inner cover layer and an outer cover layer. The Examiner further stated that the inner cover layer has a thickness from 0.020 to 0.070 inches and is made from a high flexural modulus ionomer, and the outer cover has a thickness of from 0.020 to 0.10 inches and is made from a low flexural modulus ionomer. The Examiner further stated that the golf ball has an overall diameter of 1.68 inches, and the inner cover layer material may include Surlyn 1605 which has a 15% acid content. The Examiner further stated that Nesbitt does not disclose a blend of ionomers for the inner cover layer, but Sullivan teaches a blend of ionomers for the cover layer, and one skilled in the art would have included additional ionomers to improve the durability. The Examiner concluded that Nesbitt also does not disclose polyurethane for the outer cover, but Wu teaches a polyurethane cover, and one skilled in the art would have modified the cover material with polyurethane since it is known to provide good shear resistance, cut resistance, durability, and resiliency.

Applicant respectfully submits that the Examiner has failed to make out a *prima facie* case of obviousness. Nesbitt, the primary reference, discloses a golf ball comprising a core and an improved multi-layer cover. The inner cover layer comprises a single hard, high flexural modulus ionomer, and the outer cover layer comprises a soft, low flexural modulus ionomer. Nesbitt uses as examples Surlyn® 1605 and 1855 ionomers, high and low flexural modulus ionomers respectively. Nesbitt does not disclose a multi-layer cover where the inner cover layer comprises a blend of two or

3

Received from < 4133222575 > at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309082



09/776,278                                    P-3724-2-F1-C1-C1

more ionomers wherein at least one ionomer is an ionomer containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and the outer cover layer comprises a polyurethane material.

Sullivan discloses a two piece golf ball having a core and a cover, wherein the cover is formed from a blend of a hard and a soft ionomer. The hard and soft ionomers are very specific ionomers, and the soft ionomer is a terpolymer. The two ionomers are blended in specific ratios. Sullivan does not disclose blending two ionomers wherein at least one of the ionomers contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.

Applicant respectfully submits that there is no motivation or teaching to combine Nesbitt and Sullivan. There is no motivation to substitute the single layer cover of Sullivan that comprises a blend of a hard ionomer and soft ionomer terpolymer for the single, high flex modulus ionomer of Nesbitt's inner cover layer, but even if it was substituted, a golf ball having an inner cover layer comprising a blend of ionomers wherein at least one of the ionomers comprises no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid would not be produced. Additionally, Applicant respectfully submits that there is no motivation, teaching or suggestion in Sullivan to use a blend of ionomer resins of any type in an inner cover layer. Instead, the only specific teaching in Sullivan shows blends of ionomers in golf ball outer covers or single, thicker cover layers of two piece golf balls.

Wu is directed to a golf ball having a core and a single layer cover comprising a specific polyurethane. Wu does not disclose a multi-layer cover.

Since, as discussed above, the primary reference, Nesbitt, is deficient because it does not disclose a golf ball having a multi-layer cover, wherein the inner cover layer comprises a blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and the outer cover layer comprises a polyurethane material, the addition of Sullivan and/or Wu as a secondary reference does not cure this deficiency. Applicant respectfully submits that even if Sullivan is combined with Nesbitt, Sullivan is not directed to a blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of

4

CW 0309083



an alpha, beta-unsaturated carboxylic acid, therefore the combination would not produce a golf ball having a cover layer containing blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. Furthermore, Applicant respectfully submits that one skilled in the art would not be motivated by Wu to add a polyurethane cover to Nesbitt because Nesbitt has a multi-layer cover with specific features, and Wu has a single layer cover. Even if both Sullivan and Wu were combined with Nesbitt, Applicant's golf ball would not be produced because neither Nesbitt alone as the primary reference, nor in combination with Sullivan and/or Wu, produces a golf ball comprising an inner cover layer comprising a blend of two or more ionomers wherein at least one ionomer contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and an outer cover layer comprising a polyurethane. Both Wu and Sullivan are directed to golf balls with single cover layers, therefore, there is no motivation to substitute either the blend of ionomers of Sullivan's single cover layer or the specific polyurethane of Wu's single cover layer for the inner cover layer of Nesbitt.

Furthermore, Applicant respectfully submits that a prior art patent, such as Nesbitt, Sullivan or Wu, must be considered as a whole, and it is impermissible to pick and choose from one reference only so much of it as will support a given position to the exclusion of other parts necessary for the full appreciation of what the reference fairly suggests to one skilled in the art. Applicant respectfully submits that the Examiner is picking and choosing cover materials from prior art patents directed to golf balls with a single layer cover in an attempt to recreate Applicant's invention. Applicant respectfully submits that the Examiner has not shown the motivation, teaching or suggestion to combine Sullivan and Wu with Nesbitt, and the only teaching is found in Applicant's own disclosure.

Finally, Applicant respectfully submits that one skilled in the art would not add the ionomer blend of Sullivan to the cover of Nesbitt because Sullivan's ionomer blend is a very specific blend of a hard ionomer and a soft terpolymer ionomer and the cover of Sullivan is a single layer, nor would one skilled in the art add the polyurethane of Wu to the cover of Nesbitt because the cover of Wu is a single layer and one would not

Received from <4133222575> at 1/21/03 7:43:31 AM [Eastern Standard Time]

09/776,278                                        P-3724-2-F1-C1-C1

add the single layer polyurethane cover of Wu to the multi-layer cover of Nesbitt since
it would not necessarily achieve the same goals as a specific combination of cover
layers such as that in Nesbitt.

For at least these reasons, Applicant respectfully submits that claims 1 and 3 are
not obvious under 35 U.S.C. § 103(a) over Nesbitt in view of Sullivan and Wu.
Applicant therefore respectfully requests that the rejection of claims 1 and 3 under 35
U.S.C. § 103(a) as obvious over Nesbitt in view of Sullivan and Wu be reconsidered
and withdrawn.

Attached hereto is a marked-up version of the changes made to the application
by this Amendment. The Examiner is invited to telephone Applicant's attorney if it is
deemed that a telephone conversation will hasten prosecution of the application.

## CONCLUSION

Applicant respectfully requests reconsideration and allowance of each of the
presently rejected claims, claims 1 to 8. Applicant respectfully requests allowance of
claims 1 to 8, the claims currently pending.

Respectfully submitted,

MICHAEL J. SULLIVAN

Customer No. 24492                    By: _Michelle Bugbee_
Phone: (413) 322-2937                 Michelle Bugbee, Reg. No. 42,370
                                      Spalding Sports Worldwide
Date: _January 20_, 2003             Attorneys for Applicant
                                      425 Meadow Street
                                      P.O. Box 901
                                      Chicopee, MA  01021-0901

cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

6

Received from <4133222575> at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309085



JAN 21 '03 07:46AM PATENT DEPT                                         P.7
09/776,278                                              P-3724-2-F1-C1-C1

### VERSION WITH MARKINGS TO SHOW CHANGES
### IN THE SPECIFICATION

The paragraph beginning at page 24, line 23 has been replaced with the following rewritten paragraph:

Other soft, relatively low modulus non-ionomeric thermoplastic elastomers may also be utilized to produce the outer cover layer as long as the non-ionomeric thermoplastic elastomers produce the playability and durability characteristics desired without adversely effecting the enhanced spin characteristics produced by the low acid ionomer resin compositions. Preferably, the non-ionomeric thermoplastic elastomers have a Shore D hardness of 64 or less. These include, but are not limited to thermoplastic polyurethanes such as: Texin[2]-thermoplastic polyurethanes from Mobay Chemical Co. and the Pellethane[2]-thermoplastic polyurethanes from Dow Chemical Co.; Ionomer/rubber blends such as those in Spalding U.S. Patents 4,986,545; 5,098,105 and 5,187,013; and, Hytrel[2]-polyester elastomers from DuPont and [pebax] Pebax[*] polyetheramides from Elf Atochem S.A.

7

Received from <4133222575> at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309086

JAN 21 '03  07:47AM PATENT DEPT                                    P.8

ATTACHMENT FROM 08/556,237 FILED 11/9/95

I claim:

1. A golf ball comprising:

a core;

an inner cover layer having a Shore D hardness of 60
or more molded on said core, the inner cover layer comprising a
5    blend of two or more low acid ionomer resins containing no more
than 16% by weight of an alpha, beta-unsaturated carboxylic acid;
and

an outer cover layer having a Shore D hardness of 64
or less molded on said inner cover layer, said outer cover layer
10   comprising a relatively soft polymeric material selected from the
group consisting of non-ionomeric thermoplastic and thermosetting
elastomers.

2.    A golf ball according to claim 1, wherein the inner
cover layer has a thickness of about 0.100 to about 0.010 inches
and the outer cover layer has a thickness of about 0.010 to about
0.70 inches, the golf ball having an overall diameter of 1.680
inches or more.

3.    A golf ball according to claim 1 wherein the inner
cover layer has a thickness of about 0.050 inches and the outer
cover layer has a thickness of about 0.055 inches, the golf ball
having an overall diameter of 1.680 inches or more.

-48-

Received from < 4133222575 > at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309087



4.   A golf ball according to claim 1 wherein the outer
layer comprises a polyurethane based material.


5.   A multi-layer golf ball comprising:

a spherical core;

5      an inner cover layer having a Shore D hardness of about
60 or more molded over said spherical core, said inner cover layer
comprising an ionomeric resin including no more than 16% by weight
of an alpha, beta-unsaturated carboxylic acid and having a modulus
of from about 15,000 to about 70,000 psi;

10     an outer cover layer having a Shore D hardness of about
64 or less molded over said spherical intermediate ball to form a
multi-layer golf ball, the outer layer comprising polyurethane
based material.


8.   A multi-layer golf ball comprising:

a spherical core;

an inner cover layer molded over said spherical core to
form a spherical intermediate ball, said inner cover layer
5   comprising an ionomeric resin having no more than 16% by weight of
an alpha, beta-unsaturated carboxylic acid and having a modulus of
from about 15,000 to about 70,000 psi;

an outer cover layer molded over said spherical
intermediate ball to form a multi-layer golf ball, the outer layer

-49-

Received from <4133222575> at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309088

10  comprising a non-ionomeric elastomer selected from the group
consisting of polyester elastomer, polyester, polyether
polyurethane and polyester amide, said outer cover layer having a
modulus in a range of about 1,000 to about 30,000 psi.

Received from < 4133222575 > at 1/21/03 7:43:31 AM [Eastern Standard Time]

CW 0309089

  

$M F$

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

7590          01/31/2003

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA  01021-0901

| EXAMINER |
|---|
| GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 01/31/2003     $14$

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

CW 0309090

| *Advisory Action* | Application No. | Applicant(s) |
|---|---|---|
| | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit |
| | Raeann Gorden | 3711 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED 21 January 2003 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE. Therefore, further action by the applicant is required to avoid abandonment of this application. A proper reply to a final rejection under 37 CFR 1.113 may only be either: (1) a timely filed amendment which places the application in condition for allowance; (2) a timely filed Notice of Appeal (with appeal fee); or (3) a timely filed Request for Continued Examination (RCE) in compliance with 37 CFR 1.114.

PERIOD FOR REPLY [check either a) or b)]

a) ☐  The period for reply expires _____ months from the mailing date of the final rejection.

b) ☒  The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection. ONLY CHECK THIS BOX WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

1. ☐  A Notice of Appeal was filed on _____. Appellant's Brief must be filed within the period set forth in 37 CFR 1.192(a), or any extension thereof (37 CFR 1.191(d)), to avoid dismissal of the appeal.

2. ☐  The proposed amendment(s) will not be entered because:

    (a) ☐  they raise new issues that would require further consideration and/or search (see NOTE below);

    (b) ☐  they raise the issue of new matter (see Note below);

    (c) ☐  they are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

    (d) ☐  they present additional claims without canceling a corresponding number of finally rejected claims.

    NOTE: _____.

3. ☒  Applicant's reply has overcome the following rejection(s): *112, first paragraph*.

4. ☐  Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

5. ☒  The a)☐ affidavit, b)☐ exhibit, or c)☒ request for reconsideration has been considered but does NOT place the application in condition for allowance because: *See Continuation Sheet*.

6. ☐  The affidavit or exhibit will NOT be considered because it is not directed SOLELY to issues which were newly raised by the Examiner in the final rejection.

7. ☐  For purposes of Appeal, the proposed amendment(s) a)☐ will not be entered or b)☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

The status of the claim(s) is (or will be) as follows:

Claim(s) allowed: *4-8*.

Claim(s) objected to: *2*.

Claim(s) rejected: *1 and 3*.

Claim(s) withdrawn from consideration: _____.

8. ☐  The proposed drawing correction filed on _____ is a)☐ approved or b)☐ disapproved by the Examiner.

9. ☐  Note the attached Information Disclosure Statement(s)( PTO-1449) Paper No(s). _____.

10. ☐  Other: _____.

Mark S. Graham
Primary Examiner

Continuation Sheet (PTO-303)        Application No. 09/776,278

Continuation of 5. does NOT place the application in condition for allowance because:  Applicant's arguments regarding the prior art rejection are not persuasive..

2

CW 0309092

FEB 25 '03 03:14PM PATENT DEPT                                           P.1/4

<u>P-3724-2-F1-C1-C1</u>                    PATENT
IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of  Michael J. Sullivan
Serial No.:   09/776,278                    Examiner:  R. Gorden
Filing Date:  February 2, 2001              Group Art Unit:  3711
For: IMPROVED MULTI-LAYER GOLF BALL

Box AF
Commissioner for Patents & Trademarks
Washington, DC 20231

FAX RECEIVED

FEB 2 5 2003

GROUP 3700

Sir:

<u>RESPONSE TO FINAL OFFICE ACTION UNDER 37 CFR § 1.116</u>

       This is in response to the Final Office Action mailed November 25, 2002, and

the Advisory Action mailed January 31, 2003, in connection with the present

application.  Entry of the following amendment to the application is requested.

---

CERTIFICATE OF MAILING/TRANSMISSION (37 C.F.R. 1.8a)

I hereby certify that this correspondence is, on the date shown below, being:

MAILING                                     FACSIMILE

___   deposited with the United States Postal        XX    transmitted by facsimile
      Service with sufficient postage as first class        to the Patent and Trademark
      mail, in an envelope addressed to the Assistant       Office to Examiner R. Gorden
      Commissioner for Patents, Washington,                 in TC3700 at 703-872-9303.
      D.C. 20231.

Date: ___2/25___, 2003                              Laura J. Nolan

CW 0309093

09/776,278                                        P-3724-2-F1-C1-C1

## IN THE CLAIMS

Please cancel claim 2 without prejudice or disclaimer.

Please amend claim 1 as follows:

1.(AMENDED) A golf ball comprising:

a core;

an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material,

wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

## REMARKS

Reconsideration of the application and entry of the amendment are respectfully requested. Claims 1 to 8 are currently pending, and no claims have been amended.

The Final Office Action mailed November 25, 2002 addressed claims 1 to 8. Claims 1 to 8 were rejected. The Advisory Action mailed January 31, 2003 stated that the 112 rejections were overcome by the amendment to the specification in the Response filed on January 21, 2003. The Advisory Action also stated that claims 1 and 3 were rejected, claim 2 was objected to, and claims 4 to 8 were allowed.

Claims 1 and 3 were rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt in view of Sullivan '814 and Wu.

Although Applicant continues to respectfully disagree, in an effort to hasten prosecution, claim 1 has been amended to incorporate the limitation of claim 2, which was objected to by the Examiner, but would be allowable. Claim 3 depends from amended claim 1, therefore claim 3 should also be allowable.

2

CW 0309094

FEB 25 '03   03:14PM PATENT DEPT                                                    P.3/4

09/776,278                                              P-3724-2-F1-C1-C1

    For at least these reasons, Applicant respectfully submits that claims 1 and 3 are not obvious under 35 U.S.C. § 103(a) over Nesbitt in view of Sullivan and Wu. Applicant therefore respectfully requests that the rejection of claims 1 and 3 under 35 U.S.C. § 103(a) as obvious over Nesbitt in view of Sullivan and Wu be reconsidered and withdrawn.

    Attached hereto is a marked-up version of the changes made to the application by this Amendment. The Examiner is invited to telephone Applicant's attorney if it is deemed that a telephone conversation will hasten prosecution of the application.

### CONCLUSION

    Applicant respectfully requests reconsideration and allowance of each of the presently objected or rejected claims, claims 1 to 3. Applicant respectfully requests allowance of claims 1 and 3 to 8, the claims currently pending.

Respectfully submitted,

MICHAEL J. SULLIVAN

Customer No. 24492
Phone: (413) 322-2937

By: _Michelle Bugbee_

Michelle Bugbee, Reg. No. 42,370
Spalding Sports Worldwide
Attorneys for Applicant

Date: _February 25_, 2003

425 Meadow Street
P.O. Box 901
Chicopee, MA 01021-0901

cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

CW 0309095

09/776,278                          P-3724-2-F1-C1-C1

## VERSION WITH MARKINGS TO SHOW CHANGES
## IN THE CLAIMS

Claim 2 has been canceled without prejudice or disclaimer.

Claim 1 has been amended as follows:

1.(AMENDED) A golf ball comprising:

a core;

an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material,

wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

4

Received from <4133222575> at 2/25/03 3:13:16 PM [Eastern Standard Time]

CW 0309096




UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

7590     03/05/2003

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA   01021-0901

| EXAMINER |
|---|
| GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 03/05/2003     #16

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

CW 0309097

| *Advisory Action* | Application No. | Applicant(s) |
|---|---|---|
| | 09/776,278 | SULLIVAN, MICHAEL J. |
| | Examiner | Art Unit | |
| | Raeann Gorden | 3711 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED 25 February 2003  FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE. Therefore, further action by the applicant is required to avoid abandonment of this application.  A proper reply to a final rejection under 37 CFR 1.113 may *only* be either: (1) a timely filed amendment which places the application in condition for allowance; (2) a timely filed Notice of Appeal (with appeal fee); or (3) a timely filed Request for Continued Examination (RCE) in compliance with 37 CFR 1.114.

<u>PERIOD FOR REPLY</u> [check either a) or b)]

a) ☒   The period for reply expires <u>4</u> months from the mailing date of the final rejection.

b) ☐   The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection. ONLY CHECK THIS BOX WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION.  See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a).  The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee.  The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked.  Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

1. ☐   A Notice of Appeal was filed on _____.  Appellant's Brief must be filed within the period set forth in 37 CFR 1.192(a), or any extension thereof (37 CFR 1.191(d)), to avoid dismissal of the appeal.

2. ☒   The proposed amendment(s) will not be entered because:

    (a) ☒   they raise new issues that would require further consideration and/or search (see NOTE below);

    (b) ☐   they raise the issue of new matter (see Note below);

    (c) ☐   they are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

    (d) ☐   they present additional claims without canceling a corresponding number of finally rejected claims.

        NOTE: *See Continuation Sheet.*

3. ☐   Applicant's reply has overcome the following rejection(s): _____.

4. ☐   Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

5. ☐   The a)☐ affidavit, b)☐ exhibit, or c)☐ request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

6. ☐   The affidavit or exhibit will NOT be considered because it is not directed SOLELY to issues which were newly raised by the Examiner in the final rejection.

7. ☒   For purposes of Appeal, the proposed amendment(s) a)☒ will not be entered or b)☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

    The status of the claim(s) is (or will be) as follows:

    Claim(s) allowed: <u>4-8</u>.

    Claim(s) objected to: <u>2</u>.

    Claim(s) rejected: <u>1 and 3</u>.

    Claim(s) withdrawn from consideration: _____.

8. ☐   The proposed drawing correction filed on _____ is a)☐ approved or b)☐ disapproved by the Examiner.

9. ☐   Note the attached Information Disclosure Statement(s)( PTO-1449) Paper No(s). _____.

10. ☐   Other: _____

Matthew S. Graham
Primary Examiner

U.S. Patent and Trademark Office

CW 0309098

**Continuation Sheet (PTO-303)**

Continuation of 2. NOTE: amended claim 1 creates an objection to claim 3 (failure to further limit the base claim). Amended claim 1 and claim 3 both claim the diameter of the golf ball..

CW 0309099



MAR 11 '03  11:15AM PATENT DEPT

FAX RECEIVED

MAR 11 2003                    P.1/4

GROUP 3700

P-3724-2-F1-C1-C1          PATENT
IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of  Michael J. Sullivan
Serial No.:    09/776,278              · Examiner:  R. Gorden
Filing Date:  February 2, 2001          Group Art Unit:  3711
For: IMPROVED MULTI-LAYER GOLF BALL

Box AF
Commissioner for Patents & Trademarks
Washington, DC 20231

DO NOT ENTER 3/19/00

Sir:

## RESPONSE TO FINAL OFFICE ACTION UNDER 37 CFR § 1.116

This is in response to the Final Office Action mailed November 25, 2002, and the Advisory Actions mailed January 31, 2003 and March 5, 2003, in connection with the present application.  Entry of the following amendment to the application is requested.   Applicant believes that no extension of time is required as the Advisory Action dated March 5, 2003 stated that the period for response expired 4 months from the mailing date of the Final Rejection, which brings the period for response to March 25, 2003.

---

CERTIFICATE OF MAILING/TRANSMISSION (37 C.F.R. 1.8a)

I hereby certify that this correspondence is, on the date shown below, being:

MAILING                                  FACSIMILE

____  deposited with the United States Postal        XX    transmitted by facsimile
      Service with sufficient postage as first class          to the Patent and Trademark
      mail, in an envelope addressed to the Assistant        Office to Examiner R. Gorden
      Commissioner for Patents, Washington,                  in TC3700 at 703-872-9303.
      D.C. 20231.

Date:    3/11            , 2003         _Laura J. Nolan_
                                                      Laura J. Nolan

Received from <4133222575> at 3/11/03 11:14:29 AM [Eastern Standard Time]

CW 0309100

09/776,278                                      P-3724-2-F1-C1-C1

## IN THE CLAIMS

Please cancel claim 2 without prejudice or disclaimer.

Please amend claims 1 and 3 as follows:

1. (AMENDED) A golf ball comprising:

     a core;

     an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

     an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material,

     wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

3. (AMENDED) The golf ball according to claim 1, wherein said inner cover layer has a thickness of about 0.050 inches, and said outer cover layer has a thickness of about 0.055 inches.

## REMARKS

Reconsideration of the application and entry of the amendment are respectfully requested. Claims 1 to 8 are currently pending, and no claims have been amended.

The Final Office Action mailed November 25, 2002 addressed claims 1 to 8. Claims 1 to 8 were rejected. The Advisory Action mailed January 31, 2003 stated that the 112 rejections were overcome by the amendment to the specification in the Response filed on January 21, 2003. The Advisory Action also stated that claims 1 and 3 were rejected, claim 2 was objected to, and claims 4 to 8 were allowed.

Claims 1 and 3 were rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt in view of Sullivan '814 and Wu.

Although Applicant continues to respectfully disagree, in an effort to hasten prosecution, claim 1 has been amended to incorporate the limitation of claim 2, which

2

CW 0309101



09/776,278                                              P-3724-2-F1-C1-C1

was objected to by the Examiner, but would be allowable. Claim 3 depends from amended claim 1, therefore claim 3 should also be allowable. Claim 3 has been amended to delete the overall diameter of the golf ball, which is already stated in amended claim 1.

For at least these reasons, Applicant respectfully submits that claims 1 and 3 are not obvious under 35 U.S.C. § 103(a) over Nesbitt in view of Sullivan and Wu. Applicant therefore respectfully requests that the rejection of claims 1 and 3 under 35 U.S.C. § 103(a) as obvious over Nesbitt in view of Sullivan and Wu be reconsidered and withdrawn.

Attached hereto is a marked-up version of the changes made to the application by this Amendment. The Examiner is invited to telephone Applicant's attorney if it is deemed that a telephone conversation will hasten prosecution of the application.

## CONCLUSION

Applicant respectfully requests reconsideration and allowance of each of the presently objected or rejected claims, claims 1 to 3. Applicant respectfully requests allowance of claims 1 and 3 to 8, the claims currently pending.

Respectfully submitted,

MICHAEL J. SULLIVAN

Customer No. 24492
Phone: (413) 322-2937

By: _Michelle Bugbee_
Michelle Bugbee, Reg. No. 42,370
Spalding Sports Worldwide
Attorneys for Applicant
425 Meadow Street
P.O. Box 901
Chicopee, MA 01021-0901

Date: _March 11_, 2003

cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

Received from < 4133222575 > at 3/11/03 11:14:29 AM [Eastern Standard Time]

CW 0309102



09/776,278                                      P-3724-2-F1-C1-C1

## VERSION WITH MARKINGS TO SHOW CHANGES
## IN THE CLAIMS

Claim 2 has been canceled without prejudice or disclaimer.

Claims 1 and 3 have been amended as follows:

1.(AMENDED) A golf ball comprising:

a core;

an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material,

wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

3. (AMENDED) The golf ball according to claim 1, wherein said inner cover layer has a thickness of about 0.050 inches, and said outer cover layer has a thickness of about 0.055 inches[, and said golf ball has an overall diameter of 1.680 inches or more].

4

CW 0309103

P-3724-2-F1-C1-C1                    PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of  Michael J. Sullivan

Serial No.:  09/776,278                    Examiner:  R. Gorden

Filing Date:  February 2, 2001              Group Art Unit:  3711

For: IMPROVED MULTI-LAYER GOLF BALL

Box AF
Commissioner for Patents & Trademarks
Washington, DC 20231

*ENTER Amendment 3-19-03*

Sir:

### RESPONSE TO FINAL OFFICE ACTION UNDER 37 CFR § 1.116

This is in response to the Final Office Action mailed November 25, 2002, and the Advisory Actions mailed January 31, 2003 and March 5, 2003, in connection with the present application. Entry of the following amendment to the application is requested. Applicant believes that no extension of time is required as the Advisory Action dated March 5, 2003 stated that the period for response expired 4 months from the mailing date of the Final Rejection, which brings the period for response to March 25, 2003.

---

### CERTIFICATE OF MAILING/TRANSMISSION (37 C.F.R. 1.8a)

I hereby certify that this correspondence is, on the date shown below, being:

**MAILING**                              **FACSIMILE**

___    deposited with the United States Postal     **XX**    transmitted by facsimile
       Service with sufficient postage as first class          to the Patent and Trademark
       mail, in an envelope addressed to the Assistant          Office to Examiner R. Gorden
       Commissioner for Patents, Washington,                    in TC3700 at 703-746-3208.
       D.C. 20231.

Date:  3/19 _____, 2003

                                          _____
                                          Laura J. Nolan

CW 0309104

MAR 19 '03  11:38AM PATENT DEPT                                    P.1/11

# SPALDING SPORTS WORLDWIDE, INC.

### 425 Meadow Street
### P.O. Box 901
### Chicopee, MA 01021-0901 U.S.A.

**PHONE: 413-536-1200**        **FAX: 413-322-2575 (LEGAL II & PATENT)**

### CONFIDENTIAL FACSIMILE TRANSMISSION

TO:    Examiner R. Gorden              FROM:  Michelle Bugbee  (413) 322-2937

       Phone: 703-308-8354             DATE: March 19, 2003

       Fax: 703-746-3208              PAGES: 11  (includes cover page)


RE:    Application Serial Number 09/776,278

MESSAGE: Examiner Gordon,
       Following this cover sheet is another After Final Response adding the changes made to
the specification in the proposed response of January 21, 2003, and canceling claim 5, per our
discussion. I am also including pages 48 to 50 of the original specification showing the claims as
originally filed. If you need any additional information, please do not hesitate to contact me.
Thank you for your help.

                              Very truly yours,

                              Michelle Bugbee

                              Michelle Bugbee
                              Senior Patent Counsel
                              Registration No. 42,370

PLEASE CALL LAURA NOLAN AT EXT. 2985 - IF YOU DO NOT RECEIVE ALL PAGES.

CONFIRMATION COPY TO FOLLOW: _____ YES  _X_ NO

CONFIDENTIALITY NOTE:

The information contained in this facsimile message is legally privileged and confidential
information intended only for the use of the individual or entity named above. If the reader of
this message is not the intended recipient, you are hereby notified that any dissemination,
distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in
error, please immediately notify us by telephone and return the original message to us at the
address above via the Postal Service. Thank you.

Received from < 4133222575 > at 3/19/03 11:41:57 AM [Eastern Standard Time]

CW 0309105

09/776,278                                      P-3724-2-F1-C1-C1

## IN THE SPECIFICATION

Please replace the paragraph beginning at page 24, line 23 with the following

rewritten paragraph:



Other soft, relatively low modulus non-ionomeric thermoplastic

elastomers may also be utilized to produce the outer cover layer as long as the non-

ionomeric thermoplastic elastomers produce the playability and durability

characteristics desired without adversely effecting the enhanced spin characteristics

produced by the low acid ionomer resin compositions. Preferably, the non-ionomeric

thermoplastic elastomers have a Shore D hardness of 64 or less. These include, but are

not limited to thermoplastic polyurethanes such as: Texin® thermoplastic polyurethanes

from Mobay Chemical Co. and the Pellethane® thermoplastic polyurethanes from Dow

Chemical Co.; Ionomer/rubber blends such as those in Spalding U.S. Patents

4,986,545; 5,098,105 and 5,187,013; and, Hytrel® polyester elastomers from DuPont

and Pebax® polyetheramides from Elf Atochem S.A.

2

CW 0309106

09/776,278                                      P-3724-2-F1-C1-C1

## IN THE CLAIMS

Please cancel claims 2 and 5 without prejudice or disclaimer.

Please amend claims 1 and 3 as follows:

1.(AMENDED) A golf ball comprising:

   a core;

   an inner cover layer disposed on said core, said inner cover layer having a
thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising
a blend of two or more ionomer resins, at least one of which contains no more than
16% by weight of an alpha, beta-unsaturated carboxylic acid; and

   an outer cover layer disposed on said inner cover layer, said outer cover layer
having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a
polyurethane material,

   wherein said golf ball has an overall diameter of 1.680 inches or more, said
inner cover layer having a Shore D hardness of at least 60, and said outer cover layer
having a Shore D hardness of less than 64.

3. (AMENDED) The golf ball according to claim 1, wherein said inner cover layer has
a thickness of about 0.050 inches, and said outer cover layer has a thickness of about
0.055 inches.

3

Received from < 4133222575 > at 3/19/03 11:41:57 AM [Eastern Standard Time]

CW 0309107

09/776,278                                        P-3724-2-F1-C1-C1

## REMARKS

Reconsideration of the application and entry of the amendment are respectfully requested. Claims 1 to 8 are currently pending, and no claims have been amended.

The Final Office Action mailed November 25, 2002 addressed claims 1 to 8. Claims 1 to 8 were rejected. The Advisory Action mailed January 31, 2003 stated that the 112 rejections would be overcome by the amendment to the specification in the Response filed on January 21, 2003. The Advisory Action also stated that claims 1 and 3 were rejected, claim 2 was objected to, and claims 4 to 8 were allowed.

Claims 2 and 4 to 8 were rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The Examiner stated that the Shore D hardness less than 64 for the outer cover has not been disclosed.

Applicant respectfully submits that the Shore D hardness of less than 64 for the outer cover layer has been disclosed. Applicant respectfully submits that original claims 1 and 5 of a parent application, U.S. Patent Application Serial No. 08/556,237, filed on November 9, 1995, disclose "an outer cover layer having a Shore D hardness of 64 or less" and "an outer cover layer having a Shore D hardness of about 64 or less" respectively. Since the original claims are considered part of the specification, Applicant respectfully submits that the Shore D hardness of 64 or less has been disclosed. As required by the Examiner in the Final Office Action, the specification has been amended to include the hardness for the outer cover layer, and a copy of the originally filed claims is attached to this response. Applicant respectfully submits that this overcomes the rejection of claims 2 and 4 to 8 under 35 U.S.C. § 112, first paragraph. Applicant therefore respectfully requests that the rejection of claims 2 and 4 to 8 be reconsidered and withdrawn.

Claims 1 and 3 were rejected under 35 U.S.C. 103(a) as being unpatentable over Nesbitt in view of Sullivan '814 and Wu.

Although Applicant continues to respectfully disagree, in an effort to hasten prosecution, claim 1 has been amended to incorporate the limitation of claim 2, which

4

CW 0309108

MAR 19 '03 11:40AM PATENT DEPT                                              P.6/11

09/776,278                                            P-3724-2-F1-C1-C1

was objected to by the Examiner, but would be allowable. Claim 3 depends from amended claim 1, therefore claim 3 should also be allowable. Claim 3 has been amended to delete the overall diameter of the golf ball, which is already stated in amended claim 1.

For at least these reasons, Applicant respectfully submits that claims 1 and 3 are not obvious under 35 U.S.C. § 103(a) over Nesbitt in view of Sullivan and Wu. Applicant therefore respectfully requests that the rejection of claims 1 and 3 under 35 U.S.C. § 103(a) as obvious over Nesbitt in view of Sullivan and Wu be reconsidered and withdrawn.

Claim 5 has been canceled by this Amendment.

Attached hereto is a marked-up version of the changes made to the application by this Amendment. The Examiner is invited to telephone Applicant's attorney if it is deemed that a telephone conversation will hasten prosecution of the application.

## CONCLUSION

Applicant respectfully requests reconsideration and allowance of each of the presently objected or rejected claims, claims 1 to 3. Applicant respectfully requests allowance of claims 1, 3, 4 and 6 to 8, the claims currently pending.

If any fees are due, Applicant requests that the fees be charged to Deposit Account No. 17-0150.

Respectfully submitted,

MICHAEL J. SULLIVAN

Customer No. 24492                    By: _Michelle Bugbee_
Phone: (413) 322-2937                 Michelle Bugbee, Reg. No. 42,370
                                      Spalding Sports Worldwide
Date: _March 19_, 2003                Attorneys for Applicant
                                      425 Meadow Street
                                      P.O. Box 901
                                      Chicopee, MA 01021-0901

cc: Richard M. Klein, Esquire (SLD 2 0035-3-3-1-1-1)

5

CW 0309109

09/776,278                                      P-3724-2-F1-C1-C1

## VERSION WITH MARKINGS TO SHOW CHANGES
## IN THE SPECIFICATION

The paragraph beginning at page 24, line 23 has been replaced with the following rewritten paragraph:

Other soft, relatively low modulus non-ionomeric thermoplastic elastomers may also be utilized to produce the outer cover layer as long as the non-ionomeric thermoplastic elastomers produce the playability and durability characteristics desired without adversely effecting the enhanced spin characteristics produced by the low acid ionomer resin compositions. <u>Preferably, the non-ionomeric thermoplastic elastomers have a Shore D hardness of 64 or less.</u> These include, but are not limited to thermoplastic polyurethanes such as: Texin°-thermoplastic polyurethanes from Mobay Chemical Co. and the Pellethane°-thermoplastic polyurethanes from Dow Chemical Co.; Ionomer/rubber blends such as those in Spalding U.S. Patents 4,986,545; 5,098,105 and 5,187,013; and, Hytrel°-polyester elastomers from DuPont and [pebax] <u>Pebax°</u> polyetheramides from Elf Atochem S.A.

6

CW 0309110

09/776,278                                        P-3724-2-FI-C1-C1

## IN THE CLAIMS

Claims 2 and 5 have been canceled without prejudice or disclaimer.

Claims 1 and 3 have been amended as follows:

1.(AMENDED) A golf ball comprising:

　　　a core;

　　　an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and

　　　an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material,

　　　wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

3. (AMENDED) The golf ball according to claim 1, wherein said inner cover layer has a thickness of about 0.050 inches, and said outer cover layer has a thickness of about 0.055 inches[, and said golf ball has an overall diameter of 1.680 inches or more].

7

CW 0309111

ATTACHMENT  FROM  08/556,237  FILED 11/9/95

I claim:

    1. A golf ball comprising:

        a core;

        an inner cover layer having a Shore D hardness of 60
or more molded on said core, the inner cover layer comprising a
5    blend of two or more low acid ionomer resins containing no more
than 16% by weight of an alpha, beta-unsaturated carboxylic acid;
and

        an outer cover layer having a Shore D hardness of 64
or less molded on said inner cover layer, said outer cover layer
10    comprising a relatively soft polymeric material selected from the
group consisting of non-ionomeric thermoplastic and thermosetting
elastomers.

    2.   A golf ball according to claim 1, wherein the inner
cover layer has a thickness of about 0.100 to about 0.010 inches
and the outer cover layer has a thickness of about 0.010 to about
0.70 inches, the golf ball having an overall diameter of 1.680
inches or more.

    3.   A golf ball according to claim 1 wherein the inner
cover layer has a thickness of about 0.050 inches and the outer
cover layer has a thickness of about 0.055 inches, the golf ball
having an overall diameter of 1.680 inches or more.

-48-

CW 0309112



4.   A golf ball according to claim 1 wherein the outer
layer comprises a polyurethane based material.


5.   A multi-layer golf ball comprising:

a spherical core;

5           an inner cover layer having a Shore D hardness of about
60 or more molded over said spherical core, said inner cover layer
comprising an ionomeric resin including no more than 16% by weight
of an alpha, beta-unsaturated carboxylic acid and having a modulus
of from about 15,000 to about 70,000 psi;

10          an outer cover layer having a Shore D hardness of about
64 or less molded over said spherical intermediate ball to form a
multi-layer golf ball, the outer layer comprising polyurethane
based material.


8.   A multi-layer golf ball comprising:

a spherical core;

an inner cover layer molded over said spherical core to
form a spherical intermediate ball, said inner cover layer
5     comprising an ionomeric resin having no more than 16% by weight of
an alpha, beta-unsaturated carboxylic acid and having a modulus of
from about 15,000 to about 70,000 psi;

an outer cover layer molded over said spherical
intermediate ball to form a multi-layer golf ball, the outer layer

-49-

Received from < 4133222575 > at 3/19/03 11:41:57 AM [Eastern Standard Time]

CW 0309113

10    comprising  a  non-ionomeric  elastomer  selected  from  the  group

      consisting   of   polyester   elastomer,   polyester,   polyether

      polyurethane  and  polyester  amide,  said  outer  cover  layer  having  a

      modulus  in  a  range  of  about  1,000  to  about  30,000  psi.

-50-

CW 030911

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

| 7590 | 03/21/2003 |
| --- | --- |

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA 01021-0901

| EXAMINER |
| --- |
| GORDON, RAEANN |

| ART UNIT | CLASS-SUBCLASS |
| --- | --- |
| 3711 | 473-374000 |

DATE MAILED: 03/21/2003

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

TITLE OF INVENTION: MULTI-LAYER GOLF BALL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1300 | $300 | $1600 | 06/23/2003 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE REFLECTS A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR AN EQUIVALENT) MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL BE REGARDED AS ABANDONED.**

### HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status is changed, pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above and notify the United States Patent and Trademark Office of the change in status, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check the box below and enclose the PUBLICATION FEE and 1/2 the ISSUE FEE shown above.

☐ Applicant claims SMALL ENTITY status.
See 37 CFR 1.27.

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

CW 0309115

PART B – FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail**    **Box ISSUE FEE**
**Commissioner for Patents**
**Washington, D.C. 20231**
**Fax    (703)746-4000**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

7590          03/21/2003

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA 01021-0901

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

TITLE OF INVENTION: MULTI-LAYER GOLF BALL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1300 | $300 | $1600 | 06/23/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GORDON, RAEANN | 3711 | 473-374000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent)    ❑ individual    ❑ corporation or other private group entity    ❑ government

4a. The following fee(s) are enclosed:

❑ Issue Fee

❑ Publication Fee

❑ Advance Order - # of Copies _____

4b. Payment of Fee(s):

❑ A check in the amount of the fee(s) is enclosed.

❑ Payment by credit card. Form PTO-2038 is attached.

❑ The Commissioner is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

_____ (Authorized Signature)          _____ (Date)

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**TRANSMIT THIS FORM WITH FEE(S)**

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004. OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

CW 0309116



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-CI-CI | 1289 |

| | |
|---|---|
| 7590 03/21/2003 | EXAMINER |
| Diane F. Covello, Esq.<br>Spalding Sports Worldwide, Inc.<br>425 Meadow Street<br>PO Box 901<br>Chicopee, MA 01021-0901 | GORDON, RAEANN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 03/21/2003

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The patent term adjustment to date is 0 days. If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the term adjustment will be 0 days.

If a continued prosecution application (CPA) was filed in the above-identified application, the filing date that determines patent term adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) system. (http://pair.uspto.gov)

Any questions regarding the patent term extension or adjustment determination should be directed to the Office of Patent Legal Administration at (703)305-1383.

Page 3 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

CW 0309117



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 | 1289 |

| | |
|---|---|
| 7590 03/21/2003 | EXAMINER |

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA 01021-0901
UNITED STATES

GORDON, RAEANN

| ART UNIT | PAPER NUMBER |
|---|---|
| 3711 | |

DATE MAILED: 03/21/2003

## Notice of Fee Increase on January 1, 2003

If a reply to a "Notice of Allowance and Fee(s) Due" is filed in the Office on or after January 1, 2003, then the amount due will be higher than that set forth in the "Notice of Allowance and Fee(s) Due" since there will be an increase in fees effective on January 1, 2003. See Revision of Patent and Trademark Fees for Fiscal Year 2003; Final Rule, 67 Fed. Reg. 70847, 70849 (November 27, 2002).

The current fee schedule is accessible from: http://www.uspto.gov/main/howtofees.htm.

If the issue fee paid is the amount shown on the "Notice of Allowance and Fee(s) Due," but not the correct amount in view of the fee increase, a "Notice to Pay Balance of Issue Fee" will be mailed to applicant. In order to avoid processing delays associated with mailing of a "Notice to Pay Balance of Issue Fee," if the response to the Notice of Allowance and Fee(s) due form is to be filed on or after January 1, 2003 (or mailed with a certificate of mailing on or after January 1, 2003), the issue fee paid should be the fee that is required at the time the fee is paid. If the issue fee was previously paid, and the response to the "Notice of Allowance and Fee(s) Due" includes a request to apply a previously-paid issue fee to the issue fee now due, then the difference between the issue fee amount at the time the response is filed and the previously paid issue fee should be paid. See Manual of Patent Examining Procedure, Section 1308.01 (Eighth Edition, August 2001).

Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (703) 305-8283.

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

CW 0309118

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 09/776,278 | SULLIVAN, MICHAEL J. | |
| | Examiner | Art Unit | |
| | Raeann Gorden | 3711 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MEPEP 1308.

1. ☒ This communication is responsive to *amendment received 3-19-03*.

2. ☒ The allowed claim(s) is/are *1,3,4 and 6-8*.

3. ☒ The drawings filed on *02 February 2001* are accepted by the Examiner.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

        a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

            1. ☐ Certified copies of the priority documents have been received.

            2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

            3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the

                International Bureau (PCT Rule 17.2(a)).

     * Certified copies not received: _____ .

5. ☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

     (a) ☐ The translation of the foreign language provisional application has been received.

6. ☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE**

7. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

8. ☐ CORRECTED DRAWINGS must be submitted.

   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

       1) ☐ hereto or 2) ☐ to Paper No. ____ .

   (b) ☐ including changes required by the proposed drawing correction filed _____ , which has been approved by the Examiner.

   (c) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No. _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the top margin (not the back)**
   **of each sheet. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.**

9. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1☐ Notice of References Cited (PTO-892)
3☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
5☐ Information Disclosure Statements (PTO-1449), Paper No. ____ .
7☐ Examiner's Comment Regarding Requirement for Deposit
   of Biological Material

2☐ Notice of Informal Patent Application (PTO-152)
4☒ Interview Summary (PTO-413), Paper No. *18* .
6☐ Examiner's Amendment/Comment
8☒ Examiner's Statement of Reasons for Allowance
9☐ Other   .

CW 0309119

## REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance: the prior art of record does not disclose or fairly suggest a golf ball comprising a core, an inner cover layer disposed on said core, said inner cover layer having a thickness of from about 0.100 to about 0.010 inches, said inner cover layer comprising a blend of two or more ionomer resins, at least one of which contains no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and an outer cover layer disposed on said inner cover layer, said outer cover layer having a thickness of 0.010 to 0.070 inches, and said outer cover layer comprising a polyurethane material, wherein said golf ball has an overall diameter of 1.680 inches or more, said inner cover layer having a Shore D hardness of at least 60, and said outer cover layer having a Shore D hardness of less than 64.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Raeann Gorden whose telephone number is 703-308-8354. The examiner can normally be reached on 7:30 AM to 5:00 PM Mon-Fri.

Application/Control Number: 09/776,278                                    Page 3
Art Unit: 3711

If attempts to reach the examiner by telephone are unsuccessful, the

examiner's supervisor, Paul Sewell can be reached on 703-308-2126. The fax

phone numbers for the organization where this application or proceeding is

assigned are 703-872-9302 for regular communications and 703-872-9303 for

After Final communications.

Any inquiry of a general nature or relating to the status of this application

or proceeding should be directed to the receptionist whose telephone number is

703-308-1148.


rg
March 20, 2003

Mark S. Graham
Primary Examiner

CW 0309121

| ***Interview Summary*** | Application No. 09/776,278 | Applicant(s) SULLIVAN, MICHAEL J. |
|---|---|---|
| | Examiner Raeann Gorden | Art Unit 3711 |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Raeann Gorden_.                          (3)_____.

(2) _Michelle Bugbee_.                          (4)_____.

Date of Interview: _19 March 2003_.

Type:  a)☒ Telephonic   b)☐ Video Conference
       c)☐ Personal [copy given to: 1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☐ No.
    If Yes, brief description: _____.

Claim(s) discussed: _5_.

Identification of prior art discussed: _Sullivan 6,210,293_.

Agreement with respect to the claims  f)☒  was reached.   g)☐  was not reached.   h)☐  N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments:  _Applicant agreed to submit a new amendment canceling claim 5 to prevent 101 DP rejection with '293 patent. The amendment will also include the amendment to the spec which was not entered in the previous afterfinal amendment submitted 1-21-03_.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.

Examiner's signature, if required

U.S. Patent and Trademark Office
PTO-413 (Rev. 11- 02)                          Interview Summary                          Paper No. 18

CW 0309122



## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable. Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case unless both applicant and examiner agree that the examiner will record same. Where the examiner agrees to record the substance of the interview, or when it is adequately recorded on the Form or in an attachment to the Form, the examiner should check the appropriate box at the bottom of the Form which informs the applicant that the submission of a separate record of the substance of the interview as a supplement to the Form is not required.

It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

CW 0309123

MAY 14 '03  11:15AM PATENT DEPT    MAY 1 4 2003    P.1

OIPE

PART B — FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: Mail    Box ISSUE FEE
Commissioner for Patents
Washington, D.C. 20231
Fax    (703)746-4000

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legacy label with any corrections or use Block 1)    Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

7590    03/21/2003

Diane F. Covello, Esq.
Spalding Sports Worldwide, Inc.
425 Meadow Street
PO Box 901
Chicopee, MA 01021-0901

Certificate of Mailing or Transmission
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

Laura J Nolan    (Depositor's name)
Laura J Nolan    (Signature)
5/14/03    (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | F-3724-2-F1-C1-C1 | 1289 |

TITLE OF INVENTION: MULTI-LAYER GOLF BALL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1300 | $300 | $1600 | 06/23/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| GORDON, RAEANN | 3711 | 473-374000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" Indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Spalding Sports Worldwide, Inc.    Chicopee, MA

Please check the appropriate assignee category or categories (will not be printed on the patent)    ☐ individual ☒ corporation or other private group entity ☐ government

4a. The following fee(s) are enclosed:    4b. Payment of Fee(s):

☒ Issue Fee    ☐ A check in the amount of the fee(s) is enclosed.

☒ Publication Fee    ☐ Payment by credit card. Form PTO-2038 is attached.

☐ Advance Order - # of Copies _____    ☒ The Commissioner is hereby authorized to charge the required fee(s), or credit any overpayment, to Deposit Account Number 19-0153 (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

(Authorized Signature)    (Date)
Michelle Bixler  Reg. No. 43270    May 13, 2003

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

05/14/2003 SZEMDIE2 00000144 170150    09776278

01 FC:1501    1300.00 CH
02 FC:1504    300.00 CH

TRANSMIT THIS FORM WITH FEE(S)

-0053    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Received from < 4133222575 > at 5/14/03 12:15:19 PM [Eastern Daylight Time]

CW 0309124



**UNITED STATES PATENT AND TRADEMARK OFFICE**
UNDER SECRETARY OF COMMERCE FOR
 INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT
AND TRADEMARK OFFICE
Alexandria, Virginia  22313

Patent No. _____          Paper No. _____

## NOTICE OF *INTER PARTES* REEXAMINATION

Notice is hereby given that a request for *inter partes* reexamination of U.S. Patent No.

_____ was filed on _____ under 35 U.S.C. 311(a) and

37 CFR 1.913.

The reexamination proceeding has been assigned Control No. 95/_____.

This Notice incorporates by reference into the patent file, all papers entered into the

reexamination file.

**Note: This Notice should be entered into the patent file and given a paper number.**

CW 0309125

03/22/2006 08:17 FAX  612 288 9696       FISH AND RICHARDSON                    ☑ 001/015

*COPY FOR PATENT*
## OFFICIAL COMMUNICATION FACSIMILE

### CENTRAL REEXAMINATION UNIT (FAX NO: 571-273-9900)

Number of pages including this page     15

| | |
|---|---|
| In re Sullivan )<br>Reexamination Proceeding )<br>Control No.: 95/000,120 )<br>Filed: January 17, 2006 )<br>For: U.S. Patent No. 6,210,293 ) | Examiner: Michael W. O'Neill<br>Art Unit: 3993 |
| In re Sullivan )<br>Reexamination Proceeding )<br>Control No.: 95/000,121 )<br>Filed: January 17, 2006 )<br>For: U.S. Patent No. 6,503,156 ) | Examiner: Michael W. O'Neill<br>Art Unit: 3993 |
| In re Sullivan )<br>Reexamination Proceeding )<br>Control No.: 95/000,122 )<br>Filed: January 17, 2006 )<br>For: U.S. Patent No. 6,506,130 ) | Examiner: Michael W. O'Neill<br>Art Unit: 3993 |
| In re Sullivan )<br>Reexamination Proceeding )<br>Control No.: 95/000,123 )<br>Filed: January 17, 2006 )<br>For: U.S. Patent No. 6,595,873 ) | Examiner: Michael W. O'Neill<br>Art Unit: 3993 |

**FAX RECEIVED**

**MAR 2 2 2006**

**REEXAM UNIT**

The following documents are attached to this facsimile communication cover sheet, which was facsimiled to the United States Patent and Trademark Office on March 22, 2006: Revocation and New Power of Attorney documents and a Certification Under 37 C.F.R. § 1.903.

Respectfully submitted,

Date: March 22, 2006

Dorothy P. Whelan (Reg. No. 33,814)
J. Patrick Finn III (Reg. No. 44,109)

Fish & Richardson P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Fax:  (612) 288-9696

NOTE: This facsimile is intended for the addressee only and may contain privileged or confidential information. If you have received this facsimile in error, please immediately call us collect at (612) 335-5070 to arrange for its return. Thank you.

CW 0309126

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent No.    : 6,210,293
Issue Date    : April 3, 2001
Applicant     : Michael J. Sullivan

Reexamination Proceeding
Control No.  : 95/000,120                    Art Unit  : 3993
Filed        : January 17, 2006              Examiner : Michael W. O'Neill

Central Reexamination Unit
Facsimile: 571-273-9900

## REVOCATION AND NEW POWER OF ATTORNEY

Under 37 C.F.R. § 3.73(b), CALLAWAY GOLF COMPANY, INC., a corporation of
Delaware, certifies that it is the assignee of 100% of the right, title and interest in the above-
referenced patent by virtue of:

☒    A chain of title from the inventor of the above-referenced patent to the current
assignee as shown below. The reel and frame numbers of the recorded assignments or other
documents in the chain of title are provided.

1.    Assignment from Michael J. Sullivan to Spalding Sports Worldwide, Inc.,
recorded in the U.S. Patent and Trademark Office at Reel 7750, Frame 0242 on November 9,
1995, for parent patent application Serial No. 08/556,237.

2.    Name change from Spalding Sports Worldwide, Inc. to The Top-Flite Golf
Company, recorded in the U.S. Patent and Trademark Office at Reel 013712, Frame 0219 on
June 2, 2003.

3.    Assignment from The Top-Flite Golf Company to Callaway Golf Company,
recorded in the U.S. Patent and Trademark Office at Reel 014007, Frame 0688 on September 26,
2003.

CERTIFICATE OF TRANSMISSION BY FACSIMILE

I hereby certify that this correspondence is being transmitted by
facsimile to the Patent and Trademark Office on the date indicated
below.

_March 22, 2006_
Date of Transmission

_Judy Wasilkus_
Signature

_JUDY WASILKUS_
Typed or Printed Name of Person Signing Certificate

CW 0309127

Patent No.   :   6,210,293
Issued       :   April 3, 2001
Applicant    :   Michael J. Sullivan

Reexamination Proceeding
Control No. :   95/000,120
Filed        :   January 17, 2006
Page         :   2 of 3

To the best of undersigned's knowledge and belief, title is in the assignee identified above.

The undersigned, whose title is supplied below, is empowered to act on behalf of the assignee.

The undersigned, acting on behalf of the assignee, hereby revokes all powers of attorney previously granted in the above-referenced patent and appoints:

| | |
|---|---|
| Dorothy P. Whelan, Reg. No. 33,814 | Mark S. Ellinger, Ph.D., 33,812 |
| Ronald C. Lundquist, Ph.D., Reg. No. 37,875 | Richard J. Anderson, Reg. 36,732 |
| J. Patrick Finn III, Ph.D., Reg. No. 44,109 | John F. Hayden, Reg. No. 37,640 |
| M. Angela Parsons, Ph.D., Reg. No. 44,282 | John C. Phillips, Reg. No. 35,322 |
| Teresa A. Lavoie, Ph.D., Reg. No. 42,782 | Michael Catania, Reg. No. 36,474 |

with full power of substitution and revocation, to prosecute the above-referenced reexamination proceeding and to transact all business in the United States Patent and Trademark Office in connection with the above-referenced patent.

All correspondence regarding the application should be sent to:

Dorothy P. Whelan
Fish & Richardson P.C.
P.O. Box 1022
Minneapolis, MN 55440-1022

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

CW 0309128

Patent No.   :   6,210,293
Issued       :   April 3, 2001
Applicant    :   Michael J. Sullivan

Reexamination Proceeding
Control No.  :   95/000,120
Filed        :   January 17, 2006
Page         :   3 of 3

Code and that such willful false statements may jeopardize the validity of the above-referenced patent.

                                         Respectfully submitted,

                                         CALLAWAY GOLF COMPANY

Date: _March 21, 2006_                   _Michael J. Rider_
                                         Michael J. Rider, Esq.

                                         Title: Senior Vice President,
                                                General Counsel



6210293.doc

CW 0309129

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent No.    : 6,503,156
Issue Date    : January 7, 2003
Applicant     : Michael J. Sullivan

Reexamination Proceeding
Control No.   : 95/000,121                    Art Unit   : 3993
Filed         : January 17, 2006             Examiner : Michael W. O'Neill

Central Reexamination Unit
Facsimile: 571-273-9900

## REVOCATION AND NEW POWER OF ATTORNEY

Under 37 C.F.R. § 3.73(b), CALLAWAY GOLF COMPANY, INC., a corporation of Delaware, certifies that it is the assignee of 100% of the right, title and interest in the above-referenced patent by virtue of:

☒    A chain of title from the inventor of the above-referenced patent to the current assignee as shown below. The reel and frame numbers of the recorded assignments or other documents in the chain of title are provided.

1.    Assignment from Michael J. Sullivan to Spalding Sports Worldwide, Inc., recorded in the U.S. Patent and Trademark Office at Reel 7750, Frame 0242 on November 9, 1995, for parent patent application Serial No. 08/556,237.

2.    Name change from Spalding Sports Worldwide, Inc. to The Top-Flite Golf Company, recorded in the U.S. Patent and Trademark Office at Reel 013712, Frame 0219 on June 2, 2003.

3.    Assignment from The Top-Flite Golf Company to Callaway Golf Company, recorded in the U.S. Patent and Trademark Office at Reel 014007, Frame 0688 on September 26, 2003.

CERTIFICATE OF TRANSMISSION BY FACSIMILE

I hereby certify that this correspondence is being transmitted by facsimile to the Patent and Trademark Office on the date indicated below.

*March 22, 2006*
Date of Transmission

*Judy Wasilkus*
Signature

JUDY WASILKUS
Typed or Printed Name of Person Signing Certificate

CW 0309130

| Patent No. | : | 6,503,156 |
| Issued | : | January 7, 2003 |
| Applicant | : | Michael J. Sullivan |

| Reexamination Proceeding | | |
| Control No. | : | 95/000,121 |
| Filed | : | January 17, 2006 |
| Page | : | 2 of 3 |

To the best of undersigned's knowledge and belief, title is in the assignee identified above.

The undersigned, whose title is supplied below, is empowered to act on behalf of the assignee.

The undersigned, acting on behalf of the assignee, hereby revokes all powers of attorney previously granted in the above-referenced patent and appoints:

| Dorothy P. Whelan, Reg. No. 33,814 | Mark S. Ellinger, Ph.D., 33,812 |
| Ronald C. Lundquist, Ph.D., Reg. No. 37,875 | Richard J. Anderson, Reg. 36,732 |
| J. Patrick Finn III, Ph.D., Reg. No. 44,109 | John F. Hayden, Reg. No. 37,640 |
| M. Angela Parsons, Ph.D., Reg. No. 44,282 | John C. Phillips, Reg. No. 35,322 |
| Teresa A. Lavoie, Ph.D., Reg. No. 42,782 | Michael Catania, Reg. No. 36,474 |

with full power of substitution and revocation, to prosecute the above-referenced reexamination proceeding and to transact all business in the United States Patent and Trademark Office in connection with the above-referenced patent.

All correspondence regarding the application should be sent to:

Dorothy P. Whelan
Fish & Richardson P.C.
P.O. Box 1022
Minneapolis, MN 55440-1022

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

CW 0309131

Patent No.    :   6,503,156
Issued        :   January 7, 2003
Applicant     :   Michael J. Sullivan

Reexamination Proceeding
Control No. :   95/000,121
Filed         :   January 17, 2006
Page          :   3 of 3

Code and that such willful false statements may jeopardize the validity of the above-referenced

patent.

Respectfully submitted,

CALLAWAY GOLF COMPANY

Date: _March 21, 2006_

Michael J. Rider, Esq.

Title: Senior.Vice President,
       General Counsel



6503156.doc

CW 0309132

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent No.    : 6,506,130
Issue Date    : January 14, 2003
Applicant     : Michael J. Sullivan

Reexamination Proceeding
Control No. : 95/000,122                    Art Unit   :  3993
Filed          : January 17, 2006              Examiner :  Michael W. O'Neill

Central Reexamination Unit
Facsimile: 571-273-9900

<u>REVOCATION AND NEW POWER OF ATTORNEY</u>

Under 37 C.F.R. § 3.73(b), CALLAWAY GOLF COMPANY, INC., a corporation of

Delaware, certifies that it is the assignee of 100% of the right, title and interest in the above-

referenced patent by virtue of:

☒        A chain of title from the inventor of the above-referenced patent to the current

assignee as shown below. The reel and frame numbers of the recorded assignments or other

documents in the chain of title are provided.

1.        Assignment from Michael J. Sullivan to Spalding Sports Worldwide, Inc.,

recorded in the U.S. Patent and Trademark Office at Reel 7750, Frame 0242 on November 9,

1995, for parent patent application Serial No. 08/556,237.

2.        Name change from Spalding Sports Worldwide, Inc. to The Top-Flite Golf

Company, recorded in the U.S. Patent and Trademark Office at Reel 013712, Frame 0219 on

June 2, 2003.

3.        Assignment from The Top-Flite Golf Company to Callaway Golf Company,

recorded in the U.S. Patent and Trademark Office at Reel 014007, Frame 0688 on September 26,

2003.

CERTIFICATE OF TRANSMISSION BY FACSIMILE

I hereby certify that this correspondence is being transmitted by
facsimile to the Patent and Trademark Office on the date indicated
below.

_March 22, 2006_
Date of Transmission

_Judy Wasilkus_
Signature

_JUDY WASILKUS_
Typed or Printed Name of Person Signing Certificate

CW 0309133

Patent No.    :    6,506,130
Issued        :    January 14, 2003
Applicant     :    Michael J. Sullivan

Reexamination Proceeding
Control No.   :    95/000,122
Filed         :    January 17, 2006
Page          :    2 of 3

To the best of undersigned's knowledge and belief, title is in the assignee identified above.

The undersigned, whose title is supplied below, is empowered to act on behalf of the assignee.

The undersigned, acting on behalf of the assignee, hereby revokes all powers of attorney previously granted in the above-referenced patent and appoints:

| | |
|---|---|
| Dorothy P. Whelan, Reg. No. 33,814 | Mark S. Ellinger, Ph.D., 33,812 |
| Ronald C. Lundquist, Ph.D., Reg. No. 37,875 | Richard J. Anderson, Reg. 36,732 |
| J. Patrick Finn III, Ph.D., Reg. No. 44,109 | John F. Hayden, Reg. No. 37,640 |
| M. Angela Parsons, Ph.D., Reg. No. 44,282 | John C. Phillips, Reg. No. 35,322 |
| Teresa A. Lavoie, Ph.D., Reg. No. 42,782 | Michael Catania, Reg. No. 36,474 |

with full power of substitution and revocation, to prosecute the above-referenced reexamination proceeding and to transact all business in the United States Patent and Trademark Office in connection with the above-referenced patent.

All correspondence regarding the application should be sent to:

Dorothy P. Whelan
Fish & Richardson P.C.
P.O. Box 1022
Minneapolis, MN 55440-1022

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

CW 0309134

| Patent No. | : | 6,506,130 |
|---|---|---|
| Issued | : | January 14, 2003 |
| Applicant | : | Michael J. Sullivan |

| Reexamination Proceeding | | |
|---|---|---|
| Control No. | : | 95/000,122 |
| Filed | : | January 17, 2006 |
| Page | : | 3 of 3 |

Code and that such willful false statements may jeopardize the validity of the above-referenced patent.

Respectfully submitted,

CALLAWAY GOLF COMPANY

Date: _March 21, 2006_

Michael J. Rider, Esq.

Title: Senior Vice President,
General Counsel

6506130.doc

CW 0309135

03/22/2006 08:22 FAX  612 288 9696        FISH AND RICHARDSON                    ☑011/015

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent No.   : 6,595,873
Issue Date   : July 22, 2003
Applicant    : Michael J. Sullivan

Reexamination Proceeding
Control No.  : 95/000,123                    Art Unit   : 3993
Filed        : January 17, 2006              Examiner : Michael W. O'Neill

Central Reexamination Unit
Facsimile: 571-273-9900

## REVOCATION AND NEW POWER OF ATTORNEY

Under 37 C.F.R. § 3.73(b), CALLAWAY GOLF COMPANY, INC., a corporation of
Delaware, certifies that it is the assignee of 100% of the right, title and interest in the above-
referenced patent by virtue of:

☒    A chain of title from the inventor of the above-referenced patent to the current
assignee as shown below. The reel and frame numbers of the recorded assignments or other
documents in the chain of title are provided.

1.    Assignment from Michael J. Sullivan to Spalding Sports Worldwide, Inc.,
recorded in the U.S. Patent and Trademark Office at Reel 7750, Frame 0242 on November 9,
1995, for parent patent application Serial No. 08/556,237.

2.    Name change from Spalding Sports Worldwide, Inc. to The Top-Flite Golf
Company, recorded in the U.S. Patent and Trademark Office at Reel 013712, Frame 0219 on
June 2, 2003.

3.    Assignment from The Top-Flite Golf Company to Callaway Golf Company,
recorded in the U.S. Patent and Trademark Office at Reel 014007, Frame 0688 on September 26,
2003.

CERTIFICATE OF TRANSMISSION BY FACSIMILE

I hereby certify that this correspondence is being transmitted by
facsimile to the Patent and Trademark Office on the date indicated
below.

*March 22, 2006*
Date of Transmission

*Judy Wasilkus*
Signature

JUDY WASILKUS
Typed or Printed Name of Person Signing Certificate

PAGE 11/15 * RCVD AT 3/22/2006 9:19:43 AM [Eastern Standard Time] * SVR:USPTO-EFXRF-2/10 * DNIS:2739900 * CSID:612 288 9696 * DURATION (mm-ss):07-38

CW 0309136

03/22/2006 08:22 FAX   612 288 9696        FISH AND RICHARDSON                    ☑012/015

Patent No.   :   6,595,873
Issued       :   July 22, 2003
Applicant    :   Michael J. Sullivan

Reexamination Proceeding
Control No.  :   95/000,123
Filed        :   January 17, 2006
Page         :   2 of 3

To the best of undersigned's knowledge and belief, title is in the assignee identified above.

The undersigned, whose title is supplied below, is empowered to act on behalf of the assignee.

The undersigned, acting on behalf of the assignee, hereby revokes all powers of attorney previously granted in the above-referenced patent and appoints:

| | |
|---|---|
| Dorothy P. Whelan, Reg. No. 33,814 | Mark S. Ellinger, Ph.D., 33,812 |
| Ronald C. Lundquist, Ph.D., Reg. No. 37,875 | Richard J. Anderson, Reg. No. 36,732 |
| J. Patrick Finn III, Ph.D., Reg. No. 44,109 | John F. Hayden, Reg. No. 37,640 |
| M. Angela Parsons, Ph.D., Reg. No. 44,282 | John C. Phillips, Reg. No. 35,322 |
| Teresa A. Lavoie, Ph.D., Reg. No. 42,782 | Michael Catania, Reg. No. 36,474 |

with full power of substitution and revocation, to prosecute the above-referenced reexamination proceeding and to transact all business in the United States Patent and Trademark Office in connection with the above-referenced patent.

All correspondence regarding the application should be sent to:

Dorothy P. Whelan
Fish & Richardson P.C.
P.O. Box 1022
Minneapolis, MN 55440-1022

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States

CW 0309137

Patent No.      :   6,595,873
Issued          :   July 22, 2003
Applicant       :   Michael J. Sullivan

Reexamination Proceeding
Control No.  :   95/000,123
Filed        :   January 17, 2006
Page         :   3 of 3

Code and that such willful false statements may jeopardize the validity of the above-referenced

patent.

Respectfully submitted,

CALLAWAY GOLF COMPANY

Date: _March 21, 2006_

Michael J. Rider, Esq.

Title: Senior Vice President,
       General Counsel

6595873.doc

CW 0309138

03/22/2006 08:24 FAX  612 288 9696        FISH AND RICHARDSON                    ☑014/015

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,120 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,210,293 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,121 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,503,156 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,122 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,506,130 | ) |
| | |
| In re Sullivan | ) |
| Reexamination Proceeding | ) |
| Control No.: 95/000,123 | ) Examiner: Michael W. O'Neill |
| Filed: January 17, 2006 | ) Art Unit: 3993 |
| For: U.S. Patent No. 6,595,873 | ) |

Central Reexamination Unit
571-273-9900

## CERTIFICATION UNDER 37 C.F.R. § 1.903

In accordance with the requirements of 37 C.F.R. § 1.903, Patent Owner,

Callaway Golf Company ("Callaway Golf"), hereby certifies that service of the

accompanying Revocation and New Power of Attorney documents for the above-

referenced *inter partes* reexamination proceedings was made by U.S. first class mail on

March 22, 2006, to the following attorneys for Acushnet Company:

> Alan M. Grimaldi (Reg. No. 26,599)
> Joseph P. Lavelle (Reg. No. 31,036)
> Andrew R. Sommer (Reg. No. 53,932)
> Howrey LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004

1

CW 0309139

03/22/2006 08:24 FAX  612 288 9696        FISH AND RICHARDSON                    ☑015/015

The accompanying Revocation and New Power of Attorney documents for the above-referenced *inter partes* reexamination proceedings also were sent to the attorneys for Acushnet Company via facsimile (202-383-6610) on March 22, 2006.

The Director is authorized to charge any fees or credit any overpayments to Deposit Account No. 06-1050.

Respectfully submitted,

Date: March 22, 2006

Dorothy P. Whelan (Reg. No. 33,814)
J. Patrick Finn III (Reg. No. 44,109)

Fish & Richardson P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

2

PAGE 15/15 * RCVD AT 3/22/2006 9:19:43 AM [Eastern Standard Time]* SVR:USPTO-EFXRF-2/10 * DNIS:2739900 * CSID:612 288 9696 * DURATION (mm-ss):07-38

CW 0309140

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 |

CONFIRMATION NO. 1289

24492
THE TOP-FLITE GOLF COMPANY, A WHOLLY OWNED
SUBSIDIARY OF CALLAWAY GOLF COMPANY
2180 RUTHERFORD ROAD
LEGAL DEPT
CARLSBAD, CA 92008-7328

*OC000000018350460*

Date Mailed: 03/23/2006

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/22/2006.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

MARSHA A TWITTY
3999 (571) 272-7750

OFFICE COPY

CW 0309141



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371 (c) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 09/776,278 | 02/02/2001 | Michael J. Sullivan | P-3724-2-F1-C1-C1 |

**CONFIRMATION NO. 1289**

Dorothy P. Whelan
Fish & Richardson P. C.
P. O. Box 1022
Minneapolis, MN 55402-1022

*OC000000018350527*

Date Mailed: 03/23/2006

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/22/2006.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

MARSHA A TWITTY
3999 (571) 272-7750

OFFICE COPY

CW 0309142



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 1289**

*CORRECTED BIB DATA SHEET*

| SERIAL NUMBER 09/776,278 | FILING OR 371(c) DATE 02/02/2001 RULE | CLASS 473 | GROUP ART UNIT 3711 | ATTORNEY DOCKET NO. P-3724-2-F1-C1-C1 |
|---|---|---|---|---|

**APPLICANTS**
    Michael J. Sullivan, Chicopee, MA;

** CONTINUING DATA ***************************
    This application is a CON of 09/470,196 12/21/1999 PAT 6,210,293
    which is a CON of 08/870,585 06/06/1997 ABN
    which is a CON of 08/556,237 11/09/1995 ABN
    which is a CIP of 08/070,510 06/01/1993 ABN

** FOREIGN APPLICATIONS *********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 03/07/2001

| Foreign Priority claimed ☐ yes ☐ no | STATE OR COUNTRY MA | SHEETS DRAWING 1 | TOTAL CLAIMS 8 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged         Examiner's Signature        Initials | | | | |

**ADDRESS**
Dorothy P. Whelan
Fish & Richardson P. C.
P. O. Box 1022
Minneapolis ,MN 55402-1022

**TITLE**
MULTI-LAYER GOLF BALL

| FILING FEE RECEIVED 1010 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

CW 0309143

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0309144

4/15/03

~~Kristin Clarke-oser~~ 1/22/03 turned in unused.

HARRY KHAN    # 10751



CALLAWAY
GOLF BALL COMPANY

Maintained by the
Golf Ball Co.

## The Boorum & Pease® Quality Guarantee

The materials and craftsmanship that went into this product are of the finest quality. The pages
are thread sewn, meaning they're bound to stay bound. The inks are moisture resistant and will
not smear. And the uniform quality of the paper assures consistent rulings, excellent writing
surface and erasability. If, at any time during normal use, this product does not perform to your
expectations, we will replace it free of charge. Simply write to us:

Boorum & Pease Company
71 Clinton Road, Garden City, NY 11530
Attn: Marketing Services

Any correspondence should include the code number printed at the bottom of this page as well as
the book title stamped at the bottom of the spine.

## One Good Book Deserves Many Others.

Look for the complete line of Boorum & Pease® Columnar, Journal, and Record books. Custom-
designed books also available by special order. For more information about our Customized
Book Program, contact your office products dealer. See back cover for other books in this series.
Made in U.S.A.
N010699

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0309145

Contents                                                                    Page

_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0309146