IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

          Plaintiff,

    v.

ACUSHNET COMPANY,

          Defendant.

C. A. No. 06-91 (SLR)

**PUBLIC VERSION**

**CALLAWAY GOLF COMPANY'S RESPONSE TO ACUSHNET COMPANY'S
MOTION FOR SUMMARY JUDGMENT OF NO BREACH OF CONTRACT**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED:  August 20, 2007
Public Version:  August 24, 2007

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE ARGUMENT ...................................................................1

II.   STATEMENT OF FACTS ..............................................................................2

      A.    In 1996, to resolve five separate actions between the Parties, a Settlement Agreement was reached that both settled those disputes and ██████████████████ ██████ ...................................................................3

           1.    The 1996 Agreement applies to Callaway Golf ............................3

           2.    The 1996 Agreement dictates that the ██████████ ████████████████████████████████ ████████████ ...............................................3

      B.    Until Acushnet filed for *inter partes* reexamination, the Parties acted in accordance with the 1996 Settlement Agreement ..................................................................4

III.  ARGUMENT ..................................................................................6

      A.    Acushnet has Breached the 1996 Settlement Agreement .........................6

           1.    The 1996 Settlement Agreement applies to this dispute ...........................................................6

                 a.    Having purchased the golf ball assets of Spalding, Callaway Golf is a "successor" under the literal terms of the agreement ...........................6

                 b.    Acushnet has repeatedly stated to this Court and the PTO in signed, sworn declarations and filings that the 1996 Settlement Agreement applies to, and is in force between, Acushnet and Callaway Golf ...........................7

                 c.    Up until it filed the requests for reexamination, Acushnet has always conducted itself in accordance with the 1996 Settlement Agreement ...........................9

           2.    The 1996 Settlement Agreement Does Not Allow Any Party To Attempt to Resolve Disputes By *Inter Partes* Reexaminations ..................................11

i

### TABLE OF CONTENTS (cont'd)

**Page**

        a.      The 1996 Settlement Agreement precludes filing a request for reexamination.................................................................11

        b.      Whether *inter partes* reexaminations are a "legal proceeding" or an "administrative proceeding" is either irrelevant or helpful to Callaway Golf .............................12

B.      The PTO Refused To Interpret The Meaning And Application Of The 1996 Settlement Agreement – So There Is Nothing For This Court To Give "Deference" To Even if it Were Proper To Do So. .......................................13

    1.      The Court does not owe deference to the PTO ...........................13

    2.      The Cases cited by Acushnet arguing the contrary are cited out of context and are inapplicable. ..................................................................14

C.      Acushnet's Public Policy Argument Continues To Ignore Contrary Controlling Federal Circuit Law ..................................16

IV.    CONCLUSION..................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bremen v Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ........................................................................17

*Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ..............................................................13, 14

*Darby v. Hall*,
    50 A. 64 (Del. 1900) ...................................................................15

*Flex-Foot, Inc. v. CRP, Inc.*,
    238 F.3d 1362 (Fed. Cir. 2001) ..................................................16

*Hemstreet v. Spiegel, Inc.*,
    851 F.2d 348 (Fed. Cir. 1988) ....................................................16

*Joy Manufacturing Co. v. National Mine Service Co.*,
    810 F.2d 1127 (Fed. Cir. 1987) ..................................................12

*Mariniello v. Shell Oil Co.*,
    511 F.2d 853 (3d Cir. 1975) .......................................................15

*Newton v. Rumery*,
    480 U.S. 386 (1987) ..............................................................17, 18

*PIC, Inc. v The Preston Corp.*,
    485 F. Supp. 1302 (D. Del. 1980) ..........................................14, 16

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.*,
    748 F. Supp. 247 (D. Del. 1990) ...............................................6, 9

*Suter v. Munich Reinsurance*,
    223 F.3d 150 (3rd Cir. 2000) ......................................................17

*United Paperworkers International Union v. Misco, Inc.*,
    484 U.S. 29 (1987) ......................................................................17

*United States v. Utah Construction & Mining Co.*,
    384 U.S. 394 (1966) ....................................................................14

iii

In 1996, Callaway Golf's predecessor-in-interest in the patents-in-suit, Spalding, entered into a settlement agreement with Acushnet to resolve various patent related claims. The Agreement included ███████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████

Acushnet ignores ███████████████ language which is dispositive and compels summary judgment in favor of Callaway Golf unless the Court finds that Callaway Golf cannot enforce the agreement. On that issue, Acushnet also either ignores, or has forgotten, what it has repeatedly told *this* Court in sworn statements — that the Agreement applies and was in fact followed by the parties to this case.

Finally, Acushnet argues that the Agreement is void as against public policy. The very fact Acushnet makes this argument demonstrates how weak its position is on the merits. In any event, the public policy argument ignores binding Federal Circuit law that Callaway Golf has repeatedly pointed out to Acushnet but for which Acushnet has no answer. No public policy bars the enforcement of a dispute resolution clause in a settlement agreement.

Because the Agreement does apply, is not void for public policy and Acushnet has breached it, Acushnet's motion for summary judgment should be denied and Callaway Golf's corresponding motion for summary judgment should be granted.

## I.      SUMMARY OF THE ARGUMENT

1.      In 1996, Callaway Golf's predecessor Spalding entered into a Settlement Agreement with Acushnet to resolve multiple litigations regarding, among other issues, Spalding's claim that Acushnet was infringing certain Spalding golf ball patents. In addition to resolving the pending cases, which were dismissed with prejudice on the basis

of the settlement, the Agreement also sets forth ████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ Acushnet breached that

Agreement when it sought inter partes reexamination instead.

2.    Acushnet's argument that the 1996 Settlement Agreement is inapplicable to the present dispute is contradicted by the plain language of the Agreement, by Acushnet's sworn statements to this Court and the PTO, and by its own conduct over the past several years.

3.    Acushnet's argument that the PTO has already ruled against Callaway Golf on the applicability of the Agreement and that the Court owes deference to that decision is refuted by what the PTO itself said — that it was up to a "court of competent jurisdiction" to decide whether the settlement applied — and is contrary to the cases relied upon by Acushnet.  This Court need not and should not defer to a nonexistent decision by the PTO.

4.    Acushnet's argument that the 1996 Settlement Agreement is void against public policy fails to address controlling Federal Circuit law.  The Federal Circuit has emphasized that enforcing these types of settlement agreements promotes an important public policy: "the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage the parties to enter into them."  *Lear* has no applicability here.

## II.    STATEMENT OF FACTS

Callaway Golf and Acushnet agree on one salient point – there are no material facts in dispute.  [D.I. 214, p. 2]  However, because Acushnet failed to present all of the facts necessary for the Court to make a decision, including a discussion of the applicable language from the Agreement, Callaway Golf provides the following statement.[1]

---

[1]    To ease the burden on the Court, Callaway Golf presents only the essentials here. A more complete version is included as part of Callaway Golf's Motion for Summary Judgment of Breach of Contract, D.I. 198.

**A.    In 1996, to resolve five separate actions between the Parties, a Settlement Agreement was reached that both settled those disputes and g█████████████████████████████████████**

The 1996 Agreement was entered to resolve a multi-action battle between Callaway Golf's predecessor, Spalding , and Acushnet regarding, among other issues, Acushnet's infringement of certain Spalding golf ball patents [D.I. 199, Ex. 1]  The Agreement ████ ██████████████████████████████████████████████████████████████████ ████████████████████████

**1.    The 1996 Agreement applies to Callaway Golf**

Section 15 of the Agreement, titled ████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████ In its own brief, Acushnet admits that Spalding's golf ball business became The Top-Flite Golf Company and that Callaway Golf purchased substantially all of the golf ball assets of Top-Flite Golf in 2003.  [*See, e.g.,* D.I. 214, at 4; D.I. 36 at 3].  Acushnet further admits that the parties are bound by the terms of the Agreement.  [DI. 24 – Declaration of Joseph Nauman ("Nauman Decl."), at pp. 1-2, ¶¶ 2-5]  Accordingly, Callaway Golf is without question a successor-in-interest to Spalding under the agreement and as a successor-in-interest is entitled to the rights (and assumed the responsibilities) under the  Agreement.

**2.    The 1996 Agreement dictates that ██████████████████ ██████████████████████████**

Section 19 of the Agreement sets out ██████████████████████ ████████████████████████████████ Specifically, section 19.1 provides:

██████████████████████████████████████████████████ ██████████████████████████████████████████████████



[D.I. 199, Ex. 1, at p. 15 (emphasis added)]  Sections 19.2-19.6 of the Agreement detail █

█████████████████████████████████████████

█████████████████████████████  the terms of Section 19.7 set forth ██

█████████████████████████████████

█████████████████████████████████████████

[*Id.* at p. 18 (emphasis added)].

      **B.**      **Until Acushnet filed for *inter partes* reexamination, the Parties acted in accordance with the 1996 Settlement Agreement**

On April 3, 2001, the first of the asserted patents, the '293 patent, issued to Spalding.  On December 6, 2001, Spalding sent Acushnet a letter regarding potential infringement.  [D.I. 199, Ex. 2; Ex. A to D.I. 19 – Declaration of Peter A. Arturi ("Arturi Decl.")].  Though Acushnet now states to the Court that "[t]he validity of the patents-in-suit is the central issue in this case," at that time Acushnet initially denied infringement and continued to do so until it produced documents in this case demonstrating that it can no longer deny infringement.  [D.I. 10 at 4; and D.I. 199, Ex. 3, Transcript of February 8, 2007 Hearing at 68:8-10 ("… it's no secret that the primary argument that Acushnet is going to advance is one of invalidity.")].  The parties continued negotiating pursuant to the terms of the Agreement during 2002, but were unable to reach agreement.  [D.I. 19, Arturi Decl. at ¶ 3].

In May 2003, Spalding divested its golf ball business and changed the name of that business  to "The Top-Flite Golf Company" (Top-Flite).  In September 2003, Callaway Golf purchased the assets of Top-Flite, including all of its golf ball manufacturing assets and the patents-in-suit, and created a wholly owned subsidiary of Callaway Golf of the

same name. [D.I. 18].  Callaway Golf now owns the patents-in-suit.  [D.I. 199, Exs. 5 - 8 –

Requests for *Inter Partes* Reexamination; D.I. 18, Declaration of Steven C. McCracken

("McCracken Decl.") at ¶ 2].  Callaway Golf and its new wholly owned subsidiary, also

called "The Top-Flite Golf Company" (hereafter collectively "Callaway Golf") then

renewed the earlier discussions with Acushnet regarding infringement by the Pro V1 line of

golf balls.  [*Id.* at ¶¶ 3-4].  As Acushnet acknowledges, after Callaway Golf reengaged

Acushnet on this issue, a series of additional negotiations and mediations ensued ██████

████████████████████████████████████████████████████████████

████████████████████ a first mediation was held on August 3, 2005, in front of David

Plant, an independent mediator hired by the parties.  [D.I. 24 – Nauman Decl., at ¶ 4]  (Mr.

Nauman's precise statements are detailed below.) After that mediation failed, █████████

████████████████████████, the parties sent a joint letter to Magistrate Judge Thynge

requesting the Court's assistance with mediation, ██████████████████████

████████████████████████████ [D.I. 199, Ex. 4, *see also* Ex. 1 at §

19 at pp. 15-18; D.I. 17, Ex. B (Acushnet's comments on the joint letter to Court); D.I. 18,

McCracken Decl. at ¶ 4)].

        Magistrate Judge Thynge agreed to help, and so a second mediation was conducted

before Magistrate Judge Thynge on October 28, 2005.  [D.I. 24 – Nauman Decl. at ¶ 4

(noting that he attended the mediation ██████████████████)]  Unfortunately,  it

became clear that the parties were at an impasse.  ████████████████████

████████████████████████████████ on January 17, 2006,

Steve McCracken, Callaway Golf's Senior Executive Vice President and Chief

Administrative Officer, informed Joseph Nauman, Acushnet's General Counsel, that

Callaway Golf planned to file its complaint the next day.  [*Id.* at ¶ 8].  Having obviously

worked for months in advance on preparing them, Acushnet immediately and preemptively

filed four *inter partes* reexamination requests totaling over 1,100 pages with the PTO.  [D.I.

199, Exs. 5 - 8 – Requests for *Inter Partes* Reexamination]  Callaway Golf formally filed

this action – ██████████████████████████████████████████████
█████████████████████ – shortly thereafter.

## III.    ARGUMENT

### A.    Acushnet has Breached the 1996 Settlement Agreement

Completely ignoring the language of the Agreement and years of conduct between the parties, Acushnet argues that it has not breached the 1996 Settlement Agreement because: (1) the Agreement does not "apply to this dispute" [D.I. 214 at 8]; and (2) the "Agreement does not preclude 'administrative proceedings' such as the PTO reexamination" [*Id*. at 9]. Both arguments are wrong.

#### 1.    The 1996 Settlement Agreement applies to this dispute

##### a.    Having purchased the golf ball assets of Spalding, Callaway Golf is a "successor" under the literal terms of the agreement

Section 15 of the Settlement Agreement, titled ██████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████ Acushnet has admitted that Spalding's golf ball business became Top-Flite, and that Callaway Golf purchased substantially all of the golf ball assets of Top-Flite in 2003. [*See, e.g.,* D.I. 214, at 4; D.I. 36 at 3]. Callaway Golf is without question a successor-in-interest to Spalding under the agreement and, as a successor-in-interest, is entitled to the rights (and assumed the responsibilities) under the 1996 Settlement Agreement. *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252-53 (D. Del. 1990) (stating that "[a]s a successor in interest SGK retained these rights when they assumed Ziegler's position under the contracts.").

The fact that Callaway Golf is not listed on the face of the document is entirely irrelevant. The Agreement plainly binds "successors, transferees, and assigns" of the named parties. Acushnet's argument that Callaway Golf is a "third party" to the agreement

is nonsensical. [D.I. 214, p. 8]  In 1996, when the Agreement was signed by Spalding and Acushnet, everyone else was a third party.  And yet the Agreement provided ███████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████

For years, the parties have acted in accordance with the Agreement, including by engaging in high level meetings among executives and not one, but two mediations.  The parties obviously believed the Agreement was applicable and binding.  This is further evidenced by, among many things, the very letter the parties submitted to this Court seeking assistance █████████████████. [D.I. 199, Exs. 1 and 4]  Acushnet's statement that "Acushnet and Callaway first met in a process that ████████████ ████████████████████████████████████████████████████████████ ████████ is specious.  Acushnet's complete reversal now is nothing more than a litigation inspired attempt to avoid liability for conduct it knows was in breach of the Agreement, and is in direct contravention of the numerous times that it has stated to ***this*** Court and the PTO that the Agreement was in effect and binding between the parties.

> **b.  Acushnet has repeatedly stated to this Court and the PTO in signed, sworn declarations and filings that the 1996 Settlement Agreement applies to, and is in force between, Acushnet and Callaway Golf**

Either having forgotten the previous statements that it has made to this Court or wishing that they simply did not exist, Acushnet ignores them and now argues that the 1996 Settlement Agreement does not apply.  But here is what Acushnet has previously represented to the Court and the PTO:

- On August 26, 2005, the parties sent a ***joint*** letter to Magistrate Judge

  Thynge requesting assistance pursuant to the agreement.

  > *I write on behalf of The Top-Flite Golf Company and its parent Callaway Golf Company (collectively "Callaway Golf"), and the Acushnet Company* to seek your assistance in resolving another golf ball dispute between the companies.

There was a prior case in this court between Top-Flite's predecessor. Spalding & Evenflo Companies ("Spalding"), and the Acushnet Company. That prior case was a patent, false advertising and contract dispute about certain golf balls. It was resolved by settlement in 1996. A copy of the confidential settlement agreement is attached to this letter.

***As the Court will see from both Paragraph 19 of the settlement agreement*** ████████████ and the stipulated dismissals filed in the prior case (attached as exhibits B and C to the settlement agreement), this Court retained jurisdiction over the parties for the purposes of resolving "any and all disputes arising out of the Settlement Agreement." Paragraph 19.1 of the agreement provides

[D.I. 199, Ex. 4 (emphasis added); D.I. 17 Ex. B (Acushnet's comments on the joint letter to Court); D.I. 18, McCracken Decl. at ¶ 4)].

- On May 30, 2006, Acushnet's General Counsel, Joseph Nauman, submitted a signed, sworn declaration to this Court averring under the penalty of perjury that:

    I represent and am Executive Vice President, Corporate and Legal of Acushnet Company ("Acushnet"), located at 333 Bridge Street, Fairhaven, Massachusetts 02719.

    I negotiated and witnessed the signing of the ***1996 Settlement Agreement*** between Acushnet, Spalding & Evenflo Companies, Inc. and Lisco, Inc. that Callaway has raised both before this Court and the United States Patent and Trademark Office.

        . . .



    ***Pursuant to Paragraph 19.5 of the Agreement,*** ██████████████████████████

    ***Pursuant to Paragraph 19.6 of the Agreement,*** ██████████████████████████

[D.I. 24, ¶¶ 1, 2, 4, and 5 (emphasis added)].

- On April 27, 2006, Mr. Nauman submitted another declaration to the PTO averring to the same statements set forth above. [D.I. 39, Ex. B, ¶¶ 2-4].

- Acushnet's Motion to Stay acknowledged that the parties engaged "in years of mediation and dispute resolution" ████████████. [D.I. 10 at 4]. For example, Acushnet said that ████████████, the parties had a mediation before David W. Plant in Boston on August 3, 2005." [*Id.* at 9]. A few pages later, Acushnet observed that:

      The *Agreement* includes two parts that may be of some relevance to this litigation: ███████████████



  [*Id.*, at 9-10; *see also*, Acushnet Company's Reply Memorandum to Callaway's Opposition to Acushnet's Motion to Stay Litigation, D.I. 22].

- Acushnet also acknowledge that the Agreement was in force and binding between the parties in its Opposition to Callaway Golf's Petition to Reconsider before the PTO [D.I. 39, Ex. C, at 2].

    Up until now, Acushnet has accurately and repeatedly represented to the Court that the 1996 Settlement Agreement is in effect and binding between the parties. All of these statements are flatly inconsistent with Acushnet's present argument.

<b>c.    Up until it filed the requests for reexamination, Acushnet has always conducted itself in accordance with the 1996 Settlement Agreement</b>

    As Acushnet has acknowledged, the parties have spent extensive time and money repeatedly mediating this dispute in accordance with the dispute resolution procedures detailed in the 1996 Settlement Agreement. [See D.I. 199, Ex. 1 at §§ 19.1 – 19.6 , *supra*; D.I. 10 at 4, stating that the parties have engaged "[i]n years of mediation and dispute

resolution" pursuant to the agreement.]  After negotiations among the high-level executives

(Mr. McCracken and Mr. Nauman) failed, a first mediation was held in front of David

Plant, an independent mediator agreed to by the parties.  [D.I. 199,. Ex. 9 - April 15, 2005

letter from David Plant to Messrs. Scherkenbach and Grimaldi].  The all-day mediation

session with Mr. Plant came only after months of preparation and the exchange of lengthy

briefs.  When that mediation failed to resolve the issues, the parties sought out and

scheduled a second mediation in front of Magistrate Judge Thynge on October 28, 2005.

Again, preparations were extensive, briefs were exchanged, and another day was spent

trying to resolve the issues in front of Magistrate Judge Thynge.  As Joseph Nauman,

Acushnet's Legal and Corporate Executive Vice President, noted in his declaration filed

under the penalty of perjury with *this* Court, both mediations were held in accordance with

the Settlement Agreement.  [D.I. 24 – Nauman Decl., ¶¶ 4 and 5].

    In addition, in preparation for both mediations, the parties repeatedly invoked

Paragraph 19.2 to 

[D.I. 199, Exs. 10 - 11].  None of this course

of conduct – the multiple mediations, the requests back and forth for information, the

consistent adherence[2] to the dispute resolution protocols, as well as the citation and reliance

upon the Agreement by Acushnet's Legal and Corporate Executive Vice President in his

---

[2]  There is one step the parties omitted: a meeting between more senior executives as
provided in Section 19.3.  Given how much time and effort the parties had devoted to
informal dispute resolution, given that very senior legal officers for both sides had
been involved in the process from the beginning (including Steven McCracken,
Callaway Golf's Senior Executive Vice President, and Joseph Nauman, Acushnet's
Senior Vice President), and not wishing to burden their CEOs with what both sides
agreed would likely be an unproductive still higher-level executive meeting, the
parties agreed to skip this step and proceed with the next one – the first of the formal
mediations.

declaration – would have occurred if both parties had not understood there to be a binding contract entered into in 1996 to which Callaway Golf succeeded.

    **2.**    **The 1996 Settlement Agreement Does Not Allow Any Party To Attempt to Resolve Disputes By *Inter Partes* Reexaminations**

Ignoring the plain language of the Agreement, Acushnet argues that: (1) the Agreement does not preclude the filing of reexaminations; and (2) reexaminations are permitted as they are not legal proceedings. Both arguments are without merit.

    **a.**    **The 1996 Settlement Agreement precludes filing a request for reexamination**

The Agreement explicitly states that it provides ███████████████████ ██████████████████



[D.I. 199, Ex. 1, at § 19.1]. Thus, █████████████████████ ██████████████████████████

Specifically, after the mediations with Mr. Plant and Magistrate Judge Thynge failed, Acushnet's only option was to file an action in the United States District Court for the District of Delaware.

██████████████████████████ ██████████████████████████ ███████████

[*Id*. at § 19.7 (emphasis added)]. ███████████████

██████████████████████████

        **b.**     **Whether *inter partes* reexaminations are a "legal proceeding" or an "administrative proceeding" is either irrelevant or helpful to Callaway Golf**

Acushnet argues that because inter partes reexamination is not a "legal proceeding" but rather an "administrative proceeding" it is ███████████████████████ ████████ [D.I. 214, at 11]. Acushnet is wrong.

Whether an inter partes reexamination is characterized as a legal proceeding or an administrative proceeding is irrelevant: if it is the former, ██████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████ Regardless of the characterization that is placed on a reexamination, the Agreement does not allow for it.

The principal case Acushnet relies on to avoid the inevitable is no help to it. Acushnet is correct that the court in *Joy Manufacturing Co. v. National Mine Service Co.*, 810 F.2d 1127 (Fed. Cir. 1987) "refused to equate a request for administrative reexamination … with filing a suit in a United States Court." [D.I. 214, at 11]. But the language in the 1996 Settlement Agreement is far different than that at issue in *Joy Manufacturing*. The agreement in that case stated in relevant part: "During the term of this Agreement, NATIONAL will not file *any suit in any United States Court* or any Court in any foreign country challenging or contesting the validity of the Licensed Patents . . . ." *Id.* at 1129 (emphasis in original). That agreement did not ██████████████████████ ███████████████████████ and it did not have a ██████████████████ provision. It merely precluded the filing a lawsuit.

Unlike *Joy Manufacturing*, the 1996 Settlement Agreement specifically requires that ██████████████████████████████████████████████ Reexaminations, whether an administrative proceeding or a legal proceeding, are not legal proceedings in this Court███████████████████████████████████████ ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Moreover, unlike *Joy Manufacturing*, where the agreement listed the conduct that

was prohibited, the 1996 Settlement Agreement lists only ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

### B.    The PTO Refused To Interpret The Meaning And Application Of The 1996 Settlement Agreement – So There Is Nothing For This Court To Give "Deference" To Even if it Were Proper To Do So.

Contrary to Acushnet's assertions, the PTO did not reject Callaway Golf's petition

to vacate the reexamination orders as *ultra vires* based on the 1996 Settlement Agreement.

Rather, the PTO expressly declined to interpret the 1996 Settlement Agreement.

> Patent owner [Callaway Golf] has not established the Office
> has jurisdiction to make a determination regarding the
> validity and applicability of the Settlement Agreement, or to
> make any findings regarding the facts alleged in patent
> owner's petition or the third party requester's opposition to
> patent owner's petition.  ***No such determination has been,
> or will be, undertaken by the Office.***

[*See* D.I. 36, Ex. C at 4 n.3 (emphasis added)].  In fact, the PTO went on to conclude that

whether Acushnet breached the Agreement and what the sanction would be is a decision

best left to a "court of competent jurisdiction."  [Halkowski Decl. Ex. 1].  Moreover, it is

nonsensical to suggest that the PTO's non-decision — on a question of law such as contract

interpretation, no less — would bind this Court.  Even if the PTO had fully addressed the

issue, the Court would owe its decision no deference.

### 1.    The Court does not owe deference to the PTO

Relying on *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S.

837 (1984), Acushnet argues that the Court owes the PTO some level of deference with

---

[3]    Although *inter partes* reexaminations were not available in 1996, the substantively
similar *ex parte* reexaminations were and the parties could have included it as an
alternative method to resolve certain aspects of a potential patent dispute.

respect to any decision that it made regarding the Settlement Agreement. [D.I. 214, at 7] Acushnet is wrong.

"Chevron deference" is given to an Agency's interpretation of a statute through rule-making, where there is a gap in the statute and Congress has left it up the Agency to fill in that gap.

> The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron*, 467 U.S. at 843-44 (internal citations omitted).

The principle that courts give deference to an Agency's interpretation of the statute that it is charged with administering is completely inapplicable to this case. Interpreting private contracts is the province of a court. There is no PTO regulation governing the 1996 Settlement Agreement at issue here. The PTO is not charged with contract interpretation or even the administration or enforcement of contracts between private entities. Rather, the PTO is charged with the examination and reexamination of patents. Moreover, as noted above, the PTO did not make a determination regarding the 1996 Settlement Agreement anyway, so there is no agency decision for this Court to defer to.

### 2. The Cases cited by Acushnet arguing the contrary are cited out of context and are inapplicable.

In addition to *Chevron*, Acushnet relies on two other cases to support its argument that the Court should give the PTO deference, *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) and *PIC, Inc. v The Preston Corp.*, 485 F. Supp. 1302, 1308 (D. Del. 1980); [D.I. 214, at pp. 6-7] neither supports its position.

*United States v. Utah Constr.*, deals with the proper review of a government contract with a private contractor. The government contract at issue in that case was specifically governed by the Armed Services Procurement Regulations, the Atomic Energy Commission Procurement Regulations, and the Wunderlich Act of 1954. Pursuant to those regulations, any dispute that arose between the contracting agency and the contractor was to be decided by the contract officer. While ultimately appealable to the Court of Claims, the agency was responsible for any fact finding that might be necessary. Per the Wunderlich Act, those factual findings were final and reviewed by the Court of Claims to determine if they were arbitrary or capricious. Statutorily, the Court did not engage in factual finding, rather it acted as a court of review basing its decision on, and giving deference to, the factual record created by the agency. This is completely inapplicable to this case. There is no governing statute that empowers the PTO to engage in fact finding regarding a contract dispute – nor did the PTO engage in any fact-finding here. Moreover, there is no statute governing this situation – this a straight forward private-party contract dispute squarely within this Court's province. *Darby v. Hall*, 50 A. 64, 64 (Del. 1900) ("It is the duty of the court, under the prayers of the respective parties, to interpret this contract, and announce the principles of law governing it."); *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 858 (3d Cir. 1975) ("The interpretation and enforcement of contracts is traditionally within the province of state courts.").

The *PIC* case cited by Acushnet is of no more value to Acushnet; in fact, it compels a result opposite to the one Acushnet seeks. *PIC*, addressed the collateral estoppel effect that a PTO determination of validity and no inequitable conduct during a reissue proceeding would have on the same parties in litigation. The Court determined there would be ***no*** preclusive effect. During litigation, Lang, the inventor of PIC's patent, filed an application for reissue with the PTO to address allegations made by Preston that the patent was invalid over non-disclosed prior art and that Lang was guilty of inequitable conduct. The case was stayed pending resolution of the reissue proceedings. At the time, much like

15

*inter partes* reexamination now, protestors, i.e. Preston, could file comments and argument with the PTO during the reissue proceeding. Preston further was allowed to monitor the proceeding and file "such additional papers as it considered appropriate." *PIC, Inc*., 485 F. Supp. at 1304.  Moreover, the Examiner was given discretion to solicit Preston's comments on PIC's responses to office actions or other communications with the PTO.  Despite this, the Court ruled that the PTO's determination of validity was not entitled to preclusive effect. *Id*. at 1310-11.  If the PTO's determination of validity, an area within its expertise, is not entitled to preclusive effect, then surely the PTO's decision regarding contract interpretation cannot be entitled to preclusive effect .

    **C.**      **Acushnet's Public Policy Argument Continues To Ignore Contrary Controlling Federal Circuit Law**

      Acushnet continues to argue that any agreement  prohibiting a party from seeking reexamination of a patent is void as a violation of public policy.  In making this argument, Acushnet, once again, ignores contrary controlling Federal Circuit law.   Callaway Golf has previously dealt with this issue in its Opposition to Acushnet's Motion to Stay and in its Petition to the PTO to Reconsider, which Callaway Golf provided to the Court.[4]  There, Callaway Golf pointed out that the Federal Circuit has upheld clauses in settlement agreements prohibiting a party from challenging the validity of a patent **altogether**.  *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001) (holding that the defendant was contractually estopped from challenging the validity of a patent based upon the clear and unambiguous language in a previous settlement agreement between the parties).  In fact, in reaching these decisions, the Federal Circuit emphasized that enforcing these types of settlement agreements promotes an important public policy:  "the encouragement of settlement of litigation and the need to enforce such settlements in order to encourage the parties to enter into them."  *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988).  Acushnet obviously has no response to this dispositive Federal Circuit

---

[4]    *See* Docket Entries 16 and 33, respectively, for these briefings.

law, as Callaway Golf has now cited and argued that law repeatedly and Acushnet continues to ignore it.

The cases that Acushnet did cite are either inapplicable or support Callaway Golf. Three of the four cases share one fundamental flaw – they deal with commercial contracts rather than settlement contracts:

- *Bremen v Zapata Off-Shore Co.*, 407 U.S. 1, 2 (1972) involved a services contract for the towing of drilling rigs

- *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987) involved review of an arbitrator's decision regarding a collective bargaining agreement. And, notably, the Supreme Court *reversed* the Court of Appeals holding that a clause of that agreement was void as against public policy

- *Suter v. Munich Reinsurance*, 223 F.3d 150, 155-56 (3rd Cir. 2000) was an insurance dispute governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards

*Newton v. Rumery*, 480 U.S. 386 (1987), the lone case relied on by Acushnet that involves a settlement agreement, actually supports Callaway Golf. The settlement agreement in that case was enforced despite public policy considerations to the contrary. Rumery, a private citizen, had been arrested for witness tampering in New Hampshire. In exchange for dismissing the charges against him, the prosecutor and Rumery entered into a release-dismissal agreement whereby Rumery agreed to release any claims against the town for any harm caused by his arrest in exchange for the charges against him being dismissed. Shortly thereafter, Rumery sued alleging the town had violated his Constitutional rights by arresting him, defaming him, and falsely imprisoning him. In light of the release-dismissal agreement, the District Court dismissed the case.

The Court of Appeals reversed, holding that release-dismissal agreements are *per se* invalid as void against public policy. The Court of Appeals argued that such agreements would provide an incentive to "prosecutors to trump up charges in reaction to a defendant's

civil right's claim, suppress evidence of police misconduct, and leave unremedied deprivations of constitutional rights." *Id.* at 391. The Supreme Court, however, reversed the Court of Appeals. "We think the court overstated the perceived problems and also failed to credit the significant public interests that such agreements can further." *Id.* at 392. The cases noted above that Acushnet relies suffer the same ill – because they do not involve settlement agreements, they fail to take into consideration the significant public interest that is served by upholding agreements settling litigation, so that parties will enter into them. This is the public interest emphasized by the Federal Circuit in *Flex-Foot* and *Hemstreet,* and the decisions in those cases are dispositive here.

It bears repeating that the interest Acushnet claims to be serving instead -- invalidating improperly issued patents – does not in this case compete with the interest in fostering settlements. Acushnet is free to contest the validity of the patents, as it is doing in this suit. Indeed, for all the reasons Callaway Golf has identified in its filings opposing Acushnet's various attempts to stay this case, challenging validity in this Court is a ***better*** way to ultimately resolve the question than a much more limited challenge in the PTO. Indeed, the only way for this Court to ensure that both policies are served (enforcing settlements on the one hand and providing a forum for challenging patent validity on the other) is by granting Callaway Golf's motion for summary judgment. If Acushnet is allowed to ████████████████████████████, parties like Callaway Golf will have less incentive to settle future disputes – including, possibly, this one.

## IV.    CONCLUSION

For the foregoing reasons, Callaway Golf respectfully requests that the Court deny Acushnet's Motion for Summary Judgment of No Breach of Contract and grant Callaway Golf's corresponding motion.

Dated:  August 20, 2007            FISH & RICHARDSON P.C.


By:  */s/ Thomas L. Halkowski*
      Thomas L. Halkowski (#4099)
      919 N. Market Street, Suite 1100
      P.O. Box 1114
      Wilmington, DE 19899-1114
      Tel:  (302) 652-5070
      Fax:  (302) 652-0607

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA 02110-2804
      Tel:  (617) 542-5070
      Fax:  (617) 542-8906

      Roger A. Denning
      12390 El Camino Real
      San Diego, CA 92130
      Tel: (858) 678-5070
      Fax:  (858) 678-5099

      Attorneys for Plaintiff
      CALLAWAY GOLF COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2007, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 20, 2007, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz                          Attorneys for Defendant
David E. Moore                              ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                      Attorneys for Defendant
Joseph P. Lavelle                           ACUSHNET COMPANY
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

/s/ Thomas L. Halkowski
Thomas L. Halkowski

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    SUMMARY OF THE ARGUMENT ....................................................................1

II.   STATEMENT OF FACTS ................................................................................2

     A.     In 1996, to resolve five separate actions between the Parties, a Settlement Agreement was reached that both settled those disputes and ███████████████████████ ████ ██████████████ ...................................................3

          1.     The 1996 Agreement applies to Callaway Golf.............................3

          2.     The 1996 Agreement dictates that the ██████ ████████████████████████████ ███████████████████████████ ██████████████████ .......................................3

     B.     Until Acushnet filed for *inter partes* reexamination, the Parties acted in accordance with the 1996 Settlement Agreement ..................................................................................4

III.   ARGUMENT ...................................................................................................6

     A.     Acushnet has Breached the 1996 Settlement Agreement .........................6

          1.     The 1996 Settlement Agreement applies to this dispute ..........................................................................6

                a.     Having purchased the golf ball assets of Spalding, Callaway Golf is a "successor" under the literal terms of the agreement ............................6

                b.     Acushnet has repeatedly stated to this Court and the PTO in signed, sworn declarations and filings that the 1996 Settlement Agreement applies to, and is in force between, Acushnet and Callaway Golf .................................................................7

                c.     Up until it filed the requests for reexamination, Acushnet has always conducted itself in accordance with the 1996 Settlement Agreement ..............................................9

          2.     The 1996 Settlement Agreement Does Not Allow Any Party To Attempt to Resolve Disputes By *Inter Partes* Reexaminations ...................................11

## <u>TABLE OF CONTENTS (cont'd)</u>

<u>Page</u>

        a.      The 1996 Settlement Agreement precludes filing a request for reexamination ...................................................11

        b.      Whether *inter partes* reexaminations are a "legal proceeding" or an "administrative proceeding" is either irrelevant or helpful to Callaway Golf ...........................12

B.      The PTO Refused To Interpret The Meaning And Application Of The 1996 Settlement Agreement – So There Is Nothing For This Court To Give "Deference" To Even if it Were Proper To Do So. ....................................13

    1.      The Court does not owe deference to the PTO ...........................13

    2.      The Cases cited by Acushnet arguing the contrary are cited out of context and are inapplicable. ................................................................14

C.      Acushnet's Public Policy Argument Continues To Ignore Contrary Controlling Federal Circuit Law ..................................16

IV.    CONCLUSION..................................................................................18

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bremen v Zapata Off-Shore Co.*,
407 U.S. 1 (1972)........................................................17

*Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*,
467 U.S. 837 (1984)..................................................13, 14

*Darby v. Hall*,
50 A. 64 (Del. 1900) .................................................15

*Flex-Foot, Inc. v. CRP, Inc.*,
238 F.3d 1362 (Fed. Cir. 2001).....................................16

*Hemstreet v. Spiegel, Inc.*,
851 F.2d 348 (Fed. Cir. 1988)......................................16

*Joy Manufacturing Co. v. National Mine Service Co.*,
810 F.2d 1127 (Fed. Cir. 1987).....................................12

*Mariniello v. Shell Oil Co.*,
511 F.2d 853 (3d Cir. 1975)........................................15

*Newton v. Rumery*,
480 U.S. 386 (1987)...............................................17, 18

*PIC, Inc. v The Preston Corp.*,
485 F. Supp. 1302 (D. Del. 1980)..................................14, 16

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.*,
748 F. Supp. 247 (D. Del. 1990)....................................6, 9

*Suter v. Munich Reinsurance*,
223 F.3d 150 (3rd Cir. 2000) ......................................17

*United Paperworkers International Union v. Misco, Inc.*,
484 U.S. 29 (1987)..................................................17

*United States v. Utah Construction & Mining Co.*,
384 U.S. 394 (1966)................................................14