IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

        Plaintiff,

  v.

ACUSHNET COMPANY,

        Defendant.

C. A. No. 06-91 (SLR)

**PUBLIC VERSION**

**CALLAWAY GOLF'S *OPPOSITION* TO ACUSHNET'S COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT THAT NESBITT
INCORPORATES MOLITOR BY REFERENCE**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff
Callaway Golf Company*

DATED:  August 20, 2007
REDACTED:  August 24, 2007

## TABLE OF CONTENTS

**Page**

I.    *ADVANCED DISPLAY* SETS FORTH A CLEAR TWO-PART
      TEST FOR INCORPORATION BY REFERENCE. ............................................2

II.   UNDER THE *ADVANCED DISPLAY* TEST, NESBITT'S
      GENERAL REFERENCE TO MOLITOR '637 DOES NOT
      INCORPORATE BY REFERENCE THE TWO SPECIFIC
      MATERIALS REQUIRED BY THE CLAIMS OF THE
      PATENTS-IN-SUIT. ......................................................................................... .4

III.  THE PATENT OFFICE HAS REJECTED ACUSHNET'S
      INCOPPORATION BY REFERENCE ARGUMENT  IN THE
      REEXAMINATIONS...........................................................................................8

IV.   CONCLUSION...............................................................................................1 4

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Advanced Display System v. Kent State University,*
  212 F.3d *1272  (Fed.* Cir. *2000)*...................................................................1, 2, 3

*In re Hughes,*
  550 F.2d *1273* (C.C.P.A. *1977)*........................................................................11

*Lund,*
  376 F.2d at *989* ....................................................................................................*3*

*National Latex Products Co. v. Sun Rubber Co.,*
  274 F.2d *224 (6th* Cir. *1959)* ............................................................................ 3

*In re Saunders,*
  58 C.C.P.A. *1316, 444* F.2d 599 (C.C.P.A. *1971)*............................................*3*

*In re Seversky,*
  474 F.2d *671* (C.C.P.A. *1973)*........................................................................*3*, 4

*In re Voss,*
  557 F.2d *812* (C.C.P.A. *1977)*............................................................*1  , 12, 13*

Acushnet seeks to invalidate patent claims covering a golf ball having a core and a two-layer cover – an inner layer comprising a blend of two low-acid ionomers and an outer layer comprising polyurethane. As detailed in Callaway Golf's other filings, this particular arrangement of golf ball materials fulfilled a long-felt need for a ball that combines the hardness for low-spin long distance shots and the soft-feel for shorter shots around the green. The golf balls covered by the inventions have in fact been phenomenally successful, have all but replaced the formerly dominant wound-ball, and have fundamentally changed the game of golf.

Acushnet now argues that the inventions were anticipated long ago by a combination of two pieces of prior art: Nesbitt and Molitor '637. To avoid all of the hurdles that would be required to show that such a combination of prior art would have been obvious to one of ordinary skill in the art, Acushnet alleges that the asserted claims were anticipated by Nesbitt alone because Nesbitt purportedly incorporates by reference the claimed golf ball materials catalogued in Molitor '637. Acushnet's effort to plug the holes which exist in the Nesbitt reference by picking and choosing materials from Molitor is, however, unsupported and insupportable.

Acushnet seeks to use the doctrine of incorporation by reference to take the basic framework of a multi-ionomer-layered golf ball from the Nesbitt patent, select two specific materials from among the literally hundreds of materials mentioned for the single-cover-layer ball in the Molitor '637 patent, and then manipulate those two materials into the arrangement required by the asserted claims in the patents-in-suit. Not surprisingly, the law does not allow litigants to engage in such cafeteria-style selection when seeking to invalidate a patent. Indeed, because it cannot meet the exacting standard for incorporation by reference set forth by the leading Federal Circuit decision of *Advanced Display Sys. v. Kent State Univ.,* 212 F.3d 1272

(Fed. Cir. 2000), Acushnet seeks to loosen the *Advanced Display* standard by citing two cases from the old Court of Customs and Patent Appeals and a non-precedential Federal Circuit opinion.  Yet, even the facts of those cases are easily distinguished from the situation presented here.  Because Acushnet cannot avoid, and certainly cannot satisfy, the rigorous standard set forth in *Advanced Display*, its motion for summary judgment should be denied and Callaway Golf's Motion for Summary Judgment that Nesbitt does not incorporate the Molitor '637 patent by reference should be granted.

**I.     *ADVANCED DISPLAY* SETS FORTH A CLEAR TWO-PART TEST FOR INCORPORATION BY REFERENCE.**

The Federal Circuit's leading case on the incorporation by reference doctrine, *Advanced Display*, requires that: "[i] the host document must identify **with detailed particularity** what specific material it incorporates and [ii] **clearly indicate** where that material is found in the various documents."  *Advanced Display*, 212 F.3d at 1282 (emphasis added).[1]  Whether a patent incorporates material by reference is a question of law.  *Id.* at 1283.  However, "the standard of one reasonably skilled in the art should be used to determine whether the host document describes the material to be incorporated by reference with sufficient particularity."  *Id.*

In *Advanced Display*, Kent State University ("KSU") sued Advanced Display Systems ("ADS") for patent infringement.  ADS defended arguing that the patent-in-suit was anticipated by the Haas patent and the material incorporated therein by reference.  Rather than deciding the legal question of whether Haas incorporated by reference the additional material, the trial court left it up to the jury to determine.  In criticizing the trial court's error, and ultimately remanding the issue, the Federal Circuit first discussed the applicable law:

---

[1] *See also* Manual of Patent Examining Procedure § 608.01(p) (8th ed. Aug. 2001) ("Particular attention should be directed to specific portions of the referenced document where the subject matter being incorporated may be found.").

> To incorporate material by reference, the host document must identify with ***detailed particularity <u>what</u> specific material*** it incorporates and ***clearly indicate <u>where</u> that material is found*** in the various documents. *See In re Seversky*, 474 F.2d 671, 674 (C.C.P.A. 1973) (providing that incorporation by reference requires a statement "clearly identifying the subject matter which is incorporated and where it is to be found"); *In re Saunders*, 58 C.C.P.A. 1316, 444 F.2d 599, 602-03 (C.C.P.A. 1971) (reasoning that a rejection for anticipation is appropriate only if one reference "expressly incorporates a particular part" of another reference); *National Latex Prods. Co. v. Sun Rubber Co.*, 274 F.2d 224, 230 (6th Cir. 1959) (requiring a specific reference to material in an earlier application in order have that material considered part of a later application); cf. *Lund*, 376 F.2d at 989, (holding that a one sentence reference to an abandoned application is not sufficient to incorporate material from the abandoned application into a new application).

*Advanced Display*, 212 F.3d at 1282-83 (emphasis added). The Federal Circuit's ruling makes clear that it was following well-established precedent that incorporation by reference ***requires*** a clear identification of what particular material is to be included from one document into another. Indeed, one of the decisions relied upon by the Federal Circuit, further explains:

> [A] mere *reference* to another application, or patent, or publication is not an *incorporation* of anything therein into the application … [T]he purpose of 'incorporation by reference' is to make one document become a part of another document by referring to the former in the latter *in such a manner* that it is apparent that the cited document is part of the referencing document as if it were fully set out therein.

*In re Seversky*, 474 F.2d 671, 674 (C.C.P.A. 1973) (emphasis in original). Thus, when setting forth the standard for incorporation by reference in *Advanced Display*, the seminal decision on this issue, the Federal Circuit chose to rely upon decisions from the old Court of Customs and Patent Appeals such as *Seversky* that set forth a very stringent view. Nowhere does the Court cite the arguably less rigorous approach of the two C.C.P.A. decisions which are relied upon herein by Acushnet and which are distinguished below.

Perhaps most critically for purposes of addressing the issues in this case, the Federal Circuit also provided the following insight into its opinion regarding Advanced Display's effort

3

to use the incorporation by reference doctrine to pick and choose the elements of the claimed

invention:

> The documents incorporated into the Haas patent disclosed hundreds of
> different liquid crystal materials that could reflect visible and infrared
> light.  From that body of materials, ADS contended, **with perfect
> hindsight**, that the combination of the Haas patent and three particular
> liquid crystal materials taught every element of the West patent.

*Id*. at 1280 (emphasis added).  These facts are strikingly similar to the facts in this case.  While

the Federal Circuit in *Advanced Display* ultimately remanded the incorporation by reference

issue back to the trial court, the above passage plainly shows the Federal Circuit's skepticism

regarding the use of the incorporation by reference doctrine as an invitation to manipulate the

prior art by selecting a few of the claimed elements from a broad range of materials mentioned in

a secondary patent reference.

## II.     UNDER THE *ADVANCED DISPLAY* TEST, NESBITT'S GENERAL REFERENCE TO MOLITOR '637 DOES NOT INCORPORATE BY REFERENCE THE TWO SPECIFIC MATERIALS REQUIRED BY THE CLAIMS OF THE PATENTS-IN-SUIT.

Acushnet attempts to rely on incorporation by reference to import two very specific

aspects of Molitor '637 into Nesbitt:  (1) the use of **polyurethane** – as opposed to ionomers – for

the outer cover layer of Nesbitt's multi-cover-layer golf ball; and (2) the use of a **blend** of low-

acid ionomers – rather than a single ionomer – for the inner cover layer of Nesbitt's multi-cover-

layer golf ball.  Nesbitt alone does not anticipate any asserted claim because, among other

reasons, it does not disclose the use of polyurethane for an outer cover material, nor does it

disclose the use of a low-acid ionomer blend for an inner cover material.  Molitor '637 alone

does not anticipate because, among other reasons, it is directed to a single-cover-layer ball and

never even contemplates a golf ball with two cover layers.

Nesbitt's only mention of the Molitor '637 patent is in the following excerpt:

4

> The inner, intermediate, or first layer or ply 14 and the outer cover, second layer or ply 16 of either of the layers may be cellular when formed of a foamed natural or synthetic material.  **Polymeric materials are preferably such as *ionomer resins* which are foamable.**  Reference is made to the application Ser. No. 155,658, of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which **describes a number of foamable compositions** of a character which may be employed for *one or both layers* 14 and 16 for the golf ball of this invention.

[D.I. 203 (Halkowski Decl.) Ex. 3, '193 patent, col. 3:51-61 (emphasis added).]  This excerpt of Nesbitt does not specify – let alone identify with "detailed particularity" – the use of polyurethane by Molitor; nor does Nesbitt "clearly indicate" where Molitor discusses polyurethane.  To the contrary, Nesbitt focuses upon the use of "ionomer resins" as the preferred type of foamable polymeric material to be used for the cover layers.  [*See* Declaration of William M. Risen, Jr. Regarding Callaway Golf's *Opposition* to Acushnet's Motion for Partial Summary Judgment that Nesbitt Incorporates Portions of Molitor (hereinafter Risen 1st Decl.), ¶ 5.] Ionomer resins indisputably do not include polyurethane.  [*See* Second Declaration of Risen in Support of Callaway Golf's *Opposition* to Motion of Summary Judgment of Invalidity, ¶ 4.] Specifically, in Nesbitt, the sentence prior to the reference to Molitor explains that the preferred polymeric materials are "ionomer resins which are foamable."  Nesbitt then immediately points the reader to Molitor for a description of foamable compositions.  Thus, to the extent the above Nesbitt passage refers to anything in the Molitor patent, it would be understood by one of ordinary skill the art as referring to foamable ionomer resins – and in no way could be a reference to polyurethane.  [*See* Risen 1st Decl., ¶¶ 5-7.]

Even Acushnet, prior to this suit, believed that Nesbitt did not incorporate Molitor '637 by reference.  In 2000-2001,

REDACTED

5

REDACTED

Now, six years later, the shoe is on the other foot, and Acushnet is accused of infringing

Callaway Golf's earlier-filed patents on the same technology. Acushnet wants everyone to

forget: (1) that Acushnet truly believed that Nesbitt does not incorporate Molitor '637 by

---

2   The "Hebert patents" include U.S. Patent No. 5,885,172 and U.S. Patent No. 6,132,324. The technology and scope of the Hebert patents are strikingly similar to the patents-in-suit; yet, the patents-in-suit have earlier priority dates than the Hebert patents. Claim 1 of Hebert's '172 patent, for example, requires: "1. A golf ball comprising a cover and a core, wherein said cover is disposed about the core and said cover comprises: (a) an inner cover layer of a flexural modulus of at least about 65,000 psi; and (b) an outer cover layer having a Shore D hardness of greater than 30 to 60, having a thickness of less than 0.050 inches and comprising a thermoset material that includes at least one of a castable reactive liquid material and reaction products thereof."

3   Mr. Lester's letter raises an issue regarding Rule 408 of the Federal Rules of Evidence. The same issue is raised by Acushnet's reliance -- in its brief in support of its motion for summary judgment of invalidity -- on a letter that Callaway Golf's counsel, Mike Rider, sent to Spalding in the midst of licensing discussions over the patents-in-suit. [D.I. 216, at p. 23-24] Callaway Golf believes that the Court should consider neither Mr. Rider's letter nor Mr. Lester's letter based on the protections afforded under Rule 408. Nevertheless, given that Acushnet has already relied on Mr. Rider's letter, Callaway Golf feels obliged to present the Court with the whole story in the event these materials are to be considered. At the appropriate time, however, Callaway Golf will seek to preclude all of this material from the evidence to be presented to the Jury.

reference; and (2) that Acushnet induced Callaway Golf to take a license to the Hebert patents

based on that belief.  Acushnet's view of Nesbitt was correct – until it flip-flopped in this suit –

and Nesbitt in fact does not incorporate Molitor '637.

Even Dennis Nesbitt himself does not believe that his patent incorporates the

polyurethanes mentioned in Molitor '637.  Mr. Nesbitt is now retired and living in Florida.

Acushnet took his deposition in this case to get his testimony regarding the reference to the

Molitor '637 patent in his patent.  Mr. Nesbitt testified that his patent is focused on ionomer

covers, and he answered "no way" when asked directly if his patent's reference to Molitor

concerned the use of polyurethane as material for the outer cover of a golf ball:

> Q:    When you read the paragraph in your patent application and you
>        saw the reference to the Molitor '637 patent –
> A:    Right
> Q:    – you just thought that's foamed ionomer resins?
> A:    Right.
> Q:    And you didn't think beyond that, that it could refer to other
>        materials other than ionomer resins?
> A:    No.  Because if you look at my patent, it says over and over again
>        that the ionomer cover can be foamed or not foamed and that's the
>        same foam that Molitor did in his ionomer foam.  The 10-piece
>        ball that was in his test, it was ionomer, and it was foamed.
>
> *                      *                      *
>
> Q.    I just wanted you to turn to Column 17 of Bob Molitor's patent.
> A.    17.
> Q.    Example 10, Table 7, describes a polyethylene cover material; right?
> A.    That's right, high-density polyethylene.
> Q.    And that's a foamable cover composition?
> A.    Yes.
> Q.    And is it your understanding that that is referred to by foamable
>        compositions in your patent?
> A.    No.
> Q.    Just ionomers?
> A.    Just ionomers.  I never read this.  All the reference to foamable in my
>        patent is foamable ionomers, and I knew what Bob Molitor made.  He
>        made a foamable ionomer ball called a 10-piece ball.  It had ionomer.
>        Mine has ionomer.  And that's strictly ionomer foamable.

7

       *                  *                  *

    Q.     In your '193 patent Mr. Rosenthal earlier referenced you to a paragraph that talked about the Molitor patent.  Do you remember that?

    A.     I remember that.

    Q.     If somebody read that to themself and said to you, "Oh, you must have been referring to polyurethane as a potential outer cover material," what would you say to that?

    A.     No way.

*See* Risen 1st Decl., ¶ 8 (quoting from Nesbitt deposition testimony as confirmation of how one of ordinary skill in the art would view Nesbitt's reference to Molitor).

Because the Nesbitt patent does not identify with particularity the polyurethane required by the asserted claims, and in fact references a class of materials in Molitor that ***excludes*** polyurethane, Acushnet cannot use Molitor to fill in the critical element of polyurethane that is missing from Nesbitt's disclosure.

Similarly, Acushnet's attempt to import the mention of ionomer ***blends*** into Nesbitt is without merit.  Nowhere does Nesbitt identify with "detailed particularity" Molitor's mention of ionomer blends – much less reference the use of such materials specifically for the inner layer of a golf ball – nor does Nesbitt "clearly indicate" any portion of Molitor '637 that discusses such blends.  Thus, as with the polyurethane, Nesbitt fails to incorporate by reference the mention of ionomer blends in Molitor '637.

## III.    THE PATENT OFFICE HAS REJECTED ACUSHNET'S INCOPPORATION BY REFERENCE ARGUMENT IN THE REEXAMINATIONS

This litigation is not the only forum in which Acushnet has tried to argue that Nesbitt incorporates Molitor '637 by reference and therefore anticipates various claims of the asserted patents.  Acushnet made the exact same arguments in each of its four petitions for reexamination

in the Patent and Trademark Office.  In each of those instances, the PTO **rejected** Acushnet's

incorporation by reference argument, relying on the language of MPEP § 608.01(p) and finding:

> In the request on pages 20 through 24 the third party requester proposes that claim 1 be rejected based upon Nesbit alone with the incorporation by reference of Molitor '637.  The third party requester points out that Molitor '637 is incorporated by reference into Nesbit because Nesbitt refers to Molitor '637.  (See Nesbitt col. 3, ll. 54-60).
>
> **This rejection is <u>not adopted</u>.**
>
> [quoting MPEP § 608.01(p)]
>
> Thus. the reference to or the mentioning of another document does confer an "incorporation by reference" of material especially "essential material" as defined in 37 C.F.R. 1.57(c) which would be needed in this case to supply a basis for a rejection of the subject matter of the claimed invention, i.e., a reference must provide an enabling disclosure for all of the claimed structural features in the claim in order to anticipate the claim.

[*See* Halkowski Decl., Ex. 4, pages 14-15.][4]  The Examiner repeated or referenced the same

language, and rejected Acushnet's incorporation by reference argument, for every asserted claim

of the four patents-in-suit.  [*See* Halkowski Decl., Ex. 4; and Exs. 5-7.]  Acushnet's other

authority is unavailing.

Acushnet, ignoring the ionomer-resin focus of Nesbitt and Molitor, argues that Nesbitt

should be viewed as generally incorporating the wide range of all foamable materials mentioned

in Molitor.  For example, a number of such materials are mentioned in the following portion of

Molitor:

> The range of synthetic polymeric materials which can be used in accordance with this invention, other than the above described Surlyn resins, is much broader than the range of natural materials. Suitable polymer materials which may be adapted for use in this invention are as follows:

---

[4]  Worthy of note is that while Acushnet urges the Court to follow the PTO on the breach of contract issue – where the PTO actually reached no decision, but instead deferred to a "court of competent jurisdiction – Acushnet simultaneously ignores the above decision by the PTO, where the PTO squarely addressed the question of incorporation by reference and rejected Acushnet's argument.

> Homopolymeric and copolymeric substances, such as (1) vinyl resins formed by the polymerization of vinyl chloride or by the copolymerization of vinyl chloride with unsaturated polymerizable compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene, polypropylene, polybutylene, transpolyisoprene, and the like, including copolymers of polyolefins; (3) polyurethanes such as are prepared from polyols and organic polyisocyanates; (4) polyamides such as polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene styrene copolymer; (6) acrylic resins as exemplified by the copolymers of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic rubbers such as the urethanes, copolymers of ethylene and propylene, and transpolyisoprene, block copolymers of styrene and cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend with high impact polystyrene known by the trade name "Noryl." This list is not meant to be limiting or exhaustive, but merely illustrates the wide range of polymeric materials which may be employed in the present invention. Mixtures of the above described material may also be used.

Molitor '637, Col. 5:27-56. Via this excerpt and others Molitor '637 discloses "literally hundreds of different possible compositions of materials" that could possibly be used on the cover of a golf ball, not the small number that Acushnet seems to imply. [Risen 1st Decl. ¶¶ 5-7 (discussing Molitor's disclosure as viewed by one of ordinary skill in the art); *compare with* D.I. 205, at 5 (Acushnet asserting that the "specific subject matter" Nesbitt incorporates from Molitor is "a number of foamable cover layer materials")]

Through perfect hindsight, Acushnet then selects two of the hundreds of foamable materials in Molitor '637 – *i.e.,* polyurethane and a blend of low-acid ionomers – and then manipulates them into the framework of the Nesbitt ball in attempt to recreate the two-layer structure claimed in the asserted patents: (i) a blend of low-acid ionomers in the inner layer; and (ii) polyurethane in the outer layer.[5]

---

[5] Even the combination of Nesbitt and Molitor '637 does not make obvious the asserted claims, for the reasons discussed in Callaway Golf's Opposition to Acushnet's Motion for Summary Judgment of Invalidity, filed herewith.

To find support for its manipulation of the prior art, Acushnet tries to side-step the

rigorous standard of *Advanced Display* by citing two cases decided in the 1970's by the old

Court of Customs and Patent Appeals (*In re Voss*, 557 F.2d 812 (C.C.P.A. 1977); and *In re

Hughes*, 550 F.2d 1273 (C.C.P.A. 1977)) and one non-precedential decision from the Federal

Circuit (*Southern Clay Prods., Inc. v. United Catalysts, Inc.,* 43 Fed. Appx. 379 (Fed. Cir.

2002)).[6]  None of these decisions detract from the clear two-part test set forth in the leading

precedential decision of *Advanced Display* – a test that Acushnet cannot hope to satisfy.

Moreover, even setting aside the *Advanced Display* standard, each of the decisions cited by

Acushnet is readily distinguishable from what it seeks to do in this case.

In *Southern Clay*, the invention at issue concerned improvements for processing clay by,

*inter alia*, use of a Manton-Gaulin machine to break down the particles prior to reacting them.

*Id*. at 380.  The reference patent, Clocker, discussed preparation of clay and cited the Cohn

patent which in turn taught "use of a [Manton-Gaulin] as a method for breaking down the

particles."  *Id*.  Specifically, Clocker stated:

> Exemplary of commonly employed physical or comminuting techniques
> for breaking the bonds between the colloidal particles in a clay particle
> aggregate are those techniques disclosed in United States Pat. Nos. Re.
> 25,965; 3,253,791; 3,307,790; and 3,348,778 [Cohn].  Generally speaking,
> the techniques disclosed in these patents effect some type of grinding or
> comminuting either by shear or abrasion so as to break the bonds in the
> clay aggregate particle and thus from several colloidal particles therefrom.

---

[6] Acushnet also mistakenly argues that "the United States District Court for the District of
Delaware has recently applied the standard for incorporation by reference set forth in
*Southern Clay Products, Voss,* and *Hughes*.  *See Telecordia Tech., Inc. v. Lucent Tecbrah,* …
2007 U.S. Dist. LEXIS 31960 at **32-38 (D. Del. May 1, 2007)."  Acushnet Mtn. at 4-5.
To the contrary, *Telecordia*, in fact: (i) applied the standard from *Advanced Display*; (ii)
distinguished defendant's effort to rely upon each of *Southern Clay, Voss* and *Hughes*; and
(iii) determined that because there was no incorporation by reference, the patentee was
entitled to summary judgment that the reference at issue did not anticipate the asserted
claims.  *Id*.  Thus, *Telecordia* supports Callaway Golf's motion for summary judgment on
this issue, not Acushnet's.

*Id.* at 384. The Court determined that Clocker incorporated Cohn by reference, emphasizing that "Clocker specifically identifies that Cohn is relevant for its bond-breaking methods." *Id.* Because Cohn set forth described use of the Manton-Gaulin machine for breaking down clay particles, the patent-in-suit was anticipated by the prior art. But, here Acushnet is not simply importing from one document into another the details for teaching a known preparation method as was allowed by the Court in *Southern Clay*. Rather, Acushnet first seeks to incorporate a broad range of materials, select just two of them, and then manipulate those into the particular two-layered arrangement claimed in the asserted patents.

     Similarly in *Voss* the Court merely allowed the direct incorporation of certain details from one patent into another. The prior art patent stated:

> A glass-ceramic material is originally formed as a glass which is then phase separated, by a controlled uniform devitrification throughout, to develop a fine crystalline structure within a glassy matrix, the material thus produced having physical properties materially different from the parent glass and more nearly characteristic of a conventional crystalline ceramic material. Reference is made to United States Patent No. 2,920,971, granted to S.D. Stookey, for a general discussion of glass-ceramic materials and their production.

557 F.2d at 815-16. Ruling that an incorporation by reference of particular information had occurred, the Court explained:

> Glass-ceramic materials are merely starting materials for appellant's strengthening process. Rather than include in his application a detailed discussion of how to prepare such known starting materials, appellant, for economy, referred the skilled artisan to Stookey '971.

*Id.* at 817. The court found, therefore, that there was no problem for the inventor to incorporate by reference a background discussion of the starting materials, where the gist of the invention itself was a new process for strengthening various materials after production. That differs remarkably from the case at hand, where Acushnet attempts to use incorporation by reference to

stitch together the *critical* combination of materials set forth in the asserted claims of Callaway

Golf's patents – a specific combination that is no where even mentioned in either of the

references Acushnet is seeking to combine.

Lastly, the *Hughes* case provides no support for Acushnet's position.  First, the

incorporation by reference in *Hughes* is also readily distinguishable from this case by the shear

length and detail of the description of what is being incorporated:

> Copending application Ser. No. 131,108, filed Aug. 14, 1961 by Jack
> Hurst and Harry D. Anspon describes the preparation of aqueous
> dispersions of water-insoluable, self-emulsifiable ethylene polymers
> containing pendent carboxylate salt groups which can be suitably
> employed in the process of this invention.  As described therein, water-
> insoluable, but self-emulsifiable ethylene polymers containing pendent
> carboxylate salt groups are prepared by the hydrolysis in an aqueous
> medium of the acrylate groups of a thermoplastic ethylene-alkyl acrylate
> inter-polymer employing elevated temperatures, a metallic base, and
> optionally, a nitrogenous base to produce a stable aqueous dispersion of
> the ethylene polymer.  Reference is made to application Ser. No. 131,108
> for complete descriptions of methods of preparing aqueous polymeric
> dispersions applicable to the hereinafter described invention.

*Id*. at 1274-75.  The Court ultimately allowed the incorporation by reference, noting that:

> Clampitt does not purport to provide a complete description of the
> hydrolysis reaction.  Rather, Clampitt incorporates by reference
> "application Ser. No. 131,108 for complete description of (these) methods
> …"

*Id*. at 1276.  The discussion in the Clampitt patent in *Hughes* is quite distinct from Nesbitt's one-

sentence mention of the Molitor '637 patent here.

Moreover, unlike Nesbitt's mention of Molitor '637, the reference cited to in the *Hughes*

case did not contain hundreds of combinations of materials, from which the Clampitt patent

expected the reader to choose without any guidance at all.  Instead, the Clampitt patent explains

in detail the aspects of the cited references to which it points the reader.  That differs greatly

from Acushnet's effort to use an incorporation by reference to pick and choose among two references in a way no reader could have predicted.

Acushnet's effort to avoid the exacting standard of *Advanced Display* by resorting to old case law and a non-precedential opinion is, therefore, unavailing. No support exists in any case law for allowing the incorporation by reference doctrine to be used for the extensive reconstruction of prior art that Acushnet seeks to undertake in this case. Indeed, the simple and direct importation of specific facts from one document into another that was allowed in *Southern Clay*, *Voss* and *Hughes*, stands in stark contrast to Acushnet's effort to use the incorporation by reference doctrine as an invitation to manipulate two pieces of prior art – with "perfect hindsight" – into the specific arrangement of the two-layered golf ball of the asserted claims.

## IV.    CONCLUSION

For the reasons set forth above, Callaway Golf respectfully requests denial of Acushnet's motion for summary judgment that Nesbitt incorporates Molitor by reference, and submits that the foregoing discussion provides further support for the grant of Callaway Golf's opposing motion for summary judgment of no anticipation by any of the references relied upon by Acushnet.

Dated:  August 20, 2007          FISH & RICHARDSON P.C.

By: */s/ Thomas L. Halkowski*
      Thomas L. Halkowski (#4099)
      919 N. Market Street, Suite 1100
      P.O. Box 1114
      Wilmington, DE 19899-1114
      Tel:  (302) 652-5070
      Fax:  (302) 652-0607

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA 02110-2804
      Tel:  (617) 542-5070
      Fax:  (617) 542-8906

      David J. Miclean
      500 Arguello Street, Suite 500
      Redwood City, CA 94063
      Tel:  (650) 839-5070
      Fax:  (650) 839-5071

      Roger A. Denning
      12390 El Camino Real
      San Diego, CA 92130
      Tel: (858) 678-5070
      Fax:  (858) 678-5099

**ATTORNEYS FOR PLAINTIFF**
**CALLAWAY GOLF COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2007, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 24, 2007, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz                          Attorneys for Defendant
David E. Moore                              ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                      Attorneys for Defendant
Joseph P. Lavelle                           ACUSHNET COMPANY
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

                                        /s/ Thomas L. Halkowski
                                        Thomas L. Halkowski

1