## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ACUSHNET COMPANY, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

### ACUSHNET'S OPPOSITION TO CALLAWAY'S MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT (COUNT V)

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

Dated: August 20, 2007
Public Version Dated: August 27, 2007
815157 / 30030

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STAGE OF PROCEEDINGS ................................................... 1

III.    STATEMENT OF RELEVANT FACTS .......................................................... 1

IV.     SUMMARY OF ARGUMENT .......................................................................... 2

V.      ARGUMENT ...................................................................................................... 4

        A.      The Plain Meaning of the Agreement Does Not Prohibit Either Party from
                Invoking the Reexamination Statutes. ...................................................4

        B.      *Inter Partes* Reexamination at the PTO is not a Legal Proceeding;
                Reexaminations do not Resolve Disputes Between Private Parties.........................7

        C.      The PTO Has Already Rejected Callaway's Arguments; Callaway's Broad
                Reading of the Agreement Renders Its Forum Selection Clause Void on
                Public Policy Grounds. ...................................................................9

        D.      Callaway's Interpretation of the Agreement Would Produce Absurd
                Results...................................................................................11

        E.      The Agreement Cannot be Read to Waive the Right to File for *Inter
                Partes* Reexamination..................................................................12

        F.      The Agreement Does Not Include Any Suggestion that the Parties Wished
                to Prevent Reexaminations. .............................................................12

        G.      Callaway is not a party to the 1996 Agreement...................................14

VI.     CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

*Alpine Inv. Partners v. LJM2 Capital Mgmt. L.P.,*
    794 A.2d 1276 (Del. Ch. 2002)..................................................................................14

*Citadel Holding Corp. v. Roven,*
    603 A.2d 818 (Del. 1992) ...............................................................................12, 15

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F.2d 190 (3d Cir. 1983)......................................................................................9

*Farrel Corp. v. U.S. Int'l Trade Comm'n,*
    949 F.2d 1147 (Fed. Cir. 1991)................................................................................9

*Hercules Inc. v. Orbital Scis. Corp.,*
    C.A. No. 13633, 1995 WL 125795 (Del. Ch. Mar. 15, 1995) ................................11

*In the Matter of the Appraisal of Ford Holdings, Inc. Preferred Stock,*
    698 A.2d 973 (Del. Ch. 1997)................................................................................12

*In re Etter,*
    756 F.2d 852 (Fed. Cir. 1985)...............................................................................7, 8

*In re Gartside,*
    203 F.3d 1305 (Fed. Cir. 2000)...............................................................................8

*Int'l Refugee Org. v. Republic S.S. Corp.,*
    189 F.2d 858 (4th Cir. 1951) ..................................................................................7

*Joy Mfg. Co. v. Nat'l Mine Serv. Co.,*
    810 F.2d 1127 (Fed. Cir. 1987)...............................................................................8

*Joy Techs., Inc. v. Manbeck,*
    959 F.2d 226 (Fed. Cir. 1992)............................................................................7, 11

*Northwestern Nat'l Ins. Co. v. Esmark, Inc.,*
    672 A.2d 41 (Del. 1995) .........................................................................................6

*Patlex Corp. v. Mossinghoff,*
    758 F.2d 594 (Fed. Cir. 1985).................................................................................8

*Sony Computer Entm't Am. Inc. v. Dudas,*
    No. 1:05CV1447, 2006 WL 1472462 (E.D. Va. May 22, 2006)...............................8

**STATUTES, RULES & REGULATIONS**

35 U.S.C. § 311 *et seq.*...........................................................................................................10, 12

**OTHER AUTHORITIES**

145 CONG REC. S14720 (daily ed. Nov. 17, 1999) ......................................................................10

Restatement (Second) of Contracts § 202....................................................................................11

## I.    INTRODUCTION

Defendant Acushnet Company ("Acushnet") opposes Callaway Golf Company's ("Callaway") Motion for Summary Judgment of Breach of Contract (Count V). Callaway's motion should be denied. Callaway has failed to demonstrate that Acushnet breached the 1996 Settlement Agreement ("the Agreement") between Spalding Sports Worldwide, Inc. ("Spalding") and Acushnet.

## II.    NATURE AND STAGE OF PROCEEDINGS

Callaway alleges that Acushnet's Pro V1 line of golf balls infringes four patents. The PTO has ordered an administrative reexamination of the patents-in-suit and determined in initial office actions that each of the patents-in-suit should not have been issued by the PTO.[1] While Callaway has attempted to forestall the final outcome of the PTO reexaminations on numerous occasions,[2] on June 15, 2006, after its efforts to vacate the PTO's decisions to reexamine the patents-in-suit failed, Callaway added Count V to its Complaint. [D.I. 32]. Count V alleges that Acushnet breached its 1996 Agreement with Spalding by requesting that the PTO reexamine the patents-in-suit.

## III.    STATEMENT OF RELEVANT FACTS

Acushnet incorporates by reference the Statement of Relevant Facts set forth in Acushnet's Memorandum of Law in Support of Its Motion for Summary Judgment of No Breach of Contract (Count V). [D.I. 214 at 3-5]. Acushnet's earlier filed memorandum argues that summary judgment on Count V should be granted to Acushnet, not Callaway. (*See id.* at 6-15).

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[1] *See* PTO Orders Granting Reexamination, attached as Exs. A-D to Acushnet's Motion to Stay Litigation [D.I. 10]; PTO Office Actions. [D.I. 85, Exs. A-D].

[2] Callaway filed, *inter alia*, a Petition to Vacate the Order Granting Reexamination, based primarily on an alleged breach by Acushnet of the 1996 Agreement, and a Petition to Suspend *Inter Partes* Reexamination Proceedings, both of which were denied by the PTO. [D.I. 51, Exs. A-D].



In September 2003, Callaway purchased from bankruptcy the assets of Spalding's golf ball business. Those assets included the patents-in-suit. When Callaway alleged that Acushnet's Pro V1 line of balls infringed these patents, the parties agreed to meet in a process that generally resembled the pre-suit dispute resolutions of the 1996 Spalding-Acushnet Agreement. After the efforts to settle Callaway's infringement claims failed, Callaway informed Acushnet that it would file suit. Three weeks before this filing, after having informed Callaway that it would do so,[3] Acushnet requested the PTO to reexamine each of the patents-in-suit.

## IV.    SUMMARY OF ARGUMENT

Callaway maintains that Acushnet's request to the PTO to reexamine the patents-in-suits breached the 1996 Spalding-Acushnet Agreement. Callaway's argument lacks any merit, and its Summary Judgment Motion should be denied.

Callaway is mistaken throughout its brief, both as to the law and the plain meaning of the 1996 Agreement. The 1996 Agreement indicates not a shred of intent on the parties' part to proscribe requests for *inter partes* reexamination. A common sense reading of the Agreement

---

[3]

shows only that it purports to control the venue for legal proceedings that could be filed in federal district courts. Nothing on the face of the Agreement prohibits either party from asking the PTO to reexamine the other's patents. And the reexamination process is not, in any case, a legal proceeding but an administrative proceeding, as Federal Circuit case law has made clear. Reexaminations cannot be initiated through a district court legal proceeding, and they do not resolve legal disputes of patent infringement.

While Callaway seeks to judicially amend the 1996 Agreement by having the Court read into it an over-reaching prohibition that does not exist, there is no factual or legal support for Callaway's position. In fact, Callaway's extremist reading of the Agreement would produce absurd results, including that the parties could not seek additional patents if adverse to the other, or file interference proceedings petitioning the PTO to act in other ways adverse to the other's patents. Under Callaway's reading of the Agreement's forum selection clause, all such "disputes" could only be litigated and available for resolution through the district court in Delaware; but in fact this district court would have no jurisdiction to hear such matters. This certainly cannot be what the parties intended by their 1996 Settlement Agreement.

In the case of *inter partes* reexaminations especially, those form of Congressional authorized proceedings did not even exist when Spalding and Acushnet entered their Agreement. To read an agreement to waive access to a statutory remedy that did not exist for more than three years afterwards, on these facts especially, would violate the public policy in enacting the *inter partes* reexamination statute. Governing law indicates that an agreement purporting to prevent access to the PTO for reexamination of patents would be void as against public policy. Here the PTO has already determined that the 1996 venue provision would violate public policy if it is interpreted as advanced by Callaway. The PTO has rejected Callaway's breach of contract argument that the 1996 Agreement precluded Acushnet from seeking reexamination of patents.[4]

---

[4] PTO ruling on Callaway's Request to Dismiss *Inter Partes* Reexaminations. [D.I. 51, Exs. A-D].

Finally, as argued in Acushnet's motion for summary judgment on Count V, Acushnet could not have breached the 1996 Agreement for yet another reason: nothing in the Agreement obligated Acushnet to mediate disputes with Callaway. Under the terms of the Agreement, Acushnet was obliged to mediate and resolve in the District of Delaware only disputes with Spalding. Acushnet's willingness to follow a dispute resolution process similar to what was in the 1996 Agreement in no way establishes in Callaway a right to enforce provisions of the 1996 Agreement that on their face apply only to disputes between Acushnet and Spalding.

## V.    ARGUMENT

### A.    The Plain Meaning of the Agreement Does Not Prohibit Either Party from Invoking the Reexamination Statutes.



Put differently, Callaway argues that if other forms of proceedings are available to the parties relating to patents, then Spalding and Acushnet agreed never to invoke those proceedings and waived their rights to initiate those proceedings for as long as they were bound to the Agreement.

Callaway's "plain" reading of the Agreement is neither a logical reading, nor does it offer a meaning of the Agreement that would be conveyed to a reasonable reader of the relevant

clauses.





When courts are interpreting the meaning of a contract, they must look to the instrument as a whole. *See Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1995) ("Contracts must be construed as a whole, to give effect to the intentions of the parties.") Callaway fails to do so.





**B.**    ***Inter Partes* Reexamination at the PTO is not a Legal Proceeding; Reexaminations do not Resolve Disputes Between Private Parties.**

*Inter Partes* reexaminations simply are not legal proceedings, and so do not fall under the prohibitions of Section 19 of the 1996 Agreement.  The Agreement came into being to resolve potential litigation between Acushnet and Spalding. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮  Not only can an *inter partes* reexamination not be brought in federal district courts, *see Joy Techs., Inc. v. Manbeck*, 959 F.2d 226, 229 (Fed. Cir. 1992), it can also not be seen as a legal proceeding, and so is not subject to the restrictions of Subsection 19.7 of the Agreement.  The Federal Circuit noted that the reexamination process is not a legal proceeding like a trial.  *See In re Etter*, 756 F.2d 852, 858-59 (Fed. Cir. 1985) (noting that unlike in legal proceedings, the presumption of validity does not apply in reexaminations).  A legal proceeding is an adversarial process.  *See Int'l Refugee Org. v. Republic S.S. Corp.*, 189 F.2d 858, 860 (4th Cir. 1951) ("[T]he right to institute legal proceedings means the right to go into court.").  A reexamination, on the other hand, is a neutral, administrative process whereby the PTO, a government agency, reviews its prior determination of the validity of a patent. *See In re Etter*, 756 F.2d at 856-59 ("When a 'substantial question exists respecting the correctness of [the

grant of a patent], it does not conflict but coincides with the nature of the grantee's right when the government reexamines the propriety of the grant it has made, and thereafter reaffirms the grant, substitutes a new grant (amended or new claims), or withdraws the grant in whole or in part ...."); *see also Joy Mfg. Co. v. Nat'l Mine Serv. Co.*, 810 F.2d 1127, 1130 (Fed. Cir. 1987) ("the district court correctly refused to equate a request for administrative reexamination ... with filing a suit in a United States Court."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985) ("The reexamination statute's purpose is to correct errors made by the government, to remedy defective government (not private) action, and if need be to remove patents that should never have been granted.") In all matters of patent examination, the PTO is charged with representing the public interest in issuing presumptively valid patents; *see In re Gartside*, 203 F.3d 1305, 1318 (Fed. Cir. 2000); it is not setting about to resolve private party disputes, nor can it legally do so.

However much Callaway attempts to portray *inter partes* reexamination as an adverse, dispute resolving process, this is simply not the case. *See Sony Computer Entm't Am. Inc. v. Dudas*, No. 1:05CV1447, 2006 WL 1472462, at *9 (E.D. Va. May 22, 2006) (Section 314(a) provides that "reexamination shall be conducted according to the procedures established for initial examination under the provisions of sections 132 and 33.") "[L]itigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." *In re Etter,* 756 F.2d at 857. Acushnet's role in the reexamination process is akin to that of a witness, not that of an adverse party.

Finally, Callaway has repeatedly stated that the reexamination process cannot be seen as a replacement for the legal process in this Court. █████████████████████████████████████████████████████████████████████████████████████████

In denying Acushnet's repeated requests for a stay of the litigation, the Court accepted Callaway's position. *See* Transcript of Hearing, 10/18/2006 [D.I. 58] at 3:4-6 ("I've never had a re-examination proceeding resolve all issues in a patent case."). Callaway cannot now have it

both ways. Callaway cannot on the one hand seek to claim the reexamination is fundamentally different from the legal process in order to defeat Acushnet's requests for a stay of the parties' litigation, while on the other hand later portray reexamination as an alternative dispute resolution mechanism anticipated and yet expressly prohibited by the Acushnet-Spalding Agreement.

**C.    The PTO Has Already Rejected Callaway's Arguments;
Callaway's Broad Reading of the Agreement Renders Its
Forum Selection Clause Void on Public Policy Grounds.**

Acushnet incorporates by reference its arguments set forth in Acushnet's Memorandum of Law in Support of Its Motion for Summary Judgment of No Breach of Contract (Count V), filed on August 7, 2007. [D.I. 214 at 6-7, 9-15]. Therein, Acushnet advances a series of arguments demonstrating the strong public policy in favor of the reexamination of patents, in particular to prevent harm to the public from improperly issued patents. Such a strong public policy is one of the reasons for this Court to refuse to enforce an otherwise valid forum selection clause. *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) *citing Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Therein, Acushnet further notes that in denying Callaway's efforts to vacate the PTO's grant of reexamination of the patents-in-suit, based on Acushnet's alleged breach of the 1996 Agreement, the PTO found that, if the 1996 Agreement were so broad as to preclude Acushnet from seeking reexamination, it would be void as contrary to public policy. [*E.g.*, D.I. 51, Ex. D at 5]. These arguments warrant a denial of Callaway's motion, and warrant summary judgment for Acushnet, not Callaway.

Reading the 1996 Agreement forum selection clause as broadly as Callaway advances, so as to prevent access to reexaminations altogether, would undercut the intentions of Congress to protect the public from falsely and improperly issued patents by the provisions of the examination and reexamination processes.

The Federal Circuit has refused to allow private contractual provisions to waive access to rights provided by Congress that are backed by important public policies. In *Farrel Corp. v. U.S. Int'l Trade Comm'n*, 949 F.2d 1147 (Fed. Cir. 1991) (*superseded by statute*), for example,

9

the court declined to allow a compulsory arbitration provision to deny access to ITC

adjudication:

> Because the Commission ... is by statute available to a specific class of
> complainants, has independent authority to investigate alleged or apparent
> wrongs, and possesses a statutory mandate to promote the public interest,
> we see no compelling reason to treat the Commission any differently than
> the EEOC. Just as the EEOC's unique protection may not be privately
> contracted away, neither should the Commission's. Therefore, we hold
> that the Commission erred by relying on the broad federal policy favoring
> arbitration as a ground to terminate an on-going section 337 investigation
> in circumstances where the statute enumerates only two limited and
> specific circumstances for terminations concededly not present in this
> case.

*Id.* at 1156. The court stressed the role of the ITC in providing an alternative avenue for review

of such situations. "Indeed, the legislative history of section 337 indicates that the statute was

designed to supplement other provisions of law, which were viewed as inadequate to fully

protect U.S. industries from unfair foreign trade practices." *Id.* at 1155.

Similarly, the legislative history of 35 U.S.C. § 311 *et seq.*, establishing the recently-

afforded *inter partes* reexamination procedure, shows the intent of Congress to supplement the

existing methods of initiating re-review of patents, in order to better protect the public from the

rising costs of improperly issued patents.

> Congress enacted legislation to authorize *ex parte* reexamination of
> patents in the USPTO in 1980, but such reexamination has been used
> infrequently, since a third party who requests reexamination cannot
> participate at all after initiating the proceedings. Numerous witnesses
> have suggested that the volume of lawsuits ... will be reduced if third
> parties can be encouraged to use reexamination by giving them an
> opportunity to argue their case for patent invalidity in the USPTO. [The
> *inter partes* reexamination procedure] provides that opportunity as an
> option to the existing *ex parte* reexamination proceedings.

(145 CONG. REC. S14720 (daily ed. Nov. 17, 1999).)

*Inter partes* reexaminations serve a strong public policy as expressed by Congress. A

contract entered into in the present day that denied access to such reexaminations would be

subject to a heavy burden of scrutiny from the Court to maintain its validity. This Court should

be especially unwilling to read such a restriction into an agreement that contains no express restrictions and was entered into years before such reexaminations were ever made available by Congress.

**D.      Callaway's Interpretation of the Agreement Would Produce Absurd Results.**

When a court examines a contract and attempts to interpret it, it must look at it through the prism of the intentions of the parties at the time of the contract's implementation. *See* Restatement (Second) of Contracts § 202 ("Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight."); *see also Hercules Inc. v. Orbital Scis. Corp.*, C.A. No. 13633, 1995 WL 125795, at *3 (Del. Ch. Mar. 15, 1995) ("The language of a contract is interpreted in light of the parties' purpose.") When faced with competing interpretations, one of which produces rational results, and the other of which leads to absurd ones, a court should presume that the contracting parties intended the rational outcome. Under Callaway's forced reading of the Agreement, clearly absurd, non-intended results would be the outcome.

The Court cannot consider such a result to have been the intention of the parties when the Agreement was formed. The only reasonable reading of Subsection 19.7 is that legal proceedings that can be filed in federal court must be filed in the District of Delaware. A district court cannot undertake a reexamination proceeding. *See Joy Techs.,* 959 F.2d at 229 (noting that the plaintiff admitted that the PTO could not bring a declaratory judgment action for patent invalidity in district court.) As a request for reexamination may not be filed in this Court, filing

11

such a request in the PTO cannot be a violation of the 1996 Agreement under any rational reading of that Agreement.

### E.    The Agreement Cannot be Read to Waive the Right to File for *Inter Partes* Reexamination.

There are further reasons Callaway's reading of the 1996 Agreement defies common sense. Spalding and Acushnet entered their Agreement in August 1996. [D.I. 31]. Congress, however, did not enact 35 U.S.C § 311 *et seq.*, the statute authorizing a third party to request a PTO *inter partes* reexamination until 2000. Yet under Callaway's interpretation, the parties expressly contracted away their rights to participate in any administrative proceedings relating to patents, including here, the right to invoke a statutory avenue for reexamination of patents that did not yet exist and would not come to be until three years later. Such an interpretation is again implausible.

While parties may contractually waive access to statutory remedies, it is a principle of contract interpretation under Delaware law "that statutory rights should ordinarily be waived only by clear affirmative words or actions." *In the Matter of the Appraisal of Ford Holdings, Inc. Preferred Stock*, 698 A.2d 973, 979 (Del. Ch. 1997). Callaway has offered no evidence that either Spalding or Acushnet foresaw the introduction of *inter partes* reexaminations by Congress or that any clear or affirmative words in their contract dispensed with statutory reexamination rights enacted by Congress. Had the parties wished to guard against the possibility of a change in law, they could have included such a clause in their Agreement. Absent even a scintilla of such evidence, the Court should not read an intention into the Agreement that is not there.

### F.    The Agreement Does Not Include Any Suggestion that the Parties Wished to Prevent Reexaminations.

As Callaway states in its Brief in Support of its Motion for Summary Judgment of Breach of Contract, "[t]he Court must first attempt to ascertain the parties' intent from the language of the contract." [D.I. 198 at 7, *citing Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992)]. Here, the 1996 Agreement was the product of high level negotiations between

sophisticated parties, in an attempt to provide a resolution to a serious federal law dispute over patents and advertising. The terms of the Agreement were carefully crafted. While the *inter partes* reexamination process did not exist at the time, individuals could request *ex parte* reexamination by the PTO under existing legislation. The parties were aware of this, and yet chose not to include any mention of the process in the Agreement. Had the parties wished to prevent use of the PTO in this fashion, they could easily have included a clause in the Agreement to specifically forbid such actions. Alternatively, the Agreement could have included a broader arrangement never to challenge the validity of the patents held by the other party. The clear absence of such a term is powerful evidence of the parties' intentions.

No comparable term can be found in the 1996 Agreement.

Callaway seeks to have the Court read such a term into the Agreement, through a litigation forum selection clause directed to the agreed place to file district court actions. Had the parties to the Agreement wished for such a term to so broadly restrict all actions that the parties could take with regard to intellectual property and advertising, it must be presumed that they would have included it. Absent strong evidence that the parties intended the Agreement to entail such a broad restriction, the Court should not read it into the contact eleven years after the fact, however much this may assist Callaway's litigation tactics. "[F]or a court to add a limitation that is not found within the express language of the contract is untenable. That is because, 'absent grounds for reformation, it is not the proper role of a court to rewrite or supply

omitted provisions to a written agreement.'" *Alpine Inv. Partners v. LJM2 Capital Mgmt. L.P.*, 794 A.2d 1276, 1286 (Del. Ch. 2002) *quoting Cincinnati SMSA Ltd. v. Cincinnati Bell Cellular Sys.*, 708 A.2d 989, 992 (Del. 1998) (*quoted in* Callaway's Brief in Support of its Motion for Summary Judgment on Breach of Contract at 5 [D.I. 198].)  In short, the Court should reject Callaway's attempts to have the plain meaning of the Agreement rewritten.

### G.    Callaway is not a party to the 1996 Agreement.

Finally, as Acushnet has argued in its own motion for summary judgment, Callaway is attempting to enforce an incorrect and illogical reading of an agreement, to which Callaway was never a party. [D.I. 214 at 8-9].  Callaway may well be a successor to Spalding for purposes of the licensing of patents contained in the 1996 Agreement, but the face of the Agreement makes it apparent that only the ***parties*** to the Agreement, Spalding and Acushnet, are required to mediate disputes.



Callaway therefore cannot enforce the dispute resolution provisions of Section 19 of the 1996 Agreement.

Acushnet does not deny that the protocol used for the attempted resolution of this dispute generally followed that in the Agreement.  What occurred, however, was a voluntary effort to resolve Callaway's infringement suit prior to a suit being filed.  Such willingness to use a dispute resolution procedure similar to that in the 1996

Agreement in no way established in Callaway a right to enforce provisions of the 1996 Agreement which, on their face, do not provide Callaway any rights to dispute resolution.[6]

Callaway's attempt to shoe-horn its own interpretation onto the Agreement, despite the fact it has never been a party to it, must be rejected by the Court. This is most evident when it comes to the matter of contractual interpretation, which, as stated above, must be based on the intent of the parties. *Citadel Holding Corp.*, 603 A.2d at 822.

Acushnet further incorporates by reference its arguments regarding the absence of rights for Callaway under the 1996 Agreement as laid out in its brief supporting its motion for summary judgment of no breach of contract. [D.I. 214 at 8-9].

## VI.    CONCLUSION

For the foregoing reasons, Callaway's motion for partial summary judgment should be denied, and Acushnet's motion of no breach of contract should be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Tel:  (202) 783-0800

By:    */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Dated:  August 20, 2007
Public Version Dated:  August 27, 2007    *Attorneys for Defendant Acushnet Company*
815157 / 30030

---

[6] ██████████████████████████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 27, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 27, 2007, I have Electronically Mailed the document to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
shuman@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030

# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY