# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CALLAWAY GOLF COMPANY | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ACUSHNET COMPANY, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ACUSHNET COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO BREACH OF CONTRACT (COUNT V)

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

*Attorneys for Defendant Acushnet Company*

Dated: August 27, 2007
Public Version Dated: September 4, 2007
816542/30030

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................. ii

Introduction ............................................................................................................. 1

I.  Summary of the argument ............................................................................. 1

    A.  Callaway is not a Party under Section 19 of the 1996 Agreement ................................... 1

    B.  The 1996 Agreement does not bar Acushnet from filing for reexaminations with the PTO ................................................................................................................. 2

II.  Argument ............................................................................................................. 3

    A.  Callaway is not a party under Section 19 of the 1996 Agreement ................................... 3

        1.  The 1996 Agreement does grant benefits to the parties' successors. ....................... 3

        2.  The voluntary use of a dispute resolution protocol similar to that of the 1996 Agreement does not make the 1996 Agreement binding on this dispute. .............. 6

        3.  Callaway and Acushnet did not strictly follow the dispute resolution procedures of Section 19 of the 1996 Agreement. ................................................... 7

    B.  The 1996 Agreement does not bar Acushnet from filing for reexaminations with the PTO ................................................................................................................. 8

        1.  Callaway misses the plain meaning of the 1996 Agreement. ............................... 8

        2.  Callaway's interpretation of the 1996 Agreement produces absurd results. ......... 12

    C.  The PTO ruling that contracts prohibiting access to reexamination procedures would be void as against public policy deserves deference ............................................. 13

    D.  Callaway's Case Law Regarding Public Policy is Inapposite ......................................... 15

III.  Conclusion ............................................................................................................. 17

# TABLE OF AUTHORITIES

CASES

*Ali-Bocas v. Ashcroft,*
　　67 Fed. Appx. 83 (3rd Cir. 2003)................................................................14

*Baker-Bauman v. Walker,*
　　2007 U.S. Dist. LEXIS 23080 (S.D. Ohio May 29, 2002) ........................10

*Cathedral Candle Co. v. United States I.T.C.,*
　　400 F.3d 1352 (Fed. Cir. 2005).............................................................14-15

*Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.,*
　　467 U.S. 837 (1984)..............................................................................3, 14

*Christensen v. Harris County,*
　　529 U.S. 576 (2000)...................................................................................14

*Cincinnati SMSA Ltd. v. Cincinnati Bell Cellular Sys.,*
　　708 A.2d 989 (Del. 1998) ............................................................................5

*E.I. DuPont Nemours & Co. v. Admiral Ins. Co.,*
　　711 A.2d (Del. Super. Ct. 1995)...................................................................5

*Echolab, Inc. v. Paraclipse, Inc.,*
　　285 F.3d 1362 (Fed. Cir. 2002)..............................................................11, 13

*Flex-Foot, Inc. v. CRP, Inc.,*
　　238 F.3d 1362 (Fed. Cir. 2001).............................................................15-16

*Houston Atlas, Inc. v. Del. Mar Scientific,Inc.,*
　　217 U.S.P.Q. (BNA) 1032 (N.D. Tex. 1982)...............................................16

*In the Matter of the Appraisal of Ford Holdings, Inc. Preferred Stock,*
　　698 A.2d 973 (Del. Ch. 1997)....................................................................11

*In re Baker Hughes,*
　　215 F.3d 1297 (Fed. Cir. 2000)...................................................................16

*Panduit Corp. v. Hellermanntyton Corp.,*
　　451 F.3d 819 (Fed. Cir. 2006).............................................................2, 4, 6

*Skidmore v. Swift & Co.,*
　　323 U.S. 134 (1944)....................................................................................14

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.,*
　　748 F. Supp. 247 (D. Del. 1990)...............................................................5-6

*Thatcher v. Kohl's Dept. Stores, Inc.*,
    397 F.3d 1370 (Fed. Cir. 2005)..............................................................................2, 4, 6

*United States v. Armour & Co.*,
    402 U.S. 673 (1971)..............................................................................................4

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007)..............................................................................10


## STATUTES

28 U.S.C. § 1331 ............................................................................................... 10-11

28 U.S.C. § 1332(a) ...............................................................................................10

28 U.S.C. § 1338 ....................................................................................................10

28 U.S.C. § 1338(a) ...............................................................................................10

28 U.S.C. §1367 .....................................................................................................10

35 U.S.C. § 135 ......................................................................................................10

35 U.S.C. §301 ...................................................................................................3, 14

35 U.S.C. § 316(a) .................................................................................................16


## OTHER AUTHORITIES

Fed.R.Evid. 408 ...................................................................................................7, 9

**INTRODUCTION**

Acushnet Company ("Acushnet") files this reply memorandum in further support of its motion for summary judgment on Count V of the complaint. Acushnet will show that Callaway Golf Company's ("Callaway") Opposition [D.I. 240] agrees that summary judgment is proper as no fact disputes exist and fails to demonstrate a reason why Acushnet's motion should not be granted. Given that Callaway has failed to counter Acushnet's arguments, the Court should grant Acushnet's Motion for Summary Judgment of No Breach of Contract [D.I. 214].

**I.     SUMMARY OF THE ARGUMENT**

**A.     Callaway is not a Party under Section 19 of the 1996 Agreement**



The Federal Circuit has made clear that where there is no language specifically stating that benefits as well as obligations flow to successors, it will not read such a requirement into a

settlement agreement. *See Thatcher v. Kohl's Dept. Stores, Inc.*, 397 F.3d 1370, 1375 (Fed. Cir. 2005) (finding that where a party included language of assignment regarding obligations in a consent judgment, silence as to assignment of enforcement rights was "the functional equivalent of the parties' intent to exclude language of assignment.")  The Federal Circuit later cited to the same case to recognize the nature of settlement agreements as the result of in depth negotiations, which should not be altered by the Court reading terms in, absent clear language of intent. *See Panduit Corp. v. Hellermanntyton Corp.*, 451 F.3d 819, 827 (Fed. Cir. 2006) ("Settlement agreements, like consent judgments, reflect an agreement by hostile litigants on more than just contract terms; they reflect a compromise of contested legal positions in matters that are the subject of litigation.")

Moreover, despite Callaway's assertions to the contrary, Acushnet has never acknowledged that Callaway is a party to the 1996 Agreement.  Callaway admits that it and Acushnet did not precisely follow the dispute resolution procedure from the 1996 Agreement, and no voluntary actions by Acushnet in loosely following a dispute resolution protocol can convert Callaway to the status of a party to the 1996 Agreement.

### B.   The 1996 Agreement does not bar Acushnet from filing for reexaminations with the PTO

Nor does the 1996 Agreement bar Acushnet from filing reexaminations against Callaway's patents, even if Callaway did hold rights under Section 19 of the Agreement.  Here, once again, Callaway attempts to impose an impossibly broad reading onto the contract.  The plain language of the 1996 Agreement supports only one credible meaning: the Agreement requires that any legal action over which the United States District Court for Delaware has jurisdiction must be filed there.  Callaway has distorted the meaning of the "sole and exclusive" phrase in the 1996 Agreement, which plainly does not say, nor can it be fairly interpreted to mean, that Acushnet and Spalding had no remedy for any patent issue, except to file a lawsuit in Delaware.  On its face, the 1996 Agreement does not restrict access to reexamination procedures at the PTO.  Not only were *inter partes* reexaminations not available in 1996, and so cannot be

2

seen as waived by the Agreement, but also the Agreement includes no terms suggesting that reexamination procedures generally should be considered prohibited.  If the 1996 Agreement barred access to reexamination procedures, it would be void as against public policy.

Callaway misstates both Acushnet's arguments and the findings of the PTO in attempting to claim both that the PTO did not state that contracts barring access to reexamination would be void as against public policy, and that any *Chevron* deference is inappropriate.  Callaway claims incorrectly that the PTO is due no deference, for it was not interpreting a statute.  [D.I. 240 at 13].  Yet the PTO was interpreting a statute within its province.  The PTO was interpreting, through administrative decision-making, the *Inter Partes* Reexamination Statute, 35 U.S.C. §301.  In examining that statute and whether it should continue the reexamination process, the PTO ruled that any contract that prohibited access to the *inter partes* reexamination process would violate the statute's public policy and be void.  [D.I. 36, Ex. C at 5].  The PTO did not construe the 1996 Agreement, leaving that to this Court.  (*Id.* at 4, n.3.)  Thus, either the 1996 Agreement does not prohibit access to PTO reexamination procedures; or if it does, it is void as against public policy under the agencies' interpretation of the reexamination provisions.  Either way, Acushnet is entitled to an order that it did not breach the 1996 Settlement Agreement.

## II.    ARGUMENT

### A.    Callaway is not a party under Section 19 of the 1996 Agreement

#### 1.    The 1996 Agreement does grant benefits to the parties' successors.



The absence of language conferring on a successor the right to benefit from or step into the shoes of a party is fatal to Callaway's argument. *See, e.g., Thatcher*, 397 F.3d 1370.

In *Thatcher*, the plaintiff, successor-in-interest to a signatory of a consent judgment, which the court treated under the same rules it applies to the interpretation of settlement agreements, sought to enforce that judgment in the courts. Upholding a decision by the district court, the Federal Circuit found no language allowing Thatcher, the original signatory, to assign his rights. *Id.* at 1373-4. The court dismissed the argument that the absence of language of assignability should leave the rights of an agreement freely assignable to a successor-in-interest. *Id.* at 1374. In particular, the court stressed that the plain language of the consent judgment "specifie[d] successors and assigns when listing [Defendant's] obligations," but no provision assigned beneficial enforcement rights to the plaintiff's successors. *Id.* at 1375.

Courts acknowledge that settlement agreements should be read narrowly; as they represent "an agreement by hostile litigants on more than just contract terms; they reflect a compromise of contested legal positions in matters that are the subject of litigation." *Panduit Corp.*, 451 F.3d at 827 (also observing that settlement agreements are entered only after careful negotiations over its precise terms), *citing United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

4



Special care respecting settlement agreements put aside, a Court should not read terms into an agreement. *See E.I. DuPont Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d at 57 (Del. Super. Ct. 1995) ("When the contractual provision is clear and unambiguous, the court will give the provision's terms their plain meaning.") Callaway, however, seeks to add words to the clauses in question. Callaway's interpretation requires Section 19 of the Agreement to obligate the "parties *and their respective successors*" to litigate only in Delaware. Absent clear evidence of intent of the parties to the contract, a Court should not rewrite a contract that already has a plain meaning. *See Cincinnati SMSA Ltd. v. Cincinnati Bell Cellular Sys.*, 708 A.2d 989, 992 (Del. 1998).

In fact, such clauses that Callaway hopes be read into the 1996 Agreement would have effects that, coupled with Callaway's broad reading of the 1996 Agreement, would seem unlikely to have been the intent of the parties. The Agreement covers "[a]ny dispute arising out of relating to patents, including the above mentioned patents, [and] other intellectual property owned or controlled by the parties." [D.I. 31, Ex. A. at ¶ 19.1]. Under Callaway's reading, the 1996 Agreement would make the District of Delaware the sole and exclusive venue for *any* intellectual property disputes regarding *any* intellectual property held by *any* organization that may at any stage purchase the assets of either Acushnet or Callaway. Such an expansive reading of the scope of a settlement agreement signed in 1996 between Spalding and Acushnet is absurd.

Callaway seeks to impose itself into an agreement formed between two other companies. Acushnet's relationship with Spalding was not the same as its relationship with Callaway, which has consistently been adverse and combative. Callaway relies on *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247 (D. Del. 1990). In that case, the court found that "[a]s a

5

successor in interest, SGK retained [the rights to inspect Hercules' books] when they assumed Ziegler's position under the contract." *Id.* at 252-53.

*Kohle,* however, is distinguishable on the critical ground that there is no basis to conclude that successors "stand in the shoes" or assume the same rights and powers as did the parties to the 1996 Agreement.



In contrast, the Federal Circuit has found that such silence "is the functional equivalent of the parties' express intent to exclude language of assignment." *Thatcher,* 397 F.3d at 1375; *see also Panduit Corp.,* 451 F.3d at 827. The 1996 Agreement is silent on assignment of benefits; there is no basis to read such an assignment into it.

      **2.**    **The voluntary use of a dispute resolution protocol similar to that of the 1996 Agreement does not make the 1996 Agreement binding on this dispute.**





3. **Callaway and Acushnet did not strictly follow the dispute resolution procedures of Section 19 of the 1996 Agreement.**







**B.** **The 1996 Agreement does not bar Acushnet from filing for reexaminations with the PTO**

    **1.** **Callaway misses the plain meaning of the 1996 Agreement.**



---

[2] With the exception of Section 19.4, a provision that does not lay out a new step in the process.



The parties chosen language is both natural and understandable. Not all types of "disputes" concerning patents are amenable to resolution to a federal district court or in a "legal proceeding." Most obviously, disputes relating to patent interferences must be brought only in the PTO. *See* 35 U.S.C. § 135. Likewise, a dispute regarding the patentability of a pending patent application would have to be resolved by the PTO. Corrections of inventorship, other matters correctable by certificates of correction, and the like, all require that action be taken in the PTO, not federal courts.

Further, other types of "disputes" concerning "patents" are not within the jurisdiction of federal courts and would have to be decided elsewhere. Disputes about payment of patent royalties do not arise under 28 U.S.C. § 1338 and must be brought in state courts. Disputes about non-US patents cannot be resolved in federal court, at least not without diversity jurisdiction which there was not between Spalding and Acushnet.[3] The same is true of post-grant oppositions to foreign patents, which can only be disputed in the EPO or foreign patent office.

Patent disputes come in many varieties and can be resolved in many venues. Not all can be resolved in federal court. Hence, the parties to the 1996 Agreement logically provided for the permissive "may" verb in section 19.7, and struck a very logical position. [D.I. 31, Ex. A]. If the dispute was a legal proceeding, it must be brought in federal court in Delaware. However, the clause had no applicability to disputes that are not "legal proceedings" nor to disputes that are not within the jurisdiction or providence of this Court.

Acushnet has demonstrated repeatedly in other briefs that *inter partes* reexamination procedures before the PTO are not "legal proceedings." Callaway has not disputed this. [D.I.

---

[3] *See Voda v. Cordis Corp.*, 476 F.3d 887, 890 (Fed. Cir. 2007) (district court abused discretion in exercising supplemental jurisdiction pursuant to 28 U.S.C. §1367 over infringement claims based on foreign patents); *see also Baker-Bauman v. Walker*, 2007 U.S. Dist. LEXIS 23080, at *3-*7 and nn. 1 & 3 (S.D. Ohio May 29, 2007) (determining courts have not foreclosed exercising jurisdiction to hear foreign patent claims pursuant to federal diversity jurisdiction, 28 U.S.C. § 1332(a), but holding such foreign patent claims clearly do not arise under federal law or an act of Congress to exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331 or § 1338(a).)

240 at 12-13]. Under this rational and plain interpretation of the 1996 Agreement, there is no restriction on filing a request for *inter partes* reexamination with the PTO, and so Acushnet cannot be seen to have breached the 1996 Agreement.

Callaway attempts to redefine this straightforward meaning of the contract to assert that it does not matter whether PTO reexamination procedures are legal proceedings or not, as the 1996 Agreement prohibits them regardless. Per Callaway, "the only procedure for the parties to resolve patent-related disputes" is filing suit in this Court – "there are no alternatives." [D.I. 240 at 11]. But there is no basis for such a broad reading. Not only does Callaway ignore the Agreement's plain language, it also attempts to read in a clause which there is no evidence that the parties intended to include. The available evidence shows otherwise.

In its tortured attempts to justify its arguments, Callaway's opposition makes the following astonishing claim: "Had the parties wanted the option to file reexaminations with, or otherwise resort to, the PTO, they certainly could have included this option." (*Id.* at 12-13.) This shows a complete disregard for case law regarding waiver of statutory remedies. It is not up to parties to list the remedies that they *reserve* in an agreement, it is up to them affirmatively to waive those that they do wish to abandon forever. *See In the Matter of the Appraisal of Ford Holdings, Inc. Preferred Stock*, 698 A.2d 973, 979 (Del. Ch. 1997). The Federal Circuit held in *Echolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1376 (Fed. Cir. 2002) that waivers of the right to challenge patent validity would be construed narrowly, and would require a clear expression of content. There is no such waiver here.[4]

---

[4]



Nor could the parties have intended to waive access to *inter partes* reexamination proceeding in the PTO, as that administrative proceeding did not even exist in 1996. As Callaway has admitted: "*inter partes* reexaminations were not available in 1996." [D.I. 240 at 13, n.3]. Acushnet and Spalding therefore did not choose to waive the right to PTO reexaminations in their 1996 Agreement.

### 2.    Callaway's interpretation of the 1996 Agreement produces absurd results.

Callaway's expansive interpretation of the 1996 Agreement becomes apparent when its overall effects are examined. Callaway seeks to look at this individual situation in a vacuum, and proposes an interpretation which, if accepted, would produce absurdities. As a court must interpret a contract in the light of the intent of the original parties to it (in this case, Acushnet and Spalding), an interpretation that produces such results cannot be accepted.

Acushnet has already briefed the absurd results that will result from Callaway's interpretation. [D.I. 214 at 11-12]. As stated above, Callaway's expansive definition of the term "party" would lead to any patent dispute between any future owners of either Callaway or Acushnet regarding any intellectual property that they might own being required to be litigated in this Court. Most noticeably, Callaway's definition of the terms of the 1996 Agreement completely eviscerates any future role the PTO might play in regulating intellectual property sought or held by Acushnet or Callaway. According to Callaway, "[a]ny dispute arising out of or related to patents, including ... [all] ... intellectual property owned and controlled by the parties" must either be resolved by mediation or end up litigated in the United States District Court for the District of Delaware. [D.I. 240 at 11]. There is no place for the PTO in such a definition. Filing a patent that might impact on intellectual property held by Callaway would therefore be impossible for Acushnet. Filing an interference on a new patent filed by Callaway would also be prohibited to Acushnet under Callaway's definition. None of these proceedings can be brought in a federal district court – they may only be brought to the PTO. Yet, under Callaway's view, these proceedings are ways of resolving "disputes," and they are "dispute[s] arising out of or

related to patents, including … [all] … intellectual property." Under Callaway's definitions,

Acushnet and Spalding intended to waive access not only to reexaminations, but to all these

other PTO functions that cannot be duplicated by a federal district court. Once again, cases such

as *Echolab* would caution district courts to construe waivers of the right to challenge patent

validity narrowly, and to seek a clear indication of intent before finding such a waiver. 285 F.3d

at 1376.

###### C.    The PTO ruling that contracts prohibiting access to reexamination procedures would be void as against public policy deserves deference

Callaway claims that the PTO did not interpret the meaning of the 1996 Agreement, and

that even if it did, this Court should not grant deference to the PTO's reading. [D.I. 240 at 13-

16]. On the first argument, Callaway misses the point; on the second, it is simply incorrect.

Callaway is correct in stating that the PTO did not "make a determination regarding the

validity and applicability of the Settlement Agreement." [D.I. 36, Ex. C at 43]. What the PTO

did, however, was analyze the standing of agreements which might purport to prohibit access to

reexamination over the *inter partes* reexamination statute itself, which vests the PTO with

authority to hear those proceedings. The PTO found that such an agreement would be void as

against public policy.

> [A] contractual provision preventing a party from seeking
> reexamination would be void as being contrary to public policy.

[D.I. 36, Ex. C at 5].

The PTO did not construe the 1996 Agreement to decide if it prevented a party from

seeking reexamination. Such a determination is to be made under state contract law, and is the

province of this Court. This hardly helps Callaway's case, however. Either the 1996 Agreement

prohibits a party seeking reexamination, and so is void as against public policy; or it does not

prohibit it, and so Acushnet did not violate the Agreement when it filed for reexamination. If

either of these is true, and the Court shows deference to the PTO finding, then Acushnet is entitled to summary judgment of no breach of contract.

Callaway, realizing this, attempts to argue that no deference is due the PTO under *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S. 837 (1984). According to Callaway, "[i]nterpreting private contracts is the province of a court. There is no PTO regulation governing the 1996 Settlement Agreement at issue here." [D.I. 240 at 14].

Callaway fundamentally misrepresents the interpretation that the PTO has undertaken. The PTO is charged by statute, 35 U.S.C. §301, to undertake *inter partes* reexaminations. In interpreting **this** statute, the PTO articulated a **general** rule that contracts which prohibited access to reexamination would be void as against public policy. It is for courts to determine whether a given contract prohibits access in this way. Under *Chevron*, an agency is permitted to administer programs and formulate policies and make rules within its sphere of competence. As Callaway reminds us, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. Here, the PTO, as part of an administrative decision, interpreted a statute that defined part of the PTO's responsibilities. While this came about as part of a decision, rather than through formal rulemaking,[5] courts "generally afford deference to decisions of administrative agencies when [they] are reviewing the agency's interpretation of a statute the agency is charged with administering." *Ali-Bocas v. Ashcroft*, 67 Fed. Appx. 83, 86 (3rd Cir. 2003). *See also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("interpretations contained in formats such as opinion letters are entitled to respect.") (internal citations omitted); *Cathedral Candle Co. v. United States I.T.C.*, 400 F.3d 1352, 1366 (Fed. Cir. 2005).

Determining whether private parties may contract away access to reexaminations is within the sphere of administering such programs. Callaway does not argue, nor can it, that the

---

[5] Even if the ruling by the PTO is seen as equivalent to an opinion letter by an agency, it still qualifies for deference from the Court under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (giving statutory interpretation by agency decision-making deference based on persuasiveness and thoroughness of consideration.)

PTO's finding here was "arbitrary, capricious, or manifestly contrary to the statute." *Id.* Nor can it argue that the PTO did not perform a serious review of the public policy issues involved before making its ruling. As such, the PTO's interpretation of the reexamination statute is entitled to deference by the Court. As stated above, it is now left for the Court to determine whether as a matter of contract interpretation the 1996 Agreement bars access to *inter partes* reexaminations. Acushnet maintains it does not; Callaway maintains it does. Even if Callaway is correct however, the 1996 Agreement should be void as against public policy. Thus, whichever determination the Court makes, Acushnet should be granted summary judgment on this issue.[6]

### D.    Callaway's Case Law Regarding Public Policy is Inapposite

Finally, Callaway cites to case law which "upheld clauses in settlement agreements prohibiting a party from challenging the validity of a patent altogether." [D.I. 240 at 16]. Callaway relies, for example, on *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001).

First of all, Callaway made all these arguments to the PTO during its efforts to stop the reexamination and the PTO rejected them. *See, e.g.* Callaway's Petition to Vacate Reexamination Orders [D.I. 10, Ex. G]. Thus, while Callaway may disagree with the policy determination of the PTO, it can not deny that its arguments were considered and rejected by the PTO in forming its policy.

Second, and more fundamentally, the facts here are entirely different to those in *Flex Foot*. *Flex Foot*, and cases like it, generally enforce settlement agreements settling discrete, actual disputes over one or a small number of patents, often after years of litigation. Society's interest in preserving settlements is strong is such circumstances. Callaway, on the other hand, seeks to expand the 1996 Agreement to cover ***all*** patents held by either Acushnet or Callaway (who is not even a party to the agreement), and indeed all intellectual property held by any

---

[6] In regards to public policy it is especially noteworthy that the Agreement provides for "the law of the United States" to control over state law in the event of a conflict. The PTO has spoken on the relevant federal law and whether it would supersede a contract as interpreted by Callaway.

companies who may for the uncertain duration of the Agreement come to purchase either of the companies.[7]

A broad prohibition on access to the PTO has a fundamentally different effect on public policy than the recognition between litigants that one will not challenge the validity of two existing patents that were the actual subject matter of the litigation leading to the settlement. There is a strong public policy supporting the PTO's duty to cancel claims that are unpatentable. *See* 35 U.S.C. § 316(a); *Houston Atlas, Inc. v. Del. Mar Scientific, Inc.*, 217 U.S.P.Q. (BNA) 1032, 1037 (N.D. Tex. 1982); *In re Baker Hughes*, 215 F.3d 1297, 1302 (Fed. Cir. 2000) (the public interest "lies in having valid patents upheld and invalid patents rendered invalid.")

Callaway's interpretation of the 1996 Agreement does not, like *Flex-Foot*, seek only to settle dispute over a finite defined universe of patents. Callaway's expansive interpretation runs to a potentially infinite array of patents, held by multiple as yet unknown companies. The public interest cannot be served by permitting all these patents to be shielded from PTO reexamination, and the PTO recognized that reality when it ruled that settlement agreements prohibiting access to reexamination would be void as against public policy. [D.I. 36, Ex. C at 5]. Callaway has cited to no case law suggesting that such a broad abrogation of rights in the face of a strong contrary public interest has ever been upheld.

## III.    CONCLUSION

For the forgoing reasons and those additional reasons articulated in Acushnet's opening

brief, Acushnet is entitled to partial summary judgment for no breach of contract.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: August 27, 2007
Public Version Dated: September 4, 2007
816542/30030

By:    /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      Wilmington, DE  19899
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on September 4, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on September 4, 2007, I have Electronically Mailed the document to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030