IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>    Defendant. | C. A. No. 06-91 (SLR)<br><br>**PUBLIC VERSION** |

**CALLAWAY GOLF COMPANY'S *REPLY* IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF BREACH OF CONTRACT**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Plaintiff
Callaway Golf Company*

DATED: August 27, 2007
REDACTED: September 4, 2007

# **TABLE OF CONTENTS**

                                                                             **Page**

- A. Callaway Golf's reading of the 1996 Agreement is logical and correct. ................................................................................1
  1. The parties did not agree to follow a dispute resolution process that "generally resembled" the 1996 Agreement, they followed the 1996 Agreement ................................................................................3
  2. That Callaway Golf was not an original party to the Agreement in 1996 is entirely irrelevant ................................3
- B. That *inter partes* reexamination was not included is irrelevant, as is whether reexamination is a legal proceeding or an administrative proceeding ................................4
  1. That *inter partes* reexamination was not available at the time of the Agreement is irrelevant ................................4
  2. The 1996 Agreement is a waiver of any dispute resolution procedure not expressly listed therein ....................5
  3. Whether *inter partes* reexaminations are a "legal proceeding" or an "administrative proceeding" is either irrelevant or helpful to Callaway Golf ................................7
- C. *Inter partes* reexamination is a dispute resolution process ................................................................................7
- D. Acushnet's alarmist view of Callaway Golf's "extremist reading" of the 1996 Agreement is nonsensical .......................9
- E. The PTO did not address, much less reject Callaway Golf's interpretation of the 1996 Agreement ..........................10

II. CONCLUSION ................................................................................11

# TABLE OF AUTHORITIES

Page(s)

CASES

*Flex-Foot, Inc. v. CRP, Inc.*,
 238 F.3d 1362 (Fed. Cir. 2001)..................................................................................6

*Newton v. Rumery*,
 480 U.S. 386 (1987).................................................................................................6, 7

*Studiengesellschaft Kohle, mbH v. Hercules, Inc.*,
 748 F. Supp. 247 (D. Del. 1990)..............................................................................4

**REDACTED**

arguing that for the last few years, the parties were not acting pursuant to the Agreement but, rather, following a procedure that "generally resembled" it. It makes this argument in an attempt to downplay the repeated times that it has told this Court and the PTO that the parties were acting pursuant to the Agreement. Acushnet's effort to run away from its own statements is without merit. The parties were following the 1996 Agreement as they were bound to do.

Acushnet also argues that the Agreement is void as against public policy because statutory rights cannot be waived. The very fact Acushnet makes this argument demonstrates the weakness of its position on the merits. Also, the public policy argument ignores binding Federal Circuit law as well as case law that Acushnet relies on in its Motion for Summary Judgment of No Breach of Contract that explicitly holds to the contrary. Regardless, Acushnet's arguments are of no avail – it breached the 1996 Settlement Agreement when it filed its four requests for *inter partes* reexamination.

    **A.**    **Callaway Golf's reading of the 1996 Agreement is logical and correct.**

. The Agreement was entered

into to foster communication between the parties to potentially resolve a dispute informally rather than a party first learning of a problem via service of a complaint.

**REDACTED**

1. **The parties did not agree to follow a dispute resolution process that "generally resembled" the 1996 Agreement, they followed the 1996 Agreement**

Acushnet cannot take back the numerous times that it has said to this Court that the parties followed the 1996 Agreement. [For a detailed list, see Callaway Golf's Opposition to Acushnet's Motion for Summary Judgment, (hereinafter "Callaway Golf's Opposition") D.I. 240, at 8-9] In an effort to argue that the Agreement did not apply, but faced with its previous statements to the Court, Acushnet now attempts to distance itself from those statements by making the unfounded argument that rather than following the Agreement itself, the parties followed a process that "generally resembled" the 1996 Agreement. This is ridiculous. For years the parties followed the dispute resolution procedure of the Agreement not because it was a useful model of a dispute resolution procedure but because it *applied and was controlling* between them. [The facts of the parties' conduct and this argument has been fully briefed and set forth in Callaway Golf's Opposition, D.I. 240 at 6-11]. Acushnet's complete reversal now is nothing more than an attempt to avoid liability for conduct it knows was in breach of the Agreement, and is in direct contravention of the numerous times that it has stated to this Court and the PTO that the Agreement was in effect and binding between the parties.

2. **That Callaway Golf was not an original party to the Agreement in 1996 is entirely irrelevant**

Acushnet repeatedly notes that Spalding was an original party to the 1996 Agreement but not Callaway Golf. To the extent that Acushnet is arguing that the Agreement does not apply because Callaway Golf was not an original party, the argument is so forcefully refuted by the plain language of the Agreement.

3

. *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252-53 (D. Del. 1990) (stating that "[a]s a successor in interest SGK retained these rights when they assumed Ziegler's position under the contracts.").

. Thus Acushnet's argument fails.

    **B.**    **That *inter partes* reexamination was not included is irrelevant, as is whether reexamination is a legal proceeding or an administrative proceeding**

        **1.**    **That *inter partes* reexamination was not available at the time of the Agreement is irrelevant**

## REDACTED

. Had the parties wanted the option to file reexaminations with, or otherwise resort to, the PTO, they certainly could have included this option.[1] However, the parties chose not to, instead choosing the final dispute resolution method as a lawsuit in the District Court of Delaware. The 1996 Settlement Agreement lists only that conduct that is permitted.

---

[1] Although *inter partes* reexaminations were not available in 1996, the substantively similar *ex parte* reexaminations were and the parties could have included it as an alternative method to resolve certain aspects of a potential patent dispute.

4

**REDACTED**

.

Acushnet's reliance on a totally unrelated agreement between Callaway Golf and Acushnet is factually and legally incorrect. [D.I. at 13] First, the agreement that Acushnet cites is entirely unrelated to the 1996 Agreement. In fact, in 2001 when that agreement was entered into, Callaway Golf was not yet a party to this Agreement as Callaway Golf had yet to acquire Spalding's golf ball business. Second, it is legally incorrect to use an unrelated agreement entered into by different parties to interpret another agreement. Notably, Acushnet did not cite to any law in support of its argument, nor can it.

Equally of no avail to Acushnet is that Callaway Golf did not inform Acushnet that when Acushnet first threatened to file the reexamination proceedings that Callaway Golf would view that as a breach. The Agreement is clear – reexaminations are not permitted. Callaway Golf was under no obligation to inform Acushnet, a multi-billion dollar company with savvy legal counsel, that its course of conduct would be in breach of the Agreement.

### 2. The 1996 Agreement is a waiver of any dispute resolution procedure not expressly listed therein

Acushnet's argument that a *contract* could not be read to waive a statutory right is incorrect. [D.I. 239 at 12] First, it is important to remember that the 1996 Agreement is more than a contract, it is a settlement agreement, and settlement agreements are broadly enforced because of controlling public policy that they be enforced so parties are more likely to enter into them. *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369 (Fed. Cir. 2001). Second, as the case law that Acushnet relied on shows, settlement agreements are frequently interpreted to waive statutory rights.

*Newton v. Rumery*, 480 U.S. 386 (1987), the lone case relied on by Acushnet that involves a settlement agreement, shows that statutory rights can be waived. The settlement agreement in that case was enforced despite public policy considerations to the contrary. Rumery, a private citizen, had been arrested for witness tampering in New Hampshire. In exchange for dismissing the charges against him, the prosecutor and Rumery entered into a release-dismissal agreement whereby Rumery agreed to release any claims against the town for any harm caused by his arrest in exchange for the charges against him being dismissed. Shortly thereafter, Rumery sued alleging the town had violated his Constitutional rights by arresting him, defaming him, and falsely imprisoning him. In light of the release-dismissal agreement, the District Court dismissed the case.

The Court of Appeals reversed, holding that release-dismissal agreements are *per se* invalid as void against public policy. The Court of Appeals stated that such agreements would provide an incentive to "prosecutors to trump up charges in reaction to a defendant's civil right's claim, suppress evidence of police misconduct, and leave unremedied deprivations of constitutional rights." *Id*. at 391. The Supreme Court reversed the Court of Appeals. "We think the court overstated the perceived problems and also failed to credit the significant public interests that such agreements can further." *Id*. at 392. Notably, the Supreme Court's decision implicitly endorses the undeniable fact that Rumery was waiving his statutory and Constitutional right to seek redress against the town. Thus, a settlement agreement can, and almost always does, waive a statutory right.

It also bears repeating that the interest Acushnet claims to be serving instead -- invalidating improperly issued patents – does not in this case compete with the interest in fostering settlements. Acushnet is free to contest the validity of the patents, as it is doing in this

6

suit. Indeed, for all the reasons Callaway Golf has identified in its filings opposing Acushnet's various attempts to stay this case, challenging validity in this Court is a ***better*** way to ultimately resolve the question than a much more limited challenge in the PTO. Indeed, the only way for this Court to ensure that both policies are served (enforcing settlements on the one hand and providing a forum for challenging patent validity on the other) is by granting Callaway Golf's motion for summary judgment. If Acushnet is allowed to violate a settlement provision that is so clear, parties like Callaway Golf will have less incentive to settle future disputes.

### 3. Whether *inter partes* reexaminations are a "legal proceeding" or an "administrative proceeding" is either irrelevant or helpful to Callaway Golf

Whether an *inter partes* reexamination is characterized as a legal proceeding or an administrative proceeding is irrelevant: If it is the former, Acushnet breached the agreement by filing a "legal proceeding" in the wrong forum; if it is the latter, an administrative proceeding, then Acushnet breached the Agreement because it only allows for legal proceedings in the District Court for Delaware. Regardless of the characterization that is placed on a reexamination, the Agreement does not allow for it and Acushnet's argument is wrong.

This argument has been fully briefed by Callaway Golf, therefore, rather than readdress it here again, Callaway Golf respectfully directs the Court's attention to Callaway Golf's Opposition to Acushnet's Motion for Summary Judgment of No Breach, D.I. 240, at 12-13.

### C. *Inter partes* reexamination is a dispute resolution process

Acushnet argues that the 1996 Settlement Agreement does not apply because *inter partes* reexaminations are not a form of "dispute resolution." [D.I. 239, 7-9]. Like Acushnet's other arguments, this one also fails both factually and legally.

7

15]. Here, the dispute is clear: Callaway Golf claims that Acushnet infringes its patents and Acushnet claims that Callaway Golf's patents are invalid. Acushnet previously represented to this Court that the *inter partes* reexaminations will address all issues relating to patentability. [See D.I. 22 at 10-11]. Indeed, that is the primary basis on which Acushnet repeatedly sought to stay this litigation. One wonders how Acushnet could logically tell this Court to stay its own dispute resolution process in favor of a proceeding that Acushnet now says is not a dispute resolution procedure.

## REDACTED

. Had Acushnet believed that *inter partes* reexaminations were not "a dispute resolution procedure" pursuant to the 1996 Settlement Agreement,

That Acushnet filed the reexamination requests at the time and in the manner it did confirms that Acushnet believes that its requests are another step in resolving the overall dispute between the parties.

Contrary to Acushnet's musings, its role in the *inter partes* reexaminations is not "akin to that of a witness." A witness does not submit over 1,100 pages of documents in support of its request for the reexaminations in the first place, nor does it file oppositions to the patentee's response to the examiner's office actions in the second place. Acushnet is very much an adversary not a witness.

8

Acushnet correctly acknowledges that "Callaway has repeatedly stated that the reexamination process cannot be seen as a replacement for the legal process in this Court." [D.I. 239, at 8]  That is correct because reexamination cannot address all of the issues between the parties, like Acushnet's breach of the 1996 Settlement Agreement – but that does not make the *inter partes* reexaminations any less of a dispute resolution mechanism.  After all appeals were concluded, if the PTO were to finally reject all claims of the patents in suit, then the patent aspect of this dispute would be over – the fact that it cannot address *all* of the issues between the parties does not somehow render it something other than a dispute resolution process.  The point is that the PTO cannot efficiently resolve even the patent aspects of this case, nor can it consider all of the evidence that this Court can in reaching its conclusion.  There is nothing inconsistent about Callaway Golf's position as Acushnet suggests.  [*Id.* at 9]  First, reexamination is far less efficient and not as thorough as this Court's proceedings.  Second, Acushnet mistakenly presumes that all legal proceedings are permitted by the 1996 Agreement, while administrative proceedings are not – that is wrong.

## REDACTED

.

**D.  Acushnet's alarmist view of Callaway Golf's "extremist reading" of the 1996 Agreement is nonsensical**

Acushnet parades a list of horribles that it argues would be the result if the Court adopted Callaway Golf's "reading" of the Agreement – namely, "parties could not seek additional patents if adverse to the other or file interference proceedings petitioning the PTO to act in other ways adverse to the others patents." [ D.I. 239, at 3].  This is nonsensical.  Notably, Acushnet does not cite to any language that it believes Callaway Golf is interpreting to reach this result.  Rather it makes the argument hoping the Court will believe this is a likely result – it is not.  First,

9

absolutely nothing in the 1996 Agreement prevents any party from filing patents. Acushnet is free to file as many patents as it likes.

**REDACTED**

. Furthermore, as to Acushnet's "interferences" argument – parties do not file interference proceedings. Interference proceedings are not like *inter partes* reexaminations that a party can petition the PTO to initiate – the PTO in reviewing patent applications determines whether there is overlapping subject matter and, if so, whether an interference needs to be invoked. Parties do not file interference proceedings.

### E. The PTO did not address, much less reject Callaway Golf's interpretation of the 1996 Agreement

Contrary to Acushnet's assertions, the PTO did not reject Callaway Golf's petition to vacate the reexamination orders as *ultra vires* based on the 1996 Settlement Agreement. Rather, the PTO expressly declined to interpret the 1996 Settlement Agreement.

> Patent owner [Callaway Golf] has not established the Office has jurisdiction to make a determination regarding the validity and applicability of the Settlement Agreement, or to make any findings regarding the facts alleged in patent owner's petition or the third party requester's opposition to patent owner's petition. *No such determination has been, or will be, undertaken by the Office.*

[*See* D.I. 36, Ex. C at 4 n.3 (emphasis added)]. In fact, the PTO went on to conclude that whether Acushnet breached the Agreement and what the sanction would be is a decision best left to a "court of competent jurisdiction." [D.I. 241, Ex. 1]. Moreover, it is nonsensical to suggest that the PTO's non-decision – on a question of law such as contract interpretation, no less – would bind this Court. [For a more thorough discussion, see Callaway Golf's Opposition Brief,

D.I. 240 at 13-16] The end result is that the PTO left it to this Court to determine whether Acushnet breached the 1996 Settlement Agreement.

## II.   CONCLUSION

For the foregoing reasons and those expressed in Callaway Golf's Brief in Support of Its Motion For Summary Judgment of Breach of Contract, Callaway Golf's motion for summary judgment should be granted and Acushnet's should be denied.

Dated: August 27, 2007                     FISH & RICHARDSON P.C.


By: */s/ Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

David J. Miclean
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

**ATTORNEYS FOR PLAINTIFF
CALLAWAY GOLF COMPANY**

80048830.doc

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2007, the attached document was electronically filed with the Clerk of Court using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on September 4, 2007, I have Electronically Mailed the document to the following person(s):

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com | Attorneys for Defendant<br>ACUSHNET COMPANY |
| Alan M. Grimaldi, Esq.<br>Joseph P. Lavelle<br>Brian Rosenthal<br>Clint Brannon<br>Kenneth Donnolly<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>grimaldia@howrey.com<br>lavellej@howrey.com<br>rosenthalB@howrey.com<br>brannonC@howrey.com<br>donnellyk@howrey.com | Attorneys for Defendant<br>ACUSHNET COMPANY |

/s/ Thomas L. Halkowski
Thomas L. Halkowski

1