IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

        Plaintiff,

v.

ACUSHNET COMPANY,

        Defendant.

C. A. No. 06-91 (SLR)

**PUBLIC VERSION**

# REPLY IN SUPPORT OF CALLAWAY GOLF'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED: August 27, 2007
REDACTED: September 4, 2007

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................1

II.   ARGUMENT ................................................................................2

    A.    Nesbitt Does Not Incorporate the Disclosure of
    Polyurethane From Molitor '637..........................................................2

        1.    Nesbitt's Mere Mention of the Molitor '637
        Patent Fails the *Advanced Display* Test for
        Incorporation by Reference............................................................2

            a.    Unlike Nesbitt's Brief Mention of Molitor
            '637, the Discussion Found to Effect
            Incorporation in *Hughes* Was Lengthy
            and Highly Specific..............................................................3

            b.    *Voss* Addressed "Incorporation" in the
            Context of 35 U.S.C. § 112, Which
            Involves Different, and Far More
            Lenient, Considerations Than
            "Incorporation" in the Context of
            Anticipation Under 35 U.S.C. § 102..................................4

        2.    Acushnet Cannot Rely on the Non-Precedential
        *Southern Clay* Decision. ..............................................................5

        3.    Acushnet Mischaracterizes the *Liebel-Flarsheim*
        and *Cook Biotech* Cases, Both of Which
        Involved an Express Incorporation by Reference. .........................6

        4.    Contrary to Acushnet's Assertion, Molitor '637
        Discloses More Than One Ionomer Composition. ........................8

        5.    Because Incorporation Must Be Considered
        From the Perspective of One Skilled in the Art,
        Nesbitt's Testimony is Relevant to Establish
        What That Perspective Is. ...............................................................9

        6.    The PTO Has Rejected Acushnet's Incorporation
        by Reference Argument. ................................................................12

    B.    Even if Nesbitt Incorporated by Reference From Molitor
    '637 a Disclosure of "Polyurethane," Nesbitt Would Still
    Fail to Disclose an Outer Cover Layer Having a Shore D
    Hardness of 64 or Less................................................................12

        1.    Under the Proper Construction of "Shore D
        Hardness," Acushnet Has No Competent

i

## TABLE OF CONTENTS (cont'd)

**Page**

Evidence Showing That Nesbitt Inherently
Discloses a Polyurethane Outer Cover With a
Shore D Hardness of 64 or Less. ..................................................12

2.    Under Acushnet's Improper Construction of
"Shore D Hardness," Acushnet Still Cannot
Show That Nesbitt Inherently Discloses a
Polyurethane Outer Cover With a Shore D
Hardness of 64 or Less...............................................................15

III.   THE PROUDFIT DECLARATION SHOULD BE
DISREGARDED AS UNTIMELY. ...................................................16

IV.   CONCLUSION...................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

*Advanced Display System v. Kent State University,*
212 F.3d 1272 (Fed. Cir. 2000)...........................................................4, 8, 12, 18

*Atmel Corp. v. Information Storage Devices, Inc.,*
198 F.3d 1374 (Fed. Cir. 1999).....................................................................8, 10

*Bell & Howell Document Management Products v. Altek System,*
132 F.3d 701 (Fed. Cir. 1997).] ..................................................................18, 20

*C.R. Bard, Inc. v. M3 System, Inc.,*
157 F.3d 1340 (Fed. Cir. 1998)...........................................................................30

*In re Hughes,*
550 F.2d 1273 (C.C.P.A. 1977) .............................................................................6

*Markman v. Westview Institute, Inc.,*
52 F.3d 967 (Fed. Cir. 1985), *aff'd,* 517 U.S. 370 (1986)...............................22

*Richardson v. Suzuki Motor  Co., Ltd.,*
868 F.2d 1226 (Fed. Cir. 1989)...........................................................................30

*In re Voss,*
557 F.2d 812 (C.C.P.A. 1977) ..............................................................................8

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
209 F. Supp. 2d 348 (D. Del. 2002)...............................................................28, 30

## STATUTES

35 U.S.C. § 102.....................................................................................................8

35 U.S.C. § 112.....................................................................................................8

## I.    INTRODUCTION

Acushnet cannot deny that, without a finding that polyurethane (and, specifically, Estane 58133) is incorporated by reference into Nesbitt, it is impossible for Nesbitt to anticipate any of the asserted claims.  Accordingly, Acushnet continues to ignore the requirements of *Advanced Display*, in which the Federal Circuit unequivocally stated that no incorporation by reference can be found unless the host document identifies the incorporated material with "detailed particularity" and includes a "clear indication" of where that material is found in the secondary reference.  In its attempt to avoid an analysis under this standard, Acushnet relies on C.C.P.A. cases decided long before *Advanced Display* and a non-precedential opinion of the Federal Circuit in which the court arguably applied a less rigorous standard than the "clear indication" test, prompting a vigorous dissent.  Even if any of these cases could be interpreted as an example of an effective incorporation-by-reference under *Advanced Display*, none would justify a finding of incorporation based on language as brief and general as Nesbitt's mention of Molitor '637.

With no incorporation of polyurethane – either of polyurethane generally or Estane 58133 specifically – Acushnet cannot show that Nesbitt discloses either an outer cover layer comprising polyurethane or an outer cover having a Shore D hardness of 64 or less.  Moreover, with no incorporation of a blended low-acid ionomer inner cover layer, Nesbitt cannot anticipate the many asserted claims that include that limitation.

With regard to the two claims that do not require polyurethane in the outer cover layer – claims 1 and 2 of the '130 patent – Acushnet has presented a surprise declaration from James Proudfit, whom Acushnet never previously identified as a potential witness in this case.  Even if the Court were to give effect to Mr. Proudfit's belated declaration, Acushnet is incorrect that it must automatically prevail on its motion for summary judgment that claims 1 and 2 of the '130 patent are anticipated.

## II.     ARGUMENT

### A.     Nesbitt Does Not Incorporate the Disclosure of Polyurethane From Molitor '637.

Callaway Golf has explained at length in its opening brief, as well as in its Opposition to Acushnet's Motion for Summary Judgment of Invalidity (D.I. 244) and its Opposition to Acushnet's Motion for Summary Judgment of Incorporation by Reference (D.I. 242), that Nesbitt's reference to Molitor '637 lacks the "detailed particularity" and "clear indication" of either polyurethane or blended low-acid ionomers that would be required, under the two-part test of *Advanced Display*, to incorporate either of those materials by reference. Acushnet's Opposition to Callaway Golf's Motion for Summary Judgment of No Anticipation (D.I. 238) again fails to conduct a proper analysis under *Advanced Display*, relying instead on two 30-year old cases from the C.C.P.A. and a non-precedential opinion of the Federal Circuit.

Acushnet's Opposition, besides rehashing the erroneous arguments it relies upon in its other briefs, includes further misstatements of the facts and the law. These red herrings do not establish that Acushnet can meet the *Advanced Display* test, or can be excused from it, or that the test is not controlling law.

### 1.     Nesbitt's Mere Mention of the Molitor '637 Patent Fails the *Advanced Display* Test for Incorporation by Reference.

The test for incorporation by reference is clear: "the host document must identify *with detailed particularity* what specific material it incorporates and *clearly indicate* where that material is found in the various documents." *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

Acushnet attempts to sidestep the governing law by citing *In re Voss* (1977) and *In re Hughes* (1977), which were decided long before *Advanced Display*. Neither of these cases compels the conclusion that Nesbitt's passing reference to Molitor '637 effects an incorporation-by-reference of any of the hundreds of compounds Molitor discloses.

a.    **Unlike Nesbitt's Brief Mention of Molitor '637, the Discussion Found to Effect Incorporation in *Hughes* Was Lengthy and Highly Specific.**

In *Hughes*, the C.C.P.A. found that a prior-art patent, the "Clampitt" patent, incorporated by reference a co-pending application, the 131,108 application, by including the following discussion of that application:

> Copending application Ser. No. 131,108, filed Aug. 14, 1961 by Jack Hurst and Harry D. Anspon describes the preparation of aqueous dispersions of water-insoluble, self-emusifiable ethylene polymers containing pendent carboxylate groups which can be suitable employed in the process of this invention. As described therein, water-insoluble, but self-emusifiable ethylene polymers containing pendent carboxylate salt groups are prepared by the hydrolysis in an aqueous medium of the acrylate groups of a thermoplastic ethylene-alkyl acrylate interpolymer employing elevated temperatures, a metallic base, and, optionally, a nitrogenous base to produce a stable aqueous dispersion of the ethylene polymer. Reference is made to application Ser. No. 131,108 for complete descriptions of methods for preparing aqueous polymeric dispersions applicable in the hereinafter described invention.

*In re Hughes*, 550 F.2d 1273, 1274-75 (C.C.P.A. 1977).

Even if the 1977 *Hughes* opinion could be regarded as an example of what sort of language suffices to effect incorporation under the 2000 *Advanced Display* standard, the Clampitt patent's lengthy discussion of the 131,108 application – which includes a detailed identification and characterization of what that application discloses – is far more descriptive, specific, and clear than the Nesbitt patent's cursory mention of the Molitor '637 patent, which consists only of:

> Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16 for the golf ball of this invention.

[D.I. 238 Ex. 2 ('193 patent) col. 3:56-61.]

3

    **b.**   ***Voss* Addressed "Incorporation" in the Context of 35 U.S.C. § 112, Which Involves Different, and Far More Lenient, Considerations Than "Incorporation" in the Context of Anticipation Under 35 U.S.C. § 102.**

  *Voss* addressed incorporation not in the context of 35 U.S.C. § 102, to determine whether the host document anticipated a later patent, but under 35 U.S.C. § 112, paragraph 1, to determine if the applicant's patent specification included sufficient support for the claims. *In re Voss*, 557 F.2d 812, 815 (C.C.P.A. 1977). The difference is material – a reference that satisfies section 112, paragraph 1 does not necessarily function as an incorporation by reference for purposes of § 102.

  The inquiry under section 112, paragraph 1 is whether a host patent's reference to an external disclosure suffices to support the claims of the host patent:

> Paragraph 1 [of 35 U.S.C. § 112] permits resort to material outside of the specification in order to satisfy the enablement portion of the statute because it makes no sense to encumber the specification of a patent with all the knowledge of the past concerning how to make and use the claimed invention.

*Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999). Thus, a patent's reference to an external disclosure suffices to satisfy section 112 as long as the reference directs the reader to information necessary to "make and use" the claimed invention. *See id.*

  In contrast, a reference to an external disclosure is effective as an "incorporation by reference" under section 102 <u>only</u> if the host document cites the external disclosure "***in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.***" *Advanced Display*, 212 F.3d at 1282. In an analysis of incorporation under section 102, the focus is not on whether the host patent provides adequate support for its own claims – the inquiry is whether one reading the host document would regard the external reference and the host document as a single, integrated document. *See id.* This is a considerably more stringent inquiry than the analysis under section 112, paragraph 1, where the only question is whether the reference

to the external document enables one of skill in the art to make and use the claimed

invention. *See Atmel*, 198 F.3d at 1382. Certainly a person of skill in the art can rely on

the enabling teachings of an external reference without considering that reference part of

the host document that mentions it.

### 2. Acushnet Cannot Rely on the Non-Precedential *Southern Clay* Decision.

Although the Federal Circuit now permits citation to non-precedential decisions,

the new rule applies only to opinions issued after January 1, 2007. Fed. Cir. L.R. 32.1

(2007). Thus, Acushnet cannot rely on *Southern Clay*, an unpublished 2002 opinion, as

precedent. *See id.*; *see also* Fed. Cir. L.R. 47.6 (2006) (superseded by new Fed. Cir. L.R.

32.1).

Even if the Federal Circuit had not deemed *Southern Clay* non-precedential, the

language at issue in that case, like the language at issue in *Hughes*, included a detailed

discussion of the material found to be incorporated. The host document, the "Clocker"

patent, stated:

> Exemplary of commonly employed physical or comminuting
> techniques for breaking the bonds between the colloidal particles
> in a clay particle aggregate are those techniques disclosed in
> United States Pat. Nos. Re. 25,965; 3,253,791; 3,307,790; and
> 3,348,778 [Cohn]. Generally speaking, the techniques disclosed in
> these patents effect some type of grinding or comminuting either
> by shear or abrasion so as to break the bonds in the clay aggregate
> particle and thus form several colloidal particles therefrom.

*Southern Clay Prods., Inc. v. United Catalysts, Inc.*, 43 Fed. Appx. 379, 64 U.S.P.Q.2d

1606, 1610 (No. 01-1382, Fed. Cir. July 26, 2002). Thus, Clocker's discussion of the

Cohn patent included a description of what that reference disclosed (techniques for

"grinding or comminuting"); how that grinding or comminuting was accomplished

("shear or abrasion"); and the effect of the cited technique (breaking bonds in a clay

aggregate to form colloidal particles). *See id.* This disclosure is considerably more

expansive and clear than Nesbitt's reference to Molitor '637, which consists of two words: "foamable compositions." [D.I. 203 Ex. 3 ('193 patent) col. 3:58.]

In a stinging dissent, Chief Judge Mayer disputed that even the Clocker patent's detailed description of the allegedly incorporated material was sufficient to meet the second part of the *Advanced Display* test – that the incorporating reference must "clearly indicate" where in the external document the incorporated material can be found. *Id.* at 1612 (dissent) (citing *Advanced Display*, 212 F.3d at 1282). Although Acushnet suggests there is no requirement that the host reference provide this indication with "column and line numbers," that is precisely the degree of specificity Judge Mayer suggested would be materially helpful to patent examiners and persons of skill in the art who wish to practice the claimed invention. *Id.* at 1613.

### 3. Acushnet Mischaracterizes the *Liebel-Flarsheim* and *Cook Biotech* Cases, Both of Which Involved an Express Incorporation by Reference.

In attempting to prove that the "detailed particularity" test of *Advanced Display* should be applied liberally, and that broad, generalized language suffices to effect an incorporation by reference under section 102, Acushnet cites two cases – *Liebel-Flarsheim* and *Cook Biotech* – in which it claims the Federal Circuit found incorporation by reference based on a cursory description of what the incorporated reference discusses. [D.I. 238 at 13.] In both instances, however, Acushnet hides the fact that the incorporation by reference was found not because the incorporated material was "clearly identified" with "detailed particularity," but because the host documents invoked an express incorporation by reference. Therefore, neither *Liebel-Flarsheim* nor *Cook Biotech* has any relevance to the proper application of *Advanced Display* and its requirement that incorporated material be identified with "detailed particularity."

In *Liebel-Flarsheim*, Acushnet argues that the court found an effective incorporation by reference based on the statement in the host document that, "Fig. 1 discloses an injector apparatus of the general type disclosed in the U.S. Patent No.

4,006,736." [D.I. 238 at 13.]  Acushnet's interpretation of this case, and the effect of this

language, is incorrect.  In the host document at issue in *Liebel-Flarsheim*, U.S. Patent No.

5,383,858, ***there was an explicit incorporation by reference*** of the earlier '736 patent,

which Acushnet fails to acknowledge:

> FIG. 1 discloses a injector apparatus 20 of the general type
> disclosed in the U.S. Pat. Nos. 4,006,736 to R. J. Kranys et al. and
> 4,677,980 to D. M. Reilly et al. . . .  [T]o the extent not
> inconsistent with this disclosure, the disclosures of those two
> patents, which both are assigned to Medrad Inc, of Pittsburgh, Pa.,
> the Assignee of the subject application, **are hereby incorporated
> by reference**.

[Halkowski Decl. Ex. A (U.S. Patent No. 5,383,858) col. 3-4: 64-16.][1] *Liebel-Flarsheim*,

therefore, has no applicability to this case.

Acushnet takes the same tactic – and therefore invites the same error – in

characterizing the *Cook Biotech* case.  Acushnet asserts that the basis for the finding of

incorporation was the general statement, "The preparation of UBS from a segment of

urinary bladder is similar to the procedure for intestinal submucosa detailed in U.S. Pat.

No. 4,902,508 . . . ." [D.I. 238  at 13.]  Disturbingly, the text Acushnet omits from this

quote establishes that the court's basis for finding incorporation was not the general

reference to the '508 patent, as Acushnet alleges, but the host document's express

incorporation of that patent:

> The preparation of UBS from a segment of urinary bladder is
> similar to the procedure for preparing intestinal submucosa
> detailed in U.S. Pat. No. 4,902,508, **the disclosure of which is
> expressly incorporated herein by reference.**

[Halkowski Decl. Ex. B (U.S. Patent No. 5,554,389) col. 2: 17-21 (emphasis added).]

Because the court relied on the express "incorporation by reference" language in the host

document, the *Cook Biotech* case, like *Liebel-Flarsheim*, in no way supports Acushnet's

---

[1]    All exhibit citations refer to the accompanying declaration of Thomas L. Halkowski,
unless otherwise noted.

argument that the "detailed particularity" and "clear indication" requirements can be satisfied by a general reference to the allegedly incorporated subject matter.

In stark contrast to the host documents in *Liebel-Flarsheim* and *Cook Biotech*, the Nesbitt patent does ***not*** state that it incorporates by reference the Molitor '637 patent or any part of it.

### 4. Contrary to Acushnet's Assertion, Molitor '637 Discloses More Than One Ionomer Composition.

Acushnet argues that because Nesbitt refers to the disclosure of "a number of foamable compositions" in Molitor '637 and, because supposedly "Molitor '637 discloses only one ionomer composition," Nesbitt must incorporate at least some non-ionomer materials from the '637 patent. [D.I. 238 at 12-13.] Acushnet's argument fails because its basic premise is incorrect – Molitor '637 does not discuss "only one ionomer composition."

Molitor '637 not only discloses the Surlyn 1605-1557 mixture used in Examples 1-7, but also teaches that any Surlyn ionomer, or blend of Surlyns, can be used to form a foamed cover layer:

> In accordance with the preferred embodiment of this invention, the cellular cover in question is formed from either a zinc or sodium ionic copolymer of ethylene or mixtures thereof. The sodium copolymer being sold by the E.I. du Pont de Nemours & Co., Inc. under the trademark Surlyn 1605, the zinc copolymer being sold under the trademark Surlyn 1557.

[D.I. 203, Ex. 2 ('637 patent) col. 3:36-42 (emphasis added).]

Molitor goes on to explain that the "singular" ionomers and mixed Surlyn resins described in three other patents are suitable for use in his invention. [*Id.* col. 3:43-51.] Finally, the claims of the '637 patent are not limited to a single ionomer composition, as Acushnet suggests; rather, Molitor claims the use of "ionic copolymers of olefins having from 2 to 5 carbon atoms and a metal salt of an unsaturated monocarboxylic acid" – which is to say, a very broad class of ionomers. [*Id.* claims 10-13, 15-21.]

8

Thus, Acushnet's argument that Callaway Golf's no-incorporation position "is inconsistent with English grammar" is grounded on a mistaken understanding of what Molitor '637 teaches.  Accordingly, Acushnet's argument must be disregarded.[2]

### 5.    Because Incorporation Must Be Considered From the Perspective of One Skilled in the Art, Nesbitt's Testimony is Relevant to Establish What That Perspective Is.

As Callaway Golf explained in its opening brief, "the standard of one reasonably skilled in the art should be used to determine whether the host document describes the material to be incorporated by reference with sufficient particularity." [D.I. 202 at 7, quoting *Advanced Display*, 212 F.3d at 1283.] Thus, the determination of incorporation-by-reference is properly informed by evidence of how persons of skill in the art would interpret the language in question.

Recognizing the harmful implications of Dennis Nesbitt's testimony, Acushnet seeks to characterize Mr. Nesbitt's testimony as self-interested, and on that basis unreliable.  Accordingly, Acushnet relies on case law that suggests that the testimony of an "inventor" is often "a self-serving, after the fact attempt to state what should have been part of his or her patent application." [D.I. 238 at 11-12, quoting *Bell & Howell Document Mgmt. Prods. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997).]

*Bell & Howell*, however, did not involve the testimony of a disinterested third party about whether one of skill in the art would infer an incorporation by reference – it

---

[2]    Also, although Acushnet attaches significance to Nesbitt's mention of "natural or synthetic" polymers (D.I. 238 at 10), this passage in no way suggests that Nesbitt is incorporating anything.  But even if this language could be interpreted to effect an incorporation-by-reference of *something*, the mention of "natural or synthetic" polymers cannot be read to incorporate polyurethane generally or Estane 58133 specifically.  Of the hundreds of compounds Molitor lists as potential cover materials, Molitor confirms that only two – balata and gutta percha – are natural polymers.  [*See* D.I. 203 Ex. 2 ('637 patent) col. 5:21-55 (contrasting "natural" polymers such as balata and gutta percha with a long list of "synthetic" polymers such as ionomers).  Polyurethane is a synthetic polymer.  [*See id.*]  Thus, Nesbitt's mention of "synthetic" materials implicates nothing more than ionomers, and his mention of "natural" polymers in no way suggests polyurethane.

held that the testimony of the parties' expert witnesses was irrelevant to the construction of the asserted claims where the intrinsic evidence was unambiguous. *Id.* Here, Mr. Nesbitt is not a hired advocate. Nor is the validity of Mr. Nesbitt's patent being challenged in any manner. He is simply a retired inventor of a patent that is not asserted here and whose only participation in this case has been in response to Acushnet's subpoena.[3]

Acushnet also argues that, during his deposition, Mr. Nesbitt "went along with the leading, inappropriate questioning of Callaway's lawyers regarding how the reference to the patent should be interpreted." [D.I. 238 at 5, citing Nesbitt Depo. Tr. 192:16-193:4.] Acushnet is wrong. That questioning was by ***Acushnet's counsel***, Brian Rosenthal, as evidenced by the objection on 193:20-22 by Roger Denning, Callaway Golf's counsel, and the continued questioning by Mr. Rosenthal. [D.I. 238, Ex. 5.] Acushnet noticed Mr. Nesbitt's deposition, Acushnet questioned him, and one can be sure that if Mr. Nesbitt had answered as Acushnet hoped, Acushnet would be featuring that testimony front and center before this Court. But Mr. Nesbitt explained that he did not incorporate polyurethanes by reference from Molitor '637, and therefore Acushnet wants to bury his testimony.

Acushnet specifically asked Mr. Nesbitt to testify about his interpretation of the '193 patent, and cannot now deny the significance of the testimony that *Acushnet itself* – not Callaway Golf – elicited:

> Q.    [BY MR. ROSENTHAL]  When you read the paragraph in
>       your patent application and you saw the reference to the
>       Molitor '637 patent --

---

[3]    Acushnet grossly exaggerates Mr. Nesbitt's work as a consultant to Callaway Golf.
Mr. Nesbitt testified that in recent years his consulting has been limited to once per
quarter, and this year it will be even less. [Halkowski Decl. Ex. C (Nesbitt Depo. Tr.)
51-52.] Moreover, Mr. Nesbitt is not a litigation consultant, but instead consults on
golf-ball design issues for the Top-Flite business for which he previously worked and
which Callaway Golf purchased in 2003. [*Id.* at 236-37.] Mr. Nesbitt's 2007
consulting agreement provides for only
            [*Id.* Ex. D at 3.]

10

A.    Right.
Q.    – you just thought that's foamed ionomer resins?
A.    Right.
Q.    And you didn't think beyond that, that it could refer to other
      materials other than ionomer resins?
A.    No.  Because if you look at my patent, it says over and over
      again that the ionomer cover can be foamed or not foamed
      and that's the same foam that Molitor did in his ionomer
      foam.  The 10-piece ball that was in his test, it was
      ionomer, and it was foamed.

[D.I. 203, Ex. 4, Nesbitt Depo. Tr. 192:16-193:4.]

Moreover, Mr. Nesbitt does not have a horse in this race.  In contrast to *Markman v. Westview Instruments*, upon which Acushnet relies, this is not a case where an inventor is testifying about the meaning of the patent-in-suit, or where the inventor himself is the plaintiff.  [D.I. 238 at 11, citing *Markman v. Westview Inst., Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1985), *aff'd*, 517 U.S. 370 (1986).]  Here, Mr. Nesbitt's testimony about  the '193 patent is relevant not to the interpretation of the asserted patent claims, but to the scope and content of the prior art, as viewed by one of ordinary skill.  Indeed, the '193 patent expired in 2001, long before this litigation began, so Mr. Nesbitt's testimony cannot have been motivated by a desire to preserve the value of his patent, or rewrite it.  Thus, unlike in *Markman*, there is no reason to suspect that the answers Mr. Nesbitt provided to Acushnet's questions about incorporation were motivated by self-interest.

Acushnet also says that Mr. Nesbitt's testimony about the language in the '193 patent cannot be "objective" because he is the inventor of that patent.  [D.I. 238 at 11.] But as Acushnet itself points out, Mr. Nesbitt did not draft that language.  [*Id.*] Therefore, Mr. Nesbitt's perspective on this language is the objective view of an outsider, not the subjective view of a party whose intent was embodied in that language. Moreover, as noted above, because the '193 patent is not being challenged in any manner, there is no reason to doubt Mr. Nesbitt's objectivity regarding that patent.

Of course, Mr. Nesbitt is not alone in his belief.  As discussed in more detail in Callaway Golf's Opposition to Acushnet's Motion for Partial Summary Judgment of

Incorporation by Reference (D.I. 242 at 6), Acushnet, during its attempts to license its

own patents to Callaway Golf, took exactly the opposite position on Nesbitt and Molitor

'637 that it has taken in this litigation. Troy Lester, Acushnet's in-house counsel, stated in

a 2001 letter to Callaway Golf:

**REDACTED**

[D.I. 243 Ex. 2 (emphasis added).] Insofar as Acushnet has claimed the parties'

statements in past licensing negotiations are relevant to the validity issues in this case,

Acushnet cannot escape the fact that its incorporation-by-reference argument in this

litigation is diametrically opposed to its representations to Callaway Golf when the

validity of Acushnet's patents was at issue.[4]

      **6.**     **The PTO Has Rejected Acushnet's Incorporation by Reference Argument.**

Acushnet emphasizes that, after being apprised of the allegedly inherent

properties of Nesbitt by Acushnet's petition, the Patent Office granted Acushnet's petition

for reexamination. [D.I. 238 at 3-4.] What Acushnet fails to mention, however, is that in

that reexamination, the Patent Office has rejected all of Acushnet's anticipation

arguments based on Nesbitt. [D.I. 217, Ex. 35.] If Acushnet wishes to rely on the post-

issuance actions of the Patent Office, it must acknowledge that those actions are hardly a

plenary vindication of Acushnet's invalidity arguments.

    **B.**     **Even if Nesbitt Incorporated by Reference From Molitor '637 a Disclosure of "Polyurethane," Nesbitt Would Still Fail to Disclose an Outer Cover Layer Having a Shore D Hardness of 64 or Less.**

        **1.**     **Under the Proper Construction of "Shore D Hardness," Acushnet Has No Competent Evidence Showing That Nesbitt**

---

[4]   See D.I. 242 at 6-7. Callaway Golf believes that both parties' pre-suit negotiations should be excluded under Fed. R. Evid. 408, and will present a motion to that effect at the appropriate time.

**Inherently Discloses a Polyurethane Outer Cover With a Shore
D Hardness of 64 or Less.**

As Callaway Golf has explained in its opening brief and its *Markman*
submissions, the proper construction of "an outer cover layer having a Shore D hardness
of 64 or less" refers to a Shore D hardness measurement taken from the cover layer itself,
on the surface of the golf ball, not from a rectangular "plaque" of the polymer material
from which the golf ball layer was formed. [D.I. 202, D.I. 204.]

Acushnet argues that, under the "on-the-ball" claim construction, Nesbitt still
inherently discloses an outer cover having a Shore D hardness of 64 or less. [D.I. 238 at
15-16.] However, the only "on-the-ball" measurement Acushnet can offer for "Nesbitt,
incorporating Molitor '637" is a measurement taken on a hybrid ball that never existed in
the prior art, but was instead fabricated by Acushnet's trial attorneys.[5] Supposedly, this
ball comprises "the core of Nesbitt," an inner cover layer comprising a blend of low-acid
ionomers from Molitor '637, and an outer cover layer comprising Estane 58133 from
Molitor '637.[6]

As explained in more detail in Callaway Golf's Opposition to Acushnet's Motion
for Summary Judgment of Invalidity, these balls are not evidence of any inherent
property of either Nesbitt or Molitor '637. [D.I. 244.] Even if Nesbitt incorporated the
disclosures of polyurethane and low-acid ionomer blends from Molitor '637 (and it
cannot – see D.I. 244 at 31), the construction of the hybrid Nesbitt-Molitor '637 ball

---

[5]    Although Acushnet states that its expert, Dr. MacKnight, "made" the hybrid golf
balls and "measured" the hardness of those balls (D.I. 238 at 15), that is not correct.
Dr. MacKnight admitted in his deposition that he had virtually nothing to do with
the design of the hybrid balls (the materials and constructions were chosen by
Acushnet's trial counsel), or with the manufacture of the those balls (which were
made at Acushnet, by Acushnet personnel, under the supervision of Jeff Dalton,
Acushnet's Vice President of Intellectual Property), or with the testing of the balls
(all of which was conducted by a firm hired by Acushnet). [D.I. 244 at 9-10.]

[6]    In his deposition, Dr. MacKnight was forced to admit that the Nesbitt patent does not,
in fact, disclose a core formulation. [D.I. 245, Ex. 2 (MacKnight Depo. Tr.) 41:18-
24.]

diverges from the teachings of the Nesbitt and Molitor '637 patents, and therefore cannot be considered competent evidence of the inherent properties of either patent, either separately or under Acushnet's erroneous theory of incorporation by reference. *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 393 (D. Del. 2002) (holding that, because samples prepared by expert to show inherent properties of prior art reference deviated from the embodiments disclosed in that reference, they were incompetent as evidence of inherency).

Moreover, all of the covers described in Molitor '637 are "foamed," that is, they contain pockets of air. [See D.I. 202 at 12, citing MacKnight Depo. Tr. at 68:3-14.] Molitor '637 discloses that injection-molded covers less than 0.060 inches thick cannot achieve "functional foaming." [D.I. 203, Halkowski Decl. Ex 2 ('637 patent col. 5:3-7).] Despite this admonition, the outer covers Acushnet made from the "Molitor '637" urethane formulation were only 0.0575 or 0.0525 inches thick, and the inner cover layers Acushnet made from the "Molitor '637 blended-ionomer composition were only 0.035 inches thick.[7] [D.I. 217, Ex. 30 at ¶¶ 17, 20, 23.] Thus, Acushnet's hybrid ball cannot be accepted as proof of the inherent properties of a Molitor '637 polyurethane cover material because it does not follow Molitor's teaching to ensure "functional foaming" by making cover layers at least 0.060 inches thick. *See Wesley Jessen*, 209 F. Supp. 2d at 393 ("The fact that Example XXX can be substantially altered to achieve materials that sometimes fall within the '943 patent does not establish anticipation.").

---

[7]    Both the outer and inner cover layers of the hybrid ball were applied by injection molding, the same process Molitor warns cannot be used to make foamed covers less than 0.060 inches thick. [D.I. 245, Ex. 2 (MacKnight Depo. Tr.) 36:19-23; D.I. 203, Ex. 2 ('637 patent) col. 5:1-7.]

**2.    Under Acushnet's Improper Construction of "Shore D Hardness," Acushnet Still Cannot Show That Nesbitt Inherently Discloses a Polyurethane Outer Cover With a Shore D Hardness of 64 or Less.**

In its opposition, Acushnet argues that if the Court were to accept its "off-the-ball" construction of Shore D hardness, "Nesbitt has been shown to anticipate the asserted claims." [D.I. 238 at 15.] Acushnet is incorrect. As explained in Callaway Golf's Opposition to Acushnet's Motion for Summary Judgment of Invalidity, a finding of anticipation would require not only that Acushnet's construction be adopted as correct, but also that the Court find: (1) that Nesbitt incorporates polyurethane by reference from the Molitor '637 patent; and (2) that Nesbitt specifically incorporates by reference the Molitor '637 patent's disclosure to Estane 58133, since "polyurethane," generally, has no inherent Shore D hardness. [D.I. 244 at 13-14.] Also, to anticipate the claims that include the limitation of a <u>blend</u> of low-acid ionomers in the inner cover layer, Nesbitt would also have to incorporate by reference a specific disclosure of blended low-acid ionomers – which it does not and cannot. [*See id*. at 12.]

Moreover, even under its own claim construction, Acushnet cannot prevail by arguing that Nesbitt discloses a *polyurethane* outer cover layer with a Shore D hardness of 64 or less by disclosing an *ionomeric* outer cover layer made from Surlyn 1855, which Acushnet alleges has a plaque Shore D hardness of 55. [D.I. 238 at 14.] To prove anticipation, Acushnet must demonstrate not only that Nesbitt discloses the required hardness for the outer cover layer, but that it discloses that limitation and others *as they are arranged in the asserted claims* – that is, Nesbitt would have to disclose the required Shore D hardness not merely for any material, but specifically for an outer cover layer comprising <u>polyurethane</u>. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998) ("[A] finding of anticipation requires that the publication describe all of the elements of the claims, arranged as in the patented device."); *Richardson v. Suzuki Motor*

*Co., Ltd.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989) (for anticipation, "[e]very element of the claimed invention must be literally present, as arranged in the claim").

## III.    THE PROUDFIT DECLARATION SHOULD BE DISREGARDED AS UNTIMELY.

Although, during discovery, Acushnet never expressed any intention to seek discovery from or participation by James Proudfit, Callaway Golf's motion for summary judgment led Acushnet to support its opposition with a surprise declaration from Mr. Proudfit.  Because Acushnet never listed Mr. Proudfit in its initial disclosures or interrogatory responses as a potential witness in this case, and did not offer Mr. Proudfit's declaration until after the close of fact *and* expert discovery, the Court should disregard this submission as untimely.

If, however, the Court is inclined to give effect to Mr. Proudfit's declaration, his statements do not warrant summary judgment in Acushnet's favor on claims 1 and 2 of the '130 patent.  There is no indication that Mr. Proudfit will appear as a trial witness to corroborate his declaration, nor is it clear that Acushnet can introduce this belated evidence through some other witness.[8]

## IV.    CONCLUSION

For the foregoing reasons, Callaway Golf respectfully requests that the Court GRANT its Motion for Summary Judgment of No Anticipation.

---

[8]    Acushnet claims that its expert, Dr. Statz, can confirm Proudfit's statements based on discussions he had long ago with Mr. Proudfit.  [D.I. 238 at 21.]  However, Dr. Statz, in his deposition, admitted that he "never paid much attention" when Mr. Proudfit allegedly disclosed to him the composition of the Wilson Ultra Tour balata ball. [Halkowski Decl. Ex. F (Statz Depo. Tr.) at 140:12-20.]

Dated:  August 27, 2007                    FISH & RICHARDSON P.C.


By:  /s/ Thomas L.  Halkowski
        Thomas L. Halkowski (#4099)
        919 N. Market Street, Suite 1100
        P.O. Box 1114
        Wilmington, DE 19899-1114
        Tel:  (302) 652-5070
        Fax:  (302) 652-0607

        Frank E. Scherkenbach
        225 Franklin Street
        Boston, MA 02110-2804
        Tel:  (617) 542-5070
        Fax:  (617) 542-8906

        Roger A. Denning
        12390 El Camino Real
        San Diego, CA 92130
        Tel:  (858) 678-5070
        Fax:  (858) 678-5099

        Attorneys for Plaintiff
        CALLAWAY GOLF COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2007, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on September 5, 2007, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz, Esq.                         Attorneys for Defendant
David E. Moore, Esq.                              ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                           Attorneys for Defendant
Joseph P. Lavelle, Esq.                          ACUSHNET COMPANY
Kenneth Donnelly, Esq.
Brian Rosenthal, Esq.
Clint Brannon, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski

1