IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ACUSHNET COMPANY,<br><br>    Defendant. | C. A. No. 06-91 (SLR) |

# CALLAWAY GOLF'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY RE HYBRID GOLF BALLS

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED:  September 10, 2007

1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................2

II. SUMMARY OF ARGUMENT ...............................................................................3

III. STATEMENT OF FACTS ......................................................................................3

IV. APPLICABLE LEGAL STANDARDS ..................................................................6

V. ARGUMENT ...........................................................................................................6

    A. The Hybrid Golf Balls are the Work of Acushnet's Attorneys, Not of an Independent Expert. ..................................................6

    B. Permitting Expert Testimony About Acushnet's Hybrid Golf Balls Would Encourage Corrupt Future Patent Litigation With Spurious "Recreations" of the Prior Art. .........................8

    C. Acushnet's Hybrid Balls, Which Did Not Exist Until 2007, Prove Nothing About What Would Have Been Known to a Person of Ordinary Skill in 1995, and are Therefore Irrelevant to Acushnet's Obviousness Defense. ...................................................................................................9

    D. Acushnet's Hybrid Golf Balls Have No Relevance to Its Anticipation Arguments. ...................................................................11

        1. Nesbitt Doesn't Disclose a Core Composition. ............................13

        2. Acushnet's Hybrid Ball Does Not Comport With Molitor's Teaching to Create a "Foamed" Cover of a Certain Minimum Thickness ................................13

VI. CONCLUSION .....................................................................................................16

## TABLE OF CONTENTS

**Page**

**CASES**

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..................................................................................5, 10, 14

*Gillette Co. v. S.C. Johnson & Son, Inc.*,
  919 F.2d 720 (Fed. Cir. 1990).................................................................................8, 9

*In re Napier*,
  55 F.3d 610 (Fed. Cir. 1995).....................................................................................8

*In re Naylor*,
  369 F.2d 765 (C.C.P.A. 1966) .................................................................................8, 9

*In re Rijckaert*,
  9 F.3d 1531 (Fed. Cir. 1993)....................................................................................9

*In re Spormann*,
  363 F.2d 444 (C.C.P.A. 1966) .................................................................................8, 9

*In re TMI Litigation*,
  193 F.3d 613 (3d Cir. 1999).....................................................................................5

*Trintec Industrial, Inc. v. Top-U.S.A. Corp.*,
  295 F.3d 1292 (Fed. Cir. 2002)..............................................................................10

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*,
  209 F. Supp. 2d 348 (D. Del. 2002)........................................................................7, 10, 14

I.  **INTRODUCTION**

To support Acushnet's defenses of anticipation and invalidity, Acushnet's attorneys and its Vice-President of Intellectual Property have constructed nine varieties of three-piece "hybrid" golf balls from various combinations of core and cover materials disclosed in five prior art patents. None of these hybrid balls existed in the prior art, and none recreates any embodiment described by any prior art reference. Yet, Acushnet's expert, Dr. Robert Statz, relies on these balls as evidence of the hardness properties he claims were inherent in the prior art patents.

There is only one way to describe Acushnet's hybrid golf balls: they are non-prior art. They cannot in any way support Acushnet's anticipation defenses, because ***the balls are not themselves prior art and do not represent any embodiment of any prior art reference.*** The balls are likewise irrelevant to Acushnet's obviousness defenses and can only serve to confuse the factfinder by presenting materials created with the obvious benefit of hindsight. Golf balls created in 2007 for the purpose of this litigation cannot serve as evidence of what a person of skill in the art might have known or understood in 1995, since such knowledge could only be based on information in existence at that time. Because the hybrid balls have ***no probative value whatsoever***, and they cannot be the subject of, or foundation for, any admissible expert testimony.

Worse, Acushnet's hybrid golf balls are in no way the product of any expert's specialized scientific knowledge or insight. Though the balls are described in the Rule 26(b) report of Acushnet's proposed expert, Professor William J. MacKnight, deposition testimony establishes that Dr. MacKnight's only role in this case has been to lend his imprimatur to the non-prior art conceived of and designed by Acushnet's lawyers and in-house personnel.

## II.   SUMMARY OF ARGUMENT

1. The hybrid golf balls Acushnet seeks to introduce into evidence through its experts did not exist in 1995, but rather were **created by Acushnet's attorneys** in 2007. Acushnet seeks to create the mistaken impression that these balls, and their physical properties, were known to persons of skill in the art before the effective filing date of the patents-in-suit.

2. **The hybrid golf balls did not exist in the prior art and do not accurately recreate any ball described by any written prior art reference**. Acushnet's 2007 creations therefore cannot be relied upon as evidence of the properties inherent in any single prior art reference or combination of references.

3. The hybrid golf balls, and expert testimony about them, are irrelevant to Acushnet's obviousness defense because obviousness, in this case, relates to what a person of skill in the art would have known in 1995 – which can only be shown by reference to information **known at that time**. Because the hybrid balls did not exist until Acushnet fabricated them for this litigation in 2007, they are incapable of demonstrating what a person of ordinary skill would have understood in 1995.

## III.   STATEMENT OF FACTS

In the early 1990's, Michael Sullivan, the most prolific golf ball inventor of all time, succeeded in constructing a ball that provides distance without sacrificing control, provides control without sacrificing distance, and provides durability without sacrificing either distance or control. Essentially, Sullivan's invention achieves these performance advantages by employing a polyurethane outer cover and a low-acid ionomer inner cover over a large core. [D.I. 247]

Sullivan applied for and eventually obtained four patents on this construction: U.S. Patents Nos. 6,210,293 ("the '293 patent"), 6,503,156 ("the '156 patent"), 6,506,130 ("the '130 patent"), and 6,595,873 ("the '873 patent"). These patents were assigned to

Sullivan's employer, Spalding, who in 2003 sold the assets of its golf ball business, including the patents-in-suit, to Callaway Golf. After lengthy and ultimately unsuccessful licensing negotiations, Callaway Golf filed the present action against Acushnet, seeking redress for Acushnet's infringement of the four Sullivan patents by manufacturing and selling the Titleist Pro V1, Pro V1 Star, and Pro V1x golf balls. [D.I. 1.]

Acushnet has alleged that almost all of the asserted claims are anticipated by U.S. Patent No. 4,431,193 to Nesbitt ("the Nesbitt patent").[1] As the Nesbitt patent itself lacks any disclosure of a polyurethane outer cover layer or a blended low-acid ionomer inner cover layer, Acushnet has argued that Nesbitt incorporates these elements by reference to a second patent, U.S. Patent No. 4,274,637 to Molitor ("the Molitor '637 patent"). For the reasons explained in Callaway Golf's Opposition to Acushnet's Motion for Summary Judgment of Incorporation by Reference (D.I. 242), Callaway Golf's Opposition to Acushnet's Motion for Summary Judgment of Invalidity (D.I. 244), and Callaway Golf's Reply in Support of Its Motion for Summary Judgment of No Ancitipation (D.I. 258), Acushnet's attempts to incorporate by reference the specific elements of a polyurethane outer cover (here, an Estane 58133 outer cover) and a blended low-acid ionomer inner cover fail as a matter of law.

Acushnet has also argued that the patents-in-suit are rendered obvious by various combinations of prior-art patents – either the Nesbitt patent or U.S. Patent No. 5,314,187 to Proudfit ("the Proudfit patent") in combination with either U.S. Patent No. 4,676,751 to Molitor ("the Molitor '751 patent"), U.S. Patent No. 5,334,673 to Wu ("the Wu patent"), or the aforementioned Molitor '637 patent.

---

[1] Additionally, Acushnet contends that the two asserted claims that do not require polyurethane in the outer cover layer – claims 1 and 2 of the '130 patent – are anticipated by U.S. Patent No. 5,314,187 to Proudfit.

In support of its anticipation and obviousness arguments, Acushnet has submitted two expert reports: one from Dr. Robert Statz and a second from Dr. William MacKnight. Dr. Statz bases his opinions of anticipation and obviousness in part on certain golf balls described in Dr. MacKnight's report, which Acushnet explains were created for this litigation, allegedly "at Dr. MacKnight's direction." Each of these balls is a three-piece solid-core ball in which the various core, inner cover layer, and outer cover layer compositions were "based on" formulations disclosed in the five prior art patents. The chart provided in Dr. MacKnight's report describes how Acushnet went about picking and choosing which components would be taken from which prior art references to create each of the hybrid balls:

| Ball # | Core | Inner Cover Layer | Outer Cover Layer | Shore D |
|---|---|---|---|---|
| BALL_1 | Nesbitt 193 | Nesbitt 193 | Molitor 637 | 62.0 |
| BALL_2 | Nesbitt 193 | Nesbitt 193 | Wu 673 | 56.0 |
| BALL_3 | Nesbitt 193 | Nesbitt 193 | Molitor 751 | $50.1^1$ |
| BALL_4 | Nesbitt 193 | Molitor 637 | Molitor 637 | 61.0 |
| BALL_5 | Nesbitt 193 | Molitor 637 | Wu 673 | 55.6 |
| BALL_6 | Nesbitt 193 | Molitor 637 | Molitor 751 | 49.6 |
| BALL_7 | Proudfit 187 | Proudfit 187 | Molitor 637 | 59.4 |
| BALL_8 | Proudfit 187 | Proudfit 187 | Wu 673 | 56.8 |
| BALL_9 | Proudfit 187 | Proudfit 187 | Molitor 751 | 51.2 |

[Halkowski Decl. Ex. 1, ¶ 33.] So, for example, "BALL_5" is a hybrid that Acushnet says is comprised of a core "based on" a composition allegedly described in the Nesbitt patent, an inner cover layer "based on" a blended low-acid ionomer formulation disclosed in Molitor '637, and an outer cover layer "based on" a polyurethane formulation disclosed in the Wu patent.



FIG. 1.  Illustration of Acushnet's hybrid "BALL_5."

Significantly, of all the hybrid balls described in Dr. MacKnight's report, and which Dr. Statz cites as support for his anticipation and obviousness arguments, ***none is a reproduction of any golf ball described by any single prior art reference.***

IV.     APPLICABLE LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence requires that the evidence or testimony offered by an expert witness "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).  This condition relates to relevance:  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Id.* (citation omitted); *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999).

V.      ARGUMENT

      A.      **The Hybrid Golf Balls are the Work of Acushnet's Attorneys, Not of an Independent Expert.**

The hybrid golf balls Acushnet relies on are purely the work of its attorneys, fabricated for the sole purpose of providing putative support for the invalidity arguments the attorneys created.  Although the hybrid balls and their properties are discussed in the Rule 26(b) report of Acushnet's proposed expert witness, Professor William J.

MacKnight, Dr. MacKnight admitted that he had virtually nothing to do with the design, manufacture, or testing of the balls:

- Acushnet's litigation counsel, not Dr. MacKnight, selected the materials and the thicknesses for the balls. [Halkowski Decl Ex. 2, MacKnight Depo. Tr. at 53:4-12, 73:21:74-8.]

- The balls were made by Acushnet employees, without any supervision by Dr. MacKnight. [*Id.* at 20:16-22:4, 30:22-31:8.] Rather, Jeffrey Dalton, Acushnet's Vice-President of Intellectual Property, "personally directed" the creation of the hybrid balls. [Halkowski Decl. Ex. 4 ¶¶ 3, 8.]

- Dr. MacKnight made no effort to verify that the balls Acushnet made did, in fact, conform to the specifications selected by Acushnet's lawyers. [Halkowski Decl. Ex.2 at 23:19-24:4.]

- Dr. MacKnight did not personally measure the hardnesses of any of the balls described in his report. [*Id.* at 84:8-13.]

- Dr. MacKnight never even saw one of the batches of balls Acushnet fabricated and sent out for hardness testing. [*Id.* at 89:19-90:5.]

In short, Dr. MacKnight's only participation in this case has been to sign off on work performed by Acushnet's attorneys and in-house personnel. In fact, Dr. MacKnight freely admitted that his expert report contains ***no opinions whatsoever***:

> Q. Let me ask you this: In your report and declaration that you've submitted in this case, do you include anything that you would call an opinion as opposed to a fact?
> A. Well, that's an interesting thing. We were discussing this. It seems to me it's more of a factual report than it is an opinion report. <u>I don't really see any significant opinions in it.</u>

7

[*Id.* at 106:23-107:6 (emphasis added).]  Given his attenuated exposure to this case and his limited participation in it, it is no surprise that Dr. MacKnight confessed he had essentially no idea how the hybrid balls might be relevant this litigation:

> Q. What is your understanding of how your work in this case relates to the question of validity?
> A. My understanding is that the results of the tests which we performed are relevant to the validity or invalidity of the patents.
> Q. Relevant in what way?
> A. I actually don't know in detail.
> Q. Do you know generally?
> A. I think it has to do with the fact that the hardness results came out at a certain figure which would be consistent with prior art results.

[*Id.* at 74:21-75:7.]

Because he has no opinions to contribute and virtually no understanding of the validity issues in the case, Dr. MacKnight's only possible role at trial would be to bless Acushnet's hybrid golf balls by reciting the facts regarding their design, fabrication, and testing – activities that Dr. MacKnight himself did not plan, verify, or even observe.[2] Thus, even if the hybrid balls were relevant evidence, Dr. MacKnight would not be an appropriate witness to testify about them.

**B. Permitting Expert Testimony About Acushnet's Hybrid Golf Balls Would Encourage Future Patent Litigants to Confuse Jurors With Spurious "Recreations" of the Prior Art.**

This Court has previously recognized that an alleged "recreation" of an object described in a written prior art references cannot be allowed into evidence when it does not scrupulously conform to the description the reference provides.  *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 393 (D. Del. 2002).  If Acushnet were

---

[2] Consequently, if the Court agrees that all testimony regarding the hybrid golf balls should be excluded, Dr. MacKnight would be precluded from testifying at trial.  Although Dr. Statz would still be eligible to testify, he would be precluded from offering any opinions based on the properties of Acushnet's 2007 golf ball creations.

8

permitted to introduce its hybrid balls, or expert testimony about them, in the trial of this matter, it is not difficult to imagine the effect – defendants in future patent suits would rely on that precedent to create custom-made examples of "prior art" that never before existed, present this evidence to a jury with the blessing of a reputable but under-informed expert witness, and sow confusion amongst the jurors by arguing that because these fabricated objects, or things approximately like them, might have existed in the prior art, the fact that they did not is immaterial because persons of ordinary skill *could have* created them.

Jurors in a patent case have a hard enough job digesting the technical and legal issues in these matters – including the difficult task of assessing what one of ordinary skill would have understood at the time of the inventions, while avoiding the application of hindsight. Jurors should not be burdened further by having to discern what is genuine prior art and what is not.

    **C.**    **Acushnet's Hybrid Balls, Which Did Not Exist Until 2007, Prove Nothing About What Would Have Been Known to a Person of Ordinary Skill in 1995, and are Therefore Irrelevant to Acushnet's Obviousness Defense.**

The inherent teaching of a prior art reference arises both in the context of anticipation and obviousness. *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995). However, "[o]bviousness cannot be predicated on what is unknown." *In re Spormann*, 363 F.2d 444, 448 (C.C.P.A. 1966). For purposes of determining obviousness, the fact that a certain property might be inherent in a certain combination of prior art references is immaterial if one of ordinary skill in the art would not appreciate or recognize that inherency. *In re Naylor*, 369 F.2d 765, 768 (C.C.P.A. 1966).

As explained in Callway's Opposition to Acushnet's Motion for Summary Judgment of Invalidity [D.I. 244], none of the prior art patents Acushnet relies on for its obviousness defenses – either alone or in combination with other references – expressly

9

discloses an outer cover layer having an on-the-ball Shore D hardness of less than 64. Because an obviousness analysis must consider the patent claim as a whole, Acushnet cannot simply ignore the limitation on outer cover layer hardness – it must prove that the claim as a whole, including that limitation, would have been obvious to one of skill in the art at the time the invention was made.[3] *See, e.g., Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 724 (Fed. Cir. 1990) (holding that section 103 "requires analysis of the claimed invention as a whole").

For each of the prior art combinations Dr. Statz discusses in his expert report, Dr. Statz bases his opinions of obviousness in part on the hybrid golf balls described in Dr. MacKnight's report. [Halkowski Decl. Ex. 3 (Statz Report) at, *e.g.,* ¶¶ 78, 93, 113, etc.] Specifically, Dr. Statz cites the outer-cover Shore D measurements of Acushnet's hybrid golf balls and notes that they are within the claimed range of 64 or less. [*See id.*]

Although Acushnet has asserted that the hybrid balls are not being offered as proof of inherency, it is clear that, in fact, that is precisely how the evidence will be viewed. [*See* D.I. 265 at 8.] Acushnet admits as much when it attempts to characterize the outer-cover Shore D hardness of the hybrid balls as evidence of "what a person of ordinary skill would have readily understood from the teachings of the prior art." [*See id.*] Acushnet cannot deny that its prior art references, both individually and in combination with each other, fail to expressly disclose an outer-cover Shore D hardness of 64 or less, so Acushnet attempts to fill the gap by arguing that the missing disclosure would have been recognized by persons of skill in the art. Regardless of how Acushnet tries to characterize this argument, it relies on the principle of inherency. Acushnet's argument, therefore, is subject to the rule that the allegedly inherent properties must have

---

[3] For purposes of this motion, the Court may assume that Sullivan's invention was "made" in 1995.

been known to persons of skill in the art at the relevant time. *See In re Rijckaert*, 9 F.3d 1531, 1534 (Fed. Cir. 1993); *Spormann*, 363 F.2d at 448.

Significantly, neither Dr. Statz nor Dr. MacKnight has offered any opinion that, in 1995, a person of skill in the art would have recognized an outer-cover Shore D hardness of 64 or less as inherent in any of Acushnet's prior art combinations. Moreover, any information discovered after 1995 is irrelevant to an analysis of obviousness, because any argument about what persons of ordinary skill would have understood in 1995 can be based only on information that was available and known in 1995. *See Rijckaert*, 9 F.3d at 1534 (holding that a finding of obviousness cannot be founded on "a retrospective view of inherency"). Consequently, Acushnet's hybrid balls, which were not fabricated until 2007, cannot possibly show anything about what a person of ordinary skill in the art would have known in 1995.

Thus, Acushnet cannot argue that its hybrid golf balls, or their properties, would have been known to a person of skill in the art in 1995. Without this evidence, the made-for-litigation hybrid balls are immaterial to the obviousness analysis, and any expert testimony based on these balls is inadmissible. *See Naylor*, 369 F.2d at 768; *see also Daubert*, 509 U.S. at 591 (holding that expert testimony regarding irrelevant evidence must be excluded).

### D. Acushnet's Hybrid Golf Balls Have No Relevance to Its Anticipation Arguments.

A party asserting that a patent claim is anticipated under 35 U.S.C. § 102 must establish clear and convincing evidence of "strict identity" between the claimed invention and a single prior art reference such that each claim limitation is described in the reference. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295-96 (Fed. Cir. 2002). Inherency may be shown by demonstrating that an embodiment described in the reference necessarily exhibits the allegedly inherent property. *Id.* at 1295. When a

11

physical object is asserted as proof of inherency, that object must fully conform to the disclosure of the prior art reference it is alleged to represent. *See Wesley Jessen*, 209 F. Supp. 2d at 393. If the construction of the object deviates from what the prior art describes, the object cannot be used to prove inherency. *See id.*

Acushnet has argued that the Nesbitt patent incorporates by reference the disclosures of polyurethane and blended low-acid ionomer cover layers from the Molitor '637 patent, and that, consequently, Nesbitt anticipates the asserted claims. [D.I. 216 at 23-26.] Of course, if Nesbitt does not incorporate polyurethane by reference, it cannot anticipate any of the asserted claims, and if Nesbitt does not incorporate by reference a blended low-acid ionomer cover formulation, Nesbitt cannot anticipate any of the many claims that recite that composition as a component of the inner cover layer.

Even if the general reference in Nesbitt were somehow found to specifically incorporate by reference both the polyurethane and the blended low-acid ionomer cover layers required by the asserted claims, Nesbitt would still fail to expressly disclose the claim limitation of "an outer cover layer having a Shore D hardness of 64 or less" under the proper construction of that term.[4] Accordingly, Acushnet tries to show that this limitation is inherent in the disclosure of Nesbitt-incorporating-Molitor by picking and choosing components from the prior art to arrive at the following constructions:

- a core "based on" a formulation supposedly disclosed in Nesbitt;
- an inner cover layer "based on" a single-ionomer formulation disclosed in Nesbitt or a blended-ionomer formulation disclosed in Molitor '637; and
- an outer cover layer "based on" a specific polyurethane composition disclosed in Molitor '637.

---

[4] As explained in Callaway Golf's Markman Brief [D.I. 204] and its Response to Acushnet's Markman Brief [D.I. 260], the proper construction of "Shore D hardness," as that term is used in the asserted claims, refers to hardness measurements taken "on the ball," that is, directly on the surface of the cover layer as it exists on the finished or intermediate ball.

12

Acushnet tested its creations and concluded that its measurements of the outer-cover Shore D hardness of these hybrid balls, "BALL_1" and "BALL_4," prove that Nesbitt-incorporating-Molitor inherently discloses a Shore D hardness of 64 or less. [D.I. 216 at 29.] Neither BALL 1 nor BALL_4, however, represents any ball described by the Nesbitt patent, even if Nesbitt were found to incorporate some or all of the disclosures of the Molitor '637 patent.

### 1. Nesbitt Doesn't Disclose a Core Composition.

Although Acushnet characterizes BALL_1 and BALL_4 (and four of its other hybrid balls) as including "the Nesbitt '193 core material," Nesbitt, in fact, does not disclose a core formulation. [See Halkowski Decl. Ex 1, ¶¶ 17-22 (regarding use of the alleged "Nesbitt '193 core material")]; [Halkowski Decl. Ex 2, MacKnight Depo. Tr. at 41:3-42:17 (confirming that the Nesbitt patent does not disclose any core formulation).]

Although Dr. MacKnight asserts in his report that this core formulation "is based on the disclosure of Nesbitt '193," he admits in the same paragraph that the formula he describes is actually "based on the core composition set forth in the *Sullivan patents*," i.e., the patents-in-suit. [Halkowsi Decl. Ex. 1, ¶ 8 (emphasis added).] Whether or not the patents-in-suit ascribe a core formulation to the Nesbitt patent is immaterial. Acushnet has not shown, and cannot show, that *prior to the issuance of the Sullivan patents –* which, of course, is the relevant time period for assessing anticipation – one reading the Nesbitt patent would understand it to disclose any formulation for a core.

### 2. Acushnet's Hybrid Ball Does Not Comport With Molitor's Teaching to Create a "Foamed" Cover of a Certain Minimum Thickness

Even if the Court were to find that the general reference in Nesbitt to Molitor somehow incorporates by reference the particular polyurethane covers and blended low-acid ionomer covers in the arrangement set forth in the asserted claims, Acushnet still cannot show that Nesbitt inherently discloses a polyurethane outer cover layer with an

13

on-the-ball Shore D hardness of 64 or less. Although Acushnet has attempted to prove inherency by citing the hardness measured from BALL_1 and BALL_4, Acushnet, in creating these hybrids, ignored the Molitor patent's teachings as to how to make the cover layers that patent discloses.

The Molitor '637 patent is focused upon the creation of a "foamed" or "cellular" cover layer on a golf ball.[5] This foaming effect is typically achieved by using a chemical "blowing agent" to introduce tiny pockets of air into the polymer as it cures. [*See* Molitor '637 patent col. 3:19-22.]

Molitor makes clear that the foamed cover layer must be thick enough to achieve a "functional" degree of foaming:

> Generally, it could be said that the cover thickness should not decrease to a point beyond which functional foaming is impossible. While full parameters of the cover thickness have not been explored, it generally appears as though <u>functional foaming cannot be achieved, when the cover is injection molded onto the center, if the cover thickness decreases below 0.060"</u>.

[*Id.* col. 5:1-7 (emphasis added).] As Dr. MacKnight explained in his deposition, the purpose of setting a minimum thickness was to ensure that the cover was thick enough to ensure that the gas bubbles would remain trapped in the cover material:

> Q.   Why might a blowing agent not be effective at creating a foamed cover if that cover is less than 60 mils thick?
> A.   Well, the foaming process is dependent upon trapping bubbles of gas within the material. And we've all seen this in, for example, even the foam of the soda that you have: its bubbles of gas come out.
>         Now, the only difference here is that instead of a liquid, this sets up into a solid, but it's got the bubbles of gas trapped into it. That's the foam of the cells, if you like.
>         **Now, if the material gets very thin, it may be that these bubbles can escape at the very, very low thickness of the material during the processing, and therefore**

---

[5]   As Dr. MacKnight acknowledged in his deposition, every embodiment disclosed in Molitor '637 includes a foamed cover. [Halkowski Decl. Ex. 2 at 68:3-14.]

14

> **there are few bubbles left in and not enough to be significant, perhaps.**

[Halkowski Decl. Ex.2 at 70:14-71:7.]

Despite Molitor's teaching that the cover must be foamed, and that "functional" foaming cannot be achieved if the cover layer is less than 0.060 inches thick – which Dr. MacKnight clearly understood – Acushnet chose to ignore these teachings when it created the inner and outer cover layers of BALL_1 and BALL_4, the two hybrid balls it claims are embodiments of Nesbitt-incorporating-Molitor.  Acushnet made the polyurethane outer cover layer of BALL_1 and BALL_4 only 0.0575 inches thick, despite Molitor's clear instructions to make the cover at least 0.060 inches thick to achieve "functional foaming."  [Halkowski Decl. Ex. 1, ¶¶ 17, 20.][6]

When asked whether the cover layers Acushnet made "based on" Molitor '637 were, in fact, foamed covers, Dr. MacKnight could not confirm that they were:

> Q. Do you know whether the cover layers made from the Molitor '637 composition in your test golf balls did in fact have a cellular foamed structure?
> A. No.
> Q. Did you do any testing to ascertain whether or not those covers were in fact foamed?
> A. No.
> Q. Did you consider making any verification that they were foamed?
> A. No.

[Halkowski Decl. Ex. 2 at 71:16-72:1.]

In failing to create covers thick enough to have a functional foamed structure, Acushnet unquestionably diverged from the teachings of Molitor '637.  Thus, BALL_1

---

[6]  BALL_7, a hybrid based on the Proudfit and Molitor '637 references, also ignores Molitor's instructions to make a foamed cover layer at least 0.060 inches thick. [Halkowski Decl. Ex. 1, ¶ 23.]  In this instance, Acushnet made the cover layer even thinner than the already-too-thin outer cover of BALL_1 and BALL_4 – the outer cover of BALL_7 was only 0.0525 inches thick.  [*Id.*]

and BALL_4 must be excluded, as must any expert testimony about them or based on them.  *See Daubert*, 509 U.S. at 591; *Wesley Jessen*, 209 F. Supp. 2d at 393.

## VI.     CONCLUSION

For the foregoing reasons, Callaway Golf respectfully asks that the Court grant its *Daubert* motion to exclude any expert testimony regarding Acushnet's "hybrid" golf ball creations described in and referred to by the expert reports of Robert Statz and William MacKnight, and any expert opinions derived from Acushnet's fabrication and testing of those balls.


Dated:  September 10, 2007          FISH & RICHARDSON P.C.


                                    By: /s/ *Thomas L.  Halkowski*
                                        Thomas L. Halkowski (#4099)
                                        919 N. Market Street, Suite 1100
                                        P.O. Box 1114
                                        Wilmington, DE 19899-1114
                                        Tel:  (302) 652-5070
                                        Fax:  (302) 652-0607

                                        Frank E. Scherkenbach
                                        225 Franklin Street
                                        Boston, MA 02110-2804
                                        Tel:  (617) 542-5070
                                        Fax:  (617) 542-8906

                                        Roger A. Denning
                                        12390 El Camino Real
                                        San Diego, CA 92130
                                        Tel:  (858) 678-5070
                                        Fax:  (858) 678-5099

                                        Attorneys for Plaintiff
                                        CALLAWAY GOLF COMPANY


80049013.doc

**RULE 7.1.1**

      After consultation, counsel has been advised that Acushnet opposes the granting of the foregoing motion.

                                        */sl Thomas L. Halkowski*
                                        Thomas L. Halkowski

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2007, the attached document was electronically filed with the Clerk of Court using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on September 10, 2007, I have Electronically Mailed the document to the following person(s):

| | |
|---|---|
| Richard L. Horwitz, Esq.<br>David E. Moore, Esq.<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com | Attorneys for Defendant<br>ACUSHNET COMPANY |
| Alan M. Grimaldi, Esq.<br>Joseph P. Lavelle, Esq.<br>Kenneth Donnelly, Esq.<br>Brian A. Rosenthal, Esq.<br>Clint Brannon, Esq.<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC  20004<br>grimaldia@howrey.com<br>lavellej@howrey.com<br>rosenthalB@howrey.com<br>brannonC@howrey.com<br>donnellyk@howrey.com | Attorneys for Defendant<br>ACUSHNET COMPANY |

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski