IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

          Plaintiff,

    v.

ACUSHNET COMPANY,

          Defendant.

C. A. No. 06-91 (SLR)

**PUBLIC VERSION**

## CALLAWAY GOLF'S *OPPOSITION* TO ACUSHNET'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY FROM DR. GARTH L. WILKES, PH.D.

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED: September 28, 2007

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................1

II.  SUMMARY OF ARGUMENT .......................................................2

III. APPLICABLE LEGAL STANDARDS ..............................................2

IV.  ARGUMENT.........................................................................4

    A.   Dr. Wilkes' Infringement Opinion is Based on Reliable
        Methodology. .................................................................4

        1.   Acushnet Mischaracterizes Dr. Wilkes'
            Conclusion in Order to Attack It.................................4

        2.   Acushnet Does Not Contest Dr. Wilkes'
            Conclusion That a Vast Majority of the Accused
            Balls Infringe The Claims Requiring an Outer-
            Cover Shore D Hardness of 64 or Less........................5

        3.   No Elaborate Statistical Analysis is Necessary to
            Support Dr. Wilkes' Conclusion That a Vast
            Majority of the Accused Golf Balls Infringe. ...............7

    B.   Dr. Wilkes' Testimony Will Assist the Jurors in
        Interpreting the Technical Data That Proves Acushnet's
        Infringement.................................................................9

        1.   The Interpretation of Hardness Data Lies Outside
            the General Understanding and Experience of the
            Average Juror...............................................9

        2.   The *Ortiz* and *Lipson* Cases Acushnet Relies on
            Do Not Support Its Effort to Exclude Dr. Wilkes'
            Testimony. .................................................10

    C.   Because the "Function" of the Core in the Claimed
        Invention Does Not Relate to Ball Performance, Dr.
        Wilkes Has Sufficient Experience to Opine on Doctrine-
        of-Equivalents Infringement. .............................................10

V.   CONCLUSION.....................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AquaTex Industrial, Inc. v. Techniche Solutions*,
    479 F.3d 1320 (Fed. Cir. 2007)........................................................................4, 5

*Corp. v. SeaChange International, Inc.*,
    313 F. Supp. 2d 361 (D. Del. 2004) ...................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ..........................................................................................2, 3

*Inline Connection Corp. v. AOL Time Warner Inc.*,
    470 F. Supp. 2d 424 (D. Del. 2007)......................................................................3

*Kannankeril v. Terminix International, Inc.*,
    128 F.3d 802 (3d Cir. 1997)..................................................................................3

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
    2004 WL. 2260626 (No. 01 C 6934, N.D. Ill. Oct. 1, 2004), *aff'd*, 449
    F.3d 1209 (Fed. Cir. 2006)....................................................................................8

*Ortiz v. Yale Materials Handling Corp.*,
    2005 U.S. Dist. LEXIS 18424 (Civil No. 03-3657 (FLW), D.N.J.
    Aug. 24, 2005) ................................................................................................9, 10

*In re Paoli R.R.. Yard PCB Litigation*,
    35 F.3d 717 (3d Cir. 1994)) (emphasis added ......................................................3

*S.E.C. v. Lipson*,
    46 F. Supp. 2d 758 (N.D. Ill. 1998) ...................................................................10

*Walker v. Soo Line R.R. Co.*,
    208 F.3d 581 (7th Cir. 2000) ................................................................................8

*In re Zyprexa Products Liability Litigation*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) ..............................................................3, 9

## STATUTES

Fed. R. Evid. 702 .......................................................................................................2, 3

## I.    INTRODUCTION

In asking the Court to exclude Dr. Wilkes' testimony, Acushnet is not seeking to protect the integrity of the Court against the pernicious influence of junk science – it is simply hoping for a windfall.  Acushnet's *Daubert* challenge is not leveled against an untested theory such as whether cell phones cause brain damage or whether antipsychotic drugs cause diabetes.  Rather, Acushnet is arguing that Callaway Golf's expert, Professor Garth Wilkes, cannot rely on Acushnet's own internal business records concerning tests on ordinary Pro V1 golf balls to conclude that a vast majority of such balls have infringing hardness properties – a conclusion that even Acushnet cannot dispute.  Dr. Wilkes' conclusion does not require reckless speculation or exotic statistical methodology; it is based on reliable hardness measurements from representative samples of the accused products.

Moreover, Acushnet cannot deny that the subject of Dr. Wilkes' testimony – the properties of polymer materials used in the accused golf balls, including the Shore D hardness of the polyurethane outer cover layer and the flex modulus of the ionomer inner cover layer – is technical in nature and pertains to subjects outside the general experience and knowledge of the typical juror.  Like any patent case, this is one in which the use of an expert witness is perfectly appropriate to help the jury understand the evidence.

Finally, to attempt to dodge Dr. Wilkes' analysis of doctrine-of-equivalents infringement under Acushnet's incorrect construction of the term "core," Acushnet misconstrues the "function" of the core in the patented invention.  Acushnet fails to acknowledge that in the patents-in-suit, the only function ascribed to the core is to serve as a foundation for the inner and outer cover layers.  Because the patents do not link the core structure with any aspect of the ball's performance, Dr. Wilkes needs no specialized knowledge relating core construction to performance in order to render the opinion that

1

the two-layer core of Acushnet's Titleist Pro V1x and Pro V1 Star is, in the context of the patents-in-suit, equivalent to a single-layer core.[1]

## II.    SUMMARY OF ARGUMENT

1.    Dr. Wilkes' conclusion – that a vast majority of the accused golf balls infringe – is supported by reliable methodology. Using Acushnet's own business records, Dr. Wilkes properly relied upon Acushnet's representative data, the same data that Acushnet uses for its own internal testing.

2.    Dr. Wilkes' testimony pertains to a technical subject that lies outside the average jurors' experience and general knowledge, and therefore meets the standard for "helpfulness" under Fed. R. Evid. 702.

3.    Dr. Wilkes' doctrine-of-equivalents analysis properly acknowledges the generalized function of the core in the patents-in-suit. Dr. Wilkes needs no specialized qualifications regarding the effect of core construction on golf ball performance since, in the patents-in-suit, the function of the core does not have a special relationship to performance.

## III.    APPLICABLE LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence allows an expert witness to testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 599 (1993). Under Daubert, expert testimony must be (1) delivered by a qualified witness; (2) based on reliable methodology; and (3) relevant to the case. *Id.* at 588, 592-94.

The "reliability" requirement is a flexible standard intended to prevent litigants from relying on unproven theories or "junk science." *Id.* at 594-95. In acting as the "gatekeeper," the court is not required to judge whether the expert's conclusions are right

---

[1]    If the Court finds that the claims are not limited to a single-layer core, then this issue is moot, because Dr. Wilkes' doctrine-of-equivalents analysis applies only to Acushnet's improperly narrow construction of the term "core."

or wrong; the court needs only to determine whether the methods employed by the expert in reaching those conclusions are objectively reasonable. *Id.* When an expert's conclusion rests on reliable methodology, challenges to the expert's application of that methodology should be raised on cross-examination. *Daubert*, 509 U.S. at 596 ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of challenging shaky but admissible evidence").

The determination of whether to exclude expert evidence is committed to the trial court's discretion. However, in making this determination,

> there is a significant risk that district judges will set the threshold too high and will in fact force plaintiffs to prove their case twice. Reducing this risk is particularly important because *the Federal Rules of Evidence display a preference for admissibility*.

*Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 429-30 (D. Del. 2007) (citing *In re Paoli R.R.. Yard PCB Litig.*, 35 F.3d 717, 749-50 (3d Cir. 1994)) (emphasis added); *see also Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) ("Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility."). The Third Circuit has found that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Paoli*, 35 F.3d at 791-92.

One basis for the admission of expert testimony is that it would "assist the trier of fact to understand the evidence." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591 (1993). "In inquiring into the potential helpfulness of the proffered expert testimony, the court decides whether it concerns matters requiring assistance to the kind of people expected to sit on the jury." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007). Expert testimony is "freely admitted" if it is "likely to substantially assist the average person in understanding the case -- even if it simply explains facts and evidence

3

already in the record." *Id.* Expert testimony is especially common in patent cases, where the subject matter is technical and typically beyond the general knowledge of the jurors. *See AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 n.7 (Fed. Cir. 2007).

## IV.    ARGUMENT

As reflected in Dr. Wilkes curriculum vitae, he has extensive technical education and experience. Moreover, he has served as an expert witness multiple times in various cases across the United States, including in a case brought in *this* Court regarding golf ball materials, which was resolved before trial. Because Dr. Wilkes possesses substantial education and experience, Acushnet resorts to a mystifying attack upon an alleged statistical flaw, yet nowhere disputes the ultimate conclusion reached by Dr. Wilkes – that Acushnet's own data supports a finding that its golf balls infringe the asserted claims.

### A.    Dr. Wilkes' Infringement Opinion is Based on Reliable Methodology.

#### 1.    Acushnet Mischaracterizes Dr. Wilkes' Conclusion in Order to Attack It.

In its *Daubert* brief, Acushnet incorrectly characterizes Dr. Wilkes as opining that "all" or "virtually all" of the accused golf balls infringe. [D.I. 279 at 1.] Acushnet also accuses Dr. Wilkes of ignoring the existence of balls that, through manufacturing variations, have an outer-cover Shore D hardness greater than 64. *Id.* at 19. Neither of these statements accurately describes Dr. Wilkes' conclusions or methodology.

As Dr. Wilkes explained in his deposition, his opinion is that a <u>vast majority</u> of the individual Pro V1, V1x, and V1 Star golf balls infringe. It is not his opinion that <u>all</u> of the Pro V1-family balls infringe, and he has always recognized that the data he has relied on – Acushnet's own measurements – indicate that a relatively small number of balls fall outside the asserted claims:

4

Q.

A.                                             REDACTED


Q.
A.









[Declaration of Thomas L. Halkowski ("Halkowski Decl."), Ex. 1 (Wilkes Depo. Tr.) at

131:3-132:4 (emphasis added); *see also id.* at 134:1-4 .          REDACTED



     Thus, in deciding Acushnet's *Daubert* challenge, the court should consider

whether Dr. Wilkes' methodology is reliable to support the conclusion he has actually

expressed – that the vast majority of the accused golf balls (though somewhat less than

100%) infringe.

        2.       **Acushnet Does Not Contest Dr. Wilkes' Conclusion That a
Vast Majority of the Accused Balls Infringe The Claims
Requiring an Outer-Cover Shore D Hardness of 64 or Less.**

     Acushnet's *Daubert* challenge against Dr. Wilkes quixotically attacks the expert's

methodology but makes no effort to dispute the expert's conclusion. In fact, Acushnet

5

cannot deny that a "vast majority" of the Pro V1-family balls infringe the asserted claims.[2]

First, Acushnet's challenge focuses exclusively on whether Dr. Wilkes has a reliable basis for finding infringement of the claims that include a limitation on outer-cover hardness. Acushnet neglects to mention, however, that Callaway Golf has asserted several claims that do not include this limitation: claims 4, 6, 7, 8, 10, and 11 of the '156 patent.[3] Thus, Acushnet's reliability argument is wholly irrelevant to these six claims.

Second, Acushnet's Daubert brief all but concedes that *at least*    of the Pro V1-family balls infringe the claims that include an outer-cover hardness limitation:

> [T]he evidence that Dr. Wilkes relies on consists of Acushnet's own testing documents. . . .
>
>                                         REDACTED

[D.I. 279 at 19 (citing Fienberg Expert Report ¶ 27.] Obviously, if    of the balls are outside the infringing range, then    of the balls are within the infringing range. Acushnet's interpretation of its own data therefore *supports* Dr. Wilkes' conclusion that a "vast majority" of the balls infringe the claims that recite an outer-cover hardness.

Significantly, Acushnet has offered no evidence or analysis suggesting that any particular percentage of the Pro V1-family balls do not infringe the claims requiring an outer-cover hardness of 64 or less. Although Acushnet relies on the expert report of its statistician, Dr. Fienberg, to support its '    " argument, Dr. Fienberg emphasized in his deposition that it is    the accused balls fall outside the claimed outer-cover hardness range:

Q.

---

[2]    Jeffrey Dalton, Acushnet's own 30(b)(6) witness on the construction of the accused golf balls, confirmed that the    REDACTED
[Halkowski Decl. Ex. 6 (Dalton Depo. Tr.) at 174-87.]

[3]    U.S. Patent No. 6,503,156.

6

A.                                        REDACTED

Q.

A.

[Halkowski Decl. Ex. 2 (Fienberg Depo. Tr.) at 206:18-207:4.]  Dr. Fienberg further

explained that his expert report was not            REDACTED

but rather simply                                                                    [*Id.* at

83:23-84:7.]

Thus, while Acushnet debates whether Professor Wilkes applied reliable

methodology in concluding that a vast majority of the accused golf balls infringe, it

cannot offer any evidence suggesting that Professor Wilkes' conclusion is in fact

incorrect.  Since there is no dispute that Dr. Wilkes' conclusion is correct, that reason

alone should justify the admission of his testimony.  To the extent Acushnet still wishes

to attack Dr. Wilkes' methodology, it is free to do so via cross-examination.

### 3.    No Elaborate Statistical Analysis is Necessary to Support Dr. Wilkes' Conclusion That a Vast Majority of the Accused Golf Balls Infringe.

Acushnet's reliability challenge is based on its contention that, to reach

conclusions regarding the properties of the "general population" of accused golf balls, Dr.

Wilkes improperly extrapolated from "scattered" hardness data.  [D.I. 279 at 19-23.]

Although Acushnet castigates Dr. Wilkes for reasoning that "since some balls

infringe, most balls infringe" [*id.* at 19], that characterization of his methodology is

misleading and vastly oversimplified.  By necessity, Dr. Wilkes had to base his

conclusion on "some balls" – that is, a subset of the entire population of accused balls –

since Acushnet did not provide hardness data for every single one of the hundreds of

millions of individual golf balls in the accused population.  Given that any infringement

analysis, whether conducted from Acushnet's own data or independent testing, would

have to consider a subset of the general population, the only relevant question is whether

7

the data Dr. Wilkes reviewed was representative of the general population. All evidence indicates that is was.

First, Acushnet fails to offer any evidence that the Acushnet hardness data Dr. Wilkes consulted was not representative of the accused population as a whole. On the contrary, Acushnet's own characterizations of its data indicates that the balls it were measured were in no way aberrant, defective, out-of-spec, or otherwise "special." Rather, the three types of Acushnet documents Dr. Wilkes relied upon reported hardness measurements taken from balls sampled from Acushnet's normal production:

> The documents that Dr. Wilkes relies on for Shore D hardness fall into three categories. First, Dr. Wilkes relies on competitive ball database entries. See, e.g., Ex. 10, AC0000900-902. Acushnet regularly acquires and tests commercially available golf balls from retail outlets, including competitors' balls and its own balls, and reports the results of those balls in a competitive ball database.
> . . .
> Second, Dr. Wilkes relies on quality control tests that are performed during the manufacturing process on selected balls.
> . . .
> Third, Dr. Wilkes relies on Competitive Ball Review documents that set forth some data about the Shore D hardness measurements of the outer cover layer of the accused balls.

[D.I. 279 at 12.] As Dr. Fienberg confirms in his report, the second category includes balls **REDACTED**

[Halkowski Decl. Ex. 3 (Fienberg Expert Report) ¶¶ 21-22.]

Thus, there is every indication that the Acushnet test documents that Dr. Wilkes relied upon provided data from representative subsets of the general population. The golf balls Acushnet tested were evidently selected and purchased precisely because they were expected to be average, ordinary specimens.[4]

---

[4]     It is, of course, immaterial that Dr. Wilkes relied on Acushnet's own internal test data rather than conducting the tests himself. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000) ("Indeed, courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable.");

Acushnet also argues that Dr. Wilkes' analysis lacks a "statistical model" to explain how individual samples are distributed about the mean. [D.I. 279 at 22] Yet, Acushnet presents no "statistical model" of its own, nor does it demonstrate any reason REDACTED why the average outer-cover hardnesses reported in its own test documents,

REDACTED , would not support Dr. Wilkes' conclusion that, the vast majority of the accused balls have outer-cover hardnesses REDACTED

In essence, Acushnet is criticizing Dr. Wilkes for not making his analysis more complicated, yet Acushnet cannot demonstrate how any factors would justify or require such complications. All available evidence corroborates Dr. Wilkes' assumption that Acushnet's test data is based on representative samples, and Acushnet has shown no faults in Dr. Wilkes' reasonable and straightforward analysis of that data. Consequently, there is no justification for excluding Dr. Wilkes' infringement analysis as "unreliable."

**B.    Dr. Wilkes' Testimony Will Assist the Jurors in Interpreting the Technical Data That Proves Acushnet's Infringement.**

**1.    The Interpretation of Hardness Data Lies Outside the General Understanding and Experience of the Average Juror.**

Acushnet concedes that a "person of ordinary skill in the art" with respect to the patents-in-suit has experience and knowledge well beyond that of the typical juror. [Halkowski Decl. Ex. 4 (Statz Expert Report) ¶ 49] In particular, Acushnet emphasizes that such a person would possess familiarity with the materials used in golf ball construction. [*Id.*] Dr. Wilkes, a university professor with decades of experience regarding the chemistry and material properties of polymers, is precisely the type of expert whose testimony will assist the jurors in understanding concepts like polymer hardness, how the shape of a polymer sample affects its hardness, and how hardness measurements are made. Additionally, Dr. Wilkes' testimony will be helpful to explain

---

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 2004 WL 2260626 at *18 (No. 01 C 6934, N.D. Ill. Oct. 1, 2004) ("An expert may consider testing of another expert in formulating opinions.") (citing *Walker*), *aff'd*, 449 F.3d 1209 (Fed. Cir. 2006).

other concepts such as "flex modulus," "low-acid ionomers," and "non-ionomeric thermoplastic elastomers," all of which appear in the asserted claims.

Because Dr. Wilkes' testimony will establish the context and meaning of the documentary evidence that proves Acushnet's infringement, it is permissible under Rule 702. *See Zyprexa*, 489 F. Supp. 2d at 283.

> 2.   The *Ortiz* and *Lipson* Cases Acushnet Relies on Do Not
>       Support Its Effort to Exclude Dr. Wilkes' Testimony.

In *Ortiz*, the court's exclusion of the plaintiff's expert was not simply based upon the concern that the jurors could interpret the data as well as the expert – it was based on the court's finding that the expert's interpretation of that data did not support his conclusion. *Ortiz v. Yale Materials Handling Corp.*, 2005 U.S. Dist. LEXIS 18424 at *25 (Civil No. 03-3657 (FLW), D.N.J. Aug. 24, 2005) (holding that expert's methodology "offers no substantial support for his opinion"). Additionally, the court found a multitude of flaws in the expert's methodology that also factored into the decision to exclude his testimony. *See id.* at *25-*33 (criticizing methodology of expert's tests and noting lack of peer review or publication of those methods).

In *Lipson*, the basis for excluding the expert's testimony was even more straightforward – the expert was proffered to testify about the credibility of another witness, which was impermissible because it would "invade the quintessential jury function of determining the credibility of witnesses." *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998).

> C.   Because the "Function" of the Core in the Claimed Invention Does
>       Not Relate to Ball Performance, Dr. Wilkes Has Sufficient Experience
>       to Opine on Doctrine-of-Equivalents Infringement.

In attempting to exclude Dr. Wilkes' testimony regarding doctrine-of-equivalents infringement under Acushnet's proposed construction of "core," Acushnet makes much of

the fact that Dr. Wilkes has not personally designed or constructed a golf ball.[5]  Dr. Wilkes' conclusions regarding equivalence, however, are based on the basic function the core serves in the patented invention – namely, to serve as a foundation for the inner and outer cover layers and provide a suitable diameter and weight for the golf ball:


REDACTED


[Halkowski Decl. Ex. 5 (Wilkes Expert Report) Ex. B at 1-2.]

   Given that the patents-in-suit do not attribute any specialized function to the core except providing a foundation for the polyurethane-over-low-acid-ionomer dual-layer cover, Dr. Wilkes needs no particularized expertise in golf ball design to opine that the two-layer core in the Titleist Pro V1x and Pro V1 Star performs this basic function. *See, e.g., nCube Corp. v. SeaChange Int'l., Inc.*, 313 F. Supp. 2d 361, 369 (D. Del. 2004) ("when the claimed function is performed in the accused system by the same structure, infringement is established regardless of the additional capacities of the accused system") (citing *Vulcan Eng'g Co. v. Fata Aluminium Inc.*, 278 F.3d 1366, 1374 (Fed. Cir. 2002)). Acushnet's expert, Dr. Puckett, may have different experience than Dr. Wilkes regarding the subtle effects that core construction could possibly have on ball performance, but those considerations are simply irrelevant to a doctrine-of-equivalents analysis in this case. Here, the claimed invention, the core's "function" is nothing more than serving as a basic foundation for the inner and outer cover layers. *See nCube*, 313 F. Supp. 2d at 369.

---

[5]  Acushnet's proposed construction of "core" is incorrect because it would exclude "multi-layer cores," which have long been recognized in the art. [*See* D.I. 204 at 17, D.I. 262 at 16-17.] If the Court rejects Acushnet's construction, Acushnet's argument to exclude Dr. Wilkes' doctrine-of-equivalents testimony will be moot.

## V.     CONCLUSION

For the foregoing reasons, Callaway Golf respectfully asks the Court to DENY

Acushnet's Motion to Exclude the Testimony of Dr. Garth L. Wilkes.

Dated:  September 21, 2007                FISH & RICHARDSON P.C.


                                        By:  /s/ Thomas L.  Halkowski
                                             Thomas L. Halkowski (#4099)
                                             919 N. Market Street, Suite 1100
                                             P.O. Box 1114
                                             Wilmington, DE 19899-1114
                                             Tel:  (302) 652-5070
                                             Fax:  (302) 652-0607

                                             Frank E. Scherkenbach
                                             225 Franklin Street
                                             Boston, MA 02110-2804
                                             Tel:  (617) 542-5070
                                             Fax:  (617) 542-8906

                                             Roger A. Denning
                                             12390 El Camino Real
                                             San Diego, CA 92130
                                             Tel:  (858) 678-5070
                                             Fax:  (858) 678-5099

                                             Attorneys for Plaintiff
                                             CALLAWAY GOLF COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2007, the attached document was electronically

filed with the Clerk of Court  using CM/ECF which will send electronic notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on September 21, 2007, I have Electronically Mailed the document

to the following person(s):

Richard L. Horwitz, Esq.                    Attorneys for Defendant
David E. Moore, Esq.                         ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                       Attorneys for Defendant
Joseph P. Lavelle, Esq.                      ACUSHNET COMPANY
Kenneth Donnelly, Esq.
Brian A. Rosenthal, Esq.
Clint Brannon, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski