IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>ACUSHNET COMPANY,<br><br>        Defendant. | C. A. No. 06-91 (SLR) |

**CALLAWAY GOLF'S *REPLY* IN SUPPORT OF ITS
*DAUBERT* MOTION RE HYBRID GOLF BALLS**

                **FISH & RICHARDSON P.C.**
                Thomas L. Halkowski (#4099)
                919 N. Market Street, Suite 1100
                P.O. Box 1114
                Wilmington, DE 19899-1114
                Tel:  (302) 652-5070
                Fax:  (302) 652-0607

                Frank E. Scherkenbach
                225 Franklin Street
                Boston, MA 02110-2804
                Tel:  (617) 542-5070
                Fax:  (617) 542-8906

                Roger A. Denning
                12390 El Camino Real
                San Diego, CA 92130
                Tel:  (858) 678-5070
                Fax:  (858) 678-5099

                *Attorneys for Plaintiff*
                *Callaway Golf Company*

DATED:  September 28, 2007

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. SUMMARY OF ARGUMENT ..............................................................................2

III. REVIEW OF THE PARTIES' POSITIONS ..........................................................3

IV. ADDITIONAL PERTINENT LEGAL STANDARDS .........................................4

V. ARGUMENT ..........................................................................................................5

    A. Acushnet Cannot Deny That It Is Trying to Use the Hybrid Golf Balls as Evidence of the Inherent Hardness Properties of the Hybrid Constructions........................................................5

    B. In Arguing That the Hybrid Balls Show What *Could* Have Been Created and Tested in 1995, Acushnet Fails to Show How Those Balls Might Demonstrate What *Was* Known in 1995.......................................................................6

    C. Acushnet's Hybrid Balls Are Not Acceptable Models of the Prior Art Because They Do Not Recreate Any Embodiment Disclosed By Any Individual Prior Art Reference. ................................................................................................8

        1. Contrary to Acushnet's Assertions, None of the Hybrid Constructions is "Taught" or Disclosed by the Prior Art ..............................................................................9

        2. None of the Cases Acushnet Relies Upon Justifies the Creation of Models Based on Multiple Prior Art References Where No Individual Reference Describes the Construction of That Model. ..........................................................................10

    D. The Nesbitt-Molitor '637 Hybrid Balls are Irrelevant to Acushnet's Anticipation Defense Because They Utilize "Unfoamed" Cover Layers...........................................................12

VI. CONCLUSION.....................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ADM Corp. v. Speedmaster Packaging Corp.*,
   384 F. Supp. 1325 (D.N.J. 1974) ................................................................11, 12

*Cardinal of Adrian, Inc., v. Peerless Wood Products, Inc.*,
   363 F. Supp. 1298 (6th Cir. 1973) ......................................................................12

*Ciba-Geigy Corp. v. Alza Corp.*,
   864 F. Supp. 429 (D.N.J. 1994) ..........................................................................11

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) .............................................................................5

*Crown Ops. International, Ltd. v. Solutia, Inc.*,
   289 F.3d 1367 (Fed. Cir. 2002) ...........................................................................12

*IXYS Corp. v. Adv. Power Tech., Inc.*,
   321 F. Supp. 2d 1133 (N.D. Cal. 2004) ................................................................5

*In re Napier*,
   55 F.3d 610 (Fed. Cir. 1995) ......................................................................4, 9, 10

*In re Naylor*,
   369 F.2d 765 (C.C.P.A. 1966) ......................................................................4, 5, 7

*In re Rijckaert*,
   9 F.3d 1531 (Fed. Cir. 1993) .................................................................................4

*In re Spormann*,
   363 F.2d 444 (C.C.P.A. 1966) ......................................................................4, 5, 8

*In re TMI Litigation*,
   193 F.3d 613 (3d Cir. 1999) ..................................................................................4

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*,
   209 F. Supp. 2d 348 (D. Del. 2002) ......................................................................9

*Young Dental Manufacturing Co. v. Q3 Special Products, Inc.*,
   112 F.3d 1137 (Fed. Cir. 1997) ...........................................................................11

### STATUTES

35 U.S.C. § 102 ............................................................................................................5, 7

Fed. R. Evid. 401 .........................................................................................................4, 6

I.      INTRODUCTION

In its opening brief, Callaway Golf explained that the hybrid golf balls that Acushnet created and tested for this litigation, and any expert testimony about them, are irrelevant and inadmissible because outer-cover Shore D hardness measurements of balls that were first created by counsel in 2007 cannot prove that a person of ordinary skill in the art in 1995 would have known of those hardness properties. Acushnet's opposition does not dispute that, in 1995, no one knew of the hardness properties of the various types of hybrid balls at issue here, because none of those balls existed at that time. Plainly, if such hardness properties were unknown at the time of the invention, claimed inventions that included those properties could not have been obvious.

The only argument that Acushnet offers to support the admissibility of the hybrid balls, for purposes of determining obviousness, is that a person of ordinary skill in the art in 1995 <u>could</u> have made these balls, and <u>if</u> he had, he would have discovered that the balls exhibit the claimed hardness. But this theory, even if true, is irrelevant – what matters is not that a person of ordinary skill might have been able to discover the hardness properties of the hybrid combinations if he had thought to make the hybrid golf balls; what matters is whether anyone actually <u>did</u> know in 1995 that golf balls based on the hybrid combinations would exhibit the claimed hardness properties. Given Acushnet's concession that the hardness properties could not have been known without making the balls, the properties measured from hybrid golf balls created in 2007 is irrelevant to the question of whether or not those properties would have been known in 1995, when those balls did not yet exist.

None of the many cases Acushnet cites in its opposition provide any justification for relying upon purported creations of prior art where those objects do not accurately reflect what the prior art describes. Here, it is clear that no single prior art patent describes the construction of *any* of the hybrid balls Acushnet has created in an attempt to plug the holes in its invalidity defenses.

Indeed, if Acushnet's theory of relevance were accepted, it would create a loophole by which defendants could always patch over the defects in their obviousness defenses using the same illogical strategy Acushnet is attempting here: constructing models designed to exhibit properties *not* disclosed in the prior art, then arguing that persons of skill in the art could have appreciated the undisclosed properties by making the same models (even though no one ever did so).

Finally, with regard to anticipation issues, Acushnet fails to acknowledge that Nesbitt cannot possibly incorporate any "unfoamed" polyurethane or ionomer cover compositions from the '637 patent, because *the '637 patent does not disclose any unfoamed cover compositions*.

## II.     SUMMARY OF ARGUMENT

1.     Regardless of how Acushnet attempts to characterize its reliance on the hybrid golf balls, these balls are indisputably being cited as evidence of the inherent Shore D hardness properties of balls constructed from combinations of prior art patents. To rely on the concept of inherency for its obviousness defense, Acushnet must show that a person of skill in the art would have known of the allegedly inherent properties at the relevant time.

2.     Acushnet cannot show the relevance of the hybrid balls by arguing that they represent what a person of ordinary skill "could have" made, and that such a person, upon making such balls, would have become aware of their hardness properties. The law requires Acushnet to show that persons of skill in the art *did* know of the inherent hardnesses of the hybrid combinations, not merely that such information might have been discoverable.

3.     Because no one made a golf ball incorporating any of the hybrid constructions until Acushnet's counsel did so in the course of this litigation, suggests that

no one knew of the hardness properties of the as-yet-unmade hybrid constructions in 1995.

4.     Acushnet's case law in no way supports its improper attempt to rely on alleged prior art creation that, in fact, do not represent any embodiment disclosed in any prior art reference.

5.     The only balls potentially relevant to Acushnet's anticipation defense – the Nesbitt-'637 hybrid balls – cannot be relied upon to support that defense. Acushnet's anticipation argument relies on its theory that Nesbitt incorporates by reference certain "foamed" cover constructions discussed in Molitor '637, but Acushnet's newly-created Nesbitt-'637 hybrid balls do not include "foamed" cover layers.

## III.     REVIEW OF THE PARTIES' POSITIONS

Callaway Golf has asserted claims that include limitations on the Shore D hardness of the outer cover of certain multi-layer golf balls. Acushnet has asserted that these claims are rendered obvious by six discrete combinations that variously include portions of two or more of the following prior art patents: Nesbitt, Proudfit, Molitor '637, Wu, and Molitor '751. None of the six combinations, even when their component patents are read together, disclose any Shore D hardness for the outer cover layer.

Accordingly, to show that the prior art combinations would have rendered obvious each of the asserted claims as a whole – that is, including the Shore D hardness limitations – Acushnet has attempted to rely evidence other than the prior art patents themselves. Acushnet and its expert, Dr. Statz, have proposed that the outer cover hardness limitations of the prior art combinations are the hardness properties measured from "hybrid" golf balls that Acushnet created for this litigation, in which Acushnet specially combined outer cover layer, inner cover layer, and core compositions allegedly that they chose from amongst the prior art patents.

Callaway Golf motion explained that Acushnet' hybrid golf balls, and any expert testimony about them, are irrelevant, and thus inadmissible, because obviousness cannot be predicated on what is unknown, and the hardness properties of the made-for-litigation hybrid balls cannot establish what Acushnet is obligated to prove: that, in 1995, a person of ordinary skill in the art would have known that golf balls possessing the hybrid constructions would exhibit the hardnesses claimed in the patents-in-suit. [D.I. 282 at 9-11.]

In its opposition, Acushnet has argued that the hybrid balls are relevant because they represent "what a person of ordinary skill would have made simply by following the instructions of the prior art." [D.I. 297 at 1.]

IV.    ADDITIONAL PERTINENT LEGAL STANDARDS

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." When an expert is tendered to offer testimony about, or based on, irrelevant evidence, that testimony does not "fit" the case, and is properly excluded. *See In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999).

"[T]he inherent teaching of a prior art reference . . . arises both in the context of anticipation and obviousness." *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995). "Obviousness cannot be predicated on what is unknown." *In re Spormann*, 363 F.2d 444, 448 (C.C.P.A. 1966). Moreover, obviousness cannot be based on "a retrospective view of inherency" – that is, a party cannot rely on inherency in an obviousness argument without proving that the allegedly inherent property was known to persons of skill in the art at the time the invention was made. *See In re Rijckaert*, 9 F.3d 1531, 1533-34 (Fed. Cir. 1993); *In re Naylor*, 369 F.2d 765, 768 (C.C.P.A. 1966).

4

V.   **ARGUMENT**

  A.   **Acushnet Cannot Deny That It Is Trying to Use the Hybrid Golf Balls as Evidence of the Inherent Hardness Properties of the Hybrid Constructions.**

Acushnet vigorously denies that its hybrid golf balls are being used to prove "inherency," which Acushnet claims is a doctrine that applies solely to anticipation under 35 U.S.C. § 102. [D.I. 297 at 10.] Yet, in relying on its hardness measurements of the hybrid golf balls, Acushnet is unquestionably taking the position that those hardness properties are <u>inherent</u> in the hybrid constructions. Acushnet is arguing that the asserted claims, as a whole, are obvious because an outer-cover hardness in the claimed range – an element not expressly disclosed by any of Acushnet's prior art patents, alone or in combination with each other – would be recognized by a person of skill in the art upon making a hybrid ball. [D.I. 297 at 1, 10.] Whether Acushnet acknowledges it or not, **this is an inherency argument** - it alleges that properties not expressly disclosed in the references themselves are the natural and necessary result of practicing those references. *See Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) (explaining that a property is "inherent" in a prior art reference if it is the "natural result flowing from the operation as taught" by the reference).[1]

Accordingly, to rely on combinations of prior art patents to show obviousness, Acushnet must show that a person of skill in the art in 1995 would have known of the inherent hardness properties of golf balls embodying the hybrid constructions. *See Naylor*, 369 F.2d at 768, *Spormann*, 363 F.2d at 444.

---

[1] Acushnet's citation of the *IXYS* case is unavailing. [D.I. 297 at 10.] In *IXYS*, the district court held that a prior art reference that disclosed "an extensive upper metallization layer" that "covers the underlying insulating layer without limitation, up to and including overlying that insulating layer in its entirety" rendered obvious the limitation of "overlying the insulating layer." *IXYS Corp. v. Adv. Power Tech., Inc.*, 321 F. Supp. 2d 1133, 1151 (N.D. Cal. 2004). *IXYS*, therefore, is merely a garden-variety obviousness case where, unlike this case, the doctrine of inherency was not invoked or implicated by any of the defendant's positions. *See id.* n.16.

### B. In Arguing That the Hybrid Balls Show What *Could* Have Been Created and Tested in 1995, Acushnet Fails to Show How Those Balls Might Demonstrate What *Was* Known in 1995.

The central question in this *Daubert* motion is whether testimony from Acushnet's experts about the hybrid balls would render it any more or less probable that a person of skill in the art in 1995 would have known of the hardness properties of golf balls embodying the hybrid constructions. *See* Fed. R. Evid. 401; *Daubert*, 509 U.S. at 591. Because Acushnet can provide no coherent explanation of how the hybrid golf balls it fabricated in 2007 in any way demonstrate what would have been known, or was known, to a person of ordinary skill in the art in 1995, those hybrid balls, and any expert testimony regarding them or based on them, should be excluded as irrelevant.

Significantly, Acushnet does not (and cannot) argue that a person of skill in the art in 1995 would be aware of the inherent hardness properties of the hybrid constructions based on that person's own knowledge or experience. Acushnet concedes, as it must, that the hardness of a particular hybrid construction would not become obvious to that person ***unless and until he actually made a ball having that construction:***

> The [hybrid] ball testing demonstrates what a person of ordinary skill could learn from the routine task of making and testing the balls that were taught in the prior art.

[D.I. 297 at 1 (emphasis added).]

> The Proudfit combination balls . . . are probative of what one of ordinary skill in the art could readily ascertain in 1995. . . . Acushnet [] contends that the testing of the Proudfit combination balls show that a skilled artisan, applying no more than ordinary skill, would find it obvious upon making the balls expressly taught in the references, to make a ball that has such a Shore D hardness.

[D.I. 297 at 10 (emphasis added).] There is no dispute that no one made any of the hybrid balls until Acushnet did so in 2007.[2] Acushnet, therefore, can only theorize that a person of skill in the art <u>could have</u> made a hybrid ball exhibiting a hardness in the claimed range, and thereby <u>could have</u> ascertained that the ball's hybrid construction would possess the claimed hardness.[3]

Acushnet's argument, however, fails to show the relevance of the hybrid golf balls. Even if the Court were to accept as true Acushnet's suggestion that the hybrid balls show what one of skill in the art <u>could have</u> readily ascertained in 1995, the hybrid balls would still be irrelevant, because they would not establish what Acushnet must show to prove obviousness: that in 1995, a person of skill in the art <u>would have</u> known, or <u>did</u> know, that a golf ball made from one of the hybrid constructions would possess a hardness in the claimed range. *See Naylor*, 369 F.2d at 768.

Yet, if Acushnet had cast its argument in the proper framework – i.e., that the hybrid balls show not just what a person of ordinary skill could have known, but actually <u>did</u> know, about the hybrid constructions – such an argument would be self-contradictory. Acushnet would be saying:

- that one of ordinary skill in the art would have known, or did know, of the hardness properties of the hybrid constructions;
- that knowledge of those hardness constructions would come from making the hybrid balls;

---

[2] Of course, if anyone had made any of the hybrid balls before 1995, Acushnet would be asserting those balls as anticipatory prior art under 35 U.S.C. § 102.

[3] This theory – that a person of ordinary skill in the art could make and test the hybrid balls, and thereby associate the claimed hardnesses with the hybrid constructions – is the only grounds Acushnet has proposed for admitting the hybrid balls, and testimony about them, as relevant evidence. Acushnet, therefore, would be obligated to introduce this theory as the foundation for any discussion of the hybrid balls. None of Acushnet's experts, however, included this theory in his expert report, so it is unclear how Acushnet intends to lay such a foundation at trial.

- but, admittedly, no one actually did make any of the hybrid balls;
- ergo, no one would have known of the hardness properties of the hybrid balls (a conclusion that is diametrically opposed to what Acushnet would be claiming to prove).

Thus, the hybrid balls cannot show that a person of skill in the art would have known, or did know, the hybrid constructions to exhibit the claimed hardnesses.[4]

### C. Acushnet's Hybrid Balls Are Not Acceptable Models of the Prior Art Because They Do Not Recreate Any Embodiment Disclosed By Any Individual Prior Art Reference.

Acushnet's hybrid balls are fabrications of golf ball constructions that ***no prior art reference describes***. Rather, Acushnet, with the full benefit of hindsight, cobbled the newly-created hybrid balls together from disparate references, none of which discloses the construction of any of the balls Acushnet created.[5]

---

[4] Paradoxically, Acushnet's argument, taken at face value, would demonstrate that the hardnesses of the hybrid constructions were not known in 1995, which would mandate the conclusion that the patent claims at issue were not obvious:
- Acushnet's argument proposes that one of skill in the art would have known the hardness properties of a hybrid ball by making it;
- Neither Acushnet nor its experts suggest any other way the hardness of any hybrid construction would have been known, or knowable;
- Acushnet concedes that no one actually made any of the hybrid balls until 2007, when its lawyers and in-house personnel conceived of the hybrid constructions and fabricated them for this litigation;
- Therefore, by Acushnet's own logic, no one in 1995 would have known of the hardness properties of any of the hybrid constructions.

Accordingly, if the Court were to accept the premises underlying Acushnet's relevance arguments, Acushnet's obviousness arguments would fail, because they would be "predicated on what is unknown" – the unknown hardness properties of never-before-made hybrid combinations. *See Spormann*, 363 F.2d at 448.

[5] Acushnet argues that its Nesbitt-Molitor '637 hybrid represents an embodiment of a single prior art reference because Nesbitt supposedly "incorporates by reference" the Molitor '637 patent. [D.I. 297 at 12-13.] Callaway Golf has explained in previous briefs that Nesbitt does not incorporate Molitor's mention of a polyurethane cover generally, an Estane 58133 cover specifically, or a blended low-acid ionomer cover, and certainly cannot incorporate by reference all of those of those disclosures. [*See*

8

Accordingly, *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348 (D. Del. 2002) is directly on point. *Wesley Jessen* stands for the proposition that, when an alleged recreation of a prior art reference involves substitutions that the reference "does not teach or suggest," that recreation is incapable of providing evidence about inherency. [*See* D.I. 297 at 12 (citing *Wesley Jessen*, 209 F. Supp. 2d at 393).][6]

### 1. Contrary to Acushnet's Assertions, None of the Hybrid Constructions is "Taught" or Disclosed by the Prior Art

In arguing that the hybrid balls were "made from the express teachings of the prior art" (D.I. 297 at 1), Acushnet is simply mistaken. In truth, **none** of the prior art references discloses the construction or formulation of **any** of Acushnet's hybrid balls. Each and every one of these balls is the result of information borrowed piecemeal, and particular materials chosen with the benefit of hindsight, from multiple references.

Struggling to argue that certain patents expressly suggest combining their teachings with specific disclosures of other patents, thereby providing the "recipes" for the polyurethane-over-ionomer hybrid balls, Acushnet goes well beyond what the patents actually teach.

First, despite the fact that the Proudfit patent does not even include the word "polyurethane," Acushnet argues that "[t]he Proudfit combination balls were expressly taught by Proudfit, in view of the polyurethane [Wu and Molitor '751] references." [D.I. 297 at 10.] This is nonsense. If the Proudfit patent "expressly" taught polyurethane-

---

D.I. 202 at 8-14; D.I. 258 at 8-9.] Without incorporation by reference of all of these features, all of which Acushnet utilized in the Nesbitt-'637 hybrid ball, that ball must be regarded as the combination of two discrete references. Moreover, regardless of whether the Nesbitt-Molitor '637 hybrid is viewed as coming from one or two references, Acushnet had to pick and choose from at least hundreds of different materials to come up with the special hybrid that they now argue was "obvious."

[6] Whether *Wesley Jessen* addressed inherency in the context of anticipation is immaterial, since inherency applies in the context of obviousness as well. *Napier*, 55 F.3d at 613.

9

covered golf balls, there would be no need to read Proudfit "in view" of some other patent that discloses polyurethane. Proudfit does not "expressly teach" making the Proudfit hybrid balls any more than a bottle of Coca-Cola "expressly teaches" making a rum-and-Coke.

Second, Acushnet mischaracterizes the Wu patent by suggesting that Wu "expressly teach[es] one skilled in the art to replace the outer cover of three-piece balls, like the Proudfit ball, with polyurethane." [D.I. 297 at 9 and 12, citing Wu '673 patent col. 1:40-43.] Wu says nothing about golf balls having multiple cover layers, generally, or about the Proudfit patent specifically. Wu lacks even the faintest suggestion to use a polyurethane outer cover in a dual-cover ball, much less any "express" teaching.

Third, Acushnet is incorrect when it argues that the Molitor '751 patent "expressly teaches using polyurethane on a ball like that described in Proudfit." [D.I. 297 at 4.] Molitor '751 suggests no more than using a polyurethane cover over a solid inner cover layer. [Halkowski Decl. Ex. 1 at col. 3:7-12.] The '751 patent includes no mention whatsoever of the low-acid ionomers Acushnet used in the inner cover layer of its Nesbitt-'751 and Proudfit-'751 hybrid balls.

Finally, Acushnet claims that its "Nesbitt combination balls" were made "precisely to the specifications of Nesbitt," but in the next sentence admits that the Nesbitt patent does not disclose the core composition Acushnet used in those balls. [D.I. 297 at 5.] Acushnet acknowledges that "Nesbitt teaches only the use of a solid rubber core" (*id.*), but fails to explain why it fabricated its Nesbitt hybrid balls with a core that was not solid rubber.[7]

        2.       **None of the Cases Acushnet Relies Upon Justifies the Creation of Models Based on Multiple Prior Art References Where No**

---

[7] Specically, the core used in Acushnet's Nesbitt hybrid balls contained significant portions of zinc diacrylate, zinc stearate, limestone, and other non-rubber materials. [D.I. 283 at Ex 1.B at ¶ 8.] Inexplicably, Dr. MacKnight claimed this mixture was "based on the disclosure of Nesbitt 193." [*Id.*]

### Individual Reference Describes the Construction of That Model.

Tellingly, none of the cases Acushnet has relied upon relate to an alleged "recreation" based on a *combination* of prior art references. Recreating an embodiment fully described in a single prior art reference is one thing, as long that recreation is accurate, but Acushnet can offer no authority justifying its creation of "combination balls" that are not described in any prior art reference.

*Young Dental* involved a model the defendant created based on a single reference, the "Thiedemann reference model (?)." *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1145-46 (Fed. Cir. 1997). The plaintiff claimed that the defendant's model was oversimplified, but did not claim that it misrepresented the Thiedemann embodiment. *Id.* Here, Acushnet's hybrid balls do not represent the disclosure of *any* reference, but rather are supposedly based on the hindsight combination of multiple references. Moreover, in many instances, the construction of these balls departs from what the combination actually would teach. [*See* D.I. 282 at 13-15.]

*Ciba-Geigy*, a case about transdermal nicotine patches, involved the disclosure of a single reference, the "Fox letter." *Ciba-Geigy Corp. v. Alza Corp.*, 864 F. Supp. 429, 436 (D.N.J. 1994). The Fox letter suggested that nicotine could be delivered through a skin patch in the same manner as nitroglycerine or scopolamine. *Id.* Given these disclosures, and the lack of any evidence that the defendants' expert had misinterpreted the Fox letter, the court found no impropriety in an experiment in which the expert did precisely what the Fox letter suggested – modifying a nitroglycerine patch to deliver nicotine. *Id.* at 433, 436. But whereas the Fox letter provided the "recipe" for the expert's experiment, no prior art reference in this case discloses the ingredients or construction for any of Acushnet's hybrid balls.

*ADM*, a case about adhesive envelopes for packaging, involved a number of models made from prior art patents. *ADM Corp. v. Speedmaster Packaging Corp.*, 384 F.

11

Supp. 1325, 1345 (D.N.J. 1974). Each model was made according to the disclosure of a single prior art reference, and the patentee did not contest that the models were accurate representations of what the respective prior art references disclosed. *See id.* Here, the situation is different – Acushnet's hybrid balls do not represent what is taught by *any* prior art reference.

In *Cardinal*, the district court had considered demonstrations and models of cabinet hinges "which defendants had built pursuant to the disclosures of certain prior art patents." *Cardinal of Adrian, Inc., v. Peerless Wood Prods., Inc.*, 363 F. Supp. 1298, 1300 (6th Cir. 1973). The *Cardinal* opinion does not indicate that any objection was raised to this evidence, and there was no suggestion that any of the demonstrations or models did not accurately reflect what the prior art described. *See id.* Thus, Cardinal is not instructive in this case, where Callaway Golf has raised serious objections to the relevance of Acushnet's non-prior art hybrid balls.

In *Crown Operations*, the court noted that the defendant could have created and tested "an embodiment of the Gillery patent." *Crown Ops. Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1378 n.4 (Fed. Cir. 2002). The court presumed that the Gillery patent – again, a single reference – contained sufficient disclosures to permit the defendant to accurately recreate what the patent described. *Id. Crown* provides no justification for creating "combination balls" that do not represent any ball described in any prior art patent.

### D.    The Nesbitt-Molitor '637 Hybrid Balls are Irrelevant to Acushnet's Anticipation Defense Because They Utilize "Unfoamed" Cover Layers.

Acushnet cannot argue that the Nesbitt patent incorporates by reference from the Molitor '637 patent either a polyurethane cover generally, an Estane 58133 cover specifically, or a cover comprising a blend of low-acid ionomers. [*See* D.I. 202 at 8-14; D.I. 258 at 8-9.] But even if Acushnet's incorporation argument were somehow accepted, the Nesbitt-'637 hybrid balls, BALL_1 and BALL_4, would still be irrelevant to

12

Acushnet's anticipation defenses because, in making those balls, Acushnet did not follow Molitor's teaching to make the covers "foamed" or "cellular."  [D.I. 282 at 13-14.]

If Nesbitt incorporated by reference the polyurethane and blended low-acid ionomer covers mentioned in Molitor '637, what Nesbitt would be incorporating is those covers *as Molitor describes them* – that is, covers in which the polymer has been "foamed."  Nesbitt's only reference to the '637 patent is in the specific context of discussing "foamable compositions" (D.I. 203 Ex. 2 at col. 3:58-59), and Acushnet cannot deny that all the covers disclosed in the '637 patent are foamed (D.I. 282 at 14 n.5).

Although Acushnet argues that Nesbitt discusses using covers that are not foamed (D.I. 297 at 15-16), that argument is irrelevant to anticipation, because Acushnet's anticipation defense depends on Nesbitt's supposed incorporation of disclosures from Molitor '637.  What Acushnet fails to acknowledge is that Nesbitt cannot incorporate any "unfoamed" polyurethane or ionomer cover compositions from the '637 patent, because ***the '637 patent does not disclose any unfoamed cover compositions***.

Thus, even if Acushnet's hybrid golf balls were admissible for other purposes (which they are not), Acushnet should be precluded from offering expert testimony suggesting that the Nesbitt-'637 hybrids, BALL_1 and BALL_4, in any way relate to or support Acushnet's anticipation defense.

## VI. CONCLUSION

For the foregoing reasons, Callaway Golf respectfully asks that its *Daubert* Motion to Exclude Testimony Regarding Acushnet's Hybrid Balls be GRANTED.

Dated:  September 28, 2007  FISH & RICHARDSON P.C.

By: /s/ *Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

Attorneys for Plaintiff
CALLAWAY GOLF COMPANY