IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | C.A. No. 06-91 (SLR) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ACUSHNET'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF
CALLAWAY'S EXPERT WITNESS GARTH L. WILKES**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for Defendant
Acushnet Company*

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: September 28, 2007
Public Version Dated: October 1, 2007

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................1

II.  ARGUMENT.........................................................................................................................2

    A.    Dr. Wilkes Has No Scientific Basis to Conclude that the "Vast Majority"
         of Accused Balls Infringe .........................................................................................2

    B.    Dr. Wilkes' Summary of Test Results Is Not Appropriate for Expert
         Testimony ................................................................................................................6

         1.    Dr. Wilkes does no more than note that some of the Shore D
              hardness data he saw is under 64, which any lay juror could do .................6

         2.    Callaway's attempt to distinguish *Ortiz* is misplaced................................7

    C.    Dr. Wilkes is not Qualified to Testify about Infringement under the
         Doctrine of Equivalents since He is not a Golf Ball Expert ...................................10

III. CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AquaTex Industrial, Inc. v. Techniche Solutions,*
   479 F.3d 1320 (Fed. Cir. 2007) ...................................................................................2, 10

*Brooks v. Outboard Marine Corp.,*
   234 F.3d 89 (2d Cir. 2000) ...............................................................................................3, 5

*Calhoun v. Yamaha Motor Corp., U.S.A.,*
   350 F.3d 316 (3d Cir. 2003) ...........................................................................................3, 12

*Centricut, LLC v. Esab Group, Inc.,*
   390 F.3d 1361 (Fed. Cir. 2004) ...........................................................................................3

*Inline Connection Corp. v. AOL Time Warner Inc.,*
   472 F. Supp. 2d 604 (D. Del. 2007) ................................................................................3, 7

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
   315 F. Supp. 2d 589 (D. Del. 2004) ...................................................................................3

*Magistrini v. One Hour Martinizing Dry Cleaning,*
   180 F. Supp. 2d 584 (D.N.J. 2002), *aff'd,* 68 Fed. Appx. 356 (3d Cir. 2003) ..................5

*Ortiz v. Yale Materials Handling Corp.,*
   No. 03-3657 (FLW), 2005 U.S. Dist. LEXIS 18424 (D.N.J. Aug. 24, 2005) ............7, 8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(B) .........................................................................................................7

Fed. R. Evid. 702 ..................................................................................................................3, 6

I.  **INTRODUCTION**

Callaway splits hairs to try to admit the baseless speculation of Dr. Wilkes that a "vast majority" of Acushnet's golf balls infringe the patents-in-suit. Even if Dr. Wilkes will only be offered to testify that a "vast majority" of balls infringe, that vague, unhelpful testimony is not based on any scientific methodology. Without making some attempt at a statistical extrapolation from the evidence he has seen, Dr. Wilkes has no basis to offer any opinion about the entire population of over 360 million balls accused of infringement. Moreover, Dr. Wilkes has no basis to believe that the balls that were tested constitute statistically representative samples, and Callaway cites no evidence to show that they are.

Callaway fails to point to a single example of technical or scientific analysis done by Dr. Wilkes that would assist the jury. ███████████████████████████████████
████████████████████████████████████████
████████████████████  ██████████████████
████████████████████████████████████████
██████████████ There is nothing about this speculation that uses scientific expertise that would assist a lay juror in reading the data Dr. Wilkes relied on.

Finally, there is no dispute that Dr. Wilkes is not a golf ball expert. Nonetheless, Callaway insists that Dr. Wilkes can offer opinions about whether the choice of a single core versus a dual core is important to the claimed invention. But the only support Callaway can find for that argument is ***Dr. Wilkes' testimony itself***. Essentially, Callaway argues that since Dr. Wilkes says the choice of dual core versus single core is not important to the invention, Dr. Wilkes is thus qualified to testify about whether the choice of dual core versus single core is important to the invention. This circular, illogical argument is no more than bootstrapping. It is settled law that an expert must be qualified in the relevant technical field to offer opinions about

infringement under the doctrine of equivalents. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007). Since Dr. Wilkes is admittedly not a golf ball expert, he cannot offer opinions about whether a dual core is equivalent to a single core in the context of the claimed invention.

## II. ARGUMENT

### A. Dr. Wilkes Has No Scientific Basis to Conclude that the "Vast Majority" of Accused Balls Infringe

Dr. Wilkes' testimony, however it is characterized, will be that a very large percentage of the entire population of accused balls infringe. [REDACTED]

[REDACTED] This is no more than semantics and splitting hairs. However his opinion is characterized, Dr. Wilkes has no scientific basis to make any conclusion about infringement by the entire population of accused balls, and therefore his opinion should be excluded.

At the outset, Dr. Wilkes' opinion that the "vast majority" of accused balls infringe is by its very nature unscientific and unhelpful to the jury. [REDACTED]

Thus, Callaway apparently wants Dr. Wilkes to be allowed to testify that some unknown, but "vast," percentage of balls infringe. It is not helpful to a jury to have a witness provide, in the

2

guise of "expert" testimony, such a sweeping, meaningless statement. This is not scientific testimony.

Callaway tries to skirt the requirements of Rule 702 of the Federal Rules of Evidence by arguing that Dr. Wilkes' testimony should be admitted because Acushnet does not dispute his conclusions. This attempt to circumvent the reliability requirement of Rule 702 is misplaced. To admit expert testimony, whatever its conclusion, the testimony must be based on reliable methodology. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003); *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004). Moreover, "*Daubert* emphasizes that the trial court must 'focus' solely on principles and methodology and not on the conclusions they generate." *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 611 (D. Del. 2007) (emphasis added). If Callaway wants to offer expert testimony regarding infringement by the entire population of accused balls, that testimony must be based on reliable scientific methodology, which Dr. Wilkes' testimony is not.

In addition, Callaway unquestionably has the burden of proving infringement. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004) ("The patentee has the burden of proving infringement by a preponderance of the evidence."). It is not Acushnet's burden to show that its balls do not infringe, or to show that any specific percentage of its balls do not infringe. Similarly, to establish the flaws in Dr. Wilkes' methodology, Acushnet is not required to provide any expert testimony disputing Dr. Wilkes' conclusion. Courts have made clear that in challenging expert testimony, there is no requirement to provide rebuttal expert testimony:

> The plaintiff's argument that this gate-keeping role disappears when a proposed expert witness is not challenged by an opposing expert witness thus runs counter to the thrust of *Daubert* and *Kumho Tire*. Nowhere in either opinion is there language suggesting that testimony could only be "called sufficiently into question" by a rebuttal expert.

*Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir. 2000).

3



Callaway incorrectly tries to twist Acushnet's argument and Dr. Fienberg's calculation into an admission of infringement. Instead, what Dr. Fienberg's analysis shows is that because there is a substantial proportion of accused balls that do not infringe, it is necessary to do some sort of statistical analysis to draw a conclusion about the whole population of balls. It is not enough to simply assume most of the balls infringe in light of this data. Dr. Wilkes improperly ignores the evidence that suggests a large proportion of non-infringing balls.

---

[1] Callaway incorrectly states that Acushnet neglected to mention that claims 4, 6-8, and 10-11 of the '156 patent do not recite the hardness of the outer cover layer. [D.I. 298 at 6]. To the contrary, Acushnet did so in its opening brief. [D.I. 279 at 3-4 n.5].

4

There is also no evidence that the test data Dr. Wilkes relied on came from statistically representative samples of golf balls. Callaway's only argument in support of its conclusion that the test data was representative is the fact that Acushnet relies on it for some purposes. [D.I. 298 at 7-9]. Acushnet does not dispute that the test data is used for some purposes and is reliable for those purposes. However, that does not bear on the question of whether the test data came from a ***statistically representative*** sample of balls to draw a conclusion about the entire population of accused balls, which Callaway says consists of over 360 million balls. *See* D.I. 279 Ex. 14 at 20. In particular, there is no evidence, and Callaway does not allege, that the number of balls tested is sufficient to draw a statistically sound conclusion about the whole population of balls. Nor does Callaway show that the balls that were tested adequately represent the various manufacturing and testing conditions that may affect the distribution of hardness measurements of the outer cover layer. Since Callaway has not shown that the test data is statistically representative of the entire population, Dr. Wilkes cannot extrapolate from that data to a conclusion about the entire population. *See, e.g, Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 605-06, (D.N.J. 2002), *aff'd,* 68 Fed. Appx. 356 (3d Cir. 2003) (excluding expert testimony that relied on sample testing without regard for whether the samples were statistically significant or had an acceptable confidence interval).

Callaway also criticizes Acushnet for not doing Callaway's job for it by creating a statistical model to extrapolate a conclusion about the whole population of accused balls. [D.I. 298 at 9]. Acushnet has no obligation to create such a statistical model. *Brooks* 234 F.3d at 91. Nonetheless, Acushnet did provide the framework for how such a statistical model should be created. ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

5

███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████

While it may not be necessary to follow the specific methodology Dr. Fienberg suggests in his report, it is certainly necessary to conduct *some* statistical or other scientific analysis of the data to draw a conclusion about the population of balls. But Dr. Wilkes does no analysis whatsoever. There is not a shred of analysis that Callaway points to in its brief other than Dr. Wilkes' simplistic conclusion that since some balls infringe, most balls infringe.

### B. Dr. Wilkes' Summary of Test Results Is Not Appropriate for Expert Testimony

#### 1. Dr. Wilkes does no more than note that some of the Shore D hardness data he saw is under 64, which any lay juror could do

Dr. Wilkes' testimony consists of comparing numbers he has seen in Acushnet's testing documents to numbers recited in the claims. With respect to the "Shore D hardness" limitations, for example, all Dr. Wilkes has done is identify test results that report a "Shore D hardness" of less than 64. He provides no analysis or explanation whatsoever of the data he has seen. Nor does he explain how the testing was done, what the numbers mean, or provide any other analysis of the test data. While Acushnet does not dispute that Dr. Wilkes is an expert in polymer chemistry, that expertise is not used or needed at all to determine whether a number is greater than or less than 64.

The Federal Rules permit expert opinion testimony only when the testimony would assist the trier of fact by applying scientific or other specialized knowledge to help the jury understand facts. Fed. R. Evid. 702 (allowing expert opinion testimony only "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"). Here, since Dr. Wilkes does no more than what a lay juror could do,

6

and brings none of his expertise to bear in rendering his unfounded conclusions, his testimony should be excluded.

In an effort to make Dr. Wilkes' testimony seem like expert opinion, Callaway tries to build up his testimony to something that it is not. [D.I. 298 at 9-10]. Callaway argues that in addition to simply reading and drawing conclusions from the Acushnet testing data, Dr. Wilkes can explain concepts like "flex modulus," "low-acid ionomers," and "non-ionomeric thermoplastic elastomers" to the jury. *Id.* Similarly, Callaway now argues that Dr. Wilkes can explain to the jury "concepts like polymer hardness, how the shape of a polymer sample affects its hardness, and how hardness measurements are made." *Id.* But Dr. Wilkes ***does not provide any such explanations in his expert report.*** Instead, his expert report is completely devoid of analysis of these terms, instead merely citing to evidence. [D.I. 279 at 9]. Callaway cannot now try to offer Dr. Wilkes to testify about the meanings of claim terms that are nowhere explained in his expert report. Fed. R. Civ. P. 26(a)(2)(B) ("The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor."); *see also Inline Connection Corp.*, 472 F. Supp. 2d at 613-15 (excluding expert testimony on topics beyond the scope of the expert's report).

Since Dr. Wilkes does not lend any of his expertise in polymer chemistry to the raw testing data that he relies on, and instead does no more than relay evidence to the jury, his testimony should be excluded since it would not assist the jury in understanding the evidence.

### 2. Callaway's attempt to distinguish *Ortiz* is misplaced

Acushnet cited *Ortiz v. Yale Materials Handling Corp.*, in support of its argument that an expert should not be permitted to draw an unfounded conclusion from raw data that a lay juror could just as easily read and draw conclusions from. *Ortiz*, No. 03-3657 (FLW), 2005 U.S. Dist.

7

LEXIS 18424, at *25 (D.N.J. Aug. 24, 2005). Callaway's attempt to distinguish this case fails. [D.I. 298 at 10].

Callaway tries to distinguish *Ortiz*, arguing that the expert testimony there was excluded for reasons other than the fact that the expert simply summarized data that the jury could understand. [D.I. 298 at 10]. There, the court separately considered two bases of the expert's opinion: his reliance on accident reports, and his reliance on his own tests. 2005 U.S. Dist. LEXIS 18424, **19-33. Contrary to Callaway's characterization of the case, the court in *Ortiz* excluded the expert's reliance on the accident reports on the basis that the expert had done no more than read data that could just as easily have been read by a lay juror, without applying any scientific analysis to such data. *Id.* at **24-25.

*Ortiz* involved a forklift accident. There, plaintiff offered the testimony of a mechanical engineer, Mr. Sevart, to opine that forklift operators are safer staying in the operator's compartment if the forklift tips over, rather than jumping out. *Id.* at *19. To form his opinion, Mr. Sevart relied on a set of 804 accident reports collected over a 15 year period by a forklift manufacturer. *Id.* at *21. Mr. Sevart also relied on tests of his own that he had performed over the years regarding forklift safety. *Id.* at **25-33.

With respect to Mr. Sevart's reliance on the accident reports, which is strikingly similar to Dr. Wilkes' reliance on Acushnet's testing data in the present case, the court found that the expert had done no more than read raw numbers in the accident report and draw a conclusion, with no mathematical, statistical, or scientific analysis. *Id.* at **24-25. The court excluded the expert's testimony that relied on such data for that reason. Specifically, the court provided the following reasoning to exclude his opinions that were based on the accident reports:

> Because a ***layperson could easily read raw numbers in a chart and formulate some sort of conclusion regarding such numbers***, the Court directed Sevart to a

8

chart in the Report where there appeared to be some breakdown of the numbers with respect to lateral tip-overs of forklifts.... [T]he chart does not specify those operators who jumped or were ejected from the forklift. After addressing the discrepancy in numbers, the Court again asked Sevart about the methodologies he employed to reach his conclusion. *Sevart merely responded that there was "no specific mathematical model created. It's simply the numbers themselves were compared."*

"[A] proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . .'" *Elcock*, 223 F.3d at 741 (citing *Waldorf*, 142 F.3d at 625 (citations omitted)); *see also Paoli*, 35 F.3d at 741. *Sevart's simple review of the numbers in the chart, which does not incorporate any kind of statistical or mathematical analysis, offers no substantial support for his opinion* that operators are safer staying inside a forklift rather than jumping out during a lateral tip-over, and that a stand-up forklift should come equipped with a rear door and a warning. It is clear from Sevart's testimony during the hearing that *he employed no special skill or technique different from a layperson in forming his opinion and conclusions regarding forklift safety*. Sevart did not use any methodology to account for the difference in the number of operators who jumped from the forklift versus those who remained in the operator compartment during a tip-over.

2005 U.S. Dist. LEXIS 18424, **24-25 (emphasis added) (internal citations removed). The court went on to separately discuss Sevart's own tests of forklifts that he had conducted over the years, and concluded that the methodology of those tests was unreliable because it lacked peer review and was not generally accepted in the field. *Id.* at **25-33.

The reasoning and holding of *Ortiz* with respect to the expert's reliance on accident reports applies directly to the facts of this case. Like the expert in *Ortiz*, Dr. Wilkes does no more than cite to ball testing reports, without applying any mathematical, statistical, or other scientific analysis to draw any conclusion about the entire population of accused golf balls. Instead, Dr. Wilkes unfoundedly extrapolates the raw data he saw to conclude that a "vast majority" of balls infringe on the basis. Like the similarly unfounded and unscientific testimony in *Ortiz*, Dr. Wilkes used "no special skill or technique different from a layperson" to draw that conclusion. *Id.* at *25. Any juror can look at a set of numbers and determine which numbers are less than 64. Lay jurors can also determine for themselves whether they think a "vast majority"

9

of balls infringe based on those numbers. Dr. Wilkes' speculation in that regard is no more reliable than a juror's speculation.

### C. Dr. Wilkes is not Qualified to Testify about Infringement under the Doctrine of Equivalents since He is not a Golf Ball Expert

Callaway all but concedes that Dr. Wilkes is not an expert in golf ball construction. [D.I. 298 at 10-11]. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But Callaway insists that Dr. Wilkes can offer testimony as to whether a dual-core golf ball would be equivalent to the single-core golf ball claimed in the patents-in-suit. *Id.* Callaway's position is unsupportable and should be rejected.

It is well settled that an expert offering an opinion on infringement under the doctrine of equivalents must have expertise in the field of the invention. Indeed, one of the cases relied on by Callaway in its opposition brief says just that:

> [T]he difficulties and complexities of the doctrine require that evidence be presented to the jury or fact-finder through particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.

*AquaTex Indus., Inc.*, 479 F.3d at 1329. Dr. Wilkes is neither an expert in the art of golf ball construction nor even a person of ordinary skill in the art of golf ball construction. While he is clearly an established polymer chemist, that background provides no basis to opine as to whether a dual-core golf ball is substantially similar to a single core golf ball with respect to the claims of the patents-in-suit.

The only evidence Callaway relies on to try to admit Dr. Wilkes' testimony on the doctrine of equivalents is the very evidence whose admissibility is at issue here: ***Dr. Wilkes'***

*testimony itself*. Specifically, Callaway makes the unfounded argument that the only function the core serves in the claimed invention is to provide a foundation for the cover layers and to provide weight and diameter. [D.I. 298 at 11]. But Callaway cites *nothing* from the patent to support that notion. Instead, the only "evidence" Callaway cites is Dr. Wilkes' unfounded and unsupported statements to that effect, which Dr. Wilkes is not qualified to offer in the first place. *Id.*

Callaway cannot use Dr. Wilkes' speculation about what aspects of the golf ball core are important to the invention to try to bootstrap the admission of that very same speculation. Callaway's argument is circular and illogical, and does not show in any way that Dr. Wilkes can testify about that which he has no expertise.

Any golf ball expert would recognize that Dr. Wilkes' unfounded oversimplification of the function of a golf ball core is wrong. Indeed, Acushnet offered the testimony of Mr. Puckett, who has been designing golf balls since the 1960s, to show that the golf ball core does much more than just provide a foundation for the cover layers. In particular, the choice of a single versus a two-piece solid core has a dramatic impact on the spin of the golf ball off the tee, which affects the distance the ball travels. D.I. 279 Ex. 9, Puckett Report at ¶¶ 62-64. Spin and distance are characteristics of the golf ball that Callaway argues are central to the invention of the patents-in-suit. *See, e.g.,* '293 patent, col. 3:55-4:5. Since the choice of single or two-piece core impacts on the very characteristics of the golf ball to which the claimed invention is directed, the question of whether a dual-core golf ball is equivalent to the claimed single core golf ball is one that requires qualified expert testimony, which Dr. Wilkes cannot provide.

Hence, since Dr. Wilkes is unquestionably not qualified as a golf ball expert, he should not be permitted to offer his bare, unfounded speculation as to whether a dual-core golf ball

11

would be equivalent to a single-core golf ball in the context of the patents-in-suit. *Calhoun*, 350 F.3d at 321.

### III. CONCLUSION

For all of the foregoing reasons, and those stated in its opening brief, Acushnet requests that the Court exclude Dr. Wilkes' report and preclude Dr. Wilkes from offering any expert testimony at trial.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  September 28, 2007
Public Version Dated: October 1, 2007
822367 / 30030

By: /s/ *David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on October 1, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on October 1, 2007, I have Electronically Mailed the document to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Robert A. Denning
David S. Shuman
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030