# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Thomas L. Halkowski
(302) 778-8407

Email
halkowski@fr.com

**VIA ECF**

November 7, 2007

The Honorable Sue L. Robinson
United States District Court
for the District of Delaware
844 King Street
Wilmington, DE  19801



Re:    *Callaway Golf Company v. Acushnet Company*
       USDC-D. Del. - C. A. No. 06-91 (SLR)

ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Dear Judge Robinson:

I write on behalf of Plaintiff Callaway Golf Company, and in response to Mr. Horwitz's letter of yesterday on behalf of Defendant Acushnet.

Acushnet's letter is an unauthorized attempt to reargue pending claim construction and summary judgment issues, and the Court should refuse to entertain it.  Local Rule 7.1.2(b) allows "citation of subsequent authorities," not extended reargument by letter on a pretext.  A PTO office action – another non-final one – is by no means "subsequent authority" in this Court or any other.

Even if the Court were to consider Acushnet's remarks, or the underlying office action relating to the '130 patent, it would see that both can be summed up simply – more of the same.  Callaway Golf respectfully provides the following brief response in the event the Court considers the substance of Acushnet's letter.

1.    **Obviousness and Claim Construction**

It is true the latest re-exam examiner (assigned, as far as Callaway Golf can determine, without reason or explanation) maintained the same objections as the prior examiner.  But it is also true that he did so by using a different claim construction than the one this Court must use.  Specifically, as Callaway Golf has pointed out before, the PTO must use the "broadest reasonable interpretation" of the claim language rather than the legally correct one used in district court litigation.  The new examiner makes this explicit on page 17 of the latest action, where he adopts an off-the-ball view of the claims.  *See also* Manual of Patent Examiner's Procedures § 2111 ("During patent examination, the pending claims must be 'given their broadest reasonable interpretation consistent with the specification.'").

Moreover, while arriving at the "broadest reasonable interpretation", the Court will see (in the very passage Acushnet cites on page 3 of its letter) that the examiner

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
November 7, 2007
Page 2

mistakenly fails to address what the claim actually says. In addition, the examiner makes assertions about the '130 patent specification that are demonstrably false.

First, as to the claim language, the examiner notes that the claim requires both an "outer cover layer" with a Shore D hardness of 64 or less, and that the outer cover be molded onto the inner cover. Callaway Golf agrees – and it has never been disputed – that the outer cover layer must have particular hardness characteristics and be molded onto the inner cover. But, the question remains: when the claim says "outer cover layer" and says that outer layer must be "molded onto the inner cover layer," is it referring to the "layer" of a golf ball or to a disconnected plaque or button of material? The answer to that question is clear, as Callaway Golf has explained: the term "layer" in the claims must logically refer to a "layer" that is on a golf ball. The examiner "answered" the question indirectly, and mistakenly, by relying on hardness values for various cover materials taken from product data sheets (*i.e.,* off the ball values of plaques of material). *See, e.g.,* PTO Office Action, at 22.

Second, the examiner goes on to assert, again in the passage Acushnet selects on page 3 of its letter, that "the specification of the '130 patent does not disclose measuring hardness on the ball." This is plainly wrong. Tables 7, 8 and 9 and the accompanying text in the patent all show hardness measurements made on the ball.

Finally, in the secondary considerations section of its letter, Acushnet points out that the examiner disregarded the declarations and other evidence submitted by Callaway Golf, which show extensive evidence of secondary considerations such as commercial success, because this evidence was allegedly "testimonial" and "endorsement" in nature. On this issue, the examiner is simply ignoring contrary evidence (only some of which Callaway Golf could submit because of protective order issues) or picking sides in a credibility contest that the PTO is ill-equipped to handle on the basis of simply looking at pieces of paper. Weighing the credibility of all of the relevant competing evidence – including evidence that is currently subject to a protective order – is the province of the Court and jury, not the PTO.

Callaway Golf respectfully suggests that, far from giving the Court additional reasons to defer to the PTO, Acushnet's letter demonstrates why the PTO's analysis has not been helpful to the Court in the past and will not be helpful now.

2.     **Shore C to Shore D Correlation**

On this issue, Acushnet highlights the examiner's statement that he "specifically agrees with [Acushnet's] comments that a correlation, or conversion, exists between the two hardness scales". As Callaway Golf has pointed out to this Court, Acushnet's own experts do not agree with the examiner on this point. Dr. Statz said that there is

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
November 7, 2007
Page 3


no "exact conversion" between Shore C and Shore D, and that any correlation is no more than a "rule of thumb." [Statz Depo Tr. at 242:9-14.] Similarly, Dr. MacKnight testified that it would be "a dangerous thing" to attempt to convert between the Shore C and Shore D scales. [MacKnight Depo. Tr. at 114:4-21.] Even the ASTM document containing the scales itself cautions that "This is not and cannot be used as a conversion reference." [D.I. 216 Ex. 27.] Acushnet, however, never gave to the PTO the testimony revealing that its own experts disagree on this fundamental point. What this example highlights[1] is how a party's selective presentation to the PTO can skew the results in its favor, because the rules simply do not allow an adversary the same opportunities or provide the same tools for truth-finding as in District Court. The result, again, is that the Court should exercise its independent judgment based on all the evidence before it rather than deferring to the PTO.

### 3.    Incorporation by Reference

Rather than simply applying the PTO's rules as to what qualifies as an incorporation by reference, which the prior examiner did in rejecting Acushnet's incorporation by reference argument, the new examiner has taken a more adversarial view of the Office's role, which now apparently includes conducting what is effectively a legal analysis based on a review of case law urged by one side to support its position. Incorporation by reference is a legal issue for the Court; it is therefore not appropriate for Acushnet to suggest, even implicitly, that the Court should defer to the PTO on this issue.  Callaway Golf has previously explained how precedent and the specifics of the patents at issue here both compel the conclusion that there is no incorporation by reference as urged by Acushnet.

Finally, given that "more of the same" may well be on the way with respect to the other pending reexams, Callaway Golf respectfully asks for guidance as to whether the Court will entertain further letters like Acushnet's in the future.

Respectfully,

*/s/ Thomas L. Halkowski*

Thomas L. Halkowski

cc:    Counsel of record via email

80051239.doc

---

[1] Acushnet also neglected to provide the PTO with a Du Pont memorandum that questions the accuracy of Shore D hardnesses reported in Du Pont's Surlyn datasheets. This document is highly relevant to the examiner's statement that Acushnet now quotes at the bottom of page three of its letter to the Court.