IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | C. A. No. 06-91 (SLR) |
| Plaintiff, | |
| v. | |
| ACUSHNET COMPANY, | |
| Defendant. | |

**AMENDED JOINT  [PROPOSED]
JURY  INSTRUCTIONS**

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070
Fax:  (858) 678-5099

Attorneys for Plaintiff
Callaway Golf Company

DATED: November 19, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

               Plaintiff,

v.

ACUSHNET COMPANY,

               Defendant.

C. A. No. 06-91 (SLR)

**CHARGE TO THE JURY**

The parties each reserve the right to modify these proposed instructions, including to reflect subsequent rulings from the Court.  Acushnet objects to the current ordering of these instructions as proposed by Callaway.  The parties are continuing their efforts to meet and confer regarding these instructions in an effort to minimize the disputes requiring attention from the Court.

# I. GENERAL INSTRUCTIONS

### I.1     [JOINT PROPOSED INSTRUCTION] INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  I will explain the positions of the parties and the law you will apply in this case.  I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

**I.2      [JOINT PROPOSED INSTRUCTION] JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented.  I will instruct you about the burdens of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.   All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**I.3    BURDENS OF PROOF - CALLAWAY GOLF PROPOSED INSTRUCTION**

This is a civil case in which plaintiff Callaway Golf Company ("Callaway Golf") is charging defendant Acushnet Company ("Acushnet") with patent infringement.

As the plaintiff, Callaway Golf has the burden of proving patent infringement by what is called a preponderance of the evidence. That means that Callaway Golf has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Callaway Golf claims is more likely true than not. To put it differently, if you were to put Callaway Golf's and Acushnet's evidence on opposite sides of a scale, the evidence supporting Callaway Golf's claims would have to make the scales tip somewhat to its side.

In this case, Acushnet is urging that the asserted claims to the patents-in-suit are invalid. A patent, however, is presumed to be valid. Accordingly, Acushnet, as the defendant, has the burden of proving that each patent-in-suit is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Callaway Golf or Acushnet has met its burden of proof.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.3 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### I.3    BURDENS OF PROOF - ACUSHNET PROPOSED INSTRUCTION

As you heard in the trial, this is a civil case involving Callaway Golf Company ("Callaway") and Acushnet Company ("Acushnet") and certain patents.  Callaway alleges patent infringement and willful patent infringement, and claims certain damages.  Acushnet, in turn, alleges that the prior art invalidates the patents-in-suit.  Acushnet also denies Callaway's claimed damages and asserts that Callaway is barred to recovery any damages, on account of the doctrine of laches.

As the plaintiff, Callaway has the burden of proving patent infringement, breach of contract and damages by what is called a preponderance of the evidence.  That means that Callaway has to produce evidence which, when considered in light of all of the facts, leads you to believe that what it alleges is more likely true than not.

With respect to Callaway's claim that Acushnet willfully infringed the patents-in-suit, Callaway has the burden of proving this claim by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Acushnet contends that Callaway's patents-in-suit are invalid.  Under the law, a patent is presumed to be valid until proven otherwise.  Acushnet has the burden of proving that the patents-in-suit are invalid by clear and convincing evidence.  Acushnet has the burden of proving its defense of laches by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you should,

6

therefore, put it out of your mind in considering whether or not Callaway and Acushnet have met

their respective burdens of proof.


*Based on Delaware Uniform Jury Instructions for Patent Cases in the U.S. District Court for the*
*District of Delaware, 2004 (Del.. Model Instructions 2004) at 1.3.*

**I.4    EVIDENCE DEFINED - CALLAWAY GOLF'S PROPOSED
        INSTRUCTION**

You must make your decision based only on the evidence that you saw and heard here in

court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of

court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying

under oath, the exhibits that I allowed into evidence, and any facts that the parties agree to by

stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their

questions and objections are not evidence.  My legal rulings are not evidence.  None of my

comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts, graphics, and props have been used to illustrate testimony from witnesses.

Unless I have specifically admitted them into evidence, these charts, graphics, and props are not

themselves evidence even if they refer to or identify evidence.[1]

During the trial I may not have let you hear the answers to some of the questions that the

lawyers asked.  I also may have ruled that you could not see some of the exhibits that the

lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you

saw or heard, or I struck things from the record.  You must completely ignore all of these things.

Do not even think about them.  Do not speculate about what a witness might have said or what

an exhibit might have shown.  These things are not evidence, and you are bound by your oath not

---

[1] [To be added if the Court allows MacKnight's hybrid golf balls to be used at
trial.] [For example, Acushnet showed you a golf ball that it made especially for the trial.
This golf ball showed you an example of what a multi-layer ball may look like, but it is
not evidence of any particular prior art golf ball or whether the patents-in-suit are
invalid.]

to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing

else.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 1.4 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006).*

### I.4    EVIDENCE DEFINED - ACUSHNET'S PROPOSED INSTRUCTION

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, the interrogatory answers of the parties that I have admitted into evidence, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  Any of my comments and questions are not evidence.  Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial I may have ruled on objections in a way that you did not get to hear answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or hear, or I struck things from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  Those things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

*Based on Delaware Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, 1993 (Del. Model Instructions 1993) at 1.4.*

### I.5    [JOINT PROPOSED INSTRUCTION] DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**I.6      [JOINT PROPOSED INSTRUCTION] CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**I.7      [JOINT PROPOSED INSTRUCTION] USE OF NOTES**

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.   They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

**I.8    CREDIBILITY OF WITNESSES - CALLAWAY GOLF'S PROPOSED INSTRUCTION**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

15

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, the testimony of a witness may be discredited or impeached by showing that the witness has made an incorrect statement or has given a prior statement or testimony which is inconsistent with his or her testimony at this trial. It is the province of the jury to determine whether an incorrect statement or prior inconsistent statement discredits the witness's testimony.

But bear in mind that an innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or to an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.7 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### I.8    CREDIBILITY OF WITNESSES - ACUSHNET'S PROPOSED INSTRUCTION

You are the sole judges of the credibility of the witnesses.  You may believe everything a witness said or only part of it or none of it.  If a witness was not credible as to a certain matter, you may, if you so choose, decide that the witness was not credible as to other matters.  If a witness testified that he does not remember a fact or event, you make use your own judgment to decide whether you believed the witness is being truthful.  In deciding what to believe, you may consider a number of factors, including the following:

(1)    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2)    the quality of the witness's understanding and memory;

(3)    the witness's manner while testifying;

(4)    whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5)    whether the witness was contradicted by anything the witness said or wrote before trial or by other evidence;

(6)    how reasonable the witness's testimony was when considered in the light of other evidence that you believe; and

(7)    any other factors that bear on believability.

In determining the weight to give the testimony of a witness, you may also ask whether there was evidence tending to prove that the witness testified falsely or changed his or her story about some important fact, or whether there was evidence that at some other time the witness

said or did something, or failed to say or do something that was different from the testimony he

gave at the trial.

*Adapted from Del. Model Instructions 1993 at 1.7; Modern Federal Jury Instructions-Civil THIRD CIRCUIT at 1.7.*

### I.9     NUMBER OF WITNESSES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 1.8 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006).*

### I.9     NUMBER OF WITNESSES - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### I.10    [JOINT PROPOSED INSTRUCTION] EXPERT WITNESSES

When knowledge of technical or financial subject matter may be helpful to the jury, a person who has special training or experience in that technical or financial field – he is called an expert witness – is permitted to state his opinion on those technical or financial matters. However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, of if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**I.11     [JOINT PROPOSED INSTRUCTION] DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you through depositions that were either read in court or played on videotape.  This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

**I.12    STIPULATIONS - CALLAWAY GOLF'S PROPOSED INSTRUCTION**

During the course of the trial, you heard that certain stipulations of facts had been agreed to by the parties.  A stipulation of fact is an agreement between the parties that a certain fact is true.  You must regard such agreed facts as true.

### I.12    STIPULATIONS - ACUSHNET'S PROPOSED INSTRUCTION

During the course of the trial, you heard that certain stipulations of fact had been agreed to by the parties.  A stipulation of fact is an agreement between the parties that a certain fact is true.  In this case the parties agreed to stipulate to the following facts:

[READ STIPULATIONS]


*Adapted from Modern Federal Jury Instructions-Civil THIRD CIRCUIT at 2.3.*

## II.    THE PARTIES AND THEIR CONTENTIONS

### II.1    [JOINT PROPOSED INSTRUCTION] THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is Callaway Golf Company, or "Callaway Golf."

Defendant is Acushnet Company, or "Acushnet."

Callaway Golf alleges that it is the owner of U.S. Patent No. 6,210,293, which I will refer to as "the '293 patent"; U.S. Patent 6,503,156, which I will refer to as "the '156 patent"; U.S. Patent 6,506,130, which I will refer to as "the '130 patent"; and U.S. Patent 6,595,873, which I will refer to as "the '873 patent."  I may refer to these patents collectively as "the patents-in-suit."

Acushnet has made, marketed, and sold the "Pro V1" line of golf balls, including the Pro V1, Prov V1x and Pro V1*[Star], under the Titleist brand.  I may refer to these balls collectively as "the Pro V1 balls."

## II.2    [JOINT PROPOSED INSTRUCTION] PLAINTIFF'S CONTENTIONS

Callaway Golf contends that Acushnet is infringing and has infringed its patents. Specifically, Callaway Golf charges that Acushnet is infringing and has infringed claims 1,2, 4, and 5 of U.S. Patent 6,210,293; claims 1-11 of U.S. Patent 6,503,156; claims 1, 2, 4, and 5 of U.S. Patent 6,506,130; and claims 1 and 3 of U.S. Patent 6,595,873 by making, using, selling, and offering for sale the ProV1 balls.  These claims may be referred to as "the asserted claims."

Callaway Golf further contends that Acushnet's infringement was willful.  Callaway Golf also contends that, as a result of Acushnet's infringement of the asserted claims, Acushnet is liable to Callaway Golf for damages in the form of a lost profits for certain sales and a reasonable royalty for the others.

Finally, Callaway Golf contends that Acushnet breached a Settlement Agreement that was in force between the parties and must pay damages due to that breach.

## II.3     [JOINT PROPOSED INSTRUCTION] DEFENDANT'S CONTENTIONS

Acushnet contends that it does not infringe the Callaway patents-in-suit. Acushnet contends that the patents are invalid, both as obvious and as anticipated by prior art. Acushnet also contends that the patent claims are invalid for failing to enable one of skill in the art to practice the claim, and for inadequately describing the invention in the written description of the patents-in-suit. Finally, Acushnet contends that Callaway's damages claims are barred by the doctrine of laches. I will explain the concepts of invalidity and laches to you shortly.

## II.4    SUMMARY OF THE ISSUES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

In this case, you must decide several things according to the instructions that I shall give you.

First, as to infringement, you must decide:

- Whether Callaway Golf has proven by a preponderance of the evidence that Acushnet's ProV1 line of golf balls infringe any of the asserted claims of the patents-in-suit; and

- Whether Callaway Golf has proven by clear and convincing evidence that any infringement by Acushnet was willful..

Next, as to validity, you must decide:

- Whether Acushnet has proven by clear and convincing evidence that any asserted claim is invalid as either lacking an adequate written description, lacking an enabling written description, anticipated by the prior art, or obvious in light of the prior art.

If you decide that even one of Callaway Golf's asserted claims is both valid and infringed by Acushnet, you must then decide:

- The amount that Callaway Golf has proven by a preponderance of the evidence that it is entitled to recover damages as compensation for Acushnet's infringement; and

- Whether the doctrine of laches prevents Callaway Golf from receiving damages that accrued before this suit was filed.

/ / /

/ / /

28

Lastly, as to breach of contract by Acushnet, you must decide:

•       The amount of damages Callaway Golf is entitled to recover as compensation for

        Acushnet's breach of the parties' 1996 Agreement.

**II.4    SUMMARY OF ISSUES TO BE DECIDED - ACUSHNET'S PROPOSED INSTRUCTION**

In this case, based on the parties' contentions, you must decide several things according to the instructions that I am giving you.  They include:

1.    As to each of the asserted Callaway patent claims, whether Callaway has shown by a preponderance of the evidence that Acushnet has infringed that claim in manufacturing and marketing Pro V1, Pro V1x, or Pro V1*[Star] golf balls.

2.    As to each of the asserted Callaway patent claims, whether Acushnet has proven by clear and convincing evidence that the claim is invalid by reason of obviousness in light of the prior art and the ordinary skill of one in the art.

3.    As to each of the asserted Callaway claims, whether Acushnet has proven by clear and convincing evidence that the claim is invalid by reason of a failure of the patent to meet the requirement of written description.

4.    As to each of the asserted Callaway claims, whether Acushnet has proven by clear and convincing evidence that the claim is invalid as anticipated by the prior art.

5.    As to each of the asserted Callaway claims, whether Acushnet has shown by a preponderance of the evidence that the claims are barred by laches, which relates to Acushnet's claim that Callaway unreasonably delayed in filing suit against Acushnet.

6.    As to each of the asserted Callaway claims, if you find the claim to be infringed and not invalid, whether Callaway has shown by clear and convincing evidence that infringement was willful.

7.    If you find any of the asserted Callaway claims are both valid and infringed by Acushnet, the amount of damages, if any, that Callaway Golf has proven by a preponderance of

30

the evidence that it is entitled to recover as compensation for Acushnet's infringement.

8.     If you find that Acushnet has breached the 1996 Settlement Agreement, the amount of damages Callaway Golf has proven by a preponderance of evidence it is entitled to recover, if any, as compensation for breach of contract..

### III.    THE PATENT CLAIMS

### III.1    PATENT CLAIMS GENERALLY - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Before you can decide whether or not Acushnet has infringed any of the patents-in-suit, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

The claims define the patent owner's property rights. Infringement is the act of trespassing on those rights. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

Each claim is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually. To show infringement, Callaway Golf needs only to establish that any one of the asserted claims, from any of patents-in-suit, has been infringed.

There are a number of claims involved here. Callaway Golf asserts that Acushnet infringes claims 1,2, 4, and 5 the '293 patent; claims 1-11 of the '156 patent; claims 1, 2, 4, and 5 of the '130 patent; and claims 1 and 3 of the '873 patent.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.1 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### III.1   PATENT CLAIMS GENERALLY - ACUSHNET'S PROPOSED INSTRUCTION

Before you can decide whether Acushnet has infringed any of Callaway's patents, you will have to understand the patent "claims," the numbered paragraphs at the end of the patent. The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are "word pictures" intended to define, in words, the outer boundaries of the invention described and illustrated in the patent. The claims define the patent owner's property rights. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Each claim is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually. There is infringement and entitlement to damages if a single claim of the patent has been infringed.

There are a number of claims involved here. Callaway Golf asserts that Acushnet infringes claims 1,2, 4, and 5 the '293 patent; claims 1-11 of the '156 patent; claims 1, 2, 4, and 5 of the '130 patent; and claims 1 and 3 of the '873 patent.

*Based on Del. Model Instructions 1993 at 3.1*

### III.2    DEPENDENT AND INDEPENDENT CLAIMS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

There are two different types of claims in a patent.  The first type is called an "independent" claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read alone to determine its scope.

On the other hand, a "dependent" claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 1 of the '156 patent is an independent claim.  You know this because it mentions no other claims.  The words of claim 1 are read by themselves in order to determine what claim 1 covers.

Claim 2 of the '156 patent, on the other hand, is a dependent claim because it refers to independent claim 1.  Accordingly, the words of claims 1 and 2 must be read together in order to determine what the dependent claim, claim 2, covers.

Some claims of the patent in suit are broader than other claims. You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.  Additionally, if you find that a dependent claim is infringed, then you must find the claim to which the dependent claim refers to be infringed as well.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.3 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Honeywell Intern. Inc. v. Universal Avionics Systems Corp., 488 F.3d 982, 995 (Fed. Cir. 2007).*

### III.2   DEPENDENT AND INDEPENDENT CLAIMS - ACUSHNET'S PROPOSED INSTRUCTION

There are two types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.  In this case, for example, claim 2 of Callaway's '293 patent is a dependent claim, and it depends on claim 1.  You will see it says "The golf ball according to claim 1, wherein said golf ball has an overall diameter of 1.680 inches or more."  Accordingly, for claim 2 to be infringed, all the limitations found in claim 1 and claim 2 need to be present.

Some claims of the patents-in-suit are broader than other claims.  You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations.

If you find that an independent claim is not infringed, then you must find that the dependent claims that depend from it (the way claim 2 depends from claim 1 for example) are not infringed.  Using the claims from the previous example, if you were to find that independent claim 1 of the '293 patent is not infringed, then you must find that claim 2, the dependent claim, is not infringed.  Alternatively, if you find that a dependent claim is infringed , then you must find the claim to which the dependent claim refers to be infringed as well

*Based on Del. Model Instructions 1993 at 3.3.*

35

### III.3    CONSTRUCTION OF CLAIMS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

It is often difficult to describe an invention in scientifically precise terms. For that reason, the patent law allows the inventor to use his own terms in describing his invention.  Thus, the meaning of a claim can be construed in connection with the patent specification, the patent's prosecution history and prior art to determine what the claims cover.  You should consider the drawings and specification to determine what the inventor intended to cover by the claims of the patent.

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use the same meaning of each claim for your decisions on both infringement and on validity.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

1.    The terms "[inner or outer] cover layer having a Shore D hardness" means "[insert Court's claim construction]."

2.    The term "core" means "[insert Court's claim construction]."

3.    The term "modulus" refers to flexural modulus.


Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### III.3    CONSTRUCTION OF CLAIMS - ACUSHNET'S PROPOSED INSTRUCTION

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is infringed.  You must ignore any different interpretations given to those claims by the witnesses or the attorneys.  If I have not provided a specific definition for a given term or phrase, you are to use the ordinary English language meaning of that term.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied in the following patents-in-suit:

The beginning portion, or preamble, of some of the asserted claims use the word "comprising" or "comprises."  In general, "comprising" or "comprises" means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products that add additional elements.  For example, if a claim recites a table "comprising" a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

 I instruct you that the following claim terms have the following definitions:

1.        The terms "[inner or outer] cover layer having a Shore D hardness" means "[insert Court's claim construction]."

2.        The term "core" means "[insert Court's claim construction]."

3.      The term "modulus" refers to flexural modulus.

*Based on Del. Model Instructions 1993 at 3.2;CAFC Model Patent Jury Instruction No. 7.5.*

### III.4  OPEN ENDED OR "COMPRISING" CLAIMS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Some of the asserted claims use the transitional term, "comprising."  "Comprising" is interpreted the same as "including" or "containing."  In patent claims, "comprising" means that the claims are open-ended.  As such, the claim is not limited to only what is in the claim.

Based on this explanation, if you find that any of Acushnet's accused products includes all of the components in any one of Callaway Golf's asserted claims, the fact that the product may also include additional components is irrelevant.  The presence of additional components in the accused product does not mean that the product does not infringe Callaway Golf's patent claim.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.11 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### III.4 OPEN ENDED OR "COMPRISING" CLAIMS - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**IV.     PATENT INFRINGEMENT**

**IV.1     PATENT INFRINGEMENT GENERALLY - CALLAWAY GOLF'S PROPOSED INSTRUCTION**

A patent owner may enforce its right to exclude others from making, using, selling, or offering to sell the patented invention within the United States by filing a lawsuit for patent infringement.  Here, Callaway Golf, the patent owner, has sued Acushnet, the accused infringer, and has alleged that Acushnet's ProV1 line of golf balls infringes the asserted claims of the patents-in-suit.

Patent law provides that any person or business entity which makes, uses, sells, or offers to sell, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.4 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006).*

**IV.1    INFRINGEMENT - ACUSHNET'S PROPOSED INSTRUCTION**

In order to infringe a patent claim, the golf ball that is alleged to infringe must include every limitation of the claim.  If an accused golf ball omits even a single structure or step recited in a claim, then you must find that the accused golf ball has not infringed the claim.  A claim limitation is present in an accused golf ball if it exists in the golf ball just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.  Every term in a claim is material and important, and if even a single structure as described by a claim is missing from an accused golf ball, there is no infringement by that ball.

*Adapted from CAFC Model Patent Jury Instruction No. 8.3; Network Commerce, Inc. v. Microsoft Corp., 422 F.3d 1353, 1363 (Fed. Cir. 2005).*

## IV.2    DIRECT INFRINGEMENT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Callaway Golf contends that Acushnet directly infringes the asserted claims of the patents-at-issue.  Acushnet is liable for directly infringing Callaway Golf's patents if you find that Callaway Golf has proven by a preponderance of the evidence that Acushnet has made, used, or sold the invention defined in at least one of the asserted claims.  35 U.S.C. § 271(a).

A party may directly infringe a patent without knowledge that what it is doing is an infringement of the patent.  The party also may infringe even though it believes, in good faith, that what it is doing is not an infringement of any patent.

Callaway Golf asserts that Acushnet directly infringes the asserted claims because the subject matter of the asserted claims is literally found in Acushnet's ProV1 balls.  This is called literal infringement.  For Acushnet to literally infringe any one of Callaway Golf's asserted claims, the subject matter of the patent claim must be found in Acushnet's product.  In other words, Callaway Golf's patent claims are literally infringed if any of Acushnet's products includes each and every component in any of Callaway Golf's asserted claims.  If Acushnet's product omits any single component recited Callaway Golf's claim, Acushnet does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually.  Remember, the question is whether Acushnet's product infringes any of the asserted claims, and not whether Acushnet's product is similar or even identical to a product made by Callaway Golf.  Accordingly, you must be certain to compare Acushnet's accused product with the claim it is alleged to infringe and not with any product made by Callaway Golf.

Therefore, you should take the following steps in deciding whether the ProV1 balls infringe any of Callaway Golf's asserted claims:

First, you should determine the scope of Callaway Golf's asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the Court. If a limitation has not been construed by the Court, you should read the limitation according to its ordinary meaning; and

Second, you should compare the different models of the ProV1 balls, element by element, to each of the limitations of the asserted claim.

Acushnet does not dispute that certain limitations from Callaway Golf's claims are found in certain of its ProV1 balls. In particular, Acushnet does not dispute that each of the ProVI, ProV1*, and ProV1x balls are multi-layer golf balls, from claim 4 of the '293 patent, claim 5 of the '130 patent, and claim 3 of the '873 patent. Additionally, Acushnet does not dispute that each of the ProVI, ProV1*, and ProV1x balls include:

- An inner cover layer comprising two or more ionomeric resins, with at least one of the ionomeric resins including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid, from claims 1 and 4 of the '293 patent; claims 1, 4, and 8 of the '156 patent; claims 1 and 5 of the '130 patent; and claims 1 and 3 of the '873 patent; and

- An outer cover layer comprising polyurethane, from claims 1 and 4 of the '293 patent; claims 1, 4, and 8 of the '156 patent; claims 4 and 5 of the '130 patent; and claims 1 and 3 of the '873 patent.

You must consider all of the remaining limitations to determine if the ProV1 balls literally infringe any of the asserted claims.

44

If you find each and every limitation of the asserted claim in a particular model of the ProV1 ball, you must return a verdict of literal infringement as to that claim.

You must repeat the above analysis with every asserted claim and every model of the ProV1 ball that is accused of infringement.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.5, 3.8 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

## IV.2    DIRECT INFRINGEMENT - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**IV.3    INFRINGEMENT - LITERAL AND DOCTRINE OF EQUIVALENTS - CALLAWAY GOLF'S PROPOSED INSTRUCTION**

[Callaway Golf believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### IV.3    INFRINGEMENT - LITERAL AND DOCTRINE OF EQUIVALENTS - ACUSHNET'S PROPOSED INSTRUCTION

A claim limitation may be present in a golf ball in one of two ways, either literally or under what is known as the doctrine of equivalents.

A claim limitation is literally present if it exists in the golf ball just as it is described in the claim language, either as I have explained that language to you, or if I did not explain it, as you understand it.

In this case, Callaway is also claiming infringement under the doctrine of equivalents with respect to the degree a dual core ball may be seen as infringing on a patent for a single core ball.  A claim limitation would be considered present under the doctrine of equivalents here if there is an insubstantial difference between the structure of the core of the dual core ball and the structure of the claim limitation core found in the patents-in-suit.  One way to determine this is to look at whether or not the core of the golf ball that is alleged to infringe performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claim limitation of core found in the asserted patents.  Under the doctrine of equivalents, an overall similarity between the asserted patent claim and the accused party's golf ball is not enough to find infringement.  The evidence must demonstrate that the golf ball that is alleged to infringe contains a substantial equivalent of each limitation in the asserted patent claim.

However, there are four situations wherein resort to the doctrine of equivalents to find infringement is not permitted.  First, resort to the doctrine is not permitted if you find that the accused party is merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art.  This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have

lawfully obtained from the Patent Office.  Second, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.  Third, the doctrine of equivalents is limited by what is called "prosecution history estoppel."  During prosecution of the patents, arguments and amendment are often made in an attempt to convince the Patent Examiner and the Patent Office that the claimed invention is entitled to a patent despite the prior art before the Examiner.  The applicant, in other words, sometimes amends his patent claims or submits arguments in order to define or narrow the meaning of the claims so that they are distinguished from the prior art.  Once it has done so, it cannot later argue that it is entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that the applicant distinguished from his invention during the prosecution of the patent.  Fourth, the doctrine of equivalents cannot apply where a patent's written description makes clear that the invention does not include a particular feature.  This might arise, for example, where a patent's written description identifies a particular feature, structure or device as having disadvantages and excludes that feature, structure or device from the invention.

*Based on Del. Model Instructions 2004 at 3.3.1 and 3.4; CAFC Model Patent Jury Instructions No. 8.3; Network Commerce, Inc. v. Microsoft Corp., 422 F.3d 1353, 1363 (Fed. Cir. 2005).*

### IV.4    DOCTRINE OF EQUIVALENTS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

You may find that defendant's product infringes claim, even if not all of the components of the claim are present in defendant's product. You may find infringement in such circumstances if the components of defendant's product are equivalent to that claimed in at least one of plaintiff's patent claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule.  Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalence is whether or not the core of the golf ball that is alleged to infringe performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claim limitation of core found in the asserted patents.

It is not a requirement under doctrine of equivalence infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether defendant's product and its components are equivalent to that defined in plaintiff's claims is to be determined as of the time of the alleged infringement.

50

There are two situations wherein resort to the doctrine of equivalents to find infringement is not permitted.  First, resort to the doctrine of equivalents to find infringement is not permitted if you find that the defendant is merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.  Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to claim , but broad enough to literally cover the accused product.

Second, resort to the doctrine of equivalents to find infringement is not permitted if you find that the patent owner is trying to recapture that which he gave up in the Patent Office to distinguish the invention from what was in the public domain prior to his invention.  In other words, if plaintiff, when he was in the process of obtaining his patent, limited it in some way in order to argue that it was different from what was in the public domain, then he is not now free to assert a broader view of his invention by broadening the claims through the doctrine of equivalents in an effort to recapture that which he surrendered.

Sometimes patent claims, however, are amended, not to avoid what was in the public domain, but to clarify indefinite or ambiguous terms. If you find that an amendment was made to clarify a claim for that sort of reason and not in an effort to avoid what was in the public domain, the doctrine of equivalents can still be applied.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.9, 3.10 (1993).*

**IV.4    DOCTRINE OF EQUIVALENTS - ACUSHNET'S PROPOSED INSTRUCTION**

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**IV.5    INFRINGEMENT DESPITE IMPROVEMENTS - CALLAWAY GOLF'S PROPOSED INSTRUCTION**

You may find that the ProV1 balls represent an improvement over the invention defined in the asserted claims.  You have even heard evidence that Acushnet obtained patents on related technology.  However, you are not to presume that these facts mean that Acushnet cannot or does not infringe the asserted claims.  If the ProV1 balls include all of the elements of at least one of the asserted claims, then Acushnet infringes that claim despite any improvements and patents.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.16 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### IV.5   INFRINGEMENT DESPITE IMPROVEMENTS - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### IV.6    WILLFUL INFRINGEMENT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Callaway Golf contends that Acushnet willfully infringed one or more claims of the patents-in-suit. If you find on the basis of the evidence and the law as I have explained it that Acushnet's product infringes at least one of Callaway Golf's patent claims, you must further decide whether or not Callaway Golf has proven by clear and convincing evidence that Acushnet's infringement was willful.

To establish willful infringement, Callaway Golf must prove two things: first, that Acushnet acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; and second, that this objectively defined risk was either known or so obvious that it should have been known to Acushnet. Acushnet's actual state of mind is not relevant to this objective inquiry.

For example, if you find Callaway Golf has proven that Acushnet knew about the patent and did not exercise due care to determine whether or not it was infringing the patent, you may find that Acushnet's infringement was willful.

One factor to consider with respect to Acushnet's good faith and due care in determining the infringement and validity issues is whether Acushnet obtained and followed competent legal advice from an attorney after becoming aware of Callaway Golf's patents. A good faith opinion means an opinion based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers. Moreover, you should consider whether Acushnet actually relied upon and followed its attorney's opinion.

Another factor in determining whether Callaway Golf has proven that Acushnet willfully

infringed Callaway Golf's patent is your assessment of whether or not Acushnet, as a competitor

of Callaway Golf, copied the product covered by Callaway Golf's patent claims or whether

Acushnet tried to match plaintiff's product with a functionally competitive product but did not

set out to copy it.  Evidence of a good faith effort to "design around" the claims is evidence that

the infringement was not willful.  On the other hand, evidence of copying is evidence of willful

infringement.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.18 (1993); In re Seagate Technology, LLC, 497 F. 3d 1360, 1371-72 (Fed. Cir. 2007); Stryker Corp. v. Intermedics Orthopedics Inc., 96 F.3d 1409, 1414 (Fed. Cir. 1996); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### IV.6    WILLFUL INFRINGEMENT - ACUSHNET'S PROPOSED INSTRUCTION

Callaway contends that Acushnet has willfully infringed the claims of the patents-in-suit. If you find on the basis of evidence and the law as I have explained it that Acushnet directly infringes at least one claim of any of the patents-in-suit, you must decide whether or not Acushnet's infringement was willful.

Although, as I explained before, Callaway must prove infringement by a preponderance of the evidence, the burden of proving that the infringement was willful is the higher clear and convincing evidence burden.

In order to prove willfulness, it is not enough for Callaway to prove that Acushnet was aware of the patents-in-suit. In order to demonstrate the necessary willfulness, Callaway must prove by clear and convincing evidence that Acushnet acted objectively recklessly, meaning Acushnet acted despite a known, objectively high likelihood that its actions constituted infringement of a valid patent. The issue of willful infringement is relevant not to your decision of whether there is infringement but rather to the amount of damages to which Callaway is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that Acushnet willfully infringed the claims of the patents-in-suit, then it is my job to decide whether or not to award increased damages to Callaway.

Willful infringement is established where Callaway has proven two things. First, Callaway must prove by clear and convincing evidence that Acushnet acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. Second, Callaway must prove by clear and convincing evidence that this

objectively defined risk of infringing a valid and enforceable patent was either actually known or so obvious that it should have been known to Acushnet.  If you find that Acushnet had a good faith belief that it did not infringe, or a good faith belief that the patent was invalid or enforceable, and that Acushnet's belief was reasonable under all of the circumstances, then you must find that any infringement was not willful.

One factor to consider in your determination is whether Acushnet obtained legal advice from an attorney after becoming aware of the patents-in-suit.  Another factor to consider is whether Acushnet relied on its attorney's opinion.  The obtaining and reliance on counsel's advice may be evidence that infringement was not willful.

Since a finding of willful infringement requires that Acushnet actions be found objectively reckless in view of all of the circumstances, a determination by you that Acushnet has infringed any patent-in-suit does not automatically mean that Callaway has proved by clear and convincing evidence that the infringement was willful.

*Source: The Federal Circuit Bar Association Model Patent Jury Instructions § 9; In re Seagate Tech., LLC, __ F.3d __, Docket No. 830 (Fed. Cir. August 20, 2007) (en banc).*

## V.  VALIDITY DEFENSES

### V.1  PRESUMPTION OF VALIDITY - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Acushnet contends that all of Callaway Golf's asserted patent claims are invalid.

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, adequately described, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art.

The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nonetheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to reveiw what the Patent Office has said or done, consistent with these instructions on the law. The presumption of validity is especially hard to overcome when the Patent Office considered the alleged prior art during prosecution.

This presumption of validity puts the burden of proving invalidity on Acushnet. While this presumption can be rebutted, the burden is on Acushnet to do so. This burden requires Acushnet to prove, by clear and convincing evidence, that in this case each of the asserted claims is invalid.

Each of the asserted claims is presumed to be valid independently of the validity of each other claim. I will now explain to you each of Acushnet's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

Source:  *Charge to the Jury, Intuitive Surgical & IBM v. Computer Motion, Inc*., No. 01-203-SLR (D.Del. August 19, 2002); *Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990).*

### V.1    VALIDITY IN GENERAL - ACUSHNET'S PROPOSED INSTRUCTION

Only a valid patent may be infringed.  For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious.  A patent cannot take away from people their right to use what was already known or what would have been obvious to those of skill in the art at the time when the invention was made.  The terms "new" and "non-obvious" have special meanings under patent laws.  I will explain these terms to you as we discuss Acushnet's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a written description of the invention sufficient for one of skill in the art to make and use it.

Acushnet has challenged the validity of the patents-in-suit on a number of grounds.  I will now explain to you each of the asserted grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.  If a claim is invalid on any one of the asserted grounds, then it is invalid.

*CAFC Model Patent Jury Instruction No. 10.1.*

## V.2     WRITTEN DESCRIPTION - CALLAWAY GOLF'S PROPOSED INSTRUCTION

A patent must contain a written description of the product or method claimed in the patent.  In order to satisfy the written description requirement, the patent specification, as filed, must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used.  You must determine whether this description would have conveyed to one of ordinary skill in the art that the inventors were in possession of the claimed inventions.

Acushnet has the burden of proving lack of written description by clear and convincing evidence.

Source:  *Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006).*

## V.2    WRITTEN DESCRIPTION - ACUSHNET'S PROPOSED INSTRUCTION

Acushnet also contends that the asserted claims of all the patents-in-suit are invalid for lack of an adequate written description.  A patent specification must contain a written description of the invention.  This is referred to as the written description requirement.  For purposes of the written description inquiry, the invention is defined by the claim and not the specification.  In determining whether a patent specification satisfies the written description requirement you should again refer to the level of skill in the pertinent art at the time of the invention.

The test for an adequate written description is whether the specification reasonably conveys to a person skilled in the art that the inventor of the patent had possession of the claimed subject matter at the time he filed his application.  The specification need not describe the claimed subject matter in exactly the same terms as used in the claims in question, but it must indicate to persons skilled in the art that the inventor had invented the subject matter and was in possession of the subject matter as broadly as it is claimed.  In other words, the patent must fully describe each and every element or process step of a patent claim.

When the prior art permits, an applicant is allowed claims that cover more than the specific embodiments shown.  However, a patent claim may be no broader than the supporting disclosure.  A claim is invalid when the entirety of the specification clearly indicates that the scope of the claim exceeds what the disclosure will allow.

*Based on CAFC Model Patent Jury Instruction No. 10.5; Based on Del. Model Instructions 2004 at 4.2.*

### V.3     ENABLEMENT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The patent laws require that the specification or written description portion of a patent be sufficiently detailed to enable those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.  If the inventors failed to provide an enabling specification for a claim, that claim is invalid.

In considering whether or not a specification enables a claim, you must determine whether a person skilled in the art can practice the claimed invention without undue experimentation.  Thus, a specification need not expressly describe information that persons skilled in the art would understand.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.  Factors to be considered in determining whether a specification would require undue experimentation include:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

Although the specification for a product need not describe the manner I which to produce a commercial version of the product that would satisfy governmental requirements, the specification must teach one of skill in the art how to practice the claimed invention.  Therefore, you must consider the enablement requirement in light of the use of the claimed invention.

If you find that the specification does not adequately describe how to make and use the invention claimed in an independent claim, then you need not consider whether any claim that depends on that independent claim is enabled. If you find that the specification adequately describes how to make and use the invention claimed in an independent claim, then you need to consider further whether each of its depend claims is also enable.

Source: *Charge to the Jury, Intuitive Surgical & IBM v. Computer Motion, Inc.*, No. 01-203-SLR (D.Del. August 19, 2002); *Uniform Jury Instr. For Patent Cases in the D. Del. 4.2 (1993).*

### V.3    ENABLEMENT - ACUSHNET'S PROPOSED INSTRUCTION

The written description of the invention claimed in a patent must contain enough detail to teach and enable persons skilled in the field of the invention to make and use the invention as of the filing date of the patent, and without undue experimentation. This requirement is know as the enablement requirement. If the patent does not enable a skilled person to make and use the claimed invention without undue experimentation, and to do so across the entire scope of the invention, then the patent claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would likely know or could obtain. The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent claim is not enabled. However, if the amount of experimentation a skilled person would have to do to make the claimed invention is too much, called "undue experimentation," then the patent is invalid. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

Keep in mind too that a patentee cannot always satisfy the enablement requirement merely by clearly describing one embodiment of the thing being claimed. Although every embodiment of a claim does not need to be disclosed in a specification, there must be guidance or a suggestion to enable the entire scope of the claimed invention. A patent specification does not provide an enabling disclosure, and the patent is therefore invalid, where it does not disclose in its specification embodiments of the invention covering points throughout the ranges claimed in the patent. The enablement requirement is designed to ensure that the public knowledge is

65

enriched by the patent specification to a degree at least commensurate with the scope of the claims asserted by the invention.  Thus, there must be sufficient disclosure to teach those of ordinary skill in the art how to make and how to use the invention as broadly as it is claimed. If you find that Acushnet has provided clear and convincing evidence that the written description in the patent does not enable a skilled person of the art to make and use the invention as claimed, across its entire scope, then you must find that the patent claim is invalid.

*CAFC Model Patent Jury Instruction No. 10.3; Liebel-Flarsheim Co. v. Medrad, No. 06-1156, 2007 U.S. App. LEXIS 6607 at \*19 (Fed. Cir. March 22, 2007); Lizardtech, Inc. v. Earth Resource Mapping, Inc., 424 F.3d 1336, 1344 (Fed. Cir. 2005)*

### V.4    ANTICIPATION - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Acushnet contends that each of the asserted claims of the patents-in-suit are anticipated by Nesbitt, U.S. Patent No. 4,431,193.

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated" by the prior art.  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.

A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.  In this case, Acushnet contends that the asserted claims are anticipated. Therefore, Acushnet must present clear and convincing evidence showing that each invention described by the asserted claims is not new.  You must determine invalidity with respect to each asserted claim individually.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior art patent or public use, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular patent or public use.

A prior art patent will not be anticipating unless it contains a description of the invention covered by the asserted claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  In other words, a prior art reference anticipates a claim only if it discloses the claimed invention sufficiently that a person of ordinary skill in the art could take its teachings, together with his own knowledge of the art, and be in possession of the claimed invention.

67

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item, but also what is inherently present within the item. A party claiming that something is inherently present within an item of prior art must prove inherency by clear and convincing evidence.

To establish inherency, the evidence must show that the missing descriptive matter is necessarily present in the reference and that persons of ordinary skill in the art would understand that to be the case. If an element is possibly present within the prior art, but is not necessarily present, there is no inherency.

There cannot be an accidental or unrecognized anticipation. If there was a prior duplication of the claimed invention that was accidental, or unrecognized, unappreciated and incidental to some other purpose, that prior duplication is not an invalidating anticipation.

Source: *AIPLA Model Patent Jury Instr. 6.0; Uniform Jury Instr. For Patent Cases in the D. Del. 4.4 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Trintec Industries, Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1295 (Fed. Cir. 2002).*

### V.4    ANTICIPATION - ACUSHNET'S  PROPOSED INSTRUCTION

[Acushnet believes that the Anticipation instructions should follow the obviousness instructions.  Acushnet understands that Callaway disagrees with that order]

A patent is invalid if someone else has already made or described the same invention.  In other words, for the patent claim to be valid, the invention it claims must be new.  If an invention is not new, we say that the claim was "anticipated" by the prior art.  A patent claim that is "anticipated" by the prior art is not entitled to patent protection, and is invalid.

In order for a patent claim to be anticipated, each term or "limitation" of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  However, within a single prior art reference, there is no requirement that each limitation of the patent claim be found in a single example of the prior art reference.

Also, a prior art reference may anticipate a patent claim even without disclosing a limitation of the claim if the missing limitation is either incorporated by reference into the single prior art reference or "inherent" in the prior art reference.

I will now instruct you on whether any of the references Acushnet relies upon for anticipation incorporates by reference any other references and its limitations:

[INSERTION][2]

On inherency, something is "inherent" in an item of prior art if it is the natural result that flows from the disclosure in the prior art.  Thus, in deciding whether or not a single item of prior

---

[2]Acushnet reserves the right to include instruction here, depending on the Court's summary judgment ruling.  Callaway Golf similarly reserves the right to further address this issue.

art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, including what I have instructed you is incorporated by reference, and also that which is inherently present.  It does not matter whether a person of ordinary skill in the art would have recognized the inherent disclosure, or the newly discovered results, at the time the prior art was created.

If you find that Acushnet has proved by clear and convincing evidence that any of the claims asserted against it are anticipated by prior art, then you must find that those claims are invalid.

*CAFC Model Patent Instruction No. 10.8; Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1375-6 (Fed. Cir. 2005); SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005); Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1379 (Fed. Cir. 2003)*

### V.5    [JOINT PROPOSED INSTRUCTION] PRIOR PUBLIC USE OR KNOWLEDGE

The prior public use of a device or product by others may be prior art to the patent claims, and therefore invalidate the claims, under two different circumstances.

The first is where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent.  A patent claim is invalid if the invention recited in that claim was publicly known or used by others before the patent applicant invented it.  If this is true, you must find the patent invalid.

The second is where the invention was publicly used by the inventor, the patent owner, or anyone else, in the United States, more than one year before the application for the patent was filed.  The public use of a completed invention before this date invalidates the patent.  An invention is publicly used when it is made accessible to any member of the public other than an inventor or a person under an obligation of secrecy imposed by the inventor.  Thus a patent is not invalidated if the particular device, composition, or process is used by someone other than the inventor, under circumstances where it is not made accessible to the public.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent.  In either case, a prior use by someone other than the inventor must be a public use.

## V.6    OBVIOUSNESS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Acushnet further contends that the asserted claims are invalid as being obvious. In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining the obviousness or nonobviousness of a claim, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by Acushnet, the party alleging invalidity of the patents-in-suit;

2.    Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of each patent-in-suit was made; and

4.    Consider objective considerations of nonobviousness, such as commercial success, praise by others within the industry, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patent by others.

Against this background, you will make your decision that the claimed subject matter would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007); Graham v. John Deere Co., 383 U.S. 1 (1966).*

### V.6     OBVIOUSNESS - ACUSHNET'S PROPOSED INSTRUCTION

[ACUSHNET WOULD PLACE THESE OBVIOUSNESS INSTRUCTIONS IN FRONT OF THE INSTRUCTION ON ANTICIPATION]

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and deprives competitors or technology they are entitled to use. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

Obviousness may be proven by considering more than one item of prior art. The relevant question is, would a claim have been obvious to a person of ordinary skill in the art who know of all the prior art?

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1.     Determine the scope and content of the prior art relied upon by Acushnet.

2.     Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.     Determine the level of ordinary skill in the pertinent art at the time the invention of each patent-in-suit was made

If advanced by the patentee, you may consider what are referred to as "secondary considerations," which may tend to prove non-obviousness, such as commercial success, praise by others within the industry, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patent by others. I will instruct you further shortly on the claims of

secondary consideration advanced by Callaway.

In determining whether the asserted patent claims would have been obvious to a person of ordinary skill in the art, and are therefore invalid, you should not apply any rigid test or formula.  Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve results not unexpected.  In general, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.  A person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  If a person of ordinary skill in the art can implement a predictable variation of known works, and would see the benefit of doing so, then a patent on that idea is likely to be obvious.  Moreover, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill.  Also, it is common sense that familiar items may have obvious uses beyond their primary purposes.

Finally, you should also keep in mind that the standard of non-obviousness in an art is raised as the art advances.  New inventions, once they are known, define a new threshold from which patentable innovation is allowed.  As progress beginning from higher levels of achievement is expected in the normal course, the results of ordinary innovation are not entitled to patent protection.

*Based on CAFC Model Patent Jury Instruction No. 10.9; KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 at \*10-11, \*32-36 (U.S.S.C., April 30, 2007)*

### V.6.1   SCOPE AND CONTENT OF THE PRIOR ART - CALLAWAY GOLF'S PROPOSED INSTRUCTION

As I just instructed you, in arriving at your decision on the issue of whether or not the asserted claims are obvious to one of ordinary skill in the art, you should first determine what the scope and content of the prior art is.  This means that you should determine what prior art is reasonably pertinent to the particular problem the inventor faced.

The scope and content of the prior art includes references that would be considered by a person with ordinary skill in the art to solve a particular problem.  A person of ordinary skill in the art is deemed to know of all such references.  The prior art  at issue in the case includes everything described in the previous instruction entitled "Prior Art References and Prior Public Use."

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1; Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

### V.6.1   SCOPE AND CONTENT OF THE PRIOR ART - ACUSHNET'S PROPOSED INSTRUCTION

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced.  Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.  Prior art includes the following:

1.      Patents that issued before October 1995;

2.      Patents having a publication date before October 1995;

3.      U.S. Patents that have a filing date prior to October 1995;

4.      Anything in public use or on sale in the United States before October 1995;

5.      Anything that was publicly known or used by others in this country before October 1995; and

6.      Anything that was made or built or any process that was used in this country by another person before October 1995, where the thing made or built or the process used was not abandoned, suppressed or concealed.

*Del. Model Instructions 2004 at 4.8.1.*

### V.6.2   DIFFERENCES OVER PRIOR ART - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The next factor that you should consider is the differences, if any, between the prior art and the claimed invention.  Each claim must be considered in its entirety and separately from the other claims.

Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences.  The test is whether the claimed invention as a whole would have been obvious over all of the prior art.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.2 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

### V.6.2  DIFFERENCES OVER THE PRIOR ART - ACUSHNET'S PROPOSED INSTRUCTION

You must next consider the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

*Del. Model Instructions 2004 at 4.8.2*

78

### V.6.3  LEVEL OF ORDINARY SKILL - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include:

1. the educational level of the inventors and of others working in the field;

2. the types of problems encountered in the art at the time of the invention;

3. the prior art patents and publications;

4. the activities of others;

5. prior art solutions to the problems encountered by the inventors; and

6. the sophistication of the technology.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.3 (1993); AIPLA Model Patent Jury Instr. 7.4; Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

### V.6.3 LEVEL OF ORDINARY SKILL - ACUSHNET'S PROPOSED INSTRUCTION

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology, and the education of others working in the field.  You should also note that a person of ordinary skill is to be seen as a person or ordinary creativity.

*Del. Model Instructions 2004 at 4.8.3; KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 (U.S.S.C., April 30, 2007)*

## V.6.4   HINDSIGHT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The question of nonobviousness is simple to ask, but difficult to answer.  A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. A determination of obviousness cannot be based upon the hindsight combination of prior art.  It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the asserted claims.  Rather, you must cast your mind back to the time of the invention and consider whether a person of ordinary skill in the art, facing the range of needs created by developments in the field of the invention, would have seen the benefit to creating the asserted combination.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727  (2007).*

### V.6.4   OBVIOUSNESS - HINDSIGHT - ACUSHNET'S PROPOSED INSTRUCTION

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.  A person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. You should not rely on hindsight while undertaking this evaluation.  However, when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp.  You should cast your mind back to the time of the invention, and consider whether a person of ordinary skill in the art, facing the range of needs created by developments in the field of the invention, would have seen the benefit to creating the asserted combination.

*Based on Del. Model Instructions 2004 at 4.8.5; KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 (U.S.S.C., April 30, 2007)*

### V.6.5   OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS (SECONDARY CONSIDERATIONS) - CALLAWAY GOLF'S PROPOSED INSTRUCTION

In making your decision as to the obviousness or non-obviousness of the asserted claims, you should consider the following objective evidence which may tend to show non-obviousness of the claims at issue:

1.      Commercial success or lack of commercial success of products covered by the patents-in-suit;

2.      A long felt need in the art which was satisfied by the invention of the patents-in-suit;

3.      The failure of others to make the invention;

4.      Copying of the invention by Acushnet or others in the field;

5.      Unexpected results achieved by the invention;

6.      Praise of the invention by Acushnet or others in the field; and

7.      The taking of licenses under the patents-in-suit by others.

There must be a connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those described in the asserted claims, then any commercial success may have no relation to the issue of obviousness.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness. Although some parts of the evidence may weigh more heavily than others, your decision of

obviousness or non-obviousness should be held in abeyance, until all of the evidence has been introduced.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.4 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); tracks KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

## V.6.5    SECONDARY CONSIDERATIONS CONCERNING OBVIOUSNESS -ACUSHNET'S PROPOSED INSTRUCTION

In making your decision as to the obviousness or non-obviousness of each of the asserted claims of the patents-in-suit, you may also consider the following secondary considerations, evidence which may tend to show non-obviousness of the claims at issue:

1.      Commercial success or lack of commercial success of products covered by the patents in suit;

2.      The taking of licenses by others to the patent, or conversely, the rejection of offers to license the patent by others;

3.      Unexpected results achieved by the invention;

4.      A long-felt need in the art that was satisfied by the invention of the patent;

5.      The failure of others to make the inventions.

You should only consider such secondary considerations as indications that the patent asserted is not obvious if Callaway has demonstrated that there is a nexus between the claimed invention and the secondary consideration.  For example, commercial success of a product is only an indication of non-obviousness if the allegedly infringed claims of the patent are responsible for the success of the product.  If that success is seen to come from a different source, such as advertising, promotion, brand name recognition, company goodwill, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, then any commercial success may have no relation to the issue of obviousness.

Further, to be pertinent as evidence of non-obviousness, commercial success must be shown to be due to the merits of the claimed invention beyond what was readily available in the

prior art.  If the feature that creates the commercial success was known in the prior art, the success is not pertinent.

Also, the market position of the parties is relevant when considering commercial success. The commercial success of a product introduced by a market leader, for example, may be of limited probative value, especially where the sales of the new product by the market leader replace sales of the market leader's previous products.  If this occurs, then it may be the case that the commercial success of the product is unrelated to its features that infringe the patents-in-suit, and as such, the success is not an indicator of non-obviousness.

Another indication that the commercial success of the product may not relate to any patented features is where another product also practicing the claims of the patent does not enjoy commercial success.

Apart from the commercial success (or lack thereof) of competing products that also practice the invention, you should also consider the number of patents which cover the allegedly infringing product before determining whether there is a nexus between the secondary considerations and the claimed invention.  If the allegedly infringing product is covered by multiple patents, you must consider whether the secondary considerations such as commercial success are the result of the patents-in-suit, or if they result from features covered by the other patents.

In your determination of obviousness, then, you must consider whether Callaway has demonstrated not only that such secondary considerations exist, but also whether Callaway has proven that there is a sufficient nexus between the considerations and the claimed invention – in other words whether it is the allegedly infringing features of the Acushnet golf balls which have led to these secondary considerations, rather than any other features of the balls, the general

status of Acushnet as a golf ball producer, or any other actions taken by Acushnet in producing

and marketing the Acushnet golf balls.

*Based on Del. Model Instructions 2004 at 4.8.6; Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1216 (Fed. Cir.1998);  Pfizer Inc. v. Apotex, 480 F.3d 1348, 1360 (Fed. Cir. 2007); Graham v. John Deere Co., 383 U.S. 1, 17 (1966); Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1324 (Fed. Cir. 2004); Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311-12 (Fed. Cir. 2006); Stratoflex , Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed. Cir. 1983); Pentec, Inc. v. Graphic Controls, Corp., 776 F.2d 309, 316 (Fed. Cir. 1985); Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295, 300 (9th Cir. 1970); McNeil-PPC v. Perrigo Co., No. 05 Civ. 1321 (WHP), 2007 U.S. Dist. LEXIS 50255 at **33-34 (S.D.N.Y. July 3, 2007)*.

### V.6.6   NON-OBVIOUSNESS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Expressions of disbelief upon learning of the invention by those skilled in the art constitute strong evidence of nonobviousness.

Source:   *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.6.*

### V.6.6   NON-OBVIOUSNESS - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### V.6.7 COMMERCIAL SUCCESS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

One of the factors you should consider is whether Callaway Golf has shown any commercial success of products covered by the patents-in-suit due to the merits of the invention.

To prove this, Callaway Golf must provide evidence to satisfy you that there is a causal connection between the commercial success of the products and the claimed invention. This would tend to indicate that the invention would not have been obvious.

If you conclude that commercial success of the product is due to advertising, promotion, salesmanship or the like, or to features of the product other than those claimed in the patents-in-suit, rather than to the claimed invention, then the fact that the product enjoyed commercial success is not related to whether the invention would have been non-obvious.

Therefore, you should consider whether Callaway Golf has shown that Acushnet's ProV1 balls are commercially successful and whether any such commercial success is due to the merits of the invention claimed in the patents-in-suit. If so, this tends to indicate that the invention was not obvious.

Source: *AIPLA Model Patent Jury Instr. 7.7.*

### V.6.7   COMMERCIAL SUCCESS - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### V.6.8   COPYING - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Another factor you should consider is whether or not Callaway Golf has shown copying by others of the inventions claimed in the patents-in-suit.  If you find that others copied the invention because of its merits, this tends to indicate that the invention was not obvious.


Source:  *AIPLA Model Patent Jury Instr. 7.7*.

### V.6.8  COPYING - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### V.6.9   ACCEPTANCE OF LICENSES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Another factor you should consider is whether or not Callaway Golf has shown that others have accepted licenses under the patents-in-suit because of the merits of the claimed invention.  If others accepted licenses due to other factors, such as the low cost of the license or the cost of litigation, then it has not been established that the acceptance of licenses was due to the merits of the invention itself.

If you find that others took licenses as a result of the merits of the claimed invention, this tends to indicate that the invention was not obvious.

Source:  *AIPLA Model Patent Jury Instr. 7.7.*

### V.6.9  ACCEPTANCE OF LICENSES - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

### V.6.10 REASON TO COMBINE - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Among the factors you may consider in determining whether multiple prior art references render a patent obvious is whether there was some apparent reason to combine or modify the items of prior art and whether the combination would be reasonably likely to achieve the goal of the invention. However, in doing so, you must guard against slipping into the use of hindsight.

Source: *KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742-43 (2007).*

### V.6.10 REASON TO COMBINE - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

## V.6.11 TEACHING AWAY OF PRIOR ART - CALLAWAY GOLF'S PROPOSED INSTRUCTION

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence

of non-obviousness.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.7; KSR Int'l Co. v. Teleflex Inc.,*
*127 S. Ct. 1727, 1742-43 (2007).*

## V.6.11 TEACHING AWAY OF PRIOR ART - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

## V.6.12 INFRINGER'S ATTEMPT TO PATENT TECHNOLOGY - CALLAWAY GOLF'S PROPOSED INSTRUCTION

An attempt by the infringer to obtain a patent on the subject matter of the invention at issue may be evidence of non-obviousness. Here, Acushnet has obtained patents to technology that is similar to the inventions in the asserted patents. Because Acushnet's attempt to patent the inventions came after the asserted patents were filed, Acushnet's patents are not prior art.

Source: *D. Chisum, Chisum on Patents, § 5.05[5][c], p.5-628 (2007).*

## V.6.12 INFRINGER'S ATTEMPT TO PATENT TECHNOLOGY - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

## V.6.13 INDEPENDENT INVENTION BY OTHERS – CALLAWAY GOLF'S PROPOSED INSTRUCTION

[Callaway Golf believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

## V.6.13 INDEPENDENT INVENTION BY OTHERS – ACUSHNET'S PROPOSED INSTRUCTION

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the invention was also invented independently by other persons, either before the inventor of the patent in suit or at about the same time. Just as the failure of others to make the invention can be evidence of unobviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may or may not be an indication of obviousness when considered in light of all of the circumstances.

*Del. Model Instructions 1993 at 4.8.9*

### V.7     LACHES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The owner of a patent may not be entitled to recover damages for acts that occurred

before it filed a lawsuit against an alleged infringer where:

1.      the patent holder delayed filing the lawsuit for an unreasonably long period of

time,

2.      there was no excuse for the patent holder's delay in filing the lawsuit, and

3.      the allegedly infringing party has been or will be prejudiced in a significant way

due to the patent holder's delay in filing the lawsuit.

This is referred to as laches, and it is a defense that Acushnet contends prevents Callaway

Golf from recovering any damages before Callaway Golf filed this case.

Whether Callaway Golf delayed for an unreasonably long time is a question that must be

answered by considering the facts and circumstances as they existed during the period of delay

in the way that reasonably prudent businesspeople would have viewed them. Whether Callaway

Golf's otherwise unreasonably long delay was justified or should be excused also is a question

that must be answered by considering the facts and circumstances as they existed during the

period of delay in the way that reasonably prudent businesspeople would have viewed them.

Prejudice to Acushnet as a result of any delay by Callaway Golf in filing this lawsuit can

be economic or evidentiary in nature. Whether Acushnet suffered evidentiary prejudice is a

question that must be answered by evaluating whether any unreasonable delay in filing this case

resulted in Acushnet not being able to present a full and fair defense on the merit's to Callaway

Golf's infringement claim. Whether Acushnet suffered economic prejudice is a question that

must be answered by evaluating whether any unreasonable delay in filing this case resulted in

Acushnet changing its economic position in a significant way during the period of delay, and

also whether Acushnet's losses as a result of that change in economic position could have been avoided if Callaway Golf had filed this lawsuit sooner.

Having to pay damages to Callaway Golf if found to infringe on its patent does not amount to economic prejudice; rather, Acushnet's liability for infringement damages or the other economic losses that may be incurred by Acushnet if found to be an infringer must have been avoidable if Callaway Golf had filed this lawsuit sooner.

Source: *Fed. Cir. Bar Assn.  Model Jury Inst. 5.2.*

### V.7    LACHES - ACUSHNET'S PROPOSED INSTRUCTION

Acushnet also asserts a defense to the infringement allegations called laches.  The defense of laches, if proven by a preponderance of the evidence, prevents a patent owner from recovering damages prior to the filing of the lawsuit.

The party asserting laches must prove two things:  (1) that the patent owner delayed in bringing a lawsuit for an unreasonable length of time after it knew or should have known of the potential infringement, and (2) that the delay has resulted in material prejudice or injury to the party asserting the defense.  Prejudice or injury can be either economic or evidentiary.  Economic harm is harm that results from a change in the accused party's economic position during the period of delay.  Evidentiary harm is harm that results from the passage of time, such that the accused party's ability to present any defense to the alleged infringement has been impaired.

*Based on Final Jury Charge, St. ClairIntellectual Property Consultants, Inc. v. Canon, Inc., United States District Court for the District of Delaware (October 21, 2004), CA No. 03-241 (JJF)*

## VI.     DAMAGES

### VI.1     [JOINT PROPOSED INSTRUCTION] COMPENSATORY DAMAGES IN GENERAL

If, after considering all the evidence and the law as I have stated it, you have determined that there are no patent claims at issue that are infringed, or that all the asserted patent claims are invalid, your verdict should be for Acushnet and you need go no further.  On the other hand, if you decide that one or more of the patent claims are valid and have been infringed by Acushnet, you must then turn to the issue of damages.

The patent laws provide that in the case of infringement of patent claim, the owner of the patents shall be awarded damages adequate to compensate for infringement, but in no event less than a reasonable royalty rate for the use made of the invention by the infringer.  Damages are compensation for all the losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Acushnet Company benefited from, realized profits from, or even lost money as a result of the acts of infringement.  It is also not relevant if Acushnet Company did not foresee that it would cause Callaway Golf harm.  The only issue is the amount necessary to adequately compensate Callaway Golf for infringement by Acushnet Company.  Adequate compensation should return Callaway Golf to the position it would have been in had there been no infringement.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.1-5.2 (2004).*

## VI.2    BURDEN OF PROOF – REASONABLE CERTAINTY - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Callaway Golf has the burden of proving damages by what is called a preponderance of the evidence.  As you recall, that means that Callaway Golf has to produce evidence that, when considered in light of all the facts, leads you to believe that what Callaway Golf claims is more likely true than not true.  Put differently, if you were to put Callaway Golf's and Acushnet's evidence concerning damages on the opposite sides of a scale, the evidence supporting Callaway Golf's claims would have to make the scales tip somewhat on its side.

Callaway Golf is entitled to all damages that can be proven with reasonable certainty.  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Callaway Golf.  On the other hand, Callaway Golf the patent owner is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or left to conjecture.  You may base your evaluation of reasonable certainty on opinion evidence.  Any doubts regarding the computation of the amount of damages should be resolved against Acushnet and in favor of Callaway Golf.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 5.3 (2004).*

## VI.2    BURDEN OF PROOF OF INFRINGEMENT DAMAGES – REASONABLE CERTAINTY - ACUSHNET'S PROPOSED INSTRUCTION

If you find that Acushnet has infringed any valid patent claims, you must determine the extent of damages.  The patent owner has the burden of proving damages by a preponderance of the evidence.  As you recall, that means that the patent owner has to produce evidence that, when considered in the light of all the facts, leads you to believe that what the patent owner claims is more likely true than not.

The patent owner is entitled to damages that it has proven with "reasonable certainty." On one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to the patent owner.  On the other hand, the patent owner is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.

*Based on Del. Model Instructions 2004 at 5.3*

### VI.3    METHODS FOR COMPUTING DAMAGES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

There are two common methods for computing damages in a patent infringement case. One is called "lost profits," and the other is called "reasonable royalty." These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by Acushnet. You cannot award both lost profits and a reasonable royalty for the same sale. However, it is possible that you may award lost profits for some sales, and reasonable royalty for other sales.

Thus, in determining damages, you must first determine if Callaway Golf has proven its entitlement to lost profits. Lost profits are the Profits Callaway Golf lost because of the infringement. They are not the profits that Acushnet actually made. Callaway Golf's lost profits may be in several different forms, which I will explain in a moment. These include (1) lost sales, (2) eroded prices for sales actually made, and (3) eroded prices for future sales.

Only if you find that Callaway Golf is not entitled to lost profits for some or all of its sales, will you then determine Callaway Golf's damages based on a reasonable royalty for those sales that it is not entitled to lost profits. I will explain reasonable royalty after I explain lost profits.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 5.5, 5.7 (2004); State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1576-77 (Fed. Cir. 1989).*

110

### VI.3    METHODS OF COMPUTING DAMAGES - ACUSHNET'S  PROPOSED INSTRUCTION

There are two common methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages. These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

In determining damages, you should first determine whether Plaintiff has proven its entitlement to lost profits.  If you find that Plaintiff is not entitled to lost profits, you should then calculate damages based upon another method, which may include a reasonable royalty.

*Del. Model Instructions 2004 at 5.5*

### VI.4    LOST PROFITS – LOST SALES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Callaway Golf is claiming that it lost sales because of Acushnet's infringement.  In order to recover lost profits damages for lost sales, Callaway Golf must show that "but for" Acushnet's infringement, Callaway Golf would have made the sales or profits that it claims were lost.  One way Callaway Golf can prove this is to show:

1.  There was a demand for the patented product;

2.  Callaway Golf had the ability to meet the market demand;

3.  Callaway Golf's pro rata market share of the sales of Acushnet Company's infringing products or no acceptable non-infringing substitutes were available; and

4.  The amount of profit it would have made.

Callaway Golf need not negate every possibility that purchasers of Acushnet's products might have bought another product.  Mere existence of a competing device does not make that product an acceptable substitute.  However, the uniqueness of the features of the patented product suggests that there might be no acceptable non-infringing substitutes.  To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers/users of the infringing products.

As an alternative to showing that there are no acceptable non-infringing substitutes, Callaway Golf may show entitlement to lost profits by showing its pro rata market share of the sales of Acushnet's infringing products relative to all other competitors in the defined market.  In other words, Callaway Golf may claim lost profits by showing what percentage it would have made of Acushnet's infringing sales if Acushnet's infringing product was not present in the

112

market during the period of infringement.

In addition, in order to recover lost profits, it is not necessary for Callaway Golf to have sold the patented product. Rather, all that is required is that it sold a product that was an acceptable substitute to the infringing product containing the patented feature.

In proving its damages, Callaway Golf's burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that Callaway Golf would have made some of the infringing sales, and it reasonably probable what amount Callaway Golf would have netted from the denied sales, then Acushnet is liable for the lost profits of those infringing sales.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 5.8 (2004); Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1548-49 (Fed. Cir. 1995); King Instruments Corp. v. Perego, 65 F.3d 941, 952-53 (Fed. Cir. 1995); State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).*

### VI.4    LOST PROFITS – ACUSHNET'S PROPOSED INSTRUCTION

Callaway claims that it should be awarded the amount of profits it lost because of the alleged infringement.  In order to satisfy this burden, Callaway must show that there was a reasonable probability that it would have made a certain level of additional sales of its own product, but for the infringement.  In other words, you must answer the questions of whether Acushnet's sales of infringing product, if any, proximately caused Callaway to lose sales, and how would Callaway's sales of its own product (and corresponding profits) been any different had Acushnet not infringed the patents-in-suit.

In determining lost profits, you may consider whether Callaway has established the following facts: (1) what the demand for the patented product would have been in the absence of alleged infringement by Acushnet; (2) the absence of acceptable noninfringing substitutes in the "but for" infringement world, including the ability of Acushnet to still produce a competing product in the "but for" infringement world in a manner that did not infringe the patents-in-suit; (3) Callaway's capacity to meet the demand it claims it would have sold but for infringement; (4) and the amount of profit Callaway itself (not any other entity) would have made but for the defendant's sales.

To show causation and entitlement to lost profits, Callaway must reconstruct the market to show likely outcomes with infringement factored out of the economic picture.  Such market reconstruction cannot be based on conjecture; though hypothetical, it requires sound economic proof of the nature of the market.

If you find that Callaway has sustained the burden of proving that it is entitled to lost profits, you should next consider the measure of those damages.  In doing so, you should consider the amount or number of lost sales, the gross receipts that Callaway would have

114

obtained from the lost sales, the cost of the sales to be deducted from the gross receipts and then the profit on the lost sales.  If you find, however, that Callaway would not have made the sales that Acushnet in fact made, you may not award lost profits.  Instead you must award an amount based on a reasonable royalty.

A patent owner may only recover lost profits damages for profits that it would have made itself absent the infringement.  A patent owner may not recover lost profits that would have been made by an entity that does not hold the patent, even if it too may have lost profits, or is affiliated with or a subsidiary of the patent owner.  Thus, in order to establish it is entitled to lost profits damages, Callaway (the Callaway Golf Company) must prove by a preponderance of the evidence that it, rather than any subsidiary or affiliate, would have made any claimed higher profits absent the alleged infringement, and must further prove to a reasonable certainty the level of such particular lost profits.  Absent this proof, you may not award lost profits damages to Callaway Golf Company.

*Based on Del. Model Instructions 2004 at 5.8; Grain Processing Corp. v. Am. Maize-Prods., 185 F.3d 1341, 1350, 51 U.S.P.Q.2D (BNA) 1556, 1562 (Fed. Cir. 1999); State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573 (Fed. Cir. 1989); Poly-America, L.P., v. GSE Lining Technology, Inc., 383 F.3d 1303 (Fed. Cir. 2004).*

### VI.5    FUTURE PROFITS – DETERMINATION - CALLAWAY GOLF'S PROPOSED INSTRUCTION

In considering the element of future profits, you should determine whether or not Acushnet's infringement of the patents prevented Callaway Golf from earning profits that would have accrued to it but for that infringement.  In determining whether or not any part of Callaway Golf's damages constitute future profits, you may consider the past experience of Callaway Golf and Acushnet in the business, the competition Callaway Golf would have had, and the general market conditions.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 5.13.*

### VI.5   FUTURE PROFITS – DETERMINATION - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

## VI.6    REASONABLE ROYALTY - CALLAWAY GOLF'S PROPOSED INSTRUCTION

If you find that Callaway Golf is not entitled to lost profits on some or all of the sales by Acushnet, then Callaway Golf is entitled to a reasonable royalty on all sales for which it is not entitled to lost profits. A reasonable royalty is the minimum permissible measure of damages set by the patent laws and is not necessarily the actual measure of damages. Rather, it is the floor below which damages should not fall. You may find damages in excess of a reasonable royalty if you find the facts so warrant.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical, arm's-length negotiation between Callaway Golf /Spalding and Acushnet, with both parties operating under the assumption that the negotiated patents are valid, that the patents are enforceable, and that the patents are being infringed by Acushnet Company's product or method of using its product.

The reasonable royalty must be calculated as of the point in time just prior to when infringement began.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms-length negotiation that I just referred to would have been likely to have occurred. This is typically just before the alleged infringement began.

In the hypothetical, arm's-length negotiation, you must assume that the person negotiating on behalf of Acushnet, who was willing to take a license, would have known that Callaway Golf's patents were valid and infringed by Acushnet. You also assume that both Callaway Golf and Acushnet knew all pertinent information at the time of the hypothetical negotiations.

No matter how it is calculated, the setting of a reasonable royalty after infringement cannot be treated as the equivalent of ordinary royalty negotiations among truly willing patent owners and licensees. That would constitute a pretense that infringement never happened. It would also make an election to infringe a handy means for competitors to impose a compulsory license policy on every patent owner. The infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. The infringer would be in a "heads-I-win, tails-you-lose" position.

Having that in mind, you may consider any relevant fact  in determining the reasonable royalty for Acushnet's use of the patented inventions, including the opinion testimony of experts.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 5.14 (2004); State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978).*

### VI.6    REASONABLE ROYALTY AS A MEASURE OF DAMAGES - ACUSHNET'S PROPOSED INSTRUCTION

In this case, Callaway Golf also seeks damages in the amount of a reasonable royalty for the accused products.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Spalding and Acushnet, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Acushnet was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Acushnet.  You must also assume that Spalding would have been willing to grant a license.  Finally, you must assume that both Spalding and Acushnet knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Acushnet's use of the patented invention, including the opinion testimony of experts.

*Del. Model Instructions 2004 at 5.14*

## VI.7    [JOINT PROPOSED INSTRUCTION] FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining such a reasonable royalty, some of the factors that should be considered are:

1. the royalties received by the patentee for the licensing others under the patent in suit;

2. the rates paid by the licensee for the use of other patents comparable to the patent in suit;

3. the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4. the licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5. the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promotors;

6. the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

7. the duration of the patent and the term of the licenses;

8. the established profitability of the product made under the patent, its

commercial success, and its current popularity;

9. the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10. the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12. the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. the opinion testimony of qualified experts; and

15. any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### VI.8    DAMAGES – BREACH OF CONTRACT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The Court has already determined that Acushnet breached the 1996 Agreement with Callaway Golf.  Therefore, Callaway Golf is entitled to damages from Acushnet's breach of contract, to the extent Callaway Golf has proved any such damages.

The measure of damages is the loss actually sustained as a result of Acushnet Company's breach of the 1996 Agreement.  In other words, Callaway Golf is entitled to damages sufficient to place it in the position it would have been if Acushnet had not breached the 1996 Agreement.

Source:  *Delaware P.J.I. Civ. § 22.24 (2000); Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc., Del. Supr., 394 A.2d 1160, 1163-64 (1978); American General Corp. v. Continental Airlines, Del. Ch., 622 A.2d 1, 11, aff'd, Del. Supr., 620 A.2d 856 (1992).*

### VI.8    DAMAGES, IF ANY, IN RECOVERY FOR BREACH OF CONTRACT - ACUSHNET'S PROPOSED INSTRUCTION

If it has been determined that there was a contract between Acushnet and Spalding Sports Worldwide, Inc, and that Acushnet's actions in filing for reexamination procedures with the United States Patent and Trademark Office breached that contract, Callaway would be entitled to damages in an amount calculated to compensate it for the breach of the contract.

Callaway must prove by a preponderance of the evidence the amount of damages which it incurred as a result of that breach.  To recover such damages, Callaway must be demonstrate its alleged damages to have been proximately caused by the alleged breach of the contract. Callaway cannot recovery damages, for instance, for any attorneys fees or costs associated with these proceedings.  Thus, if Callaway incurred costs or attorneys' fees during the reexamination process over the validity of the patents-in-suit, which fees and costs would also have been incurred in the course of this case, then such expenditure cannot form a part of any recovery for breach of contract.

If you find that Callaway is entitled to a verdict in accordance with these instructions, but also find that Callaway's expenditures on the reexamination proceedings would have also been incurred in the course of this case, then you may return a verdict for Callaway in some nominal sum such as one dollar.  Nominal damages are not given as an equivalent for the wrong, but rather in recognition of a technical injury and by way of declaring the rights of Callaway.

*Based on Del. P.J.I. Civ. § 19.20.*

### VI.9  [JOINT PROPOSED INSTRUCTION] CLOSING STATEMENT – DAMAGES

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Callaway Golf has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that Callaway Golf is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing Acushnet or to set an example.

### VI.10  [JOINT PROPOSED INSTRUCTION] CURATIVE INSTRUCTION

The fact that I have instructed you regarding damages should not be construed as suggesting any view of the Court as to which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Callaway Golf.

**VII.    DELIBERATION AND VERDICT**

**VII.1   [JOINT PROPOSED INSTRUCTION] INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your vote.  For example, do not write down or tell anyone that you are split 4-4 or 6-2, whatever your vote happens to be.  That should stay secret until you are finished.

### VII.2  [JOINT PROPOSED INSTRUCTION] UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you to answer a series of questions about Callaway Golf's claims of infringement and breach of contract and Acushnet's claims of invalidity.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of you, the jury.

### VII.3   [JOINT PROPOSED INSTRUCTION] DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room, but only when all jurors are present.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**VII.4   [JOINT PROPOSED INSTRUCTION] COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Dated:  November 19, 2007                    FISH & RICHARDSON P.C.


                                             By: /s/ Thomas L. Halkowski
                                                  Thomas L. Halkowski (#4099)
                                                  919 N. Market Street, Suite 1100
                                                  P.O. Box 1114
                                                  Wilmington, DE 19899-1114
                                                  Tel:  (302) 652-5070
                                                  Fax:  (302) 652-0607

                                                  Frank E. Scherkenbach
                                                  225 Franklin Street
                                                  Boston, MA 02110-2804
                                                  Tel:  (617) 542-5070
                                                  Fax:  (617) 542-8906

                                                  Roger A. Denning
                                                  12390 El Camino Real
                                                  San Diego, CA 92130
                                                  Tel: (858) 678-5070
                                                  Fax:  (858) 678-5099

                                             ATTORNEYS FOR PLAINTIFF
                                             CALLAWAY GOLF COMPANY

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2007, the attached document was electronically

filed with the Clerk of Court using CM/ECF which will send electronic notification of such

filing(s) to the following Delaware counsel.

Richard L. Horwitz                        Attorneys for Defendant
David E. Moore                            ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899


Alan M. Grimaldi, Esq.                    Attorneys for Defendant
Joseph P. Lavelle                         ACUSHNET COMPANY
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004




**  /s/ Thomas L. Halkowski  **
Thomas L. Halkowski