IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-091-SLR |
| | ) |
| ACUSHNET COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 20th day of November, 2007, having heard oral argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of the patents in suit,[1] as identified by the above referenced parties, shall be construed consistent with the tenets of claim construction set forth by the Unites States Court of Appeals for the Federal Circuit in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. **"Cover layer having a Shore D hardness."** This limitation requires that Shore D hardness be measured "on the ball."

   a. The court recognizes, at the outset, that there is support for both

---

[1]The patents in suit include U.S. Patent Nos. 6,210,293 (the "'293 patent"), 6,506,130, 6,503,156 and 6,595,873 (referred to collectively as "the Sullivan patents"). I remind the parties that, although the parties have offered an agreed upon construction of the limitation "modulus," the construction will not be helpful to a jury and, therefore, the parties should work towards agreement on clearer language.

parties' respective claim constructions in the intrinsic and extrinsic evidence of record. For instance, the specifications of the Sullivan patents refer to both "on the ball" and "off the ball" measurements of Shore D hardness. Notably, however, the "off the ball" measurements are called out in relation to raw materials, while the "on the ball" measurements are called out when comparing the characteristics of the finished products, in this case, actual golf balls.[2] The prosecution history is not inconsistent with this observation.[3]

b. There is record evidence that, in the art, those of ordinary skill take Shore D hardness measurements "in accordance with ASTM test 2240" both "on the ball" and "off the ball."[4] In this regard, of course, it is evident that Mr. Sullivan could have specified, but failed to do so, whether he meant "on the ball" or "off the ball" measurements. However, given that claim construction is a matter both of science and of semantics, when the science (such as it is) is ambiguous, the claim construction exercise becomes more a matter of semantics, i.e., the words and grammar the patentee actually used to describe the invention.

c. In this case, the claim language refers to a "cover layer having a Shore

---

[2]Using the specification of the '293 patent as an example, compare tables 1 through 4 with tables 5 through 6B; col. 7, ll. 9-26 and col. 11, ll. 60-62 with col. 6, ll. 31-51 and col. 18, ll. 61 to col. 19, ll. 1.

[3]See, e.g., D.I. 211, ex. H at CW 0309064 and CW 0309086.

[4]See, e.g., U.S. Patent No. 6,213,894 ("the '894 patent"), as well as the declaration of defendant's Vice President of Product Development, Jeffrey L. Dalton, which declaration was submitted to the United States Patent and Trademark Office and described a Shore D hardness value taken "on the cover of a ball." (D.I. 217, ex. 32) At oral argument, defendant's counsel conceded that "people in the art do these tests both ways." (D.I. 312 at 34:13-14)

2

D hardness," not the material comprising the cover layer. Therefore, I conclude that the language of the claims at issue is more consistent with a finding that Shore D hardness is measured "on the ball," since one does not have a cover layer until an actual golf ball is produced.

2. **"Core."** The singular component of the golf ball that occupies the geometric center of the sphere of the golf ball.

    a. Because the invention of the Sullivan patents is directed to the inner and outer cover layers, there is not much discussion in the specifications about the "core" of the golf balls. Instead, the specification simply refers to the fact that

> the golf balls can be produced by injection molding or compression molding the inner cover layer about wound or solid molded cores . . . . Although either solid cores or wound cores can be used in the present invention, as a result of their lower cost and superior performance, solid molded cores are preferred over wound cores.

('203 patent, col. 15, ll. 16-26)

    b. Although multi-component cores were known in the art at the time the patents in suit were filed,[6] Mr. Sullivan referred to "conventional solid cores"[7] without

---

    [6] See, e.g., the '894 patent and U.S. Patent No. 5,273,286.

    [7] '203 patent, col. 14, ll. 9-36.

3

further description. Given the common understanding of the word "core,"[8] I conclude that the above construction is consistent with both the intrinsic and extrinsic evidence of record.

/s/ Sue L. Robinson<br>
United States District Judge

---

[8]"The central and often foundational part of a body, mass or construction[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 506 (1993).