IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-91-SLR |
| | ) |
| ACUSHNET COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 20th day of November, 2007, having reviewed the pending motions filed under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and the papers submitted in connection therewith;

IT IS ORDERED that:

1. Plaintiff's motion to exclude expert testimony regarding certain "hybrid golf balls" (D.I. 288) is granted, for the reasons that follow:

   a. In support of its various invalidity contentions, defendant submitted the expert report of Dr. William J. MacKnight. (D.I. 283, ex. 1) The substance of the report consists of the following three paragraphs:

   > 5. I understand Acushnet has presented arguments regarding the patentability of the Sullivan Patents in relation to several prior art references, including U.S. Patent No. 4,431,192 to Nesbitt ("Nesbitt"), U.S. Patent No. 5,314,187 to Proudfit ("Proudfit 187"), U.S. Patent No. 4,274,637 to Molitor ("Molitor 637"), U.S. Patent No. 5,334,673 to Wu ("Wu 673"), and U.S. Patent No. 4,674,751 to Molitor ("Molitor 751").

> 6. I was asked by Acushnet and its lawyers to direct the preparation and testing of certain golf balls that are described by the patents listed above, or combinations thereof. **I personally directed the preparation and testing of such golf balls.**
>
> 7. The methods by which **I prepared and tested the golf balls,** and the results of those tests are set forth in detail in the declaration I submitted to the Patent Office, which is attached to this report as Exhibit B. If asked to do so, I will testify at trial regarding the testing I performed.

(Emphasis added)

      b. It is apparent from Dr. MacKnight's deposition[1] that the above declarations do not accurately describe Dr. MacKnight's role in the testing actually conducted. According to Dr. MacKnight's testimony, Acushnet personnel directed every aspect of these tests; Dr. MacKnight neither prepared nor tested anything. Indeed, aside from giving Acushnet the benefit of his impressive resume, I am hard pressed to identify what Dr. MacKnight did in connection with this testing. His "expert report" reflects no personal knowledge of any material aspect of the subject matter and cannot be used to confer any indicia of trustworthiness to the test results. Therefore, to the extent that the reliability of the test results derives from Dr. MacKnight's voucher, such evidence is excluded.

    2. Acushnet's motion to exclude the testimony and report of Callaway's expert witness Brian Napper (D.I. 284) is denied as moot, as I have decided to bifurcate the issue of damages.

    3. Acushnet's motion to exclude the testimony and report of Callaway's expert

---

[1] D.I. 283, ex. 2.

witness Garth L. Wilkes (D.I. 278) is denied in part and granted in part, for the reasons that follow:

    a. Dr. Wilkes included no written analysis in his report; he, instead, offers conclusions and cites to purported record evidence in his various claim charts.[2]

    b. Dr. Wilkes performed no testing; he, instead, relies on testing documents created by Acushnet in the ordinary course of business.[3]

    c. It is not disputed that these documents demonstrate that Shore D hardness, whether measured on or off the ball, varies somewhat depending on the manufacturing conditions and the particular compositions used for each version of the accused golf balls. Nor is it disputed, by my reading of the papers, that the data supports Dr. Wilkes' conclusion that at least some of the accused golf balls infringe the asserted claims when the manufacturing guidelines are followed. Therefore, even if Acushnet's testing documents show that a substantial portion of balls do not infringe, Dr. Wilkes' infringement analysis is based on reliable data and may be shared with the jury.

    d. The above conclusion is based on an assumption on my part that Dr. Wilkes based his infringement analysis on Shore D hardness measurements taken on the ball, consistent with plaintiff's validity contentions. To the extent his analysis is

---

[2] D.I. 280, ex. 1.

[3] While Acushnet's manufacturing guidelines do not set forth any targets for hardness of any components of the golf balls, including the inner or outer cover layers, Acushnet apparently measures the hardness of the layers of its and competing golf balls in the ordinary course.

based on off the ball measurements, such analysis is excluded.[4]

                                           _/s/ Sue L. Robinson_
                                           United States District Judge

---

[4] Although the issue of damages has been bifurcated, the inadequacies noted by Acushnet in reference to Dr. Wilkes' opinion are really directed to the question of whether Dr. Wilkes has identified with sufficient precision the number of infringing products that have been made/sold. That question, a good one, is not addressed in this order.

4