

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Attorney at Law
rhorwitz@potteranderson.com
302 984-60277 Direct Phone
302 658-1192 Fax

December 3, 2007

**VIA ELECTRONIC FILING**

The Honorable Sue L. Robinson
United States District Court
   for the District of Delaware
844 King Street
Wilmington, DE 19801

    Re:    **Callaway Golf Company v. Acushnet Company**
             **C.A. No. 06-91-SLR**

Dear Judge Robinson:

    Acushnet writes in response to Callaway's November 30, 2007 letter brief concerning the admissibility of PX-713, PX-722, PX-723, PX-984, PX-1090, PX-1152, PX-1195 and PX-1177. (D.I. 363). Callaway describes these exhibits as "eight" "selected news articles" containing "praise" evidence. In actuality, they contain many more news articles than eight, all of which Callaway seeks to admit into evidence.[1] Irrespective of any number, however, Acushnet's objects to these exhibits as evidence on the basis that they are both inadmissible hearsay and irrelevant as praise.

### Hearsay

    Callaway argues that its numerous hearsay news articles are admissible as Rule 801 party admissions -- the basis being that they contain statements attributed to Acushnet's Chief Executive Officer, Wally Uihlein. Rule 801, however, is not sufficient for this purpose. Out-of-court news writings are hearsay. If offered for the truth of the matter asserted, the reporter himself must appear in court, swear to give truthful testimony, attest to his personal knowledge and observations of what he reported, and be subject to cross-examination. Callaway's proffer thus still faces a significant hearsay problem. Callaway seeks to prove out-of-court statements by Mr. Uihlein so that they can be taken as party admissions; but Callaway first must prove that Mr. Uihlein actually made those out-of-court statements. Callaway cannot prove this from a reporter's out-of-court writings. Therefore, the subject matter offered remains hearsay.[2]

---

[1] PX-1090 is seven articles combined into one exhibit; PX-1152 is six separate pieces, including four news articles.

[2] Also, Callaway cannot claim the rest of the articles (the portions not quoting any Acushnet officials) are party admission under 801. These sections of the articles remain unchallenged by Callaway as inadmissible hearsay. *See Tracinda Corp. v. Daimler-Chrysler AG*, 362 F. Supp. 2d 487, 495 (D. Del. 2005).

The Honorable Sue L. Robinson
December 3, 2007
Page 2

Furthermore, to any degree Callaway purports to invoke the Rule 807 catch-all exception as a basis for admission of these golfing stories, Callaway's proffer is woefully inadequate to demonstrate the requisite indicia of trustworthiness, or otherwise to satisfy the strict requirements of Rule 807.[3] Contrary to Callaway's claim, this Court did not state at the pretrial conference that quotations in newspaper and magazines generally satisfy Rule 807. (*See* D.I. 349 at 52.) In fact, news reports are recognized by courts as generally *lacking* these required guarantees of trustworthiness. *See Wright v. Montgomery Count*, 2002 U.S. Dist. LEXIS 9442 at *4 (E.D. Pa. May 20, 2002) (*citing Larez v. City of Los Angeles*, 946 F.2d 630, 642-42 (9th Cir. 1991)).

Callaway's cases are inapposite or simply irrelevant. In *Tracinda Corp.*, there was not a hearsay problem. The witness who had the discussions with the CEO, and could testify to the CEO's statements from personal knowledge, was in court. *See* 362 F. Supp. 2d. 487, 504 (D. Del. 2005). Similarly, in *Callaway Golf Co.*, the letter admitted over a hearsay objection was established to have been written by the declarant himself. This was not a case of a reporter purporting to write what he allegedly heard or observed the declarant to say. *See* 2004 U.S. Dist. LEXIS 15498, *5-6. Finally, in *Finch v. Hercules Inc.*, there was no hearsay problem even argued to the Court with respect to the Wilmington New Journal reports permitted into the evidence. The CEO admitted he had made the statements contained in the articles. *See* 1995 U.S. Dist. LEXIS 19805, *35. Thus, the only issue as to those reports was whether they bore any relevance to case. Notably, on the other hand, there was a hearsay problem with respect to a different news article in that case, a *Horizons* article concerning the content of a speech giving by the declarant. The Court addressed that news article and excluded it as inadmissible hearsay. *Id.* at *40-41.

### Relevance

Callaway contends that its golfing news articles are relevant to validity issues. It contends that the articles evidence admissible "praise" of the purported Sullivan inventions. Callaway fails, however, to draw any connections between its proposed exhibits -- mere news reports -- and relevant praise of the Sullivan patents.

None of these articles praise the patents, or refer to them. If the articles praise anything, it is the Pro V1 itself. Further, none of these articles indicate that the praise given to the Pro V1 is the result of practicing the various alleged "inventive" limitations of the patents-in-suit. Only the performance of the ball is praised, as such. That performance may have nothing to do with practicing any of the patents' limitations, and that issue is simply not discussed in any of these articles. There is

---

[3] Federal Rules of Evidence, Rule 807, provides that: "A statement not specifically covered by Rule 803 or 804 **but having equivalent circumstantial guarantees of trustworthiness**, is not excluded by the hearsay rule, *if the court determines that* (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement ...." (emphasis added).

The Honorable Sue L. Robinson
December 3, 2007
Page 3

certainly no discussion of low acid ionomers, Shore D hardnesses, flex modulus, cover thickness ranges or the like. Indeed, these are clearly not scientific or artisan journals that sometimes are considered as praise evidence.

"When a patentee offers objective evidence of nonobviousness, there must be a sufficient relationship between that evidence and the patented invention. ... The burden of proof as to this connection or nexus resides with the patentee." *In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir. 1994) ("Although such evidence [of success and praise] is indeed impressive, AST has not shown that it is relevant to the claims at issue and thus entitled to weight."); *see also J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563 (Fed. Cir. 1997); *Craig v. Foldfast*, 504 F. Supp. 2d 1313, 1317 (S.D. Fla. 2007). Callaway has offered no evidence to demonstrate that the praise of the Pro V1 in these articles has any nexus to the features claimed by the Sullivan patents.[4]

Just as importantly, and even clearer, none of the hearsay news reporter "praise" is praise from a fellow inventor or one skilled in the art. Nor can Callaway establish that any of the news reporters were artisans in golf ball design, or indeed had any meaningful appreciation of the technology of the Pro V1 as compared to the prior art. Relevant praise as a secondary consideration is not the praise of users and reporters, but of those skilled in the art of the invention; as the Federal Circuit put it, praise "by contemporaries skilled in the field." *See Pechiney Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773, 801 (D. Del. 2002) ("In determining whether an invention is non-obvious, there are at least nine objective factors . . . that may be considered: ... (8) praise of the invention ***by those in the field*** . . . ."); *Vulcan Engineering Co. v. Fata Aluminum*, 278 F.3d 1366, 1373 (Fed. Cir. 2002) ("Appreciation ***by contemporaries skilled in the field of the invention*** is a useful indicator of whether the invention would have been obvious to such persons at the time it was made."). Media hype is no substitute for truly meaningful evidence of non-obviousness.

Also, as to the magazine article entitled "Great Leaps Forward," Callaway claims that the article is not hearsay because "it does not matter whether the products identified in the article were in fact great advances." Yet as evidence of secondary considerations, the truth of these assertions *do matter*. The great advance must indeed exist, and the advance must be one over and above the prior art technology. Otherwise, the probative value of such evidence to secondary considerations -- especially where the praise is from non-artisans who would know nothing of what was taught in the prior art -- is nil.

Lastly, Callaway erroneously states as support for why it should be permitted to use these articles that Acushnet "prevented Callaway Golf from taking Mr. Uihlein's deposition." (*See* D.I. 363 n.3). This is belied by Callaway's own correspondence, however. In fact, Callaway sought the deposition of Acushnet's CEO, only to be slowed by the Court's requirement to offer a proffer and justify a CEO deposition. Callaway put its proffer to the Court, but before the

---

[4] Many of the articles praise the Pro V1 for its solid core performance over prior wound core Titleist golf balls. The claims of the patents-in-suit, however, are indifferent as to the core being solid versus wound. The patents-in-suit invented nothing about the core.

The Honorable Sue L. Robinson
December 3, 2007
Page 4

Court could rule on the issue, Callaway decided to drop its request for Mr. Uihlein's deposition in exchange for Acushnet agreeing not to call him at trial and giving Callaway deposition time with another Acushnet employee, Bill Young, after the fact discovery cut-off date. (*See* Ex. A hereto, July 31, 2007 letter from Mr. Denning to Mr. Rosenthal, attached.)  Callaway therefore traded away its opportunity to take the deposition of Mr. Uihlein.  At this stage, it would be patently unfair to allow Callaway to introduce hearsay statements of Mr. Uihlein when Callaway itself traded away his deposition for other strategic benefits.

     Acushnet asks the Court to exclude Callaway from admitting or using the evidence proffered.

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH/msb
834926 / 30030

cc:    Clerk of the Court (via hand delivery)
       Counsel of Record (via electronic filing)

# EXHIBIT A

**From:** Roger Denning [denning@fr.com]
**Sent:** Tuesday, July 31, 2007 11:49 PM
**To:** Rosenthal, Brian
**Cc:** Roger Denning
**Subject:** Agreement re Bill Young deposition

Brian:

This e-mail memorializes our agreement from this evening. Please let me know if you disagree.

1. Acushnet will produce Bill Young for deposition in the near future at a mutually agreeable date and location;
2. Callaway Golf will drop its request to the Court to order the deposition of Wally Uihlein;
3. Callaway Golf will not pursue the deposition of Mr. Uihlein in this case unless Acushnet intends to call Mr. Uihlein at trial, in which case Acushnet agrees to make Mr. Uihlein available for deposition before trial;
4. Callaway Golf will not call Mr. Uihlein at trial unless Acushnet does so or informs Callaway Golf that it intends to do so;
5. Callaway Golf's deposition of Mr. Young will, for the most part, relate to the topics generally discussed in Callaway Golf's papers seeking Mr. Uihlein's deposition (i.e., Callaway Golf is not looking for a fishing expedition), and Callaway Golf will, in good faith, attempt to limit the length of the deposition to approximately 5 hours.

Thanks.

--roger

****************************************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

****************************************************************************