# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

MUNICH

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

**Thomas L. Halkowski**
302 778-8407

Email
halkowski@fr.com

**VIA ECF**

December 3, 2007

The Honorable Sue L. Robinson
United States District Court
for the District of Delaware
844 King Street
Wilmington, DE  19801

Re:    *Callaway Golf Company v. Acushnet Company*
        USDC-D. Del. - C. A. No. 06-91 (SLR)

Dear Judge Robinson:

Today Acushnet and Callaway Golf filed a joint stipulation stating that the accused Acushnet products infringe all of the asserted claims of the patents in suit.  This removes the issue of infringement from the upcoming trial set to begin on December 5th.  Because the Court bifurcated the issue of damages during the pretrial conference, and subsequently bifurcated the issue of willfulness as well, the sole issue remaining to be tried during the upcoming trial is validity.  This letter addresses a few issues raised by the parties' infringement stipulation and responds to Acushnet's letter of today regarding a related issue concerning the scope of the trial.

## Length of Trial

With regard to the length of the trial, the Court had previously allotted each side 19 hours to address the issues of infringement, willfulness and validity.  Given what now remains (validity only), Callaway Golf respectfully suggests that ten hours per side would be more than adequate for trial.  Because Acushnet disagrees with this proposal, Callaway Golf respectfully seeks the Court's guidance.

## Jury Instructions Re Infringement Stipulation

With regard to presenting the fact of Acushnet's infringement to the Jury, Callaway Golf attaches as Exhibits A and B its proposed preliminary and final jury instructions, which track the language used by the Court in another case[1] where infringement similarly had been determined prior to  trial.  During meet and confer, Acushnet has disputed whether the jury needs to know about the fact of  infringement as part of the preliminary jury instructions.  Acushnet, however, is mistaken.  For example, the

---

[1]  *See* Exhibits C and D (excerpts from preliminary and final jury instructions provided in *Intuitive Surgical & IBM v. Computer Motion, Inc.*, No. 01-203-SLR (D.Del. August 19, 2002)).

Fɪsʜ & Rɪᴄʜᴀʀᴅsᴏɴ ᴘ.ᴄ.

The Honorable Sue L. Robinson
December 3, 2007
Page 2

infringement instruction is essential for establishing the required nexus between the claims and the accused products, which in turn is a necessary predicate for evidence of secondary considerations such as commercial success. The absence of an instruction, moreover, invites juror confusion and speculation that is unnecessary. Thus, Callaway Golf respectfully requests that the suggested preliminary jury instruction regarding infringement attached as Exhibit A be substituted in lieu of the first paragraph, the "Summary of Issues", and the "Burden of Proof" portions of the preliminary jury instructions distributed by the Court at the pretrial conference. The proper placement of the proposed Final Jury Instruction attached as Exhibit B could be addressed during the charging conference.

## No Case or Controversy Re Claims 1 and 2 of the '130 Patent

Acushnet submitted a letter today to support its demand that the validity of claims 1 and 2 of the '130 patent be tried – despite the exclusion of these claims from the infringement stipulation filed today, and despite Callaway Golf's clear representations that these claims are no longer being asserted against any of the products at issue in this case (and cannot be asserted in any future proceeding against the products at issue in this case). *See, e.g.,* Pretrial Conference Transcript dated November 20, 2007, at 8:4-10. Acushnet's request lacks merit for a number of reasons.

First, the issue of "representative" claims was specifically discussed at the pretrial conference and counsel for Callaway Golf confirmed that Callaway Golf was ***not*** selecting merely "representative" claims while seeking to preserve the right to try other claims from these patents later against the products at issue. Callaway Golf has instead simply chosen the claims to be tried – period. Because no other claims from these patents will, or can, be asserted against the products at issue in this case in a future proceeding, Acushnet's "representative" claims argument misses the point.[2]

Second, and perhaps most importantly, given the representations of Callaway Golf's counsel to this Court, no jurisdiction exists for the court to proceed to address claims 1 and 2 of the '130 patent in any event.[3]

---

[2] Moreover, the "different defense" Acushnet wants to raise focuses primarily upon anticipation of 130 claims 1 and 2, which has been foreclosed by the Court's summary judgment ruling. Anticipation is no longer an issue for trial. Callaway Golf plans shortly to submit a response to Acushnet's improper Motion for Reconsideration, confirming the Court's rationale and explaining why the decision should not be reconsidered.

[3] Even if Acushnet had brought a claim for declaratory judgment – which it chose not to do – Callaway Golf's decision to pursue only certain claims from the '130 patent, and to forego its claims of infringement regarding claims 1 and 2 of the '130 patent, would extinguish any

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
December 3, 2007
Page 3

Finally, it is telling that Acushnet cites no authority on the point that matters here: whether a defendant, who has failed to bring a declaratory judgment counterclaim, can later force the *plaintiff* to choose which claims to assert. In the two cases Acushnet cites, the representative claims were representative of the *asserted* claims chosen by the plaintiff. *See, e.g., Miles Laboratories, Inc. v. Shandon Inc*., 997 F.2d 870, 879 (Fed. Cir. 1993) (a stipulation that "claim 1 is the broadest claim and can be considered to be representative of the claims in this patent" made claim 1 representative of dependent claims 2-7); *Panduit Corp. v. Dennison Mfg. Co., Inc*., 836 F.2d 1329, 1330 (Fed. Cir. 1987) (pretrial stipulation designating representative claims meant that the "resolution of the issues with respect to a representative claim of a patent is a resolution with respect to *all asserted claims* of that patent") (emphasis added).

In contrast, here Callaway Golf has made clear that it no longer is asserting claims 1 and 2 of the '130 patent against any of the products at issue. Indeed, the parties' infringement stipulation makes clear that only claim 5 of the '130 patent remains at issue. Therefore, Acushnet has, not surprisingly, failed to identify any relevant case law to support its demand that the upcoming trial include two claims over which there no longer is a case or controversy.

Callaway Golf is available for a telephone conference at the Court's convenience to discuss these issues.

Respectfully,

*/s/ Thomas L. Halkowski*

Thomas L. Halkowski

---

case or controversy regarding these claims. *See, e.g., Grain Processing Corp. v. American Maize-Products Co*., 840 F.2d 902, 905-906 (Fed. Cir. 1988) (affirming the district court's holding that no case or controversy existed for claims as to which the patent holder had dropped infringement charges prior to trial); *Stearns v. Beckman Instruments, Inc*., 737 F.2d 1565, 1567 (Fed. Cir. 1984) (vacating the district court's judgment invalidating claims 1-7 and 10 of the patent at issue, as the claims were properly "removed from consideration" when the patent holders chose to assert only claims 8 and 9). Further, the form of Callaway Golf's assertion, *i.e.*, through statements of counsel, is legally adequate to moot any case or controversy. *See Super Sack Mfg. Corp. v. Chase Packaging Corp*., 57 F.3d 1054, 1059 (Fed. Cir. 1995) (affirming district court's dismissal of defendant's invalidity counterclaim for lack of jurisdiction, where patentee promised not to assert its patents against defendant via its counsel's statements in motions and briefs).

# EXHIBIT A

Preliminary Jury Instruction:

      This is a civil case. Callaway Golf contends that Acushnet manufactures and sells golf balls that infringe the asserted patents in suit. The parties have stipulated that Acushnet infringes each of the patents-in-suit. In particular, the parties have stipulated that Acushnet infringes the patents-in-suit by making and selling the following golf balls under the Titleist brand: the Titleist Pro V1, the Titleist Pro V1x, and the Titleist Pro V1*[Star]. Therefore, you will not be asked to determine whether these products infringe the patents in suit.

      As a defense to its infringement, Acushnet is urging that the patents in suit are invalid. A patent, however, is presumed to be valid. Accordingly, Acushnet has the burden of proving by clear and convincing evidence that each of the patents in suit are invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.

# EXHIBIT B

Final Jury Instruction:

    The parties have stipulated that Acushnet infringes:

        Claims 1, 4 and 5 of U.S. Patent No. 6,210,293;
        Claims 1, 2 and 3 of U.S. Patent No. 6,503,156;
        Claim 5 of U.S. Patent No. 6,506,130; and
        Claims 1 and 3 of U.S. Patent 6,595,873.

I will refer to these as the asserted claims of the patents-in-suit. In particular, the parties have stipulated that Acushnet infringes the patents-in-suit by making and selling the following golf balls under the Titleist brand: the Titleist Pro V1, the Titleist Pro V1x, and the Titleist Pro V1*[Star]. Therefore, you will not be asked to determine whether these products infringe the asserted claims. No other claims are at issue in this suit.

# EXHIBIT C

Page 49

1   JUROR NO. 1: Evening. Morning and evening.
2       THE COURT: Right. All right. Well, this is
3   the question: You have two choices. Obviously, if you
4   need your medicine, you'd need to go home tonight. If
5   that's too much of a commute, then tomorrow, when you come,
6   we would pay for a hotel room. But the point is, if those
7   options are a problem, and you didn't bring it to our
8   attention, then we've got to make up our mind what we do
9   about that now.
10      So is that a do-able thing, for you to go home
11  tonight, take your medicine, then make up your mind
12  whether you can commute every day or whether for the next
13  few days, you'd come prepared to stay in a hotel?
14      A JUROR: Well, I have a full-time job and I'm
15  200 miles round trip here.
16      THE COURT: All right. Why don't you retake
17  your seat and I will talk -- well, first of all, do any of
18  you have any questions of this juror?
19      MR. SCHERKENBACH: I just want to make sure you
20  understand that you can go home every night. You don't
21  have to stay hear the whole time.
22      A JUROR: Yeah. I can go home every night, but
23  it's 200 miles round trip and I'm not --
24      MR. SCHERKENBACH: I just wanted to make sure
25  you understood that. That's all. Thank you.

Page 50

1       THE COURT: All right. Thank you very much,
2   sir. Why don't you retake your seat for a moment?
3       MR. SCHERKENBACH: It always happens.
4       THE COURT: How many times did I ask that
5   question?
6       I mean, I don't know. We could keep him here.
7   The question is whether you want to keep him or whether
8   you think we'd be better off with seven jurors.
9       MR. SCHERKENBACH: In a heartbeat, I say go
10  with 7. He's the foreperson, so if he does not want to
11  be here, he's not going to pay attention. I would rather
12  have 7 than have him as the foreperson.
13      MR. WEIR: I guess I have a problem, too. I
14  think you should probably you excuse him.
15      THE COURT: All right. Luckily, it's not a
16  two- or three-week trial. Hopefully, we won't lose more;
17  than one more before the end. All right.
18      (End of sidebar conference.)
19          - - -
20      THE COURT: Juror No. 24, you're excused.
21      (The juror then left the courtroom.)
22      THE COURT: I guess if the jurors in the front
23  row care to move over once more and hopefully we won't lose
24  any more. We need at least six of you to deliberate in a
25  civil case.

Page 51

1       All right. Now that you have been sworn, members
2   of the jury, I have the following preliminary instructions
3   for guidance and your role as jurors in this case.
4           - - -
5       THE COURT (Continuing): The case is an action
6   for patent infringement arising under the patent laws of
7   the United States. The plaintiffs are Intuitive Surgical,
8   Inc., which I will refer to as Intuitive and International
9   Business Machines Corporation, which I will refer to as
10  IBM. The defendant is Computer Motion, Inc., which I will
11  refer to as Computer Motion.
12      IBM is the named assignee of United States
13  Patent No. 6,201,984, which I will refer to as the '984
14  patent. Intuitive has a license from IBM under the '984
15  patent. A copy of the '984 patent has been given to you
16  along with these preliminary instructions.
17      We have notebooks, which you don't have at the
18  moment, but the notebooks that you will be given have a
19  copy of these instructions, have a copy of the patent, and
20  have notes for you to take notes, if you choose to during
21  the trial, and you will receive those as soon as we excuse
22  you.
23      The parties have stipulated that Computer
24  Motion literally infringes Claims 1, 2, 6, 13, 14, 18, 19,
25  21, 22, 34, 43, 44, 48 and 50 of the '984 patent and no

Page 52

1   other claims are now at issue. Therefore, you will not
2   be asked to determine whether Computer Motion's products
3   infringe the '984 patent. Intuitive and IBM seek damages
4   for Computer Motion's infringement of the '984 patent.
5   Intuitive and IBM also contend that Computer Motion's
6   infringement of the '984 patent was willful. Invalidity
7   is a defense to a charge of infringement. In this action,
8   Computer Motion contends that the '984 patent is invalid.
9       And this is a little background about patent
10  cases.
11      The United States constitution, Article I,
12  Section 8, grants the Congress of the United States the
13  power to enact laws to promote the progress of science and
14  useful arts by securing for limited times to authors and
15  inventors the exclusive right to their respective writings
16  and discoveries. Pursuant to this power, Congress has
17  enacted the federal patent law and established the Patent
18  Office.
19      Whenever a patent is issued by the Patent
20  Office, the patent law gives the patent owner the right to
21  exclude others from making, using, selling, or offering to
22  sell the invention, without authorization, throughout the
23  United States for a period of time from the date the
24  patent is issued.
25      I will next briefly describe the parts of a

# EXHIBIT D

**THE PARTIES' STIPULATION ON INFRINGEMENT**

The parties have stipulated that Computer Motion literally infringes claims 1, 2, 6, 13, 14, 18, 19, 21, 22, 34, 43, 44, 48 and 50 of the '984 patent, which I will refer to as the "asserted claims." Therefore, you will not be asked to determine whether Computer Motion's products infringe the asserted claims. No other claims are at issue in this case.