

**Potter Anderson & Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Attorney at Law
rhorwitz@potteranderson.com
302 984-60277 Direct Phone
302 658-1192 Fax

December 4, 2007

**VIA ELECTRONIC FILING**

The Honorable Sue L. Robinson
United States District Court
   for the District of Delaware
844 King Street
Wilmington, DE 19801

    Re:    **Callaway Golf Company v. Acushnet Company**
            **C.A. No. 06-91-SLR**

Dear Judge Robinson:

      We write to address the various issues raised by Callaway's December 3, 2007, letter in light of the parties' agreement to stipulate to infringement. Callaway's letter addresses three issues: 1) whether the length of the trial should be substantially shortened in light of the stipulation of infringement; 2) the nature of jury instructions to address the stipulation; and 3) whether claims 1 and 2 of the '130 patent should be included in the presentation to the jury. Acushnet addresses each of these issues below.

**Length of Trial**

      Acushnet respects the time of the Court and the jurors, and will make every effort to make its presentation of evidence efficient and to the point. On the other hand, Acushnet disagrees with Callaway that the length of the trial should be substantially shortened due to the bifurcation of willfulness and stipulation on infringement. This case has always principally been about the validity of the patents-in-suit, and the stipulation on infringement and bifurcation of willfulness has not changed that emphasis.

      Acushnet's non-infringement defense was always focused on one very discrete issue, namely whether Callaway could prove that substantially all of the accused products met the Shore D hardness limitations of the asserted claims. Thus, while the stipulation of infringement reduces somewhat the amount of evidence that must be presented to the jury, the effect of the stipulation on the jury presentation is not as great as it might otherwise seem.

      Acushnet respectfully submits that the time provided for its presentation to the jury should not be reduced substantially from the 19 hours originally provided, in view of the nature of the invalidity defense it intends to present. While Callaway has listed only three live witnesses (potentially four if the Court allows Mr. Mickelson's testimony), Acushnet plans to

The Honorable Sue L. Robinson
December 4, 2007
Page 2

bring seven live witnesses to address the invalidity issues. This is due in large part to the broad assertions of secondary considerations, such as commercial success, that have been the principal focus of Callaway's response to Acushnet's invalidity case. Acushnet could not fairly address those issues, faced with the heightened burden of proof on invalidity, under Callaway's limited proposal of 10 hours per side.

Thus, while Acushnet intends to present its case as efficiently and briefly as possible, we respectfully submit that the 19 hours currently allotted to each side should not be reduced below 15 hours. We make this suggestion after careful thought and not as a tactic to obtain some compromise number between 10 and 15 hours. Anything less than 15 hours would significantly prejudice Acushnet's ability to fairly present its case.

**Jury Instructions**

Callaway's letter proposes preliminary and final jury instructions to account for the parties' stipulation on the infringement issue and bifurcation of willfulness. While Acushnet agrees that it is appropriate to modify the preliminary instructions in light of the stipulation and bifurcation, Callaway's proposal substantially rewrites the Court's preliminary instructions on validity, and also adds unnecessary detail to the preliminary instructions.

Acushnet submits that there is no need to provide the specific details of the infringement stipulation, including identification of specific products, to the jury at the preliminary instruction stage. Instead, the jury need only be informed that infringement is not an issue they need to decide, and that the only issue for them to decide is validity. While the identification of specific products might be relevant to Callaway's claim of nexus to prove commercial success, Acushnet submits that the appropriate place for such specifics is in the final jury instructions when the jury can place the products in the context of the evidence presented at trial.

The language of the preliminary jury instruction used by the Court in *Intuitive Surgical & IBM v. Computer Motion, Inc.*, which Callaway submits, did not include the details of which products infringed the asserted claims. Instead, that instruction stated merely that the parties stipulate to infringement of the asserted claims and that the jury need not decide that issue. A similar instruction is appropriate here.

To that end, Acushnet respectfully attaches as Exhibit 1 a proposed modification of the Court's preliminary instructions, remaining true to the Court's original language as much as possible, to account for the removal of the infringement stipulation and willfulness bifurcation. Acushnet has used language similar to that used in the *Intuitive Surgical* case that Callaway cited to address the stipulation on infringement. This instruction would replace the entirety of page 2 of the Court's preliminary jury instructions distributed at the pretrial conference.

With respect to the Final Jury Instructions, Acushnet agrees that it is appropriate to read the parties' stipulation on infringement to the jury, along with any other stipulations that have been made at that time (including the stipulated facts that are set forth in the Pretrial Order). The Final Jury Instruction Callaway proposes, however, is not the stipulation the parties entered into.

The Honorable Sue L. Robinson
December 4, 2007
Page 3

For example, while the parties stipulated that all asserted claims are infringed by the Pro V1, the parties did not stipulate that all asserted claims are infringed by the Pro V1x and Pro V1* golf balls. D.I. 367. Acushnet attaches as Exhibit 2 the precise language of the paragraphs of the stipulation it submits should be read to the jury as part of the stipulations section of the Final Jury Instructions.

### **Inclusion of Claims 1 and 2 of the '130 Patent**

Callaway argues that it should be allowed to unilaterally withdraw claims 1 and 2 of the '130 patent on the eve of trial. Acushnet disagrees.

Issue on these claims has been joined. The Court has ruled on summary judgment with respect to anticipation of these claims, which Acushnet has asked the Court to reconsider. Even if the Court does not reconsider its summary judgment rulings, Acushnet's obviousness defense on those claims is substantially different than its defense on the other asserted claims, since claims 1 and 2 do not require the use of polyurethane. Given that there is an outstanding ruling that the claims are not anticipated, it would prejudice Acushnet if it were precluded from arguing to the jury that the claims are obvious.

Callaway complains that Acushnet is trying to force Callaway to litigate claims it does not want to assert. It was Callaway, though, that asserted these claims and vigorously litigated them to this point, and Callaway should not be allowed, days before trial, to withdraw them after forcing Acushnet to litigate them for the last two years. Callaway has asserted claims 1 and 2 of the '130 patent since the start of this case, and has obtained summary judgment on them. Acushnet submits that there is an active controversy over the validity of these claims and Acushnet should have the opportunity to litigate them.

Callaway's arguments with respect to declaratory judgment jurisdiction are inapposite. Acushnet does not have a declaratory judgment claim in this case. Thus, whether the Court would have jurisdiction over such a claim is beside the point. Instead, the issue is whether the Court, in its discretion, should allow Callaway to make this last minute decision to pull the rug out from under Acushnet on its ability to finish litigating these claims.

Callaway's eleventh-hour request to withdraw its infringement assertion on claims 1 and 2 of the '130 patent implicates the same policy concerns behind Fed. R. Civ. P. 41(a), which requires the Court's permission to dismiss claims after an answer has been filed. *See Ferguson v. Eakle*, 492 F.2d 26 (3d Cir. 1974) (reversing the trial court's decision to allow plaintiff to dismiss its complaint on the eve of trial). Since Callaway has forced Acushnet to litigate these

The Honorable Sue L. Robinson
December 4, 2007
Page 4

claims all they way up to trial, it should not now be permitted to preclude Acushnet from trying to obtain favorable disposition on those claims by the jury.

> Respectfully,
>
> */s/ Richard L. Horwitz*
>
> Richard L. Horwitz

RLH/nmt
835250 / 30030
Enclosures

cc:  Clerk of the Court (via hand delivery)
  Counsel of Record (via electronic filing)

# EXHIBIT 1

EXHIBIT 1 – ACUSHNET'S PROPOSED NEW PAGE TWO TO THE
PRELIMINARY JURY INSTRUCTION

This is a civil case. Callaway Golf contends that Acushnet manufactures and sells golf balls that infringe the patents in suit. The parties have stipulated as to infringement. Thus, you will not be asked to determine whether Acushnet's products infringe the patents-in-suit. Instead, Acushnet contends that the patents in suit are invalid.

In this case, you must decide several things according to the instructions that I shall give you at the end of the trial. Those instructions will repeat this summary and will provide more detail.

In essence, you must decide whether Acushnet has proven, by clear and convincing evidence that the patents in suit are invalid.

# EXHIBIT 2

EXHIBIT 2 – ACUSHNET'S PROPOSED FINAL JURY INSTRUCTION REGARDING INFRINGEMENT

1. Callaway Golf currently owns U.S. Patent Nos. 6,210,293; 6,503,156; 6,506,130; and 6,595,873 ("the patents-in-suit") and has owned them at all times pertinent to this case.

2. Acushnet's Titleist Pro V1 golf balls are covered by and infringe:

Claims 1, 4 and 5 of U.S. Patent No. 6,210,293;
Claims 1, 2, and 3 of U.S. Patent No. 6,503,156;
Claim 5 of U.S. Patent No. 6,506,130; and
Claims 1 and 3 of U.S. Patent No. 6,595,873.

3. Acushnet's Titleist Pro V1x and Pro V1* golf balls are covered by and infringe:

Claims 4 and 5 of U.S. Patent No. 6,210,293;
Claims 1, 2 and 3 of U.S. Patent No. 6,503,156;
Claim 5 of U.S. Patent No. 6,506,130; and
Claims 1 and 3 of U.S. Patent 6,595,873.