IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | |
| Plaintiff, | |
| v. | C. A. No. 06-91 (SLR) |
| ACUSHNET COMPANY, | |
| Defendant. | |

**CALLAWAY GOLF'S RESPONSE TO ACUSHNET'S BENCH MEMORANDUM
REGARDING THE ADMISSIBILITY OF DX-15 (EX PARTE SULLIVAN DECISION)**

This Court previously decided that it was not inclined to allow any reference to the *Ex Parte Sullivan* decision during this trial. Acushnet now asks this Court to reconsider its decision, using Callaway Golf's opening statement as an excuse to "open the door" to this irrelevant and prejudicial evidence. For all of the reasons previously considered dispositive by this Court, and for reasons similar to those supporting the exclusion of the reexamination, the Court should continue to preclude any reference to the *Ex Parte Sullivan* decision during this trial.

**A.    *Ex Parte Sullivan* is irrelevant because it was decided according to different legal standards and burdens of proof than those that must be applied by this Court.**

Acushnet argues that the *Ex Parte Sullivan* decision is "highly relevant" to the validity of the patents-in-suit. As this Court has already acknowledged, however, the legal standards and burdens of proof that apply in the Patent Office are different from those used in this Court. The Patent Office operates on a limited record, and must give claims their broadest reasonable interpretation. Further, the Patent Office evaluates validity under a mere preponderance of the evidence standard. In contrast, Federal district courts are bound to construe claims in view of the specification and prosecution history. Also, in district court proceedings, issued patents are

accorded a statutory presumption of validity, and a party asserting invalidity must establish

invalidity of each claim by clear and convincing evidence.  Decisions by the Patent Office,

therefore, have minimal relevance in a jury trial and a very high likelihood of confusing the

jury.[1]

As the Court noted during the pretrial hearing, this is very similar to the reexamination

issue.  In that context, the Federal Circuit has clearly stated that, "the grant by the examiner of a

request for reexamination is **not probative** of unpatentability.  The grant of a request for

reexamination … **does not establish a likelihood of patent invalidity**."  *Hoechst Celanese*

*Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) (emphasis added).  Similarly, a

written opinion by the Board of Patent Appeals is simply not probative of whether the patents in

suit are new or non-obvious using the standards and burdens that must be applied by the jury in

this proceeding.

> **B.    The Hebert Patent provides relevant evidence regarding what persons skilled in the art believed to be novel at the relevant time, and is therefore relevant to objective considerations of non-obviousness; it is also relevant to the credibility and bias of Acushnet witnesses such as Mr. Morgan.**

Acushnet argues that the *Ex Parte Sullivan* decision is "especially relevant" in light of

Callaway Golf's statements regarding the Hebert patent.  Acushnet mischaracterizes Callaway

Golf's position.  Callaway Golf simply pointed out to the jury that Acushnet's own employees

---

[1]    It is also worth noting that ***all*** of the claims at issue in this suit have a Shore D hardness limitation for the outer cover layer.  As is now evident from today's testimony of Acushnet's own witness, such tests are done as matter of practice "on the ball" – precisely in the same manner as this Court has interpreted the asserted claims.  *See* Trial Tr. at 464:9-21. Yet, notwithstanding the arguments of Acushnet's counsel today regarding the alleged "nearly identical" claims at issue in *Ex Parte Sullivan*, Trial Tr. at 421:3-8, *none* of those claims (attached hereto as Ex. A) had a Shore D hardness limitation on the outer cover layer. Thus, nowhere in the *Ex Parte Sullivan* decision is there any consideration of whether the prior art disclosed a golf ball with the "on the ball" Shore D hardness limitation which is critical in this case.

chose to pursue a patent that involved a three-piece, solid-core golf ball with a cast polyurethane cover, and believed that **concept** to be new and non-obvious over precisely the same prior art on which Acushnet now relies to invalidate the Sullivan patents, which involve the same concept but require many additional limitations. Therefore, regardless of the specifics of the Hebert claims, which Callaway Golf has not gone into and need not, it is highly relevant to the validity issues in this case that Acushnet's own inventors believed the "veneer concept" to be new and non-obvious, and that they did so at roughly the same time (allegedly 1995) as the priority date of the Sullivan patents – regardless of whatever additional limitations appear in the claims of the Hebert patent or the Sullivan patents. Indeed, Callaway Golf further pointed out that all of the same various pieces of art that Acushnet raises in this proceeding were also known to the Acushnet engineers who believed the veneer concept was novel. This is the best possible evidence that those of skill in the art believed the concept of a three-piece, solid-core, polyurethane-covered ball to be a novel and non-obvious idea. It impeaches Acushnet's position now, and much of the testimony of Mr. Morgan, suggesting that such an idea is obvious.

Regarding Acushnet's request that this Court "exclude all of Callaway's 'Hebert patent' evidence," Acushnet already agreed before trial that this patent could be used during Callaway Golf's opening statements, and that it could come into evidence. Both have occurred. It is far too late for Acushnet to now seek to exclude this evidence, especially after Callaway Golf relied on the fact that Acushnet dropped its objection and used the Hebert patent in its opening statements. Not surprisingly, Acushnet cites no authority for the proposition that a party who agrees to the admission of a piece of evidence can retroactively scrub the record of that

evidence, as well as related evidence which was elicited or admitted as a result of the initial piece of evidence, if it later has a change of heart.

Finally, whether or not Acushnet should have preserved an objection to the Hebert patent has nothing to do with the admissibility of the *Ex Parte Sullivan* decision. Among other things, as Callaway Golf pointed out to the Court during discussion of the issue today, the two examiners who wrote *Ex Parte Sullivan*[2] are not testifying in this trial, so their credibility and beliefs are not at issue. Nor are they people of skill in the golf ball art. Therefore, even apart from the reasons noted above for excluding a patent office decision such as *Ex Parte Sullivan*, comparing the *Ex Parte Sullivan* dispute to the Hebert dispute is comparing apples and oranges. Regardless of the dispute over the Hebert patent, *Ex Parte Sullivan* is still legally irrelevant to any issues in this case, would only confuse the jury, and Acushnet's request that this Court reconsider its previous ruling should be denied.

---

[2] *Ex Parte Sullivan* was a 2-1 split decision.

Dated:  December 6, 2007          FISH & RICHARDSON P.C.

By: */s/  Thomas L. Halkowski*
    Thomas L. Halkowski (#4099)
    919 N. Market Street, Suite 1100
    P.O. Box 1114
    Wilmington, DE 19899-1114
    Tel:  (302) 652-5070
    Fax:  (302) 652-0607

    Frank E. Scherkenbach
    225 Franklin Street
    Boston, MA 02110-2804
    Tel:  (617) 542-5070
    Fax:  (617) 542-8906

    David J. Miclean
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Tel:  (650) 839-5070
    Fax:  (650) 839-5071

    Roger A. Denning
    12390 El Camino Real
    San Diego, CA 92130
    Tel: (858) 678-5070
    Fax:  (858) 678-5099

    **ATTORNEYS FOR PLAINTIFF**
    **CALLAWAY GOLF COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2007, I electronically filed this document with the

Clerk of the Court using ECF which will send electronic notification on opposing counsel at

the following addresses:

Richard L. Horwitz, Esq.                    Attorneys for Defendant ACUSHNET
  rhorwitz@potteranderson.com          COMPANY
David E. Moore, Esq.
  dmoore@potteranderson.com
Potter Anderson & Corroon LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19801
Telephone:  (302) 984-6000


Joseph P. Lavelle, Esq.                     Attorneys for Defendant ACUSHNET
  lavellej@howrey.com                   COMPANY
Brian A. Rosenthal, Esq.
  rosenthalb@howrey.com
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone:  (202) 383-6989


*/s/ Thomas L. Halkowski*_____
Thomas L. Halkowski

# EXHIBIT A

The opinion in support of the decision being entered today was not written
for publication and is not binding precedent of the Board.

Paper No. 17

## UNITED STATES PATENT AND TRADEMARK OFFICE

### BEFORE THE BOARD OF PATENT APPEALS
### AND INTERFERENCES

> **MAILED**
>
> JAN 3 0 2004
>
> U.S. PATENT AND TRADEMARK OFFICE
> BOARD OF PATENT APPEALS
> AND INTERFERENCES

Ex parte MICHAEL J. SULLIVAN

Appeal No. 2004-0242
Application No. 09/873,594

ON BRIEF

Before GARRIS, NASE, and CRAWFORD, Administrative Patent Judges.

NASE, Administrative Patent Judge.

### DECISION ON APPEAL

This is a decision on appeal from the examiner's final rejection of claims 1, 4 to

7, 10 to 13 and 16 to 18, which are all of the claims pending in this application.

We AFFIRM.

AC 0015597

DX-15

Appeal No. 2004-0242                                                    Page 2
Application No. 09/873,594

## BACKGROUND

The appellant's invention relates to golf balls and, more particularly, to improved
standard and oversized golf balls comprising multi-layer covers which have a
comparatively hard inner layer and a relatively soft outer layer such as that produced by
the use of a polyurethane based outer layer. The improved multi-layer golf balls
provide for enhanced distance and durability properties over single layer cover golf balls
while at the same time offering enhanced "feel" and spin characteristics generally
associated with soft balata and balata-like covers of the prior art (specification, p. 1). A
copy of the claims under appeal is set forth in the appendix to the appellant's brief.

The prior art references of record relied upon by the examiner in rejecting the
appealed claims are:

Nesbitt                    4,431,193                    Feb. 14, 1984
Wu                         5,334,673                    Aug. 2, 1994

Claims 1, 4 to 7, 10 to 13 and 16 to 18 stand rejected under 35 U.S.C. § 103 as
being unpatentable over Nesbitt in view of Wu.

Rather than reiterate the conflicting viewpoints advanced by the examiner and
the appellant regarding the above-noted rejections, we make reference to the answer

AC 0015598

Appeal No. 2004-0242
Application No. 09/873,594

(Paper No. 15, mailed June 16, 2003) for the examiner's complete reasoning in support

of the rejections, and to the brief (Paper No. 14, filed March 21, 2003) for the

appellant's arguments thereagainst.

## OPINION

In reaching our decision in this appeal, we have given careful consideration to

the appellant's specification and claims, to the applied prior art references, and to the

respective positions articulated by the appellant and the examiner.  As a consequence

of our review, we make the determinations which follow.

## Claimed Subject Matter

The independent claims on appeal read as follows:

1.   A golf ball comprising:
a core;
an inner cover layer disposed on said core and having a Shore D
hardness of 60, [sic] or greater [,] a thickness of from about 0.10 to about 0.01
inches, and comprising a low acid ionomer resin containing no more than 16%
by weight of an alpha, beta unsaturated carboxylic acid; and
an outer cover layer comprising a polyurethane material.

7.   A golf ball comprising:
a core;
an inner cover layer disposed about said core arid having a thickness of
from about 0.10 to about 0.01 inches, and comprising an ionomeric resin
including no more than 16 % by weight of an alpha, beta-unsaturated carboxylic
acid and having a modulus of from about 15,000 to about 70,000 psi; and
an outer cover layer disposed about said inner cover layer comprising a
polyurethane material.

AC 0015599

Appeal No. 2004-0242                                                    Page 4
Application No. 09/873,594

> 13.   A golf ball comprising;
>        a core;
>        an inner cover layer disposed on said core comprising an ionomer resin;
>    and
>        an outer cover layer disposed about said inner cover layer comprising a
> polyurethane material.

## Teachings of Nesbitt

Nesbitt's invention relates to a golf ball and more particularly to a cover

construction for a golf ball. In the BACKGROUND ART section of the patent (column 1,

lines 9-33), Nesbitt teaches:

> Golf balls having a cover material marketed under the trademark "Surlyn"
> by E. I. du Pont de Nemours and Company of Wilmington, Del., are known in the
> art and such cover compositions generally comprise a copolymer of an olefin and
> at least one unsaturated monocarboxylic acid. Conventional two-piece golf balls
> are comprised of a solid resilient center or core with molded Surlyn covers. The
> cover used is normally a hard, high flexural modulus Surlyn resin in order to
> produce a gain in the coefficient of restitution over that of the center or core.

> In a conventional two-piece golf ball, a hard, high flexural modulus Surlyn
> resin is molded over a resilient center or core. The hard, highly flexural modulus
> Surlyn resin for the cover of a two-piece golf ball is desirable as it develops the
> greatest hoop stress and consequently the greatest coefficient of restitution.

> A two-piece golf ball having a hard, Surlyn resin cover however does not
> have the "feel" or playing characteristics associated with softer balata covered
> golf balls. Heretofore balata covered golf balls have been preferred by most golf
> professionals. If a golf ball has a cover of soft, low flexural modulus Surlyn resin
> molded directly over a center or core, it is found that little or no gain in coefficient
> of restitution is obtained.

AC 0015600

Appeal No. 2004-0242
Application No. 09/873,594

Page 5

Nesbitt then teaches in the DISCLOSURE OF THE INVENTION section of the

patent (column 1, line 36, to column 2, line 9) that:

In accordance with the present invention there is provided a golf ball having a multilayer or two-ply cover construction for a solid resilient center or core wherein the multilayer cover construction involves two stage molded cover compositions over a solid center or core of resilient polymeric material wherein an increased coefficient of restitution is attained and wherein the "feel" or playing characteristics are attained similar to those derived from a balata covered golf ball.

The invention embraces a golf ball and method of making same wherein the ball has a solid center or core of resilient polymeric or similar material covered by a first layer or ply of molded hard, highly flexural modulus resinous material or of cellular or foam composition which has a high coefficient of restitution.

The first layer or ply is provided with a second or cover layer of a comparatively soft, low flexural modulus resinous material or of cellular or foam composition molded over the first layer and core or center assembly. Such golf ball has the "feel" and playing characteristics simulating those of a softer balata covered golf ball.

Through the use of the first ply or layer of hard, high flexural modulus resinous material on the core or center, a maximum coefficient of restitution may be attained. The resinous material for the first ply or layer may be one type of Surlyn marketed by E. I. du Pont de Nemours and Company of Wilmington, Del., and the other ply or cover layer may be of a different type of Surlyn resin also marketed by the same company.

The three-piece golf ball of the invention provides a golf ball in which the coefficient of restitution of the golf ball closely approaches or attains that which provides the maximum initial velocity permitted by the United States Golf Association Rules of two hundred fifty feet per second with a maximum tolerance of two percent, which velocity may be readily attained and the playing characteristics or "feel" associated with a balata covered ball secured while maintaining a total weight of the golf ball not exceeding 1.620 ounces without sacrificing any advantages of a golf ball having a standard Surlyn cover of the prior art or a golf ball having a softer balata cover.

AC 0015601

Appeal No. 2004-0242
Application No. 09/873,594

Page 6

In the BEST MODE FOR CARRYING OUT THE INVENTION section of the

patent (column 2, line 31, to column 3, line 50), Nesbitt teaches:

Referring to the drawings in detail there is illustrated a golf ball 10 which
comprises a solid center or core 12 formed as a solid body of resilient polymeric
material or rubber-like material in the shape of a sphere. Disposed on the
spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of
molded hard, highly flexural modulus resinous material such as type 1605 Surlyn
marketed by E. I. du Pont de Nemours and Company, Wilmington, Del.[1]

This material of the inner layer 14 being a hard, high flexural modulus
resin produces a substantial gain of coefficient of restitution over the coefficient
of restitution of the core or center. An outer layer, ply, lamination or cover 16 of
comparatively soft, low flexural modulus resinous material such as type 1855
Surlyn marketed by E. I. du Pont de Nemours and Company [2] is then re-molded
onto the inner ply or layer 14, the outer surface of the outer layer or cover 16
being of dimpled configuration providing a finished three-piece golf ball.

According to the United States Golf Association Rules, the minimum
diameter prescribed for a golf ball is 1.680 inches and the maximum weight
prescribed for a golf ball is 1.620 ounces. It is therefore desirable to produce a
golf ball having an improved coefficient of restitution to attain an initial velocity for
the golf ball approaching the maximum velocity limit of 255 feet per second, the
maximum limit provided by the United States Golf Association Rules.

The hard, high flexural modulus resin is employed to increase the
coefficient of restitution in order to attain or approach the maximum initial velocity
for the golf ball. The use of a soft low flexural modulus resin provides little or no
gain in the coefficient of restitution and may tend to reduce the coefficient of
restitution thereby adversely affecting the initial velocity factor.

---

[1] As set forth on page 3 of the appellant's specification Type 1605 Surlyn® (now designated
Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid)
ionomer resin having a flexural modulus of about 51,000 psi.

[2] As set forth on page 4 of the appellant's specification Type 1855 Surlyn® (now designated
Surlyn® 9020) is a zinc ion based low acid (10 weight percent methacrylic acid) ionomer resin having a
flexural modulus of about 14,000 psi.

AC 0015602

Appeal No. 2004-0242
Application No. 09/873,594

Page 7

In producing the golf ball of the invention, the density of the center or core may be varied and the relative thicknesses of the layers, plies or laminations 14 and 16 may be varied within limits so that the golf ball weight does not exceed 1.620 ounces, the minimum diameter not less than 1.680 inches, and the ball be capable of an initial velocity approaching 255 feet per second. However, the finished golf ball may be of larger diameter providing the total weight of the ball does not exceed 1.620 ounces.

Thus, by varying the density of the center or core 12 and varying the thicknesses of the plies or layers 14 and 16 of the cover construction, a golf ball may be produced having a total weight not exceeding 1.620 ounces and a minimum diameter of 1.680 inches and having a comparatively high coefficient of restitution, the ball closely approaching or attaining in play the maximum permitted initial velocity of 255 feet per second.

In the golf ball of the invention the thickness of the inner layer or ply 14 and the thickness of the outer layer or ply 16 may be varied to secure the advantages herein mentioned. It is found that the inner layer 14 of hard, high flexural modulus resinous material, such as Surlyn resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches. The thickness of the outer layer or cover 16 of soft, low flexural modulus resin, such as Surlyn type 1855, may be in a range of 0.020 inches and 0.100 inches.

For example, a center or core 12 having a 0.770 coefficient of restitution is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605, to form a spherical body of a diameter of about 1.565 inches. This spherical body comprising the core or center 12 and layer 14 of the hard, high modulus Surlyn resin has a coefficient of restitution of 0.800 or more.

This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then re-molded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin such as Surlyn type 1855. The outer layer of the soft resin is of a thickness of 0.0575 inches. The soft Surlyn resin cover would have about the same thickness and shore hardness of a balata covered golf ball and would have the advantageous "feel" and playing characteristics of a balata covered golf ball.

It is to be understood that the golf ball of the invention may be made of a diameter greater than 1.680 inches without exceeding the total weight of 1.620

AC 0015603

Appeal No. 2004-0242
Application No. 09/873,594                                              Page 8

ounces by varying the thickness of the inner layer or ply 14 and the outer cover layer or ply 16 and secure desired "feel" and playing characteristics.

## Teachings of Wu

Wu's invention relates to golf balls and more particularly to polyurethane covered golf balls made from a polyurethane composition of a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents and difunctional glycols. Wu states (column 1, lines 11-14) that such a golf ball has improved resiliency and shear resistance over golf balls made from conventional polyurethane formulations. Wu teaches (column 1, line 15, to column 2, line 44) that:

Conventionally, golf balls are made by molding a cover about a core that is either a solid one-piece core or a wound core made by winding thin elastic thread about a center. The center is either a solid mass or a liquid-filled envelope which has been frozen prior to winding the thread therearound. Golf balls made from a solid core are referred to conventionally as two-piece balls while those with wound cores are referred to as three-piece balls. Attempts have been made to make a one-piece golf ball, i.e. a solid homogeneous golf ball; however, to date no commercially acceptable one-piece golf ball has been made.

Balata had been used as the primary material for covers of golf balls until the 1960's when SURLYN®, an ionomeric resin made by E.I. dupont de Nemours & Co., was introduced to the golf industry. SURLYN® costs less than balata and has a better cut resistance than balata. At the present time, SURLYN® is used as the primary source of cover stock for two-piece golf balls. The problem with SURLYN®-covered golf balls, however, is that they lack the "click" and "feel" which golfers had become accustomed to with balata. "Click" is the sound made when the ball is hit by a golf club while "feel" is the overall sensation imparted to the golfer when the ball is hit.

AC 0015604

Appeal No. 2004-0242                                          Page 9
Application No. 09/873,594

It has been proposed to employ polyurethane as a cover stock for golf
balls because, like SURLYN®, it has a relatively low price compared to balata
and provides superior cut resistance over balata. However, unlike
SURLYN®-covered golf balls, polyurethane-covered golf balls can be made to
have the "click" and "feel" of balata.

. . .

It has now been discovered that a polyurethane prepolymer cured with a
slow-reacting curing agent selected from the group of slow-reacting polyamine
curing agents or difunctional glycols produces a golf ball cover that has good
durability and performance. Golf balls made in accordance with the present
invention have been found to have improved shear resistance and cut resistance
compared to golf balls having covers made from either balata or SURLYN®.

Broadly, the present invention is a golf ball product made from a
polyurethane prepolymer cured with a slow-reacting curing agent selected from
the group of slow-reacting polyamine curing agents or difunctional glycols. The
term "golf ball product" as used in the specification and claims means a cover, a
core, a center or a one-piece golf ball. The cover of a golf ball made in
accordance with the present invention has been found to have good shear
resistance, cut resistance, durability and resiliency. Preferably, the polyurethane
composition of the present invention is used to make the cover of a golf ball.


The examiner's rejection

In the rejection of claims 1, 4 to 7, 10 to 13 and 16 to 18 under 35 U.S.C. § 103

(answer, p. 3), the examiner ascertained[3] that Nesbitt discloses all of the claimed

subject matter except for the outer cover of the golf ball comprising a polyurethane

material.  The examiner, in essence, concluded that in view of the teachings of Wu it

---

[3] After the scope and content of the prior art are determined, the differences between the prior art
and the claims at issue are to be ascertained. Graham v. John Deere Co., 383 U.S. 1, 17-18, 148 USPQ
459, 467 (1966).

AC 0015605

Appeal No. 2004-0242                                                Page 10
Application No. 09/873,594

would have been obvious to one skilled in the art to have modified Nesbitt's golf ball by

using polyurethane as the outer cover material to increase the durability of the golf ball.


**The appellant's argument**

The appellant argues (brief, pp. 4-7) that the rejection under 35 U.S.C. § 103 is

erroneous since the applied prior art, absent the use of impermissible hindsight[4], does

not suggest the subject matter of independent claims 1, 7 and 13. In the appellant's

view there is no motivation[5] in the applied prior art that would have made it obvious to

one of ordinary skill in the art to have modified the golf ball of Nesbitt to arrive at the

subject matter of independent claims 1, 7 and 13.

---

[4] The use of hindsight knowledge derived from the appellant's own disclosure to support an obviousness rejection under 35 U.S.C. § 103 is impermissible. See, for example, W. L. Gore and Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1553, 220 USPQ 303, 312-13 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984).

[5] Most if not all inventions arise from a combination of old elements. See In re Rouffet, 149 F.3d 1350, 1357, 47 USPQ2d 1453, 1457 (Fed. Cir. 1998). Thus, every element of a claimed invention may often be found in the prior art. See Id. However, identification in the prior art of each individual part claimed is insufficient to defeat patentability of the whole claimed invention. See Id. Rather, to establish obviousness based on a combination of the elements disclosed in the prior art, there must be some motivation, suggestion or teaching of the desirability of making the specific combination that was made by the appellant. See In re Dance, 160 F.3d 1339, 1343, 48 USPQ2d 1635, 1637 (Fed. Cir. 1998); In re Gordon, 733 F.2d 900, 902, 221 USPQ 1125, 1127 (Fed. Cir. 1984).

AC 0015606

Appeal No. 2004-0242                                          Page 11
Application No. 09/873,594

## Our Determination

In applying the test for obviousness[6] we conclude that the teachings of Wu clearly would have made it obvious at the time the invention was made to a person of ordinary skill in the art to have modified Nesbitt's golf ball by using polyurethane as the outer cover material to achieve the expected benefits therefrom taught by Wu (i.e., to have the "click" and "feel" of balata; improved shear resistance and cut resistance; durability; and resiliency). Thus, it would have been obvious to one skilled in the art to have modified Nesbitt's three-piece golf ball having a spherical core, an inner layer of type 1605 Surlyn® and an outer layer of type 1855 Surlyn® by replacing the type 1855 Surlyn® in the outer layer with polyurethane as suggested and taught by Wu. Therefore, the teachings of the applied prior art alone (i.e., without the use of impermissible hindsight) are suggestive of the subject matter of independent claims 1, 7 and 13.

In view of our determination above we disagree with the appellant's argument that the rejection under 35 U.S.C. § 103 is erroneous. While the appellant has correctly pointed out the deficiencies of both Nesbitt and Wu on an individual basis, nonobviousness cannot be established by attacking the references individually when

---

[6] The test for obviousness is what the combined teachings of the references would have suggested to one of ordinary skill in the art. See In re Young, 927 F.2d 588, 591, 18 USPQ2d 1089, 1091 (Fed. Cir. 1991) and In re Keller, 642 F.2d 413, 425, 208 USPQ 871, 881 (CCPA 1981).

AC 0015607

Appeal No. 2004-0242                                      Page 12
Application No. 09/873,594

the rejection is predicated upon a combination of prior art disclosures. See In re Merck

& Co. Inc., 800 F.2d 1091, 1097, 231 USPQ 375, 380 (Fed. Cir. 1986). In our view, the

combined teachings of Nesbitt and Wu are clearly suggestive of the claimed subject

matter as set forth above. Lastly, we incorporate the examiner's response to the

appellant's argument (answer, pp. 4-7) as our own.


    For the reasons set forth above, the decision of the examiner to reject

independent claims 1, 7 and 13, and claims 4 to 6, 10 to 12 and 16 to 18 dependent

thereon, under 35 U.S.C. § 103 is affirmed.


                                    CONCLUSION

    To summarize, the decision of the examiner to reject claims 1, 4 to 7, 10 to 13

and 16 to 18 under 35 U.S.C. § 103 is affirmed.


AC 0015608

Appeal No. 2004-0242                                          Page 13
Application No. 09/873,594


No time period for taking any subsequent action in connection with this appeal

may be extended under 37 CFR § 1.136(a).

AFFIRMED


BRADLEY R. GARRIS                          )
Administrative Patent Judge                )
                                           )
                                           ) BOARD OF PATENT
                                           )     APPEALS
                                           )       AND
JEFFREY V. NASE                            ) INTERFERENCES
Administrative Patent Judge                )
                                           )


AC 0015609

Appeal No. 2004-0242                                          Page 14
Application No. 09/873,594

CRAWFORD, Administrative Patent Judge. Dissenting.

I respectfully dissent.

Nesbitt teaches (col. 2, lines 31 to 50) that a three component golf ball having a inner cover comprised of a hard Surlyn and an outer cover of soft Surlyn. Nesbitt teaches that because the inner cover is comprised of hard Surlyn, it increases the coefficient of restitution of the golf ball (col. 2, lines 59 to 63) and because the outer cover is comprised of a soft Surlyn, the golf ball has the feel of a golf ball having a balata cover (col. 1, lines 51 to 56).

Wu discloses a two component golf ball having one cover comprised of polyurethane and teaches that the polyurethane cover improves the shear resistance and cut resistance and improves the durability and resiliency of the golf ball (col. 2, lines 24 to 42).

In my opinion, there is no motivation to combine the teachings of Nesbitt and Wu to arrive at the claimed invention of the appealed claims. While Wu does indeed teach the advantages of a polyurethane cover in a two component golf ball, Wu teaches nothing about the advantages of a polyurethane outer cover in three component golf

AC 0015610

Appeal No. 2004-0242
Application No. 09/873,594

Page 15

balls. In addition, Wu teaches nothing about the use of a polyurethane outer cover in conjunction with a Surlyn inner cover. Even though Nesbitt teaches that the inner cover layer provides an increased coefficient of restitution when used in conjunction with a Surlyn outer cover, there is no teaching in Nesbitt directed to the characteristics of the inner cover layer when used with outer cover layer made of other materials such as polyurethane.

For the foregoing reasons, it is my opinion that the examiner has not established a prima facie case of obviousness regarding the appealed claims.

MURRIEL E. CRAWFORD              )  BOARD OF PATENT
Administrative Patent Judge       )      APPEALS
                                  )        AND
                                  )  INTERFERENCES

AC 0015611

Appeal No. 2004-0242
Application No. 09/873,594

Page 16

MICHELLE BUGBEE
SPALDING SPORTS WORLDWIDE, INC.
425 MEADOW STREET
PO BOX 901
CHICOPEE, MA 01021-0901

JVN/jg

AC 0015612