IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ACUSHNET COMPANY,<br><br>　　　　　Defendant. | C. A. No. 06-91 (SLR) |

**CALLAWAY GOLF'S PROFFER REGARDING THE
REBUTTAL TESTIMONY OF PHIL MICKELSON**

During the pretrial conference, the Court ordered that Callaway Golf provide a proffer at the end of Acushnet's case in chief describing the content of Mr. Mickelson's rebuttal testimony. Because Acushnet's case-in-chief will be completed today, Callaway Golf submits this brief proffer concerning Mr. Mickelson direct, personal knowledge of facts relevant to Acushnet's development and commercialization of the ProV1 ball. Particularly in view of the testimony provided by Mr. Bellis, Mr. Mickelson's testimony is necessary to rebut and clarify a number of factual issues for the jury.

**A. Mr. Mickelson has personal knowledge of facts that are relevant to rebut and clarify critical aspects of Acushnet's story regarding commercialization of the ProV1 golf ball.**

Mr. Mickelson is a professional golfer who had a long history of working with Acushnet – beginning during his days as a collegiate player and continuing through the time period of 1999-2001 when critical decisions were made regarding the ProV1's development and commercialization. As a result of this involvement, Mr. Mickelson has personal knowledge of relevant facts that directly rebut the story Acushnet has told the jury via witnesses and argument of counsel. For example, Mr. Mickelson's testimony will rebut statements made by Mr. Bellis

regarding the development, launch, and industry opinion of Acushnet's ProV1 golf ball, including Mr. Bellis' statements that:

- Acushnet was not concerned about losing PGA tour players in 2000 due to the inferior performance of its wound balls (Tr. at 297:10-20);

- Acushnet was not worried about the threat presented by the patented construction because, even in 2000, 70% of the tour professionals still "preferred" wound balls (Tr. at 217:6-15, 244:21-245:9);

- The market introduction of multi-layered three-piece polyurethane-covered golf balls did not affect the timing of Acushnet's launch of the ProV1 (Tr. at 244:15-245:9);

- The ProV1's success was attributable not to its technology, but to Acushnet's advertising, developments in club design, and more athletic players (Tr. at 249:8-251:2); and

- The professional golfers who left Acushnet in 2000 did so for reasons unrelated to the performance of Acushnet's wound balls (Tr. at 297:10-20).

Mr. Bellis also made a number of statements about Mr. Mickelson himself that were either incomplete or at odds with the record. For example, Mr. Bellis claimed that:

- Mr. Mickelson had nothing to do with Acushnet's decision of when to begin production of the ProV1 (Tr. at 303: 22-25);

- Mr. Mickelson had nothing to do with Acushnet's development of the ProV1 (Tr. at 322:1-25).

- He did not know any details about Mr. Mickelson's threat to terminate his contract with Acushnet unless Acushnet came out with solid ball to compete with Callaway Golf's Rule 35 ball (Tr. at 301:18-302:4); and

- He did not know whether Mr. Mickelson thought the Rule 35 ball was better-performing than Acushnet's wound Tour Prestige ball (Tr. at 302:5-12).

Thus, Mr. Mickelson's testimony – concerning facts within his personal knowledge – is necessary to rebut the inaccurate and incomplete statements from Acushnet, and it is highly relevant to Callaway Golf's showing of nexus necessary to support its commercial success evidence.

### B. Excluding Mr. Mickelson's timely-disclosed rebuttal testimony would be an "extreme sanction" that is unwarranted in view of Acushnet's lack of prejudice.

Excluding relevant, potentially critical, evidence from a properly disclosed witness is an extreme sanction and should not normally be imposed without a showing of willful deception or flagrant disregard of a court order. *See, e.g., Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 905 (3d Cir. 1977) (*citing Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977). In deciding whether to impose this "extreme sanction," the Third Circuit has stated that a district court should consider: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) any bad faith or willfulness in failing to comply with the court's order. *Pennypack*, 559 F.2d at 904 -905.

The third and fourth *Pennypack* factors support Callaway Golf given the Court's prior determination that "Callaway Golf timely identified" Mr. Mickelson as a witness. D.I. 362, at 2. The first and second *Pennypack* factors also support Callaway Golf because Acushnet cannot claim to be prejudiced or surprised by Mr. Mickelson's testimony. Acushnet has known of Mr. Mickelson's relevance to this matter from the outset. Indeed, *Acushnet itself* originally suggested that Callaway Golf call Mr. Mickelson.[1] Acushnet has deposed Mr. Mickelson and will also have the opportunity to cross-examine Mr. Mickelson before the jury. Acushnet has not

---

[1] Acushnet responded to Callaway Golf's proffer regarding its request to depose Wally Uhlein by stating that "Callaway totally fails to explain why Phil Mickelson, now under a lucrative endorsement contract with Callaway, is unable to provide these answers." [D.I. 184 (Acushnet's July 25, 2007 Response to Callaway Golf's Proffer Regarding Its Request to Depose Wally Uihlein at 8).]

been, and will not be, unfairly prejudiced in any way by the testimony of Phil Mickelson, particularly since Acushnet can call its own pro golfer, Davis Love, in rebuttal if appropriate.

Mr. Mickelson is a unique and critical witness regarding the issues being addressed in this dispute. Mr. Mickelson's testimony concerns his own involvement in Acushnet's development of the ProV1 ball and its decision to launch the ProV1 in 2000. Furthermore, the same testimony concerning Mr. Mickelson's personal involvement in the ProV1 commercialization – in addition to directly rebutting facts presented by Acushnet – will also provide direct evidence of the long-felt need in the industry, the success of the ProV1, and praise for the accused products that indisputably practice the claims of the asserted patents. These objective indicia of non-obviousness are critical to the jury's determination of validity, and their probative value substantially outweighs any prejudice Acushnet can assert.

For these reasons, Callaway Golf respectfully requests that the Court confirm Callaway Golf can call Phil Mickelson as a rebuttal witness in this case.

Dated: December 10, 2007    FISH & RICHARDSON P.C.

By: /s/ *Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

David J. Miclean
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

**ATTORNEYS FOR PLAINTIFF
CALLAWAY GOLF COMPANY**

5

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2007, I electronically filed this document with the Clerk of the Court using ECF which will send electronic notification on opposing counsel at the following addresses:

| | |
|---|---|
| Richard L. Horwitz, Esq.<br>   rhorwitz@potteranderson.com<br>David E. Moore, Esq.<br>   dmoore@potteranderson.com<br>Potter Anderson & Corroon LLP<br>Hercules Plaza, 6th floor<br>1313 N. Market Street<br>Wilmington, DE 19801<br>Telephone:  (302) 984-6000 | Attorneys for Defendant ACUSHNET COMPANY |
| Joseph P. Lavelle, Esq.<br>   lavellej@howrey.com<br>Brian A. Rosenthal, Esq.<br>   rosenthalb@howrey.com<br>Howrey LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>Telephone:  (202) 383-6989 | Attorneys for Defendant ACUSHNET COMPANY |

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski