**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED JOINT [PROPOSED] JURY INSTRUCTIONS

Thomas L. Halkowski (#4099)
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
Telephone (302) 652-5070
halkowski@fr.com

*Attorneys for Plaintiff*
*Callaway Golf Company*

OF COUNSEL:

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: December 10, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CALLAWAY GOLF COMPANY, )
)
Plaintiff, ) C.A. No. 06-91 (SLR)
)
v. )
) **JURY TRIAL DEMANDED**
ACUSHNET COMPANY, )
)
Defendant. )

**CHARGE TO THE JURY**

In filing these proposed charges to the jury, the parties each reserve the right to request the Court to modify these proposed instructions, including to reflect subsequent Court rulings. The parties proposed instructions are as follows:

**Acushnet General Objection**

Callaway repeatedly cites to *K.S.R. Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007) in its proposed jury instructions. Yet when Callaway's proposed jury instructions in these areas are considered, it is apparent that Callaway has failed to take into account the propositions for which that case stands. Merely citing to a case does not indicate that a party has updated model jury instructions to take account of more recent, controlling precedent.

## 1. GENERAL INSTRUCTIONS

### 1.1 [JOINT PROPOSED INSTRUCTION] INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## 1.2 [JOINT PROPOSED INSTRUCTION] JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented. I will instruct you about the burdens of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**1.3 [JOINT PROPOSED INSTRUCTION] EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the interrogatory answers of the parties that I have admitted into evidence.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. Any of my comments and questions are not evidence. Certain chart, graphics and props have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these chart, graphics and props are not themselves evidence even if they refer to, identify, or summarize evidence.[1]

During the trial I may have ruled on objections in a way that you did not get to hear answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or hear, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. Those things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[1]Callaway Golf wishes to reserve the opportunity to submit a curative jury instruction in the event the Court allows Acushnet's hybrid golf balls to be used at trial.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

*Based on Delaware Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, 1993 (Del. Model Instructions 1993) at 1.4.*

## 1.4 [JOINT PROPOSED INSTRUCTION] DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5 [JOINT PROPOSED INSTRUCTION] CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6 [JOINT PROPOSED INSTRUCTION] USE OF NOTES

You may use notes taken during the trial to assist your memory. Remember that your notes are for your personal use. They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial. Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented. Your notes are valuable only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

**1.7 [JOINT PROPOSED INSTRUCTION] CREDIBILITY OF WITNESSES**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to

discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, the testimony of a witness may be discredited or impeached by showing that the witness has made an incorrect statement or has given a prior statement or testimony which is inconsistent with his or her testimony at this trial. It is the province of the jury to determine whether an incorrect statement or prior inconsistent statement discredits the witness's testimony.

But bear in mind that an innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or to an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

## 1.8 [JOINT PROPOSED INSTRUCTION] NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.8 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006).*

## 1.9 [JOINT PROPOSED INSTRUCTION] EXPERT WITNESSES

When knowledge of technical or financial subject matter may be helpful to the jury, a person who has special training or experience in that technical or financial field – he is called an expert witness – is permitted to state his opinion on those technical or financial matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, of if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

## 1.9 [JOINT PROPOSED INSTRUCTION] DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were either read in court or played on videotape. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

**1.10 STIPULATIONS - ACUSHNET'S PROPOSED INSTRUCTION**

During the course of the trial, you heard that certain stipulations of fact had been agreed to by the parties. A stipulation of fact is an agreement between the parties that a certain fact is true. In this case the parties agreed to stipulate to the following facts:

1. Plaintiff Callaway Golf Company ("Callaway Golf") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Carlsbad, California.

2. Callaway Golf is the parent company of the Top-Flite Golf Company ("Top-Flite"), which is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Chicopee, Massachusetts.

3. Defendant Acushnet Company ("Acushnet") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business in Fairhaven, Massachusetts.

4. Acushnet is a wholly-owned operating company of Fortune Brands, Inc. ("Fortune Brands").

5. Fortune Brands is a publicly-traded corporation organized and existing under the laws of the State of Delaware.

6. United States Patent No. 6,210,293 ("the '293 patent") entitled "Multi-Layer Golf Ball" issued on April 3, 2001.

7. United States Patent No. 6,503,156 ("the '156 patent) entitled "Golf Ball Having Multi-Layer Cover with Unique Cover Characteristics" issued on January 7, 2003.

8. United States Patent No. 6,506,130 ("the '130 patent) entitled "Multi-Layer Golf Ball" issued on January 14, 2003.

9. United States Patent No. 6,595,873 ("the '873 patent) entitled "Multi-Layer Golf Ball" issued on July 22, 2003.

10. Michael J. Sullivan is the sole named inventor on the '293, '156, '130, and '873 patents (collectively "the patents-in-suit").

11. United States Patent 4,274,637 ("Molitor '637), entitled "golf ball having cellular cover," issued on June 23, 1981.

12. Untied States Patent, 4,431,193 ("Nesbitt", entitled "Golf ball and method of making same, issued on February 14, 1984.

13. United States Patent, 4,674,751 ("Molitor '751"), entitled "Golf ball having improved playability properties," issued on June 23, 1987.

14. United States Patent 5,314,187 ("Proudfit"), entitled "Golf ball with improved cover," issued on May 24, 1994.

15. United States Patent 5,334,673 ("Wu), entitled "Polyurethane golf ball," issued on August 2, 1994.

16. The effective priority date of the '293, '156, and '873 patents is November 9, 1995. The effective priority date of the '130 patent is October 13, 1995.

17. Callaway Golf currently owns and has owned U.S. Patent Nos. 6,210,293; 6,503,156; 6,506,130; and 6,595,873 ("the patents-in-suit").

18. Acushnet's Titleist Pro V1 golf balls are covered by and infringe:

Claims 1, 4 and 5 of the U.S. Patent No. 6,210,293;

Claims 1, 2 and 3 of U.S. Patent No. 6,503,156;

Claim 5 of the U.S. Patent No. 6,506,130; and

Claims 1 and 3 of U.S. Patent 6,595,873.

19. Acushnet's Titleist pro V1x and Pro V1* golf balls are covered by and infringe:

Claims 4 and 5 of U.S. Patent No. 6,210,293;

Claims 1, 2 and 3 of U.S. patent No. 6,503,156;

Claims 5 of U.S. Patent No. 6,506,130; and

Claims 1 and 3 of U.S. Patent 6,595,873.

*Adapted from Modern Federal Jury Instructions Civil THIRD CIRCUIT at 2.3.*

**Acushnet Objection:**

Callaway's proposed Stipulations instruction (1.10) is of little use to the jury, in that while it tells the jury that they must accept stipulations as true, it fails to inform the jury what has been stipulated to in this trial. Acushnet has provided the jury with a list of all stipulated facts to aid in its deliberations.

## 1.10 STIPULATIONS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

During the course of the trial, you heard that certain stipulations of facts had been agreed to by the parties. A stipulation of fact is an agreement between the parties that a certain fact is true. You must accept such agreed facts as true.

## THE PARTIES AND THEIR CONTENTIONS

### 2.1 [JOINT PROPOSED INSTRUCTION] THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is Callaway Golf Company, or "Callaway Golf."

Defendant is Acushnet Company, or "Acushnet."

Callaway Golf is the owner of U.S. Patent No. 6,210,293, which I will refer to as "the '293 patent"; U.S. Patent 6,503,156, which I will refer to as "the '156 patent"; U.S. Patent 6,506,130, which I will refer to as "the '130 patent"; and U.S. Patent 6,595,873, which I will refer to as "the '873 patent." I may refer to these patents collectively as "the patents-in-suit."

Acushnet has made, marketed, and sold the "Pro V1" line of golf balls, including the Pro V1, Prov V1x and Pro V1*[Star], under the Titleist brand. I may refer to these balls collectively as "the Pro V1 balls."

## 2.2 THE PARTIES' STIPULATION ON INFRINGEMENT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The parties have stipulated that Acushnet infringes:

Claims 1, 4, and 5 of the '293 patent;

Claims 1, 2 and 3 of the '156 patent;

Claim 5 of the '130 patent; and

Claims 1 and 3 of the '873 patent

I will refer to these as the asserted claims of the patents-in-suit. In particular, the parties have stipulated that Acushnet infringes the patents-in-suit by making and selling the following golf balls under the Titleist brand: the ProV1, the ProV1x, and the ProV1*[star]. Therefore, you will not be asked to determine whether these products infringe the asserted claims. No other claims are at issue in this suit.

*Source: Charge to the Jury, Intuitive Surgical & IBM v. Computer Motion, Inc., No. 01-203-SLR (D.Del. August 19, 2002).*

## 2.2 THE PARTIES' STIPULATION ON INFRINGEMENT - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**Acushnet Objection**

As stated in 1.10, Acushnet believes that the correct place for this instruction is in an overall instruction which lists all the stipulated facts for the jury to consider. Callaway should not be permitted to pick and choose which stipulations it wishes to bring to the attention of the jury, and where it wishes to do so.

## 2.3 ACUSHNET PATENTS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Whether or not Acushnet patents exist that allegedly may cover the accused ProV1 products is not relevant to the fact that Acushnet infringes all of the asserted claims of the asserted patents in suit.

## 2.3 ACUSHNET PATENTS - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**Acushnet Objection**

Callaway has proposed an instruction (2.3) informing the jury that Acushnet's patents covering the Pro V1 are not relevant to infringement of the claims of the patents-in-suit. Given that infringement has been stipulated to in this trial, this instruction is of no relevance to the jury. Acushnet has at no stage claimed that these patents have any influence on infringement. As Acushnet states in its proposed instruction 2.4A, the only issue that the jury must decide is the validity of the patents-in-suit. Callaway's true purpose in this instruction is to attempt to skirt the nexus requirement for secondary considerations (4.6); it seeks to present Acushnet's other patents on the Pro V1 as irrelevant in order to prevent the jury from considering them as an alternative source of commercial success.

## 2.4 THE PARTIES' CONTENTIONS AND BURDENS OF PROOF - CALLAWAY GOLF PROPOSED INSTRUCTION

This is a civil case concerning patent infringement in which Acushnet is urging as a defense that the asserted claims to the patents-in-suit are invalid. A patent, however, is presumed to be valid. Accordingly, Acushnet, as the defendant, has the burden of proving that each one of the asserted claims of the patents-in-suit is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Callaway Golf or Acushnet has met its burden of proof.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 1.3 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

## 2.4-A PARTIES AND CONTENTIONS - ACUSHNET'S PROPOSED INSTRUCTION

As you heard in the trial, this is a civil patent case involving Callaway Golf Company and the Acushnet Company, wherein Callaway Golf seeks monetary damages and to enjoin Acushnet from further manufacturing and selling the accused Pro V1 golf ball products. The only issue you must decide, however, is whether the asserted claims of the patents-in-suit are invalid.

## 2.4-B BURDENS OF PROOF - ACUSHNET PROPOSED INSTRUCTION

Acushnet alleges that prior art (including prior patents and golf balls) render the asserted claims of the patents-in-suit obvious as inventions, and therefore invalid. Under the law, patent claims are presumed to be valid until proven otherwise. Acushnet has the burden of proving that the asserted claims of the patents in suit are invalid by clear and convincing evidence. Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether Acushnet has met its burden of proof.

*Based on Delaware Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, 2004 (Del.. Model Instructions 2004) at 1.3.*

**Acushnet Objection**

The jury has been informed of the meaning of "clear and convincing evidence." In its proposed instruction (2.4) Callaway seeks to magnify the required burden of proof; Acushnet feels that given the prior instructions given in this case, once again informing the jury that clear and convincing evidence is "evidence that produces an abiding conviction that the truth of a fact is highly probable" is both duplicative and unnecessary.

## 2.5 SUMMARY OF THE ISSUES - CALLAWAY GOLF'S PROPOSED INSTRUCTION

In this case, you must decide the issue of validity according to the instructions that I shall give you. In particular, you must decide:

- Whether Acushnet has proven by clear and convincing evidence that each of the asserted claims is invalid because it would have been obvious in light of the prior art as of 1995.

## 2.5 SUMMARY OF THE ISSUES - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate.]

**THE PATENT CLAIMS**

**3.1 [JOINT PROPOSED INSTRUCTION] PATENT CLAIMS GENERALLY**

Before you can decide whether Callaway's patent claims are invalid, you will have to understand the patent "claims," which are the numbered paragraphs at the end of the patent. The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are like "word pictures" intended to define, in words, the outer boundaries of the invention described and illustrated in the patent. The claims define the patent owner's claim to property rights. Each claim is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually.

## 3.2 [JOINT PROPOSED INSTRUCTION] DEPENDENT AND INDEPENDENT CLAIMS

There are two types of claims in the patents. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 4 of the '293 patent is an independent claim. You know this because it mentions no other claims. The words of claim 4 are read by themselves in order to determine what claim 4 covers.

Claim 5 of the '293 patent, on the other hand, is a dependent claim because it refers to independent claim 4. Accordingly, the words of claims 4 and 5 must be read together in order to determine what the dependent claim, claim 5, covers.

## 3.3 CONSTRUCTION OF CLAIMS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

It is often difficult to describe an invention in scientifically precise terms. For that reason, the patent law allows the inventor to use his own terms in describing his invention. Thus, the meaning of a claim can be construed in connection with the patent specification, the patent's prosecution history and prior art to determine what the claims cover. You should consider the drawings and specification to determine what the inventor intended to cover by the claims of the patent.

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use the same meaning of each claim for your decisions on validity. You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term. I instruct you that the following claim terms have the following definitions:[2]

1. The terms "[inner or outer] cover layer having a Shore D hardness" require that the Shore D hardness be measured "on the ball."

2. The term "core" means "the singular component of the golf ball that occupies the geometric center of the sphere of the golf ball."

---

[2] Because the term "flex modulus" is not relevant to the validity issue of obviousness, Callaway Golf does not believe the Jury needs to be instructed regarding this definition. If an instruction is given, Callaway Golf proposes the following: "The term 'modulus' refers to flexural modulus."

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2 (1993); Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006).*

### 3.3 CONSTRUCTION OF CLAIMS - ACUSHNET'S PROPOSED INSTRUCTION

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is infringed. You must ignore any different interpretations given to those claims by the witnesses or the attorneys. If I have not provided a specific definition for a given term or phrase, you are to use the ordinary English language meaning of that term.

It may be helpful to refer to the copy of the patents in suit that you have been given as I discuss the claims at issue here. The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied in the following patents in suit:

The beginning portion, or preamble, of some of the asserted claims use the word "comprising" or "comprises." In general, "comprising" or "comprises" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products that add additional elements. For example, if a claim recites a table "comprising" a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

I instruct you that the following claim terms have the following definitions:

1. The terms "cover layer having a Shore D hardness" means "the Shore D hardness of the cover layer measured on the ball."

2. The term "core" means "the singular component of the golf that occupies the geometric center of the sphere of the golf ball."

3. The term "modulus" refers to flexural modulus and means "the stiffness of a

material as measured in accordance with an industry standard (ASTM D-790), which is measured on a rectangular bar of the material."

*Based on Del. Model Instructions 1993 at 3.2;CAFC Model Patent Jury Instruction No. 7.5.*

**Acushnet Objection**

Among other things, the parties have been unable to agree on a definition of the term "modulus." During claim construction briefing, the parties agreed that "modulus" should be defined as: "the flex or flexural modulus of any low-acid ionomeric resin in the inner cover layer as measured in accordance with ASTM D-790." At the claim construction hearing, the Court stated: "While you're setting this up, assuming that this case might go to a jury, your definition of modulus basically refers to a modulus. And I'm not confident that that is particularly helpful to a jury." The parties stated that they should easily be able to agree on a more helpful definition.

To that end, Acushnet has proposed a reasonable and helpful construction that explains in plain English what is the undisputed meaning of flexural modulus. Namely, modulus is "the stiffness of a material as measured in accordance with an industry standard (ASTM D-790), which is measured on a rectangular bar of the material." Callaway instead has reverted to the even more obscure, proposing to circularly define "modulus" as "flexural modulus." Callaway's proposal is exactly what the Court ordered the parties to avoid. Acushnet's proposed definition, on the other hand, is reasonable, helpful, and appears to be entirely consistent with the parties' mutual understanding of the term.

**VALIDITY**

**4.1 PRESUMPTION OF VALIDITY - CALLAWAY GOLF'S PROPOSED INSTRUCTION**

Acushnet contends that all of Callaway Golf's asserted patent claims are invalid.

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid. From issuance of the patent, it is presumed that its subject matter is new, useful, adequately described, and constitutes an advance which was not, at the time the invention was made, obvious to one of ordinary skill in the art.

The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nonetheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has said or done, consistent with these instructions on the law. The presumption of validity is especially hard to overcome when the Patent Office considered the alleged prior art during prosecution.

This presumption of validity puts the burden of proving invalidity on Acushnet. While this presumption can be rebutted, the burden is on Acushnet to do so. This burden requires Acushnet to prove, by clear and convincing evidence, that in this case each of the asserted claims is invalid.

Each of the asserted claims is presumed to be valid independently of the validity of each other claim. I will now explain to you Acushnet's invalidity contention in detail. In making your determination as to invalidity, you should consider each claim separately.

Source: *Charge to the Jury, Intuitive Surgical & IBM* v. *Computer Motion, Inc.*, No. 01-203-SLR (D.Del. August 19, 2002); *Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v.*

*Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990).*

**Acushnet Objection**

Callaway's proposed instruction (4.1) is redundant. In the instructions on burdens of proof, the jury will be instructed that patents are presumed valid. The only purpose for repeating this in a separate instruction is to prejudice the jury away from considering whether the evidence presented shows the patents to be invalid. In particular, Callaway seeks to inform the jury in its instruction that the alleged prior art was before the Patent Office, thereby rendering the presumption "especially hard to overcome" while neglecting to inform the jury that it swore behind the prior art, attesting to its irrelevance. In a case such as this, where the Patent Office, unbeknownst to the jury, has reexamined the patents and made provisional rulings that the patents were wrongly issued, it is inappropriate that the owner of the patents be allowed repeatedly and misleadingly to stress the presumption of validity.

## 4.1 VALIDITY IN GENERAL - ACUSHNET'S PROPOSED INSTRUCTION

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non obvious. A patent cannot take away from people their right to use what was already known or what would have been obvious to those of skill in the art at the time when the invention was made. The terms "new" and "non obvious" have special meanings under patent laws. I will explain these terms to you as we discuss Acushnet's grounds for asserting invalidity.

[* Acushnet believes that Callaway's proposed "presumption of validity" instruction is redundant of instructions previously given in earlier sections of these final instructions, under "burden of proof." Acushnet further believes that Callaway's redundant instruction goes far too far in stressing the presumption of the validity of the patents-in-suit in view of the findings of the Patent Office -- including reexaminations of the patents -- the Court has excluded from the trial.]

*CAFC Model Patent Jury Instruction No. 10.1; KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007).*

## 4.2 OBVIOUSNESS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Acushnet contends that the asserted claims are invalid as being obvious. In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining the obviousness or nonobviousness of a claim, you should take the following steps:

1. Determine the scope and content of the prior art relied upon by Acushnet, the party alleging invalidity of the patents-in-suit;

2. Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3. Determine the level of ordinary skill in the pertinent art at the time the invention of each patent-in-suit was made; and

4. Consider objective considerations of nonobviousness, such as commercial success, praise by others within the industry, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patent by others.

Against this background, you will make your decision that the claimed subject matter would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007); Graham v. John Deere Co., 383 U.S. 1 (1966).*

## 4.2 OBVIOUSNESS - ACUSHNET'S PROPOSED INSTRUCTION

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

Obviousness may be proven by considering more than one item of prior art. The relevant question is, would a claim have been obvious to a person of ordinary skill in the art who knows of all the prior art.

To determine obviousness or non obviousness of the claimed subject matter of the asserted claims of the patents-in-suit, you should take the following steps:

1. Determine the scope and content of the prior art (both patents and commercially-available golf balls) relied upon by Acushnet;

2. Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3. Determine the level of ordinary skill in the pertinent art at the time the invention of each patent in suit was made.

If appropriate, you may also consider what the law calls "secondary considerations." These considerations may tend to prove non obviousness. These considerations include commercial success, praise by others within the industry, long felt but unresolved need, and the failure of others to solve the problem.

In determining, however, whether the asserted patent claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula. You should also use your common sense to determine whether the claimed inventions are truly innovative, or

merely a combination of known elements to achieve results not unexpected.

Advances that would occur in the ordinary course, without real innovation, are not patentable advances over the prior art. The standard of non obviousness in an art is raised as the art advances. Thus, new inventions, once they are known, define a new threshold from which patentable innovation is allowed. Progress beginning from these higher levels of prior achievement is expected in the normal course.

In general, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. A person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.

If a person of ordinary skill in the art can implement a predictable variation of known works, and would see the benefit of doing so, then a patent on that idea is likely to be obvious.

If a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill.

Source: *CAFC Model Patent Jury Instruction No. 10.9; KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 at *10 11, *32 36 (U.S.S.C., April 30, 2007); Graham v. John Deere Co., 383 U.S. 1 (1966).*

**Acushnet Objection**

While Callaway claims to have used *K.S.R. Int'l* as source material for its proposed instruction (4.2), it has ignored the underpinnings of that case: that there is no rigid test or formula for determining obviousness. Callaway fails to inform the jury that, according to this Supreme Court decision, a person of ordinary skill in the art "will be able to fit the teachings of multiple patents together like pieces of a puzzle." *K.S.R. Int'l Co.*, 1727 S.Ct. at 1742. Callaway's proposed instruction is mired in the law of the past, and ignores recent developments such as *K.S.R. Int'l.*

**4.3 [JOINT PROPOSED INSTRUCTION] SCOPE AND CONTENT OF THE PRIOR ART**

As I just instructed you, in arriving at your decision on the issue of whether or not the asserted claims are obvious to one of ordinary skill in the art, you should first determine what the scope and content of the prior art is. This means that you should determine what prior art is reasonably pertinent to the particular problem the inventor faced.

The scope and content of the prior art includes references that would be considered by a person with ordinary skill in the art to solve a particular problem. A person of ordinary skill in the art is deemed to know of all such references. The prior art at issue in the case includes: the Nesbitt '193 Patent, the Molitor '751 Patent, the Molitor '637 Patent, the Proudfit '187 Patent, the Wu '673 Patent, as well as the Wilson Ultra Tour Balata golf balls and the Titleist Professional golf balls.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1; Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

## 4.4 [JOINT PROPOSED INSTRUCTION] DIFFERENCES OVER THE PRIOR ART

You must next consider the differences, if any, between the prior art and the claimed invention. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety, separate from other claims.

## 4.5 [JOINT PROPOSED INSTRUCTION] LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include:

1. the educational level of the inventors and of others working in the field;
2. the types of problems encountered in the art at the time of the invention;
3. the prior art patents and publications;
4. the activities of others;
5. prior art solutions to the problems encountered by the inventors; and
6. the sophistication of the technology.

## 4.6 HINDSIGHT - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The question of nonobviousness is simple to ask, but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. A determination of obviousness cannot be based upon the hindsight combination of prior art. It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the asserted claims. Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, facing the range of needs created by developments in the field of the invention.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5 (1993); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007); Panduit Corp. v. Dennison Mfg. Co. 810 F.2d 1561, 1575 (Fed. Cir. 1987).*

## 4.6 HINDSIGHT - ACUSHNET'S PROPOSED INSTRUCTION*

A person of ordinary skill in the art is presumed by law to have the knowledge of the relevant prior art at the time of the patentee's invention.

If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit. A person of ordinary skill has the ordinary creativity of those in his or her field, and often will be able to fit the teachings of multiple patents together like pieces of a puzzle. You should not rely on hindsight while undertaking this evaluation. However, when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. You should cast your mind back to the time of the invention, and consider whether a person of ordinary skill in the art, facing the range of needs created by developments in the field of the invention, would have seen the benefit to creating the asserted combination.

*Based on Del. Model Instructions 2004 at 4.8.5; KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 (U.S.S.C., April 30, 2007)*

**<u>Acushnet Objection</u>**

Once again, Callaway's proposed instruction cites to *K.S.R. Int'l Co.* as a source, yet fails to consider the findings of that case. According to the Supreme Court, "[r]igid preventative rules [on hindsight] that deny factfinders recourse to common sense … are neither necessary under our case law nor consistent with it." *Id.* At 1742-43. While Callaway seeks to refer to a "maze of prior art references" it ignores this recent Supreme Court ruling that teaches that "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* At 1742. Once again, Callaway's instruction ignores recent developments in the law, despite claiming to use them as sources.

## 4.6 OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS (SECONDARY CONSIDERATIONS) - CALLAWAY GOLF'S PROPOSED INSTRUCTION

In making your decision as to the obviousness or non-obviousness of the asserted claims, you should consider the following objective evidence which may tend to show non-obviousness of the claims at issue:

1. Commercial success or lack of commercial success of products covered by the patents-in-suit;

2. A long felt need in the art which was satisfied by the invention of the patents-in-suit;

3. The failure of others to make the invention;

4. Copying of the invention by Acushnet or others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by Acushnet or others in the field; and

7. The taking of licenses under the patents-in-suit by others.

There must be a connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those described in the asserted claims, then any commercial success may have no relation to the issue of obviousness.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness. Although some parts of the evidence may weigh more heavily than others, your decision of

obviousness or non-obviousness should be held in abeyance, until all of the evidence has been introduced.

Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.4 (1993); tracks KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

## 4.6 SECONDARY CONSIDERATIONS CONCERNING OBVIOUSNESS - ACUSHNET'S PROPOSED INSTRUCTION

In making your decision as to the obviousness or non obviousness of each of the asserted claims of the patents in suit, you may also consider the following secondary considerations, evidence which may tend to show non obviousness of the claims at issue:

1. Commercial success or lack of commercial success of products covered by the patents in suit;

2. A long felt need in the art that was satisfied by the invention of the patents-in-suit;

3. The failure of others to make the inventions

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention; and

6. Praise of the invention by others in the field.

You should only consider such secondary considerations as indications that the patent asserted is not obvious if Callaway has demonstrated that there is a nexus between the claimed invention and these secondary consideration. For example, commercial success of a product is only an indication of non obviousness if the allegedly infringed claims of the patent are responsible for the success of the product. If that success is seen to come from a different source, such as brand name recognition, company goodwill, advertising, promotion, or the like, or is due to features of the commercially successful product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

Also, to be pertinent as evidence of non obviousness, commercial success and other secondary considerations must be shown to be due to the merits of the claimed invention beyond what was readily available in the prior art. If the feature that creates the commercial success, for example, was known in the prior art, the success of the product is not pertinent.

Apart from the commercial success (or lack thereof) of competing products that also practice the invention, you should also consider the number of patents and other technologies pertaining to the product before determining whether there is a nexus between the secondary considerations and the patents-in-suit. If a commercially successful product practicing the patents-in-suit relies on multiple other technologies, you must consider whether the secondary considerations such as commercial success are the result of the patents in suit, or if they result from other technologies or features of the product.

*Based on Del. Model Instructions 2004 at 4.8.6; Mas Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1216 (Fed. Cir.1998); Pfizer Inc. v. Apotex, 480 F.3d 1348, 1360 (Fed. Cir. 2007); Graham v. John Deere Co., 383 U.S. 1, 17 (1966); Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1324 (Fed. Cir. 2004); Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311 12 (Fed. Cir. 2006); Stratoflex , Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed. Cir. 1983); Pentec, Inc. v. Graphic Controls, Corp., 776 F.2d 309, 316 (Fed. Cir. 1985); Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295, 300 (9th Cir. 1970); McNeil PPC v. Perrigo Co., No. 05 Civ. 1321 (WHP), 2007 U.S. Dist. LEXIS 50255 at **33 34 (S.D.N.Y. July 3, 2007).*

**Acushnet Objection**

Callaway again ignores *K.S.R. Int'l Co.* in its instruction here (4.6) Callaway de-emphasizes the requirement of nexus, and seeks instead to require consideration of secondary considerations, even when no nexus has been shown. Callaway also fails to instruct the jury to consider the role of other patents held on a commercially successful product as been indicators of a lack of nexus. In fact, in an earlier instruction (2.3), Callaway seeks to undercut the relevance of such patents by claiming they do not impact on infringement, when infringement is not in front of the jury.

## 4.8 COMMERCIAL SUCCESS - CALLAWAY GOLF'S PROPOSED INSTRUCTION

One of the factors you should consider is whether Callaway Golf has shown any commercial success of products covered by the patents-in-suit due to the merits of the invention.

To prove this, Callaway Golf must provide evidence to satisfy you that there is a causal connection between the commercial success of the products and the claimed invention. This would tend to indicate that the invention would not have been obvious.

If you conclude that commercial success of the product is only due to advertising, promotion, salesmanship or the like, or to features of the product other than those claimed in the patents-in-suit, and that the commercial success is not due in any part to the claimed invention, then the fact that the product enjoyed commercial success is not related to whether the invention would have been non-obvious.

Therefore, you should consider whether Callaway Golf has shown that Acushnet's ProV1 balls are commercially successful and whether any such commercial success is due at least in part to the merits of the invention claimed in the patents-in-suit. If so, this tends to indicate that the invention was not obvious.

Source: *AIPLA Model Patent Jury Instr. 7.7.*

### 4.8 COMMERCIAL SUCCESS - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**Acushnet Objection**

Callaway seeks a series of instructions (4.8 - 4.10) regarding secondary considerations, again in an attempt to circumvent the nexus requirement. Such terms are already included in the secondary consideration instruction, and it is unnecessary and duplicative to include separate instructions on them. Doing so can only lead the jury to overemphasize such considerations, and to neglect to consider whether Callaway has demonstrated any nexus between such considerations and the patents-in-suit.

## 4.9 REASON TO COMBINE - CALLAWAY GOLF'S PROPOSED INSTRUCTION

Among the factors you may consider in determining whether multiple prior art references render a patent obvious is whether there was some apparent reason to combine or modify the items of prior art and whether the combination would be reasonably likely to achieve the goal of the invention. However, as I instructed you, in doing so you must guard against slipping into the use of hindsight.

Source: *KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742-43 (2007).*

## 4.9 REASON TO COMBINE - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**Acushnet Objection**

Callaway seeks a series of instructions (4.8 - 4.10) regarding secondary considerations, again in an attempt to circumvent the nexus requirement. Such terms are already included in the secondary consideration instruction, and it is unnecessary and duplicative to include separate instructions on them. Doing so can only lead the jury to overemphasize such considerations, and to neglect to consider whether Callaway has demonstrated any nexus between such considerations and the patents-in-suit.

## 4.10 CROWDED ART FIELD - CALLAWAY GOLF'S PROPOSED INSTRUCTION

The parties have shown you evidence that there is a large number of patents relating generally to golf ball technology. Where, as here, a field is crowded with many patents, even differences that appear technologically minor may have a significant practical impact. This may tend to indicate that the claimed invention was not obvious.

Source: *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991).

## 4.10 CROWDED ART FIELD - ACUSHNET'S PROPOSED INSTRUCTION

[Acushnet believes that this instruction is either not appropriate for this case or is duplicative of other instructions, and reserves the right to propose an alternative instruction if the Court determines that such an instruction is appropriate]

**Acushnet Objection**

Callaway seeks a series of instructions (4.8 - 4.10) regarding secondary considerations, again in an attempt to circumvent the nexus requirement. Such terms are already included in the secondary consideration instruction, and it is unnecessary and duplicative to include separate instructions on them. Doing so can only lead the jury to overemphasize such considerations, and to neglect to consider whether Callaway has demonstrated any nexus between such considerations and the patents-in-suit.

## 4.13 COPYING VERSUS INDEPENDENT INVENTION BY OTHERS – CALLAWAY GOLF'S PROPOSED INSTRUCTION

Callaway has made no allegation of copying against Acushnet. Therefore, this is not an issue relevant to your determination of whether the patents in suit are invalid.

It is also irrelevant to obviousness whether an infringing product was developed independently if the development occurred after the date of the invention. This is because obviousness must be determined at the time the invention was made.

You have heard testimony from Acushnet that development of the ProV1 balls began after the invention of the patents-in-suit. Therefore, even if Acushnet independently developed its ProV1 products this is not relevant to obviousness.

Source: *Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1380, fn. 4 (Fed. Cir. 1986); Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co., 730 F.2d 1452, 1460 -1461 (Fed. Cir. 1984).*

## 4.13 INDEPENDENT INVENTION BY OTHERS – ACUSHNET'S PROPOSED INSTRUCTION

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the invention was also invented independently by other persons, either before the inventor of the patent in suit or at about the same time.

Just as the failure of others to make the invention can be evidence of unobviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may or may not be an indication of obviousness when considered in light of all of the circumstances.

*Del. Model Instructions 1993 at 4.8.9.*

**<u>Acushnet Objection</u>**

Callaway's proposed instruction (4.13) is factually as well as legally incorrect. Callaway maintains that it has made no allegation of copying against Acushnet. Acushnet denies this statement, but even it were the case, then such a state of affairs would suggest there be no instruction on copying. Indeed, Acushnet has proposed no such instruction. Callaway seek to instruct the jury that they have made no such claim, and then continue to discuss independent invention. Callaway further maintains that Acushnet has testified that development of the Pro V1 balls began after the invention of the patents-in-suit. This is contrary to the record of the case. (*See* DX-830).

## DELIBERATION AND VERDICT

### 5.1 [JOINT PROPOSED INSTRUCTION] INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your vote. For example, do not write down or tell anyone that you are split 4-4 or 6-2, whatever your vote happens to be. That should stay secret until you are finished.

## 5.2 [JOINT PROPOSED INSTRUCTION] UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you to answer one question about Acushnet's claim of invalidity. When you have reached unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of you, the jury.

**5.3 [JOINT PROPOSED INSTRUCTION] DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room, but only when all jurors are present. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that - your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

## 5.4 [JOINT PROPOSED INSTRUCTION] COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

FISH & RICHARDSON P.C.

By: */s/ Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
Telephone (302) 652-5070
halkowski@fr.com

*Attorneys for Plaintiff*
*Callaway Golf Company*

OF COUNSEL:

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

POTTER ANDERSON & CORROON LLP

By: */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: December 10, 2007

836675 / 30030