# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Thomas L. Halkowski
(302) 778-8407

Email
halkowski@fr.com

ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

**VIA ECF & EMAIL**

REDACTED

November 27, 2007

The Honorable Sue L. Robinson
United States District Court
for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:     *Callaway Golf Company v. Acushnet Company*
        USDC-D. Del. - C. A. No. 06-91 (SLR)



Dear Judge Robinson:

This letter responds to Acushnet's November 21, 2007, letter to the Court regarding the testimony of professional golfers Phil Mickelson and Greg Norman. [D.I 351.] Acushnet requested at the Pre-Trial Conference an opportunity "to submit a letter that outlines late disclosure issues with respect to Phil Mickelson." [D.I. 349, Pre-Trial Hearing Transcript at 50:10-15.] Instead of submitting a letter focusing on this discrete issue, Acushnet has reargued its entire motion *in limine*. This limited response focuses on Mr. Mickelson's timely disclosure as a rebuttal witness in accordance with the Court's Scheduling Order. Callaway Golf objects to Acushnet's untimely and unauthorized effort to seek reconsideration of the Court's ruling regarding Acushnet's entire motion *in limine*. To the extent any such argument is nonetheless considered, Callaway Golf briefly addresses the other issues Acushnet improperly raised in its November 21 letter.

A.     **Mr. Mickelson Will Provide Important Factual Testimony.**

In the context of this case, Mr. Mickelson is much more than just a professional golfer who has used the accused golf balls. He was intimately involved in Acushnet's decision to launch its Pro V1 line of golf balls in 2000, and even Acushnet has stated that Mr. Mickelson was Acushnet's "lead test pilot" in developing the accused golf balls. Accordingly, his testimony is very relevant to the issues in this case.

REDACTED

[Ex. A (Deposition Transcript of Mr. Mickelson at 154:5-20.][1]  Mr. Mickelson approached Wally Uihlein, Acushnet's CEO, at the U.S. Open tournament, and he told Mr. Uihlein that

---

[1] All exhibits to this letter are attached to the declaration of Thomas Halkowski being submitted along with this letter.

FISH & RICHARDSON P.C.

November 27, 2007
Page 2

[Ex. A (Deposition Transcript of Mr. Mickelson at 56:8-19; 65:20-66:14; 85:5-87:5; 160:2-161:13; 166:2-167:4.] That conversation is documented in a contemporaneous article in Golf World magazine. [Ex. B ("Going to Great Lengths," Golf World, September 22, 2000 at AC 0089569.]

Mr. Uihlein later described that conversation with Mr. Mickelson as the *"clarion call"* that drove Acushnet to fast track the release of the Pro V1. [*Id.*]

[Ex. A (Deposition Transcript of Mr. Mickelson at 56:8-58:3; 65:15-67:8; 77:18-78:15; 170:21-172:11.]

REDACTED

[*Id.* at 58:10-61:14; 156:11-157:18.] [*Id.* at 35:14-18; 58:10-59:14.]

[*Id.* at 154:21-155:8.]

Acushnet has publicly acknowledged Mr. Mickelson's key role in the testing and development of the Pro V1. In an article in Golf Week in August of 2001, Mr. Uihlein stated that the Pro V1 testing "lasted a couple of months, with ***Phil Mickelson being our Chuck Yeager***, our lead test pilot." [Ex. C ("Inside look: Titleist's big makeover," *Golf Week*, August 18, 2001, at AC 0089552) (emphasis added).] Moreover, in a press release in November of 2000, Mr. Uihlein stated that "[Mr. Mickelson's] input was ***instrumental in the development of the new Pro V1*** that has achieved immediate acceptance and success on the worldwide professional tours." [Ex. D (November 17, 2000 press release at AC 0131632-33) (emphasis added).]

In addition to describing these events, Mr. Mickelson also can testify about his observations regarding the performance of the accused golf balls. Mr. Mickelson has first-hand knowledge regarding the long-felt need in the industry, the success of the accused products commercially and on the PGA tour, praise for the accused products, and comparisons between the accused products and the wound golf balls previously used by most professional golfers. All of those issues are objective indicia of non-obviousness and therefore are very relevant to the jury's determination of validity.

**B.     Acushnet, Itself, Invited Callaway Golf to Bring Mr. Mickelson to Trial.**

Acushnet's claim of surprise and its new-found objections to Mr. Mickelson's testimony are belied by the simple fact that Acushnet previously *encouraged* Callaway Golf to call Mr. Mickelson as a witness in this case.

On March 16, 2007, Callaway Golf requested the deposition of Mr. Uihlein, based largely on the facts discussed above. After extended back-and-forth, Acushnet announced on May 16, 2007, that it would not produce Mr. Uihlein for deposition

FISH & RICHARDSON P.C.

November 27, 2007
Page 3

absent a Court Order, citing his status as CEO. Accordingly, and after additional meet-and-confer, Callaway Golf presented a proffer to the Court on July 10, 2007, outlining Mr. Uihlein's involvement in the launch of the Pro V1 and his conversations with Mr. Mickelson. [D.I. 176 (Callaway Golf's July 10, 2007 Proffer Regarding Its Request to Depose Wally Uihlein at 4-5).]

In its opposition to that proffer, filed on July 25, 2007, Acushnet suggested that Callaway Golf should simply call Mr. Mickelson as a witness instead of Mr. Uihlein: **"Callaway claims that '[o]nly Mr. Uihlein' can answer what was the content of his conversation with Phil Mickelson. (D.I. 176 at 4). Callaway totally fails to explain why Phil Mickelson, now under a lucrative endorsement contract with Callaway, is unable to provide these answers."** [D.I. 184 (Acushnet's July 25, 2007 Response to Callaway Golf's Proffer Regarding Its Request to Depose Wally Uihlein at 8).]

Now, inexplicably, after Callaway Golf has followed Acushnet's suggestion and identified Mr. Mickelson as a rebuttal witness to provide those answers, Acushnet claims surprise as its basis for attempting to block Mr. Mickelson from appearing at trial. Callaway Golf respectfully refers the Court to the timeline attached to the end of this letter for a summary of events showing that Callaway Golf's disclosure of Mr. Mickelson was timely and appropriate under the Court's Orders and rules.

C.   **Only Mr. Mickelson Can Testify Regarding the Relevant Events.**

As discussed above, Acushnet refused to produce Mr. Uihlein for deposition. The parties were able to agree, however, on a deposition of Bill Young, who is (and has been for years) Acushnet's Vice President of Tour Promotions. Callaway Golf agreed to this compromise because Mr. Young had extensive interactions with Mr. Mickelson during the summer of 2000 regarding the release of the Pro V1.

As it turned out, Mr. Young had issues remembering any events from 2000. Over the course of the deposition, Mr. Young answered           or           more than 80 times. For example:

- Mr. Young could not recall any discussion where

                                                        . [Ex. F (Deposition Transcript of Mr. Young at 131:22-132:7.]

- Mr. Young could not recall whether
                                                        [*Id.* at 130:1-16.]

- Mr. Young, despite being in charge of tour promotions, could not even recall
                                                        , (2)



FISH & RICHARDSON P.C.

November 27, 2007
Page 4



'; or (3)
[*Id.* at 52:24-53:7.]

These are just a few examples of Mr. Young's inability to recall events surrounding the launch of the most successful golf ball in the history of the company. There are numerous other examples where Mr. Young simply could not recall any details even when presented with documents intended to refresh recollection. [*Id.* (*see e.g.*, Mr. Young's deposition transcript at 120:15-121:5; 125:13-126:24; 129:11-130:16; 131:3-131:21; 140:18-142:15; 147:11-149:12; 158:12-160:23.]

Thus, unless Mr. Mickelson is allowed to testify, Mr. Young's fortuitous memory loss coupled with Acushnet's refusal to expose Mr. Uihlein to discovery will ensure that highly relevant evidence – from a witness the jury would surely be interested in hearing from and capable of understanding – will never see the light of day.

### D. Callaway Golf Timely Disclosed Mr. Mickelson as a Rebuttal Fact Witness and Accommodated All of Acushnet's Requests.

Section 2(g) of the Court's June 2, 2006 Scheduling Order [D.I. 28 at 4] requires the parties to disclose rebuttal fact witnesses within two months of the close of expert discovery. In accordance with that provision, and accommodating a request by Acushnet for a brief extension, the parties exchanged their lists of rebuttal witnesses on October 1, 2007. Callaway Golf properly listed Mr. Mickelson on its rebuttal witness list, because his testimony rebuts Acushnet's claim of obviousness and because Callaway Golf intends to present Mr. Mickelson in its rebuttal case. [Ex. G (September 29, 2007 e-mail string regarding the exchange date for identification of rebuttal witnesses); Ex. H (October 1, 2007 Callaway Golf's Disclosure of Rebuttal Witnesses).] As noted above, Mr. Mickelson figured prominently in the matters being disputed and Acushnet was well aware of his relevance to this suit long before Callaway Golf chose to list him among its rebuttal witnesses.

Section 2(g) of the Schedule Order also sets forth the procedures for the depositions of any fact witnesses who had not previously been deposed. In accordance with that provision, Callaway Golf offered Mr. Mickelson for deposition on October 11, 2007. At Acushnet's request, the parties rescheduled the deposition for October 25, 2007, to provide Acushnet more time to prepare. Unfortunately, on October 25, the wildfires in Southern California forced the evacuation of Mr. Mickelson's home, as well as the offices and homes of Callaway Golf's counsel and the parties agreed to reschedule Mr. Mickelson's deposition for November 15, 2007. Acushnet deposed Mr. Mickelson on November 15, 2007.

Fɪsʜ & Rɪᴄʜᴀʀᴅsᴏɴ ᴘ.ᴄ.

November 27, 2007
Page 5

### E. Callaway Golf and Mr. Mickelson Have Accommodated All of Acushnet's Demands Regarding the Deposition of Mr. Mickelson.

Before the deposition of Mr. Mickelson, Acushnet made several demands relating to the deposition, each of which Callaway Golf and Mr. Mickelson accommodated:

- On October 5, 2007, Acushnet served 17 new document requests on Callaway Golf relating to Mr. Mickelson. That same day Acushnet served a subpoena on Mr. Mickelson personally, attaching 23 more requests for production.

- In response, Callaway Golf and Mr. Mickelson produced documents to Acushnet on October 22, 2007.

- Callaway Golf, long before it received these documents requests, had already produced numerous documents related to Mr. Mickelson's testing of Callaway Golf balls. In addition, Callaway Golf had produced internal marketing documents and advertisements referring to Mr. Mickelson and it produced numerous publications that quoted Mr. Mickelson. In other words, Mr. Michelson has been a prominent figure regarding the issues in this suit, and much of the discovery that Acushnet sought had already been produced. Nevertheless, Callaway Golf and Mr. Mickelson supplemented their document production well before his deposition.

- Acushnet also demanded that Callaway Golf provide a summary of the testimony that Mr. Mickelson would provide at trial. Despite not being required to provide any such disclosure, counsel for Callaway Golf prepared such a document for Acushnet, describing nine topics on which Mr. Mickelson may testify. [Ex. I (Letter from Mr. Denning to Mr. Rosenthal).] Counsel for Acushnet marked that list as Exhibit 1 in Mr. Mickelson's deposition and specifically asked him questions about those topics. [Ex. A (See e.g., Deposition Transcript for Mr. Mickelson at 30:1-31:20; 40:24-41:5; 54:15-55:1).]

At the Pre Trial Conference, counsel for Acushnet argued that Callaway Golf did not provide a "proffer" relating to Mr. Mickelson's expected testimony at trial. Whether specifically titled a "proffer" or not, the summary description of Mr. Mickelson's trial testimony provided to Acushnet more than adequately put Acushnet on notice of the relevant topics.[2]

---

[2] Counsel for Acushnet also stated at the pretrial conference that Acushnet provided a declaration from its golf professional – Davis Love III – purportedly covering the topics for his testimony. Yet, Mr. Love's declaration was not from this litigation, but instead was from a previous case to which Callaway Golf was not a party. Moreover, the declaration was not provided as a list of topics upon which Mr. Love may testify,

FISH & RICHARDSON P.C.

November 27, 2007
Page 6

### F. Acushnet's Letter Reargues Its Entire Motion *in Limine*.

Acushnet specifically requested that it be given an opportunity "submit a letter that outlines late disclosures issues with respect to Phil Mickelson." The majority of its letter instead focuses on why it believes all testimony from professional golfers should be barred.[3] The Court already addressed this issue multiple times in noting that lay persons, such as Phil Mickelson and Davis Love III, can provide their opinions with a proper foundation. [D.I. 349 Pre-Trial Hearing Transcript at 44:1-3; 46:21-22; and 48:22-49:4.]

Acushnet's argument that Mr. Mickelson is an improper expert witness is also undermined by the fact that Acushnet identified Mr. Love in its September 5, 2007 disclosure of *fact* witnesses. [Ex. J (Acushnet's disclosure of fact trial witnesses).] Acushnet never provided an expert report or proffer for Mr. Love.

Finally, much of Mr. Mickelson's testimony, as discussed above, is purely that of a percipient witness describing the facts surrounding the testing and release of the accused Pro V1 golf ball in 2000.

### G. Greg Norman Was Also Timely Disclosed.

Callaway Golf has also listed a second professional golfer – Greg Norman – on its list of trial witnesses. Mr. Norman, like Mr. Mickelson, was an Acushnet contract player when the Pro V1 golf ball was released. He will be able to testify regarding numerous relevant topic areas, including the golf ball's performance characteristics, the effect it had on the game of golf, user praise, and comparisons between the Pro V1 as compared to the wound balls that most professionals were playing. Unlike Mr. Mickelson, Mr. Norman also has extensive golf course design experience, and he will be able to also describe how the Pro V1 has changed the very way golf courses have to be designed.

Callaway Golf disclosed Mr. Norman as a fact witness on April 30, 2007, and offered him for deposition on May 15, 2007. [Ex. K (April 30, 2007 e-mail from Mr. Denning to Mr. Rosenthal).] Acushnet opted not to take Mr. Norman's deposition at

---

but instead was provided because one of Acushnet's expert witnesses had relied on statements in the declaration to form his opinions. Nevertheless, Callaway Golf deposed Mr. Love without complaint, and Acushnet has deposed Mr. Mickelson. Both parties are on equal footing, and neither party can claim surprise or prejudice.

---

[3] Acushnet's letter also cites to two cases that note that professional golfers can provide expert testimony regarding some issue. Neither case holds or suggests that professional golfers cannot provide lay opinion testimony. [D.I. 351 at 2.]

FISH & RICHARDSON P.C.

November 27, 2007
Page 7

that time, instead stating it wanted to wait until this Fall. Accordingly, any delay in taking Mr. Norman's deposition is because Acushnet chose to wait.

Acushnet's complaint that Callaway Golf and Mr. Norman were late in producing documents in response to Acushnet's subpoena and new set of documents requests is also without merit. Despite knowing for six months that Callaway Golf intended to call Mr. Norman as a witness, Acushnet waited until November 7, 2007 to serve the subpoena and document requests on the witness and Callaway Golf, respectively. [Exs. L and M (Subpoena to Mr. Norman and Acushnet's Third Set of Requests for Production).] Mr. Norman and Callaway Golf expedited their document collection and produced responsive documents two weeks later, on November 21, 2007. Acushnet also failed to inform the Court that Mr. Norman was overseas while his subpoena was pending. As soon as Mr. Norman returned to the United States, a reasonable search was conducted and a small supplemental production was provided to Acushnet.

In response to Acushnet's subpoena, Mr. Norman made himself available for deposition on November 26, 2007, and Acushnet deposed him on that date. The parties also learned at the deposition that Mr. Norman is hosting a golf tournament in Florida (the "Shark Shootout") from December 5-9, and he is then leaving the country to play in the South African Open during the week of December 10-14. Accordingly, his availability for trial is questionable at best.

### H.     Callaway Golf's Proposal

Callaway Golf is mindful of the Court's concerns regarding the number of professional golfers as witnesses at trial. Therefore, and for the reasons noted above, Callaway Golf respectfully requests that it be permitted to call Phil Mickelson as a live rebuttal witness at trial. Callaway Golf has no objection and never has had any objection to Acushnet calling Davis Love III as a live trial witness. Callaway Golf further requests that the parties be allowed to designate portions of Mr. Norman's deposition to be played or read at trial in lieu of his live appearance.

Respectfully,

/s/ Thomas L. Halkowski

Thomas L. Halkowski

TLH:jrm

cc:     Counsel of Record
        (via ECF and e-mail)

**TIMELINE OF EVENTS LEADING TO MR. MICKELSON'S TIMELY DISCLOSURE AS A REBUTTAL WITNESS**

- March 16, 2007 – Callaway Golf identified Mr. Uihlein as a witness for deposition. [Ex. N (March 16, 2007 e-mail from Roger Denning regarding Mr. Uihlein).]

- April 27, 2007 -- After requesting dates for Mr. Uihlein's deposition on multiple occasions, Callaway Golf, at Acushnet's request, drafted a letter outlining many of the reasons why it needed to take Mr. Uihlein's deposition. [Ex. O (April 27, 2007 letter from Mr. Denning to Mr. Rosenthal and Mr. Brannon) (Proffer No. 1).]

- May 14, 2007 -- After waiting more than two weeks for a response to its April 27, 2007 letter, Callaway Golf again asked for dates for Mr. Uihlein's deposition. [Ex. E (May 14, 2007 letter from Mr. Denning to Mr. Rosenthal).]

- May 16, 2007 -- In subsequent meet and confer, Acushnet took the position that it would not present Mr. Uihlein for deposition.

- May 25, 2007 – Callaway Golf moved to compel the deposition of Mr. Uihlein using the Court's email system for discovery disputes (Proffer No. 2).

- May 30, 2007 -- The Court then requested a proffer regarding Mr. Uihlein more detailed than the one submitted in the limited space allowed by the Court's email discovery dispute form. [D.I. 169]

- July 10, 2007 – Callaway Golf filed Proffer regarding its request to depose Mr. Uihlein (Proffer No. 3), which included an entire section regarding Mr. Uihlein's interactions with Mr. Mickelson. [D.I. 176 at 4-5.]

- July 25, 2007 – Acushnet filed response to Callaway Golf's Proffer, which included Acushnet's suggestion that Callaway Golf should call Mr. Mickelson as a witness to testify about his communications with Mr. Uihlein. [D.I. 184 at 8.]

- July 31, 2007 -- After months of negotiations, the parties eventually agreed to depose Bill Young, Acushnet's Vice President of Tour Promotions, in place of Mr. Uihlein.

- August 29, 2007 – Callaway Golf took the deposition of Mr. Young, who remembered very little about anything from the summer of 2000.

- October 1, 2007 – As Acushnet suggested in its response to Callaway Golf's Proffer, and in accordance with the Court's Scheduling Order for identifying rebuttal witnesses, Callaway Golf identified Phil Mickelson as a rebuttal witness. [Ex. H (Rebuttal Witness Disclosure).]

- October 4-5, 2007 – Callaway Golf notified Acushnet that Mr. Mickelson was available for deposition on October 11, 2007. At Acushnet's request, the deposition was rescheduled for October 25, 2007, to provide Acushnet more time to prepare.

- October 25, 2007 – The wildfires in Southern California forced the evacuation of Mr. Mickelson's home, as well as the offices and homes of Callaway Golf's counsel, and the parties agreed to reschedule Mr. Mickelson's deposition for November 15, 2007.

- November 14, 2007 – At Acushnet's request, Mr. Denning provided a proffer regarding Mr. Mickelson's expected rebuttal testimony. [Ex. I (November 14, 2007 letter from Mr. Denning to Mr. Rosenthal).]

- November 15, 2007 -- Acushnet takes the deposition of Mr. Mickelson.