# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951



ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
MUNICH
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

Thomas L. Halkowski
302 778-8407

Email
halkowski@fr.com

December 3, 2007

The Honorable Sue L. Robinson
United States District Court
for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:    *Callaway Golf Company v. Acushnet Company*
       USDC-D. Del. - C. A. No. 06-91 (SLR)

Dear Judge Robinson:

Callaway Golf writes in response to Acushnet's letter dated November 30, 2007, concerning the admissibility of DX-22, the August 21, 2002 letter from Mr. Rider to Mr. Arturi. This document was one of a number of letter exchanges between Spalding and Callaway Golf regarding an ongoing patent dispute between these two companies. This dispute involved one of the same patents at issue in this litigation – the asserted '293 patent. As a statement made in negotiations to resolve that dispute, DX-22 should be excluded from evidence under F.R.E. 408. Furthermore, Acushnet seeks to use this document to forward arguments on the merits that have been rejected by this Court, making this exhibit irrelevant and more prejudicial than probative. For these reasons, Callaway Golf respectfully requests the Court preclude Acushnet from using this exhibit in any fashion during trial.

**1. The History of the Spalding-Callaway Golf Correspondence**

In 2001 and 2002, Callaway Golf and Spalding exchanged a series of letters accusing one another of patent infringement and offering potential compromises to resolve that dispute. These letters, exchanged between their in-house legal counsel, all contain language noting that they are offers to compromise a potential litigation. For example, a January 15, 2001, letter stated,

REDACTED

      *See* Exhibit A.[1]  Similarly, in a July 1, 2002, letter, Callaway Golf noted that both companies,

                                        *See* Exhibit B.  Finally, the August 21, 2002, letter that Acushnet seeks to introduce into evidence is marked

---

[1] All exhibits are attached to this letter.

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
Page 2



"RULE 408 SETTLEMENT COMMUNICATION," and offers a face to face meeting

*See* Exhibit C. As the Court is aware, Callaway Golf eventually purchased Spalding for $175 million and obtained title to the patents in suit, including the '293 patent.

### 2. DX-22 is Irrelevant and More Prejudicial Than Probative

Before turning to the Rule 408 arguments that Acushnet spends the bulk of its letter addressing, there is an independent reason for excluding DX-22: the portion of the exhibit that Acushnet intends to rely upon at trial states
was rejected by this Court, and the exhibit is therefore irrelevant and more prejudicial than probative.

As part of an effort to convince Spalding to drop its allegations that Callaway Golf's Rule 35 ball infringed the '293 patent, Callaway Golf stated that



*See* Exhibit C at 2. As Mr. Rider explained, he was at the time

(Rider Depo. at 104:11-13). The Court, however, through summary judgment, has rejected the argument that the Nesbitt patent anticipates the '293 patent, either directly, inherently, or by referencing the Molitor patent. *See* D.I. 348. Under these circumstances, arguments by Callaway Golf's legal team during settlement negotiations are irrelevant to the issues left to be tried in the upcoming validity trial. This letter could only be used by Acushnet to reargue and confuse the jury regarding                          that this Court has rejected, which is both improper and prejudicial. For these reasons, any effort to reference DX-22 should be rejected under F.R.E. 402 and 403.

Acushnet attempts to argue that the letter is relevant as "the opposite of praise." Callaway Golf was not, however, attacking the praiseworthiness of the invention described in the patent.                                                          This is not "the opposite of praise" – it is irrelevant legal argument between the legal departments of two corporations during negotiations.

Acushnet also argues that it should be able to rebut Callaway Golf's statement that it purchased these patents as part of the acquisition. But it is undisputed that Callaway Golf **did** acquire the patents when it acquired Spalding, and it did so notwithstanding the arguments made by the lawyers during the negotiation. Moreover, since the Court has bifurcated the damages portion of this matter, Callaway Golf has no reason to go into details about the acquisition – so, this is not a justification for admitting a letter that is more likely to confuse than assist the jury.

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
Page 3

Acushnet next argues that it should be able to use the letter to rebut the position that because others have taken a license to the '293 patent the patent is non-obvious. Acushnet's argument is factually baseless, since it knows there are no third-party licenses to the '293 patent – Acushnet refused to license the patent when given the opportunity, and Callaway Golf then purchased the patent and the company.

Acushnet further argues that DX-22 is somehow relevant to willfulness. As this Court noted during the pretrial conference, it is unclear how the opinion of Callaway Golf has any bearing on the objective or subjective recklessness of *Acushnet's* actions. Nevertheless, Acushnet's argument regarding willfulness is now moot in light of the Court's ruling to bifurcate willfulness. D.I. 362 at 3.

Finally, Acushnet argues that DX-22 is relevant to bias. Acushnet does not explain its theory, and it is difficult to understand how taking a position during a negotiation shows that Callaway Golf is somehow "biased" towards anyone, including Acushnet. Acushnet appears to be confusing bias with impeachment – it wants to impeach Callaway Golf with this letter, not show any bias. But as noted above, the fact that Callaway Golf took a position on a legal issue during a settlement negotiation – a position the Court has removed from the case as a matter of law – is irrelevant. The risk of confusion makes this letter highly prejudicial. Consequently, even if the Court does not believe that DX-22 is subject to Rule 408 (which it is), it should exclude this letter as irrelevant and more prejudicial than probative under F.R.E. 402 and 403.

**3. DX-22 is Part of a Compromise Negotiation Subject to F.R.E. 408**

As an independent ground for exclusion, the letter between Callaway Golf and Spalding clearly was generated as part of a settlement discussion subject to exclusion under F.R.E. 408.

Rule 408 explicitly prohibits the later use, for the sort of purpose Acushnet proposes here, of "statements made in compromise negotiations regarding [a] claim." F.R.E. 408(a)(2). The letter itself states that it is a "**RULE 408 SETTLEMENT COMMUNICATION,**" and offers

REDACTED

As discussed above, DX-22 was clearly one part of a chain of negotiations relating to an ongoing patent dispute between Callaway Golf and Spalding.

Acushnet quotes a portion of the deposition of Peter Arturi, the recipient of DX-22, to imply that he did not consider this letter to be an offer to compromise or settle a patent dispute. In fact, one look at the quoted material, shows that Acushnet was not asking about the letter itself, but only about one paragraph of the letter. Of course that one paragraph of legal argument is not, itself, an offer to compromise or settle anything. What is an offer to settle a dispute is the last paragraph of the letter, which offers

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
Page 4

In a portion of the deposition that Acushnet did not cite in its brief, Mr. Arturi confirmed that he considered this letter to be just a continuation of the parties' efforts to resolve their dispute:

Q:

REDACTED

A:

As noted above, Mr. Rider also considered this letter to be part of his efforts to resolve this dispute. Both parties considered DX-22 to be further argument between lawyers in an on-going dispute between Spalding and Callaway Golf. Acushnet's arguments that this letter was not an "attempt to compromise" and did not contain "statements made in compromise negotiations" are simply not credible.

Acushnet next argues that it will use this letter for permissible purposes under the Rule. Rule 408 allows settlement discussions to be used for certain limited purposes, but Acushnet's motives here are transparent: it clearly wants to use DX-22 to support its argument on the merits that the '293 patent is invalid. As noted above, the other arguments it puts forward – that DX-22 is "the opposite of praise," or somehow relevant to willfulness or bias – all strain credibility (or are now moot). In reality, Acushnet wants to find a back door to raise its incorporation by reference argument using this letter, and wants to impeach Callaway Golf's position that its patents are valid. Both of these are impermissible purposes under F.R.E. 408.

Acushnet also argues that "many courts have held that Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one being litigated." The claim involved in DX-22, however, is identical to the one being litigated here – the validity of the '293 patent. Further, Acushnet fails to mention that there is also significant authority cutting against its claim that Rule 408 does not require exclusion of evidence of settlement of different claims. *See e.g., Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 872 (2d Cir. 1994) (noting that the plaintiff could not rely upon his settlement amount with third parties when calculating malpractice damages against his former attorney because they are inadmissible under Rule 408); *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986) ("Even where the evidence offered favors the settling party and is objected to by a party not involved in the settlement, Rule 408 bars the admission of such evidence unless it is admissible for a purpose other than 'to prove liability for or invalidity of the claim or its amount'").

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
Page 5

The rule that Acushnet seeks, citing its selected non-precedential cases, cuts against the very purpose for F.R.E. 408. This rule seeks to promote settlement discussions and to avoid litigation by allowing parties the freedom to enter into discussions without fear that those discussions will be used against them in later proceedings. It is irrelevant whether those proceedings are with the same party or different parties. If such communications were able to be used against a party, they would no longer engage in meaningful settlement discussions for any disputes. This chilling effect would only encourage litigation between parties, and would cut against the very purpose of F.R.E. 408.

Finally, given that the willfulness and damages portions of this case have been bifurcated for a later trial, Mr. Arturi and Mr. Rider are not scheduled to testify at trial on any issue. Thus, the potential impact of admitting this single non-probative and prejudicial statement from a letter, is that two more (lawyer) witnesses will have to testify at the trial.

For these reasons, Callaway Golf respectfully requests the Court preclude Acushnet from using DX-22 at trial.

Respectfully,

*Thomas L. Halkowski*

Thomas L. Halkowski

TLH:npj

cc: Clerk of Court (via hand delivery)
    Counsel of Record (via hand delivery on local counsel and e-mail to all counsel)

# EXHIBIT A



JAN-15-2001 MON 04:18 PM 6278367          FAX NO.  919497609502          P. 02



**@ODYSSEY®**

January 15, 2001

Peter A. Arturi
Senior Counsel and Secretary
Spalding Sports Worldwide, Inc.
425 Meadow Street
Chicopee, MA 01013-2135

Re: Hogan Apex Edge Irons

Dear Peter:

REDACTED

2285 Rutherford Road • Carlsbad, CA 92008-8815 • Telephone (760) 931-1771

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0325456

JAN-15-2001 MON 04:20 PM 6278387          FAX NO. 9194976O9502          P. 03

January 15, 2001
Page 2

REDACTED

Sincerely yours,

Steven C. McCracken
*Senior Executive Vice President and
Chief Legal Officer*

cc:  Mike Rider
     Mike Catania

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0325457

JAN-15-2001 MON 04:20 PM 6278367          FAX NO. 919497609502          P. 04

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0325458

# EXHIBIT B

JUL-01-02 MON 02:15 PM   CALLAWAY GOLF CO LEGAL   FAX NO. 760 930 5022   P. 02/05

**Callaway**
GOLF


EXHIBIT
Arturi 16
AHB 3/15/07

July 1, 2002

<u>Via Facsimile</u>
Peter Arturi, Esq.
General Counsel
Spalding Sports Worldwide, Inc.
425 Meadow Street
Chicopee, MA 01013-2135

Dear Peter:

This letter responds to your letter of April 30, 2002 to Steve McCracken. This letter is a confidential settlement discussion that is not admissible in any future proceedings between our two companies if we cannot resolve our differences.

REDACTED

Callaway Golf Company   2180 Rutherford Road   Carlsbad, CA 92008-7328   T (760) 931 1771

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0325451

**REDACTED**

**REDACTED**

JUL-01-02 MON 02:17 PM    CALLAWAY GOLF CO LEGAL    FAX NO. 760 930 5022    P. 05/05



REDACTED

Sincerely,

Michael J. Rider
Senior Vice President,
Assistant General Counsel

cc:  Steve McCracken
     Mike Catania

HIGHLY CONFIDENTIAL
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

CW 0325454

# EXHIBIT C

**Callaway**
GOLF

*Nancy – please copy for TK, MB, RK + return.*
*Thanks*

August 21, 2002

Peter A. Arturi
Vice President, Secretary and General Counsel
SPALDING SPORTS WORLDWIDE
425 Meadow Street
Chicopee, Massachusetts 01013-2135


EXHIBIT
Arturi 18
AHB 3/15/07

**RULE 408 SETTLEMENT COMMUNICATION**
The contents of this letter are being communicated as part of a confidential settlement discussion and are not admissible in any future proceedings between Callaway Golf and Spalding.

RE:   Outstanding Club and Ball Patent Issues

Dear Peter:

REDACTED

Callaway Golf Company   2180 Rutherford Road   Carlsbad, CA 92008-7328   T (760) 931 1771

HIGHLY CONFIDENTIAL INFORMATION - Subject to Protective Order                               CW 001850770

**REDACTED**