IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

          Plaintiff,

    v.

ACUSHNET COMPANY,

          Defendant.

C. A. No. 06-91 (SLR)

**REDACTED**

### DECLARATION OF THOMAS L. HALKOWSKI IN SUPPORT OF CALLAWAY GOLF COMPANY'S *OPPOSITION* TO ACUSHNET'S RULE 50(b) and 59 POST-TRIAL MOTIONS TO REVERSE OR VACATE THE JURY'S VERDICTS

I, Thomas L. Halkowski, declare as follows:

1.     I am a principal of Fish & Richardson P.C., counsel of record in this action for Callaway Golf Company. I am a member of the Bar of the State of Delaware and am admitted to this Court. I have personal knowledge of the matters stated in this declaration and would testify to them under oath if called upon to do so.

2.     Attached as **Exhibit A** is a true and correct copy of a graph from an Acushnet document, PX 1175, at AB 0118092 (with color added).

3.     Attached as **Exhibit B** is a true and correct copy of excerpts from the deposition of Dr. William MacKnight taken in this matter on August 2, 2007.

4.     Attached as **Exhibit C** is a true and correct copy of the excerpts from the deposition of Troy Lester taken in this matter on August 17, 2007.

5.     Attached as **Exhibit D** is a true and correct copy of e-mail correspondence between counsel for Callaway Golf Company and counsel for Acushnet Company dated November 28-30, 2007 D(1) and January 29, 2008 D(2).

6.     Attached as **Exhibit E** is a true and correct copy of the Expert Report of Dr. William Risen, completed in this matter on July 20, 2007.

# REDACTED

7.     Attached as **Exhibit F** is a true and correct copy of excerpts from the Expert Report of Dr. Robert Statz, completed in this matter on July 31, 2007.

8.     Attached as **Exhibit G** is a true and correct copy of a letter from Wally Uihlein to Titleist customers dated February 20, 2008.

9.     Attached as **Exhibit H**


10.     Attached as **Exhibit I** is a true and correct copy of an Acushnet Company statement dated February 4, 2008.

11.     Attached as **Exhibit J** is a true and correct copy of Callaway Golf's *Markman* and Summary Judgment Presentation Slides.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of February, 2008 at Wilmington, Delaware.


_/s/ Thomas L. Halkowski_____
Thomas L. Halkowski

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 25, 2008, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorneys for Defendant
ACUSHNET COMPANY

Alan M. Grimaldi, Esq.
Joseph P. Lavelle
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

Attorneys for Defendant
ACUSHNET COMPANY

/s/ Thomas L. Halkowski
Thomas L. Halkowski

# EXHIBIT A

Ex. A: Graph from an Acushnet document, PX 1175, at AB 0118092 (with color added)



# EXHIBIT B

# REDACTED
# IN ITS ENTIRETY

# EXHIBIT C

# REDACTED
# IN ITS ENTIRETY

# EXHIBIT D

# REDACTED
# IN ITS ENTIRETY

# Exhibit E

# REDACTED IN ITS ENTIRETY

EXHIBIT F

# REDACTED
# IN ITS ENTIRETY

# EXHIBIT G

**_Titleist_® E-Partners**

February 20, 2008

**Dear Valued Customer:**

As you may know, we are currently involved in a patent dispute with Callaway Golf involving our Pro V1 golf ball family. We know that there is a lot of speculation and misinformation in the marketplace about this law suit, and I wanted to reach out to you directly to be sure that you had the facts and to share some new information.

**First and foremost, I want to assure you that it is business as usual, and you can continue to order, sell and play Pro V1 and Pro V1x golf balls with confidence.**

This dispute relates to patents that were issued by the U. S. Patent and Trademark Office after the Pro V1 came into the market and became the best-selling ball in golf. At Acushnet's request, in early 2007 the Patent Office re-examined these patents and issued initial decisions finding that all claims of all four patents were invalid. Over the last 90 days, the Patent Office issued second decisions on each of the four patents and again determined all claims of all four patents invalid. The last three second Patent Office decisions were issued after the jury trial ended on December 14, 2007. In this process, four separate patent examiners have reached the same conclusion – that it was a mistake to issue these patents in the first place.

Unfortunately, this pivotal information was not allowed as evidence at the trial in which the jury rendered an inconsistent and unsupportable verdict. As a result, Acushnet has asked the Court to come to the same conclusion as did the Patent Office and determine that all claims of all four patents are invalid, thereby reversing the jury verdict.

**Second, I want to assure you that we will vigorously oppose Callaway's request for an injunction against the sale of the Pro V1.** Acushnet's opposition will include the inconsistency of the jury verdict, the recent decisions from the Patent Office and Callaway's long delay in filing the law suit.

These matters will take the court some time to decide. We are confident in our positions and believe that they are correct. However, regardless of what the Court decides, these matters will likely be appealed to a higher court, resulting in final decisions not being made until well into the future.

I can also tell you that we are well along in the development of the next generation of the Pro V1 family, which is slated for introduction in early 2009. This is consistent with the two-year cycle for introducing new and improved product that we have maintained for the Pro V1 since its inception in 2001. These golf balls will continue to be based on Acushnet technology, including 70 of our own patents, and will be outside the claims of the Callaway patents involved in the law suit.

I hope that this gives you a better understanding of the situation and reaffirms the confidence and steadfast support that you have maintained for our brand through the years. At Titleist, we dedicate ourselves to earning your trust and that of your customers every day. It is a commitment to excellence that began with the first Titleist golf ball over 70 years ago, and remains as purposeful today. We look forward to supplying you with the highest performance and best quality golf balls for years to come.

Thank you for your continued support,

Wally Uihlein
Chairman and Chief Executive Officer
Acushnet Company

# EXHIBIT H

# REDACTED
# IN ITS ENTIRETY

# EXHIBIT I

ACUSHNET COMPANY STATEMENT REGARDING CALLAWAY PATENT CASE

Fairhaven, MA (February 4, 2008) - Acushnet Company continues to believe strongly that the patents in question are invalid and that the jury decision was in error. The jury did not learn pivotal information about the U.S. Patent and Trademark Office decisions finding all claims of each and every patent asserted by Callaway in their lawsuit to be invalid. Furthermore, the inconsistent verdict and certain rulings made before and during the trial call into question the conclusion reached by the jury.

Inconsistent Verdict

The verdict delivered by the jury on December 14th, determining that eight of the nine "claims" across four Callaway-owned patents are valid, contains an internal inconsistency that is, in Acushnet's view, irreconcilable. Patent "claims" are the part of the patent that define its coverage. The one claim that was found invalid by the jury has the same coverage or scope as at least three of the other claims that the jury found to be valid. In fact, the invalid patent is as narrow, or narrower, than the other claims. As a result, Acushnet believes these other claims, at a minimum, must also be invalid or at a minimum, that the jury's verdict is irreconcilable on this point. "This internal inconsistency in the jury verdict calls into question the jury's finding of validity on the other claims at issue," said Joseph Nauman, Acushnet Company executive vice president, corporate and legal.

Judgment as a Matter of Law / New Trial

Acushnet Company believes the jury verdict is erroneous. Under the current Supreme Court standard, Acushnet believes it met its burden in proving by clear and convincing evidence that each of these patents is invalid. Certain evidence that was excluded from the original trial can and should also be considered by the Court in determining the validity of these patents as a matter of law. For example, the Court did not allow evidence to be presented to the jury relating to the U.S. Patent and Trademark Office (PTO) findings from early 2007, when initial office actions from the PTO found all claims of all four patents to be invalid. That evidence can be considered by the Court in ruling on post-trial motions.

As a result, Acushnet has filed a motion to seek a determination by the Court that, as a matter of law, all claims of each patent are invalid, thereby reversing the jury verdict. In the alternative, Acushnet has asked for a new trial. "There are a number of evidentiary issues that Acushnet believes materially impacted the outcome in this trial," added Mr. Nauman. "Acushnet believes that a JMOL, or in the alternative a new trial, is an appropriate vehicle to address and reconcile the inconsistent jury verdict and these evidentiary issues."

After the court rules on these post trial motions, the parties will have an opportunity to appeal the judge's decision to the U.S. Court of Appeals for the Federal Circuit, an appeals court in Washington, D.C. that hears appeals in patent cases.

Opposition to Injunction

Acushnet Company will vigorously oppose Callaway's request for injunctive relief.  "Acushnet's opposition will include the inconsistency of the jury verdict, the U.S. Patent and Trademark Office's pending reexaminations where all four patents have been found invalid, Callaway's long delay in bringing suit, and the fact that Callaway does not utilize the asserted patents contained in the suit," continued Nauman.  "These factors and others suggest that Callaway should not be entitled to injunctive relief."

Acushnet will ask the Court to deny any such request, and allow Acushnet to continue to manufacture and make its current products available to the marketplace.  Alternatively, Acushnet will request that the Court should stay any injunction until after the case has been appealed to the Federal Circuit

Patent and Trademark Office (PTO) Actions

In January 2006, before Callaway filed this litigation, Acushnet petitioned the PTO to reexamine the four patents in suit.  The PTO found that there was a "new question of patentability" and accepted the reexamination requests.  In early 2007 the PTO issued first office actions finding that all claims of all four patents were invalid.  Over the last 90 days, the PTO has issued second office actions on each of the four patents, again determining all claims of all patents to be invalid.  The last three of these second office actions were issued after the trial and after Callaway had a full opportunity to rebut the arguments made by the patent examiner and Acushnet.  In this process four separate PTO examiners have been involved in evaluating the validity of these patents and all four have concluded that they are invalid.  In addition, a continuation application from one of the patents in suit, with nearly identical claims, was rejected as invalid by the examiner on some of the same grounds at issue in the current reexaminations.  That rejection was affirmed by the Patent Board of Appeals, was not appealed by Callaway and is final.

"This case is far from over," concluded Mr. Nauman.  "We will continue to defend ourselves vigorously and fully expect to prevail in having all claims of all four patents determined to be invalid."

# Exhibit J

# REDACTED
# IN ITS ENTIRETY