**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | C.A. No. 06-91-SLR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPENDIUM OF EXHIBITS IN SUPPORT OF ACUSHNET'S BRIEF
IN OPPOSITION TO CALLAWAY GOLF'S MOTION
<u>FOR PERMANENT INJUNCTION</u>**

<u>**VOLUME 2 OF 5**</u>

<u>**EXHIBITS 16 TO 17**</u>

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Mark L. Whitaker
Brian A. Rosenthal
Nicholas J. Little
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: February 25, 2008
Public Version Dated: March 3, 2008
850758 /30030

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

## TABLE OF CONTENTS

| DESCRIPTION | TITLE | EX. |
|---|---|---|
| ▮▮▮ | ▮▮▮▮▮▮ | 1 |
| ▮▮▮ | ▮▮▮▮▮▮ | 2 |
| ▮▮▮ | ▮▮▮▮▮▮ | 3 |
| Nauman Decl. | Declaration of Joseph Nauman 2/25/08 | 4 |
| ▮▮▮▮▮ | ▮▮▮▮▮ | 5 |
| ▮▮ | ▮▮▮▮▮ | 6 |
| ▮▮ | ▮▮▮▮▮ | 7 |
| ▮▮ | ▮▮▮▮▮ | 8 |
| ▮▮ | ▮▮▮▮ | 9 |
| ▮▮ | ▮▮▮▮ | 10 |
| ▮▮ | ▮▮▮▮▮▮ | 11 |
| ▮▮ | ▮▮▮▮ | 12 |
| ▮▮ | ▮▮▮▮▮ | 13 |
| Maher Decl. | Declaration of David Maher, 2/25/08, and Exhibits A-E | 14 |
| New Office Action '873 | Office Action on '873 Patent, 1/7/08 | 15 |
| New Office Action '293 | Office Action on '293 Patent, 1/23/08 | 16 |
| New Office Action '156 | Office Action on '156 Patent, 1/30/08 | 17 |
| Morgan Declaration | Declaration of William Morgan, 2/25/08 | 18 |

| DESCRIPTION | TITLE | EX. |
|---|---|---|
| ██████ | ████████████████████████████ | 19 |
| █████████ | ████████████████████ | 20 |
| ██████████████████ | ████████████████████ | 21 |
| █████████████ | ██████████████████████████ | 22 |
| DX-1008 | Acushnet Test Results 6/28/00 | 23 |
| █████████████████ | ███████████████████████ | 24 |
| ██████ | █████████████████████ | 25 |
| █████████████████ | ███████████████████████████ | 26 |
| ███████████ | ██████████████████ | 27 |
| ████████████████ | ████████████████████ | 28 |
| ███████████ | ██████████████████ | 29 |
| █████████████████ | ██████████████████████████ | 30 |
| ███████████████ | ████████████████████████ | 31 |
| ██████████████ | ███████████████████████ | 32 |
| ██████████████ | ███████████████████████ | 33 |
| ████████████████ | ███████████████████████ | 34 |
| █████████████ | ██████████████████████ | 35 |

| **DESCRIPTION** | **TITLE** | **EX.** |
|---|---|---|



36

37

38

39

40

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 3, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on March 3, 2008, the attached document was Electronically Mailed

to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030

# EXHIBIT 16

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,120 | 01/17/06 | 6,210,293 | |

DOROTHY P. WHELAN
FISH AND RICHARDSON P.C.
P.O. BOX 1022
MINNEAPOLIS, MN 55440-1022

| EXAMINER |
|---|
| GELLNER, J. |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

01/23/08

# *INTER PARTES* REEXAMINATION
# COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED
STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE
PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to
the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of
this communication.

PTOL-2071 (Rev.07-04)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ALAN M. GRIMALDI
HOWREY LLP
1299 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20004

## Transmittal of Communication to Third Party Requester
### *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,120*.

PATENT NUMBER *6,210,293*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| *OFFICE ACTION IN INTER PARTES REEXAMINATION* | Control No. 95/000,120 | Patent Under Reexamination 6210293 |
|---|---|---|
| | Examiner Jeffrey L. Gellner | Art Unit 3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on <u>30 April 2007</u>
Third Party(ies) on <u>29 May 2007</u>

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II. SUMMARY OF ACTION:**

1a. ☒ Claims <u>1-8</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims <u>1-8</u> are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____    ☐ are acceptable    ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is:    ☐ approved. ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
    ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No <u>95000120</u>.
10. ☐ Other _____

Application/Control Number:                                      Page 2
95/000,120
Art Unit: 3993

## DETAILED ACTION

This 2nd Action Non-Final is in response to the Patent Owner's response received 30

April 2007 and the Third Party Requester's response received 29 May 2007. The action is non-

final and not an action closing prosecution because, upon review of the arguments presented by

the Third Party Requester, Examiner has newly adopted in this office action Grounds 1, 8, 15,

22, 29, 36, 43, and 50 of rejection.

### *IDS*

The IDS received 5 Nov. 2007 is acknowledged. A signed 1449 accompanies this office

action. The second page of the 1449 was not found in the image file wrapper (IFW). Also, the

marked through entries, or documents, could not be found by the Examiner in the (IFW) or

artifact folder. The Patent Owner should review the IFW to ensure that the entries are properly

presented.

### *Statutory Basis for Grounds of Rejections - 35 USC § 102 and 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on
sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

Application/Control Number:                                                Page 3
95/000,120
Art Unit: 3993

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

### Third Party Requester's Grounds of Rejections

#### Re. Claim 1

**Ground #1.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**Ground #2.** In the alternative to Ground #1, the requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

**Ground #3.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673, (Wu).

**Ground #4.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

**Ground #5.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #6.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #7.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

#### Re. Claim 2

**Ground #8.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

Application/Control Number:                                    Page 4
95/000,120
Art Unit: 3993

**Ground #9.** In the alternative to Ground #8, the requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #10.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #11.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

**Ground #12.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #13.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #14.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 3*

**Ground #15.** The requester submits that claim 3 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #16.** In the alternative to Ground #15, the requester submits that claim 3 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #17.** The requester submits that claim 3 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

Application/Control Number:                                    Page 5
95/000,120
Art Unit: 3993

   **Ground #18.**  The requester submits that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.

No. 4,674,751.

   **Ground #19.**  The requester submits that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.

Pat. No. 4,274,637.

   **Ground #20.**  The requester submits that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.

5,334,673.

   **Ground #21.**  The requester submits that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.

Pat. No. 4,674,751.


                                   *Re. Claim 4*

   **Ground #22.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

   **Ground #23.**  In the alternative to Ground #22, the requester submits that claim 4 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in

view of Molitor et al., U.S. Pat. No. 4,274,637.

   **Ground #24.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.

5,334,673.

   **Ground #25.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.

No. 4,674,751.

   **Ground #26.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.

Pat. No. 4,274,637.

Application/Control Number:                                    Page 6
95/000,120
Art Unit: 3993

  **Ground #27.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

  **Ground #28.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.


*Re. Claim 5*

  **Ground #29.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

  **Ground #30.**  In the alternative to Ground #29, the requester submits that claim 5 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637.

  **Ground #31.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673.

  **Ground #32.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751.

  **Ground #33.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,274,637.

  **Ground #34.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

  **Ground #35.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

Application/Control Number:                                    Page 7
95/000,120
Art Unit: 3993

## *Re. Claim 6*

**Ground #36.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #37.** In the alternative to Ground #36, the requester submits that claim 6 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #38.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673.

**Ground #39.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751.

**Ground #40.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,274,637.

**Ground #41.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

**Ground #42.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

## *Re. Claim 7*

**Ground #43.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**Ground #44.** In the alternative to Ground #43, the requester submits that claim 7 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

Application/Control Number:                                          Page 8
95/000,120
Art Unit: 3993

    **Ground #45.**  The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673, (Wu).

    **Ground #46.**  The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751, (Molitor '751).

    **Ground #47.**  The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et
al., U.S. Pat. No. 4,274,637.

    **Ground #48.**  The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #49.**  The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

*Re. Claim 8*

    **Ground #50.**  The requester submits that claim 8 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

    **Ground #51.**  In the alternative to Ground #50, the requester submits that claim 8 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

    **Ground #52.**  The requester submits that claim 8 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673, (Wu).

    **Ground #53.**  The requester submits that claim 8 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751, (Molitor '751).

Application/Control Number:                                        Page 9
95/000,120
Art Unit: 3993

    **Ground #54.** The requester submits that claim 8 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et
al., U.S. Pat. No. 4,274,637.

    **Ground #55.** The requester submits that claim 8 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #56.** The requester submits that claim 8 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

### *Summary of Grounds Adopted vel non*

    In sum, Proposed Grounds 1-18, 22-39, 43-56 are **Adopted** by the Examiner.

    In sum, Proposed Grounds 19-21 and 40-42 are **Not Adopted** by the Examiner.

Application/Control Number:                                    Page 10
95/000,120
Art Unit: 3993

### *Summary of the Grounds of Rejections*

Claims 1-8 are rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No.

4,431,193 (incorporating by reference Molitor et al., U.S. Pat. No. 4,274,637).

Claims 1-8 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 in view of Molitor et al., U.S. Pat. No. 4,274,637.

Claims 1-8 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 mentioning Molitor et al., U.S. Pat. No. 4,274,637 in view of Wu, U.S. Pat.

No. 5,334,673, as evidenced by Exhibit C.

Claims 1-8 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 mentioning Molitor et al., U.S. Pat. No. 4,274,637 in view of Molitor et al.,

U.S. Pat. No. 4,674,751.

Claims 1, 2, 4, 5, 7 and 8 are rejected under 35 U.S.C. § 103(a) as being unpatentable

over Proudfit, U.S. Pat. No. 5,314,187 in view of Molitor et al., U.S. Pat. No. 4,274,637.

Claims 1, 2, 4, 5, 7 and 8 are rejected under 35 U.S.C. § 103(a) as being unpatentable

over Proudfit, U.S. Pat. No. 5,314,187 in view of Wu, U.S. Pat. No. 5,334,673.

Application/Control Number:                          Page 11
95/000,120
Art Unit: 3993


Claims 1, 2, 4, 5, 7 and 8 are rejected under 35 U.S.C. § 103(a) as being unpatentable

over Proudfit, U.S. Pat. No. 5,314,187 in view of Molitor et al., U.S. Pat. No. 4,674,751.

Application/Control Number:                                    Page 12
95/000,120
Art Unit: 3993

### Proposed Third Party Requester's Rejections

*Issue of Inherency*

Multiple proposed rejections that the third party requester submits are based on the inherent properties of the materials. In order to prove the inherent properties of these materials the requester has provided "product data sheets" for the following materials: SURLYN (Exhibit I) and ESTANE (Exhibit J). These "product data sheets" have publication dates later than the critical date of the claimed inventions. Also, the third party requester has provided other Exhibits to prove or evidence inherency, e.g. Exhibit C (description of a golf product performance characteristics); Exhibits G and L (patent owners admissions)

MPEP § 2124 lists exceptions to the rule that the publication date must precede the critical data of the claimed invention: "...facts [that] include the characteristics and properties of a material... ". The Shore D hardness and flexural modulus are characteristics and properties of a material. Thus, it is appropriate to use these "product data sheets" to show such a universal fact as the inherent properties of a known material. Moreover, See also MPEP § 2112.01: "Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case of either anticipation or obviousness has been established. *In re Best*, 562 F.2d 1252, 1255, 195 USPQ 430, 433 (CCPA 1977)." And, "Products of identical chemical composition can not have mutually exclusive properties." "A chemical composition and its properties are inseparable. Therefore, if the prior art teaches the identical chemical structure, the properties applicant discloses and/or claims are necessarily present. *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

Application/Control Number:                              Page 13
95/000,120
Art Unit: 3993


Re. Claim 1

**Proposed Third Party Requester Rejection: Ground #1.**

The requester submits on pages 14-17 that claim 1 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

In the request on pages 14 through 17 the third party requester proposes that claim 1 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637. The third

party requester points out that Molitor '637 is incorporated by reference into Nesbitt because

Nesbitt refers to Molitor '637. (See Nesbitt col. 3, ll. 54-60).

**This rejection is adopted in this office action.**

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 1 | Nesbitt (primary) with (Molitor '637 incorporated by reference) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.) |

Application/Control Number:                           Page 14
95/000,120
Art Unit: 3993

|  | Per the '293 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('293 patent, col. 2, lines 54-55.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
|---|---|
| said inner cover layer having a thickness of 0.100 to 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches**." (Nesbitt, col. 3, ll. 19-23). |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer having | "**An outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |

Application/Control Number:                          Page 15
95/000,120
Art Unit: 3993

| | |
|---|---|
| said outer cover layer having a thickness of 0.010 to 0.070 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer comprising a relatively soft polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

Nesbitt incorporating by reference Molitor '637 describe a number of compositions suitable for the inner cover layer 14. Of particular interest in this case are Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873 Patent, col. 2, ll. 43-50.

Application/Control Number:                                    Page 16
95/000,120
Art Unit: 3993

Moreover, as shown in the "Properties Grid for Selected Industrial Grades of SURLYN"

SURLYN 9650's ordinate compared to the other grades of SURLYN is toward the "Low %

Acid" side of the graph. Thus, based on this evidence, Nesbitt incorporating by reference

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. SURLYN 8940 has a Shore D

harness value of 65 (from Exhibit I - Surlyn Product Information) while SURLYN 9650 has a

Shore D harness value of 63 (from Exhibit I - Surlyn Product Information). Both of these values

are greater than 60. Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer

made from a thermoplastic polyurethane identified as ESTANE 58133. A review of the

scientific literature yields that ESTANE 58133 has an inherent Shore D hardness of 55, see

Exhibit J "ESTANE 58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the

range claimed of Shore D hardness less than 64. Therefore, Molitor '637's teaching of using

ESTANE 58133 inherently meets the claim limitation of providing a outer cover layer of

polyurethane material having a Shore hardness of less than 64. Nesbitt discloses its outer layer

was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural

modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for

Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873

patent, golf ball designers knew that the mechanical properties of the materials used as a golf-

ball cover layer were more critical to golf ball performance than the actual materials themselves,

see Exhibit G at 334. Thus, because the actual chemical composition of the material is not

critical to the practice of the invention with respect to its mechanical performance, i.e. its "click

and feel" for a golfer, one of ordinary skill in the art at the time the invention was made would

Application/Control Number:                                    Page 17
95/000,120
Art Unit: 3993

find it obvious to substitute one material for another material if both materials had substantially

the same mechanical properties.

Also, Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic

polyurethane identified as ESTANE 58133. A review of the scientific literature yields that

ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU

Product Data Sheet". **A Shore D hardness of 55 is within the range claimed of Shore D**

**hardness less than 64.** Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

As the request recognizes on page 17:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those layers. (See
> Exhibit G at 334.) Furthermore, the relatively soft polyurethane material taught by

Application/Control Number:                                    Page 18
95/000,120
Art Unit: 3993

Molitor '637 and the relatively soft ionomer inner cover layer taught by Nesbitt have
similar mechanical properties including an identical Shore D hardness of 55 and a
similar, relatively low flexural modulus of 25,000 and 14,000 psi, respectively.
(Compare Exhibit I with Exhibit J.) This would have further suggested to those skilled
in the art that the soft polymeric materials taught by Molitor, including, for example,
the relatively soft polyurethane material would have been substitutable for the soft
ionomer outer cover layer in one example taught by Nesbitt.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 1 based on Nesbitt incorporating by reference Molitor '637 was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


Ground 1: Patent Owner's Argument

Patent Owner does not argue this rejection.


Ground 1: Third Party Requester's Comments

Third Party Requester argues that the language of Nesbitt at col. 3, lines 56-61, was a

proper incorporation by reference of Molitor '637. In the 1st Office Action the Examiner stated

that the language of Nesbitt was not proper incorporation of reference because the perfecting root

words of "incorporate" and "reference" were not in the reference statement (1st Office Action

Application/Control Number:                                    Page 19
95/000,120
Art Unit: 3993

pages 10-11).  Third Party Requester's rebuttal is that the standard used by the Examiner was not

the standard for incorporation by reference during prosecution of the Nesbitt patent (Third Party

Requester's Comments at pages 3-5).  The Third Party Requester bolsters this argument by citing

several court decisions (Third Party Requester's Comments at pages 5-6).


Ground 1: Examiner's Response to the Argument and Comments

     Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection.  The language of incorporation used in Nesbitt is found at col. 3,

lines 54-61, and states that "Polymeric materials are preferably such as ionomer resins which are

foamable.  **Reference is made** to the application Ser. No. 15,658, of Robert P. Molitor issued

into U.S. Patent No. 4,274,637 which describes a number of foamable compositions of a

character which may be employed for one or both layers . . . " (emphasis added).

     The pertinent language of incorporation by reference quoted in *In re Hughes* is found at

550 F.2d 1275 and states that "**Reference is made** to application Ser. No. 131,108 for complete

description of methods of preparing aqueous polymeric dispersions applicable in the hereinafter

described invention" (emphasis added).  This language was held to incorporate '108.

     The pertinent language of incorporation by reference quoted in *In re Voss* is found at 557

F.2d 816 and states that "**Reference is made** to United States Patent No. 2,920,971, granted to

S.D. Stookey '971, for a general discussion of glass-ceramic materials and their production"

(emphasis added).  This language was held to incorporate '971.

Application/Control Number:                                    Page 20
95/000,120
Art Unit: 3993

Since the language in Nesbitt for incorporation by reference is virtually identical to the

language used in *In re Hughes* and *In re Voss*, the Examiner concludes that Nesbitt incorporates

by reference Molitor '637.


**Proposed Third Party Requester Rejection: Ground #2.**

In the alternative, the requester submits on pages 14–17 that claim 1 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 1 | Nesbitt (primary) with Molitor '637 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a **solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.) |

Application/Control Number:                                      Page 21
95/000,120
Art Unit: 3993

| | |
|---|---|
| | Per the '293 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('293 patent, col. 2, lines 54-55.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer having a thickness of 0.100 to 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches**." (Nesbitt, col. 3, ll. 19-23). |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |

Application/Control Number:                          Page 22
95/000,120
Art Unit: 3993

| said outer cover layer having a thickness of 0.010 to 0.070 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
|---|---|
| said outer cover layer comprising a relatively soft polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. SURLYN 8940 has a Shore D

harness value of 65 (from Exhibit I - Surlyn Product Information) while SURLYN 9650 has a

Shore D harness value of 63 (from Exhibit I - Surlyn Product Information). Both of these values

are greater than 60. Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer

made from a thermoplastic polyurethane identified as ESTANE 58133. A review of the

scientific literature yields that ESTANE 58133 has an inherent Shore D hardness of 55, see

Exhibit J "ESTANE 58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the

range claimed of Shore D hardness less than 64. Therefore, Molitor '637's teaching of using

ESTANE 58133 inherently meets the claim limitation of providing a outer cover layer of

polyurethane material having a Shore hardness of less than 64. Nesbitt discloses its outer layer

was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural

modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for

Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873

patent, golf ball designers knew that the mechanical properties of the materials used as a golf-

ball cover layer were more critical to golf ball performance than the actual materials themselves,

see Exhibit G at 334. Thus, because the actual chemical composition of the material is not

critical to the practice of the invention with respect to its mechanical performance, i.e. its "click

and feel" for a golfer, one of ordinary skill in the art at the time the invention was made would

find it obvious to substitute one material for another material if both materials had substantially

the same mechanical properties.

Also, Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic

polyurethane identified as ESTANE 58133. A review of the scientific literature yields that

ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU

Product Data Sheet". **A Shore D hardness of 55 is within the range claimed of Shore D**

**hardness less than 64**. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and    transpolyisoprene,    block    copolymers    of    styrene    and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

As the request recognizes on page 17:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those layers. (See
> Exhibit G at 334.) Furthermore, the relatively soft polyurethane material taught by

Molitor '637 and the relatively soft ionomer inner cover layer taught by Nesbitt have similar mechanical properties including an identical Shore D hardness of 55 and a similar, relatively low flexural modulus of 25,000 and 14,000 psi, respectively. (Compare Exhibit I with Exhibit J.) This would have further suggested to those skilled in the art that the soft polymeric materials taught by Molitor, including, for example, the relatively soft polyurethane material would have been substitutable for the soft ionomer outer cover layer in one example taught by Nesbitt.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the mechanical properties of the materials used as a golf-ball cover layer were more critical to golf ball performance than the actual materials themselves, see Exhibit G at 334.

Thus, because it appears that to one of ordinary skill in the art at the time the invention was created that the actual chemical composition of the material is not critical to the practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to substitute one material for another material if both materials had substantially the same mechanical properties.

This rejection of claim 1 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 2: Patent Owner's Argument

Application/Control Number:                                    Page 26
95/000,120
Art Unit: 3993

Patent Owner argues that the combination of Nesbitt and Molitor '637 is improper

because: (1) Nesbitt's entire focus is on golf balls with all-ionomer resins, preferably foamable,

two-layer covers and references Molitor '637 for examples of foamable ionomer resins. Hence,

Nesbitt teaches away from the disclosure of Molitor '637's disclosure of non-ionomeric resins,

including polyurethane (Patent Owner's Response at pages 15-16); (2) in a deposition (Exhibit

F) Nesbitt, himself, stated that he did not consider use of polyurethane as an outer cover material

(Patent Owner's Response at middle of page 16); (3) Nesbitt combined with Molitor '637 is

improper because their individually disclosed thicknesses for the outer layer are divergent

(Patent Owner's Response at page 17; (4) neither reference discloses a Shore D hardness of 64

or less for the outer layer measured on the ball with the Examiner relying on commercial

literature of ESTANE polyurethane (Exhibit J) for a hardness value. This value is not probative

because hardness values of the same material will differ depending upon the total construction of

the ball (Patent Owner's Response at middle of page 18); (5) one of ordinary skill did not know

at the time of the claimed invention to use a thin, polyurethane cover layer have a Shore hardness

of 64 or less on the ball before the patent at issue taught this construction (Patent Owner's

Response at top of page 16); and, (6) the combination impermissibly uses hindsight

construction by scouring the prior art to locate individual claim elements (Patent Owner's

Response at middle of page 19).


Ground 2: Third Party Requester's Comments

As to the Patent Owner's first argument, the Third Party Requester states that the plain

language of Nesbitt is that the outer or inner cover layers can be of a synthetic polymeric

Application/Control Number:                                     Page 27
95/000,120
Art Unit: 3993

material and that Molitor '637 gives examples of synthetic polymeric materials, including

polyurethane (Third Party Requester's Comments at page 19 to top of page 20).

    As to the Patent Owner's second argument, the Third Party Requester states that the Fed.

Cir. takes a dim view of testimony for a patent's meaning from inventors after the fact citing *Bell*

*& Howell Document Mgmt. Prods. Co. v Altek Sys.* (Third Party Requester's Comments at page

20).

    As to the Patent Owner's third argument, the Third Party Requester states that the range

of thicknesses in the two patents overlay and disclose in part the same ranges, and, hence a

person of ordinary skill would find it obvious to substitute one layer material for another (Third

Party Requester's Comments at bottom of page 20 to top of page 21).

    As to the Patent Owner's fourth argument, the Third Party Requester states that an expert

in the art produced a three-piece ball with the core and inner layer of Nesbitt and the cover of

Molitor '637. The ball exhibited Shore hardness values within those of the claimed values

(Third Party Requester's Comments at page 21).

    As to the Patent Owner's fifth argument, the Third Party Requester states that golf balls

with a core and inner and outer layers were known before the filing of the '873 patent (Third

Party Requester's Comments at page 17 to page 19). Further, polyurethane has been used in golf

ball covers before the filing of the '873 patent (Third Party Requester's Comments at page 17 to

page 19).

    As to the Patent Owner's sixth argument, the Third Party Requester states that the

combination of a ball with the core and inner layer of Nesbitt with an outer polyurethane layer is

proper in light of the decisions in *Ex parte Sullivan* and *KSR v. Teleflex* (Third Party Requester's

Application/Control Number:                                    Page 28
95/000,120
Art Unit: 3993

Comments at page 14 to page 16). In *Sullivan* a split panel of the BPAI held that ""[i]n applying

the test for obviousness, we conclude that the teaching of WU clearly would have made it

obvious at the time of the invention was made to a person of ordinary skill in the art to have

modified Nesbitt's golf ball by using polyurethane as the outer cover material to achieve the

expected benefits therefrom taught by Wu (i.e., to have the "click" and "feel" of balata, improved

shear resistance and cut resistance, durability; and resiliency)."" (Third Party Requester's

Comments at middle of page 14). In *KSR* a unanimous Court held that ""[c]ommon sense

teaches . . . that . . . in many cases, a person of ordinary skill will be able to fit the teachings of

multiple patents together like pieces of a puzzle."" (Third Party Requester's Comments at top of

page 16).


Ground 2: Examiner's Response to the Argument and Comments

      Examiner agrees with the comments of the Third Party Requester and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained.

Although Nesbitt's emphasis (in his patent and deposition) may be on all-ionomer resins, it is

settled law that a patent teaches all that it discloses including nonpreferred embodiments (MPEP

2123(I)). Since Nesbitt references the Molitor '637 patent, one of ordinary skill would logically

look at its complete disclosure which includes the use of polyurethane as an outer cover. The

combination is proper because, in addition to the holdings quoted by the Third Party Requester in

their comments, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within his or her technical

Application/Control Number:                                        Page 29
95/000,120
Art Unit: 3993

grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of

ordinary skill and common sense" (slip opinion of *KSR* at middle of page 17).  Here, the problem

of producing a golf ball with distance, durability, "click," and feel was known (Patent Owner's

Response at bottom of page 4).  Polyurethane was a known solution for providing "click" and

feel (Third Party Requester's Comments *id.*).  The resulting golf ball with a polyurethane outer

cover layer had the expected results (*Sullivan* at page 11).  Thus, the golf balls of claim 1 are of

ordinary skill and common sense.


**Proposed Third Party Requester Rejection: Ground #3.**

        The requester submits on pages 18-20 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

        Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

        Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations.  As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 1 | Nesbitt (primary) mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |

Application/Control Number:                          Page 30
95/000,120
Art Unit: 3993

| | |
|---|---|
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '293 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('293 patent, col. 2, lines 54-55.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer having a thickness of 0.100 to 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches**." (Nesbitt, col. 3, ll. 19-23). |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which |

| layer, | describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |
| | Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |
| | ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | **Wu**: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66). |
| | **Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, inter alia, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention. More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38). |
| | See also below for Shore D hardness of 64 or less limitation explanation. |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer comprising a relatively soft polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |

Application/Control Number:                                    Page 32
95/000,120
Art Unit: 3993

| | |
|---|---|
| | Molitor '637:  In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer.<br><br>Wu: "[t]he present invention is a golf ball product made from a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents or difunctional glycols. The term "golf ball product" as used in the specification and claims means a cover, a core, a center or a one-piece golf ball. The cover of a golf ball made in accordance with the present invention has been found to have good shear resistance, cut resistance, durability and resiliency. **Preferably, the polyurethane composition of the present invention is used to make the cover of a golf ball.**" (Wu, col. 2, ll. 33-44). |

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer.  Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993.  Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata.  Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38.  This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball.  Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure.  Exhibit C teaches that the

Application/Control Number:                                    Page 33
95/000,120
Art Unit: 3993

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

　　　　This rejection of claim 1 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.


Ground 3: Patent Owner's Argument

Application/Control Number:                                      Page 34
95/000,120
Art Unit: 3993

Patent Owner argues that the combination of Nesbitt and Wu is improper because: (1) the Wu patent is silent on the thickness of the polyurethane layer (Patent Owner's Response at page 20); (2) the Wu patent is silent on the Shore hardness value and in a deposition Ms. Wu said she could not predict what the hardness would be of a finished golf ball (Patent Owner's Response at page 20); (3) the Titleist 1 ball, which Examiner uses to disclose the proper hardness of the outer layer, or cover, because the ball's commercial literature lists the Wu patent, is not competent evidence because Wu's patent's claims are silent as to hardness (Patent Owner's Response at bottom of page 20 to top of page 21); (4) the claimed invention is the synergistic combination of features and the Examiner impermissibly uses hindsight to reassemble the ball (Patent Owner's Response at page 21); and, (5) the BPAI's divided opinion (the decision in *Ex parte Sullivan*) is not binding and the claim here is more narrow (Patent Owner's Response at page 21).

Ground 3: Third Party Requester's Comments

As to the Patent Owner's second argument, the Third Party Requester states that Nesbitt discloses the claimed Shore D hardness value at col. 2, lines 43-49, when used with and the Surlyn Data Sheet (Third Party Requester's Comments at page 23 and footnote 65).

As to the Patent Owner's fourth argument, the Third Party Requester states that motivation to make this combination is found as stated in the opinion of *ex parte Sullivan* (Third Party Requester's Comments at middle of page 22).

As to the Patent Owner's fifth argument, the Third Party Requester states that the opinion in *Ex parte Sullivan* sets forth cogent reasoning for the combination and the differences is scope

between the claims are either explicit disclosed or inherent to Nesbitt or Wu, or mere design

choice (Third Party Requester's Comments at pages 22-24).


Ground 3: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained.  As to

the Patent Owner's first and second arguments, Nesbitt discloses an overlapping thickness range

for the outer cover of 0.020 inches to 0.100 inches (col. 3, lines 22-25) and its Shore hardness

value of 55 ("Surlyn 1855" of col. 3, lines 22-25, which has a Shore D hardness of 55 (from

Surlyn data sheet for Surlyn 9020)) which is less than the claimed value of 64.

As to the Patent Owner's third argument, Examiner considers the Wu patent to describe

the Titleist cover because the patent and the Titleist's commercial literature have characteristics

in common such as being "cut-resistant" (Wu patent at col. 2 line 41; Titleist 1's commercial

literature at text above "Titleist Professional Specifications") and ball velocities of 253.0 ft./sec.

(Wu patent at col. 8 Table IV; Titleist 1's commercial literature at "Titleist Professional

Specifications").  These two characteristics combined with the fact that the Titleist 1 cites the

Wu patent leads to the conclusion that the cover of the Titleist 1 is within the ambit of the

composition claimed in the Wu patent.  Hence, the Titleist 1 commercial literature accurately

recites other characteristics on which the Wu patent is silent, such as Shore D hardness.  Whether

Wu, herself, knew the hardness of an outer layer made of her composition is not dispositive

because of the commercial literature for the Titleist 1.

Application/Control Number:                                    Page 36
95/000,120
Art Unit: 3993

As to the Patent Owner's fourth and fifth arguments, the combination is proper because

the Supreme Court has held that "[w]hen there is a design need or market pressure to solve a

problem and there are a finite number of identified, predictable solutions, a person of ordinary

skill has good reason to pursue the known options within her or her grasp. If this leads to the

anticipated success, it is likely the product not of innovation but of ordinary skill and common

sense" (slip opinion *KSR* at middle of page 17). Here, the problem of producing a golf ball with

distance, durability, "click," and feel was known (Patent Owner's Response at bottom of page 4).

Polyurethane was a known solution for providing "click" and feel (Wu at col. 1 lines 40-46).

Nesbitt discloses that a golf ball with his inner and outer thicknesses have both distance feel

(*generally* Nesbitt at col. 1, lines 65-78, continuing to col. 2, lines 1-9). The resulting two-layer

golf ball with an outer polyurethane layer had the expected results (*Sullivan* at page 12) and not,

therefore, synergistic. Thus, the golf balls disclosed by the combination of Nesbitt and Wu are

of ordinary skill and common sense. Since this combination has the elements cited in claim 1 of

Sullivan '293, the decision in *Ex parte Sullivan* is supportive but not dispositive or binding.


**Proposed Third Party Requester Rejection: Ground #4.**

The requester submits on pages 20-21 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Application/Control Number:                                    Page 37
95/000,120
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 1 | Nesbitt mentioning Molitor '637 |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '293 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('293 patent, col. 2, lines 54-55.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer having a thickness of 0.100 to 0.010 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as SURLYN resin type 1605, is preferably of a thickness **in the range of 0.020 inches and 0.070 inches**." (Nesbitt, col. 3, ll. 19-23). |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of |

Application/Control Number:                    Page 38
95/000,120
Art Unit: 3993

| | |
|---|---|
| by weight of an alpha, beta-unsaturated carboxylic acid; and | this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer comprising a relatively soft polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a |

Application/Control Number:                          Page 39
95/000,120
Art Unit: 3993

| non-ionomeric thermoplastic elastomer. |
| --- |

As shown above in the claim chart, Nesbitt mentioning Molitor '673 suggests the use of a

soft outer cover layer including a polyurethane material. In an analogous golf ball, Molitor '751

teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having
> playability properties similar to wound, balata-covered balls is to provide about an
> inner resilient molded core **a cover having a shore C hardness less than 85,**
> preferably 70-80, and most preferably 72-76. The novel **cover of the golf ball** of
> the invention is made of a composition comprising a blend of (1) **a thermoplastic**
> **urethane having a shore A hardness less than 95** and (2) **an ionomer having a**
> **shore D hardness greater than 55.**

(Molitor '751, col. 2, ll.33–49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer**
> **beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to**
> **Nesbitt,** and other balls have non-wound cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

Application/Control Number:                              Page 40
95/000,120
Art Unit: 3993

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

As stated in the request on page 21

It would have been obvious to one of ordinary skill in the art at the time of the
invention to substitute the soft outer cover layer of Nesbitt and replace it with an
outer cover layer made of the soft polyurethane material taught by Molitor '751 to
provide a golf ball that includes "playability properties as good or better than
balata-covered wound balls but are significantly more durable," and "have better
wood playability properties than conventional two-piece balls, and permit
experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, ll. 61-68)

This rejection of claim 1 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Application/Control Number:                                Page 41
95/000,120
Art Unit: 3993

Ground 4: Patent Owner's Argument

The Patent Owner argues that the rejection is improper because: (1) Molitor '751

describes the cover of his golf ball with hardness values in terms of Shore C, hence, one of

ordinary skill would not look to combine this teaching with the patent of Nesbitt, with hardness

values recorded in terms of Shore D, because the two hardness values, or scales, have no simple

mathematical correlation (Patent Owner's Response at page 22); and, (2) no motivation to

combine Nesbitt with Molitor '751 because the Molitor '751 ball's construction is a hard core

with a soft cover, the cover having a thickness twice the thickness of the Sullivan '873 claims

and an order of magnitude softer (Patent Owner's Response at page 23).

Ground 4: Third Party Requester's Comments

Third Party Requester counter argues that, for argument (1) hardness values of Shore C

and Shore D are convertible as evidenced by, *inter alia*, the Sullivan '873 patent itself (Third

Party Requester's Comments at pages 25-27). For argument (2), the Third Party Requester states

that motivation to combine exists because, *inter alia*, Molitor '751, itself, states that its cover can

be used with the three-piece, two-cover golf ball of Nesbitt (Third Party Requester's Comments

at bottom of pages 27-28).

Ground 4: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '751 is maintained.

As to the Patent Owner's first argument, Examiner specifically agrees with the Third Party

Application/Control Number:                                    Page 42
95/000,120
Art Unit: 3993

Requester's comments that a correlation, or conversion, exists between the two hardness scales,

Shore C and Shore D, because Sullivan '873 give a conversion of the two scales at col. 3, lines

42-43. Further, the quote used by the Patent Owner from the ASTM D-2240 standard stating

that ""no simple relationship exists"" (Patent Owner's Response at middle of page 23) does not

preclude a conversion factor, even if complex. Since the Supreme Court has recently held that

"[a] person of ordinary skill is also a person of ordinary creativity, not an automaton," even a

complex calculation suffices to permit conversion of the two scales (slip opinion of *KSR* at

middle of page 17). Hence, one of ordinary skill would not be deterred from use of prior art

regardless of the hardness scale used to define its various layers.

As to the second argument, Examiner considers the language of the Molitor '751 that

"[t]he phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core

and a cover, but also includes balls having a separate solid layer beneath the cover as disclosed,

for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls, having non-wound cores"

provides motivation to combine the two references. Molitor '751 provides motivation, for

example, at col. 1, lines 11-15, where it states that the invention is concerned with a "golf ball

useful in making balls, particularly two-piece balls, having superior short iron and other

playability characteristics."

Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within her or her grasp. If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion KSR at middle of page 17). Here, the problem of producing a

Application/Control Number:                            Page 43
95/000,120
Art Unit: 3993

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4). Polyurethane was a known solution for providing playability properties

(Molitor '751 at abstract). The resulting golf ball with a polyurethane outer cover had the

expected results (Sullivan '293 at abstract). Thus, the golf ball disclosed in claim 1 of Sullivan

'293 is of ordinary skill and common sense.

As to the argument of different thicknesses of the layers, Nesbitt discloses the thickness

of an inner layer being in a range from 0.020 inches to 0.070 inches at col. 3, lines 19-25. These

ranges overlap the ranges of claim 1. Finally, for the argument of a Shore value of at least 60 for

the inner cover, Nesbitt discloses use of "hard, highly flexual modulus resinous material such as

type 1605 Surlyn" for this layer at col. 2, lines 36-39. Surlyn 1605, now Surlyn 8940, has a

Shore D hardness of 65 (Third Party Requester's Comments at page 27, n.82).


**Proposed Third Party Requester Rejection: Ground #5.**

The requester submits on pages 22-25 that claim 1 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.


| Claim 1 | Proudfit |
| --- | --- |

Application/Control Number:                         Page 44
95/000,120
Art Unit: 3993

| | |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material."  (Proudfit, col. 7, ll. 21-24) |
| a Shore D hardness of 60 or more molded on said core, | See below with respect to Shore D hardness. |
| said inner cover layer having a thickness of 0.100 to 0.010 inches, | "The **thickness of the inner layer** can be within the range of **about 0.0250 to 0.2875** inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, ll. 37-40)<br><br>"The preferred dimensions are ... and **inner layer thickness of 0.037 inch...**" (Proudfit, col. 7, ll. 43-44) |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30) |

Application/Control Number:                                    Page 45
95/000,120
Art Unit: 3993

| an outer cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material**." (Proudfit, col. 7, ll. 21-24) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| said outer cover layer comprising a relatively soft polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As shown above Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and outer layer) with the layers within the range of claimed thicknesses each layer made from a material having the mechanical properties substantially similar to the claimed mechanical properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical properties of the claimed invention. However, Proudfit either incorporates by reference these mechanical and chemical properties and/or the materials used within the Proudfit golf ball inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using blends SURLYN the chemical for making the inner cover and the '981 Patent is the

Application/Control Number:                                    Page 46
95/000,120
Art Unit: 3993

formulation for ionomer known in the art as SURLYN, then inherently grades of SURLYN such

as SURLYN 8940 and SURLYN 9910 would be low acid ionomer resins containing no more

than 16% by weight of an alpha, beta-unsaturated carboxylic acid.  As taught from Exhibit I,

SURLYN 8940 has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see

Exhibit I.  Therefore, this cover blend inherently has a hardness of 60 or more.  Proudfit

discloses the outer layer being a blend of balata.  An example of the blend is disclosed in Table 7

reproduced below.

TABLE 7

| Composition of Outer Layer (Parts by Weight) | |
| --- | --- |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer.  As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52.  Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

While Proudfit lacks disclosing the outer layer being made from polyurethane, in an

analogous golf ball, Molitor '637 teaches using polyurethane, see Molitor '637, col. 5, ll. 33–41

and col. 18, examples 16 and 17.  The request points out on page 25, ll. 7-15, why the use of

polyurethane to one of ordinary skill in the art would be readily apparent given that those skilled

in the art were more critical of the mechanical properties of a particular material then the

Application/Control Number:                                    Page 47
95/000,120
Art Unit: 3993

chemical composition (material type) of the material and those remarks are incorporated herein.

In other words, it was not critical to the "golf ball inventions" of those skilled in the art as to

what materials were used to construct the golf balls so long as the materials had the desired

mechanical properties which would yield the particular mechanical performance parameters the

inventors were trying to achieve, e.g. improved processability; improved durability; cost

effectiveness; user acceptance of performance (similar "click" and "feel" to balata) of the golf

ball product made from those materials.

     The request on page 25, ll. 1-21, explains why one of ordinary skill in the art would be

motivated to substitute the outer cover layer taught in Molitor '637 for the outer cover layer

disclosed in Proudfit:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those materials. (See
> Exhibit G at 334.) Because those skilled in the art would look to the mechanical
> properties of the materials when determining whether certain materials can be
> substituted for one another, those skilled in the art would recognize that the Estane
> polyurethane taught by Molitor '637 (having a flexural modulus of about 25,000 psi)
> and the polymeric outer cover layer material of Proudfit (which has a modulus of
> between 20,000 and 25,000 psi) would have been substitutable for one another.
> (Compare Exhibit J with Proudfit, col. 6, lines 28-31.) This would have further
> suggested to those skilled in the art that the soft polymeric materials taught by
> Molitor '637, including, for example, the relatively soft, low modulus polyurethane
> material of Molitor '637 would have been substitutable for the soft polymeric outer
> cover layer as taught by Proudfit.
>
> It would have been obvious to one of ordinary skill in the art at the time of invention
> to modify the balata-based outer cover layer of Proudfit to include the polyurethane
> outer cover layer of Molitor '637 because polyurethane was a well known substitute
> to balata and gives a number of advantages over balata as would have been readily
> appreciated by those skilled in the art. These advantages include: (1) improved
> processability; (2) improved durability when compared to balata; (3) cost-
> effectiveness when compared to balata; and (4) having a good "click" and "feel." ....
> All of this would have led one of ordinary skill in the art to replace the soft, low
> modulus balata-based outer cover layer of Proudfit with the soft, low modulus

Application/Control Number:                                    Page 48
95/000,120
Art Unit: 3993

polyurethane outer cover layer material of Molitor '637 at the time of the alleged
invention.

Therefore, one of ordinary skill in the art would find the claimed invention as obvious for

the motivation given in the request on page 25, ll. 1-21.

This rejection of claim 1 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 5: Patent Owner's Argument

The Patent Owner argues that the rejection is improper because: (1) Proudfit does not

describe a golf ball with an outer layer with a Shore D hardness value of 64 or less because the

Hebert Declaration's analysis of the Wilson Ultra Tour (as representative of the Proudfit patent)

is not correct (Patent Owner's Response page 24 to bottom of page 26); (2) the thickness of

Molitor '637's cover layer cannot be combined with thickness of Proudfit's cove layer which is

significantly thinner (Patent Owner's Response top of page 27); and, (3) the rejection is

impermissible hindsight reconstruction of substitution of materials when the invention,

exemplified by the Titleist Pro V1, is a commercial blockbuster (Patent Owner's Response

middle of page 27).


Ground 5: Third Party Requester's Comments

Third Party Requester counter argues that, for argument (1) the Wilson Ultra Tour is

representative of the Proudfit patent because both disclose a three-piece golf ball with an outer

Application/Control Number:                                          Page 49
95/000,120
Art Unit: 3993

cover layer of cis-polybutadiene and synthetic balata (trans-polyisoprene), an inner layer of Na

and Zn Surlyns, and a compression of 100 (Third Party Requester's Comments at bottom of page

30 to middle of page 31); (2) the thickness layers in the two patents overlap hence one of

ordinary skill would realize that the cover materials could be substituted (Third Party

Requester's Comments at page 29); and (3) the motivation set forth in the rejection by the

Examiner satisfies the requirements *KSR* and is consistent with the motivation to combine

Nesbitt and Wu identified by the BPAI (Third Party Requester's Comments at middle of page

30).


Ground 5: Examiner's Response to the Argument and Comments

     Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '637 is

maintained. As to the Patent Owner's first argument, the Examiner accepts the Hebert

Declaration as competent evidence because it is a sworn declaration. As such, the Examiner will

not probe the Declarant's veracity. Since the Wilson Pro Tour had an outer cover made of c-

polybutadiene and synthetic balata (trans-polyisoprene) with a Shore D hardness of 52 (Exhibit

A of Hebert Declaration), the over cover of Proudfit is considered to have the same hardness

value since its composition is the same (Proudfit at col. 8, Table 7; *see* MPEP 2112.01(II)).

     As to Patent Owner's second argument, Proudfit discloses that the outer cover can be

from 0.0450 to 0.0650 inches in thickness. Molitor '637 discloses an outer cover thickness of

0.060 inches or thicker (Molitor '637 at col. 5, lines 3-7). Since these values overlap in the

Application/Control Number:                                Page 50
95/000,120
Art Unit: 3993

region of 0.060 inches, one of ordinary skill would find it obvious to look to Molitor '637 for an

outer cover for the golf ball of Proudfit.

As to Patent Owner's third argument, Examiner considers the language of Molitor '637

that "one skilled in the art can produce a golf ball having the desirable qualities of both Balata

and Surlyn resin covered golf balls" (Molitor '637 at col. 2, lines 43-45) to provide motivation to

combine the two references. One of the compositions disclosed by Molitor '637 is polyurethane

(Molitor '637 at col. 5, lines 33-55). Therefore, one of ordinary skill, having the three-piece ball

disclosed by Proudfit would look to Molitor '637 for over cover material to achieve a golf ball

with the desired qualities of Balata and Surlyn.

Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within her or her grasp. If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion KSR at middle of page 17). Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4). Polyurethane was a known solution for providing playability properties

(Molitor '637 at abstract). The resulting golf ball with a polyurethane outer cover had the

expected results (Sullivan '293 at abstract). Thus, the golf ball disclosed in claim 1 of Sullivan

'293 is of ordinary skill and common sense.

The Examiner has not considered the argument of whether the instant invention is

exemplified by the Titleist Pro V1.

Application/Control Number:                                          Page 51
95/000,120
Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #6.**

The requester submits on pages 22-25 that claim 1 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| a Shore D hardness of 60 or more molded on said core, | See below with respect to Shore D hardness. |
| said inner cover layer having a | "The **thickness of the inner layer** can be within the range of |

Application/Control Number:                                    Page 52
95/000,120
Art Unit: 3993

| | |
|---|---|
| thickness of 0.100 to 0.010 inches, | **about 0.0250 to 0.2875** inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, ll. 37-40)<br><br>"The preferred dimensions are ... and **inner layer thickness of 0.037 inch...**" (Proudfit, col. 7, ll. 43-44) |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30) |
| an outer cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| said outer cover layer having a thickness of 0.010 to 0.070 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| said outer cover layer comprising a relatively soft polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As expressed in the request on page 26 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer. Proudfit lacks in disclosing the use of polyurethane as

Application/Control Number:                                         Page 53
95/000,120
Art Unit: 3993

the material for the outer cover layer. Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

TABLE 7

| Composition of Outer Layer (Parts by Weight) | |
| --- | --- |
| Trans Poly/Isoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 2.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Verox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls. As

admitted by the patent owner

> Despite all the benefits of balata, balata covered golf balls are easily cut and/or
> damaged if mis-hit. Golf balls produced with balata or balata-containing cover
> compositions therefore have a relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42). The next step in golf ball cover technology to overcome the

problems with balata was the use of SURLYN as an outer cover. However, as described in the

request on page 26 Wu teaches the problem with SURLYN as a outer cover on a golf ball.

> **The problem with SURLYN covered golf balls ... is that they lack the "click"**
> **and "feel" which golfers had become accustomed to with balata.** "Click" is
> the sound when the ball is hit by a golf club and "feel" is the overall sensation
> imparted to the golfer when the ball is hit.
>
> It has been proposed to employ polyurethane as a cover stock for golf balls
> because, like SURLYN, it has a relatively low price compared to balata and
> provides superior cut resistance over balata. **However, unlike SURLYN covered**
> **golf balls, polyurethane-covered golf balls can be made to have the "click"**
> **and "feel" of balata.**

(Wu col. 1, ll. 36-46 (emphasis added)).

As explained in the request on page 26 through page 27 those skilled in the art at the time

the claimed invention was made were more critical of the mechanical properties of the materials

Application/Control Number:                                     Page 54
95/000,120
Art Unit: 3993

that constructed the layers which impacted the performance of the golf ball more than the

materials themselves. See Exhibit G. As identified above Proudfit lacks disclosing polyurethane

as the outer cover layer. In analogous golf ball device, Wu's polyurethane material inherently

has a flexural modulus of 23,000 psi as averred within the Rule 132 Declaration of Jeffrey L.

Dalton at para. 7. Proudfit's outer cover layer material is disclosed as having a flexural modulus

of between about 20,000 psi and 25,000 psi. (Proudfit, col. 6, ll. 28-31) Thus, Wu's cover

material's flexural modulus falls within the range of Proudfit's cover material. Moreover, Wu's

polyurethane material inherently has a Shore D hardness of about 58. See Decl. of Dalton at

para. 6. Thus, as evidenced by this declaration, Wu's polyurethane material falls within the

claimed range of the outer layer material have a Shore D hardness of less than 64.

Thus, as pointed out in the request on page 27, one of ordinary skill in the art at the time

the invention was made would find it obvious to substitute Wu's polyurethane golf ball cover

material for Proudfit's balata-blend cover material for the advantages described in this part of the

request which is quoted below:

> Based on Wu's teachings, one of ordinary skill in the art would have recognized the
> substitutability of soft polyurethane for soft balata-based materials and the advantages
> of making such a substitution. These advantages include (1) low price compared to
> balata; (2) better cut resistance when compared to balata; and (3) a "click" and "feel"
> that is similar to balata. Moreover, the replacing the balata-material taught by Proudfit
> would have been obvious to those skilled in the art prior to November 9, 1995 because
> before that time, the Titleist Professional™ golf ball, which had used Wu's
> polyurethane material, had replaced balata-covered balls as the market leader. (See
> Decl. of Jeffrey L. Dalton at ¶¶ 3-4.) Therefore, it would have been obvious to one of
> ordinary skill in the art at the time of the alleged invention to modify Proudfit's golf ball
> by replacing the soft balata-based outer cover layer with an outer cover layer made of
> soft polyurethane material because Wu's polyurethane material has similar mechanical
> properties and provides numerous advantages over balata while exhibiting the "click"
> and "feel" of balata.

Application/Control Number:                                Page 55
95/000,120
Art Unit: 3993

This rejection of claim 1 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 6: Patent Owner's Argument

The Patent Owner argues that the rejection is improper because: (1) while the patent of Wu

describes the use of polyurethane as an outer cover, it discloses neither the thickness nor the

Shore D hardness of this polyurethane layer (Patent Owner Response at bottom of page 27); (2)

Wu, herself, at her deposition could not predict the final hardness value of her cover (Patent

Owner Response at middle of page 28); (3) the Dalton Declaration is not competent evidence of

the hardness value of Wu's polyurethane layer (Patent Owner Response at middle of page 28);

and, (4) no motivation to combine the references, absent hindsight, because motivation to try,

*i.e.*, to substitute one material for another, is not the standard (Patent Owner Response at bottom

of page 28 to top of page 29).


Ground 6: Third Party Requester's Comments

Third Party Requester counter argues that, for argument (4), applying the standard of

*KSR* would result in one of ordinary skill using polyurethane as a golf ball cover since it had

been know for decades as an excellent golf ball material (Third Party Requester's Comments at

middle of page 32). Further, the rationale of *Ex parte Sullivan* would equally apply here (Third

Party Requester's Comments at page 32).

Application/Control Number:                                    Page 56
95/000,120
Art Unit: 3993

Ground 6: Examiner's Response to the Argument and Comments·

    Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is maintained. As to

the Patent Owner's first, second, and third arguments, the Examiner accepts the Dalton

Declaration as competent evidence because it is a sworn declaration. As such, the Examiner will

not probe the Declarant's veracity. Hence, the Shore D hardness value for Wu's cover is

considered to be 58. The thickness of the outer cover is found in Proudfit where it is disclosed

that the thickness can be from 0.0450 to 0.0650 inches (Proudfit at col. 7, lines 40-47). Wu's

deposition is not dispositive, here, because of the Dalton Declaration.

    As to Patent Owner's fourth argument, Examiner considers the language of Wu, itself, to

provide motivation to combine because golf balls made with polyurethane possess" improved

shear resistance and cut resistance compared to golf balls having covers made from either balata

or SURLYN" (Wu at col. 2, lines 29-32). Also, golf balls with polyurethane covers "can be

made to have the "click" and "feel" of balata" (Wu at col. 1, lines 44-46). Therefore, one of

ordinary skill, having the three-piece ball disclosed by Proudfit would look to Wu for outer cover

material to achieve a golf ball with the desired qualities of Balata and Surlyn.

    Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within her or her grasp. If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion *KSR* at middle of page 17). Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

Application/Control Number:                                    Page 57
95/000,120
Art Unit: 3993

bottom of page 4). Polyurethane was a known solution for providing playability properties (Wu

at col. 1 lines 27-46). The resulting golf ball with a polyurethane outer cover had the expected

results (Sullivan '293 at abstract). Thus, the golf ball disclosed in claim 1 of Sullivan '293 is of

ordinary skill and common sense.

Finally, the Court has explicitly approved of the "obvious to try" standard for

combinations as above (slip opinion *KSR* at middle of page 17).


**Proposed Third Party Requester Rejection: Ground #7.**

The requester submits on pages 27-29 that claim 1 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core |

Application/Control Number:                                                Page 58
95/000,120
Art Unit: 3993

| | |
|---|---|
| | was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| a Shore D hardness of 60 or more molded on said core, | See below with respect to Shore D hardness. |
| said inner cover layer having a thickness of 0.100 to 0.010 inches, | "The **thickness of the inner layer** can be within the range of **about 0.0250 to 0.2875** inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, ll. 37-40)  "The preferred dimensions are ... and **inner layer thickness of 0.037 inch...**" (Proudfit, col. 7, ll. 43-44) |
| said inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6."  TABLE 6  Composition of Inner Layer of Cover (Parts by Weight)  | Ionomer Type | Blend Ratio | |---|---| | Sodium- Surlyn 8940 | 75% | | Zinc- Surlyn 9910 | 25% |  (Proudfit, col. 8, ll. 22-30) |
| an outer cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| said outer cover layer having a | "The thickness of the outer layer can be within the range of |

Application/Control Number:                                    Page 59
95/000,120
Art Unit: 3993

| thickness of 0.010 to 0.070 inches, and | about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
|---|---|
| said outer cover layer comprising a relatively soft polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As expressed in the request on page 27 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer.  Proudfit lacks in disclosing the use of polyurethane as

the material for the outer cover layer.  Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

**TABLE 7**

**Composition of Outer Layer
(Parts by Weight)**

| Trans Polyisoprene (TP-301) | 60.00 |
|---|---|
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| **Total** | **160.00** |

However, those skilled in the art understand the disadvantages of balata covered golf balls.  As

admitted by the patent owner:

> [d]espite all the benefits of balata, balata covered golf balls are easily cut and/or
> damaged if mis-hit.  Golf balls produced with balata or balata-containing cover
> compositions therefore have a relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42).  With this disadvantage of balata covered golf balls, golf ball

designers looked for materials that would provide the same "click" and "feel" golfers expected

and have increased durability.

Application/Control Number:                                    Page 60
95/000,120
Art Unit: 3993

As pointed out in the request on page 28, lines 4-15, in an analogous golf ball, Molitor

'751 teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having
> playability properties similar to wound, balata-covered balls is to provide about an
> inner resilient molded core a **cover having a shore C hardness less than 85,**
> preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of
> the invention is made of a composition comprising a blend of (1) a **thermoplastic**
> **urethane having a shore A hardness** less than 95 and (2) an ionomer having a
> shore D hardness greater than 55. The ionomer comprises olefinic groups having
> two to four carbon atoms copolymerized with acrylic or methacrylic acid groups
> and cross-linked with metal ions, preferably sodium or zinc ions. **The primary**
> **components of the blended cover are set at a weight ratio so as to result in a**
> **cover material after molding having a shore C hardness within the range of**
> **70 to 85, preferably 72 to 76.** Preferably, the urethane component of the cover
> material has a tensile strength greater than 2500 psi and an elongation at break
> greater than 250%. A preferred cover material comprises about 8 parts of·the
> thermoplastic urethane and between 1 and 4 parts ionomer. Preferably, the cover
> is no greater than 0.060 inch thick. Thinner covers appear to maximize the short
> iron playability characteristics of the balls.

(Molitor '751, col. 33-57 (emphasis added)). Thus, Molitor '751 teaches having a outer cover

layer with a Shore C hardness less than 85 and preferably between 72 and 76. Moreover,

Molitor '751 teaches what golf balls are included in the definition of "two-piece" ball within its

instant specification.

> The phrase "two-piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer**
> **beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to**
> **Nesbitt, and other balls having non-wound cores.**

Molitor '751, col. 3, ll. 7-12 (emphasis added)). Proudfit, likewise, teaches the two-piece golf

balls can fit within this definition.

> FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a
> cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer
> resins and a relatively soft outer layer 14 of polymeric material.

(Proudfit, col. 7, ll. 21-24).

Application/Control Number:                                      Page 61
95/000,120
Art Unit: 3993

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance a polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

As stated in the request spanning pages 28-29

Therefore, it would have been obvious to one of ordinary skill in the art at the
time of the invention to substitute the soft outer cover layer of Nesbitt and replace
it with an outer cover layer made of the soft polyurethane material taught by

Application/Control Number:                                    Page 62
95/000,120
Art Unit: 3993

Molitor '751 to provide a golf ball that includes "playability properties as good or
better than balata-covered wound balls but are significantly more durable," and
"have better wood playability properties than conventional two-piece balls, and
permit experienced golfers to apply spin so as to fade or draw a shot" while
having improved puttability. (Molitor '751, col. 2, ll. 61-68)

This rejection of claim 1 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 7: Patent Owner's Argument

The Patent Owner argues that the rejection is improper because: (1) Molitor '751

describes the cover of his golf ball with hardness values in terms of Shore C, hence, one of

ordinary skill would not look to combine this teaching with the patent of Proudfit to have a ball

with Shore D harness values, because the two hardness values, or scales, have no simple

mathematical correlation (Patent Owner's Response at middle of page 29); and, (2) no

motivation to combine Proudfit with Molitor '751 because the Molitor '751 ball's construction is

different than that of the claimed golf balls (Patent Owner's Response at bottom of page 29

continuing to top of page 30).

Ground 7: Third Party Requester's Comments

Third Party Requester counter argues that, for argument (1) hardness values of Shore C

and Shore D are convertible as evidenced by many published methods (Third Party Requester's

Comments at middle of page 33). For argument (2), the Third Party Requester states that

Application/Control Number:                              Page 63
95/000,120
Art Unit: 3993

motivation to combine exists because Molitor '751, itself, states that its cover can be used with

the three-piece golf balls (Third Party Requester's Comments at top of page 34).


Ground 7: Examiner's Response to the Argument and Comments

     Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '751 is

maintained. As to the Patent Owner's first argument, Examiner agrees with the Third Party

Requester's comments that a correlation, or conversion, exists between the two hardness scales,

Shore C and Shore D, because, *inter alia*, Sullivan '873 give a conversion of the two scales at

col. 3, lines 42-43. Hence, one of ordinary skill would not be deterred from use of prior art

regardless of the hardness scale used to define its various layers.

     As to the second argument, Examiner considers the language of the Molitor '751 that

"[t]he phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core

and a cover, but also includes balls having a separate solid layer beneath the cover as disclosed,

for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls, having non-wound cores"

provides motivation to combine the two references. Proudfit, like Nesbitt, disclose golf balls

with a core, inner cover, and inner cover. Molitor '751 provides motivation, for example, at col.

1, lines 11-15, where it states that the invention is concerned with a "golf ball useful in making

balls, particularly two-piece balls, having superior short iron and other playability

characteristics."

     Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

Application/Control Number:                              Page 64
95/000,120
Art Unit: 3993

person of ordinary skill has good reason to pursue the known options within her or her grasp. If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion *KSR* at middle of page 17). Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4). Polyurethane was a known solution for providing playability properties

(Molitor '751 at abstract). The resulting golf ball with a polyurethane outer cover had the

expected results (Sullivan '293 at abstract). Thus, the golf ball disclosed in claim 1 of Sullivan

'293 is of ordinary skill and common sense.


### Re. Claim 2

**Proposed Third Party Requester Rejection: Ground #8.**

The requester submits on pages 29-30 that claim 2 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted in this office action.</u>**

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum |

Application/Control Number:                                           Page 65
95/000,120
Art Unit: 3993

| | with an outer or cover layer 16 of a soft, low flexural modulus resin .... " (Nesbitt, col. 3, lines 34-38.) |
| --- | --- |

This rejection of claim 2 based on Nesbitt incorporating by reference Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 8: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 8: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Ground 8: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #9.**

In the alternative, the requester submits on page 30 that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Application/Control Number:                                    Page 66
95/000,120
Art Unit: 3993

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin .... " (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 2 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 9: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 9: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                          Page 67
95/000,120
Art Unit: 3993

Ground 9: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #10.**

     The requester submits on page 30 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

     Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

     Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
| --- | --- |
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin .... " (Nesbitt, col. 3, lines 34-38.) |

Application/Control Number:                                    Page 68
95/000,120
Art Unit: 3993

This rejection of claim 2 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.


Ground 10: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 10: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 10: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

*supra*.


**Proposed Third Party Requester Rejection: Ground #11.**

The requester submits on page 30 of the request that claim 2 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

Application/Control Number:                                    Page 69
95/000,120
Art Unit: 3993

  Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin .... " (Nesbitt, col. 3, lines 34-38.) |

  This rejection of claim 2 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 11: Patent Owner's Argument

  Patent Owner does not specifically argue this rejection.


Ground 11: Third Party Requester's Comments

  Third Party Requester does not specifically counter argue this rejection.


Ground 11: Examiner's Response to the Argument and Comments

Application/Control Number:                                    Page 70
95/000,120
Art Unit: 3993

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 4:  Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #12.**

The requester submits on pages 30-31 that claim 2 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 2 | Proudfit |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (Proudfit, col. 7, lines 43-47.) |

This rejection of claim 2 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Application/Control Number:                                    Page 71
95/000,120
Art Unit: 3993

Ground 12: Patent Owner's Argument

    Patent Owner does not specifically argue this rejection.

Ground 12: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.

Ground 12: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #13.**

    The requester submits on pages 30-31 that claim 2 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

    Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

    Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 2 | Proudfit |
|---------|----------|

Application/Control Number:                                    Page 72
95/000,120
Art Unit: 3993

| | |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (Proudfit, col. 7, lines 43-47.) |

This rejection of claim 2 based on Proudfit in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 13: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 13: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 13: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 2 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is maintained. See "Ground 6: Examiner's Response to the Argument and Comments," *supra.*

**Proposed Third Party Requester Rejection: Ground #14.**

Application/Control Number:                          Page 73
95/000,120
Art Unit: 3993

The requester submits on pages 30-31 that claim 2 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor,

U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 2 | Proudfit |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said golf ball has an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (Proudfit, col. 7, lines 43-47.) |

This rejection of claim 2 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 14: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 14: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                          Page 74
95/000,120
Art Unit: 3993


Ground 14: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'751 is maintained.   See "Ground 7:  Examiner's Response to the Argument and

Comments," *supra*.


### Re. Claim 3

**Proposed Third Party Requester Rejection: Ground #15.**

The requester submits on pages 31-32 that claim 3 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted in this office action</u>.**

Below is a claim chart identifying the claim limitations and where Nesbitt discloses, teaches or

suggests the claim limitations.

| Claim 3 | Nesbitt (by reference Molitor '637) |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said inner cover layer has a thickness of about 0.050 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.)<br><br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |

Application/Control Number:                                        Page 75
95/000,120
Art Unit: 3993

| | |
|---|---|
| and said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 3 based on Nesbitt incorporating by reference Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 15: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 15: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."


Ground 15: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and Comments," *supra*.

Application/Control Number:                                    Page 76
95/000,120
Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #16.**

In the alternative, the requester submits on page 32 that claim 3 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---|---|
| The golf ball according to claim 1, | See above. |
| wherein said inner cover layer has a thickness of about 0.050 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.)<br><br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| and said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

Application/Control Number:                                    Page 77
95/000,120
Art Unit: 3993

This rejection of claim 3 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 16: Patent Owner's Argument

Patent Owner argues that the minimum thickness for the outer layer of the cover of

Molitor '637 is 0.060 inches while this claim requires a thickness of 0.055 for this layer (Patent

Owner's Response at middle of page 17).


Ground 16: Third Party Requester's Comments

Third Party Requester counter argues that Nesbitt discloses a range of 0.020 to 0.100

inches for the thickness of the outer cover of a golf ball (Nesbitt at col. 3, lines 22-25). The

holding in *KRS* would dictate that one of ordinary skill would know to use the material of

Molitor '637, polyurethane, with the thickness of Nesbitt (Third Party Requester's Comments at

page 20-21).


Ground 16: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 3 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained.

Since Nesbitt references the Molitor '637 patent, one of ordinary skill would logically look at its

complete disclosure which includes the use of polyurethane as an outer cover. Using the

thickness values of Nesbitt with polyurethane would be obvious because Nesbitt states that "the

Application/Control Number:                                              Page 78
95/000,120
Art Unit: 3993

thickness of the inner layer . . . and the thickness of outer layer . . . may be varied to secure the

advantages herein mentioned" at col. 3, lines 16-19. The advantages Nesbitt wishes to achieve

are both distance and feel in one golf ball (Nesbitt at col. 2, lines 1-9).

**Proposed Third Party Requester Rejection: Ground #17.**

The requester submits on page 32 that claim 3 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu, U.S. Pat. No.

5,334,673 (Wu).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---------|---------|
| The golf ball according to claim 1, | See above. |
| wherein said inner cover layer has a thickness of about 0.050 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.)<br><br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| and said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 |

Application/Control Number:                              Page 79
95/000,120
Art Unit: 3993

| | inches ...." (Nesbitt, col. 2, lines 50-52.) |
|---|---|
| | "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 3 based on Nesbitt in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 17: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as those at "Ground 3: Patent Owner's Argument," *supra.*

Ground 17: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter arguments are the same as those at "Ground 3: Third Party Requester's Comments," *supra.*

Ground 17: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 3 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained. See "Ground 3: Examiner's Response to the Argument and Comments," *supra.*

Application/Control Number:                    Page 80
95/000,120
Art Unit: 3993

**Proposed Third Party Requester Rejection: Ground #18.**

The requester submits on page 32 that claim 3 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al., U.S.

Pat. No. 4,674,751 (Molitor '751).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---------|---------|
| The golf ball according to claim 1, | See above. |
| wherein said inner cover layer has a thickness of about 0.050 inches, | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) <br><br> "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| and said golf ball has an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.) <br><br> "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

Application/Control Number:                          Page 81
95/000,120
Art Unit: 3993

This rejection of claim 3 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 18: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 18: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 18: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 4:  Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejections: Ground #19-21.**

The requester submits on pages 32-33 that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637); Wu, U.S. Pat. No. 5,334,673 (Wu); or Molitor et al.,

U.S. Pat. No. 4,674,751 (Molitor '751).

Application/Control Number:                              Page 82
95/000,120
Art Unit: 3993

 **These rejections are <u>not adopted</u> for the reasons given in Order Granting**

**Reexamination, dated 04/07/2006, at paragraph #23, which is incorporated herein.**


<u>Re. Claim 4</u>

**Proposed Third Party Requester Rejection: Ground #22.**

 The requester submits on pages 34-38 that claim 4 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

 **This rejection is <u>adopted in this office action</u>.**

 Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 4 | Nesbitt (with Molitor '637 incorporated by reference) |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| Shore D hardness of about 60 or more molded over said spherical core, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>"[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.) |

Application/Control Number:                          Page 83
95/000,120
Art Unit: 3993

| | |
|---|---|
| | **Exhibit I**: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557.  (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer having | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>**Nesbitt:** "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention."  (Nesbitt, col. 3, ll. 54-60). |
| a Shore D hardness of about 64 or less | **Molitor '637**: Teaches the use of ESTANE 58133 in Examples 16 and 17.  (Molitor '637, col. 18, ll. 32-60)<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see **Exhibit J** (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Also see below why this cover material has inherently a Shore D hardness of 55. |

Application/Control Number:                                      Page 84
95/000,120
Art Unit: 3993

| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>"[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
|---|---|
| said outer cover layer comprising polyurethane based material. | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.)<br><br>**Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).)<br><br>Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt with incorporation by reference of Molitor '637 as describing an number of compositions suitable for the inner cover layer 14.  Of particular interest in this case are Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557.  The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981.  The preferred composition in the '981 Patent has "from about 5[%] to about 15% by weight of unsaturated carboxylic acid."  '981 Pat., col. 3, ll. 59-60.  Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the

Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in

Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight

percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See

'873 Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt incorporating

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made from a

thermoplastic polyurethane identified as ESTANE 58133. A review of the scientific literature

yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE

58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range claimed of Shore

D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as

Application/Control Number:                              Page 86
95/000,120
Art Unit: 3993

> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 4 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 22: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 22: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."

Application/Control Number:                          Page 87
95/000,120
Art Unit: 3993

Ground 22: Examiner's Response to the Argument and Comments

     Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #23.**

     In the alternative, the requester submits on pages 34-48 that claim 4 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

     Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

     Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 4 | Nesbitt mentioning Molitor '637 |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |

Application/Control Number:
95/000,120
Art Unit: 3993

Page 88

| | |
|---|---|
| Shore D hardness of about 60 or more molded over said spherical core, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>"[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.)<br><br>Exhibit I: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer having | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60). |
| a Shore D hardness of about 64 or less | Molitor '637: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60) |

Application/Control Number:                    Page 89
95/000,120
Art Unit: 3993

| | |
|---|---|
| | ESTANE 58133 has a **Shore D hardness of 55**, see <u>Exhibit J</u> (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Also see below why this cover material has inherently a Shore D hardness of 55. |
| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material … is then re-molded onto the inner ply or layer 14 …." (Nesbitt, col. 2, lines 43-47.)<br><br>"[T]he outer layer or cover 16 being of dimpled configuration …." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover layer comprising polyurethane based material. | <u>Nesbitt:</u> "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.)<br><br><u>Molitor '637:</u> Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).)<br><br><u>Exhibit J:</u> ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made from a

thermoplastic polyurethane identified as ESTANE 58133. A review of the scientific literature

yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE

58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range claimed of Shore

D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

Application/Control Number:                              Page 91
95/000,120
Art Unit: 3993

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

Thus, because it appears that to one of ordinary skill in the art at the time the invention

was created that the actual chemical composition of the material is not critical to the practice of

the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one

of ordinary skill in the art at the time the invention was made would find it obvious to substitute

one material for another material if both materials had substantially the same mechanical

properties.

Application/Control Number:                                      Page 92
95/000,120
Art Unit: 3993

This rejection of claim 4 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 23: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 23: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 23: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 2:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #24.**

The requester submits on pages 38-40 of the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Application/Control Number:                                              Page 93
95/000,120
Art Unit: 3993

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations.  As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 4 | Nesbitt mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| Shore D hardness of about 60 or more molded over said spherical core, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>"[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.)<br><br>Exhibit I: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." |

Application/Control Number:                                    Page 94
95/000,120
Art Unit: 3993

| | |
|---|---|
| | (Nesbitt, col. 3, ll. 56-61).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer having | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>**Nesbitt:** "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Wu**: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66.) |
| a Shore D hardness of about 64 or less | **Molitor '637**: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60)<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Also see below why this cover material has inherently a Shore D hardness of 55.<br><br>**Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, *inter alia*, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly |

Application/Control Number:                          Page 95
95/000,120
Art Unit: 3993

| | proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention, More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38.)<br><br>See below for more explanation of how Wu teaches and/or suggests the Shore D hardness of 64 or less limitation explanation. |
|---|---|
| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>"[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover layer comprising polyurethane based material. | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.)<br><br>**Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).)<br><br>Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer.<br><br>**Wu:** "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, *inter alia*, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. |

Application/Control Number:                                      Page 96
95/000,120
Art Unit: 3993

| | just prior to the final molding step) has been found to be suitable for the present invention, More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38.) |
| --- | --- |

As mentioned above, Nesbitt references Molitor '637 as describing an number of compositions suitable for the inner cover layer 14. Of particular interest in this case are Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873 Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer. Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993. Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

Application/Control Number:                                   Page 98
95/000,120
Art Unit: 3993

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

This rejection of claim 4 based on Nesbitt mentioning Molitor '637 in view of Wu as

evidenced by Exhibit C was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


Ground 24: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as

those at "Ground 3: Patent Owner's Argument," *supra*.


Ground 24: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter

arguments are the same as those at "Ground 3: Third Party Requester's Comments," *supra*.


Ground 24: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained. See "Ground 3: Examiner's Response to the Argument and Comments,"

*supra*.

Application/Control Number:                          Page 99
95/000,120
Art Unit: 3993


**Proposed Third Party Requester Rejection: Ground #25.**

The requester submits on pages 40-42 of the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 4 | Nesbitt mentioning Molitor '637 |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| Shore D hardness of about 60 or more molded over said spherical core, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.) "[A] center or core 12 ... is molded with a layer of hard, |

Application/Control Number:                                    Page 100
95/000,120
Art Unit: 3993

| | |
|---|---|
| | high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.)<br><br>Exhibit I: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557.  (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer having | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention."  (Nesbitt, col. 3, ll. 54-60). |
| a Shore D hardness of about 64 or less | Molitor '637: Teaches the use of ESTANE 58133 in Examples 16 and 17.  (Molitor '637, col. 18, ll. 32-60)<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Also see below why this cover material has inherently a |

Application/Control Number:                    Page 101
95/000,120
Art Unit: 3993

| | Shore D hardness of 55. |
|---|---|
| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material … is then re-molded onto the inner ply or layer 14 …." (Nesbitt, col. 2, lines 43-47.) "[T]he outer layer or cover 16 being of dimpled configuration …." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover layer comprising polyurethane based material. | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.) **Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).) Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As shown above in the claim chart, Nesbitt mentioning Molitor '673 suggests the use of a soft outer cover layer including a polyurethane material. In an analogous golf ball, Molitor '751 teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core **a cover having a shore C hardness less than 85, preferably 70-80, and most preferably 72-76.** The novel **cover of the golf ball of the invention is made of a composition comprising a blend of (1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness greater than 55.**

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core
> and a cover, but also includes balls having a separate solid layer beneath the cover as
> disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls have non-wound
> cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

Application/Control Number:                                    Page 103
95/000,120
Art Unit: 3993

As stated in the request on page 39

It would have been obvious to one of ordinary skill in the art at the time of the
invention to substitute the soft outer cover layer of Nesbitt and replace it with an
outer cover layer made of the soft polyurethane material taught by Molitor '751 to
provide a golf ball that includes "playability properties as good or better than
balata-covered wound balls but are significantly more durable," and "have better
wood playability properties than conventional two-piece balls, and permit
experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, ll. 61-68)

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

Application/Control Number:                                    Page 104
95/000,120
Art Unit: 3993

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

> As stated in the request spanning pages 41-42
>
> It would have been obvious to one of ordinary skill in the art at the time of the
> invention to substitute the soft non-ionomeric polymeric outer cover layer
> incorporated by Nesbitt and replace it with an outer cover layer made of the soft
> polyurethane material taught by Molitor '751 to provide a golf ball that includes
> "playability properties as good or better than balata-covered wound balls but are
> significantly more durable," and "have better wood playability properties than
> conventional two-piece balls, and permit experienced golfers to apply spin so as
> to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2,
> ll. 61-68)

Moreover, because it appears that to one of ordinary skill in the art at the time the

invention was created that the actual chemical composition of the material is not critical to the

practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a

golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to

substitute one material for another material if both materials had substantially the same

mechanical properties.

This rejection of claim 4 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 25: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as

those at "Ground 4: Patent Owner's Argument," *supra*.

Application/Control Number:                     Page 105
95/000,120
Art Unit: 3993


Ground 25: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter

arguments are the same as those at "Ground 4: Third Party Requester's Comments," *supra*.


Ground 25: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained. See "Ground 4: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #26.**

The requester submits on pages 42-46 that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 4 | Proudfit |
|---------|----------|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |

Application/Control Number:
95/000,120
Art Unit: 3993

Page 106

| | |
|---|---|
| a spherical core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** [in the shape of a sphere] and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| Shore D hardness of about 60 or more molded over said spherical core, | Exhibit I: Surlyn® 8940 has a Shore D hardness of 65; Surlyn® 9910 has a Shore D hardness of 64.<br><br>Therefore, this cover blend has a hardness of 60 or more. (See Decl. of Edmund A. Hebert at ¶¶ 8-9.)<br><br>"The inner layer can be molded in one of two methods:<br>1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core.<br>2. Injection mold halfshells, place halfshells over the core, |

Application/Control Number:                                    Page 107
95/000,120
Art Unit: 3993

| | compression mold the inner cover over the core." (Proudfit, col. 8, lines 32-38.)<br><br>See below with respect to Shore D hardness. |
|---|---|
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>Ionomer Type — Blend Ratio<br>Sodium- Surlyn 8940 — 75%<br>Zinc- Surlyn 9910 — 25%<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (col. 6, |

Application/Control Number:                     Page 108
95/000,120
Art Unit: 3993

| | lines 6-7.) |
|---|---|
| | The composition of the inner cover layer is described in Table 6. |
| | **TABLE 6** |
| | Composition of Inner Layer of Cover (Parts by Weight) |
| | Ionomer Type / Blend Ratio |
| | Sodium- Surlyn 8940 — 75% |
| | Zinc- Surlyn 9910 — 25% |
| | (Proudfit, col. 8, ll. 22-30.) |
| an outer cover layer having | "...**an outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| a Shore D hardness of about 64 or less | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.) |
| | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17.) An example of this blend is disclose in Table 7 reproduced below. |
| | **TABLE 7** |
| | Composition of Outer Layer (Parts by Weight) |
| | Trans PolyIsoprene (TP-301) — 60.00 |
| | Polybutadiene — 40.00 |
| | Zinc Oxide — 5.00 |
| | Titanium DiOxide — 17.00 |
| | Ultramarine Blue color — .50 |
| | Zinc DiAcrylate — 35.00 |
| | Peroxide (Varox 230 XL) — 2.50 |
| | Total — 160.00 |
| | Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52.** Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64. |

Application/Control Number:                          Page 109
95/000,120
Art Unit: 3993

| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | **Figure 1 of Proudfit shows dimples formed on the outer surface**  |
|---|---|
| said outer cover layer comprising polyurethane based material. | "… an outer layer of soft material such as balata or a blend of balata and other elastomers." (col. 5, lines 15-17.) Also, see below. |

As pointed out in the request on pages 45 and 46:

While Proudfit may not expressly disclose the use of polyurethane as an outer cover material, it would have been obvious given that "[t]he patent literature is replete with proposed cover formulations seeking to improve upon the balata and ionomer covers [including] [p]olyurethane …." (See Molitor '751, col. 2, lines 9-12.) Soft polyurethane materials had been known to be a substitute for balata covers for decades prior to the filing of the '130 patent.

For example, Molitor '637 discloses the use of polyurethane material as a soft polymeric material that may be used as an outer cover layer of a golf ball. (See Molitor '637, col. 5, lines 33-41; col. 18, Examples 16 and 17.) One exemplary polyurethane material used by Molitor as an outer cover material includes Estane 58133.

As was readily appreciated by those skilled in the art--including the inventor of the '130 patent--the types of materials used in a golf ball are not as critical to a golf ball's playability as are the mechanical properties of those materials. (See Exhibit G at 334.) The Estane 58133 is a relatively soft material and has a Shore D hardness of 55 and is also a low flexural modulus material having a modulus of about 25,000 psi. (See Exhibit J.) Proudfit's outer cover layer is also relatively soft and has a flexural modulus between 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31.) Due to the similarities between these two materials, the ordinarily skilled artisan would have recognized the substitutability of these two materials as well as the benefits of using polyurethane as an outer cover material.

On page 46, the request concludes:

Application/Control Number:                              Page 110
95/000,120
Art Unit: 3993

It would have been obvious to one of ordinary skill in the art at the time of invention to modify the balata-based outer cover layer of Proudfit to include the Estane polyurethane outer cover layer material of Molitor '637 because such was a well known substitute to balata and gives a number of advantages over balata as would have been readily appreciated by those skilled in the art. These advantages include: (1) improved processability; (2) improved durability when compared to balata; (3) cost-effectiveness when compared to balata; and (4) having a good "click" and "feel." (See *supra* [regarding the what "click" and "feel" mean to a golfer]) All of this would have led one of ordinary skill in the art to replace the soft balata outer cover layer of Proudfit with the soft polyurethane outer cover layer of Molitor '637 at the time of the alleged invention.

This rejection of claim 4 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 26: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as

those at "Ground 5: Patent Owner's Argument," *supra.*

Ground 26: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter

arguments are the same as those at "Ground 5: Third Party Requester's Comments," *supra.*

Ground 26: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

Application/Control Number:                                    Page 111
95/000,120
Art Unit: 3993

'637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #27.**

    The requester submits on pages 46–48 that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

    Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

    Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 4 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a spherical core; |  "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** [in the shape of a sphere] and a cover 12 which comprises a relatively hard inner layer 13 of one or |

Application/Control Number:                                    Page 112
95/000,120
Art Unit: 3993

| | |
|---|---|
| | more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| Shore D hardness of about 60 or more molded over said spherical core, | <u>Exhibit I:</u> Surlyn® 8940 has a Shore D hardness of 65; Surlyn® 9910 has a Shore D hardness of 64.<br><br>Therefore, this cover blend has a hardness of 60 or more. (See Decl. of Edmund A. Hebert at ¶¶ 8-9.)<br><br>"The inner layer can be molded in one of two methods:<br>1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core.<br>2. Injection mold halfshells, place halfshells over the core, compression mold the inner cover over the core." (Proudfit, col. 8, lines 32-38.)<br><br>See below with respect to Shore D hardness. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins |

Application/Control Number:                       Page 113
95/000,120
Art Unit: 3993

| | |
|---|---|
| | containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight.**" ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (col. 6, lines 6-7.)<br><br>The composition of the inner cover layer is described in Table 6.<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| an outer cover layer having | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

Application/Control Number:
95/000,120
Art Unit: 3993

Page 114

| a Shore D hardness of about 64 or less | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.)<br><br>"... an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17.) An example of this blend is disclose in Table 7 reproduced below.<br><br>TABLE 7<br><br>Composition of Outer Layer (Parts by Weight)<br><br>Trans PolyIsoprene (TP-301) ........ 80.00<br>Polybutadiene ........................... 40.00<br>Zinc Oxide ............................... 5.00<br>Titanium DiOxide ...................... 17.00<br>Ultramarine Blue color ............... .50<br>Zinc DiAcrylate ........................ 35.00<br>Peroxide (Varox 290 XL) ............ 2.50<br>Total ..................................... 160.00<br><br>Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52.** Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64. |
| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | **Figure 1 of Proudfit shows dimples formed on the outer surface**<br><br> |
| said outer cover layer comprising polyurethane based material. | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (col. 5, lines 15-17.) Also, see below. |

Application/Control Number:                          Page 115
95/000,120
Art Unit: 3993

As pointed out in the request on pages 46 and 47:

... Proudfit teaches a golf ball having a two-piece cover including a hard, ionomeric
inner cover layer and a soft balata outer cover layer. While Proudfit may not disclose the
use of a polyurethane material as the outer cover layer of a golf ball, it would have been
obvious to one of ordinary skill in the art at the time of invention to modify the soft balata
outer cover layer of Proudfit to include the soft polyurethane material taught by Wu. Wu
teaches that: "The problem with SURLYN®-covered golf balls, however, is that they
lack the "click" and "feel" which golfers had become accustomed to with balata. "Click"
is the sound when the ball is hit by a golf club and "feel" is the overall sensation imparted
to the golfer when the ball is hit. It has been proposed to employ polyurethane as a cover
stock for golf balls because, like SURLYN®, it has a relatively low price compared to
balata and provides superior cut resistance over balata. However, unlike SURLYN®-
covered golf balls, polyurethane-covered golf balls can be made to have the "click" and
'feel" of balata. (Wu at col. 1, lines 36-46.) As the inventor of the '130 patent had
indicated in a 1994 publication, golf ball designers understood that the mechanical
properties of the layers impacted the performance of the golf ball more than the materials
themselves. (Exhibit G at 334.) Additionally, Wu's polyurethane material inherently has
a flexural modulus of about 23,000 psi as measured in accordance with ASTM standards.
(Decl. of Jeff Dalton at ¶ 7.) Proudfit's outer cover layer material has a flexural modulus
of between about 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31 .) Thus, one of
ordinary skill in the art would have appreciated that using Wu's polyurethane as Proudfit's
outer cover layer would have provided similar playability characteristics as well as
numerous advantages including, for example, durability.
    Based on Wu's teachings, one of ordinary skill in the art would have recognized the
substitutability of soft polyurethane for soft balata-based materials and the advantages of
making such a substitution. These advantages include (1) low price compared to balata;
(2) better cut resistance when compared to balata; and (3) a "click" and "feel" that is
similar to balata. Moreover, the replacing the balata-material taught by Proudfit would
have been obvious to those skilled in the art prior to November 9, 1995 because before
that time, the Titleist Professional™ golf ball, which had used Wu's polyurethane
material, had replaced balata-covered balls as the market leader. (See Exhibit C; see also
Decl. of Jeffery L. Dalton at ¶¶ 3-4.)

On page 48 the request concludes with:

Therefore, it would have been obvious to one of ordinary skill in the art at the time of
the alleged invention to modify Proudfit's golf ball by replacing the soft balata outer
cover layer with an outer cover layer made of soft polyurethane material because
polyurethane provides numerous advantages over balata while exhibiting the "click"
and "feel" of balata.

Application/Control Number:                                  Page 116
95/000,120
Art Unit: 3993

This rejection of claim 4 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.

Ground 27: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.  The arguments are the same as

those at "Ground 6: Patent Owner's Argument," *supra*.

Ground 27: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.  The counter

arguments are the same as those at "Ground 6: Third Party Requester's Comments," *supra*.

Ground 27: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained.  See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra*.

**Proposed Third Party Requester Rejection: Ground #28.**

Application/Control Number:                          Page 117
95/000,120
Art Unit: 3993

The requester submits on pages 48-49 that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 4 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a spherical core; | <br><br>"FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** [in the shape of a sphere] and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." |

Application/Control Number:                          Page 118
95/000,120
Art Unit: 3993

| | |
|---|---|
| | (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| Shore D hardness of about 60 or more molded over said spherical core, | Exhibit I: Surlyn® 8940 has a Shore D hardness of 65; Surlyn® 9910 has a Shore D hardness of 64. <br><br> Therefore, this cover blend has a hardness of 60 or more. (See Decl. of Edmund A. Hebert at ¶¶ 8-9.) <br><br> "The inner layer can be molded in one of two methods: 1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core. 2. Injection mold halfshells, place halfshells over the core, compression mold the inner cover over the core." (Proudfit, col. 8, lines 32-38.) <br><br> See below with respect to Shore D hardness. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6." <br><br> **TABLE 6** <br> Composition of Inner Layer of Cover (Parts by Weight) <br><br> | Ionomer Type | Blend Ratio | <br> |---|---| <br> | Sodium- Surlyn 8940 | 75% | <br> | Zinc- Surlyn 9910 | 25% | <br><br> (Proudfit, col. 8, ll. 22-30) <br><br> SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. <br><br> Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, |

Application/Control Number:                    Page 119
95/000,120
Art Unit: 3993

| | col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
|---|---|
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (col. 5, line 66- col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (col. 6, lines 6-7.)<br><br>The composition of the inner cover layer is described in Table 6.<br><br>TABLE 6<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| an outer cover layer having | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| a Shore D hardness of about 64 or less | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.)<br><br>"... an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15- |

Application/Control Number:                                     Page 120
95/000,120
Art Unit: 3993

| | |
|---|---|
| | 17.) An example of this blend is disclose in Table 7 reproduced below.<br><br>**TABLE 7**<br>Composition of Outer Layer<br>(Parts by Weight)<br><br>Trans PolyIsoprene (TP-301)   60.00<br>Polybutadiene   40.00<br>Zinc Oxide   5.00<br>Titanium DiOxide   17.00<br>Ultramarine Blue color   .50<br>Zinc DiAcrylate   35.00<br>Peroxide (Varox 250 XL)   2.50<br>Total   160.00<br><br>Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52.** Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64. |
| disposed about said inner cover layer and defining a plurality of dimples to form a multi-layer golf ball, | **Figure 1 of Proudfit shows dimples formed on the outer surface**<br><br> |
| said outer cover layer comprising polyurethane based material. | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (col. 5, lines 15-17.) Also, see below. |

As pointed out in the request on pages 48 and 49:

...Proudfit teaches a golf ball having a two-piece cover including a hard, ionomeric inner cover layer and a soft balata outer cover layer. While Proudfit may not disclose the use of a polyurethane material as the outer cover layer for a golf ball, it would have been obvious to one of ordinary skill in the art at the time of invention to modify Proudfit's

golf ball by replacing the soft balata outer cover layer with the soft polyurethane outer cover layer taught by Molitor '751.

Molitor '751 teaches that: It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core a cover having a shore C hardness less than 85, preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of the invention is made of a composition comprising a blend of (1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness greater than 55. (Molitor '751, col. 2, lines 33-49.) In explaining what a "two-piece" golf ball is, the Molitor '751 patent explains that: The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, but also includes balls having a solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and Other balls having non-wound cores. (Molitor '751, col. 2, lines 7-12.)

Proudfit teaches a "two-piece" golf ball that fits within this definition. Molitor '751 explains that the advantages of using a cover layer including a soft polyurethane material on a two-piece golf ball, such as the golf ball of Proudfit, include "playability properties as good or better than balata-covered wound balls but are significantly more durable," and "have better wood playability properties than conventional two- piece balls, and permit experienced golfers to apply spin so as to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2, lines 61-68.)

Molitor expresses the hardness of the cover material as a Shore C hardness of less than 85, preferably 70 to 85 and most preferably 72 to 76. (Molitor '751, col. 4, lines 21-25.) Based on Callaway's own measurements, a Shore C hardness of 73 is equal to a Shore D hardness of 47. (See U.S. Patent No. 6,905,648, Table 19 (Exhibit L.) A cover material having a Shore C hardness of between 72 and 76 will inherently have a Shore D hardness of less than 64.

On page 49 the request concludes:

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention to replace the soft balata outer cover layer of Proudfit with the soft outer cover layer including a soft polyurethane material as taught by Molitor '751 to provide golf balls that have "playability properties as good or better than balata-covered wound balls but are significantly more durable," and "have better wood playability properties than conventional two-piece balls, and permit experienced golfers to apply spin so as to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2, lines 61-68.)

Application/Control Number:                           Page 122
95/000,120
Art Unit: 3993

This rejection of claim 4 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 28: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.  The arguments are the same as

those at "Ground 7: Patent Owner's Argument," *supra*.


Ground 28: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.  The counter

arguments are the same as those at "Ground 7: Third Party Requester's Comments," *supra*.


Ground 28: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.  See "Ground 7:  Examiner's Response to the Argument and

Comments," *supra*.


### Re. Claim 5

**Proposed Third Party Requester Rejection: Ground #29.**

The requester submits on pages 50-51 that claim 5 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

Application/Control Number:                                          Page 123
95/000,120
Art Unit: 3993

**This rejection is <u>adopted in this office action.</u>**

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 5 | Nesbitt |
|---|---|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a thickness of about 0.100 to about 0.010 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 5 based on Nesbitt incorporating my reference Molitor '637 was

proposed by the third party requester in the request for reexamination and <u>is being adopted</u>

essentially as proposed in the request.


Ground 29: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Application/Control Number:                             Page 124
95/000,120
Art Unit: 3993

Ground 29: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."


Ground 29: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #30.**

In the alternative, the requester submits on page 51 that claim 5 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 5 | Nesbitt |
|---|---|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a thickness of about 0.100 to about 0.010 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a | "The thickness of the outer layer or cover 16 of soft, low |

Application/Control Number:
95/000,120
Art Unit: 3993

Page 125

| thickness of about 0.010 to about 0.070 inches, | flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 5 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 30: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 30: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 2: Third Party Requester's Comments."

Ground 30: Examiner's Response to the Argument and Comments

Application/Control Number:                                          Page 126
95/000,120
Art Unit: 3993

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is

maintained.  See "Ground 2:  Examiner's Response to the Argument and Comments," *supra.*


**Proposed Third Party Requester Rejection: Ground #31.**

The requester submits on page 51 of the request that claim 5 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations where Nesbitt discloses, teaches

or suggests the claim limitations.

| Claim 5 | Nesbitt |
|---|---|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a thickness of about 0.100 to about 0.010 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf |

Application/Control Number:                          Page 127
95/000,120
Art Unit: 3993

| | ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |
|---|---|

This rejection of claim 5 based on Nesbitt in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 31: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.  The arguments are the same as those at "Ground 3: Patent Owner's Argument," *supra*.


Ground 31: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.  The counter arguments are the same as those at "Ground 3: Third Party Requester's Comments," *supra*.


Ground 31: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 5 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained.  See "Ground 3: Examiner's Response to the Argument and Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #32.**

Application/Control Number:                         Page 128
95/000,120
Art Unit: 3993

The requester submits on page 51 of the request that claim 5 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 5 | Nesbitt |
|---------|---------|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a thickness of about 0.100 to about 0.010 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 5 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Application/Control Number:                          Page 129
95/000,120
Art Unit: 3993


Ground 32: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as
those at "Ground 4: Patent Owner's Argument," *supra*.


Ground 32: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter
arguments are the same as those at "Ground 4: Third Party Requester's Comments," *supra*.


Ground 32: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the
rejection of claim 5 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor
'751 is maintained. See "Ground 4: Examiner's Response to the Argument and
Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #33.**

The requester submits on pages 51-52 that claim 5 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et
al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view
of Molitor '637.

Application/Control Number:                          Page 130
95/000,120
Art Unit: 3993

     Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 5 | Proudfit |
|---|---|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a thickness of about 0.100 to about 0.010 inches and | "The thickness of the inner layer can be within the range of about 0.0250 to 0.2875 inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, lines 37-40.) "The preferred dimensions are ... an inner layer thickness of 0.037 inch ...." (Proudfit, col. 7, lines 43-44.) |
| said outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ...." (Proudfit, col. 7, lines 40-46.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (Proudfit, col. 7, lines 43-47.) |

     This rejection of claim 5 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 33: Patent Owner's Argument

     Patent Owner does not specifically argue this rejection. The arguments are the same as

those at "Ground 5: Patent Owner's Argument," *supra*.

Application/Control Number:                                    Page 131
95/000,120
Art Unit: 3993

Ground 33: Third Party Requester's Comments

     Third Party Requester does not specifically counter argue this rejection. The counter

arguments are the same as those at "Ground 5: Third Party Requester's Comments," *supra*.


Ground 33: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained. See "Ground 5: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #34.**

     The requester submits on pages 51-52 that claim 5 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

     Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

     Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 5 | Proudfit |
|---|---|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a | "The thickness of the inner layer can be within the range |

| thickness of about 0.100 to about 0.010 inches and | of about 0.0250 to 0.2875 inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, lines 37-40.) "The preferred dimensions are ... an inner layer thickness of 0.037 inch ...." (Proudfit, col. 7, lines 43-44.) |
|---|---|
| said outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ...." (Proudfit, col. 7, lines 40-46.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (Proudfit, col. 7, lines 43-47.) |

This rejection of claim 5 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 34: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as

those at "Ground 6: Patent Owner's Argument," *supra.*


Ground 34: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter

arguments are the same as those at "Ground 6: Third Party Requester's Comments," *supra.*

Application/Control Number:                                   Page 133
95/000,120
Art Unit: 3993

Ground 34: Examiner's Response to the Argument and Comments

  Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained. See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra.*


**Proposed Third Party Requester Rejection: Ground #35.**

  The requester submits on pages 51-52 that claim 5 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,674,751 (Molitor '751).

  Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

  Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 5 | Proudfit |
|---|---|
| A golf ball according to claim 4, wherein | See above. |
| said inner cover layer has a thickness of about 0.100 to about 0.010 inches and | "The thickness of the inner layer can be within the range of about 0.0250 to 0.2875 inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (Proudfit, col. 7, lines 37-40.) "The preferred dimensions are ... an inner layer thickness of 0.037 inch ...." (Proudfit, col. 7, lines 43-44.) |
| said outer cover layer has a | "The thickness of the outer layer can be within the range |

Application/Control Number:                                    Page 134
95/000,120
Art Unit: 3993

| thickness of about 0.010 to about 0.070 inches, | of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ...." (Proudfit, col. 7, lines 40-46.) |
|---|---|
| said golf ball having an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (Proudfit, col. 7, lines 43-47.) |

This rejection of claim 5 based on Proudfit in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 35: Patent Owner's Argument

Patent Owner does not specifically argue this rejection. The arguments are the same as those at "Ground 7: Patent Owner's Argument," *supra*.


Ground 35: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection. The counter arguments are the same as those at "Ground 7: Third Party Requester's Comments," *supra*.


Ground 35: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 5 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

Application/Control Number:                          Page 135
95/000,120
Art Unit: 3993

'751 is maintained.  See "Ground 7:  Examiner's Response to the Argument and

Comments," *supra*.


<u>Re. Claim 6</u>

**Proposed Third Party Requester Rejection: Ground #36.**

    The requester submits on pages 52-53 that claim 6 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

    **This rejection is <u>adopted in this office action.</u>**

    Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt (Molitor '637 incorporated by reference) |
|---|---|
| A golf ball according to claim 4 wherein | See above. |
| said inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural |

Application/Control Number:                    Page 136
95/000,120
Art Unit: 3993

| modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |
|---|

This rejection of claim 6 based on Nesbitt incorporating by reference Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 36: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 36: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Ground 36: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #37.**

In the alternative, the requester submits on pages 52-53 that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637).

Application/Control Number:                          Page 137
95/000,120
Art Unit: 3993

Claim 6 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt |
|---|---|
| A golf ball according to claim 4 wherein | See above. |
| said inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 6 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 37: Patent Owner's Argument

Application/Control Number:                                   Page 138
95/000,120
Art Unit: 3993

Patent Owner argues that the minimum thickness for the outer layer of the cover of

Molitor '637 is 0.060 inches while this claim requires a thickness of 0.055 for this layer (Patent

Owner's Response at middle of page 17).


Ground 37: Third Party Requester's Comments

Third Party Requester counter argues that Nesbitt discloses a range of 0.020 to 0.100

inches for the thickness of the outer cover of a golf ball (Nesbitt at col. 3, lines 22-25). The

holding in *KRS* would dictate that one of ordinary skill would know to use the material of

Molitor '637, polyurethane, with the thickness of Nesbitt (Third Party Requester's Comments at

page 20-21).


Ground 37: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 6 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained.

Since Nesbitt references the Molitor '637 patent, one of ordinary skill would logically look at its

complete disclosure which includes the use of polyurethane as an outer cover. Using the

thickness values of Nesbitt with polyurethane would be obvious because Nesbitt states that "the

thickness of the inner layer . . . and the thickness of outer layer . . . may be varied to secure the

advantages herein mentioned" at col. 3, lines 16-19. The advantages Nesbitt wishes to achieve

are both distance and feel in one golf ball (Nesbitt at col. 2, lines 1-9).


**Proposed Third Party Requester Rejection: Ground #38.**

Application/Control Number:                           Page 139
95/000,120
Art Unit: 3993

In the alternative, the requester submits on page 53 that claim 6 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 6 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt |
|---------|---------|
| A golf ball according to claim 4 wherein | See above. |
| said inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

Application/Control Number:                                    Page 140
95/000,120
Art Unit: 3993

     This rejection of claim 6 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.

Ground 38: Patent Owner's Argument

     Patent Owner does not specifically argue this rejection.  The arguments are the same as

those at "Ground 3: Patent Owner's Argument," *supra*.

Ground 38: Third Party Requester's Comments

     Third Party Requester does not specifically counter argue this rejection.  The counter

arguments are the same as those at "Ground 3: Third Party Requester's Comments," *supra*.

Ground 38: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 6 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

*supra*.

**Proposed Third Party Requester Rejection: Ground #39.**

     In the alternative, the requester submits on pages 52-53 that claim 6 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,674,751 (Molitor '751).

Application/Control Number:                          Page 141
95/000,120
Art Unit: 3993

Claim 6 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt |
|---|---|
| A golf ball according to claim 4 wherein | See above. |
| said inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| said outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, lines 39-40.) |
| said golf ball having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (Nesbitt, col. 2, lines 50-52.)<br><br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (Nesbitt, col. 3, lines 34-38.) |

This rejection of claim 6 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 39: Patent Owner's Argument

Application/Control Number:                                    Page 142
95/000,120
Art Unit: 3993

    Patent Owner does not specifically argue this rejection.


Ground 39: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.


Ground 39: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the
rejection of claim 6 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor
'751 is maintained.    See "Ground 4:  Examiner's Response to the Argument and
Comments," *supra*.


**Proposed Third Party Requester Rejections: Ground #40-42.**

    The requester submits on pages 53-54 that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et
al. U.S. Pat. No. 4,274,637 (Molitor '637); Wu, U.S. Pat. No. 5,334,673 (Wu); or Molitor et al.,
U.S. Pat. No. 4,674,751 (Molitor '751).

    **These rejections are <u>not adopted</u> for the reasons given in Order Granting
Reexamination, dated 04/07/2006, at paragraph #23, which is incorporated herein.**


<u>Re. Claim 7</u>

**Proposed Third Party Requester Rejection: Ground #43.**

Application/Control Number:                          Page 143
95/000,120
Art Unit: 3993

    The requester submits on pages 56-59 that claim 7 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

    **This rejection is <u>adopted</u> in this office action.**

Below is a claim chart identifying the claim limitations and which reference Nesbitt or Molitor

'637 discloses, teaches or suggests the claim limitations.

| Claim 7 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| said inner cover layer having a Shore D hardness of at least 60, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.) "[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.) <u>Exhibit I</u>: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers |

Application/Control Number:                          Page 144
95/000,120
Art Unit: 3993

| and | 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61). |
|---|---|
| | **Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| | Per the '293 Patent: "Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin ...." ('293 patent, col. 2, lines 54-58.) |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.) |
| | "[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48–49; Fig. 2.) |
| said outer cover having a Shore D hardness of 64 or less, | **Nesbitt:** "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60). |
| | **Molitor '637**: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60) |
| | ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | Also see below why this cover material has inherently a Shore D hardness of 55. |
| said outer layer comprising a polyurethane, | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. |

Application/Control Number:                           Page 145
95/000,120
Art Unit: 3993

| | |
|---|---|
| | 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.)<br><br>**Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).)<br><br>Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane (TPU Compound)** which is a non-ionomeric thermoplastic elastomer. |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | Exhibit J: Estane 58133 Product Information: Estane 58133 has a modulus of 25,000 psi.<br><br>Nesbitt: Nesbitt's exemplary outer cover layer is made of Surlyn® 1855, which has the same hardness as Estane 58133 and has a flexural modulus of 14,000 psi. |

As mentioned above, Nesbitt incorporating by reference Molitor '637 describes an number of compositions suitable for the inner cover layer 14. Of particular interest in this case are Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

Exhibit J is a product information sheet for Estane 58133 a material that is taught to be

used as an outer layer. Exhibit J teaches that Estane 58133 has a flexural modulus of 25,000 psi.

This rejection of claim 7 based on Nesbitt incorporating by reference Molitor '637 was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.

Ground 43: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 43: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."

Application/Control Number:                                      Page 147
95/000,120
Art Unit: 3993

Ground 43: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #44.**

In the alternative, the requester submits on pages 56-59 that claim 7 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 7 | Nesbitt mentioning Molitor '637 |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| said inner cover layer having a | "[I]nner cover 14 of molded hard, highly flexural |

Application/Control Number:                          Page 148
95/000,120
Art Unit: 3993

| | |
|---|---|
| Shore D hardness of at least 60, | modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>"[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.)<br><br><u>Exhibit I</u>: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61).<br><br><u>Molitor '637</u>: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34).<br><br>Per the '293 Patent: "Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin ...." ('293 patent, col. 2, lines 54-58.) |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>"[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover having a Shore D hardness of 64 or less, | <u>Nesbitt</u>: "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable |

Application/Control Number:                        Page 149
95/000,120
Art Unit: 3993

| | |
|---|---|
| | compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60)<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Also see below why this cover material has inherently a Shore D hardness of 55. |
| said outer layer comprising a polyurethane, | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.)<br><br>**Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).)<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | Exhibit J: Estane 58133 Product Information: Estane 58133 has a modulus of 25,000 psi.<br><br>Nesbitt: Nesbitt's exemplary outer cover layer is made of Surlyn® 1855, which has the same hardness as Estane 58133 and has a flexural modulus of 14,000 psi. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Application/Control Number:                                    Page 150
95/000,120
Art Unit: 3993

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

    Exhibit J is a product information sheet for Estane 58133 a material that is taught to be

used as an outer layer. Exhibit J teaches that Estane 58133 has a flexural modulus of 25,000 psi.

    This rejection of claim 7 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Application/Control Number:                                Page 151
95/000,120
Art Unit: 3993


Ground 44: Patent Owner's Argument

    Patent Owner does not specifically argue this rejection.


Ground 44: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.


Ground 44: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 7 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained. See "Ground 2: Examiner's Response to the Argument and Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #45.**

    The requester submits on pages 59-61 of the request that claim 7 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu, U.S. Pat. No. 5,334,673 (Wu).

    Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

    Below is a claim chart identifying the claim limitations and which reference Nesbitt or Wu discloses, teaches or suggests the claim limitations. As reported in the Order granting reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

Application/Control Number:                                    Page 152
95/000,120
Art Unit: 3993

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 7 | Nesbitt mentioning Molitor '637 |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...:" (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| said inner cover layer having a Shore D hardness of at least 60, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>"[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.)<br><br>Exhibit I: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |

| | |
|---|---|
| | Per the '293 Patent: "Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin ...." ('293 patent, col. 2, lines 54-58.) |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)  "[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover having a Shore D hardness of 64 or less, | **Nesbitt:** "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).  **Molitor '637**: Teaches the use of ESTANE 58133 in Examples 16 and 17.  (Molitor '637, col. 18, ll. 32-60)  ESTANE 58133 has a **Shore D hardness of 55**, see **Exhibit J** (ESTANE Thermoplastic Polyurethane Product Data Sheet)  Also see below why this cover material has inherently a Shore D hardness of 55.  **Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, *inter alia*, the time, temperature, type of curative, and amount of catalyst used.  It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition.  A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final |

Application/Control Number:                          Page 154
95/000,120
Art Unit: 3993

| | |
|---|---|
| | molding step) has been found to be suitable for the present invention, More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38.)<br><br>See below for more explanation of how Wu teaches and/or suggests the Shore D hardness of 64 or less limitation explanation. |
| said outer layer comprising a polyurethane, | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.)<br><br>**Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).)<br><br>**Exhibit J:** ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer.<br><br>**Wu**: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66.) |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | **Exhibit J:** Estane 58133 Product Information: Estane 58133 has a modulus of 25,000 psi.<br><br>Nesbitt: Nesbitt's exemplary outer cover layer is made of Surlyn® 1855, which has the same hardness as Estane 58133 and has a flexural modulus of 14,000 psi. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer. Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993. Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

Application/Control Number:                                    Page 156
95/000,120
Art Unit: 3993

"feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

Application/Control Number:                          Page 157
95/000,120
Art Unit: 3993

This rejection of claim 7 based on Nesbitt mentioning Molitor '637 in view of Wu as

evidenced by Exhibit C was proposed by the third party requester in the request for

reexamination and is being adopted essentially as proposed in the request.


Ground 45: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 45: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 45: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 3:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #46.**

The requester submits on pages 61-63 of the request that claim 7 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

Application/Control Number:                                        Page 158
95/000,120
Art Unit: 3993

    Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 7 | Nesbitt mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A multi-layer golf ball comprising: | "The disclosure embraces a golf ball and method of making same...." (Nesbitt, Abstract; FIGS 1 & 2.) |
| a spherical core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or core formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, lines 31-34.) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or inner cover 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, lines 31-34.) |
| said inner cover layer having a Shore D hardness of at least 60, | "[I]nner cover 14 of molded hard, highly flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I. DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>"[A] center or core 12 ... is molded with a layer of hard, high modulus Surlyn resin, such as Surlyn type 1605..." (Nesbitt, col. 3, lines 27-29.)<br><br>Exhibit I: DuPont Surlyn Product Information: Surlyn® 8940 (formerly 1605 (see '293 patent, col. 2, lines 54-55)) has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 [inner] and 16 [outer] for the golf ball of this invention." (Nesbitt, col. 3, ll. 56-61). |

Application/Control Number:                          Page 159
95/000,120
Art Unit: 3993

| | |
|---|---|
| | **Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34).<br><br>Per the '293 Patent: "Type 1605 Surlyn® (Surlyn® 8940) is a sodium ion based low acid (less than or equal to 15 weight percent methacrylic acid) ionomer resin ...." ('293 patent, col. 2, lines 54-58.) |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | "An outer layer, ply, lamination or cover 16 of comparatively soft, low flexural modulus resinous material ... is then re-molded onto the inner ply or layer 14 ...." (Nesbitt, col. 2, lines 43-47.)<br><br>"[T]he outer layer or cover 16 being of dimpled configuration ...." (Nesbitt, col. 2, lines 48-49; Fig. 2.) |
| said outer cover having a Shore D hardness of 64 or less, | **Nesbitt**: "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Teaches the use of ESTANE 58133 in Examples 16 and 17. (Molitor '637, col. 18, ll. 32-60)<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see <u>Exhibit J</u> (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Also see below why this cover material has inherently a Shore D hardness of 55.<br><br>**Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, *inter alia*, the time, temperature, type of curative, and amount of catalyst |

| | used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention, More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38.) See below for more explanation of how Wu teaches and/or suggests the Shore D hardness of 64 or less limitation explanation. |
|---|---|
| said outer layer comprising a polyurethane, | **Nesbitt:** "Reference is made to the application Set. No. 155,658, of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16." (Nesbitt, col. 3, lines 54-60.) **Molitor '637:** Teaches cover materials including "polyurethanes such as are prepared from polyols and organic polyisocyanates"; specifically Estane 58133 thermoplastic polyurethane. (Molitor '637, col. 5, lines 39-41; col. 18, lines 31-59 (examples 16 and 17).) Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. **Wu:** "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66.) |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | Exhibit J: Estane 58133 Product Information: Estane 58133 has a modulus of 25,000 psi. Nesbitt: Nesbitt's exemplary outer cover layer is made of Surlyn® 1855, which has the same hardness as Estane 58133 and has a flexural modulus of 14,000 psi. |

Application/Control Number:                                  Page 161
95/000,120
Art Unit: 3993

As shown above in the claim chart, Nesbitt mentioning Molitor '673 suggests the use of a

soft outer cover layer including a polyurethane material.  In an analogous golf ball, Molitor '751

teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having
> playability properties similar to wound, balata-covered balls is to provide about an
> inner resilient molded core **a cover having a shore C hardness less than 85,**
> preferably 70-80, and most preferably 72-76.  The novel **cover of the golf ball** of
> the invention is made of a composition comprising a blend of (1) **a thermoplastic**
> **urethane having a shore A hardness less than 95** and (2) **an ionomer having a**
> **shore D hardness greater than 55.**

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer**
> **beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to**
> **Nesbitt,** and other balls have non-wound cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76.  As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73.  Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

Application/Control Number:                                    Page 162
95/000,120
Art Unit: 3993

   How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material.  How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A).  A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate.  Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C.  This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

   As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14.  Of particular interest in this case are

Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557.  The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981.  The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60.  Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

Application/Control Number:                              Page 163
95/000,120
Art Unit: 3993

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

> As stated in the request spanning page 63
>
>> It would have been obvious to one of ordinary skill in the art at the time of the
>> invention to substitute the soft non-ionomeric polymeric outer cover layer
>> incorporated by Nesbitt and replace it with an outer cover layer made of the soft
>> polyurethane material taught by Molitor '751 to provide a golf ball that includes
>> "playability properties as good or better than balata-covered wound balls but are
>> significantly more durable," and "have better wood playability properties than
>> conventional two-piece balls, and permit experienced golfers to apply spin so as
>> to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2,
>> ll. 61-68)

Moreover, because it appears that to one of ordinary skill in the art at the time the

invention was created that the actual chemical composition of the material is not critical to the

practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a

golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to

substitute one material for another material if both materials had substantially the same

mechanical properties.

Application/Control Number:                              Page 164
95/000,120
Art Unit: 3993

This rejection of claim 7 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 46: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 46: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 46: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'761 is maintained.   See "Ground 4: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #47.**

The requester submits on pages 63-67 that claim 7 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Application/Control Number:                                Page 165
95/000,120
Art Unit: 3993

　　　Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 7 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls,** and more particularly, to a golf ball having a **two-layer cover.**" (Proudfit, col. 1, ll. 11-12) |
| a spherical core; | <br><br>"FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** [in the shape of a sphere] and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"The inner layer can be molded in one of two methods: |

| | |
|---|---|
| | 1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core.<br>2. Injection mold halfshells, place halfshells over the core, compression mold the inner cover over the core." (Proudfit, col. 8, lines 32-38.) |
| said inner cover layer having a Shore D hardness of at least 60, | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>Ionomer Type — Blend Ratio<br>Sodium- Surlyn 8940 — 75%<br>Zinc- Surlyn 9910 — 25%<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>Exhibit I: Surlyn® 8940 has a Shore D hardness of 65; Surlyn® 9910 has a Shore D hardness of 64.<br><br>Therefore, this cover blend has a hardness of 60 or more. (See Decl. of Edmund A. Hebert at ¶¶ 8-9.) |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>Ionomer Type — Blend Ratio<br>Sodium- Surlyn 8940 — 75%<br>Zinc- Surlyn 9910 — 25%<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is** |

Application/Control Number:                     Page 167
95/000,120
Art Unit: 3993

| | |
|---|---|
| | **"from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (Proudfit, col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (Proudfit, col. 6, ll. 6-7.)<br><br>The composition of the inner cover layer is described in Table 6.<br><br>**·TABLE 6**<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | **Figure 1 of Proudfit shows dimples formed on the outer surface**<br> |

Application/Control Number:                                    Page 168
95/000,120
Art Unit: 3993

| | |
|---|---|
| | |
| said outer cover having a Shore D hardness of 64 or less, | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.)<br><br>"...an **outer layer of soft material** such as balata or a blend of balata and other elastomers."  (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64, see the reasoning below.<br><br>An example of this blend is disclose in Table 7 reproduced below. |

**TABLE 7**

Composition of Outer Layer
(Parts by Weight)

| | |
|---|---|
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .30 |
| Zinc DiAcrylate | 33.00 |
| Peroxide (Varox 250 XL) | 2.50 |
| Total | 160.00 |

| | |
|---|---|
| | Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer.  As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52**.  Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64. |
| said outer layer comprising a polyurethane, | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (col. 5, ll. 15-17.) Also, see below. |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | "The relatively soft elastomeric material of the outer layer has a flexural modulus in the range of about 20,000 to 25,000 psi, and in one specific embodiment had a flexural modulus of from 22,165 to 22,379 psi." (Proudfit, col. 6, ll. 28-31.) |

As pointed out in the request on page 66 and 67:

While Proudfit may not expressly disclose the use of polyurethane as an outer cover material, it would have been obvious given that "[t]he patent literature is replete with proposed cover formulations seeking to improve upon the balata and ionomer covers [including] [p]olyurethane ...." (See Molitor '751, col. 2, lines 9-12.) Soft polyurethane materials had been known to be a substitute for balata covers for decades prior to the filing of the '130 patent.

For example, Molitor '637 discloses the use of polyurethane material as a soft polymeric material that may be used as an outer cover layer of a golf ball. (See Molitor '637, col. 5, lines 33-41; col. 18, Examples 16 and 17.) One exemplary polyurethane material used by Molitor as an outer cover material includes Estane 58133.

As was readily appreciated by those skilled in the art--including the inventor of the '130 patent--the types of materials used in a golf ball are not as critical to a golf ball's playability as are the mechanical properties of those materials. (See Exhibit G at 334.) The Estane 58133 is a relatively soft material and has a Shore D hardness of 55 and is also a low flexural modulus material having a modulus of about 25,000 psi. (See Exhibit J.) Proudfit's outer cover layer is also relatively soft and has a flexural modulus between 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31.) Due to the similarities between these two materials, the ordinarily skilled artisan would have recognized the substitutability of these two materials as well as the benefits of using polyurethane as an outer cover material.

On page 67, the request concludes:

It would have been obvious to one of ordinary skill in the art at the time of invention to modify the balata-based outer cover layer of Proudfit to include the Estane polyurethane outer cover layer material of Molitor '637 because such was a well known substitute to balata and gives a number of advantages over balata as would have been readily appreciated by those skilled in the art. These advantages include: (1) improved processability; (2) improved durability when compared to balata; (3) cost-effectiveness when compared to balata; and (4) having a good "click" and "feel." (See *supra* [regarding the what "click" and "feel" mean to a golfer]) All of this would have led one of ordinary skill in the art to replace the soft balata outer cover layer of Proudfit with the soft polyurethane outer cover layer of Molitor '637 at the time of the alleged invention.

This rejection of claim 7 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 47: Patent Owner's Argument

Application/Control Number:                                    Page 170
95/000,120
Art Unit: 3993

    Patent Owner does not specifically argue this rejection.


Ground 47: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.


Ground 47: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained.   See "Ground 5: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #48.**

    The requester submits on pages 68–69 that claim 7 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

    Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

    Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 7 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a **two-layer cover**." (Proudfit, col. 1, ll. 11-12) |

Application/Control Number:                                      Page 171
95/000,120
Art Unit: 3993

| a spherical core; |  |
| --- | --- |
| | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** [in the shape of a sphere] and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"The inner layer can be molded in one of two methods:<br>1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core.<br>2. Injection mold halfshells, place halfshells over the core, compression mold the inner cover over the core." (Proudfit, col. 8, lines 32-38.) |
| said inner cover layer having a Shore D hardness of at least 60, | "The composition of the inner cover layer is described in Table 6." |

Application/Control Number:                     Page 172
95/000,120
Art Unit: 3993

| | |
|---|---|
| | **TABLE 6**<br><br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>Ionomer Type — Blend Ratio<br>Sodium- Surlyn 8940 — 75%<br>Zinc- Surlyn 9910 — 15%<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>Exhibit I: Surlyn® 8940 has a Shore D hardness of 65; Surlyn® 9910 has a Shore D hardness of 64.<br><br>Therefore, this cover blend has a hardness of 60 or more. (See Decl. of Edmund A. Hebert at ¶¶ 8-9.) |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br><br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>Ionomer Type — Blend Ratio<br>Sodium- Surlyn 8940 — 75%<br>Zinc- Surlyn 9910 — 15%<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |

Application/Control Number:                    Page 173
95/000,120
Art Unit: 3993

| | |
|---|---|
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (Proudfit, col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (Proudfit, col. 6, ll. 6-7.)<br><br>The composition of the inner cover layer is described in Table 6.<br><br>TABLE 6<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | Figure 1 of Proudfit shows dimples formed on the outer surface<br> |
| said outer cover having a Shore D hardness of 64 or less, | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.)<br><br>"...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, |

Application/Control Number:                        Page 174
95/000,120
Art Unit: 3993

| | |
|---|---|
| | ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below.<br><br>An example of this blend is disclose in Table 7 reproduced below.<br><br>**TABLE 7**<br><br>Composition of Outer Layer (Parts by Weight)<br><br>Trans PolyIsoprene (TP-301)   60.00<br>Polybutadiene   40.00<br>Zinc Oxide   3.00<br>Titanium DiOxide   17.00<br>Ultramarine Blue color   .50<br>Zinc DiAcrylate   39.00<br>Peroxide (Varox 230 XL)   2.50<br>Total   162.00<br><br>Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52**. Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64. |
| said outer layer comprising a polyurethane, | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (col. 5, ll. 15-17.) Also, see below. |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | "The relatively soft elastomeric material of the outer layer has a flexural modulus in the range of about 20,000 to 25,000 psi, and in one specific embodiment had a flexural modulus of from 22,165 to 22,379 psi." (Proudfit, col. 6, ll. 28-31.) |

As pointed out in the request on pages 68 and 69:

... Proudfit teaches a golf ball having a two-piece cover including a hard, ionomeric inner cover layer and a soft balata outer cover layer. While Proudfit may not disclose the use of a polyurethane material as the outer cover layer of a golf ball, it would have been obvious to one of ordinary skill in the art at the time of invention to modify the soft balata outer cover layer of Proudfit to include the soft polyurethane material taught by Wu. Wu teaches that: "The problem with SURLYN®-covered golf balls, however, is that they lack the "click" and "feel" which golfers had become accustomed to with balata. "Click" is the sound when the ball is hit by a golf club and "feel" is the overall sensation imparted to the golfer when the ball is hit. It has been proposed to employ polyurethane as a cover

Application/Control Number:                                  Page 175
95/000,120
Art Unit: 3993

stock for golf balls because, like SURLYN®, it has a relatively low price compared to balata and provides superior cut resistance over balata. However, unlike SURLYN®-covered golf balls, polyurethane-covered golf balls can be made to have the "click" and 'feel" of balata. (Wu at col. 1, lines 36-46.) As the inventor of the '130 patent had indicated in a 1994 publication, golf ball designers understood that the mechanical properties of the layers impacted the performance of the golf ball more than the materials themselves. (Exhibit G at 334.) Additionally, Wu's polyurethane material inherently has a flexural modulus of about 23,000 psi as measured in accordance with ASTM standards. (Decl. of Jeff Dalton at ¶ 7.) Proudfit's outer cover layer material has a flexural modulus of between about 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31 .) Thus, one of ordinary skill in the art would have appreciated that using Wu's polyurethane as Proudfit's outer cover layer would have provided similar playability characteristics as well as numerous advantages including, for example, durability.

Based on Wu's teachings, one of ordinary skill in the art would have recognized the substitutability of soft polyurethane for soft balata-based materials and the advantages of making such a substitution. These advantages include (1) low price compared to balata; (2) better cut resistance when compared to balata; and (3) a "click" and "feel" that is similar to balata. Moreover, the replacing the balata-material taught by Proudfit would have been obvious to those skilled in the art prior to November 9, 1995 because before that time, the Titleist Professional™ golf ball, which had used Wu's polyurethane material, had replaced balata-covered balls as the market leader. (See Exhibit C; see also Decl. of Jeffery L. Dalton at ¶¶ 3-4.)

On page 69 the request concludes with:

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the alleged invention to modify Proudfit's golf ball by replacing the soft balata outer cover layer with an outer cover layer made of soft polyurethane material because polyurethane provides numerous advantages over balata while exhibiting the "click" and "feel" of balata.

This rejection of claim 7 based on Proudfit in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 48: Patent Owner's Argument

Application/Control Number:                     Page 176
95/000,120
Art Unit: 3993

Patent Owner does not specifically argue this rejection except that the Dalton Declaration

is not competent evidence to establish that polyurethane inherently has a flex modulus is from

1,000 to 30,000 psi (Patent Owner's Argument at middle of page 28).


Ground 48: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 48: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained.   See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra*.   Additionally, the Examiner accepts the Dalton Declaration as competent evidence

because it is a sworn declaration.  As such, the Examiner will not probe the Declarant's

veracity.  Hence, the flex modulus of polyurethane is considered to about 23,000 psi.


**Proposed Third Party Requester Rejection: Ground #49.**

The requester submits on pages 69-71 that claim 7 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Application/Control Number:                    Page 177
95/000,120
Art Unit: 3993

     Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 7 | Proudfit |
|---|---|
| A multi-layer golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a **two-layer cover**." (Proudfit, col. 1, ll. 11-12) |
| a spherical core; | <br><br>"FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** [in the shape of a sphere] and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer molded over said spherical core to form a spherical intermediate ball, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"The inner layer can be molded in one of two methods: |

Application/Control Number:                              Page 178
95/000,120
Art Unit: 3993

| | |
|---|---|
| | 1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core.<br>2. Injection mold halfshells, place halfshells over the core, compression mold the inner cover over the core." (Proudfit, col. 8, lines 32-38.) |
| said inner cover layer having a Shore D hardness of at least 60, | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>Exhibit I: Surlyn® 8940 has a Shore D hardness of 65; Surlyn® 9910 has a Shore D hardness of 64.<br><br>Therefore, this cover blend has a hardness of 60 or more. (See Decl. of Edmund A. Hebert at ¶¶ 8-9.) |
| said inner cover layer comprising an ionomeric resin having no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is** |

Application/Control Number:                                    Page 179
95/000,120
Art Unit: 3993

| | |
|---|---|
| | **"from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (Proudfit, col. 5, line 66-col. 6, line 1 .)  "Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (Proudfit, col. 6, ll. 6-7.)  The composition of the inner cover layer is described in Table 6.<br><br>TABLE 6<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 15% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| a dimpled outer cover layer molded over said spherical intermediate ball to form a multi-layer golf ball, | **Figure 1 of Proudfit shows dimples formed on the outer surface**<br><br> |

Application/Control Number:                                         Page 180
95/000,120
Art Unit: 3993

| | |
|---|---|
| said outer cover having a Shore D hardness of 64 or less, | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.)<br><br>"...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below.<br><br>An example of this blend is disclose in Table 7 reproduced below.<br><br>**TABLE 7**<br>Composition of Outer Layer (Parts by Weight)<br><br>Trans PolyIsoprene (TP-301)  60.00<br>Polybutadiene  40.00<br>Zinc Oxide  5.00<br>Titanium DiOxide  17.00<br>Ultramarine Blue color  .50<br>Zinc DiAcrylate  35.00<br>Peroxide (Varox 230 XL)  2.50<br>Total  160.00<br><br>Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52**. Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64. |
| said outer layer comprising a polyurethane, | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (col. 5, ll. 15-17.) Also, see below. |
| said outer cover layer having a modulus in a range of about 1,000 to about 30,000 psi. | "The relatively soft elastomeric material of the outer layer has a flexural modulus in the range of about 20,000 to 25,000 psi, and in one specific embodiment had a flexural modulus of from 22,165 to 22,379 psi." (Proudfit, col. 6, ll. 28-31.) |

As pointed out in the request on pages 69 and 70:

...Proudfit teaches a golf ball having a two-piece cover including a hard, ionomeric inner cover layer and a soft balata outer cover layer. While Proudfit may not disclose the use of a polyurethane material as the outer cover layer for a golf ball, it would have been obvious to one of ordinary skill in the art at the time of invention to modify Proudfit's golf ball by replacing the soft balata outer cover layer with the soft polyurethane outer cover layer taught by Molitor '751.

Molitor '751 teaches that: It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core a cover having a shore C hardness less than 85, preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of the invention is made of a composition comprising a blend of (1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness greater than 55. (Molitor '751, col. 2, lines 33-49.) In explaining what a "two-piece" golf ball is, the Molitor '751 patent explains that: The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, but also includes balls having a solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and Other balls having non-wound cores. (Molitor '751, col. 2, lines 7-12.)

Proudfit teaches a "two-piece" golf ball that fits within this definition. Molitor '751 explains that the advantages of using a cover layer including a soft polyurethane material on a two-piece golf ball, such as the golf ball of Proudfit, include "playability properties as good or better than balata-covered wound balls but are significantly more durable," and "have better wood playability properties than conventional two- piece balls, and permit experienced golfers to apply spin so as to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2, lines 61-68.)

Molitor expresses the hardness of the cover material as a Shore C hardness of less than 85, preferably 70 to 85 and most preferably 72 to 76. (Molitor '751, col. 4, lines 21-25.) Based on Callaway's own measurements, a Shore C hardness of 73 is equal to a Shore D hardness of 47. (See U.S. Patent No. 6,905,648, Table 19 (Exhibit L.) A cover material having a Shore C hardness of between 72 and 76 will inherently have a Shore D hardness of less than 64.

On page 70 the request concludes:

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the invention to replace the soft balata outer cover layer of Proudfit with the soft outer cover layer including a soft polyurethane material as taught by Molitor '751 to provide golf balls that have "playability properties as good or better than balata-covered wound balls but are significantly more durable," and "have better wood playability properties than conventional two-piece balls, and permit experienced golfers to apply spin so as to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2, lines 61-68.)

Application/Control Number:                           Page 182
95/000,120
Art Unit: 3993

     This rejection of claim 7 based on Proudfit in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 49: Patent Owner's Argument

     Patent Owner does not specifically argue this rejection.

Ground 49: Third Party Requester's Comments

     Third Party Requester does not specifically counter argue this rejection.

Ground 49: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '751 is maintained.  See "Ground 7: Examiner's Response to the Argument and Comments," *supra*.

Re. Claim 8

**Proposed Third Party Requester Rejection: Ground #50.**

     The requester submits on pages 71 that claim 8 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

     **This rejection is <u>adopted</u> in this office action.**

Application/Control Number:                                    Page 182
95/000,120
Art Unit: 3993

This rejection of claim 7 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 49: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 49: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 49: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'751 is maintained.   See "Ground 7:  Examiner's Response to the Argument and

Comments," *supra*.


Re. Claim 8

**Proposed Third Party Requester Rejection: Ground #50.**

The requester submits on pages 71 that claim 8 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Application/Control Number:                                    Page 184
95/000,120
Art Unit: 3993

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection.  See "Ground 1:  Examiner's Response to the Argument and

Comments," *supra.*


**Proposed Third Party Requester Rejection: Ground #51.**

In the alternative, the requester submits on pages 71-72 that claim 8 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

**Proposed Third Party Requester Rejection: Grounds #52.**

The requester submits on pages 72 of the request that claim 8 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

**Proposed Third Party Requester Rejection: Ground #53.**

The requester submits on pages 61-63 of the request that claim 7 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '751.

Application/Control Number:                              Page 185
95/000,120
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 8 | Nesbitt |
|---|---|
| The multi-layer golf ball of claim 7 | See above. |
| wherein the Shore D hardness of said outer cover layer is less than the Shore D hardness of said inner cover layer. | "The disclosure embraces a golf ball and method of making same wherein the golf ball has a solid ... resilient center or core, and a multilayer cover construction, which involves a first layer or ply of molded hard, high flexural modulus resinous material on the core, and a second or cover layer of soft, low flexural modulus resinous material molded over the first layer to form a finished golf ball." (Nesbitt, Abstract.) |

These rejections of claim 8 based on Nesbitt in view of Molitor '637; Wu; or Molitor

'751 were proposed by the third party requester in the request for reexamination and are being

adopted essentially as proposed in the request.


Grounds 51, 52, and 53: Patent Owner's Argument

    Patent Owner does not specifically argue these rejections.


Grounds 51, 52, and 53: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue these rejections.


Grounds 51, 52, and 53: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 8 under 35 USC 103(a) as being obvious by Nesbitt in view Molitor '637; Wu;

Application/Control Number:                                    Page 186
95/000,120
Art Unit: 3993

or Molitor '751 are maintained.   See "Ground 2(or 3)(or 4):  Examiner's Response to the

Argument," *supra*.


**Proposed Third Party Requester Rejection: Grounds #54-56.**

     The requester submits on page 72 that claim 8 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.

Pat. No. 4,274,637 (Molitor '637).

     Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

     The requester submits on page 72 that claim 8 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No.

5,334,673 (Wu).

     Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

     The requester submits on page 72 that claim 8 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S.

Pat. No. 4,674,751 (Molitor '751).

     Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

     Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

Application/Control Number:                                    Page 187
95/000,120
Art Unit: 3993

| Claim 8 | Proudfit |
|---|---|
| The multi-layer golf ball of claim 7 | See above. |
| wherein the Shore D hardness of said outer cover layer is less than the Shore D hardness of said inner cover layer. | "This invention relates to golf balls, and, more particularly, to a golf ball having a two-layer cover. The inner layer is formed from hard resin material such as ionomer resin, and the outer layer is formed from soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 1, ll. 11-16.) |

These rejections of claim 8 based on Proudfit in view of Molitor '637; Wu; or Molitor '751 were proposed by the third party requester in the request for reexamination and are being adopted essentially as proposed in the request.

Grounds 54, 55, and 56: Patent Owner's Argument

Patent Owner does not specifically argue these rejections.

Grounds 54, 55, and 56: Third Party Requester's Comments

Third Party Requester does not specifically counter argue these rejections.

Grounds 54, 55, and 56: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 8 under 35 USC 103(a) as being obvious by Nesbitt in view Molitor '637; Wu; or Molitor '751 are maintained.   See "Ground 2(or 3)(or 4): Examiner's Response to the Argument," *supra*.

Application/Control Number:                                    Page 188
95/000,120
Art Unit: 3993

## Unexpected Results and Commercial Success

Patent Owner's Argument

      Besides arguing the outstanding rejections of individual claims as explained *supra*, the

Patent Owner argues generally for non-obviousness of the invention based on unexpected results

and commercial success (*see* Patent Owner's Response at pages 6-9). The crux of the argument

is that, although the instant invention is made of individual elements known in the art, the unique

combination of elements of the claimed invention results in a golf ball with excellent

""distance"" and ""feel"" (Patent Owner's Response at page 7). Consequently, golf balls within

the ambit of the claimed invention (*i.e.*, the Rule 35 ball of the Patent Owner and the Pro V1 of

the Third Party Requester) have great commercial success. Hence, the "[u]nexpected and

overwhelming success of Mr. Sullivan's golf ball technology thus demonstrates that his

invention was not simply the predictable result of combining known materials, but in fact

represented the best solution even conceived for the distance-versus-control problem" (Patent

Owner's Response at page 9).

Third Party Requester's Comments

      The Third Party Requester comments that: (1) the Sullivan '103 patent does not disclose

or suggest the Pro V1 because the Pro V1 has a construction different in several aspects (*e.g.*,

core size) from the ball disclosed in the Sullivan '130 patent (Third Party Requester's Comments

at page 35 to middle of page 37); (2) there is no nexus between the commercial success of the

Third Party Requester's Pro V1 and the Sullivan '130 patent because the Pro V1's success rests

upon specific types of advertising (Third Party Requester's Comments at middle of page 37 to

middle of page 40) along with different technology (Third Party Requester's Comments at

middle of page 40 to page 43); (3) many golf balls purport to have solved the distance and "feel"

problem (Third Party Requester's Comments at bottom of page 43 top of page 45); and, (4) even

though there were other three-piece, polyurethane balls available, there was little demand for the

ball on the PGA tour until shortly before the introduction of the Pro V1 (Third Party Requester's

Comments at page 45 to page 46).


Examiner's Response to the Argument and Comments

      Examiner generally agrees with the comments of the Third Party Requester and finds the

arguments of the Patent Owner of unexpected results and commercial success to be

unpersuasive.

      As a preliminary matter, the argument(s) presented for secondary considerations

presented by the Patent Owner are not relevant to the rejections made under 35 USC 102 (*see*

MPEP 2131.04). Thus only the rejections under 35 USC 103 are considered.

      To show unexpected results (*i.e.,* unique and excellent combination of distance and

"feel") the Patent Owner uses testimonial-type evidence of statements, or endorsements, by well

known golfers such as Arnold Palmer (Patent Owner's Response at bottom on page 8).

Examiner considers this to be opinion evidence because the statements are not accompanied by

objective data. Due to this lack of objective data, the probative value of the presented opinion

evidence is not sufficient to overcome the *prima facie* rejections, *supra,* maintained in this office

action.

Application/Control Number:                                        Page 190
95/000,120
Art Unit: 3993

The evidence of commercial success proffered by the Patent Owner is similarly

testimonial in nature (*e.g.*, "Pro V1 is the "most successful golf ball in the history of the golf

industry . . ."" citing an article in the Golf Gazette).  Again no objective data is presented as

support.  With no objective data, the probative value of the presented evidence is again not

sufficient to overcome the *prima facie* rejections, *supra*, maintained in this office action.

As to the comments of the Third Party Requester concerning, *inter alia*, the scope of the

claims of the Sullivan '130 patent and its nexus with the Pro V1, the Examiner did not evaluate

these comments since the secondary considerations presented by the Patent Owner were not

found sufficient for the reasons given immediately above.


**Shore D hardness value measured on the ball**

Patent Owner's Argument

Besides arguing the outstanding rejections of individual claims as explained *supra* and

commercial success *id.*, the Patent Owner argues that the claims in the instant patent require the

Shore D hardness value's of the cover layers to be measured "on the ball" (Patent Owner's

Response at pages 10-12).  Since the two base references (Nesbitt and Proudfit) do not disclose

measuring hardness "on the ball" for their covers, the outstanding rejections are flawed (Patent

Owner's Response at pages 12-13).


Third Party Requester's Comments

The Third Party Requester comments that:  (1) in a reexamination claims are given their

broadest reasonable interpretation consistent with the specification, and, here, "on the ball" is too

Application/Control Number:                          Page 191
95/000,120
Art Unit: 3993

narrow a construction (Third Party Requester's Comments at page 7); (2) the specification of the

instant patent clearly states at col. 16, lines 15-16, that "Shore hardness was measured in

accordance with ASTM test 2240" which calls for "off the ball" testing (Third Party Requester's

Comments at page 8); (3) the Patent Owner knew how to claim "on the ball" because in a sister

patent the language of "as measured on the curved surface thereof" is explicitly used (Third

Party Requester's Comments at bottom of page 9 to middle of page 10); and, (4) even if

measured "on the ball" the prior art is still good because measuring Shore D hardness "on the

ball" does not affect the disclosed values enough to make the instant patent's claims patentable

over the prior art (Third Party Requester's Comments at bottom of page 10 to page 12).


Examiner's Response to the Argument and Comments

Examiner generally agrees with the comments of the Third Party Requester and finds the

arguments of the Patent Owner concerning measuring of hardness "on the ball" in the claim

language to be unpersuasive.

The rule is that "[d]uring reexamination claims are given the broadest reasonable

interpretation consistent with the specification" (MPEP 2658(I) and 2258(I)(G)). Here, the

claims are silent as to whether the Shore D hardness value is measured "on the ball" or not. In

the specification, hardness measurements are disclosed at col. 7, lines 20-22, and col. 14, lines

49-50, and are to be conducted "in accordance with ASTM method D-2240." ASTM D-2240's

method of testing uses a specimen of material, and are not measured "on the ball" (Exhibit C).

However, in the examples section of the specification there is language that appears to support an

interpretation of hardness values measured "on the ball." An example of the language is

Application/Control Number:                                                     Page 192
95/000,120
Art Unit: 3993

"properties of the finished balls are set forth below" at col. 22, lines 65-68. Also, hardness

values in the tables for layered golf balls are not consistent with the hardness values of the

constituent resins that make up that layer (for example, Patent Owner's discussion of Iotek 959

and Iotek 960 starting at the bottom of page 10 of the Response).

       The specification, then, appears ambiguous as to interpret the claim language.  However,

the Federal Circuit has held that "a particular embodiment appearing in the written description

may not be read into a claim when the claim language is broader than the embodiment (MPEP

2111.01(II) citing *Superguide Corp. v. DirecTV Enterprises, Inc.*).  Further, the Fed. Cir. has

stated that "[t]he problem is to interpret claims 'in view of the specification' without

unnecessarily importing limitations from the specification into the claim" (MPEP 2111.01(II)

citing *E-Pass Techs., Inc. v. 3Com Corp.*).

       Since there is ambiguity in the specification as to how hardness values are measured and

mindful of not reading limitations into the claim language, the Examiner considers the broadest

reasonable interpretation of this claim language to not require the hardness values to be measured

"on the ball."

Application/Control Number:                                    Page 193
95/000,120
Art Unit: 3993

*Correspondence*

All correspondence relating to this *inter partes* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

        Mail Stop *Inter Partes* Reexam
        ATTN: Central Reexamination Unit
        Commissioner for Patents
        P.O. Box 1450
        Alexandria, VA  22313-1450

By FAX to:    (571) 273-9900
            Central Reexamination Unit

By hand to:    Customer Service Window
            ATTN: Central Reexamination Unit
            Randolph Building
            401 Dulany St.
            Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Jeffrey L. Gellner
CRU Examiner
GAU 3993

conferees:

# EXHIBIT 17

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

| CONTROL NO. | FILING DATE | PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 95/000,121 | 01/17/06 | 6,503,156 | |

DOROTHY P WHELAN
FISH & RICHARDSON P.C.
P.O. BOX 1022
MINNEAPOLIS, MN 55440-1022

| EXAMINER |
|---|
| GELLNER, J. |

| ART UNIT | PAPER |
|---|---|
| 3993 | |

DATE MAILED:

01/30/08

# *INTER PARTES* REEXAMINATION COMMUNICATION

BELOW/ATTACHED YOU WILL FIND A COMMUNICATION FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE OFFICIAL(S) IN CHARGE OF THE PRESENT REEXAMINATION PROCEEDING.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this communication.

PTOL-2071 (Rev.07-04)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ALAN M. GRIMALDI
HOWREY LLP
1299 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,121*.

PATENT NUMBER *6,503,156*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| OFFICE ACTION IN INTER PARTES REEXAMINATION | Control No. 95/000,121 | Patent Under Reexamination 6503156 | |
|---|---|---|---|
| | Examiner Jeffrey L. Gellner | Art Unit 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on <u>30 April 2007</u>
Third Party(ies) on <u>29 May 2007</u>

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II. SUMMARY OF ACTION:**

1a. ☒ Claims <u>1-11</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims <u>1-11</u> are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____    ☐ are acceptable.    ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is:    ☐ approved.    ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
        ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No <u>95000121</u>.
10. ☐ Other _____

Application/Control Number:                                    Page 2
95/000,121
Art Unit: 3993

## DETAILED ACTION

This 2nd Action Non-Final is in response to the Patent Owner's response received 30 April 2007

and the Third Party Requester's response received 29 May 2007. The action is non-final and not

an action closing prosecution because, upon review of the arguments presented by the Third

Party Requester, Examiner has newly adopted in this office action Grounds 1, 8, 15, 22, 29, 36,

43, 50, 57, 64, and 71 of rejection.

### *IDS*

The IDS received 5 Nov. 2007 is acknowledged. A signed 1449 accompanies this office

action. The marked through entry, or document, could not be found by the Examiner in the

image file wrapper (IFW). Patent Owner should review the IFW to ensure that all entries are

properly presented.

### *Reexamination Procedures*

In order to ensure full consideration of any amendments, affidavits or declarations, or

other documents as evidence of patentability, such documents must be submitted in response to

this Office action. Submissions after the next Office action, which is intended to be an Action

Closing Prosecution (ACP), will be governed by 37 CFR 1.116(b) and (d), which will be strictly

enforced.

Application/Control Number:                                    Page 3
95/000,121
Art Unit: 3993

### *Statutory Basis for Grounds of Rejections - 35 USC § 102 and 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on
sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
such that the subject matter as a whole would have been obvious at the time the invention was made to a person
having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
manner in which the invention was made.

### *Third Party Requester's Grounds of Rejections*

#### *Re. Claim 1*

**Ground #1.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**Ground #2.** In the alternative to Ground #1, the requester submits that claim 1 is

unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in

view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

**Ground #3.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673,

(Wu).

**Ground #4.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No.

4,674,751, (Molitor '751).

Application/Control Number:                                    Page 4
95/000,121
Art Unit: 3993

**Ground #5.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #6.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #7.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 2*

**Ground #8.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #9.** In the alternative to Ground #8, the requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #10.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #11.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

**Ground #12.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #13.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

Application/Control Number:                                        Page 5
95/000,121
Art Unit: 3993

    **Ground #14.** The requester submits that claim 2 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

*Re. Claim 3*

    **Ground #15.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

    **Ground #16.** In the alternative to Ground #15, the requester submits that claim 3 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637.

    **Ground #17.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #18.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751.

    **Ground #19.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,274,637.

    **Ground #20.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #21.** The requester submits that claim 3 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

*Re. Claim 4*

    **Ground #22.** The requester submits that claim 4 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

Application/Control Number:                                                    Page 6
95/000,121
Art Unit: 3993

     **Ground #23.**  In the alternative to Ground #22, the requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

     **Ground #24.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

     **Ground #25.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

     **Ground #26.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

     **Ground #27.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

     **Ground #28.**  The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 5*

     **Ground #29.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

     **Ground #30.**  In the alternative to Ground #29, the requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

     **Ground #31.**  The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

Application/Control Number:                                   Page 7
95/000,121
Art Unit: 3993

**Ground #32.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

**Ground #33.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #34.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #35.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 6*

**Ground #36.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193.

**Ground #37.** In the alternative to Ground #36, the requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #38.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #39.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751.

**Ground #40.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,274,637.

Application/Control Number:                                          Page 8
95/000,121
Art Unit: 3993

     **Ground #41.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

     **Ground #42.** The requester submits that claim 6 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

*Re. Claim 7*

     **Ground #43.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

     **Ground #44.** In the alternative to Ground #43, the requester submits that claim 7 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

     **Ground #45.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673, (Wu).

     **Ground #46.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751, (Molitor '751).

     **Ground #47.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et
al., U.S. Pat. No. 4,274,637.

     **Ground #48.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

     **Ground #49.** The requester submits that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

Application/Control Number:
95/000,121
Art Unit: 3993

Page 9

*Re. Claim 8*

**Ground #50.** The requester submits that claim 8 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193, (Nesbitt).

**Ground #51.** In the alternative to Ground #50, the requester submits that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

**Ground #52.** The requester submits that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673, (Wu).

**Ground #53.** The requester submits that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

**Ground #54.** The requester submits that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637.

**Ground #55.** The requester submits that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673.

**Ground #56.** The requester submits that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

*Re. Claim 9*

**Ground #57.** The requester submits that claim 9 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**Ground #58.** In the alternative to Ground #57, the requester submits that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

Application/Control Number:                                    Page 10
95/000,121
Art Unit: 3993

    **Ground #59.**  The requester submits that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673, (Wu).

    **Ground #60.**  The requester submits that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

    **Ground #61.**  The requester submits that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637.

    **Ground #62.**  The requester submits that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No. 5,334,673. .

    **Ground #63.**  The requester submits that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.


*Re. Claim 10*

    **Ground #64.**  The requester submits that claim 10 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

    **Ground #65.**  In the alternative to Ground #63, the requester submits that claim 10 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

    **Ground #66.**  The requester submits that claim 10 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No. 5,334,673, (Wu).

    **Ground #67.**  The requester submits that claim 10 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat. No. 4,674,751, (Molitor '751).

Application/Control Number:                                    Page 11
95/000,121
Art Unit: 3993

    **Ground #68.** The requester submits that claim 10 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et
al., U.S. Pat. No. 4,274,637.

    **Ground #69.** The requester submits that claim 10 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

    **Ground #70.** The requester submits that claim 10 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S.
Pat. No. 4,674,751.

*Re. Claim 11*

    **Ground #71.** The requester submits that claim 11 is unpatentable under 35 U.S.C. §
102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

    **Ground #72.** In the alternative to Ground #57, the requester submits that claim 11 is
unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in
view of Molitor et al., U.S. Pat. No. 4,274,637, (Molitor '637).

    **Ground #73.** The requester submits that claim 11 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Wu, U.S. Pat. No.
5,334,673, (Wu).

    **Ground #74.** The requester submits that claim 11 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193, in view of Molitor et al., U.S. Pat.
No. 4,674,751, (Molitor '751).

    **Ground #75.** The requester submits that claim 11 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, (Proudfit) in view of Molitor et
al., U.S. Pat. No. 4,274,637.

    **Ground #76.** The requester submits that claim 11 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Wu, U.S. Pat. No.
5,334,673.

Application/Control Number:
95/000,121
Art Unit: 3993

Page 12

**Ground #77.** The requester submits that claim 11 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187, in view of Molitor et al., U.S. Pat. No. 4,674,751.

### *Summary of Grounds Adopted vel non*

In sum, Proposed Grounds 1-11, 15-39, 43-67 and 72-77 are **Adopted** by the Examiner.

In sum, Proposed Grounds 12-14, 40-42, and 68-71 are **Not Adopted** by the Examiner.

Application/Control Number:                                    Page 13
95/000,121
Art Unit: 3993

### *Summary of the Grounds of Rejections*

Claims 1-11 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637).

Claims 1-11 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) mentioning Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637) in view of Wu, U.S. Pat. No. 5,334,673, (Wu) as evidenced by Exhibit C.

Claims 1-11 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) mentioning Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637) in view of Molitor et al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claims 1, 3-5, 7-9 and 11 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637).

Claims 1, 3-5, 7-9 and 11 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No. 5,334,673 (Wu).

Application/Control Number:                          Page 14
95/000,121
Art Unit: 3993

Claims 1, 3-5, 7-9 and 11 are rejected under 35 U.S.C. § 103(a) as being unpatentable

over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S. Pat. No.

4,674,751 (Molitor '751).

Application/Control Number:
95/000,121
Art Unit: 3993

## Proposed Third Party Requester's Rejections

### *Issue of Inherency*

Multiple proposed rejections that the third party requester submits are based on the inherent properties of the materials. In order to prove the inherent properties of these materials the requester has provided "product data sheets" for the following materials: SURLYN (Exhibit I) and ESTANE (Exhibit J). These "product data sheets" have publication dates later than the critical date of the claimed inventions. Also, the third party requester has provided other Exhibits to prove or evidence inherency, e.g. Exhibit C (description of a golf product performance characteristics); Exhibits G and L (patent owners admissions)

MPEP § 2124 lists exceptions to the rule that the publication date must precede the critical data of the claimed invention: "...facts [that] include the characteristics and properties of a material... ". The Shore D hardness and flexural modulus are characteristics and properties of a material. Thus, it is appropriate to use these "product data sheets" to show such a universal fact as the inherent properties of a known material. Moreover, <u>see also</u> MPEP § 2112.01: "Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially identical processes, a prima facie case of either anticipation or obviousness has been established. *In re Best*, 562 F.2d 1252, 1255, 195 USPQ 430, 433 (CCPA 1977)." And, "Products of identical chemical composition can not have mutually exclusive properties." "A chemical composition and its properties are inseparable. Therefore, if the prior art teaches the identical chemical structure, the properties applicant discloses and/or claims are necessarily present. *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

Application/Control Number:                                    Page 16
95/000,121
Art Unit: 3993


<u>Re. Claim 1</u>

**Proposed Third Party Requester Rejection: Ground #1.**

The requester submits on pages 14-18 that claim 1 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

In the request on pages 14 through 18 the third party requester proposes that claim 1 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637. The third

party requester points out that Molitor '637 is incorporated by reference into Nesbitt because

Nesbitt refers to Molitor '637. (See Nesbitt col. 3, ll. 54-60).

**This rejection is <u>adopted</u> in this office action.**

Claim 1 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt

(incorporating by reference Molitor '637).

Below is a claim chart identifying the claim limitations and which reference Nesbitt

(incorporating by reference Molitor '637) discloses the claim limitations.

| Claim 1 | Nesbitt (primary) with Molitor '637 (incorporated by reference) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |

Application/Control Number:
95/000,121
Art Unit: 3993

| | |
|---|---|
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An outer layer, ply, lamination or cover 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a Shore D hardness of about 64 or less, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a Shore D hardness of 55, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |
| a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably |

Application/Control Number:                                    Page 18
95/000,121
Art Unit: 3993

| | |
|---|---|
| | of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt incorporating by reference Molitor '637 describe a number

of compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

Application/Control Number:                                          Page 19
95/000,121
Art Unit: 3993

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Also, as mentioned above,

Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane

identified as ESTANE 58133. A review of the scientific literature yields that ESTANE 58133

has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU Product Data

Sheet". A Shore D hardness of 55 is within the range claimed of Shore D hardness less than 64.

Therefore, Molitor '637's teaching of using ESTANE 58133 inherently meets the claim

limitation of providing a outer cover layer of polyurethane material having a Shore hardness of

less than 64. Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN

9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness

of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as

admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334. Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

Also, Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic

polyurethane identified as ESTANE 58133. A review of the scientific literature yields that

ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU

Application/Control Number:                                    Page 20
95/000,121
Art Unit: 3993

Product Data Sheet". **A Shore D hardness of 55 is within the range claimed of Shore D**

**hardness less than 64.** Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

As the request recognizes on page 17:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those layers. (See
> Exhibit G at 334.) Furthermore, the relatively soft polyurethane material taught by
> Molitor '637 and the relatively soft ionomer inner cover layer taught by Nesbitt have
> similar mechanical properties including an identical Shore D hardness of 55 and a
> similar, relatively low flexural modulus of 25,000 and 14,000 psi, respectively.
> (Compare Exhibit I with Exhibit J.) This would have further suggested to those skilled
> in the art that the soft polymeric materials taught by Molitor, including, for example,
> the relatively soft polyurethane material would have been substitutable for the soft
> ionomer outer cover layer in one example taught by Nesbitt.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 1 based on Nesbitt incorporating by reference Molitor '637 was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.

Ground 1: Patent Owner's Argument

Patent Owner does not argue this rejection.

Ground 1: Third Party Requester's Comments

Third Party Requester argues that the language of Nesbitt at col. 3, lines 56-61, was a

proper incorporation by reference of Molitor '637. In the 1st Office Action the Examiner stated

that the language of Nesbitt was not proper incorporation of reference because the perfecting root

words of "incorporate" and "reference" were not in the reference statement. Third Party

Requester's rebuttal is that the standard used by the Examiner was not the standard for

incorporation by reference during prosecution of the Nesbitt patent (Third Party Requester's

Comments at pages 2-5). The Third Party Requester bolsters this argument by citing several

court decisions (Third Party Requester's Comments at pages 5-6).

Application/Control Number:
95/000,121
Art Unit: 3993

Page 22

Ground 1: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. The language of incorporation used in Nesbitt is found at col. 3, lines 54-61, and states that "Polymeric materials are preferably such as ionomer resins which are foamable. **Reference is made** to the application Ser. No. 15,658, of Robert P. Molitor issued into U.S. Patent No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers . . . " (emphasis added).

The pertinent language of incorporation by reference quoted in *In re Hughes* is found at 550 F.2d 1275 and states that "**Reference is made** to application Ser. No. 131,108 for complete description of methods of preparing aqueous polymeric dispersions applicable in the hereinafter described invention" (emphasis added). This language was held to incorporate '108.

The pertinent language of incorporation by reference quoted in *In re Voss* is found at 557 F.2d 816 and states that "**Reference is made** to United States Patent No. 2,920,971, granted to S.D. Stookey '971, for a general discussion of glass-ceramic materials and their production" (emphasis added). This language was held to incorporate '971.

Since the language in Nesbitt for incorporation by reference is virtually identical to the language used in *In re Hughes* and *In re Voss*, the Examiner concludes that Nesbitt incorporates by reference Molitor '637.

**Proposed Third Party Requester Rejection: Ground #2.**

Application/Control Number:                                    Page 23
95/000,121
Art Unit: 3993

In the alternative, the requester submits on pages 14-18 that claim 1 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 1 | Nesbitt (primary) with Molitor '637 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt, col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of |

Application/Control Number:                                    Page 24
95/000,121
Art Unit: 3993

| 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
|---|---|
| an outer cover layer disposed on said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..."  (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a Shore D hardness of about 64 or less, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |
| a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric |

Application/Control Number:                                    Page 25
95/000,121
Art Unit: 3993

| thermoplastic elastomer. |
| --- |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Also, as mentioned above,

Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane

identified as ESTANE 58133. A review of the scientific literature yields that ESTANE 58133

has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU Product Data

Sheet". A Shore D hardness of 55 is within the range claimed of Shore D hardness less than 64.

Therefore, Molitor '637's teaching of using ESTANE 58133 inherently meets the claim

limitation of providing a outer cover layer of polyurethane material having a Shore hardness of

less than 64. Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN

9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness

of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as

admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334. Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

Also, Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic

polyurethane identified as ESTANE 58133. A review of the scientific literature yields that

ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU

Product Data Sheet". **A Shore D hardness of 55 is within the range claimed of Shore D**

**hardness less than 64**. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable

> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and    transpolyisoprene,    block    copolymers    of    styrene    and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

As the request recognizes on page 17:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those layers. (See
> Exhibit G at 334.) Furthermore, the relatively soft polyurethane material taught by
> Molitor '637 and the relatively soft ionomer inner cover layer taught by Nesbitt have
> similar mechanical properties including an identical Shore D hardness of 55 and a
> similar, relatively low flexural modulus of 25,000 and 14,000 psi, respectively.
> (Compare Exhibit I with Exhibit J.) This would have further suggested to those skilled
> in the art that the soft polymeric materials taught by Molitor, including, for example,
> the relatively soft polyurethane material would have been substitutable for the soft
> ionomer outer cover layer in one example taught by Nesbitt.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020).  This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN".  Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

Thus, because it appears that to one of ordinary skill in the art at the time the invention

was created that the actual chemical composition of the material is not critical to the practice of

Application/Control Number:                                          Page 28
95/000,121
Art Unit: 3993

the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one

of ordinary skill in the art at the time the invention was made would find it obvious to substitute

one material for another material if both materials had substantially the same mechanical

properties.

This rejection of claim 1 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 2: Patent Owner's Argument

Patent Owner argues that the combination of Nesbitt and Molitor '637 is improper

because: (1) Nesbitt's entire focus is on golf balls with all-ionomer resins, preferably foamable,

two-layer covers and references Molitor '637 for examples of foamable ionomer resins. Hence,

Nesbitt teaches away from the disclosure of Molitor '637's disclosure of non-ionomeric resins,

including polyurethane (Patent Owner's Response at page 15 to page 16); (2) in a deposition

(Exhibit F) Nesbitt, himself, stated that he did not consider use of polyurethane as an outer cover

material (Patent Owner's Response at middle of page 16); (3) Nesbitt combined with Molitor

'637 is improper because their individually disclosed thicknesses for the outer layer are divergent

(Patent Owner's Response at page 17); (4) neither reference discloses a Shore D hardness of 64

or less for the outer layer measured on the ball with the Examiner relying on commercial

literature of ESTANE polyurethane (Exhibit J) for a hardness value. This value is not probative

because hardness values of the same material will differ depending upon the total construction of

the ball (Patent Owner's Response at bottom of page 18); and, (5) the combination

Application/Control Number:                                    Page 29
95/000,121
Art Unit: 3993

impermissibly uses hindsight construction by scouring the prior art to locate individual claim

elements (Patent Owner's Response at bottom of page 19).

Ground 2: Third Party Requester's Comments

As to the Patent Owner's first argument, the Third Party Requester states that the plain

language of Nesbitt is that the outer or inner cover layers can be of a synthetic polymeric

material and that Molitor '637 gives examples of synthetic polymeric materials, including

polyurethane (Third Party Requester's Comments at page 19 to top of page 20).

As to the Patent Owner's second argument, the Third Party Requester states that the Fed.

Cir. takes a dim view of testimony for a patent's meaning from inventors after the fact citing *Bell*

*& Howell Document Mgmt. Prods. Co. v Altek Sys.* (Third Party Requester's Comments at

middle of page 20).

As to the Patent Owner's third argument, the Third Party Requester states that the range

of thicknesses in the two patents overlap and disclose in part the same ranges, and, hence a

person of ordinary skill would find it obvious to substitute one layer material for another (Third

Party Requester's Comments at bottom of page 20 to top of page 21).

As to the Patent Owner's fourth argument, the Third Party Requester states that an expert

in the art produced a three-piece ball with the core and inner layer of Nesbitt and the cover of

Molitor '637. The ball exhibited Shore hardness values within those of the claimed values

(Third Party Requester's Comments at bottom of page 21 to top of page 22).

As to the Patent Owner's fifth argument, the Third Party Requester states that the

combination of a ball with the core and inner layer of Nesbitt with an outer polyurethane layer is

proper in light of the decisions in *Ex parte Sullivan* and *KSR v. Teleflex* (Third Party Requester's

Comments at page 14 to page 16). In *Sullivan* a split panel of the BPAI held that ""[i]n applying

the test for obviousness, we conclude that the teaching of WU clearly would have made it

obvious at the time of the invention was made to a person of ordinary skill in the art to have

modified Nesbitt's golf ball by using polyurethane as the outer cover material to achieve the

expected benefits therefrom taught by Wu (i.e., to have the "click" and "feel" of balata, improved

shear resistance and cut resistance; durability; and resiliency)."" (Third Party Requester's

Comments at middle of page 14). In *KSR* a unanimous Court held that ""[c]ommon sense

teaches . . . that . . . in many cases, a person of ordinary skill will be able to fit the teachings of

multiple patents together like pieces of a puzzle."" (Third Party Requester's Comments at page

16).


Ground 2: Examiner's Response to the Argument and Comments

     Examiner agrees with the comments of the Third Party Requester and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained.

Although Nesbitt's emphasis (in his patent and deposition) may be on all-ionomer resins, it is

settled law that a patent teaches all that it discloses. including nonpreferred embodiments (MPEP

2123(I)). Since Nesbitt references the Molitor '637 patent, one of ordinary skill would logically

look at its complete disclosure which includes the use of polyurethane as an outer cover. The

combination is proper because, in addition to the holdings quoted by the Third Party Requester in

their comments, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

Application/Control Number:                          Page 31
95/000,121
Art Unit: 3993

person of ordinary skill has good reason to pursue the known options within his or her technical

grasp. If this leads to the anticipated success, it is likely the product not of innovation but of

ordinary skill and common sense" (slip opinion of *KSR* at middle of page 17). Here, the problem

of producing a golf ball with distance, durability, "click," and feel was known (Patent Owner's

Response at bottom of page 4). Polyurethane was a known solution for providing "click" and

feel (Wu at col. 1, lines 40-45). The resulting golf ball with a polyurethane outer cover layer had

the expected results (*Sullivan* at page 11). Thus, the golf balls of claim 1 are of ordinary skill

and common sense.


**Proposed Third Party Requester Rejection: Ground #3.**

The requester submits on pages 18-20 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations. As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 1 | Nesbitt mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the |

Application/Control Number:
95/000,121
Art Unit: 3993

| | |
|---|---|
| | same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..."  (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a Shore D hardness of about 64 or less, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention."  (Nesbitt, col. 3, ll. 54-60.) |

Application/Control Number:                              Page 33
95/000,121
Art Unit: 3993

| | |
|---|---|
| | Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>**Wu**: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66).<br><br>**Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, inter alia, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention. More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38).<br><br>See also below for Shore D hardness of 64 or less limitation explanation. |
| a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |

Application/Control Number:                                    Page 34
95/000,121
Art Unit: 3993

| | Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane (TPU Compound)** which is a non-ionomeric thermoplastic elastomer. |
|---|---|
| | **Wu:** "[t]he present invention is a golf ball product made from a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents or difunctional glycols. The term "golf ball product" as used in the specification and claims means a cover, a core, a center or a one-piece golf ball. The cover of a golf ball made in accordance with the present invention has been found to have good shear resistance, cut resistance, durability and resiliency. **Preferably, the polyurethane composition of the present invention is used to make the cover of a golf ball.**" (Wu, col. 2, ll. 33-44). |

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer. Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993. Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf ball taught therein has a cover material made from an "elastomer", having a thickness of .050", and 58 Shore D hardness. All three properties are within the range of mechanical properties of the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to 0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the chemical composition) used in the construction of a golf ball lack criticality as compared to the mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in the art at the time the invention was made would find it obvious to incorporate the teachings of Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of providing a cover layer that has the same "click" and "feel" of a balata cover which the extra durability of an elastomeric material.

This rejection of claim 1 based on Nesbitt in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 3: Patent Owner's Argument

Patent Owner argues that the combination of Nesbitt and Wu is improper because: (1) the Wu patent is silent on the thickness of the polyurethane layer (Patent Owner's Response at page 20); (2) the Wu patent is silent on the Shore hardness value and in a deposition Ms. Wu

Application/Control Number:                                  Page 36
95/000,121
Art Unit: 3993

said she could not predict what the hardness would be of a finished golf ball (Patent Owner's

Response at page 20); (3) the Titleist 1 ball, which Examiner uses to disclose the proper

hardness of the outer layer, or cover, because the ball's commercial literature lists the Wu patent,

is not competent evidence because Wu's patent's claims are silent as to hardness (Patent

Owner's Response at bottom of page 20 to top of page 21); (4) the claimed invention is the

synergistic combination of features and the Examiner impermissibly uses hindsight to

reassemble the ball (Patent Owner's Response at page 21); and, (5) the BPAI's divided opinion

(the decision in *Ex parte Sullivan*) is not binding and the claim here is more narrow (Patent

Owner's Response at page 21 to page 22).


Ground 3: Third Party Requester's Comments

As to the Patent Owner's second argument, the Third Party Requester states that Nesbitt

discloses the claimed Shore D hardness value at col. 2, lines 43-49, when used with the Surlyn

Data Sheet (Third Party Requester's Comments at bottom of page 23).

As to the Patent Owner's fourth argument, the Third Party Requester states that

motivation to make this combination is found as stated in the opinion of *ex parte Sullivan* (Third

Party Requester's Comments at middle of page 22).

As to the Patent Owner's fifth argument, the Third Party Requester states that the opinion

in *Ex parte Sullivan* sets forth cogent reasoning for the combination and the differences is scope

between the claims are either explicit disclosed or inherent to Nesbitt or Wu, or mere design

choice (Third Party Requester's Comments at pages 22-24).

Application/Control Number:                                    Page 37
95/000,121
Art Unit: 3993

Ground 3: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained. As to

the Patent Owner's first and second arguments, Nesbitt discloses an overlapping thickness range

for the outer cover of 0.020 inches to 0.100 inches (col. 3, lines 22-25) and its Shore hardness

value of 55 ("Surlyn 1855" of col. 3, lines 22-25, which has a Shore D hardness of 55 (from

Surlyn data sheet for Surlyn 9020)) which is less than the claimed value of 64.

As to the Patent Owner's third argument, Examiner considers the Wu patent to describe

the Titleist cover because the patent and the Titleist's commercial literature have characteristics

in common such as being "cut-resistant" (Wu patent at col. 2 line 41; Titleist 1's commercial

literature at text above "Titleist Professional Specifications") and ball velocities of 253.0 ft./sec.

(Wu patent at col. 8 Table IV; Titleist 1's commercial literature at "Titleist Professional

Specifications"). These two characteristics combined with the fact that the Titleist 1 cites the

Wu patent leads to the conclusion that the cover of the Titleist 1 is within the ambit of the

composition claimed in the Wu patent. Hence, the Titleist 1 commercial literature accurately

recites other characteristics on which the Wu patent is silent, such as Shore D hardness. Whether

Wu, herself, knew the hardness of an outer layer made of her composition is not dispositive

because of the commercial literature for the Titleist 1.

As to the Patent Owner's fourth and fifth arguments, the combination is proper because

the Supreme Court has held that "[w]hen there is a design need or market pressure to solve a

problem and there are a finite number of identified, predictable solutions, a person of ordinary

skill has good reason to pursue the known options within her or her grasp. If this leads to the

Application/Control Number:                                    Page 38
95/000,121
Art Unit: 3993

anticipated success, it is likely the product not of innovation but of ordinary skill and common

sense" (slip opinion *KSR* at middle of page 17). Here, the problem of producing a golf ball with

distance, durability, "click," and feel was known (Patent Owner's Response at bottom of page 4).

Polyurethane was a known solution for providing "click" and feel (Wu at col. 1 lines 40-46).

Nesbitt discloses that a golf ball with his inner and outer thicknesses have both distance feel

(*generally* Nesbitt at col. 1, lines 65-78, continuing to col. 2, lines 1-9). The resulting two-layer

golf ball with an outer polyurethane layer had the expected results (*Sullivan* at page 12) and not,

therefore, synergistic. Thus, the golf balls disclosed by the combination of Nesbitt and Wu are

of ordinary skill and common sense. Since this combination has the elements cited in claim 1 of

Sullivan '873, the decision in *Ex parte Sullivan* is supportive but not dispositive or binding.

**Proposed Third Party Requester Rejection: Ground #4.**

The requester submits on pages 20-22 of the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations. As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 1 | Nesbitt (mentioning Molitor '637) and Molitor '751 |

Application/Control Number:
95/000,121
Art Unit: 3993

| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
|---|---|
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of at least 60, | <u>Nesbitt</u>: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 54-60.)<br><br><u>Exhibit I</u>: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a Shore D hardness of about 64 or less, | <u>Nesbitt</u>: "Reference is made to application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of |

Application/Control Number:
95/000,121
Art Unit: 3993

Page 40

| | |
|---|---|
| | this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |
| a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As shown above in the claim chart, Nesbitt mentioning Molitor '637 suggests the use of a soft outer cover layer including a polyurethane material. In an analogous golf ball, Molitor '751 teaches that:

It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core **a cover having a shore C hardness less than 85,** preferably 70-80, and most preferably 72-76. The novel **cover of the golf ball** of the invention is made of a composition comprising a blend of (1) **a thermoplastic**

Application/Control Number:                                          Page 41
95/000,121
Art Unit: 3993

> **urethane having a shore A hardness less than 95** and (2) **an ionomer having a**
> **shore D hardness greater than 55**.

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer**
> **beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to**
> **Nesbitt**, and other balls have non-wound cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

Application/Control Number:                                    Page 42
95/000,121
Art Unit: 3993

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C.  This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

> As stated in the request on page 22
>
> It would have been obvious to one of ordinary skill in the art at the time of the
> invention to substitute the soft outer cover layer of Nesbitt and replace it with an
> outer cover layer made of the soft polyurethane material taught by Molitor '751 to
> provide a golf ball that includes "playability properties as good or better than
> balata-covered wound balls but are significantly more durable," and "have better
> wood playability properties than conventional two-piece balls, and permit
> experienced golfers to apply spin so as to fade or draw a shot" while having
> improved puttability. (Molitor '751, col. 2, ll. 61-68)

> This rejection of claim 1 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 4: Patent Owner's Argument

> The Patent Owner argues that the rejection is improper because:  (1) Molitor '751

describes the cover of his golf ball with hardness values in terms of Shore C, hence, one of

ordinary skill would not look to combine this teaching with the patent of Nesbitt, with hardness

values recorded in terms of Shore D, because the two hardness values, or scales, have no simple

mathematical correlation (Patent Owner's Response at page 22 to page 23);  and, (2) no

motivation to combine Nesbitt with Molitor '751 because the Molitor '751 ball's construction is

Application/Control Number:                                  Page 43
95/000,121
Art Unit: 3993

a hard core with a soft cover, the cover having a thickness twice the thickness of the Sullivan

'873 claims and an order of magnitude softer (Patent Owner's Response at page 23).


Ground 4: Third Party Requester's Comments

        Third Party Requester counter argues that, for argument (1) hardness values of Shore C

and Shore D are convertible as evidenced by, *inter alia*, the Sullivan '873 patent itself (Third

Party Requester's Comments at bottom of page 25). For argument (2), the Third Party Requester

states that motivation to combine exists because, *inter alia*, Molitor '751, itself, states that its

cover can be used with the three-piece, two-cover golf ball of Nesbitt (Third Party Requester's

Comments at bottom of page 27).


Ground 4: Examiner's Response to the Argument and Comments

        Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '751 is maintained.

As to the Patent Owner's first argument, Examiner specifically agrees with the Third Party

Requester's comments that a correlation, or conversion, exists between the two hardness scales,

Shore C and Shore D, because Sullivan '873 give a conversion of the two scales at col. 3, lines

42-43. Further, the quote used by the Patent Owner from the ASTM D-2240 standard stating

that ""no simple relationship exists"" (Patent Owner's Response at middle of page 23) does not

preclude a conversion factor, even if complex. Since the Supreme Court has recently held that

"[a] person of ordinary skill is also a person of ordinary creativity, not an automaton," even a

complex calculation suffices to permit conversion of the two scales (slip opinion of *KSR* at

Application/Control Number:                              Page 44
95/000,121
Art Unit: 3993

middle of page 17). Hence, one of ordinary skill would not be deterred from use of prior art

regardless of the hardness scale used to define its various layers.

As to the second argument, Examiner considers the language of the Molitor '751 that

"[t]he phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core

and a cover, but also includes balls having a separate solid layer beneath the cover as disclosed,

for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls, having non-wound cores"

provides motivation to combine the two references. Molitor '751 provides motivation, for

example, at col. 1, lines 11-15, where it states that the invention is concerned with a "golf ball

useful in making balls, particularly two-piece balls, having superior short iron and other

playability characteristics."

Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within her or her grasp. If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion KSR at middle of page 17). Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4). Polyurethane was a known solution for providing playability properties

(Molitor '751 at abstract). The resulting golf ball with a polyurethane outer cover had the

expected results (Sullivan '873 at abstract). Thus, the golf ball disclosed in claim 1 of Sullivan

'873 is of ordinary skill and common sense.

As to the argument of different thicknesses of the layers, Nesbitt discloses the thickness

of an inner layer being in a range from 0.020 inches to 0.070 inches at col. 3, lines 19-25. These

Application/Control Number:                                    Page 45
95/000,121
Art Unit: 3993

ranges overlap the ranges of claim 1. Finally, for the argument of a Shore value of at least 60 for

the inner cover, Nesbitt discloses use of "hard, highly flexual modulus resinous material such as

type 1605 Surlyn" for this layer at col. 2, lines 36-39. Surlyn 1605, now Surlyn 8940, has a

Shore D hardness of 65 (Third Party Requester's Comments at page 27, n.82).


**Proposed Third Party Requester Rejection: Ground #5.**

The requester submits on pages 22-25 that claim 1 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core** 11 and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |

Application/Control Number:                                    Page 46
95/000,121
Art Unit: 3993

| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
|---|---|
| said inner cover layer having a Shore D hardness of at least 60, | See below with respect to Shore D hardness. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6." <br><br> **TABLE 6** <br> **Composition of Inner Layer of Cover (Parts by Weight)** <br><br> Ionomer Type ... Blend Ratio <br> Sodium- Surlyn 8940 ... 75% <br> Zinc- Surlyn 9910 ... 25% <br><br> (Proudfit, col. 8, ll. 22-30) <br><br> SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. <br><br> Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, |

Application/Control Number:                                    Page 47
95/000,121
Art Unit: 3993

| | ll. 21-24) |
|---|---|
| said outer cover layer having a Shore D hardness of about 64 or less, | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As shown above Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and outer layer) with the layers within the range of claimed thicknesses each layer made from a material having the mechanical properties substantially similar to the claimed mechanical properties.  What Proudfit lacks in clearly disclosing are the particular mechanical and chemical properties of the claimed invention.  However, Proudfit either incorporates by reference these mechanical and chemical properties and/or the materials used within the Proudfit golf ball inherently have these mechanical and chemical properties.  For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-43).  The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60).  If Proudfit discloses using blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.  As taught from Exhibit I,

Application/Control Number:                                      Page 48
95/000,121
Art Unit: 3993

SURLYN 8940 has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see

Exhibit I. Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit

discloses the outer layer being a blend of balata. An example of the blend is disclosed in Table 7

reproduced below.

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

While Proudfit lacks disclosing the outer layer being made from polyurethane, in an

analogous golf ball, Molitor '637 teaches using polyurethane, see Molitor '637, col. 5, ll. 33-41

and col. 18, examples 16 and 17. The request points out on page 25, ll. 7-15, why the use of

polyurethane to one of ordinary skill in the art would be readily apparent given that those skilled

in the art were more critical of the mechanical properties of a particular material then the

chemical composition (material type) of the material and those remarks are incorporated herein.

In other words, it was not critical to the "golf ball inventions" of those skilled in the art as to

what materials were used to construct the golf balls so long as the materials had the desired

Application/Control Number:                                    Page 49
95/000,121
Art Unit: 3993

mechanical properties which would yield the particular mechanical performance parameters the

inventors were trying to achieve, e.g. improved processability; improved durability; cost

effectiveness; user acceptance of performance (similar "click" and "feel" to balata) of the golf

ball product made from those materials.

The request on page 25, ll. 5-22, explains why one of ordinary skill in the art would be

motivated to substitute the outer cover layer taught in Molitor '637 for the outer cover layer

disclosed in Proudfit:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those materials. (See
> Exhibit G at 334.) Because those skilled in the art would look to the mechanical
> properties of the materials when determining whether certain materials can be
> substituted for one another, those skilled in the art would recognize that the Estane
> polyurethane taught by Molitor '637 (having a flexural modulus of about 25,000 psi)
> and the polymeric outer cover layer material of Proudfit (which has a modulus of
> between 20,000 and 25,000 psi) would have been substitutable for one another.
> (Compare Exhibit J with Proudfit, col. 6, lines 28-31.) This would have further
> suggested to those skilled in the art that the soft polymeric materials taught by
> Molitor '637, including, for example, the relatively soft, low modulus polyurethane
> material of Molitor '637 would have been substitutable for the soft polymeric outer
> cover layer as taught by Proudfit.

> It would have been obvious to one of ordinary skill in the art at the time of invention
> to modify the balata-based outer cover layer of Proudfit to include the polyurethane
> outer cover layer of Molitor '637 because polyurethane was a well known substitute
> to balata and gives a number of advantages over balata as would have been readily
> appreciated by those skilled in the art. These advantages include: (1) improved
> processability; (2) improved durability when compared to balata; (3) cost-
> effectiveness when compared to balata; and (4) having a good "click" and "feel." ...
> All of this would have led one of ordinary skill in the art to replace the soft, low
> modulus balata-based outer cover layer of Proudfit with the soft, low modulus
> polyurethane outer cover layer material of Molitor '637 at the time of the alleged
> invention.

Therefore, one of ordinary skill in the art would find the claimed invention as obvious for

the motivation given in the request on page 25, ll. 5-22.

Application/Control Number:                              Page 50
95/000,121
Art Unit: 3993

     This rejection of claim 1 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 5: Patent Owner's Argument

     The Patent Owner argues that the rejection is improper because: (1) Proudfit does not

describe a golf ball with an outer layer with a Shore D hardness value of 64 or less because the

Hebert Declaration's analysis of the Wilson Ultra Tour (as representative of the Proudfit patent)

is not correct (Patent Owner's Response at page 25); (2) the thickness of Molitor '637's cover

layer cannot be combined with thickness of Proudfit's cove layer which is significantly thinner

(Patent Owner's Response middle of page 27); and, (3) the rejection is impermissible hindsight

reconstruction of substitution of materials when the invention, exemplified by the Titleist Pro

V1, is a commercial blockbuster (Patent Owner's Response bottom of page 27).


Ground 5: Third Party Requester's Comments

     Third Party Requester counter argues that, for argument (1) the Wilson Ultra Tour is

representative of the Proudfit patent because both disclose a three-piece golf ball with an outer

cover layer of cis-polybutadiene and synthetic balata (trans-polyisoprene), an inner layer of Na

and Zn Surlyns, and a compression of 100 (Third Party Requester's Comments at page 31); (2)

the thickness layers in the two patents overlap hence one of ordinary skill would realize that the

cover materials could be substituted (Third Party Requester's Comments at page 29); and (3) the

motivation set forth in the rejection by the Examiner satisfies the requirements *KSR* and is

Application/Control Number:                                    Page 51
95/000,121
Art Unit: 3993

consistent with the motivation to combine Nesbitt and WU identified by the BPAI (Third Party

Requester's Comments at middle of page 30) and that the '873 claim does not disclose the

Titleist Pro V1 golf ball (Third Party Requester's Comments at pages 34-37).


Ground 5: Examiner's Response to the Argument and Comments

     Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '637 is

maintained.  As to the Patent Owner's first argument, the Examiner accepts the Hebert

Declaration as competent evidence because it is a sworn declaration.  As such, the Examiner will

not probe the Declarant's veracity.  Since the Wilson Pro Tour had an outer cover made of c-

polybutadiene and synthetic balata (trans-polyisoprene) with a Shore D hardness of 52 (Exhibit

A of Hebert Declaration), the over cover of Proudfit is considered to have the same hardness

value since its composition is the same (Proudfit at col. 8, Table 7;  *see* MPEP 2112.01(II)).

     As to Patent Owner's second argument, Proudfit discloses that the outer cover can be

from 0.0450 to 0.0650 inches in thickness.  Molitor '637 discloses an outer cover thickness of

0.060 inches or thicker (Molitor '637 at col. 5, lines 3-7).  Since these values overlap in the

region of 0.060 inches, one of ordinary skill would find it obvious to look to Molitor '637 for an

outer cover for the golf ball of Proudfit.

     As to Patent Owner's third argument, Examiner considers the language of Molitor '637

that "one skilled in the art can produce a golf ball having the desirable qualities of both Balata

and Surlyn resin covered golf balls" (Molitor '637 at col. 2, lines 43-45) to provide motivation to

combine the two references.  One of the compositions disclosed by Molitor '637 is polyurethane

Application/Control Number:                                                        Page 52
95/000,121
Art Unit: 3993

(Molitor '637 at col. 5, lines 33-55).  Therefore, one of ordinary skill, having the three-piece ball

disclosed by Proudfit would look to Molitor '637 for over cover material to achieve a golf ball

with the desired qualities of Balata and Surlyn.

    Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within her or her grasp.  If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion KSR at middle of page 17).  Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4).  Polyurethane was a known solution for providing playability properties

(Molitor '637 at abstract).  The resulting golf ball with a polyurethane outer cover had the

expected results (Sullivan '873 at abstract).  Thus, the golf ball disclosed in claim 1 of Sullivan

'873 is of ordinary skill and common sense.

    The Examiner does not reach the argument proffered by the Patent Owner that the Titleist

Pro V1 golf ball exemplifies the instant claim language.


**Proposed Third Party Requester Rejection: Ground #6.**

    The requester submits on pages 26-27 that claim 1 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

    Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Application/Control Number:                                    Page 53
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls,** and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of at least 60, | See below with respect to Shore D hardness. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6." <br><br>**TABLE 6** <br>Composition of Inner Layer of Cover (Parts by Weight) <br><br>| Ionomer Type | Blend Ratio | <br>| Sodium- Surlyn 8940 | 75% | <br>| Zinc- Surlyn 9910 | 25% | <br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |

Application/Control Number:                                    Page 54
95/000,121
Art Unit: 3993

| | |
|---|---|
| | Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material."** (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a Shore D hardness of about 64 or less, | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As expressed in the request on page 26 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer. Proudfit lacks in disclosing the use of polyurethane as

Application/Control Number:                                    Page 55
95/000,121
Art Unit: 3993

the material for the outer cover layer.  Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium Dioxide | 17.00 |
| Ultramarine Blue color | .10 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls.  As

admitted by the patent owner

> Despite all the benefits of balata, balata covered golf balls are easily cut and/or
> damaged if mis-hit.  Golf balls produced with balata or balata-containing cover
> compositions therefore have a relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42).  The next step in golf ball cover technology to overcome the

problems with balata was the use of SURLYN as an outer cover.  However, as described in the

request on page 26 Wu teaches the problem with SURLYN as a outer cover on a golf ball.

> **The problem with SURLYN covered golf balls ... is that they lack the "click"
> and "feel" which golfers had become accustomed to with balata.**  "Click" is
> the sound when the ball is hit by a golf club and "feel" is the overall sensation
> imparted to the golfer when the ball is hit.

> It has been proposed to employ polyurethane as a cover stock for golf balls
> because, like SURLYN, it has a relatively low price compared to balata and
> provides superior cut resistance over balata.  **However, unlike SURLYN covered
> golf balls, polyurethane-covered golf balls can be made to have the "click"
> and "feel" of balata.**

(Wu col. 1, ll. 36-46 (emphasis added)).

As explained in the request on page 26 through page 27 those skilled in the art at the time

the claimed invention was made were more critical of the mechanical properties of the materials

Application/Control Number:                                    Page 56
95/000,121
Art Unit: 3993

that constructed the layers which impacted the performance of the golf ball more than the

materials themselves.  See Exhibit G.  As identified above Proudfit lacks disclosing polyurethane

as the outer cover layer.  In analogous golf ball device, Wu's polyurethane material inherently

has a flexural modulus of 23,000 psi as averred within the Rule 132 Declaration of Jeffrey L.

Dalton at para. 7.  Proudfit's outer cover layer material is disclosed as having a flexural modulus

of between about 20,000 psi and 25,000 psi.  (Proudfit, col. 6, ll. 28-31)  Thus, Wu's cover

material's flexural modulus falls within the range of Proudfit's cover material.  Moreover, Wu's

polyurethane material inherently has a Shore D hardness of about 58.  See Decl. of Dalton at

para. 6.  Thus, as evidenced by this declaration, Wu's polyurethane material falls within the

claimed range of the outer layer material have a Shore D hardness of less than 64.

Thus, as pointed out in the request on page 27, one of ordinary skill in the art at the time

the invention was made would find it obvious to substitute Wu's polyurethane golf ball cover

material for Proudfit's balata-blend cover material for the advantages described in this part of the

request which is quoted below:

> Based on Wu's teachings, one of ordinary skill in the art would have recognized the
> substitutability of soft polyurethane for soft balata-based materials and the advantages
> of making such a substitution. These advantages include (1) low price compared to
> balata; (2) better cut resistance when compared to balata; and (3) a "click" and "feel"
> that is similar to balata. Moreover, the replacing the balata-material taught by Proudfit
> would have been obvious to those skilled in the art prior to November 9, 1995 because
> before that time, the Titleist Professional[TM] golf ball, which had used Wu's
> polyurethane material, had replaced balata-covered balls as the market leader. (See
> Decl. of Jeffrey L. Dalton at ¶¶ 3-4.) Therefore, it would have been obvious to one of
> ordinary skill in the art at the time of the alleged invention to modify Proudfit's golf ball
> by replacing the soft balata-based outer cover layer with an outer cover layer made of
> soft polyurethane material because Wu's polyurethane material has similar mechanical
> properties and provides numerous advantages over balata while exhibiting the "click"
> and "feel" of balata.

Application/Control Number:                                     Page 57
95/000,121
Art Unit: 3993

This rejection of claim 1 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 6: Patent Owner's Argument

The Patent Owner argues that the rejection is improper because: (1) while the patent of

Wu describes the use of polyurethane as an outer cover, it discloses neither the thickness nor the

Shore D hardness of this polyurethane layer (Patent Owner Response at middle of page 28); (2)

Wu, herself, at her deposition could not predict the final hardness value of her cover (Patent

Owner Response at page 28); (3) the Dalton Declaration is not competent evidence of the

hardness value of Wu's polyurethane layer (Patent Owner Response at page 28); and, (4) no

motivation to combine the references, absent hindsight, because motivation to try, *i.e.*, to

substitute one material for another, is not the standard (Patent Owner Response at top of page

29).


Ground 6: Third Party Requester's Comments

Third Party Requester counter argues that, for argument (4), applying the standard of

*KSR* would result in one of ordinary skill using polyurethane as a golf ball cover since it had

been know for decades as an excellent golf ball material (Third Party Requester's Comments at

page 32). Further, the rationale of *Ex parte Sullivan* would equally apply here (Third Party

Requester's Comments at page 32).

Application/Control Number:
95/000,121
Art Unit: 3993

Page 58

Ground 6: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester, and the rejection of claim 1 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is maintained. As to the Patent Owner's first, second, and third argument, the Examiner accepts the Dalton Declaration as competent evidence because it is a sworn declaration. As such, the Examiner will not probe the Declarant's veracity. Hence, the Shore D hardness value for Wu's cover is considered to be 58. The thickness of the outer cover is found in Proudfit where it is disclosed that the thickness can be from 0.0450 to 0.0650 inches (Proudfit at col. 7, lines 40-47). Wu's deposition is not dispositive, here, because of the Dalton Declaration.

As to Patent Owner's fourth argument, Examiner considers the language of Wu, itself, to provide motivation to combine because golf balls made with polyurethane possess" improved shear resistance and cut resistance compared to golf balls having covers made from either balata or SURLYN" (Wu at col. 2, lines 29-32). Also, golf balls with polyurethane covers "can be made to have the "click" and "feel" of balata" (Wu at col. 1, lines 44-46). Therefore, one of ordinary skill, having the three-piece ball disclosed by Proudfit would look to Wu for outer cover material to achieve a golf ball with the desired qualities of Balata and Surlyn.

Further, the Supreme Court has held that "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within her or her grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense" (slip opinion *KSR* at middle of page 17). Here, the problem of producing a golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

Application/Control Number:                                              Page 59
95/000,121
Art Unit: 3993

bottom of page 4). Polyurethane was a known solution for providing playability properties (Wu

at col. 1 lines 27-46). The resulting golf ball with a polyurethane outer cover had the expected

results (Sullivan '873 at abstract). Thus, the golf ball disclosed in claim 1 of Sullivan '873 is of

ordinary skill and common sense.

Finally, the Court has explicitly approved of the "obvious to try" standard for

combinations as above (slip opinion *KSR* at middle of page 17).


**Proposed Third Party Requester Rejection: Ground #7.**

The requester submits on pages 27-29 that claim 1 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)

"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core |

Application/Control Number:                                    Page 60
95/000,121
Art Unit: 3993

| | |
|---|---|
| | was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of at least 60, | See below with respect to Shore D hardness. |
| said inner cover layer comprising a blend of two or more low acid ionomer resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6." <br><br> **TABLE 6** <br> Composition of Inner Layer of Cover <br> (Parts by Weight) <br><br> | Ionomer Type | Blend Ratio | <br> |---|---| <br> | Sodium- Surlyn 8940 | 75% | <br> | Zinc- Surlyn 9910 | 25% | <br><br> (Proudfit, col. 8, ll. 22-30) <br><br> SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. <br><br> Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |

Application/Control Number:                                    Page 61
95/000,121
Art Unit: 3993

| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material**." (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a Shore D hardness of about 64 or less, | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |
| a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As expressed in the request on page 27 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer. Proudfit lacks in disclosing the use of polyurethane as

the material for the outer cover layer. Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

| TABLE 7 | |
|---------|--|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 80.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium Dioxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 15.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls. As

admitted by the patent owner:

Application/Control Number:                                          Page 62
95/000,121
Art Unit: 3993

> [d]espite all the benefits of balata, balata covered golf balls are easily cut and/or
> damaged if mis-hit.  Golf balls produced with balata or balata-containing cover
> compositions therefore have a relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42).  With this disadvantage of balata covered golf balls, golf ball

designers looked for materials that would provide the same "click" and "feel" golfers expected

and have increased durability.

As pointed out in the request on page 28, lines 1-4, in an analogous golf ball, Molitor

'751 teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having
> playability properties similar to wound, balata-covered balls is to provide about an
> inner resilient molded core a **cover having a shore C hardness less than 85**,
> preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of
> the invention is made of a composition comprising a blend of (1) a **thermoplastic
> urethane having a shore A hardness** less than 95 and (2) an ionomer having a
> shore D hardness greater than 55. The ionomer comprises olefinic groups having
> two to four carbon atoms copolymerized with acrylic or methacrylic acid groups
> and cross-linked with metal ions, preferably sodium or zinc ions. **The primary
> components of the blended cover are set at a weight ratio so as to result in a
> cover material after molding having a shore C hardness within the range of
> 70 to 85, preferably 72 to 76.** Preferably, the urethane component of the cover
> material has a tensile strength greater than 2500 psi and an elongation at break
> greater than 250%. A preferred cover material comprises about 8 parts of the
> thermoplastic urethane and between 1 and 4 parts ionomer. Preferably, the cover
> is no greater than 0.060 inch thick. Thinner covers appear to maximize the short
> iron playability characteristics of the balls.

(Molitor '751, col. 33-57 (emphasis added)).  Thus, Molitor '751 teaches having a outer cover

layer with a Shore C hardness less than 85 and preferably between 72 and 76.  Moreover,

Molitor '751 teaches what golf balls are included in the definition of "two-piece" ball within its

instant specification.

> The phrase "two-piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer
> beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to
> Nesbitt, and other balls having non-wound cores.**

Molitor '751, col. 3, ll. 7-12 (emphasis added)). Proudfit, likewise, teaches the two-piece golf

balls can fit within this definition.

> FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a
> cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer
> resins and a relatively soft outer layer 14 of polymeric material.

(Proudfit, col. 7, ll. 21-24).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance a polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

Application/Control Number:                                    Page 64
95/000,121
Art Unit: 3993

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

    As stated in the request on page 29

    Therefore, it would have been obvious to one of ordinary skill in the art at the
    time of the invention to substitute the soft outer cover layer of Nesbitt and replace
    it with an outer cover layer made of the soft polyurethane material taught by
    Molitor '751 to provide a golf ball that includes "playability properties as good or
    better than balata-covered wound balls but are significantly more durable," and
    "have better wood playability properties than conventional two-piece balls, and
    permit experienced golfers to apply spin so as to fade or draw a shot" while
    having improved puttability.  (Molitor '751, col. 2, ll. 61-68)

    This rejection of claim 1 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 7: Patent Owner's Argument

    The Patent Owner argues that the rejection is improper because: (1) Molitor '751

describes the cover of his golf ball with hardness values in terms of Shore C, hence, one of

ordinary skill would not look to combine this teaching with the patent of Proudfit to have a ball

with Shore D harness values, because the two hardness values, or scales, have no simple

mathematical correlation (Patent Owner's Response at middle of page 29);  and, (2) no

motivation to combine Proudfit with Molitor '751 because the Molitor '751 ball's construction is

different than that of the claimed golf balls (Patent Owner's Response at bottom of page 29

continuing to top of page 30).

Application/Control Number:                                    Page 65
95/000,121
Art Unit: 3993

Ground 7: Third Party Requester's Comments

Third Party Requester counter argues that, for argument (1) hardness values of Shore C

and Shore D are convertible as evidenced by many published methods (Third Party Requester's

Comments at page 33). For argument (2), the Third Party Requester states that motivation to

combine exists because Molitor '751, itself, states that its cover can be used with the three-piece

golf balls (Third Party Requester's Comments at top of page 34).


Ground 7: Examiner's Response to the Argument and Comments

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '751 is

maintained. As to the Patent Owner's first argument, Examiner agrees with the Third Party

Requester's comments that a correlation, or conversion, exists between the two hardness scales,

Shore C and Shore D, because, *inter alia*, Sullivan '873 give a conversion of the two scales at

col. 3, lines 42-43. Hence, one of ordinary skill would not be deterred from use of prior art

regardless of the hardness scale used to define its various layers.

As to the second argument, Examiner considers the language of the Molitor '751 that

"[t]he phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core

and a cover, but also includes balls having a separate solid layer beneath the cover as disclosed,

for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls, having non-wound cores"

provides motivation to combine the two references. Proudfit, like Nesbitt, disclose golf balls

with a core, inner cover, and outer cover. Molitor '751 provides motivation, for example, at col.

1, lines 11-15, where it states that the invention is concerned with a "golf ball useful in making

Application/Control Number:                                    Page 66
95/000,121
Art Unit: 3993

balls, particularly two-piece balls, having superior short iron and other playability

characteristics."

Further, the Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reason to pursue the known options within her or her grasp.  If

this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill

and common sense" (slip opinion *KSR* at middle of page 17).  Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4).  Polyurethane was a known solution for providing playability properties

(Molitor '751 at abstract).  The resulting golf ball with a polyurethane outer cover had the

expected results (Sullivan '873 at abstract).  Thus, the golf ball disclosed in claim 1 of Sullivan

'873 is of ordinary skill and common sense.


Re. Claim 2

**Proposed Third Party Requester Rejection: Ground #8.**

The requester submits on pages 29-30 that claim 2 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Claim 2 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating

by reference Molitor '637) discloses the claim limitations.

Application/Control Number:
95/000,121
Art Unit: 3993

Page 67

| Claim 2 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches."  (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 2 based on Nesbitt (incorporating by refrence Molitor '637) was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 8: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 8: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Ground 8: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection.  See "Ground 1:  Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #9.**

Application/Control Number:                                    Page 68
95/000,121
Art Unit: 3993

In the alternative, the requester submits on page 30 that claim 2 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 2 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 9: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 9: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                                      Page 69
95/000,121
Art Unit: 3993

Ground 9: Examiner's Response to the Argument and Comments

      Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #10.**

      The requester submits on page 30 of the request that claim 2 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

      Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

      Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

      This rejection of claim 2 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.

Application/Control Number:                                    Page 70
95/000,121
Art Unit: 3993

Ground 10: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 10: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 10: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained.  See "Ground 3:  Examiner's Response to the Argument and Comments," *supra.*

**Proposed Third Party Requester Rejection: Ground #11.**

The requester submits on page 30 of the request that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses, teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---------|---------|

Application/Control Number: 95/000,121
Art Unit: 3993

Page 71

| The golf ball of claim 1 wherein | See above. |
|---|---|
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 2 based on Nesbitt in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 11: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 11: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 11: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 2 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained. See "Ground 4: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejections: Ground #12-14.**

Application/Control Number:                                    Page 72
95/000,121
Art Unit: 3993

The requester submits on page 30 that claim 2 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.

Pat. No. 4,274,637 (Molitor '637); Wu, U.S. Pat. No. 5,334,673 (Wu); or Molitor et al., U.S. Pat.

No. 4,674,751 (Molitor '751).

**These rejections are <u>not adopted</u> for the reasons given in below.**

Claim 2 requires the outer layer thickness to be in the range of about 0.01 to about 0.05

inches. Proudfit's preferred outer layer thickness embodiment is 0.0525 inches thick. See

Proudfit, col. 7, ll. 40-46. Therefore, Proudfit's preferred embodiment is outside the claimed

range. Further, the difference between Proudfit's preferred embodiment and the claimed

invention's upper range limit is 0.0025 inches or twenty-five thousandths of an inch. This

difference equates to approximately a factor of 4. The requester admits that it is not the chemical

but mechanical properties of the materials used in making golf balls which is important to those

skilled in the art. One of the mechanical properties in constructing a golf ball with materials it

the thickness to make a given layer. For these reasons, one skilled in the art would not find

obvious the claimed invention of claim when viewing Proudfit with Molitor '637, Wu or Molitor

'751. Note that Molitor '637, Wu or Molitor '751 lack curing the deficiencies of Proudfit with

respect to the instant claimed invention.


<u>Re. Claim 3</u>

**Proposed Third Party Requester Rejection: Ground #15.**

The requester submits on pages 30-31 that claim 3 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

Application/Control Number:
95/000,121
Art Unit: 3993

Page 73

**This rejection is <u>adopted</u> in this office action.**

Claim 3 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by reference Molitor '637).

Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating by reference Molitor '637) discloses the claim limitations.

| Claim 3 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.)<br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 3 based on Nesbitt incorporating by reference Molitor '637 was proposed by the third party requester in the request for reexamination and <u>is being adopted</u> essentially as proposed in the request.

Ground 15: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 15: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Application/Control Number:                                            Page 74
95/000,121
Art Unit: 3993

Ground 15: Examiner's Response to the Argument and Comments

 Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection.  See "Ground 1:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #16.**

In the alternative, the requester submits on page 31 that claim 3 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches."  (Nesbitt, col. 3. ll. 22-25.)<br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 3 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Application/Control Number:                                          Page 75
95/000,121
Art Unit: 3993

Ground 16: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 16: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 16: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 3 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #17.**

The requester submits on page 31 of the request that claim 3 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu, U.S. Pat. No. 5,334,673 (Wu).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses, teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---------|---------|

Application/Control Number:
95/000,121
Art Unit: 3993

Page 76

| The golf ball of claim 1 wherein | See above. |
|---|---|
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.)<br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 3 based on Nesbitt in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 17: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 17: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 17: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 3 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is maintained. See "Ground 3: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #18.**

Application/Control Number:                                    Page 77
95/000,121
Art Unit: 3993

The requester submits on page 30 of the request that claim 3 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3; ll. 39-40.) |

This rejection of claim 3 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 18: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 18: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                                    Page 78
95/000,121
Art Unit: 3993


Ground 18: Examiner's Response to the Argument and Comments

      Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 3 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 4: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #19.**

      The requester submits on pages 31-32 that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

      Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

      Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 3 | Proudfit |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..." (Proudfit, col. 7, ll. 40-46.) |

      This rejection of claim 3 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Application/Control Number:                                              Page 79
95/000,121
Art Unit: 3993

Ground 19: Patent Owner's Argument

    Patent Owner does not specifically argue this rejection.

Ground 19: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.

Ground 19: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 3 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #20.**

    The requester submits on pages 31-32 that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

    Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

    Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 3 | Proudfit |
|---------|----------|

Application/Control Number:                              Page 80
95/000,121
Art Unit: 3993

| | |
|---|---|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..." (Proudfit, col. 7, ll. 40-46.) |

This rejection of claim 3 based on Proudfit in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 20: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 20: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 20: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 3 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is maintained. See "Ground 6: Examiner's Response to the Argument and Comments," *supra.*

**Proposed Third Party Requester Rejection: Ground #21.**

Application/Control Number:                                    Page 81
95/000,121
Art Unit: 3993

The requester submits on pages 31-32 that claim 3 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 3 | Proudfit |
|---------|----------|
| The golf ball of claim 1 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..." (Proudfit, col. 7, ll. 40-46.) |

This rejection of claim 3 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 21: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 21: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 21: Examiner's Response to the Argument and Comments

Application/Control Number:                          Page 82
95/000,121
Art Unit: 3993

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 3 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'751 is maintained.   See "Ground 7: Examiner's Response to the Argument and

Comments," *supra*.


Re. Claim 4

**Proposed Third Party Requester Rejection: Ground #22.**

The requester submits on pages 33-36 that claim 4 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Claim 4 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations and which reference Nesbitt

(incorporating by reference Molitor '637) discloses the claim limitations.

| Claim 4 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed about said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |

Application/Control Number:
95/000,121
Art Unit: 3993

Page 83

| | |
|---|---|
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An outer layer, ply, lamination or cover 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type Thermoplastic Polyurethane (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

Application/Control Number:                                    Page 84
95/000,121
Art Unit: 3993

As mentioned above, Nesbitt incorporating by reference Molitor '637 describes a number

of compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Also, as mentioned above,

Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane

identified as ESTANE 58133. A review of the scientific literature yields that ESTANE 58133

has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU Product Data

Sheet". A Shore D hardness of 55 is within the range claimed of Shore D hardness less than 64.

Application/Control Number:                                Page 85
95/000,121
Art Unit: 3993

Therefore, Molitor '637's teaching of using ESTANE 58133 inherently meets the claim

limitation of providing a outer cover layer of polyurethane material having a Shore hardness of

less than 64.  Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN

9020).  This material had inherently flexural modulus of about 14,000 psi and a Shore hardness

of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN".  Moreover, as

admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.  Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

    This rejection of claim 4 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 22: Patent Owner's Argument

    Patent Owner does not specifically argue this rejection.


Ground 22: Third Party Requester's Comments

    Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."

Application/Control Number:                                        Page 86
95/000,121
Art Unit: 3993

Ground 22: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #23.**

In the alternative, the requester submits on pages 33-36 that claim 4 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 4 | Nesbitt (primary) with Molitor '637 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed about said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |

Application/Control Number:
95/000,121
Art Unit: 3993

Page 87

| | |
|---|---|
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.) <br><br> Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.) <br><br> Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> **Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. <br><br> Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

Application/Control Number:                                          Page 88
95/000,121
Art Unit: 3993

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary interest in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Also, as mentioned above,

Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane

identified as ESTANE 58133. A review of the scientific literature yields that ESTANE 58133

has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU Product Data

Sheet". A Shore D hardness of 55 is within the range claimed of Shore D hardness less than 64.

Application/Control Number:                                    Page 89
95/000,121
Art Unit: 3993

Therefore, Molitor '637's teaching of using ESTANE 58133 inherently meets the claim

limitation of providing a outer cover layer of polyurethane material having a Shore hardness of

less than 64. Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN

9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness

of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as

admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334. Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

Because it appears that to one of ordinary skill in the art at the time the invention was

created that the actual chemical composition of the material is not critical to the practice of the

invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of

ordinary skill in the art at the time the invention was made would find it obvious to substitute one

material for another material if both materials had substantially the same mechanical properties.

This rejection of claim 4 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 23: Patent Owner's Argument

Application/Control Number:                          Page 90
95/000,121
Art Unit: 3993

Patent Owner does not specifically argue this rejection.


Ground 23: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 23: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #24.**

The requester submits on pages 36-38 of the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations.  As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 4 | Nesbitt mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a **solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed about said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an outer cover layer disposed on said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, |

Application/Control Number:                          Page 92
95/000,121
Art Unit: 3993

| about 0.07 inches, and | is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
|---|---|
| comprising a polyurethane material. | <u>Nesbitt</u>: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |
| | <u>Molitor '637</u>: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |
| | <u>Exhibit J</u>:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |
| | <u>Wu</u>: "[t]he present invention is a golf ball product made from a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents or difunctional glycols. The term "golf ball product" as used in the specification and claims means a cover, a core, a center or a one-piece golf ball. The cover of a golf ball made in accordance with the present invention has been found to have good shear resistance, cut resistance, durability and resiliency. **Preferably, the polyurethane composition of the present invention is used to make the cover of a golf ball.**" (Wu, col. 2, ll. 33-44). |

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer.  Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993.  Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata.  Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38.  This

Application/Control Number:                                    Page 93
95/000,121
Art Unit: 3993

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

   This rejection of claim 4 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.

Application/Control Number:                                    Page 94
95/000,121
Art Unit: 3993


Ground 24: Patent Owner's Argument

    Patent Owner does not specifically argue this rejection.


Ground 24: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.


Ground 24: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

*supra.*


**Proposed Third Party Requester Rejection: Ground #25.**

    The requester submits on pages 38-39 of the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

    Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

    Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

Application/Control Number:                                    Page 95
95/000,121
Art Unit: 3993

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 4 | Nesbitt mentioning Molitor '637 |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed about said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of at least 60, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 54-60.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| an **outer** cover layer disposed on said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, |

Application/Control Number:                                      Page 96
95/000,121
Art Unit: 3993

| | ll. 43-47.) |
|---|---|
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As shown above in the claim chart, Nesbitt mentioning Molitor '637 suggests the use of a

soft outer cover layer including a polyurethane material. In an analogous golf ball, Molitor '751

teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core **a cover having a shore C hardness less than 85,** preferably 70-80, and most preferably 72-76. The novel **cover of the golf ball** of the invention is made of a composition comprising a blend of (1) **a thermoplastic urethane having a shore A hardness less than 95** and (2) **an ionomer having a shore D hardness greater than 55.**

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, **but also includes balls having a separate solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt,** and other balls have non-wound cores.

Application/Control Number:
95/000,121
Art Unit: 3993

Page 97

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L). Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art "translates" a Shore C value to a Shore D value is by taking the known Shore hardness values with a given range, in this instance Shore C, for given materials, in this instance polyurethane golf ball covers materials, and taking corresponding measurements with a different set of Shore gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs from performing this procedure wherein the range of known Shore C values are the abscissa and the range of measured Shore D values are the ordinate. Then, said plot can be use to read equivalent Shore D value for any given Shore C value within the known range of Shore C. This is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness value for any given Shore C hardness value.

As stated in the request on page 39

Application/Control Number:                                    Page 98
95/000,121
Art Unit: 3993

It would have been obvious to one of ordinary skill in the art at the time of the
invention to substitute the soft outer cover layer of Nesbitt and replace it with an
outer cover layer made of the soft polyurethane material taught by Molitor '751 to
provide a golf ball that includes "playability properties as good or better than
balata-covered wound balls but are significantly more durable," and "have better
wood playability properties than conventional two-piece balls, and permit
experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, ll. 61-68)

This rejection of claim 4 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 25: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 25: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 25: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 3 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 4: Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #26.**

Application/Control Number:                                    Page 99
95/000,121
Art Unit: 3993

The requester submits on pages 40-43 that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 4 | Proudfit |
|---------|----------|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover."  (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed about said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of at least 60, | See below with respect to Shore D hardness. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, | "The composition of the inner cover layer is described in Table 6." |

Application/Control Number:                               Page 100
95/000,121
Art Unit: 3993

| beta-unsaturated carboxylic acid; and |  |
|---|---|
| | (Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties.  For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention.  (Proudfit, col. 1, ll. 39-43.)  The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.)  If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**"  (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch...."  (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers."  (Proudfit, col. 5, ll. 15-17) |

As shown above Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and outer layer) with the layers within the range of claimed thicknesses each layer made from a material having the mechanical properties substantially similar to the claimed mechanical properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical properties of the claimed invention. However, Proudfit either incorporates by reference these mechanical and chemical properties and/or the materials used within the Proudfit golf ball inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I, SURLYN 8940 has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see Exhibit I. Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit discloses the outer layer being a blend of balata. An example of the blend is disclosed in Table 7 reproduced below.

Application/Control Number:                                    Page 102
95/000,121
Art Unit: 3993

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight). | |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

While Proudfit lacks disclosing the outer layer being made from polyurethane, in an

analogous golf ball, Molitor '637 teaches using polyurethane, see Molitor '637, col. 5, ll. 33-41

and col. 18, examples 16 and 17. The request points out on page 25, ll. 7-15, why the use of

polyurethane to one of ordinary skill in the art would be readily apparent given that those skilled

in the art were more critical of the mechanical properties of a particular material then the

chemical composition (material type) of the material and those remarks are incorporated herein.

In other words, it was not critical to the "golf ball inventions" of those skilled in the art as to

what materials were used to construct the golf balls so long as the materials had the desired

mechanical properties which would yield the particular mechanical performance parameters the

inventors were trying to achieve, e.g. improved processability; improved durability; cost

effectiveness; user acceptance of performance (similar "click" and "feel" to balata) of the golf

ball product made from those materials.

Application/Control Number:                                    Page 103
95/000,121
Art Unit: 3993

The request on page 25, ll. 5-22, explains why one of ordinary skill in the art would be

motivated to substitute the outer cover layer taught in Molitor '637 for the outer cover layer

disclosed in Proudfit:

> Moreover, as recognized by the inventor himself, the particular materials used in the
> golf balls were not as important as the mechanical properties of those materials. (See
> Exhibit G at 334.) Because those skilled in the art would look to the mechanical
> properties of the materials when determining whether certain materials can be
> substituted for one another, those skilled in the art would recognize that the Estane
> polyurethane taught by Molitor '637 (having a flexural modulus of about 25,000 psi)
> and the polymeric outer cover layer material of Proudfit (which has a modulus of
> between 20,000 and 25,000 psi) would have been substitutable for one another.
> (Compare Exhibit J with Proudfit, col. 6, lines 28-31.) This would have further
> suggested to those skilled in the art that the soft polymeric materials taught by
> Molitor '637, including, for example, the relatively soft, low modulus polyurethane
> material of Molitor '637 would have been substitutable for the soft polymeric outer
> cover layer as taught by Proudfit.

What the requests states on pages 42 and 43 is incorporated herein as additional reasoning why

one of ordinary skill in the art would be motivated to provide the above substitution.

Moreover, the request concludes with on page 43:

> It would have been obvious to one of ordinary skill in the art at the time of invention
> to modify the balata-based outer cover layer of Proudfit to include the polyurethane
> outer cover layer of Molitor '637 because polyurethane was a well known substitute
> to balata and gives a number of advantages over balata as would have been readily
> appreciated by those skilled in the art. These advantages include: (1) improved
> processability; (2) improved durability when compared to balata; (3) cost-
> effectiveness when compared to balata; and (4) having a good "click" and "feel." ...
> All of this would have led one of ordinary skill in the art to replace the soft, low
> modulus balata-based outer cover layer of Proudfit with the soft, low modulus
> polyurethane outer cover layer material of Molitor '637 at the time of the alleged
> invention.

Therefore, one of ordinary skill in the art would find the claimed invention as obvious for

the motivation given in the request on page 25, ll. 5-22 and pages 42-43.

Application/Control Number:                                    Page 104
95/000,121
Art Unit: 3993

This rejection of claim 4 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 26: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 26: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 26: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #27.**

The requester submits on pages 43-44 that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Application/Control Number: 95/000,121
Art Unit: 3993

Page 105

Below is a claim chart identifying the claim limitations and where Proudfit discloses, teaches or suggests the claim limitations.

| Claim 4 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)

"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed about said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of at least 60, | See below with respect to Shore D hardness. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6."

**TABLE 6.**
Composition of Inner Layer of Cover (Parts by Weight)

| Ionomer Type | Blend Ratio |
|---|---|
| Sodium- Surlyn 8940 | 75% |
| Zinc- Surlyn 9910 | 25% |

(Proudfit, col. 8, ll. 22-30)

SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |

Application/Control Number:                                    Page 106
95/000,121
Art Unit: 3993

| | |
|---|---|
| | Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material."** (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As expressed in the request on page 43 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer. Proudfit lacks in disclosing the use of polyurethane as

the material for the outer cover layer. Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

Application/Control Number:                                    Page 107
95/000,121
Art Unit: 3993

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium Dioxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls. As

admitted by the patent owner

> Despite all the benefits of balata, balata covered golf balls are easily cut and/or
> damaged if mis-hit. Golf balls produced with balata or balata-containing cover
> compositions therefore have a relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42). The next step in golf ball cover technology to overcome the

problems with balata was the use of SURLYN as an outer cover. However, as described in the

request on page 26 Wu teaches the problem with SURLYN as a outer cover on a golf ball.

> **The problem with SURLYN covered golf balls ... is that they lack the "click"
> and "feel" which golfers had become accustomed to with balata.** "Click" is
> the sound when the ball is hit by a golf club and "feel" is the overall sensation
> imparted to the golfer when the ball is hit.
>
> It has been proposed to employ polyurethane as a cover stock for golf balls
> because, like SURLYN, it has a relatively low price compared to balata and
> provides superior cut resistance over balata. **However, unlike SURLYN covered
> golf balls, polyurethane-covered golf balls can be made to have the "click"
> and "feel" of balata.**

(Wu col. 1, ll. 36-46 (emphasis added)).

As explained in the request on page 44 those skilled in the art at the time the claimed

invention was made were more critical of the mechanical properties of the materials that

constructed the layers which impacted the performance of the golf ball more than the materials

themselves. See Exhibit G. As identified above Proudfit lacks disclosing polyurethane as the

Application/Control Number:                                                    Page 108
95/000,121
Art Unit: 3993

outer cover layer.  In analogous golf ball device, Wu's polyurethane material inherently has a

flexural modulus of 23,000 psi as averred within the Rule 132 Declaration of Jeffrey L. Dalton at

para. 7.  Proudfit's outer cover layer material is disclosed as having a flexural modulus of

between about 20,000 psi and 25,000 psi.  (Proudfit, col. 6, ll. 28-31)  Thus, Wu's cover

material's flexural modulus falls within the range of Proudfit's cover material.  Moreover, Wu's

polyurethane material inherently has a Shore D hardness of about 58.  See Decl. of Dalton at

para. 6.  Thus, as evidenced by this declaration, Wu's polyurethane material falls within the

claimed range of the outer layer material have a Shore D hardness of less than 64.

     Thus, as pointed out in the request on page 44, one of ordinary skill in the art at the time

the invention was made would find it obvious to substitute Wu's polyurethane golf ball cover

material for Proudfit's balata-blend cover material for the advantages described in this part of the

request which is quoted below:

> Based on Wu's teachings, one of ordinary skill in the art would have recognized the
> substitutability of soft polyurethane for soft balata-based materials and the advantages
> of making such a substitution. These advantages include (1) low price compared to
> balata; (2) better cut resistance when compared to balata; and (3) a "click" and "feel"
> that is similar to balata. Moreover, the replacing the balata-material taught by Proudfit
> would have been obvious to those skilled in the art prior to November 9, 1995 because
> before that time, the Titleist Professional[TM] golf ball, which had used Wu's
> polyurethane material, had replaced balata-covered balls as the market leader. (See
> Decl. of Jeffrey L. Dalton at ¶¶ 3-4.) Therefore, it would have been obvious to one of
> ordinary skill in the art at the time of the alleged invention to modify Proudfit's golf ball
> by replacing the soft balata-based outer cover layer with an outer cover layer made of
> soft polyurethane material because Wu's polyurethane material has similar mechanical
> properties and provides numerous advantages over balata while exhibiting the "click"
> and "feel" of balata.

Application/Control Number:                                    Page 109
95/000,121
Art Unit: 3993

This rejection of claim 4 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.

Ground 27: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 27: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 27: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained. See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra*.

**Proposed Third Party Requester Rejection: Ground #28.**

The requester submits on pages 45-46 that claim 4 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Application/Control Number:                         Page 110
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 4 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed about said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of at least 60, | See below with respect to Shore D hardness. |
| said inner cover layer comprising a blend of two or more ionomeric resins, each containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 15% |<br><br>(Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |

Application/Control Number:                             Page 111
95/000,121
Art Unit: 3993

| | |
|---|---|
| | Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| an outer cover layer disposed on said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material."** (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As expressed in the request on page 45 and identified above within the claim chart,

Proudfit teaches a golf ball have a two-piece cover including a hard, ionomeric inner cover layer

and a soft balata blend outer cover layer. Proudfit lacks in disclosing the use of polyurethane as

the material for the outer cover layer. Instead, as shown in Table 7, reproduced below, Proudfit

discloses the outer cover layer being made of a blend of balata.

Application/Control Number:                                    Page 112
95/000,121
Art Unit: 3993

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

However, those skilled in the art understand the disadvantages of balata covered golf balls. As

admitted by the patent owner:

> [d]espite all the benefits of balata, balata covered golf balls are easily cut and/or
> damaged if mis-hit. Golf balls produced with balata or balata-containing cover
> compositions therefore have a relatively short lifespan.

(Sullivan '873, col. 1, ll. 39-42). With this disadvantage of balata covered golf balls, golf ball

designers looked for materials that would provide the same "click" and "feel" golfers expected

and have increased durability.

As pointed out in the request on page 45, lines 12-16, in an analogous golf ball, Molitor

'751 teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having
> playability properties similar to wound, balata-covered balls is to provide about an
> inner resilient molded core a **cover having a shore C hardness less than 85,**
> preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of
> the invention is made of a composition comprising a blend of (1) a **thermoplastic**
> **urethane having a shore A hardness** less than 95 and (2) an ionomer having a
> shore D hardness greater than 55. The ionomer comprises olefinic groups having
> two to four carbon atoms copolymerized with acrylic or methacrylic acid groups
> and cross-linked with metal ions, preferably sodium or zinc ions. **The primary**
> **components of the blended cover are set at a weight ratio so as to result in a**
> **cover material after molding having a shore C hardness within the range of**
> **70 to 85, preferably 72 to 76.** Preferably, the urethane component of the cover
> material has a tensile strength greater than 2500 psi and an elongation at break
> greater than 250%. A preferred cover material comprises about 8 parts of the
> thermoplastic urethane and between 1 and 4 parts ionomer. Preferably, the cover

Application/Control Number:                                        Page 113
95/000,121
Art Unit: 3993

> is no greater than 0.060 inch thick. Thinner covers appear to maximize the short
> iron playability characteristics of the balls.

(Molitor '751, col. 33-57 (emphasis added)). Thus, Molitor '751 teaches having a outer cover

layer with a Shore C hardness less than 85 and preferably between 72 and 76. Moreover,

Molitor '751 teaches what golf balls are included in the definition of "two-piece" ball within its

instant specification.

> The phrase "two-piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer
> beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to
> Nesbitt, and other balls having non-wound cores.**

Molitor '751, col. 3, ll. 7-12 (emphasis added)). Proudfit, likewise, teaches the two-piece golf

balls can fit within this definition.

> FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a
> cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer
> resins and a relatively soft outer layer 14 of polymeric material.

(Proudfit, col. 7, ll. 21-24).

    As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

    How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

Application/Control Number:                                        Page 114
95/000,121
Art Unit: 3993

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance a polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

     As stated in the request on page 46

> Therefore, it would have been obvious to one of ordinary skill in the art at the
> time of the invention to substitute the soft outer cover layer of Nesbitt and replace
> it with an outer cover layer made of the soft polyurethane material taught by
> Molitor '751 to provide a golf ball that includes "playability properties as good or
> better than balata-covered wound balls but are significantly more durable," and
> "have better wood playability properties than conventional two-piece balls, and
> permit experienced golfers to apply spin so as to fade or draw a shot" while
> having improved puttability. (Molitor '751, col. 2, ll. 61-68)

     This rejection of claim 4 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 28: Patent Owner's Argument

     Patent Owner does not specifically argue this rejection.

Application/Control Number:                           Page 115
95/000,121
Art Unit: 3993


Ground 28: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 28: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 4 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 7: Examiner's Response to the Argument and

Comments," *supra*.


<u>Re. Claim 5</u>

**Proposed Third Party Requester Rejection: Ground #29.**

The requester submits on page 47 that claim 5 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Claim 5 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating

by reference Molitor '637) discloses the claim limitations.

| Claim 5 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | <u>Nesbitt</u>:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore |

Application/Control Number:                              Page 116
95/000,121
Art Unit: 3993

| | D hardness of 55, <u>see</u> Exhibit I. |
| | |
| | <u>Nesbitt</u>: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |
| | |
| | <u>Molitor '637</u>:  In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |
| | |
| | ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | |
| | See also below for Shore D hardness of 64 or less limitation explanation. |

        As stated above, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020).  This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN".  Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.  Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

Application/Control Number:                                    Page 117
95/000,121
Art Unit: 3993

This rejection of claim 5 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 29: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 29: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."


Ground 29: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #30.**

In the alternative, the requester submits on page 30 that claim 5 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Application/Control Number:                              Page 118
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt and Nesbitt

mentioning Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 5 | Nesbitt/Nesbitt mentioning Molitor |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I. <br><br> Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> Molitor '637:  In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. <br><br> ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) <br><br> See also below for Shore D hardness of 64 or less limitation explanation. |

As stated above, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020).  This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN".  Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.  Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

Application/Control Number:
95/000,121
Art Unit: 3993

Page 119

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to substitute one material for another material if both materials had substantially the same mechanical properties.

This rejection of claim 5 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 30: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 30: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 30: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 5 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained.  See "Ground 2:  Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #31.**

Application/Control Number:
95/000,121
Art Unit: 3993

Page 120

The requester submits on page 47 of the request that claim 5 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt,

Nesbitt mentioning Molitor '637 or Wu discloses, teaches or suggests the claim limitations.

| Claim 5 | Nesbitt/Nesbitt mentioning Molitor '637 or Wu |
|---|---|
| The golf ball of claim 4 wherein | See above |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I.

Nesbitt:  "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention."  (Nesbitt, col. 3, ll. 54-60.)

Molitor '637:  In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.

ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)

Wu: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol."  (Wu, col. 3, ll. 62-66.) |

Application/Control Number:                                    Page 121
95/000,121
Art Unit: 3993

| | **Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, inter alia, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention. More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38).<br><br>See also below for Shore D hardness of 64 or less limitation explanation |
|---|---|

Wu further teaches in col. 1:36-46 that SURLYN covered golf balls lack the "click" and

"feel" of balata which golfers have become accustomed to such sensations and polyurethane

covered golf balls can be made to have a similar "click" and "feel" of balata. Wu also at least

teaches that polyurethanes made according to its invention will have Shore D hardness directly

proportional to the degree of cure of the cover; and this Shore D hardness ranges from 10 to 30,

preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This teaching of Shore D hardness is

directed to an intermediate curing step product prior to the final molding process to finish the

golf ball. Exhibit C demonstrates the actual finished golf ball product having the cover layer that

Wu teaches within its disclosure. Exhibit C teaches that the golf ball taught therein is covered by

the following patents: 4,783,078; 4,846,910; 4,858,923; 4,904,320; 4,915,390; 5,007,594;

5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673 Patent teaches the cover sock of the

Exhibit C finished golf ball. Exhibit C teaches that the golf ball taught therein has a cover

material made from an "elastomer", having a thickness of .050", and 58 Shore D hardness. All

Application/Control Number:                                    Page 122
95/000,121
Art Unit: 3993

three properties are within the range of mechanical properties of the claim invention

(polyurethane is an elastomer, cover layer thickness ranges from 0.010 to 0.070 inches and the

Shore D hardness is less that 64). Because it has been admitted by the inventor of the Sullivan

'893 patent that the particular chemical properties of the materials (the chemical composition)

used in the construction of a golf ball lack criticality as compared to the mechanical properties

(the Shore D hardness, flexural modulus, layer thickness) of those compounds used for

constructing the different layers (Exhibit G at 334), one of ordinary skill in the art at the time the

invention was made would find it obvious to incorporate the teachings of Wu which inherently

include the teachings of Shore hardness for the fully cured cover layer as taught in Exhibit C as

obvious equivalent materials in order to achieve the same end result of providing a cover layer

that has the same "click" and "feel" of a balata cover which the extra durability of an elastomeric

material.

This rejection of claim 5 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.


Ground 31: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 31: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                                   Page 123
95/000,121
Art Unit: 3993

Ground 31: Examiner's Response to the Argument and Comments

      Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained. See "Ground 3: Examiner's Response to the Argument and Comments,"

*supra.*


**Proposed Third Party Requester Rejection: Ground #32.**

      The requester submits on page 47 of the request that claim 5 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

      Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

      Below is a claim chart identifying the claim limitations and where Nesbitt or Nesbitt

mentioning Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 5 | Nesbitt/Nesbitt mentioning Molitor '637 |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt: Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I.<br><br>Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane |

Application/Control Number:                                    Page 124
95/000,121
Art Unit: 3993

| | identified as ESTANE 58133. |
| | |
| | **ESTANE 58133 has a Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | |
| | See also below for Shore D hardness of 64 or less limitation explanation. |

As stated above, Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the mechanical properties of the materials used as a golf-ball cover layer were more critical to golf ball performance than the actual materials themselves, see Exhibit G at 334. Thus, because the actual chemical composition of the material is not critical to the practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to substitute one material for another material if both materials had substantially the same mechanical properties.

This rejection of claim 5 based on Nesbitt in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 32: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Application/Control Number:                                      Page 125
95/000,121
Art Unit: 3993

Ground 32: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 32: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 4:  Examiner's Response to the Argument and

Comments," *supra.*


**Proposed Third Party Requester Rejection: Ground #33.**

The requester submits on page 48 that claim 5 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.

Pat. No. 4,274,637 (Molitor '637).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 5 | Proudfit |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

Application/Control Number:                                    Page 126
95/000,121
Art Unit: 3993

   Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and

outer layer) with the layers within the range of claimed thicknesses each layer made from a

material having the mechanical properties substantially similar to the claimed mechanical

properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical

properties of the claimed invention. However, Proudfit either incorporates by reference these

mechanical and chemical properties and/or the materials used within the Proudfit golf ball

inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by

reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-

43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from

about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using

blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation

for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN

8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by

weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I, SURLYN 8940

has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see Exhibit I.

Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit discloses the outer

layer being a blend of balata. An example of the blend is disclosed in Table 7 reproduced below.

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DIAcrylate | 35.00 |
| Peroxide (Varox 250 XL) | 2.50 |
| Total | 160.00 |

Application/Control Number:                              Page 127
95/000,121
Art Unit: 3993

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

     This rejection of claim 5 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 33: Patent Owner's Argument

     Patent Owner does not specifically argue this rejection.


Ground 33: Third Party Requester's Comments

     Third Party Requester does not specifically counter argue this rejection.


Ground 33: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained. See "Ground 5: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #34.**

Application/Control Number:                                    Page 128
95/000,121
Art Unit: 3993

The requester submits on page 48 that claim 5 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No.

5,334,673 (Wu).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 5 | Proudfit |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | "...an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and

outer layer) with the layers within the range of claimed thicknesses each layer made from a

material having the mechanical properties substantially similar to the claimed mechanical

properties.  What Proudfit lacks in clearly disclosing are the particular mechanical and chemical

properties of the claimed invention.  However, Proudfit either incorporates by reference these

mechanical and chemical properties and/or the materials used within the Proudfit golf ball

inherently have these mechanical and chemical properties.  For instance, Proudfit incorporates by

reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-

43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from

about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60).  If Proudfit discloses using

Application/Control Number:                                          Page 129
95/000,121
Art Unit: 3993

blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation

for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN

8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by

weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I, SURLYN 8940

has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see Exhibit I.

Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit discloses the outer

layer being a blend of balata. An example of the blend is disclosed in Table 7 reproduced below.

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

This rejection of claim 5 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 34: Patent Owner's Argument

Application/Control Number:                          Page 130
95/000,121
Art Unit: 3993

Patent Owner does not specifically argue this rejection.


Ground 34: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 34: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained. See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra*.


**Proposed Third Party Requester Rejection: Ground #35.**

The requester submits on page 48 that claim 5 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S.

Pat. No. 4,674,751 (Molitor '751).

Claim 5 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 5 | Proudfit |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | "...an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a |

Application/Control Number:                          Page 131
95/000,121
Art Unit: 3993

| | Shore D hardness of less than 64, see the reasoning below. |
|---|---|

Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and outer layer) with the layers within the range of claimed thicknesses each layer made from a material having the mechanical properties substantially similar to the claimed mechanical properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical properties of the claimed invention. However, Proudfit either incorporates by reference these mechanical and chemical properties and/or the materials used within the Proudfit golf ball inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I, SURLYN 8940 has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see Exhibit I. Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit discloses the outer layer being a blend of balata. An example of the blend is disclosed in Table 7 reproduced below.

**TABLE 7**

| Composition of Outer Layer (Parts by Weight) | |
| --- | --- |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's outer layer cover inherently has a Shore hardness of less than 64.

In addition to Proudfit showing, Molitor '751 teaches that:

It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core **a cover having a shore C hardness less than 85**, preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of the invention is made of a composition comprising a blend of (1) a **thermoplastic urethane having a shore A hardness** less than 95 and (2) an ionomer having a shore D hardness greater than 55. The ionomer comprises olefinic groups having two to four carbon atoms copolymerized with acrylic or methacrylic acid groups and cross-linked with metal ions, preferably sodium or zinc ions. **The primary components of the blended cover are set at a weight ratio so as to result in a cover material after molding having a shore C hardness within the range of 70 to 85, preferably 72 to 76**. Preferably, the urethane component of the cover material has a tensile strength greater than 2500 psi and an elongation at break greater than 250%. A preferred cover material comprises about 8 parts of the thermoplastic urethane and between 1 and 4 parts ionomer. Preferably, the cover is no greater than 0.060 inch thick. Thinner covers appear to maximize the short iron playability characteristics of the balls.

(Molitor '751, col. 33-57 (emphasis added)). Thus, Molitor '751 teaches having a outer cover layer with a Shore C hardness less than 85 and preferably between 72 and 76. Moreover,

Application/Control Number:                                   Page 133
95/000,121
Art Unit: 3993

Molitor '751 teaches what golf balls are included in the definition of "two-piece" ball within its

instant specification.

> The phrase "two-piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer
> beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to
> Nesbitt, and other balls having non-wound cores.**

Molitor '751, col. 3, ll. 7-12 (emphasis added)). Proudfit, likewise, teaches the two-piece golf

balls can fit within this definition.

> FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a
> cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer
> resins and a relatively soft outer layer 14 of polymeric material.

(Proudfit, col. 7, ll. 21-24).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of Shore D

hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore C value

to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance a polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

Application/Control Number:                                    Page 134
95/000,121
Art Unit: 3993

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

This rejection of claim 5 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 35: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 35: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 35: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 5 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'751 is maintained. See "Ground 7: Examiner's Response to the Argument and

Comments," *supra*.

Application/Control Number:                                    Page 135
95/000,121
Art Unit: 3993

<u>Re. Claim 6</u>

**Proposed Third Party Requester Rejection: Ground #36.**

The requester submits on pages 48-49 that claim 6 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Claim 6 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating

by reference Molitor '637) discloses the claim limitations.

| Claim 6 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 6 based on Nesbitt (incorporating by reference Molitor '637) was

proposed by the third party requester in the request for reexamination and <u>is being adopted</u>

essentially as proposed in the request.

Ground 36: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 36: Third Party Requester's Comments

Application/Control Number:                                    Page 136
95/000,121
Art Unit: 3993

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."


Ground 36: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #37.**

In the alternative, the requester submits on page 49 that claim 6 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 6 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

Application/Control Number:                          Page 137
95/000,121
Art Unit: 3993

This rejection of claim 6 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 37: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 37: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 37: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 6 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #38.**

The requester submits on page 49 of the request that claim 6 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 6 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Application/Control Number:                          Page 138
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 6 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.

Ground 38: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 38: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 38: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 6 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

supra.

Application/Control Number:                                              Page 139
95/000,121
Art Unit: 3993


**Proposed Third Party Requester Rejection: Ground #39.**

The requester submits on page 49 of the request that claim 6 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 6 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 6 | Nesbitt |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 6 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and <u>is being adopted</u> essentially as

proposed in the request.


Ground 39: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 39: Third Party Requester's Comments

Application/Control Number:                                    Page 140
95/000,121
Art Unit: 3993

　　　Third Party Requester does not specifically counter argue this rejection.


Ground 39: Examiner's Response to the Argument and Comments

　　　Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 6 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.  See "Ground 4:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejections: Ground #40-42.**

　　　The requester submits on page 49 that claim 6 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.

Pat. No. 4,274,637 (Molitor '637); Wu, U.S. Pat. No. 5,334,673 (Wu); or Molitor et al., U.S. Pat.

No. 4,674,751 (Molitor '751).

　　　**These rejections are not adopted for the reasons given in below.**

　　　Claim 6 requires the outer layer thickness to be in the range of about 0.01 to about 0.05

inches.  Proudfit's preferred outer layer thickness embodiment is 0.0525 inches thick.  See

Proudfit, col. 7, ll. 40-46.  Therefore, Proudfit's preferred embodiment is outside the claimed

range.  Further, the difference between Proudfit's preferred embodiment and the claimed

invention's upper range limit is 0.0025 inches or twenty-five thousandths of an inch.  This

difference equates to approximately a factor of 4.  The requester admits that it is not the chemical

but mechanical properties of the materials used in making golf balls which is important to those

skilled in the art.  One of the mechanical properties in constructing a golf ball with materials it

Application/Control Number:                                    Page 141
95/000,121
Art Unit: 3993

the thickness to make a given layer. For these reasons, one skilled in the art would not find

obvious the claimed invention of claim when viewing Proudfit with Molitor '637, Wu or Molitor

'751. Note that Molitor '637, Wu or Molitor '751 lack curing the deficiencies of Proudfit with

respect to the instant claimed invention.


Re. Claim 7

**Proposed Third Party Requester Rejection: Ground #43.**

The requester submits on page 50 that claim 7 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Claim 7 is rejected under 35 U.S.C. § 102(b) as being unpatentable over Nesbitt (incorporating

by reference Molitor '637).

Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating

by reference Molitor '637) discloses the claim limitations.

| Claim 7 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

Application/Control Number:                                    Page 142
95/000,121
Art Unit: 3993

This rejection of claim 7 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 43: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 43: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."


Ground 43: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #44.**

In the alternative, the requester submits on page 50 that claim 7 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Application/Control Number:                               Page 143
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 7 | Nesbitt |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 7 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 44: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 44: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 44: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

Application/Control Number:                                    Page 144
95/000,121
Art Unit: 3993

'637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #45.**

The requester submits on page 50 of the request that claim 7 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 7 | Nesbitt |
|---------|---------|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 7 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and <u>is being adopted</u> essentially as proposed in the

request.


Ground 45: Patent Owner's Argument

Application/Control Number:                                    Page 145
95/000,121
Art Unit: 3993

Patent Owner does not specifically argue this rejection.


Ground 45: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 45: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

*supra.*


**Proposed Third Party Requester Rejection: Ground #46.**

The requester submits on page 50 of the request that claim 7 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 7 | Nesbitt |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a | "The thickness of the outer layer or cover 16 of soft, low |
| thickness of from about 0.03 to | flexural modulus resin such and Surlyn type 1855, may be in |

Application/Control Number:                          Page 146
95/000,121
Art Unit: 3993

| about 0.06 inches. | the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |
|---|---|

This rejection of claim 4 based on Nesbitt in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 46: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 46: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 46: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 7 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained. See "Ground 4: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #47.**

Application/Control Number:                          Page 147
95/000,121
Art Unit: 3993

The requester submits on pages 51-52 that claim 7 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 7 | Proudfit |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..." (Proudfit, col. 7, ll. 40-46.) |

This rejection of claim 4 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 47: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 47: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 47: Examiner's Response to the Argument and Comments

Application/Control Number:                                    Page 148
95/000,121
Art Unit: 3993

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #48.**

The requester submits on pages 51-52 that claim 7 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S.

Pat. No. 5,334,673 (Wu).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 7 | Proudfit |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..." (Proudfit, col. 7, ll. 40-46.) |

This rejection of claim 7 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 48: Patent Owner's Argument

Application/Control Number:                                     Page 149
95/000,121
Art Unit: 3993

Patent Owner does not specifically argue this rejection.

Ground 48: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 48: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the
rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is
maintained. See "Ground 6: Examiner's Response to the Argument and Comments,"
*supra*.

**Proposed Third Party Requester Rejection: Ground #49.**

The requester submits on pages 51-52 that claim 7 is unpatentable under 35 U.S.C. §
103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et
al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 7 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view
of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,
teaches or suggests the claim limitations.

| Claim 7 | Proudfit |
|---|---|
| The golf ball of claim 4 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of |

| about 0.06 inches. | 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..."  (Proudfit, col. 7, ll. 40-46.) |
|---|---|

This rejection of claim 7 based on Proudfit in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 49: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 49: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 49: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 7 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '751 is maintained.  See "Ground 7:  Examiner's Response to the Argument and Comments," *supra*.

Re. Claim 8

**Proposed Third Party Requester Rejection: Ground #50.**

The requester submits on pages 53-55 that claim 8 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

Application/Control Number:                          Page 151
95/000,121
Art Unit: 3993

**This rejection is _adopted_ in this office action.**

Claim 8 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations Nesbitt (incorporating by

reference Molitor '637) discloses.

| Claim 8 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core: | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of about 60 or more, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>**Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN |

Application/Control Number:                                    Page 152
95/000,121
Art Unit: 3993

|  | 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
|---|---|
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer disposed about said inner cover layer, | "An outer layer, ply, lamination or cover 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt incorporating by reference Molitor '637 describe a number

of compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

Application/Control Number:                                    Page 153
95/000,121
Art Unit: 3993

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made from a

thermoplastic polyurethane identified as ESTANE 58133. A review of the scientific literature

yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE

58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range claimed of Shore

D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including

> copolymers of polyolefins; (3) polyurethanes such as are prepared from polyols and organic polyisocyanates; (4) polyamides such as polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene styrene copolymer; (6) acrylic resins as exemplified by the copolymers of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic rubbers such as the urethanes, copolymers of ethylene and propylene, and transpolyisoprene, block copolymers of styrene and cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the mechanical properties of the materials used as a golf-ball cover layer were more critical to golf ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 8 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 50: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 50: Third Party Requester's Comments

Application/Control Number:                                    Page 155
95/000,121
Art Unit: 3993

    Third Party Requester's arguments for this claim are the same as given *supra* at "Ground

1: Third Party Requester's Comments."

Ground 50: Examiner's Response to the Argument and Comments

    Upon review, the Examiner agrees with the arguments of the Third Party Requester and

adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #51.**

    In the alternative, the requester submits on pages 53-55 that claim 8 is unpatentable under

35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

    Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

    Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 8 | Nesbitt (primary) with Molitor '637 (teaching) |
| --- | --- |
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core: | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere. (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34- |

Application/Control Number:                         Page 156
95/000,121
Art Unit: 3993

| | 37). |
|---|---|
| said inner cover layer having a Shore D hardness of about 60 or more, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer disposed about said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |

Application/Control Number:                                    Page 157
95/000,121
Art Unit: 3993

| | Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |
|---|---|

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14.  Of particular interest in this case are

Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557.  The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981.  The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid."  '981 Pat., col. 3, ll. 59-60.  Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi."  See '873

Patent, col. 2, ll. 43-50.  Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph.  Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid.  Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi.  This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

Application/Control Number:                               Page 158
95/000,121
Art Unit: 3993

Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made from a

thermoplastic polyurethane identified as ESTANE 58133. A review of the scientific literature

yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE

58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range claimed of Shore

D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

Application/Control Number:                  .                    Page 159
95/000,121
Art Unit: 3993

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

Thus, because it appears that to one of ordinary skill in the art at the time the invention

was created that the actual chemical composition of the material is not critical to the practice of

the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one

of ordinary skill in the art at the time the invention was made would find it obvious to substitute

one material for another material if both materials had substantially the same mechanical

properties.

This rejection of claim 8 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 51: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 51: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 51: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 8 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

Application/Control Number:                                     Page 160
95/000,121
Art Unit: 3993

'637 is maintained.   See "Ground 2: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #52.**

The requester submits on pages 55-57 of the request that claim 8 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations.   As reported in the Order granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane materials for the use as an outer

layer.

| Claim 8 | Nesbitt mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core: | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a | Nesbitt: "[I]nner cover 14 of molded hard, high flexural |

Application/Control Number:                          Page 161
95/000,121
Art Unit: 3993

| | |
|---|---|
| Shore D hardness of about 60 or more, | modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines 36-38.)<br><br>Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 46-48.)<br><br>Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | See below. |
| an outer cover layer disposed about said inner cover layer, | "An outer layer, ply, lamination or cover 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60).<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>Exhibit J: ESTANE 58133 is a Polyester-Type Thermoplastic Polyurethane (TPU Compound) which is a |

Application/Control Number:                          Page 162
95/000,121
Art Unit: 3993

| | non-ionomeric thermoplastic elastomer. |
| | |
| | **Wu**: "[t]he present invention is a golf ball product made from a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents or difunctional glycols. The term "golf ball product" as used in the specification and claims means a cover, a core, a center or a one-piece golf ball. The cover of a golf ball made in accordance with the present invention has been found to have good shear resistance, cut resistance, durability and resiliency. **Preferably, the polyurethane composition of the present invention is used to make the cover of a golf ball.**" (Wu, col. 2, ll. 33-44). |

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Application/Control Number:                          Page 163
95/000,121
Art Unit: 3993

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular

polyurethane materials for the use as an outer layer. Wu teaches that polyurethane was being

used as the outer layer of golf ball *circa* 1993. Wu further teaches in col. 1:36-46 that SURLYN

covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to

such sensations and polyurethane covered golf balls can be made to have a similar "click" and

"feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will

have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D

hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This

teaching of Shore D hardness is directed to an intermediate curing step product prior to the final

molding process to finish the golf ball. Exhibit C demonstrates the actual finished golf ball

product having the cover layer that Wu teaches within its disclosure. Exhibit C teaches that the

golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673

Patent teaches the cover sock of the Exhibit C finished golf ball. Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness. All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64). Because it has been admitted by the

Application/Control Number:                                Page 164
95/000,121
Art Unit: 3993

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

This rejection of claim 8 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.


Ground 52: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 52: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 52: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 8 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

Application/Control Number:                                   Page 165
95/000,121
Art Unit: 3993

maintained.   See "Ground 3: Examiner's Response to the Argument and Comments,"

*supra.*


**Proposed Third Party Requester Rejection: Ground #53.**

The requester submits on pages 57-59 of the request that claim 8 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.  As reported in the Order granting reexamination, it

needs to be correctly stated on the record that Nesbitt and Molitor '637 which is mentioned in

Nesbitt teach the use of particular polyurethane materials for the use as an outer layer.

| Claim 8 | Nesbitt mentioning Molitor '637 |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract; and FIGS. 1 & 2) |
| a core: | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises **a solid center or core** formed as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere.  (Nesbitt, col. 2, ll. 31-34). |
| an inner cover layer disposed on said core, | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material...." (Nesbitt , col. 2, ll. 34-37). |
| said inner cover layer having a Shore D hardness of about 60 or more, | Nesbitt: "[I]nner cover 14 of molded hard, high flexural modulus resinous material such as type 1605 Surlyn® marketed by E.I DuPont de Nemours." (Nesbitt, col. 2, lines |

Application/Control Number:
95/000,121
Art Unit: 3993

Page 166

| | |
|---|---|
| | 36-38.) |
| | Per the '156 Patent: "Type 1605 Surlyn® (now designated Surlyn® 8940)." ('156 patent, col. 2, lines 54-60.) |
| | Exhibit I: DuPont Surlyn® Product Information: Surlyn® 8940 has a Shore D hardness of 65. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |
| | **Molitor '637**: Molitor teaches, in examples 1-7, cover materials including a blend of two ionomer resins: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34). |
| having a modulus of from about 15,000 to about 70,000 psi; and | |
| an outer cover layer disposed about said inner cover layer, | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (Nesbitt, col. 3, lines 19-23.) |
| comprising a polyurethane material. | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |
| | **Molitor '637**: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |
| | Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

Application/Control Number:                                    Page 167
95/000,121
Art Unit: 3993

As shown above in the claim chart, Nesbitt mentioning Molitor '637 suggests the use of a

soft outer cover layer including a polyurethane material.  In an analogous golf ball, Molitor '751

teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having playability
> properties similar to wound, balata-covered balls is to provide about an inner resilient molded core
> **a cover having a shore C hardness less than 85**, preferably 70-80, and most preferably 72-76.
> The novel **cover of the golf ball** of the invention is made of a composition comprising a blend of
> **(1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer**
> **having a shore D hardness greater than 55.**

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

> The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core
> and a cover, but also includes balls having a separate solid layer beneath the cover as
> disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls have non-wound
> cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76.  As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73.  Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material.  How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

Application/Control Number:                               Page 168
95/000,121
Art Unit: 3993

with a given range, in this instance Shore C, for given materials, in this instance polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

As stated in the request spanning page 58 and page 59

It would have been obvious to one of ordinary skill in the art at the time of the
invention to substitute the soft outer cover layer of Nesbitt and replace it with an
outer cover layer made of the soft polyurethane material taught by Molitor '751 to
provide a golf ball that includes "playability properties as good or better than
balata-covered wound balls but are significantly more durable," and "have better
wood playability properties than conventional two-piece balls, and permit
experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, ll. 61-68)

As mentioned above, Nesbitt references Molitor '637 as describing an number of

compositions suitable for the inner cover layer 14. Of particular interest in this case are

Examples 1-7 within Molitor '637. Examples 1-7 use a ratio of SURLYN 1605 and SURLYN

1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No.

4,690,981. The preferred composition in the '981 Patent has "from about 5[%] to about 15% by

weight of unsaturated carboxylic acid." '981 Pat., col. 3, ll. 59-60. Those of ordinary skill in the

art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN

1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-

Application/Control Number:                                    Page 169
95/000,121
Art Unit: 3993

15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the Sullivan

'873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's

first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent

methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See '873

Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more

than 16% by weight of alpha, beta-unsaturated carboxylic acid. Moreover, as stated above, it has

been identified that one resin in Nesbitt has a flexural modulus of 51,000 psi. This teaching of

flexural modulus falls within the range claimed (15,000 psi to 70,000 psi).

> As stated in the request spanning pages 41-42
>
> It would have been obvious to one of ordinary skill in the art at the time of the
> invention to substitute the soft non-ionomeric polymeric outer cover layer
> incorporated by Nesbitt and replace it with an outer cover layer made of the soft
> polyurethane material taught by Molitor '751 to provide a golf ball that includes
> "playability properties as good or better than balata-covered wound balls but are
> significantly more durable," and "have better wood playability properties than
> conventional two-piece balls, and permit experienced golfers to apply spin so as
> to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2,
> ll. 61-68)

Moreover, because it appears that to one of ordinary skill in the art at the time the

invention was created that the actual chemical composition of the material is not critical to the

practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a

golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to

Application/Control Number:                                    Page 170
95/000,121
Art Unit: 3993

substitute one material for another material if both materials had substantially the same

mechanical properties.

This rejection of claim 8 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 53: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 53: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 53: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 8 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 4:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #54.**

The requester submits on pages 59-62 that claim 8 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al. U.S. Pat. No. 4,274,637 (Molitor '637).

Application/Control Number:                                    Page 171
95/000,121
Art Unit: 3993

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 8 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core: | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of about 60 or more, | See below with respect to Shore D hardness. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>TABLE 6<br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30) |

Application/Control Number:
95/000,121
Art Unit: 3993

Page 172

| | |
|---|---|
| | SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (col. 6, lines 6-7.)<br><br>The composition of the inner cover layer is described in Table 6.<br><br>TABLE 6<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium Surlyn 8940 | 75% |<br>| Zinc Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| an outer cover layer disposed about said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |

Application/Control Number:                          Page 173
95/000,121
Art Unit: 3993

| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As pointed out in the request on pages 61 and 62:

While Proudfit may not expressly disclose the use of polyurethane as an outer cover material, it would have been obvious given that "[t]he patent literature is replete with proposed cover formulations seeking to improve upon the balata and ionomer covers [including] [p]olyurethane ...." (See Molitor '751, col. 2, lines 9-12.) Soft polyurethane materials had been known to be a substitute for balata covers for decades prior to the filing of the '130 patent.

For example, Molitor '637 discloses the use of polyurethane material as a soft polymeric material that may be used as an outer cover layer of a golf ball. (See Molitor '637, col. 5, lines 33-41; col. 18, Examples 16 and 17.) One exemplary polyurethane material used by Molitor as an outer cover material includes Estane 58133.

As was readily appreciated by those skilled in the art--including the inventor of the '130 patent--the types of materials used in a golf ball are not as critical to a golf ball's playability as are the mechanical properties of those materials. (See Exhibit G at 334.) The Estane 58133 is a relatively soft material and has a Shore D hardness of 55 and is also a low flexural modulus material having a modulus of about 25,000 psi. (See Exhibit J.) Proudfit's outer cover layer is also relatively soft and has a flexural modulus between 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31.) Due to the similarities between these two materials, the ordinarily skilled artisan would have recognized the substitutability of these two materials as well as the benefits of using polyurethane as an outer cover material.

On page 62, the request concludes:

It would have been obvious to one of ordinary skill in the art at the time of invention to modify the balata-based outer cover layer of Proudfit to include the Estane polyurethane outer cover layer material of Molitor '637 because such was a well known substitute to balata and gives a number of advantages over balata as would have been readily appreciated by those skilled in the art. These advantages include: (1) improved processability; (2) improved durability when compared to balata; (3) cost-effectiveness when compared to balata; and (4) having a good "click" and "feel." .... All of this would have led one of ordinary skill in the art to replace the soft balata outer cover layer of

Application/Control Number:                                    Page 174
95/000,121
Art Unit: 3993

Proudfit with the soft polyurethane outer cover layer of Molitor '637 at the time of the alleged invention.

This rejection of claim 8 based on Proudfit in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 54: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 54: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 54: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 8 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #55.**

The requester submits on pages 62-64 that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No. 5,334,673 (Wu).

Application/Control Number:                                Page 175
95/000,121
Art Unit: 3993

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 8 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core: | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of about 60 or more, | See below with respect to Shore D hardness. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid and | "The composition of the inner cover layer is described in Table 6."<br><br>**TABLE 6**<br><br>Composition of Inner Layer of Cover (Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium - Surlyn 8940 | 75% |<br>| Zinc - Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30) |

Application/Control Number:                                 Page 176
95/000,121
Art Unit: 3993

| | |
|---|---|
| | SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (col. 6, lines 6-7.)<br><br>The composition of the inner cover layer is described in Table 6.<br><br>TABLE 6<br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.) |
| an outer cover layer disposed about said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |

Application/Control Number:
95/000,121
Art Unit: 3993

Page 177

| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
|---|---|
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As pointed out in the request on pages 62 and 63:

... Proudfit teaches a golf ball having a two-piece cover including a hard, ionomeric inner cover layer and a soft balata outer cover layer. While Proudfit may not disclose the use of a polyurethane material as the outer cover layer of a golf ball, it would have been obvious to one of ordinary skill in the art at the time of invention to modify the soft balata outer cover layer of Proudfit to include the soft polyurethane material taught by Wu. Wu teaches that: "The problem with SURLYN®-covered golf balls, however, is that they lack the "click" and "feel" which golfers had become accustomed to with balata. "Click" is the sound when the ball is hit by a golf club and "feel" is the overall sensation imparted to the golfer when the ball is hit. It has been proposed to employ polyurethane as a cover stock for golf balls because, like SURLYN®, it has a relatively low price compared to balata and provides superior cut resistance over balata. However, unlike SURLYN®-covered golf balls, polyurethane-covered golf balls can be made to have the "click" and 'feel" of balata. (Wu at col. 1, lines 36-46.) As the inventor of the '130 patent had indicated in a 1994 publication, golf ball designers understood that the mechanical properties of the layers impacted the performance of the golf ball more than the materials themselves. (Exhibit G at 334.) Additionally, Wu's polyurethane material inherently has a flexural modulus of about 23,000 psi as measured in accordance with ASTM standards. (Decl. of Jeff Dalton at ¶ 7.) Proudfit's outer cover layer material has a flexural modulus of between about 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31 .) Thus, one of ordinary skill in the art would have appreciated that using Wu's polyurethane as Proudfit's outer cover layer would have provided similar playability characteristics as well as numerous advantages including, for example, durability.

Based on Wu's teachings, one of ordinary skill in the art would have recognized the substitutability of soft polyurethane for soft balata-based materials and the advantages of making such a substitution. These advantages include (1) low price compared to balata; (2) better cut resistance when compared to balata; and (3) a "click" and "feel" that is similar to balata. Moreover, the replacing the balata-material taught by Proudfit would have been obvious to those skilled in the art prior to November 9, 1995 because before that time, the Titleist Professional™ golf ball, which had used Wu's polyurethane material, had replaced balata-covered balls as the market leader. (See Exhibit C; see also Decl. of Jeffery L. Dalton at ¶¶ 3-4.)

Application/Control Number:                                         Page 178
95/000,121
Art Unit: 3993

On page 64 the request concludes with:

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the
alleged invention to modify Proudfit's golf ball by replacing the soft balata outer cover
layer with an outer cover layer made of soft polyurethane material because polyurethane
provides numerous advantages over balata while exhibiting the "click" and "feel" of
balata.

This rejection of claim 8 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 55: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 55: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.


Ground 55: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 8 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained.   See "Ground 6:  Examiner's Response to the Argument and Comments,"

*supra*.


**Proposed Third Party Requester Rejection: Ground #56.**

Application/Control Number:                          Page 179
95/000,121
Art Unit: 3993

The requester submits on pages 64-65 that claim 8 is unpatentable under 35 U.S.C. §

103(a) as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et

al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claim 8 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 8 | Proudfit |
|---|---|
| A golf ball comprising: | "This **invention relates to golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12) |
| a core: | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core 11** and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24)<br><br>"Two specific solid core compositions used with the new two-layer cover had the composition describe in Table 1. One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55) |
| an inner cover layer disposed on said core, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins** and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24) |
| said inner cover layer having a Shore D hardness of about 60 or more, | See below with respect to Shore D hardness. |
| said inner cover layer comprising an ionomeric resin including no more than 16% by weight of an alpha, beta-unsaturated | "The composition of the inner cover layer is described in Table 6." |

Application/Control Number:                                  Page 180
95/000,121
Art Unit: 3993

| carboxylic acid and |  |
| --- | --- |
| | (Proudfit, col. 8, ll. 22-30)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight."** ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| having a modulus of from about 15,000 to about 70,000 psi; and | "The standard resins have a flexural modulus in the range of about 30,000 to about 55,000 psi as measured by ATM Method D-790. (Standard resins are referred to as "hard Surlyns" in U.S. Patent No. 4,884,814.)" (col. 5, line 66-col. 6, line 1 .)<br><br>"Specific standard Surlyn resins which can be used in the inner layer include 8940 (sodium), 9910 (zinc) ...." (col. 6, lines 6-7.)<br><br>The composition of the inner cover layer is described in Table 6. |

Application/Control Number:                          Page 181
95/000,121
Art Unit: 3993

| | TABLE 6 |
|---|---|
| | Composition of Inner Layer of Cover (Parts by Weight) |
| | Ionomer Type ... Blend Ratio |
| | Sodium- Surlyn 8940 ... 75% |
| | Zinc- Surlyn 9910 ... 25% |
| | (Proudfit, col. 8, ll. 22-30.) |
| an outer cover layer disposed about said inner cover layer, | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a **cover 12** which comprises a relatively hard inner layer 13 of one or more ionomer resins **and a relatively soft outer layer 14 of polymeric material.**" (Proudfit, col. 7, ll. 21-24) |
| said outer cover layer having a thickness of from about 0.01 to about 0.07 inches, and | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch...." (Proudfit, col. 7, ll. 40-46) |
| comprising a polyurethane material. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) |

As pointed out in the request on pages 64 and 65:

...Proudfit teaches a golf ball having a two-piece cover including a hard, ionomeric inner cover layer and a soft balata outer cover layer. While Proudfit may not disclose the use of a polyurethane material as the outer cover layer for a golf ball, it would have been obvious to one of ordinary skill in the art at the time of invention to modify Proudfit's golf ball by replacing the soft balata outer cover layer with the soft polyurethane outer cover layer taught by Molitor '751.

Molitor '751 teaches that: It has now been discovered that a key to manufacturing a two-piece ball having playability properties similar to wound, balata-covered balls is to provide about an inner resilient molded core a cover having a shore C hardness less than 85, preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of the invention is made of a composition comprising a blend of (1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness greater than 55. (Molitor '751, col. 2, lines 33-49.) In explaining what a "two-piece" golf ball is, the Molitor '751 patent explains that: The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core and a cover, but also includes balls having a solid layer beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and Other balls having non-wound cores. (Molitor '751, col. 2, lines 7-12.)

Proudfit teaches a "two-piece" golf ball that fits within this definition. Molitor '751 explains that the advantages of using a cover layer including a soft polyurethane material

Application/Control Number:                                        Page 182
95/000,121
Art Unit: 3993

on a two-piece golf ball, such as the golf ball of Proudfit, include "playability properties
as good or better than balata-covered wound balls but are significantly more durable,"
and "have better wood playability properties than conventional two- piece balls, and
permit experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, lines 61-68.)

Molitor expresses the hardness of the cover material as a Shore C hardness of less
than 85, preferably 70 to 85 and most preferably 72 to 76. (Molitor '751, col. 4, lines 21-
25.) Based on Callaway's own measurements, a Shore C hardness of 73 is equal to a
Shore D hardness of 47. (See U.S. Patent No. 6,905,648, Table 19 (Exhibit L).) A cover
material having a Shore C hardness of between 72 and 76 will inherently have a Shore D
hardness of less than 64.

On page 65 the request concludes:

Therefore, it would have been obvious to one of ordinary skill in the art at the time of the
invention to replace the soft balata outer cover layer of Proudfit with the soft outer cover
layer including a soft polyurethane material as taught by Molitor '751 to provide golf
balls that have "playability properties as good or better than balata-covered wound balls
but are significantly more durable," and "have better wood playability properties than
conventional two-piece balls, and permit experienced golfers to apply spin so as to fade
or draw a shot" while having improved puttability. (Molitor '751, col. 2, lines 61-68.)

This rejection of claim 8 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 56: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 56: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 56: Examiner's Response to the Argument and Comments

Application/Control Number:                                    Page 183
95/000,121
Art Unit: 3993

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 8 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'751 is maintained.   See "Ground 7:  Examiner's Response to the Argument and

Comments," *supra*.

### Re. Claim 9

**Proposed Third Party Requester Rejection: Ground #57.**

The requester submits on page 66 that claim 9 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is adopted in this office action.**

Claim 9 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations where Nesbitt incorporating by

reference Molitor '637) disclose the claim limitations.

| Claim 9 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I.<br><br>Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention."  (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637:  In examples 16 and 17 teaches an |

Application/Control Number:                                    Page 184
95/000,121
Art Unit: 3993

| | outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. <br><br> ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) <br><br> See also below for Shore D hardness of 64 or less limitation explanation. |
|---|---|

As stated above, Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the mechanical properties of the materials used as a golf-ball cover layer were more critical to golf ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 9 based on Nesbitt (incorporating by reference Molitor '637) was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 57: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 57: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Application/Control Number: 95/000,121
Art Unit: 3993

Page 185

Ground 57: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #58.**

In the alternative, the requester submits on page 66 that claim 9 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 9 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt and Nesbitt mentioning Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 9 | Nesbitt/Nesbitt mentioning Molitor |
|---------|-----------------------------------|
| The golf ball of claim 8 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I.<br><br>Nesbitt:  "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637:  In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |

Application/Control Number: 95/000,121
Art Unit: 3993

Page 186

| | ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | See also below for Shore D hardness of 64 or less limitation explanation. |

As stated above, Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover, as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the mechanical properties of the materials used as a golf-ball cover layer were more critical to golf ball performance than the actual materials themselves, see Exhibit G at 334. Thus, because the actual chemical composition of the material is not critical to the practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to substitute one material for another material if both materials had substantially the same mechanical properties.

This rejection of claim 9 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 58: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 58: Third Party Requester's Comments

Application/Control Number:                                    Page 187
95/000,121
Art Unit: 3993

Third Party Requester does not specifically counter argue this rejection.

Ground 58: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the
rejection of claim 9 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor
'637 is maintained.   See "Ground 2:  Examiner's Response to the Argument and
Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #59.**

The requester submits on page 66 of the request that claim 9 is unpatentable under 35
U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,
U.S. Pat. No. 5,334,673 (Wu).

Claim 9 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt
mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt,
Nesbitt mentioning Molitor '637 or Wu discloses, teaches or suggests the claim limitations.

| Claim 9 | Nesbitt/Nesbitt mentioning Molitor '637 or Wu |
|---|---|
| The golf ball of claim 8 wherein | See above |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I.<br><br>Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of |

Application/Control Number:                          Page 188
95/000,121
Art Unit: 3993

| | |
|---|---|
| | this invention." (Nesbitt, col. 3, ll. 54-60.) |
| | Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |
| | ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | **Wu**: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66). |
| | **Wu**: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, inter alia, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention. More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38). |
| | See also below for Shore D hardness of 64 or less limitation explanation |

Wu further teaches in col. 1:36-46 that SURLYN covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to such sensations and polyurethane covered golf balls can be made to have a similar "click" and "feel" of balata. Wu also at least teaches that polyurethanes made according to its invention will have Shore D hardness directly

Application/Control Number:                          Page 189
95/000,121
Art Unit: 3993

proportional to the degree of cure of the cover; and this Shore D hardness ranges from 10 to 30,

preferably 12 to 20 on the Shore D scale, see col. 6:26-38. This teaching of Shore D hardness is

directed to an intermediate curing step product prior to the final molding process to finish the

golf ball. Exhibit C demonstrates the actual finished golf ball product having the cover layer that

Wu teaches within its disclosure. Exhibit C teaches that the golf ball taught therein is covered by

the following patents: 4,783,078; 4,846,910; 4,858,923; 4,904,320; 4,915,390; 5,007,594;

5,080,367; 5,133,509; **5,334,673**; and D339,074. The '673 Patent teaches the cover sock of the

Exhibit C finished golf ball. Exhibit C teaches that the golf ball taught therein has a cover

material made from an "elastomer", having a thickness of .050", and 58 Shore D hardness. All

three properties are within the range of mechanical properties of the claim invention

(polyurethane is an elastomer, cover layer thickness ranges from 0.010 to 0.070 inches and the

Shore D hardness is less that 64). Because it has been admitted by the inventor of the Sullivan

'893 patent that the particular chemical properties of the materials (the chemical composition)

used in the construction of a golf ball lack criticality as compared to the mechanical properties

(the Shore D hardness, flexural modulus, layer thickness) of those compounds used for

constructing the different layers (Exhibit G at 334), one of ordinary skill in the art at the time the

invention was made would find it obvious to incorporate the teachings of Wu which inherently

include the teachings of Shore hardness for the fully cured cover layer as taught in Exhibit C as

obvious equivalent materials in order to achieve the same end result of providing a cover layer

that has the same "click" and "feel" of a balata cover which the extra durability of an elastomeric

material.

Application/Control Number:                          Page 190
95/000,121
Art Unit: 3993

This rejection of claim 9 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.

Ground 59: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 59: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 59: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 9 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

*supra*.

**Proposed Third Party Requester Rejection: Ground #60.**

The requester submits on page 66 of the request that claim 9 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 9 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Application/Control Number:                                    Page 191
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt or Nesbitt

mentioning Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 9 | Nesbitt/Nesbitt mentioning Molitor '637 |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | Nesbitt:  Nesbitt teaches an outer cover layer made of Surlyn 1855 (now Surlyn 9020) that has a Shore D hardness of 55, see Exhibit I. |
| | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention."  (Nesbitt, col. 3, ll. 54-60.) |
| | Molitor '637:  In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. |
| | ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | See also below for Shore D·hardness of 64 or less limitation explanation. |

As stated above, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020).  This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN".  Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.  Thus, because the

actual chemical composition of the material is not critical to the practice of the invention with

respect to its mechanical performance, i.e. its "click and feel" for a golfer, one of ordinary skill

Application/Control Number:                                          Page 192
95/000,121
Art Unit: 3993

in the art at the time the invention was made would find it obvious to substitute one material for

another material if both materials had substantially the same mechanical properties.

     This rejection of claim 9 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 60: Patent Owner's Argument

     Patent Owner does not specifically argue this rejection.

Ground 60: Third Party Requester's Comments

     Third Party Requester does not specifically counter argue this rejection.

Ground 60: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 9 under 35 USC 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained.   See "Ground 4:  Examiner's Response to the Argument and

Comments," *supra.*

**Proposed Third Party Requester Rejection: Ground #61.**

     The requester submits on page 67 that claim 9 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.

Pat. No. 4,274,637 (Molitor '637).

Claim 9 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 9 | Proudfit |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | "...an **outer layer of soft material** such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and

outer layer) with the layers within the range of claimed thicknesses each layer made from a

material having the mechanical properties substantially similar to the claimed mechanical

properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical

properties of the claimed invention. However, Proudfit either incorporates by reference these

mechanical and chemical properties and/or the materials used within the Proudfit golf ball

inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by

reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-

43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from

about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using

blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation

for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN

8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by

weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I, SURLYN 8940

Application/Control Number:                                    Page 194
95/000,121
Art Unit: 3993

has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, <u>see</u> Exhibit I.

Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit discloses the outer

layer being a blend of balata. An example of the blend is disclosed in Table 7 reproduced below.

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans Polyisoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

This rejection of claim 9 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and <u>is being adopted</u> essentially as

proposed in the request.


Ground 61: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 61: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                                    Page 195
95/000,121
Art Unit: 3993

Ground 61: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 9 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'637 is maintained.   See "Ground 5: Examiner's Response to the Argument and

Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #62.**

The requester submits on page 67 that claim 9 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No.

5,334,673 (Wu).

Claim 9 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Wu.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 9 | Proudfit |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | "...an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17)  This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and

outer layer) with the layers within the range of claimed thicknesses each layer made from a

Application/Control Number:                                          Page 196
95/000,121
Art Unit: 3993

material having the mechanical properties substantially similar to the claimed mechanical

properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical

properties of the claimed invention. However, Proudfit either incorporates by reference these

mechanical and chemical properties and/or the materials used within the Proudfit golf ball

inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by

reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-

43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from

about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using

blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation

for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN

8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by

weight of an alpha, beta-unsaturated carboxylic acid. As taught from Exhibit I, SURLYN 8940

has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see Exhibit I.

Therefore, this cover blend inherently has a hardness of 60 or more. Proudfit discloses the outer

layer being a blend of balata. An example of the blend is disclosed in Table 7 reproduced below.

| TABLE 7 | |
|---|---|
| Composition of Outer Layer (Parts by Weight) | |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of

Application/Control Number:                                    Page 197
95/000,121
Art Unit: 3993

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52. Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

This rejection of claim 9 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.

Ground 62: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 62: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 62: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 9 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained. See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra*.

**Proposed Third Party Requester Rejection: Ground #63.**

Application/Control Number:                                          Page 198
95/000,121
Art Unit: 3993

The requester submits on page 67 that claim 9 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S.

Pat. No. 4,674,751 (Molitor '751).

Claim 9 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in view

of Molitor '751.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 9 | Proudfit |
|---------|----------|
| The golf ball of claim 8 wherein | See above. |
| said outer cover exhibits a Shore D hardness of about 64 or less. | "...an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17) This material inherently has a Shore D hardness of less than 64, see the reasoning below. |

Proudfit discloses, teaches and suggests a three-piece golf ball (core, inner layer and

outer layer) with the layers within the range of claimed thicknesses each layer made from a

material having the mechanical properties substantially similar to the claimed mechanical

properties. What Proudfit lacks in clearly disclosing are the particular mechanical and chemical

properties of the claimed invention. However, Proudfit either incorporates by reference these

mechanical and chemical properties and/or the materials used within the Proudfit golf ball

inherently have these mechanical and chemical properties. For instance, Proudfit incorporates by

reference U.S. Pat. No. 4,690,981 in the background of this invention. (Proudfit, col. 1, ll.39-

43). The '981 patent discloses the preferably amount of unsaturated carboxylic acid is "from

about 5[%] to about 15% by weight." ('981 Pat, col. 3, ll. 59-60). If Proudfit discloses using

blends SURLYN the chemical for making the inner cover and the '981 Patent is the formulation

Application/Control Number:                                          Page 199
95/000,121
Art Unit: 3993

for ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN

8940 and SURLYN 9910 would be low acid ionomer resins containing no more than 16% by

weight of an alpha, beta-unsaturated carboxylic acid.  As taught from Exhibit I, SURLYN 8940

has a Shore D hardness of 65; SURLYN 9910 has a Shore D hardness of 64, see Exhibit I.

Therefore, this cover blend inherently has a hardness of 60 or more.  Proudfit discloses the outer

layer being a blend of balata.  An example of the blend is disclosed in Table 7 reproduced below.

| TABLE 7 | |
| --- | --- |
| Composition of Outer Layer (Parts by Weight) | |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one

of the first types of synthetic rubber or elastomer.  As described in the Rule 132 Declaration of

Edmund A. Hebert, the outer cover layer disclosed in Proudfit is the outer cover layer for the

golf ball disclosed in Exhibit A and that cover has a Shore D hardness of 52.  Thus, Proudfit's

outer layer cover inherently has a Shore hardness of less than 64.

In addition to Proudfit showing, Molitor '751 teaches that:

It has now been discovered that a key to manufacturing a two-piece ball having
playability properties similar to wound, balata-covered balls is to provide about an
inner resilient molded core a **cover having a shore C hardness less than 85**,
preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of
the invention is made of a composition comprising a blend of (1) a **thermoplastic
urethane having a shore A hardness** less than 95 and (2) an ionomer having a
shore D hardness greater than 55. The ionomer comprises olefinic groups having
two to four carbon atoms copolymerized with acrylic or methacrylic acid groups
and cross-linked with metal ions, preferably sodium or zinc ions. **The primary
components of the blended cover are set at a weight ratio so as to result in a**

Application/Control Number:                                    Page 200
95/000,121
Art Unit: 3993

> **cover material after molding having a shore C hardness within the range of
> 70 to 85, preferably 72 to 76.** Preferably, the urethane component of the cover
> material has a tensile strength greater than 2500 psi and an elongation at break
> greater than 250%. A preferred cover material comprises about 8 parts of the
> thermoplastic urethane and between 1 and 4 parts ionomer. Preferably, the cover
> is no greater than 0.060 inch thick. Thinner covers appear to maximize the short
> iron playability characteristics of the balls.

(Molitor '751, col. 33-57 (emphasis added)). Thus, Molitor '751 teaches having a outer cover

layer with a Shore C hardness less than 85 and preferably between 72 and 76. Moreover,

Molitor '751 teaches what golf balls are included in the definition of "two-piece" ball within its

instant specification.

> The phrase "two-piece ball" as used herein refers primarily to balls consisting of a
> molded core and a cover, **but also includes balls having a separate solid layer
> beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to
> Nesbitt, and other balls having non-wound cores.**

Molitor '751, col. 3, ll. 7-12 (emphasis added)). Proudfit, likewise, teaches the two-piece golf

balls can fit within this definition.

> FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a
> cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer
> resins and a relatively soft outer layer 14 of polymeric material.

(Proudfit, col. 7, ll. 21-24).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

Application/Control Number:                                    Page 201
95/000,121
Art Unit: 3993

How one of ordinary skill in the art would discover this inherent mechanical property of Shore D

hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore C value

to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance a polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C. This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

This rejection of claim 9 based on Proudfit in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 63: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 63: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Application/Control Number:                                    Page 202
95/000,121
Art Unit: 3993

Ground 63: Examiner's Response to the Argument and Comments

     Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 9 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor

'751 is maintained.   See "Ground 7:  Examiner's Response to the Argument and

Comments," *supra*.


Re. Claim 10

**Proposed Third Party Requester Rejection: Ground #64.**

     The requester submits on pages 67-68 that claim 10 is unpatentable under 35 U.S.C. §

102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

     **This rejection is <u>adopted</u> in this office action.**

Claim 10 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

     Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating

by reference Molitor '637) discloses claim limitations.

| Claim 10 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

Application/Control Number: 95/000,121
Art Unit: 3993

Page 203

This rejection of claim 10 based on Nesbitt (incorporating by reference Molitor '637) was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 64: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 64: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Ground 64: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #65.**

In the alternative, the requester submits on page 68 that claim 10 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 10 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view of Molitor '637.

Application/Control Number:                                    Page 204
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 10 | Nesbitt |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 10 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 65: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 65: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 65: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 10 under 35 USC 103(a) as being obvious by Nesbitt in view of

Molitor '637 is maintained.  See "Ground 2: Examiner's Response to the Argument and

Comments," *supra*.

Application/Control Number:                                    Page 205
95/000,121
Art Unit: 3993


**Proposed Third Party Requester Rejection: Ground #66.**

The requester submits on page 68 of the request that claim 10 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 10 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 10 | Nesbitt |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

This rejection of claim 10 based on Nesbitt in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.


Ground 66: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.


Ground 66: Third Party Requester's Comments

Application/Control Number:                                    Page 206
95/000,121
Art Unit: 3993

Third Party Requester does not specifically counter argue this rejection.


Ground 66: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 10 under 35 USC 103(a) as being obvious by Nesbitt in view of Wu is

maintained.   See "Ground 3:  Examiner's Response to the Argument and Comments,"

*supra.*


**Proposed Third Party Requester Rejection: Ground #67.**

The requester submits on page 68 of the request that claim 10 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 10 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 10 | Nesbitt |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.01 to about 0.05 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) |

Application/Control Number:                                    Page 207
95/000,121
Art Unit: 3993

This rejection of claim 10 based on Nesbitt in view of Molitor '751 was proposed by the
third party requester in the request for reexamination and is being adopted essentially as
proposed in the request.

Ground 67: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 67: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 67: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the
rejection of claim 10 under 35 USC 103(a) as being obvious by Nesbitt in view of
Molitor '751 is maintained.   See "Ground 4:  Examiner's Response to the Argument and
Comments," *supra*.

**Proposed Third Party Requester Rejections: Ground #68-70.**

The requester submits on page 68 that claim 10 is unpatentable under 35 U.S.C. § 103(a)
as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.
Pat. No. 4,274,637 (Molitor '637); Wu, U.S. Pat. No. 5,334,673 (Wu); or Molitor et al., U.S. Pat.
No. 4,674,751 (Molitor '751).

**These rejections are not adopted for the reasons given in below.**

Application/Control Number:                              Page 208
95/000,121
Art Unit: 3993

Claim 10 requires the outer layer thickness to be in the range of about 0.01 to about 0.05

inches. Proudfit's preferred outer layer thickness embodiment is 0.0525 inches thick. See

Proudfit, col. 7, ll. 40-46. Therefore, Proudfit's preferred embodiment is outside the claimed

range. Further, the difference between Proudfit's preferred embodiment and the claimed

invention's upper range limit is 0.0025 inches or twenty-five thousandths of an inch. This

difference equates to approximately a factor of 4. The requester admits that it is not the chemical

but mechanical properties of the materials used in making golf balls which is important to those

skilled in the art. One of the mechanical properties in constructing a golf ball with materials it

the thickness to make a given layer. For these reasons, one skilled in the art would not find

obvious the claimed invention of claim when viewing Proudfit with Molitor '637, Wu or Molitor

'751. Note that Molitor '637, Wu or Molitor '751 lack curing the deficiencies of Proudfit with

respect to the instant claimed invention.

### Re. Claim 11

**Proposed Third Party Requester Rejection: Ground #71.**

The requester submits on page 69 that claim 11 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**This rejection is <u>adopted</u> in this office action.**

Claim 11 is rejected under 35 U.S.C. § 102(b) as being anticipated by Nesbitt (incorporating by

reference Molitor '637).

Below is a claim chart identifying the claim limitations and where Nesbitt (incorporating

by reference Molitor '637) discloses the claim limitations.

Application/Control Number:
95/000,121
Art Unit: 3993

Page 209

| Claim 11 | Nesbitt (incorporating by reference Molitor '637) |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 11 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 71: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 71: Third Party Requester's Comments

Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 1: Third Party Requester's Comments."

Ground 71: Examiner's Response to the Argument and Comments

Upon review, the Examiner agrees with the arguments of the Third Party Requester and adopts this suggested rejection. See "Ground 1: Examiner's Response to the Argument and Comments," *supra*.

Application/Control Number: 95/000,121
Art Unit: 3993

Page 210

**Proposed Third Party Requester Rejection: Ground #72.**

In the alternative, the requester submits on page 69 that claim 11 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al. U.S. Pat. No. 4,274,637 (Molitor '637).

Claim 11 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 11 | Nesbitt |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.)<br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 11 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 72: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 72: Third Party Requester's Comments

Application/Control Number:                                    Page 211
95/000,121
Art Unit: 3993

Third Party Requester does not specifically counter argue this rejection.


Ground 72: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 11 under 35 USC 103(a) as being obvious by Nesbitt in view of

Molitor '637 is maintained.   See "Ground 2: Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #73.**

The requester submits on page 69 of the request that claim 11 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of Wu,

U.S. Pat. No. 5,334,673 (Wu).

Claim 11 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 11 | Nesbitt |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) <br> "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

Application/Control Number:                                      Page 212
95/000,121
Art Unit: 3993

This rejection of claim 11 based on Nesbitt in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.

Ground 73: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 73: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 73: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 11 under 35 USC 103(a) as being obvious by Nesbitt in view of

Molitor '637 is maintained.   See "Ground 3:  Examiner's Response to the Argument and

Comments," *supra.*

**Proposed Third Party Requester Rejection: Ground #74.**

The requester submits on page 69 of the request that claim 11 is unpatentable under 35

U.S.C. § 103(a) as being obvious over Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt) in view of

Molitor et al., U.S. Patent No. 4,674,751 (Molitor '751).

Claim 11 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Application/Control Number:                                Page 213
95/000,121
Art Unit: 3993

Below is a claim chart identifying the claim limitations and where Nesbitt discloses,

teaches or suggests the claim limitations.

| Claim 11 | Nesbitt |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such and Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (Nesbitt, col. 3. ll. 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (Nesbitt, col. 3, ll. 39-40.) |

This rejection of claim 11 based on Nesbitt in view of Molitor '751 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 74: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 74: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 74: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 11 under 35 USC 103(a) as being obvious by Nesbitt in view of

Application/Control Number:                                    Page 214
95/000,121
Art Unit: 3993

Molitor '751 is maintained.   See "Ground 4: Examiner's Response to the Argument and

Comments," *supra.*


**Proposed Third Party Requester Rejection: Ground #75.**

The requester submits on page 70 that claim 11 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al. U.S.

Pat. No. 4,274,637 (Molitor '637).

Claim 11 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in

view of Molitor '637.

Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 11 | Proudfit |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..."  (Proudfit, col. 7, ll. 40-46.) |

This rejection of claim 4 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 75: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Application/Control Number:                              Page 215
95/000,121
Art Unit: 3993

Ground 75: Third Party Requester's Comments

    Third Party Requester does not specifically counter argue this rejection.


Ground 75: Examiner's Response to the Argument and Comments

    Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 11 under 35 USC 103(a) as being obvious by Proudfit in view of

Molitor '637 is maintained.   See "Ground 5:  Examiner's Response to the Argument and

Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #76.**

    The requester submits on page 70 that claim 11 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No.

5,334,673 (Wu).

    Claim 11 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in

view of Wu.

    Below is a claim chart identifying the claim limitations and where Proudfit discloses,

teaches or suggests the claim limitations.

| Claim 11 | Proudfit |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch.  The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..."  (Proudfit, col. 7, ll. 40-46.) |

Application/Control Number:                                    Page 216
95/000,121
Art Unit: 3993

This rejection of claim 11 based on Proudfit in view of Wu was proposed by the third

party requester in the request for reexamination and is being adopted essentially as proposed in

the request.

Ground 76: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 76: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 76: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the

rejection of claim 11 under 35 USC 103(a) as being obvious by Proudfit in view of Wu is

maintained.   See "Ground 6: Examiner's Response to the Argument and Comments,"

*supra*.

**Proposed Third Party Requester Rejection: Ground #77.**

The requester submits on page 70 that claim 11 is unpatentable under 35 U.S.C. § 103(a)

as being obvious over Proudfit, U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S.

Pat. No. 4,674,751 (Molitor '751).

Claim 11 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit in

view of Molitor '751.

Application/Control Number: 95/000,121
Art Unit: 3993

Page 217

Below is a claim chart identifying the claim limitations and where Proudfit discloses, teaches or suggests the claim limitations.

| Claim 11 | Proudfit |
|---|---|
| The golf ball of claim 8 wherein | See above. |
| said outer cover layer has a thickness of from about 0.03 to about 0.06 inches. | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ..." (Proudfit, col. 7, ll. 40-46.) |

This rejection of claim 11 based on Proudfit in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 77: Patent Owner's Argument

Patent Owner does not specifically argue this rejection.

Ground 77: Third Party Requester's Comments

Third Party Requester does not specifically counter argue this rejection.

Ground 77: Examiner's Response to the Argument and Comments

Examiner agrees with the general comments of the Third Party Requester, and the rejection of claim 11 under 35 USC 103(a) as being obvious by Proudfit in view of Molitor '751 is maintained. See "Ground 7: Examiner's Response to the Argument and Comments," *supra*.

Application/Control Number:                                      Page 218
95/000,121
Art Unit: 3993

## Unexpected Results and Commercial Success

Patent Owner's Argument

      Besides arguing the outstanding rejections of individual claims as explained *supra*, the

Patent Owner argues generally for non-obviousness of the invention based on unexpected results

and commercial success (*see* Patent Owner's Response at pages 6-9). The crux of the argument

is that, although the instant invention is made of individual elements known in the art, the unique

combination of elements of the claimed invention results in a golf ball with excellent

""distance"" and ""feel"" (Patent Owner's Response at page 7). Consequently, golf balls within

the ambit of the claimed invention (*i.e.,* the Rule 35 ball of the Patent Owner and the Pro V1 of

the Third Party Requester) have great commercial success. Hence, the "[u]nexpected and

overwhelming success of Mr. Sullivan's golf ball technology thus demonstrates that his

invention was not simply the predictable result of combining known materials, but in fact

represented the best solution even conceived for the distance-versus-control problem" (Patent

Owner's Response at page 9).

Third Party Requester's Comments

      The Third Party Requester comments that: (1) the Sullivan '103 patent does not disclose

or suggest the Pro V1 because the Pro V1 has a construction different in several aspects (*e.g.,*

core size) from the ball disclosed in the Sullivan '130 patent (Third Party Requester's Comments

at page 35 to middle of page 37); (2) there is no nexus between the commercial success of the

Third Party Requester's Pro V1 and the Sullivan '130 patent because the Pro V1's success rests

Application/Control Number:                                    Page 219
95/000,121
Art Unit: 3993

upon specific types of advertising (Third Party Requester's Comments at middle of page 37 to

middle of page 40) along with different technology (Third Party Requester's Comments at

middle of page 40 to page 43);  (3) many golf balls purport to have solved the distance and "feel"

problem (Third Party Requester's Comments at bottom of page 43 top of page 45);  and, (4) even

though there were other three-piece, polyurethane balls available, there was little demand for the

ball on the PGA tour until shortly before the introduction of the Pro V1 (Third Party Requester's

Comments at page 45 to page 46).


Examiner's Response to the Argument and Comments

        Examiner generally agrees with the comments of the Third Party Requester and finds the

arguments of the Patent Owner of unexpected results and commercial success to be

unpersuasive.

        As a preliminary matter, the argument(s) presented for secondary considerations

presented by the Patent Owner are not relevant to the rejections made under 35 USC 102 (*see*

MPEP 2131.04).  Thus only the rejections under 35 USC 103 are considered.

        To show unexpected results (*i.e.,* unique and excellent combination of distance and

"feel") the Patent Owner uses testimonial-type evidence of statements, or endorsements, by well

known golfers such as Arnold Palmer (Patent Owner's Response at bottom on page 8).

Examiner considers this to be opinion evidence because the statements are not accompanied by

objective data.  Due to this lack of objective data, the probative value of the presented opinion

evidence is not sufficient to overcome the *prima facie* rejections, *supra*, maintained in this office

action.

Application/Control Number: 95/000,121
Art Unit: 3993

Page 220

The evidence of commercial success proffered by the Patent Owner is similarly testimonial in nature (*e.g.,* "Pro V1 is the "most successful golf ball in the history of the golf industry . . ."" citing an article in the Golf Gazette). Again no objective data is presented as support. With no objective data, the probative value of the presented evidence is again not sufficient to overcome the *prima facie* rejections, *supra*, maintained in this office action.

As to the comments of the Third Party Requester concerning, *inter alia,* the scope of the claims of the Sullivan '130 patent and its nexus with the Pro V1, the Examiner did not evaluate these comments since the secondary considerations presented by the Patent Owner were not found sufficient for the reasons given immediately above.

### Shore D hardness value measured on the ball

Patent Owner's Argument

Besides arguing the outstanding rejections of individual claims as explained *supra* and commercial success *id.*, the Patent Owner argues that the claims in the instant patent require the Shore D hardness value's of the cover layers to be measured "on the ball" (Patent Owner's Response at pages 10-12). Since the two base references (Nesbitt and Proudfit) do not disclose measuring hardness "on the ball" for their covers, the outstanding rejections are flawed (Patent Owner's Response at pages 12-13).

Third Party Requester's Comments

The Third Party Requester comments that: (1) in a reexamination claims are given their broadest reasonable interpretation consistent with the specification, and, here, "on the ball" is too

Application/Control Number:                              Page 221
95/000,121
Art Unit: 3993

narrow a construction (Third Party Requester's Comments at page 7);  (2) the specification of the

instant patent clearly states at col. 16, lines 15-16, that "Shore hardness was measured in

accordance with ASTM test 2240" which calls for "off the ball" testing (Third Party Requester's

Comments at page 8);  (3) the Patent Owner knew how to claim "on the ball" because in a sister

patent the language of "as measured on the curved surface thereof" is explicitly used (Third

Party Requester's Comments at bottom of page 9 to middle of page 10);  and,  (4) even if

measured "on the ball" the prior art is still good because measuring Shore D hardness "on the

ball" does not affect the disclosed values enough to make the instant patent's claims patentable

over the prior art (Third Party Requester's Comments at bottom of page 10 to page 12).


Examiner's Response to the Argument and Comments

        Examiner generally agrees with the comments of the Third Party Requester and finds the

arguments of the Patent Owner concerning measuring of hardness "on the ball" in the claim

language to be unpersuasive.

        The rule is that "[d]uring reexamination claims are given the broadest reasonable

interpretation consistent with the specification" (MPEP 2658(I) and 2258(I)(G)).  Here, the

claims are silent as to whether the Shore D hardness value is measured "on the ball" or not.  In

the specification, hardness measurements are disclosed at col. 7, lines 20-22, and col. 14, lines

49-50, and are to be conducted "in accordance with ASTM method D-2240."  ASTM D-2240's

method of testing uses a specimen of material, and are not measured "on the ball" (Exhibit C).

However, in the examples section of the specification there is language that appears to support an

interpretation of hardness values measured "on the ball."  An example of the language is

Application/Control Number:                      Page 222
95/000,121
Art Unit: 3993

"properties of the finished balls are set forth below" at col. 22, lines 65-68.  Also, hardness

values in the tables for layered golf balls are not consistent with the hardness values of the

constituent resins that make up that layer (for example, Patent Owner's discussion of Iotek 959

and Iotek 960 starting at the bottom of page 10 of the Response).

The specification, then, appears ambiguous as to the interpretation of the claim language.

However, the Federal Circuit has held that "a particular embodiment appearing in the written

description may not be read into a claim when the claim language is broader than the

embodiment (MPEP 2111.01(II) citing *Superguide Corp. v. DirecTV Enterprises, Inc.*).  Further,

the Fed. Cir. has stated that "[t]he problem is to interpret claims 'in view of the specification'

without unnecessarily importing limitations from the specification into the claim" (MPEP

2111.01(II) citing *E-Pass Techs., Inc. v. 3Com Corp.*).

Since there is ambiguity in the specification as to how hardness values are measured and

mindful of not reading limitations into the claim language, the Examiner considers the broadest

reasonable interpretation of this claim language to not require the hardness values to be measured

"on the ball."

Application/Control Number:                     Page 223
95/000,121
Art Unit: 3993

*Correspondence*

**All** correspondence relating to this *inter partes* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail** to:

      Mail Stop *Inter Partes* Reexam
      ATTN: Central Reexamination Unit
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA 22313-1450

By FAX to:    (571) 273-9900
            Central Reexamination Unit

By hand to:    Customer Service Window
            ATTN: Central Reexamination Unit
            Randolph Building
            401 Dulany St.
            Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

___/Jeffrey L. Gellner/__
Jeffrey L. Gellner
CRU Examiner
GAU 3993

conferees: /DOR/