IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ACUSHNET COMPANY,<br><br>　　　　　Defendant. | C. A. No. 06-91 (SLR)<br><br><br>**REDACTED** |

## CALLAWAY GOLF'S *OPPOSITION*
## TO ACUSHNET'S MOTION TO STAY ANY PERMANENT INJUNCTION

FISH & RICHARDSON P.C.

Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Attorneys for Plaintiff
CALLAWAY GOLF COMPANY

Dated: March 13, 2008

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II. ARGUMENT .......................................................................................2

    A.  Acushnet is Not Likely to Succeed on Appeal ...........................2

        1.  The Court Properly Construed the Term "Shore D" to Require the Measurement be Taken on the Ball........................................................................3

        2.  Callaway Golf Presented Substantial Evidence Supporting the Jury's Rejection of Acushnet's Validity Attacks ...................................................6

        3.  The Jury's Verdicts That Eight Of The Nine Claims At Issue Are Valid Does Not Support the Convening of a New Trial.....................................8

    B.  Acushnet Fails to Show that Refusing to Stay An Injunction Would Cause It *Irreparable* Harm ...........................8

    C.  Acushnet's Continuing Infringement Causes Callaway Golf to Suffer Irreparable Harm ............................................11

        1.  Additional Delay During a Stay Would Not be for Merely a Few Months, and Would Result in Further Irreparable Harm ......................................11

        2.  Callaway Golf and Acushnet are Direct Competitors...................................................12

        3.  There was no delay in filing suit; Callaway Golf and Spalding were simply unwilling to breach the 1996 Settlement Agreement as Acushnet Did ......................13

        4.  Spalding/Callaway Golf's alleged willingness to explore potential licensing of the patents-in-suit does not support Acushnet's argument that Callaway Golf suffered no harm....................................17

    D.  The Public Interest Is Served By Enforcing Patent Rights.........................................................................20

III. CONCLUSION....................................................................................22

i

## TABLE OF AUTHORITIES

**Page(s)**

*ArthroCare Corp. v. Smith & Nephew, Inc.,*
  315 F. Supp. 2d 615 (D. Del. 2004).................................................................7

*Atlas Powder Co. v. Ireco Chemical,*
  773 F.2d 1230 (Fed.Cir.1985)........................................................................2

*Cabinet Vision v. Cabnetware,*
  No. 94-0062-E(AJB), 1998 U.S. Dist. LEXIS 22763
  (S.D. Cal. Sept. 30, 1998) ...........................................................................8

*Commonwealth Scientific And Industrial Research Organization
  v. Buffalo Tech., Inc.,*
  492 F. Supp. 2d 600 (E.D. Tex. 2007)..........................................................18

*E.I. DuPont De Nemours & Co. v. Phillips,*
  849 F.2d 1430 (Fed.Cir.1988)........................................................................4

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
  835 F.2d 277 (Fed.Cir. 1987).........................................................................4

*Eaton Corp. v. Parker-Hannifin Corp.,*
  292 F. Supp. 2d 555 (D. Del. 2003).................................................................3

*Fisher-Price, Inc. v. Safety 1st, Inc.,*
  279 F. Supp. 2d 526 (D. Del. 2003)..............................................................6, 9

*Hartness International v. Simplimatic Engineering Co.,*
  819 F.2d 1100 (Fed.Cir. 1987).......................................................................8

*High Technology Medical Instrumentation, Inc. v.
  New Image Industries, Inc.,* 49 F.3d 1551 (Fed. Cir. 1995) ............................17

*Hilton v. Braunskill,* 481 U.S. 770 (1987) .........................................................2

*Honeywell Intern., Inc. v. Universal Avionics Systems Corp.,*
  397 F. Supp. 2d 537 (D. Del. 2005)...........................................................10, 20

*IMX, Inc. v. LendingTree, LLC,*
  469 F. Supp. 2d 203 (D. Del. 2007)............................................................18, 19

*In re Bass,* 314 F.3d 575 (Fed. Cir. 2002) .........................................................4

*In re Yamamoto,* 740 F.2d 1569 (Fed. Cir. 1984).................................................4

*Itron, Inc. v. Benghiat,* 2003 WL 22037710 (D. Minn. Aug. 29, 2003)...................6

*Magnesystems Inc. v. Nikken, Inc.,*
  36 F.3d 1114 (Fed. Cir. Aug. 30, 1994)...........................................................7

**TABLE OF AUTHORITIES (cont'd)**

Page(s)

*MercExchange, L.L.C. v. eBay, Inc.,*
    500 F. Supp. 2d 556 (E.D.Va. 2007) ..........................................................21

*Novozymes A/S v. Genencor International, Inc.,*
    474 F. Supp. 2d 592 (D. Del. 2007)............................................................17

*PPG Industrial, Inc. v. Guardian Industrial Corp.,*
    75 F.3d 1558 (Fed. Cir. 1998)....................................................................20

*Phillips Electronics N.A. Corp. v. Contect Corp.,*
    2004 WL 2009370 (D. Del. Aug. 24, 2004) ...............................................3

*Polymer Technology, Inc. v. Bridwell,*
    103 F.3d 970 (Fed. Cir. 1996)....................................................................17

*Rite-Hite Corp. v. Kelley Co. Inc.,*
    56 F.3d 1538 (Fed. Cir. 1995).....................................................................12

*Smith & Nephew, Inc. v. Synthes (U.S.A.),*
    466 F. Supp. 2d 978 (W.D. Tenn. 2006).....................................................17

*Standard Havens Products, Inc., v. Gencor Industrial, Inc.,*
    897 F.2d 511 (Fed. Cir. 1990)......................................................................2

*Standard Havens Products v. Gencor Industrial Inc.,*
    No. 93-1208, 1993 U.S. App. LEXIS 11963 (Fed. Cir. May 21, 1993).....................21

*T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.,*
    821 F.2d 646 (Fed. Cir. 1987).....................................................................17

*Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.,*
    2006 WL 3813778 (S.D. Tex.) ........................................................... 17-19

# REDACTED

## I.    INTRODUCTION

Acushnet has knowingly infringed the patents-in-suit for nearly seven years,

[1] Acushnet forced Callaway Golf to expend substantial time and resources to litigate

infringement for years, before finally stipulating on the eve of trial to what it knew all along –

that Acushnet's Pro V1 balls are covered by every patent claim asserted in this case.  Yet

Acushnet's CEO – who avoided trial rather than confronting his many public statements about

the unprecedented impact of the Pro V1 on Acushnet, in the marketplace and on the game of golf

– recently and defiantly announced that Acushnet is continuing "business as usual."  That means

continued infringement by Acushnet.

These facts and others outlined in Callaway Golf's motion for a permanent injunction

make Acushnet particularly undeserving of the Court's indulgence.  [D.I. 412][2]  If Acushnet did

not want any interruption to its regular business cycle, it should have respected Callaway Golf's

patent rights years ago, or at least made plans to do so immediately upon receipt of an adverse

jury verdict that could not have come as a surprise.  Acushnet's infringement has caused, and

will continue to cause, irreparable harm to Callaway Golf, including depriving Callaway Golf of

its rightful market share, good will, and a fair opportunity to compete for sales of premium golf

balls.  Callaway Golf, therefore, respectfully requests that the Court not stay any injunction that

it enters.

---

[1]

[2] Other relevant material will be set forth in Callaway Golf's reply brief in support of its injunction motion to be filed on March 14, 2008.

1

## II.    ARGUMENT

The determination of whether a stay should issue is informed by four factors: (1) likelihood of success on appeal; (2) irreparable injury to the infringer absent a stay; (3) substantial injury to the patent holder if the stay is granted; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770 (1987) (setting general standard for stays); *Standard Havens Prods., Inc., v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed. Cir. 1990) (applying the general standard to injunctions in patent cases).[3] Here, each of the four elements weighs heavily against granting a stay to Acushnet.[4]

### A.    Acushnet is Not Likely to Succeed on Appeal

As detailed in Callaway Golf's opposition to Acushnet's motions seeking post-trial relief from the jury's eight adverse verdicts, Acushnet is not likely to succeed on appeal. [*See* D.I. 455.] Rather than repeat those arguments here, Callaway Golf merely summarizes its prior responses to Acushnet's arguments.

---

[3] The Federal Circuit in *Standard Havens* also noted that lost market share – like that asserted by Callaway Golf in this case – is one type of non-compensable harm that can tip the assessment of whether to stay an injunction against a stay:

> Nor has any showing been made, or claim asserted, of ***non-compensable injury such as lost market share.*** *See* Atlas Powder Co. v. Ireco Chem., 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir.1985) (Statute allows injunctive relief "to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money.").

897 F.2d at 515 (emphasis added).

[4] Acushnet references two unpublished Federal Circuit opinions, *Verizon Serv. Corp* and *Nichols Inst. Diagnostics,* that offer little guidance. *See* Mtn. to Stay at 2. *Verizon Servs. Corp. v. Vonage Holdings Corp.,* simply grants the requested stay in literally one sentence; no analysis or explanation is provided as to why a stay was granted pending appeal. 228 Fed. Appx. 986 (Fed. Cir. 2007). *Nichols Inst. Diagnostics v. Scantabodies Clinical Lab., Inc.,* is another cursory order where the Federal Circuit granted a stay but explained only that the trial court there – unlike here – likely erred by adding a limitation to the asserted claims. No analysis regarding any other factors is provided. 166 Fed. Appx. 487 (Fed.Cir. 2007).

**1.     The Court Properly Construed the Term "Shore D" to Require the Measurement be Taken on the Ball**

The only claim construction issue that Acushnet contends the Court got wrong is the ruling that that Shore D hardness must be measured "on the ball." Callaway Golf has provided ample evidence and argument supporting the Court's proper construction. [*See* D.I. 204 and 260 (Callaway Golf's Markman briefs); D.I. 455 at 1 (Callaway Golf's Opposition brief in response to Acushnet's Post-Trial Brief).]

However, Acushnet argues it is likely to prevail on appeal regarding this claim construction issue because the Court commented that this term could have been interpreted differently and further noted that "I never predict what the Federal Circuit is going to do." [Mtn. to Stay at 3.] If the existence of some uncertainty in construing claims were the standard for granting a stay, then nearly every injunction would be stayed and the four-part balancing test outlined by the Federal Circuit would have little meaning. Indeed, this Court has already explained that the mere fact that claim construction issues are routinely reviewed on appeal does not warrant the granting of a stay. *Eaton Corp. v. Parker-Hannifin Corp.,* 292 F.Supp.2d 555, 582 (D. Del. 2003) ("possibility of appellate *de novo* review of its claim construction [does not] constitute[ ] an extraordinary circumstance to merit a stay."); *Phillips Electronics N.A. Corp. v. Contect Corp.,* 2004 WL 2009370, *1 (D. Del. Aug. 24, 2004); *see also Lisle Corp. v. A.J. Mfg. Co.,* 2004 WL 765872, *6 (N.D. Ill. 2004) (denying stay even when claim construction was a close call because all the other factors weighed in plaintiff's favor).

Moreover, when this Court made the above comment, it did not have the benefit of the testimony of Acushnet's *own* witnesses conceding at trial, without contradiction, that the standard practice in the industry was to measure Shore D "*on the ball*":

3

# REDACTED

- Jeffrey Dalton: "We generally measure on the ball." [Dalton Trial Tr. 514:25-515:1.]

- Bill Morgan: "Firstly, it was our standard practice at the time to measure the Shore D hardness directly on the golf ball." [Morgan Trial Tr. 344:13-14.]

Since both the intrinsic and extrinsic evidence support the Court's on the ball construction, Acushnet is unlikely to prevail on this issue.

Next, Acushnet (again) argues that the Patent and Trademark Office has broadly interpreted the claims to cover "off the ball" measurements. The PTO's decisions are probative of nothing regarding this suit. As Callaway Golf has explained, the PTO applies the broadest claim construction rather than the correct one, and does not consider all the evidence that can be presented in a federal district court. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984) (holding that in examining a patent claim, the PTO must apply the broadest reasonable meaning to the claim language.); *In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002). This Court, on the other hand, has had the opportunity to consider all the evidence and has applied the correct standards to arrive at the proper claim construction – not simply the broadest one.[5]

---

[5] Acushnet cites *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed.Cir. 1987) for the proposition that differing claim interpretations in the Patent Office and in district court can support issuance of a stay. In that case, however, the Federal Circuit plainly was of the opinion that "substantial legal questions concerning claim interpretation exist." Indeed, the Federal Circuit ultimately ruled on the merits that "the district court was wrong as a matter of law in reading into the claims at issue the two extraneous property limitations." *E.I. DuPont De Nemours & Co. v. Phillips*, 849 F.2d 1430, 1434 (Fed.Cir.1988). Here, there is no reason to believe the Court got the on-the-ball construction wrong and, indeed, every reason to believe the Court got it right. Moreover, in *E.I du Pont*, the Federal Circuit's determination was largely driven by a different consideration:

> Of great importance here is the unusual position of the patentee, DuPont, in that it has never sought to exclude others from the polyethylene market, but rather has licensed all willing competitors. Moreover, DuPont has announced that it is in the process of divesting itself of its high density polyethylene resin manufacturing business in the United States. As a result, harm to DuPont here is of a different nature than harm to a patentee who is practicing its invention and fully excluding others.

835 F.2d at 278.

; it does seek to fully exclude others and, far from divesting itself of the golf ball business,

Finally, even if Acushnet were somehow to prevail on the lone claim construction issue it challenges, it would still lose on the merits. Though Acushnet claims that "all of the prior art materials in question had shore D hardness within the claims measured 'off the ball'..." (Mtn. to Stay at 3), in truth, **none** of the five prior art references Acushnet has relied on in this case disclose any polyurethane Shore D values at all. The Wu reference does not mention the Shore hardness (on any scale) for its polyurethane cover on wound and 2-piece balls. The Molitor '751 reference does not disclose any Shore D value for its polyurethane/ionomer blend cover that was placed on a 2-piece ball. The Molitor '637 patent does not disclose Shore hardness of any type for its foamed ionomer covers. And Acushnet's two primary references, Nesbitt and Proudfit, do not disclose Shore hardness values of any type for the ionomer and balata covered multi-layer balls which they disclose. Thus, when Acushnet says these references "had" the claimed Shore D hardnesses, it is relying on argument and inference – not what the references actually disclose.

Moreover, even if the claims were interpreted to encompass off-the-ball hardness measurements, Acushnet would still need to establish the obviousness of combining various elements from different references to make the revolutionary golf ball disclosed for the first time in the Sullivan patents. Callaway Golf, however, has presented substantial evidence both at trial and in opposition to Acushnet's post-trial motions (D.I. 455 at 3-29), supporting the jury's implied finding that there was no such motivation to combine the references to achieve the claimed inventions. For example, the jury's presumed finding was amply supported by the well-documented difficulties and disadvantages of using polyurethane, including the movement away from using polyurethane on solid construction (2-piece) balls. [*See* D.I. 455 at 5-6).] Thus,

---

Callaway Golf is competing head-to-head with Acushnet for the same customers for its premium golf ball products. Thus, Acushnet's reliance upon *E.I. du Pont* is misplaced.

Acushnet's claim construction argument provides no basis for staying the issuance of an injunction.

### 2. Callaway Golf Presented Substantial Evidence Supporting the Jury's Rejection of Acushnet's Validity Attacks

Acushnet next supports its request for a stay by presenting a series of arguments – like the one above regarding claim construction – that simply repeat positions advanced in Acushnet's motions for post-trial relief. Callaway Golf respectfully incorporates herein its opposing brief for the many reasons why Acushnet's arguments fail. [D.I. 455.] Simply put, Acushnet's rehashing of arguments already made to the jury, and to the Court, does not warrant the issuance of a stay. *Phillips Electronics N.A. Corp. v. Contect Corp.,* 2004 WL 2009370, *1 (D. Del. Aug. 24, 2004) (denying stay, in part, because simply rearguing its prior art combinations did not warrant a finding that it was likely to succeed on appeal); *Itron, Inc. v. Benghiat,* 2003 WL 22037710, *12 (D. Minn. Aug. 29, 2003) (denying stay, in part, because "Itron has not demonstrated a strong showing that it will likely succeed on the merits of its appeal. The Court has denied all of Itron's post-trial motions, many of which are the bases for Itron's appeal…Most of these arguments have already been rejected several times in this case, and the Court sees no compelling reason why they will likely succeed on appeal."); *Fisher-Price, Inc. v. Safety 1st, Inc.,* 279 F. Supp. 2d 526, 529-530 (D. Del. 2003) (denying requested stay and transition period for injunction, in part, because defendants were merely repeating ineffective arguments that it made at trial).

Acushnet also asserts that the Court should have admitted the attorney-created "Frankenstein" balls. The Court properly excluded these highly prejudicial after-the-fact alleged combinations of prior art for all the reasons previously addressed by Callaway Golf. [*See* D.I. 282; D.I. 308; and D.I. 455 at 29-30.]

Acushnet also argues that its motion for a stay is supported because the Court: (i) determined that claims 1 and 2 of the '130 patent were not anticipated; and then (ii) agreed that they had been withdrawn from the case. This is a non-sequitur for several reasons. First, the fact that the Court rejected Acushnet's anticipation challenge to these claims cuts against a stay rather than in favor of one. Second, the claims are not at issue and would not be the subject of an injunction; Callaway Golf unmistakably removed these claims from this suit and has made clear that it will not accuse Acushnet's Pro V1 of infringing these claims. [*See* D.I. 372 at 1-2.] Thus, no case and controversy exists with respect to these claims and there is nothing for Acushnet to appeal – much less use as support of staying the issuance of an injunction on different claims.

Acushnet also continues to reference the interim reexamination decisions, initiated in breach of contract, as supporting its request for a stay. [*See* Mtn. for Stay at 3 and 8.] Particularly given that the decision to stay or not is an equitable determination, the Court should refuse to consider reexaminations which should never have been filed and which are the fruits of Acushnet's own illegal acts. In any event, this Court has previously made clear that, due in part to the different standards used in the PTO and in a jury trial, it was "not persuaded that the ongoing reexamination proceeding triggers a stay of the injunction." *ArthroCare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 620 (D. Del. 2004), *rev'd on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005). In *ArthroCare,* the Court denied a stay because the jury had carefully deliberated on validity, the Court reviewed the verdict in post trial motions and found it to be supported by the evidence, and the Court concluded that there was little chance that the infringer would be successful on appeal. *Id.* Similarly, Callaway Golf's patents have been tested by a jury, and found to be valid and infringed. Just as in *ArthroCare*, this Court should reject Acushnet's attempt to stay an injunction because a reexamination is pending. *See id.* In addition

to *ArthroCare*, the Federal Circuit, albeit in an unpublished opinion, has similarly rejected

Acushnet's implied argument that the presence of a reexamination requires a stay.

*Magnesystems Inc. v. Nikken, Inc.*, 36 F.3d 1114, *3 (Fed. Cir. Aug. 30, 1994) (rejecting

infringer's request to stay a permanent injunction pending reexamination).  Thus, Acushnet's re-

packaging of arguments presented to the Jury and this Court provides no basis for granting a stay

of any injunction.

### 3. The Jury's Verdicts That Eight Of The Nine Claims At Issue Are Valid Does Not Support the Convening of a New Trial

Callaway Golf has addressed Acushnet's inconsistent verdict argument in its Opposition

to Acushnet's motion seeking post-trial relief and respectfully incorporates herein its briefing

regarding this issue.  [*See* D.I. 455 at 36-50.][6]  For the reasons set forth there, Callaway Golf

respectfully submits that Acushnet's request for a new trial should not be granted, and that

Acushnet is not likely to succeed on appeal.

### B. Acushnet Fails to Show that Refusing to Stay An Injunction Would Cause It *Irreparable* Harm

Far from establishing that it would suffer irreparable harm, Acushnet merely complains

that an injunction will cause it to "interrupt its normal business cycle."  [Mtn. to Stay at 6.]

---

[6] Callaway Golf further notes the case cited by Acushnet in its motion for a stay, *Cabinet Vision v. Cabnetware,* is distinguishable on several grounds.  In *Cabinet Vision v. Cabnetware,* the court viewed the verdicts as being special verdicts, the jury failed to address in any respect certain questions in the special verdict form, and – perhaps most critically – ***both parties agreed*** that a new trial on at least some issues was warranted.  No. 94-0062-E(AJB), 1998 U.S. Dist LEXIS 22763, at *25 (S.D. Cal. Sept. 30, 1998) *aff'd in part, rev'd in part,* 2000 U.S. App. LEXIS 2030, at 13-14 (Fed. Cir. Feb. 14, 2000).  To the extent Acushnet also relies upon *Hartness Int'l v. Simplimatic Eng'g Co.,* 819 F.2d 1100, 1108 (Fed.Cir. 1987), Callaway Golf notes that dispute – unlike this case – involved a bench trial and hence did not concern the Seventh Amendment implications, addressed in Callaway Golf's opposition to Acushnet's motions for post-trial relief, regarding the voiding of a jury's verdicts.  Moreover, in *Hartness,* the Federal Circuit concluded that the Court was "correct" in holding that the independent claim was non-obvious and then simply ruled: "*A fortiori,* dependent claim 3 was nonobvious (and novel) because it contained all the limitations of claim 1 plus a further limitation." *Id.*

**REDACTED**

[*Id.*]  Taking Acushnet at its word, it has

had years to implement what it claims is a simple design-around.  But Acushnet instead gambled

– correctly, and very lucratively, as it turned out – that it could get away with infringement for

years.  Indeed, if the Court were to grant a stay (or deny the underlying injunction), it would

vindicate Acushnet's strategic decision to simply ignore the patents, and Callaway Golf would be

left without a remedy until, perhaps, a damages trial at some unknown time in the future.

Conversely, issuing an injunction and denying a stay might obviate the need for that trial

altogether, and certainly would not irreparably harm Acushnet. *Fisher-Price, Inc. v. Safety 1st,*

---

[7]

# REDACTED

*Inc.,* 279 F. Supp.2d 526, 529-530 (D. Del. 2003) (*citing, Crucible, Inc. v. Stora Kopparbergs*

*Bergslags AB,* 594 F. Supp. 1249, 1264 (W.D.Pa.1985)), *affirmed in relevant part,* 793 F.2d

1565 (Fed.Cir.1986) ("[The] plaintiff now is entitled to its injunction and [the defendant],

therefore, should not be heard to complain of that which it had every reason to anticipate would

be the result if it lost its gamble.").

Indeed, this Court has repeatedly held that stays are not warranted for companies in

Acushnet's position. *See, e.g., Arthrocare Corp. v. Smith & Nephew, Inc.,* 315 F. Supp. 2d 615,

619 (D. Del. 2004) (Robinson, J.) (reversed-in-part on other grounds) (denying stay of injunction

in part because "one who elects to build a business on a product found to infringe cannot be

heard to complain if an injunction against continuing infringement destroys the business so

elected," *quoting, Windsurfing Int'l, Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 (Fed. Cir. 1986));[8]

*Honeywell Intern., Inc. v. Universal Avionics Systems Corp.,* 397 F. Supp. 2d 537, 550 (D. Del.

2005) (Thynge, J.) (denying stay of a permanent injunction in part because infringer would not

be irreparably injured absent a stay because it was financially solvent); *Philips Electronics N.A.*

*Corp. v. Contec Corp.,* 2004 WL 2009370, *2 (D. Del) (Jordan, J.) (denying stay of an injunction

even if an infringer would be prevented from fulfilling existing orders for the infringing product

because "the loss of customers or business built upon the sale and use of infringing products does

not amount, in the context of a patent infringement suit, to irreparable harm from which [the

defendant] should be shielded"). Granting a stay in this situation would send the message to

---

[8] Any harm that Acushnet would face in this case is negligible compared to the harm that other
companies faced when injunctions threatened the viability of an entire business, yet were
nevertheless entered (and not stayed), such as in *Windsurfing Intl.* Moreover, Acushnet is part of
a huge conglomerate, Fortune Brands, and Acushnet, itself, also sells numerous products (clubs,
putters, apparel gloves, bags, shoes, and many different golf balls) that are not impacted by the
proposed injunction. [*See* D.I. 412 at 41.]

10

# REDACTED

every infringer that it is wiser to continue infringement rather than implement non-infringing

alternatives because the very fact of continuing infringement can later be used to delay the entry

of an injunction.[9]

### C.    Acushnet's Continuing Infringement Causes Callaway Golf to Suffer Irreparable Harm

Callaway Golf has detailed elsewhere and will not repeat the irreparable harm it has

endured, and will continue to suffer, due to Acushnet's continuing infringement.  [*See* D.I. 412 at

25-37.].[10]  However, Acushnet's motion presents four reasons why Callaway Golf allegedly will

not suffer any harm if the injunction is stayed.  Callaway Golf responds to these below.

#### 1.    Additional Delay During a Stay Would Not be for Merely a Few Months, and Would Result in Further Irreparable Harm

Acushnet argues that Callaway Golf can be compensated monetarily while Acushnet

continues to go on infringing and that allowing Callaway Golf to collect "few more months of

monetary damages does no harm."  Mtn. to Stay at 7.  Acushnet is mistaken.

Second, during this period

of time, Acushnet's activities will result in continued irreparable harm to Callaway Golf for the

---

[9]

[10] Other relevant material responsive to Acushnet's arguments regarding irreparable will be set forth at parts II.C & E of Callaway Golf's reply brief in support of its injunction motion to be filed on March 14, 2008.

# REDACTED

reasons addressed in Callaway Golf's briefing in support of its motion for injunction. [D.I. 412 at 25-37.] Third, given the sheer scale of Acushnet's infringement, it is not at all clear, as Acushnet's argument assumes, that Acushnet can easily or promptly pay the ultimate damages award.

### 2.      Callaway Golf and Acushnet are Direct Competitors

Acushnet claims that because Callaway Golf no longer practices the claims, it is not entitled to injunctive relief. This argument is both misleading and irrelevant. It is misleading because it masks the fact that Callaway Golf practiced the claims for years, and continues to utilize the basic pioneering approach of a solid-core, ionomer inner-layer, and polyurethane outer cover.[11] Only recently has Callaway Golf made technological advances that allow for even thinner outer covers of polyurethane materials which result in its golf balls being slightly outside certain of the claim limitations. [D.I. 455 at 28 (further addressing this issue).] The argument is

---

[11] In an advertisement released in the April addition of Golf Digest, Acushnet continues to tout the same core technology that Sullivan invented back in the early 1990's:

> Ten years ago, most golf balls played on the PGA Tour were a bad choice for the vast majority of amateur golfers. Soft balata covers were not durable enough and high driver and iron spin reduced accuracy and distance. In contrast, the ***multi-layer, urethane covered golf balls*** played today on the PGA Tour are a good choice for most amateur golfers. With Pro V1 and Pro V1x, ***players no longer have to trade-off distance and durability for spin, feel and control around the green.***

[Halkowski Decl. Ex. E. (*Golf Digest Magazine*, April 2008) (also stating that the Pro V1 golf balls "have a thin, soft urethane cover that generates high spin for excellent control and short game performance").]

# REDACTED

also irrelevant because, as the Federal Circuit established in *Rite Hite* and reiterated in a long line of cases thereafter, one need not practice a patent in order to suffer real and direct marketplace harm from a competitor who is infringing it. *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1546-47 (Fed. Cir. 1995). There is no dispute that Callaway Golf and Acushnet directly compete for sales of premium golf balls. Indeed, Callaway Golf holds the number two position in the market behind Acushnet. [PX 1175 at AB 0118086-90 (listing Callaway as Acushnet's top competitor in the ball market)] The relevant inquiry is not whether the patentee has a product covered by the patent's claims; rather the critical question is whether the patentee is competing head-to-head against the infringer such that there is a high likelihood of irreparable harm in the marketplace. The answer to that question with regard to Acushnet's infringing Pro V1 golf balls and Callaway Golf's competing premium golf balls is "yes", for all the reasons set forth in Callaway Golf's briefing in support of its motion for an injunction. [D.I. 412 at 25-39; *see also, supra*, n.10.]

### 3. There was no delay in filing suit; Callaway Golf and Spalding were simply unwilling to breach the 1996 Settlement Agreement as Acushnet Did

Contrary to Acushnet's revisionist view of history, there was no undue delay in the filing of this suit. The "delay" disparaged by Acushnet flowed largely from Callaway Golf and Spalding – unlike Acushnet – proceeding in accordance with the 1996 Settlement Agreement. [*See generally* D.I. 347 at 23-29 (Court's Order and Opinion concluding Acushnet breached the 1996 Settlement Agreement); D.I. 199, Ex. 1.]

13

# REDACTED

Just as Acushnet ignored the Agreement when it unlawfully initiated the reexaminations, it now ignores the Agreement to suit its purpose in seeking a stay.

The facts showing how the Agreement required the vast majority of the "delay" about which Acushnet now complains are undisputed.

---

[12]  Rather than belabor all the facts known to the Court from the summary judgment briefing in this case, Callaway Golf merely summarizes the relevant points here.  For a more thorough discussion of the facts surrounding the negotiations regarding the 1996 Settlement Agreement, Callaway Golf respectfully refers to the Court's Order that concluded Acushnet breached the Agreement, D.I. 347 at 23-29, as well as the briefing that lead to that ruling. D.I. 198, 240, 257.]

13

# Redacted In It's Entirety

**REDACTED**

Finally, the cases that Acushnet relies upon for the proposition that delay defeats a stay (*Siemens*; *Docusign*, *High Tech* and *Polymer Tech)* are all inapposite for the same reason:  all are cases addressing ***preliminary*** injunctions.  [D.I. 434 at 14.]  Whether to stay a preliminary injunction issued on much less than a full record is vastly different than deciding whether to stay an injunction where, after a full and fair trial on the merits, a jury has determined that an admitted infringer is violating valid patents.

---

14

16

# REDACTED

    **4.**      **Spalding/Callaway Golf's alleged willingness to explore potential licensing of the patents-in-suit does not support Acushnet's argument that Callaway Golf suffered no harm**

Neither Spalding nor Callaway Golf has *ever* licensed the patents-in-suit.

Turning from the facts to the law, Acushnet is wrong that any willingness to discuss licensing, particularly as part of contractual obligations pursuant to a Settlement Agreement, is dispositive of Callaway Golf's ability to show irreparable harm. [*See* Mtn. to Stay at 6; D.I. 434 at 12-14.] The Supreme Court in *eBay* rejected a categorical rule that any alleged willingness by a patentee to license a patent or "its lack of commercial activity in practicing the patents" was enough to establish that the patentee would not suffer irreparable harm in the absence of an injunction. *eBay*, 547 U.S. 388, 126 S.Ct. 1837, 1840 (2006).[15] "[T]raditional equitable principles do not permit such broad classifications." *Id.*

---

[15] In its opposition, Acushnet cites to three Federal Circuit cases, *Polymer Technology, Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996), *High Technology Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551 (Fed. Cir. 1995), and *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646 (Fed. Cir. 1987), to support its argument that a party's willingness to license its patents is incompatible with a finding of irreparable harm. However, all of these cases are pre-*eBay*, and all involve ***preliminary*** injunctions.

Since *eBay*, numerous district courts have granted permanent injunctions despite the patentee's willingness to license, and in some cases actually licensing, its patented technology. *See e.g.*, *Novozymes A/S v. Genencor Int'l., Inc.*, 474 F.Supp.2d 592, 603, 612-613 (D. Del. 2007) (finding that plaintiff would suffer irreparable harm, and granting permanent injunction against defendant despite fact that plaintiff had licensed its "core technology" when it was worth doing so); *Commonwealth Scientific And Industrial Research Org. v. Buffalo Tech., Inc.*, 492 F.Supp.2d 600, 604-06 (E.D. Tex. 2007) (finding that plaintiff, which was nothing more than a non-competing licensor, would suffer irreparable harm if defendant's infringing activities were not permanently enjoined); *Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*, 2006 WL 3813778 *5 (S.D. Tex.) (finding that the direct competitor/patentee would suffer irreparable harm if the defendant's infringing activities were not permanently enjoined, despite testimony in the record that patentee was willing to license the patented technology to the defendant and others on fair terms.); *see also Smith & Nephew, Inc. v. Synthes* (U.S.A.), 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006) (although plaintiff has not been willing to accept royalty-type damages in lieu of market exclusivity, "[e]ven if it were, a plaintiff's willingness to license its patent is not sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue" (citing *eBay*)). These cases have found that harms, such as – (i) frustrating the patentee's right to exclude (even in light of *eBay*), (*see Novozymes*, 474 F. Supp. 2d at 612-613); (ii) lost reputation and goodwill, lost opportunities to develop additional research capabilities, lost ability to accelerate projects, lost funding to develop new intellectual property, (*see CSIRO*, 492 F. Supp. 2d at 604); and (iii) forcing a compulsory license that does not contain any of the commercial business terms typically used by a patent holder to control its technology or limit encroachment on its market share, (*see Transocean*, 2006 WL 3813778 at *5) – all

constitute irreparable harm that cannot be compensated through legal remedies. *See also H.H.*

*Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987) ("The nature of the

patent grant ... weighs against holding that monetary damages will always suffice to make the

patentee whole, for the principal value of a patent is its statutory right to exclude.").

In addition, many of the opinions issued after *eBay* have focused on Justice Kennedy's

concurrence, which specifically described the situation where a "patented invention is but a small

component of the product the companies seek to produce and the threat of an injunction is

employed simply for undue leverage in negotiations" *eBay*, 126 S.Ct. at 1842. But in contrast to

the situation described by Justice Kennedy, the cases where district courts have found irreparable

harm despite licensing activities by the patentee often present the situation where the patented

feature relates to the "core functionality" of the infringing product, and is not merely a small

component. *See Commonwealth Scientific*, 492 F. Supp. 2d at 606; *Transocean*, 2006 WL

3813778 at *5; *see also IMX, Inc. v. LendingTree*, LLC, 469 F. Supp. 2d 203, 225 (D. Del. 2007)

(when "defendant's infringing use of plaintiff's technology is not limited to a minor component

of the [infringing product]; ... [t]his factor is also considered in the evaluation of irreparable

harm, and weighs in favor of an injunction."). Here, as the trial testimony and Acushnet's own

documents show, the patents-at-issue relate to the core functionality[16] of Acushnet's infringing

---

[16] Acushnet's advertisement in the April 2008 edition of Golf Digest plainly acknowledges that it is the performance of the Pro V1 – performance achieved via the use of the Sullivan inventions that govern the construction of the golf ball – that sets it apart:

> Ten years ago, most golf balls played on the PGA Tour were a bad choice for the vast majority of amateur golfers. Soft balata covers were not durable enough and high driver and iron spin reduced accuracy and distance. In contrast, the ***multi-layer, urethane covered golf balls*** played today on the PGA Tour are a good choice for most amateur golfers. With Pro V1 and Pro V1x, players no longer have to trade-off distance and durability for spin, feel and control around the green.

products and are central to the success of Acushnet's infringing products. [*See* D.I. 412 at 37.] This factor supports Callaway Golf's claim that it will suffer irreparable harm, and further supports entry of a permanent injunction against Acushnet. *See Commonwealth Scientific*, 492 F. Supp. 2d at 606; *Transocean*, 2006 WL 3813778 at *5; *see also IMX*, 469 F.Supp.2d at 225.

Moreover, as noted above, Callaway Golf will suffer irreparable harm to its reputation and goodwill through Acushnet's (and potentially others') continued knowing infringement of Callaway Golf's patent rights, and continued disparagement of Callaway Golf, its patents, and these proceedings. [*See* Halkowski Decl. Ex. I (February 20, 2008 letter from Mr. Uihlien to "Valued Customers"); Ex. H (Letter to Professional Golfers); Ex. J (Transcript of Fortune Brands 4th Quarter Earnings Call);[17] D.I. 412 at 34-37.]

### D.    The Public Interest Is Served By Enforcing Patent Rights

Both this Court and the Federal Circuit have recognized "the strong public policy favoring the enforcement of patent rights."[18]  *See, e.g., PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1567 (Fed. Cir. 1998); *Philips Electronics N.A. Corp. v. Contec Corp.,* 2004 WL 2009370 (D. Del) (Jordan, J.) (denying stay of injunction, in part, because public policy favors enforcement of patent rights); *Honeywell Intern., Inc. v. Universal Avionics*

---

[Halkowski Decl., Ex. E (emphasis added) (also noting the Pro V1 balls have a "thin, soft urethane cover that generates high spin for excellent control and short game performance".]

[17] Even Fortune Brands, Acushnet's parent corporation, perpetuates the misleading notion that because the ball was for sale prior to the first patent's issuance that that in some way insulates Acushnet from liability. [Halkowski Decl., Ex. J (Transcript of Fortune Brands 4th Quarter Earnings Call) at 9-10.]

[18] Ironically, Acushnet, too, believes that intellectual property rights should be respected and strongly enforced – "Acushnet Company expects that others will respect its intellectual property rights. Acushnet Company vigorously enforces its intellectual property rights, whether infringement takes the form of "knock-off" products, unauthorized use of trademarks or copyrights or in any other manner." [Halkowski Decl. Ex. K (excerpt from Acushnet website).]

*Systems Corp.*, 397 F.Supp.2d 537, 548 (D. Del. 2005) (Thynge, J.) (denying stay of injunction, in part, because public interest lies in favor of protecting patent rights). Acushnet's request for a stay ignores the public interest in the enforcement of patent rights.

Acushnet argues that a stay should be granted because of its belief that it will win on appeal. Yet, Acushnet's post-trial motions and appeal brief are simply a re-hash of combinations of prior art references that have been rejected by both the Court (in the context of summary judgment) and the jury. There is no reason to believe that Acushnet will later prevail nevertheless and, thus, no stay is warranted.

Lastly, Acushnet also argues that because the PTO has issued interim decisions regarding the claims at issue, public policy weighs in favor of a stay. Acushnet, in essence, wants to be further rewarded for breaching the 1996 Settlement Agreement. [*See* D.I. 412 at 34-36 (addressing irreparable harm caused by Acushnet's breach).] It is difficult to imagine how Acushnet could rely upon its unlawful actions as advancing the public interest – much less how such unlawful actions would support Acushnet's request for the Court to exercise its equitable discretion in Acushnet's favor.[19] Public policy interests are advanced by enforcing valid patents

---

[19] Acushnet cites an unpublished opinion, *Standard Havens Prods. v. Gencor Indus. Inc.,* No. 93-1208, 1993 U.S. App. LEXIS 11963 (Fed. Cir. May 21, 1993), to support its argument that any permanent injunction should be stayed during the pendency of the reexaminations. However, in *Standard Havens* the patent office process was much further along when the stay issued – the Patent Office in that case had already issued a final office action that had been affirmed by the BPAI and that was set to be heard on appeal at the District Court level. Therefore, in *Standard Havens* two different district courts were involved in the same matter whereas, here, this suit is at the post-trial stage and the reexaminations continue to be subject to a lengthy administrative process. *MercExchange, L.L.C. v. eBay, Inc.,* 500 F.Supp.2d 556, 564 (E.D.Va. 2007) (commenting on the advanced stage of the reexamination process in *Standard Havens* as part of its basis for distinguishing the case and denying eBay's request for a stay). In fact, the PTO has yet to issue an appealable action in these matters and any decision by even the BPAI is at best more than a year away and any appeal to the Federal Circuit would not occur for years.

and contracts – not by rewarding those that breach contracts and knowingly infringe patents.

Thus, this factor also weighs strongly in favor of entering the injunction now.

## III.    CONCLUSION

Acushnet has now had a full and fair opportunity to present its case to an impartial jury,

and it has lost. Since all of the factors weigh against the issuance of a stay, Callaway Golf

respectfully submits that it is time to enforce the patents and enjoin Acushnet now.

---

Second, the re-examination in *Standard Havens* was the rare case (1%) where the re-examination was initiated *sua sponte* by the patent commissioner. *Standard Havens Products Inc. v. Gencor Indus., Inc.* 897 F.2d 511, 514 n.2 (Fed. Cir. 2000).

Third, little weight should be afforded *Standard Havens* because, not only is the opinion unpublished, it is also provides limited analysis. *MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 565 (E.D.Va. 2007) (further distinguishing and commenting upon the weight to give the unpublished and sparse opinion).

Finally, for all the reasons previously set forth regarding the nature and limitations of the PTO's reexamination process, including its use of the broadest – as opposed to the correct – claim interpretation, Callaway Golf submits that, in this case, it makes little sense to delay any action regarding this matter in deference to the unlawful reexaminations being pursued by Acushnet.

Dated: March 13, 2008                    FISH & RICHARDSON P.C.


By: */s/ Thomas L. Halkowski*
     Thomas L. Halkowski (#4099)
     919 N. Market Street, Suite 1100
     P.O. Box 1114
     Wilmington, DE 19899-1114
     Tel: (302) 652-5070
     Fax: (302) 652-0607

     Frank E. Scherkenbach
     225 Franklin Street
     Boston, MA 02110-2804
     Tel: (617) 542-5070
     Fax: (617) 542-8906

     Roger A. Denning
     12390 El Camino Real
     San Diego, CA 92130
     Tel: (858) 678-5070
     Fax: (858) 678-5099

**ATTORNEYS FOR PLAINTIFF**
**CALLAWAY GOLF COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2008, the attached document was electronically filed with the Clerk of Court using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on March 13, 2008, I have Electronically Mailed the document to the following person(s):

**BY EMAIL AND BY HAND**                   Attorneys for Defendant
                                          ACUSHNET COMPANY

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE 19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

**BY EMAIL**                              Attorneys for Defendant
                                          ACUSHNET COMPANY

Alan M. Grimaldi, Esq.
Joseph P. Lavelle
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

                          */s/ Thomas L. Halkowski*
                          Thomas L. Halkowski

1