# EXHIBIT 1

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,122 | 01/17/2006 | 6506130 | 00364.0004RXUS02 | 6325 |

7590        06/24/2008

Dorothy P. Whelan
Fish & Richardson
P. O. Box 1022
Minneapolis, MN 55440-1022

| EXAMINER |
|---|
| GELLNER, JEFFREY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/24/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Joseph P. Lavelle
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

**MAILED**

JUN 2 4 2008

CENTRAL REEXAMINATION UNIT

# Transmittal of Communication to Third Party Requester
## *Inter Partes* Reexamination

REEXAMINATION CONTROL NUMBER *95/000,122*.

PATENT NUMBER *6,506,130 B2*.

TECHNOLOGY CENTER *3999*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070 (Rev.07-04)

| **Right of Appeal Notice**<br>**(37 CFR 1.953)** | Control No.<br><br>95/000,122 | Patent Under Reexamination<br><br>6506130 | |
|---|---|---|---|
| | Examiner<br><br>Jeffrey L. Gellner | Art Unit<br><br>3993 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --**

Responsive to the communication(s) filed by:
Patent Owner on <u>4 April 2008</u>
Third Party(ies) on <u>5 May 2008</u>

Patent owner and/or third party requester(s) may file a notice of appeal with respect to any adverse decision with payment of the fee set forth in 37 CFR 41.20(b)(1) within **one-month or thirty-days (whichever is longer)**. See MPEP 2671. In addition, a party may file a notice of **cross** appeal and pay the 37 CFR 41.20(b)(1) fee **within fourteen days of service** of an opposing party's timely filed notice of appeal. See MPEP 2672.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

If no party timely files a notice of appeal, prosecution on the merits of this reexamination proceeding will be concluded, and the Director of the USPTO will proceed to issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

The proposed amendment filed <u>4 April 2008</u>   ☐ will be entered   ☒ will not be entered*

*Reasons for non-entry are given in the body of this notice.

1a. ☒ Claims <u>1-6</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims].
4. ☐ Claims _____ are patentable. [Amended or new claims].
5. ☒ Claims <u>1-6</u> are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____ ☐ are acceptable. ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is ☐ approved. ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d) or (f). The certified copy has:
   ☐ been received. ☐ not been received. ☐ been filed in Application/Control No. _____.
10. ☐ Other _____

<u>**Attachments**</u>
1. ☒ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

Application/Control Number: 95/000,122                                    Page 2
Art Unit: 3993

## Detailed Action

This Office Action is in response to the Patent Owner's Response received 4 April 2008,

and the Third Party Requester's Comments received 5 May 2008.

## Amendment to the claims

As discussed below in the Examiner's Response, the amendment to the claims is not

entered.

## Statutory Basis for Grounds of Rejections - 35 USC §§ 102 and 103

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

## Third Party Requester's Grounds of Rejections

### Re. Claim 1

**Ground #1.**  The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b)

as being anticipated by Proudfit, U.S. Pat. No. 5,314,187 (Proudfit).

**Ground #2.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sullivan et al., U.S. Pat. No. 5,803,831 (Sullivan).

**Ground #3.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt, U.S. Pat. No. 4,431,193 (Nesbitt).

**Ground #4.** In the alternative to Ground #3, the requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637).

**Ground #5.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Wu, U.S. Pat. No. 5,334,673 (Wu).

**Ground #6.** The requester submits that claim 1 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor et al., U.S. Pat. No. 4,674,751 (Molitor '751).

*Re. Claim 2*

**Ground #7.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Proudfit.

**Ground #8.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sullivan.

**Ground #9.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt.

**Ground #10.** In the alternative to Ground #9, the requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '637.

**Ground #11.** The requester submits that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Wu.

**Ground #12.**  The requester submits that claim 2 is unpatentable under 35 U.S.C.

§ 103(a)  as being obvious over Nesbitt in view of Molitor '751.

*Re. Claim 3*

**Ground #13.**  The requester submits that claim 3 is unpatentable under 35 U.S.C.

§ 102(b) as being anticipated by Proudfit.

**Ground #14.**  The requester submits that claim 3 is unpatentable under 35 U.S.C.

§ 102(b) as being anticipated by Sullivan.

**Ground #15.**  The requester submits that claim 3 is unpatentable under 35 U.S.C.

§ 102(b) as being anticipated by Nesbitt.

**Ground #16.**  In the alternative to Ground #15, the requester submits that claim 3 is

unpatentable under 35 U.S.C. § 103(a)  as being obvious over Nesbitt in view of Molitor '637.

**Ground #17.**  The requester submits that claim 3 is unpatentable under 35 U.S.C.

§ 103(a)  as being obvious over Nesbitt in view of Wu.

**Ground #18.**  The requester submits that claim 3 is unpatentable under 35 U.S.C.

§ 103(a)  as being obvious over Nesbitt in view of Molitor '751.

*Re. Claim 4*

**Ground #19.**  The requester submits that claim 4 is unpatentable under 35 U.S.C.

§ 102(b) as being anticipated by Sullivan.

**Ground #20.**  The requester submits that claim 4 is unpatentable under 35 U.S.C.

§ 103(a) as being obvious over Proudfit in view of Molitor '637.

**Ground #21.**  The requester submits that claim 4 is unpatentable under 35 U.S.C.

§ 103(a) as being obvious over Proudfit in view of Wu.

**Ground #22.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Molitor '751.

**Ground #23.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 102(b) as being anticipated Nesbitt.

**Ground #24.** In the alternative to Ground #23, the requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '637.

**Ground #25.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Wu.

**Ground #26.** The requester submits that claim 4 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '751.

*Re. Claim 5*

**Ground #27.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sullivan.

**Ground #28.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 102(b) as being anticipated Nesbitt.

**Ground #29.** In the alternative to Ground #28, the requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '637.

**Ground #30.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Wu.

**Ground #31.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '751.

**Ground #32.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Molitor '637.

**Ground #33.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Wu.

**Ground #34.** The requester submits that claim 5 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Molitor 751.

*Re. Claim 6*

**Ground #35.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sullivan.

**Ground #36.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 102(b) as being anticipated Nesbitt.

**Ground #37.** In the alternative to Ground #36, the requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '637.

**Ground #38.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Wu.

**Ground #39.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Nesbitt in view of Molitor '751.

**Ground #40.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Molitor '637.

**Ground #41.** The requester submits that claim 6 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Proudfit in view of Wu.

Application/Control Number: 95/000,122                                    Page 7
Art Unit: 3993

**Ground #42.** The requester submits that claim 6 is unpatentable under 35 U.S.C.

§ 103(a) as being obvious over Proudfit in view of Molitor 751.

## Summary of Grounds Adopted vel non

For Claim 1:
      Adopted: 1 and 3-6.
      Not Adopted: 2.

For Claim 2:
      Adopted: 7 and 9-12.
      Not Adopted: 8.

For Claim 3:
      Adopted: 13 and 15-18.
      Not Adopted: 14.

For Claim 4:
      Adopted: 20-26.
      Not Adopted: 19.

For Claim 5:
      Adopted: 28-34.
      Not Adopted: 27.

For Claim 6:
      Adopted: 36-42.
      Not Adopted: 35.

In sum, Proposed Grounds 1, 3, 4, 5-7, 9-13, 15-18, 20-26, 29-34 and 36-42 are **Adopted**

by the Examiner.

In sum, Proposed Grounds 2, 8, 14, 19, 27, 28, and 35 are **Not Adopted** by the Examiner.

## *Summary of the Grounds of Rejections*

Application/Control Number: 95/000,122                                                    Page 8
Art Unit: 3993

Claims 1-3 are rejected under 35. U.S.C. § 102(b) as being anticipated by Proudfit, U.S.

Pat. No. 5,314,187 (Proudfit).

Claims 1-3 are rejected under 35. U.S.C. § 102(b) as being anticipated by Nesbitt, U.S.

Pat. No. 4,431,193 with incorporation by reference of Molitor US 4,274,637 (Nesbitt).

Claims 1-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 (Nesbitt) in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637).

Claims 1-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 (Nesbitt) mentioning Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637) in

view of Wu, U.S. Pat. No. 5,334,673, (Wu) as evidenced by Exhibit C.

Claims 1-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt, U.S.

Pat. No. 4,431,193 (Nesbitt) mentioning Molitor et al., U.S. Pat. No. 4,274,637 (Molitor '637) in

view of Molitor et al., U.S. Pat. No. 4,674,751 (Molitor '751).

Claims 4-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit,

U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,274,637 (Molitor

'637).

Claims 4-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit,

U.S. Pat. No. 5,314,187 (Proudfit) in view of Wu, U.S. Pat. No. 5,334,673 (Wu).

Claims 4-6 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Proudfit,

U.S. Pat. No. 5,314,187 (Proudfit) in view of Molitor et al., U.S. Pat. No. 4,674,751 (Molitor

'751).

### Proposed Third Party Requester's Rejections

#### *Issue of Inherency*

Multiple proposed rejections that the third party requester submits are based on the inherent properties of the materials.  In order to prove the inherent properties of these materials the requester has provided "product data sheets" for the following materials: SURLYN (Exhibit I) and ESTANE (Exhibit J).  These "product data sheets" have publication dates later than the critical date of the claimed inventions.  Also, the third party requester has provided other Exhibits to prove or evidence inherency, e.g. Exhibit C (description of a golf product performance characteristics); Exhibits G and L (patent owner's admissions).

MPEP § 2124 lists exceptions to the rule that the publication date must precede the critical data of the claimed invention: "...facts [that] include the characteristics and properties of a material...".  The Shore D hardness and flexural modulus are characteristics and properties of a material.  Thus, it is appropriate to use these "product data sheets" to show such a universal fact as the inherent properties of a known material.  Moreover, see also MPEP § 2112.01: "Where the claimed and prior art products are identical or substantially identical in structure or composition, or are produced by identical or substantially  identical processes, a prima facie case of either anticipation or obviousness has been established. *In re Best*, 562 F.2d 1252, 1255, 195 USPQ 430, 433 (CCPA 1977)."  And, "Products of identical chemical composition can not have mutually exclusive properties." "A chemical composition and its properties are inseparable.  Therefore, if the prior art teaches the identical chemical structure, the properties applicant discloses and/or claims are necessarily present. *In re Spada*, 911 F.2d 705, 709, 15 USPQ2d 1655, 1658 (Fed. Cir. 1990)."

Application/Control Number: 95/000,122                                    Page 10
Art Unit: 3993

*Copendency*

As discussed in the Decision granting reexamination of the '130 Patent, the request

indicates on pages 12 and 13 that the '130 Patent is not an appropriate continuation application

because it lacks copendency with application No. 08/870,585 that went abandoned on Feb. 7,

2001 when the Applicant failed to file an appeal brief with two months of a notice of appeal.

However, a review of the Office's records show that the Applicant filed a one month extension

of time; an additional two months extension of time; and a notice of appeal which provides an

Applicant with two months of time.  Therefore, the Applicant extended the response time to the

final rejection for five months which allow the Applicant to file a response to the final rejection

up until April 13, 2001.  Application No. 09/832,154, the application to which the '130 Patent

issued therefrom, was filed on April 10, 2001.  Therefore, the Patent Owner of the '130 Patent

maintained proper copendency between the '585 application and the '154 application.


Re. Claim 1

**Proposed Third Party Requester Rejection:  Ground #1**

The requester submits on pages 15-17 in the request that claim 1 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Proudfit.  It should be noted that the requester's claim

chart on pages 16 and 17 does not reflect the actual claim language, see the last limitation.  Thus,

the Examiner has had to generate a new claim chart and comparison of the prior art to said chart.

Claim 1 is rejected under 35 U.S.C. 102(b) as being anticipated by Proudfit, as evidenced

by Exhibit I (SURLYN Thermoplastic Resins Product Information Sheet).

Below is a claim chart identifying the claim limitations and where Proudfit discloses the

claim limitations.

| Claim 1 | Proudfit |
|---|---|
| A golf ball comprising: | "This invention relates to **golf balls**, and more particularly, to a golf ball having a two-layer cover." (Proudfit, col. 1, ll. 11-12.) |
| a core; | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid **core** 11 and a cover 12 which comprises a relatively hard inner layer 13 of one or more ionomer resins and a relatively soft outer layer 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.)<br><br>"Two specific solid core compositions used with the new two-layer cover hand the composition described in Table 1.  One core was used in a golf ball which was designated as a 90 compression ball, and the other core was used in a golf ball which was designated as a 100 compression ball." (Proudfit, col. 7, ll. 51-55.) |
| an inner cover layer having | "FIG. 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises a relatively hard **inner layer** 13 of one or more ionomer resins ...." (Proudfit, col. 7, ll. 21-24.) |
| a Shore D hardness of 60 or more molded on said core, | The composition of the inner cover layer is described in Table 6.<br><br>**TABLE 6**<br><br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.)<br><br>SURLYN 8940 has a **Shore D hardness of 65**; SURLYN 9910 has a **Shore D hardness of 64**, see Exhibit I.  Therefore, this cover blend has a hardness of 60 or more because materials used to make this inner layer have Shore hardness greater than 60.<br><br>"The inner layer can be molded in one of two methods:<br>1. Injection molded over the core in a manner which is conventionally used to injection mold ionomers over a solid core.<br>2. Injection mold halfshells, place halfshells over the core, |

Application/Control Number: 95/000,122                                    Page 12
Art Unit: 3993

| | |
|---|---|
| | compression mold the inner cover over the core." (Proudfit, col. 8, ll. 32-38.) |
| the inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | The composition of the inner cover layer is described in Table 6.<br><br>**TABLE 6**<br><br>Composition of Inner Layer of Cover<br>(Parts by Weight)<br><br>| Ionomer Type | Blend Ratio |<br>|---|---|<br>| Sodium- Surlyn 8940 | 75% |<br>| Zinc- Surlyn 9910 | 25% |<br><br>(Proudfit, col. 8, ll. 22-30.)<br><br>SURLYN 8940 and 9910 are both low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.<br><br>Proudfit either incorporates by reference these chemical properties or the materials used within the Proudfit golf ball inherently have these chemical properties. For instance, Proudfit incorporates by reference U.S. Pat. No. 4,690,981 in the background of its invention. (Proudfit, col. 1, ll. 39-43.) The '981 Patent discloses the preferable amount of **unsaturated carboxylic acid is "from about 5[%] to about 15% by weight**." ('981 Patent, col. 3, ll. 59-60.) If Proudfit discloses using blends of SURLYN as the chemical for making the inner cover and the '981 Patent is the formulation for the ionomer known in the art as SURLYN, then inherently grades of SURLYN such as SURLYN 8940 and 9910 would be low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid. |
| an outer cover layer having | "FIG 1 illustrates a two-piece golf ball 10 which includes a solid core 11 and a cover 12 which comprises .... a relatively soft **outer layer** 14 of polymeric material." (Proudfit, col. 7, ll. 21-24.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | "... an outer layer of soft material such as balata or a blend of balata and other elastomers." (Proudfit, col. 5, ll. 15-17.) An example of this blend is disclose in Table 7 reproduced below. |

| TABLE 7 |
| --- |
| Composition of Outer Layer (Parts by Weight) |

| | |
| --- | --- |
| Trans PolyIsoprene (TP-301) | 60.00 |
| Polybutadiene | 40.00 |
| Zinc Oxide | 5.00 |
| Titanium DiOxide | 17.00 |
| Ultramarine Blue color | .50 |
| Zinc DiAcrylate | 35.00 |
| Peroxide (Varox 230 XL) | 2.50 |
| Total | 160.00 |

Note that Trans PolyIsoprene is basically the chemical name for balata and Polybutadiene is one of the first types of synthetic rubber or elastomer. As described in the Rule 132 Declaration of Edmund A. Hebert in paragraph 7, the outer cover layer disclosed in Proudfit is the outer cover layer for the golf ball disclosed in Exhibit A to the Rule 132 Declaration and that **cover has a Shore D hardness of 52**. Thus, Proudfit's outer layer cover inherently has a Shore D hardness of less than 64.

| said outer cover layer comprising a relatively soft polymeric material selected from the group consisting of non-ionomeric thermoplastic and thermosetting elastomers. | "A golf ball cover in accordance with the invention includes ... an outer layer of soft material such as balata or a blend of balata and other elastomers. Preferably, the outer layer is a blend of balata and a thermally crosslinkable elastomer such as polybutadiene. **The balata and elastomer are crosslinked [(an indication that the material is a thermosetting material)]** during the molding of the ball by a crosslinker such as zinc diacrylate and a crosslinking initiator such as organic peroxide rather than using the conventional sulfur and RR2 crystals curing system for balata covers. The outer layer of the cover is completely crosslinked when the ball is removed from the mold, and subsequent processing steps can be performed in the same manner as on SURLYN covered balls." (Proudfit, col. 5, ll. 17-27.) |
| --- | --- |

This rejection of claim 1 based on Proudfit was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 1: Patent Owner's Argument received 30 April 2007

The crux of Patent Owner's argument that Proudfit (US 5,314,187) does not anticipate the claimed invention is centered on the inherency of Proudfit's outer layer (the balata layer)

having a Shore D value of 64 or less (Patent Owner's Response pages 24-26). In the rejection

adopted by the Examiner this inherency is shown by reference to the Hebert Declaration (*see*

**Proposed Third Party Requester Rejection: Ground #1,** *supra*) which in turn cites Exhibit A

(analysis, *i.e.* technical information, of the Wilson Ultra Tour Balata brand of golf balls). Patent

Owner attacks the Hebert Declaration because: (1) Hebert is employed by the Third Party

Requester which currently is in litigation with the Patent Owner so the declaration should be

viewed with suspicion (Patent Owner's Response at bottom of page 24 to top of page 25); (2) it

is not reasonable to conclude that the Wilson Ultra Tour Balata golf ball is representative of the

outer layer compositions of golf balls described generally in Proudfit and in Proudfit's Table 7,

in particular (Patent Owner's Response at 1st para. of page 26); (3) neither the Hebert

Declaration nor its Exhibit A state whether the proffered Shore D hardness value for the Wilson

Ultra Tour Balata golf ball was made on the ball, as Sullivan's claims require (Patent Owner's

Response at 2nd para. of page 26); and, (4) the data on the Wilson Ultra Tour Balata golf ball is

not competent evidence of what the Proudfit patent discloses (Patent Owner's Response at 3rd

para. of page 26).

Patent Owner also argues that Proudfit fails to disclose an inner cover layer having a

Shore D hardness, measured on the ball, of at least 60 (Patent Owner's Response at 4th para. of

page 26).

Ground 1: Third Party Requester's Comments received 30 May 2007

Third Party Requester responds that the Wilson Ultra Tour Balata golf ball is

representative of the properties of golf balls disclosed in the Proudfit patent (Third Party

Requester's Comments at middle to bottom of page 28). This is because both are three-piece

golf balls with an outer cover layer comprising cis-polybutadiene and synthetic balata (trans-

polyisoprene), with intermediate layers of sodium and zinc Surlyns, and with compressions of

100. Further, Wilson Ultra Tour Balata golf ball were "marked" with the number of the Proudfit

patent (Examiner notes that presumably the Third Party Requester means that the packaging

cited the Proudfit patent. Examiner further notes that a copy of this packaging was not seen by

the Examiner after reviewing the record).

In addition, the Third Party Requester states that it is irrelevant as to the scale used to

measure hardness of the outer cover because the value (52) given in the Hebert Declaration

would be below the claimed hardness, Shore D hardness of 64 or less, on any scale. Finally, the

Third Party Requester argues the inner cover of the Proudfit golf ball has the required hardness

because Table 6 of Proudfit sets forth for the inner cover material of a blend of Surlyns which

have the required hardness.


Ground 1: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 USC 102(b) with Proudfit is maintained. As to the arguments of the Patent

Owner concerning the Hebert Declaration, the Examiner considers this declaration to be proper

for showing the inherency of the hardness level of the outer cover layer.

Specifically, for Patent Owner's first argument, the Hebert Declaration was made with

the acknowledgement that false statements and the like are punishable by fine or imprisonment

Application/Control Number: 95/000,122                                    Page 16
Art Unit: 3993

and may jeopardize the validity of the patent (Hebert Declaration at para. 10).  Therefore, the

Examiner accepts the declaration as competent evidence.

For Patent Owner's second argument, when comparing the compositions of the outer cover

layers of the Wilson Ultra Tour Balata golf ball and the Proudfit's Table 7 both have as their

main constituents polybutadiene and trans-polyisoprene.  With similar compositions the two

layers would exhibit similar characteristics, including hardness (see MPEP 2112.01(II)).

For Patent Owner's third argument, the claim language of the '130 patent (the Sullivan

patent that is at issue) does not require the hardness of the outer layer to be measured when on

the ball.  The operative language of claim 1 is "an outer cover layer having a Shore hardness of

64 or less molded on said inner cover" at col. 22, lines 1-2.  The broadest reasonable

interpretation of this language is that the over cover layer has a Shore hardness of 64 or less and

is molded onto the inner cover.  The two limitations, hardness and molded, are distinct and not

linked.  This conclusion is strengthened by the fact that the specification of the '130 patent does

not disclose measuring hardness on the ball.

For Patent Owner's fourth argument, the Examiner considers the Wilson Ultra Tour

Balata golf ball to be competent evidence for Proudfit's patent because the two have similar

compositions and characteristics as discussed in the Third Party Requester's comments.

Finally, as to the Patent Owner's argument that Proudfit fails to disclose an inner cover

layer with the required hardness, Examiner agrees with the Third Party Requester that Table 6 of

Proudfit discloses a layer with the required hardness.


**Proposed Third Party Requester Rejection:  Ground #2.**

Application/Control Number: 95/000,122                                      Page 17
Art Unit: 3993

The requester submits on pages 18-19 in the request that claim 1 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Sullivan.

**This rejection is <u>not adopted</u> for the reasoning that based on the prosecution history**

**of the '130 Patent's copendency Sullivan '831 (Sullivan) is not prior art, see the Decision**

**granting reexamination, mailed 04-06-06, para. 9.**


Ground 2: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue the non-adoption of this rejection.


Ground 2: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not argue the non-adoption of this rejection.


Ground 2: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner maintains the non-adoption of this rejection for the reasoning stated above in

the section entitled: **Proposed Third Party Requester Rejection:  Ground #2.**


**Proposed Third Party Requester Rejection:  Ground #3.**

The requester submits on pages 20-24 in the request that claim 1 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Nesbitt.

In the request on pages 20 through 24 the third party requester proposes that claim 1 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637.  The third

party requester points out that Molitor '637 is incorporated by reference into Nesbitt because

Nesbitt refers to Molitor '637.  (See Nesbitt col. 3, ll. 54-60).

    This rejection is adopted essentially as proposed in the request.

    Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt with

incorporation by reference of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic

Resins Product Information Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

    Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 1 | Nesbitt with Molitor '637 (incorporated by reference) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract and FIGS. 1 & 2.) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or **core** form as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, ll. 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material..." (Nesbitt, col. 2, ll. 34-37.) |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of **molded hard**, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. Dupont de Nemours." (Nesbitt, col. 2, ll. 36-38.)<br><br>Per the '130 Patent: "Type 1605 SURLYN (now designated SURLYN 8940)." ('130 Patent, col. 2, ll. 46-47.)<br><br>Exhibit I: SURLYN 8940 has a **Shore D hardness of 65**. |
| the inner cover layer comprising a blend of two or more low acid ionomer resins containing no more | Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issues into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for |

| | |
|---|---|
| than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two **ionomer resins**: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34.) <br><br> See below for further explanation of how the % by weight and chemical composition limitations are taught. |
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. <br><br> ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet) <br><br> See below for Shore D hardness of 64 or less limitation explanation. |
| said outer cover layer comprising a relatively soft polymeric material selected from the group consisting of non-ionomeric thermoplastic and thermosetting elastomers. | Exhibit J: ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt incorporates by reference Molitor '637 as describing an

number of compositions suitable for the inner cover layer 14.  Of particular interest in this case

are Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and

SURLYN 1557. The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat.

No. 4,690,981. The preferred composition in the '981 Patent has "from **about 5[%] to about**

**15% by weight of unsaturated carboxylic acid.**" '981 Pat., col. 3, ll. 59-60. Those of ordinary

skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and

SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col.

6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66. Furthermore, the Patent Owner in the

Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in

Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight

percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi." See

'873 Patent, col. 2, ll. 43-50. Moreover, as shown in the "Properties Grid for Selected Industrial

Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is

toward the "Low % Acid" side of the graph. Thus, based on this evidence, Nesbitt incorporating

by reference Molitor '637 inherently teaches using as an inner layer at least one ionomer resin

having no more than 16% by weight of alpha, beta-unsaturated carboxylic acid.

Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made from a

thermoplastic polyurethane identified as ESTANE 58133. A review of the scientific literature

yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE

58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range claimed of Shore

D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 1 based on Nesbitt incorporating by reference Molitor '637 was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


Ground 3: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue this rejection.

Application/Control Number: 95/000,122                                    Page 22
Art Unit: 3993

Ground 3: Third Party Requester's Comments received 30 May 2007

The Third Party Requester argues that the language of Nesbitt at col. 3, lines 56-61, was a proper incorporation by reference of Molitor '637. In the 1st Office Action the Examiner stated that the language of Nesbitt was not a proper incorporation of reference because the perfecting root words of "incorporate" and "reference" were not in the reference statement (1st Office Action, pages 14-15). The Third Party Requester's rebuttal to this position in their Comments (received 30 May 2007) is that the standard used by the Examiner was not the standard for incorporation by reference during prosecution of the Nesbitt patent (Third Party Requester's Comments at pages 3 to top of page 5). The Third Party Requester bolsters this argument by citing two court decisions (Third Party Requester's Comments at pages 3 to top of page 5).

Ground 3: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Upon review, the Examiner agrees with the argument of the Third Party Requester and adopts the suggested rejection of this claim with Nesbitt with Molitor '637 incorporated by reference. The language of incorporation used in Nesbitt is found at col. 3, lines 54-61, and states that "Polymeric materials are preferably such as ionomer resins which are foamable. **Reference is made** to the application Ser. No. 155,658, of Robert P. Molitor issued into U.S. Patent No. 4,274,637 which describes a number of foamable compositions of a character which may be employed for one or both layers . . ." (emphasis added).

The pertinent language of incorporation by reference quoted in *In re Hughes* is found at 550 F.2d 1275 and states that "**Reference is made** to application Ser. No. 131,108 for complete

description of methods of preparing aqueous polymeric dispersions applicable in the hereinafter

described invention" (emphasis added). This language was held to incorporate '108.

The pertinent language of incorporation by reference quoted in *In re Voss* is found at 557

F.2d 816 and states that "**Reference is made** to United States Patent No. 2,920,971, granted to

S.D. Stookey '971, for a general discussion of glass-ceramic materials and their production"

(emphasis added). This language was held to incorporate '971.

Since the language in Nesbitt for incorporation by reference is virtually identical to the

language used in *In re Hughes* and *In re Voss,* the Examiner concludes that Nesbitt incorporates

by reference Molitor '637.


**Proposed Third Party Requester Rejection:  Ground #4.**

In the alternative, the requester submits on pages 20-24 in the request that claim 1 is

unpatentable under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637.

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic Resins Product Information

Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Molitor '637 discloses, teaches or suggests the claim limitations.

| Claim 1 | Nesbitt (primary) with Molitor '637 (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract and FIGS. 1 & 2.) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or **core** form as a solid body of resilient polymeric material or rubber-like material in |

| | |
|---|---|
| | the shape of a sphere." (Nesbitt, col. 2, ll. 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material..." (Nesbitt, col. 2, ll. 34-37.) |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of **molded hard**, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. Dupont de Nemours." (Nesbitt, col. 2, ll. 36-38.) <br><br> Per the '130 Patent: "Type 1605 SURLYN (now designated SURLYN 8940)." ('130 Patent, col. 2, ll. 46-47.) <br><br> Exhibit I: SURLYN 8940 has a **Shore D hardness of 65**. |
| the inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issues into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two **ionomer resins**: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34.) <br><br> See below for further explanation of how the % by weight and chemical composition limitations are taught. |
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) <br><br> Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. <br><br> ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J |

| | |
|---|---|
| | (ESTANE Thermoplastic Polyurethane Product Data Sheet) |
| | See below for Shore D hardness of 64 or less limitation explanation. |
| said outer cover layer comprising a relatively soft polymeric material selected from the group consisting of non-ionomeric thermoplastic and thermosetting elastomers. | Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of compositions suitable for the inner cover layer 14.  Of particular interest in this case are Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557.  The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981.  The preferred composition in the '981 Patent has "from **about 5[%] to about 15% by weight of unsaturated carboxylic acid.**"  '981 Pat., col. 3, ll. 59-60.  Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi."  See '873 Patent, col. 2, ll. 43-50.  Moreover, as shown in the "Properties Grid for Selected Industrial Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is toward the "Low % Acid" side of the graph.  Thus, based on this evidence, Nesbitt referencing

Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more than 16% by weight of alpha, beta-unsaturated carboxylic acid.

Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133. A review of the scientific literature yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range claimed of Shore D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE 58133 inherently meets the claim limitation of providing a outer cover layer of polyurethane material having a Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of materials that may adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins formed by the polymerization of vinyl chloride or by the copolymerization of vinyl chloride with unsaturated polymerizable compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene, polypropylene, polybutylene, transpolyisoprene, and the like, including copolymers of polyolefins; (3) polyurethanes such as are prepared from polyols and organic polyisocyanates; (4) polyamides such as polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene styrene copolymer; (6) acrylic resins as exemplified by the copolymers of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic rubbers such as the urethanes, copolymers of ethylene and propylene, and transpolyisoprene, block copolymers of styrene and cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

Thus, because it appears that to one of ordinary skill in the art at the time the invention

was created that the actual chemical composition of the material is not critical to the practice of

the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one

of ordinary skill in the art at the time the invention was made would find it obvious to substitute

one material for another material if both materials had substantially the same mechanical

properties.

This rejection of claim 1 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 4: Patent Owner's Argument received 30 April 2007

The Patent Owner argues that the combination of Nesbitt and Molitor '637 is improper

because: (1) Nesbitt's entire focus is on golf balls with all-ionomer resins, preferably foamable,

two-layer covers and references Molitor '637 for examples of foamable ionomer resins. Hence,

Nesbitt teaches away from the disclosure of Molitor '637's disclosure of non-ionomeric resins,

including polyurethane (Patent Owner's Response at middle of page 15 middle of page 16); (2)

in a deposition (Exhibit E) Nesbitt, himself, stated that he did not consider use of polyurethane as

an outer cover material (Patent Owner's Response at middle to bottom of page 16); (3) Nesbitt

combined with Molitor '637 is improper because their individually disclosed thicknesses for the

outer layer are divergent (Patent Owner's Response at top of page 17);  (4) neither reference

discloses a Shore D hardness of 64 or less for the outer layer measured on the ball with the

Examiner relying on commercial literature of ESTANE polyurethane (Exhibit J) for a hardness

value.  This value is not probative because hardness values of the same material will differ

depending upon the total construction of the ball (Patent Owner's Response at middle to bottom

of page 18);  and,  (5) the combination impermissibly uses hindsight construction by scouring the

prior art to locate individual claim elements (Patent Owner's Response at middle to bottom of

page 19).

Ground 4: Third Party Requester's Comments received 30 May 2007

    As to the Patent Owner's first argument, the Third Party Requester states that the plain

language of the Nesbitt patent is that the outer or inner layers can be of a synthetic polymeric

material and that Molitor '637 gives examples of synthetic polymeric materials, including

polyurethane (Third Party Requester's Comments at top of page 20; while the Third Party

Requester concentrates on natural materials the Examiner interprets this language to encompass

synthetic polymeric materials).

    As to the Patent Owner's second argument, the Third Party Requester states the Federal

Circuit takes a dim view of testimony for a patent's meaning of inventors long after the fact

citing *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys* (Third Party Requester's

Comments at middle of page 20).

    As to the Patent Owner's third argument, the Third Party Requester states that the ranges

of thicknesses in the two patents overlap, and, hence, a person of ordinary skill would find it

obvious to substitute one layer material for another (Third Party Requester's Comments at top to middle of page 21).

As to the Patent Owner's fourth argument, the Third Party Requester states that an expert in the art produced a three-piece golf ball with the core and inner cover of Nesbitt and the over, polyurethane, cover of Molitor '637. This ball exhibited shore hardness values that read on the claimed values (Third Party Requester's Comments at bottom of page 21 to top of page 22).

As to the Patent Owner's fifth argument, the Third Party Requester states that the combination of a ball with the core and inner layer of Nesbitt with the outer, polyurethane, layer of Molitor '637 is proper in light of the decisions in *ex parte Sullivan* and *KSR v. Teleflex* (Third Party Requester's Comments at page 14 to middle of page 19). In *Sullivan* a split panel of the BPAI held that ""[i]n applying the test for obviousness we conclude that the teachings of Wu clearly would have made it obvious at the time of the invention was made to a person of ordinary skill in the art to have modified Nesbitt's golf ball by using polyurethane as the outer cover material to achieve the expected benefits therefrom taught by Wu (i.e., to have the "click" and "feel" of balata; improved shear resistance and cut resistance; durability; and resiliency"" (Third Party Requester's Response at bottom of page 14; footnote omitted). In *KSR* a unanimous Court held that ""[c]ommon sense teaches . . . that . . . in many cases, a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle"" (Third Party Requester's Comments at middle of page 16).

Ground 4: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637 is

maintained. Although Nesbitt's emphasis (in his patent and deposition) may be on all-ionomer

resins, it is settled law that a patent teaches all that it discloses, including nonpreferred

embodiments (MPEP 2123(I)). Since Nesbitt references the Molitor '637 patent, one of ordinary

skill would logically look at its complete disclosure which includes the use of polyurethane as an

outer cover. The combination is proper because, in addition to the holdings quoted by the Third

Party Requester in their Comments, The Supreme Court has held that "[w]hen there is a design

need or market pressure to solve a problem and there are a finite number of identified,

predictable solutions, a person of ordinary skill has good reasons to pursue the known options

within his or her technical grasp. If this leads to the anticipated success, it is likely the product

not of innovation but of ordinary skill and common sense" (slip opinion of *KSR* at middle of

page 17). Here, the problem of producing a golf ball with distance, durability, "click," and feel

was known (Patent Owner's Response at bottom of page 4). Polyurethane was a known solution

for providing "click" and feel (Third Party Requester's Comments, above). The resulting golf

ball with a polyurethane outer cover layer had the expected results (*Sullivan* at page 11). Thus,

the golf balls disclosed by the Sullivan patent at issue is of ordinary skill and common sense.


**Proposed Third Party Requester Rejection:  Ground #5.**

The requester submits on pages 25-26 in the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious by Nesbitt in view of Wu.

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations and which reference Nesbitt or

Wu discloses, teaches or suggests the claim limitations.  As reported in the Decision of 04-06-06

granting reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637

which is mentioned in Nesbitt teach the use of particular polyurethane materials, which are non-

ionomeric thermoset materials, for the use as an outer layer.

| Claim 1 | Nesbitt (primary) mentioning Molitor '637 with Wu (teaching) |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract and FIGS. 1 & 2.) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or **core** form as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, ll. 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly flexural modulus resinous material..." (Nesbitt, col. 2, ll. 34-37.) |
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of **molded hard**, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. Dupont d Nemours." (Nesbitt, col. 2, ll. 36-38.)  Per the '130 Patent: "Type 1605 SURLYN (now designated SURLYN 8940)." ('130 Patent, col. 2, ll. 46-47.)  Exhibit I: SURLYN 8940 has a **Shore D hardness of 65**. |
| the inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated | Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issues into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.) |

| carboxylic acid; and | Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two **ionomer resins**: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34.)<br><br>See below for further explanation of how the % by weight and chemical composition limitations are taught. |
|---|---|
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.)<br><br>Wu: "Preferably, a golf ball is made in accordance with the present invention by molding a cover about a core wherein the cover is formed from a polyurethane composition comprising a polyurethane prepolymer and a slow-reacting polyamine curing agent or a difunctional glycol." (Wu, col. 3, ll. 62-66.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. **Molitor** issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a **Shore D hardness of 55**, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>Wu: "With polyurethanes made in accordance with the present invention, the degree of cure which has taken place is dependent upon, *inter alia*, the time, temperature, type of curative, and amount of catalyst used. It has been found that the degree of cure of the cover composition is directly proportional to the hardness of the composition. A hardness of about 10D to 30D, Shore D hardness for the cover stock at the end of the intermediate curing step (i.e. just prior to the final molding step) has been found to be suitable for the present invention, More preferred is a hardness of about 12D to 20D." (Wu, col. 6, ll. 27-38.)<br><br>See below for more explanation of how Wu teaches and/or suggests the Shore D hardness of 64 or less limitation |

|  | explanation. |
|---|---|
| said outer cover layer comprising a relatively soft polymeric material selected from the group consisting of non-ionomeric thermoplastic and thermosetting elastomers. | Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer.<br><br>Wu:  "[t]he present invention is a golf ball product made from a polyurethane prepolymer cured with a slow-reacting curing agent selected from the group of slow-reacting polyamine curing agents or difunctional glycols.  The term "golf ball product" as used in the specification and claims means a cover, a core, a center or a one-piece golf ball.  The cover of a golf ball made in accordance with the present invention has been found to have good shear resistance, cut resistance, durability and resiliency.  **Preferably, the polyurethane composition of the present invention is used to made the cover of a golf ball.**" (Wu, col. 2, ll. 33-44.) |

As mentioned above, Nesbitt mentioning Molitor '637 teaches the use of particular polyurethane materials for the use as an outer layer.  Wu teaches that polyurethane was being used as the outer layer of golf ball *circa* 1993.  Wu further teaches in col. 1:36-46 that SURLYN covered golf balls lack the "click" and "feel" of balata which golfers have become accustomed to such sensations and polyurethane covered golf balls can be made to have a similar "click" and "feel" of balata.  Wu also at least teaches that polyurethanes made according to its invention will have Shore D hardness directly proportional to the degree of cure of the cover; and this Shore D hardness ranges from 10 to 30, preferably 12 to 20 on the Shore D scale, see col. 6:26-38.  This teaching of Shore D hardness is directed to an intermediate curing step product prior to the final molding process to finish the golf ball.  Exhibit C demonstrates the actual finished golf ball product having the cover layer that Wu teaches within its disclosure.  Exhibit C teaches that the golf ball taught therein is covered by the following patents: 4,783,078; 4,846,910; 4,858,923;

4,904,320; 4,915,390; 5,007,594; 5,080,367; 5,133,509; **5,334,673**; and D339,074.  The '673

Patent teaches the cover sock of the Exhibit C finished golf ball.  Exhibit C teaches that the golf

ball taught therein has a cover material made from an "elastomer", having a thickness of .050",

and 58 Shore D hardness.  All three properties are within the range of mechanical properties of

the claim invention (polyurethane is an elastomer, cover layer thickness ranges from 0.010 to

0.070 inches and the Shore D hardness is less that 64).  Because it has been admitted by the

inventor of the Sullivan '893 patent that the particular chemical properties of the materials (the

chemical composition) used in the construction of a golf ball lack criticality as compared to the

mechanical properties (the Shore D hardness, flexural modulus, layer thickness) of those

compounds used for constructing the different layers (Exhibit G at 334), one of ordinary skill in

the art at the time the invention was made would find it obvious to incorporate the teachings of

Wu which inherently include the teachings of Shore hardness for the fully cured cover layer as

taught in Exhibit C as obvious equivalent materials in order to achieve the same end result of

providing a cover layer that has the same "click" and "feel" of a balata cover which the extra

durability of an elastomeric material.

        This rejection of claim 1 based on Nesbitt mentioning Molitor '637 in view of Wu was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


Ground 5: Patent Owner's Argument received 30 April 2007

        The Patent Owner argues the rejection is improper because:  (1) the Wu patent is silent as

to the Shore D hardness value of its golf balls and in a deposition Ms. Wu said she could not

predict what the hardness would be of a finished golf ball (Patent Owner 's Response middle of

page 20); (2) the Titleist 1 ball, which Examiner uses to disclose the proper hardness of the outer

layer, or cover, because the ball's commercial literature lists the Wu patent, is not competent

evidence because Wu's patent's claims are silent as to hardness (Patent Owner 's Response

middle of page 20); (3) the claimed invention is the synergistic combination of features and the

Examiner impermissibly uses hindsight to re-assemble the ball (Patent Owner 's Response

middle of page 21); and, (4) the BPAI's divided opinion (the decision in *ex parte Sullivan*) is not

binding precedent and the claims here are more narrow (Patent Owner 's Response bottom of

page 21 to top of page 22).

Ground 5: Third Party Requester's Comments received 30 May 2007

The crux of the Third Party Requester's arguments are that there is motivation to

combine Nesbitt and Wu for the reasons given in *ex parte Sullivan* (Third Party Requester's

Comments at middle of page 22). Any difference between the claims at issue in *ex parte

Sullivan* and the claims at issue here are found by incorporation (and inherency) of the

commercial literature of Estane 58133 and Surlyn 1605 (8940) (Third Party Requester's

Comments at bottom of page 23). Finally, an expert has made golf balls according to the

teachings of Nesbitt and Wu and the resultant balls have the required characteristics.

Ground 5: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Wu is maintained.  As

to the Patent Owner's first and second arguments, Examiner considers the Wu patent to describe

the Titleist 1 cover because both the patent and the cover's commercial literature disclose the

ball as "cut-resistant" (Wu patent at col. 2 line 41;  Titleist 1's commercial literature at text

above "Titleist Professional Specifications").  In addition , both have ball velocities of 253.0

ft./sec. (Wu patent at col. 8 Table IV; Titleist 1's commercial literature at "Titleist Professional

Specifications").  These two characteristics combined with the fact that the Titleist 1 cites the

Wu patent leads to the conclusion that the cover of the Titleist 1 is within the ambit of the

composition described in the Wu patent.  Hence, the Titleist 1 commercial literature accurately

recites other characteristics on which the WU patent is silent, such as Shore D hardness.

Whether Wu, herself, knew the hardness of an outer layer made of her composition or her

patent's claim's silence as to this characteristic, is not dispositive because of the commercial

literature of the Titleist 1.

As to the Patent Owner's third and fourth arguments, the combination is proper because

The Supreme Court has held that "[w]hen there is a design need or market pressure to solve a

problem and there are a finite number of identified, predictable solutions, a person of ordinary

skill has good reasons to pursue the known options within his or her technical grasp.  If this leads

to the anticipated success, it is likely the product not of innovation but of ordinary skill and

common sense" (slip opinion of *KSR* at middle of page 17).  Here, the problem of producing a

golf ball with distance, durability, "click," and feel was known (Patent Owner's Response at

bottom of page 4).  Polyurethane was a known solution for providing "click" and feel (*see* Third

Party Requester's Comments for Ground 4, above).  The resulting golf ball with a polyurethane

outer cover layer had the expected results (*Sullivan* at page 11) and not, therefore, synergistic.

Thus, the golf balls disclosed by the combination of Nesbit and Wu are of ordinary skill and

common sense.  Since this combination has the elements cited in claim 1 of Sullivan '130, the

decision in *ex parte Sullivan* is supportive but not dispositive.


**Proposed Third Party Requester Rejection:  Ground #6.**

The requester submits on pages 27-28 in the request that claim 1 is unpatentable under 35

U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '751.

Claim 1 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitation and where Nesbitt and/or Molitor

'637 disclose, teach or suggest the claim limitations.  As reported in the Decision granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane material for the use as an outer

layer.

| Claim 1 | Nesbitt (primary) mentioning Molitor '637 |
|---|---|
| A golf ball comprising: | "The disclosure embraces **a golf ball** and method of making the same..." (Nesbitt, Abstract and FIGS. 1 & 2.) |
| a core; | "Referring to the drawings in detail there is illustrated a golf ball 10 which comprises a solid center or **core** form as a solid body of resilient polymeric material or rubber-like material in the shape of a sphere." (Nesbitt, col. 2, ll. 31-34.) |
| an inner cover layer having | "Disposed on the spherical center or core 12 is a first layer, lamination, ply or **inner cover** 14 of molded hard, highly |

| | flexural modulus resinous material..." (Nesbitt, col. 2, ll. 34-37.) |
|---|---|
| a Shore D hardness of 60 or more molded on said core, | Nesbitt: "[I]nner cover 14 of **molded hard**, high flexural modulus resinous material such as type 1605 SURLYN marketed by E.I. Dupont de Nemours." (Nesbitt, col. 2, ll. 36-38.)<br><br>Per the '130 Patent: "Type 1605 SURLYN (now designated SURLYN 8940)." ('130 Patent, col. 2, ll. 46-47.)<br><br>Exhibit I: SURLYN 8940 has a **Shore D hardness of 65**. |
| the inner cover layer comprising a blend of two or more low acid ionomer resins containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid; and | Nesbitt: "Reference is made to the application Ser. No. 155,658 of Robert P. **Molitor** issues into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers 14 ... for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: Molitor teaches, in examples 1-7, cover materials including a blend of two **ionomer resins**: SURLYN 1605 and SURLYN 1557. (Molitor '637, col. 14, l. 22 to col. 16, l. 34.)<br><br>See below for further explanation of how the % by weight and chemical composition limitations are taught. |
| an outer cover layer having | "An **outer** layer, ply, lamination or **cover** 16 ... is then remolded onto the inner play or layer 14 ..." (Nesbitt, col. 2, ll. 43-47.) |
| a Shore D hardness of 64 or less molded on said inner cover layer, | Nesbitt: "Reference is made to application Ser. No. 155,658 of Robert P. Molitor issued into U.S. Pat. No. 4,274,**637** which describes a number of foamable compositions of a character which may be employed for ... layers ... 16 for the golf ball of this invention." (Nesbitt, col. 3, ll. 54-60.)<br><br>Molitor '637: In examples 16 and 17 teaches an outer layer made from a thermoplastic polyurethane identified as ESTANE 58133.<br><br>ESTANE 58133 has a Shore D hardness of 55, see Exhibit J (ESTANE Thermoplastic Polyurethane Product Data Sheet)<br><br>See below for Shore D hardness of 64 or less limitation explanation. |

| | |
|---|---|
| said outer cover layer comprising a relatively soft polymeric material selected from the group consisting of non-ionomeric thermoplastic and thermosetting elastomers. | Exhibit J:  ESTANE 58133 is a Polyester-Type **Thermoplastic Polyurethane** (TPU Compound) which is a non-ionomeric thermoplastic elastomer. |

As mentioned above, Nesbitt references Molitor '637 as describing an number of compositions suitable for the inner cover layer 14.  Of particular interest in this case are Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of SURLYN 1605 and SURLYN 1557.  The use of SURLYN grades for golf ball covers is also disclosed in U.S. Pat. No. 4,690,981.  The preferred composition in the '981 Patent has "from about 5[%] to about 15% by weight of unsaturated carboxylic acid."  '981 Pat., col. 3, ll. 59-60.  Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now designated as 8940 and was used in Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about 51,000 psi."  See '873 Patent, col. 2, ll. 43-50.  Moreover, as shown in the "Properties Grid for Selected Industrial Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades of SURLYN is toward the "Low % Acid" side of the graph.  Thus, based on this evidence, Nesbitt referencing Molitor '637 inherently teaches using as an inner layer at least one ionomer resin having no more than 16% by weight of alpha, beta-unsaturated carboxylic acid.

Also, Molitor '637 teaches in TABLE 10 an outer layer made from a thermoplastic

polyurethane identified as ESTANE 58133.  A review of the scientific literature yields that

ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J "ESTANE 58133 TPU

Product Data Sheet".  **A Shore D hardness of 55 is within the range claimed of Shore D**

**hardness less than 64**.  Therefore, Molitor '637's teaching of using ESTANE 58133 inherently

meets the claim limitation of providing a outer cover layer of polyurethane material having a

Shore hardness of less than 64.  Moreover, Molitor '637 teaches a list of materials that may

adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

As shown above in the claim chart, Nesbitt mentioning Molitor '673 suggests the use of a

soft outer cover layer including a polyurethane material.  In an analogous golf ball, Molitor '751

teaches that:

> It has now been discovered that a key to manufacturing a two-piece ball having playability
> properties similar to wound, balata-covered balls is to provide about an inner resilient molded core
> **a cover having a shore C hardness less than 85**, preferably 70-80, and most preferably 72-76.
> The novel **cover of the golf ball** of the invention is made of a composition comprising a blend of

>(1) a thermoplastic urethane having a shore A hardness less than 95 and (2) an ionomer
>having a shore D hardness greater than 55.

(Molitor '751, col. 2, ll.33-49 (emphasis added)).

Moreover, in explaining what constitutes a two-piece golf ball, Molitor '751 teaches that:

>The phrase "two piece ball" as used herein refers primarily to balls consisting of a molded core
>and a cover, but also includes balls having a separate solid layer beneath the cover as
>disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other balls have non-wound
>cores.

(Molitor '751, col. 3, ll. 7-12 (emphasis added)).

As stated above, Molitor '751 teaches the cover of the golf ball has a Shore C hardness of

less than 85, preferably 70-80, most preferably 72-76. As described in Molitor '751's TABLE

bridging columns 7 and 8, Sample 8 constitutes one of the preferred embodiments and its cover

is taught to have a Shore C hardness of 73. Patent Owner has admitted that a Shore C hardness

of 73 is equal to a Shore D hardness of 47, see U.S. Pat. No. 6,905,648, Table 19 (Exhibit L).

Thus, a cover having a Shore C hardness of between 72 and 76 will inherently have a Shore D

hardness of less than 64.

How one of ordinary skill in the art would discover this inherent mechanical property of

Shore D hardness for the polyurethane material used in Molitor '751 is by "translating" a Shore

C value to a Shore D value for the polyurethane material. How one of ordinary skill in the art

"translates" a Shore C value to a Shore D value is by taking the known Shore hardness values

with a given range, in this instance Shore C, for given materials, in this instance polyurethane

golf ball covers materials, and taking corresponding measurements with a different set of Shore

gauges, in this instance Shore D (but could also be Shore A). A resulting trendline plot occurs

from performing this procedure wherein the range of known Shore C values are the abscissa and

the range of measured Shore D values are the ordinate. Then, said plot can be use to read

equivalent Shore D value for any given Shore C value within the known range of Shore C.   This

is how one of ordinary skill in the art can know the equivalent Shore D or even Shore A hardness

value for any given Shore C hardness value.

As stated in the request on page 28

> It would have been obvious to one of ordinary skill in the art at the time of the
> invention to substitute the soft non-ionomeric polymeric outer cover layer
> incorporated by Nesbitt and replace it with an outer cover layer made of the soft
> polyurethane material taught by Molitor '751 to provide a golf ball that includes
> "playability properties as good or better than balata-covered wound balls but are
> significantly more durable," and "have better wood playability properties than
> conventional two-piece balls, and permit experienced golfers to apply spin so as
> to fade or draw a shot" while having improved puttability.  (Molitor '751, col. 2,
> ll. 61-68)

Moreover, because it appears that to one of ordinary skill in the art at the time the

invention was created that the actual chemical composition of the material is not critical to the

practice of the invention with respect to its mechanical performance, i.e. its "click and feel" for a

golfer, one of ordinary skill in the art at the time the invention was made would find it obvious to

substitute one material for another material if both materials had substantially the same

mechanical properties.

This rejection of claim 1 based on Nesbitt mentioning Molitor '637 in view of Molitor

'751 was proposed by the third party requester in the request for reexamination and is being

adopted essentially as proposed in the request.


Ground 6: Patent Owner's Argument received 30 April 2007

The Patent Owner argues the rejection is improper because:  (1) Molitor '751 describes

the cover of his golf ball with hardness values in terms of Shore C, hence, one of ordinary skill

would not look to combine this teaching with the patent of Nesbitt, with hardness values

recorded in terms of Shore D, because the two hardness values, or scales, have no simple

mathematical correlation (Patent Owner's Response at page 22 to top of page 23); and, (2) no

motivation to combine Nesbitt with Molitor '731 because the Molitor '731 ball's construction is

not three-piece having an inner cover of low acid ionomers (Patent Owner's Response at middle

of page 23 to top of page 24).


Ground 6: Third Party Requester's Comments received 30 May 2007

     Third Party Requester counter argues that Shore C hardness values can be converted to

Shore D values as evidenced by, *inter alia*, the Sullivan '131 patent, itself (Third Party Requester

Comment's at page 25 to middle of page 26). Further, motivation to combine exists because,

*inter alia*, Molitor '751, itself, states that its cover can be used with golf balls as disclosed by

Nesbitt (Third Party Requester's Comments at middle of page 26 to top of page 28).


Ground 6: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

     Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 1 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '751 is

maintained. As to the Patent Owner's first argument, Examiner specifically agrees with the

Third Party Requester's comments that a correlation, or conversion, exists between the two

hardness scales, Shore C and Shore D, because Sullivan '130 gives a conversion of the two

scales at col. 3 lines 36-40. Further, the quote used by the Patent Owner from the ASTM D-2240

standard stating that ""no simple relationship exists"" between the two scales (Patent Owner's

Response at bottom of page 22) does not preclude a conversion factor, even if complex. Hence,

one of ordinary skill would not be deterred from use of prior art regardless of the hardness scale

used to define its various layers.

As to the Patent Owner's second argument, Examiner considers the language of the

Molitor '751 patent that "the phrase "two-piece ball" as used herein refers primarily to balls

consisting of a molded core and a cover, but also includes balls having a separate solid layer

beneath the cover as disclosed, for example, in U.S. Pat. No. 4,431,193 to Nesbitt, and other

balls, having non-wound cores" provides motivation to combine the two references. Molitor

'751 provides specific motivation, for example, at col. 1, lines 11-15, where it states that the

invention is concerned with a "golf ball cover useful in making balls, particularly two-piece

balls, having superior short iron and other playability characteristics."

Further, The Supreme Court has held that "[w]hen there is a design need or market

pressure to solve a problem and there are a finite number of identified, predictable solutions, a

person of ordinary skill has good reasons to pursue the known options within his or her technical

grasp. If this leads to the anticipated success, it is likely the product not of innovation but of

ordinary skill and common sense" (slip opinion of *KSR* at middle of page 17). Here, the problem

of producing a golf ball with distance, durability, "click," and feel was known (Patent Owner's

Response at bottom of page 4). Polyurethane was a known solution for providing playability

properties (Molitor '751 at abstract). The resulting golf ball with a polyurethane outer cover

layer had the expected results (Sullivan '130 at abstract). Thus, the golf balls disclosed by the

combination of Nesbit and Molitor '130 are of ordinary skill and common sense.

Application/Control Number: 95/000,122                                    Page 45
Art Unit: 3993

Re. Claim 2

**Proposed Third Party Requester Rejection:  Ground #7.**

The requester submits on pages 29-30 in the request that claim 2 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Proudfit.

Claim 2 is rejected under 35 U.S.C. 102(b) as being anticipated by Proudfit as evidenced

by Exhibit G "The Relationship Between Golf Ball Construction and Performance".

Below is a claim chart identifying the claim limitations and where Proudfit discloses the

claim limitations.

| Claim 2 | Proudfit |
|---------|----------|
| A golf ball according to claim 1, | See above, Ground #1. |
| wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches | "The thickness of the inner layer can be within the range of about 0.0250 to 0.2875 inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (col. 7, lines 37-40.) "The preferred dimensions are ... an inner layer thickness of 0.037 inch ...." (col. 7, lines 43-44.) |
| and the outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ...." (col. 7, lines 40-46.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (col. 7, lines 43-47.) |

As admitted by the inventor of the instant Patent under reexamination, the "golf ball

designer must adhere to the rules of golf as put forth by the USGA and R & A Golf Club." See

Exhibit G "The relationship between golf ball construction and performance". At that time, the

inventor identified the rules of the two governing bodies:

> (1) the ball weight must not exceed 1.62 oz, (2) the ball size must be at least
> 1.68 inches in diameter, (3) initial velocity must not exceed 250 ft/sec with a
> 2% maximum tolerance when struck at 143.8 ft/sec, (4) overall distance must
> not exceed 280 yards with a 6% tolerance when hit with a USGA specified
> driver at 160 ft/sec (clubhead speed) at a 10 degree launch angle as tested by
> the USGA, and (5) the ball must pass the USGA administered symmetry test,
> i.e. fly consistently (in distance, trajectory and time of flight) regardless of
> how it is placed on the tee. Id.

Thus, based on the evidence present in the record and the admission of the inventor that

"the golf ball designer must adhere to the rules of golf as put forth by the USGA," Proudfit

would inherently have to meet the U.S.G.A. standards in order to have a golf ball invention that

would be economically viable.

This rejection of claim 2 based on Proudfit was proposed by the third party requester in

the request for reexamination and is being adopted essentially as proposed in the request.

Ground 7: Patent Owner's Argument received 30 April 2007

The Patent Owner does not directly argue this rejection.

Ground 7: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not specifically comment on this rejection.

Ground 7: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

The claim stands rejected.

Application/Control Number: 95/000,122                                     Page 47
Art Unit: 3993

**Proposed Third Party Requester Rejection:  Ground #8.**

The requester submits on page 31 in the request that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Sullivan.

**This rejection is <u>not adopted</u> for the reasoning that based on the prosecution history of the '130 Patent's copendency Sullivan '831 (Sullivan) is not prior art, see the Decision granting reexamination, mailed 04-06-06, para. 9.**

Ground 8: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue the non-adoption of this rejection.

Ground 8: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not argue the non-adoption of this rejection.

Ground 8: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Examiner maintains the non-adoption of this rejection for the reasoning stated above in the section entitled: **Proposed Third Party Requester Rejection:  Ground #8.**

**Proposed Third Party Requester Rejection:  Ground #9.**

The requester submits on page 32 in the request that claim 2 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Nesbitt.

In the request on pages 20 through 24 the third party requester proposes that claim 1 be rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637.  In the request on page 32 the third party requester proposes where Nesbitt (passages that do not refer or mention Molitor '637) discloses the limitations of claim 2.  The third party requester points out that Molitor '637 is incorporated by reference into Nesbitt because Nesbitt refers to Molitor '637.  (See Nesbitt col. 3, ll. 54-60).

This rejection is adopted essentially as proposed in the request.

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt with incorporation by reference of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic Resins Product Information Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Below is a claim chart identifying the claim limitations and portions of the Nesbitt reference which discloses, teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| A golf ball according to claim 1, | See above, Ground #4. |
| wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| and the outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |

This rejection of claim 2 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 9: Patent Owner's Argument received 30 April 2007

The Patent Owner did not argue this rejection.

Ground 9: Third Party Requester's Comments received 30 May 2007

The Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 3: Third Party Requester's Comments."

Ground 9: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Upon review, the Examiner agrees with the argument of the Third Party Requester and adopts the suggested rejection of this claim with Nesbitt with Molitor '637 incorporated by reference. See "Ground 3: Examiner's Response to the Argument and Comments," *supra*.

**Proposed Third Party Requester Rejection: Ground #10.**

In the alternative, the requester submits on page 32 in the request that claim 2 is unpatentable under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637.

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic Resins Product Information

Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Below is a claim chart identifying the claim limitations and portions of the Nesbitt

reference which discloses, teaches or suggests the claim limitations.

| Claim 2 | Nesbitt |
|---|---|
| A golf ball according to claim 1, | See above, Ground #4. |
| wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| and the outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |

This rejection of claim 2 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 10: Patent Owner's Argument received 30 April 2007 .

The Patent Owner argues that the range of thickness claimed in the Sullivan '130 patent

is mostly below the possible minimum thickness of Molitor '637 (Patent Owner's Response at

middle of page 17).


Ground 10: Third Party Requester's Comments received 30 May 2007

The Third Party Requester counter argues that Nesbitt specifically teaches one skilled in

the art to look to Molitor '637 for cover materials and that the range of cover materials in Nesbitt

in view of Molitor '637 falls within the claimed range of Sullivan '130 (Third Party Requester's

Comments at middle of page 21; it is noted that the Third Party Requester stated that the

combination would fall within the claimed range of Nesbitt which examiner interprets to mean

Sullivan '130).


Ground 10: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 2 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637 is

maintained. Nesbitt discloses outer layers, covers, within the claimed range as described in the

rejection, *supra*. One of ordinary skill would find it obvious to look to Molitor '637 for cover

material because Nesbitt cites Molitor '637. Finally, the lower level of thickness envisioned by

Molitor '637 (0.06 inches) is within the range claimed in Sullivan '130.


**Proposed Third Party Requester Rejection: Ground #11.**

The requester submits on page 32 in the request that claim 2 is unpatentable under 35

U.S.C. § 103(a) as being obvious by Nesbitt in view of Wu.

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations where the Nesbitt reference

discloses, teaches or suggests the claim limitations.  As reported in the Decision of 04-06-06

granting reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637

which is mentioned in Nesbitt teach the use of particular polyurethane materials, which are non-

ionomeric thermoset materials, for the use as an outer layer.

| Claim 2 | Nesbitt |
|---|---|
| A golf ball according to claim 1, | See above, Ground #5. |
| wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| and the outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |

This rejection of claim 2 based on Nesbitt in view of Wu was proposed by the third party

requester in the request for reexamination and is being adopted essentially as proposed in the

request.

Ground 11: Patent Owner's Argument received 30 April 2007

Patent Owner argues that the split decision of the BPAI from *ex parte Sullivan* is not

dispositive here because: (1) the decision is not binding precedent (Patent Owner's Response at

bottom of page 21); and, (2) the claim's at issue in *ex parte Sullivan* are distinguishable from the

claim here because the instant claim claims a particular thickness of the outer cover (Patent

Owner's Response at top of page 22).

Ground 11: Third Party Requester's Comments received 30 May 2007

The Third Party Requester argues that the BPAI's opinion set forth cogent reasoning for

combining Nesbitt and Wu (Third Party Requester's Comments at middle of page 22) and the

differing limitations are not patently significant and disclosed in Nesbitt or Wu (Third Party

Requester's Comments at top of page 24).

Ground 11: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 2 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Wu is maintained. As

to the Patent Owner's first argument, the Examiner is not using *ex parte Sullivan* at binding

precedent but as a source that discloses motivation to combine Nesbitt and Wu. Wu states a

motivation to combine and this is stated again in *ex parte Sullivan* the motivation to combine.

As to the Patent Owner's second argument, Nesbit discloses some thicknesses that are

within the range of those in the instant claim. The patents at issue in *ex parte Sullivan* are not

dispositive.


**Proposed Third Party Requester Rejection: Ground #12.**

The requester submits on page 32 in the request that claim 2 is unpatentable under 35

U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '751.

Claim 2 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitation and where Nesbitt and/or Molitor

'637 disclose, teach or suggest the claim limitations. As reported in the Decision granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane material for the use as an outer

layer.

| Claim 2 | Nesbitt |
|---|---|
| A golf ball according to claim 1, | See above, Ground #6. |
| wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| and the outer cover layer has a thickness of about 0.010 to about 0.070 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |

Application/Control Number: 95/000,122                                    Page 55
Art Unit: 3993

| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |
|---|---|

This rejection of claim 2 based on Nesbitt in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 12: Patent Owner's Argument received 30 April 2007

Patent Owner argues that Molitor '751 discloses a cover combined with an inner layer twice as thick as that as the claim at issue.

Ground 12: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not specifically argue this rejection.

Ground 12: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Examiner agrees with the proposed rejection of the Third Party Requester, and the rejection of claim 2 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '751 is maintained. Nesbitt discloses the limitation at issue in claim 2. Since Molitor '751 is used to disclose the use of a soft polymeric material as an outer cover, the thickness of its inner layer is not dispositive.

Re. Claim 3

**Proposed Third Party Requester Rejection: Ground #13**

The requester submits on pages 33-34 in the request that claim 3 is unpatentable under 35 U.S.C. § 102(b) as being anticipated by Proudfit.

Claim 3 is rejected under 35 U.S.C. 102(b) as being anticipated by Proudfit as evidenced by Exhibit G "The Relationship Between Golf Ball Construction and Performance".

Below is a claim chart identifying the claim limitations and where Proudfit discloses the claim limitations.

| Claim 3 | Proudfit |
|---|---|
| A golf ball according to claim 1, | See above, Ground #1. |
| wherein the inner cover layer has a thickness of about 0.050 inches and | "The thickness of the inner layer can be within the range of about 0.0250 to 0.2875 inch to provide a total diameter of the inner layer and core within the range of about 1.550 to 1.590 inch." (col. 7, lines 37-40.) "The preferred dimensions are ... an inner layer thickness of 0.037 inch ...." (col. 7, lines 43-44.) |
| the outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer can be within the range of about 0.0450 to 0.0650 inch to provide a total ball diameter of 1.680 inch. The preferred dimensions are ... an outer layer thickness of 0.0525 inch ...." (col. 7, lines 40-46.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "The preferred dimensions are a core diameter of 1.500 inch, and inner layer thickness of 0.037 inch (inner layer diameter of 1.575 inch), and an outer layer thickness of 0.0525 inch (total ball diameter of 1.680 inch)." (col. 7, lines 43-47.) |

As admitted by the inventor of the instant Patent under reexamination, the "golf ball designer must adhere to the rules of golf as put forth by the USGA and R & A Golf Club." See

Exhibit G "The relationship between golf ball construction and performance". At that time, the inventor identified the rules of the two governing bodies:

> (1) the ball weight must not exceed 1.62 oz, (2) the ball size must be at least 1.68 inches in diameter, (3) initial velocity must not exceed 250 ft/sec with a 2% maximum tolerance when struck at 143.8 ft/sec, (4) overall distance must not exceed 280 yards with a 6% tolerance when hit with a USGA specified driver at 160 ft/sec (clubhead speed) at a 10 degree launch angle as tested by the USGA, and (5) the ball must pass the USGA administered symmetry test, i.e. fly consistently (in distance, trajectory and time of flight) regardless of how it is placed on the tee. Id.

Thus, based on the evidence present in the record and the admission of the inventor that "the golf ball designer must adhere to the rules of golf as put forth by the USGA," Proudfit would inherently have to meet the U.S.G.A. standards in order to have a golf ball invention that would be economically viable.

This rejection of claim 3 based on Proudfit was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 13: Patent Owner's Argument received 30 April 2007

Patent Owner argues that Proudfit discloses an inner cover layer with a preferred thickness of 0.037 inches where the claim calls for this thickness to be about 0.050 inches (Patent Owner's Argument at page 26, footnote 62).


Ground 13: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not specifically argue this rejection.

Application/Control Number: 95/000,122                                    Page 58
Art Unit: 3993

Ground 13: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 3 under 35 U.S.C. § 102(b) as being anticipated by Proudfit is maintained.  Although

Proudfit's preferred thickness is 0.037 inches (col. 7 lines 37-40), the range disclosed by Proudfit

for this layer is 0.0250 to 0.2875 inches (col. 7 lines 37-40).  The claimed thickness at issue is

0.050 inches which falls within Proudfit's range, and it is settled law that patent are relevant as

prior art for all they contain (MPEP 2123).

**Proposed Third Party Requester Rejection:  Ground #14.**

The requester submits on page 35 in the request that claim 3 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Sullivan.

**This rejection is <u>not adopted</u> for the reasoning that based on the prosecution history**

**of the '130 Patent's copendency Sullivan '831 (Sullivan) is not prior art, see the Decision**

**granting reexamination, mailed 04-06-06, para. 9.**

Ground 14: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue the non-adoption of this rejection.

Ground 14: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not argue the non-adoption of this rejection.

Ground 14: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner maintains the non-adoption of this rejection for the reasoning stated above in

the section entitled: **Proposed Third Party Requester Rejection:  Ground #14.**


**Proposed Third Party Requester Rejection:  Ground #15.**

The requester submits on page 35-36 in the request that claim 3 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Nesbitt.

In the request on pages 20 through 24 the third party requester proposes that claim 1 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637.  In the

request on page 36 the third party requester proposes where Nesbitt (passages that do not refer or

mention Molitor '637) discloses the limitations of claim 3.  The third party requester points out

that Molitor '637 is incorporated by reference into Nesbitt because Nesbitt refers to Molitor

'637.  (See Nesbitt col. 3, ll. 54-60).

This rejection is adopted essentially as proposed in the request.

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt with

incorporation by reference of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic

Resins Product Information Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Below is a claim chart identifying the claim limitations and portions of the Nesbitt

reference which discloses, teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---|---|
| A golf ball according to claim 1, wherein | See above, Ground #4. |
| the inner cover layer has a thickness of | "It is found that the inner layer of hard, high flexural |

| | |
|---|---|
| about 0.050 inches and | modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| the outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.)<br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.)<br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |

This rejection of claim 3 based on Nesbitt with incorporation by reference of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 15: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue this rejection.


Ground 15: Third Party Requester's Comments received 30 May 2007

The Third Party Requester's arguments for this claim are the same as given *supra* at "Ground 3: Third Party Requester's Comments."


Ground 15: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Upon review, the Examiner agrees with the argument of the Third Party Requester and

adopts the suggested rejection of this claim with Nesbitt with Molitor '637 incorporated by

reference. See "Ground 3: Examiner's Response to the Argument and Comments," *supra*.


**Proposed Third Party Requester Rejection: Ground #16.**

In the alternative, the requester submits on page 36 in the request that claim 3 is

unpatentable under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637.

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic Resins Product Information

Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Below is a claim chart identifying the claim limitations and portions of the Nesbitt

reference which discloses, teaches or suggests the claim limitations.

| Claim 3 | Nesbitt |
|---|---|
| A golf ball according to claim 1, wherein | See above, Ground #4. |
| the inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| the outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.) "The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.) "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural |

| | modulus resin ....” (col. 3, lines 34-38.) |
|---|---|

This rejection of claim 3 based on Nesbitt in view of Molitor '637 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 16: Patent Owner's Argument received 30 April 2007

Patent Owner argues that the limitation of claim 3 - thickness of the inner layer cover of 0.055 inches - is below the minimum value that Molitor '637 discloses as possible for their cover (Patent Owner's Response at bottom of page 17).

Ground 16: Third Party Requester's Comments received 30 May 2007

Third Party Requester's counter argument is that even though Molitor '673 teaches a foamed cover layer with a thickness less than 0.06 inches could not be injected molded, one skilled in the art would still look to Molitor '637 for cover materials within the scope of the claimed range of Nesbitt (Third Party Requester's Comments at middle of page 21).

Ground 16: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of claim 3 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637 is maintained. Since Nesbitt explicitly references Molitor '637 at col. 3, lines 56-61, one of ordinary skill would look to Molitor '637 for material to be used as a cover and use the thickness

ranges of Nesbitt for the material.  Whether the thickness of the cover could be injected molded

is not at issue since covers with similar thicknesses as that claimed are known in the art.

**Proposed Third Party Requester Rejection: Ground #17.**

The requester submits on page 36 in the request that claim 3 is unpatentable under 35

U.S.C. § 103(a) as being obvious by Nesbitt in view of Wu.

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Wu, as evidenced by Exhibit C.

Below is a claim chart identifying the claim limitations where the Nesbitt reference

discloses, teaches or suggests the claim limitations.  As reported in the Decision of 04-06-06

granting reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637

which is mentioned in Nesbitt teach the use of particular polyurethane materials, which are non-

ionomeric thermoset materials, for the use as an outer layer.

| Claim 3 | Nesbitt |
|---|---|
| A golf ball according to claim 1, wherein | See above, Ground #5. |
| the inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 inches and 0.070 inches." (col. 3, lines 19-23.) |
| the outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.) <br> "The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.) <br> "This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a |

| | dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |
| --- | --- |

This rejection of claim 3 based on Nesbitt in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 17: Patent Owner's Argument received 30 April 2007

Patent Owner argues that the split decision of the BPAI from *ex parte Sullivan* is not dispositive here because: (1) the decision is not binding precedent (Patent Owner's Response at bottom of page 21); and, (2) the claim's at issue in *ex parte Sullivan* are distinguishable from the claim here because the instant claim claims a particular thickness of the outer cover (Patent Owner's Response at top of page 22).

Ground 17: Third Party Requester's Comments received 30 May 2007

The Third Party Requester argues that the BPAI's opinion set forth cogent reasoning for combining Nesbitt and Wu (Third Party Requester's Comments at middle of page 22) and the differing limitations are not patently significant and disclosed in Nesbitt or Wu (Third Party Requester's Comments at top of page 24).

Ground 17: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Examiner agrees with the comments of the Third Party Requester, and the rejection of

claim 3 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Wu is maintained.  As

to the Patent Owner's first argument, the Examiner is not using *ex parte Sullivan* at binding

precedent but as source that discloses motivation to combine Nesbitt and Wu.  Wu states a

motivation to combine which is stated again in *ex parte Sullivan* the motivation to combine.

As to the Patent Owner's second argument, Nesbit discloses some thicknesses that are

within the range of those in the instant claim.  The patents at issue in *ex parte Sullivan* are not

dispositive.

**Proposed Third Party Requester Rejection: Ground #18.**

The requester submits on page 36 in the request that claim 3 is unpatentable under 35

U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '751.

Claim 3 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt

mentioning Molitor '637 in view of Molitor '751.

Below is a claim chart identifying the claim limitation and where Nesbitt and/or Molitor

'637 disclose, teach or suggest the claim limitations.  As reported in the Decision granting

reexamination, it needs to be correctly stated on the record that Nesbitt and Molitor '637 which

is mentioned in Nesbitt teach the use of particular polyurethane material for the use as an outer

layer.

| Claim 3 | Nesbitt |
|---|---|
| A golf ball according to claim 1, wherein | See above, Ground #6. |
| the inner cover layer has a thickness of about 0.050 inches and | "It is found that the inner layer of hard, high flexural modulus resinous material such as Surlyn® resin type 1605, is preferably of a thickness in a range of 0.020 |

| | inches and 0.070 inches." (col. 3, lines 19-23.) |
|---|---|
| the outer cover layer has a thickness of about 0.055 inches, | "The thickness of the outer layer or cover 16 of soft, low flexural modulus resin such as Surlyn type 1855, may be in the range of 0.020 inches and 0.100 inches." (col. 3, lines 22-25.)<br>"The outer layer of the soft resin is of a thickness of 0.0575 inches." (col. 3, lines 39-40.) |
| the golf ball having the properties required by the U.S.G.A. and having an overall diameter of 1.680 inches or more. | "According to the United States Golf Association Rules, the minimum diameter prescribed for a golf ball is 1.680 inches ...." (col. 2, lines 50-52.)<br>"This center or core 12 and inner layer 14 of hard resinous material in the form of a sphere is then remolded into a dimpled golf ball of a diameter of 1.680 inches minimum with an outer or cover layer 16 of a soft, low flexural modulus resin ...." (col. 3, lines 34-38.) |

This rejection of claim 3 based on Nesbitt in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.


Ground 18: Patent Owner's Argument received 30 April 2007

Patent Owner argues that Molitor '751 discloses a cover combined with an inner layer twice as thick as that as the claim at issue.


Ground 18: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not specifically argue this rejection.


Ground 18: Examiner's Response to the Argument and Comments in the Office Action mailed 2 Nov. 2007

Application/Control Number: 95/000,122                                    Page 67
Art Unit: 3993

Examiner agrees with the proposed rejection of the Third Party Requester, and the

rejection of claim 3 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor

'751 is maintained. Nesbitt discloses the limitation at issue in claim 2. Since Molitor '751 is

used to disclose the use of a soft polymeric material as an outer cover, the thickness of its inner

layer is not dispositive.


### Re. Claim 4

**Proposed Third Party Requester Rejection: Ground #19.**

The requester submits on page 37 in the request that claim 4 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Sullivan '831.

**This rejection is <u>not adopted</u> for the reasoning that based on the prosecution history

of the '130 Patent's copendency Sullivan '831 (Sullivan) is not prior art, see the Decision

granting reexamination, mailed 04-06-06, para. 9.**


Ground 19: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue the non-adoption of this rejection.


Ground 19: Third Party Requester's Comments received 30 May 2007

The Third Party Requester does not argue the non-adoption of this rejection.


Ground 19: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Application/Control Number: 95/000,122                                    Page 68
Art Unit: 3993

Examiner maintains the non-adoption of this rejection for the reasoning stated above in

the section entitled: **Proposed Third Party Requester Rejection:  Ground #19.**


**Proposed Third Party Requester Rejection: Ground #20.**

The requester submits on pages 37-39 in the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) Proudfit in view of Molitor '637.

Claim 4 is rejected under 35 U.S.C. 103(a) as being unpatentable over Proudfit in view of

Molitor '637.

What Proudfit discloses, teaches and suggest is discussed above in Ground #1 and is

incorporated herein.  Claim 4, which depends from claim 1, further limits the material used in the

outer layer to be a polyurethane based material.  Proudfit lacks disclosing using a polyurethane

based material.  As pointed out in the request on pages 38-39:

> Proudfit teaches that "A number of golfers, primarily professional and low handicap
> golfers, prefer balata covered balls because of the higher spin rate, control, "feel," and
> "click" which balata provides." (Proudfit, col. 1, lines 49-52.)  While Proudfit may not
> disclose the use of a polyurethane material in the outer cover layer it would have been
> obvious to modify Proudfit to include an outer cover layer including a polyurethane
> material rather than the balata disclosed therein because Proudfit seeks to solve the same
> problems associated with Surlyn-covered golf balls that polyurethane had been used to
> solve for years.  Moreover, polyurethane has advantages over both balata and Surlyn as
> would have been readily appreciated by those skilled in the art at the time of the
> invention.  Moreover, as recognized by the inventor himself, the particular materials
> used in the golf balls were not as important as the mechanical properties of those
> materials.  (See Exhibit G at 334.)  Because those skilled in the art would look to the
> mechanical properties of the materials when determining whether certain materials can
> be substituted for one another, those skilled in the art would recognize that the Estane
> polyurethane taught by Molitor '637 (having a flexural modulus of about 25,000 psi)
> and the polymeric outer cover layer material of Proudfit (which has a modulus of
> between 20,000 and 25,000 psi) would have been substitutable for one another.
> (Compare Exhibit J with Proudfit, col. 6, lines 28-31 .)  This would have further
> suggested to those skilled in the art that the Soft polymeric materials taught by Molitor
> '637, including, for example, the relatively soft, low modulus polyurethane material

Application/Control Number: 95/000,122                                       Page 69
Art Unit: 3993

would have been substitutable for the soft polymeric outer cover layer as taught by
Proudfit. Thus, it would have been obvious to one of ordinary skill in the art at the time
of invention to modify the balata-based outer cover layer of Proudfit to include the
polyurethane outer cover layer of Molitor '637 because this polyurethane was a well
known substitute to balata and gives a number of advantages over balata as would have
been readily appreciated by those skilled in the art.  These advantages include: (1)
improved processability; (2) improved durability when compared to balata; (3) cost-
effectiveness when compared to balata; and (4) having a good "click" and "feel."  ....
All of this would have led one of ordinary skill in the art to replace the soft balata-based
outer cover layer of Proudfit with the soft polyurethane outer cover layer material of
Molitor '637 at the time of the alleged invention.

    This rejection of claim 4 based on Proudfit in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.


Ground 20: Patent Owner's Argument received 30 April 2007

    Patent Owner argues that:  (1) Proudfit does not disclose the claimed Shore D hardness

values for the inner and outer cover layers (Patent Owner's Response bottom of page 26 to

middle of page 27);  and,  (2) no motivation to combine since Proudfit's and Molitor '637

thicknesses of their covers are incompatible and the Examiner is not free to ignore what the two

references teach with respect to thickness (Patent Owner's Response bottom of page 27).


Ground 20: Third Party Requester's Comments received 30 May 2007

    Third Party Requester counter argues that Proudfit inherently discloses the claimed Shore

D hardness value for its cover's layers (Third Party Requester's Comments at bottom of page 29

to top of page 30) and thicknesses of the covers of the two references overlap (Third Party

Application/Control Number: 95/000,122                                    Page 70
Art Unit: 3993

Requester's Comments at middle of page 30).  Motivation here meets the *KSR* standard (Third

Party Requester's Comments at middle to bottom of page 30).

Ground 20: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

 Examiner agrees with the proposed rejection of the Third Party Requester, and the

rejection of claim 4 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor

'637 is maintained.   As to Patent Owner's first argument, the Examiner considers Proudfit to

incorporate the claimed Shore D hardness values for the covers as discussed for Ground 1, *supra*.

 As to the Patent Owner's second argument, motivation to combine is supplied, *inter alia*,

in the abstract of Molitor '637 where ""feel"" characteristics of the ball are changed by its cover.

The thicknesses of the covers' layers is not a barrier to combining these references because

Proudfit's range of thicknesses overlaps with the claimed values in Sullivan '130.

**Proposed Third Party Requester Rejection: Ground #21.**

 The requester submits on pages 39-40 in the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) Proudfit in view of Wu.

 Claim 4 is rejected under 35 U.S.C. 103(a) as being unpatentable over Proudfit in view of

Wu.

 What Proudfit discloses, teaches and suggest is discussed above in Ground #1 and is

incorporated herein.  Claim 4, which depends from claim 1, further limits the material used in the

outer layer to be a polyurethane based material.  Proudfit lacks disclosing using a polyurethane

based material.  As pointed out in the request on pages 39:

> Proudfit teaches that: "A number of golfers, primarily professional and low handicap
> golfers, prefer balata covered balls because of the higher spin rate, control, "feel," and
> "click" which balata provides." (Proudfit, col. 1, lines 49-52.)  While Proudfit may not
> disclose the use of a polyurethane material in the outer cover layer it would have been
> obvious to modify Proudfit to include an outer cover layer including a-polyurethane
> material rather than the balata disclosed therein because Proudfit seeks to solve the same
> problems associated with Surlyn-covered golf balls that polyurethane had been used to
> solve for years.  Moreover, polyurethane has advantages over both balata and Surlyn as
> would have been readily appreciated by those skilled in the art at the time of the
> invention.

Moreover, as admitted by the inventor and pointed out on page 38 in the request: "the

particular materials used in the golf balls were not as important as the mechanical properties of

those materials. (See Exhibit G at 334.)"  Thus, those skilled in the art would look to the

mechanical properties of the materials when determining whether certain materials can be

substituted for one another, and the actual chemical compounds and chemical properties are not

critical so long as processes manufacturing the golf ball from said chemicals can be

economically feasible.

As pointed out in the request on pages 39-40: Wu teaches that:

> the problem with SURLYN®-covered golf balls, however, is that they lack the "click"
> and "feel" which golfers had become accustomed to with balata.  "Click" is the sound
> when the ball is hit by a golf club and "feel" is the overall sensation imparted to the
> golfer when the ball is hit.  It has been proposed to employ polyurethane as a cover
> stock for golf balls because, like SURLYN®, it has a relatively low price compared to
> balata and provides superior cut resistance over balata.  However, unlike SURLYN®-
> covered golf balls, polyurethane-covered golf balls can be made to have the "click" and
> "feel"" of balata. (Wu at col. 1, lines 36-46 (emphasis added).)

Additionally, the request on page 40 has pointed out that:

> as the inventor of the '130 patent had indicated in a 1994 publication, golf ball
> designers understood that the mechanical properties of the layers impacted the

performance of the golf ball more than the materials themselves. (Exhibit G at 334.) Additionally, Wu's polyurethane material inherently has a flexural modulus of about 23,000 psi. (Decl. of Jeffrey L. Dalton at ¶ 7.) Proudfit's outer cover layer material has a flexural modulus of between about 20,000 and 25,000 psi. (Proudfit, col. 6, lines 28-31.)

Therefore the request concludes on the same page:

one of ordinary skill in the art would have appreciated that using Wu's polyurethane as Proudfit's outer cover layer would have provided similar playability characteristics as well as numerous advantages including, for example, durability. Based on Wu's teachings, one of ordinary skill in the art would have recognized the substitutability of soft polyurethane for soft balata-based materials and the advantages of making such a substitution. These advantages include (1) low price compared to balata; (2) better cut resistance when compared to balata; and (3) a "click" and "feel" that is similar to balata. Therefore, it would have been obvious to one of ordinary skill in the art at the time of the alleged invention to modify Proudfit's golf ball by replacing the soft balata-based outer cover layer with an outer cover layer made of soft polyurethane material because Wu's polyurethane has similar mechanical properties when compared to Proudfit's outer cover layer material and provides numerous advantages over balata while exhibiting the "click" and "feel" of balata.

This rejection of claim 4 based on Proudfit in view of Wu was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 21: Patent Owner's Argument received 30 April 2007

Patent Owner argues:  (1) Proudfit does not disclose the claimed Shore D hardness values for the inner and outer cover layers (Patent Owner's Response bottom of page 26 to middle of page 27); and, (2) no motivation to combine since Proudfit's and Molitor '637 thicknesses of their covers are incompatible and the Examiner is not free to ignore what the two references teach with respect to thickness (Patent Owner's Response bottom of page 27).

Application/Control Number: 95/000,122                                     Page 73
Art Unit: 3993

Ground 21: Third Party Requester's Comments received 30 May 2007

Third Party Requester counter argues that Proudfit inherently discloses the claimed Shore

D hardness value for its cover's layers (Third Party Requester's Comments at bottom of page 29

to top of page 30) and thicknesses of the covers of the two references overlap (Third Party

Requester's comments at middle of page 30). Motivation here meets the *KSR* standard (Third

Party Requester's Comments at middle to bottom of page 30).


Ground 21: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Examiner agrees with the proposed rejection of the Third Party Requester, and the

rejection of claim 4 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view Wu is

maintained. As to Patent Owner's first argument, the claimed Shore hardness value is

considered to be inherent in the disclosure of Proudfit as explained in the "Examiner's

Response" for Ground 1, *supra*.

As to the Patent Owner's second argument, motivation to combine is supplied, *inter alia*,

by Wu where it is stated that ""click"" and ""feel"" characteristics can be combined with

durability by use of a polyurethane material in a ball's cover (Wu at col. 1 lines 34-39; col. 2

lines 39-44). The thicknesses of the covers' layers is not a barrier to combining these references

because Proudfit's range of thicknesses overlaps with the claimed values in Sullivan '130.


**Proposed Third Party Requester Rejection: Ground #22.**

The requester submits on pages 41-42 in the request that claim 4 is unpatentable under 35

U.S.C. § 103(a) Proudfit in view of Molitor '751.

Claim 4 is rejected under 35 U.S.C. 103(a) as being unpatentable over Proudfit in view of

Molitor '751.

What Proudfit discloses, teaches and suggest is discussed above in Ground #1 and is

incorporated herein. Claim 4, which depends from claim 1, further limits the material used in the

outer layer to be a polyurethane based material. Proudfit lacks disclosing using a polyurethane

based material.

As discussed in the request on page 41:

Molitor '751 teaches that: It has now been discovered that a key to manufacturing a two-
piece ball having playability properties similar to wound, balata-covered balls is to
provide about an inner resilient molded core a cover having a shore C hardness less than
85, preferably 70-80, and most preferably 72-76. The novel cover of the golf ball of the
invention is made of a composition comprising a blend of (1) a thermoplastic urethane
having a shore A hardness less than 95 and (2) an ionomer having a shore D hardness
greater than 55. (Molitor '751, is, the Molitor col. 2, lines 33-49.) In explaining what a
"two-piece" golf ball '751 patent teaches that: The phrase "two piece ball" as used herein
refers primarily to balls consisting of a molded core and a cover, but also includes balls
having a solid layer beneath the cover as disclosed, for example, in U.S. Pat. No.
4,431,193 to Nesbitt, and other balls having non-wound cores. (Molitor '751, col. 2, lines
7-12.) Proudfit teaches a "two-piece" golf ball that fits within this definition. Molitor
'751 explains that the advantages of using a cover including a soft polyurethane material
on a two-piece golf ball, such as the golf ball of Proudfit, include "playability properties
as good or better than balata-covered wound balls but are significantly more durable,"
and "have better wood playability properties than conventional two-piece balls, and
permit experienced golfers to apply spin so as to fade or draw a shot" while having
improved puttability. (Molitor '751, col. 2, lines 61-68.) Molitor expresses the hardness
of the cover material as a Shore C hardness of less than 85, preferably 70 to 85 and most
preferably 72 to 76. (Molitor '751, col. 4, lines 21-25.) Based on Callaway's own
measurements, a Shore C hardness of 73 is equal to a Shore D hardness of 47. (See [e.g.]
U.S. Patent No. 6,905,648, Table 19 (attached hereto as Exhibit L).) A cover material
having a Shore C hardness of between 72 and 76 will inherently have a Shore D hardness
of less than 64.

Thus, the request concludes on page 42:

it would have been obvious to one of ordinary skill in the art at the time of the invention to replace the soft balata outer cover layer of Proudfit with an outer cover layer including a soft polyurethane material as taught by of Molitor '751 to provide golf balls that have "playability properties as good or better than balata-covered wound balls but are significantly more durable," and "have better wood playability properties than conventional two-piece balls, and permit experienced golfers to apply spin so as to fade or draw a shot" while having improved puttability. (Molitor '751, col. 2, lines 61-68.)

This rejection of claim 4 based on Proudfit in view of Molitor '751 was proposed by the third party requester in the request for reexamination and is being adopted essentially as proposed in the request.

Ground 22: Patent Owner's Argument received 30 April 2007

Patent Owner argues: (1) Proudfit does not disclose the claimed Shore D hardness values for the inner and outer cover layers (Patent Owner's Response top of page 30 to middle of page 30); and, (2) no motivation to combine Proudfit's and Molitor '751 because one of ordinary skill would not be able to convert Molitor '751's Shore C value to a Shore D value and Molitor '751 suggest combining with a ball having different structure than the ball of Proudfit (Patent Owner's Response middle of page 30).

Ground 22: Third Party Requester's Comments received 30 May 2007

Third Party Requester counter argues that Shore C and Shore D hardness values can be converted (Third Party Requester's Comments at bottom of page 32 to top of page 33). Further, the ball suggested for combination with the cover of Molitor '751 is Nesbitt's ball which is, in fact, similar in construction to the ball of Nesbitt (Third Party Requester's Comments at middle to bottom of page 33).

Application/Control Number: 95/000,122                                    Page 76
Art Unit: 3993

Ground 22: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

        Examiner agrees with the proposed rejection of the Third Party Requester, and the

rejection of claim 4 under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view Molitor '751

is maintained.  As to Patent Owner's first argument, the claimed Shore hardness value is

considered to be inherent in the disclosure of Proudfit as explained in the "Examiner's

Response" for Ground 1, *supra*.

        As to Patent Owner's second argument, Examiner considers the two hardness scales (C

and D) to be correlated as explained in the "Examiner's Response" for Ground 6, *supra*.

Motivation to combine is explained in the "Examiner's Response" for Ground 6, *supra*.


**Proposed Third Party Requester Rejection:  Ground #23.**

        The requester submits on page 42-44 in the request that claim 4 is unpatentable under 35

U.S.C. § 102(b) as being anticipated by Nesbitt.

        In the request on pages 20 through 24 the third party requester proposes that claim 1 be

rejected based upon Nesbitt alone with the incorporation by reference of Molitor '637.  In the

request on pages 42-43 the third party requester proposes where Nesbitt (passages that mention

Molitor '637) discloses the limitations of claim 4.  The third party requester points out that

Molitor '637 is incorporated by reference into Nesbitt because Nesbitt refers to Molitor '637.

(See Nesbitt col. 3, ll. 54-60).

        This rejection is adopted essentially as proposed in the request.

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic Resins Product Information

Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Claim 4 depends from claim 1 and further limits the outer layer material to a

polyurethane based material.

As mentioned above in Ground #4 which is incorporated herein, Nesbitt incorporates by

reference Molitor '637 as describing an number of compositions suitable for the inner cover

layer 14. Of particular interest in this case are Examples 1-7 within Molitor '637. Examples 1-7

use a ratio of SURLYN 1605 and SURLYN 1557. The use of SURLYN grades for golf ball

covers is also disclosed in U.S. Pat. No. 4,690,981. The preferred composition in the '981 Patent

has "from **about 5[%] to about 15% by weight of unsaturated carboxylic acid.**" '981 Pat.,

col. 3, ll. 59-60. Those of ordinary skill in the art understand that SURLYN 1605 has been

"redesignated" as SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN

9650, see e.g. U.S. Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.

Furthermore, the Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now

designated as 8940 and was used in Nesbitt's first (inner) layer and is a sodium ion based low

acid "(less than or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural

modulus of about 51,000 psi." See '873 Patent, col. 2, ll. 43-50. Moreover, as shown in the

"Properties Grid for Selected Industrial Grades of SURLYN" SURLYN 9650's ordinate

compared to the other grades of SURLYN is toward the "Low % Acid" side of the graph. Thus,

based on this evidence, Nesbitt incorporating by reference Molitor '637 inherently teaches using

as an inner layer at least one ionomer resin having no more than 16% by weight of alpha, beta-

unsaturated carboxylic acid.

**Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made**

**from a thermoplastic polyurethane identified as ESTANE 58133.**  A review of the scientific

literature yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J

"ESTANE 58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range

claimed of Shore D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE

58133 inherently meets the claim limitation of providing a outer cover layer of polyurethane

material having a Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of

materials that may adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and transpolyisoprene, block copolymers of styrene and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

This rejection of claim 4 based on Nesbitt incorporating by reference of Molitor '637 was

proposed by the third party requester in the request for reexamination and is being adopted

essentially as proposed in the request.


Ground 23: Patent Owner's Argument received 30 April 2007

The Patent Owner does not argue this rejection.


Ground 23: Third Party Requester's Comments received 30 May 2007

The Third Party Requester's arguments for this claim are the same as given *supra* at

"Ground 3: Third Party Requester's Comments."


Ground 23: Examiner's Response to the Argument and Comments in the Office Action mailed 2

Nov. 2007

Upon review, the Examiner agrees with the argument of the Third Party Requester and

adopts the suggested rejection of this claim with Nesbitt with Molitor '637 incorporated by

reference.  See "Ground 3: Examiner's Response to the Argument and Comments," *supra*.


**Proposed Third Party Requester Rejection:  Ground #24.**

In the alternative, the requester submits on pages 42-44 in the request that claim 4 is

unpatentable under 35 U.S.C. § 103(a) as being obvious by Nesbitt in view of Molitor '637.

Claim 4 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Nesbitt in view

of Molitor '637, as evidenced by Exhibit I (SURLYN Thermoplastic Resins Product Information

Sheet) and Exhibit J (ESTANE 58133 Product Specification Sheet.)

Claim 4 depends from claim 1 and further limits the outer layer material to a

polyurethane based material.

As mentioned above in Ground #4 which is incorporated herein, Nesbitt references

Molitor '637 as describing an number of compositions suitable for the inner cover layer 14.  Of

particular interest in this case are Examples 1-7 within Molitor '637.  Examples 1-7 use a ratio of

SURLYN 1605 and SURLYN 1557.  The use of SURLYN grades for golf ball covers is also

disclosed in U.S. Pat. No. 4,690,981.  The preferred composition in the '981 Patent has "from

**about 5[%] to about 15% by weight of unsaturated carboxylic acid."**  '981 Pat., col. 3, ll. 59-

60.  Those of ordinary skill in the art understand that SURLYN 1605 has been "redesignated" as

SURLYN 8940 and SURLYN 1557 has been "redesignated" as SURLYN 9650, see e.g. U.S.

Pat. No. 4,679,795, col. 6, ll. 10-15 and U.S. Pat. No. 5,150,906, col. 4, ll. 66.  Furthermore, the

Patent Owner in the Sullivan '873 Patent admitted that SURLYN 1605 is now designated as

8940 and was used in Nesbitt's first (inner) layer and is a sodium ion based low acid "(less than

or equal to 15 weight percent methacrylic acid) ionomer resin having a flexural modulus of about

51,000 psi." See '873 Patent, col. 2, ll. 43-50.  Moreover, as shown in the "Properties Grid for

Selected Industrial Grades of SURLYN" SURLYN 9650's ordinate compared to the other grades

of SURLYN is toward the "Low % Acid" side of the graph.  Thus, based on this evidence,

Nesbitt referencing Molitor '637 inherently teaches using as an inner layer at least one ionomer

resin having no more than 16% by weight of alpha, beta-unsaturated carboxylic acid.

**Also, as mentioned above, Molitor '637 teaches in TABLE 10 an outer layer made**

**from a thermoplastic polyurethane identified as ESTANE 58133.** A review of the scientific

literature yields that ESTANE 58133 has an inherent Shore D hardness of 55, see Exhibit J

"ESTANE 58133 TPU Product Data Sheet". A Shore D hardness of 55 is within the range

claimed of Shore D hardness less than 64. Therefore, Molitor '637's teaching of using ESTANE

58133 inherently meets the claim limitation of providing a outer cover layer of polyurethane

material having a Shore hardness of less than 64. Moreover, Molitor '637 teaches a list of

materials that may adapted for use in the invention:

> Homopolymeric and copolymeric substances, such as (1) vinyl resins
> formed by the polymerization of vinyl chloride or by the
> copolymerization of vinyl chloride with unsaturated polymerizable
> compounds, e.g., vinyl esters; (2) polyolefins such as polyethylene,
> polypropylene, polybutylene, transpolyisoprene, and the like, including
> copolymers of polyolefins; (3) polyurethanes such as are prepared from
> polyols and organic polyisocyanates; (4) polyamides such as
> polyhexamethylene; (5) polystyrene, high impact polystyrene, styrene
> acrylonitrile copolymer and ABS, which is acrylonitrile, butadiene
> styrene copolymer; (6) acrylic resins as exemplified by the copolymers
> of methylmethacrylate, acrylonitrile, and styrene, etc.; (7) thermoplastic
> rubbers such as the urethanes, copolymers of ethylene and propylene,
> and    transpolyisoprene,    block    copolymers    of    styrene    and
> cispolybutadiene, etc.; and (8) polyphenylene oxide resins, or a blend
> with high impact polystyrene known by the trade name "Noryl."

See Molitor '637, col. 5, ll. 33-50.

In addition, Nesbitt discloses its outer layer was made from SURLYN 1855 (now

SURLYN 9020). This material had inherently flexural modulus of about 14,000 psi and a Shore

hardness of 55, see Exhibit I "Typical Properties for Selected Grades of SURLYN". Moreover,

as admitted by the inventor Sullivan of the '873 patent, golf ball designers knew that the

mechanical properties of the materials used as a golf-ball cover layer were more critical to golf

ball performance than the actual materials themselves, see Exhibit G at 334.

Thus, because it appears that to one of ordinary skill in the art at the time the invention

was created that the actual chemical composition of the material is not critical to the practice of

the invention with respect to its mechanical performance, i.e. its "click and feel" for a golfer, one

of ordinary skill in the art at the time the invention was made would find it obvious to substitute

one material for another material if both materials had substantially the same mechanical

properties.

This rejection of claim 4 based on Nesbitt in view of Molitor '637 was proposed by the

third party requester in the request for reexamination and is being adopted essentially as

proposed in the request.

Ground 24: Patent Owner's Argument received 30 April 2007

The Patent Owner does not specifically argue this rejection.  The argument is that given

at "Ground 4: Patent Owner's Argument," *supra*.

Ground 24: Third Party Requester's Comments received 30 May 2007

The Third Party Requester's counter arguments for this claim are the same as given *supra*

at "Ground 4: Third Party Requester's Comments."