# FISH & RICHARDSON P.C.

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com

**Thomas L. Halkowski**
(302) 778-8407

Email
halkowski@fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

**VIA ECF**

July 1, 2008

The Honorable Sue L. Robinson
United States District Court
for the District of Delaware
844 King Street
Wilmington, DE  19801

Re:    *Callaway Golf Company v. Acushnet Company*
       USDC-D. Del. - C. A. No. 06-91 (SLR)

Dear Judge Robinson:



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

I write on behalf of Plaintiff Callaway Golf Company in response to Mr. Moore's
letter of June 26th on behalf of Defendant Acushnet.

Undeterred by the fact that its reexaminations were commenced in breach of contract,
Acushnet continues to distract this Court with Patent Office activities that are
irrelevant to these proceedings because they are based upon: (i) an entirely different
claim construction (*i.e.,* broadly including all prior art concerning off-the-ball
hardness measurements, contrary to the claim construction arrived at by this Court);
and (ii) other legal assessments directly at odds with determinations made by this
Court.[1]  The latest installment regarding Acushnet's unlawful reexaminations
proceedings can be summed up as simply more of the same.  However, to the extent
the Court is inclined to give any consideration to Acushnet's remarks or to the
multitude of Patent Office materials attached to its latest letter, Callaway Golf
respectfully provides the following brief response.

As Callaway Golf has previously noted, the PTO must use the "broadest reasonable
interpretation" of the claim language rather than the legally correct one used in
district court litigation.  *See also* Manual of Patent Examiner's Procedures (MPEP)
§ 2111 ("During patent examination, the pending claims must be 'given their broadest
reasonable interpretation consistent with the specification.'").  The latest PTO

---

[1] For example, contrary to this Court's assessments, the Patent Office continues to
conclude that: (i) Nesbitt incorporates by reference the Molitor '637 patent; and (ii)
commercial golf balls can be used as proxies for the disclosures of the Proudfit and
Wu patents – rather than properly considering them as *separate* references.  Indeed,
Callaway Golf submitted this Court's decision regarding the summary judgment
motions to the Patent Office, suggesting that the Court's well-reasoned decision
warranted careful consideration.  The Examiner felt otherwise:

> [T]he Examiner has reviewed the holdings of the District Court but is not
> bound by them.

D.I. 469, Ex. 1 at 179.

FISH & RICHARDSON P.C.

The Honorable Sue L. Robinson
July 1, 2008
Page 2

decisions touted by Acushnet continue to adopt the same unduly broad off-the-ball view of the claims – despite being apprised of this Court's claim construction rulings.

Indeed, to simplify the prosecution and remove any doubt that the PTO's differing claim construction explained its mistaken conclusions on validity, Callaway Golf sought to add claims to the '130 patent that expressly require that the hardness measurements to be made on-the-ball. The examiner, however, refused to consider those claims. Importantly, he said that requiring hardness to be measured on-the-ball would raise new issues <u>not</u> addressed in his analysis:

> The Examiner does not 'object' to the claims for not disclosing hardness measured 'on the ball' but only argues that *the claims (1 through 6) do not require hardness to be measured on the ball.* Hence, the issues are not simplified because the new claims raise a new issue – requiring a search and possible rejection of the new claims because of their *new limitation of hardness measured 'on the ball.'*

D.I. 469, Ex. 1 at 194 (emphasis added). Thus, contrary to Acushnet's repeated arguments to this Court, the Patent Office itself recognizes that viewing the claims as encompassing off-the-ball hardness measurements is critical to the Patent Office's analysis. If the Patent Office would have to prepare a new analysis using the proper claim construction – which this Court and the jury already have done – it follows that the Patent Office analysis using the wrong claim construction has no bearing here.

Next, in the secondary considerations portion of its letter, Acushnet implies that the Patent Office fully considered all the evidence and concluded the claims were still obvious. In reality, Callaway Golf was unable to provide the Patent Office with all the secondary considerations evidence considered by the jury, and this Court, because confidential information cannot be used in the Patent Office proceedings. Nor was the Patent Office in any position to weigh the credibility of pertinent witnesses regarding the extensive evidence of non-obviousness presented at trial. Of course, whether or not any secondary considerations could ever alter the Patent Office's obviousness assessment is immaterial, given the mistakenly broad claim interpretation it has chosen to apply.

Lastly, Acushnet suggests that the four reexamination proceedings are close to being wrapped-up – implying that the proceedings in this Court may soon be moot as a result. In reality, while the proceedings relating to the '130 patent are the furthest along, they are far from over. The next step is an appeal to the Board of Patent Appeals and Interferences (BPAI). Given the applicable rules governing the timing of such an appeal, the BPAI will likely not render a decision for at least another year.

F ISH & R ICHARDSON P.C.

The Honorable Sue L. Robinson
July 1, 2008
Page 3

Even then, the BPAI has the option of remanding the case to the Examiner for further proceedings, which would re-start the examination process. *See* MPEP 2681.  Here, the BPAI could very well remand the case to the Examiner with instructions to enter Callaway Golf's proposed additional claims that explicitly require measuring Shore D hardness on the ball.  As noted above, the Examiner himself has admitted that these claims would raise new issues and require additional consideration, and thus more time.  Even if the BPAI rendered a decision on the merits (as opposed to remanding the case), the case would not be ripe for appeal to the Federal Circuit until all motions for reconsideration of the BPAI decision were considered and decided.  Therefore, the reexamination proceeding involving the '130 patent – the one proceeding that is furthest along – realistically would not be ready for the Federal Circuit until at least the end of 2009.  The proceedings involving the other 3 patents ('293, '156, and '873 patents) are at earlier stages in the examination process, and thus will take even longer to reach the stage at which they can first be appealed to the Federal Circuit.

To the extent, however, that the Court accepts Acushnet's argument that the end of reexamination proceedings for the '130 patent is indeed approaching, that would only underscore the prejudice to Callaway Golf of Acushnet reaping the benefit of its unlawful behavior.  As Callaway Golf has explained, only a final resolution of this matter will moot the unlawful reexaminations, because the PTO will be estopped from further consideration of claims upheld at trial.  *See* MPEP 2686.04(IV). Callaway Golf therefore respectfully reiterates that the most direct, and proper, approach to resolving the validity dispute between the parties continues to be a prompt resolution of this suit.

Respectfully,

*/s/ Thomas L. Halkowski*

Thomas L. Halkowski

cc:    Counsel of record via email