IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

                Plaintiff,

    v.

ACUSHNET COMPANY,

                Defendant.

C. A. No. 06-91 (SLR)

# REDACTED

**CALLAWAY GOLF'S *OPPOSITION* TO ACUSHNET'S MOTION TO
(i) PARTIALLY VACATE THE COURT'S NOVEMBER 20, 2007 DECISION
and
(ii) DISMISS CALLAWAY'S CLAIM OF BREACH OF CONTRACT (COUNT V)**

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Attorneys for Plaintiff
CALLAWAY GOLF COMPANY

Dated:  August 28, 2008

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 2

   A. The Earlier Litigations And The 1996 Settlement Agreement ........................... 3

   B. The 1996 Settlement Agreement, and the Breach of It, Played a Central Role in this
      Litigation.................................................................................................................4

   C. The Court's Pretrial Order Specifically Established Both Supplemental and Retained
      Jurisdiction.............................................................................................................7

III. ARGUMENT ........................................................................................................ 8

   A. The Court Properly Exercised Supplemental Jurisdiction over Count V – the Breach
      of Contract Claim...................................................................................................8

       1. Callaway Golf's federal claim, a patent infringement action, confers subject
          matter jurisdiction on the Court .......................................................................9

       2. The patent infringement and breach of contract claims are related ......................10

          a.  Acushnet repeatedly attempted to stay this case based on the existence of the
              improperly filed reexaminations .................................................................10

          b.  In addition to repeatedly trying to stay the case based on the improperly
              filed reexaminations, Acushnet sought to enter their existence into evidence11

       3. The claims – Callaway Golf's patent infringement action and Acushnet's
          breach of the 1996 Agreement – would ordinarily be expected to be tried in one
          judicial proceeding........................................................................................12

       4. Considerations of judicial economy, convenience, and fairness also weigh in
          favor of the court's exercise of supplemental jurisdiction.....................................14

       5. The cases cited by Acushnet are inapposite..........................................................16

   B. In Addition to Having Supplemental Jurisdiction, This Court Properly Retained
      Jurisdiction to Enforce the 1996 Settlement Agreement ............................................18

       1. The parties properly incorporated the terms of their Settlement Agreement in,
          and the Court specifically retained jurisdiction by entering, their stipulated
          dismissals ........................................................................................................18

       2. The Cases Cited by Acushnet Regarding Enforcement of Settlement
          Agreements are Inapposite..................................................................................20

   IV. CONCLUSION.....................................................................................................21

# TABLE OF AUTHORITIES

**Page**

*American Ceramicraft v. Eisenbraum Reiss.*,
  1993 U.S. Dist. LEXIS 19950 (D.N.J. June 16, 1993) ................................13

*Anker Energy Corp. v. Consolidated Coal Co.*,
  177 F.3d 161 (3d Cir. 1999)........................................................................12

*Board of Trustees of the Hotel & Restaurant Empls. Local 25 v. Madison Hotel*,
  97 F.3d 1479 (D.C. Cir. 1996) ...................................................................19

*Carnegie-Mellon University v. Cohill*,
  484 U.S. 343 (1988).......................................................................................9

*City of Chicago v. International College of Surgeons*,
  522 U.S. 156 (1997).....................................................................................14

*Colanzi v. Countrywide Home Loans, Inc.*,
  2008 U.S. Dist. LEXIS 13278 (E.D. Pa. Feb. 22, 2008) ............................15

*Growth Horizons, Inc. v. Delaware County*,
  983 F.2d 1277 (3d Cir. 1993)......................................................................12

*Highway Equipment Company v. FECO*,
  469 F.3d 1027 (Fed. Cir. 2006)...................................................................16

*ITT Industries v. Wastecorp. Inc.*,
  2004 U.S. App. LEXIS 1839 (3d Cir. 2004) ..............................................12

*Kokkonen v. Guardian Life*,
  511 U.S. 375 (1994)..............................................................................8, 18-19

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*,
  71 F.3d 1086 (3d Cir. 1995)..........................................................................9

*Nanavati v. Burdette Tomlin Memorial Hospital*,
  857 F.2d 96 (3d Cir. 1988)............................................................................9

*United Mine Workers of America v. Gibbs*,
  383 U.S. 715 (1966)........................................................................................9

*Williams v. Empire Funding Corp.*,
  2004 WL 966235 (E.D.Pa. May 04, 2004) .................................................13

## I.    INTRODUCTION

Acushnet breached its contract with Callaway Golf by initiating reexamination proceedings for each of the patents involved in this suit.  After exhausting numerous excuses for its conduct – all of which were duly considered and rejected – Acushnet now requests that this Court undo over two years of work.  Acushnet's after-thought motion is without merit.  The Court properly exercised jurisdiction over Callaway Golf's breach of contract claim both under the doctrine of supplemental jurisdiction and because it properly retained jurisdiction.  Either basis is sufficient to deny Acushnet's "post-post-trial motion."  Indeed, Acushnet itself, has repeatedly accepted the Court's jurisdiction over Callaway Golf's breach of contract claim based on the 1996 Agreement:

- Acushnet answered Callaway Golf's amended complaint  adding the breach of contract claim, without challenging jurisdiction;

- Acushnet moved for summary judgment on Callaway Golf's breach of the contract claim, without challenging jurisdiction;

- Acushnet did not object to or challenge the Joint Pretrial Order, adopted by the Court, which provided that the Court had both supplemental and retained jurisdiction over the breach of contract claim.

Despite all of this – as well as the fact that a full nine (9) briefs have been written related to the contract claim, two oral arguments have been held, and countless attempts have been made by Acushnet to take advantage of the unlawfully filed reexaminations by putting them front and center in this case – Acushnet raises this challenge for the first time, more than two years after Callaway Golf amended its patent infringement complaint to include the breach of contract claim.  Of course subject matter jurisdiction must exist and can be challenged at any time, but the nature and timing of Acushnet's

challenge reflect poorly on the merits of both that challenge and the underlying strategy

of breaching the contract to institute the reexams, which, predictably, are dragging on

while this case proceeds toward appeal.  Because Acushnet's motion lacks merit, its latest

effort to delay this matter[1] and benefit from its unlawful breach of contract should be

rejected.

## II.    FACTUAL BACKGROUND

On February 9, 2006, Callaway Golf filed its original complaint for patent

infringement.  Once it became clear that the PTO would not dismiss the *inter-partes*

reexaminations filed by Acushnet in breach of the 1996 Settlement Agreement, Callaway

Golf sought leave to amend its complaint to add a breach of contract claim.[2]  Leave was

granted and Callaway Golf filed its amended complaint.  After both sides moved for

summary judgment on the breach of contract claim, the Court granted summary judgment

in Callaway Golf's favor that Acushnet had breached the 1996 Settlement Agreement.

[D.I. 348 – Court's Order Granting Callaway Golf Summary Judgment]  A trial was then

conducted on Callaway Golf's patent claims.  Post-trial motions are currently pending.

---

[1]  "This is a little bit of a race," between the current litigation and the reexamination
    according to Acushnet's representative, Mr. Nauman.  [Declaration of Thomas L.
    Halkowski ("Halkowski Decl.") Ex. A at 1.

[2]  In a footnote on page of 2 of its brief, Acushnet contends that Callaway Golf breached
    the 1996 Agreement by filing a golf club litigation in this Court.  Aside from being
    irrelevant, Acushnet's contention is also puzzling, given that Acushnet's own
    counsel, Mr. Nauman, stated under oath in a sworn declaration that the 1996
    Agreement only applies to golf ball disputes, "As the recitals, definitions and
    successor provisions of the Agreement make clear, the terms of the Agreement relate
    specifically to the manufacture and sales of golf balls and is binding only on the
    successors of the parties golf ball business."  [See Halkowski Decl. Ex. B at ¶¶ 3-5
    (Nauman Declaration).]

**REDACTED**

**A.    The Earlier Litigations and the 1996 Settlement Agreement**

In an effort to resolve two then-pending District of Delaware actions, Acushnet and Spalding (from which Callaway Golf bought all the assets in 2003) participated in a Court-ordered settlement conference.  [Halkowski Decl. Ex. C (June 3, 1996 Court Order).]  After meeting and discussing their differences, the parties reached a tentative resolution. ███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████

[Halkowski Decl. Ex. D at 15████████████████████████

████████████████D.I. 199 Ex. 1 (Executed copy of 1996 Settlement Agreement).]

████████████████████████████████████████████████

███ [D.I. 199 Ex. 1 at 18).]  Mr. Nauman, Acushnet's Executive Vice President, Corporate and Legal, and a witness at the trial in this action. "negotiated and witnessed the signing of the 1996 Settlement Agreement".  [D.I. 39 (Ex. A, Nauman Decl. ¶ 2 (filed

3

# REDACTED

in support of one of Acushnet's Motions to Stay); D.I. 199 Ex. 1 at 18 (1996

Agreement).]  Once executed, the parties dismissed the then-pending disputes.

> The stipulated dismissals **entered** by this court provided, *inter alia*:

> > Pursuant to 41(a)(1)(ii) of the Federal Rules of Civil Procedure and a Settlement
> > Agreement of August 5, 1996, **the terms of which are incorporated herein by
> > reference,** the parties to the above action stipulate and agree that all claims in the
> > action, including both the complaint and all counterclaims, be, and hereby are,
> > dismissed with prejudice, and that each party shall bear its own costs and
> > attorneys' fees.

> > The **parties also stipulate and agree that the court shall retain jurisdiction to
> > resolve any and all disputes arising out of the Settlement Agreement** in
> > accordance with the terms of the Settlement Agreement.  [Acushnet Exs. C and D
> > (emphasis added).]

On August 12, 1996, this Court then entered both stipulations, which expressly

incorporated the terms of the 1996 Agreement and retained its jurisdiction.  [Acushnet

Ex. E at 6; Acushnet Ex. F at 5.]

**B.    The 1996 Settlement Agreement, and the Breach of It, Played a
Central Role in this Litigation**

> Before the filing of **this** case, ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ [D.I. 199 Ex. 4.]  By seeking the assistance of Judge

Thynge, the parties confirmed the jurisdiction of this court in the following letter:

> > I write on behalf of The Top-Flite Golf Company and its
> > parent Callaway Golf Company (collectively "Callaway
> > Golf"), and the Acushnet Company to seek your assistance
> > in resolving another golf ball dispute between the
> > companies.

# REDACTED

There was a prior case in this court between Top-Flite's predecessor, Spalding & Evenflo Companies ("Spalding"), and the Acushnet Company. That prior case was a patent, false advertising and contract dispute about certain golf balls. It was resolved by settlement in 1996. A copy of the confidential settlement agreement is attached to this letter.

**As the Court will see from both** ████████ **and the stipulated dismissals filed in the prior case (attached as exhibits B and C to the settlement agreement), this Court retained jurisdiction over the parties for the purposes of resolving "any and all disputes arising out of the Settlement Agreement."** ████████

I therefore write to request the Court's assistance in overseeing a mediation of the current golf ball dispute between Callaway Golf and Acushnet, which is based o the alleged infringement by Acushnet of several Callaway Golf patents.

[D.I.199 Ex. 4 (August 26, 2005 letter to Magistrate Judge Thynge from Michael E. Zeliger (counsel for Callaway Golf) copying Alan Grimaldi (lead counsel for Acushnet at the time) and Frank Scherkenbach (lead counsel for Callaway Golf)).]

Magistrate Thynge granted the parties' request and supervised a lengthy mediation process pursuant to the Court's retained jurisdiction. That process was unfortunately not successful. As it concluded, ████████████ filed reexaminations of the patents in suit, instead of resolving the dispute in the contractually prescribed manner by initiating a proceeding in this Court.

The breach of contract count based on that violation of the 1996 Settlement Agreement thereafter was the subject of extensive briefing in this case.

- After it became clear that the PTO would allow the improperly filed reexaminations to go forward, Callaway Golf sought leave to amend the complaint "to add a breach of contract claim relating to the same patents-in-suit." [D.I. 31 at 1; see also D.I. 30 and D.I. 36]  Acushnet answered a corrected version of the Amended Complaint and did not seek to dismiss or remove Count V on jurisdictional grounds.  [D.I. 60].

- Acushnet *repeatedly* sought to stay the case based on the fruits of its breach of the 1996 Settlement Agreement – the co-pending inter-partes reexaminations.  [D.I. 9, 65, 66, 93, 185, 334]

- The Parties both sought summary judgment regarding the breach of contract claim.  [D.I. 198, 213, 239, 240, 257, 264.]

- Acushnet repeatedly sought admission of the reexaminations and criticized the Court for excluding them from evidence.  [See e.g., D.I. 312 (Summary Judgment Hearing Transcript at 44:9-13 and 54:22-25); 334, 380.]

Despite the resources the Court and the Parties have spent related to the breach of contract claim, the 1996 Settlement Agreement, and the reexaminations, Acushnet never once challenged the court's jurisdiction over the claim.  In fact, Acushnet *stipulated* to

the jurisdiction of this court over the breach of contract claim in the Proposed Pretrial

Order filed in this case [D.I. 334 at 2-3.]

### C. The Court's Pretrial Order Specifically Established Both Supplemental and Retained Jurisdiction

On November 14, 2007, the parties jointly submitted a Proposed Pretrial Order in

which the parties stated with respect to the breach of contract claim:

> **The parties agree that this is a legal matter already before the Court as part of the summary judgment provisions**.

[D.I. 334 at 2-3 (emphasis added)]. In the Proposed Pre-Trial Order, the parties outlined

the basis for jurisdiction of the breach of contract claim as follows:

> **Plaintiff claims that this Court has jurisdiction over Callaway Golf's breach of contract claim pursuant to 28 U.S.C. § 1367**. Plaintiff further contends that the breach of contract claim arises from the breach of a settlement agreement in a case previously litigated before this Court, **and that the Court has retained jurisdiction to enforce that settlement agreement** based on its jurisdiction over the underlying case.

[Id. at 3 (emphasis added).] Acushnet did not oppose or challenge this statement.[3]

Without any objection being raised, the Court, on November 20, 2007, entered the

Pretrial Order, which as noted specified both supplemental and retained jurisdiction over

Callaway Golf's breach of contract claim [So Ordered on November 20, 2007 – see

Halkowski Decl. Ex. E at 4-5 (Docket).]

Trial and extensive post-trial briefing followed, during which Acushnet again

never raised a jurisdictional challenge to the breach of contract claim. Acushnet's present

---

[3]    By contrast, when Acushnet affirmatively disagreed with a position in the Pretrial Order, it specifically challenged it by adding its own response. [See e.g. D.I. 334 at pp. 8-11.] Thus, Acushnet's silence is effectively an acknowledgement that the Court had at least supplemental jurisdiction with respect to the breach of contract claim.

7

challenge comes 26 months after Callaway Golf filed its original motion to amend its complaint to add the breach of contract claim.

## III.    ARGUMENT

Acushnet all but ignores this Court's supplemental jurisdiction over the breach of contract claim and fails to appreciate the actual holding in *Kokkonen v. Guardian Life*, 511 U.S. 375 (1994), which supports the Court's exercise of retained jurisdiction. Because the Court thus has both supplemental and retained jurisdiction over the breach of contract claim, Acushnet's motion to dismiss should be denied.

### A.    The Court Properly Exercised Supplemental Jurisdiction over Count V – the Breach of Contract Claim

The breach of contract claim is inextricably intertwined with the patent infringement action: (1) it involves the same patents; (2) it involves the same issues, namely, a challenge to the validity of those patents; (3) Acushnet sought to stay the instant case based on its breach of the 1996 Settlement Agreement on no less than five occasions; and (4) on at least three occasions, Acushnet sought to have the fruits of its breach, the reexaminations, admitted into evidence. The Court, thus, has an ample basis for choosing to exercise supplemental jurisdiction over the breach of contract claim.

Section 1367 of Title 28 provides, in relevant part, that Federal Courts, when they have original jurisdiction, can hear "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the *same case or controversy*." The Supreme Court has explained that "considerations of judicial economy, convenience and fairness to litigants support a *wide-ranging power* in the federal courts to decide state-law claims in cases that also present federal questions."

8

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (emphasis added). Similarly, the Third Circuit has observed: "In trying to set out standards for supplemental jurisdiction and to apply them consistently, we observe that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike. The principle that we glean from the cases is that mere tangential overlap of facts is insufficient, but total congruity between the operative facts of the two cases is unnecessary." *Nanavati v. Burdette Tomlin Memorial Hospital*, 857 F.2d 96, 105 (3d Cir. 1988).

The Third Circuit uses the following three factors to assess whether supplemental jurisdiction is proper:

    (1)       "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court."

    (2)       "The state and federal claims must derive from a common nucleus of operative facts";

    (3)       "and the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding."

*MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1102 (3d Cir. 1995); *see also, United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Callaway Golf's supplemental breach of contract claim meets these requirements.

### 1.    Callaway Golf's federal claim, a patent infringement action, confers subject matter jurisdiction on the Court

Acushnet concedes that the Court has subject matter jurisdiction over Callaway Golf's patent infringement claim.

9

### 2. The patent infringement and breach of contract claims are related

Each patent that is the subject of an infringement claim was unlawfully put into reexamination by Acushnet, in violation of the parties' 1996 Settlement Agreement. Acushnet sought to avoid this suit by filing the reexaminations and then seeking a stay of this litigation. The reexaminations – like Acushnet's efforts in this litigation – challenge the validity of the patents in suit. Acushnet raised the same art, many of the same arguments, and sought the same end result in the two proceedings. And it repeatedly sought to inject the improperly filed reexaminations into this case. This fully supports a conclusion that the state and federal claims in this case overlap sufficiently to allow the exercise of supplemental jurisdiction.

### a. Acushnet repeatedly attempted to stay this case based on the existence of the improperly filed reexaminations

On at least five occasions during the litigation of the patent claims, Acushnet attempted to stay the case based on its breach of the contract:

- On March 1, 2006, Acushnet answered the complaint and did not challenge the Court's original subject matter jurisdiction, but instead asserted that the case should be stayed pending resolution of the *inter partes* reexaminations [D.I. 6 at ¶ 6.]

- On May 5, 2006, Acushnet filed its first request seeking that the Court stay this matter based on the reexaminations. [D.I. 9.]

- On November 21, 2006, Acushnet filed a motion for Certificate of Appealability concerning the Court's Order denying the requested stay based on the reexamination proceedings. [D.I. 65 and 66.]

- On July 27, 2007, Acushnet filed a status report seeking to have the case stayed yet again. [D.I. 185.]

- Just before trial, Acushnet once again petitioned the Court to have the case stayed pending the conclusion of the reexaminations. [D.I. 334 at 8-9.]

Acushnet, itself, thus repeatedly made its breach of contract a part of this case.

> **b.     In addition to repeatedly trying to stay the case based on the improperly filed reexaminations, Acushnet sought to enter their existence into evidence**

Acushnet on at least three occasions petitioned the Court to admit the unlawfully pursued reexaminations into evidence:

- Acushnet on multiple occasions referred to the reexaminations during the summary judgment hearing.  [*See e.g.* D.I. 312 (Hearing Tr.) at 44:9-13; 54:22-25.]

- On November 13, 2007, Acushnet argued in its pretrial filings that the reexaminations should be admitted into evidence.  [D.I. 334 at 10.]

- On December 6, Acushnet filed a bench memorandum arguing that the reexaminations should be admitted into evidence at trial.  [D.I. 380.]

In addition to Acushnet making its breach of contract a part of this case and controversy, both the parties and the Court tried to mediate this case pursuant to the terms of the very contract at issue.  As Callaway has extensively briefed before and as this Court has held, the 1996 Agreement controlled the parties' and this Court's behavior for several years.  [D.I. 347 at 23-29.]  To argue now that a breach of that same contract is not related to this dispute is wholly without merit.

Since there are significant facts connecting Callaway Golf's state law count with its four federal counts, the Court properly exercised supplemental jurisdiction over Callaway Golf's breach of contract count.

3. **The claims – Callaway Golf's patent infringement action and Acushnet's breach of the 1996 Agreement – would ordinarily be expected to be tried in one judicial proceeding**

For over a year leading up to the filing of this action, the parties followed the dispute resolution process outlined in the 1996 Settlement Agreement. [D.I. 198 at 4-6 and 9-10.] The final step of that procedure was to file an action for either infringement or a declaration of invalidity in this Court. This was the only permissible remedy. Callaway Golf complied. Acushnet did not. Acushnet's breach of that agreement would ordinarily be expected to be tried in the same trial where the merits of the patents would be addressed, and that was the very expectation reflected in the Pretrial Order which the parties jointly proposed and the Court entered. It is therefore not surprising that Acushnet fails entirely to address this aspect of the jurisdictional test.

Courts in this Circuit have repeatedly exercised supplemental jurisdiction when contract claims are related to the original federal question claims, showing that this is the type of case that one would expect to be resolved in the same proceeding. *See e.g., ITT Industries v. Wastecorp. Inc.*, 2004 U.S. App. LEXIS 1839 (3d Cir. 2004), **6-8 (District Court properly exercised supplemental jurisdiction over breach of contract claim based upon 28 U.S.C. § 1367 when related to Lanham Act claims based on 28 U.S.C. §§ 1331, and 1338, and 15 U.S.C. § 1051 *et seq.*); *Anker Energy Corp. v. Consolidated Coal Co.*, 177 F.3d 161, 169 (3d Cir. 1999) (district court properly exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over breach of contract when related to federal claim pursuant to 26 U.S.C. § 9701-9722); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284-1285 (3d Cir. 1993) (appellate court found that because the trial court had jurisdiction over underlying federal question, it had the option of hearing the

pendent breach of contract claim); *American Ceramicraft v. Eisenbraum Reiss.,* 1993

U.S. Dist. LEXIS 19950 (D.N.J. June 16, 1993), *1-2 (Court exercised supplemental

jurisdiction over tortious interference with contract and future economic advantage, and

common law unfair trade competition, when it had original jurisdiction over patent

claims). This sampling of cases shows that it is proper to have breach of contract claims

heard along with related federal question claims – particularly here due to the clear

connection between the breach of contract and federal patent claims.

Moreover, Acushnet itself has contended on nearly the very same facts that this

Court can exercise supplemental jurisdiction over a breach of a settlement agreement,

when the breach of contract is related to a patent infringement cause of action. In 1995,

Acushnet in response to two patent infringement claims brought by Spalding and Evenflo

Companies ("Spalding"), counterclaimed that Spalding had breached a 1990 Settlement

Agreement by filing a lawsuit while the parties were still participating in a mediation

process pursuant to the terms of the 1990 Settlement Agreement. Acushnet alleged this

was proper pursuant to the Court's pendent or supplemental jurisdiction. [Halkowski

Decl. Ex. F at ¶ 55 (claim that Court has pendent jurisdiction[4] over Acushnet's

counterclaims); ¶¶ 61-66 (Acushnet's background facts in support of its breach of

contract claim); and ¶¶ 84-86 (Acushnet's breach of contract counterclaim); Acushnet

Ex. F at 4.] This Court then exercised supplemental jurisdiction over Acushnet's breach

of contract claim and the entire matter and counterclaims were later resolved as part of

the same 1996 Agreement that is now at issue here. Therefore, Callaway Golf's breach

---

[4]    Pendent jurisdiction was later codified as part of 28 U.S.C. § 1367 and is now referred
to as supplemental jurisdiction. *Williams v. Empire Funding Corp.,* 2004 WL 966235
at *1 (E.D.Pa. May 04, 2004).

of contract claim is the type that Acushnet, itself, has previously sought to be resolved in connection with co-pending patent infringement claims.

Because all three factors weigh in favor of supplemental jurisdiction, it was proper for the Court to exercise jurisdiction over the breach of contract claim and the Court need not go further.  However, in this case there are still other factors that weigh in favor of the Court exercising supplemental jurisdiction here.

### 4.    Considerations of judicial economy, convenience, and fairness also weigh in favor of the court's exercise of supplemental jurisdiction

In *Gibbs,* the Supreme Court held that, when Courts decide whether or not to exercise supplemental jurisdiction, they should also consider the principles of "judicial economy, convenience and fairness." 383 U.S. at 726.  The Supreme Court later noted that when considering these principles, the stage of the litigation should be considered as well, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. International College of Surgeons*, 522 U.S. 156,  173 (1997) (quoting *Cohill* at 350).  All of these factors support the Court's exercise of jurisdiction over the breach of contract claim in this matter.

Acushnet had the opportunity to fully argue its position when it chose to file its motion for summary judgment on the breach of contract claim and agreed there were no disputed issues of fact.  The Court and both parties have expended considerable resources in fully adjudicating Callaway Golf's breach of contract claim.  Since Acushnet objected to Callaway Golf amending its complaint (not on jurisdictional grounds), the Court had to consider three briefs before allowing the breach of contract claim to be added to this

14

action. The parties then both moved for summary judgment on the issue, which resulted in the filing of six more briefs. Finally, the Court heard oral argument on the issue – and not once did Acushnet raise any objection regarding the supposed lack of jurisdiction. In total, the Court has entertained nine briefs on the breach of contract claim and the record was fully developed.

In accord with principles of fairness and economy, it simply makes no sense to now decide the exact same issue again in another forum. Recently a court within this Circuit reached the same conclusion: "Here, those concerns weigh in favor of the continued exercise of supplemental jurisdiction. Extensive motion practice has already occurred before this Court, and it would be unfair to dismiss this action only to force Defendants to defend against the exact same claim in another forum." *Colanzi v. Countrywide Home Loans, Inc.,* 2008 U.S. Dist. LEXIS 13278, 4-6 (E.D. Pa. Feb. 22, 2008).

Even when the underlying federal claim is dismissed, the Third Circuit has held that a trial court can still hear a pendent breach of contract claim, especially when it has already heard all the necessary evidence. *Growth Horizon, Inc. v. Delaware County,* 983 F.2d 1277, 1285 (3d Cir. 1993) ("In this case, the district court has already held a trial on the merits and has already heard all the evidence necessary to reach a decision on the plaintiff's contract claim. This circumstance may cause the district court to decide that claim rather than dismiss it."). The case for jurisdiction here is even stronger, as the patent claims remains and the Court has heard all the evidence necessary to reach its decision regarding the breach of contract claim. Its decision should not be disturbed due to an after-thought jurisdictional argument.

### 5.    The cases cited by Acushnet are inapposite

The cases relied by Acushnet are readily distinguishable.  Acushnet first contends that *Highway Equipment Company* suggests the Court in this instance did not have supplemental jurisdiction.  [Acushnet Brief at 10.]  However, in *Highway Equipment*, the contract at issue did not involve patents at all – instead it involved an unrelated distribution agreement that terminated before the patent in question issued.  Furthermore, the contract involved the "distribution of Highway Equipment products, whereas the facts alleged in the federal counts involved a product manufactured by FECO subsequent to the termination of the agreement."  *Highway Equipment Company v. FECO,*  469 F.3d 1027, 1038-1039 (Fed. Cir. 2006).  By contrast, the breach of contract at issue in this litigation involved the same patents that were the subject of Callaway Golf's patent claims, and the contract is still in force today.

Acushnet's reliance on *Allen v Leal* is equally misplaced.  [Acushnet Brief at 10.] In *Allen,* the underlying Federal cause of action was a 42 U.S.C. § 1983 civil rights claim based on a shooting death.  27 F.Supp.2d 945, 946.  The family of the victim signed an agreement to resolve the matter for $90,000 and then later decided to back out of the agreement.  *Id.*  The defendants then filed a counterclaim three years after the lawsuit was initially filed for breach of the settlement agreement.  The only link between the two claims was the parties.  By contrast, the contract at issue in this case was entered into before the patent litigation, its breach involves the very same patents that are the subject of the infringement counts, the contract count was added to the complaint a few months after the original complaint was filed, and the breach was the subject of numerous filings by the parties.

16

Finally, Acushnet cites a few District of Delaware cases that are not applicable to this matter because there was no connection between the state law and federal question claims:

- *Paul v. Deloitte & Touche LLP* -- According to Acushnet, the Court in *Paul* declined to exercise supplemental jurisdiction because the claims only shared employer-employee relationship. 2007 U.S. Dist. LEXIS 60639, at *7-9. In addition, Deloitte challenged subject-matter jurisdiction only one month after Paul filed his complaint.

- *Dougherty v. Blize* – The only remaining Federal claim in *Dougherty* was a narrow claim concerning whether or not a COBRA disclosure was complete and had misinformation in it, while the plaintiff's remaining state law claims centered around his dismissal from his job. 2008 U.S. Dist. LEXIS 48646 at **21-22. In addition, the pleadings were so deficient in the matter, that many of his claims were dismissed outright. *Id.*

Here, in contrast to all the cases cited by Acushnet, as discussed above, a strong connection exists between Callaway Golf's federal and state claims – much more than the mere fact that they just involve the same parties. As the Third Circuit has noted, no two supplemental jurisdiction cases are exactly alike, but in this case Callaway Golf has shown the close relation between its four federal counts and its breach of contract count. Furthermore, the Court approved the parties' proposed Pretrial Order, which established that this Court had supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367.

17

**B.**     **In Addition to Having Supplemental Jurisdiction, This Court Properly Retained Jurisdiction to Enforce the 1996 Settlement Agreement**

While this Court properly exercised supplemental jurisdiction over Count V, it also retained jurisdiction over the cause of action. Either basis is sufficient for this Court to exercise jurisdiction over the breach of contract claim.

**1.**     **The parties properly incorporated the terms of their Settlement Agreement in, and the Court specifically retained jurisdiction by entering, their stipulated dismissals**

As set forth above, in dismissing the earlier actions, the parties' stipulated dismissals expressly incorporated the terms of the 1996 Settlement Agreement, which provided that the Court retained jurisdiction. The parties' intentions regarding jurisdiction were not buried in a lengthy settlement agreement, they were prominently set forth in the stipulated dismissals entered by the Court:

> Pursuant to 41(a)(1)(ii) of the Federal Rules of Civil Procedure and a Settlement Agreement of August 5, 1996, **the terms of which are incorporated herein by reference,** the parties to the above action stipulate and agree that all claims in the action, including both the complaint and all counterclaims, be, and hereby are, dismissed with prejudice, and that each party shall bear its own costs and attorneys' fees.
>
> The **parties also stipulate and agree that the court shall retain jurisdiction to resolve any and all disputes arising out of the Settlement Agreement** in accordance with the terms of the Settlement Agreement. [Acushnet Exs. C and D (emphasis added).]

It was therefore equally plain to the Court, when it entered the stipulations, that one effect of doing so was retaining jurisdiction to resolve disputes under the 1996 Settlement Agreement.

In arguing that the Court lacks jurisdiction over the breach of contract claim, Acushnet relies heavily on a myopic view of *Kokkonen v. Guardian Life*, 511 U.S. 375

(1994). Acushnet cites *Kokkonen* for the proposition that, in order for a Court to retain jurisdiction over a settlement contract, it must specifically do so in an "order" dismissing the case. Acushnet is mistaken.[5]

      Per *Kokkonen*, parties can seek to retain a Court's jurisdiction over the enforcement of settlement agreement by ***either*** seeking an Order pursuant to Federal Rule of Civil Procedure 41(a)(2) or pursuant to a stipulated dismissal under Federal Rule of Civil Procedure 41(a)(1)(ii). *Kokkonen*, 114 S.Ct. at 381;[6] *Board of Trustees of the Hotel & Restaurant Empls. Local 25 v. Madison Hotel*, 97 F.3d 1479, 1486 (D.C. Cir. 1996) ("We note, however, that although the Supreme Court denied federal jurisdiction in *Kokkonen,* it left open the possibility that litigants could sometimes retain federal jurisdiction over a settlement agreement by executing an adequately explicit stipulation of dismissal." "[L]itigants can readily avoid [the] ambiguities [expressed in *Kokkonen*] by clearly providing for retention of federal district court jurisdiction in their stipulations of dismissal, or by incorporating the full text of the settlement agreement into those stipulations. *See Kokkonen,* 114 S.Ct. at 1677.").

      The drafters of the 1996 Agreement did exactly that – they specifically included a clause in their stipulated dismissal retaining jurisdiction. [*See* Section II.A at pp. 4-5.] The parties' stipulated dismissals support a finding of retained jurisdiction pursuant to *Kokkonen.*

---

[5]  While Callaway Golf has complied with *Kokkonen*, the Court need not even reach this issue because the Court properly exercised supplemental jurisdiction over the breach of contract claim. In any event, the Court's retained jurisdiction over Count V provides a separate and independent basis for the Court's jurisdiction.

[6]  In *Kokkonen*, jurisdiction over the settlement agreement was not maintained because "[t]he Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement." *Kokkonen*, 114 S.Ct. at 377.

# REDACTED

### 2. The Cases Cited by Acushnet Regarding Enforcement of Settlement Agreements are Inapposite

At pages 7-8 of its brief, Acushnet cites a series of cases where it argues that retained jurisdiction cannot be based on underlying settlement agreements. But in those cases, the issue of retained jurisdiction was not before the Court. Each of them is therefore irrelevant, because they do not involve the situation here ███████████ ███████████████████████████████████ *expressly* incorporated into the dismissals that the Court entered.

In *Sawka* v. *Healtheast, Inc.,* the underlying case was dismissed by the district court "without prejudice, without incorporating the terms of the settlement, and hence, without specifically retaining jurisdiction to enforce it." 989 F.2d 138, 141 (3d Cir. 1993). As explained above, the actions resolved by the 1996 Agreement at issue here were dismissed with prejudice, the stipulations incorporated the terms of the settlement agreement, they specifically retained the Court's jurisdiction, and they were entered by the Court. Furthermore, the parties' and this Court's behavior in following the procedures of the 1996 Agreement demonstrate their collective and "manifest[ed]" intent to follow the terms of the agreement. Likewise, the Federal Circuit and Southern District of New York cases cited by Acushnet did not include stipulated dismissals that expressly referred to the Court's retained jurisdiction. [Acushnet Brief at 8.]

Acushnet also cites a Middle District of Georgia case, which purportedly supports Acushnet's position that a stipulation cannot confer jurisdiction on a district court. In *Arista Records LLC v. Doyer DeLoach,* the court noted that a stipulation "cannot automatically confer jurisdiction on the Court to later resolve disputes." 2007 U.S. Dist.

20

LEXIS 29700 at **3-4 (M.D. Ga. Apr. 23, 2007)(emphasis added). The case does not hold that a stipulation cannot confer jurisdiction, especially where the parties succinctly stipulate to the Court's retention of jurisdiction and that stipulation is entered by the Court. Furthermore, in *Arista*, the Court noted that it was exercising its discretion to decline the parties' invitation to retain jurisdiction. *Id.* at *4. In this case, this Court did not decline the parties' request for retention of jurisdiction; in fact, the Court expressly agreed to it, and has acted accordingly since that time.

Thus, none of Acushnet's authority supports its demand that the breach of contract claim be dismissed. To the contrary, this Court properly retained jurisdiction and properly exercised supplemental jurisdiction over the breach of contract claim as noted in the Pretrial Order.

## IV.    CONCLUSION

For the reasons set forth above, the Court properly exercised jurisdiction over Callaway Golf's breach of contract claim and Acushnet's belated motion to dismiss should be denied.

21

Dated: August 28, 2008                FISH & RICHARDSON P.C.


By: /s/ Thomas L. Halkowski
      Thomas L. Halkowski (#4099)
      919 N. Market Street, Suite 1100
      P.O. Box 1114
      Wilmington, DE 19899-1114
      Tel:  (302) 652-5070
      Fax:  (302) 652-0607

      Frank E. Scherkenbach
      225 Franklin Street
      Boston, MA 02110-2804
      Tel:  (617) 542-5070
      Fax:  (617) 542-8906

      Roger A. Denning
      12390 El Camino Real
      San Diego, CA 92130
      Tel:  (858) 678-5070
      Fax:  (858) 678-5099

**ATTORNEYS FOR PLAINTIFF**
**CALLAWAY GOLF COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, the attached document was electronically filed with the Clerk of Court using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on August 28, 2008, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz                          ·Attorneys for Defendant
David E. Moore                              ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                       Attorneys for Defendant
Joseph P. Lavelle                            ACUSHNET COMPANY
Brian Rosenthal
Clint Brannon
Kenneth Donnolly
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com


                              */s/ Thomas L. Halkowski*
                              Thomas L. Halkowski