## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,                )
                                      )
              Plaintiff,              )        C.A. No. 06-91 (SLR)
                                      )
       v.                             )        **PUBLIC VERSION**
                                      )
ACUSHNET COMPANY,                     )
                                      )
              Defendant.              )


### ACUSHNET'S REPLY IN FURTHER IN SUPPORT OF ITS MOTION
### TO DISMISS CALLAWAY'S CLAIM OF BREACH OF CONTRACT (COUNT V)
### AND TO VACATE THE COURT'S NOVEMBER 20, 2007 DECISION AND ORDER

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: September 10, 2008
Public Version Dated: September 17, 2008
883034 / 30030

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..........................................................................................1

II.     SUPPLEMENTAL JURISDICTION IS NOT PRESENT ....................................2

      A.      The Patent Infringement Claim and Breach of Contract Claim Do Not
Derive from a Common Nucleus of Operative Facts..............................................2

      B.      The Infringement Claim and Breach of Contract Claim Would Not
Ordinarily Be Expected to be Tried in One Proceeding .........................................4

      C.      Callaway's Cited Authorities Are Factually Inapposite .........................................6

III.    THE DISTRICT COURT IN THE PRIOR LITIGATION DID NOT RETAIN
JURISDICTION TO ENFORCE THE 1996 AGREEMENT ............................................8

IV.    THE PRETRIAL ORDER DOES NOT ESTABLISH JURSIDICTON ..........................12

V.     THE TIMING OF THIS MOTION IS UNFORTUNATE BUT CALLAWAY'S
RELIANCE ON JUDICIAL ECONOMY AND OTHER EQUITABLE
CONSIDERATION IS NO SUBSTITUTE FOR JURISDICTION.................................13

VI.    CONCLUSION..............................................................................................................15

## TABLE OF AUTHORITIES

### CASES

*Allen v. Leal,*
    27 F. Supp. 2d 945 (S.D. Tex. 1998) ....................................................................................7, 8

*Arista Records LLC v. Doyer Deloach,*
    No. 07:06-cv-112 (HL), 2007 U.S. Dist. LEXIS 29700 (M.D. Ga.  Apr. 23, 2007) ...............10

*Atlas Communications, Ltd. v. Waddill,*
    1997 U.S. Dist. LEXIS 16735 (E.D. Pa. Oct. 28, 1997) ..........................................................10

*Board of Trustees of the Hotel & Restaurant Empoyeels. Local 25 v. Madison Hotel,*
    97 F.3d 1479 (D.C. Cir. 1996) ..................................................................................................10

*Christianson v. Colt Industries Operating Corp.,*
    486 U.S. 800 (1988) ..............................................................................................................1, 15

*Department of Public Welfare v. Department of Health & Human Services,*
    729 F. Supp. 1518 (W.D. Pa. 1990) ..........................................................................................13

*Dougherty v. Blize,*
    C.A. No. 07-674-SLR-LPS, 2008 U.S. Dist. LEXIS 48646 (D. Del. June 25, 2008) .....4, 7, 14

*Drayton v. Kyler,*
    235 F. App'x 917 (3d Cir. 2007) ...............................................................................................11

*Goldman Marcus, Inc. v. Goldman,*
    No. 99 Civ 11130 (KMW), 2000 U.S. Dist. LEXIS 3500 (S.D.N.Y. Mar. 21, 2000) .........3, 14

*Hameli v. Nazario,*
    930 F. Supp. 171 (D. Del. 1996) ......................................................................................*passim*

*Highway Equipment Co. v. Feco, Ltd.,*
    469 F.3d 1027 (Fed. Cir. 2006) ..................................................................................................2

*Kokkonen v. Guardian Life Insurance Co. of America,*
    511 U.S. 375 (1994) .........................................................................................................*passim*

*Lucille v. City of Chicago,*
    31 F.3d 546 (7th Cir. 1994) ........................................................................................................9

*Lyon v. Whisman,*
    45 F.3d 758 (3d Cir. 1995) ......................................................................................................5, 7

*Maritimes, Inc. v. Kabushiki-Kaisha Nippon Conlux,*
  24 F.3d 1368 (Fed. Cir. 1994)..................................................................................2

*Nanavati v. Burdette Tomlin Memorial Hospital,*
  857 F.2d 96 (3d Cir. 1988)......................................................................................4

*National Presto Indus., Inc. v. Dazey Corp.,*
  107 F.3d 1576 (Fed. Cir. 1997)...............................................................................9

*Paul v. Deloitte & Touche LLP,*
  C.A. No. 06-225-MPT, 2007 U.S. Dist. LEXIS 60639 (D. Del. Aug, 20, 2007)........4

*Pennsylvania v. Union Gas Co.,*
  491 U.S. 1 (1989)...................................................................................................10

*In re Phar-Mor, Inc. Securities Litigation,*
  172 F.3d 270 (3d Cir. 1999)...............................................................................11, 12

*Reich v. Local 30,*
  6 F.3d 978 (3d Cir. 1993)......................................................................................10

*Salei v. Boardwalk Regency Corp.,*
  913 F. Supp. 993 (E.D. Mich. 1996).......................................................................8

*Schaffer v. Veneman,*
  325 F.3d 370 (D.C. Cir. 2003)...............................................................................11

*Sosna v. Iowa,*
  419 U.S. 393 (1975)...............................................................................................10

*United Mine Workers v. Gibbs,*
  383 U.S. 715 (1966)................................................................................................2

**STATUTES**

28 U.S.C. §§ 1331..................................................................................................14

**MISCELLANEOUS**

Fed. R. Civ. P. 12(h)(3)...........................................................................................14

## I.      PRELIMINARY STATEMENT

Callaway's opposition to Acushnet's motion to dismiss confirms the conclusion that the Court lacks jurisdiction over Callaway's breach of contract claim:

(1)  Callaway fails to present any court order from the earlier Spalding-Acushnet cases incorporating or even referring to the parties' dismissal stipulations or otherwise retaining jurisdiction over the enforcement of the 1996 Settlement Agreement.  Despite their presumed intentions, the parties could not, merely by agreement, confer continuing jurisdiction on the Court.  An order *from the Court* was required and there was none.

(2)  Callaway fails to demonstrate that its patent infringement and state law breach of contract claims "derive from a common nucleus of operative facts," *Hameli v. Nazario*, 930 F. Supp. 171, 183 (D. Del. 1996), such that supplemental jurisdiction is proper.  Callaway's argument, directed to showing that in some respects the two claims are "related," falls critically short of addressing the touchstone issue.  The facts that gave rise to Callaway's contract and patent causes of action lack the commonality relevant for § 1367 purposes; the two causes of action do not share commonality of the operative facts that give rise to each claim.

In short, neither § 1367 nor the events of the earlier litigation support jurisdiction. Callaway's opposition brief, long on obfuscation and full of appeals to "equities" that supposedly (but cannot) support jurisdiction, lacks any persuasive force.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("Our agreement with the Federal Circuit's conclusion that it lacked jurisdiction, compels us to disapprove of its decision to reach the merits anyway 'in the interest of justice.'").  Acushnet's motion should be granted.

## II.   SUPPLEMENTAL JURISDICTION IS NOT PRESENT

### A.   The Patent Infringement Claim and Breach of Contract Claim Do Not Derive from a Common Nucleus of Operative Facts

Callaway argues that its patent infringement claim and breach of contract claim are

"inextricably intertwined." Its core assertion is that the Court should look to the similarities and

overlap between this litigation and the reexamination proceedings as a basis for supplemental

jurisdiction. (D.I. 474 at 8, 10-11.) This argument misses the point entirely and draws no

support from any authorities. Callaway's patent infringement and state law contract claims may

share some relation, as Acushnet explained. (D.I. 472 at 9.) But those claims do not "derive

from a common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725

(1966). This is the dispositive question and Callaway's assertion of jurisdiction fails to

demonstrate commonality on this key point. *See Hameli*, 930 F. Supp. at 182-83. Straying from

this standard would be error on the part of the Court. *See, e.g., Mars, Inc. v. Kabushiki-Kaisha*

*Nippon Conlux*, 24 F.3d 1368, 1375-76 (Fed. Cir. 1994) (error for district court to assume it had

supplemental jurisdiction over a claim of foreign patent infringement on account of domestic patent

infringement; the two claims did not derive from a common nucleus of operative fact); *Highway*

*Equip. Co. v. Feco, Ltd.*, 469 F.3d 1027, 1037-39 (Fed. Cir. 2006) (district court's verdict

vacated for lack of supplemental jurisdiction).

Callaway's patent infringement and breach of contract claims are completely separate

causes of action that share no commonality of operative facts. The two disputes involve separate

claims (one tort-like and one based on contract), arise from separate duties, separate time

periods, separate acts, different harms, and different factual and legal issues for resolution to

decide both the liability and damages of each of these claims. Further, it is clear that each cause

2

of action may be decided without reference to the operative facts of the other. Callaway does not and cannot rebut this basic truth.

The Court found that the contract was breached by petitioning for the reexaminations. (D.I. 347 at 26-29.) The ultimate merits of the reexaminations are irrelevant to the contract claim. Likewise, determining whether Acushnet infringed any valid claims of the patents-in-suit requires no proof at all from the contract or the duties therein, which relate to mediation and petitioning in the proper forum. Certainly the breach of the contract did not infringe the patents; nor did the infringement of the valid or invalid patents breach the contract. Instead, the set of circumstances that give rise to Callaway's differing claims are distinct.

It does not matter, even if it was true,[1] that the breach of contract "played a central role" in this case. (D.I. 474 at 4). This is an attempt by Callaway to confuse the issue. The relevant analysis is not to compare what is to take place (or what did take place) in the litigation on account of hearing both claims together, but instead to determine *whether the operative facts of each claim*, as they originated, *derive from a common nucleus*. Here they do not.

Further, even if the breach of contract claim "sprang from" the parties' disagreement over the validity of the patents-in-suit, as Callaway claims, this is insufficient to create jurisdiction. It is not enough that there is some relation between the two claims, the claims must share common, operative facts. "If the result were otherwise, federal jurisdiction would be expanded to the point that parties alleging a series of wrongs in an ongoing dispute could litigate them all in federal court so long as one in a string of tit-for-tat measures raised a federal claim." *Goldman Marcus, Inc. v. Goldman*, No. 99 Civ. 11130 (KMW), 2000 U.S. Dist. LEXIS 3500, at *22

---

[1] Based on the Court's rulings to date, Callaway's premise is actually not true. Not only did the Court bifurcate further determinations on the contract dispute pending the final outcome as to the validity of the patents, but also neither the breach nor the reexaminations themselves were mentioned during the patent trial.

(S.D.N.Y. Mar. 21, 2000). *See also Dougherty v. Blize*, C.A. No. 07-674-SLR-LPS, 2008 U.S. Dist. LEXIS 48646, at *20-23 (D. Del. June 25, 2008) (common "course of retaliatory action" relevant to federal and state law claims did not confer jurisdiction, despite some relation to one another).

Hence, Callaway's arguments that the infringement claim and contract claim are "related" on account of Acushnet attempting (unsuccessfully) to apply the results of the reexaminations to this case (D.I. 474 at 10-11) are simply misplaced. Nowhere does Callaway even approach fairly addressing, much less satisfying in favor of the supplemental jurisdiction, the touchstone question whether the claims at issue "derive from a common nucleus of operative facts." *Hameli*, 930 F. Supp. at 182-83 ("a federal court may exercise jurisdiction over state law claims only where those claims arise from the same set of circumstances that gave rise to the federal law claim."). *See also Paul v. Deloitte & Touche LLP*, C.A. No. 06-225-MPT, 2007 U.S. Dist. LEXIS 60639, at *9 (D. Del. Aug, 20, 2007) ("supplemental jurisdiction is proper only where 'federal and state claims are merely alternate theories of recovery based on the same act'").[2]

## B.   The Infringement Claim and Breach of Contract Claim Would Not Ordinarily Be Expected to be Tried in One Proceeding

Callaway criticizes Acushnet for not addressing more directly the secondary question of whether the patent infringement and breach of contract claims would ordinarily be expected to be tried in one proceeding. (D.I. 474 at 12.) This is recognized in Acushnet's brief as the third

---

[2] Callaway argues that "total congruity between the operative facts of the cases is unnecessary." (D.I. 474 at 9.) But on the claims before this Court there is noticeably total *in*congruity, and not even a slight factual overlap from which these claims derive. *See also Nanavati v. Burdette Tomlin Mem'l. Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988) (although total congruity of operative facts is unnecessary, "mere tangential overlap of facts is insufficient").

critical element for proof of supplemental jurisdiction. (D.I. 472 at 8.) *See also Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). But Callaway fails to meet this requirement as well.

Contrary to Callaway's argument, Acushnet need not prove the absence of this prerequisite to jurisdiction. Callaway, as the plaintiff, carries the burden of proof (*see* D.I. 472 at 5), and hence, Callaway – not Acushnet – must prove that all three such requirements are present. Moreover, supplemental jurisdiction fails because the claims at issue do not derive from a common nucleus of operative facts, the second of three critical requirements for supplemental jurisdiction. That failure renders moot the third requirement.

While Callaway intimates that the requirements for application of supplemental jurisdiction are discretionary "factors" to "weigh" in some form of a balancing act (*e.g.*, D.I. 474 at 14), this is clearly inaccurate. *See Lyon*, 45 F.3d at 760; *Hameli*, 930 F. Supp. at 182-83. While the Court has some discretion to *refuse* to entertain cases within its supplemental jurisdiction, it has no discretion to entertain jurisdiction when the prerequisite commonality is not present. Callaway is also wrong on the merits of this issue. It would neither be necessary nor even particularly efficient that the claims of patent infringement and breach of the 1996 Settlement Agreement be adjudicated together. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380 (1994). Notably, just before trial this Court elected to bifurcate further proceedings on Callaway's breach of contract claim, pending the proceedings and final determination on appeal of Callaway's patent infringement and validity claims. (D.I. 349 at 4). Also, it was Callaway's position that made it virtually impossible to see that the two claims be tried fairly and efficiently in one proceeding. Before and after the bifurcation ruling, Callaway repeatedly urged (successfully so) that the parties be prohibited from mentioning in the trial Acushnet's act of filing the reexaminations on the patents-in-suit. (*E.g.*, D.I. 334 at 10.)

5

Thus, Callaway offers no credible reason the patent infringement and breach of contract claims in this action would ordinarily be expected to be tried in one proceeding.

### C. Callaway's Cited Authorities Are Factually Inapposite

At pages 12-13 of its brief, Callaway argues that courts routinely exercise supplemental jurisdiction when contract claims are related to original federal question claims. Callaway's authorities contain no relevant analysis and are factually inapposite.

All but one of Callaway's cited decisions lack any substantive discussion of the supplemental jurisdiction issue. *ITT Industries,* for example, involved a federal trademark dispute and defendant's refusal to end its use of the plaintiff's trademark after the license term expired, in violation of the license agreement. There was no contest of jurisdiction and the reference to jurisdiction in this non-precedential case was boilerplate.

Similarly, in *Anker Energy,* the court simply footnoted that there was jurisdiction. There, both counts derived from the same operative facts because defendants failed to pay certain retiree benefits under both the federal Coal Act and a contract.

Supplemental jurisdiction also was not challenged and was not an issue in *American Ceramicraft.* Moreover, contrary to Callaway's misconstruction of that case, supplemental jurisdiction over the tortious interference and unfair trade practices claims derived not from the court's jurisdiction over patent claims, but instead from its jurisdiction over plaintiff's Lanham Act claims.[3]

The only case cited by Callaway that even addresses a contested supplemental jurisdictional question is *Growth Horizon.* However, the issue there was whether the district court should have exercised discretion to hear the state law claim pursuant to § 1367(c), which

---

[3] There was both a Lanham Act claim and a patent infringement claim in this case. Callaway happens to mention only the patent claim, stating in error that the court "exercised supplemental jurisdiction …, when it had original jurisdiction over patent claims." (D.I. 474 at 13.)

allows a court to decline to exercise supplemental jurisdiction even though supplemental

jurisdiction may otherwise exist. The parties and appellate court assumed that after the court

revived a federal claim closely related to the state law claim, supplemental jurisdiction was

present. The state law and federal law claims derived from a common nucleus of operative facts:

plaintiff alleged it was both a breach of contract and a violation of the Fair Housing Act for the

defendant County to refuse to assume certain leases and that the County refused its contractual

obligation to do so on account of unlawful, FHA-prohibited discrimination.

Accordingly, Callaway's authorities are far afield from the facts of this case. Callaway's

cases merely represent the run-of-the-mill situation where the acts of tort and breach are identical

or where the acts that give rise to the federal statutory violation also give rise to a breach of

contract, or vice versa. It is obvious in those cases (indeed, it is not contested in those cases) that

the federal claim and the state law claim derive from a common nucleus of operative facts.

In contrast, Callaway ignores exemplary cases in support of Acushnet's view, such as

*Hameli*, this Court's opinion. *See* 930 F. Supp. at 183 (the claim that employer lacked "good

cause" to terminate plaintiff under state law was not so closely related to plaintiff's claim that

defendant's decision to terminate plaintiff violated due process). Callaway also ignores

exemplary decisions from the Third Circuit, such as *Lyon. See* 45 F.3d at 762-63 (insufficient

nexus between FLSA overtime claim and contract claim for failure to pay bonus).

These cases, and Acushnet's other cited decisions, each of which rejected the existence of

supplemental jurisdiction, are far closer to the facts of this case than are Callaway's run-of-the-

mill boilerplate decisions. *See also, e.g., Allen v. Leal*, 27 F. Supp. 2d 945, 949 (S.D. Tex. 1998)

(no jurisdiction over breach of agreement on account of the § 1983 action that the agreement

initially settled; the claims were "completely separate causes"); *Dougherty*, 2008 U.S. Dist.

7

LEXIS 48646, at *20-23; *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 999-1000 (E.D. Mich. 1996) (breach of settlement did not arise from a common set of facts with the federal claim).[4]

At bottom, § 1367 cannot be a basis for subject matter jurisdiction in this Court over Callaway's state law breach of contract claim.

## III.   THE DISTRICT COURT IN THE PRIOR LITIGATION DID NOT RETAIN JURISDICTION TO ENFORCE THE 1996 AGREEMENT

Callaway also fails to demonstrate subject matter jurisdiction over its claim for breach of the 1996 Settlement Agreement based on retained jurisdiction. Surprisingly, Callaway still clings to its position despite now being fully aware from the files of the 1996 Spalding-Acushnet litigation that no order reserving jurisdiction came out of those cases. (D.I. 474 at 19.)

To start, Callaway distorts the record. It states throughout its brief that the court "entered" the parties' dismissal stipulations. (*E.g.,* D.I. 474 at 4, 18, 20). Yet, to suggest by this that the court in 1996 acted to adopt the parties' stipulations is misleading and very inaccurate.

A review of the records cited by both parties shows that **the court** did not order or direct entry of these stipulations. Under Rule 41 the stipulations did not require court action and the parties never sought such an order. Instead, the stipulations were merely filed or "entered" by Clerk's Office into the court's docket sheet and file system. No court order was sought or made.

---

[4] On pages 16-17 of its brief, Callaway does half-heartedly attempt to distinguish at least some of Acushnet's authority, but to no avail. The Court need only compare Callaway's descriptions of the cases in this section to the cases themselves. As one example, Callaway mischaracterizes *Allen* as a case in which "[t]he only link between the two claims was the parties." (D.I. 474 at 16.) But in *Allen* the state law claim was based on the breach of the settlement of a federal civil rights claim that plaintiff refused to dismiss despite having agreed via the settlement to dismiss this claim. Although the court continued to hear the civil rights claim at issue in the agreement, it also held that the breach of the agreement to settle did not derive from operative facts in common with the civil rights dispute itself and thus could not be heard under supplemental jurisdiction.

Here, "entry" is simply entry of filings into the court's docketing system in the way that every filing by the parties was "entered." (*See* D.I. 472, Exs. E & F *passim*.) This fact is omitted in Callaway's explanation.

Further, Callaway points to no action **by the Court** retaining jurisdiction to enforce the 1996 Agreement. As the files irrefutably show, the stipulations of dismissal were filed, the docketing clerk docketed them, the clerk provide a copy to chambers, and the docketing entry system (or clerk) placed a notation that the 1996 cases were closed. (D.I. 472, Ex. E at 6; Ex. F at 5). The Court did not enter any order of dismissal, did not express the retention of jurisdiction, and did not so much as mark the relevant stipulations "so ordered."

Contrary to Callaway's arguments, the parties' stipulated dismissals cannot alone support supplemental jurisdiction under *Kokkonen*. This reading of *Kokkonen* is not "myopic," but rather the only reasonable reading of that case. *See National Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1583 (Fed. Cir. 1997) (order or judgment must be entered incorporating the settlement agreement, citing *Kokkonen*).[5] "[P]arties have wide latitude to settle their disputes, [but] they cannot by agreement add to the jurisdiction of a federal judicial officer." *Hameli*, 930 F. Supp. at 182 (Robinson, J.). In *Kokkonen*, the Supreme Court addressed a stipulation of dismissal pursuant to Rule 41(a)(1)(ii), as here, and there is no room for doubt what it said:

> The situation would be quite different if the parties' obligation to comply had been made part of the *order* of dismissal – either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the *order*. In that event, a breach of the agreement would be a violation of the *order*, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms . . . do not suffice to make them part of **his order**.
>
> .....

---

[5] *See also Lucille v. City of Chicago*, 31 F.3d 546, 548-49 (7th Cir. 1994) (court will only enforce agreement to the extent its terms are incorporated into an order or judgment of the court).

> When the dismissal is pursuant to [*Rule*] *41(a)(2)* ... the parties'
> compliance with the terms of the settlement contract (or the court's "retention of
> jurisdiction" over the settlement contract) may, in the court's discretion, be *one of
> the terms set forth in the order*.  Even when, as occurred here, the dismissal is
> pursuant to *Rule 41(a)(1)(ii)* (which does not by its terms empower a district court
> to attach conditions to the parties' stipulation of dismissal) we think *the court is
> authorized* to embody the settlement contract in *its dismissal order* (or, what has
> the same effect, retain jurisdiction over the settlement contract) if the parties
> agree.  Absent such action, however, enforcement of the settlement agreement is
> for state courts, unless there is some independent basis for federal jurisdiction.

*Kokkonen*, 511 U.S. at 381-82 (emphasis added).

Hence, an express dismissal order *of the court* was required to approve and effectuate the

1996 Spalding-Acushnet stipulations and Settlement Agreement seeking to retain jurisdiction.

*See Arista Records LLC v. Doyer Deloach*, No. 07:06-cv-112 (HL), 2007 U.S. Dist. LEXIS

29700, at *3-4 (M.D. Ga. Apr. 23, 2007) ("[B]ecause a dismissal by stipulation necessarily

bypasses the court, a dismissal by stipulation does not act as an agreement between the court and

the parties and cannot automatically confer jurisdiction on the court to resolve later disputes.").

*See also Sosna v. Iowa*, 419 U.S. 393, 398 (1975) ("While the parties may be permitted to waive

nonjurisdictional defects, they may not by stipulation invoke the judicial power of the United

States in litigation ..."); *Reich v. Local 30*, 6 F.3d 978, 982 n.5 (3d Cir. 1993) ("Article III of the

U.S. Constitution limits the subject matter jurisdiction of the federal courts and parties cannot

confer subject matter jurisdiction on a federal court by consent."); *Atlas Commc'ns, Ltd. v.

Waddill*, No. 97-1373, 1997 U.S. Dist. LEXIS 16735, at *6 (E.D. Pa. Oct. 28, 1997) (*quoting

Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 25 (1989) (Stevens, J., concurring) ("cases are

legion holding that a party may not ... invoke federal jurisdiction simply by consent")); *Hameli*,

930 F. Supp. at 180 (similar).

Callaway's reliance on dicta from a footnote in *Board of Trustees of the Hotel &

Restaurant Employees Local 25 v. Madison Hotel*, 97 F.3d 1479 (D.C. Cir. 1996) is misplaced.

10

A far more recent decision of the District of Columbia Circuit, however, states its view of *Kokkonen* differently: "a party that wants to retain jurisdiction over its settlement agreement should request the district court to do in its order of dismissal." *Schaffer v. Veneman*, 325 F.3d 370, 373-74 (D.C. Cir. 2003) (rejecting ancillary jurisdiction on this basis since plaintiff "Shaffer did not take this simple precaution"). Numerous other decisions reach the same conclusion, discrediting Callaway's argument. *See, e.g., Drayton v. Kyler*, 235 F. App'x, 917, 919 (3d Cir. 2007) (under *Kokkonen* a "court lacks jurisdiction to enforce terms of a settlement agreement ... unless court *specifically retains jurisdiction*.") (emphasis added); *see also In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) ("In *Kokkonen*, the Supreme Court held that when a federal district court dismisses an action pursuant to a settlement agreement, that court lacks jurisdiction to enforce that settlement agreement unless the obligation of the parties to comply with the settlement agreement is made part of the dismissal order.")[6]

Finally, Callaway suggests – though does not so much as argue it – that Magistrate Judge Trostle (now Thynge), assigned to help privately mediate the 1996 cases, could have conferred jurisdiction. The parties' settlement conference, however, was a private and court-ordered confidential discussion. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *See Kokkonen*, 511 U.S. at 381

(knowledge by Court of settlement terms alone is not enough to confer jurisdiction.). Callaway

---

[6] If accepted, the implications of Callaway's argument are stunning. If a stipulation, never expressly approved by the court, is sufficient to confer jurisdiction in accordance with whatever the settling parties may desire to later litigate in federal court, all manner of mischief – without court scrutiny – would be made possible. A serious constitutional issue is raised by Callaway's assertion. Federal courts may not simply delegate their Article III powers to the parties to exercise at their whim. Callaway's suggestion is especially antithetical to *Kokkonen's* strong rebuke of district courts loosely assuming jurisdiction over controversies neither constitutionally nor statutorily conferred upon them. *See Kokkonen*, 511 U.S. at 377-78.

cites no authority lending any support to the notion that the events of a settlement conference

can, without a court order, provide for retained jurisdiction. In fact, the Third Circuit has made

clear that the wishes of the Court, if not placed into a court order, cannot sustain ongoing

jurisdiction. *See In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d at 275 (declining to "defer to the

expressed intention of the district court ... [because] ... under *Kokkonen*, unexpressed intent is

insufficient to confer subject matter jurisdiction.").

The reality seems to be that, following the settlement conference, Mr. Klein either failed

to heed, or failed even to consider, the then-recent *Kokkonen* decision and failed to take the steps

needed to retain jurisdiction. ████████████████████████████████████

████████████████████████████████████

Callaway fails to show jurisdiction over Count V on account of the 1996 litigation.

## IV.    THE PRETRIAL ORDER DOES NOT ESTABLISH JURSIDICTON

Callaway next asserts, that jurisdiction exists over the contract claim as a result of the

November 2007 Proposed Pretrial Order, signed before the patent trial. Callaway argues that the

Court's "so ordered" signature approving of the parties' Proposed Pretrial Order, "specifically

established both supplemental and retained jurisdiction." (D.I. 474 at 7; *see also id.* at 6-8 & 17.)

This argument is misplaced on several fronts.

First, Callaway feels compelled again to play fast and loose with the facts to support its

argument. Callaway states that Acushnet "stipulated to the jurisdiction of this court over the

breach of contract claim in the Proposed Pretrial Order." (D.I. 474 at 6-7). Yet, the agreed

_____

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

language of the Proposed Pretrial Order in the record states that "***Plaintiff claims***" jurisdiction

based on § 1367 and that "***Plaintiff further contends***" the court retained jurisdiction to enforce

the settlement agreement. (D.I. 334 at 3 (emphasis added).)  In other words, these are assertions

on *Callaway's* part; they are not stipulations.  Hence, the Court, by its "so ordered" signature on

the Proposed Pretrial Order, no more decided Callaway's jurisdictional claims than it decided the

numerous other unilateral claims and contentions in the parties' proposal.

Second, Callaway cites no authority for the proposition that a Proposed Pretrial Order

establishes jurisdiction.  Not surprisingly, there is none.  It is well-established that "parties may

not waive a deficiency in subject matter jurisdiction." *Hameli*, 930 F. Supp. at 180.  Likewise,

Callaway agrees in its opposition that subject matter jurisdiction can be challenged at any time.

(D.I. 474 at 1).  Hence, Callaway's argument based on the Pretrial Order, if not plagued by

frivolity, is irrelevant. *See also Dept. of Public Welfare v. Dept. of Health and Human Servs.*,

729 F. Supp. 1518, 1522 (W.D. Pa. 1990) ("Parties cannot create subject matter jurisdiction by

stipulation, by conduct, or even by estoppel.").

### V.   THE TIMING OF THIS MOTION IS UNFORTUNATE BUT CALLAWAY'S RELIANCE ON JUDICIAL ECONOMY AND OTHER EQUITABLE CONSIDERATION IS NO SUBSTITUTE FOR JURISDICTION

Finally, in its brief, Callaway invokes appeals to economy, justice and fairness.  In doing

so, Callaway pointedly blames Acushnet for "never once challeng[ing] the court's jurisdiction

over the [contract] claim." (D.I. 474 at 6.)  This is a well-planned theme of Callaway's brief.

In response, a lot could be said factually, but little is actually necessary.  As Acushnet

stressed in its opening brief, it is unfortunate that until now neither party analyzed with sufficient

care the Court's jurisdiction.  But the blame for the Court's unfortunate, unnecessary work, if

blame must be assessed, must be shared by the parties.  Callaway apparently never investigated

the basis for jurisdiction over its Amended Complaint, which added Count V.  Callaway, the

pleader of Count V, had this burden.[8]  Callaway failed to make any subject matter jurisdiction

allegations related to the breach of contract claim.[9]  ████████████████████████████████

███████████████, and apparently both parties believed it was so.  The relevant records from

the 1996 cases are no longer easily available at the Clerk's Office for easy inspection.  They

were moved to a storage facility in Philadelphia some time ago.  Further, when the Court

bifurcated the contract claims, and with trial preparations at the fore, neither party investigated

jurisdictional claims on a matter not even scheduled for trial.  All of this was a Perfect Storm that

led to this regrettable situation.  However, as the Court noted in a similar case, "to say that the

monumental waste of time and money engendered by this aborted proceeding can be laid entirely

at defendant's feet is not entirely accurate." *Hameli*, 930 F. Supp. at 183.

In any case, the Court does not have discretion to exercise jurisdiction based on fairness,

justice or economy, no matter who is to blame.  It can no more create jurisdiction for itself than

can the parties stipulate to it.  "'[S]ubject matter jurisdiction is not a matter of equity or of

conscience or of efficiency, but is a matter of the lack of judicial power to decide a

controversy.'" *Goldman*, 2000 U.S. Dist. LEXIS 3500, at *24 (quoting *Laughlin v. Kmart

Corp.*, 50 F.3d 871, 874 (10th Cir. 1995)).  If neither constitution nor federal statute vests this

Court with subject matter jurisdiction over Callaway's claim for breach of the 1996 Agreement,

then this Court can only relinquish that claim by dismissing it. *See* Fed. R. Civ. P. 12(h)(3).

This situation is somewhat reminiscent of the Federal Circuit's attempt in a case to decide an

issue, in the interests of justice, even though the Court lacked jurisdiction.  The Supreme Court

---

[8] *Dougherty*, 2008 U.S. Dist. LEXIS 48646, at *23-24.
[9] Callaway only expressed a basis for jurisdiction in the Amended Complaint in paragraph 6,
which merely alleges federal issue jurisdiction per 28 U.S.C. §§ 1331 and 1338(a).  (D.I. 67 ¶ 6).

rejected this well-intentioned act as simply beyond the power of a court of limited jurisdiction. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("Our agreement with the Federal Circuit's conclusion that it lacked jurisdiction, compels us to disapprove of its decision to reach the merits anyway 'in the interest of justice.'").

## VI.   CONCLUSION

Callaway has tried and failed to prove a basis for subject matter jurisdiction over its claim for breach of the 1996 Agreement. Hence, Count V should be dismissed. It follows as well that the Court should vacate its prior ruling and order based on Count V [D.I. 347, 348].

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Lavelle
Kenneth W. Donnelly
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Tel: (202) 783-0800

Dated:  September 10, 2008
Public Version Dated: September 17, 2008
883034 /30030

By:   */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on September 17, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on September 17, 2008, the attached document was Electronically

Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P. O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030