IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-091-SLR |
| | ) |
| ACUSHNET COMPANY, | ) |
| | ) |
| Defendant. | ) |

Thomas L. Halkowski, Esquire of Fish & Richardson P.C., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Frank E. Scherkenbach, Esquire of Fish and Richardson P.C., Boston, Massachusetts; Roger A. Denning, Esquire of Fish and Richardson P.C., San Diego, California.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Joseph P. Lavelle, Esquire, Kenneth W. Donnelly, Esquire, and Brian A. Rosenthal, Esquire of Howrey LLP, Washington, D.C.

**MEMORANDUM OPINION**

Dated: November 10, 2008
Wilmington, Delaware

Del. July 31, 2008) (irreparable harm found where plaintiff and defendant were the "only suppliers in a two-supplier market").

Plaintiff and defendant are not the only manufacturers of multi-layer or three-piece golf balls.[22] In addition, the record reflects that the golf ball industry is one in which licensing is prevalent. This is intuitive, considering that thousands of golf ball patents exist in an industry of a finite number of major market players. Not surprisingly, defendant focuses a great deal of attention on plaintiff's prior licensing activities. Defendant has introduced evidence that plaintiff used defendant's technology in its Rule 35® ball, which it obtained in a cross-license with defendant in 2001. (D.I. 437, ex. 19) Defendant states that it incorporated technology licensed from plaintiff in this deal into its Pro V1® ball. (D.I. 434 at 5-6) Plaintiff has also previously entered into a licensing agreement with Bridgestone to settle litigation. (D.I. 439, ex. 36) In August 2003, in anticipation of winning the bid for Spalding, plaintiff discussed licensing to defendant the entire Sullivan patent family[23] for $10 million. (D.I. 435, ex. 9) Plaintiff concedes that it "would [have] entertain[ed] the possibility of a license" in this case, but asserts that this was in the context of a denial of infringement and an assertion of invalidity. (D.I. 460 at 1-2)

---

[22]Neither party has provided a list of all of the manufacturers of three-piece golf balls. The following companies manufacture USGA-approved three-piece balls in the United States in addition to plaintiff (including the Top-Flite division) and defendant: Bridgestone, Taylor Made Adidas Golf, Cromag, Tour Trade Golf, Inc., Dunlop Sports Group America, Ben Hogan Company, Dick's Sporting Goods, NanoDynamics, Inc., Nike, Inc., King Par Corporation, Volvik, Inc., Golfsmith International, Inc., Srixon Sports USA, Inc., TSA Corporate Services, Inc., and Wilson Sporting Goods. See http://www.usga.org/equipment/conforming_golf_ball/gball_list.pdf.

[23]All of the patents claiming priority to U.S. Application No. 08/070,510.

30

███ (D.I. 437, ex. 26 at 15)[24]

Although plaintiff's willingness to forgo its patent rights (generally) for compensation may be inconsistent with the notion that money damages are inadequate,[25] it is certainly not a dispositive factor. The *eBay* court specifically cautioned against the application of categorical rules, classifications and assumptions in these analyses. 126 S.Ct. at 1840. In this regard, of utmost import in the context of evaluating irreparable harm and the adequacy of money damages is the nature of the competition between plaintiff and defendant in the three-piece golf ball market. A credible case can be made that, had defendant not launched the Pro V1® ball in late 2000, a large number of its tour players may have switched to the Rule 35® ball in January 2001. Defendant released the Pro V1® in late 2000 specifically to avoid this result.[26] A shift in tour players to the Rule 35® would have resulted in increased overall sales of the Rule 35® under the pyramid of influence. By launching "[t]he ball that's turning golf upside down" with its contracted professionals (PTX-1175 at AB0118078), defendant maintained the position of market leader.

---

[24] ███

[25] *See, e.g., Voda v. Cordis Corp.*, No. Civ. A. 03-1512, 2006 WL 2570614 at *6 (W.D. Okla. Sept. 5, 2006) (denying permanent injunction where plaintiff was a willing licensor, rejecting plaintiff's argument that "ongoing infringement will damage his relationship with [plaintiff's exclusive licensee]" as "simply the other side of the right-to-exclude coin").

[26] An August 2001 article in Golf Weekly stated that, "[a]ccording to an industry executive who asked that his name not be used, Titleist® officials were particularly impressed with the new Callaway Rule 35® golf ball, and they told the research and development team to come up with something better in very short order." (PTX-1195)

31