

**Potter
Anderson
& Corroon** LLP

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027  Direct Phone
302 658-1192  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

October 20, 2009

**VIA ELECTRONIC FILING**

The Honorable Sue L. Robinson
United States District Court
  for the District of Delaware
844 King Street
Wilmington, DE  19801

    Re:   **Callaway Golf Company v. Acushnet Company
           C.A. No. 06-91-SLR**

Dear Judge Robinson:

    We write on behalf of Acushnet Company ("Acushnet") in response to Mr. Halkowski's October 15, 2009 letter on behalf of Callaway Golf Company ("Callaway") in the above-captioned matter. Acushnet sets forth below its position with respect to the issues discussed with Callaway during its meet and confer.

**Motions in Limine**

    Acushnet agreed to the briefing schedule set forth in Callaway's letter for motions *in limine*, but only if Acushnet is also permitted to address two other issues that we believe warrant departure from the Court's ordinary motion *in limine* practice. Specifically, Acushnet requests that it be permitted to brief the following:

    A) <u>Callaway's ability to rely on, characterize and emphasize the review the Patent Office has given the patents-in-suit</u>

    In the first trial, Callaway repeated multiple times in its opening statement that "three examiners" had already seen Acushnet's asserted prior art and determined that the patents-in-suit were valid. Callaway repeated this theme in other words in its closing arguments, despite the Court's admonition that such "bolstering" created some "unfairness." Trial Tr. at 354. Acushnet expressed its concern, and remains deeply concerned, that such bolstering creates the unfair and incorrect impression for the jury that its job has already been done for it by the Patent Office. This impression created a high degree of prejudice to Acushnet in the first trial on the central issue of patent validity. Indeed, the Federal Circuit acknowledged the potential prejudice caused by Callaway's statements: "Acushnet is correct that Callaway's opening statement, while

The Honorable Sue L. Robinson
October 20, 2009
Page 2

truthful, nevertheless had potential to mislead the jury by implying that every expert examiner to have considered the patents had concluded that they were valid." Fed. Cir. Opinion at 19.

In reality, as the Court knows, additional patent examiners have now re-examined the validity of the patents-in-suit and determined that they are invalid. There is an inherent unfairness in allowing Callaway to present only half of the story to the jury, creating an incorrect and highly prejudicial impression of the view the Patent Office has of the validity of the patents-in-suit. Acushnet believes it is absolutely critical to prevent Callaway from perpetuating this distortion in the retrial, and believes that briefing is necessary to ensure it is fully heard with full clarity on the limits of what Callaway should be permitted to say with respect to the presumption of validity. For that reason, Acushnet requests that the Court deviate from its standard practice on motions *in limine* and allow Acushnet to brief this issue on the same schedule as Callaway's briefing on its motion regarding test ball evidence.

B) <u>Admissibility and use at trial of the Hebert family of patents and Acushnet's views on their validity</u>

As the Court will recall, much of Callaway's evidence in the first trial surrounded the Acushnet Hebert patents and testimony from Acushnet's personnel regarding the novelty and validity of those patents. Callaway's theme appeared to be that since Acushnet personnel filed patents on a ball of similar construction to the patents-in-suit, the patents-in-suit must be valid. This evidence was confusing and prejudicial. The Acushnet Hebert patents, and the ball construction that was the subject of those patents, was substantially different from that of the patents-in-suit. Since we expect Callaway to place similar undue emphasis on this side issue in the new trial, Acushnet believes it should be afforded the opportunity to be fully heard on this issue in the form of briefing and argument if appropriate.

Callaway presents no authority for its assertion that Acushnet is somehow precluded from making objections to evidence about the Hebert patents in the retrial, and we are aware of no such authority. Parties are permitted to raise evidentiary objections in a retrial even if they were not made in a first trial on the same issues. *See, e.g., Rosenfeld v. Basquiat*, 866 F. Supp. 790, 792 (S.D.N.Y. 1994), *rev'd on other grounds*, 78 F.3d 84 (2d Cir. 1996) ("Objections not raised at the first trial of the case may be urged at a later trial and are not waived, even though the later trial is one *de novo* on appeal or remand.") (*quoting* Graham, *Handbook of Federal Evidence* § 103.4 (3d ed. 1991)). In addition, the issue of admissibility of the Hebert patent evidence was not considered as a part of the appeal and was therefore not decided either way by the Federal Circuit. Thus, Acushnet submits that it should be heard on its objections to the Hebert patent evidence.

Given that Callaway will presumably be given the opportunity to brief its motion to exclude the test ball evidence, Acushnet should also be given the opportunity to brief these two important evidentiary issues. Of course, with respect to all other evidentiary issues, we understand that the Court's standard procedure of addressing such issues orally at the final pretrial conference will apply.

The Honorable Sue L. Robinson
October 20, 2009
Page 3

### Summary Judgment

The Federal Circuit held that the Nesbitt patent incorporates by reference the Molitor '637 patent. Fed. Cir. Opinion at 27. In light of this holding, Acushnet plans to file at least a renewed motion for summary judgment of anticipation by Nesbitt, incorporating by reference Molitor '637. Callaway suggests that an obviousness trial would still be necessary. To the contrary, if the Court rules the asserted claims of the patents-in-suit anticipated, there would be no need for an obviousness trial. Acushnet proposes a briefing schedule for summary judgment motions of December 1 (opening brief), January 4 (opposition brief), and February 1 (reply brief).

### Continued Bifurcation of Damages

Acushnet believes there is no reason for the Court to depart from its now-established practice of bifurcating damages from liability in patent cases. If Acushnet prevails at the liability trial, or on appeal, or if the parties reach a settlement before a damages trial, significant time and resources of the Court and the jury will have been wasted.

Callaway suggested on the last conference call with the Court that trying damages along with liability would add only a short amount of trial time. Acushnet strongly disagrees. Callaway's damages theories are complex, including a complicated lost profits story and reasonable royalty analysis. For example, if Callaway is permitted to present its damages theories at trial, the jury would need to hear evidence about at least the following issues:

- The corporate structure of the various owners of the patents-in-suit over the damages period;
- The lack of capacity of Spalding to produce the number of golf balls Callaway claims Spalding would have been able to produce;
- The existence of non-infringing alternatives, and competing testimony about whether such alternatives would be commercially feasible;
- Callaways' and Spalding's valuations of the patents-in-suit, which include details of the history of Spalding's assertions of the patents against Callaway in which Callaway stated that the patents were not valid; and
- Comparable license agreements, and the factual context for such agreements.

Acushnet expects that at least multiple days of testimony would be required to address these issues, adding significant time to the trial. This burden on the Court and the jury could be avoided if resolution of the liability issues, or settlement, obviates the need for a damages stage altogether.

In addition, Callaway's suggestion that the damages case is somehow ready for trial is incorrect. Acushnet previously presented a *Daubert* motion to exclude the testimony of Callaway's damages expert, Mr. Napper (D.I. 285). This motion addresses the legal inadequacy of Mr. Napper's lost profits theory, among other flaws, and has never been addressed by the

The Honorable Sue L. Robinson
October 20, 2009
Page 4

Court on its merits. Nor has the Court held a *Daubert* hearing on the motion. Instead, the Court decided previously that this motion did not need resolution in light of the bifurcation order. Acushnet's motion would now need to be addressed if damages are re-combined with liability.

In addition, before a damages trial proceeds, the damages experts would need to update their analysis with financial data in the period since expert reports were exchanged. Moreover, summary judgment regarding Callaway's ability to pursue a lost profits claim in light of the undisputed facts about the ownership of the patents-in-suit and Spalding's capacity at the relevant times may be appropriate. If the damages case proceeds, Acushnet would consider filing such a summary judgment motion before trial. In short, the damages case is not ready for trial and would require significant time from the Court to resolve.

Acushnet is available at the Court's convenience to address these issues.

Respectfully,

/s/ *Richard L. Horwitz*

Richard L. Horwitz

RLH/msb
938405 / 30030

cc:   Clerk of the Court (via hand delivery)
      Counsel of Record (via electronic filing)