# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CALLAWAY GOLF COMPANY | ) |
| | ) |
| | ) |
| Plaintiff, | ) C.A. No. 06-91 (SLR) |
| v. | ) |
| | ) **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ACUSHNET'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT OF ANTICIPATION
## OF U.S. PATENT NOS. 6,210,293; 6,506,130; 6,503,156; AND 6,595,873

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  (202) 783-0800

Dated:  December 1, 2009
Public Version Dated: December 9, 2009
945472 / 30030

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ..................................................................1

II.     SUMMARY OF ARGUMENT ......................................................................................2

III.    FACTUAL BACKGROUND ........................................................................................4

      A.      The Patents-in-Suit.............................................................................................4

      B.      The Prior Art .....................................................................................................5

IV.     APPLICABLE LEGAL STANDARDS .........................................................................8

      A.      Summary Judgment Of Invalidity Is Appropriate When There are No
           Genuine Issues of Fact ........................................................................................8

      B.      Anticipation........................................................................................................8

V.      THE ASSERTED CLAIMS ARE ANTICIPATED BY NESBITT ...................................10

      A.      Nesbitt Discloses a Golf Ball that Uses the Blended Ionomer and
           Polyurethane Cover Materials of Molitor '637.....................................................10

      B.      Molitor's Disclosure of Multiple Cover Materials Does Not Defeat
           Anticipation......................................................................................................12

      C.      Nesbitt, incorporating Molitor '637, satisfies every element of the asserted
           claims ..............................................................................................................14

           1.      Nesbitt discloses a golf ball comprising a "core," "inner cover
                  layer," and "outer cover layer" .............................................................15

           2.      Nesbitt discloses that the inner cover layer is a "blend of two or
                   more low acid ionomer resins".............................................................15

           3.      Nesbitt discloses that the inner cover layer has a "Shore D
                   hardness of 60 or more".......................................................................16

           4.      Nesbitt discloses that the inner cover layer has a "thickness of
                   0.100 to 0.010 inches" .......................................................................17

           5.      Nesbitt discloses that the outer cover layer has a "thickness of
                   0.010 to 0.070 inches" .......................................................................17

6.      Nesbitt discloses a polyurethane outer cover layer with a "Shore D hardness of 64 or less" ..............................................................17

VI.     IN THE ALTERNATIVE, THE COURT SHOULD TRY ANTICIPATION FIRST IN A SHORT BIFURCATED TRIAL ....................................21

A.      The issues of anticipation and obviousness are legally and factually distinct....................................................................................22

B.      Bifurcation would ensure that secondary considerations are not considered for anticipation........................................................23

C.      Bifurcation would mitigate the Court's concerns of potential jury confusion related to the test balls..........................................25

D.      Bifurcation of anticipation would potentially eliminate a lengthy trial on obviousness...........................................................25

VII.    CONCLUSION....................................................................26

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003), *rev'd on other grounds*,
  457 F.3d 1293 (Fed. Cir. 2006) ...................................................................14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..........................................................................................8

*Atlas Powder Co. v. IRECO Inc.*,
  190 F.3d 1342 (Fed. Cir. 1999) ......................................................................9

*Callaway Golf Co. v. Acushnet Co.*,
  576 F.3d 1331 (Fed. Cir. 2009) ......................................................................1

*Cohesive Technologies v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008) ....................................................................23

*Duro-Last, Inc. v. Custom Seal, Inc.*,
  321 F.3d 1098 (Fed. Cir. 2003) ....................................................................22

*Gardco Manufacturing, Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987) ....................................................................22

*In re Gleave*,
  560 F.3d 1331 (Fed. Cir. 2009) ..............................................................9, 14

*Hewlett Packard Co. v. Mustek System*,
  340 F.3d 1314 (Fed. Cir. 2003) ......................................................................9

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
  392 F.3d 1317 (Fed. Cir. 2004) ......................................................................8

*Japan Cash Machine Co. v. Mei, Inc.*,
  2008 WL 5051245 (D. Nev. Nov. 20, 2008) ..............................................24

*Leggett & Platt, Inc. v. Vutek, Inc.*,
  537 F.3d 1349 (Fed. Cir. 2008) ......................................................................9

*Nike Inc. v. Wolverine World Wide, Inc.*,
  43 F.3d 644 (Fed. Cir. 1994) ..........................................................................8

*Perricone v. Medicis Pharmaceutical Corp.*,
  432 F.3d 1368 (Fed. Cir. 2005) ............................................................ passim

*In re Petering,*
   301 F.2d 676 (C.C.P.A. 1962)....................................................................................9

*Rosenthal Manufacturing Co. v. Thermal Equipment, Inc.,*
   1988 U.S. Dist. LEXIS 6589 (D. Kan. June 13, 1988) ..........................................22

*Schering Corp. v. Geneva Pharmaceuticals,*
   339 F.3d 1373 (Fed. Cir. 2003) ............................................................................8, 9

*SmithKline Beecham Corp. v. Apotex Corp.,*
   403 F.3d 1331 (Fed. Cir. 2005) ...............................................................................8

*St. Clair Intellectual Prop. Consultants v. Sony Corp.,*
   2002 WL 1901268 (D. Del. Aug. 16, 2002)...........................................................24

*Toro Co. v. Deere & Co.,*
   355 F.3d 1313 (Fed. Cir. 2004) ................................................................................9

*Windsor Industrial, Inc. v. Pro-Team, Inc.,*
   87 F. Supp. 2d 1129 (D. Colo. 2000) .....................................................................22

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
   631 F. Supp. 2d 1010 (N. D. Ill. 2009)...................................................................13

## FEDERAL STATUTES

35 U.S.C. § 282..............................................................................................................8

Fed. R. Civ. P. 42(b) ...............................................................................................22, 24

Fed. R. Civ. P. 56(c) .......................................................................................................8

Defendant Acushnet Company ("Acushnet") files this Memorandum in Support of Its Motion for Summary Judgment of Anticipation of U.S. Patent Nos. 6,210,293 ("the '293 patent") (Ex. 1); 6,506,130 ("the '130 patent") (Ex. 2); 6,503,156 ("the '156 patent") (Ex. 3); and 6,595,873 ("the '873 patent") (Ex. 4) (collectively "the patents-in-suit"), which all list as their named inventor Michael J. Sullivan.

The Federal Circuit held on appeal in this case that U.S. Patent No. 4,431,193 ("Nesbitt") (Ex. 5) incorporates U.S. Patent No. 4,274,637 ("Molitor '637") (Ex. 6) by reference.[1]  In light of that ruling, there are no genuine issues of material fact that preclude summary judgment of anticipation of the patents-in-suit by the Nesbitt patent.  Since the sole stated reason for the Court's denial of summary judgment on that basis was reversed by the Federal Circuit, Acushnet files this motion so the Court can revisit the issue of anticipation and avoid an unnecessary trial.

## I.   NATURE AND STAGE OF PROCEEDINGS

Callaway filed this lawsuit on February 9, 2006.  On November 20, 2007, the Court granted Callaway's motion for summary judgment of no anticipation, and denied Acushnet's summary judgment motion of invalidity based on anticipation and obviousness.  D.I. 347 & 348. Among Acushnet's bases for its invalidity motion was that the asserted claims were anticipated by Nesbitt, incorporating Molitor '637 by reference.  The Court rejected that argument on the basis that Nesbitt did not incorporate Molitor '637 by reference.  D.I. 347 at 6-13.  On the same day, the Court issued its claim construction order adopting Callaway's "on the ball" claim construction for measuring Shore D hardness.  D.I. 345.

The remaining issue of obviousness was tried to a jury beginning on December 7, 2007. On December 14, the jury returned a verdict holding dependent claim 5 of the '293 patent invalid

---

[1] Ex. 7, August 14, 2009 Opinion *Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331, 1346-1347 (Fed. Cir. 2009) ("Fed. Cir. Opinion").

as obvious, but holding the other eight asserted claims, including independent claim 4 of the '293 patent, not invalid.[2] Acushnet filed a motion for Judgment as a Matter of Law on obviousness, or in the alternative a new trial in view of the jury's inconsistent verdicts. D.I. 409 & 417. This motion was denied and judgment was entered on the verdict. D.I. 492 & 493.

Acushnet appealed to the Federal Circuit. The Federal Circuit issued its decision on August 14, 2009. In its opinion, the Federal Circuit affirmed the Court's "on the ball" claim construction, but reversed the Court's finding of no incorporation by reference, remanded for a determination of anticipation, and ordered a new trial on obviousness due to the inconsistencies in the verdicts. Fed. Cir. Opinion at 1348.

## II.   SUMMARY OF ARGUMENT

In 1981, Dennis Nesbit set out to create a golf ball that provided distance, by using a hard inner cover layer, and playability, by using a soft outer cover. ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████ What was thought to be the distinguishing material, polyurethane, was ruled by the Federal Circuit to be disclosed by incorporation in the Nesbitt patent. Thus, there is nothing new about the claims of the Sullivan patents-in-suit.

Nesbitt undisputedly discloses a three-piece golf ball composed of a solid core, a hard ionomer inner cover layer, and a soft ionomer outer cover layer. In addition, Nesbitt incorporates Molitor's disclosure of alternative cover layers that can be used in the inner and outer cover layers of the Nesbitt ball. Molitor discloses eight specific cover layer compositions.

---

[2] The asserted claims in this case are claims 1, 4, and 5 of the '293 patent, claims 1-3 of the '156 patent, claim 5 of the '130 patent, and claims 1 and 3 of the '873 patent (the "Asserted Claims").

2

One composition is a blend of stiff, hard low-acid ionomers that satisfies the inner cover layer limitations of the patents-in-suit. Another composition is a soft polyurethane that satisfies the outer cover limitations of the patents-in-suit. The Federal Circuit held both of these compositions are incorporated by reference. Thus, each limitation of the asserted claims is met by Nesbitt.[3]

Once the Federal Circuit disposed of Callaway's argument that there is no incorporation by reference, Callaway's only remaining argument appears to be its assertion that Nesbitt does not disclose the "on the ball" hardness of the outer cover layer of the disclosed balls. Acushnet has presented uncontroverted evidence that when the ionomer/polyurethane ball taught by Nesbitt and Molitor is made, the "on the ball" hardness of the outer cover is under 64, as required by the claims. There is no contrary evidence.

Moreover, Nesbitt explicitly teaches that the outer cover layer of the disclosed ball should have the Shore hardness of a balata golf ball, which was known to be in the low 50s on the Shore D scale when measured "on the ball." Thus, Callaway cannot genuinely dispute at trial that Nesbitt teaches a golf ball that falls within the claims, and whose outer cover has an "on the ball" Shore D hardness below 64. Consequently, the Court should grant Acushnet's motion for summary judgment of anticipation.

In the event the Court finds that there are genuine issues of fact that preclude summary judgment, Acushnet submits in the alternative that anticipation should be bifurcated from obviousness and tried first. Under Acushnet's proposal, a single jury would hear the short anticipation case first, and only if necessary would then hear the obviousness case. Bifurcation

is appropriate in this case to avoid prejudice. Callaway's defense to obviousness will involve substantial evidence relating to secondary considerations of non-obviousness, such as commercial success. That secondary consideration evidence, which consumed a large portion of the first trial, is legally irrelevant to anticipation. There is no adequate way to ensure that the jury would ignore that evidence in its consideration of the anticipation issue. Bifurcation would eliminate such prejudice. Similarly, Acushnet will offer test ball evidence in support of its anticipation case. Bifurcation would also help to ensure that the jury considers such evidence only for the anticipation case. Moreover, bifurcation would potentially substantially reduce the burden on the Court and the jury, if the jury finds the patents anticipated and that verdict is affirmed by the Federal Circuit, avoiding the need for an obviousness trial.

## III.   FACTUAL BACKGROUND

### A.      The Patents-in-Suit

The patents-in-suit relate to solid construction multi-layer balls that use polyurethane as the outer cover material. Callaway has stipulated that the effective priority date of the '293, '156, and '873 patent is November 9, 1995, and that the effective priority date of the '130 patent is October 13, 1995. D.I. 334, Exhibit 1 ¶¶ 16-17.

The patents-in-suit have virtually identical specifications, and all claim essentially the same basic subject matter: a multi-layer golf ball having a hard ionomer[4] inner cover layer and a soft polyurethane outer cover layer. The inner cover layer is either a low acid ionomer or a

---

[4] Golf ball manufacturers have been making covers made of a polymer materials called "ionomers" for decades. *See* Ex. 11 at AC0100932. Ionomers are thermoplastic polymers that are utilized in a wide variety of applications including plastic packaging, football helmets, and golf ball covers. *See id.* at AC0100934. Ionomers, such as those marketed by duPont under the tradename Surlyn, are very durable and allowed a golfer to hit the ball further because they increased the ball's coefficient of restitution. *See id.* at AC0100932. Blends of ionomers have been used in golf ball covers since the late 1970s. *See, e.g.,* U.S. Patent No. 3,819,768 (Exhibit 12).

blend of low-acid ionomers, having a Shore D hardness of 60 or greater.[5]  Ex. 1, '293 Patent, col. 3:49-53.  The outer cover layer is made from a polyurethane and has a Shore D hardness of 64 or less.  *Id.*, claim 1.  The Court construed these "Shore D hardness" limitations to refer to measurements taken on the surface of the ball.  D.I. 345 at 1-3.  The claims also include limitations directed to certain material properties of the cover layers, such as their thickness[6] or flexural modulus.[7]

**B.    The Prior Art**

Historically, golf was played at the highest level with balata-covered wound golf balls. The soft balata cover of these balls deforms when struck with a golf club, and allows a skilled golfer to impart spin on the ball.  Morgan Decl. ¶ 7.  For example, a skilled golfer can impart backspin on a golf ball to make it "stop" when it lands on the green.  *Id.*  Skilled golfers also valued balata balls for the "click" and "feel" provided by the cover.  *Id.* at ¶ 8.  Balata is a very soft material, with a plaque hardness of around 40 Shore D.  *See Id.* at ¶ 12; Ex. 14 at AC0131204.  Since balata is a soft material, it yields soft covers when used as a golf ball cover

---

[5] Shore D hardness is a measure of the hardness of a material.  The higher the Shore D number, the harder the material.

[6] Certain asserted claims require that the outer cover layer thickness is between about 0.010 inches to about 0.070 inches and that the inner cover layer thickness is between about 0.100 inches to about 0.010 inches.  *See, e.g.*, Ex. 1, '293 patent, col. 14:37-46.  Some claims also require that the ball shall be at least 1.680" in diameter, which is also required by the Rules of Golf.  *See* Ex. 13, at AC0100918.

[7] For example, certain asserted claims require the inner cover ionomer to have a flexural modulus between 15,000 and 70,000 psi.  '293 patent, col. 7:16-19.  Flexural modulus is a ratio of stress to strain when the material being tested is being flexed.

material.  Morgan Decl. ¶¶ 12-17.  When measured "on the ball" balata-covered balls had a

Shore D hardness in the upper 40s to low 50s.  *Id.*[8]

Balata-covered balls suffered from certain drawbacks, including cost and durability.  The

balls were expensive to make and the soft balata covers cut easily when mishit.  Morgan Decl ¶

10.  Thus, in the 1970s, golf ball manufacturers began to make so-called "two-piece" golf balls.

Two piece balls typically had a harder, more durable cover material than balata, usually formed

from a cover material made of ionomer resins, such as duPont's Surlyn resins.  They also used a

solid core, rather than the wound core of balata-covered balls.  Ex. 5, Nesbitt, col. 1:14-26.  Two-

piece golf balls provided better distance and durability than wound balls, but, due to their harder

covers, did not provide the same ability to spin and control the ball, and lacked the "click" and

"feel" of wound balata balls.  Ex. 5, Nesbitt, col. 1:26-29.

The Nesbitt patent, filed in 1981 and issued in 1984 sought to create a golf ball that

provided the "best of both worlds."  Namely, Nesbitt invented a multi-layer golf ball comprising

a) a solid core; b) a hard inner cover layer; and b) a soft outer cover layer:

> In accordance with the present invention there is provided a golf ball having a
> multilayer or two-ply cover construction for a solid resilient center or core
> wherein the multilayer cover construction involves two stage molded cover
> compositions over a solid center or core of resilient polymeric material wherein
> an increased coefficient of restitution is attained and wherein the "feel" or playing

---

[8] *See also* Ex. 15 AC0049407 (1990 Competitive Ball Report) ("all high performance products
have a similar construction; balata cover ranging from 47-54 Shore D hardness"); AC0049409
(showing Titleist Tour 100 having transpolyisoprene (synthetic balata) cover with a Shore D
hardness of 54); AC0049411-12 (showing Titleist 384 Tour 100 with balata cover with Shore D
hardness of 53); AC0049415-416 (showing Titleist 384 LT 100 with balata cover with Shore D
hardness of 47); ███████████████████████████████ *see also* Ex. 17, 1991
Competitive Ball Report at AC0049683-84 (showing on the ball hardness measurements for
numerous balata balls ranging from 48-54 Shore D); Ex. 18 (1994 Competitive Ball Report) at
AC0072912, AC0072915, AC0072916, and AC0072945 (showing numerous additional balata
balls with on the ball Shore D hardness values ranging from 50-52. *See also* Morgan Decl. ¶¶
14-17 (same); Ex. 19, Nesbitt Depo. Tr. at 121:19-122:5 (testifying that Titleist balata-covered
golf balls had an on the ball Shore D hardness of 50-55).

characteristics are attained similar to those derived from a balata covered golf ball.

Ex. 5, Nesbitt, col. 1:36-44.  In other words, Nesbitt's construction allowed for the resilience and distance of a Surlyn-covered ball, but the feel and control of a balata-covered ball.

While Nesbitt describes the use of ionomer resins for the inner and outer cover layers, the patent incorporates the Molitor '637 patent for other "foamable compositions" suitable for use in the inner and outer cover layers.  Molitor '637 discloses eight compositions, including a blend of ionomers and a polyurethane composition.  Ex. 6, Molitor '637 patent, col. 14:60-65; col. 18:6-12.[9]

At trial, the only limitations Callaway argued were missing from Nesbitt alone were:  (1) the use of a blend of ionomers in the inner cover layer[10] (2) an outer cover layer comprising polyurethane; and (3) an on the ball Shore D hardness of less than 64 for the outer cover layer. Ex. 23, T. Tr. 1355:2-8.  In light of the Federal Circuit's ruling that Nesbitt incorporates the ionomer blend and polyurethane materials of Molitor '637, it appears the only remaining argument Callaway has is its assertion that Nesbitt incorporating Molitor '637 does not disclose the required outer cover Shore D hardness.

---

[9] Cover materials made from blended ionomers and polyurethane were not new to the art.  The use of blended ionomers in golf ball covers was described as early as 1974.  See Ex. 12, U.S. Patent No. 3,819,768.  Polyurethane golf ball covers have also been known for decades, and had been used on commercial golf balls since the 1960s.  See, e.g., Ex. 20, U.S. Patent No. 3,989,568 (1976); Ex. 21, U.S. Patent No. 4,442,282  (1984); Ex. 19, Nesbitt Tr. at 31:3-13; Ex. 13, at AC0100916.  Acushnet's first urethane covered golf ball was the most popular golf ball on the professional tour in the 1990s.  Ex. 22, 08/17/2007 Morgan Decl. at ¶¶ 22-23.

[10] This argument only applies to those claims that require a blend of ionomers in the inner cover layer.  Claims 4 and 5 of the '293 patent, claim 5 of the '130 patent, and claim 3 of the '873 patent are satisfied by only a single ionomer in the inner cover layer.

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment Of Invalidity Is Appropriate When There are No Genuine Issues of Fact

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). The use of summary judgment is particularly appropriate in complex patent infringement actions. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

Acushnet has the burden of proving invalidity. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004). However, when a party presents evidence establishing a prima facie invalidity case, the patentee must come forward with contrary evidence. *Id.* (citation omitted). In that instance, the patentee's evidence must create a genuine issue of material fact underlying the invalidity inquiry in order to preclude summary judgment. *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005) (affirming summary judgment of invalidity for anticipation).

### B.    Anticipation

Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline*, 403 F.3d at 1343.

Anticipation cannot be defeated merely because a reference discloses multiple options for a particular feature. "The anticipation analysis asks solely whether the prior art reference

8

discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) (quoting *Hewlett Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1324 n.6 (Fed. Cir. 2003); *see also Leggett & Platt, Inc. v. Vutek, Inc.*, 537 F.3d 1349, 1356 (Fed. Cir. 2008) (rejecting "the erroneous assumption that the disclosure of multiple examples renders one example less anticipatory"); *In re Gleave*, 560 F.3d 1331, 1336-37 (Fed. Cir. 2009) (rejecting the argument that a prior art reference cannot anticipate by listing an element in a long list of possibilities); *In re Petering*, 301 F.2d 676, 681 (C.C.P.A. 1962). Thus, when a list of options or permutations is disclosed in the prior art, anticipation does not turn on the number of elements in the list, but rather on whether the claimed subject matter is enabled by the prior art reference. *Perricone,* 432 F.3d at 1377-78.

Anticipation may also be proved by inherency. "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp.,* 339 F.3d at 1377. Inherent properties of materials described in the prior art can anticipate regardless of whether the inherent property was known in the art. *See Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1348-49 (Fed. Cir. 1999) ("Because 'sufficient aeration' was inherent in the prior art, it is irrelevant that the prior art did not recognize the key aspect of [the] invention.... An inherent structure, composition, or function is not necessarily known."); *Toro Co. v. Deere & Co.,* 355 F.3d 1313, 1321 (Fed. Cir. 2004) ("For inherent anticipation, the [prior art reference] must have sufficiently described and enabled at least one embodiment that necessarily featured or resulted in the subject matter embraced by [the claim], but neither description nor contemporaneous recognition of these necessary features or results was required.").

## V.   THE ASSERTED CLAIMS ARE ANTICIPATED BY NESBITT

Nesbitt discloses a three-piece solid golf ball that includes a) a core; b) a hard ionomeric inner cover layer; and c) a relatively soft ionomeric outer cover layer. Ex. 5, Nesbitt, col. 2:30-49. Nesbitt teaches that such a construction provides a desirable coefficient of restitution, which is related to distance, while still attaining the "feel" of a balata-covered golf ball. Ex. 5, Nesbitt, col. 1:65-2:9.

Nesbitt alone discloses each of the elements of the asserted claims with the exception of the use of polyurethane as the outer cover layer and the use of blends of ionomers in the inner cover layer (for those asserted claims that require a blend). However, the Federal Circuit found that "Nesbitt incorporates by reference the potential cover layer materials described in Molitor '637, including polyurethane and ionomer resin blends." Fed. Cir. Opinion at 1347. Specifically, Nesbitt teaches that any of the "foamable compositions" of Molitor '637 can be used in place of the inner cover layer or outer cover layer. Nesbitt, col. 3:51-61.

When Molitor's ionomer blend is used in the inner cover layer, and Molitor's polyurethane is used in the outer cover layer, as taught by Nesbitt, the resulting ball meets all the limitations of the asserted claims. Accordingly, Nesbitt, incorporating by reference the Molitor '637 patent, anticipates all of the asserted claims.

### A.   Nesbitt Discloses a Golf Ball that Uses the Blended Ionomer and Polyurethane Cover Materials of Molitor '637

Nesbitt discloses a preferred embodiment that uses a hard ionomeric inner cover layer and a soft ionomeric outer cover layer. Specifically, Nesbitt teaches that the inner cover layer is made from a "hard, high modulus Surlyn resin, such as Surlyn type 1605." Ex. 5, Nesbitt, col. 3:27-29. The outer cover layer is made from a "soft, low flexural modulus resin such as Surlyn type 1855." Ex. 5, Nesbitt, col. 3:37-39.

However, Nesbitt teaches that these cover layers may be replaced by the "foamable compositions" disclosed in Molitor '637. Ex. 5, Nesbitt, col. 3:51-61 ("Reference is made to [Molitor '637] which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16 for the golf ball of this invention."). As indicated above, the Federal Circuit concluded that this language incorporates by reference the blended ionomer and polyurethane compositions disclosed in Molitor '637 as cover layers for the disclosed ball:

> Nesbitt incorporates the entire list of foamable compounds ("a number of foamable compositions") disclosed by Molitor '637 as appropriate materials for use in golf ball cover layers, including polyurethane and mixtures of ionomer resins. We perceive no basis to differentiate between incorporation of the ionomeric resins disclosed by Molitor '637 and the other compositions in the list, including polyurethane. Accordingly, we hold that Nesbitt incorporates by reference the potential cover layer materials described in Molitor '637, including polyurethane and ionomer resin blends.

Ex. 7, Fed. Cir. Opinion at 1347.

Hence, Nesbitt discloses a golf ball whose cover layers can be selected from several different compositions. Molitor '637 identifies eight specific foamable compositions for use as golf ball cover layers:

1. a composition including a blend of the low acid ionomer resins Surlyn 1605 and 1557 (*See* Ex. 6, Molitor '637, cols. 14-15, Tables 2-5);

2. a composition including the polypropylenes Pro-Fax 6323 and Pro-Fax 8523 (*See* Ex. 6, Molitor '637, col. 16, Table 6);

3. a second composition including the polypropylenes Pro-Fax 6323 and 5523 but with a different ratio of ingredients (*See* Ex. 6, Molitor '637, col. 19, Table 11);

4. a composition including high density polyethelyne having a Shore D hardness of 59 (*See* Ex. 6, Molitor '637, cols. 17 & 19, Tables 7 & 12);

5. a composition including the thermoplastic polyolefin TPR 1900 (*See* Ex. 6, Molitor '637, col. 17, Table 8);

11

6.  a composition including the thermoplastic polyester elastomer Hytrel 5526 (*See* Ex. 6, Molitor '637, col. 18, Table 9);

7.  a composition including the thermoplastic polyurethane Estane 58133 (*See* Ex. 6, Molitor '637, col. 18, Table 10); and

8.  a composition including the liquid thermoset polyurethane Reyn-o-SOL-RU 6709 (*See* Ex. 6, Molitor '637, cols. 18-19, Example 18).

Accordingly, Nesbitt teaches a golf ball with an inner and an outer cover layer, where both the inner and outer cover layers may be selected from among the compositions listed above. One of the golf balls taught by this disclosure is a golf ball comprising:

a)  a solid core;

b)  an inner cover layer comprised of the blend of ionomers described in Tables 2-7 of Molitor '637; and

c)  an outer cover layer comprised of the thermoplastic polyurethane Estane 58133 described in Table 7 of Molitor '637.

That golf ball meets every limitation of the asserted claims, and thus anticipates the claims.

## B.   Molitor's Disclosure of Multiple Cover Materials Does Not Defeat Anticipation

Callaway seems to argue that since Molitor '637 discloses several different compositions, and Nesbitt does not direct the reader to one particular example over another, the reference cannot anticipate. However, the fact that there are several different permutations of golf balls disclosed by Nesbitt and Molitor does not make any particular permutation any less anticipatory.

The Federal Circuit has found anticipation in virtually identical circumstances. One case directly on point is *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005). There, the claim in question recited a composition for treating skin sunburn that included ascorbyl palmitate. *Id.* at 1376. The prior art reference in question disclosed a composition that listed fourteen options for one of the ingredients. Among those fourteen options was the claimed ingredient, ascorbyl palmitate. *Id.* Since the claimed limitation was disclosed as an option in the

12

prior art, the Court affirmed summary judgment of anticipation.[11]   In doing so, the Court

explicitly rejected the notion that anticipation can be defeated merely because the claimed

limitation is found in a list of options, with no particular emphasis:

> This court rejects the notion that one of these ingredients cannot anticipate
> because it appears without special emphasis in a longer list.  To the contrary, the
> disclosure is prior art to the extent of its enabling disclosure.

*Id.*  The Court also distinguished its analysis from an obviousness analysis, where disclosure of

many options does not necessarily render selection of one such option obvious.  *Id.* at 1376-77.

Other courts have followed *Perricone* to find anticipation where the claimed limitations

are found in a list of disclosed options in the prior art.  One recent district court case whose facts

are strikingly analogous is *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d

1010, 1030-31 (N. D. Ill. 2009).  There, the claim at issue was directed to a chewing gum that

included a) menthol as a flavoring agent and b) a cooling agent referred to as WS-23.  *Id.* at

1017-18.  The prior art, referred to as Shahidi, disclosed a chewing gum that listed 23 possible

flavoring agents, and incorporated another patent that disclosed two possible cooling agents.  *Id.*

at 1027.  Among the 23 flavoring agents was menthol.  *Id.*  Among the two cooling agents was

WS-23.  *Id.*  The court found the claim anticipated:

> Wrigley argues that Shahidi provides no "guidance or direction" to combine WS-
> 23 and menthol together in a chewing gum.  But the Court has found no authority
> supporting Wrigley's arguments in that respect.  An obviousness analysis requires
> some suggestion or motivation to combine prior art teachings in a way that would
> render the subject matter obvious, but an anticipation analysis requires no such
> direction or guidance.  ***As long as all of the claimed elements are present in a
> prior art reference and that reference is enabling, the claim is anticipated***.

*Id.* at 1030 (internal citations omitted) (emphasis added).

---

[11] Certain of the claims at issue were found not anticipated for other reasons.  *Id.* at 1377-80.

Similarly, Callaway's argument that Nesbitt provides no particular guidance to use the blended ionomer and polyurethane materials as opposed to the other materials disclosed in Molitor '637 is inapposite. "[T]he mere fact that the elements of a claim are set forth in the prior art patent in a list along with other ingredients without any 'special emphasis' is irrelevant to an anticipation analysis…. Instead, all that is relevant is whether the prior art disclosure is enabling." *Id.* at 1030 (citing *Perricone*, 432 F.3d at 1376). Moreover, prior art consisting of a patent such as Nesbitt is presumed enabled. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003), *rev'd on other grounds*, 457 F.3d 1293 (Fed. Cir. 2006). Thus, the fact that Nesbitt discloses that Molitor's compositions can be used as cover materials is enough to anticipate. *See also In re Gleave,* 560 F.3d 1331, 1336-37 (Fed. Cir. 2009) (finding claims anticipated where the claim limitation appeared in a long list of other compounds in the prior art).

### C.    Nesbitt, incorporating Molitor '637, satisfies every element of the asserted claims

As set forth above, one of the golf balls disclosed by Nesbitt uses a blend of ionomers in the inner cover layer and polyurethane as the outer cover layer. In particular, it consists of an inner cover layer of the Surlyn 1605 / 1557 ionomer blend of Tables 2-5 of Molitor '637, and an outer cover layer of Estane 58133 polyurethane of Table 10. This golf ball satisfies all the elements of the asserted claims. Claim 1 of the '293 patent is exemplary and is analyzed in detail below. Acushnet shows below that all elements of that claim are expressly or inherently disclosed by Nesbitt incorporating by reference the Molitor '637 patent.[12]

---

[12] Exhibits 33-36 hereto sets forth claim charts showing where each claim element of all the asserted claims are found in Nesbitt, incorporating by reference Molitor '637.

### 1.   Nesbitt discloses a golf ball comprising a "core," "inner cover layer," and "outer cover layer"

Figure 2 of Nesbitt, reproduced below, shows the three-piece solid construction of the golf ball described therein.  For comparison, Figure 1 of the '293 patent is shown to the right of the Nesbitt figure:



Nesbitt Fig. 2                    '293 Patent Fig. 1

Callaway admits that Nesbitt discloses a golf ball with a solid core, an inner cover layer, and an outer cover layer.  D.I. 73, Callaway's Response to Acushnet's Request for Admission No. 16.

### 2.   Nesbitt discloses that the inner cover layer is a "blend of two or more low acid ionomer resins"[13]

Callaway admits that the inner cover layer disclosed in Nesbitt comprises an ionomer resin.  D.I. 73, Callaway's Response to Acushnet's Request for Admission No. 16.  The inner cover layer disclosed in Nesbitt consists of Surlyn 1605 (Nesbitt col. 2, ll. 36-38), which the patents-in-suit state is now designated as Surlyn 8940 ('293 patent, col. 2, ll. 55-56).  The

---

[13] The "blend" limitation is not present in claims 4 and 5 of the '293 patent, claim 5 of the '130 patent, or claim 3 of the '873 patent.

patents-in-suit further identify this resin as "low-acid (less than or equal to 15 weight percent methacrylic acid)." Ex. 1, '293 patent, col. 2, ll. 55-57. Thus, according to the specification of the patents-in-suit, Nesbitt discloses an inner cover layer comprising an ionomer resin containing no more than 16% by weight of an alpha, beta-unsaturated carboxylic acid.

In addition, as set forth above, Nesbitt incorporates by reference the blend of ionomers disclosed in Molitor '637 for use in the inner cover layer. Ex. 5, Nesbitt, col. 3, ll. 54-60. Molitor '637 teaches, in examples 1-7, the use of a blend of two ionomer resins as a cover layer: Surlyn 1605 (the ionomer of Nesbitt's inner cover layer); and Surlyn 1557. Callaway does not dispute this fact. *See* Ex. 24, Response to Office Action Dated February 27, 2007 in Reexam. Cont. No. 95/000,120 at 16 ("Nesbitt is saying to use ionomers . . . and that Molitor '637 discloses specific examples of suitable foamable ionomer resins."). Nesbitt thus satisfies this limitation of claim 1 of the '293 patent.

### 3. Nesbitt discloses that the inner cover layer has a "Shore D hardness of 60 or more"

When the ionomers disclosed by Nesbitt and Molitor '637 are used in the inner cover layer of a golf ball, there is no dispute that the "on the ball" hardness of the inner cover layer is higher than the "off the ball" hardness of those materials. *See, e.g.*, Ex. 19, Nesbitt Tr. at 243:24-244:17.

████████████████████████████████████████████

███████████████████████████████████████ Callaway's

expert also does not dispute that an inner cover layer made of the ionomer blend of Molitor '637

would have an "on the ball" hardness of over 60.  Ex. 27, Risen Report ¶¶ 91-115.  Thus, Nesbitt

satisfies this limitation.

### 4.    Nesbitt discloses that the inner cover layer has a "thickness of 0.100 to 0.010 inches"

Nesbitt discloses an inner cover layer of 0.020 to 0.070 inches.  Ex. 5, col. 3, lines 19-23.

This range is entirely encompassed by the range claimed in claim 1 of the '293 patent (0.100 to

0.010 inches), and therefore anticipates it.   *See Perricone,* 432 F.3d at 1377 (finding anticipation

when claimed range entirely encompasses the range found in a prior art reference).

### 5.    Nesbitt discloses that the outer cover layer has a "thickness of 0.010 to 0.070 inches"

Claim 1 requires that the outer cover layer have a thickness of 0.010 to 0.070 inches.

Nesbitt states that the thickness of the outer layer is 0.0575 inches (Ex. 5, col. 3, ll. 39-40), which

is entirely encompassed by the claimed range.  Thus, this limitation is anticipated by Nesbitt.

*See Perricone,* 432 F.3d at 1377.

### 6.    Nesbitt discloses a polyurethane outer cover layer with a "Shore D hardness of 64 or less"

Claim 1 requires an outer cover layer comprising a relatively soft polyurethane material.

Nesbitt meets this limitation by incorporating by reference the cover materials of Molitor '637.

Specifically, Molitor '637 discloses the use of Estane 58133 polyurethane as a cover material.

Ex. 6, Molitor '637, col. 18.

Claim 1 also requires that the polyurethane of the outer cover have a Shore D hardness of

64 or less.  The Court and the Federal Circuit have construed this limitation to require that Shore

17

D hardness be measured on the ball. This claim construction, however, is not the panacea that Callaway alleges. Callaway argues that because the prior art patents do not report this "on the ball" Shore D hardness value its patents, which recite this property should somehow be saved. Just because the prior art does not explicitly recite Shore D hardness values, does not mean that the golf balls disclosed in those patents did not have Shore D hardness values. Every material, and every golf ball, has a Shore D hardness. It is a simple matter to measure the hardness of golf balls. Indeed, when asked how he would determine the hardness of a golf ball disclosed in the prior art, Callaway's expert Dr. Risen testified that he would "make the ball and measure it." Ex. 28, Risen Depo. Tr. 135:23-136:8. Golf ball manufacturers, including Spalding and Acushnet, and now Callaway have recorded the hardness of commercial golf balls for decades. Likewise, it is a simple matter for a person of ordinary skill in the art to make a golf ball in accordance with the teachings of a prior art patent and test its Shore D hardness.

Thus, it was a simple matter for Acushnet to produce one of the golf balls disclosed in Nesbitt—the ball including Molitor '637's low acid ionomer blend inner cover layer, and Estane 58133 outer cover layer. This ball has a Shore D hardness of 61 as measured on the ball. Dalton Decl. ¶ 9; Ex. 29, PTLI Test Report at AC0131408.[14] This is well within the "64 or less" claimed in claim 1 of the '293 patent.[15]

---

[14] Similarly, when the same ball was made using the single ionomer inner cover layer as described in Nesbitt, and the polyurethane outer cover of Molitor, the outer cover layer Shore D hardness measurement was 62. Ex. 29, PTLI Test Report at AC0131407. Thus, that ball, disclosed by Nesbitt, also anticipates the asserted claims that do not recite a blend of ionomers.

18

Callaway has offered no evidence to show that a golf ball made according to the teaching of Nesbitt and Molitor '637 could have an outer cover layer with a Shore D hardness of greater than 64.  Callaway simply argues that hardness is not an inherent property of a polymer and is difficult to predict.  *See* Ex. 27, Risen Report at 9.  Once this embodiment golf ball has been made and tested, however, we do not have to "predict" what the Shore D hardness of the outer cover would be.  We *know* that it is less than 64.

### a.   The choice of core formulation and inner cover material have no discernable impact on the cover hardness

Callaway previously attacked Acushnet's test ball evidence on the basis that Nesbitt does not teach an explicit formulation for the core, and Nesbitt provides only a range of inner cover thicknesses.  Thus, Callaway argues that Acushnet's test ball evidence does not demonstrate the Shore D hardness that necessarily results from the teaching of Nesbitt and Molitor '637.  D.I. 244 at 15.  Callaway's argument is no more than hand-waving.  Callaway offers no evidence to support its notion that the choice of core material and inner cover thickness would have any meaningful impact on the measurement of the outer cover layer Shore D hardness.

As an initial matter, Acushnet notes that the core it selected to use as the Nesbitt core was described as the core of the "Nesbitt ball" in one of Spalding's own patents, published before the effective filing date of the patents-in-suit in 1995.  GB 2 278 609 A (Exhibit 30), a U.K. patent issued to Spalding, describes the Nesbitt patent, and attributes the very same core formulation that Acushnet used to the Nesbitt patent.  *Id.* at 39-40 (setting forth core formulation) & 46 ("The ball comprising inner layer formulation D and Surlyn 9020 identifies the ball in the Nesbitt 4,431,193 patent.").  Thus, it was known in the art in 1995 that the core Acushnet used was in fact the core of the Nesbitt patent.

19

In any event, to conclusively demonstrate that Acushnet's choice of core and inner cover thickness has no meaningful impact whatsoever on the outer cover Shore D hardness, as measured "on the ball," Acushnet conducted an experiment for purposes of this motion. Specifically, Mr. Dalton, a retired Acushnet golf ball designer, devised an experiment to vary the core formulation and cover thickness in the Nesbitt/Molitor test ball to demonstrate that the outer cover layer Shore D hardness is unaffected by these choices. Dalton Decl. ¶ 14-19. Mr. Dalton chose three different golf ball core formulations that represent the range of feasible golf ball cores (i.e., one extremely soft core, one extremely hard core, and one conventional core described in the art as Nesbitt's core). *Id.* at ¶ 17. He also chose three different thicknesses for the inner cover layer of the Nesbitt ball, covering the range disclosed in Nesbitt of 0.020 to 0.070 inches. *Id.* at ¶ 18. He made golf balls using each combination of core formulation and inner cover layer thickness (and otherwise according to the teaching of Nesbitt and Molitor '637). *Id.* at ¶ 18. Every single ball had an outer cover whose Shore D hardness was ***virtually identical*** to that previously measured by Acushnet. Most importantly, the outer cover of each ball had an "on the ball" Shore D hardness under the claimed range of 64 or less. *Id.* at ¶¶ 26-29.

Acushnet has conclusively established that making the ball described by Nesbitt, incorporating Molitor '637 by reference, necessarily yields a golf ball whose outer cover has an "on the ball" Shore D hardness of less than 64. Callaway has presented no contrary evidence. Accordingly there is no genuine issue of fact that this limitation is anticipated.

### b.    Nesbitt explicitly teaches that the outer cover layer should have the same Shore D hardness as Balata

The text of Nesbitt itself provides another basis for anticipation of the outer cover Shore D hardness limitations. Once the materials for the cover layers are selected, Nesbitt teaches the that each cover layer may be more or less foamed to achieve the desired "soft over hard" quality

of the golf ball: "The inner, intermediate or first layer 14 on the core 12 may be preferably partially or only slightly foamed to a low degree so as not to materially affect the coefficient of restitution of the material.  The outer or cover layer or second layer 16 may be foamed to a greater degree than the inner, intermediate or first layer 14 as the material of the layer 16 is comparatively soft."  Ex. 5, Nesbitt, col. 3:62-68.  Nesbitt teaches that the outer cover, in particular, should have the same hardness as balata: "The soft Surlyn resin cover would have about the same thickness and shore hardness of a balata covered golf ball...."  Ex. 5, Nesbitt, col. 3:40-42.  Since balata covered golf balls have an "on the ball" Shore D hardness of approximately 47-54, Nesbitt's teaching would be understood to teach that the outer cover of the Nesbitt ball should have a similar Shore D hardness.  Morgan Decl. ¶¶ 12-17.

Since Nesbitt discloses, expressly or inherently, each element of the asserted claims, and Callaway has presented no evidence that creates a genuine issue of fact, summary judgment of anticipation is appropriate.

## VI.   IN THE ALTERNATIVE, THE COURT SHOULD TRY ANTICIPATION FIRST IN A SHORT BIFURCATED TRIAL

Acushnet does not believe there are any fact issues that need jury resolution regarding anticipation.  However, if the Court disagrees, the anticipation case should be bifurcated from obviousness and tried first.  A jury verdict for Acushnet on anticipation would serve as a basis for appeal.  If the anticipation verdict is upheld on appeal, the obviousness trial (along with any other remaining issues such as damages) would be avoided completely.  Only if the jury finds for Callaway on anticipation would the case immediately proceed to the longer obviousness phase, before the same jury.

Bifurcating anticipation from obviousness would have three principal benefits.  First, it would avoid the significant confusion and prejudice that would result from the jury hearing days

21

of testimony about secondary considerations only to be told that such evidence is to be ignored

for anticipation.  Second it would avoid the potential prejudice and confusion the Court

identified regarding test ball evidence that will be introduced only for the anticipation defense.

Third, it would potentially avoid the need for an obviousness trial altogether if the jury finds the

patents anticipated, and that verdict is upheld on appeal.

### A.    The issues of anticipation and obviousness are legally and factually distinct

Under Rule 42(b) of the Federal Rules, the Court has "broad discretion" to separate

issues and claims for trial as part of its discretion to manage trials.  *Gardco Mfg., Inc. v. Herst

Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987) (holding permissible the district court's

bifurcation of inequitable conduct from validity and infringement); Fed. R. Civ. P. 42(b).

Separate issues may be tried separately "[f]or convenience, to avoid prejudice, or to expedite and

economize." Fed. R. Civ. P. 42(b).  Typically, courts find bifurcation appropriate when the

bifurcated issues are separable and distinct.  *See, e.g., Windsor Indus., Inc. v. Pro-Team, Inc.*, 87

F. Supp. 2d 1129, 1130 (D. Colo. 2000) ("[B]ifurcation is only appropriate where the issues are

separable and distinct."); *Rosenthal Mfg. Co. v. Thermal Equip., Inc.*, 1988 U.S. Dist. LEXIS

6589, at *3 (D. Kan. June 13, 1988) ("The court cannot think of a more appropriate circumstance

for bifurcation; the issues surrounding patent validity, damages, and antitrust violations are for

the most part separate and distinct.").

The issues of anticipation and obviousness are clearly separate legal theories with

separate proof requirements.  *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107-08 (Fed.

Cir. 2003) ("Succinctly put, the various enforceability and invalidity defenses that may be raised

by a defendant -- inequitable conduct, the several forms of anticipation and loss of right under §

102, and obviousness under § 103 -- require different elements of proof).  Indeed, the Federal

Circuit recently held that a claim permissibly can be found anticipated but not obvious. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("The tests for anticipation and obviousness are different."). In doing so, the Federal Circuit noted, "obviousness requires analysis of secondary considerations of nonobviousness, while secondary considerations are not an element of a claim of anticipation." *Id.*

Moreover, in this case, the anticipation and obviousness defenses are also factually distinct. Unlike some patent cases in which anticipation and obviousness both involve the same set of prior art, here the two defenses rely on distinct prior art references. In particular, Acushnet's asserts anticipation solely in view of the Nesbitt patent, incorporating Molitor '637 by reference.[16] In contrast, Acushnet's obviousness case relies on additional references and combinations of references, including: a) the Proudfit Patent; or b) the Wilson Ultra Tour Balata golf ball as a primary reference; and a) Molitor '751; b) Wu; or c) the Professional golf balls as a secondary reference. Acushnet will not advance these references as anticipation references.

Because of the separation of legal and factual inquiries presented by the anticipation and obviousness defenses, bifurcating these two issues would not result in any duplication of evidence, inefficiencies, or possibility of inconsistent verdicts.

**B.      Bifurcation would ensure that secondary considerations are not considered for anticipation**

It is well settled that secondary considerations of non-obviousness are wholly irrelevant to anticipation. *See, e.g., Cohesive Techs.* 543 F.3d at 1364. As such, in a combined trial, the jury would have to be instructed that the secondary consideration evidence that consumed the lion's share of the first trial should be ignored while considering the anticipation question.

---

[16] Acushnet previously asserted claims 1 and 2 of the '130 patent were also anticipated over different prior art, but those claims have been dropped by Callaway. Thus, only Nesbitt (incorporating Molitor) remains as an anticipation reference.

While in some cases, such an instruction may be somewhat effective, this case presents a unique circumstance that magnifies the potential for prejudice and confusion. Whereas in many obviousness cases, the focus of evidence is on the teachings of the prior art, and secondary considerations play a somewhat lesser role, here the secondary considerations evidence will likely consume the retrial as they did the first trial. After hearing almost two weeks of evidence primarily related to secondary considerations, it will be difficult to adequately instruct the jury to ignore such evidence for anticipation.

Acushnet's proposed solution eliminates any chance of such prejudice. Since secondary considerations are not relevant to anticipation, the first phase of the trial would be short and focused only on the teachings of the Nesbitt and Molitor references. No argument or evidence would relate to secondary considerations, so there would be no possibility of jury confusion and improper reliance on secondary consideration evidence in evaluation of the anticipation question. Many courts have bifurcated issues in patent cases to avoid similar prejudice to the parties. *See, e.g.*, *St. Clair Intellectual Prop. Consultants v. Sony Corp.*, 2002 WL 1901268, at *4-5 (D. Del. Aug. 16, 2002) (bifurcating willfulness from other trial issues to avoid prejudice to the defendant); *Japan Cash Mach. Co. v. Mei, Inc.*, 2008 WL 5051245, at *22-24 (D. Nev. Nov. 20, 2008) (bifurcating inequitable conduct from other trial issues to avoid prejudice to the plaintiff).

If Callaway prevails in the anticipation phase, it would be free to offer secondary consideration evidence as part of the obviousness case, as it did in the first trial, and there would be no prejudice to Callaway in doing so. Thus, bifurcation seems to be a reasonable solution to avoid prejudice to the parties, advancing the stated goals of bifurcation. Fed. R. Civ. P. 42(b).

**C.    Bifurcation would mitigate the Court's concerns of potential jury confusion related to the test balls**

The Court has already identified a potential jury confusion issue that would be substantially mitigated by bifurcation of anticipation.  At the telephonic status conference held on September 4, 2009, the Court voiced its concern that Acushnet's test ball evidence may be admissible for anticipation purposes, but not for obviousness purposes:

> On the one hand, I think that [the Federal Circuit] did not overturn my decision to not admit such evidence for purposes of obviousness, but they said it's possible that it would be appropriate evidence in terms of anticipation.  So, of course, my first concern is, that's awfully persuasive evidence, and to say to a jury, you can only use it for anticipation and not obviousness, that's going to present some problems in the first instance.

Ex. 31, September 4, 2009 Hearing Tr. at 4:21-5:4.

The Court's concern regarding the test ball evidence is another strong reason to bifurcate anticipation and try it first.  By separating the issues with two separate phases, and two separate instructions, the jury is much more likely to use the anticipation test ball evidence only for anticipation, and not let that evidence affect its decision on the obviousness question.

Just as secondary considerations are relevant only to obviousness and not anticipation, the test ball evidence will be advanced only for anticipation and not obviousness.  The fact that each legal theory carries with it its own unique set of evidence counsels in favor of trying the issues separately.

**D.    Bifurcation of anticipation would potentially eliminate a lengthy trial on obviousness**

Finally, from the perspective of judicial economy and efficiency, bifurcation has the potential to substantially shorten trial time, reducing the burden on the court and the jury.

As demonstrated above, the anticipation case is simple.  The only prior art reference at issue is Nesbitt, incorporating Molitor '637.  Disclosure of most of the claimed limitations is

25

undisputed.  The case boils down essentially to whether the disclosure in the Nesbitt/Molitor patent anticipates the outer cover Shore D hardness limitation of the patents-in-suit.  While Acushnet does not believe that factual issue is in genuine dispute, it would be a discrete issue simple to try in front of the jury if necessary.  As a result, Acushnet expects that the parties could try the anticipation case in two days, or three at most.

The obviousness case, on the other hand, is a much more involved issue for the jury.  The first trial was entirely directed only to obviousness, and it took nearly eight full trial days to complete.  Much of this time was spent introducing evidence regarding secondary considerations, including commercial success.  There is no reason to think that the obviousness question would take any less time to try in this case.

If anticipation were bifurcated and tried first, the lengthy obviousness case may be avoided altogether.  A jury finding of invalidity due to anticipation would be a basis for immediate appeal, and if affirmed would eliminate the need for an obviousness trial altogether.

Since the issues of anticipation and obviousness involve separate legal and factual inquiries, certain evidence to each legal theory is irrelevant and potentially prejudicial to the other, and there are potential efficiencies to be gained by separating the issues, bifurcation is appropriate if the Court denies Acushnet's motion for summary judgment on anticipation.

## VII.   CONCLUSION

For all of the foregoing reasons, Acushnet requests that the Court grant summary judgment that the asserted claims of the patents-in-suit are anticipated by Nesbitt, incorporating by reference Molitor '637.

In the alternative, if the Court finds that there is a genuine issue of material fact that must be tried for anticipation, Acushnet requests that the anticipation defense be bifurcated and tried first, and that if necessary obviousness be tried second to the same jury.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  (202) 783-0800

By:   /s/ David E. Moore
　　　　Richard L. Horwitz (#2246)
　　　　David E. Moore (#3983)
　　　　Hercules Plaza 6th Floor
　　　　1313 N. Market Street
　　　　Wilmington, DE  19899
　　　　Tel:  (302) 984-6000
　　　　rhorwitz@potteranderson.com
　　　　dmoore@potteranderson.com

Dated:  December 1, 2009
Public Version Dated: December 9, 2009
945472 / 30030

*Attorneys for Defendant Acushnet Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

<u>**CERTIFICATE OF SERVICE**</u>

I, David E. Moore, hereby certify that on December 9, 2009, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on December 9, 2009, the attached document was Electronically

Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030