IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY | ) ) ) ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| v. | ) ) ) | |
| ACUSHNET COMPANY, | ) | **PUBLIC VERSION** |
| Defendant. | ) ) ) ) | |

**ACUSHNET'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE CALLAWAY'S IMROPER BOLSTERING OF THE VALIDITY OF THE PATENTS-IN-SUIT**

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

Dated: December 1, 2009
Public Version Dated: December 9, 2009


## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND................................................................................2

    A. Prosecution of the Patents-in-Suit..............................................................2

    B. Reexaminations of the Patents-in-Suit.......................................................3

    C. Callaway's Improper Bolstering at the First Trial .....................................3

III. ARGUMENT.........................................................................................................6

    A. Evidence and Arguments Suggesting that the PTO Fully Considered the Prior Art during Original Examination Should be Excluded......................6

    B. Evidence and Argument suggesting that "Three Examiners" Blessed the Patents-in-Suit should be Excluded ...........................................................8

    C. Callaway Should be Strictly Limited to an Accurate Recitation of the Presumption of Validity at Retrial ..............................................................9

IV. CONCLUSION....................................................................................................10

Defendant Acushnet Company ("Acushnet") files this motion *in limine* to exclude Callaway Golf Company ("Callaway") from presenting arguments and evidence that unduly bolster the presumption of validity for the patents-in-suit. The parties met and conferred on this Motion; Callaway will oppose.

## I.   INTRODUCTION

The Patent Office has issued final office actions rejecting each asserted claim of the patents-in-suit.[1] Given the Court's previous rulings on the admissibility of reexamination evidence, Acushnet does not seek in this motion, or any other motion, to admit evidence of the reexaminations at the retrial. However, principles of fundamental fairness dictate that if reexamination evidence is not presented to the jury, Callaway should not be able to unfairly exploit its exclusion by unduly bolstering the validity of the patents-in-suit.

During the first trial, Callaway repeatedly tried, through its arguments, to bolster the presumption of validity applicable to patents challenged in District Court. Specifically, Callaway argued that: (1) the PTO fully considered the art relied upon by Acushnet; (2) Acushnet presented no new arguments to the jury that were not considered by the PTO; (3) there was nothing Spalding could tell the PTO that it did not tell them during the original Examination; and (4) multiple Examiners had confirmed the validity of the patents-in-suit. Callaway's statements were prejudicial and misleading. Callaway's arguments unfairly suggested that PTO had already done the jury's job for it, and that every examiner to review the validity of the patents-in-suit had sided with Callaway.

The impression Callaway left with the jury is far from the truth: (1) the PTO did *not* fully consider the art relied upon Acushnet during the original *ex parte* examination—when it did fully

---

[1] Callaway has appealed these final rejections to the Board of Patent Appeals and Interferences.

consider this art during reexamination, it rejected the claims; (2) Acushnet presented new evidence and arguments related to all of the prior art references at issue that was not before the PTO, and presented several new pieces of prior art not passed on at all during the original examination; (3) Spalding *did not* tell the PTO everything it needed to know to evaluate the patentability of these claims, as the reexaminations demonstrate; and (4) all Examiners that have reviewed the claims in reexamination on a more complete record have now found the claims not patentable. Since evidence of the reexaminations was excluded from trial, Acushnet was unable to contest any of these incorrect implications of Callaway's arguments.

Acushnet submits that any argument Callaway presents regarding the completeness or correctness of the original examination is highly prejudicial and improper in light of the status of the reexaminations. Thus, Acushnet requests that the Court exclude from retrial all evidence and arguments that represent undue bolstering of the presumption of validity by Callaway, and strictly limit Callaway's evidence and arguments on this point to an accurate recitation of the presumption of validity standard set forth in 35 U.S.C. § 282.

## II. FACTUAL BACKGROUND

### A. Prosecution of the Patents-in-Suit

The patents-in-suit name Michael J. Sullivan as their sole inventor and claim priority to a 1995 application. During the original examinations of the patents-in-suit, several of the prior art references raised by Acushnet at trial were cited.

Nevertheless, these references were not fully considered by the Patent Office during the original *ex parte* examination. For example, the PTO was not informed of the Shore D hardness of the cover layers of the Nesbitt ball, or Shore D properties of materials disclosed in other references. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████████████████████████

██████████████████████████████ Finally, Spalding improperly swore behind the Proudfit reference, removing it from consideration for much of the time that the patents-in-suit were under examination.

### B. Reexaminations of the Patents-in-Suit

In the currently-pending *inter partes* reexaminations on the patents-in-suit, Acushnet disclosed the information that had not been provided to the original examiners. Armed with a more complete record, the reexamination examiners rejected each claim of the patents-in-suit numerous times, and have maintained those rejections over every argument that Callaway has advanced for patentability. Specifically, when the PTO was informed of the Shore D hardness values of many of the prior art cover materials not disclosed in the original examination, and informed of the "on the ball" hardness measurements for various prior art golf balls and cover materials, the reexamination examiners rejected the claims.

The reexamination proceedings have now advanced to the point where they are "final" at the examiner level, and Callaway has appealed the final rejections of its claims to the Board of Patent Appeals and Interferences. Callaway will no doubt appeal the BPAI's decision to the Federal Circuit. Thus, it will likely be at least two more years before the reexamination proceedings conclude.

### C. Callaway's Improper Bolstering at the First Trial

During the first trial, the Court declined to admit evidence of the PTO reexamination proceedings of the patents-in-suit on the basis that they were not yet final decisions. D.I. 492 at 19 n.15; Ex. 1, T. Tr. 354:9-19. In light of that ruling, Acushnet does not intend to seek to

---

[2] All exhibits referenced can be found in the Appendix filed contemporaneously herewith.

introduce evidence of the reexaminations at the retrial. However, in the interests of fairness and completeness, Callaway should likewise not be given *carte blanche* to make the kinds of incomplete and misleading statements regarding the presumption of validity that it made during the last trial.

At the first trial, Callaway repeatedly stressed in opening statement and arguments that the PTO had already passed upon the prior art considered by Acushnet; hence the jury's job had been done for it. Following are excerpted examples of Callaway's improper bolstering in its opening statement (emphasis added):

- Now, you have the patents in front of you, and in deciding that issue, it really boils down to something very simple: Did the – ***there are three patent examiners who looked at the four patents collectively***. Okay? ***Did those three examiners, different people, make a mistake*** when they looked at ***exactly the same prior art*** that Acushnet now says invalidates these patents, because there's ***no new prior art***. Everything Acushnet, everything you saw in their slides, everything they are going to rely on, ***the patent office had***. So that's what the validity issue boils down to in this case. (Ex. 1, T. Tr. 161:6-17).

- You will also see when you look at the patents that, well, there are four of them. They were filed at different times. They issued at different times and they were examined by different examiners. ***Three different examiners total looked at these patents before, allowing them***. (Ex. 1, T. Tr. 181:4-9).

- You will also see on the face of the patent, and this was in the patent video, that the prior art on which Acushnet relies, all of it, ***all of it was considered by the Patent Office***. The '293 patent, on its face, cites the Nesbitt and Proudfit patents. If you actually look at the text of the '293 patent—and you're going to see a little bit at least of that text during the course of this trial, we're not expecting you to read it here on this slide—but the yellow that we've highlighted in yellow are places in the text of the patent itself where Mike Sullivan discusses the Nesbitt patent. Okay? The Nesbitt patent which Acushnet relies on. The evidence will show it's discussed all over Mr. Sullivan's patent. He told the Patent Office all about it. He also told the Patent Office all about the Molitor '751 patent. This is another piece of prior art that Acushnet relies on. That one, too is identified by Mr. Sullivan in his patent. He told the Patent Office about it. So that is two of the five references they rely on. What about the others? . . . Now, the other three prior art references that you heard about Mr. Lavelle were also considered by the Patent Office. Here is the Molitor '637 patent listed on the face. Here is the Proudfit patent. Here is the Wu patent. ***Nothing new. And that is why in this***

4

*case you are going to have to decide what effect to give the presumption of validity.* Will Acushnet, at the end of the day, show you enough evidence to overcome the presumption given that *all of Acushnet's art was before the Patent Office*, and given that their burden is to show it to you by clear and convincing evidence. (Ex. 1, T. Tr. 181:10-182:25).

Callaway continued its theme in closing argument. Following are excerpts (emphasis added):

- But that's not the only thing that you have to disregard. Obviously, *you have to disregard what the Patent Office did when it first issued these patents*. And you're free to do that, but there's nothing new. Okay? Really in substance, there's *nothing new Acushnet had presented to you that the Patent Office didn't see the first time around*. The primary prior art references they rely on were considered. Now, can the Patent Office make a mistake? Sure. They're humans there. We're all human and a mistake could have been made. But you have not actually heard that from Acushnet. *They're not arguing the Patent Office made a mistake*. They are just arguing that you should see things their way instead of the way the Patent Office did. (Ex. 1, T. Tr. 1339:6-19).

- *It's hard to imagine how the Patent Office could have known anything more about Nesbitt than it already knew*. Not only was it cited on the face of the patent. These are all—well, you have seen this before. I will skip over this. But if you look at the face of all of the patents except the '293, where two of the references got dropped off, they're not listed on the face of the '293, but we showed you in the prosecution history that, in fact, *they were considered*. You may remember that. But if you look at the others, *they're all cited*. (Ex. 1, T. Tr. at 1353:13-23).

- And, of course, when [Mr. Sullivan] tries to get a patent on this improvement, he tells the Patent Office all about that prior art he knows, because Mike is an honest guy. Right? He knows his duty of disclosure. He's got a lot of patent. He's got a lot of familiarity with the Patent Office. *He told them everything he thought he had to tell them*. And he did not just cite the reference. You'll see this if you have a chance to look through any of the patents-in-suit. Nesbitt—all of this yellow is discussion specifically of the Nesbitt patent—this is in the '293, but it's the same, essentially the same in all the other patents. *What else could he have told the Patent Office about Nesbitt? Nothing. There's no chance that the Patent Office didn't understand everything there was to understand about Nesbitt*. (Ex. 1, T. Tr. 1354:12-1355:3).

- But they want you to forget about that when you talk about what the Patent Office considered, because if that's true, and we dispute it. Okay? You decide. They're different things. The patent is one thing, it says one thing. The ball is another thing. Suppose they are the same. *The Patent Office considered Proudfit the first time around in issuing these patents in every single case*. So if the Ultra-

5

>Tour Balata ball is the same, well, then that was considered, too. They can't have it both ways. (Ex. 1, T. Tr. 1358:24-1359:8).

These arguments created the incorrect impression that the PTO had fully considered the prior art references raised at trial, that every examiner to look at these patents had blessed them, that Acushnet presented no new evidence, and that Spalding had told the PTO everything there was to know about the prior art references at issue. As illustrated below, each of these notions is incorrect. Yet Acushnet was powerless to dispute them by virtue of the Court's exclusion of the reexamination evidence. In the interest of fairness, if Acushnet cannot demonstrate that the Patent Office has now found new questions of patentability and reversed its decision on the validity of the patents, Callaway should be precluded from making these improper implications in the retrial.

### III. ARGUMENT

#### A. Evidence and Arguments Suggesting that the PTO Fully Considered the Prior Art during Original Examination Should be Excluded

As set forth above, Callaway repeatedly stated that the PTO had fully considered the prior art references relied upon by Acushnet, thus suggesting that the jury's job in determining validity was all but over. In fact, the PTO did not fully consider the prior art references during the original examination because, *inter alia*, the PTO did not have access to the "on the ball" hardness measurements of prior art golf balls. Thus, the PTO did not know that the prior art Shore D hardness values claimed in the patents-in-suit were present in the prior art golf balls associated the prior art references. When Acushnet provided this information to the PTO, the claims were rejected. Indeed, one of the reasons the PTO ordered reexamination related specifically to the lack of investigation of Shore D hardness values by the original examiners, which raised a substantial new question of patentability in view of Nesbitt and Molitor '637 not

previously considered by the PTO. *See* Ex. 2, Order Granting Reexamination of '156 patent at 8-9.

Moreover, during the original examination of the patents-in-suit, Callaway had not yet advanced its "on the ball" claim construction for the patents-in-suit; thus the PTO did not make any findings relating specifically to "on the ball" cover hardness values. However, in the reexamination proceedings, the PTO did explicitly review the prior art combinations with an eye towards the "on the ball" claim construction. When it performed this analysis, it rejected the claims. *See* Ex. 3, '156 RAN at 226.

Next, Contrary to Callaway's assertions, Acushnet presented several pieces of prior art at trial that were not considered by the PTO during the original examination of the patents-in-suit. First, the Wilson Ultra Tour Balata golf ball had a known hardness, and was not considered by the PTO during the initial examination proceedings. *See, e.g.,* Ex. 1, T. Tr. 1198:20-1199-19. Second, the Titleist Professional golf ball also was not considered by the Patent Office. *Id.* Thus, Callaway's statements that the PTO had access to the same evidence as presented at trial were incorrect.

Finally, Callaway made several arguments suggesting that Spalding told the PTO everything there was to know about Nesbitt and the other prior art references. As an initial matter, this is incorrect. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

███████████████████████████ But since the reexamination evidence was excluded, Acushnet could not counter Callaway's incorrect arguments.

If the reexamination evidence is excluded, fairness dictates that Callaway's evidence and arguments suggesting that the PTO has already fully considered the validity issues should be excluded as well. For example, Callaway should not be permitted to tell the jury that all the asserted prior art was already considered by the Patent Office, or that Spalding provided everything the Patent Office needed to know. The impression such statements leaves is refuted only by the reexaminations, which illustrate the many aspects of the prior art references that the original examiners missed in the first instance.

**B.  Evidence and Argument suggesting that "Three Examiners" Blessed the Patents-in-Suit should be Excluded**

Callaway made repeated references to "three examiners" having passed on the validity of the patents-in-suit, suggesting that, while one examiner might make a mistake, surely three different examiners, independently evaluating the patents-in-suit, must have gotten it right. The problem with Callaway's line of argument is that, as Callaway knew, other examiners in the reexamination proceedings more recently had concluded that the patents should not have been issued. Two primary examiners and numerous conferees have concluded that Callaway's claims are unpatentable over numerous efforts by Callaway to revive its claims. Thus, Callaway should not be allowed to tell only half of the story on this front.

Indeed, the Court itself expressed discomfort with Callaway's reliance on its "three examiner" argument at the first trial:

8

| | |
|---|---|
| THE COURT: | With respect to the other issue, it seems to me as though there is some unfairness involved by Callaway emphasizing the fact that these, by bolstering the validity of its patents by saying that it passed muster with three examiners when in fact, apparently, it has now been rejected by two examiners. |
| | So I don't think it's appropriate bolstering. And I, frankly think giving the reexam is really confusing because, quite frankly, it is not binding on me. I don't want to get it in. I really think at this point it is irrelevant. |
| | But I think, Callaway, if you don't want it, you can't bolster the validity by saying, gee, three examiners found this valid. So it's up to you all Callaway. It's either all or nothing. |

(Ex. 1, T. Tr. 354:9-23). Even the Federal Circuit acknowledged that Callaway's opening statement "had potential to mislead the jury by implying that every expert examiner to have considered the patents had concluded that they were valid." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1342 (Fed. Cir. 2009). Unfortunately, the Court's admonition to Callaway came too late to reverse the damage done by Callaway's improper statements in its opening.

Because the same concerns will be present at the new trial, Acushnet requests that the Court, consistent with its prior rulings, exclude any arguments suggesting that "three examiners" evaluated the patents-in-suit.

### C. Callaway Should be Strictly Limited to an Accurate Recitation of the Presumption of Validity at Retrial

Callaway should be prevented from making the kind of arguments that made the first trial fundamentally inaccurate and unfair. Acushnet does not suggest that Callaway should not be permitted to recite the statutory presumption of patent validity. However, in light of the reexamination status, Callaway should not be permitted to go beyond a strict recitation of that statutory presumption. Specifically, Acushnet requests the following ruling:

> 1. Callaway should be allowed to recite the statutory presumption that issued patents are presumed valid pursuant to 35 U.S.C. § 282, but should not otherwise be permitted to

9

advance argument or evidence pertaining to the correctness or completeness of the Patent Office's original examination.

2. For example, any excessive bolstering suggesting any of the following should be excluded:

>(a) the PTO fully considered the prior art at issue during the original examination;
>
>(b) Acushnet raised no new arguments that the PTO did not already consider;
>
>(c) Spalding told the PTO everything there was to know about the prior art;
>
>(d) multiple examiners examined the patents-in-suit; or
>
>(e) any other bolstering argument whether or not made at the first trial

3. Because each of the above arguments is directly contradicted by the reexamination evidence, if Callaway does delve into these areas, Acushnet should be allowed to correct the record through appropriate, limited reference to the reexamination proceedings. However, if Callaway follows these restrictions and does not open the door to the reexaminations, Acushnet will not seek to introduce them into evidence.

## IV. CONCLUSION

For all of the foregoing reasons, all evidence and arguments pertaining to the presumption of validity of the patents-in-suit, other than a recitation of the statutory presumption of validity for issued patents, should be excluded from the retrial.

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: December 1, 2009
Public Version Dated: December 9, 2009

945506 / 30030

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 9, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on December 9, 2009, the attached document was Electronically Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030