IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | |
| Plaintiff, | C. A. No. 06-91 (SLR) |
| v. | **REDACTED** |
| ACUSHNET COMPANY, | |
| Defendant. | |

**CALLAWAY GOLF'S MOTION *IN LIMINE* TO PRECLUDE ANY
REFERENCE TO ACUSHNET'S "TEST BALLS"**

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

*Attorneys for Plaintiff
Callaway Golf Company*

DATED: December 11, 2009

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ........................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS ......................................1

III. SUMMARY OF ARGUMENT ................................................................2

IV. STATEMENT OF FACTS .......................................................................4

    A.  The Patents-in-Suit and Acushnet's Defenses ............................4

    B.  The "Test Balls".............................................................................5

        1.  The Actual Cores Used in BALL_1 and
             BALL_4 Are Not Disclosed in Either Nesbitt or
             Molitor '637 ...................................................................7

        2.  The Actual Outer Cover Layers of BALL_1 and
             BALL_4 Contradict the Teaching of Molitor
             '637 ................................................................................9

    C.  *Daubert*, Summary Judgment, and Trial....................................11

    D.  Appeal and Remand .....................................................................13

V.  ARGUMENT ...........................................................................................15

    A.  Legal Standards............................................................................15

    B.  The Test Balls Are Not Probative of Nesbitt's
        Disclosure ....................................................................................17

    C.  The Test Balls Are Highly And Unfairly Prejudicial .............21

        1.  The Test Balls' Undue Prejudice Regarding
             Obviousness Outweighs Any Probative Value
             Regarding Anticipation...............................................21

        2.  The Test Balls Are Unduly Prejudicial
             Regarding Anticipation...............................................22

    D.  None of Acushnet's Witnesses Can Relate the Test Balls
        to Nesbitt......................................................................................26

VI. CONCLUSION.........................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atofina v. Great Lakes Chemical Corp.*,
441 F.3d 991 (Fed. Cir. 2006) ..................................................................................23, 24

*Callaway Golf Company v. Acushnet Company*,
576 F.3d 1331 (Fed. Cir. 2009) .................................................................... passim

*Cohesive Technologies, Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008) (Linn, J.) ............................................................21

*Connell v. Sears, Roebuck & Co.*,
722 F.2d 1542 (Fed. Cir. 1983) ............................................................................22

*Continental Can Co. USA, Inc. v. Monsanto Co.*,
948 F.2d 1264 (Fed. Cir. 1991) ............................................................................25

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993) ..........................................................................11, 14, 16

*Engel Industries, Inc. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999) ............................................................................27

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
424 F.3d 1276 (Fed. Cir. 2005) ............................................................................26

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
45 F.3d 1550 (Fed. Cir. 1995) ..............................................................................26

*Glaxo Group Ltd. v. Apotex, Inc.*,
376 F.3d 1339 (Fed. Cir. 2004) ............................................................................20

*Impax Laboratories, Inc. v. Aventis Pharmaceuticals Inc.*,
468 F.3d 1366 (Fed. Cir. 2006) ............................................................................24

*In re Arkley*,
455 F.2d 586 (C.C.P.A. 1972) ............................................................................3, 23

*In re Brimonidine Patent Litigation*,
__ F. Supp. 2d __, 2009 WL 3490861 (D. Del. Oct. 23, 2009) ...............................26

*In re Ruschig*,
343 F.2 ........................................................................................................24

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Invitrogen Corp. v. Clontech Laboratories, Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)..........................................................................................16, 26

*Joyal Products, Inc. v. Johnson Elec. North America, Inc.*,
   2008 WL 4630500 (D.N.J. Oct. 17, 2008)...................................................................................26

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
   2008 WL 4614660 (N.D. Cal. Oct. 16, 2008)............................................................................27

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008)..............................................................................15, 18, 23

*Sanofi-Synthelabo v. Apotex, Inc.*,
   550 F.3d 1075 (Fed. Cir. 2008)..........................................................................................16

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
   295 F.3d 1292 (Fed. Cir. 2002)..........................................................................................25

*Viterbo v. Dow Chemical Co.*,
   826 F.2d 420 (5th Cir. 1987)..............................................................................................27

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*,
   209 F. Supp. 2d 348 (D. Del. 2002).......................................................................15, 18, 20

*Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc.*,
   112 F.3d 1137 (Fed. Cir. 1997)..........................................................................................16

OTHER AUTHORITIES

Fed. R. Civ. P. 26(a)(2)(A) ..................................................................................................17, 27

Fed. R. Evid. 702 ..................................................................................................................16

Federal Rules of Evidence 702, 703 ........................................................................................17

FRE 402 ............................................................................................1; 2; 15; 17; 18; 20

FRE 403 ............................................................................................1; 2; 3; 16; 21; 22; 25

## I.   INTRODUCTION

Callaway Golf Company respectfully moves the Court *in limine* to exclude from evidence, at the upcoming retrial of this case, the golf balls made for litigation in 2007 under the direction of Acushnet's lawyers (the "Test Balls"), and any testimony, opinion or argument regarding them.  The Federal Circuit has already affirmed this Court's decision that the Test Balls and related testimony are inadmissible with respect to the issue of obviousness.  The Test Balls should also be excluded with respect to the issue of anticipation, under FRE 402 because they do not in fact replicate the Nesbitt reference, and under FRE 403 because they are far more prejudicial than probative of any issue to be presented in this retrial.

## II.   NATURE AND STAGE OF PROCEEDINGS

This patent case is on remand after the U.S. Court of Appeals for the Federal Circuit affirmed in-part and reversed in-part this Court's earlier decisions.  *See Callaway Golf Company v. Acushnet Company*, 576 F.3d 1331 (Fed. Cir. 2009).  The case is set for a pretrial conference on March 3, 2010, in advance of a trial from March 22-26 to retry the question of obviousness, to try the question of anticipation by the Nesbitt reference, and to try damages.

In a telephonic hearing on December 9, 2009, the Court allowed Callaway Golf to file this motion *in limine* on December 11, 2009, with Acushnet's opposition due on January 14, 2010, and Callaway Golf's reply due on February 1, 2010.  [D.I. ___ at 17:14-18:6.][1]

---

[1]   Callaway Golf appreciates the opportunity to brief select evidentiary issues to the Court in advance of trial.  To minimize the burden on the Court's resources, Callaway Golf will not reiterate evidentiary issues already addressed in the prior trial regarding this matter.  With the exception of one other evidentiary issue which warrants briefing to the Court at this time, and which is the subject of a separate, contemporaneously filed motion, Callaway Golf will treat other miscellaneous potential evidentiary issues in the pretrial order following the usual procedure.

### III.   SUMMARY OF ARGUMENT

1.      The Test Balls are not probative of anticipation, as *none* of them is a mere recreation of any golf ball disclosed by Nesbitt (even assuming the Nesbitt patent to incorporate the entire list of foamable compounds disclosed by the Molitor '637 patent). Acushnet claims that two of the Test Balls are based on *individual layers* disclosed by Nesbitt or Molitor '637, allegedly including a core from Nesbitt and a polyurethane outer cover from Molitor '637.  But the core composition chosen by Acushnet is not disclosed anywhere in Nesbitt, and the outer cover layer chosen by Acushnet actually *contradicts* the teaching of Molitor '637.  Thus, the Test Balls fail the basic relevancy requirement of Fed. R. Evid. 402, and ought to be excluded on that basis alone.

2.      The Test Balls are also highly and unfairly prejudicial, as they would encourage the jury to decide validity on the basis of alleged recreations of prior art made with the benefit of Acushnet's lawyers' hindsight and the specific intent to find a combination that mimics the claimed invention.  This Court has already excluded the balls on this basis with regard to obviousness, and the Federal Circuit has affirmed that decision.  *See Callaway Golf Co.*, 576 F.3d at 1342 ("The introduction of evidence concerning the test balls ran a substantial risk of leading the jury towards the inappropriate use of hindsight and towards unduly weighting Acushnet's arguments concerning motivation to combine the prior art.").  Substantially the same considerations apply to anticipation.  This undue prejudice would far outweigh any limited probative value of the Test Balls with respect to anticipation, especially because it would be unrealistic to expect the Jury to segregate its consideration of the Test Balls to the issue of anticipation but not obviousness.  Thus, the Test Balls ought to be excluded under Rule 403 on this basis.

3.      Even without regard to obviousness, the Test Balls are far more prejudicial than probative on the issue of anticipation.  While anticipation does not require a

2

motivation to combine separate references, it does require that a single reference have disclosed every limitation of the asserted claims to a person of skill in the art *as arranged in the claims*, "without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." *In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972). Here, even when considered as a single reference, Nesbitt/Molitor '637 does not contain even *one* embodiment with all the limitations of the asserted claims. The two patents instead generically discloses many different cover layer materials which can be chosen and then combined in hundreds—if not thousands—of ways to make a golf ball with two cover layers. The Test Balls would unfairly prejudice the Jury towards finding that Nesbitt readily discloses complete golf balls as specifically arranged in the claims of the patents-in-suit. In fact, Acushnet's attorneys created the Test Balls in an effort to mimic the claimed invention, and with the benefit of 20-20 hindsight, by "picking, choosing, and combining various disclosures ..." Yet, Acushnet's attorneys failed to even follow the teachings they allege are anticipatory and filled in missing gaps from the prior art using the teachings of the actual patents-in-suit. Thus, the Test Balls ought to be excluded under Rule 403 for this additional reason.

4.    Finally, the Test Balls ought to be excluded because Acushnet cannot lay a proper expert foundation for any testimony regarding them. The Test Balls are clearly in the realm of expert testimony. The Nesbitt patent, even when combined with the Molitor '637 patent, nowhere discloses the claimed hardness values set forth in the asserted claims of the patents-in-suit. The only possible relevance of the Test Balls (though Callaway Golf does not concede any such relevance) is to show what the particular Shore D hardness allegedly *would have* been of hypothetical golf balls had they (counterfactually) ever been made at the relevant time in 1995, and that such Shore D hardness values were actually "inherent" in the combined disclosures of Nesbitt and Molitor '637. Yet neither of Acushnet's experts may testify regarding the Test Balls, and

3

none of the Acushnet attorneys or employees involved in creating the Test Balls has been disclosed as expert witnesses with regard to any aspect of that work. Therefore Acushnet has no permissible expert foundation on which to tie the Test Balls to any proposition properly at issue in this retrial – including the issue of inherency.

## IV.    STATEMENT OF FACTS

### A.    The Patents-in-Suit and Acushnet's Defenses

Callaway Golf filed the original Complaint in this case on February 9, 2006, charging Acushnet with infringement of four patents issued to the most prolific golf ball inventor of all time, Michael J. Sullivan:  U.S. Patents Nos. 6,210,293, 6,503,156, 6,506,130, and 6,595,873 (collectively, "the Sullivan I patents"). [D.I. 1.] The Sullivan I patents claim golf balls with particularly synergistic construction parameters—three-piece golf balls containing a spherical core surrounded by a firm inner cover layer made of a single low-acid ionomer or blend of low-acid ionomers, covered by a thin polyurethane outer cover layer, each of specific material and/or thickness and/or hardness—which provide long-sought-after performance advantages. [D.I. 247.]

Acushnet stipulated on the eve of the first trial that its Titleist Pro V1, Pro V1 Star, and Pro V1x golf balls infringed all of the asserted claims of the Sullivan I patents [D.I. 367],[2] but maintained that the claims are invalid as anticipated by U.S. Patent No. 4,431,193 to Nesbitt, or as obvious in light of various prior art references or golf balls. The Nesbitt patent discloses a multilayer golf ball, but nowhere within its four corners does it disclose a polyurethane outer cover or a blend of low-acid ionomers in the mantle layer, which are required by various asserted claims of the Sullivan I patents. [D.I. 203

---

[2]    In 2008, Acushnet "converted" its Titleist Pro V1 and Pro V1x balls to different compositions which allegedly took them outside of the patents-in-suit. [D.I. 482.] Those converted balls, however, infringe other Callaway Golf patents at issue in the second suit pending between the parties in this Court. *Callaway Golf Company v. Acushnet Company,* D. Del. case no. 09-131-SLR.

Ex. 3 (Nesbitt '193 patent).] Acushnet argued that Nesbitt incorporates these materials by reference to a second patent, U.S. Patent No. 4,274,637 to Molitor. [D.I. 203 Ex. 2 (Molitor '637 patent).] However, neither Nesbitt nor Molitor '637, alone or in combination, describes even *one* complete golf ball comprising a core, an inner cover layer consisting of an ionomer or blend of ionomers, and a polyurethane outer cover layer, let alone any hardness measurement of such a ball. To fill the obvious gap in the prior art, Acushnet argued that the hardness measurements required by the asserted Sullivan I claims were simply inherent in the disclosure of the Nesbitt reference along with its incorporation of the Molitor '637 reference.

### B.    The "Test Balls"

In 2007, the parties filed cross-motions for summary judgment on various issues. [D.I. 200-03, 205, 213-217.] In support of its arguments regarding anticipation and obviousness, Acushnet submitted expert testimony by Dr. Robert Statz and Dr. William MacKnight. Dr. Statz offered opinions regarding anticipation and obviousness, basing his opinions regarding the hardness limitations of the asserted claims in part on certain golf balls for which Dr. MacKnight claimed to have "personally directed the preparation and testing" (herein referred to as the "Test Balls"). [D.I. 217 Ex. 30 at 2.] Dr. Statz did not explain how the Test Balls were made or tested, however, beyond pointing to Dr. MacKnight. [D.I. 352 Ex. 1.]

Each of the Test Balls is a three-piece solid-core ball in which the various core, inner cover layer, and outer cover layer compositions were allegedly "based on" formulations disclosed in prior art patents. A chart in Dr. MacKnight's report describes which components he claimed to have taken from which prior art references to create each of the Test Balls, and what results he claimed to have obtained when testing the hardness of the balls:

| Ball # | Core | Inner Cover Layer | Outer Cover Layer | Shore D |
|--------|------|-------------------|-------------------|---------|
| BALL_1 | Nesbitt 193 | Nesbitt 193 | Molitor 637 | 62.0 |
| BALL_2 | Nesbitt 193 | Nesbitt 193 | Wu 673 | 56.0 |
| BALL_3 | Nesbitt 193 | Nesbitt 193 | Molitor 751 | 50.1[1] |
| BALL_4 | Nesbitt 193 | Molitor 637 | Molitor 637 | 61.0 |
| BALL_5 | Nesbitt 193 | Molitor 637 | Wu 673 | 55.6 |
| BALL_6 | Nesbitt 193 | Molitor 637 | Molitor 751 | 49.6 |
| BALL_7 | Proudfit 187 | Proudfit 187 | Molitor 637 | 59.4 |
| BALL_8 | Proudfit 187 | Proudfit 187 | Wu 673 | 56.8 |
| BALL_9 | Proudfit 187 | Proudfit 187 | Molitor 751 | 51.2 |

[D.I. 217 Ex. 30 at 11, ¶ 33 (emphases added).]  All of these balls were excluded for use as part of Acushnet's obviousness defense by this Court in a ruling affirmed by the Federal Circuit. *See* 576 F.3d at 1342.  The only issue remaining to be addressed is whether test balls BALL_1 and BALL_4 can be used as part of Acushnet's anticipation defense—*i.e.*, the balls that allegedly combine Nesbitt with Molitor '637.

Dr. MacKnight's expert report stated that BALL_1 used "the Nesbitt 193 core material" for a core with a "diameter of 1.495 inches"; used "the Nesbitt 193 inner cover layer material" for an inner cover layer "whose thickness is 0.035 inches"; and used "the Molitor 637 outer cover layer material" for an outer cover layer "of 0.0575 inches." [*Id.* at 7, ¶ 17.]  Dr. MacKnight wrote that these thicknesses were "consistent with the description in Nesbitt 193." [*Id.*]  Similarly, Dr. MacKnight wrote that BALL_4 used "the Nesbitt 193 core material," "the Molitor 637 inner cover material," and "the Molitor 637 outer cover layer material," with each layer being of the same thickness as in BALL_1. [*Id.* at 8, ¶ 20.]

6

1.   **The Actual Cores Used in BALL_1 and BALL_4 Are Not Disclosed in Either Nesbitt or Molitor '637**

However, despite Dr. MacKnight's repeated references to a "Nesbitt 193 core material," the cores used in BALL_1 and BALL_4 are *not* in fact based on any disclosure from the Nesbitt patent. Nor could they have been, because, as Dr. MacKnight's report admitted, "Nesbitt 193 does not set forth any core composition." [*Id.* at 3, ¶ 8.] Instead, Dr. MacKnight conceded that what he referred to as the "Nesbitt 193 core material" was actually a material "based on the core composition set forth in the *Sullivan patents* [*i.e.*, the patents-in-suit]."[3] [*Id.* (emphasis added)]

Moreover, Dr. MacKnight also admitted that a change was made to the core composition by leaving out one of the ingredients—Papi 94—allegedly "because of the difficulty of obtaining the substance and the fact that it is a dangerous substance to work with." [*Id.*] However, a simple Internet search for the term "Papi 94" using the Google™ search engine immediately directs one to a specification sheet for Papi 94 readily available from Dow Plastics, a subsidiary of Dow Chemical. [*See* http://automotive.dow.com/products/papi/94.htm (last visited Nov. 22, 2009).] As for the claim that Papi 94 (an isocyanate) is dangerous to work with, Acushnet in fact used a different isocyanate when making the outer cover layer material for other Test Balls. [D.I. 217 Ex. 30 at 6, ¶ 14 (cover layer material contains "MDI prepolymer"); *id.* at 11, ¶ 33 (used for BALL_2, BALL_5, and BALL_8).] Acushnet has also disclosed, in its own Hebert '172 patent, that similar allegedly "dangerous" prepolymeric diisocyanates, such as toluene diisocyanate (TDI), are in fact conventionally used in forming materials

---

[3]   Dr. MacKnight's explanation for this misleading terminology was that "the Sullivan patents describe balls using this core composition as 'representative of the [Nesbitt] '193 patent' and as 'the prior art ball of the [Nesbitt] '193 patent.'" [D.I. 217 Ex. 30 at 3, ¶ 8]. Acushnet has more recently also tried to justify its selection by pointing to yet another source, a European Spalding patent. [D.I. 516 at 19 (citing GB 2 278 609 A).] Of course, at issue here with regard to anticipation is what *Nesbitt* disclosed as of 1995 – not what may have been possibly explained in other references.

for golf ball layers.  Halkowski Decl.[4] Ex. 1 (U.S. Patent 5,885,172) at CW 300667.

Acushnet, apparently, just did not want to use Papi 94 in the cores.

Acushnet's avoidance of Papi 94 is curious, given that this material helps bind materials together to improve the internal strength of the bound materials and because it helps maintain the integrity of a golf ball's core by acting as a "moisture scavenger".  *See* Halkowski Decl. Ex. 2 (U.S. Patent 5,820,489), at 8:23-28 (Sullivan and Nesbitt patent describing role of Papi 94 in a golf ball core in context of invention where various compounds are combined to form a relatively soft core and a hard cover); *see also* Ex. 3 (U.S. Patent 5,932,038), at 3:38-46.  It is widely recognized, including by Acushnet itself in one of its patent applications, that water tends to infiltrate and degrade the core of a golf ball:

> A known drawback of solid cores, such as those based on polybutadiene(s) crosslinked with peroxide and/or zinc diacrylate, is their undesirable sensitivity to and absorption of *water vapor and moisture*, which reduces core resiliency and *degrades other ball properties*, such as compression, initial velocity, and coefficient of restitution.

Halkowski Decl. Ex. 4 (U.S. Appl. 20040048688) ¶ 4:4-10 (emphasis added).  Therefore, deletion of Papi 94 from the formula for the cores described in the MacKnight Report, in addition to being at odds with the recipe that Acushnet was purportedly attempting to replicate, also resulted in cores that were not as well-bonded and that were more susceptible to degradation due to absorption of water vapor and moisture during and after formation of the golf ball cores.  Acushnet has provided no legitimate explanation for why it decided to stray from the core recipe it purported to follow.

---

[4]   Citations to the "Halkowski Decl." are to the Declaration of Thomas L. Halkowski, filed concurrently with this brief.

### 2. The Actual Outer Cover Layers of BALL_1 and BALL_4 Contradict the Teaching of Molitor '637

Similarly, despite Dr. MacKnight's description of the outer cover layers of BALL_1 and BALL_4 as being made from "the Molitor 637 outer cover layer material," the outer cover layers of these Test Balls in fact contradict the teaching of Molitor '637.

The Molitor '637 patent is focused upon the creation of a "foamed" or "cellular" cover layer on a golf ball.[5] It was the "foamable compositions" of Molitor '637 which the Federal Circuit found to have been incorporated by reference into Nesbitt. 576 F.3d at 1347. This foaming effect is typically achieved by using a chemical "blowing agent" to introduce tiny pockets of air into the polymer as it cures. [*See* Molitor '637 patent col. 3:19-22.] Central to Molitor's teaching is that the foamed cover layer must be thick enough to achieve a "functional" degree of foaming:

> Generally, it could be said that the cover thickness should not decrease to a point beyond which functional foaming is impossible. While full parameters of the cover thickness have not been explored, it generally appears as though <u>functional foaming cannot be achieved, when the cover is injection molded onto the center, if the cover thickness decreases below 0.060"</u>.

[*Id.* col. 5:1-7 (emphasis added).] As Dr. MacKnight explained in his deposition, the purpose of setting a minimum thickness was to ensure that the gas bubbles would remain trapped in the cover material:

Q:   Why might a blowing agent not be effective at creating a foamed cover if that cover is less than 60 mils thick?

A.   Well, the foaming process is dependent upon trapping bubbles of gas within the material. And we've all seen this in, for example, even the foam of the soda that you have: its bubbles of gas come out.
Now, the only difference here is that instead of a liquid, this sets up into a solid, but it's got the bubbles of gas trapped into it.
That's the foam of the cells, if you like.

---

[5]   As Dr. MacKnight acknowledged in his deposition, every embodiment disclosed in Molitor '637 includes a foamed cover. [D.I. 283 Ex. 2 at 68:3-14.]

> **Now, if the material gets very thin, it may be that these bubbles can escape at the very, very low thickness of the material during the processing, and therefore there are few bubbles left in and not enough to be significant, perhaps.**

[D.I. 283 Ex. 2 at 70:14-71:7 (emphasis added).]

Despite Molitor's teaching that the cover must be foamed, and that "functional" foaming cannot be achieved if the cover layer is less than 0.060 inches thick when injection molded, Acushnet injection molded the outer cover layer of BALL_1 and BALL_4 to a thickness of only 0.0575 inches . [D.I. 217 Ex. 30 ¶¶ 17, 20.] When asked whether the cover layers Acushnet made "based on" Molitor '637 were, in fact, foamed covers, Dr. MacKnight could not confirm that they were:

> Q.   Do you know whether the cover layers made from the Molitor '637 composition in your test golf balls did in fact have a cellular foamed structure?
> A.   No.
> Q.   Did you do any testing to ascertain whether or not those covers were in fact foamed?
> A.   No.
> Q.   Did you consider making any verification that they were foamed?
> A.   No.

[D.I. 283 Ex. 2 at 71:16-72:1.]

In fact, Dr. MacKnight could not confirm or verify *any* properties of the Test Balls. Despite having represented in materials that were filed with the Court that he "personally directed the preparation and testing of such golf balls," [D.I. 283 Ex. 1 at 2] *Dr. MacKnight admitted at deposition that he had virtually nothing to do with the design, manufacture, or testing of the Test Balls.* In particular, Dr. MacKnight did not select the materials and the thicknesses for the balls [D.I. 283 Ex. 2, MacKnight Depo. Tr. at 53:4-12, 73:21:74-8]; did not supervise the making of the balls [*Id.* at 20:16-22:4, 30:22-31:8]; made no effort to verify that the balls conformed to the specifications selected for them [D.I. 283 Ex.2 at 23:19-24:4]; did not personally measure the hardnesses of any of the

10

balls described in his report [*Id.* at 84:8-13]; and never even saw one of the batches of balls Acushnet fabricated and sent out for hardness testing.  [*Id.* at 89:19-90:5.]  *Rather, the Test Balls were conceived and created by Acushnet's employees under the direction of its attorneys.*  [D.I. 283, Ex. 4, ¶¶ 3-5, 8.]

## C.   *Daubert*, Summary Judgment, and Trial

Callaway Golf, after learning the true pedigree of the Test Balls, filed a *Daubert* motion to exclude them and any expert testimony regarding them.  [D.I. 282.]  On November 20, 2007, the Court granted Callaway Golf's motion, writing that Dr. MacKnight's "'expert report' reflects no personal knowledge of any material aspect of the subject matter and cannot be used to confer any indicia of trustworthiness to the test results," and therefore "to the extent that the reliability of the test results derives from Dr. MacKnight's voucher, such evidence is excluded."  [D.I. 346 at 2.]

On the same day, the Court also ruled on the parties' cross-motions for summary judgment.  [D.I. 347-48.]  Regarding incorporation by reference, the Court held that "Nesbitt does not describe the use of polyurethane or blends of ionomer resins in Molitor '637 with sufficient particularity to effectuate an incorporation by reference of those features," while "the asserted [Sullivan I] claims require both limitations." [D.I. 347 at 13.]  Regarding the Test Balls, the Court held that "defendant's hybrid balls do not represent any embodiment of any prior art reference," and cannot demonstrate that balls made according to the teachings of any single reference *inherently* possess the on-the-ball hardness required by the asserted Sullivan I claims.  [*Id.* at 16.]  Thus, the Court granted Callaway Golf's motion for summary judgment of no anticipation, and denied Acushnet's motions in relevant part. [D.I. 348.]

In December of 2007, after Acushnet stipulated to infringement [D.I. 367] and the Court bifurcated damages from liability [D.I. 349], the Court held a trial on validity. [D.I. 423-32.]  During trial, Acushnet again sought to introduce the Test Balls into

11

evidence, arguing that Callaway Golf's cross-examination of Jeff Dalton (Acushnet's Vice-President of Intellectual-Property) had "raised an issue of fact that implicates the test golf balls"—namely, whether the hardness limitations of the asserted claims were inherent in the prior art. [D.I. 427 (Trial Tr. Day 4 at 747:10-19).]

The Court explained that the Test Balls were still inadmissible, however, for two reasons. First, the Court explained that it was "the lawyers," not Acushnet's experts, who "took the teachings that the lawyers choose to from the prior art to make the [test] balls," and thus there was no proper foundation for the balls or any expert testimony regarding them. [*Id.* at 751:12-14; *see also id.* at 755:4-7 ("really, it was the lawyers who created this whole process"); *id.* at 754:1-4 ("if there's nothing in the record that specifically explains the process, that gets rid of this testimony in the first instance").] Second, the Court explained, the Test Balls carried a "danger of undue prejudice *even if [Acushnet's] argument carries weight* in terms of the hardness" [*Id.* at 749:3-13 (emphasis added)], as the production of "a physical object that combines the prior art" would "give[] Acushnet's arguments on obviousness more weight than they deserve." [*Id.*; *see also id.* at 754:9-12 ("*created* prior art has a danger of outweighing what was really in the art at the time") (emphasis added)] Thus, the Court maintained its prior decision to exclude the Test Balls. [*Id.* at 757:8-16.]

At the conclusion of the trial, the Court submitted the case to the Jury along with a multi-part general verdict form. [D.I. 398; D.I. 492 at 21.] The Jury found for Callaway Golf on eight of the nine asserted claims, including all six independent claims, but found for Acushnet on one dependent claim. [D.I. 398.] The Court then entered Judgment in accordance with the Jury's verdict [D.I. 404], and in November of 2008, after post-trial briefing, the Court denied Acushnet's motion for post-trial relief and granted Callaway Golf's motion for a permanent injunction. [D.I. 493-94.]

12

### D.      Appeal and Remand

Acushnet appealed to the Federal Circuit [D.I. 495], arguing that it was entitled to JMOL of obviousness on all nine asserted claims.  Halkowski Decl. Ex. 5 (Acushnet Appeal Brief).  Acushnet also argued that the Court had erred by construing the claims to require on-the-ball hardness; that the inconsistency in the Jury's verdict entitled Acushnet to a new trial; that the Court erred by excluding the Test Balls; that the Court erred by excluding argument concerning pending reexaminations of the Sullivan I patents; and that the Nesbitt patent incorporates Molitor '637 by reference and anticipates the asserted claims.  [*Id.*]

The Federal Circuit issued its opinion on August 14, 2009, affirming-in-part, reversing-in-part, and remanding the case to this Court.  *See Callaway Golf Co.*, 576 F.3d at 1331.  With respect to Acushnet's primary focus—the merits of its obviousness defense—the Federal Circuit affirmed this Court's denial of the JMOL motion filed by Acushnet, "agree[ing] with the district court that, when viewed in the light most favorable to the verdict, the jury could have reasonably concluded that Acushnet failed to prove invalidity due to obviousness."  *Id.* at 1339.  The Federal Circuit also affirmed this Court's claim construction decision and its evidentiary rulings regarding exclusion of the Test Balls (with respect to obviousness), expert testimony regarding the test balls, and pending reexaminations.  *See id.* at 1337-38, 1341-43.  In particular, with regard to the Test Balls, the Federal Circuit wrote:

> The introduction of evidence concerning the test balls ran a substantial risk of leading the jury towards the inappropriate use of hindsight and towards unduly weighting Acushnet's arguments concerning motivation to combine the prior art; the likely outcome, as the district court perceived it, was the jury understanding Acushnet's argument concerning the combination of prior art as "[w]e did it, here it is, anyone can do this." Trial Tr. 749:8-9.

13

*Callaway Golf Co.*, 576 F.3d at 1342.  The Federal Circuit similarly affirmed this Court's *Daubert* ruling, writing that "we find no error in the district court's ruling" excluding expert testimony on the basis that "MacKnight had not had sufficient involvement in the preparation and testing of the balls to vouch for their reliability." *Id.* at 1347.

The Federal Circuit also reversed this Court's decisions in two respects: first, holding that the inconsistency in the Jury's verdict required "a new trial on obviousness" (*id.* at 1345); and second, holding that "Nesbitt incorporates the entire list of foamable compounds ('a number of foamable compositions') disclosed by Molitor '637 as appropriate materials for use in golf ball cover layers, including polyurethane and mixtures of ionomer resins." *Id.* at 1347.  However, the Federal Circuit did *not* decide the ultimate question of anticipation, and instead remanded for "further proceedings on that issue." *Id.* at 1348.

Finally, the Federal Circuit addressed the Test Balls that Acushnet alleges are "based on" the Nesbitt and Molitor '637 patents.[6]  Having held that Nesbitt does incorporate foamed materials in Molitor '637, such as polyurethane, the Federal Circuit wrote that these Test Balls could no longer be excluded with respect to anticipation solely on the ground that they "did not embody any single item" of prior art. *Id.* at 1347.  Because Nesbitt and the incorporated section of Molitor '637 must now be treated as a single reference, the Federal Circuit explained, "motivation to combine [separate references] is not an issue" in the context of anticipation. *Id.*; *see also id.* (recognizing that the risk of undue prejudice "concerning motivation to combine [separate references] and obviousness" is "inapplicable to Acushnet's anticipation argument").

However, the Federal Circuit did *not* hold that the Test Balls *are* admissible with respect to anticipation.  Rather, the court held only that "the testimony of Jeff Dalton (who supervised preparation of the balls) and of an employee of the testing laboratory ....

---

[6]   These are BALL_1 and BALL_4, as discussed above.

*may* be sufficient to authenticate the balls, and support the admission into evidence of *balls designed to replicate Nesbitt* on the issue of anticipation." *Id.* (emphases added). Thus, the Federal Circuit did not decide whether Acushnet could lay a proper foundation for the Test Balls, or whether any of the Test Balls were in fact "designed to replicate Nesbitt"—*i.e.*, whether the balls have sufficient probative value in the first place. Nor did the Federal Circuit address any other objections to the Test Balls in the context of anticipation—as none of these objections was ripe before the court's remand—such as the risk of unfair prejudice that would result from admitting golf balls that do not represent any single embodiment from the Nesbitt/Molitor '637 reference, and that were not made under the direction of one of ordinary skill but instead were made by Acushnet's lawyers based on their hindsight "picking, choosing, and combining" of various unrelated disclosures within the reference.

## V.     ARGUMENT

### A.     Legal Standards

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." In the context of anticipation, this Court has previously recognized that an alleged "recreation" of an object described in a written prior art reference is not probative of anticipation when it does not scrupulously conform to the description the reference provides. *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 393 (D. Del. 2002). This is because anticipation does not allow for substitutions or changes to the allegedly anticipatory disclosure. Rather, to anticipate a patent claim, a prior art reference "must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements '*arranged as in the claim.*'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (emphasis added) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)).

15

In other words, to anticipate, a reference "must clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without *any* need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1083 (Fed. Cir. 2008) (quoting *In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972)) (emphasis in original).  Where an alleged "recreation" of a prior art reference is not faithful to the reference, or is made by such "picking, choosing, and combining," it is not probative of anticipation.

Further, Federal Rule of Evidence 403 provides that even relevant evidence may be deemed inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Relying on Rule 403, the Federal Circuit has held that "[d]emonstrative evidence such as [a] model [of a prior art reference] may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."  *Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc.*, 112 F.3d 1137, 1145-46 (Fed. Cir. 1997).

Finally, the Federal Circuit has held that a party who to seeks to prove a technical point—here, the inherency of a given property in a prior art reference—must offer reliable expert testimony on the point, and cannot merely rely on attorney argument.  *See Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (discussing conception) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony.").  Expert testimony is not reliable unless the proponent establishes that is it based upon the application of reliable principles and methods to sufficient facts or data.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 n.10 (1993).  And a party

16

who seeks to introduce expert testimony at trial must first comply with the expert discovery provisions of the Federal Rules of Civil Procedure, including by disclosing "the identity of any witnesses it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A).

### B.   The Test Balls Are Not Probative of Nesbitt's Disclosure

Here, the Test Balls should be excluded under Rule 402 because they are not faithful reproductions of the Nesbitt/Molitor '637 reference. First, it is beyond dispute that neither the Nesbitt patent nor the Molitor '637 patent describes any particular embodiment—*i.e.*, any single, complete golf ball of definite parameters—comprising the three layers, materials, and properties called for by the asserted Sullivan I claims. All of the complete golf balls discussed in Nesbitt have outer cover layers made from *ionomers*, not polyurethane as required by the asserted claims. *See* Nesbitt '193 patent at col. 2:42-49; col. 3:26-44; col. 4:18-6:27 (thirteen claims to golf balls, each comprising an ionomer outer cover layer). And all of the complete golf balls discussed in Molitor '637 are of a two-piece construction, not the three-piece construction required by the asserted claims. *See* Molitor '637 patent at col. 4:14-48; col. 10:8-19; 14:54-19:60 (twenty-one example golf balls, each of a two-piece construction). Yet, the Test Balls are three-piece balls with ionomer inner cover layers and polyurethane outer cover layers.

Second, not even the *individual layers* of the Test Balls are faithful to the disclosure of Nesbitt/Molitor '637. Acushnet claims that BALL_1 and BALL_4 are comprised of materials it has labeled the "Nesbitt 193 core material," the "Molitor 637 outer cover layer," and either the "Nesbitt 193 inner cover layer material" or the "Molitor 637 inner cover layer material"—but the facts simply do not support Acushnet's labels. The "Nesbitt 193 core material" is not disclosed *anywhere* in Nesbitt, but is instead based on a core composition disclosed in the background section of the asserted Sullivan I patents. [D.I. 217 Ex. 30 at 3, ¶ 8 (Dr. MacKnight acknowledging that "Nesbitt 193 does

not set forth any core composition.").] Regardless of whether Acushnet may attempt now to belatedly introduce expert testimony (it cannot) and/or argue that the a core composition was disclosed in some other reference before being disclosed in the Sullivan I patents, and regardless of Sullivan's discussion of a core composition in the patents-in-suit, any such core composition is irrelevant to the question of anticipation. The issue of anticipation concerns the actual disclosure contained within the Nesbitt/Molitor '637 reference *itself*. *See Net MoneyIN*, 545 F.3d at 1369 (anticipation concerns what is "within the four corners of the document"). By relying on the patents-in-suit, or other sources, rather than the actual content of Nesbitt/Molitor '637 for a core composition, Acushnet seeks to stand the anticipation inquiry on its head.

Moreover, even if Nesbitt had disclosed the core composition later disclosed by Sullivan, Acushnet's "Nesbitt 193 core material" would still fail the scrutiny of Rule 402, because Acushnet left out one of the ingredients. [D.I. 217 Ex. 30 at 3, ¶ 8.] Dr. MacKnight wrote that he omitted this ingredient—Papi 94—"because of the difficulty of obtaining the substance and the fact that it is a dangerous substance to work with." [*Id.*] But Dr. MacKnight has no personal knowledge of the process by which the Test Balls were made [D.I. 346 at 2], and whether or not his explanation has any basis in fact, it does not excuse deviating from what was purportedly taught by Nesbitt. *See Wesley Jessen Corp.*, 209 F. Supp. 2d at 373, 393 (D. Del. 2002) (discounting alleged "samples" of prior art prepared by alleged infringer's expert where expert "substituted certain constituents in making them, including DMA," even though expert "explained that he picked DMA . . . because he had it available in his laboratory"). Moreover, Papi 94 is in fact not difficult to obtain nor particularly dangerous when compared to other materials commonly used in the construction of golf balls. *See* Section IV.B.1, *supra*. Indeed, Acushnet's decision to remove Papi 94 from the core recipe may in fact have resulted in

18

golf balls with cores that are not as well-bonded and that are more susceptible to the degradation caused by absorption of water. *Id.*

Acushnet's "Molitor 637 outer cover layer," used for BALL_1 and BALL_4, is similarly irrelevant to the question of anticipation. While Acushnet allegedly used a *material* disclosed in Table 10 of the Molitor '637 patent [D.I. 217 Ex. 30 at 5, ¶ 13], Acushnet chose a *thickness* that is outside the bounds of, and contradicts the teaching of, the Molitor patent. Molitor '637 teaches that its injection molded cover layers must be at least .060" thick so as to achieve "functional foaming," but the outer cover layers of BALL_1 and BALL_4 (which likewise were injection molded) are only 0.0575 inches thick, and there is no evidence that these cover layers are in fact foamed as taught by Molitor '637. [*Compare* D.I. 203 Ex. 2 (Molitor '637 patent) at col. 18:33-47 (making clear that the polyurethane cover disclosed by Table 10 of the Molitor '637 patent is a foamed cover, as the resulting ball is a "foam covered ball") *with* D.I. 217 Ex. 30 ¶¶ 17, 20 (Dr. MacKnight's report does not say whether the outer cover layer of BALL_1 and BALL_4, allegedly based on Table 10 of Molitor '637, is foamed); D.I. 283 Ex. 2 at 71:16-72:1 (Dr. MacKnight did not know at deposition); D.I. 283 Ex. 4 ¶ 5 (Declaration of Jeffrey L. Dalton does not specify construction beyond Dr. MacKnight's report); Halkowski Decl. Ex. 6 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇] Thus, Acushnet's attorneys simply chose to use the polyurethane cover material from Molitor '637, then contradicted the teaching of that reference that such covers must be at least .060" thick, and instead used the thickness dimension that Nesbitt taught for use with ionomer cover materials.

Because Acushnet deviated from and supplemented the teachings of Nesbitt/Molitor '637 when creating BALL_1 and BALL_4, these balls cannot be said to "replicate" Nesbitt/Molitor '637. Thus, regardless of their hardness, they do not meet the Federal Circuit's criteria for balls that conceivably could be allowed into evidence on the

19

issue of anticipation. *See Callaway Golf Co.*, 576 F.3d at 1347 (discussing possibility of admitting balls "designed to replicate Nesbitt").

Thus, on anticipation, the Test Balls are simply inadmissible under Rule 402. They cannot serve to show the hardness inherent in balls made according to Nesbitt/Molitor '637, because they are *not* balls made according to Nesbitt/Molitor '637. Indeed, the Federal Circuit has made clear that Nesbitt does not blindly incorporate everything from Molitor '637; rather, Nesbitt merely incorporates foamable materials as taught in Molitor '637. *See* 576 F.3d. at 1347 ("Nesbitt incorporates the entire list of foamable compounds ('a number of foamable compositions') disclosed by Molitor '637...."). Yet, Acushnet's "Test Balls" contradict Molitor '637 teachings regarding creation of a foamed polyurethane cover. Thus, rather than present faithful recreations of Nesbitt (including incorporation of the foamable materials as taught in Molitor '637), Acushnet instead has created balls made according to the hindsight substitutions of Acushnet's attorneys, in light of the patents-in-suit, which contradict Molitor on the very point – foaming – for which the Federal Circuit found incorporation by reference. *See Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348-49 (Fed. Cir. 2004) (affirming exclusion of experiments offered to prove inherent anticipation because experiments deviated from teaching of reference as a result of "impermissible hindsight") ("Dr. Siegel, by benefit of reading the [patent-in-suit] prior to conducting his experiments, knew that he needed to prepare a highly pure amorphous form of CA and used a mixture of methods, some even from the synthesis of crystalline compounds, to meet this goal."); *Wessley Jessen*, 209 F. Supp. 2d at 393 (discounting "samples" of prior art, offered as proof of anticipation, because expert made "substitutions . . . with the benefit of hindsight," and thus the properties of the "samples" "would not be recognized by persons

20

of ordinary skill as 'necessarily present in the [allegedly anticipatory prior art reference]'").

### C.     The Test Balls Are Highly And Unfairly Prejudicial

Even if the Court deems the Test Balls to have some probative value on anticipation, that probative value would be far outweighed by the danger of unfair prejudice and misleading the Jury, and thus the Test Balls ought to be excluded under Rule 403.

### 1.     The Test Balls' Undue Prejudice Regarding Obviousness Outweighs Any Probative Value Regarding Anticipation

First, the Jury in the upcoming retrial will hear Acushnet's anticipation and obviousness defenses together.  The Federal Circuit has already affirmed that this Court got it right when it ruled that introduction of the Test Balls would be impermissible with respect to obviousness because it would run "a substantial risk of leading the jury towards the inappropriate use of hindsight and towards unduly weighting Acushnet's arguments concerning motivation to combine the prior art." *Callaway Golf Co.*, 576 F.3d at 1342. This risk is not present *per se* in the context of anticipation, *see id.*, but it would be unrealistic to expect the Jury to compartmentalize the evidence at trial in such a way as to consider the Test Balls when deciding anticipation, but ignore them when deciding the intimately related issue of obviousness, especially since the two references upon which Acushnet relies for anticipation are two of the same references that it has also relied upon when arguing obviousness.  Indeed, an even more basic error (addressing the validity of a dependent claim when the jury already had found the independent claim valid) is the reason the obviousness issue has to be tried all over again.

Given that even the Judges of the Federal Circuit have disagreed on the boundary between anticipation and obviousness—*compare, e.g., Cohesive Technologies, Inc. v. Waters Corp.*, 543 F.3d 1351 at 1364 (Fed. Cir. 2008) (Linn, J.) ("it is not necessarily

true that a verdict of nonobviousness forecloses anticipation"); *with Cohesive,* 543 F.3d at 1376 (Mayer, J., dissenting) ("Although a claimed invention can be obvious but not anticipated, it 'cannot have been anticipated and not have been obvious.'")—it is safe to conclude that a limiting instruction in this retrial would do more to *confuse* the Jury than to aid its deliberations.

The problem is compounded even further here because, while Acushnet technically has an anticipation defense due to the Federal Circuit's finding of incorporation by reference, the defense still walks, talks, and sounds like obviousness, because it requires the jury—as it required Acushnet's lawyers—to pick and choose pieces of two references and combine them in a way they were never before combined to make an actual golf ball.  If the Court were to admit the Test Ball evidence, it would be nearly impossible for a lay jury to understand that the evidence can be used only for that sort of combination (albeit one Acushnet will argue is an "anticipation" based on a "single" reference), and not for any of the other, two-reference combinations on which Acushnet will likely seek to rely for its obviousness defense as it did before.[7]  Because a limiting instruction simply would not be effective, the Court should preclude use of the Test balls under Rule 403.  *See* Fed. R. Evid. 403, Advisory Committee Notes, 1972 Proposed Rules ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.").

### 2.   The Test Balls Are Unduly Prejudicial Regarding Anticipation

Second, even putting obviousness to the side, the Test Balls are highly prejudicial on the question of anticipation.  To assess anticipation, the Jury must decide not only whether the Nesbitt/Molitor '637 reference would have disclosed every limitation of the

---

[7]   *See, e.g.*, D.I. 417 at 35-36 (Acushnet discussing the Test Balls in the context of obviousness combinations).

22

asserted claims to a person of skill in the art before Sullivan's invention, but also whether Nesbitt/Molitor '637 discloses these limitations "as arranged in the claims," *Connell*, 722 F.2d at 1548, "without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of Nesbitt/Molitor '637." *Arkley*, 455 F.2d at 587.

As discussed above, even the combination of Nesbitt/Molitor '637 does not describe *any* single, complete golf ball embodiment with the limitations of the asserted claims. At most, the combined references disclose the concept of a three-piece golf ball with two ionomer covers along with the existence of many different cover layer materials which could possibly be picked, chosen, and combined to form many different golf balls. As Callaway Golf will demonstrate at trial, this is insufficient for anticipation. *See, e.g.*, *Net MoneyIN*, 545 F.3d at 1371 (reversing finding of anticipation) (explaining that while single prior art reference disclosed each of five "links" required by the asserted claim, it did so by disclosing two separate protocols, "[n]either of [which] contains all five links arranged or combined in the same way as claimed in the [asserted] patent," and thus district court was wrong to find anticipation).

In other words, at most Nesbitt/Molitor '637 discloses a broad *genus* of golf balls, containing hundreds if not thousands of possible species, which as a matter of law is insufficient to anticipate. *See, e.g.*, *Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991, 999-1000 (Fed. Cir. 2006) ("It is well established that the disclosure of a genus in the prior art is not necessarily a disclosure of every species that is a member of that genus."). Molitor '637 notes a laundry list of potential cover layer materials, including a wide range of virtually any foamable material that could conceivably be used to make golf ball covers, falling into at least nine broad categories, as well as "[m]ixtures" of these materials. [D.I. 203 Ex. 2 (Molitor '637 patent) at col. 3:30-35, 5:21-55); D.I. 246 (Declaration of Dr. William M. Risen) ¶ 7 ("The Molitor patent discloses literally

23

hundreds of different possible compositions of materials.").] If Nesbitt is deemed to incorporate foamed polyurethane from Molitor '637, then Nesbitt must also incorporate each of these materials and mixtures as a possibility *for each of the **two** cover layers* of the Nesbitt ball. *See Callaway Golf Co.*, 576 F.3d at 1347 ("no basis to differentiate between incorporation of … [various] compositions in the list"). This incorporation yields a broad genus containing at least many hundred species of three-piece golf balls,[8] without anywhere disclosing the particular species later invented by Sullivan. This is not sufficient for anticipation. *See, e.g.*, *In re Ruschig*, 343 F.2 965, 974-975 (C.C.P.A. 1965) (no anticipation of species by three prior art patents as their genera included "some 130," "some 156," and "a possible 259" compounds, respectively); *Atofina*, 441 F.3d at 999-1000 (Fed. Cir. 2006) (no anticipation where prior art genus covered "a temperature range of over 100 degrees"); *Impax Laboratories, Inc. v. Aventis Pharmaceuticals Inc.*, 468 F.3d 1366, 1383 (Fed. Cir. 2006) (no anticipation where prior art genus included "large number of compounds").

Given the breadth of this disclosure and the absence of any focus on the particular combination of materials invented by Sullivan, it would be unduly prejudicial to admit the Test Balls into evidence. Acushnet may argue that it proffers the Test Balls solely to establish the hardness of particular combinations, rather than to prove that those combinations are in fact disclosed as specific examples by the Nesbitt/Molitor '637 reference. But that would be putting the cart before the horse. The hardness of the Test Balls is not relevant unless Acushnet *first* proves that Nesbitt/Molitor '637 discloses the

---

[8]  Without even considering core composition or the choice of particular materials from within nine broad categories, the disclosure of Nesbitt/Molitor '637 includes at least eighteen possible types of inner cover layer (individual materials or mixtures from each of the nine categories) and at least the same eighteen possible types of outer cover layer, yielding at least 324 permutations. Considering the range of particular materials contained within each of the nine broad categories, and the range of possible mixtures of these materials, the true number of species in this genus is undoubtedly in the thousands or greater.

Test Balls—*i.e.*, the complete golf balls, not just the materials constituting them—which, as explained above, Acushnet cannot do.  The Jury would undoubtedly be misled, however, and see the Test Balls as proof of more than hardness.  In other words, just as this Court and the Federal Circuit recognized the likelihood that a jury would see the Test Balls as a "[w]e did it, here it is, anyone can do this" proof of obviousness, so too would the Jury in this retrial see the Test Balls as a shortcut around the requirement that it consider whether Nesbitt/Molitor '637 discloses certain limitations "as arranged in the claims."  Therefore, just as this Court excluded the Test Balls under Rule 403 with regard to obviousness, the Court should exclude the Test Balls with respect to anticipation as well.

Moreover, Acushnet's burden is not merely to prove that balls made according to Nesbitt/Molitor '637 *may* have the hardness required by Sullivan, but that they *must necessarily* have that hardness.  *See, e.g., Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." (quoting *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999))); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) ("Inherency, however, may not be established by probabilities or possibilities").  Given the wide range of materials and thicknesses discussed in Nesbitt/Molitor '637, Acushnet cannot prove on the basis of only two Test Balls that a ball made from the materials disclosed in Nesbitt/Molitor '637 (or even from ionomers and polyurethanes in particular) *must* have the hardness required by the Sullivan I claims.  But the Jury would likely be confused and misled by the Test Balls into wrongly assuming that they represent the universe of relevant balls for purposes of inherency.  Because this risk of confusion substantially outweighs the alleged probative value of the Test Balls, they ought to be excluded.

25

**D.      None of Acushnet's Witnesses Can Relate the Test Balls to Nesbitt**

Finally, the Court should exclude the Test Balls because Acushnet cannot offer adequate expert testimony as a foundation for them.  The Federal Circuit wrote that "the testimony of Jeff Dalton (who supervised preparation of the balls) and of an employee of the testing laboratory . . . . *may* be sufficient to *authenticate* the balls," *Callaway Golf Co.*, 576 F.3d at 1347 (emphases added).  But merely authenticating the Test Balls would not be sufficient to introduce them into evidence, because the balls are not actual prior art, and instead are only relevant (if at all, which Callaway Golf does not concede) as support for an *expert opinion* regarding the prior art and the alleged inherency of the Shore D hardness values required by the asserted claims.[9]

In other words, Acushnet may not simply authenticate the balls via fact witnesses and then *argue* directly that they are proof of inherency.  *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1284 (Fed. Cir.2005) ("Attorney argument is no substitute for evidence."); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995).  Rather, to admit the Test Balls, Acushnet would have to show that it can link them to the issues at trial through reliable expert testimony.  *See Invitrogen*, 429 F.3d at 1068 ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."); *In re Brimonidine Patent Litigation*, --- F. Supp. 2d ----, 2009 WL 3490861 at *13 (D. Del. Oct. 23, 2009) (finding that defendants failed to establish invalidity because, *inter alia*, "there is no expert testimony in the record that explains how these references would be viewed from the perspective of a person of ordinary skill in the art"); *Joyal Products, Inc. v. Johnson Elec. North America, Inc.*, 2008 WL 4630500 at *4 (D.N.J. Oct. 17, 2008)

---

[9]      Callaway Golf does *not* concede authenticity.  Rather, Callaway Golf reserves its right to respond, if Acushnet makes a proffer of authentication.

26

("The attorney argument in Defendants' brief cannot take the place of, for example, evidence of how one skilled in the art would perceive the referenced prior art.").

This, Acushnet cannot do. The Court has already granted Callaway Golf's motion to exclude *any* expert testimony regarding the Test Balls. [*See* D.I. 288 ("Callaway Golf respectfully moves to exclude any expert testimony regarding Acushnet's 'hybrid' golf ball creations . . . and any expert opinions derived from Acushnet's fabrication and testing of those balls."); D.I. 346 ("Plaintiff's motion to exclude expert testimony regarding certain 'hybrid golf balls' (D.I. 288) is granted . . . ."). The Federal Circuit did not disturb this ruling on appeal, and indeed affirmed it. *See Callaway Golf Co.*, 576 F.3d at 1374 ("we find no error in the district court's ruling" regarding expert testimony).

Thus, the mandate rule now prevents Acushnet from offering any expert testimony regarding the Test Balls, whether from Dr. MacKnight, Dr. Statz, or anyone else. *See, e.g.*, *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("Unless remanded by [the Federal Circuit], all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication."). Regardless of whether or not Mr. Dalton may authenticate the Test Balls (as a matter of *fact*) as balls he witnessed being made for this litigation, neither Mr. Dalton nor the testing lab employee nor anyone else may opine that the Test Balls represent Nesbitt/Molitor '637—much less that the balls provide competent evidence that the missing hardness limitations from Nesbitt/Molitor '637 are inherently present.[10] In the absence of such expert testimony, the Test Balls have no bearing on this

---

[10]   Acushnet may not offer expert testimony from Mr. Dalton or the testing lab employee for the additional reason that Acushnet never identified them as expert witnesses under Fed. R. Civ. P. 26(a)(2)(A) with respect to any aspect of the "Test Balls", let alone submitted expert reports in their names. To the extent that Mr. Dalton or any other Acushnet employee or attorney was responsible for the content of Dr. MacKnight's or Dr. Statz's reports, this is yet another reason to exclude such

case, and ought to be excluded.  *See, e.g.*, *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 2008 WL 4614660 at *6-7 (N.D. Cal. Oct. 16, 2008) (sustaining objection to certain survey evidence where proponent of surveys "relies only on attorney argument and does not provide expert testimony to support its calculations or its analysis").

## VI.    CONCLUSION

For the foregoing reasons, Callaway Golf respectfully asks that the Court grant its motion *in limine* to exclude from the upcoming trial in this case any reference to Acushnet's Test Balls, including any evidence, testimony, opinion or argument regarding them.

Dated:  December 11, 2009          FISH & RICHARDSON P.C.


By:  /s/ *Thomas L.  Halkowski*
          Thomas L. Halkowski (#4099)
          919 N. Market Street, Suite 1100
          P.O. Box 1114
          Wilmington, DE 19899-1114
          Tel:  (302) 652-5070
          Fax:  (302) 652-0607

          Frank E. Scherkenbach
          225 Franklin Street
          Boston, MA 02110-2804
          Tel:  (617) 542-5070
          Fax:  (617) 542-8906

          Attorneys for Plaintiff
          CALLAWAY GOLF COMPANY

---

testimony as unreliable.  *See Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2009, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on December 11, 2009, the attached document was electronically mailed to the following person(s):

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorneys for Defendant
ACUSHNET COMPANY

Alan M. Grimaldi, Esq.
Joseph P. Lavelle, Esq.
Kenneth Donnelly, Esq.
Brian A. Rosenthal, Esq.
Clint Brannon, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

Attorneys for Defendant
ACUSHNET COMPANY

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski