IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>        Defendant. | C. A. No. 06-91 (SLR)<br><br>**REDACTED** |

## CALLAWAY GOLF'S MOTION *IN LIMINE* TO PRECLUDE ANY REFERENCE TO ACUSHNET'S NEW PRO V1 GOLF BALLS

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED: December 11, 2009

## TABLE OF CONTENTS

**PAGE(S)**

I. Introduction ................................................................................................. 1

II. Statement of Facts ....................................................................................... 2

III. Statement of Law ........................................................................................ 3

IV. Argument .................................................................................................... 3

    A. The New ProV1 Should Be Excluded Because Acushnet Did Not Disclose It During Discovery ............................................................. 3

    B. Allowing Acushnet to Present New Evidence During the Retrial Would Be Unduly Prejudicial to Callaway Golf ......................................... 4

    C. The Redesigned ProV1 is Not Relevant To the Issues to be Tried ............ 5

        1. Callaway Golf's Market Share Analysis Makes the Presence or Absence of Non-Infringing Alternatives Irrelevant to Lost Profits ......... 5

        2. The New ProV1 Was Not Available At The Time of Infringement and is Therefore Irrelevant to Damages and Validity Issues .................. 7

        3. The New ProV1 Is Irrelevant Because it Infringes Other Callaway Golf Patents ............................................................................................ 9

V. Conclusion ................................................................................................ 11

## TABLE OF AUTHORITIES

**CASES**                         **PAGE(S)**

*Callaway Golf Co. v. Acushnet Co.*,
   Case No. 09-CV-131-SLR-MPT (D. Del. March 3, 2009) ...................................... 2, 10

*Cordis Corp. v. Boston Sci. Corp.*,
   2005 U.S. Dist. LEXIS 10749 (D. Del. June 3, 2005) ............................................... 8

*Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*,
   430 F. Supp. 2d 346 (D. Del. 2006) .......................................................................... 6

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
   166 F. Supp. 2d 1008 (D. Del. 2001) (Sleet, J.) ....................................................... 8

*Izume Products Co. v. Koninklijke Philips Electronics N.V.*,
   315 F. Supp. 2d 589 (D. Del. 2004) .......................................................................... 7

*Pall Corp. v. Micron Separations, Inc.*,
   66 F.3d 1211 (Fed. Cir. 1995) .................................................................................. 10

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir.1978) ............................................................................. 6, 7, 8

*Riles v. Shell Exploration & Production*,
   298 F.3d 1302 (Fed. Cir. 2002) .................................................................................. 8

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc) ................................................................. 5, 7

*State Industries, Inc. v. Mor-Flo Industries, Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989) .......................................................................... 6, 8, 10

*Wang Labs. v. Toshiba Corp.*,
   993 F.2d 858 (Fed. Cir. 1993) .................................................................................... 8

I. **INTRODUCTION**

After this Court entered an injunction against any further sales of Acushnet's infringing ProV1 golf balls, Acushnet released a new, redesigned version of the ProV1 that allegedly has a composition that is not covered by the four patents-in-suit. Callaway Golf thereafter brought a second lawsuit in this District because these new ProV1 balls infringe other patents invented by Mike Sullivan and owned by Callaway Golf. Acushnet has indicated that it may attempt to introduce evidence, expert opinion, or attorney argument regarding these redesigned ProV1 golf balls. Such evidence would be irrelevant and unduly prejudicial for multiple reasons.

First, Acushnet never disclosed the composition of the redesigned ProV1 during discovery. Acushnet had years to work on such a redesign and, in fact, identified a different composition in its expert damages report to support an argument that a non-infringing alternative existed. Yet, Acushnet chose to wait until after the Court issued its decision on the injunction to release a redesigned ProV1. Although Callaway Golf understands that Acushnet will now try to argue that the redesigned ProV1 is allegedly relevant to damages and secondary considerations of non-obviousness, no technical expert or damages expert has provided any opinions on the redesigned ProV1, or explained how it relates to any issues in this case. It is simply too late for the parties to conduct new fact and expert discovery with the record long ago closed and a retrial in this matter scheduled just a few months away. It would be unduly prejudicial to Callaway Golf if Acushnet were allowed to hand-pick evidence concerning the new balls to use at trial without Callaway Golf having the benefit of discovery to vet and then rebut Acushnet's claims.

Second, even if the Court were to put aside the fact that this evidence is untimely, the redesigned ProV1 is irrelevant to both damages and secondary considerations of non-obviousness because it is not an available non-infringing alternative – Callaway Golf has brought

litigation in this district alleging that it infringes other Sullivan patents. Further, the new ProV1 is irrelevant to lost profits because Callaway Golf has asserted a "market share" theory of liability, and the existence or absence of non-infringing alternatives is irrelevant under this theory. Finally, because the redesigned ProV1 balls did not exist during the period of Acushnet's infringement, they are irrelevant to any other issue in the case as well.

Because these redesigned ProV1 balls are irrelevant, and because allowing Acushnet to present new evidence, opinion and argument concerning the converted ProV1 balls would unduly prejudice Callaway Golf, we respectfully request that the Court exclude any mention of any redesign of the ProV1 balls as irrelevant under F.R.E. 402 and unduly prejudicial under F.R.E. 403.

## II. STATEMENT OF FACTS

Fact discovery in this case closed on April 30, 2007, and expert discovery closed June 30, 2007. On the eve of trial, December 3, 2007, Defendant Acushnet Company ("Acushnet") stipulated that its ProV1 line of golf balls infringed the asserted patents. (Docket No. 367). On December 14, 2007, the jury entered a verdict that all but one of the asserted claims were valid. On November 10, 2008, this Court entered an injunction against any further sales of Acushnet's infringing ProV1 golf balls. (Docket No. 493). On December 23, 2008, the Federal Circuit denied Acushnet's request to stay entry of the Permanent Injunction.

In order to avoid this Court's injunction, Acushnet released an allegedly "new" redesigned version of its ProV1 golf balls in late 2008. Plaintiff Callaway Golf Company ("Callaway Golf") subsequently filed a new suit against Acushnet because these redesigned ProV1 balls infringe two other Sullivan patents assigned to Callaway Golf. *See Callaway Golf Co. v. Acushnet Co.*, Case No. 09-CV-131-SLR-MPT (D. Del. March 3, 2009). The suit concerning the redesigned Pro V1 balls is now pending in this Court.

## III. STATEMENT OF LAW

Federal Rule of Evidence 402 provides that, "[e]vidence which is not relevant is not admissible." Federal Rule of Evidence 403 states that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## IV. ARGUMENT

### A. The New ProV1 Should Be Excluded Because Acushnet Did Not Disclose It During Discovery

Any evidence related to Acushnet's redesigned ProV1 golf balls should be excluded because Acushnet never disclosed this ball during discovery, and never discussed its composition or any alleged implications of the ball on the issues in this case in any expert report. Acushnet instead chose to wait until after trial to redesign the ProV1, rolling the dice on litigation rather than attempting to avoid patents it admits it infringed. Having lost this gamble, Acushnet cannot introduce new evidence, expert opinion, and argument now, long after the close of discovery.

While Acushnet failed to create and disclose the redesigned ball during discovery, it actually did point to different alleged non-infringing alternatives during discovery – including a possible new formulation for the Pro V1 golf balls. Specifically, in July of 2007, Acushnet's damages expert William Kerr served a rebuttal expert report. In preparing his report, Mr. Kerr undertook a substantial effort to identify allegedly non-infringing alternatives, ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████ ███████████████████████████

---

[1] All exhibits are attached to the Declaration of Thomas L. Halkowski, filed herewith.

3

███████████████████████████████████████

███████████████████████████████████████

██ Nowhere in Mr. Kerr's report, however, does he refer to the composition Acushnet actually chose for the redesigned Pro V1, which Acushnet now seeks to introduce as evidence relevant to the damages owed to Callaway Golf. Similarly, Acushnet's technical expert, Dr. Robert Statz, did not disclose any alleged redesign that matches the new ProV1 golf ball, much less present any opinion on whether that composition had any relevance to the issue of obviousness.[2]

Because Acushnet chose not to put at issue the redesigned ProV1 it ultimately adopted, and in particular because it did not discuss the redesigned ProV1 golf balls in any expert report, it should not be allowed to introduce new evidence, expert opinion, or argument now, long after the close of discovery.

### B. Allowing Acushnet to Present New Evidence During the Retrial Would Be Unduly Prejudicial to Callaway Golf

The parties have not conducted fact or expert discovery on the new ProV1. If this Court allows Acushnet to present selected evidence about the ball at trial, Acushnet will essentially be free to choose what it wants to present, and Callaway Golf will have no meaningful way to rigorously test, respond to, or rebut that evidence. The prejudice is obvious. Allowing Acushnet to proceed in this way would also undermine the Court's own scheduling orders, which set forth specific deadlines for disclosing evidence. For reasons similar to those prompting the Court's exclusion of Acushnet's new test-ball evidence, it is simply too late for Acushnet to now introduce new evidence, expert opinion, and contentions concerning the redesigned formulation for the Pro V1 golf balls long after the close of discovery and after a remand from the Federal Circuit. [*See* Ex. B (Dec. 9, 2009 Hearing Tr.) at 11:13-23.] Acushnet could have tried to

---

[2] In fact, Dr. Statz did not refer to any of Mr. Kerr's design-around options in his expert report.

redesign the ProV1 long ago, before discovery closed,[3] but it chose to wait until almost a year after a jury found the patents in suit valid, and after this Court rejected its attacks on that verdict, to introduce a redesigned formulation – even though it knew the ProV1 infringed, and even though it knew of the high burden to prove patent invalidity. And the formulation it ultimately chose for the new ProV1 differed from the one on which Mr. Kerr relied in his report. Acushnet should not be rewarded for this delay and switch, and the Federal Rules do not allow for trial by ambush. Because Callaway Golf had no opportunity to examine this evidence during discovery and to further vet it via expert reports and depositions, arguing over such evidence in front of the jury for the first time without any discovery would be confusing, distracting and unduly prejudicial. Thus, Callaway Golf respectfully requests that the Court exclude any evidence, argument, or opinion regarding the new ProV1 from the upcoming trial.

### C.  The Redesigned ProV1 is Not Relevant To the Issues to be Tried

In addition to being untimely, evidence of the new ProV1 is also irrelevant to the issues the jury will have to decide in the upcoming trial.

#### 1.  Callaway Golf's Market Share Analysis Makes the Presence or Absence of Non-Infringing Alternatives Irrelevant to Lost Profits

First, the new ProV1 is not relevant to lost profits because Callaway Golf has adopted a "market share" theory of liability, which makes the presence or absence of non-infringing alternatives irrelevant. The United States Patent Code, 35 U.S.C. § 284, entitles a patent holder to damages adequate to compensate for infringement. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). This includes, where appropriate, an award of lost profits or lost sales to the patentee. *Id.*

---

[3] ███████████████████████████████████████████

5

A common test for lost profits is laid out in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir.1978), which requires a showing of four factors: (1) demand for the patented product, (2) the absence of non-infringing substitutes; (3) that the patentee has the necessary manufacturing and marketing capacity, and (4) the profits the patentee would have made. The Federal Circuit has said, however, that *Panduit* is not the exclusive test for lost profits, and an alternative approach was affirmed by the Federal Circuit in *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573 (Fed. Cir. 1989). In *Mor-Flo*, the Federal Circuit explained that *Panduit* is most useful in the context of a two competitor market, where a patent owner is seeking to recover profits lost through every sale made by an infringer. *Id.* at 1578. In some cases, however, markets will have multiple participants, some of whom may be infringing and some of whom may be offering non-infringing products. *Id.* In those cases, the Court can essentially ignore whether or not the other products in the market are non-infringing alternatives by awarding lost profits based on the patentee's share of the market, under the theory that the patentee is entitled to recover its market share from the infringer. *Id.* The Federal Circuit explained that "in these circumstances the presence or absence of acceptable non-infringing alternatives does not matter," because the market share for any non-infringing alternatives is subtracted out of the lost profits award.[4] *Id.*

This Court has examined market-share lost profits theories in prior cases, and each time it has held that the presence or absence of non-infringing alternatives is irrelevant to the damages analysis under this approach. *See Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 361 (D. Del. 2006) ("damages for lost profits may be awarded, **even where there**

---

[4] This approach also subtracts out sales of competitors which may be infringing, which the Federal Circuit noted may actually give a windfall to the alleged infringer. *Id.*

*are non-infringing alternatives*, based on a patentee's previous share of the market"); *Izume Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 614 (D. Del. 2004) ("The Federal Circuit has recognized, however, that the two-supplier market is not always in play and that the factors in the *Panduit* factors are not always applicable. Therefore, the Federal Circuit has held that awarding lost profits based on market share is proper if the patentee ***shows an established market share in lieu of the absence of acceptable noninfringing alternatives*** and, at the same time, meets the three other *Panduit* factors").

Here, Callaway Golf's damages expert, Brian Napper, has calculated lost profits based on Callaway Golf's market share. Because Mr. Napper used a market share approach, the presence or absence of non-infringing substitutes does not matter – the only relevant question is the market that existed at the time of Acushnet's infringement. The presence or absence of Acushnet's redesigned Pro V1 golf ball, released after it removed the infringing ProV1 from the market, is irrelevant to this market share analysis.

### 2. The New ProV1 Was Not Available At The Time of Infringement and is Therefore Irrelevant to Damages and Validity Issues

Acushnet's new ProV1 should also be excluded as being irrelevant because it was not available at the time of Acushnet's infringement, and is therefore irrelevant to both damages and obviousness. As discussed above, in a lost profits analysis under the *Panduit* test, non-infringing alternatives are typically considered when there is merely a two-player market to determine whether "but for" the infringement a patentee would have made the sales of the infringer, or whether customers would have instead purchased the non-infringing alternative. *See Rite-Hite*, 56 F.3d at 1548 (noting that establishing that there are no non-infringing alternatives "tends to prove that the patentee would not have lost the sales to a non-infringing third party rather than to the infringer"). But the *Panduit* case is clear that the proper time period for considering the

availability of non-infringing alternatives is the period of infringement, and switching to a non-infringing product after the period of infringement does not establish the presence of a non-infringing substitute during the period of infringement. *See* 575 F.2d at 1162 ("[defendant's] 'switching' occurred years after the date on which the determination of available substitutes must focus, i.e., the date of first infringement").

In *Mor-Flo* the Federal Circuit similarly rejected an attempt to rely on a non-infringing substitute that was not available during the period of infringement. *See* 883 F.2d at 1579. And this Court has also held that "[t]o be an acceptable non-infringing substitute ... the product or process must have been available or on the market at the time of infringement. The ability to make a noninfringing alternative alone is not enough to render such a substitute 'available' for lost profits purposes." *Cordis Corp. v. Boston Sci. Corp.*, 2005 U.S. Dist. LEXIS 10749 at *8 (D. Del. June 3, 2005); *see also Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1029 (D. Del. 2001) (Sleet, J.) ("the mere fact of switching to a non-infringing product years after the period of infringement does not establish the presence of a non-infringing substitute during the period of infringement"). The redesigned ProV1 is therefore irrelevant to the lost profits analysis in this case.

Similarly, with respect to the reasonable royalty analysis, the focus must be on the hypothetical negotiation at the time infringement began. *See, e.g., Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) ("The key element in setting a reasonable royalty is the necessity for return to the date when the infringement began"). The Federal Circuit has repeatedly cautioned that "a reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred, and not be an after-the-fact assessment." *See Riles v. Shell Exploration & Production*, 298 F.3d 1302, 1313 (Fed. Cir.

2002). In this case, both experts agree that the hypothetical negotiation would have taken place in April/May 2001 between Spalding (the patent owner at the time) and Acushnet (the infringer). [See Ex. A, ¶ 22; Ex. C at 37.] The redesigned ProV1 was not released until 2008 – over seven years after the hypothetical negotiation. Nobody at the time of the hypothetical negotiation would have known about the redesigned ProV1. Indeed, as discussed above, Acushnet's own expert never discussed the formulation for the redesigned Pro V1 – ████████████████████████████████████████████████████████████████ but that is not what Acushnet adopted, even after the fact. Because the redesigned ProV1 was not an available option ready for Acushnet to use during the relevant time period for the hypothetical negotiation, the redesigned ProV1 is irrelevant to the reasonable royalty analysis.

Finally, with respect to non-obviousness, Callaway Golf understands that Acushnet will argue that the redesigned Pro V1 balls are somehow relevant to the issue of commercial success. However, given that obviousness is assessed at the time of the invention, which here is November 1995, it is difficult to imagine the relevancy of a redesign first made in 2008. Moreover, no discovery has been provided with regard to whether the redesigned ball has continued to be as successful as its predecessor and, if so, why. By introducing the ball more than a year after the discovery cutoff in the case, Acushnet foreclosed any meaningful discovery into this issue, which would have to be considered to assess any argument Acushnet might now want to make about commercial success. For these additional reasons, any evidence, opinion, or argument about the new ProV1 should be excluded from trial.

### 3. The New ProV1 Is Irrelevant Because it Infringes Other Callaway Golf Patents

Finally, the new ProV1 balls should also be excluded from this suit because they are covered by other Callaway Golf patents asserted in co-pending litigation before this Court. In

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995), the Federal Circuit dealt with an appeal from an award of lost profits that involved analysis of non-infringing alternatives. There, the district court awarded lost profits to the patent owner, but limited the award because it found that there were non-infringing alternatives available to the defendant in the market for the entire damages period. *Id.* at 1222. The patent owner appealed, arguing that the "substitutes" were not non-infringing because there was a separate suit against the third party that manufactured the allegedly "non-infringing" substitutes. *Id.* The Federal Circuit agreed, holding that while the patent owner's litigation with the third party manufacturer of the "substitutes" was pending, the substitute was not a "non-infringing alternative" available to the defendant. *Id.* at 1222-23. Similarly, in *Mor-Flo* the plaintiff owned two patents (one asserted, one not), 883 F.2d at 1576, and the Federal Circuit noted that the plaintiff would be entitled to damages even with competitors in the marketplace if they infringed "one or the other" of the plaintiff's patents. 883 F.2d at 1578.

The old, infringing ProV1 golf balls admittedly infringe the four patents-in-suit. The new redesigned ProV1 infringes two other Callaway Golf patents *from the same patent family*. Callaway Golf has filed suit in this Court against the redesigned Pro V1 golf balls. *See Callaway Golf Co. v. Acushnet Co.*, Case No. 09-CV-131-SLR-MPT (D. Del. March 3, 2009). It would be inappropriate to allow Acushnet to introduce evidence of the redesigned ProV1 as an available non-infringing alternative because it infringes other Callaway Golf patents and is the subject of another lawsuit. The redesigned Pro V1 golf balls are not "available" alternatives, and are covered by the same family of patents as the old ProV1 balls. Thus, in addition to the reasons set forth above, the redesigned ProV1 balls are not an available non-infringing alternative because

10

they are the subject of pending litigation and should also be excluded from this trial for that additional reason.

## V. CONCLUSION

Because Acushnet's new ProV1 golf balls are irrelevant to any issues that will be before the jury in this case, and because any arguable relevance is outweighed by a risk of misleading the jury or wasting time and resources, Callaway Golf respectfully requests that the Court exclude any reference to these new ProV1 golf balls under Federal Rules of Evidence 402 and 403.

Dated: December 11, 2009

FISH & RICHARDSON P.C.

By: /s/ *Thomas L. Halkowski*
Thomas L. Halkowski (#4099)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

**ATTORNEYS FOR PLAINTIFF
CALLAWAY GOLF COMPANY**

## RULE 7.1.1

After consultation, counsel has been advised that Acushnet opposes the granting of the foregoing motion.

/s/ *Thomas L. Halkowski*
Thomas L. Halkwoski

# CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2009, that CALLAWAY GOLF'S MOTION *IN LIMINE* TO PRECLUDE ANY REFERENCE AT TRIAL TO ACUSHNET'S NEW PROV1 GOLF BALLS was electronically filed with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel and that the foregoing document was electronically served on Acushnet's counsel:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>Potter Anderson & Corroon LLP<br>1313 North Market Street, 6th Floor<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899-0951 | Attorneys for Defendant<br>ACUSHNET COMPANY |
| Alan M. Grimaldi<br>Joseph P. Lavelle<br>Brian A. Rosenthal<br>Howrey LLP - DC<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004 | Attorneys for Defendant<br>ACUSHNET COMPANY |

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski