# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ACUSHNET'S REVISED MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF ANTICIPATION OF U.S. PATENT NOS. 6,210,293; 6,506,130; 6,503,156; AND 6,595,873

<div style="margin-left:40%">

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON
LLP Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

</div>

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  (202) 783-0800

Dated:  December 11, 2009
Public Version Dated: December 18, 2009
947011 / 30030

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDINGS ................................................1

II.  SUMMARY OF ARGUMENT ...........................................................2

III.  FACTUAL BACKGROUND................................................................3

    A.  The Patents-in-Suit...........................................................3

    B.  The Prior Art .................................................................4

    C.  The Nesbitt Patent...........................................................5

IV.  APPLICABLE LEGAL STANDARDS................................................6

    A.  Summary Judgment Of Invalidity Is Appropriate When There are No Genuine Issues of Fact .................................................6

    B.  Anticipation.................................................................7

V.  THE ASSERTED CLAIMS ARE ANTICIPATED BY NESBITT ....................8

    A.  Nesbitt Discloses a Golf Ball that Uses the Blended Ionomer and Polyurethane Cover Materials of Molitor '637............................8

    B.  Nesbitt, incorporating Molitor '637, satisfies every element of the asserted claims ...........................................................10

        1.  Nesbitt discloses a golf ball comprising a "core," "inner cover layer," and "outer cover layer" .....................................10

        2.  Nesbitt discloses that the inner cover layer is a "blend of two or more low acid ionomer resins" ...................................11

        3.  Nesbitt discloses that the inner cover layer has a "Shore D hardness of 60 or more" ...........................................12

        4.  Nesbitt discloses that the inner cover layer has a "thickness of 0.100 to 0.010 inches" ...........................................12

        5.  Nesbitt discloses that the outer cover layer has a "thickness of 0.010 to 0.070 inches" ...........................................12

        6.  Nesbitt discloses a polyurethane outer cover layer with a "Shore D hardness of 64 or less" .....................................13

C.    Molitor's Disclosure of Multiple Cover Materials Does Not Defeat
      Anticipation...................................................................................................17

VI.    CONCLUSION ...................................................................................................19

## TABLE OF AUTHORITIES

### CASES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003), *rev'd on other grounds*,
   457 F.3d 1293 (Fed. Cir. 2006) ...................................................................19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................6

*Atlas Powder Co. v. IRECO Inc.*,
   190 F.3d 1342 (Fed. Cir. 1999) ...............................................................8

*Callaway Golf Co. v. Acushnet Co.*,
   576 F.3d 1331 (Fed. Cir. 2009) ...............................................................1

*Hewlett Packard Co. v. Mustek System*,
   340 F.3d 1314 (Fed. Cir. 2003) ...............................................................7

*In re Gleave*,
   560 F.3d 1331 (Fed. Cir. 2009) ...........................................................7, 19

*In re Petering*,
   301 F.2d 676 (C.C.P.A. 1962) ...............................................................7

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2004) ...............................................................6

*Leggett & Platt, Inc. v. Vutek, Inc.*,
   537 F.3d 1349 (Fed. Cir. 2008) ...............................................................7

*Nike Inc. v. Wolverine World Wide, Inc.*,
   43 F.3d 644 (Fed. Cir. 1994) ...............................................................6

*Perricone v. Medicis Pharmaceutical Corp.*,
   432 F.3d 1368 (Fed. Cir. 2005) ................................................... passim

*Schering Corp. v. Geneva Pharmaceuticals*,
   339 F.3d 1373 (Fed. Cir. 2003) ...............................................................7

*SmithKline Beecham Corp. v. Apotex Corp.*,
   403 F.3d 1331 (Fed. Cir. 2005) ...........................................................6, 7

*Toro Co. v. Deere & Co.*,
   355 F.3d 1313 (Fed. Cir. 2004) ...............................................................8

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
   631 F. Supp. 2d 1010 (N. D. Ill. 2009)..........................................................................18, 19

## FEDERAL STATUTES

35 U.S.C. § 282.......................................................................................................................6

Fed. R. Civ. P. 56(c) ...............................................................................................................6

Defendant Acushnet Company ("Acushnet") files this Memorandum in Support of Its Motion for Summary Judgment of Anticipation of U.S. Patent Nos. 6,210,293 ("the '293 patent") (Ex. 1); 6,506,130 ("the '130 patent") (Ex. 2); 6,503,156 ("the '156 patent") (Ex. 3); and 6,595,873 ("the '873 patent") (Ex. 4) (collectively "the patents-in-suit"), which all list as their named inventor Michael J. Sullivan.

The Federal Circuit held on appeal in this case that U.S. Patent No. 4,431,193 ("Nesbitt") (Ex. 5) incorporates U.S. Patent No. 4,274,637 ("Molitor '637") (Ex. 6) by reference.[1] In light of that ruling, there are no genuine issues of material fact that preclude summary judgment of anticipation of the patents-in-suit by the Nesbitt patent. Since the sole stated reason for the Court's denial of summary judgment on that basis was reversed by the Federal Circuit, Acushnet files this motion so the Court can revisit the issue of anticipation and avoid an unnecessary trial.

## I.   NATURE AND STAGE OF PROCEEDINGS

Callaway filed this lawsuit on February 9, 2006. On November 20, 2007, the Court granted Callaway's motion for summary judgment of no anticipation, and denied Acushnet's summary judgment motion of invalidity based on anticipation and obviousness. D.I. 347 & 348. Among Acushnet's bases for its invalidity motion was that the asserted claims were anticipated by Nesbitt, incorporating Molitor '637 by reference. The Court rejected that argument on the basis that Nesbitt did not incorporate Molitor '637 by reference. D.I. 347 at 6-13. On the same day, the Court issued its claim construction order adopting Callaway's "on the ball" claim construction for measuring Shore D hardness. D.I. 345.

The remaining issue of obviousness was tried to a jury beginning on December 7, 2007. On December 14, the jury returned a verdict holding dependent claim 5 of the '293 patent invalid

---

[1] Ex. 7, August 14, 2009 Opinion *Callaway Golf Co. v. Acushnet Co.,* 576 F.3d 1331, 1346-1347 (Fed. Cir. 2009) ("Fed. Cir. Opinion").

as obvious, but holding the other eight asserted claims, including independent claim 4 of the '293 patent, not invalid.[2] Acushnet appealed. On August 14, 2009, the Federal Circuit affirmed the Court's "on the ball" claim construction, reversed the Court's finding of no incorporation by reference, remanded for a determination of anticipation, and ordered a new trial on obviousness due to the inconsistent verdicts. Fed. Cir. Opinion at 1348.

## II.    SUMMARY OF ARGUMENT

The Nesbitt patent discloses a three-piece golf ball composed of a solid core, a hard ionomer inner cover layer, and a soft ionomer outer cover layer. The Federal Circuit found that Nesbitt incorporates Molitor's disclosure of alternative cover layers that can be used in the inner and outer cover layers of the Nesbitt ball. Molitor discloses a blend of stiff, hard low-acid ionomers that satisfies the inner cover layer limitations of the patents-in-suit. Molitor also discloses a soft polyurethane that satisfies the outer cover limitations of the patents-in-suit.[3] Acushnet has presented uncontroverted evidence that when the ionomer/polyurethane ball taught by Nesbitt and Molitor is made, the "on the ball" hardness of the outer cover is under 64, as required by the claims. There is no contrary evidence.

Moreover, Nesbitt explicitly teaches that the outer cover layer of the disclosed ball should have the Shore hardness of a balata golf ball, which was known to be in the low 50s on the Shore D scale when measured "on the ball." Thus, Nesbitt teaches a golf ball that has a polyurethane outer cover with an "on the ball" Shore D hardness below 64.

---

[2] The asserted claims in this case are claims 1, 4, and 5 of the '293 patent, claims 1-3 of the '156 patent, claim 5 of the '130 patent, and claims 1 and 3 of the '873 patent (the "Asserted Claims").

As a result, all of the limitations of the asserted claims are disclosed by Nesbitt.[4] Consequently, the Court should grant Acushnet's motion for summary judgment of anticipation.

## III.   FACTUAL BACKGROUND

### A.   The Patents-in-Suit

The patents-in-suit relate to solid construction multi-layer balls that use polyurethane as the outer cover material.[5] The patents have virtually identical specifications, and all claim essentially the same basic subject matter: a multi-layer golf ball having a hard ionomer[6] inner cover layer and a soft polyurethane outer cover layer. The inner cover layer is either a low acid ionomer or a blend of low-acid ionomers, having a Shore D hardness of 60 or greater.[7] Ex. 1, '293 Patent, col. 3:49-53. The outer cover layer is made from a polyurethane and has a Shore D hardness of 64 or less. *Id.*, claim 1. The Court construed these "Shore D hardness" limitations to refer to measurements taken on the surface of the ball. D.I. 345 at 1-3. The claims also include

[5] Callaway has stipulated that the effective priority date of the '293, '156, and '873 patent is November 9, 1995, and that the effective priority date of the '130 patent is October 13, 1995. D.I. 334, Exhibit 1 ¶¶ 16-17.

[6] Golf ball manufacturers have been making covers made of a polymer materials called "ionomers" for decades. *See* Ex. 11 at AC0100932. Ionomers are thermoplastic polymers that are utilized in a wide variety of applications including plastic packaging, football helmets, and golf ball covers. *See id.* at AC0100934. Ionomers, such as those marketed by duPont under the tradename Surlyn, are very durable and allowed a golfer to hit the ball further because they increased the ball's coefficient of restitution. *See id.* at AC0100932. Blends of ionomers have been used in golf ball covers since the late 1970s. *See, e.g.,* U.S. Patent No. 3,819,768 (Exhibit 12).

[7] Shore D hardness is a measure of the hardness of a material. The higher the Shore D number, the harder the material.

limitations directed to certain material properties of the cover layers, such as their thickness[8] or flexural modulus.[9]

### B.     The Prior Art

Historically, golf was played at the highest level with balata-covered wound golf balls. The soft balata cover of these balls deforms when struck with a golf club, and allows a skilled golfer to impart spin on the ball. Ex. 6, Molitor '637 patent, col. 2:6-8. For example, a skilled golfer can impart backspin on a golf ball to make it "stop" when it lands on the green. Ex. 36, Molitor '751, col. 1:22-25. Skilled golfers also valued balata balls for the "click" and "feel" provided by the cover. Ex. 37, Proudfit patent, col. 1:49:52. Balata is a very soft material, with a plaque hardness of around 40 Shore D. Ex. 14 at AC0131204; Ex. 39, Wu Tr. at 20:7-12. Since balata is a soft material, it yields soft covers when used as a golf ball cover material. Ex. 37, Proudfit patent, col. 1:14-16. When measured "on the ball" balata-covered balls had a Shore D hardness in the upper 40s to low 50s.[10]

---

[8] Certain asserted claims require that the outer cover layer thickness is between about 0.010 inches to about 0.070 inches and that the inner cover layer thickness is between about 0.100 inches to about 0.010 inches. *See, e.g.*, Ex. 1, '293 patent, col. 14:37-46. Some claims also require that the ball shall be at least 1.680" in diameter, which is also required by the Rules of Golf. *See* Ex. 13, at AC0100918.

[9] For example, certain asserted claims require the inner cover ionomer to have a flexural modulus between 15,000 and 70,000 psi. '293 patent, col. 7:16-19. Flexural modulus is a ratio of stress to strain when the material being tested is being flexed.

[10] *See* Ex. 15 AC0049407 (1990 Competitive Ball Report) ("all high performance products have a similar construction; balata cover ranging from 47-54 Shore D hardness"); AC0049409 (showing Titleist Tour 100 having transpolyisoprene (synthetic balata) cover with a Shore D hardness of 54); AC0049411-12 (showing Titleist 384 Tour 100 with balata cover with Shore D hardness of 53); AC0049415-416 (showing Titleist 384 LT 100 with balata cover with Shore D hardness of 47); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see also* Ex. 17, 1991 Competitive Ball Report at AC0049683-84 (showing on the ball hardness measurements for numerous balata balls ranging from 48-54 Shore D); Ex. 18 (1994 Competitive Ball Report) at AC0072912, AC0072915, AC0072916, and AC0072945 (showing numerous additional balata balls with on the ball Shore D hardness values ranging from 50-52. Ex. 19, Nesbitt Depo. Tr. at

Balata-covered balls suffered from certain drawbacks, including cost and durability. The balls were expensive to make and the soft balata covers cut easily when mishit. Ex. 37, Proudfit patent, col. 1:54-56. Thus, in the 1970s, golf ball manufacturers began to make so-called "two-piece" golf balls. Two piece balls typically had a harder, more durable cover material than balata, usually formed from a cover material made of ionomer resins, such as duPont's Surlyn resins. They also used a solid core, rather than the wound core of balata-covered balls. Ex. 5, Nesbitt, col. 1:14-26. Two-piece golf balls provided better distance and durability than wound balls, but, due to their harder covers, did not provide the same ability to spin and control the ball, and lacked the "click" and "feel" of wound balata balls. Ex. 5, Nesbitt, col. 1:26-29.

### C.    The Nesbitt Patent

The Nesbitt patent, filed in 1981 and issued in 1984 sought to create a golf ball that provided the "best of both worlds." Namely, Nesbitt invented a multi-layer golf ball comprising a) a solid core; b) a hard inner cover layer; and b) a soft outer cover layer:

> In accordance with the present invention there is provided a golf ball having a multilayer or two-ply cover construction for a solid resilient center or core wherein the multilayer cover construction involves two stage molded cover compositions over a solid center or core of resilient polymeric material wherein an increased coefficient of restitution is attained and wherein the "feel" or playing characteristics are attained similar to those derived from a balata covered golf ball.

Ex. 5, Nesbitt, col. 1:36-44. In other words, Nesbitt's construction allowed for the resilience and distance of a Surlyn-covered ball, but the feel and control of a balata-covered ball.

While Nesbitt describes the use of ionomer resins for the inner and outer cover layers, the patent incorporates the Molitor '637 patent for other "foamable compositions" suitable for use in the inner and outer cover layers. Molitor '637 discloses eight specific compositions, including a

---

121:19-122:5 (testifying that Titleist balata-covered golf balls had an on the ball Shore D hardness of 50-55).

blend of ionomers and a polyurethane composition. Ex. 6, Molitor '637 patent, col. 14:60-65; col. 18:6-12.[11]

## IV.     APPLICABLE LEGAL STANDARDS

### A.     Summary Judgment Of Invalidity Is Appropriate When There are No Genuine Issues of Fact

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). The use of summary judgment is particularly appropriate in complex patent infringement actions. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

Acushnet has the burden of proving invalidity. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004). However, when a party presents evidence establishing a prima facie invalidity case, the patentee must come forward with contrary evidence. *Id.* (citation omitted). In that instance, the patentee's evidence must create a genuine issue of material fact underlying the invalidity inquiry in order to preclude summary judgment. *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005) (affirming summary judgment of invalidity for anticipation).

---

[11] Cover materials made from blended ionomers and polyurethane were not new to the art. The use of blended ionomers in golf ball covers was described as early as 1974. *See* Ex. 12, U.S. Patent No. 3,819,768. Polyurethane golf ball covers have also been known for decades, and had been used on commercial golf balls since the 1960s. *See, e.g.,* Ex. 20, U.S. Patent No. 3,989,568 (1976); Ex. 21, U.S. Patent No. 4,442,282 (1984); Ex. 19, Nesbitt Tr. at 31:3-13; Ex. 13, at AC0100916. Acushnet's first urethane covered golf ball was the most popular golf ball on the professional tour in the 1990s. Ex. 22, 08/17/2007 Morgan Decl. at ¶¶ 22-23.

### B. Anticipation

Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline*, 403 F.3d at 1343.

A reference that discloses multiple options for a particular feature will anticipate a later application that uses one of the disclosed options. "The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) (quoting *Hewlett Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1324 n.6 (Fed. Cir. 2003); *see also Leggett & Platt, Inc. v. Vutek, Inc.*, 537 F.3d 1349, 1356 (Fed. Cir. 2008) (rejecting "the erroneous assumption that the disclosure of multiple examples renders one example less anticipatory"); *In re Gleave*, 560 F.3d 1331, 1336-37 (Fed. Cir. 2009) (rejecting the argument that a prior art reference cannot anticipate by listing an element in a long list of possibilities); *In re Petering*, 301 F.2d 676, 681 (C.C.P.A. 1962). Thus, when a list of options or permutations is disclosed in the prior art, anticipation does not turn on the number of elements in the list, but rather on whether the claimed subject matter is enabled by the prior art reference. *Perricone*, 432 F.3d at 1377-78.

Anticipation may also be proved by inherency. "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp.*, 339 F.3d at 1377. Inherent properties of materials described in the prior art can anticipate regardless of whether the

7

inherent property was known in the art. *See Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1348-49 (Fed. Cir. 1999) ("Because 'sufficient aeration' was inherent in the prior art, it is irrelevant that the prior art did not recognize the key aspect of [the] invention.... An inherent structure, composition, or function is not necessarily known."); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1321 (Fed. Cir. 2004) ("For inherent anticipation, the [prior art reference] must have sufficiently described and enabled at least one embodiment that necessarily featured or resulted in the subject matter embraced by [the claim], but neither description nor contemporaneous recognition of these necessary features or results was required.").

## V.   THE ASSERTED CLAIMS ARE ANTICIPATED BY NESBITT

The Court should find that the asserted claims are anticipated by Nesbitt. The material facts (the content of the Nesbitt and Molitor patents) are not in dispute, and the issue is ripe for summary judgment.

Copies of claim charts demonstrating that all of the limitations of the asserted claims are met by the Nesbitt reference and incorporated material from Molitor are attached hereto as Exhibits 32-35. In the discussion below, we show that all of the claimed elements of the patents-in-suit are anticipated.

### A.      Nesbitt Discloses a Golf Ball that Uses the Blended Ionomer and Polyurethane Cover Materials of Molitor '637

Nesbitt discloses a preferred embodiment that uses a hard ionomeric inner cover layer and a soft ionomeric outer cover layer. Specifically, Nesbitt teaches that the inner cover layer is made from a "hard, high modulus Surlyn resin, such as Surlyn type 1605." Ex. 5, Nesbitt, col. 3:27-29. The outer cover layer is made from a "soft, low flexural modulus resin such as Surlyn type 1855." Ex. 5, Nesbitt, col. 3:37-39.

However, Nesbitt teaches that these cover layers may be replaced by the "foamable compositions" disclosed in Molitor '637. Ex. 5, Nesbitt, col. 3:51-61 ("Reference is made to [Molitor '637] which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16 for the golf ball of this invention."). The Federal Circuit concluded that this language incorporates by reference the blended ionomer and polyurethane compositions disclosed in Molitor '637 as cover layers for the disclosed ball:

> Nesbitt incorporates the entire list of foamable compounds ("a number of foamable compositions") disclosed by Molitor '637 as appropriate materials for use in golf ball cover layers, including polyurethane and mixtures of ionomer resins. We perceive no basis to differentiate between incorporation of the ionomeric resins disclosed by Molitor '637 and the other compositions in the list, including polyurethane. Accordingly, we hold that Nesbitt incorporates by reference the potential cover layer materials described in Molitor '637, *including polyurethane and ionomer resin blends*.

Ex. 7, Fed. Cir. Opinion at 1347 (emphasis added).

Hence, Nesbitt discloses a golf ball whose cover layers can be selected from several different compositions. Molitor '637 identifies eight specific foamable compositions for use as golf ball cover layers. Specifically, Molitor discloses:

a) a blend of hard, stiff ionomers (Surlyn 1605 and 1557) in Tables 2-5;

b) two different blends of polypropylenes in Tables 6 and 11;

c) a polyethylene composition in Tables 7 and 12;

d) a polyolefin composition in Table 8;

e) a polyester composition in Table 9;

f) the thermoplastic polyurethane Estane 58133 in Table 10; and

g) a thermoset polyurethane in Example 18.

*See* Ex. 6, Molitor '637, col. 14:55-19:60.

Accordingly, Nesbitt teaches a golf ball with an inner and an outer cover layer, where both the inner and outer cover layers may be selected from among the compositions listed above. One of the golf balls taught by this disclosure is a golf ball comprising:

a)   a solid core;

b)   an inner cover layer comprised of the blend of ionomers described in Tables 2-5 of Molitor '637; and

c)   an outer cover layer comprised of the thermoplastic polyurethane Estane 58133 described in Table 10 of Molitor '637.

That golf ball meets every limitation of the asserted claims, and thus anticipates the claims.

### B.   Nesbitt, incorporating Molitor '637, satisfies every element of the asserted claims

The Nesbitt patent discloses all of the elements of the claims at issue.  Claim 1 of the '293 patent is exemplary and is analyzed in detail below.

### 1.   Nesbitt discloses a golf ball comprising a "core," "inner cover layer," and "outer cover layer"

Figure 2 of Nesbitt, reproduced below, shows the three-piece solid construction of the golf ball described therein.  For comparison, Figure 1 of the '293 patent is shown to the right of the Nesbitt figure:



**Nesbitt Fig. 2**          **'293 Patent Fig. 1**

Callaway admits that Nesbitt discloses a golf ball with a solid core, an inner cover layer, and an outer cover layer. D.I. 73, Callaway's Response to Acushnet's Request for Admission No. 16.

### 2. Nesbitt discloses that the inner cover layer is a "blend of two or more low acid ionomer resins"

Nesbitt discloses an inner cover layer consisting of Surlyn 1605.[12]  Nesbitt col. 2:36-38. Surlyn 1605 (now designated 8940) is unquestionably a low-acid ionomer. Ex. 1, '293 patent, col. 2, ll. 55-57. Thus, Nesbitt discloses the claimed inner cover layer comprising a single low acid ionomer resin, and meets on its face the inner cover limitation of the non-blend claims.[13]

Nesbitt also incorporates the blend of ionomers disclosed in Molitor '637 for use in the inner cover layer. Ex. 5, Nesbitt, col. 3, ll. 54-60. Molitor '637 teaches, in Tables 2-5, the blend of two ionomer resins as a cover layer: Surlyn 1605 and Surlyn 1557.[14] ███████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Nesbitt thus satisfies this limitation of claim 1 of the '293 patent.

---

[12] Callaway admits that Nesbitt discloses an inner cover made of ionomer resin. D.I. 73, Callaway's Response to Acushnet's Request for Admission No. 16.

[13] The "blend" limitation is not present in claims 4 and 5 of the '293 patent, claim 5 of the '130 patent, or claim 3 of the '873 patent.

[14] Callaway does not appear to dispute that Nesbitt teaches through reference the use of this blend of ionomers. *See* Ex. 24, Response to Office Action Dated February 27, 2007 in Reexam. Cont. No. 95/000,120 at 16 ("Nesbitt is saying to use ionomers . . . and that Molitor '637 discloses specific examples of suitable foamable ionomer resins.").

### 3. Nesbitt discloses that the inner cover layer has a "Shore D hardness of 60 or more"

There is no dispute that the inner cover layer of the Nesbitt ball has a Shore D hardness higher than 60. ████████████████████████████████████████

██████████████████████████████████████████████████

████████████ Moreover, the "on the ball" hardness of the inner cover layer is higher than the "off the ball" hardness of the materials. *See, e.g.*, Ex. 19, Nesbitt Tr. at 243:24-244:17. Thus, the inner cover layer of the ball disclosed by Nesbitt would have an "on the ball" hardness of over 60, whether a single ionomer or a blend is used.[15]

### 4. Nesbitt discloses that the inner cover layer has a "thickness of 0.100 to 0.010 inches"

Nesbitt discloses an inner cover layer of 0.020 to 0.070 inches. Ex. 5, col. 3, lines 19-23. This range is entirely encompassed by the range claimed in claim 1 of the '293 patent (0.100 to 0.010 inches), and therefore anticipates it. *See Perricone*, 432 F.3d at 1377 (finding anticipation when claimed range entirely encompasses the range found in a prior art reference).

### 5. Nesbitt discloses that the outer cover layer has a "thickness of 0.010 to 0.070 inches"

Claim 1 requires that the outer cover layer have a thickness of 0.010 to 0.070 inches. Nesbitt states that the thickness of the outer layer is 0.0575 inches (Ex. 5, col. 3, ll. 39-40), which is entirely encompassed by the claimed range. Thus, this limitation is anticipated by Nesbitt. *See Perricone*, 432 F.3d at 1377.

---

[15] Callaway's expert did not dispute that an inner cover layer made of the ionomer blend of Molitor '637 would have an "on the ball" hardness of over 60. Ex. 27, Risen Report ¶¶ 91-115.

### 6.   Nesbitt discloses a polyurethane outer cover layer with a "Shore D hardness of 64 or less"

Claim 1 requires an outer cover layer comprising a relatively soft polyurethane material. Nesbitt meets this limitation by incorporating by reference the cover materials of Molitor '637. Specifically, Nesbitt incorporates Molitor's disclosure of a cover layer formed of Estane 58133 polyurethane. Ex. 6, Molitor '637, col. 18; Ex. 7, Fed. Cir. Opinion at 1347.

Claim 1 also requires that the polyurethane of the outer cover have a Shore D hardness of 64 or less. The Court and the Federal Circuit have construed this limitation to require that Shore D hardness be measured "on the ball." This claim construction, however, is not the panacea that Callaway alleges. Callaway argues that because the prior art patents do not explicitly state "on the ball" Shore D hardness values, its patents should somehow be saved. However, every material, and every golf ball, has a Shore D hardness. It is a simple matter to measure the hardness of golf balls. Indeed, when asked how he would determine the hardness of a golf ball disclosed in the prior art, Callaway's expert Dr. Risen testified that he would "make the ball and measure it." Ex. 28, Risen Depo. Tr. 135:23-136:8. Golf ball manufacturers, including Spalding and Acushnet, and now Callaway have recorded the hardness of commercial golf balls for decades. Likewise, it is a simple matter for a person of ordinary skill in the art to make a golf ball in accordance with the teachings of a prior art patent and test the Shore D hardness of the cover layers.

Thus, it was a simple matter for Acushnet to make one of the golf balls disclosed in Nesbitt. Acushnet prepared golf balls using the core of Nesbitt, the blend of ionomers disclosed in Molitor '637 as the inner cover layer, and the Estane 58133 of Molitor '637 as the outer cover layer. Ex. 38, 08/24/07 Dalton Decl. ¶ 5; *see also* Ex. 31, MacKnight Decl. ¶ 20. Acushnet measured the Shore D hardness "on the ball" of outer cover of the resulting balls, and they had a

Shore D hardness of 61 which is well within the "64 or less" claimed in claim 1 of the '293 patent.[16]  Ex. 31, MacKnight Decl. ¶ 33; Ex. 29, PTLI Test Report at AC0131408.[17]

Callaway has offered no contrary evidence.  There is no evidence in the record that a golf ball made according to the teaching of Nesbitt and Molitor '637 could have an outer cover layer with a Shore D hardness of greater than 64.  Callaway simply argues that hardness is not an inherent property of a polymer and is difficult to predict.  *See* Ex. 27, Risen Report at 9.  Once this embodiment golf ball has been made and tested, however, we do not have to "predict" what the Shore D hardness of the outer cover would be.  It is in fact less than 64.

### a. The choice of core formulation and inner cover material have no discernable impact on the cover hardness

Callaway previously attacked Acushnet's test ball evidence on the basis that Nesbitt does not teach an explicit formulation for the core, and Nesbitt provides only a range of inner cover thicknesses.  Thus, Callaway argues that Acushnet's test ball evidence does not demonstrate the Shore D hardness that necessarily results from the teaching of Nesbitt and Molitor '637.  D.I. 244 at 15.  Callaway's argument is no more than hand-waving.  Callaway offers no factual evidence to support its notion that the choice of core material and inner cover thickness would have any meaningful impact on the measurement of the outer cover layer Shore D hardness.



[17] Similarly, when the same ball was made using the single ionomer inner cover layer as described in Nesbitt, and the polyurethane outer cover of Molitor, the outer cover layer Shore D hardness measurement was 62.  Ex. 31, MacKnight Decl. ¶¶ 17, 33; Ex. 29, PTLI Test Report at AC0131407.  Thus, that ball, disclosed by Nesbitt, also anticipates the asserted claims that do not recite a blend of ionomers.

As an initial matter, the core Acushnet used as the Nesbitt core was known in the art to be

the Nesbitt core by 1995.  GB 2 278 609 A (Exhibit 30), a U.K. patent issued to Spalding and

published in 1994, attributes the very same core formulation that Acushnet used to the Nesbitt

patent. *Id.* at 39-40 (setting forth core formulation) & 46 ("The ball comprising inner layer

formulation D and Surlyn 9020 identifies the ball in the Nesbitt 4,431,193 patent."). Thus, it was

known in the art by 1995 that the core Acushnet used was exemplary of the core of Nesbitt

patent.

In addition, the record establishes that in a multilayer golf ball such as that disclosed by

Nesbitt, the choice of core and inner cover have no meaningful effect on the hardness of the

outer cover.  For cover layer thickness in the upper end of the 0.010 to 0.070 inch range claimed

in the '293 patent, what is underneath the cover has no significant impact.  For example, Table 7

of the '293 patent shows that the choice of inner cover layer and core formulation had no effect

at all on the outer cover layer Shore D hardness for the balls reported there:

### TABLE 7

| Sample # | CORE | INNER LAYER | THICKNESS | COMP/ COR | OUTER COVER | THICKNESS | COMP (Rhiele) | COR | SHORE D | SPIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 1042 YELLOW | NONE | — | SEE BELOW | TOP GRADE | 0.055" | 61 | .800 | 68 | 7331 |
| 9 | 1042 YELLOW | NONE | — | SEE BELOW | 959/960 | 0.055" | 56 | .808 | 73 | 6516 |
| 10 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | 959/960 | 0.055" | 48 | .830 | 73 | 6258 |
| 11 | 1042 YELLOW | NONE | — | SEE BELOW | SD 90 | 0.055" | 62 | .792 | 63 | 8421 |
| 12 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | SD 90 | 0.055" | 55 | .811 | 63 | 8265 |
| 13 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | SD 90 | 0.055" | 53 | .813 | 63 | 8254 |
| 14 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | TOP GRADE | 0.055" | 51 | .819 | 68 | 7390 |
| 15 | 1042 YELLOW | NONE | — | SEE BELOW | Z-BALATA | 0.055" | 67 | .782 | 55 | 9479 |
| 16 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | Z-BALATA | 0.055" | 61 | .800 | 55 | 9026 |
| 17 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | Z-BALATA | 0.055" | 60 | .798 | 55 | 9262 |

1042 YELLOW > COMP = 72, COR = .780
SPECIAL 1.47" CORE >COMP = 67, COR = .782

Samples 15-17 above show three golf balls with the same outer cover layer, but radically

different inner cover layers and cores.  Sample 15 does not even have an inner cover layer, while

Samples 16 and 17 have two different inner cover materials.  In addition, the samples use

different core formulations.  Despite the variation of inner cover layer and core, the outer cover

15

layer Shore D hardness of all three balls remains constant at 55.[18]  The same observation is true

about the other groups of balls that have the same cover layer, but different layers underneath

(Samples 8 and 14, Samples 9-10, and Samples 11-13).  For all of these groups, the outer cover

layer Shore D hardness is unaffected by the choice of inner cover layer and core formulation.

Callaway has relied on general statements that the hardness of a golf ball cover may be

affected by what is underneath it.  That may be true for very thin cover layers.  However, for

thicker cover layers in the upper end of the range claimed in the patents-in-suit, Table 7 shows

that the layers underneath the outer cover have little or no impact on the outer cover hardness.

The general construction of balls shown in Table 7 is very similar to that of Nesbitt, with an

outer cover layer of virtually the same thickness (0.055 inches in the Table 7 balls; 0.0575 inches

in the Nesbitt ball).  Thus, the data in Table 7 shows that Callaway's theoretical argument that

the outer cover layer might be affected by what is underneath is unfounded in practice for covers

as thick as Nesbitt's.  In fact, for covers of that thickness, the choices of inner cover layer and

core have no substantial impact on the outer cover layer Shore D hardness.

Thus, Acushnet's measurements of the Nesbitt test ball, which used the core attributed to

Nesbitt and an inner cover layer thickness well within Nesbitt's disclosure, prove that the result

of following Nesbitt's teachings is a ball whose outer cover layer hardness is less than 64.

### b.  Nesbitt explicitly teaches that the outer cover layer should have the same Shore D hardness as Balata

Even apart from Acushnet's test ball evidence, the text of Nesbitt itself provides another

basis for anticipation of the outer cover Shore D hardness limitations.  Once the materials for the

cover layers are selected, Nesbitt teaches that each cover layer may be more or less foamed to

---

[18] Callaway argued, and the Court accepted, that the Shore D hardness measurements in these Tables reflect "on the ball" measurements.  D.I. 222, at 12-13; D.I. 345 at 2.

achieve the desired "soft over hard" quality of the golf ball: "The inner, intermediate or first layer 14 on the core 12 may be preferably partially or only slightly foamed to a low degree so as not to materially affect the coefficient of restitution of the material. The outer or cover layer or second layer 16 may be foamed to a greater degree than the inner, intermediate or first layer 14 as the material of the layer 16 is comparatively soft." Ex. 5, Nesbitt, col. 3:62-68. Nesbitt teaches that the outer cover, in particular, should have the same hardness as balata: "The soft Surlyn resin cover would have about the same thickness and shore hardness of a balata covered golf ball...." Ex. 5, Nesbitt, col. 3:40-42. Since balata covered golf balls have an "on the ball" Shore D hardness of approximately 47-54,[19] Nesbitt's teaching would be understood to teach that the outer cover of the Nesbitt ball should have a similar Shore D hardness.

Since Nesbitt discloses, expressly or inherently, each element of the asserted claims, and Callaway has presented no evidence that creates a genuine issue of fact, summary judgment of anticipation is appropriate.

### C.   Molitor's Disclosure of Multiple Cover Materials Does Not Defeat Anticipation

The fact that there are several different permutations of golf balls disclosed by Nesbitt and Molitor does not make any particular permutation any less anticipatory. The Federal Circuit has found anticipation in virtually identical circumstances.

One case directly on point is *Perricone*, 432 F.3d at 1376. There, the claim in question recited a composition for treating skin sunburn that included ascorbyl palmitate. *Id.* at 1376. The prior art reference in question disclosed a composition that listed fourteen options for one of the ingredients. Among those fourteen options was the claimed ingredient, ascorbyl palmitate. *Id.* Since the claimed limitation was disclosed as an option in the prior art, the Court affirmed

---

[19] *See supra* p. 4, note 10.

summary judgment of anticipation.[20]  In doing so, the Court explicitly rejected the notion that

anticipation can be defeated merely because the claimed limitation is found in a list of options,

with no particular emphasis:

> This court rejects the notion that one of these ingredients cannot anticipate
> because it appears without special emphasis in a longer list.  To the contrary, the
> disclosure is prior art to the extent of its enabling disclosure.

*Id.*  The Court also distinguished its analysis from an obviousness analysis, where disclosure of

many options does not necessarily render selection of one such option obvious.  *Id.* at 1376-77.

Other courts have followed *Perricone* to find anticipation where the claimed limitations

are found in a list of disclosed options in the prior art.  One recent district court case whose facts

are strikingly analogous is *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d

1010, 1030-31 (N. D. Ill. 2009).  There, the claim at issue was directed to a chewing gum that

included a) menthol as a flavoring agent and b) a cooling agent referred to as WS-23.  *Id.* at

1017-18.  The prior art, referred to as Shahidi, disclosed a chewing gum that listed 23 possible

flavoring agents, and incorporated another patent that disclosed two possible cooling agents.  *Id.*

at 1027.  Among the 23 flavoring agents was menthol.  *Id.*  Among the two cooling agents was

WS-23.  *Id.*  The court found the claim anticipated:

> Wrigley argues that Shahidi provides no "guidance or direction" to combine WS-
> 23 and menthol together in a chewing gum.  But the Court has found no authority
> supporting Wrigley's arguments in that respect.  An obviousness analysis requires
> some suggestion or motivation to combine prior art teachings in a way that would
> render the subject matter obvious, but an anticipation analysis requires no such
> direction or guidance.  *As long as all of the claimed elements are present in a
> prior art reference and that reference is enabling, the claim is anticipated.*

*Id.* at 1030 (internal citations omitted) (emphasis added).

---

[20] Certain of the claims at issue were found not anticipated for other reasons.  *Id.* at 1377-80.

Similarly, Callaway's argument that Nesbitt provides no particular guidance to use the blended ionomer and polyurethane materials as opposed to the other materials disclosed in Molitor '637 is inapposite. "[T]he mere fact that the elements of a claim are set forth in the prior art patent in a list along with other ingredients without any 'special emphasis' is irrelevant to an anticipation analysis.... Instead, all that is relevant is whether the prior art disclosure is enabling." *Id.* at 1030 (citing *Perricone*, 432 F.3d at 1376).   Moreover, prior art consisting of a patent such as Nesbitt is presumed enabled. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003), *rev'd on other grounds*, 457 F.3d 1293 (Fed. Cir. 2006).   Thus, the fact that Nesbitt discloses that Molitor's compositions can be used as cover materials is enough to anticipate. *See also In re Gleave*, 560 F.3d at 1336-37 (finding claims anticipated where the claim limitation appeared in a long list of other compounds in the prior art).

## VI.   CONCLUSION

For all of the foregoing reasons, Acushnet requests that the Court grant summary judgment that the asserted claims of the patents-in-suit are anticipated by Nesbitt, incorporating by reference Molitor '637.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:  (202) 783-0800

Dated:  December 11, 2009
Public Version Dated: December 18, 2009
947011 / 30030

By:   */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

19

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 18, 2009, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on December 18, 2009, the attached document was Electronically Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA 92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030