# EXHIBIT 16



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,444 | 03/03/2009 | 6623381 | 634.0004.RXUS10 | 6222 |

24492        7590        05/26/2009
THE TOP-FLITE GOLF COMPANY, A WHOLLY OWNED
SUBSIDIARY OF CALLAWAY GOLF COMPANY
2180 RUTHERFORD ROAD
LEGAL DEPT
CARLSBAD, CA 92008-7328

| EXAMINER |
|---|
| GELLNER, JEFFREY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/26/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS                          Date:
CLINTON H. BRANNON
HOWREY, LLP
1299 PENNSYLVANIA AVE., NW
WASHINGTON, DC 20004

**Transmittal of Communication to Third Party Requester
Inter Partes Reexamination**

REEXAMINATION CONTROL NO. : 95000444
PATENT NO. : 6623381
TECHNOLOGY CENTER : 3999
ART UNIT : 3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified Reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the inter partes reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an ex parte reexamination has been merged with the inter partes reexamination, no responsive submission by any ex parte third party requester is permitted.

All correspondence relating to this inter partes reexamination proceeding should be directed to the Central Reexamination Unit at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070(Rev.07-04)

| OFFICE ACTION IN INTER PARTES REEXAMINATION | Control No. 95/000,444 | Patent Under Reexamination 6623381 | |
|---|---|---|---|
| | Examiner | Art Unit | |
| | Jeffrey L. Gellner | 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on <u>3 March 2009</u>

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II.  SUMMARY OF ACTION:**

1a. ☒ Claims <u>1-14</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims <u>1-14</u> are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____ .    ☐ are acceptable.    ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is:    ☐ approved.  ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
       ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No <u>95000444</u>.
10. ☐ Other _____

o

Application/Control Number: 95/000,444                                          Page 2
Art Unit: 3993

### *Detailed Action*

This first Office Action on the merits is being mailed with the order granting

reexamination. This Office Action is in response to the Third Party Requester's Request received

3 March 2009.

### *Scope of Reexamination*

All claims, i.e., claims 1-14, were determined to present a SNQ of patentability and,

hence, are within the scope of this office action for US 6,623,381 B2.

### *Reexamination Procedures*

Amendments, affidavits or declarations, or other documents submitted in response to this

Office Action will be governed by 37 CFR §§ 1.937 through 1.948. Submissions after an Action

Closing Prosecution (37 CFR § 1.949) will be governed by 37 CFR 1.116(b) and (d).

### *Statutory Basis for Grounds of Rejection - 35 USC §§ 102 and 103*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this
or a foreign country, before the invention thereof by the applicant for a patent.

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on
sale in this country, more than one year prior to the date of application for patent in the United States.

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed
in the United States before the invention by the applicant for patent or (2) a patent granted on an application for
patent by another filed in the United States before the invention by the applicant for patent, except that an

Application/Control Number: 95/000,444                                      Page 3

Art Unit: 3993

international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this
subsection of an application filed in the United States only if the international application designated the United
States and was published under Article 21(2) of such treaty in the English language.


The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
such that the subject matter as a whole would have been obvious at the time the invention was made to a person
having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
manner in which the invention was made.

Application/Control Number: 95/000,444                                                    Page 4
Art Unit: 3993

*Third Party Requester's Grounds of Rejection proposed in Request*

*Claim 1*

**Ground 1.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (US 4,431,193) in view of Horiuchi et al. (US 5,222,739; hereinafter: Horiuchi) in further view of Sullivan (US 4,884,814).

**Ground 2.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki et al. (US 5,304,608; hereinafter: Yabuki) in further view of Sullivan '814.

**Ground 3.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz ('Surlyn' Ionomers for golf ball covers; 2nd document on 2nd page of SB/08b received with Request) in further view of Sullivan '814.

**Ground 4.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure (Articles based on ionomers derived from ethylene/acrylic or methacrylic with greater than 15% acid; 1st document on 2nd page of SB/08b received with Request) in further view of Sullivan '814.

**Ground 5.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as obvious over Viollaz (GB 2,248,067 A; only document listed under Foreign Patent Documents

Application/Control Number: 95/000,444                                                Page 5
Art Unit: 3993

section on 1st page of SB/08b received with Request) in view of Horiuchi in further view of
Sullivan '814.


    **Ground 6.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as
obvious over Viollaz in view of Yabuki in further view of Sullivan '814.


    **Ground 7.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as
obvious over Viollaz in view of Statz in further view of Sullivan '814.


    **Ground 8.** Requester submits that claim 1 is unpatentable under 35 USC 103(a) as
obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.



*Claim 2*

    **Ground 9.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as
obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.


    **Ground 10.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as
obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.


    **Ground 11.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as
obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 12.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 13.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 14.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

**Ground 15.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 16.** Requester submits that claim 2 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

*Claim 3*

**Ground 17.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 18.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 19.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 20.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 21.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 22.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

**Ground 23.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 24.** Requester submits that claim 3 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

Application/Control Number: 95/000,444                                      Page 8
Art Unit: 3993

*Claim 4*

**Ground 25.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 26.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 27.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 28.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 29.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 30.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

**Ground 31.** Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 32.**  Requester submits that claim 4 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

*Claim 5*

**Ground 33.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 34.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 35.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 36.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 37.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 38.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

Application/Control Number: 95/000,444                                      Page 10
Art Unit: 3993

**Ground 39.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 40.**  Requester submits that claim 5 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

*Claim 6.*

**Ground 41.**  Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 42.**  Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 43.**  Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 44.**  Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 45.** Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 46.** Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

**Ground 47.** Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 48.** Requester submits that claim 6 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

*Claim 7*

**Ground 49.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 50.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 51.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

Application/Control Number: 95/000,444                                           Page 12
Art Unit: 3993

**Ground 52.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 53.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 54.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

**Ground 55.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 56.** Requester submits that claim 7 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

*Claim 8*

**Ground 57.** Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

Application/Control Number: 95/000,444                                    Page 13
Art Unit: 3993

**Ground 58.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 59.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 60.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 61.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi in further view of Sullivan '814.

**Ground 62.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki in further view of Sullivan '814.

**Ground 63.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz in further view of Sullivan '814.

**Ground 64.**  Requester submits that claim 8 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814.

Application/Control Number: 95/000,444                               Page 14
Art Unit: 3993

*Claim 9*

**Ground 65.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor (US 4,274,637)) in view of Horiuchi.

**Ground 66.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Yabuki.

**Ground 67.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Statz.

**Ground 68.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Molitor et al (US 4,674,751; hereinafter: Molitor '751).

**Ground 69.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Molitor '751.

**Ground 70.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Molitor '751.

**Ground 71.** Requester submits that claim 9 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Molitor '751.

*Claim 10*

**Ground 72.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 73.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 74.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 75.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 76.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Horiuchi.

**Ground 77.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Yabuki.

**Ground 78.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Statz.

**Ground 79.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Research Disclosure.

**Ground 80.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in view of Molitor '751.

**Ground 81.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in view of Molitor '751.

**Ground 82.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in view of Molitor '751.

**Ground 83.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in view of Molitor '751.

**Ground 84.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki.

**Ground 85.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz.

**Ground 86.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure.

**Ground 87.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi.

**Ground 88.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki.

**Ground 89.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz.

**Ground 90.** Requester submits that claim 10 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure.

**Ground 91.** Requester submits that claim 10 is unpatentable under 35 USC 102(b) as anticipated by Sullivan et al. (US 5,803,831; hereinafter: Sullivan '831).

*Claim 11*

**Ground 92.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Horiuchi.

**Ground 93.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Yabuki.

**Ground 94.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Statz.

**Ground 95.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Research Disclosure.

**Ground 96.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in view of Molitor '751.

**Ground 97.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in view of Molitor '751.

**Ground 98.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in view of Molitor '751.

Application/Control Number: 95/000,444                                      Page 19
Art Unit: 3993

**Ground 99.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in view of Molitor '751.

**Ground 100.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Horiuchi.

**Ground 101.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Yabuki.

**Ground 102.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Statz.

**Ground 103.** Requester submits that claim 11 is unpatentable under 35 USC 103(a) as obvious over Viollaz in view of Research Disclosure.

**Ground 104.** Requester submits that claim 11 is unpatentable under 35 USC 102(b) as anticipated by Sullivan '831.

*Claim 12*

**Ground 105.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

Application/Control Number: 95/000,444                                     Page 20
Art Unit: 3993

     **Ground 106.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.


     **Ground 107.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.


     **Ground 108.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.


     **Ground 109.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Horiuchi.


     **Ground 110.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Yabuki.


     **Ground 111.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Statz.


     **Ground 112.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt (incorporating Molitor '637) in view of Research Disclosure.

Application/Control Number: 95/000,444                           Page 21
Art Unit: 3993

**Ground 113.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in view of Molitor '751.

**Ground 114.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in view of Molitor '751.

**Ground 115.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in view of Molitor '751.

**Ground 116.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in view of Molitor '751.

**Ground 117.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz.

**Ground 118.** Requester submits that claim 12 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure.

**Ground 119.** Requester submits that claim 12 is unpatentable under 35 USC 102(b) as anticipated by Sullivan '831.

*Claim 13*

**Ground 120.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814.

**Ground 121.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in further view of Sullivan '814.

**Ground 122.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in further view of Sullivan '814.

**Ground 123.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in further view of Sullivan '814.

**Ground 124.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Horiuchi in view of Molitor '751.

**Ground 125.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki in view of Molitor '751.

**Ground 126.** Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz in view of Molitor '751.

Application/Control Number: 95/000,444                                    Page 23
Art Unit: 3993

**Ground 127.**  Requester submits that claim 13 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure in view of Molitor '751.


**Ground 128.**  Requester submits that claim 13 is unpatentable under 35 USC 102(b) as anticipated by Sullivan '831.


*Claim 14*

**Ground 129.**  Requester submits that claim 14 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Yabuki.


**Ground 130.**  Requester submits that claim 14 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Statz.


**Ground 131.**  Requester submits that claim 14 is unpatentable under 35 USC 103(a) as obvious over Nesbitt in view of Research Disclosure.


**Ground 132.**  Requester submits that claim 14 is unpatentable under 35 USC 102(b) as anticipated by Sullivan '831.


*Examiner's Statement of Preliminary Matter of 1st Office Action*

*Incorporation by Reference*

In several of the proposed rejections that have been adopted, or adopted with modification, by the Examiner the base reference, Nesbitt, incorporates by reference Molitor '637. The Examiner considers this incorporation to be proper because the MPEP of the approximate time Nesbitt was filed (Original Fourth Edition, June 1979; Latest Revision September 1982) states that "[a]n application for a patent when filed may incorporate 'essential material' by reference" (MPEP 608.01(p)(B) of Rev. 8 Oct. 198). In the next sentence "essential material" is defined as necessary to "(1) support the claims, or (2) for adequate disclosure of the invention."

Applying the contemporaneous MPEP's language to the claims at issue is as follows: Nesbitt discloses that his invention is a three-piece golf ball with a core having inner and outer layers on the core (Nesbitt at col. 1, lines 45-56). Both the inner and outer layers can be made of either "resinous material or of cellular or foam composition" (Nesbitt at col. 1, lines 49 and 53, respectively). Nesbitt then states that the resinous materials for the two layers can be different types of Surlyn resins (Nesbitt at col. 1, lines 57-64). Surlyns resins are then discussed in the rest of the specification and the claims (see for example claims 7 and 8).

At col. 3, lines 51-61, Nesbitt discusses other materials for the two layers. Here it is disclosed that both the inner and outer layers "may be cellular when formed of a foamed natural or synthetic polymeric material." Nesbitt then states that "[p]olymeric materials are preferably such as ionomer resins which are foamable." Examiner construes this sentence to mean that the polymeric materials preferred by Nesbitt are those that, like ionomer resins, are foamable. Since Nesbitt does not disclose a list of foamable polymeric materials, he references Molitor '637

Application/Control Number: 95/000,444                                        Page 25
Art Unit: 3993

"which describes a number of foamable compositions of a character which may be employed for
one or both layers."

Molitor '637 states that his invention "relates to the use of cellular material as cover stock
for conventional golf ball centers" (Molitor '637 at col. 3, line 10-13). The preferred
embodiment for the outer cover, similarly to Nesbitt, is a Surlyn resin (Molitor '667 at col. 3,
lines 36-42). Farther into the specification, however, Molitor states that other materials both
synthetic and natural can be used as the outer layer material (Molitor '637 at col. 5, lines 27-32).
Molitor then lists "suitable polymer materials" (Molitor '637 at col. 5, lines 30-55). Included in
this list, *inter alia*, are polyethylene, polypropylene, polyurethanes, and thermoplastic rubbers
(Molitor '637 at col. 5, lines 33-55). The examples of covers that Molitor '637 discloses use
Surlyn resins, polypropylene, polyethylene, and thermoplastic rubbers (Tables 1 to 12).

The Examiner considers Nesbitt to incorporate by reference Molitor '637 because
Nesbitt's invention encompasses use of foamable material other than Surlyn resins as cover
materials (see above). Since only Surlyn resins are discussed in his specification, Nesbitt
incorporates by reference Molitor '637 to supply the "essential material" of other foamable
compositions that may be employed. Without this incorporation, Nesbitt's specification appears
to lack adequate disclosure for compositions other than Surlyn.

Nesbitt in "sufficient particularity" states that "foamable compositions" are to be
referenced, or incorporated. One of reasonable skill, when reading the specification of Molitor
'637, would know that Nesbitt meant to incorporate the list of materials found at col. 5, lines 30-
55, of Molitor '637, because the list is juxtaposed as an alternative to Surlyn (Molitor '637 at col.
5, lines 27-32). Nesbitt's language of incorporation is similarly juxtaposed as an alternative to

Application/Control Number: 95/000,444                                      Page 26
Art Unit: 3993

Surlyn (Surlyn being "ionomer resins" of col. 3, lines 51-61, of Nesbitt). Both references, then,

disclose foamable materials, or compositions, other than Surlyn resins that can be used in golf

ball construction. One of these listed materials is polyurethane.

*Markush Group of Claim 10*

In last clause of claim 10 the language of "material selected from the group consisting of

. . . non-ionomeric elastomers" is considered to be a proper Markush group because the language

is similar to that defining a Markush group, i.e., "'selected from the group consisting of A, B,

and C.'" (MPEP 2173.05(h) citing *Ex parte Markush*).

*Summary of non-adopted Proposed Grounds of Rejection in the 1st Office Action*

All proposed Grounds of Rejection were adopted except for:  **Grounds 63, 64, 72-74, 79,**

**86-90, 100-103, 109-112, 117,** and **118**.

*Proposed Third Party Requester's Rejections in Request*

*Claim 1*

**Ground 1.**

Requester submits on the middle of page 33 to the top of page 35 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi

in further view of Sullivan '814. This proposed rejection is **adopted with modification**.

Application/Control Number: 95/000,444                                  Page 27
Art Unit: 3993

     As to claim 1, Nesbitt discloses **a golf ball** (abstract) **comprising:  a core** (12 of Figs. 1

and 2); **an inner cover layer** (14 of Figs. 1 and 2) **molded on said core** (shown in Figs. 1 and

2; "molded" on col. 2, lines 34-39); **said inner cover layer comprising an ionomer** (from

"1605 Surlyn" of col. 2, lines 34-39);  **and,  an outer cover layer** (16 of Figs. 1 and 2) **molded**

**on said inner cover layer** (shown in Figs. 1 and 2; from "then re-molded onto the inner ply or

layer 14" col. 2, lines 40-49) **comprising a low flexural modulus** ("soft, low flexural modulus

resinous material" of col. 2, lines 43-49) **ionomer resin** (from "resinous material such as type

1855 Surlyn" of col. 2, lines 43-49).  Not disclosed is the inner cover layer ionomer being high

acid ionomer including at least 16% by weight of an alpha, beta-unsaturated carboxylic acid;

and,  the outer cover layer ionomer resin includes a blend of a hard high modulus ionomer with a

soft low modulus ionomer, the high modulus ionomer being a sodium, zinc, magnesium or

lithium salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic

acid having from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a

terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of

the acrylate ester class having from 1 to 21carbon atoms.  However, Horiuchi discloses a golf

ball with a cover layer ionomer being **a high acid ionomer** (from "carboxyl-rich ionomer resin"

of col. 1, lines 31-36) **including at least 16% by weight of an alpha, beta-unsaturated**

**carboxylic acid** (from "alpha, beta-ethylenic unsaturated carboxylic acid limited to 16 to 30 %

by weight" of col. 1, lines 50-54);  Sullivan '814 discloses a golf ball with a cover layer

**comprising a low flexural modulus ionomer resin** ("intermediate in softness between a balata

covered golf ball and a hard Surlyn covered golf ball" of col. 3, lines 45-55) **which includes a**

**blend of a hard high modulus ionomer with a soft low modulus ionomer** ("blending of a high

Application/Control Number: 95/000,444                                    Page 28
Art Unit: 3993

modulus (hard) ionomer with a low modulus (soft) ionomer to produce a base ionomer mixture"
of col. 4, lines 4-8), **the high modulus ionomer being a sodium, zinc, magnesium or lithium**
**salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic**
**acid having from 3 to 8 carbon atoms** (col. 4, lines 25-31), **the low modulus ionomer being a**
**sodium or zinc salt of a terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and**
**an unsaturated monomer of the acrylate ester class having from 1 to 21carbon atoms** (from
"sodium or zinc salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated
monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate
ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53).  It would have been obvious
to one of ordinary skill in the art at the time of the invention to modify the golf ball of Nesbitt by
using the cover layer of Horiuchi for Nesbitt's inner cover layer so as to have a ball with
excellent impact resilience and flying performance (Horiuchi at col. 1, lines 5-10); and to further
modify by using the cover layer of Sullivan '814 for Nesbitt's outer cover layer so as to have a
ball with cut resistance and adequate back spin for the skilled golfer (Sullivan '814 at col. 3,
lines 46-55).


**Ground 2.**

        Requester submits on the bottom of page 35 to the middle of page 37 of the Request that
claim 1 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in
further view of Sullivan '814.  This proposed rejection is **adopted with modification.**

        As to claim 1, Nesbitt discloses **a golf ball** (abstract) **comprising: a core** (12 of Figs. 1
and 2); **an inner cover layer** (14 of Figs. 1 and 2) **molded on said core** (shown in Figs. 1 and

2; "molded" on col. 2, lines 34-39); **said inner cover layer comprising a ionomer** (from "1605

Surlyn" of col. 2, lines 34-39); **and, an outer cover layer** (16 of Figs. 1 and 2) **molded on said**

**inner cover layer** (shown in Figs. 1 and 2; from "then re-molded onto the inner ply or layer 14"

col. 2, lines 40-49) **comprising a low flexural modulus** ("soft, low flexural modulus resinous

material" of col. 2, lines 43-49) **ionomer resin** (from "resinous material such as type 1855

Surlyn" of col. 2, lines 43-49). Not disclosed is the inner cover layer ionomer being high acid

ionomer including at least 16% by weight of an alpha, beta-unsaturated carboxylic acid; and,

the outer cover layer ionomer resin includes a blend of a hard high modulus ionomer with a soft

low modulus ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium

salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid

having from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a

terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of

the acrylate ester class having from 1 to 21 carbon atoms. However, Yabuki discloses a golf ball

with a cover layer ionomer being **a high acid ionomer including at least 16% by weight of an**

**alpha, beta-unsaturated carboxylic acid** (from "ESCOR EX 951, 562, 900" of col. 3, lines 10-

14 and Table 1); Sullivan '814 discloses a golf ball with a cover layer **comprising a low**

**flexural modulus ionomer resin** ("intermediate in softness between a balata covered golf ball

and a hard Surlyn covered golf ball" of col. 3, lines 45-55) **which includes a blend of a hard**

**high modulus ionomer with a soft low modulus ionomer** ("blending of a high modulus (hard)

ionomer with a low modulus (soft) ionomer to produce a base ionomer mixture" of col. 4, lines

4-8), **the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a**

**copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid**

having from 3 to 8 carbon atoms (col. 4, lines 25-31), **the low modulus ionomer being a**

**sodium or zinc salt of a terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and**

**an unsaturated monomer of the acrylate ester class having from 1 to 21carbon atoms** (from

"sodium or zinc salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated

monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate

ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53). It would have been obvious

to one of ordinary skill in the art at the time of the invention to modify the golf ball of Nesbitt by

using the cover layer of Yabuki for Nesbitt's inner cover layer so as to have a ball with superior

flying performance (Yabuki at col. 4, lines 5-10); and to further modify by using the cover layer

of Sullivan '814 for Nesbitt's outer cover layer so as to have a ball with cut resistance and

adequate back spin for the skilled golfer (Sullivan '814 at col. 3, lines 46-55).


**Ground 3.**

     Requester submits on the bottom of page 44 to the middle of page 46 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Statz in

further view of Sullivan '814. This proposed rejection is **adopted with modification.**

     As to claim 1, Nesbitt discloses **a golf ball** (abstract) **comprising: a core** (12 of Figs. 1

and 2); **an inner cover layer** (14 of Figs. 1 and 2) **molded on said core** (shown in Figs. 1 and

2; "molded" on col. 2, lines 34-39); **said inner cover layer comprising a ionomer** (from "1605

Surlyn" of col. 2, lines 34-39); **and, an outer cover layer** (16 of Figs. 1 and 2) **molded on said**

**inner cover layer** (shown in Figs. 1 and 2; from "then re-molded onto the inner ply or layer 14"

col. 2, lines 40-49) **comprising a low flexural modulus** ("soft, low flexural modulus resinous

material" of col. 2, lines 43-49) **ionomer resin** (from "resinous material such as type 1855
Surlyn" of col. 2, lines 43-49).  Not disclosed is the inner cover layer ionomer being high acid
ionomer including at least 16% by weight of an alpha, beta-unsaturated carboxylic acid;  and,
the outer cover layer ionomer resin includes a blend of a hard high modulus ionomer with a soft
low modulus ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium
salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid
having from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a
terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of
the acrylate ester class having from 1 to 21carbon atoms.  However, Statz discloses use with a
golf ball of a cover layer ionomer being **a high acid ionomer including at least 16% by weight
of an alpha, beta-unsaturated carboxylic acid** (from "'Surlyn' ionomers resins are produced
by the high pressure polymerization of ethylene and methacrylic acid followed by the subsequent
neutralization of the polymerized acids with a cation source such as sodium hydroxide" of page
206,  and, "However, new ionomers have been produced on an experimental basis with up to
20% copolymerized acid" of page 209);  Sullivan '814 discloses a golf ball with a cover layer
**comprising a low flexural modulus ionomer resin** ("intermediate in softness between a balata
covered golf ball and a hard Surlyn covered golf ball" of col. 3, lines 45-55) **which includes a
blend of a hard high modulus ionomer with a soft low modulus ionomer** ("blending of a high
modulus (hard) ionomer with a low modulus (soft) ionomer to produce a base ionomer mixture"
of col. 4, lines 4-8), **the high modulus ionomer being a sodium, zinc, magnesium or lithium
salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic
acid having from 3 to 8 carbon atoms (col. 4, lines 25-31), the low modulus ionomer being a**

**sodium or zinc salt of a terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and**

**an unsaturated monomer of the acrylate ester class having from 1 to 21carbon atoms** (from

"sodium or zinc salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated

monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate

ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53). It would have been obvious

to one of ordinary skill in the art at the time of the invention to modify the golf ball of Nesbitt by

using the cover layer of Statz for Nesbitt's inner cover layer so as to have a ball that is harder,

stiffer, with advantage in coefficient of restitution, and possibly in velocity off the club (Statz at

page 209); and to further modify by using the cover layer of Sullivan '814 for Nesbitt's outer

cover layer so as to have a ball with cut resistance and adequate back spin for the skilled golfer

(Sullivan '814 at col. 3, lines 46-55).


**Ground 4.**

      Requester submits on the bottom of page 44 to the middle of page 46 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Research

Disclosure in further view of Sullivan '814. This proposed rejection is **adopted with**

**modification**.

      As to claim 1, Nesbitt discloses **a golf ball** (abstract) **comprising:   a core** (12 of Figs. 1

and 2); **an inner cover layer** (14 of Figs. 1 and 2) **molded on said core** (shown in Figs. 1 and

2; "molded" on col. 2, lines 34-39); **said inner cover layer comprising a ionomer** (from "1605

Surlyn" of col. 2, lines 34-39); **and,  an outer cover layer** (16 of Figs. 1 and 2) **molded on said**

**inner cover layer** (shown in Figs. 1 and 2; from "then re-molded onto the inner ply or layer 14"

Application/Control Number: 95/000,444                                         Page 33
Art Unit: 3993

col. 2, lines 40-49) **comprising a low flexural modulus** ("soft, low flexural modulus resinous

material" of col. 2, lines 43-49) **ionomer resin** (from "resinous material such as type 1855

Surlyn" of col. 2, lines 43-49).  Not disclosed is the inner cover layer ionomer being high acid

ionomer including at least 16% by weight of an alpha, beta-unsaturated carboxylic acid;  and,

the outer cover layer ionomer resin includes a blend of a hard high modulus ionomer with a soft

low modulus ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium

salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid

having from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a

terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of

the acrylate ester class having from 1 to 21carbon atoms.  However, Research Disclosure

discloses use with a golf ball of a cover layer ionomer being **a high acid ionomer including at**

**least 16% by weight of an alpha, beta-unsaturated carboxylic acid** (from "Ionomers

produced from polymers of ethylene acrylic/methacrylic acid containing greater than 15 wt %

acid can be used to produce molded articles with superior properties" of 2nd page);  Sullivan '814

discloses a golf ball with a cover layer **comprising a low flexural modulus ionomer resin**

("intermediate in softness between a balata covered golf ball and a hard Surlyn covered golf

ball" of col. 3, lines 45-55) **which includes a blend of a hard high modulus ionomer with a**

**soft low modulus ionomer** ("blending of a high modulus (hard) ionomer with a low modulus

(soft) ionomer to produce a base ionomer mixture" of col. 4, lines 4-8), **the high modulus**

**ionomer being a sodium, zinc, magnesium or lithium salt of a copolymer having from 2 to 8**

**carbon atoms and an unsaturated monocarboxylic acid having from 3 to 8 carbon atoms**

(col. 4, lines 25-31), **the low modulus ionomer being a sodium or zinc salt of a terpolymer of**

an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of the

acrylate ester class having from 1 to 21carbon atoms (from "sodium or zinc salt of a

terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated monocarboxylic acid

having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate ester class having from 2

to 22 carbon atoms" of col. 4, lines 48-53). It would have been obvious to one of ordinary skill

in the art at the time of the invention to modify the golf ball of Nesbitt by using the cover layer

of Research Disclosure at least 16% acid for Nesbitt's inner cover layer so as to have a ball with

stiffness, hardness and clarity (Research Disclosure at 2nd page); and to further modify by using

the cover layer of Sullivan '814 for Nesbitt's outer cover layer so as to have a ball with cut

resistance and adequate back spin for the skilled golfer (Sullivan '814 at col. 3, lines 46-55).


**Ground 5.**

Requester submits on the middle of page 39 to the top of page 41 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Horiuchi

in further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 1, Viollaz discloses **a golf ball** (abstract and Figure) **comprising: a core** (1

of Fig.); **an inner cover layer** (2 of Fig.) **molded on said core** (shown in Fig. and from

"assembly of the two parts 1 and 2 forming the internal structure of the ball" of page 5); **and,**

**an outer cover layer** (3 of Fig.) **molded on said inner cover layer** (shown in Fig.); **said outer**

**layer comprising a low flexural modulus** (for example, "Ball 07" of "Table III" of page 9)

material. Not disclosed is the inner cover layer comprising a high acid ionomer ionomer

including at least 16% by weight of an alpha, beta-unsaturated carboxylic acid; and, the outer

cover layer ionomer resin includes a blend of a hard high modulus ionomer with a soft low

modulus ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of

a copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having

from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a terpolymer

of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of the acrylate

.ester class having from 1 to 21carbon atoms.  However, Horiuchi discloses a golf ball with a

cover layer **comprising a high acid ionomer** (from "carboxyl-rich ionomer resin" of col. 1, lines

31-36) **including at least 16% by weight of an alpha, beta-unsaturated carboxylic acid** (from

"alpha, beta-ethylenic unsaturated carboxylic acid limited to 16 to 30 % by weight" of col. 1,

lines 50-54);  Sullivan '814 discloses a golf ball with a cover layer **comprising a low flexural**

**modulus ionomer resin** ("intermediate in softness between a balata covered golf ball and a hard

Surlyn covered golf ball" of col. 3, lines 45-55) **which includes a blend of a hard high**

**modulus ionomer with a soft low modulus ionomer** ("blending of a high modulus (hard)

ionomer with a low modulus (soft) ionomer to produce a base ionomer mixture" of col. 4, lines

4-8), **the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a**

**copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid**

**having from 3 to 8 carbon atoms** (col. 4, lines 25-31), **the low modulus ionomer being a**

**sodium or zinc salt of a terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and**

**an unsaturated monomer of the acrylate ester class having from 1 to 21carbon atoms** (from

"sodium or zinc salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated

monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate

ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53).  It would have been obvious

to one of ordinary skill in the art at the time of the invention to modify the golf ball of Viollaz by

using the cover layer of Horiuchi for Viollaz's inner cover layer so as to have a ball with

excellent impact resilience and flying performance (Horiuchi at col. 1, lines 5-10); and to further

modify by using the cover layer of Sullivan '814 for Viollaz's outer cover layer so as to have a

ball with cut resistance and adequate back spin for the skilled golfer (Sullivan '814 at col. 3,

lines 46-55).


**Ground 6.**

Requester submits on the bottom of page 41 to the top of page 43 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Yabuki in

further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 1, Viollaz discloses **a golf ball** (abstract and Figure) **comprising: a core** (1

of Fig.); **an inner cover layer** (2 of Fig.) **molded on said core** (shown in Fig. and from

"assembly of the two parts 1 and 2 forming the internal structure of the ball" of page 5); **and,**

**an outer cover layer** (3 of Fig.) **molded on said inner cover layer** (shown in Fig.); **said outer**

**layer comprising a low flexural modulus** (for example, "Ball 07" of "Table III" of page 9)

material. Not disclosed is the inner cover layer comprising a high acid ionomer including at least

16% by weight of an alpha, beta-unsaturated carboxylic acid; and, the outer cover layer

ionomer resin includes a blend of a hard high modulus ionomer with a soft low modulus

ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a

copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having

from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a terpolymer

of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of the acrylate

ester class having from 1 to 21carbon atoms.  However, Yabuki discloses a golf ball with a cover

layer **comprising a high acid ionomer including at least 16% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from "ESCOR EX 951, 562, and 900" of col. 3, lines 10-14, and

Table 1);  Sullivan '814 discloses a golf ball with a cover layer **comprising a low flexural**

**modulus ionomer resin** ("intermediate in softness between a balata covered golf ball and a hard

Surlyn covered golf ball" of col. 3, lines 45-55) **which includes a blend of a hard high**

**modulus ionomer with a soft low modulus ionomer** ("blending of a high modulus (hard)

ionomer with a low modulus (soft) ionomer to produce a base ionomer mixture" of col. 4, lines

4-8), **the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a**

**copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid**

**having from 3 to 8 carbon atoms** (col. 4, lines 25-31), **the low modulus ionomer being a**

**sodium or zinc salt of a terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and**

**an unsaturated monomer of the acrylate ester class having from 1 to 21carbon atoms** (from

"sodium or zinc salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated

monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate

ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53).  It would have been obvious

to one of ordinary skill in the art at the time of the invention to modify the golf ball of Viollaz by

using the cover layer of Yabuki for Viollaz's inner cover layer so as to have a ball with superior

flying performance (Yabuki at col. 4, lines 5-10);  and to further modify by using the cover layer

of Sullivan '814 for Viollaz's outer cover layer so as to have a ball with cut resistance and

adequate back spin for the skilled golfer (Sullivan '814 at col. 3, lines 46-55).

**Ground 7.**

Requester submits on the bottom of page 47 to the middle of page 49 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Statz in

further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 1, Viollaz discloses **a golf ball** (abstract and Figure) **comprising: a core** (1

of Fig.); **an inner cover layer** (2 of Fig.) **molded on said core** (shown in Fig. and from

"assembly of the two parts 1 and 2 forming the internal structure of the ball" of page 5); **and,**

**an outer cover layer** (3 of Fig.) **molded on said inner cover layer** (shown in Fig.); **said outer**

**layer comprising a low flexural modulus** (for example, "Ball 07" of "Table III" of page 9)

material. Not disclosed is the inner cover layer comprising a high acid ionomer including at least

16% by weight of an alpha, beta-unsaturated carboxylic acid; and, the outer cover layer

ionomer resin includes a blend of a hard high modulus ionomer with a soft low modulus

ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a

copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having

from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a terpolymer

of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of the acrylate

ester class having from 1 to 21 carbon atoms. However, Statz discloses a golf ball with a cover

layer **comprising a high acid ionomer including at least 16% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from "'Surlyn' ionomers resins are produced by the high pressure

polymerization of ethylene and methacrylic acid followed by the subsequent neutralization of the

polymerized acids with a cation source such as sodium hydroxide" of page 206, and, "However,

new ionomers have been produced on an experimental basis with up to 20% copolymerized acid"

of page 209);  Sullivan '814 discloses a golf ball with a cover layer **comprising a low flexural**

**modulus ionomer resin** ("intermediate in softness between a balata covered golf ball and a hard

Surlyn covered golf ball" of col. 3, lines 45-55) **which includes a blend of a hard high**

**modulus ionomer with a soft low modulus ionomer** ("blending of a high modulus (hard)

ionomer with a low modulus (soft) ionomer to produce a base ionomer mixture" of col. 4, lines

4-8), **the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a**

**copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid**

**having from 3 to 8 carbon atoms** (col. 4, lines 25-31), **the low modulus ionomer being a**

**sodium or zinc salt of a terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and**

**an unsaturated monomer of the acrylate ester class having from 1 to 21 carbon atoms** (from

"sodium or zinc salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated

monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate

ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53).  It would have been obvious

to one of ordinary skill in the art at the time of the invention to modify the golf ball of Viollaz by

using the cover layer of Statz for Viollaz's inner cover layer so as to have a ball that is harder,

stiffer, with advantage in coefficient of restitution, and possibly velocity off the club (Statz at

page 209);  and to further modify by using the cover layer of Sullivan '814 for Viollaz's outer

cover layer so as to have a ball with cut resistance and adequate back spin for the skilled golfer

(Sullivan '814 at col. 3, lines 46-55).

**Ground 8.**

Requester submits on the bottom of page 47 to the middle of page 49 of the Request that

claim 1 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Research

Disclosure in further view of Sullivan '814. This proposed rejection is **adopted with**

**modification**.

As to claim 1, Viollaz discloses **a golf ball** (abstract and Figure) **comprising: a core** (1

of Fig.); **an inner cover layer** (2 of Fig.) **molded on said core** (shown in Fig. and from

"assembly of the two parts 1 and 2 forming the internal structure of the ball" of page 5); **and,**

**an outer cover layer** (3 of Fig.) **molded on said inner cover layer** (shown in Fig.); **said outer**

**layer comprising a low flexural modulus** (for example, "Ball 07" of "Table III" of page 9)

material. Not disclosed is the inner cover layer comprising a high acid ionomer including at least

16% by weight of an alpha, beta-unsaturated carboxylic acid; and, the outer cover layer

ionomer resin includes a blend of a hard high modulus ionomer with a soft low modulus

ionomer, the high modulus ionomer being a sodium, zinc, magnesium or lithium salt of a

copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid having

from 3 to 8 carbon atoms, the low modulus ionomer being a sodium or zinc salt of a terpolymer

of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of the acrylate

ester class having from 1 to 21 carbon atoms. However, Research Disclosure discloses a golf ball

with a cover layer **comprising a high acid ionomer including at least 16% by weight of an**

**alpha, beta-unsaturated carboxylic acid** (from "Ionomers produced from polymers of ethylene

acrylic/methacrylic acid containing greater than 15 wt % acid can be used to produce molded

articles with superior properties" of 2nd page); Sullivan '814 discloses a golf ball with a cover

layer **comprising a low flexural modulus ionomer resin** ("intermediate in softness between a

Application/Control Number: 95/000,444                                        Page 41
Art Unit: 3993

balata covered golf ball and a hard Surlyn covered golf ball" of col. 3, lines 45-55) **which
includes a blend of a hard high modulus ionomer with a soft low modulus ionomer**
("blending of a high modulus (hard) ionomer with a low modulus (soft) ionomer to produce a
base ionomer mixture" of col. 4, lines 4-8), **the high modulus ionomer being a sodium, zinc,
magnesium or lithium salt of a copolymer having from 2 to 8 carbon atoms and an
unsaturated monocarboxylic acid having from 3 to 8 carbon atoms** (col. 4, lines 25-31), **the
low modulus ionomer being a sodium or zinc salt of a terpolymer of an olefin having 2 to 8
carbon atoms, acrylic acid and an unsaturated monomer of the acrylate ester class having
from 1 to 21carbon atoms** (from "sodium or zinc salt of a terpolymer of an olefin having from 2
to 8 carbon atoms, an unsaturated monocarboxylic acid having 3 to 8 carbon atoms and an
unsaturated monomer of the acrylate ester class having from 2 to 22 carbon atoms" of col. 4,
lines 48-53).  It would have been obvious to one of ordinary skill in the art at the time of the
invention to modify the golf ball of Viollaz by using the cover layer of Research Disclosure for
Viollaz's inner cover layer so as to have a ball with stiffness, hardness and clarity (Research
Disclosure at 2nd page);  and to further modify by using the cover layer of Sullivan '814 for
Viollaz's outer cover layer so as to have a ball with cut resistance and adequate back spin for the
skilled golfer (Sullivan '814 at col. 3, lines 46-55).


*Claim 2*

**Ground 9.**

Application/Control Number: 95/000,444                                    Page 42
Art Unit: 3993

Requester submits on the middle of page 50 of the Request that claim 2 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 2, Nesbitt as modified by Horiuchi and further modified by Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an copolymer of about 17% to about 25% by weight of an alpha, beta- unsaturated carboxylic acid** (from "preferably 20 to 30% by weight" of Horiuchi at col. 1, lines 50-54). It would have been obvious to one of ordinary skill in the art at the time of the invention to further modify the golf ball of Nesbitt as modified by Horiuchi and Sullivan '814 by using an inner cover layer as disclosed by Horiuchi with 20% to 25% acid depending upon desired durability, flying distance, and stiffness (data of Horiuchi at Table 1).

**Ground 10.**

Requester submits on the top of page 51 of the Request that claim 2 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 2, Nesbitt as modified by Yabuki and further modified by Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an copolymer of about 17% to about 25% by weight of an alpha, beta- unsaturated carboxylic acid** (from "EMAA-Na* and EMAA-Li**" of Table 1 for "Example" and "Comparative Example" where both have acid contents of 20% by weight as shown by the data of footnotes of "*" and "**" of Yabuki at Table 1). It would have been obvious to one of

Application/Control Number: 95/000,444                                          Page 43
Art Unit: 3993

ordinary skill in the art at the time of the invention to further modify the golf ball of Nesbitt as

modified by Yabuki and Sullivan '814 by using an inner cover layer as disclosed by Yabuki with

20% acid depending upon desired durability, flying distance, and stiffness (data of Yabuki at

Table 1).


**Ground 11.**

Requester submits on the middle of page 53 of the Request that claim 2 is unpatentable

under 35 USC 103(a) as being obvious over Nesbitt in view of Statz in further view of Sullivan

'814. This proposed rejection is **adopted.**

As to claim 2, Nesbitt as modified by Statz and further modified by Sullivan '814 further

disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an**

**copolymer of about 17% to about 25% by weight of an alpha, beta-unsaturated carboxylic**

**acid** (from ". . . up to 20% copolymerized acid . . " of page 209). It would have been obvious to

one of ordinary skill in the art at the time of the invention to further modify the golf ball of

Nesbitt as modified by Statz and Sullivan '814 by using an inner cover layer as disclosed by

Statz with 20% acid so as to have a ball with the desired hardness, stiffness, coefficient of

restitution, and velocity off the club (from Statz at page 209).


**Ground 12.**

Requester submits on the top of page 53 of the Request that claim 2 is unpatentable under

35 USC 103(a) as being obvious over Nesbitt in view of Research Disclosure in further view of

Sullivan '814. This proposed rejection is **adopted with modification.**

Application/Control Number: 95/000,444                                                   Page 44
Art Unit: 3993

As to claim 2, Nesbitt as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer**

**resin comprising an copolymer of about 17% to about 25% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from ". . . greater than 15 wt % acid . . ." of 3rd page of Research

Disclosure). It would have been obvious to one of ordinary skill in the art at the time of the

invention to further modify the golf ball of Nesbitt as modified by Research Disclosure and

Sullivan '814 by using a an inner cover layer as disclosed by Research Disclosure with 17% to

25% acid depending upon desired hardness and flying performance.


**Ground 13.**

Requester submits on the bottom of page 51 to top of page 52 of the Request that claim 2

is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Horiuchi in

further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 2, Viollaz as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the inner cover layer comprises a high acid ionomer resin**

**comprising an copolymer of about 17% to about 25% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from "preferably 20 to 30% by weight" of Horiuchi at col. 1, lines

50-54). It would have been obvious to one of ordinary skill in the art at the time of the invention

to further modify the golf ball of Viollaz as modified by Horiuchi and Sullivan '814 by using an

inner cover layer as disclosed by Horiuchi with 20% to 25% acid depending upon desired

durability, flying distance, and stiffness (data of Horiuchi at Table 1).

**Ground 14.**

Requester submits on the bottom of page 52 of the Request that claim 2 is unpatentable
under 35 USC 103(a) as being obvious over Viollaz in view of Yabuki in further view of
Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 2, Viollaz as modified by Yabuki and further modified by Sullivan '814
further disclose **wherein the inner cover layer comprises a high acid ionomer resin**
**comprising an copolymer of about 17% to about 25% by weight of an alpha, beta-**
**unsaturated carboxylic acid** (from "EMAA-Na* and EMAA-Li**" of Table 1 for "Example"
and "Comparative Example" where both have acid contents of 20% by weight as shown by the
data of footnotes of "*" and "**" of Yabuki at Table 1). It would have been obvious to one of
ordinary skill in the art at the time of the invention to further modify the golf ball of Nesbitt as
modified by Yabuki and Sullivan '814 by using an inner cover layer as disclosed by Yabuki with
20% acid depending upon desired durability, flying distance, and stiffness (data of Yabuki at
Table 1).

**Ground 15.**

Requester submits on the middle of page 54 of the Request that claim 2 is unpatentable
under 35 USC 103(a) as being obvious over Viollaz in view of Statz in further view of Sullivan
'814. This proposed rejection is **adopted by modification**.

As to claim 2, Viollaz as modified by Statz and further modified by Sullivan '814 further
disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an**
**copolymer of about 17% to about 25% by weight of an alpha, beta-unsaturated carboxylic**

Application/Control Number: 95/000,444                                                    Page 46
Art Unit: 3993

acid (from ". . . up to 20% copolymerized acid . . " of page 209). It would have been obvious to

one of ordinary skill in the art at the time of the invention to further modify the golf ball of

Viollaz as modified by Statz and Sullivan '814 by using an inner cover layer as disclosed by

Statz with 20% acid so as to have a ball with the desired hardness, stiffness, coefficient of

restitution, and velocity off the club (from Statz at page 209).


**Ground 16.**

Requester submits on the middle of page 54 of the Request that claim 2 is unpatentable

under 35 USC 103(a) as being obvious over Viollaz in view of Research Disclosure in further

view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 2, Viollaz as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer**

**resin comprising an copolymer of about 17% to about 25% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from ". . . greater than 15 wt % acid . . ." of 3rd page of Research

Disclosure). It would have been obvious to one of ordinary skill in the art at the time of the

invention to further modify the golf ball of Viollaz as modified by Research Disclosure and

Sullivan '814 by using a an inner cover layer as disclosed by Research Disclosure with 17% to

25% acid depending upon desired hardness and flying performance.


*Claim 3*

**Ground 17.**

Application/Control Number: 95/000,444                                          Page 47
Art Unit: 3993

Requester submits on the middle of page 55 of the Request that claim 3 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi in further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 3, Nesbitt as modified by Horiuchi and further modified by Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-unsaturated carboxylic acid** (from "preferably 20 to 30% by weight" of Horiuchi at col. 1, lines 50-54). It would have been obvious to one of ordinary skill in the art at the time of the invention to further modify the golf ball of Nesbitt as modified by Horiuchi and Sullivan '814 by using an inner cover layer as disclosed by Horiuchi with 20% to 21.5% acid depending upon desired durability, flying distance, and stiffness (data of Horiuchi at Table 1).

**Ground 18.**

Requester submits on the top of page 56 of the Request that claim 3 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in further view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 3, Nesbitt as modified by Yabuki and further modified by Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-unsaturated carboxylic acid** (from "EMAA-Na* and EMAA-Li**" of Table 1 for "Example" and "Comparative Example" where both have acid contents of 20% by weight as shown by the data of footnotes of "*" and "**" of Yabuki at Table 1).

Application/Control Number: 95/000,444                    Page 48
Art Unit: 3993

**Ground 19.**

Requester submits on the middle of page 58 of the Request that claim 3 is unpatentable

under 35 USC 103(a) as being obvious over Nesbitt in view of Statz in further view of Sullivan

'814. This proposed rejection is **adopted with modification**.

As to claim 3, Nesbitt as modified by Statz and further modified by Sullivan '814 further

disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an**

**copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-unsaturated**

**carboxylic acid** (from ". . . up to 20% copolymerized acid . . " of page 209). It would have been

obvious to one of ordinary skill in the art at the time of the invention to further modify the golf

ball of Nesbitt as modified by Statz and Sullivan '814 by using an inner cover layer as disclosed

by Statz with 20% acid so as to have a ball with the desired hardness, stiffness, coefficient of

restitution, and velocity off the club (from Statz at page 209).

**Ground 20.**

Requester submits on the middle of page 58 of the Request that claim 3 is unpatentable

under 35 USC 103(a) as being obvious over Nesbitt in view of Research Disclosure in further

view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 3, Nesbitt as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer**

**resin comprising an copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from ". . . greater than 15 wt % acid . . ." of 3rd page of Research

Application/Control Number: 95/000,444                                    Page 49
Art Unit: 3993

Disclosure).  It would have been obvious to one of ordinary skill in the art at the time of the
invention to further modify the golf ball of Nesbitt as modified by Research Disclosure and
Sullivan '814 by using a an inner cover layer as disclosed by Research Disclosure with 18.5% to
21.5% acid depending upon desired hardness and flying performance.


**Ground 21.**

        Requester submits on the bottom of page 56 to top of page 57 of the Request that claim 3
is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Horiuchi in
further view of Sullivan '814.  This proposed rejection is **adopted with modification.**

        As to claim 3, Viollaz as modified by Horiuchi and further modified by Sullivan '814
further disclose **wherein the inner cover layer comprises a high acid ionomer resin**
**comprising an copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-**
**unsaturated carboxylic acid** (from "preferably 20 to 30% by weight" of Horiuchi at col. 1, lines
50-54).  It would have been obvious to one of ordinary skill in the art at the time of the invention
to further modify the golf ball of Viollaz as modified by Horiuchi and Sullivan '814 by using an
inner cover layer as disclosed by Horiuchi with 20% to 21.5% acid depending upon desired
durability, flying distance, and stiffness (data of Horiuchi at Table 1).


**Ground 22.**

        Requester submits on the bottom of page 57 of the Request that claim 3 is unpatentable
under 35 USC 103(a) as being obvious over Viollaz in view of Yabuki in further view of
Sullivan '814.  This proposed rejection is **adopted with modification.**

Application/Control Number: 95/000,444                                    Page 50
Art Unit: 3993

        As to claim 3, Viollaz as modified by Yabuki and further modified by Sullivan '814

further disclose **wherein the inner cover layer comprises a high acid ionomer resin**

**comprising an copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from "EMAA-Na* and EMAA-Li**" of Table 1 for "Example"

and "Comparative Example" where both have acid contents of 20% by weight as shown by the

data of footnotes of "*" and "**" of Yabuki at Table 1).  It would have been obvious to one of

ordinary skill in the art at the time of the invention to further modify the golf ball of Viollaz as

modified by Yabuki and Sullivan '814 by using an inner cover layer as disclosed by Yabuki with

20% acid depending upon desired durability, flying distance, and stiffness (data of Yabuki at

Table 1).


**Ground 23.**

        Requester submits on the middle of page 59 of the Request that claim 3 is unpatentable

under 35 USC 103(a) as being obvious over Viollaz in view of Statz in further view of Sullivan

'814.  This proposed rejection is **adopted with modification**.

        As to claim 3, Viollaz as modified by Statz and further modified by Sullivan '814 further

disclose **wherein the inner cover layer comprises a high acid ionomer resin comprising an**

**copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-unsaturated**

**carboxylic acid** (from ". . . up to 20% copolymerized acid . . " of page 209).  It would have been

obvious to one of ordinary skill in the art at the time of the invention to further modify the golf

ball of Viollaz as modified by Statz and Sullivan '814 by using an inner cover layer as disclosed

Application/Control Number: 95/000,444                                          Page 51
Art Unit: 3993

by Statz with 20% acid so as to have a ball with the desired hardness, stiffness, coefficient of

restitution, and velocity off the club (from Statz at page 209).


**Ground 24.**

Requester submits on the middle of page 59 of the Request that claim 3 is unpatentable

under 35 USC 103(a) as being obvious over Viollaz in view of Research Disclosure in further

view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 3, Viollaz as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the inner cover layer comprises a high acid ionomer**

**resin comprising an copolymer of about 18.5% to about 21.5% by weight of an alpha, beta-**

**unsaturated carboxylic acid** (from ". . . greater than 15 wt % acid . . ." of 3rd page of Research

Disclosure). It would have been obvious to one of ordinary skill in the art at the time of the

invention to further modify the golf ball of Viollaz as modified by Research Disclosure and

Sullivan '814 by using a an inner cover layer as disclosed by Research Disclosure with from

18.5% to 21.5% acid depending upon desired hardness and flying performance.).


*Claim 4*

**Ground 25.**

Requester submits on the bottom of page 60 to top of page 61 of the Request that claim 4

is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi in

further view of Sullivan '814. This proposed rejection is **adopted with modification**.

Application/Control Number: 95/000,444                                      Page 52
Art Unit: 3993

As to claim 4, Nesbitt as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010**

**inches** (from "inner layer . . . preferably of a thickness in a range of 0.020 inches and 0.070

inches" of Nesbitt at col. 3, lines 16-25) **and the outer cover layer has a thickness of about**

**0.010 to about 0.05 inches** (from "thickness of the outer layer . . . may be in a range of 0.020

inches and 0.100 inches" of Nesbitt at col. 3, lines 16-25), **the golf ball having an overall**

**diameter of 1.680 inches or more** (from "minimum diameter of 1.680 inches" of Nesbitt at col.

3, lines 8-15).   It would have been obvious to one of ordinary skill in the art at the time of the

invention to further modify the golf ball of Nesbitt as modified by Horiuchi and Sullivan '814 by

having the inner cover from 0.020 inches to 0.070 inches, outer cover from 0.020 inches to 0.05

inches, and the overall diameter at 1.680 inches as disclosed by Nesbitt so as to permit an initial

velocity of 255 feet per second and stay within USGA regulations (Nesbitt at col. 2, lines 50-58,

and col. 3, lines 8-15).


**Ground 26.**

Requester submits on the middle of page 61 of the Request that claim 4 is unpatentable

under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in further view of

Sullivan '814.  This proposed rejection is **adopted with modification**.

As to claim 4, Nesbitt as modified by Yabuki and further modified by Sullivan '814

further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010**

**inches** (from "inner layer . . . preferably of a thickness in a range of 0.020 inches and 0.070

inches" of Nesbitt at col. 3, lines 16-25) **and the outer cover layer has a thickness of about**

**0.010 to about 0.05 inches** (from "thickness of the outer layer . . . may be in a range of 0.020

inches and 0.100 inches" of Nesbitt at col. 3, lines 16-25)**, the golf ball having an overall**

**diameter of 1.680 inches or more** (from "minimum diameter of 1.680 inches" of Nesbitt at col.

3, lines 8-15). It would have been obvious to one of ordinary skill in the art at the time of the

invention to further modify the golf ball of Nesbitt as modified by Yabuki and Sullivan '814 by

having the inner cover from 0.020 inches to 0.070 inches, outer cover from 0.020 inches to 0.05

inches, and the overall diameter at 1.680 inches as disclosed by Nesbitt so as to permit an initial

velocity of 255 feet per second and stay within USGA regulations (Nesbitt at col. 2, lines 50-58,

and col. 3, lines 8-15).


**Ground 27.**

Requester submits on the bottom of page 63 to top of page 64 of the Request that claim 4

is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Statz in further

view of Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 4, Nesbitt as modified by Statz and further modified by Sullivan '814 further

disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches**

(from "inner layer . . . preferably of a thickness in a range of 0.020 inches and 0.070 inches" of

Nesbitt at col. 3, lines 16-25) **and the outer cover layer has a thickness of about 0.010 to**

**about 0.05 inches** (from "thickness of the outer layer . . . may be in a range of 0.020 inches and

0.100 inches" of Nesbitt at col. 3, lines 16-25)**, the golf ball having an overall diameter of**

**1.680 inches or more** (from "minimum diameter of 1.680 inches" of Nesbitt at col. 3, lines 8-

15). It would have been obvious to one of ordinary skill in the art at the time of the invention to

further modify the golf ball of Nesbitt as modified by Statz and Sullivan '814 by having the inner

cover from 0.020 inches to 0.070 inches, outer cover from 0.020 inches to 0.05 inches, and the

overall diameter at 1.680 inches as disclosed by Nesbitt so as to permit an initial velocity of 255

feet per second and stay within USGA regulations (Nesbitt at col. 2, lines 50-58, and col. 3, lines

8-15).


**Ground 28.**

Requester submits on the bottom of page 63 to the top of page 64 of the Request that

claim 4 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Research

Disclosure in further view of Sullivan '814.  This proposed rejection is **adopted with**

**modification**.

As to claim 4, Nesbitt as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the inner cover layer has a thickness of about 0.100 to**

**about 0.010 inches** (from "inner layer . . . preferably of a thickness in a range of 0.020 inches

and 0.070 inches" of Nesbitt at col. 3, lines 16-25) **and the outer cover layer has a thickness of**

**about 0.010 to about 0.05 inches** (from "thickness of the outer layer . . . may be in a range of

0.020 inches and 0.100 inches" of Nesbitt at col. 3, lines 16-25)**, the golf ball having an overall**

**diameter of 1.680 inches or more** (from "minimum diameter of 1.680 inches" of Nesbitt at col.

3, lines 8-15).  It would have been obvious to one of ordinary skill in the art at the time of the

invention to further modify the golf ball of Nesbitt as modified by Research Disclosure and

Sullivan '814 by having the inner cover from 0.020 inches to 0.070 inches, outer cover from

0.020 inches to 0.05 inches, and the overall diameter at 1.680 inches as disclosed by Nesbitt so

as to permit an initial velocity of 255 feet per second and stay within USGA regulations (Nesbitt

at col. 2, lines 50-58, and col. 3, lines 8-15).

**Ground 29.**

Requester submits on the middle of page 62 of the Request that claim 4 is unpatentable

under 35 USC 103(a) as being obvious over Viollaz in view of Horiuchi in further view of

Sullivan '814. This proposed rejection is **adopted**.

As to claim 4, Viollaz as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010**

**inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a**

**thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5, line

18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8

mm" of Viollaz at page 6, line 4).

**Ground 30.**

Requester submits on the bottom of page 62 to top of page 63 of the Request that claim 4

is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Yabuki in further

view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 4, Viollaz as modified by Yabuki and further modified by Sullivan '814

further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010**

**inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a**

**thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5, line

18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8 mm" of Viollaz at page 6, line 4).

**Ground 31.**

Requester submits on the middle of page 64 of the Request that claim 4 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Statz in further view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 4, Viollaz as modified by Statz and further modified by Sullivan '814 further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5, line 18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8 mm" of Viollaz at page 6, line 4).

**Ground 32.**

Requester submits on the middle of page 64 of the Request that claim 4 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 4, Viollaz as modified by Research Disclosure and further modified by Sullivan '814 further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5,

Application/Control Number: 95/000,444                                    Page 57
Art Unit: 3993

line 18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8

mm" of Viollaz at page 6, line 4).

*Claim 5*

**Ground 33.**

Requester submits on the middle of page 65 of the Request that claim 5 is unpatentable

under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi in further view of

Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 5, Nesbitt as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the inner cover layer has a thickness of about 0.0375 inches** (from

"inner layer . . . preferably of a thickness in a range of 0.020 inches and 0.070 inches" of Nesbitt

at col. 3, lines 16-25) **and the outer cover layer has a thickness of about 0.0300 inches** (from

"thickness of the outer layer . . . may be in a range of 0.020 inches and 0.100 inches" of Nesbitt

at col. 3, lines 16-25), **the golf ball having an overall diameter of 1.680 inches or more** (from

"minimum diameter of 1.680 inches" of Nesbitt at col. 3, lines 8-15). It would have been

obvious to one of ordinary skill in the art at the time of the invention to further modify the golf

ball of Nesbitt as modified by Horiuchi and Sullivan '814 by having the inner cover about

0.0375 inches, outer cover about 0.0300 inches, and the overall diameter at 1.680 inches as

disclosed by Nesbitt so as to permit an initial velocity of 255 feet per second and stay within

USGA regulations (Nesbitt at col. 2, lines 50-58, and col. 3, lines 8-15).

Application/Control Number: 95/000,444                                        Page 58
Art Unit: 3993

**Ground 34.**

Requester submits on the middle of page 66 of the Request that claim 5 is unpatentable
under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in further view of
Sullivan '814. This proposed rejection is **adopted with modification**.

As to claim 5, Nesbitt as modified by Yabuki and further modified by Sullivan '814
further disclose **wherein the inner cover layer has a thickness of about 0.0375 inches** (from
"inner layer . . . preferably of a thickness in a range of 0.020 inches and 0.070 inches" of Nesbitt
at col. 3, lines 16-25) **and the outer cover layer has a thickness of about 0.0300 inches** (from
"thickness of the outer layer . . . may be in a range of 0.020 inches and 0.100 inches" of Nesbitt
at col. 3, lines 16-25), **the golf ball having an overall diameter of 1.680 inches or more** (from
"minimum diameter of 1.680 inches" of Nesbitt at col. 3, lines 8-15). It would have been
obvious to one of ordinary skill in the art at the time of the invention to further modify the golf
ball of Nesbitt as modified by Yabuki and Sullivan '814 by having the inner cover about 0.0375
inches, outer cover about 0.0300 inches, and the overall diameter at 1.680 inches as disclosed by
Nesbitt so as to permit an initial velocity of 255 feet per second and stay within USGA
regulations (Nesbitt at col. 2, lines 50-58, and col. 3, lines 8-15).


**Ground 35.**

Requester submits on the middle of page 68 of the Request that claim 5 is unpatentable
under 35 USC 103(a) as being obvious over Nesbitt in view of Statz in further view of Sullivan
'814. This proposed rejection is **adopted with modification**.

As to claim 5, Nesbitt as modified by Statz and further modified by Sullivan '814 further
disclose **wherein the inner cover layer has a thickness of about 0.0375 inches** (from "inner
layer . . . preferably of a thickness in a range of 0.020 inches and 0.070 inches" of Nesbitt at col.
3, lines 16-25) **and the outer cover layer has a thickness of about 0.0300 inches** (from
"thickness of the outer layer . . . may be in a range of 0.020 inches and 0.100 inches" of Nesbitt
at col. 3, lines 16-25), **the golf ball having an overall diameter of 1.680 inches or more** (from
"minimum diameter of 1.680 inches" of Nesbitt at col. 3, lines 8-15).  It would have been
obvious to one of ordinary skill in the art at the time of the invention to further modify the golf
ball of Nesbitt as modified by Statz and Sullivan '814 by having the inner cover about 0.0375
inches, outer cover about 0.0300 inches, and the overall diameter at 1.680 inches as disclosed by
Nesbitt so as to permit an initial velocity of 255 feet per second and stay within USGA
regulations (Nesbitt at col. 2, lines 50-58, and col. 3, lines 8-15).


**Ground 36.**

Requester submits on the middle of page 68 of the Request that claim 5 is unpatentable
under 35 USC 103(a) as being obvious over Nesbitt in view of Research Disclosure in further
view of Sullivan '814.  This proposed rejection is **adopted with modification**.

As to claim 5, Nesbitt as modified by Research Disclosure and further modified by
Sullivan '814 further disclose **wherein the inner cover layer has a thickness of about 0.0375
inches** (from "inner layer . . . preferably of a thickness in a range of 0.020 inches and 0.070
inches" of Nesbitt at col. 3, lines 16-25) **and the outer cover layer has a thickness of about
0.0300 inches** (from "thickness of the outer layer . . . may be in a range of 0.020 inches and

0.100 inches" of Nesbitt at col. 3, lines 16-25), **the golf ball having an overall diameter of**

**1.680 inches or more** (from "minimum diameter of 1.680 inches" of Nesbitt at col. 3, lines 8-

15). It would have been obvious to one of ordinary skill in the art at the time of the invention to

further modify the golf ball of Nesbitt as modified by Research Disclosure and Sullivan '814 by

having the inner cover about 0.0375 inches, outer cover about 0.0300 inches, and the overall

diameter at 1.680 inches as disclosed by Nesbitt so as to permit an initial velocity of 255 feet per

second and stay within USGA regulations (Nesbitt at col. 2, lines 50-58, and col. 3, lines 8-15).


**Ground 37.**

Requester submits on the top of page 67 of the Request that claim 5 is unpatentable under

35 USC 103(a) as being obvious over Viollaz in view of Horiuchi in further view of Sullivan

'814. This proposed rejection is **adopted**.

As to claim 5, Viollaz as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010**

**inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a**

**thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5, line

18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8

mm" of Viollaz at page 6, line 4).


**Ground 38.**

Application/Control Number: 95/000,444                                    Page 61
Art Unit: 3993

Requester submits on the bottom of page 67 of the Request that claim 5 is unpatentable
under 35 USC 103(a) as being obvious over Viollaz in view of Yabuki in further view of
Sullivan '814. This proposed rejection is **adopted**.

As to claim 5, Viollaz as modified by Yabuki and further modified by Sullivan '814
further disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010
inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a
thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5, line
18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8
mm" of Viollaz at page 6, line 4).


**Ground 39.**

Requester submits on the middle of page 69 of the Request that claim 5 is unpatentable
under 35 USC 103(a) as being obvious over Viollaz in view of Statz in further view of Sullivan
'814. This proposed rejection is **adopted**.

As to claim 5, Viollaz as modified by Statz and further modified by Sullivan '814 further
disclose **wherein the inner cover layer has a thickness of about 0.100 to about 0.010 inches**
(from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer has a thickness of
about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5, line 18), **the golf
ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8 mm" of Viollaz at
page 6, line 4).


**Ground 40.**

Application/Control Number: 95/000,444                              Page 62
Art Unit: 3993

Requester submits on the middle of page 69 of the Request that claim 5 is unpatentable

under 35 USC 103(a) as being obvious over Viollaz in view of Research Disclosure in further

view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 5, Viollaz as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the inner cover layer has a thickness of about 0.100 to**

**about 0.010 inches** (from "1 to 3 mm" of Viollaz at page 4, line 25) **and the outer cover layer**

**has a thickness of about 0.010 to about 0.05 inches** (from "0.9 to 3 mm" of Viollaz at page 5,

line 18), **the golf ball having an overall diameter of 1.680 inches or more** (from "42.7 to 42.8

mm" of Viollaz at page 6, line 4).

*Claim 6*

**Ground 41.**

Requester submits on the middle of page 70 of the Request that claim 6 is unpatentable

under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi in further view of

Sullivan '814. This proposed rejection is **adopted**.

As to claim 6, Nesbitt as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of**

**the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).

Application/Control Number: 95/000,444                                   Page 63
Art Unit: 3993

**Ground 42.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in further view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 6, Nesbitt as modified by Yabuki and further modified by Sullivan '814 further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of Sullivan '814 at col. 4, lines 54-66).

**Ground 43.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Statz in further view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 6, Nesbitt as modified by Statz and further modified by Sullivan '814 further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low**

modulus ionomer resin ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).


**Ground 44.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt,

Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious

over Nesbitt in view of Research Disclosure in further view of Sullivan '814.  This proposed

rejection is **adopted**.

As to claim 6, Nesbitt as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the outer layer composition includes 90 to 10 percent**

**by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high

modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight**

**of the soft low modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus

ionomer" of Sullivan '814 at col. 4, lines 54-66).


**Ground 45.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt,

Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious

over Viollaz in view of Horiuchi in further view of Sullivan '814.  This proposed rejection is

**adopted**.

As to claim 6, Viollaz as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of**

Application/Control Number: 95/000,444    Page 65
Art Unit: 3993

the hard modulus ionomer resin ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).


**Ground 46.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt,

Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious

over Viollaz in view of Yabuki in further view of Sullivan '814. This proposed rejection is

**adopted.**

As to claim 6, Viollaz as modified by Yabuki and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of**

**the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).


**Ground 47.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt,

Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious

over Viollaz in view of Statz in further view of Sullivan '814. This proposed rejection is

**adopted.**

Application/Control Number: 95/000,444                                    Page 66
Art Unit: 3993

As to claim 6, Viollaz as modified by Statz and further modified by Sullivan '814 further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of Sullivan '814 at col. 4, lines 54-66).

**Ground 48.**

Requester submits on the middle of page 70 of the Request (same rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 6 is unpatentable under 35 USC 103(a) as being obvious over Viollaz in view of Research Disclosure in further view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 6, Viollaz as modified by Research Disclosure and further modified by Sullivan '814 further disclose **wherein the outer layer composition includes 90 to 10 percent by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 10 to 90 percent by weight of the soft low modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of Sullivan '814 at col. 4, lines 54-66).

*Claim 7*

**Ground 49.**

Application/Control Number: 95/000,444                                    Page 67
Art Unit: 3993

Requester submits on the bottom of page 72 to top of page 73 of the Request that claim 7

is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi in

further view of Sullivan '814. This proposed rejection is **adopted**.

As to claim 7, Nesbitt as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 75 to 25 percent by weight of**

**the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) **and about 25 to 75 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).


**Ground 50.**

Requester submits on the bottom of page 72 to top of page 73 of the Request (same

rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC

103(a) as being obvious over Nesbitt in view of Yabuki in further view of Sullivan '814. This

proposed rejection is **adopted**.

As to claim 7, Nesbitt as modified by Yabuki and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 75 to 25 percent by weight of**

**the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) **and about 25 to 75 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).

Application/Control Number: 95/000,444                                        Page 68
Art Unit: 3993

**Ground 51.**

Requester submits on the bottom of page 72 to top of page 73 of the Request (same

rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC

103(a) as being obvious over Nesbitt in view of Statz in further view of Sullivan '814. This

proposed rejection is **adopted.**

As to claim 7, Nesbitt as modified by Statz and further modified by Sullivan '814 further

disclose **wherein the outer layer composition includes 75 to 25 percent by weight of the**

**hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66) **and about 25 to 75 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).

**Ground 52.**

Requester submits on the bottom of page 72 to top of page 73 of the Request (same

rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC

103(a) as being obvious over Nesbitt in view of Research Disclosure in further view of Sullivan

'814. This proposed rejection is **adopted.**

As to claim 7, Nesbitt as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the outer layer composition includes 75 to 25 percent**

**by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high

modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 25 to 75 percent by weight**

Application/Control Number: 95/000,444                                    Page 69
Art Unit: 3993

**of the soft low modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus

ionomer" of Sullivan '814 at col. 4, lines 54-66).

**Ground 53.**

Requester submits on the bottom of page 72 to top of page 73 of the Request (same

rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC

103(a) as being obvious over Viollaz in view of Horiuchi in further view of Sullivan '814. This

proposed rejection is **adopted**.

As to claim 7, Viollaz as modified by Horiuchi and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 75 to 25 percent by weight of**

**the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) **and about 25 to 75 percent by weight of the soft low**

**modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).

**Ground 54.**

Requester submits on bottom of page 72 to top of page 73 of the Request (same rejection

as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC 103(a) as

being obvious over Viollaz in view of Yabuki in further view of Sullivan '814. This proposed

rejection is **adopted**.

As to claim 7, Viollaz as modified by Yabuki and further modified by Sullivan '814

further disclose **wherein the outer layer composition includes 75 to 25 percent by weight of**

Application/Control Number: 95/000,444                                   Page 70
Art Unit: 3993

the hard modulus ionomer resin ("from about 25 to about 75 parts of a high modulus ionomer"

of Sullivan '814 at col. 4, lines 54-66) and about 25 to 75 percent by weight of the soft low

modulus ionomer resin ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).

**Ground 55.**

Requester submits on the bottom of page 72 to top of page 73 of the Request (same

rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC

103(a) as being obvious over Viollaz in view of Statz in further view of Sullivan '814. This

proposed rejection is **adopted**.

As to claim 7, Viollaz as modified by Statz and further modified by Sullivan '814 further

disclose **wherein the outer layer composition includes 75 to 25 percent by weight of the**

**hard modulus ionomer resin** ("from about 25 to about 75 parts of a high modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66) and about 25 to 75 percent by weight of the soft low

modulus ionomer resin ("from about 25 to about 75 parts of a low modulus ionomer" of

Sullivan '814 at col. 4, lines 54-66).

**Ground 56.**

Requester submits on the bottom of page 72 to top of page 73 of the Request (same

rejection as for Nesbitt, Horiuchi, and Sullivan '814) that claim 7 is unpatentable under 35 USC

103(a) as being obvious over Viollaz in view of Research Disclosure in further view of Sullivan

'814. This proposed rejection is **adopted**.

Application/Control Number: 95/000,444                                    Page 71
Art Unit: 3993

As to claim 7, Viollaz as modified by Research Disclosure and further modified by

Sullivan '814 further disclose **wherein the outer layer composition includes 75 to 25 percent**

**by weight of the hard modulus ionomer resin** ("from about 25 to about 75 parts of a high

modulus ionomer" of Sullivan '814 at col. 4, lines 54-66) **and about 25 to 75 percent by weight**

**of the soft low modulus ionomer resin** ("from about 25 to about 75 parts of a low modulus

ionomer" of Sullivan '814 at col. 4, lines 54-66).


*Claim 8*

**Ground 57.**

Requester submits on middle of page 76 to the middle of page 78 of the Request that

claim 8 is unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Horiuchi

in further view of Sullivan '814.  This proposed rejection is **adopted with modification.**

As to claim 8, Nesbitt discloses **a multi-layer golf ball** (abstract and Fig. 1) **comprising:**

**a spherical core** (12 of Figs. 1 and 2); **an inner cover layer** (14 of Figs. 1 and 2) **molded over**

**said spherical core** (shown in Figs. 1 and 2; "molded" on col. 2, lines 34-39) **to form a**

**spherical intermediate ball** (after "molded" there is formed an intermediate ball); **said inner**

**cover layer comprising an ionomer resin** (from "1605 Surlyn" of col. 2, lines 34-39) **having a**

**modulus of from about 15,000 to about 70,000 psi** (from the disclosure in Sullivan '381, the

patent at issue, at col. 2, lines 44-61, that 1605 Surlyn has a flexural modulus of 51,000 psi);

**and, an outer cover layer** (16 of Figs. 1 and 2) **molded over** (shown in Figs. 1 and 2; from

"then re-molded onto the inner ply or layer 14" col. 2, lines 40-49) **said spherical intermediate**

ball to form a multi-layer golf ball (shown in Figs. 1 and 2), **said outer cover layer having a**

**modulus in a range of about 1,000 to about 30,000 psi** (from "outer layer . . . such as type

1855 Surlyn" of Nesbitt at col. 2, lines 40-49 in that from the disclosure in Sullivan '381, the

patent at issue, at col. 2, lines 44-61, 1855 Surlyn has a flexural modulus of 14,000 psi.).  Not

disclosed is the inner cover layer ionomer being at least 16% by weight of an alpha, beta-

unsaturated carboxylic acid;  and,  the outer cover layer ionomer resin comprising a blend of i) a

sodium or zinc salt of a copolymer having from 2 to 8 carbon atoms and an unsaturated

monocarboxylic acid having from 3 to 8 carbon atoms, and ii) a sodium or zinc salt of a

terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated monomer of

the acrylate ester class having from 1 to 21 carbon atoms.  However, Horiuchi discloses a golf

ball with a cover layer **comprising an ionomer resin** (from "carboxyl-rich ionomer resin" of

col. 1, lines 31-36) **including at least 16% by weight of an alpha, beta-unsaturated**

**carboxylic acid** (from "alpha, beta-ethylenic unsaturated carboxylic acid limited to 16 to 30 %

by weight" of col. 1, lines 50-54);  Sullivan '814 discloses a golf ball with a cover layer

**comprising a blend** ("blending of a high modulus (hard) ionomer with a low modulus (soft)

ionomer to produce a base ionomer mixture" of col. 4, lines 4-8) **of i) a sodium or zinc salt of a**

**copolymer having from 2 to 8 carbon atoms and an unsaturated monocarboxylic acid**

**having from 3 to 8 carbon atoms** (col. 4, lines 25-31), **and ii) a sodium or zinc salt of a**

**terpolymer of an olefin having 2 to 8 carbon atoms, acrylic acid and an unsaturated**

**monomer of the acrylate ester class having from 1 to 21 carbon atoms** (from "sodium or zinc

salt of a terpolymer of an olefin having from 2 to 8 carbon atoms, an unsaturated

monocarboxylic acid having 3 to 8 carbon atoms and an unsaturated monomer of the acrylate

ester class having from 2 to 22 carbon atoms" of col. 4, lines 48-53). It would have been obvious

to one of ordinary skill in the art at the time of the invention to modify the golf ball of Nesbitt by

using the cover layer of Horiuchi for Nesbitt's inner cover layer so as to have a ball with

excellent impact resilience and flying performance (Horiuchi at col. 1, lines 5-10); and to further

modify by using the cover layer of Sullivan '814 for Nesbitt's outer cover layer so as to have a

ball with cut resistance and adequate back spin for the skilled golfer (Sullivan '814 at col. 3,

lines 46-55).


**Ground 58.**

Requester submits on page 79 to the top of page 81 of the Request that claim 8 is

unpatentable under 35 USC 103(a) as being obvious over Nesbitt in view of Yabuki in further

view of Sullivan '814. This proposed rejection is **adopted with modification.**

As to claim 8, Nesbitt discloses a **multi-layer golf ball** (abstract and Fig. 1) **comprising:**

**a spherical core** (12 of Figs. 1 and 2); **an inner cover layer** (14 of Figs. 1 and 2) **molded over

said spherical core** (shown in Figs. 1 and 2; "molded" on col. 2, lines 34-39) **to form a

spherical intermediate ball** (after "molded" there is formed an intermediate ball); **said inner

cover layer comprising an ionomer resin** (from "1605 Surlyn" of col. 2, lines 34-39) **having a

modulus of from about 15,000 to about 70,000 psi** (from the disclosure in Sullivan '381, the

patent at issue, at col. 2, lines 44-61, that 1605 Surlyn has a flexural modulus of 51,000 psi);

**and, an outer cover layer** (16 of Figs. 1 and 2) **molded** (shown in Figs. 1 and 2; from "then re-

molded onto the inner ply or layer 14" col. 2, lines 40-49) **over said spherical intermediate ball

to form a multi-layer golf ball** (shown in Figs. 1 and 2), **said outer cover layer having a**