## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ACUSHNET'S OPPOSITION TO CALLAWAY'S MOTION *IN LIMINE* TO PRECLUDE ANY REFERENCE TO TEST BALLS

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for Defendant Acushnet Company*

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: January 14, 2010
Public Version Dated: January 21, 2010
950562 / 30030

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

        A.      The Anticipation Test Balls ........................................................................2

        B.      Test Results for the Anticipation Test Balls ..............................................4

        C.      The Court's Exclusion of the Test Ball Evidence......................................5

        D.      The Federal Circuit Decision Regarding Test Balls ..................................6

III.    ARGUMENT ...........................................................................................................7

        A.      Acushnet Can Authenticate the Anticipation Test Balls............................7

        B.      Callaway Misapplies the Law of Anticipation to Nesbitt .........................8

        C.      The Test Ball Evidence is Probative of The Outer Cover Hardness of a
                Ball Disclosed by Nesbitt...........................................................................11

                1.      Dr. Statz Discloses the Relevance of the Test Balls .....................12

                2.      Reproductions and Testing of Prior Art Are Probative and Often
                        Admissible .....................................................................................13

                3.      The Choice of Core is not Relevant to Outer Cover Hardness.....16

                4.      Callaway's "Papi 94" Argument Is a Red Herring .......................18

                5.      Callaway's "Foaming" Argument is a Red Herring ......................20

        D.      The Probative Value of the Anticipation Test Balls is not Outweighed by
                Prejudice .....................................................................................................21

IV.     CONCLUSION......................................................................................................22

## TABLE OF AUTHORITIES

### CASES

*ADM Corp. v. Speedmaster Packaging Corp.*,
    384 F. Supp. 1325 (D.N.J. 1974) ...................................................................13

*Cardinal of Adrian, Inc., v. Peerless Wood Products, Inc.*,
    363 F. Supp. 1298 (E.D. Mich. 1973), *aff'd*, 515 F.2d 534 (6th Cir. 1975) ........................13

*Galaxo Group Ltd. V. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004)................................................................15, 16

*In re Gleave*,
    560 F.3d 1331 (Fed. Cir. 2009)................................................................8, 10

*In re Graves*,
    69 F.3d 1147 (Fed. Cir. 1995)................................................................17, 18

*Kalipharma, Inc. v. Bristol-Myers Co.*,
    707 F. Supp. 741 (S.D.N.Y. 1989) .............................................................15

*In re LeGrice*,
    302 F.2d 929 (C.C.P.A. 1962) ................................................................18

*Leggett & Platt, Inc. v. VUTEK, Inc.*,
    537 F.3d 1349 (Fed. Cir. 2008)................................................................8

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008)................................................................10

*Perricone v. Medicis Pharm. Corp.*,
    432 F.3d 1368 (Fed. Cir. 2005)................................................................8, 9, 10

*Polymer Dynamics, Inc. v. Bayer Corp.*,
    No. 99-4040, 2005 WL 1041197 (E.D. Pa. May 2, 2005)................................14

*Promega Corp. v. Novagen, Inc.*,
    6 F. Supp. 2d 1004 (W.D. Wis. 1997) .......................................................15

*Sanofi-Synthelabo v. Apotex, Inc.*,
    550 F.3d 1075 (Fed. Cir. 2008)................................................................10, 11

*Seachange International, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)................................................................20

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
    209 F. Supp. 2d 348 (D. Del. 2002)................................................................15

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
    631 F. Supp. 2d 1010 (N. D. Ill. 2009) .......................................................9, 10

*Young Dental Manufacturing Co., Inc. v. Q3 Special Products, Inc.,*
    112 F.3d 1137 (Fed. Cir. 1997)...................................................................13

## FEDERAL STATUTES

Fed. R. Evid. 401 ..........................................................................................14

Defendant Acushnet Company ("Acushnet") files this brief in opposition to Callaway's motion *in limine* to preclude admission of the test balls created by Acushnet for its anticipation case.

## I.   INTRODUCTION

The anticipation test balls are relevant evidence of the inherent hardness of the outer cover of a ball made according to the Nesbitt patent. Nesbitt describes a multi-layer golf ball with cover layers that are selected from among specific foamable compositions set forth in Molitor '637. The Molitor patent's teachings are incorporated by reference into Nesbitt. Acushnet followed the directions of Nesbitt—the result is a golf ball with an outer cover hardness that is within the claims of the patents-in-suit. Acushnet will offer the testimony of Jeff Dalton, the person who directly supervised the making of the golf balls, and Jim Galipeau, the person who tested the golf balls. Dr. Statz, Acushnet's invalidity expert, will confirm the relevance of the test ball evidence.

Callaway's criticisms of the test ball evidence go to the weight of the evidence not its admissibility. Callaway objects that the test balls "deviate" from the explicit teachings of Nesbitt. Tellingly, however, Callaway does not argue that the alleged "deviations" from Nesbitt have any impact whatsoever on the outer cover hardness of the resulting ball. The core formulation in the test balls is one the inventor of the patents-in-suit identified as the core used by Nesbitt. Nesbitt and Sullivan were coworkers at Spalding, and Sullivan knew the cores used by Nesbitt. Thus, the test balls accurately reflect the outer cover hardness of a ball made using Nesbitt's teachings. Courts often admit reproductions of prior art. Any arguments that the reproduction is not faithful to the prior art go to the weight of the evidence, and should be addressed on cross-examination.

No undue prejudice will result from the admission of the anticipation test balls. The Court can mitigate any chance of confusion between the anticipation and obviousness cases with an appropriate limiting instruction. Since the probative value of the evidence is not outweighed by undue prejudice, the test balls should be admitted.

## II.      FACTUAL BACKGROUND

### A.      The Anticipation Test Balls

The primary dispute on the issue of anticipation is whether Nesbitt discloses a golf ball using the claimed materials that has an outer cover hardness of 64 Shore D or less. While Nesbitt teaches a soft cover together with the dimensions and materials that should be used in the disclosed golf balls, it does not explicitly state what the resulting "on the ball" Shore D hardness of the outer cover would be.

To ascertain the inherent outer cover hardness that results from following Nesbitt's instructions, Acushnet prepared golf balls following those instructions. In particular, Nesbitt discloses a multi-layer golf ball having a) a solid rubber core; b) a hard, stiff resinous inner cover layer; and c) a soft, low flexural modulus outer cover. Ex. 1, Nesbitt, Abstract.

Nesbitt discloses the dimensions of the various layers of the golf ball, and also discloses the materials that may be used in the inner and outer cover layers. Nesbitt explicitly teaches that one or both of the cover layers can be made using one of the "foamable compositions" disclosed in Molitor '637. Ex. 1, Nesbitt at col. 3:56-61 ("Reference is made to [Molitor '637] which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16 for the golf ball of this invention.").

Molitor explicitly identifies and teaches the use of a thermoplastic polyurethane Estane 58133 as a suitable cover layer material. Ex. 2, Molitor '637 at col. 18:32-42. Molitor also teaches the use of the ionomer blend of Surlyns 1605 and 1557 as a cover material. *Id.* at col.

2

14:55-65.  Hence Nesbitt discloses a golf ball with a solid rubber core; an inner cover layer

formed of a blend of Surlyn ionomers 1605 and 1557; and an outer cover formed of Estane

58133 polyurethane.

Acushnet made the above golf ball disclosed by Nesbitt.  Specifically, Acushnet made a

golf ball with a solid rubber core, an inner cover layer formed of blended Surlyns 1605 and 1557,

and an outer cover layer formed of Estane 58133 polyurethane.  Ex. 4 08/24/07 Dalton Decl. ¶ 8.

Acushnet used the dimensions taught by Nesbitt for the various layers.  In particular, the

thickness of the inner cover layer was 0.035 inches and the thickness of the outer cover layer was

0.0575 inches, consistent with the disclosure of Nesbitt.  Ex. 1, Nesbitt at col. 3:26-30; 3:39-40.

Nesbitt does not specify a particular type of solid core to use.  Rather it teaches that the

core should be a "resilient polymeric material or rubber-like material," and that the density and

size of the core could be adjusted to make a ball that complies with the size and weight

restrictions in the rules of golf, as is well known to those of ordinary skill in the art.  Ex. 1,

Nesbitt at col. 2:31-34; col. 2:66-3:7.  The majority of the disclosure of Nesbitt is concerned with

the dimensions, properties and materials of the inner and outer cover layers.

For the specific formulation of the core, Acushnet used a formulation attributed to the

Nesbitt patent by Mr. Sullivan, the inventor of the patents-in-suit.  Specifically, a 1994 U.K.

patent (related to the patents-in-suit) described the Nesbitt patent and attributes a core

formulation to Nesbitt.  Ex. 3 GB 2 278 609 A at 39-40 (setting forth the core formulation) & 46

("The ball comprising inner layer formulation D and Surlyn 9020 identifies the ball in the

Nesbitt 4,431,193 patent.").  The same disclosure exists in the related patents-in-suit.  *See, e.g.,*

3

'293 patent at col. 16:15-30.  Thus, the core of the test balls is made using the core formulation Sullivan identified as the core of Nesbitt, with one small exception.[1]

In addition to the golf ball described above, Acushnet also made a second Nesbitt ball using the same dimensions, core and outer cover layer, but whose inner cover layer was formed of the single ionomer Surlyn 1605 as disclosed in the primary example of Nesbitt.  Ex. 4, 08/24/07 Dalton Decl. ¶ 8-9.  This corresponds to the golf ball taught by Nesbitt where only the outer cover layer is replaced with one of the materials in Molitor '637.

The two ball constructions described above are referred to in various declarations and reports as BALL_4 and BALL_1 respectively.  *Id.* at ¶ 8-9.  Acushnet made 12 samples of each golf ball construction.  *Id.* at ¶ 8-9.

Jeffrey Dalton, a former Acushnet engineer and Vice President, personally directed the preparation of the anticipation test balls.  *Id.* at ¶ 8.  Mr. Dalton obtained the materials disclosed in Nesbitt and Molitor '637, and oversaw the actual process of forming the golf balls.  *Id.* at ¶ 4-9.  Mr. Dalton was deposed specifically about his role in the preparation of those balls and will testify and be subject to cross examination.  Ex. 5, 10/16/07 Dalton Tr. at 44-66.

**B.      Test Results for the Anticipation Test Balls**

After Acushnet made the golf balls taught by Nesbitt, it sent them to a certified independent testing laboratory then called Plastics Testing Laboratories, Inc. ("PTLI," now renamed Intertek).  Ex. 5, Dalton Tr. at 59:16-60:6.  The laboratory tested the "on the ball" Shore D hardness of the balls and provided a report setting forth the results of the testing.  *See* Ex. 6, PTLI Test Report.

---

[1] The Nesbitt core formulation calls for a very small amount (0.5 parts per hundred) of a substance called Papi 94.  Acushnet did not include that ingredient due to its hazardous nature and the fact that it would have no impact on the outer cover hardness.  Dalton Decl. ¶ 8.

The BALL_4 construction ball (made from the Nesbitt core, the Surlyn 1605/1557 blend, and Estane 58133) had an "on the ball" Shore D hardness of 61.0. *Id.* at AC0131408. The BALL_1 construction ball (made from the Nesbitt core, Surlyn 1605, and Estane 58133) had an "on the ball" Shore D hardness of 62.0. *Id.* at AC0131407.

James Galipeau, formerly of PTLI, will authenticate the results of the testing of the anticipation balls. Mr. Galipeau personally supervised the testing of the balls. Ex. 7, Galipeau Tr. at 11-12. Mr. Galipeau was deposed during discovery about the testing his lab performed under his supervision. Ex. 7, Galipeau Tr. at 9-15. Mr. Galipeau testified at length about PTLI's testing procedures, certification of its lab equipment, and testing results. *Id.* at 18-22; 34-40.

Acushnet's invalidity expert, Dr. Statz, sets forth in his report the reasons why the Nesbitt patent discloses a golf ball that has a solid core, an inner cover layer of blended Surlyn 1605/1557, and an outer cover layer of Estane 58133. Ex. 8, Statz Report ¶¶ 66-77. He then relies on the test ball evidence to confirm that the "on the ball" Shore D hardness of the resulting ball would be less than 64. *Id.* ¶ 78.

### C.    The Court's Exclusion of the Test Ball Evidence

Prior to the first trial, Callaway moved to exclude the testimony of Dr. MacKnight and the test ball evidence itself, including both the anticipation and obviousness test balls. D.I. 282 at 9-15. In its motion, Callaway made the same arguments that it makes in this motion, namely that the anticipation balls were not faithful recreations of the prior art, and that they would cause undue prejudice to the jury. D.I. 282 at 9. Callaway also argued that Dr. MacKnight did not have enough personal involvement in the creation or testing of the balls to testify. *Id.* at 6-8.

The Court agreed with Callaway, excluding Dr. MacKnight's testimony. D.I. 346 at 1-2. The Court also conditionally excluded the test results stating: "to the extent that the reliability of the test results derives from Dr. MacKnight's voucher, such evidence is excluded." D.I. 346

at 2.  At the pretrial conference, Acushnet sought permission to offer the test balls into evidence

through percipient witnesses who actually made and tested the test balls.  D.I. 349 at 33:11-17.

The Court expressed concerns about who Acushnet would call to indicate why the testing was

done in the first place, and Acushnet offered Dr. Statz.  After hearing from both sides on the

issue, the Court stated that it would consider the issue further and provide further guidance to the

parties.  *Id.* at 39:20-23.  Shortly thereafter, on November 3, 2007, the Court issued a second

written order excluding the test balls for obviousness unless Callaway opened the door to their

admission through cross examination:

> Dr. Statz may testify consistent with his expert report vis-à-vis the prior art and
> motivation to combine.  He may not testify about test golf balls.  Only if
> Callaway, through its cross examination, raises an issue of fact that implicates the
> test golf balls may such balls become the subject of testimony.  More specifically,
> with permission and following Dr. Statz's testimony, Acushnet may present its
> fact witnesses to testify about the testing procedures.  If a proper foundation is
> laid in this regard, Dr. Statz may retake the stand to relate how and why he relied
> on these results from his opinion of invalidity.

D.I. 362 at 1-2.

At trial, the Court found that Callaway's cross examination did not open the door to the

admission of the test balls for Acushnet's obviousness case.  Ex. 9, T. Tr. at 746-757.

### D.    The Federal Circuit Decision Regarding Test Balls

After the jury returned its verdict, Acushnet moved for a new trial, in part on the basis

that the Court had improperly excluded the test ball evidence.  D.I. 417 at 35-36.  After the Court

denied its motion, Acushnet appealed this issue to the Federal Circuit.  The Federal Circuit

affirmed the Court's exclusion of test ball evidence for obviousness but reversed the Court's

exclusion of the anticipation test ball evidence, and remanded for a determination of authenticity

of the evidence:

Callaway contends that the trial court properly excluded the test ball evidence on the issue of anticipation. On this point, we disagree. This requires us to examine the grounds for the district court's decision in this respect.

First, the district court refused to consider the test ball evidence on the issue of anticipation because it found that Nesbitt did not incorporate the Molitor '637 reference, and that the test balls therefore did not embody any single item of anticipatory prior art. *See Summary Judgment Order,* 523 F. Supp. 2d at 400 ("The balls were neither completely representative of Nesbitt, nor were they completely representative of Proudfit. . . ."). This ground for excluding the evidence necessarily fails in light of our holding that Nesbitt does incorporate Molitor.

Second, with respect to obviousness, the district court refused to allow the test ball evidence at trial because presentation of the evidence could lead the jury to give undue weight to Acushnet's arguments concerning motivation to combine and obviousness. This ground is inapplicable to Acushnet's anticipation argument, where motivation to combine is not an issue.

Third, at summary judgment, the district court excluded the testimony of Acushnet's expert, Dr. McKnight, on the ground that MacKnight had not had sufficient involvement in the preparation and testing of the balls to vouch for their reliability. *Daubert Order,* 2007 WL 4165401, at *1 ("Dr. MacKnight neither prepared nor tested anything . . . . [T]o the extent that the reliability of the test balls derives from Dr. MacKnight's voucher, such evidence is excluded."). As discussed above we find no error in the district court's ruling, but the fact remains that at trial Acushnet also proffered the testimony of Jeff Dalton (who supervised preparation of the balls) and of an employee of the testing laboratory. On remand, that testimony may be sufficient to authenticate the balls, and support the admission into evidence of balls designed to replicate Nesbitt on the issue of anticipation.

Ex. 11, Fed. Cir. Opinion 28-29 (emphasis added).

Thus, the Federal Circuit rejected Callaway's arguments for the exclusion of the anticipation test balls, and left open only the issue of authentication of that evidence.

## III.    ARGUMENT

### A.    Acushnet Can Authenticate the Anticipation Test Balls

Messrs. Dalton and Galipeau will be able to establish the entire factual predicate necessary to admit the test balls into evidence. Mr. Dalton personally supervised the manufacture of the test balls. Ex. 4, 08/24/07 Dalton Decl. ¶ 8. Mr. Galipeau personally

oversaw the testing of the balls, and will be able to sponsor the test results. Ex. 7, at 25:17-20;

26:21-29:1. Thus, there should be no question that Acushnet can authenticate the test balls and

test results. This is the sole criterion the Federal Circuit identified that Acushnet needed to

satisfy to admit the test balls. Since Acushnet can authenticate the evidence, it should be

admitted.

### B.    Callaway Misapplies the Law of Anticipation to Nesbitt

Callaway argues that Acushnet's test ball evidence impermissibly relies on "picking and

choosing" disclosures from the Nesbitt patent. Callaway is wrong. Nesbitt discloses a three-

piece golf ball with specified dimensions. Ex. 1, Nesbitt col. 3:8-44. Nesbitt explicitly teaches

that one or both of the inner and outer cover layers can make use of certain "foamable

compositions" set forth in Molitor '637. *Id.* at col. 3:50-61. Acushnet followed these directions

to make the inner and outer cover layers of the Nesbitt ball with particular foamable

compositions set forth in Molitor '637.

Anticipation is not defeated merely because a reference discloses multiple options for a

particular feature. "The anticipation analysis asks solely whether the prior art reference discloses

and enables the claimed invention, and not how the prior art characterizes that disclosure or

whether alternatives are also disclosed." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368,

1376 (Fed. Cir. 2005); *see also Leggett & Platt, Inc. v. VUTEK, Inc.*, 537 F.3d 1349, 1356 (Fed.

Cir. 2008) (rejecting "the erroneous assumption that the disclosure of multiple examples renders

one example less anticipatory"); *In re Gleave*, 560 F.3d 1331, 1336-37 (Fed. Cir. 2009)

8

(rejecting the argument that a prior art reference cannot anticipate by listing an element in a long

list of possibilities).[2]

The Federal Circuit has found anticipation in very similar cases. In *Perricone* the claim

in question recited a composition for treating skin sunburn that included ascorbyl palmitate. 432

F.3d at 1376. The relevant prior art reference listed fourteen options for one of the composition

ingredients. Among those fourteen options was the claimed ingredient, ascorbyl palmitate. *Id.*

Since the claimed limitation was disclosed as an option, the Federal Circuit affirmed summary

judgment of anticipation of the relevant claims:

> This court rejects the notion that one of these ingredients cannot anticipate
> because it appears without special emphasis in a longer list. To the contrary, the
> disclosure is prior art to the extent of its enabling disclosure.

*Id.* Other courts have followed *Perricone* finding anticipation where the claimed limitations are

disclosed in a list of options in the prior art. A recent district court case is *Wm. Wrigley Jr. Co. v.*

*Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010, 1030-31 (N. D. Ill. 2009). There, the claim at

issue concerned a chewing gum that included a) menthol as a flavoring agent and b) a cooling

agent referred to as WS-23. *Id.* at 1017-18. The prior art disclosed a chewing gum that listed 23

possible flavoring agents, and incorporated by reference another patent that disclosed two

possible cooling agents. *Id.* at 1027. Among the disclosed flavoring agents was menthol. *Id.*

---

[2] Callaway made the same argument in a litigation against its competitor Bridgestone. There, Callaway argued that Nesbitt anticipated Bridgestone's patent despite its disclosure of alternatives that did not anticipate:

> Under settled patent law, a prior-art disclosure of even a single golf ball having
> physical properties that fall within the [Bridgestone patent's] claims anticipates
> those claims. That anticipation applies even if the same prior-art reference also
> discloses a golf ball having a range of physical properties that are outside the
> scope of the claims. Accordingly it is irrelevant that Nesbitt discloses variations
> of golf balls that do not anticipate the [Bridgestone] patent.

Ex. 13, *Bridgestone Sports Co., Ltd. v. Callaway Golf Co. et al.*, Reply Brief at 1.

Among the two cooling agents was WS-23. *Id.* The court found the claim anticipated. *Id.* at 1030.

Like the *Perricone* and *Wm Wrigley* cases, Nesbitt through its incorporation of Molitor '637, provides a list of options for each cover layer of the disclosed golf ball and expressly teaches that one of those options should be selected. Callaway's argument that Nesbitt provides no particular guidance to use the blended ionomer and polyurethane materials as opposed to the other materials disclosed in Molitor '637 is inapposite. "[T]he mere fact that the elements of a claim are set forth in the prior art patent in a list along with other ingredients without any 'special emphasis' is irrelevant to an anticipation analysis. Instead, all that is relevant is whether the prior art disclosure is enabling." *Wm. Wrigley Jr. Co.*, 631 F. Supp. 2d at 1030 (quoting *Perricone*, 432 F.3d at 1376); *see also In re Gleave*, 560 F.3d at 1336-37 (finding claims anticipated where the claim limitation appeared in a long list of other compounds in the prior art).

The cases cited by Callaway are inapplicable. In *Net MoneyIN, Inc. v. VeriSign, Inc.* the defendant used disclosures from two distinct, unrelated embodiments to try to show anticipation. 545 F.3d 1359, 1369 (Fed. Cir. 2008). Unlike Nesbitt, the prior art reference in that case did not link those two teachings. Thus, to arrive at anticipation, each of the two distinct embodiments had to be disassembled, specific portions of their code selected, and then an entirely new embodiment created combining functions of each embodiment. *Id.* at 1371. In contrast, Nesbitt explicitly directs the reader to use the list of foamable compositions as options for one or both of the cover layers of the disclosed golf ball.

Callaway's reliance on genus/species cases is likewise misplaced. For example, in *Sanofi-Synthelabo v. Apotex, Inc.*, the defendant argued that the prior art's disclosure of the

genus "enantiomers" anticipated a particular enantiomer compound called PCR 4099. 550 F.3d 1075, 1083-84 (Fed. Cir. 2008). The Federal Circuit held that the disclosure of such a genus does not necessarily disclose every species within that genus. *Id.* The holding and reasoning of that case is wholly inapplicable here. Here, the claims of the patents-in-suit recite the use of polyurethane in the outer cover. *See, e.g.*, '293 patent claim 1. Molitor '637, which is incorporated by Nesbitt, discloses a specific polyurethane composition, comprising 99.7% Estane 58133 and 0.3% of the blowing agent Ficel EPA. Ex. 2, Molitor '637 at col. 18:32-42. Thus, Molitor '637 discloses a single species, not merely a genus or class of materials.

As Molitor '637 discloses specific compositions that satisfy the broad "polyurethane" limitations of the patents-in-suit, all of the genus/species cases Callaway relies on are similarly inapplicable here. *See* cases cited at D.I. 537 at 23-24. In light of the Federal Circuit's decision in the appeal of this case that the only issue to be resolved for the test balls is their authenticity, Callaway's arguments about the relevance of the evidence are misplaced.

### C.   The Test Ball Evidence is Probative of The Outer Cover Hardness of a Ball Disclosed by Nesbitt

Acushnet submits the test evidence for only one purpose – to establish the hardness of the outer cover of the ball taught by Nesbitt. That the core is not explicitly disclosed in Nesbitt, or that a miniscule amount of an irrelevant ingredient was omitted from the core formulation, is utterly immaterial to the hardness of the outer cover. The test ball evidence shows what the outer cover hardness would be when the teachings of Nesbitt are followed, and thus it is probative, highly persuasive evidence.

Callaway argues that the test ball evidence is not probative of the outer cover hardness because of alleged deviations from the teaching of Nesbitt and Molitor '637. Conspicuously

absent from Callaway's brief, however, is any argument (let alone evidence) that any of these alleged deviations <u>matters</u> to the outer cover Shore D hardness.

### 1.   Dr. Statz Discloses the Relevance of the Test Balls

Acushnet's invalidity expert, Dr. Statz, clearly disclosed in his expert report the test balls and the relevance of the balls to the anticipation issue.  In particular, Dr. Statz's report sets forth his opinions that:

- Nesbitt discloses a three-piece golf ball (Statz Report at ¶ 66);

- Nesbitt sets forth the dimensions of layers within the claims (*Id.* at ¶ 68);

- Nesbitt directs the reader to select materials for one or both layers of the ball from among the "foamable compositions" set forth in Molitor '637 (*Id.* at ¶ 70);

- One of the foamable compositions set forth in Molitor '637 includes Estane 58133 polyurethane, and a person of ordinary skill in the art would have been directed to use that material as the outer cover layer of the Nesbitt ball (*Id.* at ¶¶ 72-73);

- Another foamable composition set forth in Molitor '637 is the blend of Surlyns 1605 and 1557, and a person of ordinary skill in the art would have been directed to use that blend in the inner cover layer of the Nesbitt ball (*Id.* at ¶ 74);

Dr. Statz concludes from the above that a person of ordinary skill in the art would read Nesbitt to teach "a golf ball with a solid core, a hard inner cover layer (which may be a single ionomer or a blend of ionomers), and a soft polyurethane outer cover." *Id.* at ¶ 76.  In light of this conclusion, Dr. Statz relies on the anticipation test ball evidence to show that the ball Nesbitt discloses would have an "on the ball" outer cover hardness of less than 64. *Id.* at ¶ 78.

Contrary to Callaway's argument and selective quotation, the Federal Circuit did not

exclude Dr. Statz from testifying about the relevance of the test balls.[3]  A full review of the

paragraph Callaway quotes shows that the Federal Circuit affirmed only the exclusion of Dr.

MacKnight; Dr. Statz was not addressed: "[A]t summary judgment, the district court excluded

the testimony of Acushnet's expert, Dr. McKnight…. As discussed above we find no error in the

district court's ruling." Ex. 11, Fed. Cir. Opinion at 28-29.

Since percipient witnesses can lay the factual foundation for the test balls, and Dr. Statz

can lay any required technical foundation for the relevance of the balls, Acushnet should be

permitted to offer the anticipation test ball evidence at trial.

### 2.    Reproductions and Testing of Prior Art Are Probative and Often Admissible

Courts frequently admit evidence of reproductions and testing of prior art such as that

offered by Acushnet. *See, e.g., Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.,* 112 F.3d

1137, 1146 (Fed. Cir. 1997) (affirming District Court's decision to admit models made according

to the teachings of the prior art even when the models "oversimplified" the prior art). *See also*

*ADM Corp. v. Speedmaster Packaging Corp.,* 384 F. Supp. 1325, 1345 (D.N.J. 1974) ("This

Court has considered numerous patents, and models made from those patents, in seeking to find

the prior art against which to judge the obviousness of Beskind's claimed invention."); *Cardinal*

*of Adrian, Inc., v. Peerless Wood Prods., Inc.,* 363 F. Supp. 1298, 1300 (E.D. Mich. 1973), *aff'd,*

515 F.2d 534 (6th Cir. 1975) ("The Court also observed demonstrations of assembled kitchen

---

[3] The Court did not exclude Dr. Statz from testifying about the anticipation test balls as Callaway argues.  The Court excluded Dr. MacKnight from testifying on the basis that he had insufficient personal involvement in the tests to testify about them.  D.I. 346 at 1-2.  The Court conditioned its exclusion of the test ball evidence on their sponsorship by Dr. MacKnight. *Id.* at 2.  The Court's rulings regarding test balls after that point were all related only to obviousness test balls, since the Court granted Callaway's motion for summary judgment of no anticipation.

cabinets equipped with such hinges and studied working models of other hinges which

defendants had built pursuant to the disclosures of certain prior art patents.").

The admissibility of such prior art reproduction and testing is governed by the Rules of

Evidence.  Under Rule 401, such evidence is relevant if has a tendency to make the fact in

question (in this case whether the golf ball disclosed by Nesbitt has the claimed hardness

property) more or less probable.  Fed. R. Evid. 401.  The test balls plainly meet this test of

relevance.  Even Callaway's expert stated that the best way to determine what a golf ball patent

teaches is to "make the ball and measure it."  Ex. 10, Risen Depo. Tr. at 135:8-136:8.[4]  That is

precisely what Acushnet did, and the results of its testing are relevant to the issue of anticipation.

Callaway's alleged flaws in the preparation of the test balls are no more than theoretical

"nitpicks" that do not bear at all on the probative nature of Acushnet's evidence.  Callaway does

not, and cannot, offer any proof that such choices matter to the point Acushnet advances, namely

the hardness of the outer cover of the ball.  Any disputes Callaway has about alleged deviations

go to the weight of the evidence, not its admissibility.  *See Polymer Dynamics, Inc. v. Bayer

Corp.*, No. 99-4040, 2005 WL 1041197, at *3 (E.D. Pa. May 2, 2005) ("[a]ny differences

---

[4] Callaway made precisely the same argument in its litigation against Bridgestone.  There,
Callaway argued that Nesbitt anticipated a Bridgestone patent, the claims of which included
limitations not explicitly disclosed in Nesbitt.  Callaway stated:

> In order to ascertain whether a description of a prior art golf ball
> anticipates the patent claims, one need only objectively measure the
> properties of the described prior art golf ball.  If the prior art golf ball has
> each of the claimed properties, it anticipates the claims.  Here, the golf ball
> described in the Nesbitt patent has each of the properties claimed in the
> [Bridgestone] patent and therefore anticipates the claims of the
> [Bridgestone] patent.

Ex. 12, *Bridgestone Sports Co., Ltd. v. Callaway Golf Co. et al.*, Memo. at 6.

between the experiment of Dr. Johnson and the actual operation of the Bayer machinery goes to the weight of Dr. Johnson's testimony, not its admissibility").

Courts have admitted prior art reproductions and test evidence in similar circumstances. In *Promega Corp. v. Novagen, Inc.*, the defendant performed experiments to demonstrate that the prior art anticipated the claims at issue. 6 F. Supp. 2d 1004, 1033 (W.D. Wis. 1997). The plaintiff claimed that the experiments did not faithfully recreate the prior art. *Id.* The court admitted the evidence, stating: "I cannot say that defendant's replications of the [prior art] are so flawed as to be unreliable. . . . Whether defendant's experiments are reliable replications of the prior art is a question not properly resolved at this stage of the proceedings. A jury must make that determination." *Id. See also Kalipharma, Inc. v. Bristol-Myers Co.*, 707 F. Supp. 741, 754 (S.D.N.Y. 1989) (stating, in the context of an anticipation analysis, "The Court finds that the variations made ... in attempting to reproduce the [prior art patent] were obvious to those persons with ordinary skill in the art. The Court thus rejects defendant's argument that [the alleged infringer's] procedures constituted a marked departure from the teachings of the prior art.").

Callaway relies on *Wesley Jessen Corp. v. Bausch & Lomb, Inc.* to argue that experiments must "scrupulously conform" to the prior art to be admissible. 209 F. Supp. 2d 348 (D. Del. 2002). *See* D.I. 537 at 15. Callaway's reliance on that case is misplaced. *Wesley Jessen* was a bench trial in which the Court did consider the prior art testing evidence, but held that it was not enough to establish anticipation. 209 F. Supp. at 393. The Court did not address admissibility. The other case Callaway relies on for this proposition, *Glaxo Group Ltd. v. Apotex, Inc.*, was also a bench trial in which the court considered, but was not persuaded by, the

prior art testing evidence.  376 F.3d 1339, 1348-49 (Fed. Cir. 2004).  These cases did not address admissibility of prior art testing evidence.

As set forth below, the criticisms Callaway musters about the test ball evidence do not change the probative nature of the evidence.  Callaway can raise any minor deviations from the teaching of Nesbitt and Molitor '637 through cross-examination.

### 3.    The Choice of Core is not Relevant to Outer Cover Hardness

Callaway criticizes the anticipation test balls on the basis that Nesbitt does not set forth the composition of its core.  However, there is no evidence that the core formulation has any effect whatsoever on the outer cover Shore D hardness.[5]  Instead, the record evidence establishes that the choice of core has no meaningful effect on the outer cover hardness for balls like that disclosed by Nesbitt.  For example, Table 7 of the '293 patent shows that the choice of core formulation had no effect at all on the outer cover layer Shore D hardness for the balls reported there:

TABLE 7

| Sample # | CORE | INNER LAYER | THICKNESS | COMP/ COR | OUTER COVER | THICKNESS | COMP (Rhiele) | COR | SHORE D | SPIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 1042 YELLOW | NONE | — | SEE BELOW | TOP GRADE | 0.055" | 61 | .800 | 68 | 7331 |
| 9 | 1042 YELLOW | NONE | — | SEE BELOW | 959/960 | 0.055" | 56 | .808 | 73 | 6516 |
| 10 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | 959/960 | 0.055" | 48 | .830 | 73 | 6258 |
| 11 | 1042 YELLOW | NONE | — | SEE BELOW | SD 90 | 0.055" | 62 | .792 | 63 | 8421 |
| 12 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | SD 90 | 0.055" | 55 | .811 | 63 | 8265 |
| 13 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | SD 90 | 0.055" | 53 | .813 | 63 | 8254 |
| 14 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | TOP GRADE | 0.055" | 51 | .819 | 68 | 7390 |
| 15 | 1042 YELLOW | NONE | — | SEE BELOW | Z-BALATA | 0.055" | 67 | .782 | 55 | 9475 |
| 16 | SPECIAL 1.47" | 959/960 | 0.050" | 65/.805 | Z-BALATA | 0.055" | 61 | .800 | 55 | 9026 |
| 17 | SPECIAL 1.47" | TOP GRADE | 0.050" | 66/.799 | Z-BALATA | 0.055" | 60 | .798 | 55 | 9262 |

1042 YELLOW > COMP = 72, COR = .780
SPECIAL 1.47" CORE >COMP = 67, COR = .782

Samples 15-17 above show three golf balls with the same outer cover layer, but different cores (or the same core and a different inner cover layer material).  Nonetheless, the outer cover Shore

---

[5] Acushnet recently performed tests that demonstrate the choice of core formulation has virtually no effect on the outer cover Shore D hardness of the ball disclosed by Nesbitt.  *See* D.I. 521, Declaration of Jeffrey Dalton.

D hardness of all three balls remains constant at 55.[6]  The Nesbitt ball has an outer cover that is

even thicker than the balls disclosed in Table 7 (0.055 inches in the Table 7 balls; 0.0575 inches

in the Nesbitt ball).  Thus, it is not plausible to think that the selection of the core in Nesbitt has

any impact on the outer cover hardness.

Indeed, the patents-in-suit make clear the specific core formulation is of no importance to

Mr. Sullivan's invention. *See* '293 Patent, col. 15:16-21 ("Specifically, the golf balls can be

produced by injection molding or compression molding the inner cover layer about wound or

solid molded cores to produce an intermediate golf ball . . .") ; *id.* col. 15:23-26.  Nowhere do the

patents indicate that the choice of core formula could impact the outer cover hardness in any

way, or teach that particular cores should be used to obtain the claimed outer cover hardness.

Just as the patents-in-suit are agnostic about the core formulation, and focus on the

composition and properties of the inner and outer cover layers, Nesbitt's disclosure is similarly

focused on the cover layers.  Indeed, Nesbitt does not disclose many other details of the golf ball

that are irrelevant to the hardness of the cover layers, such as the dimple pattern, the dimple

shapes, the aerodynamic properties, the type of optical brighteners used, or the type of paint

coating.  Nesbitt does, however, disclose the salient features of the golf ball that dictate the cover

hardness properties, namely the dimensions and materials of the cover layers.

Callaway seems to suggest that as long as *any* aspect of a prior art patent or publication is

not specified with the detail present in a blueprint or a manufacturing specification, the prior art

document cannot be anticipatory, or have inherent properties.  Callaway is incorrect.  In *In re*

*Graves*, it was argued that because a prior art reference did not specifically disclose a claimed

---

[6] The same is true about the other groups of balls that have the same outer cover layer, but
different cores or inner covers (Samples 8 and 14, Samples 9-10, and Samples 11-13).  For all of
these groups, the outer cover layer Shore D hardness is unaffected by the choice of inner cover
layer and core formulation.

feature, the prior art reference was not anticipatory. 69 F.3d 1147, 1152 (Fed. Cir. 1995). The Federal Circuit rejected this narrow view of anticipation, stating that "[a] reference anticipates a claim if it discloses the claimed invention 'such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention.'" *Id.* (citing *In re LeGrice*, 302 F.2d 929, 936 (C.C.P.A. 1962)). That is the situation here. Nesbitt discloses the use of a solid core, but leaves the specific core formulation up to the knowledge of a person of ordinary skill in the art. Nesbitt enables a person of ordinary skill in the art to make such a golf ball. The core formulation of Nesbitt would be relevant to anticipation only if the patents-in-suit claimed core ingredients (which they do not) or if the core formulation impacted the cover hardness properties (which it does not). As the claims recite no limitations affected by the core, and the patents do not teach using the core to affect cover hardness, Nesbitt's failure to disclose a specific core formulation is irrelevant.

In any event, Acushnet used a core formulation that was known in the art, and specifically described in the art by Mr. Sullivan as the core of the Nesbitt ball. One of Mr. Sullivan's patents, published in the U.K. in 1994, sets forth a core formulation for the "Nesbitt ball." Ex. 3, GB 2 278 609 A at 39-40 (setting forth the core formulation) & 46 ("The ball comprising inner layer formulation D and Surlyn 9020 identifies the ball in the Nesbitt 4,431,193 patent."). Sullivan and Nesbitt were coworkers at Spalding, and Sullivan was fully familiar with Nesbitt's work. The core Acushnet used was the same one that the inventor of the patents-in-suit attributed to Nesbitt.

### 4.    Callaway's "Papi 94" Argument Is a Red Herring

Callaway argues that Acushnet should have used Papi 94, an ingredient used in a miniscule quantity in the formulation of the Nesbitt core, as recited by Sullivan in the patents-in-

suit.[7]  Callaway does not allege that the absence of Papi 94 has any impact whatsoever on the

outer cover Shore hardness.  Instead, Callaway suggests that the absence of Papi 94 might affect

the moisture absorption of the core, which is utterly irrelevant to the issues in this case.  D.I. 537

at 8.  The absence of Papi 94 in the core has no effect on the outer cover hardness.  Dalton Decl.

¶ 8.  Indeed, the patents-in-suit demonstrate that <u>nothing</u> about the core formulation has an

impact on the outer cover hardness of the ball when the covers are as thick as disclosed in

Nesbitt.  *See supra*, at 16-17; '293 patent, Table 7.

As previously stated, Acushnet did not use Papi 94 because it is hazardous—it is

classified as a skin irritant and a "Hazardous Chemical" by its manufacturer.  Dalton Decl. ¶ 9.

Callaway challenges Acushnet's position on the basis that Acushnet uses a different isocyanate

in the casting of the outer cover layers of some of its golf balls.  D.I. 537 at 8.  Callaway's

argument is both irrelevant and incorrect.  Papi 94 is a liquid material that would remain

unreacted in a core formulation.  Dalton Decl. ¶¶ 10-11.  Such material would be hazardous if

used in Acushnet's current core mixing processes, where Acushnet personnel must handle sheets

of uncured core material.  *Id.* ¶¶ 10-11.  In contrast, when different isocyanates are used in the

cover casing facility, they are completely reacted with a prepolymer and cured such that they are

no longer hazardous to handle.  *Id.* at ¶ 12-13.  Mr. Dalton did not include this chemical in the

core of the test balls due to those safety concerns.  *Id.* at ¶ 8.

Since the exclusion of the tiny amount of Papi 94 called for in the core recipe has no

effect on the outer cover layer Shore D hardness, the omission of Papi 94 should certainly not be

---

[7] The core formulation Sullivan provides lists 0.50 parts per hundred of Papi 94.  '293 patent,
col. 16:27.  Acushnet omitted this ingredient from the core formulation it used in the test balls
due to safety concerns.

a reason to exclude the anticipation test ball evidence.  If Callaway wants to challenge the test

ball evidence on the basis that Papi 94 was not used, it can do so in cross-examination.

### 5.    Callaway's "Foaming" Argument is a Red Herring

Callaway argues that the test balls deviate from the teaching of Molitor '637 because

Acushnet did not verify that the outer cover layer is foamed.  D.I. 537 at 9-10.  Callaway relies

on a statement in Molitor '637 that functional foaming cannot be achieved at thicknesses less

than 0.060 inches, while Acushnet's test balls used an outer cover thickness of 0.0575 inches.

Molitor '637 at col. 5:1-7.  Callaway's argument is misplaced because it ignores the express

teaching of Nesbitt that foaming is unnecessary in its ball.  Ex. 1, Nesbitt at col. 4:3-11.

The dimensions of Nesbitt's ball are taught by Nesbitt, not Molitor '637.  Nesbitt refers

to Molitor '637 only for the "foamable compositions" that may be employed in the inner and/or

outer cover layers of the Nesbitt ball.  Nesbitt at col. 3:56-61.  Nesbitt does not incorporate

Molitor '637 for cover thicknesses or foaming instructions.  Nesbitt provides its own instructions

on how to form the cover layers, including the thickness that should be used, and how the

amount of foaming should be adjusted to achieve certain play characteristics.  Ex. 1, Nesbitt, col.

3:62-4:11.  Callaway's foaming argument is thus completely irrelevant to what Nesbitt

incorporating Molitor '637 teaches about the cover layers.[8]

\*        \*        \*

Callaway's handful of alleged flaws in Acushnet's reproduction of the Nesbitt ball, even

if accepted, do not rise to the level that they impact the reliability of the test ball evidence.  The

test ball evidence is helpful to the jury in understanding the teachings of Nesbitt, and any

---

[8] To the extent Callaway's argument is that the disclosure of Molitor '637 "teaches away" from
the claims of the patents-in-suit, any such teaching away is irrelevant to the anticipation inquiry.
*See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1380 (Fed. Cir. 2005) ("Teaching away
is irrelevant to anticipation.").

arguments about alleged deviations go to the weight the jury should give to the evidence, not admissibility.

### D.     The Probative Value of the Anticipation Test Balls is not Outweighed by Prejudice

Callaway argues that the anticipation test balls would be unduly prejudicial because the jury would be unable to compartmentalize the evidence to the anticipation case. Callaway's argument of prejudice is premised on the assumption that Acushnet will rely on the same combination of references for its obviousness case as it does for anticipation. That is not correct.

Acushnet will <u>not</u> argue obviousness on the basis of a combination of Nesbitt with Molitor '637, if the test balls are admitted. Thus, there is little chance that the jury will be confused into thinking that the test ball evidence, which relates only to the teachings of Nesbitt and Molitor '637, is somehow relevant to the obviousness case. Each obviousness combination Acushnet advances will involve additional prior art (such as the Proudfit, Wu, and Molitor '751 patents). Moreover, any limited prejudice that might result can be cured with a limiting instruction in which the jury is told that the anticipation test ball evidence is not relevant to obviousness.

Callaway has successfully argued in this case that the claims require a particular "on the ball" hardness. Callaway is seeking close to $300 million in damages on the basis that there is no explicit disclosure of "on the ball" hardness in the Nesbitt patent. Acushnet has probative, highly persuasive evidence showing the "on the ball" hardness of the ball taught by that prior art reference. Allowing limited reference to the test ball evidence in the manner stated above strikes the appropriate balance between avoiding undue prejudice to Callaway and allowing Acushnet a fair opportunity to defend itself.

## IV.   CONCLUSION

For the foregoing reasons, Callaway's motion to preclude reference to the anticipation

test balls should be denied.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

By:   _/s/ David E. Moore_
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Dated: January 14, 2010
Public Version Dated: January 21, 2010
950562 / 30030

*Attorneys for Defendant Acushnet Company*

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 21, 2010, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on January 21, 2010, the attached document was Electronically

Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030