IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JEFFREY L. DALTON IN SUPPORT OF ACUSHNET'S
OPPOSITION TO CALLAWAY'S MOTION *IN LIMINE*
TO PRECLUDE ANY REFERENCE TO TEST BALLS**

|  |  |
|---|---|
|  | Richard L. Horwitz (#2246) |
|  | David E. Moore (#3983) |
|  | POTTER ANDERSON & CORROON LLP |
|  | Hercules Plaza 6th Floor |
|  | 1313 N. Market Street |
|  | Wilmington, DE  19899 |
|  | Tel:  (302) 984-6000 |
| OF COUNSEL: | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |
| Henry C. Bunsow |  |
| Joseph P. Lavelle | *Attorneys for Defendant Acushnet Company* |
| Brian A. Rosenthal |  |
| HOWREY LLP |  |
| 1299 Pennsylvania Avenue, N.W. |  |
| Washington, D.C. 20004 |  |
| Tel: (202) 783-0800 |  |

Dated:  January 14, 2010
Public Version Dated: January 21, 2010
949782/30030

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ACUSHNET COMPANY, ) <br> ) <br> Defendant. ) | C.A. No. 06-91(SLR) |

**DECLARATION OF JEFFREY L. DALTON**

I, Jeffrey L. Dalton, hereby state as follows:

1. I have worked in the golf ball industry at the Acushnet Company since 1989 in the fields of golf ball design and manufacture, and hold a Bachelor's of Science degree in Chemistry from the University of Hartford in Connecticut. Before joining Acushnet, I worked at Rogers Corp from 1977 to 1982, where I was an R&D Chemist assigned to the development of injection and compression moldable compounds. From 1982 to 1988 I worked at Gentex Corporation as a Process Engineering Manager, developing coatings for ophthalmic lenses and managing the process improvement of the polycarbonate injection molding operation.

2. When I began working at Acushnet in 1989, I was a Project Development Engineer, and my duties included the development of a balata-covered golf ball known as the Titleist

Tour 392. In 1989 I was also assigned to supervise the golf ball testing team. I reassumed my Product Development responsibilities in 1990 and was promoted to Project Manager in 1991, when my primary assignment was the development of the Titleist Tour Balata golf ball. From 1993 to 1995, I served as the Technical Manager at Acushnet's Ball Plant 1, where my duties included manufacturing quality control for all the balls manufactured at Ball Plant 1 which included balata, ionomer, and polyurethane covered golf balls. I also continued to manage product development for all golf balls manufactured at Ball Plant 1, and some that were manufactured at Ball Plant II. In 1996, I returned to the Research and Development group and was promoted to Director of Product Development and was responsible for development of all Titleist, Pinnacle (and later) Cobra branded golf balls. The products that my team and I developed between 1996 and 2000 included wound balata, ionomer, and polyurethane covered balls, ionomer covered two-piece balls, as well as technologies such as double cover balls with non-ionomeric cover layers, dual core balls, and balls with thin cover layers. My team and I also developed (in cooperation with Titleist manufacturing engineers) the processes for manufacturing these golf balls. In 2000 I was promoted to the position of Vice President of Product Development. My team and I developed golf balls including the Titleist Pro V1, ProV1x, and NXT Tour, as well as all the other Titleist and Pinnacle products manufactured between 2000 and 2004. In 2004, I was promoted to the position of Vice-President of Intellectual Property.

3. In March of 2008 I retired from full time employment with the Acushnet Company, but still consult with the company from time to time.

- 3 -

4. During my time at Acushnet, I received about 68 patents related to a variety of golf technologies including golf ball designs, materials for golf balls, golf ball aerodynamics, golf ball dimple patterns, and golf ball manufacturing processes.

5. In the course of my career, I became very familiar with the golf balls manufactured by Acushnet and its competitors, and with the various manufacturing processes that could be utilized to produce golf balls.

6. In 2007, I created golf balls pursuant to the disclosures of U.S. Patent No. 4,431,193 to Nesbitt incorporating U.S. Patent No. 5,334,673 to Molitor ("the Nesbitt/Molitor patent"). These balls have the solid three-piece construction of the Nesbitt/Molitor patent, and are identified as "BALL_4" and "BALL_1" in my previous declarations.

7. I understand that in its Motion in Limine to Preclude any Reference to Acushnet's to Acushnet's Test Balls, Callaway raises several questions about the absence of the material Papi 94 from the cores of the Nesbitt test balls.

8. I decided not to use Papi 94 in the core of the Nesbitt test balls primarily because it would unnecessarily present safety issues at Acushnet's plant. The absence of that ingredient would not conceivably have any impact on the "on the ball" hardness of the outer cover of the balls. The recipe of the Nesbitt core calls for 0.5 parts per hundred of Papi 94. Any impact on the core from a ½ part of Papi 94 would be small. I have previously conducted experiments, referred to in my declaration dated December 1, 2009, demonstrating that even large changes in the core have a negligible impact on the outer

- 4 -

layer cover hardness of the Nesbitt/Molitor balls. At the cover layer dimensions specified by Nesbitt, the inclusion or absence of Papi 94 would have no impact whatsoever on the Shore D hardness of the outer cover of the ball, as measured "on the ball."

9. Papi 94 is a volatile isocyanate than can damage the skin and eyes. It is provided from the manufacturer, Dow Chemical, in a liquid form. According to the manufacturer's own Material Safety Data Sheet, "This product is a "Hazardous Chemical" as defined by the OSHA Hazard Communication Standard, 29 CFR 1910.1200." The MSDS further states that, "Sprayed or heated material harmful if inhaled. May cause allergic skin reaction. May cause allergic respiratory reaction. May cause lung injury. May cause eye irritation. May cause skin irritation. May cause respiratory tract irritation. Toxic flammable gases and heat are released under decomposition. Toxic fumes may be released in fire situations. May react with water."

10. If an isocyanate, such as Papi 94, were included in a core formulation it would not react completely during the core mixing cycle. Thus, potentially hazardous, unreacted Papi 94 would remain in the core rubber formulation after the completion of mixing.

11. Having unreacted Papi 94 present in the core rubber would create a number of material handling and safety difficulties in Acushnet's core production facilities. Among other things, workers must manually handle and cut sheets of core rubber and place slugs of core rubber in molds. Thus, Acushnet would have to implement many additional safety protocols directed to how workers handle core material in order to use an isocyanate like Papi 94 in its core formulations.

- 5 -

12. In contrast, Acushnet's cover casting process does not use raw, un-reacted isocyantates and the materials are not directly handled by workers. The isocyanates used to make polyurethane covers are reacted with a polyol to form a polyurethane pre-polymer. Acushnet buys this pre-polymer with the isocyanate already reacted. The manufacturing equipment in the casting area is specifically designed to inject the liquid pre-polymer (along with curatives and other ingredients) into the mold cavities. The casting area of the manufacturing facility complies with all safety regulations applicable to the use of even the residual levels of isocyanates. This includes the use of appropriate ventilation. Moreover, the cover casting and curing process ensures that the all the isocyanates used in the outer cover layer are reacted, and thus no longer hazardous, before any workers handle the cast golf balls. Consequently, workers do not come into direct contact with unreacted isocyanate in Acushnet's casting process.

13. In summary, although Acushnet uses isocyanates in an already reacted form in a manufacturing process in an area specifically designed for their use, it does not follow that Acushnet is free to disregard applicable safety regulations and utilize a raw, un-reacted isocyanate in a separate part of its manufacturing facility in a process that is not equipped to handle them.

Dated: Jan 14, 2010

_____
Jeffrey L. Dalton

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on January 21, 2010, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on January 21, 2010, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| Thomas L. Halkowski<br>Fish & Richardson P.C.<br>222 Delaware Avenue, 17th Floor<br>P.O. Box 1114<br>Wilmington, DE 19899-1114<br>halkowski@fr.com | Frank E. Scherkenbach<br>Fish & Richardson P.C.<br>225 Franklin Street<br>Boston, MA 02110-2804<br>scherkenbach@fr.com |
| Robert A. Denning<br>David S. Shuman<br>W. Chad Shear<br>Fish & Richardson P.C.<br>12290 El Camino Real<br>San Diego, CA 92130<br>denning@fr.com<br>shuman@fr.com<br>shear@fr.com | Jonathan J. Lamberson<br>Christina D. Jordan<br>Craig R. Compton<br>Fish & Richardson P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>lamberson@fr.com<br>cjordan@fr.com<br>compton@fr.com |

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030