IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>              Plaintiff,<br><br>   v.<br><br>ACUSHNET COMPANY,<br><br>             Defendant. | C. A. No. 06-91 (SLR)<br><br> |

**CALLAWAY GOLF'S OPPOSITION TO ACUSHNET'S
MOTION IN LIMINE NO. 2**

FISH & RICHARDSON P.C.
Thomas L. Halkowski (#4099)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Dated: January 14. 2010

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The "Veneer Project" and Acushnet's Own Views of the State of the Art are Highly Relevant to Non-Obviousness ........................................................................................... 2

    B. Acushnet Never Objected to the Introduction of the Hebert Patent or Testimony During the First Trial ................................. 5

    C. The Hebert Patent Is Not Unduly Prejudicial ............................................. 6

    D. The Court Has Excluded Evidence of Settlement Discussions Between Callaway Golf and Spalding ................................. 8

    E. The Hebert License is Now Admittedly Relevant ...................................... 9

III. CONCLUSION ............................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amado v. Microsoft Corp.*,
 517 F.3d 1353 (Fed. Cir. 2008) .................................................................................. 6

*Christianson v. Colt Indus. Operating Corp.*,
 486 U.S. 800 (1988) ..................................................................................................... 6

*Engel Industries, Inc. v. Lockformer Co.*,
 166 F.3d 1379 (Fed. Cir. 1999) ................................................................................... 6

*In re Corkill*,
 771 F.2d 1496 (Fed. Cir. 1985) ................................................................................... 2

*Interconnect Planning Corp. v. Feil*,
 774 F.2d 1132 (Fed. Cir. 1985) ................................................................................... 2

*Lucent Techs., Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009) ................................................................................... 9

*Vulcan Engineering Co., Inc. v. Fata Aluminium, Inc.*,
 278 F.3d 1366 (Fed. Cir. 2002) ................................................................................... 2

I.   **INTRODUCTION**

Acushnet claims that the patents-in-suit are obvious. Avoiding hindsight is one of the most difficult challenges in ascertaining obviousness: it is critical to analyze the patents-in-suit from the perspective of one having skill in the art *at the time of invention*. Through its motion, Acushnet now seeks to exclude highly relevant evidence that will aid the jury in undertaking its analysis – specifically, the fact that Acushnet's own engineers thought the concept of a three-piece ball with a polyurethane cover, meeting all the limitations of the asserted patents, was new and novel in 1996. Acushnet seeks to exclude not just the Hebert patents on this concept, but also "all evidence and arguments" relating to the development of the "Veneer" concept (the ball which became the infringing ProV1).

As explained below, the jury will not need to delve into the claims of the Hebert patents in order to understand this evidence, primarily because Acushnet's own witnesses confirmed that they thought the concept of a three piece ball with a polyurethane cover was new and novel at the relevant time, regardless of the phrasing of any later patent claims they eventually received relating to that concept. Tellingly, Acushnet did not even object to the introduction of the Hebert '172 patent or to much of the relevant testimony during the first trial, and, when Acushnet did belatedly object, this Court explicitly and repeatedly held that Callaway Golf's questions and evidence on this topic were proper. This Court should maintain its prior rulings, deny Acushnet's effort to upset the balance struck by the Court during the first trial regarding these issues, and deny Acushnet's attempt to now exclude highly relevant evidence showing the non-obviousness of the asserted patents.

## II. ARGUMENT

### A. The "Veneer Project" and Acushnet's Own Views of the State of the Art are Highly Relevant to Non-Obviousness

Acushnet seeks to exclude not just the Hebert patents, but also "Acushnet's views on the validity of those patents and the novelty of the Veneer construction," and "the Hebert Invention Record." This request is ironic given that Acushnet actually first introduced the "Veneer" story during trial through the testimony of one of its own witnesses, Bill Morgan. [*See* Halkowski Decl., Ex. A (Trial Tr.) at 361:16-24.] As the Court may recall, the "Veneer project" was the development effort that became the infringing ProV1. [Motion[1] at 3, n.2.] Because Acushnet has admitted that the ProV1 infringes Callaway Golf's patents, it is undisputed that Acushnet's Veneer project resulted in the development of a ball that meets all of the limitations of the asserted claims. The fact that Acushnet engineers thought the Pro V1 (which embodied the Sullivan inventions) was new and novel at the time they developed it in 1996 is therefore highly relevant evidence of non-obviousness. *See Vulcan Engineering Co., Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002) ("Appreciation by contemporaries skilled in the field of the invention is a useful indicator of whether the invention would have been obvious to such persons at the time it was made"); *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143 - 1144 (Fed. Cir. 1985) ("Recognizing the difficulty of casting one's mind back to the state of technology at the time the invention was made, courts have long recognized the usefulness of evidence of the contemporaneous attitude toward the asserted invention. A retrospective view of the invention is best gleaned from those who were there at the time"); *In re Corkill*, 771 F.2d 1496, 1500 (Fed. Cir. 1985) (*citing In re Piasecki*, 745 F.2d 1468, 1473-75 (Fed. Cir. 1984))

---

[1] "Motion" refers to Acushnet's Motion in Limine No. 2 to Exclude Evidence Regarding Acushnet's "Hebert Patents" and Related Inventions.

("Opinions of the contemporaneous beliefs of those skilled in the field as to the nonobviousness of an invention merit fair weight").

Specifically, Acushnet engineer Ed Hebert testified that his idea in developing the ProV1 was to put a thin outer cover layer of soft material such as polyurethane on a two-piece ball, and that he had no idea what the result of this effort might be: "I thought about the concept of, well, what if we put some really soft stuff – a thin layer of really soft stuff on the outside of what would be a distance ball construction, what would happen." [Ex. A (Trial Tr.) at 1091:4-7.] Mr. Hebert explained that polyurethane was the outer layer material he used, and was the "castable reactive liquid material" called for in his invention disclosure and patent. [*Id.* at 1092:11-18.] As Acushnet itself argued to the jury in the first trial, that polyurethane was known in the art – it had been previously developed by Acushnet chemist Shenshen Wu, and had been used for years on the Acushnet "Professional" wound golf ball. [*Id.* at 149:1-10; 151:25-152:10; 154:6-24.] Yet Mr. Hebert testified that when the material was used as a thin cover on top of a known two-piece distance ball – resulting in a new, three-piece construction which Mr. Hebert and his colleagues dubbed the "Veneer ball" – surprising results followed. [*Id.* at 1102:16-1103:13.] Indeed, the results were so surprising that the ProV1 ended up completely replacing wound balls, such as the Professional, that had previously dominated the professional market for decades. [*See Id.* at 1103:14-1104:8.] Mr. Hebert further testified that other Acushnet engineers (specifically, Ms. Wu) never indicated that the ProV1 was not new or novel at the time it was developed. [*Id.* at 1104:9-1105:20.]

Another Acushnet engineer, Bill Morgan, testified that the purpose of the Veneer Project was to cover the outer surface of a two-piece ball with a thin layer of castable polyurethane. [*Id.* at 390:11-391:5.] He testified that the Veneer ball, like no ball before it, delivered the desired

3

balance of performance attributes that combined long-distance off the tee with soft feel and control into the green, and that the market response demonstrated that the ProV1 (an embodiment of the Sullivan claims) was a "new idea." [*Id.* at 438:9-22.]

The contemporary views of Morgan and Hebert concerning the ProV1 golf ball that embodies the Sullivan patents-in-suit are plainly relevant to non-obviousness. In fact, these two Acushnet employees felt that their idea was so new and novel that they prepared an invention disclosure form and filed multiple patent applications on the Veneer concept. That invention disclosure form resulted in a family of Hebert patents which includes the specific patent identified in Acushnet's motion.[2] This evidence is highly relevant, was allowed in the first trial, and should not now be excluded via motion in limine.

Acushnet argues that the Hebert patents concern novel inventions and are readily distinguishable from the Sullivan patents because the Hebert patents called for the use of a "special" castable polyurethane invented by another Acushnet employee, Ms. Wu. [Motion at 1 & 11.] Claim 1 of the Hebert '172 patent itself shows this argument to be misplaced, however, because it claims only a generic "castable reactive liquid." [*See* Motion Ex. 2 (Hebert '172 Patent) Claim 1.] Other claims of the Hebert '172 patent require polyurethane specifically, but claim 1 does not. And even those other claims do not recite the specific castable polyurethane invented by Ms. Wu, only polyurethane generally. [*See, e.g., Id.* at Claim 7.] The same is true of the Hebert '324 patent, a continuation of the Hebert '172 patent, which is even broader than

---

[2] Acushnet's motion identifies one specific Hebert patent, U.S. Patent No. 5,885,172, but there are other patents in this family that are also relevant, including U.S. Patent No. 6,132,324, which is directly related to, and shares the same specification as, the '172 patent.

the '172 patent and does not specify the thickness of the outer cover layer at all. [*See* Halkowski Decl., Ex. B, Hebert '324 Patent.]

Thus, all of the evidence shows that the Veneer concept, which became the infringing ProV1, and which Mr. Hebert and Mr. Morgan believed to be novel at the time, was simply the concept of taking a known three-piece ball and covering it with a known soft material such as polyurethane. This concept was even broader than the Sullivan inventions, and Acushnet believed – at the relevant time – that use of a known polyurethane as the cover of a three-piece multi-cover golf ball was a novel combination. It is hard to imagine more direct, probative evidence on the very question the jury has to decide. That is why Acushnet has filed this motion, and it is why the Court should deny it.

### B. Acushnet Never Objected to the Introduction of the Hebert Patent or Testimony During the First Trial

Even though Acushnet now claims that the Hebert patent is "highly confusing" and "irrelevant," this argument is belied by the fact that Acushnet never objected to the introduction of the Hebert '172 patent during the first trial. Callaway Golf actually identified the Hebert patent to Acushnet before the trial, and Acushnet agreed Callaway Golf could use the patent in the trial. As noted above, Acushnet itself first introduced the Veneer story through its own witness, Bill Morgan. [*See* Ex. A (Trial Tr.) at 361:16-24.] Acushnet did not object when Callaway Golf moved the Hebert '172 patent into evidence. [*Id.* at 388:17-20.] Acushnet did not object when the Hebert testimony was played to the jury. [*Id.* at 1085:9-1105:20.]

Acushnet now says that it objected to Callaway Golf's "characterizations" of the Hebert patent. [Motion at 9.] Yet, the Court explicitly said during the previous trial that Callaway Golf's questioning was proper. [Ex. A (Trial Tr.) at 422:25-423:10.] Acushnet presents no evidence that Callaway Golf ever went beyond this Court's clear instruction that the questioning

5

should focus on what Acushnet thought was new and novel at the time. In fact, Acushnet already asked this Court to reconsider this issue during post-trial briefing, and the Court expressly declined to do so. [*See* D.I.. 492 (Memorandum Opinion) fn.15.] None of these decisions were even appealed to the Federal Circuit by Acushnet. Therefore, the mandate rule precludes Acushnet's effort to have yet another bite at the apple regarding this issue. *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008) ("the mandate rule precludes reconsideration of any issue within the scope of the judgment appealed from-not merely those issues actually raised"); *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("Unless remanded by [the Federal Circuit], all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."). Moreover, even if Acushnet were permitted to raise this objection again for a third time, it presents no new arguments for why the Court should deviate from its multiple prior rulings.

### C. The Hebert Patent Is Not Unduly Prejudicial

Acushnet does not present an argument for why it believes any evidence other than the Hebert '172 patent is allegedly "unduly prejudicial." Acushnet's only argument appears to be that the Hebert '172 patent is prejudicial because it will allegedly require the jury to perform a "detailed claim analysis" between the Hebert and Sullivan patents. This argument is flawed for a number of reasons.

First, as this Court recognized during the first trial, and as explained above, the jury does not need to consider the claims of the Hebert patent in order to understand that Acushnet thought the concept of a three-piece, polyurethane covered ball was new and novel in 1996. Indeed, Acushnet received multiple patents related to Hebert's work on the Veneer project, and there is no reason to single out the '172 patent *per se* – all of the Hebert patents are relevant for the same reason in that they describe and claim the Veneer concept as embodied in the infringing ProV1.[3] Moreover, if Acushnet actually believes that Callaway Golf "mischaracterized" any testimony or evidence, it can present its own evidence and argument during the second trial to set forth what Acushnet thought was new or novel at the time.[4] This is nothing more than a factual dispute – one that the jury can easily resolve. Both parties should be permitted to put on all the evidence

---

[3] The Court should also not lose sight of the independent relevance of the Hebert patents for the descriptions they contain in their specifications of the prior art, the problems with prior art golf balls, and how the inventors – including Mr. Hebert and Mr. Morgan – proposed to solve those problems at that time. There is striking overlap between the problems Acushnet perceived in 1996, the solution it proposed (the Veneer concept), and the respective problems and solution Mr. Sullivan described in his notebook in 1991 and in his patent applications in 1993 and 1995.

[4] Even if the jury on its own was inclined to consider the claims of the Hebert '172 patent, it could do so without any difficulty, and would readily see that the claims directly overlap with the Sullivan patents. Acushnet only presents two alleged distinctions between Hebert and Sullivan: the stiffness of the inner cover layer, and the material used for the outer cover layer. [Motion at 12.] With respect to the inner cover layer, even a lay juror can see that Hebert's stiffness of 65,000 psi falls within Sullivan's claimed range of 15,000 to 70,000 psi. With respect to the outer cover layer, as noted above, both Hebert and Morgan testified that the generic reference to a "castable reactive liquid" in the Hebert patent includes polyurethane. [Ex. A (Trial Tr.) 394:20-22; 1092:11-18.] Thus, even if the jury were to compare the Hebert and Sullivan claims on its own, it would see the striking overlap between them. There is nothing unduly prejudicial about the Hebert patent, and no "satellite litigation" is necessary to understand this dispute between the parties.

of these core issues concerning the development of the ProV1, including the Hebert testimony and evidence.[5]

Moreover, if Acushnet's argument is that it is prejudicial simply to introduce additional patents to the jury, this is belied by the fact that Acushnet itself introduced many different patents during the first trial – including at least eight patents in addition to the five asserted prior art patents. [*See* DX1004, DX267, DX13, DX461, PX29, DX981, DX1108.] Acushnet introduced these patents for various reasons, but it never previously complained that any of these patents, including Hebert, were *unduly* prejudicial. Because it is entirely proper for the jury to understand that golf balls are complicated products which may involve multiple patents, and because the Hebert patents in particular are highly relevant to show Acushnet's view of what was new and novel at the time, Acushnet's motion should be denied.

### D. The Court Has Excluded Evidence of Settlement Discussions Between Callaway Golf and Spalding

As some sort of quid pro quo, Acushnet argues that it should be allowed to reference a 2002 settlement negotiation between Spalding and Callaway Golf, which discusses the validity of the '293 patent. [Motion at 14.] This request is a non-sequitur: the Spalding/Callaway correspondence took place seven years after the agreed priority date for the patents in suit, it is not contemporaneous evidence or opinions of anyone skilled in the art (the negotiations were between lawyers, not engineers), the correspondence has no relevance, and more importantly the

---

[5] [REDACTED]

8

Court has already determined these settlement negotiations are not admissible under F.R.E. 408. [*See* Docket No. 373, ¶ 4.] Acushnet says that it would be "unfair" to exclude this correspondence, as if it will be somehow handicapped in rebutting the unrelated Hebert evidence in doing so. Yet Acushnet ignores that it can call its own witnesses to explain the invention of the ProV1, and to explain exactly what they thought was new and novel at the time. Indeed, Acushnet did so during the last trial when it brought Mr. Morgan (but, curiously, not Mr. Hebert) to testify at trial. There is no "unfairness," and even if there were, that is not a reason to allow in settlement negotiations that the Court has already excluded under Federal Rule 408.

### E. The Hebert License is Now Admittedly Relevant

Finally, Acushnet asks that the Court exclude evidence that Callaway Golf took a license to the Hebert patent. This issue is now moot, given that the Court subsequently decided to include damages in the upcoming trial and Acushnet's own damages expert relies heavily on the Hebert license for his reasonable royalty analysis. Moreover, given that Acushnet will be relying upon evidence of the Hebert license, which covers multiple Hebert patents (including the Hebert '172 and '324 patents), the substance of the inventions discussed in those patents is directly relevant to the damages analysis, which must examine whether or not such licenses are comparable. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Thus, the Hebert patents are highly relevant to both validity and damages issues.

### III. CONCLUSION

The ProV1 invention story, including the Hebert invention story and the Hebert patents, is highly relevant evidence for both non-obviousness as well as damages. It is not unduly prejudicial or confusing, and the Court should deny Acushnet's motion. Moreover, since Acushnet will certainly be presenting evidence concerning the Pro V1 invention story and the

licensing of the Hebert patents, it would be unfair to preclude Callaway Golf from presenting similar evidence which supports its positions on the issues of validity and damages – particularly since Callaway Golf previously presented this evidence during the first trial, consistent with the Court's prior evidentiary rulings, none of which Acushnet even bothered to appeal to the Federal Circuit. Acushnet's motion, therefore, should be denied.

Dated: January 14, 2010              FISH & RICHARDSON P.C.

                                            By: */s/ Thomas L. Halkowski*
                                                  Thomas L. Halkowski (#4099)
                                                  222 Delaware Avenue, 17th Floor
                                                  P.O. Box 1114
                                                  Wilmington, DE 19899-1114
                                                  Tel: (302) 652-5070
                                                  Fax: (302) 652-0607

                                                  Frank E. Scherkenbach
                                                  225 Franklin Street
                                                  Boston, MA 02110-2804
                                                  Tel: (617) 542-5070
                                                  Fax: (617) 542-8906

                                                  Roger A. Denning
                                                  12390 El Camino Real
                                                  San Diego, CA 92130
                                                  Tel: (858) 678-5070
                                                  Fax: (858) 678-5099

                                                  **ATTORNEYS FOR PLAINTIFF**
                                                  **CALLAWAY GOLF COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2010, I electronically filed with the Clerk of Court CALLAWAY GOLF'S OPPOSITION TO ACUSHNET'S MOTION IN LIMINE NO. 2 using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the filing will also be sent via electronic mail:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>Potter Anderson & Corroon LLP<br>1313 North Market Street, 6th Floor<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19899-0951 | Attorneys for Defendant<br>ACUSHNET COMPANY |
| Alan M. Grimaldi<br>Joseph P. Lavelle<br>Brian A. Rosenthal<br>Howrey LLP - DC<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004 | Attorneys for Defendant<br>ACUSHNET COMPANY |

/s/ Thomas L. Halkowski
Thomas L. Halkowski

1