IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

                Plaintiff,

    v.

ACUSHNET COMPANY,

                Defendant.

C. A. No. 06-91 (SLR)

**REDACTED**

CALLAWAY GOLF'S BRIEF IN OPPOSITION TO
ACUSHNET'S MOTION FOR SUMMARY JUDGMENT OF ANTICIPATION

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
222 Delaware Avenue
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED:  January 14, 2010

**TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ........................................................................................1

II.     COUNTERSTATEMENT OF FACTS ....................................................1

        A.      The Patents-in-Suit.......................................................................1

        B.      The Nesbitt/Molitor Reference ...................................................3

III.    LEGAL STANDARDS ...............................................................................6

        A.      Summary Judgment .....................................................................6

        B.      Anticipation....................................................................................6

IV.     ARGUMENT...............................................................................................9

        A.      A Reasonable Jury Could Find that Nesbitt/Molitor
                Does Not Disclose All Elements Arranged as in the
                Asserted Claims .............................................................................9

                1.      Separate Disclosure of Polyurethane and
                        Ionomer Covers is Insufficient.......................................10

                2.      Acushnet Engages in Improper Picking,
                        Choosing, and Combining ..............................................11

        B.      Even Setting Aside the Hardness Limitations,
                Nesbitt/Molitor At Most Discloses an Overbroad Genus,
                Which a Reasonable Jury Could Find Insufficient for
                Anticipation..................................................................................13

                1.      Only Definite, Limited Genera Can Anticipate
                        Species ...............................................................................14

                2.      The Relevant Genus Here is Too Large and
                        Diffuse................................................................................14

        C.      A Reasonable Jury Could Easily Find that
                Nesbitt/Molitor Does Not Disclose the Hardness Values
                Claimed by Sullivan.....................................................................16

                1.      There is No Disclosure of Relevant Hardness
                        Values .................................................................................16

                2.      Acushnet's Test Balls Cannot Prove Inherent
                        Hardness Values................................................................17

## TABLE OF CONTENTS (cont'd)

**Page(s)**

3.    The Hardness of Various Balata Golf Balls
Cannot Prove Inherent Hardness of
Polyurethane-over-Ionomer Golf Balls.......................................20

V.    CONCLUSION.................................................................................21

Case 1:06-cv-00091-SLR   Document 568   Filed 01/21/10   Page 4 of 27 PageID #: 17087


# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)......................................................................................... 6

*Atofina v. Great Lakes Chemical Corp.,*
   441 F.3d 991 (Fed. Cir. 2006)................................................................... 8, 14

*Callaway Golf Co. v. Acushnet Co.,*
   576 F.3d 1331 (Fed. Cir. 2009)........................................................... 5, 15, 19

*Connell v. Sears, Roebuck & Co.,*
   722 F.2d 1542 (Fed. Cir. 1983)................................................................... 7

*Continental Can Co. USA, Inc. v. Monsanto Co.,*
   948 F.2d 1264 (Fed. Cir. 1991)................................................................... 7

*Crown Operations Intern., Ltd. v. Solutia, Inc.,*
   289 F.3d 1367 (Fed. Cir. 2002)................................................................. 17

*Ecolochem, Inc. v. S. Calif. Edison Co.,*
   227 F.3d 1361 (Fed. Cir. 2000)................................................................. 10

*Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.,*
   471 F.3d 1369 (Fed. Cir. 2006)........................................................... 9, 15

*Glaxo, Inc. v. Novopharm Ltd.,*
   830 F. Supp. 871 (E.D.N.C. 1993)..................................................... 17, 21

*Impax Laboratories, Inc. v. Aventis Pharmaceuticals Inc.,*
   468 F.3d 1366 (Fed. Cir. 2006)................................................................. 14

*In re Arkley,*
   455 F.2d 586 (C.C.P.A. 1972) ................................................. 7, 11, 12, 13

*In re Gleave,*
   560 F.3d 1331 (Fed. Cir. 2009)....................................................... 7, 8, 9, 13

*In re Petering,*
   301 F.2d 676 (C.C.P.A. 1962) ......................................................... 7, 9, 14, 15

*In re Robertson,*
   169 F.3d 743 (Fed. Cir. 1999)................................................................... 7

*In re Ruschig,*
   343 F.2 965 (C.C.P.A. 1965) ............................................................... 14, 15

*In re Schaumann,*
   572 F.2d 312 (C.C.P.A. 1978) ............................................................. 14, 15

iii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*In re Skvorecz,*
    580 F.3d 1262 (Fed. Cir. 2009) ............................................................... 6

*Leggett & Platt, Inc. v. VUTEk, Inc.,*
    537 F.3d 1349 (Fed. Cir. 2008) ............................................................ 7, 8

*Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.,*
    730 F.2d 1452 (Fed. Cir. 1984) ............................................................. 10

*Net MoneyIN, Inc. v. VeriSign, Inc.,*
    545 F.3d 1359 (Fed. Cir. 2008) ..................................................... passim

*Perricone v. Medicis Pharmaceutical Corp.,*
    432 F.3d 1368 (Fed. Cir. 2008) ..................................................... 7, 8, 13

*Sanofi-Synthelabo v. Apotex, Inc.,*
    550 F.3d 1075 (Fed. Cir. 2008) ............................................................... 7

*Schering Corp. v. Geneva Pharms.,*
    339 F.3d 1373 (Fed. Cir. 2003) ............................................................... 7

*Technology Licensing Corp. v. Videotek, Inc.,*
    545 F.3d 1316 (Fed. Cir. 2008) ............................................................... 6

*Trintec Indus., Inc. v. Top-U.S.A. Corp.,*
    295 F.3d 1292 (Fed. Cir. 2002) ......................................................... 7, 17

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
    631 F. Supp. 2d 1010 (N.D. Ill. 2009) ................................................. 16

**State Cases**

35 U.S.C. § 282 ............................................................................................... 6

## I.      INTRODUCTION

Callaway Golf Company ("Callaway Golf") hereby opposes the motion for summary judgment of anticipation filed by Acushnet Company ("Acushnet") on December 1, 2009 and refiled on December 11, 2009. [D.I. 515 (motion); *see also* D.I. 533-34 (Acushnet's revised motion and opening brief)]. Acushnet's motion fundamentally misunderstands anticipation. The question is not merely whether Acushnet can cobble together a golf ball by picking and choosing materials from amongst scores and scores of different materials and golf balls disclosed in the Nesbitt/Molitor reference, in light of what the patents-in-suit later taught, in order to end up within the parameters of the asserted claims.

Rather, the appropriate question is whether the Nesbitt/Molitor reference actually disclosed Sullivan's complete invention, with all of its constituent elements *as arranged* in the asserted claims—*i.e.*, whether the reference discloses a single golf ball with the arrangement of a polyurethane outer cover layer over an ionomer inner cover layer over a core, with each layer having the particular thickness, hardness (measured on the ball), and modulus later claimed by Sullivan. On this correct standard, a reasonable jury could easily find that the Nesbitt/Molitor reference does *not* anticipate the asserted claims – particularly given the absence of the requisite hardness disclosures. Thus, Acushnet is not entitled to summary judgment.

## II.     COUNTERSTATEMENT OF FACTS

### A.      The Patents-in-Suit

The patents-in-suit (U.S. Patent Nos. 6,210,293, 6,506,130, 6,503,156, and 6,595,873) claim improved multi-layer golf balls. [*See, e.g.*, D.I. 547-1 Ex. 1 ('293 patent) at col. 1:11-23]. The improvement in question is not a creation of a new material or new substance for use in golf balls, but rather is a new paradigm for golf ball construction. [D.I. 424 (12/6/07 Trial Tr.) at 271:4-11; D.I. 428 (12/11/07 Trial Tr.) at

1

1104:1-8].  By employing existing materials in a novel arrangement which no other golf ball designer had ever made before him, inventor Michael Sullivan succeeded where other designers—including Dennis Nesbitt and Robert Molitor—had failed, creating the "holy grail" of golf balls: a single ball with *both* durability (distance) and playability (feel).  ['293 patent at col. 1:22-29; D.I. 424 (12/6/07 Trial Tr. 274:11-5); D.I. 426 (12/7/07 Trial Tr. 650:4-8, 651:20-652:21); D.I. 427 (12/10/07 Trial Tr. 737:24-738:21); D.I. 428 (12/11/07 Trial Tr. 1146:9-21)].

Sullivan's new ball, as defined by the asserted claims, has a core, an inner cover layer made of a low-acid ionomer resin (or blend including low-acid ionomer resins), and an outer cover layer made of a relatively soft polyurethane material, with each cover layer having thickness and Shore D hardness values within specific ranges.  [*See, e.g.*, D.I. 547-2 Ex. 4 ('873 patent) claim 1 at col. 23:46-64].  Several of the asserted claims also require the cover layer materials to have flexural modulus values within specific ranges.  [*See, e.g., id.* claim 3 at col. 24:24-37].

It is important to note that the claims do not recite each of these material, thickness, and hardness limitations in isolation, like ingredients to be combined in a mixing bowl.  Rather, these limitations are interdependent.  For example, the outer cover layer must not only be comprised of polyurethane, but must also be disposed over an inner cover layer comprised of a low acid ionomer resin (or blend), and must have a specific Shore D hardness when so disposed over the ionomer inner cover—*i.e.*, must have this hardness *measured on this very ball*. [D.I. 345 (Claim Construction Order) at 1-3].  Thus, polyurethane by itself, or in a different golf ball construction—such as a two-piece or wound ball, where the polyurethane is molded directly over a core—cannot meet, and is of minimal if any relevance to, the outer-cover limitations of the asserted claims.

2

**REDACTED**

B.     **The Nesbitt/Molitor Reference**

Before Michael Sullivan invented the balls claimed by the patents-in-suit, other inventors tried different arrangements of materials, hoping but failing to discover the same "holy grail" of performance characteristics. In U.S. Patent No. 4,431,193, Dennis Nesbitt proposed a three-layer ball in which both the inner cover layer and the outer cover layer were comprised of ionomer resin. [D.I. 547-2 Ex. 5 ('193 patent)]. Nesbitt's focus on ionomers is clear from the claims of the '193 patent—all of which require "ionomer resin" or "SURLYN resin" (a brand of ionomer)—and from the specification, which states that polymeric materials for use with the invention are "preferably such as ionomer resins…." [*Id.* at col. 3:54-55, 4:18-6:27]. Indeed, when Sullivan set out later to make an improved golf ball, he referred to Nesbitt for teachings on ionomers, and *only* ionomers. [D.I. 547-1 Ex. 1 ('293 patent) at col. 2:43-3:10 (noting Nesbitt as an example of prior art teaching "multi-layered covers containing one or more ionomer resins") ; █████

████████████████████████████████████████████████████████████

████████████████████████████████████████████] Sullivan also explained that ionomer-over-ionomer balls like Nesbitt's "suffer[] from poor cut resistance and relatively short distance," making the balls "unacceptable by today's standards." [D.I. 547-1 Ex. 1 ('293 patent) at col. 3:11-20].

Importantly, the word polyurethane does not appear anywhere in Nesbitt. Of the thirteen ball variations claimed by Nesbitt and the further example provided in column 3 of the specification, none use anything but ionomer resin for the cover layers. Nesbitt himself confirms that he never considered using polyurethane for the cover layers of his invention. [D.I. 202 at 10 ("Q: If somebody read that to themselves and said to you, 'Oh, you must have been referring to polyurethane as a potential outer cover material,' what would you say to that? A: No way.")]. However, the Nesbitt patent does refer to an earlier patent issued to Robert Molitor, U.S. Patent No. 4,274,637, and explains that

3

the Molitor '637 patent "describes a number of foamable compositions of a character

which may be employed for one or both layers ... for the golf ball of this invention."

[D.I. 547-2 Ex. 5 ('193 patent) at col. 3:56-61].

Acushnet argued that this reference suffices to incorporate into the Nesbitt patent

all of the "foamable compositions" listed in the Molitor '637 patent, including

polyurethanes. [D.I. 205 (Acushnet's Motion for Summary Judgment of Incorporation-

by-Reference)]. In particular, Acushnet pointed to column 3, lines 36-42 of Molitor '637,

which names two particular Surlyn (ionomer) resins, and also to column 5, lines 27-55,

which names a "wide range of polymeric materials," including the following eight

categories of materials and "[m]ixtures" of these materials:

> Homopolymeric and copolymeric substances, such as *(1)* vinyl resins
> formed by the polymerization of vinyl chloride or by the copolymerization
> of vinyl chloride with unsaturated polymerizable compounds, e.g., vinyl
> esters; *(2)* polyolefins such as polyethylene, polypropylene, polybutylene,
> transpolyisoprene, and the like, including copolymers of polyolefins; *(3)*
> polyurethanes such as are prepared from polyols and organic
> polyisocyanates; *(4)* polyamides such as polyhexamethylene; *(5)*
> polystyrene, high impact polystyrene, styrene acrylonitrile copolymer and
> ABS, which is acrylonitrile, butadiene styrene copolymer; *(6)* acrylic
> resins as exemplified by the copolymers of methylmethacrylate,
> acrylonitrile, and styrene, etc.; *(7)* thermoplastic rubbers such as the
> urethanes, copolymers of ethylene and propylene, and transpolyisoprene,
> block copolymers of styrene and cispolybutadiene, etc.; and *(8)*
> polyphenylene oxide resins, or a blend with high impact polystyrene
> known by the trade name "Noryl." This list is not meant to be limiting or
> exhaustive, but merely illustrates the ***wide range of polymeric material***s
> which may be employed in the present invention. Mixtures of the above
> described material may also be used.

[Molitor '637 patent at col. 5:33-55 (emphases added)].

Callaway Golf disputed this broad incorporation-by-reference, and argued that the

incorporation extended at most to the ionomer resins disclosed in Molitor '637, as

ionomer resins are the focus of Nesbitt's invention. But on appeal, the Federal Circuit

4

agreed with Acushnet, and held that the Nesbitt patent "incorporates the *entire list* of foamable compounds ('a number of foamable compositions') disclosed by Molitor '637 as appropriate materials for use in golf ball cover layers," since there is "no basis to differentiate between incorporation of the ionomeric resins disclosed by Molitor '637 and the other compositions in the list..." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1347 (Fed. Cir. 2009) (emphasis added).  The full range of incorporated materials thus contains "literally hundreds of different possible compositions." [D.I. 246 (Declaration of Dr. William M. Risen) ¶ 7].

Acushnet, in a change of position, now alleges that Nesbitt actually incorporates just "eight specific compositions" from Molitor '637, "including a blend of ionomers and a polyurethane composition." [D.I. 535 (Acushnet's Revised MSJ Brief) at 5-6, citing Molitor '637 at col. 14:60-65, col. 18:6-12; D.I. 535  at 9-10 (arguing that the layers of the Nesbitt ball may be selected from "eight specific foamable compositions")].   But that is not what the Federal Circuit held, nor what Acushnet asked the Federal Circuit or this court to hold.  [*See* D.I. 538-1 Ex. 5 (Acushnet appeal brief) at 65 (citing Molitor '637 patent at col.  5:33-55, *not* at col. 14:60-65 or col. 18:6-12); D.I. 205 (Acushnet's Motion for Summary Judgment of Incorporation-by-Reference) at 2 (same)].  Instead, the Federal Circuit's holding was broad and clear:  Nesbitt is now deemed as a matter of law to incorporate the wide range of polymeric materials described at column 5, lines 33-55 of the Molitor '637 patent—or, as the Federal Circuit put it, "the entire list of foamable compounds"—as there is "no basis" in the Nesbitt patent on which to "differentiate between incorporation of" various materials listed in Molitor '637.  *Callaway Golf*, 576 F.3d at 1347.

Moreover—and crucially—while Molitor '637 provides 21 separate examples of golf balls in its specification, and contains 24 claims to golf balls, all are two-piece golf balls, with a single cover layer over a core. [Molitor '637 at col. 14:54-22:28]. Thus, even if Nesbitt were deemed to incorporate specific examples from Molitor '637 beyond the broad list of materials at columns 3 and 5, it would still be true that *none* of the balls in either reference is a ball containing a polyurethane outer cover layer disposed over an ionomer inner cover layer, as required by the asserted Sullivan claims. In other words, while Acushnet makes reference in its brief to "the ionomer/polyurethane ball taught by Nesbitt and Molitor" [D.I. 535 at 2], there is in fact no such ball taught by the reference.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Each claim of an issued patent is presumed valid, 35 U.S.C. § 282, and a party asserting invalidity bears the burden to prove it, claim-by-claim, with clear and convincing evidence. *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). This heightened burden must be considered when evaluating a motion for summary judgment. *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Here, Acushnet's motion is premised on anticipation, which is a question of fact. *In re Skvorecz*, 580 F.3d 1262, 1266 (Fed. Cir. 2009). Thus the Court should not grant summary judgment unless a reasonable jury would be compelled to find that Acushnet has established by clear and convincing evidence that the asserted claims are anticipated.

### B.   Anticipation

As Acushnet admits, anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention, either explicitly or inherently.

6

*Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003).  A limitation is not inherently disclosed unless it *necessarily*, or always, results from the practice of the prior art alleged to anticipate.  *See, e.g., Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." (quoting *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999))); *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) ("Inherency, however, may not be established by probabilities or possibilities").

Acushnet fails to acknowledge, though, that more is required to anticipate.  A prior art reference "must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim,'" so as to disclose the actual claimed invention.  *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)).  In other words, it is not enough that each limitation of a claim may be found floating about somewhere within a reference.  Rather, as the Federal Circuit's predecessor court explained, a reference "must clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] *without any need for picking, choosing, and combining various disclosures* not directly related to each other by the teachings of the cited reference."  *In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972) (emphasis added) (reversing anticipation rejection); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1083 (Fed. Cir. 2008) (relying on *Arkley* to affirm finding of no anticipation).

Acushnet ignores this authority, and instead cites different cases—namely, *Perricone, Leggett & Platt, In re Gleave*, and *In re Petering*—to contend that "[a] reference that discloses multiple options for a particular feature will anticipate a later application that uses one of the disclosed options."  [D.I. 535 (Acushnet revised brief) at

7

7].  But Acushnet plainly misreads these cases, and blurs the critical distinction between a *list* case—where the complete invention, with all elements arranged as in the claim, is disclosed explicitly as a unitary example within a list set forth by a prior art reference— and a *genus* case, where a prior art reference discloses a general formula that can yield the claimed invention only if certain choices are made for the variables in the formula.

As the Federal Circuit explained recently in *Gleave*, "[f]or the purposes of whether they are anticipatory, lists and genera are often treated differently under our case law."  560 F.3d 1331, 1337 (Fed. Cir. 2009).  A list always anticipates every embodiment in the list, as long as the embodiment is enabled.  *See, e.g.*, *Gleave*, 560 F.3d at 1338 ("Wraight expressly lists every possible fifteen-base-long oligodeoxynucleotide sequence in IGFBP-2, and under our precedent, this list anticipates Gleave's claims [to individual sequences within the list]."); *Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2008) ("Pereira specifically discloses ascorbyl palmitate. That specific disclosure, even in a list, makes this case different from cases involving disclosure of a broad genus without reference to the potentially anticipating species."); *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1354-56 (Fed. Cir. 2008) (rejecting argument that reference fails to anticipate if it discloses *both* an anticipatory embodiment and an alternative embodiment).

But a genus does not always, or even often, anticipate the species within it.  *See Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006) ("It is well established that the disclosure of a genus in the prior art is not necessarily a disclosure of every species that is a member of that genus.").  Rather, a genus only anticipates the specific variations within it if the genus is "so limited that a person of ordinary skill in the art can 'at once envisage each member of this limited class'"—*i.e.*, if it is small and definite enough to be deemed effectively a list of the few species within the genus. *Gleave*, 560 F.3d at 1338 (quoting *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals,*

*Inc.*, 471 F.3d 1369, 1376 (Fed. Cir. 2006); *In re Petering*, 301 F.2d 676, 681 (C.C.P.A. 1962) (same).

This case is *not* a list case within the sense of *Gleave*. While the Nesbitt/Molitor reference may identify many different materials that can be used to make part of a golf ball, the reference does not disclose *any* embodiment or example containing all elements of Sullivan's claims arranged as in those claims. This case at best may be considered under the rubric of genus/species law, but the only genus disclosed in Nesbitt/Molitor that contains any relevant species is much too broad a genus to meet the standard for anticipation set forth in *Petering* and subsequent cases. Finally, regardless of the list/genus issue, Acushnet cannot prove anticipation because Nesbitt/Molitor does not disclose the requisite Shore D hardness limitations of the asserted claims and Acushnet cannot establish that the hardness limitations are inherently present in those patents.

## IV. ARGUMENT

### A. A Reasonable Jury Could Find that Nesbitt/Molitor Does Not Disclose All Elements Arranged as in the Asserted Claims

A primary flaw in Acushnet's argument for anticipation is that even if the Nesbitt/Molitor reference is assumed to disclose the various materials now urged by Acushnet, the reference still does not disclose all the elements of the asserted Sullivan claims *as arranged in those claims*—that is, in a single golf ball meeting all of the material, thickness, and hardness requirements for each layer. At the least, a reasonable jury could find for Callaway Golf on this question, making summary judgment inappropriate. *See Net MoneyIN*, 545 F.3d at 1369 (reference must disclose all elements "arranged as in the claim").

1.   **Separate Disclosure of Polyurethane and Ionomer Covers is Insufficient**

Indeed, the *Net MoneyIN* case is exactly on point here.  The patent claim in that case recited an Internet payment system comprising five "links" used for different purposes, such as "a first link between a customer computer and a vending computer for communicating promotional information from said vending computer to said customer computer," and "a second link, initiated by said customer computer, between said customer computer and a payment processing computer, remote from said vending computer, for communicating credit card information and amount from said customer computer to said payment processing computer."  545 F.3d at 1368-69.  The district court held the claim invalid on summary judgment as anticipated by a prior art reference that disclosed each of the five "links." *Id.*

On appeal, the Federal Circuit reversed, explaining that while the reference did in fact disclose the five "links," it did so by disclosing two separate protocols, "[n]either of [which] contains all five links arranged or combined in the same way as claimed in the [asserted] patent." *Id.* at 1371.  Thus, the court explained, "although the [] reference might anticipate a claim directed to either of the two protocols disclosed, it cannot anticipate the system of [the asserted] claim," and "[t]he district court was wrong to conclude otherwise." *Id.*; *see also Ecolochem, Inc. v. S. Calif. Edison Co.*, 227 F.3d 1361 (Fed. Cir. 2000); *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984) (reversing holding of anticipation, even though the prior art reference could be said to contain all of the elements of the claimed invention, because the device as a whole disclosed by the reference was "entirely different" from the claimed invention).

Analogously, each of the asserted Sullivan claims recites a single golf ball comprising three layers—a polyurethane outer cover, an ionomer inner cover, and a

10

core—and thus Nesbitt/Molitor can only anticipate if it likewise discloses a single golf ball which "contains all [three layers] arranged or combined in the same way as claimed in the [asserted] patent." *Net MoneyIN*, 545 F.3d at 1371.  But there is no such disclosure in the reference.  There are three-piece golf ball embodiments in Nesbitt, but none of them includes polyurethane or any blends of ionomers.  And there are other golf ball embodiments in Molitor '637 which include polyurethane or an ionomer blend, but only in two-piece balls, not three-piece balls.  Thus, just as in *Net MoneyIN*, there is no basis on which to hold the asserted claims anticipated here.

### 2.   Acushnet Engages in Improper Picking, Choosing, and Combining

In arguing that Nesbitt/Molitor anticipates the asserted claims, Acushnet does not rely on any unitary disclosure or teaching from the Nesbitt/Molitor reference, but rather on Acushnet's own "picking, choosing, and combining [of] various disclosures" from separate sections of the reference which are "not directly related to each other." *Arkley*, 455 F.2d at 587.  For example, with regard to the inner cover layer, Acushnet relies on Tables 2-5 of Molitor '637 to meet the claims' requirement of a blended ionomer material, but then relies on column 3 of Nesbitt—which describes different covers made of different, non-blended ionomers—to meet the required thickness values.  [*See* D.I. 535 at 11-12].  Similarly, with regard to the outer cover layer, Acushnet again chooses a material from the numerous possibilities disclosed by Molitor '637, but relies on a portion of Nesbitt to provide the required thickness value.  [*See* D.I. 535 at 12-13].  These two layers are then cobbled together in an effort to create a disclosure that allegedly teaches the limitations as arranged in the asserted claims.

As the C.C.P.A. explained in *Arkley*, such picking and choosing of separate teachings is not permitted in an anticipation analysis.  *Id.*  In that case, patent applicant Arkley claimed compounds of a certain structural formula.  The Patent Office rejected

Arkley's claim over Flynn, a reference that (a) disclosed a broad class of compounds including two examples of specific compounds that are the "exact precursors" of the Arkley compounds, and (b) disclosed that precursors could be "readily converted into compounds of [the type claimed by Arkley] by refluxing in aqueous solution with an excess of pyridine." *Id.* But the C.C.P.A. reversed the anticipation rejection, holding that the Flynn reference did not "identically describe the claimed subject matter." *Id.* at 588.

The court explained that even though Flynn disclosed specific compounds in its examples, those compounds "are the 'exact precursors' of [Arkley's] compound 'only to the extent that [Arkley has] discovered that cephaloridine will be formed *if* the acid [disclosed in example 10] is first selected and *then* carefully reacted with a particular tertiary amine [pyridine] *which also must be selected.*'" *Id.* (adopting quote from Appellants' brief, emphasis in original). Even though Flynn also disclosed pyridine as a tertiary amine which can be used for this reaction, the court held that "there is nothing in the teachings relied upon by the Patent Office which 'clearly and unequivocally' directs those skilled in the art to make this selection [of pyridine together with the right exemplary compounds] nor any indication that Flynn ever made the selection himself." *Id.* The Patent Office was free to consider an obviousness rejection over the Flynn reference, in light of the separate teachings in that one reference, but anticipation was not a proper basis for rejection. *Id.*

Here, just as in *Arkley*, the allegedly anticipatory Nesbitt/Molitor '637 reference discloses materials that can be used to make a ball of the same general construction as claimed (a three-piece ball using ionomers and, by incorporation, polyurethanes (amongst scores of other incorporated materials)), and discloses general directions for manipulating certain materials to form a product. But, as in *Arkley*, here the reference does not "clearly and unequivocally" direct those skilled in the art to choose the particular materials that will generate the claimed product—*i.e.*, Nesbitt does not express any preference for

12

polyurethane as the material for an outer cover layer, and to the contrary, discloses a preference for ionomers instead. *See* section II.B *supra*. Also, here, just as in *Arkley*, there is no indication that the author of the prior art reference made the particular selection himself in connection with the reference. In fact, Nesbitt testified that he had not even intended to disclose a polyurethane-over-ionomer ball. *Id.* Rather, to get from the Nesbitt/Molitor reference to the Sullivan claims, a person of skill would have had to "pick[], choos[e], and combin[e]" various disclosures, which by definition is beyond the bounds of anticipation.

**B.    Even Setting Aside the Hardness Limitations, Nesbitt/Molitor At Most Discloses an Overbroad Genus, Which a Reasonable Jury Could Find Insufficient for Anticipation**

Because Nesbitt/Molitor does not disclose any single ball falling within the scope of the asserted claims, Acushnet's "list" cases, including *Gleave* and *Perricone*, are inapposite. *See, e.g., Gleave*, 560 F.3d at 1338 (explaining that *Perricone* "reject[ed] 'the notion that a [compound] cannot anticipate because it appears without special emphasis in a longer list'"); *Perricone*, 432 F.3d at 1377 (holding claims anticipated where reference "specifically disclose[d]" the *only* ingredient required by the claims (a fatty acid ester of ascorbic acid) arranged exactly as in the anticipated claims (in a topical application for skin), and thus described the entire invention as claimed).[1]

---

[1]    Acushnet also relies on a non-binding district court opinion in *Wrigley* for the proposition that anticipation may be found even where the claim limitations are only found separately among various options. [D.I. 535 at 18-19.] But the court in *Wrigley* did not consider either *Net MoneyIN* or *Arkley* before issuing its opinion, and is now entertaining Wrigley's motion for reconsideration based in part on the argument that anticipation requires disclosure of all elements *arranged as in the claim*, relying on *Net MoneyIN*. [*See* N.D. Ill. Case no. 1:04-cv-00346, D.I. 306 (Cadbury's Opposition to Wrigley's Motion for Reconsideration) at 9 (complaining that "Wrigley improperly argues for the first time in its Motion [for Reconsideration] that the elements of Shahidi are not 'arranged or combined' in the same manner as Claim 34")].

### 1.     Only Definite, Limited Genera Can Anticipate Species

Instead, the most that the Nesbitt/Molitor reference can be said to disclose is a broad formula, or genus, of three-piece golf balls, which by law cannot anticipate particular species unless the genus is so "definite and limited" that "one skilled in this art would . . . at once envisage each member of this limited class." *Petering*, 301 F.2d at 681.  In *Petering*, for example, the C.C.P.A. held that a particular species was anticipated because the prior art genus "contain[ed] only 20 compounds" of such clear identity that "it is our opinion that [the reference] has described to those with ordinary skill in this art each of the various permutations here involved as fully as if [the author] had drawn each structural formula or had written each name." *Id.* at 682; *see also In re Schaumann*, 572 F.2d 312, 313 (C.C.P.A. 1978) (affirming anticipation where class "embraces a very limited number of compounds," counted as 7 by examiner).

In the intervening case of *In re Ruschig*, by contrast, the C.C.P.A. distinguished *Petering* and held that a species was not anticipated by a prior art genus that included "some 130" species, nor by other genera that included "some 156," and "a possible 259" species, respectively.  343 F.2 965, 974 (C.C.P.A. 1965).  Later cases have held a genus insufficient to anticipate particular species where the genus covered "a temperature range of over 100 degrees," *Atofina*, 441 F.3d at 999-1000, or included a "large number of compounds."  *Impax Laboratories, Inc. v. Aventis Pharmaceuticals Inc.*, 468 F.3d 1366, 1383 (Fed. Cir. 2006).

### 2.     The Relevant Genus Here is Too Large and Diffuse

Here, as Acushnet argued to the Federal Circuit, and as that court held, Nesbitt states broadly that *any* of the "foamable compositions" disclosed in Molitor '637— including the "entire list" at column 5 of that patent—"***may*** be employed for ***one or both layers*** 14 and 16 for the [three-piece] golf ball of this invention."  [Nesbitt '193 patent at col. 3:50-61 (emphases added)].  This genus is exceedingly broad, as Molitor '637

14

discloses "literally hundreds" of materials [D.I. 246 (Declaration of Dr. William M. Risen) ¶ 7], and Nesbitt provides that each of the **two** cover layers of a three-piece ball may be made of any of these hundreds of materials.  Even drawing inferences in favor of Acushnet—which of course the Court cannot do for the summary judgment movant—by lumping together all the many materials contained within every one of the nine broad categories listed in Molitor '637, and treating each broad category of materials as just a single material, the Nesbitt/Molitor genus still includes at least 300-plus species (*i.e.,* in other words, assuming Molitor '637 merely discloses nine materials rather than the thousands that are actually present).  Under this simplistic assumption, in each cover layer there would be nine choices (the eight categories listed in column 5, plus ionomers from column 3) times two for the possibility of a "[m]ixture" of materials (although there are in fact hundreds of different possible mixtures even lumping together materials at the category level), for a total of at least eighteen possibilities in each of the two cover layers, or $18^2 = 324$ permutations.

Whatever the exact of number of species, this genus is far too large to be considered the equivalent of disclosing each and every species within it, particularly given that Nesbitt's incorporation—in the words of the Federal Circuit—yields "no basis to differentiate between" the various materials to be considered for either or both cover layers.  576 F.3d at 1347.  *Compare Petering*, 301 F.2d at 681 (anticipation of 20 species) *and Schaumann*, 572 F.2d at 313 (anticipation of 7 species) *with Ruschig*, 343 F.2 at 974 (no anticipation where genera included "some 130," "some 156," and "a possible 259" species) *and  Eli Lilly*, 471 F.3d at 1373, 1376-77 (no anticipation where reference disclosed large genus; even though reference also examined "forty-five specific compounds (as opposed to a genus of compounds)," and "listed several preferred compounds and substituents," court held examples insufficient because none of them resembled claimed invention).

15

Even in the *Wrigley* case relied on by Acushnet, where the district court was arguably too quick to find anticipation (*see supra* n.1), the total number of permutations disclosed by the prior art reference was only 46 (equal to 23 possible flavoring agents times 2 possible cooling agents), far fewer than the genus in Nesbitt/Molitor even when inferences are drawn in Acushnet's favor. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010, 1030 (N.D. Ill. 2009). In any event, it is Acushnet's burden to prove by clear and convincing evidence that the genus in Nesbitt/Molitor is sufficiently "definite and limited" to anticipate particular species falling within the asserted Sullivan claims, and the Court must draw inferences in Callaway Golf's favor and not Acushnet's. Because Acushnet has failed to offer any evidence on the breadth of the genus disclosed by Nesbitt/Molitor, and indeed the undisputed evidence in the form of the Nesbitt/Molitor disclosure itself and the Risen declaration establishes just how broad that genus is, Acushnet cannot prevail at summary judgment.

**C.    A Reasonable Jury Could Easily Find that Nesbitt/Molitor Does Not Disclose the Hardness Values Claimed by Sullivan**

Finally, even setting aside the fact that Nesbitt's broad incorporation of Molitor's wide ranging materials is not sufficient to disclose a three-piece polyurethane-over-ionomer-covered ball, Acushnet would still not be entitled to summary judgment, because Acushnet has not established that such a ball would necessarily meet the limitations of the asserted claims pertaining to the Shore D hardness of the polyurethane outer cover layer.

**1.    There is No Disclosure of Relevant Hardness Values**

As reviewed above, the asserted claims require on-the-ball hardness values. The Nesbitt patent does not disclose any on-the-ball Shore D hardness values for its ionomer cover layers, let alone for a polyurethane cover layer. And the Molitor '637 patent does not fill this gap. The only mention of Shore hardness in Molitor '637 is the off-the-ball

16

(or plaque) hardness of the high-density poly*ethylene* used in example 21 (col. 19:40-45)—there is no disclosure of Shore hardness in the context of polyurethane, let alone in a three-piece ball.

Acushnet argues that Nesbitt/Molitor inherently discloses the claimed hardness limitations for the polyurethane outer cover layer. But inherency only obtains when the missing limitation *necessarily* results from the practice of the prior art reference's disclosure. *See Trintec Indus.*, 295 F.3d at 1295. In other words, "[i]n order for a claim to be inherent in the prior art it is not sufficient that a person following the disclosure sometimes obtain the result set forth in the claim, it must *invariably* happen." *Glaxo, Inc. v. Novopharm Ltd.*, 830 F. Supp. 871, 874 (E.D.N.C. 1993) (emphasis added), *aff'd*, 52 F.3d 1043, 1045 (Fed. Cir. 1995). It is Acushnet's burden to prove this relationship by clear, convincing, admissible evidence. *See Crown Operations Intern., Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1377-78 (Fed. Cir. 2002) (rejecting the proposition "that if a prior art reference discloses the same structure as claimed by a patent, the resulting property . . . should be assumed").

### 2.    Acushnet's Test Balls Cannot Prove Inherent Hardness Values

Acushnet's primary "evidence," however—the Test Balls allegedly made according to Nesbitt and Molitor '637—fails to establish that the Shore D hardness limitation is inherent in prior art and, in any event, is also not properly admissible to prove inherency. As explained in Callaway Golf's motion to exclude, filed December 11, 2009 [D.I. 537], the Test Balls are *not* in fact representative of Nesbitt or Molitor '637. Their polyurethane outer cover layers contradict the very teaching in Molitor '637 on which they are allegedly based, and their core composition is not disclosed anywhere in Nesbitt or Molitor '637. [*See id.* at 5-10, 17-20]. Acushnet argues that the core composition it used for its Nesbitt/Molitor Test Balls was "known in the art to be the Nesbitt core" [D.I. 535 at 15], but Acushnet cannot dispute that this core composition is

17

not disclosed "within the four corners of the [Nesbitt/Molitor] document," as is required for anticipation. *Net MoneyIN*, 545 F.3d at 1369.  Moreover, Acushnet admits that it did not even adhere to the core recipe it cites as allegedly being within the prior art.  [D.I. 537 (Callaway Golf's motion to exclude) at 7-8 (explaining that Acushnet chose not to use the material Papi 94, which typically has the effect of improving the internal strength and integrity of the core, making the ball less susceptible to degradation)].

Acushnet argues, however, that the core and inner cover layer are irrelevant to the outer cover hardness on a ball of particular construction.  [D.I. 535 at 15-16].  But as with the core composition, Acushnet cannot establish that the requisite outer cover hardness is disclosed in the prior art by pointing to a non-prior-art disclosure in the very patents-in-suit.  And in any event, there is a battery of evidence contradicting Acushnet's proposition, including an explanation in Acushnet's own U.S. Patent No. 6,909,630 that outer cover layer hardness depends in part on "ball construction (*i.e.*, core type, number of core and/or cover layers, etc.), ball (or sphere) diameter, and the material composition of adjacent layers" [*see* D.I. 202 at 16], as well as the testimony of Acushnet's 30(b)(6) witness Jeff Dalton, a golf ball inventor himself, who explained that when measuring on-the-ball hardness, "you also have an influence of what's underneath the layer that you're trying to measure."  [*Id.* at 17].

Regardless of this factual dispute over the effect of inner layers on outer cover hardness (a dispute itself precluding summary judgment), Acushnet cannot fairly introduce the Test Balls at trial, because they carry a risk of undue prejudice that far outweighs their probative value, and because Acushnet has no witness who is qualified and designated to provide the expert testimony necessary to link the Test Balls to any relevant issue.  [*See* D.I. 537 at 16-17, and 21-28 (Callaway Golf's MIL, advancing these arguments in more detail)].  For example, while Acushnet's opening brief cites the MacKnight Declaration repeatedly [D.I. 535 at 13-14], this Court has already excluded

18

such "expert" testimony, and the Federal Circuit has affirmed that decision. [*See* D.I. 346
("Plaintiff's motion to exclude expert testimony regarding certain 'hybrid golf balls' (D.I.
288) is granted . . . ."); *Callaway Golf Co.*, 576 F.3d at 1374 ("we find no error in the
district court's ruling" regarding expert testimony)].  Thus, Acushnet's failure to provide
any expert opinion regarding the alleged inherency of the Shore D hardness limitation is
fatal to both its effort to admit the Test Balls as evidence as well as its effort now to seek
a summary judgment that Nesbitt/Molitor '637 anticipates the asserted claims.

  Moreover, even setting aside Acushnet's failure to create admissible evidence that
follows the actual teachings of Nesbitt/Molitor '637 and overlooking Acushnet's failure
to present any expert opinion to support its attorney argument concerning the issue of
inherency, the Test Balls at best merely show that Acushnet's lawyers, with hindsight,
were allegedly able to construct a ball with an on-the-ball Shore D hardness of 64 or less
– not that such a ball would invariably result from the teachings of Nesbitt/Molitor '637.
As discussed above, Acushnet has not shown that Nesbitt/Molitor '637 would have
taught one of skill in the art to select a low acid ionomer blend for the inner cover and a
polyurethane for the outer cover amongst the thousands of possible combinations.  And,
even assuming *arguendo*, that Nesbitt/Molitor '637 had actually taught that particular
arrangement, Acushnet's Test Balls would fail to establish that a ball with the required
Shore D hardness limitation would have been an inherent and inevitable result no matter
which of the innumerable possibilities were chosen for actually constructing a golf ball.
[*See also* D.I. 537 at 22-25 (Callaway Golf's MIL, further addressing this argument)].  In
other words, Acushnet's Test Balls merely show that its counsel, following the teachings
of Sullivan's invention, were allegedly able to construct a couple golf balls with the
requisite hardness, not that such a ball was an inevitable result that would occur
regardless of the type of low acid ionomer used, regardless of the type of polyurethane
used, regardless of other materials used as part of the design of the inner and outer

19

covers, and regardless of the thicknesses chosen for the inner and outer covers amongst the ranges disclosed in Nesbitt.[2] Thus, Acushnet's Test Ball evidence – even if it was admissible – fails to clearly and convincingly establish that the requisite Shore D hardness limitation is inherently present in Nesbitt/Molitor '637, much less that no reasonable juror could conclude otherwise.

### 3.   The Hardness of Various Balata Golf Balls Cannot Prove Inherent Hardness of Polyurethane-over-Ionomer Golf Balls

Acushnet's last resort on inherency is its argument that "*balata*-covered balls had a Shore D hardness in the upper 40s to low 50s," and therefore Nesbitt, by stating that the "soft *Surlyn resin* cover" of his invention "would have about the same thickness and shore hardness of a balata covered golf ball," somehow taught that a *polyurethane* outer cover must have the same Shore D hardness. [D.I. 535 at 4, 17 (quoting Nesbitt '193 patent at col. 3:40-42 (emphases added)].

But here again Acushnet is improperly picking, choosing, and combining teachings that are not related by the Nesbitt reference, not to mention confusing the reader. This passage in Nesbitt explicitly concerns ionomer resins and balata, *not* polyurethane. Thus, even assuming for argument that Nesbitt/Molitor had specifically disclosed the arrangement of polyurethane over ionomer in a three-piece ball, this passage in Nesbitt would still be directed to Surlyn resins, and would not have *invariably* required all polyurethane-over-ionomer balls to have Shore D hardness in the upper 40s to low 50s. Rather, other teachings in Nesbitt, also directed to Surlyns, would have been equally applicable (or inapplicable), but likely to yield a much harder ball—for example, the teaching that the outer cover layer may be as thin as 0.020 inches. [Nesbitt '193 patent at col. 3:23-25]. As Acushnet recognizes, the thinner the outer cover layer, the

---

[2] *See, e.g.,* Statz Tr. 659:16-660:5 (Acushnet's expert agreeing that "different combinations of core size and inner cover thickness and outer cover thickness will lead to *wildly different performance*").

more its hardness depends on the layer beneath, which here would be a *hard* ionomer resin. Thus there is no reason that at least *one* Nesbitt/Molitor ball could not have a Shore D hardness over 64, outside the scope of Sullivan's claims. *Compare Glaxo*, 830 F. Supp. at 874 (for inherency, result "must invariably happen"). Certainly, Acushnet has not presented clear and convincing evidence precluding any reasonable juror from making such a finding. Thus, neither Acushnet's Test Ball evidence, nor its arguments concerning Nesbitt, establish that Nesbitt/Molitor '637 anticipates the asserted claims as a matter of law.

## V.     CONCLUSION

For the foregoing reasons, Callaway Golf respectfully asks that the Court deny Acushnet's motion for summary judgment of anticipation.

Dated: January 14, 2010          FISH & RICHARDSON P.C.


By: /s/ *Thomas L. Halkowski*
    Thomas L. Halkowski (#4099)
    222 Delaware Avenue
    17th Floor
    P.O. Box 1114
    Wilmington, DE 19899-1114
    Tel:  (302) 652-5070
    Fax:  (302) 652-0607

    Frank E. Scherkenbach
    225 Franklin Street
    Boston, MA 02110-2804
    Tel:  (617) 542-5070
    Fax:  (617) 542-8906


    Attorneys for Plaintiff
    CALLAWAY GOLF COMPANY

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2010, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on January 14, 2010, I have Electronically Mailed the document to the following person(s):

Richard L. Horwitz, Esq.                     Attorneys for Defendant
David E. Moore, Esq.                         ACUSHNET COMPANY
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Alan M. Grimaldi, Esq.                       Attorneys for Defendant
Joseph P. Lavelle, Esq.                      ACUSHNET COMPANY
Kenneth Donnelly, Esq.
Brian A. Rosenthal, Esq.
Clint Brannon, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
grimaldia@howrey.com
lavellej@howrey.com
rosenthalB@howrey.com
brannonC@howrey.com
donnellyk@howrey.com

*/s/ Thomas L. Halkowski*
Thomas L. Halkowski