IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,

Plaintiff,

v.

ACUSHNET COMPANY,

Defendant.

C. A. No. 06-91 (SLR)

## CALLAWAY GOLF'S *REPLY* IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE ANY REFERENCE TO ACUSHNET'S "TEST BALLS"

**FISH & RICHARDSON P.C.**
Thomas L. Halkowski (#4099)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
Fax: (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel: (617) 542-5070
Fax: (617) 542-8906

*Attorneys for Plaintiff*
*Callaway Golf Company*

DATED:  February 2, 2010

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT ...............................................................................................1

      A.    The Test Balls are Not Substantially Probative of Anticipation...........................................................................................2

            1.    Nesbitt/Molitor Does Not Disclose a Three-Piece, Polyurethane-Over-Ionomer Ball .......................................3

            2.    The Test Balls are Not Even Consistent with Nesbitt/Molitor as Understood by Acushnet................................8

      B.    The Test Balls are Unduly Prejudicial .....................................................11

      C.    Dr. Statz Cannot Retroactively Sponsor the Test Balls ...........................13

III.   CONCLUSION ..........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atofina v. Great Lakes Chemical Corp.,*
   441 F.3d 991 (Fed. Cir. 2006)...........................................................................................4

*Callaway Golf Co. v. Acushnet Co.,*
   576 F.3d 1331 (Fed. Cir. 2009)......................................................................................4, 10

*Elan Pharma., Inc. v. Mayo Foundation for Med. Educ. and Research,*
   304 F.3d 1221 (Fed. Cir. 2002)........................................................................................8

*In re Arkley,*
   455 F.2d 586 (C.C.P.A. 1972) ........................................................................................2

*In re Brimonidine Patent Litigation,*
   2009 WL 3490861 (D. Del. Oct. 23, 2009) ...................................................................14

*In re Gleave,*
   560 F.3d 1331 (Fed. Cir. 2009).......................................................................................7

*In re Ruschig,*
   343 F.2 .............................................................................................................................5

*Leggett & Platt, Inc. v. VUTEk, Inc.,*
   537 F.3d 1349 (Fed. Cir. 2008).......................................................................................8

*Net MoneyIN, Inc. v. VeriSign, Inc.,*
   545 F.3d 1359 (Fed. Cir. 2008).......................................................................................5

*Perricone v. Medicis Pharmaceutical Corp.,*
   432 F.3d 1368 (Fed. Cir. 2008).......................................................................................5

*Therasense, Inc. v. Becton, Dickson & Co.,*
   Case No. 09-1008 (Fed. Cir. January 25, 2010) (available at
   http://www.cafc.uscourts.gov/opinions/09-1008.pdf ) ........................................2, 6

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
   209 F. Supp. 2d 348 (D. Del. 2002).............................................................................11

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
   631 F. Supp. 2d 1010 (N.D. Ill. 2009) .........................................................................5, 6

*Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.,*
   112 F.3d 1137 (Fed. Cir. 1997)....................................................................................11

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**STATUTES**

35 U.S.C. § 102.............................................................................................................................3

## I.    INTRODUCTION

Acushnet's opposition brief proceeds as if the Test Balls were presumed admissible until proven otherwise by Callaway Golf.  But under the Federal Rules of Evidence it is Acushnet—the sponsor of the Test Balls—who bears the burden to establish admissibility.  Callaway Golf has challenged the balls on several grounds, including their undue prejudice, lack of relevance, and failure to have any relevant supporting expert opinion.  Acushnet has not overcome these challenges.  For these reasons, and the reasons discussed in its opening brief, Callaway Golf respectfully requests that the Test Balls be excluded.

## II.    ARGUMENT

Acushnet claims that the Federal Circuit "reversed the Court's exclusion of the anticipation test ball evidence" and "remanded for a determination of authenticity." [Opp. at 6.]  Acushnet's assertions are at odds with what the Federal Circuit actually said and did.  Anticipation was not even an issue in the previous trial; the Federal Circuit, therefore, merely determined that certain grounds for excluding the balls as evidence concerning obviousness were inapplicable to assessing their admissibility regarding the issue of anticipation.  This Court has never ruled whether or not any test balls should be admitted for anticipation – much less had any such ruling "reversed" by the Federal Circuit.  Indeed, Acushnet admits later in its brief that, "[t]he Court's rulings regarding test balls…were all related **only to obviousness** test balls, since the Court granted Callaway's motion for summary judgment of no anticipation." [Opp. fn.3.]  The only questions presented at this juncture, therefore, are whether or not the two test balls at issue are relevant to anticipation and, even if they are, whether they should be excluded for other reasons such as undue prejudice.

---

[1]    "Opp." refers to Acushnet's Opposition to Callaway's Motion *In Limine* To Preclude Any Reference To Test Balls, Docket No. 557.

1

### A.    The Test Balls are Not Substantially Probative of Anticipation

Acushnet claims that the Test Ball evidence is probative of anticipation because it "shows what the outer cover hardness would be when the teachings of Nesbitt are followed." [Opp. at 11; *see id.* at 1 (claiming that "Acushnet followed the directions of Nesbitt"). ] But as explained in Callaway Golf's opening brief, and in its opposition to Acushnet's motion for summary judgment of anticipation, Acushnet did *not* merely follow the teachings of the Nesbitt/Molitor reference when creating the Test Balls. Rather, when Acushnet's attorneys designed the test balls, they used hindsight to make a multitude of design choices – including picking two specific cover-layer ingredients from among the hundreds or thousands disclosed in the Nesbitt/Molitor reference, choosing to use one of those ingredients for the inner cover layer and the other as part of the outer cover layer, choosing particular thicknesses for those layers (including an outer-cover thickness that is inconsistent with the teachings of the reference), and combining those hindsight selections with a core composition that is not disclosed anywhere in the reference. [*See* D.I. 537 (Callaway Golf's opening brief) at 17-21]. The discrepancies between the prior art and the design work of Acushnet's attorneys do not merely go to the weight of the Test Ball evidence: under the legal standard for anticipation, they deprive Acushnet of the necessary criteria for admission in the first place. *See In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972) (reference "must clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference").

Recently, the Federal Circuit reiterated the importance of the rule precluding picking and choosing of elements from a reference and using hindsight to arrange them in the order set forth by the patents-in-suit. *See Therasense, Inc. v. Becton, Dickson & Co.*, Case No. 09-1008 (Fed. Cir. January 25, 2010) (available at

2

http://www.cafc.uscourts.gov/opinions/09-1008.pdf ).  In that case, the Federal Circuit
stated that, "Unless a reference discloses within the four corners of the document not only
all of the limitations claimed but also all of the limitations *arranged or combined in the
same way as recited in the claim*, it cannot be said to prove prior invention of the thing
claimed and, thus, cannot anticipate under 35 U.S.C. § 102."  When this matter was on
appeal, the Federal Circuit did not discuss this key case law (or otherwise address the
merits of whether the asserted claims were anticipated) because anticipation was not an
issue in the prior trial.  Because preclusion of the Test Balls for purposes of obviousness
did not automatically preclude their use for purposes of anticipation, the Federal Circuit
has now remanded this evidentiary issue to this Court to decide given the possibility that
Acushnet <u>might</u> be able to admit balls "designed to replicate Nesbitt."  However, the
relevant case law and the evidence of record shows that the Test Balls at issue in this suit
do not come close to satisfying this basic requirement, and are thus inadmissible with
regard to the issue of anticipation.

### 1. Nesbitt/Molitor Does Not Disclose a Three-Piece, Polyurethane-Over-Ionomer Ball

The two Test Balls at issue are three-piece, polyurethane-over-low-acid ionomer
balls with particular physical characteristics.  To prove that they are probative of any
proposition relating to anticipation, Acushnet was required to show first that the
Nesbitt/Molitor reference somewhere discloses a three-piece, polyurethane-over-ionomer
golf ball.  But, of the more than 34 complete, unitary golf balls disclosed in Nesbitt or
Molitor '637, *none* has the same arrangement of materials as do the Test Balls designed
by Acushnet's lawyers: a polyurethane outer cover layer, disposed over a low acid
ionomer (or blend of ionomers including a low acid) inner cover layer, disposed over a
core.  Thus, despite Acushnet's repeated claim that the Test Balls are "taught by Nesbitt,"

3

there is in fact no actual golf ball embodiment that is anything like the Test Balls
disclosed as an example anywhere in the reference.

Acushnet claims to have "followed the directions of Nesbitt" when constructing
the Test Balls.  Yet, neither Nesbitt nor Molitor '637 contains any direction to use
polyurethane *in conjunction with* ionomers (let alone in the configuration chosen by
Acushnet's attorneys).  If there were such a teaching, surely Acushnet would have
pointed to it, but it simply does not exist.  Instead, the only support Acushnet can muster
for this claim is that, per Nesbitt, "one or both of the cover layers can be made using one
of the 'foamable compositions' disclosed in Molitor '637."  [Opp. at 2].

Thus, lacking any example or teaching in Nesbitt, Acushnet's attorneys
admittedly made several design decisions with the benefit of hindsight to construct the
Test Balls, using the Sullivan patents as a guide.  There was no other way to construct
balls that would aid Acushnet's case – there are hundreds, if not thousands, of "foamable
compositions" disclosed in Molitor '637, [*See* Opp. Ex. 2 (Molitor '637) at 5:33-55; D.I.
246 (Declaration of Dr. William M. Risen) ¶ 7; Docket No. 429 (Trial Tr.) at 1294
(referencing relevant list of materials in Molitor '637 at column 5 and explaining, "Oh,
there would be a very large number …. on and on, and blends of them would just take
you into the hundreds, if not thousands, of possibilities")], all of which are now deemed
incorporated into Nesbitt, such that Nesbitt now teaches a broad formula for hundreds (if
not thousands) of potential permutations on a three-piece golf ball.  *See* D.I. 537
(Opening Brief) at 17-21; *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1347 (Fed.
Cir. 2009).  As the Federal Circuit has held repeatedly, the disclosure of a broad genus
does not itself suffice to disclose the particular permutations, or species, within the genus.
*See, e.g., Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006).
That is particularly true here, where the genus has at least 324 species (even resolving all
inferences in Acushnet's favor).  [D.I. 537 (Opening Brief) at 24 n.8].

4

Acushnet argues that genus-species law is inapplicable because "Molitor '637

discloses a single species [of *polyurethane*], not merely a genus or class of materials."

[Opp. at 11]. Acushnet misses the point. The asserted patent claims are to *golf balls*, not

individual materials, and thus can only be anticipated by a prior disclosure of a golf ball

with the patented features. Just as the disclosure of a broad chemical formula will not

suffice to disclose each of hundreds of particular chemical compounds that satisfy the

formula (*see, e.g., In re Ruschig*, 343 F.2 965, 974 (C.C.P.A. 1965)), here Nesbitt's broad

statement that "a number of foamable compositions ... may be employed for one or both

layers [of a golf ball]" does not suffice to now disclose with perfect hindsight one

possible selection of the hundreds or thousands of particular *golf balls* that may fall

within the formula but are not specifically identified. Nor does it suffice that

polyurethane and ionomers are each used in separate golf balls of fundamentally different

constructions (Nesbitt showing only 3-piece balls, and Molitor showing only 2-piece)

within the combined Nesbitt/Molitor reference. *See Net MoneyIN, Inc. v. VeriSign, Inc.*,

545 F.3d 1359, 1369 (Fed. Cir. 2008) (separate disclosure of each element does not

anticipate claim to particular arrangement of elements).

Acushnet relies on *Perricone* and *Wrigley* for the proposition that a "list of

options for each cover layer" is sufficient for anticipation, and thus sufficient to link

Nesbitt/Molitor to the Test Balls. [Opp. at 9-10]. But Acushnet overreaches, based on a

misreading of *Perricone*. In that case, the prior art reference disclosed the ***sole***

***ingredient*** required by the claims (a fatty acid ester of ascorbic acid) arranged exactly as

in the anticipated claims (in a topical application for skin), and thus described the entire

invention as claimed, not just a broad description of various possible elements of it. *See*

*Perricone v. Medicis Pharmaceutical Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2008)

("Pereira specifically discloses ascorbyl palmitate. That specific disclosure, even in a list,

makes this case different from cases involving disclosure of a broad genus without

reference to the potentially anticipating species").[2] And the *Wrigley* decision is neither controlling nor persuasive. The decision was made prior to the Federal Circuit's recent confirmation in *Therasense* that anticipatory references must disclose the elements as arranged in the claims, not merely a list of elements that one of ordinary skill could use to arrive at the claimed arrangement. Indeed, the district court in *Wrigley* did not even appear to consider the key requirement that all limitations must be arranged as in the claim. In any event, there were only 46 possible species in the disclosure at issue in that case, far fewer than the hundreds, if not thousands, of species here. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010, 1030 (N.D. Ill. 2009) (23 possible flavoring agents times 2 possible cooling agents); *see also* N.D. Ill. Case no. 1:04-cv-00346, D.I. 306 (Cadbury's Opposition to Wrigley's Motion for Reconsideration) at 9 (complaining that "Wrigley improperly argues for the first time in its Motion [for Reconsideration] that the elements of Shahidi are not 'arranged or combined' in the same manner as Claim 34").

Moreover, neither of the cases relied upon by Acushnet involved a situation where the lawyers (not experts) used hindsight to choose the various features from the

---

[2]   Acushnet also misses the mark when it accuses Callaway Golf of having made the same "list of options" argument in a decade-old litigation with Bridgestone. As the block quote in Acushnet's brief itself states, Callaway Golf's argument was that one of the complete, unitary ionomer-over-ionomer balls described in Nesbitt anticipated a Bridgestone claim, *not* merely that each element of the Bridgestone claim could be found separately somewhere in Nesbitt. [Opp. p.9 n.2]

This is the fundamental difference between what Acushnet is trying to do here (using hindsight and the claimed invention to combine various elements amongst thousands of possibilities through picking and choosing to arrive at an allegedly anticipatory embodiment), and what, at best, might be allowable under the case law (identify one complete embodiment that is described amongst a list of such complete embodiments – e.g., construct a physical sample of a fully-described golf ball embodiment, such as No.5, from the Nesbitt patent from amongst the other embodiments Nos. 1-8).

references to include in the alleged recreation of the prior art.[3]  As the Court may recall,

during Dr. MacKnight's deposition he admitted that Acushnet's attorneys made all the

relevant selections from the two references:

> **Q**.  Similarly, let's turn to page 5, Paragraph 13 where you say, "I directed
> the preparation of three outer cover layer materials."  Who selected those
> materials?
> **A**.  The attorneys.
> **Q**.  So the selection of the core materials, inner cover materials and outer
> cover materials in the golf balls you made were all made by attorneys,
> correct?
> **A**.  Correct.
> **Q**.  Those were the attorneys at the Howrey law firm?
> **A**.  Correct.  <u>That would be specifically Mr. Rosenthal</u>.[4]

[*See* Declaration of Halkowski, Ex. A (MacKnight Depo.) at 52:24-53:19.]

Acushnet also misstates the rationale of the recent *Gleave* case, writing that the

Federal Circuit found claims anticipated where "the claim *limitation* appeared in a long

list of other compounds in the prior art."  [Opp. at 10 (emphasis added)].  As the Federal

Circuit stated, the holding in *Gleave* was not based on the prior disclosure of a single

claim limitation, but on the prior disclosure of the *entire* invention exactly as claimed.

*See In re Gleave*, 560 F.3d 1331, 1335-36 (Fed. Cir. 2009) ("Gleave's claims are to

compositions of matter-oligonucleotides"); *id.* at 1338 ("Wraight expressly lists every

possible fifteen-base-long oligodeoxynucleotide sequence in IGFBP-2, and under our

precedent, this list anticipates Gleave's claims").  Because Nesbitt/Molitor indisputably

lacks any such disclosure of a complete golf ball, *Gleave* does not help Acushnet.

---

[3]  Indeed, admission of the test balls would require depositions of, and ultimately
testimony at trial by, Acushnet's in-house and litigation attorneys to address the
critical issues as to how and why they chose the various elements that they
incorporated into those balls, including whether, and if so how, they took into account
how one of ordinary skill would have been taught to choose such combinations at the
relevant time in 1995.

[4]  *See also* D.I. 427 (Trial Tr.) at 755:4-7 (Court observing during the first trial in this
case that, "really, it was the lawyers who created this whole process").

7

Similarly, Acushnet cites *Leggett & Platt*, yet that case again concerned the "disclosure of multiple examples," one of which was the ***entire*** claimed invention, *see Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1354-56 (Fed. Cir. 2008), not multiple options for a single claim limitation as Acushnet now suggests. [*See* Opp. at 8].

**2.     The Test Balls are Not Even Consistent with Nesbitt/Molitor as Understood by Acushnet**

Because Nesbitt/Molitor does not disclose any three-piece, polyurethane-over-ionomer ball, the Test Balls are irrelevant and ought to be excluded. But even if Nesbitt/Molitor were deemed to disclose such a ball, the Test Balls would still be irrelevant because Acushnet deviated from the teachings it claims to have invoked, and instead made balls that contradict Nesbitt/Molitor and depend on yet a third separate reference.

First, Acushnet concedes that it used a core composition that is not disclosed anywhere in Nesbitt or Molitor '637. Acushnet argues that it should be allowed to go beyond the four corners of the Nesbitt/Molitor reference because "Sullivan knew the cores used by Nesbitt" [Opp. at 1], but Acushnet fails to explain how the inventor's own disclosure can possibly bolster a case for anticipation by others. Moreover, the Federal Circuit has roundly rejected this position. *See Elan Pharma., Inc. v. Mayo Foundation for Med. Educ. and Research*, 304 F.3d 1221, 1231 (Fed. Cir. 2002) ("We observe the dissent's statement that an inventor's own disclosure can be used against him to prove anticipation. That statement is inaccurate."); *reheard en banc to resolve separate question whether prior art reference must be enabling to anticipate*, 346 F.3d 1051 (Fed. Cir. 2003) (vacating and remanding summary judgment of anticipation).

Second, Acushnet concedes that it deviated even from the core recipe it obtained from outside the four corners of Nesbitt/Molitor by leaving out a key ingredient for stability and moisture control—Papi 94. [*See* D.I. 537 (Opening Brief) at 7-8; Opp. at 19

8

n.7 (admitting that "Acushnet omitted this ingredient...")]. Acushnet now argues that Callaway Golf is required to show how these deviations affect the hardness of the Test Balls, but it is Acushnet's burden to prove that the balls are representative of Nesbitt, and thus to prove that these deviations are immaterial. To do so, Acushnet relies only on the patents-in-suit—which by definition are not evidence of anticipation—and on a *new* Dalton Declaration with "recently performed" test results [Opp. at 16 n.5; *id.* at 4 n.1], in blatant disregard for the Court's Order at the December 9, 2009 teleconference that Acushnet was *not* entitled to expand the record on remand with such unvetted additional testimony. [*See* Declaration of Halkowski, Ex. B (Dec. 9, 2009 hearing transcript) at 12-16]. Callaway Golf respectfully requests that the Court maintain its ruling excluding this new evidence. Moreover, Callaway Golf has not had the opportunity to depose Mr. Dalton regarding these new tests and his new Declaration, nor to provide rebuttal expert opinion and evidence, as would be necessary if the Court were inclined to revisit its ruling and consider these new materials.[5] Callaway Golf respectfully submits that it would impose an unfair burden to do so this late in the schedule.

Third, contrary to Acushnet's assertions and its new declaration, there is evidence in the trial record that changes in core composition can impact the hardness of the outer cover layer. As Mr. Dalton himself testified during the first trial:

> Q. And what's underneath the layer you're measuring can also influence the measurement; is that correct?
> A. Yes, it can.
> Q. And what's underneath the layer you're measuring is particularly important if the layer you're measuring is very thin; right?
> A. Thin covers are more influenced by what's underneath them than thicker covers.

---

[5]   Engaging in such an expansion of the record, and the attendant additional discovery, would merely serve to further complicate this case and, ultimately, distract the jurors from what should be the focus – what the actual prior art would have taught to one of ordinary skill in the art in 1995.

Acushnet's validity expert, Dr. Statz, also agreed that different combinations of core size and other limitations will lead to wildly different performance. [D.I. 426 (Trial Tr.) at 660:1-5.] There has been no discovery on whether or not the omission of this particular ingredient would or would not impact the hardness of the outer cover layer; the only undisputed fact is that Acushnet built a ball that does not conform to the teachings of the prior art reference. Whatever its reasons for doing so, that does not excuse its deviation from the prior art and somehow make the balls admissible at trial.

Fourth, Acushnet concedes that it chose a thickness value for the outer cover layer of the Test Balls that contradicts the teaching of Molitor '637 regarding foaming. Acushnet argues that this choice was permissible because Nesbitt allows for non-foamed covers. [Opp. at 20]. But even if Nesbitt includes the use of non-foamed covers in *general*, the Estane cover that Acushnet chose from Molitor '637, and which Acushnet claims is directly incorporated into Nesbitt, is *explicitly* described in Molitor as foamed. [*See* Opp. Ex. 2 (Molitor '637) at 18:35-47 ("The compression of the *foam covered ball* was 95") (emphasis added).] Indeed, that was the very basis for the Federal Circuit's remand, holding that "Nesbitt incorporates the entire list of **foamable** compounds" by reference. *See* 576 F.3d at 1347. Acushnet's own expert said in his report that "one of ordinary skill in the art would understand this paragraph to direct the reader to look to the Molitor '637 patent for '**foamable** compositions'..." [*See* Opp. Ex. 8 (Statz Report) at ¶ 70.] He had to say this because Molitor nowhere discloses any covers that are not foamed. Simply put, because Molitor does not disclose any unfoamed covers, Acushnet cannot use Nesbitt to incorporate from Molitor an unfoamed polyurethane cover for use on the Test Balls. Thus Acushnet simply cannot avoid, and apparently cannot explain, the fact that the polyurethane covers on the Test Balls contradict the very reference they are allegedly drawn from.

10

Acushnet argues that the Test Balls are admissible despite all these deficiencies. Yet, Acushnet cannot point to any controlling authority holding that alleged models *contradicting and supplementing* the prior art, rather than merely implementing an embodiment fully described in the prior art, are admissible for anticipation. The *Young Dental* case confirms that this Court has discretion to exclude the Test Balls. *See Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1146 (Fed. Cir. 1997). The *Promega* and *Kalipharma* cases cited by Acushnet did not involve situations where a party by its own admission declined to follow the actual teachings of the prior art references for anticipation purposes. And the only case from this jurisdiction, *Wessley Jessen*, supports Callaway Golf's position. There, the court held that alleged recreations of a prior art reference deviated from the reference and were therefore not probative of anticipation. *See Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 393 (D. Del. 2002) ("The fact that [an example] can be substantially altered to achieve materials that sometimes fall within the '943 patent does not establish anticipation").[6] Thus, Callaway Golf requests exclusion of the Test Balls, which do not faithfully recreate even Acushnet's understanding of Nesbitt/Molitor '637.

**B.     The Test Balls are Unduly Prejudicial**

Even assuming for the sake of argument that the Test Balls have some probative value, Acushnet has not rebutted Callaway Golf's showing that admission of the balls would be severely and unduly prejudicial – indeed, Acushnet barely even attempts to do so in a few short paragraphs at the end of its opposition brief. As to the case as a whole, Acushnet states that it will not argue obviousness based on a Nesbitt/Molitor '637 combination as long as the Test Balls are admitted. But this promise would do nothing to counter the prejudice to Callaway Golf regarding other obviousness combinations,

---

[6]   The Court did not formally exclude the evidence, but would not have been expected to do so at a bench trial

particularly any including Nesbitt.  Once the Jurors see Acushnet's hindsight recreation based on two prior art patents—albeit patents that are deemed as a matter of law to constitute a single reference—they will be unduly influenced to accept other improper hindsight arguments.  Acushnet states that "any limited prejudice…can be cured with a limiting instruction" [Opp. at 21], but provides no support for this statement, and fails to address Callaway Golf's showing that a limiting instruction would be ineffective in light of the particular anticipation argument advanced by Acushnet (and how similar it is in spirit to an obviousness argument).

As to anticipation by itself, Acushnet offers no reason to doubt Callaway Golf's position: even if the Test Balls are deemed to be probative of the hardness of certain polyurethane-over-ionomer balls, they would unduly prejudice the Jury into accepting Acushnet's argument that Nesbitt/Molitor discloses these exact polyurethane-over-ionomer balls—a "[w]e did it, here it is," hindsight-based proof—when this is the very question that must be answered *before* the Test Balls can become relevant, even on Acushnet's own theory.  [*See* Opp. at 11 (claiming that the Test Balls are relevant because they "show[] what the outer cover hardness would be *when the teachings of Nesbitt are followed*" (emphasis added), thus begging the question whether the teachings of Nesbitt were followed here)].  As discussed above, when combined, Molitor and Nesbitt disclose hundreds, if not thousands, of possible combinations for different golf balls.  It would be unduly prejudicial to single out one possible combination when the very question the jury must answer is whether or not this combination of the requisite elements as arranged in the asserted claims would have been taught to one of skill in the art at the time.  That prejudice is even greater where, as here, the jury must also determine whether or not certain properties are inherently possessed by that combination.  The test balls lead the jury away from considering the references as a whole, including

the myriad of possibilities they disclose, and are therefore especially prejudicial to anticipation.

### C.    Dr. Statz Cannot Retroactively Sponsor the Test Balls

Finally, Acushnet writes that Dr. Statz "will confirm the relevance of the test ball evidence." [Opp. at 1].  But Dr. Statz was not involved in Acushnet's creation of the Test Balls and cannot now retroactively cure Acushnet's lapses or explain the Test Balls to the Jury.  As the Court correctly observed during the first trial in this case, "really, it was the lawyers who created this whole process," not Acushnet's experts.  [D.I. 427 (Trial Tr.) at 755:4-7.]  Mr. Dalton's recently-filed declaration which ambiguously claims that he "created golf balls pursuant to the disclosures of [Nesbitt] incorporating [Molitor]" appears to be misleading because it ignores that Mr. Dalton had no role in determining what those references teach, Mr. Dalton was never identified as an expert by Acushnet, and Mr. Dalton (like Dr. Statz) had no role in making the myriad of design choices that led to the creation of the Test Balls – Acushnet's attorneys did.  [*See* Ex. A (MacKnight Depo.) at 52:24-53:19.]

Acushnet's lawyers and a testing lab employee are admittedly competent to *authenticate* the Test Balls.  But there is no reason to allow them to do so, because no Acushnet witness can establish the relevance of the balls.  Acushnet now argues that Dr. Statz can step into this role, but the full extent of Dr. Statz' expert disclosure regarding the relevant Test Balls are his statements at paragraphs 78 and 123 of his report that "[b]alls were made at the direction of Dr. William MacKnight...," and his reliance on the now-debunked MacKnight Declaration.  This is not a sufficient basis for Dr. Statz to expand his expert report to present his own opinions regarding the creation of the Test Balls and their relationship to the Nesbitt/Molitor reference.

Most importantly, nowhere in his expert report does Dr. Statz opine as to the critical issue of inherency and the hardness of outer cover materials.  As previously

13

explained by Callaway Golf, the only possible relevance of the two Test Balls is whether they evidence that the Shore D hardness of the outer cover – an element the Federal Circuit has recognized is wholly missing from both Nesbitt and Molitor '637 – is nonetheless inherent in the relevant disclosures of those patents.  To argue inherency requires the existence of an expert opinion.  *See In re Brimonidine Patent Litigation*, 2009 WL 3490861 at *13 (D. Del. Oct. 23, 2009).  Yet, as noted above, Dr. Statz only refers to Dr. MacKnight's alleged preparation of the test balls and his corresponding declaration.  And, after referring to Test Ball Nos. 1 and 4 (which represent the average test results of a dozen balls made of each particular construction),[7] Dr. Statz merely repeats the test results in Dr. MacKnight's discredited report with regard to the outer cover layer hardness of two of the Test Balls – "The average Shore D hardness of the outer layer of these balls, as measured on the ball, is 61.0 [62.0], which is less than 64. [D.I. 217 Ex. 30 (MacKnight Decl.) ¶ 33; Opp. Ex. 8 (Statz Report) ¶¶ 78 [& 123].]  Dr. Statz provides no other analysis or opinion regarding the outer cover layer hardness before simply concluding that claims 1 and 4 of the '293 patent are anticipated by the combination of Nesbitt and Molitor '637.

If Acushnet wanted Dr. Statz to be available on the critical issue of inherency, as opposed to simply relying on what Dr. MacKnight claimed to do but did not, Acushnet should have attempted to generate a competent evidentiary record and then had Dr. Statz actually provide an opinion in his expert report on the key issue of inherency of the

---

[7]    Dr. Statz refers to the set of test balls that had "an inner cover layer made of the blend of ionomers described by Molitor '637, and an outer cover layer made of the Estane 58133 polyurethane material described by Molitor '637."  [Opp. Ex. 8 (Statz Report) ¶ 78.]  The only one of the 12 varieties of test balls with this combination is Test Ball No. 4.  [*See* D.I. 217 Ex. 30 (MacKnight Decl.) ¶ 33.]

Dr. Statz also refers to the test ball that uses "the inner cover material described Nesbitt" and "the Estane 58133 polyurethane material described by Molitor '637."  [Opp. Ex. 8 (Statz Report) at ¶ 123.]  The only one of the 12 varieties of test balls with this combination is Test Ball No. 1.  [*See* D.I. 217 Ex. 30 (MacKnight Decl.) ¶ 33.]

14

hardness limitation for the outer cover layer.  It is, of course, far too late at this juncture to allow Acushnet to do so.

## III.          CONCLUSION

Acushnet can rely on the actual prior art to make its anticipation arguments. There is no reason to allow into evidence test balls that do not faithfully follow the actual teachings of the prior art, which are the product of Acushnet's attorneys' hindsight-induced picking and choosing from a multitude of possible options, and which lack any relevant supporting expert opinion – especially given that allowing such evidence would require additional expert discovery as well as testimony by Acushnet's trial attorneys, the actual designers of these balls.  For the foregoing reasons, Callaway Golf respectfully asks that the Court grant its motion *in limine* to exclude reference to Acushnet's Test Balls during the upcoming retrial in this case.

Dated: February 2, 2010        FISH & RICHARDSON P.C.


By: /s/ *Thomas L. Halkowski*
     Thomas L. Halkowski (#4099)
     222 Delaware Ave., 17th Floor
     P.O. Box 1114
     Wilmington, DE 19899-1114
     Tel:  (302) 652-5070
     Fax:  (302) 652-0607

     Frank E. Scherkenbach
     225 Franklin Street
     Boston, MA 02110-2804
     Tel:  (617) 542-5070
     Fax:  (617) 542-8906


     Attorneys for Plaintiff
     CALLAWAY GOLF COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2010, the attached document was electronically filed with the Clerk of Court  using CM/ECF which will send electronic notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 1, 2010, the attached document was electronically mailed to the following person(s):

Richard L. Horwitz, Esq.  
David E. Moore, Esq.  
Potter Anderson & Corroon LLP  
Hercules Plaza  
1313 North Market Street, 6th Floor  
P.O. Box 951  
Wilmington, DE  19899  
rhorwitz@potteranderson.com  
dmoore@potteranderson.com  

Attorneys for Defendant  
ACUSHNET COMPANY

Alan M. Grimaldi, Esq.  
Joseph P. Lavelle, Esq.  
Kenneth Donnelly, Esq.  
Brian A. Rosenthal, Esq.  
Clint Brannon, Esq.  
Howrey LLP  
1299 Pennsylvania Avenue, N.W.  
Washington, DC  20004  
grimaldia@howrey.com  
lavellej@howrey.com  
rosenthalB@howrey.com  
brannonC@howrey.com  
donnellyk@howrey.com  

Attorneys for Defendant  
ACUSHNET COMPANY

*/s/ Thomas L. Halkowski*  
Thomas L. Halkowski