```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -
       CALLAWAY GOLF COMPANY,       :   CIVIL ACTION
 4                                  :
                    Plaintiff,      :
 5                                  :
           vs.                      :
 6                                  :
       ACUSHNET COMPANY,            :
 7                                  :
                    Defendant.      :   NO. 06-91 (SLR)
 8

 9
                                    - - -
10
                                 Wilmington, Delaware
11                               Wednesday, December 9, 2009
                                 9:30 o'clock a.m.
12                               ***Telephone conference

13
                                    - - -
14
       BEFORE:   HONORABLE SUE L. ROBINSON, U.S.D.C.J.
15
                                    - - -
16
       APPEARANCES:
17

18             FISH & RICHARDSON P.C.
               BY:  THOMAS L. HALKOWSKI, ESQ.
19

20
                           -and-
21

22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25
```

2

APPEARANCES (Continued):

FISH & RICHARDSON
BY: FRANK E. SCHERKENBACH, ESQ.
(Boston, Massachusetts)

Counsel for Plaintiff

POTTER, ANDERSON & CORROON
BY: RICHARD L. HORWITZ, ESQ.

-and-

HOWREY LLP
BY: HENRY C. BUNSOW, ESQ. and
JOSEPH P. LAVELLE, ESQ.
(Washington, D.C.)

Counsel for Defendant

- - -

3

PROCEEDINGS

(REPORTER'S NOTE: The following telephone conference was held in chambers, beginning at 9:30 a.m.)

THE COURT: Good morning, counsel. This is Judge Robinson, and Valerie is here as our Court Reporter. It would be helpful if you identified yourselves when you spoke so our record is clear.

I believe I have a universal view of what issues we need to talk about and I have thoughts on those, but I think it makes more sense for you, each party to take a few minutes to summarize what they believe the issues are, and then I will give you my proposed responses and we can have a further discussion. So let's start with counsel for Callaway.

MR. SCHERKENBACH: Good morning, your Honor. This is Frank Scherkenbach of Fish & Richardson, getting over a bit of a cold as you can tell, so I will try to be as clear as I can.

THE COURT: All right.

MR. SCHERKENBACH: First of all, obviously, we appreciate the letter from the Court providing a specific week in March for the retrial. We have that. My understanding, then, is that we have a schedule of a

4

pretrial conference on March 3rd, which your Honor set during our September 4th call, jury selection March 12th, and then the trial March 22nd through 26th.

And with that schedule in mind, I think, from our perspective, there are probably four issues that we could discuss, and I think potentially are on the plate this morning.

The first is one that we talked about last time in September, and that is the schedule for dealing with the Callaway motion in limine on the test ball evidence. I guess at this point, I have to say the original test ball evidence, because as your Honor may know, Acushnet has been busy creating new test ball evidence, which is another issue.

The parties had agreed to a schedule are for filing that motion, and we did not go ahead and file on the data agreed to. That was December 1st. There were disputes over exactly what else would be filed on that day and we hadn't heard from your Honor, so we held off. Obviously, Acushnet did not.

My proposal at this point is that we go ahead and file that motion, which, again, was really the only one that was discussed in September. If we were to push it back from December 1st to December 11th, which would be Friday, that backs it up ten days. We could then back up the agreed

5

response date from January 4th to January 14th, and I think, frankly, we could keep the reply date of February 1st. I don't think that really requires further extension, but if Acushnet feels otherwise, I'm sure we can work that out.

So that is the first issue, is the schedule for filing that motion.

Now, there are three other potential motions, as you know, your Honor, that Acushnet proposes to file, which I will get to, though the second issue I think is what should be tried, and I want to talk about that one next.

There was this discussion last time of whether we would try damages in March, and we made our request, your Honor heard it, and that was not decided. Acushnet obviously opposed, and they now propose in their own filing that trial actually be bifurcated as between anticipation and obviousness.

We continue to believe damages can and should be tried this time around for the reasons we've already said given where we are procedurally in the case, so we don't have yet another trial and another Federal Circuit appeal and yet more delay, which would allow the re-examinations potentially to get the conclusion.

I just would remind the Court, in terms of time, the last trial spanned six days, but we actually had less trial time than we now have this coming March. We have five

6

1 days coming up this March. Last time that six days included
2 jury selection and there were effectively two half days, so
3 we do think there's time to get it done.
4     Now, I'm sensitive to the fact that, you know,
5 the Court does not usually try damages together and
6 bifurcates it, and we've explained why we think this case is
7 special. I have a compromise to offer on this issue, and we
8 have not gotten a clear answer from Acushnet on it and
9 perhaps we will, which is, if they are -- would agree not to
10 argue that the fact that damages is outstanding is a reason
11 that the re-examinations should not be terminated, assuming
12 the other things work out in the way that they would have
13 to, then we're okay with damages not being tried. Our
14 concern is that they're going to argue down the road if we
15 have a validity trial, if the patents again survive
16 validity, if the Federal Circuit says the patents survive
17 validity, but if damages are outstanding, Acushnet might
18 argue that the fact that damages are undecided means that
19 the re-examinations continue to roll along.
20     We have asked them their position on this. They
21 have not provided it, which tells me everything I need to
22 know and is the reason we are very concerned about damages
23 not being decided. So that's the damages issue.
24     As for phasing anticipation and obviousness,
25 just a couple of quick points there. That strikes us as a

7

1 non-starter. I'm not aware of that ever having happened.
2 We looked for a case. We could not find one. They don't
3 cite one in their papers, so I think we can assume that that
4 would be a relatively unprecedented development.
5     There is actually a case, your Honor.
6 Twenty-five years ago, Judge Longobardi was asked to do this
7 in your Court, and he said no, not surprisingly. So there
8 is at least one case going the other way and we're still
9 looking at that.
10     The issues overlap. The evidence overlaps.
11 Many, many cases say that the evidence overlaps 103 and 102.
12 And, of course, it would be a strange thing, to put it
13 mildly, in this case for the Federal Circuit to have sent
14 the case back for a retrial on obviousness and not to get a
15 retrial on obviousness, but, in fact, to have some different
16 issue decided and then have the case come back before them.
17 So that strikes us as a non-starter.
18     The last two issues, even quicker. Acushnet's
19 proposed summary judgment motion. This one is surprising to
20 us in several ways. Obviously, if your Honor is prepared to
21 entertain it, then so be it, but we'll just note that, of
22 course, the Federal Circuit didn't say anything about
23 Acushnet refilling. They did say Callaway Golf might be
24 allowed to refile.
25     In September, Acushnet was of the view that they

8

1 probably were not going to file, so they apparently changed
2 their mind. It remains our view this is fact laden. I'm
3 not going to get into the merits of the motion. There are
4 many, many, we think, problems which we could point out if
5 we need to. But I think the main problem with it now, in
6 addition to the fact that there really isn't time to deal
7 with it, is it relies on a bunch of new evidence. I don't
8 know if the Court has even had a chance to look at it.
9     But they purport -- propose to reopen the record
10 for new declarations, new test ball evidence that they've
11 created in November of this year. Again with the
12 involvement of the lawyers, it is the same thing all over
13 again. And there's just no want for any of that. This is a
14 retrial. You know, neither side should be allowed to be
15 reopening the record and submitting new evidence and so
16 forth. So, again, that strikes us as a non-starter. And,
17 again, we think there should be a trial on obviousness
18 anyway, and so what is to be gained by deciding just a
19 single motion on anticipation?
20     As for their motions in limine, your Honor,
21 we'll deal with them whenever and however you tell us we
22 should. You know, this is the fourth issue, by the way.
23 The pretrial order says how these should be dealt with,
24 which is, don't file separate ones, except in a special
25 case. You should identify them in the pretrial order, and

9

1 we'll talk about them at the pretrial conference on
2 March 3rd. I don't see why their two motions should be
3 treated any differently. They've obviously gone ahead and
4 filed them. If the Court wants to deal with them that way,
5 we'll do it.
6     We do have some motions in limine of our own,
7 but I think we will frankly continue to observe the Court's
8 procedure for ours, because I think they can be belt with in
9 that way.
10     Let me stop there. I appreciate the indulgence
11 of the time there.
12     THE COURT: All right. Thank you, Mr.
13 Scherkenbach.
14     Let's hear from Acushnet's counsel.
15     MR. BUNSOW: Thank you, your Honor. This is
16 Henry Bunsow.
17     And I will just respond in the same order that
18 Mr. Scherkenbach brought these things up, so let me start
19 first with the test ball evidence motion.
20     We filed that motion. We thought we had a
21 schedule. They didn't. And we have not heard from the
22 Court on that. If the Court is inclined to allow them to
23 file now, we don't have a problem with the schedule that Mr.
24 Scherkenbach proposed, with the December 11th filing,
25 response January 14th, reply February 1st. If the Court is



10

1  inclined to allow that, that's fine with us.
2         As to the trial, you have set the case for five
3  days. I understand the Court has limited time. We think,
4  effectively, this is probably very close to the time that --
5  the length of time that was available for the first trial,
6  and there are additional issues in this trial.
7         The anticipation defense was not tried in the
8  first trial. There's going to have to be a lot of
9  discussion, instruction, and probably order of presentation,
10 because the test ball evidence is allowed for anticipation,
11 but based on prior rulings, not relevant to the obviousness
12 determination. That feeds into our request that the
13 anticipation case be tried first, and that would clarify, we
14 think, procedurally, the effect of the test ball evidence
15 for the jury.
16        We think we have a very strong anticipation case
17 at this point, based on the CAFC decision, based on the
18 incorporation, which was the sole basis that we believe the
19 summary judgment was denied in the earlier case.
20        So if the summary judgment motion on
21 anticipation is not decided favorably for Acushnet, which
22 would, we believe, eliminate the need for a trial at all,
23 then we think that given the different status of key pieces
24 of evidence, that it makes sense to segregate it for the
25 jury, so that's what we proposed.

11

1         And that's the phasing that Mr. Scherkenbach
2  talked about, and, of course, we've made that request to the
3  Court and I think our papers are pretty clear on why we
4  think that's the way to go. It's pretty clear to us from
5  the CAFC decision that anticipation should be part of this
6  case going forward, and we just think it needs to be
7  procedurally handled appropriately, so that's why we made
8  that suggestion.
9         We did bring a summary judgment motion on
10 anticipation. We hope the Court will entertain that. It is
11 a, we think, a very strong motion. I won't argue the merits
12 of it on this call. The papers are before the Court.
13        THE COURT: And tell me, is this motion based on
14 new evidence that has been prepared and not vetted through
15 any kind of discovery? I have not looked at it, so if, in
16 fact -- I mean, I don't generally entertain motions for
17 summary judgment on remand, and I particularly don't
18 entertain motions for summary judgment based on evidence
19 that is newly created or discovered and hasn't been vetted
20 through the discovery process in the first instance.
21        So if your summary judgment motion is based on
22 new evidence and you essentially reopened the record,
23 explain to me why that could possibly be appropriate.
24        MR. BUNSOW: Sure. The primary basis for the
25 motion for summary judgment is that the CAFC has held that

12

1  the incorporation by reference is effective and our primary
2  basis is that that was the reason the motion was denied in
3  the first instance. That has been effectively reversed by
4  the CAFC, and since the incorporation by reference is now
5  effective, that that should lead a fortiori to a finding of
6  anticipation.
7         As to supplementing the record, Joe, I would
8  like you to address that, because I'm not familiar enough
9  with the earlier record yet to be definitive on that. I
10 don't want to say anything that's not totally accurate.
11        MR. LAVELLE: Good morning, your Honor. Joe
12 Lavelle for Acushnet.
13        Your Honor, there is a Dalton, Jeff Dalton
14 declaration that is new that wasn't before you the last
15 time. It relates to an issue that was before you the last
16 time. Namely, whether the various layers of the ball
17 underneath the outer layer have any effect on the hardness
18 of the outer layer, and it relates to the inherency of one
19 of the claim limitations in Nesbit.
20        So it is a topic that you've heard before. It
21 is a subject that you've heard about before, but there is
22 some additional new testimony that I think presents it more
23 clearly in the new motion.
24        THE COURT: And I guess the question is,
25 under our circumstances, where there isn't a whole lot of

13

1  time and I certainly have more than enough work, how it is
2  that a new declaration, even on an old topic that hasn't
3  been vetted, how I could fairly decide in Acushnet's favor
4  under those circumstances? You know, arguably, how I could
5  do that fairly when Mr. Dalton and his declaration have not
6  been vetted?
7         MR. SCHERKENBACH: Your Honor, it's Frank
8  Scherkenbach.
9         Just so you are clear, it's not just a
10 declaration. Mr. Dalton's declaration is entirely new,
11 that's true. It relies on new test data for brand-new test
12 balls. They went and manufactured, together with the
13 lawyers again.
14        Again, it's the same thing all over again. Troy
15 Lester and the gang made dozens of new test balls that were
16 tested the day before Thanksgiving this year. So this is
17 not even just about redeposing Mr. Dalton, though that would
18 be reason enough to deny it. We've got to go -- we're going
19 to have a new round, motion practice on a new set of test
20 balls, completely separate from the ones you've already got
21 to deal with. It just -- it just strike us as a total
22 non-starter.
23        In addition, there's a new declaration for Mr.
24 Morgan as well. Now, some of the subject matter of Mr.
25 Morgan's declaration, some of it was certainly in the case



14

1 before, but some of it was not.
2 So we have two new declarants and a bunch of new
3 evidence. And, you know, reopening the record in this way,
4 particularly where we're talking about a pretrial submission
5 that's going to be in late February, I just don't see how
6 that is even conceivable, let alone fair to Callaway.
7 MR. LAVELLE: Your Honor, Joe Lavelle.
8 Frank is essentially accurate about the
9 contents, that there are new test balls. I do think he's
10 also accurate when he says that it presents exactly the same
11 issues that the existing test balls do, and that are before
12 you, and that this seems like an issue that can be cured
13 through a deposition of Mr. Dalton. And obviously we have
14 to make him available if we want you to consider that, and
15 we would, but it just seems like they could take the
16 deposition and see where they are, and if they still have
17 issues after that, they can certainly brief them. But it
18 seems like the concern can be addressed through a
19 deposition.
20 THE COURT: Well, I guess this is my problem.
21 I'm a trial Judge. My job is to get you to trial, and when
22 the Federal Circuit disagrees with something that I've done
23 in that process and sends it back to me, I don't intend to
24 start over again.
25 And so my question to Acushnet's counsel is, how

15

1 is opening the record consistent with my job? I mean, I did
2 this once. You had full and fair opportunity to do whatever
3 testing you wanted to do the first time.
4 How is it that we're doing discovery again? I
5 just don't get it.
6 MR. BUNSOW: This is Henry Bunsow again, your
7 Honor.
8 The intent of what was done, as I understand it,
9 was to corroborate and expand upon what was before you
10 before. The summary judgment was granted on the basis of no
11 incorporation, which avoided dealing with a lot of these
12 issues. However, it also precluded developing the record at
13 the time of trial. So there is no evidentiary record,
14 there's no trial record.
15 THE COURT: Well, I mean, I have so many cases,
16 I don't recall, but, certainly, Acushnet had the opportunity
17 to develop its evidentiary record up to the initial summary
18 judgment motions and initial trial, and so you're right, I
19 didn't allow that record to be presented to a jury.
20 But why is it that the Federal Circuit's
21 decision creates an opportunity to expand the record you had
22 in the first instance? I mean, I don't think it does. I
23 guess I'm just trying to give you a full and fair
24 opportunity to convince me otherwise.
25 MR. BUNSOW: Sure. And I certainly think, you



16

1 know, reasonable minds could differ on that, but the fact of
2 the matter is that the subjects, the same subject matter was
3 before the Court. The so-called new evidence, if anything,
4 is probably cumulative to what was before the Court before
5 with the original test balls.
6 If the Court decides that, you know, this truly
7 is newly created and different evidence and shouldn't be
8 considered, we can certainly live with that, because we
9 think that the record that was before you on the original
10 summary judgment, if incorporation by reference had been
11 allowed, was ample to support a finding on summary judgment
12 of anticipation. And that's really the first approach to
13 the summary judgment motion and the only basis upon which it
14 was denied, was lack of incorporation by reference. That's
15 a dead issue at this point. It went our way.
16 So we believe that, in the first instance, A
17 plus B equals C, so to speak.
18 The additional evidence was for further
19 explanation and corroboration. If that's not helpful, if
20 the Court feels that that is an improper supplementation to
21 the record, we'll withdraw that. I mean, we thought it was
22 helpful. We thought it could be useful, but if it's not
23 appropriate, then, you know, we're not going to push it. If
24 you are not willing to consider it, we're not going to offer
25 it. Put it that way.

17

1 THE COURT: All right. Well, I appreciate that.
2 MR. BUNSOW: Yes.
3 THE COURT: Whether it's helpful or not is kind
4 of beside the point when we are talking about fairness in
5 the process and limited resources. So I am going to ask you
6 to withdraw the new, and whether that means you need to
7 refile your motion, or whether you relied sufficiently on
8 the record as it existed at the time of the first trial, to
9 just -- you know, still keep the same papers in, except we
10 won't consider certain parts of it, that is up to you.
11 MR. BUNSOW: Okay. May I make a suggestion in
12 that regard?
13 THE COURT: Yes.
14 MR. BUNSOW: My suggestion would be for clarity
15 and to avoid any confusion going forward, that we do recast
16 it with the Court's comments in mind. And what I propose is
17 that we comply with the same schedule that Mr. Scherkenbach
18 recommended. We would file on December 11th. The response
19 would be due January 14th, and the reply, February 1st.
20 THE COURT: All right. Thank you.
21 All right. That's the summary judgment. And I
22 guess the question is -- well, you go ahead and address
23 whatever you care to at this point, Mr. Bunsow?
24 MR. SCHERKENBACH: One other issue, your
25 Honor -- I'm sorry -- it's Frank Scherkenbach -- that may

18

1  require a decision, is whether we should go ahead and brief
2  their additional motions in limine on that same schedule.
3         THE COURT:  Well, yes.  Well, certainly, with
4  respect to the test, the original test ball evidence,
5  Calloway's motion, I'm going to allow that to be considered
6  on that schedule.
7         And, Mr. Bunsow, there are a few issues that you
8  hadn't had the opportunity to address, which I assume you're
9  going to now.
10        MR. BUNSOW:  Yes, your Honor.
11        THE COURT:  And that has to do with -- yes?
12        MR. BUNSOW:  Well, actually, I think we've
13 covered all of the issues, if I didn't miss anything.
14        Joe, is there anything else we needed to
15 address?
16        MR. LAVELLE:  Just the two motions in limine, I
17 think.  There are two motions in limine, your Honor, that
18 would filed together with the summary judgment motion.  They
19 relate to the question of bolstering and, in other words,
20 what use can Calloway make of the examination before the
21 Patent Office before the jury if all the re-examinations are
22 going on.
23        And the second relates to the use of the
24 so-called Hebert patent, and Calloway's efforts to suggest
25 that their patents were valid because Acushnet got the

19

1  Hebert patent.
2         Obviously, if you would prefer to rule on them
3  at the final pretrial, that is fine.  Our reason for filing
4  them, as we said in our cover letter, is that they present
5  relatively new issues and relatively important issues to the
6  conduct of the retrial, and we thought that the briefing
7  might be helpful to the Court, and obviously, though, we
8  will comply with this and raise this issue however the Court
9  prefers.
10        THE COURT:  All right.  Thank you.
11        I mean, because of the excesses of patent
12 counsel in the past in filing dozens of motions in limine, I
13 eliminated the practice in my cases.
14        It seems to me, since Acushnet has gone to the
15 trouble, that if there are a limited number of motions in
16 limine that will be filed by both parties, I assume Acushnet
17 has exhausted its filings, so you've got two motions in
18 limine that I will go ahead and entertain briefing, and if
19 Calloway has, again, a limited number of motions in limine,
20 I will, in this exceptional case.  You won't get a written
21 response.  You will probably get a response at the pretrial.
22        But, Mr. Scherkenbach, if Calloway has -- I
23 mean, if you say you've got 15 motions in limine, then we'll
24 go back to mine.  If you have two or three --
25        MR. SCHERKENBACH:  Yes your Honor.  No, I've

20

1  never said that before and I'm not starting in this case.
2  So there will only be a couple, at most.
3         THE COURT:  All right.  All right.
4         MR. BUNSOW:  This is Henry Bunsow, your Honor.
5         THE COURT:  Yes?
6         MR. BUNSOW:  If we could meet and confer on
7  those, we might very well be able to resolve those without
8  the need to file them.  We did meet and confer on the ones
9  that we filed and were not able to come the to agreement.
10        THE COURT:  All right.  All right.  So we've got
11 the motion for summary judgment and Calloway's motion on the
12 test ball, original test ball evidence.  We've got motions
13 in limine taken care of.
14        I am not going to phase anticipation and
15 obviousness.  I've never done it before and I really can't
16 see setting any kind of precedent by doing it in this case.
17 This case simply isn't -- well, I don't know what
18 circumstances would justify that, but they certainly have
19 not been presented to me yet.
20        With respect to damages, I, frankly, as a trial
21 Judge, retrying a case is exhausting.  It is frustrating.
22 It is a waste of resources.  It feels like a waste of
23 resources.  And so to try this case perhaps a third -- well,
24 a third time would be truly depressing, actually.
25        So although I do generally bifurcate damages,

21

1  unless Acushnet either agrees with Calloway's compromise,
2  or agrees that damages will somehow be worked out through
3  ADR -- in other words, I don't want to try this case again
4  in any form.  Twice is enough; three times is far too much.
5         Damage will be tried absent some agreement
6  between the parties that they're going to absolutely work
7  out damages without the necessity for a trial, or consistent
8  with Calloway's compromise, that I will not try to reword.
9         So damages will be tried, anticipation and
10 obviousness will be tried.  And we'll do the best we can
11 with respect to time.
12        There is always a possibility I can give you
13 more time as cases drop out because of settlement, or motion
14 practice, but I can't count on that at the moment, so I've
15 done the best I can.
16        Are there any other issues we need to address?
17        MR. BUNSOW:  Your Honor, this is Henry Bunsow.
18 Just based on the procedural aspect of trying
19 damages in this trial, would the Court be open to the
20 suggestion that damages be phased?  That we take an initial
21 liability verdict and then go to damages, if necessary?
22        THE COURT:  I will think about that.  I know the
23 few times I've done that, juries are always upset when they
24 think they've finished and we say, oh, well, no, you
25 haven't.  You've got another job to do.  So I will take that

1  under consideration and you all can talk about it.
2       MR. SCHERKENBACH: Your Honor, the other --
3  Frank Scherkenbach.
4       We would oppose that because the evidence
5  overlaps anyway and we have a window that is not excessively
6  long to get it all done. I don't think that would
7  accomplish anything and it's going to confuse folks, but we
8  could take that up at the pretrial, I suppose.
9       THE COURT: Well, yes. I mean, I assume someone
10 could -- I would allow you to use the opportunity to file a
11 motion in limine to that extent, but it is generally not a
12 happy solution for the jury, and so I would have some
13 concerns about that.
14      MR. BUNSOW: Sure. Sure, your Honor. This is
15 Henry Bunsow.
16      We, of course, would defer to your experience on
17 that, but I have certainly done it in other cases. I think
18 it certainly offers an opportunity to save some time if we
19 ultimately prevail, and it does eliminate what everybody is
20 always afraid of on the defense side, which is throwing huge
21 numbers up in the air at the jury, which I'm sure Callaway
22 fully intends to do, and basically overshadowing the merits
23 of the case and influencing the jury in that respect, and
24 that is the great fear that I'm sure you appreciate and that
25 every defendant appreciates when it comes time to a case

23

1  like this, where the numbers truly are pretty large.
2       THE COURT: Well, I, again, invite you to file a
3  motion in limine in that regard, and that way I will have --
4  and I wouldn't think it would take much of a brief, but I
5  would be interested in this overlap of information and how
6  that would -- I would be interested in a written response by
7  Callaway as to how, aside from the general jury
8  disappointment, how the presentation of the evidence would
9  be affected by having the jury decide damages after they've
10 decided liability.
11      MR. BUNSOW: Right.
12      MR. SCHERKENBACH: Yes, your Honor.
13      THE COURT: All right. Counsel, take care, have
14 a good holiday season. And thank you for your time today.
15      (Counsel respond, "Thank you, your Honor.")
16      (Telephone conference concluded at 10:10 a.m.)
17           - - -



# 0

**06-91** [1] - 1:7

# 1

**102** [1] - 7:11
**103** [1] - 7:11
**10:10** [1] - 23:16
**11th** [3] - 4:24, 9:24, 17:18
**12th** [1] - 4:2
**14th** [3] - 5:1, 9:25, 17:19
**15** [1] - 19:23
**1st** [5] - 4:17, 4:24, 5:2, 9:25, 17:19

# 2

**2009** [1] - 1:11
**22nd** [1] - 4:3
**26th** [1] - 4:3

# 3

**3rd** [2] - 4:1, 9:2

# 4

**4th** [2] - 4:2, 5:1

# 9

**9** [1] - 1:11
**9:30** [2] - 1:11, 3:4

# A

**a.m** [3] - 1:11, 3:4, 23:16
**able** [2] - 20:7, 20:9
**absent** [1] - 21:5
**absolutely** [1] - 21:6
**accomplish** [1] - 22:7
**accurate** [3] - 12:10, 14:8, 14:10
**ACTION** [1] - 1:3
**Acushnet** [16] - 4:12, 4:20, 5:4, 5:8, 5:13, 6:8, 6:17, 7:23, 7:25, 10:21, 12:12, 15:16, 18:25, 19:14, 19:16, 21:1
**ACUSHNET** [1] - 1:6
**Acushnet's** [4] - 7:18, 9:14, 13:3, 14:25
**addition** [2] - 8:6, 13:23
**additional** [4] - 10:6, 12:22, 16:18, 18:2
**address** [5] - 12:8, 17:22, 18:8, 18:15, 21:16
**addressed** [1] - 14:18
**ADR** [1] - 21:3
**affected** [1] - 23:9
**afraid** [1] - 22:20
**ago** [1] - 7:6
**agree** [1] - 6:9
**agreed** [3] - 4:15, 4:17, 4:25
**agreement** [2] - 20:9, 21:5
**agrees** [2] - 21:1, 21:2
**ahead** [6] - 4:16, 4:21, 9:3, 17:22, 18:1, 19:18
**air** [1] - 22:21
**allow** [6] - 5:21, 9:22, 10:1, 15:19, 18:5, 22:10
**allowed** [4] - 7:24, 8:14, 10:10, 16:11
**alone** [1] - 14:6
**ample** [1] - 16:11
**AND** [1] - 1:2
**ANDERSON** [1] - 2:8
**answer** [1] - 6:8
**anticipation** [14] - 5:15, 6:24, 8:19, 10:7, 10:10, 10:13, 10:16, 10:21, 11:5, 11:10, 12:6, 16:12, 20:14, 21:9
**anyway** [2] - 8:18, 22:5
**appeal** [1] - 5:20
**APPEARANCES** [1] - 1:16
**aPPEARANCES** [1] - 2:1
**appreciate** [4] - 3:23, 9:10, 17:1, 22:24
**appreciates** [1] - 22:25
**approach** [1] - 16:12
**appropriate** [2] - 11:23, 16:23
**appropriately** [1] - 11:7
**arguably** [1] - 13:4
**argue** [4] - 6:10, 6:14, 6:18, 11:11
**aside** [1] - 23:7
**aspect** [1] - 21:18
**assume** [4] - 7:3, 18:8, 19:16, 22:9
**assuming** [1] - 6:11
**available** [2] - 10:5, 14:14
**avoid** [1] - 17:15
**avoided** [1] - 15:11
**aware** [1] - 7:1

# B

**backs** [1] - 4:25
**ball** [11] - 4:10, 4:11, 4:13, 8:10, 9:19, 10:10, 10:14, 12:16, 18:4, 20:12
**balls** [6] - 13:12, 13:15, 13:20, 14:9, 14:11, 16:5
**based** [7] - 10:11, 10:17, 11:13, 11:18, 11:21, 21:18
**basis** [5] - 10:18, 11:24, 12:2, 15:10, 16:13
**BEFORE** [1] - 1:14
**beginning** [1] - 3:4
**belt** [1] - 9:8
**beside** [1] - 17:4
**best** [2] - 21:10, 21:15
**between** [2] - 5:15, 21:6
**bifurcate** [1] - 20:25
**bifurcated** [1] - 5:15
**bifurcates** [1] - 6:6
**bit** [1] - 3:19
**bolstering** [1] - 18:19
**Boston** [1] - 2:4
**brand** [1] - 13:11
**brand-new** [1] - 13:11
**brief** [3] - 14:17, 18:1, 23:4
**briefing** [2] - 19:6, 19:18
**bring** [1] - 11:9
**brought** [1] - 9:18
**bunch** [2] - 8:7, 14:2
**BUNSOW** [15] - 2:12, 9:15, 11:24, 15:6, 15:25, 17:2, 17:11, 17:14, 18:10, 18:12, 20:4, 20:6, 21:17, 22:14, 23:11
**Bunsow** [7] - 9:16, 15:6, 17:23, 18:7, 20:4, 21:17, 22:15
**busy** [1] - 4:13
**BY** [4] - 1:18, 2:3, 2:8,

2:12

# C

**CAFC** [4] - 10:17, 11:5, 11:25, 12:4
**CALLAWAY** [1] - 1:3
**Callaway** [9] - 3:16, 4:10, 7:23, 14:6, 18:20, 19:19, 19:22, 22:21, 23:7
**Calloway's** [5] - 18:5, 18:24, 20:11, 21:1, 21:8
**care** [3] - 17:23, 20:13, 23:13
**case** [24] - 5:19, 6:6, 7:2, 7:5, 7:8, 7:13, 7:14, 7:16, 8:25, 10:2, 10:13, 10:16, 10:19, 11:6, 13:25, 19:20, 20:1, 20:16, 20:17, 20:21, 20:23, 21:3, 22:23, 22:25
**cases** [5] - 7:11, 15:15, 19:13, 21:13, 22:17
**certain** [1] - 17:10
**certainly** [10] - 13:1, 13:25, 14:17, 15:16, 15:25, 16:8, 18:3, 20:18, 22:17, 22:18
**chambers** [1] - 3:4
**chance** [1] - 8:8
**changed** [1] - 8:1
**Circuit** [5] - 5:20, 6:16, 7:13, 7:22, 14:22
**Circuit's** [1] - 15:20
**circumstances** [3] - 12:25, 13:4, 20:18
**cite** [1] - 7:3
**CIVIL** [1] - 1:3
**claim** [1] - 12:19
**clarify** [1] - 10:13
**clarity** [1] - 17:14
**clear** [6] - 3:9, 3:20, 6:8, 11:3, 11:4, 13:9
**clearly** [1] - 12:23
**close** [1] - 10:4
**cold** [1] - 3:19
**coming** [2] - 5:25, 6:1
**comments** [1] - 17:16
**COMPANY** [2] - 1:3, 1:6
**completely** [1] - 13:20
**comply** [2] - 17:17, 19:8
**compromise** [3] - 6:7, 21:1, 21:8

**conceivable** [1] - 14:6
**concern** [2] - 6:14, 14:18
**concerned** [1] - 6:22
**concerns** [1] - 22:13
**concluded** [1] - 23:16
**conclusion** [1] - 5:22
**conduct** [1] - 19:6
**confer** [2] - 20:6, 20:8
**conference** [5] - 1:12, 3:4, 4:1, 9:1, 23:16
**confuse** [1] - 22:7
**confusion** [1] - 17:15
**consider** [3] - 14:14, 16:24, 17:10
**consideration** [1] - 22:1
**considered** [2] - 16:8, 18:5
**consistent** [2] - 15:1, 21:7
**contents** [1] - 14:9
**continue** [3] - 5:17, 6:19, 9:7
**Continued** [1] - 2:1
**convince** [1] - 15:24
**corroborate** [1] - 15:9
**corroboration** [1] - 16:19
**CORROON** [1] - 2:8
**counsel** [7] - 3:6, 3:15, 9:14, 14:25, 19:12, 23:13, 23:15
**Counsel** [2] - 2:5, 2:15
**count** [1] - 21:14
**couple** [2] - 6:25, 20:2
**course** [4] - 7:12, 7:22, 11:2, 22:16
**COURT** [22] - 1:1, 3:6, 3:21, 9:12, 11:13, 12:24, 14:20, 15:15, 17:1, 17:3, 17:13, 17:20, 18:3, 18:11, 19:10, 20:3, 20:5, 20:10, 21:22, 22:9, 23:2, 23:13
**Court** [22] - 1:24, 3:7, 3:23, 5:23, 6:5, 7:7, 8:8, 9:4, 9:22, 9:25, 10:3, 11:3, 11:10, 11:12, 16:3, 16:4, 16:6, 16:20, 19:7, 19:8, 21:19
**Court's** [2] - 9:7, 17:16
**cover** [1] - 19:4
**covered** [1] - 18:13
**created** [3] - 8:11, 11:19, 16:7
**creates** [1] - 15:21
**creating** [1] - 4:13

cumulative [1] - 16:4
cured [1] - 14:12

**D**

D.C [1] - 2:13
Dalton [5] - 12:13, 13:5, 13:17, 14:13
Dalton's [1] - 13:10
damage [1] - 21:5
damages [18] - 5:12, 5:17, 6:5, 6:10, 6:13, 6:17, 6:18, 6:22, 6:23, 20:20, 20:25, 21:2, 21:7, 21:9, 21:19, 21:20, 21:21, 23:9
data [2] - 4:17, 13:11
date [2] - 5:1, 5:2
days [6] - 4:25, 5:24, 6:1, 6:2, 10:3
dead [1] - 16:15
deal [4] - 8:6, 8:21, 9:4, 13:21
dealing [2] - 4:9, 15:11
dealt [1] - 8:23
December [6] - 1:11, 4:17, 4:24, 9:24, 17:18
decide [2] - 13:3, 23:9
decided [5] - 5:13, 6:23, 7:16, 10:21, 23:10
decides [1] - 16:6
deciding [1] - 8:18
decision [4] - 10:17, 11:5, 15:21, 18:1
declarants [1] - 14:2
declaration [7] - 12:14, 13:2, 13:5, 13:10, 13:23, 13:25
declarations [1] - 8:10
defendant [1] - 22:25
Defendant [2] - 1:7, 2:15
defense [2] - 10:7, 22:20
defer [1] - 22:16
definitive [1] - 12:9
DELAWARE [1] - 1:2
Delaware [1] - 1:10
delay [1] - 5:21
denied [3] - 10:19, 12:2, 16:14
deny [1] - 13:18
deposition [3] - 14:13, 14:16, 14:19
depressing [1] - 20:24

determination [1] - 10:12
develop [1] - 15:17
developing [1] - 15:12
development [1] - 7:4
differ [1] - 16:1
different [3] - 7:15, 10:23, 16:7
differently [1] - 9:3
disagrees [1] - 14:22
disappointment [1] - 23:8
discovered [1] - 11:19
discovery [3] - 11:15, 11:20, 15:4
discuss [1] - 4:6
discussed [1] - 4:23
discussion [3] - 3:15, 5:11, 10:9
disputes [1] - 4:17
DISTRICT [2] - 1:1, 1:2
done [8] - 6:3, 14:22, 15:8, 20:15, 21:15, 21:23, 22:6, 22:17
down [1] - 6:14
dozens [2] - 13:15, 19:12
drop [1] - 21:13
due [1] - 17:19
during [1] - 4:2

**E**

effect [2] - 10:14, 12:17
effective [2] - 12:1, 12:5
effectively [3] - 6:2, 10:4, 12:3
efforts [1] - 18:24
either [1] - 21:1
eliminate [2] - 10:22, 22:19
eliminated [1] - 19:13
entertain [5] - 7:21, 11:10, 11:16, 11:18, 19:18
entirely [1] - 13:10
equals [1] - 16:17
ESQ [5] - 1:18, 2:3, 2:8, 2:12, 2:12
essentially [2] - 11:22, 14:8
evidence [23] - 4:10, 4:12, 4:13, 7:10, 7:11, 8:7, 8:10, 8:15, 9:19, 10:10, 10:14, 10:24, 11:14, 11:18, 11:22, 14:3, 16:3,

16:7, 16:18, 18:4, 20:12, 22:4, 23:8
evidentiary [2] - 15:13, 15:17
exactly [2] - 4:18, 14:10
examination [1] - 18:20
examinations [4] - 5:21, 6:11, 6:19, 18:21
except [2] - 8:24, 17:9
exceptional [1] - 19:20
excesses [1] - 19:11
excessively [1] - 22:5
exhausted [1] - 19:17
exhausting [1] - 20:21
existed [1] - 17:8
existing [1] - 14:11
expand [2] - 15:9, 15:21
experience [1] - 22:16
explain [1] - 11:23
explained [1] - 6:6
explanation [1] - 16:19
extension [1] - 5:3
extent [1] - 22:11

**F**

fact [8] - 6:4, 6:10, 6:18, 7:15, 8:2, 8:6, 11:16, 16:1
fair [3] - 14:6, 15:2, 15:23
fairly [2] - 13:3, 13:5
fairness [1] - 17:4
familiar [1] - 12:8
far [1] - 21:4
favor [1] - 13:3
favorably [1] - 10:21
fear [1] - 22:24
February [4] - 5:2, 9:25, 14:5, 17:19
Federal [6] - 5:20, 6:16, 7:13, 7:22, 14:22, 15:20
feeds [1] - 10:12
few [3] - 3:12, 18:7, 21:23
file [10] - 4:16, 4:22, 5:8, 8:1, 8:24, 9:23, 17:18, 20:8, 22:10, 23:2
filed [6] - 4:18, 9:4, 9:20, 18:18, 19:16, 20:9

filing [6] - 4:16, 5:6, 5:14, 9:24, 19:3, 19:12
filings [1] - 19:17
final [1] - 19:3
fine [2] - 10:1, 19:3
finished [1] - 21:24
first [14] - 3:22, 4:8, 5:5, 9:19, 10:5, 10:8, 10:13, 11:20, 12:3, 15:3, 15:22, 16:12, 16:16, 17:8
FISH [2] - 1:18, 2:3
Fish [1] - 3:18
five [3] - 5:25, 7:6, 10:2
folks [1] - 22:7
following [1] - 3:3
FOR [1] - 1:2
form [1] - 21:4
forth [1] - 8:16
fortiori [1] - 12:5
forward [2] - 11:6, 17:15
four [1] - 4:5
fourth [1] - 8:22
Frank [4] - 3:18, 13:7, 17:25, 22:3
FRANK [1] - 2:3
frank [1] - 14:8
frankly [3] - 5:2, 9:7, 20:20
Friday [1] - 4:24
frustrating [1] - 20:21
full [2] - 15:2, 15:23
fully [1] - 22:22

**G**

gained [1] - 8:18
gang [1] - 13:15
general [1] - 23:7
generally [3] - 11:16, 20:25, 22:11
given [2] - 5:19, 10:23
Golf [1] - 7:23
GOLF [1] - 1:3
granted [1] - 15:10
great [1] - 22:24
guess [5] - 4:11, 12:24, 14:20, 15:23, 17:22
Gunning [1] - 1:24

**H**

half [1] - 6:2
HALKOWSKI [1] -

1:18
handled [1] - 11:7
happy [1] - 22:12
hardness [1] - 12:17
hear [1] - 9:14
heard [5] - 4:19, 5:13, 9:21, 12:20, 12:21
Hebert [2] - 18:24, 19:1
held [3] - 3:4, 4:19, 11:25
helpful [5] - 3:8, 16:19, 16:22, 17:3, 19:7
Henry [5] - 9:16, 15:6, 20:4, 21:17, 22:15
HENRY [1] - 2:12
holiday [1] - 23:14
Honor [25] - 3:17, 4:1, 4:12, 4:19, 5:8, 5:13, 7:5, 7:20, 8:20, 9:15, 12:11, 12:13, 13:7, 14:7, 15:7, 17:25, 18:10, 18:17, 19:25, 20:4, 21:17, 22:2, 22:14, 23:12, 23:15
HONORABLE [1] - 1:14
hope [1] - 11:10
HORWITZ [1] - 2:8
HOWREY [1] - 2:11
huge [1] - 22:20

**I**

identified [1] - 3:8
identify [1] - 8:25
important [1] - 19:5
improper [1] - 16:20
IN [2] - 1:1, 1:2
inclined [2] - 9:22, 10:1
included [1] - 6:1
incorporation [6] - 10:18, 12:1, 12:4, 15:11, 16:10, 16:14
indulgence [1] - 9:10
influencing [1] - 22:23
information [1] - 23:5
inherency [1] - 12:18
initial [3] - 15:17, 15:18, 21:20
instance [4] - 11:20, 12:3, 15:22, 16:16
instruction [1] - 10:9
intend [1] - 14:23
intends [1] - 22:22
intent [1] - 15:8
interested [2] - 23:5,

23:6
invite [1] - 23:2
involvement [1] - 8:12
issue [12] - 4:14, 5:5, 5:9, 6:7, 6:23, 7:16, 8:22, 12:15, 14:12, 16:15, 17:24, 19:8
issues [14] - 3:10, 3:13, 4:5, 7:10, 7:18, 10:6, 14:11, 14:17, 15:12, 18:7, 18:13, 19:5, 21:16

**J**

January [4] - 5:1, 9:25, 17:19
Jeff [1] - 12:13
job [3] - 14:21, 15:1, 21:25
Joe [4] - 12:7, 12:11, 14:7, 18:14
JOSEPH [1] - 2:12
Judge [4] - 3:7, 7:6, 14:21, 20:21
judgment [16] - 7:19, 10:19, 10:20, 11:9, 11:17, 11:18, 11:21, 11:25, 15:10, 15:18, 16:10, 16:11, 16:13, 17:21, 18:18, 20:11
juries [1] - 21:23
jury [11] - 4:2, 6:2, 10:15, 10:25, 15:19, 18:21, 22:12, 22:21, 22:23, 23:7, 23:9
justify [1] - 20:18

**K**

keep [2] - 5:2, 17:9
key [1] - 10:23
kind [3] - 11:15, 17:3, 20:16

**L**

lack [1] - 16:14
laden [1] - 8:2
large [1] - 23:1
last [7] - 4:8, 5:11, 5:24, 6:1, 7:18, 12:14, 12:15
late [1] - 14:5
LAVELLE [4] - 2:12, 12:11, 14:7, 18:16
Lavelle [2] - 12:12, 14:7

lawyers [2] - 8:12, 13:13
layer [2] - 12:17, 12:18
layers [1] - 12:16
lead [1] - 12:5
least [1] - 7:8
length [1] - 10:5
less [1] - 5:24
Lester [1] - 13:15
letter [2] - 3:23, 19:4
liability [2] - 21:21, 23:10
limine [14] - 4:10, 8:20, 9:6, 18:2, 18:16, 18:17, 19:12, 19:16, 19:18, 19:19, 19:23, 20:13, 22:11, 23:3
limitations [1] - 12:19
limited [4] - 10:3, 17:5, 19:15, 19:19
live [1] - 16:8
LLP [1] - 2:11
Longobardi [1] - 7:6
look [1] - 8:8
looked [2] - 7:2, 11:15
looking [1] - 7:9

**M**

main [1] - 8:5
manufactured [1] - 13:12
March [8] - 3:24, 4:1, 4:2, 4:3, 5:12, 5:25, 6:1, 9:2
Massachusetts [1] - 2:4
matter [3] - 13:24, 16:2
mean [8] - 11:16, 15:1, 15:15, 15:22, 16:21, 19:11, 19:23, 22:9
means [2] - 6:18, 17:6
meet [2] - 20:6, 20:8
merits [3] - 8:3, 11:11, 22:22
might [4] - 6:17, 7:23, 19:7, 20:7
mildly [1] - 7:13
mind [3] - 4:4, 8:2, 17:16
minds [1] - 16:1
mine [1] - 19:24
minutes [1] - 3:13
miss [1] - 18:13
moment [1] - 21:14
Morgan [1] - 13:24
Morgan's [1] - 13:25

morning [4] - 3:6, 3:17, 4:7, 12:11
most [1] - 20:2
motion [27] - 4:10, 4:16, 4:22, 5:6, 7:19, 8:3, 8:19, 9:19, 9:20, 10:20, 11:9, 11:11, 11:13, 11:21, 11:25, 12:2, 12:23, 13:19, 16:13, 17:7, 18:5, 18:18, 20:11, 21:13, 22:11, 23:3
motions [16] - 5:7, 8:20, 9:2, 9:6, 11:16, 11:18, 15:18, 18:2, 18:16, 18:17, 19:12, 19:15, 19:17, 19:19, 19:23, 20:12
MR [24] - 3:17, 3:22, 9:15, 11:24, 12:11, 13:7, 14:7, 15:6, 15:25, 17:2, 17:11, 17:14, 17:24, 18:10, 18:12, 18:16, 19:25, 20:4, 20:6, 21:17, 22:2, 22:14, 23:11, 23:12

**N**

namely [1] - 12:16
necessary [1] - 21:21
necessity [1] - 21:7
need [7] - 3:11, 6:21, 8:5, 10:22, 17:6, 20:8, 21:16
needed [1] - 18:14
needs [1] - 11:6
Nesbit [1] - 12:19
never [2] - 20:1, 20:15
new [24] - 4:13, 8:7, 8:10, 8:15, 11:14, 11:22, 12:14, 12:22, 12:23, 13:2, 13:10, 13:11, 13:15, 13:19, 13:23, 14:2, 14:9, 16:3, 17:6, 19:5
newly [2] - 11:19, 16:7
next [1] - 5:10
non [4] - 7:1, 7:17, 8:16, 13:22
non-starter [4] - 7:1, 7:17, 8:16, 13:22
NOTE [1] - 3:3
note [1] - 7:21
November [1] - 8:11
number [2] - 19:15, 19:19
numbers [2] - 22:21,

23:1

**O**

o'clock [1] - 1:11
observe [1] - 9:7
obviously [8] - 3:22, 4:19, 5:14, 7:20, 9:3, 14:13, 19:2, 19:7
obviousness [8] - 5:16, 6:24, 7:14, 7:15, 8:17, 10:11, 20:15, 21:10
OF [1] - 1:2
offer [2] - 6:7, 16:24
offers [1] - 22:18
Office [1] - 18:21
Official [1] - 1:24
old [1] - 13:2
once [1] - 15:2
one [9] - 4:8, 4:22, 5:10, 7:2, 7:3, 7:8, 7:19, 12:18, 17:24
ones [3] - 8:24, 13:20, 20:8
open [1] - 21:19
opening [1] - 15:1
opportunity [7] - 15:2, 15:16, 15:21, 15:24, 18:8, 22:10, 22:18
oppose [1] - 22:4
opposed [1] - 5:14
order [4] - 8:23, 8:25, 9:17, 10:9
original [5] - 4:11, 16:5, 16:9, 18:4, 20:12
otherwise [2] - 5:4, 15:24
outer [2] - 12:17, 12:18
outstanding [2] - 6:10, 6:17
overlap [2] - 7:10, 23:5
overlaps [3] - 7:10, 7:11, 22:5
overshadowing [1] - 22:22
own [2] - 5:14, 9:6

**P**

P.C [1] - 1:18
papers [4] - 7:3, 11:3, 11:12, 17:9
part [1] - 11:5
particularly [2] -

11:17, 14:4
parties [3] - 4:15, 19:16, 21:6
parts [1] - 17:10
party [1] - 3:12
past [1] - 19:12
Patent [1] - 18:21
patent [3] - 18:24, 19:1, 19:11
patents [3] - 6:15, 6:16, 18:25
perhaps [2] - 6:9, 20:23
perspective [1] - 4:5
phase [1] - 20:14
phased [1] - 21:20
phasing [2] - 6:24, 11:1
pieces [1] - 10:23
Plaintiff [2] - 1:4, 2:5
plate [1] - 4:6
plus [1] - 16:17
point [7] - 4:11, 4:21, 8:4, 10:17, 16:15, 17:4, 17:23
points [1] - 6:25
position [1] - 6:20
possibility [1] - 21:12
possibly [1] - 11:23
potential [1] - 5:7
potentially [2] - 4:6, 5:22
POTTER [1] - 2:8
practice [3] - 13:19, 19:13, 21:14
precedent [1] - 20:16
precluded [1] - 15:12
prefer [1] - 19:2
prefers [1] - 19:9
prepared [2] - 7:20, 11:14
present [1] - 19:4
presentation [2] - 10:9, 23:8
presented [2] - 15:19, 20:19
presents [2] - 12:22, 14:10
pretrial [8] - 4:1, 8:23, 8:25, 9:1, 14:4, 19:3, 19:21, 22:8
pretty [3] - 11:3, 11:4, 23:1
prevail [1] - 22:19
primary [2] - 11:24, 12:1
problem [3] - 8:5, 9:23, 14:20
problems [1] - 8:4

procedural [1] - 21:18
procedurally [3] - 5:19, 10:14, 11:7
procedure [1] - 9:8
process [3] - 11:20, 14:23, 17:5
proposal [1] - 4:21
propose [3] - 5:14, 8:9, 17:16
proposed [4] - 3:14, 7:19, 9:24, 10:25
proposes [1] - 5:8
provided [1] - 6:21
providing [1] - 3:23
purport [1] - 8:9
push [2] - 4:23, 16:23
put [2] - 7:12, 16:25

**Q**

quick [1] - 6:25
quicker [1] - 7:18

**R**

raise [1] - 19:8
re [4] - 5:21, 6:11, 6:19, 18:21
re-examinations [4] - 5:21, 6:11, 6:19, 18:21
really [5] - 4:22, 5:3, 8:6, 16:12, 20:15
reason [5] - 6:10, 6:22, 12:2, 13:18, 19:3
reasonable [1] - 16:1
reasons [1] - 5:18
recast [1] - 17:15
recommended [1] - 17:18
record [17] - 3:9, 8:9, 8:15, 11:22, 12:7, 12:9, 14:3, 15:1, 15:12, 15:13, 15:14, 15:17, 15:19, 15:21, 16:9, 16:21, 17:8
redeposing [1] - 13:17
reference [4] - 12:1, 12:4, 16:10, 16:14
refile [2] - 7:24, 17:7
refilling [1] - 7:23
regard [2] - 17:12, 23:3
relate [1] - 18:19
relates [3] - 12:15, 12:18, 18:23
relatively [3] - 7:4, 19:5
relevant [1] - 10:11
relied [1] - 17:7
relies [2] - 8:7, 13:11
remains [1] - 8:2
remand [1] - 11:17
remind [1] - 5:23
reopen [1] - 8:9
reopened [1] - 11:22
reopening [2] - 8:15, 14:3
reply [3] - 5:2, 9:25, 17:19
Reporter [2] - 1:24, 3:7
REPORTER'S [1] - 3:3
request [3] - 5:12, 10:12, 11:2
require [1] - 18:1
requires [1] - 5:3
resolve [1] - 20:7
resources [3] - 17:5, 20:22, 20:23
respect [4] - 18:4, 20:20, 21:11, 22:23
respond [2] - 9:17, 23:15
response [6] - 5:1, 9:25, 17:18, 19:21, 23:6
responses [1] - 3:14
retrial [5] - 3:24, 7:14, 7:15, 8:14, 19:6
retrying [1] - 20:21
reversed [1] - 12:3
reword [1] - 21:8
RICHARD [1] - 2:8
Richardson [1] - 3:18
RICHARDSON [2] - 1:18, 2:3
road [1] - 6:14
Robinson [1] - 3:7
ROBINSON [1] - 1:14
roll [1] - 6:19
round [1] - 13:19
rule [1] - 19:2
rulings [1] - 10:11

**S**

save [1] - 22:18
schedule [10] - 3:25, 4:4, 4:9, 4:15, 5:5, 9:21, 9:23, 17:17, 18:2, 18:6
SCHERKENBACH [8] - 2:3, 3:17, 3:22, 13:7, 17:24, 19:25, 22:2, 23:12
Scherkenbach [10] - 3:18, 9:13, 9:18, 9:24, 11:1, 13:8, 17:17, 17:25, 19:22, 22:3
season [1] - 23:14
second [2] - 5:9, 18:23
see [4] - 9:2, 14:5, 14:16, 20:16
segregate [1] - 10:24
selection [2] - 4:2, 6:2
sends [1] - 14:23
sense [2] - 3:12, 10:24
sensitive [1] - 6:4
sent [1] - 7:13
separate [2] - 8:24, 13:20
September [4] - 4:2, 4:9, 4:23, 7:25
set [3] - 4:1, 10:2, 13:19
setting [1] - 20:16
settlement [1] - 21:13
several [1] - 7:20
side [2] - 8:14, 22:20
simply [1] - 20:17
single [1] - 8:19
six [2] - 5:24, 6:1
SLR [1] - 1:7
so-called [2] - 16:3, 18:24
sole [1] - 10:18
solution [1] - 22:12
someone [1] - 22:9
sorry [1] - 17:25
spanned [1] - 5:24
special [2] - 6:7, 8:24
specific [1] - 3:23
start [3] - 3:15, 9:18, 14:24
starter [4] - 7:1, 7:17, 8:16, 13:22
starting [1] - 20:1
STATES [1] - 1:1
status [1] - 10:23
still [3] - 7:8, 14:16, 17:9
stop [1] - 9:10
strange [1] - 7:12
strike [1] - 13:21
strikes [3] - 6:25, 7:17, 8:16
strong [2] - 10:16, 11:11
subject [3] - 12:21, 13:24, 16:2
subjects [1] - 16:2
submission [1] - 14:4
submitting [1] - 8:15
SUE [1] - 1:14
sufficiently [1] - 17:7
suggest [1] - 18:24
suggestion [4] - 11:8, 17:11, 17:14, 21:20
summarize [1] - 3:13
summary [16] - 7:19, 10:19, 10:20, 11:9, 11:17, 11:18, 11:21, 11:25, 15:10, 15:17, 16:10, 16:11, 16:13, 17:21, 18:18, 20:11
supplementation [1] - 16:20
supplementing [1] - 12:7
support [1] - 16:11
suppose [1] - 22:8
surprising [1] - 7:19
surprisingly [1] - 7:7
survive [2] - 6:15, 6:16

**T**

Telephone [1] - 1:12
telephone [2] - 3:3, 23:16
ten [1] - 4:25
terminated [1] - 6:11
terms [1] - 5:23
test [18] - 4:10, 4:11, 4:13, 8:10, 9:19, 10:10, 10:14, 13:11, 13:15, 13:19, 14:9, 14:11, 16:5, 18:4, 20:12
tested [1] - 13:16
testimony [1] - 12:22
testing [1] - 15:3
Thanksgiving [1] - 13:16
THE [23] - 1:1, 1:2, 3:6, 3:21, 9:12, 11:13, 12:24, 14:20, 15:15, 17:1, 17:3, 17:13, 17:20, 18:3, 18:11, 19:10, 20:3, 20:5, 20:10, 21:22, 22:9, 23:2, 23:13
they've [4] - 8:10, 9:3, 21:24, 23:9
third [2] - 20:23, 20:24
THOMAS [1] - 1:18
thoughts [1] - 3:11
three [3] - 5:7, 19:24, 21:4
throwing [1] - 22:20
today [1] - 23:14
together [3] - 6:5, 13:12, 18:18
topic [2] - 12:20, 13:2
total [1] - 13:21
totally [1] - 12:10
treated [1] - 9:3
trial [21] - 4:3, 5:15, 5:20, 5:24, 5:25, 6:15, 8:17, 10:2, 10:5, 10:6, 10:8, 10:22, 14:21, 15:13, 15:14, 15:18, 17:8, 20:20, 21:7, 21:19
tried [8] - 5:10, 5:18, 6:13, 10:7, 10:13, 21:5, 21:9, 21:10
trouble [1] - 19:15
Troy [1] - 13:14
true [1] - 13:11
truly [3] - 16:6, 20:24, 23:1
try [6] - 3:19, 5:12, 6:5, 20:23, 21:3, 21:8
trying [2] - 15:23, 21:18
twenty [1] - 7:6
twenty-five [1] - 7:6
twice [1] - 21:4
two [8] - 6:2, 7:18, 9:2, 14:2, 18:16, 18:17, 19:17, 19:24

**U**

U.S.D.C.J [1] - 1:14
ultimately [1] - 22:19
undecided [1] - 6:18
under [3] - 12:25, 13:4, 22:1
underneath [1] - 12:17
UNITED [1] - 1:1
universal [1] - 3:10
unless [1] - 21:1
unprecedented [1] - 7:4
up [8] - 4:25, 6:1, 9:18, 15:17, 17:10, 22:8, 22:21
upset [1] - 21:23
useful [1] - 16:22

**V**

Valerie [2] - 1:24, 3:7
valid [1] - 18:25
validity [3] - 6:15, 6:16, 6:17

various [1] - 12:16
verdict [1] - 21:21
vetted [4] - 11:14, 11:19, 13:3, 13:6
view [3] - 3:10, 7:25, 8:2
vs [1] - 1:5

# W

wants [1] - 9:4
washington [1] - 2:13
waste [2] - 20:22
ways [1] - 7:20
Wednesday [1] - 1:11
week [1] - 3:24
whole [1] - 12:25
willing [1] - 16:24
Wilmington [1] - 1:10
window [1] - 22:5
withdraw [2] - 16:21, 17:6
words [2] - 18:19, 21:3
written [2] - 19:20, 23:6

# Y

year [2] - 8:11, 13:16
years [1] - 7:6
yourselves [1] - 3:8