## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY )
)
)
Plaintiff, )  C.A. No. 06-91 (SLR)
)
v. )
)  **PUBLIC VERSION**
ACUSHNET COMPANY, )
)
Defendant. )
)

## ACUSHNET'S REPLY BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT OF ANTICIPATION
## OF U.S. PATENT NOS. 6,210,293; 6,506,130; 6,503,156; AND 6,595,873

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: February 2, 2010
Public Version Dated: February 9, 2010
952955/30030

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      The Nesbitt / Molitor Reference Discloses a Three-Piece Golf Ball Using
                Polyurethane and a Blend of Ionomers ...........................................................2

        B.      Callaway Applies the Wrong Legal Standards to the Disclosure of
                Nesbitt/Molitor ...........................................................................................6

                1.      Acushnet Does Not "Pick And Choose" From Unrelated
                        Embodiments .................................................................................6

                2.      Callaway's Genus/Species Cases Are Inapplicable ................................8

        C.      The Golf Ball Disclosed by Nesbitt Satisfies the Outer Cover Shore D
                Hardness Limitations .....................................................................................15

                1.      Nesbitt/Molitor Explicitly Disclose the Outer Cover Shore D
                        Hardness Limitation........................................................................15

                2.      Acushnet's Test Ball Evidence Establishes the Inherent Hardness
                        of the Nesbitt/Molitor Ball...............................................................17

                3.      Callaway Fails to Present Any Evidence to Create a Genuine Issue
                        of Material Fact..............................................................................18

III.    CONCLUSION.....................................................................................................20

i

## TABLE OF AUTHORITIES

### CASES

*American Home Products Corp. v. California Biological Vaccine Laboratories*,
   No. CV-90-2052, 1991 WL 352417 (C.D. Cal. Nov. 25, 1991)..............................................19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................................................18

*Ecolochem, Inc. v. Southern California Edison Co.*,
   227 F.3d 1361 (Fed. Cir. 2000)...............................................................................................7

*Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.*,
   471 F.3d 1369 (Fed. Cir. 2006)..............................................................................................14

*Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.*,
   468 F.3d 1366 (Fed. Cir. 2006)..............................................................................................14

*In re Arkley*,
   455 F.2d 586 (C.C.P.A. 1972) .................................................................................................6

*In re Baxter Travenol Laboratories*,
   952 F.2d 388 (Fed. Cir. 1991)................................................................................................16

*In re Graves*,
   69 F.3d 1147 (Fed. Cir. 1995).................................................................................................16

*In re Petering*,
   343 F.2d 965 (C.C.P.A. 1965) ......................................................................................9, 10, 13

*In re Ruschig*,
   343 F. 2d 965 (C.C.P.A. 1965) ...............................................................................................13

*In re Schaumann*,
   572 F.2d 312 (C.C.P.A. 1978) ................................................................................................12

*Jansen v. Rexall Sundown, Inc.*,
   342 F.3d 1329 (Fed. Cir. 2003)...............................................................................................19

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   481 F.3d 1371 (Fed. Cir. 2007).................................................................................................4

*Lindemann Maschinenfabrik, GmbH v. American Hoist & Derrick Co.*,
   730 F.2d 1452 (Fed. Cir. 1984).................................................................................................7

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................19, 20

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008)..........................................................1, 2, 6

*Perricone v. Medicis Pharmaceutical Corp.*,
    432 F.3d 1368 (Fed. Cir. 2005).........................................................3, 4, 8, 9

*Toro Co. v. Deere & Co.*,
    355 F.3d 1313 (Fed. Cir. 2004)................................................................18

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
    631 F. Supp. 2d 1010 (N.D. Ill. 2009) ......................................................4

## STATUTES

35 U.S.C. § 102(b).....................................................................................10

Defendant Acushnet Company ("Acushnet") files this Reply Brief in Support of Its

Motion for Summary Judgment of Anticipation of U.S. Patent Nos. 6,210,293 ("the '293 patent")

(Ex. 1); 6,506,130 ("the '130 patent") (Ex. 2); 6,503,156 ("the '156 patent") (Ex. 3); and

6,595,873 ("the '873 patent") (Ex. 4) (collectively "the patents-in-suit").

## I.    INTRODUCTION

There are no genuine issues of material fact that preclude summary judgment. Acushnet

demonstrated that the disclosure of Nesbitt and Molitor, when followed, results in a golf ball that

meets every limitation of the asserted claims. Callaway's only two responses fail to establish an

issue of fact for trial.

First, Callaway's argument that the Nesbitt case should be governed by "picking and

choosing" cases or "genus/species" cases is misplaced. These two lines of cases are inapplicable

here. It is undisputed that Nesbitt teaches a golf ball with the dimensions claimed in the patents-

in-suit. Nesbitt further instructs that the cover layer compositions set forth in Molitor should be

used as the inner and outer cover layers of the ball. Molitor teaches a specific blend of ionomers

and a specific polyurethane cover layer composition. When those cover compositions are used

in the layers of the Nesbitt ball, the result is the claimed golf ball. That Molitor also teaches

other, unclaimed cover layer compositions is immaterial under binding Federal Circuit

precedent.

The "picking and choosing" cases Callaway relies on are inapplicable here. Those cases

(typified by *Net MoneyIN*) hold that anticipation cannot be found by mixing and matching

elements of distinct unrelated embodiments to find anticipation. *Net MoneyIN v. VeriSign, Inc.*,

545 F.3d 1359 (Fed. Cir. 2008). Acushnet does not do that here. Nesbitt explicitly teaches the

reader to look to Molitor for its list of materials to be used in the inner and outer cover layers of

the ball it discloses. Indeed, the Federal Circuit held that Nesbitt incorporates polyurethane and blends of ionomers "as appropriate materials for use in golf ball cover layers." Ex. 7, Fed. Cir. Opinion at 1347. Thus, there is no mixing and matching of elements from different embodiments, distinguishing *Net MoneyIN* and its ilk.

Callaway's reliance on the chemical genus/species cases is similarly misplaced. Those cases hold that a prior art reference that discloses only a chemical genus does not necessarily anticipate every member species of that genus. Those cases do not apply here, where the Molitor patent discloses specific recipes for the ionomer blend and polyurethane cover compositions that fall within the claims. Even if the chemical genus cases are applied to this case, the number of golf balls taught by Nesbitt's incorporation of Molitor is quite limited. Since one of the very few balls explicitly taught by Nesbitt/Molitor satisfies the asserted claims, the claims are anticipated.

Second, Callaway fails to raise a genuine issue of fact regarding the outer cover Shore D hardness of the Nesbitt/Molitor ball. The explicit language of Nesbitt fairly discloses that the outer cover Shore D hardness is less than 64. Moreover, Acushnet demonstrated that the ball taught by Nesbitt and Molitor, when made and measured, has an outer cover Shore D hardness less than 64. Callaway does not present a single piece of evidence to support the opposite conclusion. To defeat summary judgment in view of Acushnet's evidentiary showing, Callaway must do more than raise a "metaphysical doubt" about the existence of a fact. Since there is no contrary evidence that creates a genuine fact issue to be tried, summary judgment is appropriate.

## II. ARGUMENT

### A. The Nesbitt / Molitor Reference Discloses a Three-Piece Golf Ball Using Polyurethane and a Blend of Ionomers

Nesbitt teaches a three-piece golf ball with a soft outer cover and a hard inner cover. Nesbitt also teaches that the cover layers can be selected from the list of foamable compositions

2

set forth in Molitor.  Molitor provides eight specific golf ball cover compositions, including a

blend of low-acid ionomers and a polyurethane.  As discussed hereafter, one of the very few

specific golf balls taught by Nesbitt/Molitor is thus a three-piece golf ball with a blend of

ionomers in the inner cover layer and a polyurethane outer cover.  That golf ball is depicted

below:



Callaway argues that because Molitor teaches other cover materials that are not recited in

the claims, the disclosed polyurethane-over-ionomer golf ball cannot anticipate.  Callaway is

incorrect.  The Federal Circuit held in *Perricone* that the disclosure of other non-anticipating

embodiments does not defeat anticipation.  *Perricone v. Medicis Pharma. Corp.*, 432 F.3d 1368

(Fed. Cir. 2005).  As long as the prior art reference discloses and enables a single embodiment

that falls within the claims, the claims are anticipated.  *Id.* at 1376.  In this case, Nesbitt/Molitor

describes the claimed ball, using the dimensions and materials recited in the claims.  Since the

ball claimed by the patents-in-suit was thus <u>not new,</u> the asserted claims are anticipated.

Callaway fails to distinguish the *Wrigley* case, a district court case addressing nearly identical facts as those presented here. *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010 (N.D. Ill. 2009). There, the prior art disclosed a recipe that set forth two options for one ingredient, and 23 options for another ingredient. *Id.* at 1017-18. In a lengthy and thoughtful discussion, the court relies on *Perricone* to find that since the list of options for each ingredient included the claimed ingredients, the claims at issue were anticipated. *Id.* at 1026-1031. Callaway's only response to this case is to argue that the number of combinations in the prior art reference was only 46. However, as set forth *infra* in section II.B.2, Nesbitt/Molitor discloses far fewer specific golf balls. Moreover it is not the number of combinations disclosed in a reference that is significant. *See infra* pp. 9-13. Instead, the fact that Nesbitt/Molitor discloses options for each cover layer that include the claimed material is enough to anticipate. It does not matter that other non-claimed materials are also listed as options.

Callaway argues that Nesbitt/Molitor does not emphasize the use of blends of ionomers and polyurethane, as opposed to other materials. D.I. 560 at 12-13. However, the Federal Circuit has made clear that such emphasis is <u>not</u> required as long as the claimed invention is disclosed and enabled in the prior art reference. *Perricone*, 432 F.3d at 1376 ("This court rejects the notion that one of these ingredients cannot anticipate because it appears without special emphasis in a longer list."). Moreover, Callaway's red herring argument that Nesbitt itself does not use the word polyurethane in its corners (D.I. 560 at 3) is misplaced. When a patent incorporates another patent by reference, as Nesbitt does Molitor, "that material incorporated by reference 'is effectively part of the host document as if it were explicitly contained therein.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1382 (Fed. Cir. 2007). The Federal

4

Circuit held that Molitor's materials, including polyurethane and ionomer blends, are

incorporated by reference in Nesbitt.  Thus, as a matter of law, Nesbitt discloses those materials.



The Federal Circuit, however, has held that the

use of such materials in the Nesbitt ball was in fact disclosed by Nesbitt, through its

incorporation of Molitor.  As, such, there is nothing new about the asserted claims.

## B. Callaway Applies the Wrong Legal Standards to the Disclosure of Nesbitt/Molitor

### 1. Acushnet Does Not "Pick And Choose" From Unrelated Embodiments

Nesbitt explicitly directs the reader to select from among Molitor's cover compositions for the inner and outer cover layers of the Nesbitt ball. Acushnet does not improperly pick and choose elements from separate, unrelated embodiments. Thus, Callaway's cases regarding "picking and choosing" are not applicable.

The primary case Callaway relies on is *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008). The claims in that case pertain to a system for authorizing online credit card purchases. *Id.* at 1362. The claims required five "links" between various computers in a network. *Id.* at 1368. The prior art reference disclosed two <u>separate</u> and "mutually exclusive" protocols, neither of which included all five claimed links. *Id.* at 1363. The defendant argued that since the five links were each individually disclosed within one of the two protocols, the claims were nonetheless anticipated. *Id.* at 1369. The Federal Circuit rejected that argument, holding that the "district court was wrong to combine parts of the separate protocols shown" in the prior art reference. *Id.* at 1371.

In so holding, the Federal Circuit relied on *In Re Arkley*, decided by the predecessor to the Federal Circuit, which stated:

> [T]he prior art . . . reference must clearly and unequivocally disclose the claimed [invention] or direct those skilled in the art to the [invention] without *any* need for picking, choosing and combining various disclosures ***not directly related to each other by the teachings of the cited reference.***

455 F.2d 586, 587 (C.C.P.A. 1972) (emphasis added).

In contrast to the *Net MoneyIN* and *In re Arkley* cases, the Nesbitt patent <u>does</u> directly relate the materials disclosed in Molitor to the golf ball described in Nesbitt. Nesbitt states:

"Reference is made to [Molitor '637] which describes a number of foamable compositions of a character which may be employed for one or both layers 14 and 16 for the golf ball of this invention." Ex. 5, Nesbitt, col. 3:51-61. Thus, it is the explicit words of Nesbitt that link the foamable compositions of Molitor to the cover layers of the golf ball disclosed in Nesbitt.

Callaway's argument that the Molitor patent describes only two-piece golf ball embodiments is a red herring. D.I. 560 at 6, 11. Nesbitt does not incorporate Molitor for its disclosure of <u>golf balls</u>. Instead, Nesbitt incorporates Molitor's disclosure of <u>foamable compositions</u> that can be used as cover layers in the Nesbitt ball. The Federal Circuit's opinion is unambiguous that Nesbitt links the compositions of Molitor to the golf ball of Nesbitt:

> Nesbitt incorporates the entire list of foamable compounds ("a number of foamable compositions") disclosed by Molitor '637 as appropriate materials for use in golf ball cover layers, including polyurethane and mixtures of ionomer resins.

Ex. 7, Fed. Cir. Opinion at 1347.

The other "picking and choosing" cases Callaway relies on are similarly inapplicable here. Those cases all involve attempts to combine parts of separate embodiments that are unrelated to each other in the prior art reference. *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1368-69 (Fed. Cir. 2000) (holding that the prior art disclosure relied on by defendant was limited to the use of hydrogen, and not the use of hydrazine, which was described in a separate unrelated section of the prior art reference); *Lindemann Maschinenfabrik, GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984) (holding that the prior art disclosed an "entirely different device, composed of parts distinct from those of the claimed invention, and operating in a different way to process different material differently").

7

### 2.    Callaway's Genus/Species Cases Are Inapplicable

Callaway relies on a line of cases developed in the chemical arts that hold that disclosure of a broad genus of chemical compositions does not necessarily disclose every single species composition contained within that genus. Those cases are inapplicable here.

The Federal Circuit in *Perricone* stated unequivocally that the genus line of cases does not apply where the prior art discloses the claimed limitations themselves, rather than simply disclosing a broad genus of which the claimed elements are members:

> While other opinions state that disclosure of a broad genus does not necessarily specifically disclose a species within that genus..., this axiomatic proposition also does not rescue Dr. Perricone's claims. In this case, the prior art does not merely disclose a genus of skin benefit ingredients without disclosing the particular claimed ingredient. Rather [the prior art reference] specifically discloses ascorbyl palmitate. *That specific disclosure, even in a list, makes this case different from cases involving disclosure of a broad genus without reference to the potentially anticipating species.*

432 F.3d at 1377 (emphasis added).

Similarly, the Molitor patent does not merely describe a genus that includes the materials claimed by the claims. To the contrary, Molitor discloses <u>specific recipes</u> for cover layers that satisfy those broad limitations. In particular, Molitor discloses a specific cover layer recipe that comprises a blend of low-acid ionomers:

## TABLE 2

|                              | Parts |
| ---------------------------- | ----- |
| Surlyn 1605                  | 88.00 |
| Surlyn 1557                  | 17.40 |
| TiO$_2$ Master Batch A       | 35.20 |
| Blowing agent Master Batch B | 2.32  |

Molitor '637, col. 14:59-64. Molitor also discloses a specific cover layer recipe that comprises polyurethane:

## TABLE 10

| | Parts |
|---|---|
| Thermoplastic Polyurethane* | 99.7 |
| Ficel EPA | .3 |

*As sold by B. F. Goodrich Co., Akron, Ohio under the trademark "Estane 58133."

Molitor '637, col. 18:36-41. The asserted claims broadly claim the use of polyurethane in the outer cover and a blend of low-acid ionomers in the inner cover, each of which are met by the specific cover materials in Molitor recited above. Thus, this is not a case where a prior art reference discloses a broad chemical genus and the asserted claim recites a specific chemical that falls within that genus.

Molitor discloses a number of categories of cover layer materials (Molitor '637, col. 5:33-55), but Callaway ignores the fact that Molitor also provides specific recipes, complete with product numbers and amounts for each ingredient, for cover layers. It is those specific recipes that anticipate the broadly claimed materials recited in the asserted claims. Since Molitor discloses specific cover layer compositions that satisfy the claimed "polyurethane" limitation and the blend limitations, those limitations are disclosed in the prior art.

### a. Nesbitt/Molitor Teaches a Very Limited Number of Specific Golf Balls

The seminal *In re Petering* case is instructive as to how to analyze the disclosures of Nesbitt/Molitor. 301 F.2d 676 (C.C.P.A. 1962).[2] There, the patent at issue claimed a specific chemical composition that was a member of a broad genus of chemicals. *Id.* at 677. The prior art in question disclosed the broad genus, but also disclosed eight specific compounds that fell

---

[2] As set forth above, the genus/species cases in the line of *In re Petering* should not even apply to Nesbitt/Molitor because all elements of the asserted claims are explicitly recited. *Perricone*, 432 F.3d at 1377. This section demonstrates, however, that even if analyzed under the framework those cases, Nesbitt/Molitor anticipates the claims.

within that broad genus. *Id.* at 678. The court found that while the broad genus covered "a vast number and perhaps infinite number of compounds," there were specific disclosures in the prior art reference that limited the disclosure to a meaningful subset. *Id.* at 681.

> The generic formula of [the prior art] encompasses a vast number and perhaps even an infinite number of compounds since there is no express limit on the size of the alkyl group or the structure and size of R. Even though appellants' claimed compounds are encompassed by this broad generic disclosure, we do not think this disclosure by itself describes appellants' invention, as defined by them in any of the appealed claims, within the meaning of 35 U.S.C. § 102(b).
>
> However, there is more than this broad generic disclosure in [the prior art reference]. As set forth supra, [the prior art reference] discloses certain specific preferences for X, Y, Z, P, R and R' through his series of preferred R groups and his eight specific isoalloxazines.

*Id.* at 681 (emphasis added). Based on the eight specific compounds disclosed in the prior art reference, the court found that a limited subset of the broad genus had been disclosed. *Id.* at 681. The court found that the limited class that was disclosed by the prior art had twenty compounds. But the court was careful to point out that it was not the number of compounds that was significant. *Id.* at 681-82 ("[W]e wish to point out that it is not the mere number of compounds in this limited class which is significant here but, rather the total circumstances involved....").

As *In re Petering* instructs, the full disclosure of Nesbitt/Molitor must be considered to determine whether it teaches a limited class of items to one skilled in the art. Molitor sets forth only eight specific compositions after its broad disclosure of potential cover layer materials. Those eight compositions are summarized in Acushnet's opening brief. D.I. 534 at 9. Thus, the number of golf balls directly taught by Nesbitt/Molitor is quite limited. Each permutation would certainly be envisioned by the reader. Nesbitt teaches that the foamable compositions set forth in Molitor can be used in either the inner or outer cover layers of the Nesbitt ball, thus there are at most 64 permutations of specific balls disclosed.

Unlike the chemical cases Callaway relies on, the substitution of the materials in Molitor as cover layers is a simple matter. Each of the cover layer materials set forth in Molitor, other than the thermoset polyurethane of Examples 18-19, can be injection molded, just like the ionomer cover materials Nesbitt itself describes. Molitor '637 at col. 12:62-68. Thus, making any of the permutations disclosed by Nesbitt is a simple matter of selecting which cover material should be used for each layer. Since the class of golf balls Nesbitt/Molitor teaches is limited in size and fully enabled, a person skilled in the art would readily envision each such golf ball, even if all 64 permutations were considered.

However, the disclosure of Nesbitt/Molitor even further limits the permutations that are taught therein. For example, Molitor notes that three of the eight cover materials were susceptible to cracking during testing (Tables 6, 7, 11, and 12). *See* Molitor '637, col. 16:46-58; col. 17:20-25; col. 17:36-38; col. 19:54-55. This teaching reduces the number of preferred cover layer materials to only five.

Moreover, of the five remaining materials, the only material that meets Nesbitt's description for the inner cover layer ("hard, highly flexural modulus resinous material") is the blend of ionomers described in Tables 2-5 of Molitor. ████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████ The Estane 58133 polyurethane, for

example, has a material hardness of 55 Shore D, just like the Surlyn 9020 material Nesbitt uses for the outer cover layer.[3]

Thus, when the preferences and disclosures of Nesbitt/Molitor are taken into account, Nesbitt's incorporation of Molitor fairly directs the reader to <u>four</u> specific golf balls, where the inner cover layer comprises a blend of low-acid ionomers, and the outer cover layer is one of polyolefin, polyester, and polyurethane (thermoplastic or thermoset). This limited class is certainly reasonably small enough that the reader would at once envision each such permutation.

The Court of Customs and Patent Appeals engaged in a similar analysis in *In re Schaumann*, on which Callaway relies. 572 F.2d 312 (C.C.P.A. 1978). There, the prior art disclosed a formula that would include "one hundred and five or more compounds." *Id.* at 314. However, when the preferences expressed later in the prior art reference were considered, the number of compounds actually taught by the reference was actually only seven. *Id.* ("That number is further reduced to seven, said the examiner, if one considers the preference for lower alkyl secondary amines expressed in claim 1 of the reference."). The court applied *In re Petering* to find that since the prior art reference, when read in light of its stated preferences, embraced a "very limited number of compounds closely related to one another in structure," the reference anticipated the claim directed to one of those compounds. *Id.* at 316-17. Similarly, since Nesbitt and Molitor fairly direct the reader to only a handful of golf balls, each such golf ball is disclosed in the art.

---

[3] The other three preferred materials of Molitor are similarly soft. The polyolefin set forth in Table 8 of Molitor '637 has a Shore A hardness of 92, which would correspond to a Shore D hardness in the 40s or low 50s, and is clearly a soft material. Ex. 6, Molitor '637 at col. 17:45-51; Ex. 40 at col. 5:10-13 (attached hereto). The polyester set forth in Table 9 of Molitor '637 has a Shore D hardness of 55. Ex. 6, Molitor '637 at col. 18:6-12; Ex. 41 at 1 (attached hereto). (The thermoset polyurethane set forth in Example 18 of Molitor '637 is of unknown specific hardness, but polyurethanes are notoriously soft materials. Ex. 6, Molitor '637 at col. 18:63-67; Ex. 11, at AC0100935.

        **b.**      **The Cases Relied on by Callaway that Fail to**
                      **Find Anticipation by a Genus Are**
                      **Distinguishable**

Callaway relies heavily on the *In re Ruschig* case, decided shortly after *In re Petering*.

343 F.2d 965 (C.C.P.A. 1965). In that case, unlike the present case, the prior art references did

not disclose the claimed compound, nor did it disclose a genus that included the claimed

compound. *Id.* at 973. Instead, the prior art disclosed a handful of examples, none of which

anticipated the claim. When the examples were broken down into their various components, and

those components were then re-combined in every possible combination, the claimed compound

was included in those re-combined permutations. *Id.* at 973. The Board thus rejected the claim

as anticipated. *Id.* at 973. The court reversed the Board's anticipation rejection, holding that the

genus/species analysis of *Petering* did not apply, since there was simply no disclosure of a genus

that included the claimed compound. *Id.* at 974.

> We did not intend our Petering opinion or decision to become a precedent for the
> mechanistic dissection and recombination of the components of the specific
> illustrative compounds in every chemical reference containing them, to create
> hindsight anticipations with the guidance of an applicant's disclosures, on the
> theory that such reconstructed disclosures describe specific compounds within the
> meaning of section 102.

*Id.* at 974. Thus, while the elements of the disclosed compounds, when each was broken down

and recombined, would yield 130, 156, and 259 permutations for each respective reference, it

was not the number of permutations that the court relied on to reverse the Board's rejection. *Id.*

at 974-75. Instead, the court refused to find anticipation where no genus was disclosed that

actually included the claimed compound. Unlike that case, Nesbitt explicitly instructs the reader

to select materials from Molitor for use in the Nesbitt construction golf ball, and at least one

resulting ball meets the asserted claims. *In re Ruschig* is thus inapplicable to this case.

*Eli Lilly & Co. v. Zenith Goldline Pharmas., Inc.*, is also inapposite. 471 F.3d 1369 (Fed.

Cir. 2006). In that case, the prior art at issue did <u>not</u> disclose the claimed chemical compound, or

even a broad genus that included that compound. *Id.* at 1376-77. Instead, the prior art merely

disclosed other chemical compounds that were in the same broad chemical family as the claimed

compound: "the article discloses no generic disclosure encompassing olanzapine or even stating

that substituents on different compounds were interchangeable." *Id.* at 1377. Since there was

no disclosure of the claimed compound, there could be no anticipation. *Id.* Unlike the prior art

in *Eli Lilly*, one of the permutations disclosed by Molitor is unquestionably a golf ball whose

inner cover layer is a blend of ionomers and whose outer cover is polyurethane, as required by

the asserted claims. Thus, *Eli Lilly* has no application to the facts at hand.

Callaway also relies on *Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.*, 468

F.3d 1366 (Fed. Cir. 2006). There, the Federal Circuit considered two prior art references. One

reference identified a broad chemical genus that included hundreds of compounds, of which the

claimed compound was a member. *Id.* at 1383. The court found that such a broad disclosure

alone did not anticipate the claimed compound. *Id.* at 1383. The other reference, in contrast,

contained the same broad disclosure of the genus, but also specifically called out the claimed

compound as a member. *Id.* at 1379. For that reference, the court vacated the lower court's

finding of no anticipation and remanded for a determination of enablement. *Id.* at 1383. The

Nesbitt/Molitor reference, like the reference remanded to the lower court in *Impax*, sets forth

specific examples of materials that include those of the claimed golf ball. Since Nesbitt/Molitor

discloses a limited, and easy to envision, number of golf balls, at least one of which meets the

asserted claims, it anticipates those claims.

14

### C.     The Golf Ball Disclosed by Nesbitt Satisfies the Outer Cover Shore D Hardness Limitations

Acushnet has presented uncontroverted evidence demonstrating that the Nesbitt/Molitor satisfies the outer cover Shore D hardness limitation recited in the asserted claims.  First, Nesbitt explicitly discloses that the outer cover hardness of its golf ball should be similar to that of balata, which was well understood in the art to be under 64 Shore D.  Second, when the polyurethane/ionomer-blend golf ball disclosed by Nesbitt/Molitor is made and measured, the outer cover Shore D hardness is under 64.  Accordingly, the limitation is inherently disclosed by the prior art.  Thus, explicitly or inherently, with or without the test ball evidence, Nesbitt/Molitor anticipates the asserted claims.

As the outer cover Shore D hardness is the _only_ alleged factual issue Callaway identifies as disputed, and Callaway presents no evidence to counter Acushnet's evidence, summary judgment is appropriate.

### 1.     Nesbitt/Molitor Explicitly Disclose the Outer Cover Shore D Hardness Limitation

The words of the Nesbitt patent itself teach that the Shore D hardness of the outer cover of the ball should be less than 64.  While Nesbitt does not provide a numerical range for the "on-the-ball" hardness of the outer cover, it does explicitly state that the outer cover should emulate the characteristics of balata-covered golf balls, which were known to be very soft and well under 64 Shore D.  Callaway does not dispute the fact that balata-covered golf balls were known to have a hardness well under 64 Shore D.

Callaway mischaracterizes Acushnet's argument regarding Nesbitt's disclosure as based in inherency.  D.I. 560 at 20-21.  As stated in its opening brief, Acushnet relies on Nesbitt's disclosure to create a ball with the hardness of balata as an _explicit_ disclosure of the claimed hardness limitation.  It was well known to those in the art that balata-covered golf balls in 1995

15

had on "on the ball" hardness of approximately 47-54 on the Shore D scale. *See* D.I. 534 at 4 n.10. Thus, when Nesbitt discloses that the hardness of the outer cover should have the "same thickness and shore hardness of a balata covered ball," that would be understood by a person of ordinary skill in the art to teach a golf ball whose outer cover hardness was well under 64 Shore D, on the ball. *See In re Baxter Travenol Labs*, 952 F.2d 388, 390 (Fed. Cir. 1991) (relying on extrinsic evidence to show how a person skilled in the art would understand a prior art disclosure, and holding the claims anticipated).

Callaway's narrow view of what is required to anticipate is at odds with Federal Circuit precedent. In *In re Graves*, the Federal Circuit held that "[a] reference anticipates a claim if it discloses the claimed invention 'such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention.'" 69 F.3d 1147, 1152 (Fed. Cir. 1995) (quoting *In re LeGrice*, 301 F.2d 929 (C.C.P.A. 1962)) (emphasis omitted) (citations omitted). Thus, since Nesbitt discloses that the hardness of the outer cover should be the same as that of a balata-covered ball, and those skilled in the art would understand balata-covered balls to have a Shore D hardness well under 64, Nesbitt anticipates the asserted claims.

Callaway also argues that Nesbitt's comparison to balata pertains only to the use of a soft Surlyn ionomer in the outer cover of Nesbitt's ball. D.I. 560 at 20. Callaway parses the reference too finely. Nesbitt is replete with comparisons of the outer cover of its ball to that of a balata-covered ball, whether discussing the specific ionomer-covered example or the ball in general. For example, in generally describing the outer cover, Nesbitt states:

> The first layer or ply is provided with a second or cover layer of a comparatively soft, low flexural modulus ***resinous material or of cellular or of foam composition*** molded over the first layer and core or center assembly. Such golf

16

> ball has the 'feel" and playing characteristics *simulating those of a softer balata covered golf ball.*

Nesbitt, col. 1:51-56 (emphasis added). This passage is explicitly not limited to the ionomer-covered manifestation of Nesbitt's ball, and more generally describes all Nesbitt-type balls. Moreover, even after incorporating the Molitor materials for use in the inner and outer cover layers, Nesbitt teaches that the foaming of the outer cover layer should be adjusted to achieve this target hardness: "The outer or cover layer or second layer 16 may be foamed to a greater degree than the inner, intermediate or first layer 14 as the material of the layer 16 is comparatively soft." Nesbitt, col. 3:65-68.

Thus, since Nesbitt teaches the reader to adjust the outer cover hardness so that it has the same hardness as a balata-covered golf ball, which was known to have an on-the-ball hardness well under 64, Nesbitt explicitly discloses the hardness limitation of the asserted claims. Thus, even without reference to the test ball evidence, Nesbitt/Molitor anticipates the claims and summary judgment is appropriate.

## 2.   Acushnet's Test Ball Evidence Establishes the Inherent Hardness of the Nesbitt/Molitor Ball

Nesbitt/Molitor also anticipates through inherency. Acushnet made the ball disclosed by Nesbitt/Molitor, and measured the outer cover hardness. In fact, Acushnet made a dozen samples of that ball. Ex. 29 at AC0131408. The hardness of the outer cover layer was always under 64. *Id.* at AC0131408.[4] Callaway has presented no evidence contradicting these facts. Thus, Acushnet has shown that an inherent property of the golf ball disclosed by Nesbitt/Molitor is that the outer cover has a Shore D hardness of less than 64, as required by the claims.

---

[4] Moreover, Acushnet demonstrated that its choice of core had no effect on the outer cover Shore D hardness of the ball. D.I. 534 at 15-16; D.I. 557 at 16-18.

Callaway argues that Acushnet has not met its burden because the test balls do not show the inherent properties of <u>every</u> example ball disclosed by Nesbitt/Molitor. D.I. 560 at 19. No such showing is required for anticipation. It is well established that a prior art reference anticipates if even a single embodiment satisfies the claims, whether explicitly or through inherency. *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1321 (Fed. Cir. 2004) ("For inherent anticipation, the [prior art] must have sufficiently described and enabled ***at least one embodiment*** that necessarily featured or resulted in the subject matter embraced by [the claimed] limitation.") (emphasis added). Since one of the balls disclosed by Nesbitt/Molitor, when made, has the requisite properties of the asserted claims, those claims are anticipated.

Callaway also argues that the test ball evidence is inadmissible. D.I. 560 at 18-19. As set forth in Acushnet's Opposition to Callaway's Motion *In Limine* regarding the test balls, the test ball evidence is highly probative and not unduly prejudicial. D.I. 557 at 21. Indeed, the Federal Circuit's remand left open only the question of the authenticity of the test balls. Fed. Cir. Opinion at 1347. Acushnet can authenticate the test balls through the testimony of Mr. Dalton, who personally supervised the making of the balls, and Mr. Galipeau, who tested the balls. D.I. 557 at 7-8 (and Exs. 4 & 7 attached to same). To the extent expert testimony is required to explain the relevance of the test balls, Dr. Statz provides a detailed explanation of the relevance of the test balls in his expert report. D.I. 557 at 12 (and Ex. 8 attached to same). Accordingly, the test balls are admissible, and demonstrate conclusively that the claims are anticipated. Thus, summary judgment is warranted.

### 3. Callaway Fails to Present Any Evidence to Create a Genuine Issue of Material Fact

To defeat summary judgment, the non-movant must oppose the motion by presenting facts that show there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256 (1986). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *See also Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed. Cir. 2003) (non-moving party "has shown no more than a theoretical possibility or 'metaphysical doubt,' which is insufficient to create a genuine issue of material fact."). This general rule applies with equal force when a party opposes summary judgment of invalidity. *See, e.g., American Home Prods. Corp. v. California Bio. Vaccine Labs.*, No. CV-90-2052, 1991 WL 352417, at *4 (C.D. Cal. Nov. 25, 1991) (granting summary judgment of invalidity, holding "[i]t is not sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence").

Callaway's defense to Acushnet's test ball evidence is to criticize the evidence, identifying perceived flaws in the evidence. However, Callaway presents no evidence that the alleged flaws in the test balls would have any meaningful effect on the outer cover Shore D hardness. Callaway does not provide testing of its own to counter Acushnet's testing, despite having Acushnet's testing data for almost three years. Callaway does not even offer any naked expert testimony that the Shore D hardness of the ball disclosed by Nesbitt might be over 64. *See* Ex. 27, Risen Expert Report at 9. Notably, Callaway does not even allege through attorney argument in its opposition that the choices Acushnet made in making the ball had any effect on the outer cover Shore D hardness. D.I. 560 at 17-20. Instead, the only evidence Callaway cites related to the Shore D hardness limitations are general statements that the on-the-ball hardness of a material can be affected by what is underneath it. D.I. 560 at 18-20. That unremarkable fact is not sufficient to sustain a jury finding against Acushnet on anticipation.

19

As set forth in Acushnet's opening brief, while in theory the on-the-ball hardness may be affected by the layers underneath it, Acushnet has demonstrated that when covers are made as thick as disclosed in Nesbitt, the effect of the core is negligible, if there is any effect at all. D.I. 534 at 14-16. Thus, Acushnet's choice of core had no bearing whatsoever on the outer cover hardness of the resulting ball. In any event, there should be no question that the core Acushnet chose to represent the Nesbitt ball is appropriate, since it is the same core the inventor of the patents-in-suit attributed to Nesbitt in 1994. *Id.* at 15. Thus, Callaway's hand-waving argument that the inner layers of a ball generally affect the hardness of the outer layer of the ball does no more than raise a "theoretical possibility" or "metaphysical doubt" that the ball disclosed by Nesbitt/Molitor could fall outside the asserted claims. Callaway's argument is insufficient to create a genuine issue of fact to defeat summary judgment. *Matsushita*, 475 U.S. at 586.

## III.   CONCLUSION

For all of the foregoing reasons and those stated in Acushnet's opening brief, Acushnet requests that the Court grant summary judgment that the asserted claims of the patents-in-suit are anticipated by Nesbitt, incorporating by reference Molitor '637.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: February 2, 2010
Public Version Dated: February 9, 2010
952955/30030

By:   */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on February 9, 2010, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on February 9, 2010, the attached document was Electronically

Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

Robert A. Denning
David S. Shuman
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shuman@fr.com
shear@fr.com

Jonathan J. Lamberson
Christina D. Jordan
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
lamberson@fr.com
cjordan@fr.com
compton@fr.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030