IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | (Dated: February 22, 2010) |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## LETTER TO THE HONORABLE SUE L. ROBINSON FROM DAVID E. MOORE DATED FEBRUARY 15, 2010

cc: Clerk of the Court (via hand delivery)
Counsel of Record (via electronic filing)

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

953362 / 30030



**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

David E. Moore
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

February 15, 2010
Public Version Dated: February 22, 2010

**VIA ELECTRONIC FILING**

The Honorable Sue L. Robinson
United States District Court
844 North King Street, Lock Box 31
Wilmington, DE 19801

    Re:  *Daubert* Motion (D.I. 284)
           *Callaway Golf Company v. Acushnet Company*; C.A. No. 06-91-SLR

Dear Judge Robinson:

    Following the direction from your Case Manager, Acushnet submits this letter to update its position, and to narrow the issues for decision, concerning its pending *Daubert* motion (D.I. 284) directed to Callaway's damages expert, Mr. Napper.

    Acushnet's originally filed *Daubert* motion raised a number of issues regarding Mr. Napper's calculation of damages under both a lost profit theory and a reasonable royalty model. In order to narrow the issues before the Court, Acushnet wishes to focus the Court on just one aspect of its motion that the Court should resolve—namely, the flawed methodology used by Mr. Napper to calculate lost profits beginning in 2003. This error in methodology warrants exclusion of his opinion on lost profits for the period 2003-08 as unreliable under Fed. R. Evid. 702. *See Daubert v. Merrill Dow Pham.*, 509 US 579 (1993); *Calhoun v. Yamaha Motor Corp.*, 350 F3d 316, 324 (3d Cir. 2003).

    Salient Facts.

    The alleged infringement in this case began in April 2001 when the '293 patent issued. The Pro V1 was already on the market when the patent issued.

    In his damages report, Mr. Napper calculates a reasonable royalty on Acushnet's sales beginning in April 2001. [redacted]

---

1 [redacted]

The Honorable Sue L. Robinson
February 15, 2010; Public Version Dated: February 22, 2010
Page 2

Mr. Napper also attempts to calculate Callaway's lost profits. Callaway acquired the patents in suit from the Spalding bankruptcy estate in September 2003. Starting at that point, Mr. Napper calculates lost profits based on Callaway's market share in a "premium" market that Mr. Napper constructs. This "market share" approach to lost profits follows from, but misapplies, CAFC precedents such as *State Industries v. Mor-Flo Industries*, 883 F.2d 1573 (Fed. Cir. 1989).



Mr. Napper's Lost Profits Methodology is Fundamentally Flawed and Unreliable.

The methodology applied to assess whether lost profits are available is well established. The plaintiff must first reconstruct a "but-for" world, where Acushnet's accused Pro V1 product is absent from the market as an infringing product. *Grain Processing Corp. v. American Maize Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed, absent the infringing product."); *see also* cases cited in Acushnet's Daubert Mem. (D.I. 285) at 16-17. Next, the plaintiff must establish what the patentee's profits would have been "with the infringement factored out of the picture." *Grain Processing*, 185 F.3d at 1350-51; *Aro Mfg. Co. v. Convertible Red Top Replacement Co.*, 377 US 476, 507 (1964).

Importantly, this reconstruction of the "but for" market must not be unduly speculative. Rather, the reconstruction must be based on "sound economic proof." *Grain Processing*, 185 F.3d at 1350. If a proffered lost profits approach is unduly speculative, the Court should exclude it. *See* cases cited in Acushnet Daubert Mem. at 10-11.



The Honorable Sue L. Robinson
February 15, 2010; Public Version Dated: February 22, 2010
Page 3

[redacted]

In April 2001, Acushnet was the industry leader with over 50% of the market. At that time, Acushnet offered both wound center golf balls (such as the market dominant *Titleist Professional*) as well as solid construction products. In addition, the market was a dynamic and changing one at this time, as the Court recalls from the testimony at trial. Solid construction balls were a growing segment of the market, but were not as broadly accepted as they would become by 2003, after the success of the Pro V1. There were many alternative ball constructions being offered by Acushnet and competitors in April 2001.[3]

[redacted]

Alternatively, Acushnet could have offered some other solid construction product to the market, continued to sell its wound *Professional* ball to the market, taken a combination of such steps, or done something else. Acushnet, the market leader in 2001, would not have walked away from the market if it could not sell the Pro V1. *See Grain Processing* and cases cited in Acushnet Mem. at 17. Instead, Acushnet would have offered some combination of wound and solid balls to the market.[4]

Undoubtedly, the competitors in the market would have reacted to these different product offerings. Acushnet's and Callaway's market shares in September 2003 might have been larger, or smaller, depending on the choices Acushnet and others in the market made and the way in which the market reacted. As a result, market conditions in 2003 would have been vastly different from what they actually were in 2003, after the market had been shaped by two years of Acushnet's sales of the very successful Pro V1 product line. Indeed, the only way that the

[redacted]

---

[3] By contrast, in September 2003 solid-construction balls, predominately the accused Pro V1, had become much more prevalent.

[redacted]

The Honorable Sue L. Robinson
February 15, 2010; Public Version Dated: February 22, 2010
Page 4

market in the "but for" world would look the same as the actual market conditions in 2003, would have been had Acushnet taken a license to sell the Pro V1. In this case, however, the existence of the license negates any claim for lost profits.

In all likelihood, the market conditions in 2003 had Acushnet not offered the Pro V1 during 2001-03 are simply unknowable. They are certainly not predictable with the certainty required to calculate lost profits. In any event, Mr. Napper does not even attempt to make this market reconstruction as required by the case law. Thus, Mr. Napper's lost profits calculation is fundamentally flawed and unreliable, and it should be excluded.

Other Flaws In Mr. Napper's Lost Profits Analysis.

There are other flaws in Mr. Napper's lost profits analysis.  Lost profits are not available for entities affiliated with the patent-owner, and instead are available only to the patent owner itself. *Poly-America, L.P. v. G.S.E. Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).

These issues are fully addressed in the briefs. In addition to the fundamental flaw discussed above, these additional flaws in Mr. Napper's market definition provide an additional reason to exclude his lost profits analysis.

Mr. Napper's Reasonable Royalty Analysis.

If Mr. Napper's lost profits analysis were excluded, Acushnet would withdraw its *Daubert* challenge to the methodology in Mr. Napper's reasonable royalty opinion. While Acushnet contends that there are many flaws in this aspect of Mr. Napper's opinion, these shortcomings can be addressed through vigorous cross-examination, and the Court would not be required to rule on this aspect of Acushnet's motion.

In addition, Mr. Halkowski calls the Court's attention to the CAFC decision in *i4i Ltd. Partnership v. Microsoft Corp.*, which he characterizes as rejecting an attempt to use a *Daubert* challenge to exclude patent damages expert testimony.[5] To clarify the record, we point out to the Court that *i4i* involved a *Daubert* challenge to a damages expert's calculation of a reasonable royalty. The Federal Circuit found that when an expert follows the proper reasonable royalty

---

[5] __ F.3d __, 2009 WL 4911950 (Fed. Cir. Dec. 14, 2009), Slip Op. available at http://www.cafc.uscourts.gov/opinions/09-1504.pdf.

methodology, the fact that other data could have been consulted or weighed differently by the expert was not a basis for a *Daubert* challenge. *See* Slip Op. at 24-25. While *i4i* may be relevant to the reasonable royalty portion of Mr. Napper's report, the Court need not reach that issue if the lost profits portion of Mr. Napper's report and testimony are excluded.

We appreciate this opportunity to supplement Acushnet's position on this important matter.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM/nmt/954419/30030

cc:  Clerk of the Court (via hand delivery)
     Counsel of Record (via electronic filing)