IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>            Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>            Defendant. | C. A. No. 06-91 (SLR) |

**JOINT  PROPOSED
FINAL JURY  INSTRUCTIONS**

Thomas L. Halkowski (#4099)
222 Delaware Avenue
P.O. Box 1114
Wilmington, DE 19899-1114
Tel:  (302) 652-5070
Fax:  (302) 652-0607

Frank E. Scherkenbach
225 Franklin Street
Boston, MA 02110-2804
Tel:  (617) 542-5070
Fax:  (617) 542-8906

Roger A. Denning
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070
Fax:  (858) 678-5099

*Attorneys for Plaintiffs*
CALLAWAY GOLF COMPANY

Richard L. Horwitz (#2246)
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899

Henry C. Bunsow
Joseph P. Lavelle
Brian A. Rosenthal
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004

*Attorneys for Defendants*
ACUSHNET COMPANY

DATED: February 26, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>                      Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>                      Defendant. | C. A. No. 06-91 (SLR) |

**CHARGE TO THE JURY**

In filing these proposed charges to the jury, the parties each reserve the right to request the Court to modify these proposed instructions, including to reflect subsequent developments in the case.  The parties each also reserve the right to provide further justification for its instructions and to make detailed objections to the other party's proposed instructions.  The parties proposed instructions are as follows:

## 1.  GENERAL INSTRUCTIONS

## 1.1     [JOINT PROPOSED INSTRUCTION]  INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  I will explain the positions of the parties and the law you will apply in this case.  Lastly, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.1 (March 1993); Docket No. 394 (Final Jury Instructions) p.1.*

**1.2     [JOINT PROPOSED INSTRUCTION] JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof,  which party should prevail on each of the issues presented.  I will instruct you about the burdens of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.   All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.2 (March 1993); Docket No. 394 (Final Jury Instructions) p.2.*

**1.3      BURDENS OF PROOF [ACUSHNET PROPOSED INSTRUCTION][1]**

This is a civil case in which plaintiff Callaway Golf Company ("Callaway") charged

defendant Acushnet Company ("Acushnet") with patent infringement.  That issue has been

resolved by agreement of the parties.

In this trial, Acushnet has urged that the asserted claims of the patents-in-suit are invalid.

Acushnet, as the defendant, has the burden of proving that each one of the asserted claims of the

patents-in-suit is invalid by clear and convincing evidence.   Clear and convincing evidence is

evidence that produces an abiding conviction that the truth of a fact is highly probable.

Callaway has the burden of proving its claim of damages by what is called a

preponderance of the evidence.  That means that Callaway has to produce evidence which, when

considered in light of all of the facts, leads you to believe that what it alleges is more likely true

than not.

Those of you who are familiar with criminal cases will have heard the term "proof

beyond a reasonable doubt."  That burden does not apply in a civil case and you should,

therefore, put it out of your mind in considering whether or not Callaway or Acushnet has met its

burden of proof.


Acushnet notes that this instruction is based on Patent Case Management Judicial Guide 8-15
(2009) ("Where infringement is not disputed, the defendant should usually proceed first on its
invalidity defenses."); Uniform Jury Instructions for Patent Cases in the United States District
Court for the District of Delaware 1.3 (March 1993) (modified for this case); Docket No. 394
(Final Jury Instructions) p.3; Patent Case Management Judicial Guide 7-7, 7-8 (2009) ("It is now
generally agreed that juries should be instructed as to the higher burden of proof required to
prove invalidity, but should not be told that there is a presumption of validity, which would be
redundant and likely confusing.  As the Federal Circuit Bar Association Model Patent Jury

---

[1] Callaway Golf's proposed instruction on the burden of proof is provided as Instruction 2.4,
below.

Instructions explain, 'instructing the jury on the presumption of validity in addition to informing it of the clear and convincing burden of proof may cause jury confusion as to its role in deciding invalidity.'  The Northern District of California Model Patent Jury Instructions and American Intellectual Property Law Association's Model Patent Jury Instructions also both omit any reference to the presumption of validity.") (internal citations omitted).  *See also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (finding district court did not err in declining to instruct jury on the presumption of validity because the jury had applied the clear and convincing evidence standard); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (the presumption of validity "does not constitute 'evidence' to be weighed against a challenger's evidence.").

Callaway Golf responds that, regarding the order of proof, damages should go first because the plaintiff patentee traditionally goes first at trial and describes the patented inventions and the technology at issue.  Nothing in the parties' infringement stipulation changes that fact.  Indeed, both parties were well aware that damages would be tried at a later point, and that Callaway Golf would go first during that presentation.  The stipulation simply states that "the only issue that remains for trial *in this portion of the trial* is whether the patents are valid."  D.I. 367 (emphasis added).  Since Acushnet bore the burden of proof on validity, the only issue to be presented at the first trial, Acushnet of course presented its witnesses first.  Because the upcoming trial includes damages, however, the traditional approach of having the plaintiff patentee open the trial is warranted.  Finally, while the Patent Case Management Judicial Guide does not appear to address the issue of damages, Callaway Golf's approach is nonetheless in line with that Guide states, as Acushnet will present first on invalidity.  In any event, consistent with how patent cases typically proceed in this District, Callaway Golf respectfully submits that the patentee should begin the upcoming trial with its proof on issues where it bears the burden.

Regarding the presumption of validity, this instruction was given in the first trial (*see* D.I. 394 at 3), and no concern was identified by the Federal Circuit when this matter was addressed on appeal – in fact, Acushnet itself actually proposed instructing the jury on the presumption during the first trial, (*see* D.I. 389 at p.26), waiving this objection.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008); *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-84 (Fed. Cir. 1999).  Moreover, the presumption of validity is statutory, *see* 35 U.S.C. § 282, and merely instructing the jury on the burden of proof is insufficient because it does not instruct the jury why that burden is required – to overcome the statutory presumption that the Patent Office did its job.  *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *Brooktree Corp. v. AMD*, 977 F.2d 1555, 1574 (Fed. Cir. 1992).  This Court routinely instructs juries on the presumption of validity, (*see* D. Del. Model Patent Jury Instruction 1.3), and no Federal Circuit opinion has ever shed any doubt on that practice.

**1.4      [JOINT PROPOSED INSTRUCTION] EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments and questions are evidence.  The notes taken by any juror are not evidence.

Certain charts, graphics and props have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts, graphics and props are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.4 (March 1993); Docket No. 394 (Final Jury Instructions) pp. 4-5.*

**1.5**      **[JOINT PROPOSED INSTRUCTION] DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.6 (March 1993); Docket No. 394 (Final Jury Instructions) p.6.*

**1.6      [JOINT PROPOSED INSTRUCTION] CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.


*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.5 (March 1993); Docket No. 394 (Final Jury Instructions) p.7.*

**1.7      [JOINT PROPOSED INSTRUCTION] USE OF NOTES**

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.   They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

*Source: Docket No. 394 (Final Jury Instructions) p.8.*

**1.8**     **[JOINT PROPOSED INSTRUCTION] CREDIBILITY OF WITNESSES**

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an

12

innocent lapse of memory or an intentional falsehood, and that may depend upon whether it

concerns an important fact or an unimportant detail.


*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.7 (March 1993); Docket No. 394 (Final Jury Instructions) pp. 9-10.*

**1.9    NUMBER OF WITNESSES [CALLAWAY PROPOSED INSTRUCTION]²**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 1.8 (1993); Docket No. 394 (Final Jury Instructions) p. 11.*

---

² Acushnet objects to this proposed instruction.  The Court's general instructions regarding the weight to be given to evidence, in Acushnet's opinion, adequately informs the jury that it should consider the persuasiveness, not the mere amount, of testimony.

Callaway Golf responds that this instruction was given during the first trial (*see* D.I. 394 at p.11), and respectfully requests that it be given again so that there is no risk that the jury mistakenly believes that the number of witnesses who testify is more important than what those witnesses actually say.  This is a model instruction in this District, and there is no possible prejudice including it.

**1.10    [JOINT PROPOSED INSTRUCTION] EXPERT WITNESSES**

When knowledge of technical or financial subject matter may be helpful to the jury, a person who has special training or experience in that technical or financial field – he is called an expert witness – is permitted to state his opinion on those technical or financial matters. However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, of if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.9 (March 1993); Docket No. 394 (Final Jury Instructions) p.12.*

**1.11    [JOINT PROPOSED INSTRUCTION] DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you through depositions that were either read in court or played on videotape.  This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

*Source: Docket No. 394 (Final Jury Instructions) p.13.*

**1.12    [JOINT PROPOSED INSTRUCTION] STIPULATIONS**

During the course of the trial, you heard that certain stipulations of facts had been agreed to by the parties.  A stipulation of fact is an agreement between the parties that a certain fact is true. You must accept such agreed facts as true.  In this case the parties agreed to stipulate to the following facts:

[READ STIPULATIONS]

## THE  PARTIES  AND  THEIR  CONTENTIONS

**2.1     [JOINT PROPOSED INSTRUCTION] THE PARTIES**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is Callaway Golf Company, or "Callaway."

Defendant is Acushnet Company, or "Acushnet."

Callaway Golf is the owner of U.S. Patent No. 6,210,293, which I will refer to as "the '293 patent"; U.S. Patent 6,503,156, which I will refer to as "the '156 patent"; U.S. Patent 6,506,130, which I will refer to as "the '130 patent"; and U.S. Patent 6,595,873, which I will refer to as "the '873 patent."  I may refer to these patents collectively as "the Callaway patents."

Acushnet has made, marketed, and sold in the United States the "Pro V1" line of golf balls, including the Pro V1, Pro V1x and Pro V1*[Star], under the Titleist brand.  I may refer to these balls collectively as "the Pro V1 balls."

*Source: Docket No. 394 (Final Jury Instructions) p.14.*

## 2.2   THE PARTIES' STIPULATION ON INFRINGEMENT [CALLAWAY PROPOSED INSTRUCTION][3]

The parties have stipulated that Acushnet infringes:

Claims 1, 4, and 5 of the '293 patent;

Claims 1, 2 and 3 of the '156 patent;

Claim 5 of the '130 patent; and

Claims 1 and 3 of the '873 patent

I will refer to these as the asserted claims of the patents-in-suit.  In particular, the parties have stipulated that Acushnet infringes the patents-in-suit by making and selling the following golf balls under the Titleist brand: the Pro V1, the Pro V1x, and the Pro V1*[star].  Therefore, you will not be asked to determine whether these products infringe the asserted claims.  No other claims are at issue in this suit.

*Source: Charge to the Jury, Intuitive Surgical & IBM v. Computer Motion, Inc., No. 01-203-SLR (D.Del. August 19, 2002).*

---

[3] Acushnet objects to this proposed instruction.  The Court declined to use Callaway's proposed instruction in the first trial.  *Docket No. 394 (Final Jury Instructions).*  The jury need only be told that Acushnet stipulated to infringement and this is not an issue further to be decided. Acushnet's proposed instructions 1.3 and 2.4.1 adequately address this issue in the same manner that the Court did in the first trial.

Callaway Golf responds that this instruction is taken directly from the stipulation between the parties on infringement and is particularly necessary with regard to the damages issues to be tried in this matter.  Whether it is included here or as part of a separate instruction, the jury must be told what products practice the patents so that they can properly attribute any commercial success of those products to the patented inventions, and so that they can correctly value those inventions for damages purposes.

**2.3     ACUSHNET  PATENTS  [CALLAWAY PROPOSED INSTRUCTION][4]**

Whether or not Acushnet patents exist that allegedly may cover the accused Pro V1 products is not relevant to the fact that Acushnet infringes all of the asserted claims of the asserted patents in suit.

Source: *Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 1.9 (March 1993) (modified for this case)*

---

[4] Acushnet objects to this proposed instruction.  Given that infringement has been stipulated, this instruction is irrelevant, prejudicial and highly confusing.  On the other hand, Acushnet's patents that cover the Pro V1 *are* relevant to the nexus requirement for secondary considerations (4.11). *McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 254-55 (S.D.N.Y. 2007).  Callaway's true purpose in this instruction is to attempt to skirt the nexus requirement; it seeks to present Acushnet's other patents on the Pro V1 as irrelevant in order to prevent the jury from considering them as an alternative source of commercial success.  The Court declined to use Callaway's proposed instruction in the first trial.  *Docket No. 394 (Final Jury Instructions).*

Callaway Golf responds that, even with the stipulation on infringement, it is possible that jurors may be confused by the fact that Acushnet has patents on its products.  Jurors may mistakenly believe that because the Pro V1 is covered by other patents, it cannot infringe, or that reduced damages are somehow owed for that infringement, both of which are incorrect.  This is a standard model instruction in this District, and it merely states that these patents are irrelevant to the fact that Acushnet infringes.  It does not state that the patents are irrelevant for other purposes, such as secondary considerations.

20

**2.4     THE PARTIES' CONTENTIONS AND BURDENS OF PROOF  [CALLAWAY**

**PROPOSED INSTRUCTION][5]**

This is a civil case in which Callaway is asking for damages for Acushnet's infringement.

Callaway has the burden of establishing its entitlement to damages by what is called a

preponderance of the evidence. That means Callaway has to produce evidence which, when

considered in light of all of the facts, leads you to believe that what Callaway claims is more

likely true than not. To put it differently, if you were to put Callaway and Acushnet's evidence

on the opposite sides of a scale, the evidence supporting Callaway's claims would have to make

the scales tip somewhat on its side.

In this case, Acushnet is urging that Callaway's patent is invalid. A patent,

however, is presumed to be valid. Accordingly, Acushnet has the burden of proving that

the patent-in-suit is invalid by clear and convincing evidence. Clear and convincing

evidence is evidence that produces an abiding conviction that the truth of a factual

contention is highly probable. Proof by clear and convincing evidence is thus a higher

burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof

beyond a reasonable doubt." That burden does not apply in a civil case and you should,

therefore, put it out of your mind in considering whether or not the plaintiff or defendant

has met its burden of proof.


Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 1.3 (1993) (modified for this case)*

---

[5] Acushnet's proposed instruction on the burden of proof is set forth as Instruction 1.3.

### 2.4.1   ACUSHNET'S CONTENTIONS [ACUSHNET PROPOSED INSTRUCTION]

Acushnet contends that the patents are invalid, both as obvious and as anticipated by prior art.   Acushnet also contends that the patent claims are invalid for failing to enable one of skill in the art to practice the claims of the patents-in-suit.[6]

The "asserted claims" in this case include the following:

Claims 1, 4, and 5 of the '293 patent;

Claims 1, 2, and 3 of the '156 patent;

Claim 5 of the '130 patent; and

Claims 1 and 3 of the '873 patent.

The parties have stipulated that Acushnet infringes the asserted claims.

*Based on Docket No. 394 (Final Jury Instructions) p.15.*

---

[6] Callaway Golf objects to Acushnet's enablement defense, for the reasons stated in its motion in limine .

**2.4.2   CALLAWAY CONTENTIONS [ACUSHNET PROPOSED INSTRUCTION]**

Callaway seeks claimed damages for Acushnet's alleged infringement in the forms of both a reasonable royalty and lost profits.  I will instruct you as to damages toward the end of my instructions.

### 2.4.3   SUMMARY OF ISSUES TO BE DECIDED [ACUSHNET PROPOSED INSTRUCTION]

In this case, you must decide, as to each of the asserted claims, whether Acushnet has proven, by clear and convincing evidence, that the claim is invalid by reason of obviousness in light of the prior art and the ordinary skill of one in the art in 1995.

You must also decide, as to each of the asserted claims, whether Acushnet has proven, by clear and convincing evidence, that the claim is invalid by reason of anticipation by U.S. Patent No. 4,431,193 to Nesbitt, incorporating by reference U.S. Patent No. 4,274,637 to Molitor.

You must also decide, as to each of the asserted claims, whether Acushnet has proven, by clear and convincing evidence, that the claim is invalid by reason of a failure of the patent to meet the requirement of enablement.[7]

If you find any of the asserted claims are not invalid, you are also asked to decide, based on a preponderance of evidence standard, the amount of damages, if any, that Callaway should be awarded for infringement.

*Based on Docket No. 394 (Final Jury Instructions) p.16 (modified to reflect issues presented in the retrial).*

---

[7] Callaway Golf objects to Acushnet's enablement defense, for the reasons stated in its motion in limine.

## THE  PATENT  CLAIMS

**3.1     PATENT CLAIMS GENERALLY [CALLAWAY GOLF PROPOSED**

**INSTRUCTION]**

Before you can decide whether Callaway's patent claims are invalid, you will have to

understand the patent "claims," which are the numbered paragraphs at the end of the patent.  The

purpose of the claims is to provide notice to the public of what a patent covers and does not

cover.  The claims are like "word pictures" intended to define, in words, the outer boundaries of

the invention described and illustrated in the patent.  The claims define the patent owner's claim

to property rights.  Each claim is a separate statement of the patented invention and, therefore,

each of the asserted claims must be considered individually.

*Based on Del. Model Instructions 1993 at 3.1*

**3.1      PATENT CLAIMS GENERALLY [ACUSHNET PROPOSED INSTRUCTION]**

Before you can decide whether or not any of the asserted claims are invalid as obvious or anticipated over the prior art, you will have to understand what the patent "claims" are.  The patent claims are the numbered paragraphs at the end of a patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover.  The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

The claims define the patent owner's property rights and, therefore, how the invention is different from the prior art.  Each claim is a separate statement of the patented invention and each of the asserted claims must be considered individually.

*Based on Del. Model Instructions 1993 at 3.1; Docket No. 394 (Final Jury Instructions) p.17.*

## 3.2    DEPENDENT AND INDEPENDENT CLAIMS [CALLAWAY GOLF PROPOSED INSTRUCTION]

There are two types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 4 of the '293 patent is an independent claim.  You know this because it mentions no other claims.  The words of claim 4 are read by themselves in order to determine what claim 4 covers.

Claim 5 of the '293 patent, on the other hand, is a dependent claim because it refers to independent claim 4.  Accordingly, the words of claims 4 and 5 must be read together in order to determine what the dependent claim, claim 5, covers.

Because independent claims are always broader in scope than their corresponding dependent claims, a narrower dependent claim cannot be invalid if the broader independent claim it stems from is valid.  Put another way, if you find that an independent claim is valid, you cannot find that any of its dependent claims are invalid.


*Sources: Del. Model Instructions 1993 at 3.3; Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1344 (Fed. Cir. 2009).*

## 3.2   DEPENDENT AND INDEPENDENT CLAIMS  [ACUSHNET PROPOSED INSTRUCTION]

There are two types of claims in the patents.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.  In this case, for example, claim 2 of Callaway's '156 patent is a dependent claim, and it depends on claim 1.  You will see it says "The golf ball of claim 1, wherein said "outer cover layer thickness of from about 0.01 to about 0.05 inches."

If you find that a dependent claim is invalid as obvious or anticipated, then you must find that the independent claim from which it depends is also invalid.  Using the claims from the previous example, if you were to find that dependent claim 2 of the '156 patent is invalid, then you must find that claim 1, the independent claim, is invalid.

*Sources: Del. Model Instructions 1993 at 3.3; Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1344 (Fed. Cir. 2009).*

### 3.3    [JOINT PROPOSED INSTRUCTION] CLAIMS CONSTRUCTION

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use the same meaning of each claim for your decisions on validity.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

1.   The terms inner or outer "cover layer having a Shore D hardness" require that the Shore D hardness be measured "on the ball."

2.    The term "core" means "the singular component of the golf ball that occupies the geometric center of the sphere of the golf ball."

Sources:  *Uniform Jury Instr. For Patent Cases in the D. Del. 3.2 (1993); Docket No. 394 (Final Jury Instructions) p.18.*

29

## VALIDITY

### 4.1    PRESUMPTION OF VALIDITY [CALLAWAY PROPOSED INSTRUCTION][8]

Acushnet contends that all of Callaway Golf's asserted patent claims are invalid.

The granting of a patent by the Patent Office carries with it the presumption that the

patent is valid.  From issuance of the patent, it is presumed that its subject matter is new, useful,

adequately described, and constitutes an advance which was not, at the time the invention was

---

[8] Acushnet objects to this proposed instruction.  The jury should be instructed as to the burden of proof required to prove invalidity, but should not be told that there is a presumption of validity, as this is redundant and confusing.  *See* Patent Case Management Judicial Guide 7-7, 7-8 (2009) ("It is now generally agreed that juries should be instructed as to the higher burden of proof required to prove invalidity, but should not be told that there is a presumption of validity, which would be redundant and likely confusing.  As the Federal Circuit Bar Association Model Patent Jury Instructions explain, 'instructing the jury on the presumption of validity in addition to informing it of the clear and convincing burden of proof may cause jury confusion as to its role in deciding invalidity.'  The Northern District of California Model Patent Jury Instructions and American Intellectual Property Law Association's Model Patent Jury Instructions also both omit any reference to the presumption of validity.") (internal citations omitted).  *See also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (finding district court did not err in declining to instruct jury on the presumption of validity because the jury had applied the clear and convincing evidence standard); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (the presumption of validity "does not constitute 'evidence' to be weighed against a challenger's evidence.").  Callaway refers to the presumption of validity six times in this instruction alone.  Callaway also proposed to reference the presumption in instruction 2.4.

Callaway Golf responds that this instruction was given in the first trial (*see* D.I. 394 at 3), and no concern was identified by the Federal Circuit when this matter was addressed on appeal – in fact, Acushnet itself actually proposed instructing the jury on the presumption, (*see* D.I. 389 at p.26), waiving this objection.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008); *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-84 (Fed. Cir. 1999).  Moreover, the presumption of validity is statutory, *see* 35 U.S.C. § 282, and merely instructing the jury on the burden of proof is insufficient because it does not instruct the jury why that burden is required – to overcome the statutory presumption that the Patent Office did its job.  *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *Brooktree Corp. v. AMD*, 977 F.2d 1555, 1574 (Fed. Cir. 1992).  This Court routinely instructs juries on the presumption of validity, (*see* D. Del. Model Patent Jury Instruction 1.3), and no Federal Circuit opinion has ever shed any doubt on that practice.

made, obvious to one of ordinary skill in the art.

The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.  Nonetheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has said or done, consistent with these instructions on the law.

This presumption of validity puts the burden of proving invalidity on Acushnet.  While this presumption can be rebutted, the burden is on Acushnet to do so.  This burden requires Acushnet to prove, by clear and convincing evidence, that in this case each of the asserted claims is invalid.

Each of the asserted claims is presumed to be valid independently of the validity of each other claim.  I will now explain to you Acushnet's invalidity contention in detail.  In making your determination as to invalidity, you should consider each claim separately.

Source:  *Charge to the Jury, Intuitive Surgical & IBM v. Computer Motion, Inc.*, No. 01-203-SLR (D.Del. August 19, 2002); *Charge to the Jury, Padcom, Inc. v. NetMotion Wireless, Inc., Civil Action No. 03-983-SLR (D. Del. March 24, 2006); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990).*

**4.1     VALIDITY IN GENERAL [ACUSHNET PROPOSED INSTRUCTION]**

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non obvious.  A patent cannot take away from people their right to use what was already known or what would have been obvious to those of skill in the art at the time when the invention was made.  The terms "new" and "non obvious" have special meanings under patent laws.  I will explain these terms to you as we discuss Acushnet's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a written description of the invention sufficient for one of skill in the art to make and use it.[9]

Acushnet has challenged the validity of the patents-in-suit on a number of grounds.  I will now explain to you each of the asserted grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.  If a claim is invalid on any one of the asserted grounds, then it is invalid.

*Based on CAFC Model Patent Jury Instruction No. 10.1; KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007).*

---

[9] Callaway Golf objects to Acushnet's enablement defense, for the reasons stated in its motion in limine.

**4.2     ANTICIPATION [CALLAWAY PROPOSED INSTRUCTION]**

Acushnet may establish that a patent claim is invalid by showing, by clear and
convincing evidence, that the claimed invention is not new.  For the claim to be invalid because
it is not new, Acushnet must show that all of the requirements of that claim are present in a
single previous device or method, or described in a single previous printed publication or patent.
We call these things "prior art."  The description in a reference does not have to be in the same
words as the claim, but all the requirements of the claim must be there as arranged in the claim,
either stated expressly or necessarily implied or inherent in the level of ordinary skill in the art in
the technology of the invention at the time of the invention, so that someone of ordinary skill in
the field of technology of the patent looking at that one reference would be able to make and use
the claimed invention.

Because the Nesbitt patent incorporates by reference all the potential foamable cover
layer materials described in the Molitor '637 patent, you should consider the Nesbitt patent
together with the Molitor '637 patent's discussion of all of the foamable compounds as one
reference for anticipation purposes.

The way in which the elements are arranged or combined in the claim must be disclosed,
either expressly or inherently, in an anticipatory reference.  Anticipation requires the presence in
a single prior art disclosure of all elements of a claimed invention arranged as in the claim.  The
requirement that the prior art elements themselves be arranged as in the claim means that claims
cannot be treated as mere catalogs of separate parts, in disregard of the part-to-part relationships
set forth in the claims and that give the claims their meaning.  Unless a reference discloses within
the four corners of the document not only all of the limitations claimed but also all of the
limitations arranged or combined in the same way as recited in the claim, it cannot be said to

prove prior invention of the thing claimed and, thus, cannot anticipate.

The concept of "inherent disclosure" does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim.  Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation.  Inherency, however, may not be established by probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient – the missing descriptive material must be necessarily present, not merely probably or possibly present, in the prior art.  For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference.


*Source: Fed. Circuit Bar Assoc. Model Patent Jury Instruction 4.3a1 (January 2008);*
*Therasense, Inc. v. Becton, Dickenson & Co., ___ F.3d ___ (Fed. Cir. January 25, 2010)*
*(available at* http://www.cafc.uscourts.gov/opinions/09-1008.pdf*); 576 F.3d at 1347.*

**4.2      ANTICIPATION [ACUSHNET PROPOSED INSTRUCTION]**

[Acushnet believes that the anticipation instructions should follow the obviousness instructions.  Callaway Golf responds that the Delaware model instructions provide for anticipation before obviousness, which is a more natural order for the presentation of these defenses.]

Acushnet contends that each of the asserted claims of the patents-in-suit is anticipated by Nesbitt, U.S. Patent No. 4,431,193, incorporating by reference U.S. Patent No. 4,274,637 to Molitor.

A patent is invalid if someone else has already made or described the same invention.  In other words, for the patent claim to be valid, the invention it claims must be new.  If an invention is not new, we say that the claim was "anticipated" by the prior art.  A patent claim that is "anticipated" by the prior art is not entitled to patent protection, and is invalid.

In order for a patent claim to be anticipated, each term or "limitation" of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  However, material not explicitly contained in a single prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the prior art document.  In other words, when a document is "incorporated by reference" into a host document, such as a patent, the contents of the referenced document becomes effectively part of the host document as if it were explicitly contained in the host document.  As a matter of law, I am instructing you that U.S. Patent No. 4,431,193 to Nesbitt incorporates the entire list of foamable compounds disclosed by U.S. Patent No. 4,274,637 to Molitor as appropriate materials for use in golf ball cover layers, including polyurethane and ionomer resin blends.  Thus, you are to consider the list

of foamable compositions disclosed by the Molitor '637 patent, including polyurethane and ionomer resin blends, as part of the disclosure of the Nesbitt patent when you decide whether Acushnet has proved that the asserted claims of the Callaway patents are anticipated.

Within a single prior art reference, there is no requirement that each limitation of the patent claim be found in a single example of the prior art reference. Also, the fact that a limitation of the claim is set forth in a prior art reference in a list of other options, without any special emphasis, is irrelevant to an anticipation analysis. A reference anticipates a claim if it discloses the claimed invention such that a skilled artisan could take its teachings in combination with his own knowledge of the particular invention and be in possession of the invention.

Also, a prior art reference may anticipate a patent claim even without disclosing a limitation of the claim if the missing limitation is either incorporated by reference into the single prior art reference or "inherent" in the prior art reference. Something is "inherent" in an item of prior art if it is the natural result that flows from the disclosure in the prior art. Thus, in deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, including what I have instructed you is incorporated by reference, and also that which is inherently present. It does not matter whether a person of ordinary skill in the art would have recognized the inherent disclosure, or the newly discovered results, at the time the prior art was created.

You have heard evidence regarding secondary considerations of non-obviousness such as commercial success, long-felt need, failure of others to make the invention, copying, unexpected results, and praise. This evidence is relevant only to Acushnet's obviousness defense, and is not relevant to Acushnet's anticipation defense. Thus, you may not consider evidence of commercial

success, long-felt need, unexpected results, or failure of others when deciding whether Acushnet

has proven that the claims of the Callaway patents are anticipated.

If you find that Acushnet has proved by clear and convincing evidence that any of the

claims asserted against it are anticipated by prior art, then you must find that those claims are

invalid.

*Based on CAFC Model Patent Instruction No. 10.8; Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1375-76 (Fed. Cir. 2005); SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005); Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1379 (Fed. Cir. 2003); Adv. Display Sys. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000); Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC, 631 F. Supp. 2d 1010, 1030-31 (N. D. Ill. 2009); In re Graves, 69 F.3d 1147, 1152 (Fed. Cir. 1995); Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1364 (Fed. Cir. 2008); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1347 (Fed. Cir. 2009).*

**4.3     SHORE D HARDNESS [CALLAWAY PROPOSED INSTRUCTION][10]**

None of the prior art references upon which Acushnet relies expressly discloses the Shore D hardness limitation for a polyurethane golf-ball cover on a three-piece ball.

Source: This fact has been determined as a matter of law; thus, the jury should be instructed on this indisputable fact. *See Callaway v. Acushnet*, 576 F.3d at 1339-41 ("It is undisputed that none of the prior art references upon which Acushnet relied expressly discloses the requisite hardness limitation for a polyurethane golf-ball cover on a three-piece ball … In summary, whether the prior art disclosed the necessary hardness limitation claimed in the Sullivan patents was an issue of fact genuinely contested before the jury. The district court did not err in concluding that substantial evidence supports the jury's implicit resolution of that factual issue in Callaway's favor").

---

[10] Acushnet objects to this instruction. First, the statement Callaway proposes reading to the jury is a statement of fact, not an instruction of law.  Second, the statement, out of context, is improper and highly misleading.  Without more, the statement creates the impression that the prior art does not satisfy the Shore D limitations of the patents-in-suit.  This is the proper subject of examination, expert testimony, and closing argument, not a jury instruction.

**4.5      OBVIOUSNESS [CALLAWAY PROPOSED INSTRUCTION][11]**

Acushnet also contends that the asserted claims are invalid as being obvious.  In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining the obviousness or nonobviousness of a claim, you should take the following steps:

1.      Determine the scope and content of the prior art relied upon by Acushnet, the party alleging invalidity of the patents-in-suit;

2.      Identify the differences, if any, between each asserted claim of the patents-in-suit and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention

---

[11] Acushnet objects to this instruction.  While Callaway claims to have used *K.S.R. Int'l* as source material for its proposed instruction, it has ignored the underpinnings of that case, that there is no rigid test or formula for determining obviousness.  Callaway fails to inform the jury that, according to this Supreme Court decision, a person of ordinary skill in the art "will be able to fit the teachings of multiple patents together like pieces of a puzzle." *K.S.R. Int'l Co.*, 1727 S.Ct. at 1742.  Callaway's proposed instruction is mired in the law of the past, and ignores developments such as *K.S.R. Int'l*.

Callaway Golf responds that Acushnet wishes to cherry-pick language from *KSR* while ignoring its central holding: that the Supreme Court's *Graham* factors, combined with critical secondary considerations, control the obviousness inquiry.  *See K.S.R.*, 550 U.S. at 406 ("*Graham* set forth a broad inquiry and invited courts, where appropriate, to look at any secondary considerations that would prove instructive…").  Callaway Golf simply instructs the jury on those *Graham* factors, which have not changed for over 40 years.  *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).  This is the approach taken by several model instructions, including those from this district (*see* D. Del. Model Instruction 4.8).

of each patent-in-suit was made; and

     4.     Consider objective considerations of nonobviousness, such as commercial success, praise by others within the industry, long felt but unresolved need, failure of others to solve the problem, acquiescence in the patent by others.

     Against this background, you will make your decision that the claimed subject matter would have been either obvious or nonobvious to a person of ordinary skill in the pertinent art.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8 (1993); Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007); Graham v. John Deere Co., 383 U.S. 1 (1966).*

**4.5      OBVIOUSNESS [ACUSHNET PROPOSED INSTRUCTION]**

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.  The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

Obviousness may be proven by considering more than one item of prior art.  The relevant question is, would a claim have been obvious to a person of ordinary skill in the art who knows of all the prior art.

To determine obviousness or non obviousness of the claimed subject matter of the asserted claims of the patents-in-suit, you should take the following steps:

1.      Determine the scope and content of the prior art (both patents and commercially-available golf balls) relied upon by Acushnet;

2.      Identify the differences, if any, between each asserted claim of the patents in suit and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention of each patent in suit was made.

If appropriate, you may also consider what the law calls "secondary considerations."  These considerations may tend to prove non obviousness.  These considerations include commercial success, praise by others within the industry, long felt but unresolved need, and the failure of others to solve the problem.

41

In determining, however, whether the asserted patent claims would have been obvious to a person of ordinary skill in the art, you should not apply any rigid test or formula.  You should also use your common sense to determine whether the claimed inventions are truly innovative, or merely a combination of known elements to achieve results not unexpected.

The standard of non obviousness in an art is raised as the art advances.  Thus, new inventions, once they are known, define a new threshold from which patentable innovation is allowed.  Progress beginning from these higher levels of prior achievement is expected in the normal course.

In general, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. A person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  If a person of ordinary skill in the art can implement a predictable variation of known works, and would see the benefit of doing so, then a patent on that idea is likely to be obvious.

If a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill.


Based on *CAFC Model Patent Jury Instruction No. 10.9;  KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 at *10 11, *32 36 (U.S.S.C., April 30, 2007); Graham v. John Deere Co., 383 U.S. 1 (1966); Docket No. 394 (Final Jury Instructions) pp.20-22.*

**4.6      SCOPE AND CONTENT OF THE PRIOR ART [CALLAWAY PROPOSED INSTRUCTION]**

As I just instructed you, in arriving at your decision on the issue of whether or not the asserted claims are obvious to one of ordinary skill in the art, you should first determine what the scope and content of the prior art is.  This means that you should determine what prior art is reasonably pertinent to the particular problem the inventor faced.

The scope and content of the prior art includes references that would be considered by a person with ordinary skill in the art to solve a particular problem.  A person of ordinary skill in the art is deemed to know of all such references.  The prior art at issue in the case includes:  the Nesbitt '193 Patent, the Molitor '751 Patent, the Molitor '637 Patent, the Proudfit '187 Patent, the Wu '673 Patent, as well as the Wilson Ultra Tour Balata golf balls and the Titleist Professional golf balls.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.1; Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

**4.6      SCOPE AND CONTENT OF THE PRIOR ART [ACUSHNET PROPOSED INSTRUCTION]**

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art. This means that you should determine what prior art was reasonably pertinent to the particular problems the inventor faced. The prior art in this case includes the following, all of which were part of the art known prior to the 1995 effective dates of the Callaway patents:

    (1)    U.S. Patent No. 4,431,193 to Nesbitt (the "Nesbitt '193" patent) (DX-9);

    (2)    U.S. Patent No. 4,674,751 to Molitor (the "Molitor '751" patent) (DX-11);

    (3)    U.S. Patent No. 4,274,637 to Molitor (the "Molitor '637" patent) (DX-12);

    (4)    U.S. Patent No. 5,314,187 to Proudfit (the "Proudfit '187" patent) (DX-10);

    (5)    U.S. Patent No. 5,334,673 to Wu (the 'Wu '673" patent) (DX-13);

    (6)    The 1993 Wilson Ultra Tour Balata golf ball; and

    (7)    The 1994 Titleist Professional golf balls.

*Del. Model Instructions 2004 at 4.8.1.; Docket No. 394 (Final Jury Instructions) p.20.*

44

**4.7    [JOINT PROPOSED INSTRUCTION] DIFFERENCES OVER THE PRIOR ART**

You must next consider the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety, separate from other claims.

*Del. Model Instructions 2004 at 4.8.2*

**4.8**      **[JOINT PROPOSED INSTRUCTION] LEVEL OF ORDINARY SKILL**

Next, you are to determine the level of ordinary skill in the art to which the claimed

invention pertains at the time the claimed invention was made.  Factors to be considered in

determining the level of ordinary skill in the pertinent art include:

1.      the educational level of the inventor and of others working in the field;

2.      the types of problems encountered in the art at the time of the invention;

3.      the prior art patents and publications;

4.      the activities of others;

5.      prior art solutions to the problems encountered by the inventor; and

6.      the sophistication of the technology.


Source: *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.3 (1993); AIPLA Model Patent Jury Instr. 7.4; Charge to the Jury, IMX, Inc. v. Lendingtree, LLC, Civil Action No. 03-1067-SLR (D. Del. Jan. 20, 2006); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

**4.9    HINDSIGHT [CALLAWAY PROPOSED INSTRUCTION]**[12]

The question of nonobviousness is simple to ask, but difficult to answer.  A person of

ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the

patentee's invention.  If you find the available prior art shows each of the elements of the claims

in suit, you must determine whether it would then have been obvious to a person of ordinary skill

in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed

to the strong temptation to rely on hindsight while undertaking this evaluation. A determination

of obviousness cannot be based upon the hindsight combination of prior art.  It is wrong to use

the patent in suit as a guide through the maze of prior art references, combining the right

references in the right way so as to achieve the result of the asserted claims.  Rather, you must

cast your mind back to the time of the invention and consider whether the invention as a whole

---

[12] Acushnet objects to this proposed instruction.  Once again, Callaway's proposed instruction cites to *K.S.R. Int'l Co.* as a source, yet fails to consider the findings of that case.  According to the Supreme Court, "[r]igid preventative rules [on hindsight] that deny factfinders recourse to common sense … are neither necessary under our case law nor consistent with it."  *Id.* At 1742-43.  While Callaway seeks to refer to a "maze of prior art references" it ignores this Supreme Court ruling that teaches that "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle."  *Id.* at 1742.  Once again, Callaway's instruction ignores developments in the law, despite claiming to use them as sources.

Callaway Golf responds that the Supreme Court in *KSR* expressly noted that "A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.  *See Graham*, 383 U.S., at 36, 86 S. Ct. 684, 15 L. Ed. 2d 545 (warning against a 'temptation to read into the prior art the teachings of the invention in issue' and instructing courts to 'guard against slipping into use of hindsight')."  *See KSR*, 550 U.S. at 421.  The issue in *KSR* was the application of the rigid teaching-suggestion-motivation test used by the Federal Circuit at the time.  This instruction has nothing to do with that test, and is not "rigid" – it merely instructs the jury of the difficulty in avoiding hindsight bias, which is entirely proper.  The Court gave an almost identical instruction during the previous trial, (*see* D.I. 394 at p.22), and Acushnet did not challenge that instruction, making it the law of the case.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).

would have been obvious to a person of ordinary skill in the art, facing the range of needs created by developments in the field of the invention.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.5 (1993); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727  (2007); Panduit Corp. v. Dennison Mfg. Co. 810 F.2d 1561, 1575 (Fed. Cir. 1987).*

**4.9      HINDSIGHT [ACUSHNET PROPOSED INSTRUCTION]**

A person of ordinary skill in the art is presumed by law to have the knowledge of the relevant prior art at the time of the patentee's invention.

If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.  A person of ordinary skill has the ordinary creativity of those in his or her field, and often will be able to fit the teachings of multiple patents together like pieces of a puzzle.  You should not rely on hindsight while undertaking this evaluation.  However, when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp.  You should cast your mind back to the time of the invention, and consider whether a person of ordinary skill in the art, facing the range of needs created by developments in the field of the invention, would have seen the benefit to creating the asserted combination.

*Based on Del. Model Instructions 2004 at 4.8.5; KSR Int'l Co. v. Teleflex, Inc., 2007 U.S. LEXIS 4745 (U.S.S.C., April 30, 2007).*

## 4.10    COPYING VERSES INDEPENDENT INVENTION BY OTHERS

## [CALLAWAY PROPOSED INSTRUCTION][13]

Callaway has made no allegation of copying against Acushnet.  Therefore, this is not an issue relevant to your determination of whether the patents in suit are invalid.

It is also irrelevant to obviousness whether an infringing product was developed independently if the development occurred after the date of the invention.  This is because obviousness must be determined at the time the invention was made.

You have heard testimony from Acushnet that development of the Pro V1 balls began after the invention of the patents-in-suit.  Therefore, even if Acushnet independently developed its Pro V1 products this is not relevant to obviousness.

Source:  *Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1380, fn. 4 (Fed. Cir. 1986); Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co., 730 F.2d 1452, 1460 -1461 (Fed. Cir. 1984).*

---

[13] Acushnet objects to this proposed instruction.  Callaway's proposed instruction is factually as well as legally incorrect.  Callaway maintains that it has made no allegation of copying against Acushnet.  Not only is this a false statement, but even it were the case, then such a state of affairs would suggest there be no instruction on copying.  Indeed, Acushnet has proposed no such instruction.  Callaway seek to instruct the jury (falsely) that they have made no such claim, and then continue to discuss independent invention.  Callaway further maintains that Acushnet has testified that development of the Pro V1 balls began after the invention of the patents-in-suit.  This is contrary to the record of the case. (*See* DX-830).

Callaway Golf responds that it has never alleged that Acushnet "copied" the asserted patents.  Infringement is not the same as "copying."  For secondary considerations, copying is relevant to show that an invention is not obvious.  If the jury were to wrongly believe that Acushnet copied the asserted patents when it infringed, that could impact its obviousness analysis.  The remainder of this instruction deals with independent invention that occurs after the invention date.  The cases cited above by Callaway Golf demonstrate that such late development is irrelevant to the obviousness inquiry.

**4.10      INDEPENDENT INVENTION BY OTHERS [ACUSHNET PROPOSED INSTRUCTION]**

Just as the failure of others to make the invention can be evidence of non-obviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may, or may not, be an indication of obviousness when considered in light of all of the circumstances.

*Based on Docket No. 394 (Final Jury Instructions) p.23; Del. Model Instructions 1993 at 4.8.9; Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH, 139 F.3d 877, 883-84 (Fed. Cir. 1998).*

**4.11    OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS (SECONDARY CONSIDERATIONS) [CALLAWAY PROPOSED INSTRUCTION][14]**

In making your decision as to the obviousness or non-obviousness of the asserted claims, you must consider the following objective evidence, which may tend to show non-obviousness of the claims at issue:

1.    Commercial success or lack of commercial success of products covered by the patents-in-suit;

2.    A long felt need in the art which was satisfied by the invention of the patents-in-suit;

3.    The failure of others to make the invention;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by Acushnet or others in the field; and

There must be a connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in arriving at your

---

[14] Acushnet objects to this proposed instruction.  Callaway again ignores *K.S.R. Int'l Co.* in its instruction here.  Callaway de-emphasizes the requirement of nexus, and seeks instead to require consideration of secondary considerations, even when no nexus has been shown.  Callaway also fails to instruct the jury to consider the role of other patents held on a commercially successful product as been indicators of a lack of nexus.  In fact, in an earlier instruction (2.3), Callaway seeks to undercut the relevance of such patents by claiming they do not impact on infringement, when infringement is not in front of the jury.

Callaway Golf responds that its instruction does not ignore the nexus requirement – it clearly instructs the jury that "there must be a connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue."  Regarding the factors listed, Callaway Golf notes that these are identical to the factors the Court instructed the jury on during the previous trial, and Acushnet did not object to this instruction.  (*See* D.I. 394 at p.21).  Callaway

conclusion on the obviousness issue.  It is inappropriate to disregard any proper evidence relating to the issue of obviousness.  Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should be held in abeyance, until all of the evidence has been introduced.

Source:  *Uniform Jury Instr. For Patent Cases in the D. Del. 4.8.4 (1993); KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1734 (2007).*

Golf also notes that Acushnet's own secondary consideration instruction says nothing about Acushnet's patents.

## 4.11     SECONDARY CONSIDERATIONS CONCERNING OBVIOUSNESS

## [ACUSHNET PROPOSED INSTRUCTION]

In making your decision as to the obviousness or non obviousness of each of the asserted claims of the patents in suit, you may also consider the following secondary considerations, evidence which may tend to show non obviousness of the claims at issue:

1.      Commercial success or lack of commercial success of products covered by the patents in suit;

2.      A long felt need in the art that was satisfied by the invention of the patents-in-suit;

3.      The failure of others to make the inventions

4.      Copying of the invention by others in the field;

5.      Unexpected results achieved by the invention; and

6.      Praise of the invention by others in the field.

You should only consider such secondary considerations as indications that the patent asserted is not obvious if Callaway has demonstrated that there is a nexus between the claimed invention and these secondary considerations.  For example, commercial success of a product is only an indication of non obviousness if the allegedly infringed claims of the patent are responsible for the success of the product.  If that success is seen to come from a different source, such as brand name recognition, company goodwill, advertising, promotion, or the like, or is due to features of the commercially successful product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

Also, to be pertinent as evidence of non obviousness, commercial success and other secondary considerations must be shown to be due to the merits of the claimed invention beyond

what was readily available in the prior art.  If the feature that creates the commercial success, for example, was known in the prior art, the success of the product is not pertinent.

Apart from the commercial success (or lack thereof) of competing products that also practice the invention, you should also consider the number of patents and other technologies pertaining to the product before determining whether there is a nexus between the secondary considerations and the patents-in-suit.  If a commercially successful product practicing the patents-in-suit relies on multiple other technologies, you must consider whether the secondary considerations such as commercial success are the result of the patents in suit, or if they result from other technologies or features of the product.

*Based on Docket No. 394 (Final Jury Instructions) pp. 24-25; Del. Model Instructions 2004 at 4.8.6; Mas Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1216 (Fed. Cir.1998);  Pfizer Inc. v. Apotex, 480 F.3d 1348, 1360 (Fed. Cir. 2007); Graham v. John Deere Co., 383 U.S. 1, 17 (1966); Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1324 (Fed. Cir. 2004); Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311 12 (Fed. Cir. 2006); Stratoflex , Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed. Cir. 1983); Pentec, Inc. v. Graphic Controls, Corp., 776 F.2d 309, 316 (Fed. Cir. 1985); Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295, 300 (9th Cir. 1970); McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 254-55 (S.D.N.Y. 2007)*;*

**4.12    COMMERCIAL SUCCESS [CALLAWAY PROPOSED INSTRUCTION][15]**

One of the factors you should consider is whether Callaway Golf has shown that the commercial success of products covered by the patents-in-suit was due to the merits of the invention.

In this case, because the parties have agreed that the Pro V1 infringes the asserted patents, you must presume that any commercial success of the Pro V1 was due, at least in part, to the patented invention.  In order to rebut that presumption, Acushnet must introduce evidence that the commercial success of its product was due only to advertising, promotion, salesmanship or the like, or to features of the product other than those claimed in the patents-in-suit.  You must then consider all the evidence, and determine to what extent the commercial success of the Pro V1 demonstrates that the patented invention was not obvious.

Source:  *AIPLA Model Patent Jury Instr. 7.7 (February 2006); Demaco Corp. v. F. Von Langsdorff Licensing, Ltd., 851 F.2d 1387,1392-94 (Fed. Cir. 1988).*

---

[15] Acushnet objects to this proposed instruction (4.12-4.14).  Callaway seeks a series of instructions regarding secondary considerations, again in an attempt to circumvent the nexus requirement.  Such terms are already included in the secondary consideration instruction, and it is unnecessary and duplicative to include separate instructions on them.  Doing so can only lead the jury to overemphasize such considerations, and to neglect to consider whether Callaway has demonstrated any nexus between such considerations and the patents-in-suit.  The Court declined to include any of these proposed instructions in the first trial.  Docket No. 394 (Final Jury Instructions).

Callaway Golf responds that these are model instructions, based on the American Intellectual Property Law Association instruction set.  Commercial success in particular requires a separate instruction because, since Acushnet stipulated that it infringes the asserted patents, its commercial success must be presumed to be because of the patented technology.  *See Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387,1392-94 (Fed. Cir. 1988).

**4.13    REASON TO COMBINE [CALLAWAY PROPOSED INSTRUCTION][16]**

Among the factors you may consider in determining whether multiple prior art references render a patent obvious is whether there was some apparent reason to combine or modify the items of prior art and whether the combination would be reasonably likely to achieve the goal of the invention.  However, as I instructed you, in doing so you must guard against slipping into the use of hindsight.

Source:  *KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1742-43 (2007).*

---

[16] Acushnet objects to this instruction (4.12-4.14).  Callaway seeks a series of instructions regarding secondary considerations, again in an attempt to circumvent the nexus requirement.  Such terms are already included in the secondary consideration instruction, and it is unnecessary and duplicative to include separate instructions on them.  Doing so can only lead the jury to overemphasize such considerations, and to neglect to consider whether Callaway has demonstrated any nexus between such considerations and the patents-in-suit.  The Court declined to include any of these proposed instructions in the first trial.  Docket No. 394 (Final Jury Instructions).

Callaway Golf responds that the Supreme Court in *KSR* noted motivation to combine is one of many factors to consider, so long as no rigid formula is used.  *See KSR*, 550 U.S. at 419 ("There is no necessary inconsistency between the idea underlying the TSM test and the *Graham* analysis").  Subsequent Federal Circuit cases have clarified that it can be important to identify a motivation to combine different teachings from disparate references.  *See, e.g., Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007) .

**4.14     CROWDED ART FIELD [CALLAWAY PROPOSED INSTRUCTION]**[17]

The parties have shown you evidence that there is a large number of patents relating

generally to golf ball technology.  Where, as here, a field is crowded with many patents, even

differences that appear technologically minor may have a significant practical impact.  This may

tend to indicate that the claimed invention was not obvious.


Source:  *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991).

---

[17] Acushnet objects to this instruction (4.12-4.14).  Callaway seeks a series of instructions
regarding secondary considerations, again in an attempt to circumvent the nexus requirement.
Such terms are already included in the secondary consideration instruction, and it is unnecessary
and duplicative to include separate instructions on them.  Doing so can only lead the jury to
overemphasize such considerations, and to neglect to consider whether Callaway has
demonstrated any nexus between such considerations and the patents-in-suit.  The Court declined
to include any of these proposed instructions in the first trial.  Docket No. 394 (Final Jury
Instructions).

This issue is not covered in either partys' secondary consideration instruction, but the case law is
clear: in a field crowded with many patents, even small changes can have a practical impact on
patentability.  *See Continental Can Co. USA, Inc. v. Monsanto Co*., 948 F.2d 1264, 1273 (Fed.
Cir. 1991).  During the previous trial, the jury heard about dozens of different golf ball patents.
This is evidence that even minor technological differences are significant to golf ball designers,
and the instruction is therefore appropriate.

**4.15     ENABLEMENT [ACUSHNET PROPOSED INSTRUCTION][18]**

The written description of the invention claimed in a patent must contain enough detail to teach and enable persons skilled in the field of the invention to make and use the invention as of the filing date of the patent, and without undue experimentation.  This requirement is know as the enablement requirement.  If the patent does not enable a skilled person to make and use the claimed invention without undue experimentation, and to do so across the entire scope of the invention, then the patent claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would likely know or could obtain.  The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent claim is not enabled.  However, if the amount of experimentation a skilled person would have to do to make the claimed invention is too much, called "undue experimentation," then the patent is invalid.  A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

Keep in mind too that a patentee cannot always satisfy the enablement requirement merely by clearly describing one embodiment of the thing being claimed.  Although every embodiment of a claim does not need to be disclosed in a specification, there must be guidance or a suggestion to enable the entire scope of the claimed invention.  A patent specification does

---

[18] Callaway Golf objects to Acushnet's enablement defense, for the reasons stated in its motion in limine..

not provide an enabling disclosure, and the patent is therefore invalid, where it does not disclose in its specification embodiments of the invention covering points throughout the ranges claimed in the patent.  The enablement requirement is designed to ensure that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims asserted by the invention.  Thus, there must be sufficient disclosure to teach those of ordinary skill in the art how to make and how to use the invention as broadly as it is claimed.

If you find that Acushnet has provided clear and convincing evidence that the written description in the patent does not enable a skilled person of the art to make and use the invention as claimed, across its entire scope, then you must find that the patent claim is invalid.

*Based on CAFC Model Patent Jury Instruction No. 10.3; Liebel-Flarsheim Co. v. Medrad, No. 06-1156, 2007 U.S. App. LEXIS 6607 at \*19 (Fed. Cir. March 22, 2007); Lizardtech, Inc. v. Earth Resource Mapping, Inc., 424 F. 3d 1336, 1344 (Fed. Cir. 2005).*

**4.15     ENABLEMENT [CALLAWAY PROPOSED INSTRUCTION]**

**[Callaway Golf objects to Acushnet's enablement defense, for the reasons stated in its**

**motion in limine..  Callaway Golf provides this instruction in the event that Acushnet is**

**allowed to put forth its enablement defense.]**

Acushnet contends that the asserted claims of the patents-in-suit are invalid because

the patents do not disclose sufficient information to enable one skilled in the field of the

invention, at the time the application was filed, to make and use the claimed invention.  This

requirement is known as the enablement requirement.  If a patent claim is not enabled, it is

invalid.  Each claim must be analyzed for compliance with the enablement requirement.

Acushnet must prove that it is highly probable that the claim was not enabled.

In considering whether a patent claim satisfies the enablement requirement, you must

keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a

patent need not expressly state information that skilled persons would be likely to know or could

obtain.  Acushnet bears the burden of establishing lack of enablement by showing that it is

highly probable that a person skilled in the art, upon reading the patent document, would not be

able to make the invention work without undue experimentation.  The fact that some

experimentation may be required for a skilled person to make or use the claimed invention does

not mean that a patent's written description fails to meet the enablement requirement. Factors

you may consider in determining whether making the invention would require undue

experimentation include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

7. the predictability of the art; and

8. the breadth of the claims.

If you find that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.


Source: National Jury Instruction Project Model Patent Jury Instruction 5.3.

## DAMAGES

**5.1      DAMAGES – BURDEN OF PROOF [CALLAWAY PROPOSED INSTRUCTION]**

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that the asserted patents are valid, you must then determine the amount of money damages to be awarded to Callaway to compensate it for the infringement.

The amount of those damages must be adequate to compensate Callaway for the infringement.  The damages you award are meant to compensate the patent holder and not to punish an infringer.  Your damages award, if you reach this issue, should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  I will give you more detailed instructions on the calculation of a reasonable royalty shortly.

In this case, Callaway Golf seeks to recover lost profits for some of Acushnet's sales, and a reasonable royalty on the rest of Acushnet's sales.  To recover lost profits for infringing sales, Callaway Golf must show that but for the infringement there is a reasonable probability that it would have made sales that Acushnet made of the infringing product.  If you find that Callaway Golf has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Callaway Golf should be awarded a reasonable royalty for those infringing sales for which it has not been awarded lost profits damages.  I will give you more detailed instructions on lost profits damages shortly.

Callaway Golf has the burden to establish the amount of its damages. You should award only those damages that Callaway Golf establishes that it more likely than not suffered.

Callaway Golf is not entitled to damages that are remote or speculative.  While Callaway Golf is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  To the extent Acushnet contends that the amount of damages should be reduced or offset, Acushnet must prove the amount of such reduction or offset.  When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.  Any adverse consequences must rest on the alleged infringer when the inability to ascertain lost profits is due to the infringer's own failure to keep accurate records.

*Source: Federal Circuit Bar Assoc. Model Patent Jury Instruction 6.1 (Jan. 2008)*

**5.2      COMPENSATORY DAMAGES IN GENERAL [ACUSHNET PROPOSED INSTRUCTION]**

If, after considering all the evidence and the law as I have stated it, you have determined that all the asserted claims are invalid, your verdict should be for Acushnet and you need go no further.  On the other hand, if you decide that one or more of the patent claims are valid, you must then turn to the issue of damages.

The patent laws provide that in the case of infringement of patent claim, the owner of the patents shall be awarded damages adequate to compensate for infringement, but in no event less than a reasonable royalty rate for the use made of the invention by the infringer.  Damages are compensation for all the losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Acushnet Company benefited from, realized profits from, or even lost money as a result of the acts of infringement.  It is also not relevant if Acushnet Company did not foresee that it would cause Callaway Golf harm.  The only issue is the amount necessary to adequately compensate Callaway Golf for infringement by Acushnet Company.  Adequate compensation should return Callaway Golf to the position it would have been in had there been no infringement.

*Based on Uniform Jury Instr. For Patent Cases in the D. Del. 5.1-5.2 (2004).*

**5.3      BURDEN OF PROOF OF INFRINGEMENT DAMAGES – REASONABLE CERTAINTY [ACUSHNET PROPOSED INSTRUCTION]**

If you find that any of the asserted claims are valid, you must determine the extent of damages, if any.  The patent owner has the burden of proving damages by a preponderance of the evidence.  As you recall, that means that the patent owner has to produce evidence that, when considered in the light of all the facts, leads you to believe that what the patent owner claims is more likely true than not.

The patent owner is entitled to damages that it has proven with "reasonable certainty." On one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to the patent owner.  On the other hand, the patent owner is not entitled to speculative damages; that is, you should not award any amount for loss, which, although possible, is remote or left to conjecture or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.

*Based on Del. Model Instructions 2004 at 5.3.*

**5.4      METHODS OF COMPUTING DAMAGES [ACUSHNET PROPOSED INSTRUCTION]**

There are two common methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages. These are alternative methods for computing damages; you must award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer. You cannot, however, award both lost profits and a reasonable royalty for the same sale.

In determining damages, you should first determine whether Plaintiff has proven its entitlement to lost profits. If you find that Plaintiff is not entitled to lost profits, you should then calculate damages based upon another method, which may include a reasonable royalty.

*Based on Del. Model Instructions 2004 at 5.5.*

**5.5      LOST PROFITS [CALLAWAY GOLF PROPOSED INSTRUCTION]**

In this case, Callaway Golf seeks to recover lost profits for some of Acushnet's sales, and a reasonable royalty on the rest of Acushnet's sales.

To recover lost profits for infringing sales, Callaway Golf must show that, but for the infringement, there is a reasonable probability that it would have made sales that Acushnet made of the infringing product.  In proving that it would have made those sales if not for the infringement, Callaway Golf must establish the share of Acushnet's sales that it would have made had the infringing product not been on the market.

Callaway Golf is entitled to lost profits if it establishes each of the following, by a preponderance of the evidence:

(1) that there was a demand for the patented product;

(2) the number of the sales made by Acushnet that Callaway Golf would have made;

(3) that Callaway Golf had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which Callaway Golf seeks an award of lost profits; and

(4) the amount of profit that Callaway Golf would have made if Acushnet had not infringed.

*Source: Federal Circuit Bar Assoc. Model Patent Jury Instruction 6.2 (Jan. 2008) (modified for this case)*

68

**5.5      LOST PROFITS [ACUSHNET PROPOSED INSTRUCTION]**

Callaway claims that it should be awarded lost profits on some of the sales of allegedly infringing products that Acushnet sold after September 2003 until the end of 2008.  In order to recover lost profits, Callaway must show that there was a reasonable probability that it would have made additional sales of its own product but for the infringement and establish the amount of those profits.

To recover lost profits, Callaway must establish the following facts: (1) what the demand for the patented product would have been in the absence of alleged infringement by Acushnet; (2) the number of the sales made by Acushnet that Callaway would have made; (3) Callaway's capacity to meet the demand it claims it would have sold but for infringement; (4) and the amount of profit Callaway itself (not any other entity) would have made but for the defendant's sales.

If Callaway establishes that but for the infringement it would have made some, but not all, of the alleged infringing sales, the amount of sales that Callaway lost may be shown by proving Callaway's share of the relevant market, excluding infringing products.

To prove its market share, Callaway must first define the relevant market where its products competed with Acushnet's Pro V1 products. In defining a relevant market, products are considered to be in the same market if they are considered sufficiently similar to compete against each other.  For example, products that can be substituted for each other and are sold for the same use may be sufficiently similar to compete against each other.

To show causation and entitlement to lost profits, Callaway must reconstruct this market as it would have existed in September 2003 and thereafter, if the infringement did not

69

occur starting in April 2001 when the '293 Patent issued.  This market reconstruction cannot be based on conjecture.  Rather, it requires sound economic proof of how the market would have developed in 2001 and thereafter, as well as proof as to what Callaway's and Acushnet's market shares would have been in that market at the time for which lost profits are sought.  In reconstructing the market, you must consider the alternatives available to Acushnet and other competitors if the infringement had not occurred.

If you find that Callaway has sustained the burden of proving that it is entitled to lost profits, you should next consider the amount of those lost profits.  In doing so, you should consider the volume of lost sales Callaway has proven and Callaway's incremental profits on those lost sales.

If you find, however, that Callaway would not have made any of the sales that Acushnet in fact made, you may not award lost profits.  Instead you must award an amount based on a reasonable royalty.  Likewise, if you find that Callaway would have only made some of the sales that Acushnet made, you may only award lost profits on those sales you find Callaway would have made.  You must then award a reasonable royalty on the sales Callaway would not have made.

A patent owner may only recover lost profits damages for profits that it would have made itself absent the infringement.  A patent owner may not recover lost profits that would have been made by another company, such as an affiliate or a subsidiary of the patent owner.  Thus, in order to establish it is entitled to lost profits damages, the patent owner, Callaway Golf Company, must establish the lost sales it would have made, as opposed to lost sales made by affiliated companies such as Callaway Golf Sales Co. or foreign affiliates of Callaway.  If it fails

70

to do so, you may not award lost profits damages to plaintiff Callaway Golf Company.

*Based on Del. Model Instructions 2004 at 5.8; Federal Circuit Bar Assoc. Model Patent Jury Instruction 6.2 (Jan. 2008); Grain Processing Corp. v. Am. Maize-Prods., 185 F. 3d 1341, 1350, 51 U.S. P.Q.2D (BNA) 1556, 1562 (Fed. Cir. 1999); State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F. 2d 1573 (Fed. Cir. 1989); Poly-America, L.P., v. GSE Lining Technology, Inc., 383 F.3d 1303 (Fed. Cir. 2004); BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc., 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1124 (Fed. Cir. 2003); Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1354-55 (Fed. Cir. 2001).*

**5.6     MARKET SHARE [CALLAWAY PROPOSED INSTRUCTION][19]**

If you find that Callaway Golf has established that it would have made sales but for the infringement, you must decide the amount of sales that Callaway Golf lost as a result of the infringement.  One way Callaway Golf may prove the sales it would have made if the infringement had not happened is to prove its share of the relevant market, excluding infringing products.  You may award Callaway Golf a share of profits equal to that market share even if you find that there were available, noninfringing substitutes for the patented product.

In deciding Callaway Golf's market share, you must decide which products are in the relevant market.  Products are in the same market if they are sufficiently similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

*Source: Federal Circuit Bar Assoc. Model Patent Jury Instruction 6.3 (Jan. 2008)*

---

[19] Acushnet objects to this proposed instruction as entirely duplicative of Callaway's proposed instruction on lost profits (5.5).

Callaway Golf responds that this instruction is different from instruction 5.5 because it instructs the jury on how to determine whether or not products are in the same market.  The Federal Circuit Bar Association model instructions, upon which this instruction is based, specifically use separate instructions to explain lost profits and market share.  Nevertheless, Callaway Golf is not opposed to combining these instructions, so long as the relevant language is preserved.

72

**5.7     REASONABLE ROYALTY ENTITLEMENT [CALLAWAY PROPOSED INSTRUCTION]**

If you find that the patents-in-suit are valid, Callaway Golf is entitled to at least a reasonable royalty.  If you find that Callaway Golf has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Callaway Golf a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

*Source: Federal Circuit Bar Assoc. Model Patent Jury Instruction 6.6 (Jan. 2008)*

**5.8     REASONABLE ROYALTY – DEFINITION [CALLAWAY PROPOSED INSTRUCTION]**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at the time when the infringing sales first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.

You must also assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement.  Your role is to determine what that agreement would have been.  The measure of damages is what royalty would have resulted from the hypothetical negotiation, and not simply what royalty either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that that evidence aids in you assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits Acushnet made may aid you in determining the anticipated profits at the time of the hypothetical negotiation, you may not limit or increase the royalty based on the actual profits Acushnet made.

In determining the reasonably royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

74

(1) whether the patent holder had an established royalty for the invention; whether, in the absence of an established royalty, there is evidence that tends to prove an established royalty; whether, in the absence of such a licensing history, there are any royalty arrangements that were generally used and recognized in the particular industry at that time;

(2) the nature of the commercial relationship between the patent holder and the licensee such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

(3) the established profitability of the patented product, its commercial success and its popularity at the time;

(4) whether the patent holder had an established policy of granting licenses or retaining the patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5) the size of the anticipated market for the invention at the time the infringement began;

(6) the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7) the rates paid by the licensee for the use of other patents comparable to the plaintiffs patent;

(8) whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

(9) the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10) the extent to which the infringer used the invention and any evidence probative of

the value of such use;

(11) the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions;

(12) the portion of the profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13) the opinion and testimony of qualified experts and of the patent holder; and

(14) any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The final factor establishes the framework which you should use in determining a reasonable royalty, i.e., the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.

*Source: Federal Circuit Bar Assoc. Model Patent Jury Instruction 6.7 (Jan. 2008)*

**5.8.1    REASONABLE ROYALTY AS A MEASURE OF DAMAGES [ACUSHNET PROPOSED INSTRUCTION]**

In this case, Callaway Golf also seeks damages in the amount of a reasonable royalty for the accused products.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Spalding and Acushnet, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin.  The parties have agreed that this hypothetical negotiation would have occurred in April of 2001.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Acushnet was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Acushnet.  You must also assume that Spalding would have been willing to grant a license.  Finally, you must assume that both Spalding and Acushnet knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Acushnet's use of the patented invention, including the opinion testimony of experts.

*Based on Del. Model Instructions 2004 at 5.14.*

**5.8.2    FACTORS FOR DETERMINING REASONABLE ROYALTY [ACUSHNET PROPOSED INSTRUCTION]**

In determining such a reasonable royalty, some of the factors that should be considered are:

1.      the royalties received by the patentee for the licensing others under the patent in suit;

2.      the rates paid by the licensee for the use of other patents comparable to the patent in suit;

3.      the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      the licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

6.      the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.      the duration of the patent and the term of the licenses;

8.      the established profitability of the product made under the patent, its commercial

success, and its current popularity;

9.      the utility and advantages of the patent property over the old modes or devices, if

any, that had been used for working out similar results;

10.      the nature of the patented invention, the character of the commercial embodiment

of it as owned and produced by the licensor, and the benefits to those who have used the

invention;

11.      the extent to which the infringer has made use of the invention, and any evidence

probative of the value of that use;

12.      the portion of the profit or of the selling price that may be customary in the

particular business or in comparable businesses to allow for the use of the invention or analogous

inventions;

13.      the portion of the realizable profit that should be credited to the invention as

distinguished from non-patented elements, the manufacturing process, business risks, or

significant features or improvements added by the infringer;

14.      the opinion testimony of qualified experts; and

15.      any other economic factor that a normally prudent businessman would, under

similar circumstances, take into consideration in negotiating the hypothetical license.

A reasonable royalty should reflect the portion of the revenue from sales of the accused

product that result from the improvement provided by the Callaway patents over alternatives to

the patented technology available to Acushnet at the time that the infringement began.

Furthermore, the reasonable royalty should distinguish between the portion of the revenue earned

80

from the accused product that is attributable to the presence of the patented improvement and the

portion of the revenue earned from the accused product attributable to its other patented or

unpatented components or features.


*Based on Uniform Jury Instructions for Patent Cases in the United States District Court for the*
*District of Delaware 6.11 (March 1993); Patent Case Management Judicial Guide 7-15, 7-16*
*(2009) ("Th[is] . . . instruction more appropriately characterizes the considerations*
*bearing on the determination of a reasonable royalty in the context of multicomponent*
*product cases . . . Th[is] more detailed instruction[] should augment the court's general*
*instructions regarding reasonable royalty.")*

**5.9     CLOSING STATEMENT – DAMAGES [ACUSHNET PROPOSED INSTRUCTION]**

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which Callaway Golf has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that Callaway Golf is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing Acushnet or to set an example.

*Based on Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 6.12 (March 1993).*

**5.10      CURATIVE INSTRUCTION [ACUSHNET PROPOSED INSTRUCTION]**

The fact that I have instructed you regarding damages should not be construed as suggesting any view of the Court as to which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Callaway Golf.


*Based on Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 6.13 (March 1993).*

## DELIBERATION  AND  VERDICT

**6.1      [JOINT PROPOSED INSTRUCTION] INTRODUCTION**

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 5-3, or whatever your vote happens to be.  That should stay secret until you are finished.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 7.1 (March 1993); Docket No. 394 (Final Jury Instructions) p.27.*

**6.2**      **[JOINT PROPOSED INSTRUCTION] UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you to answer a series of questions about Acushnet's claims of invalidity and Callaway's claim for damages.  When you have reached unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 7.2 (March 1993); Docket No. 394 (Final Jury Instructions) p.27.*

**6.3      [JOINT PROPOSED INSTRUCTION] DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that - your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing to that question.

87

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 7.3 (March 1993); Docket No. 394 (Final Jury Instructions) p.28.*

**6.4      [JOINT PROPOSED INSTRUCTION] COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have

said or done during this trial was meant to influence your decision in any way.  You must decide

the case yourselves based on the evidence presented.

*Source: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 7.4 (March 1993); Docket No. 394 (Final Jury Instructions) p.30.*

FISH & RICHARDSON P.C.                           POTTER ANDERSON & CORROON LLP


*/s/  Thomas L. Halkowski*                          */s/ Richard L. Horwitz*
Thomas L. Halkowski (#4099)                      Richard L. Horwitz (#2246)
222 Delaware Avenue                              David E. Moore
P.O. Box 1114                                    Potter Anderson & Corroon LLP
Wilmington, DE 19899-1114                        Hercules Plaza
Tel:  (302) 652-5070                             1313 North Market Street, 6th Floor
Fax:  (302) 652-0607                             P.O. Box 951
                                                 Wilmington, DE  19899
Frank E. Scherkenbach
225 Franklin Street                              Henry C. Bunsow
Boston, MA 02110-2804                            Joseph P. Lavelle
Tel:  (617) 542-5070                             Brian A. Rosenthal
Fax:  (617) 542-8906                             Howrey LLP
                                                 1299 Pennsylvania Avenue, N.W.
                                                 Washington, DC  20004

Roger A. Denning
12390 El Camino Real                             *Attorneys for Defendants*
San Diego, CA 92130                              ACUSHNET COMPANY
Tel: (858) 678-5070
Fax:  (858) 678-5099


*Attorneys for Plaintiffs*
CALLAWAY GOLF COMPANY