IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>Defendant. | C. A. No. 06-91 (SLR) |

## CALLAWAY GOLF'S MOTION TO INTRODUCE DEPOSITION TESTIMONY FROM PHIL MICKELSON

"[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence."

*See, e.g., Quinn v. Consol. Freightways Corp.*, 283 F.3d 572, 576-79 (3d Cir. 2002)[1] (.[2]

Mr. Mickelson's testimony is critical as it *directly* refutes Acushnet's expert's opinion that a wound golf ball would have been an acceptable non-infringing substitute and addresses one of the central damages issues -- whether pro golfers were ready to leave Acushnet and use Callaway Golf's Rule 35 ball if Acushnet had not launched the Pro V1 ball. Additionally, during

---

[1] Because this is an evidentiary dispute not specific to patent law, Third Circuit law governs. *See Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1374 (Fed. Cir. 2009).

[2] *See also Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 905 (3d Cir. 1977) ("We have recently held that the exclusion of critical evidence is an 'extreme' sanction, *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, at 99 (3d Cir. 1977), not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.").

Mr. Bellis' testimony, Acushnet introduced a video for the jury prominently evidencing the support of Acushnet and the ProV1 by multiple professional golfers. Finally, on simple fairness grounds, the Court may recall that during discovery, Callaway Golf attempted to take the deposition of Acushnet's CEO, Wally Uihlein, who was involved in key conversations with Mr. Mickelson, but Acushnet blocked that effort and told Callaway Golf that it should ask Mr. Mickelson these questions instead. [*See* D.I. 184 (Acushnet's July 25, 2007 Response to Callaway Golf's Proffer Regarding Its Request to Depose Wally Uihlein) at p.8 fn.5.] Callaway Golf respectfully requests that the Court allow Phil Mickelson to testify via certain limited deposition testimony on critical damages issues during this trial to both complete and balance the record.

I. ARGUMENT

The only objection Acushnet has ever made to Mr. Mickelson's testimony is that it is allegedly more prejudicial than probative. During the first trial, this Court performed the balancing test required by Rule of Evidence 403 and stated: "**I do believe that there was some relevance** but in weighing all the factors that I need to weigh, I decided that the relevance was outweighed by the danger of unfair and undue prejudice attributed to his celebrity status." [12/11/2007 Trial Tr. 995:20-23 (emphasis added).] Callaway Golf respectfully submits that the balance in this trial, which includes damages, is different from anything the Court considered during the first trial. Because the probative value of Mr. Mickelson's testimony outweighs any possible risk of undue prejudice to Acushnet, his deposition testimony should be admissible and the Court should allow Callaway Golf to present it to the jury.

A. **Excluding a witness is an extreme sanction**

As noted above, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the

proponent of the evidence." *Quinn*, 283 F.3d at 576-79. In *Quinn*, the district court excluded the testimony of a corroborating witness in a sexual discrimination lawsuit due to an alleged discovery violation. *Id.* at 576. The Third Circuit reversed that decision and remanded for a new trial, noting that the district court had "denied [plaintiff] her full day in court" by excluding the witness. *Id.* at 578. The court relied on a four-part test to determine whether a witness's testimony should be entirely excluded: (1) the prejudice or surprise of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order. *Id.* at 577.

None of these factors applies in this case. First, as discussed below, there is no undue prejudice to Acushnet in allowing Mr. Mickelson to testify, and there is certainly no surprise since Acushnet is the party that noticed and took Mr. Mickelson's deposition. And Callaway Golf properly disclosed its designations for Mr. Mickelson under the timeline established in the pretrial order. Second, Callaway Golf has agreed to call Mr. Mickelson only via deposition. Third, because Mr. Mickelson would testify by deposition, there is no possibility that he will "disrupt the orderly and efficient trial of the case." Finally, there is no contention that Callaway Golf has acted in bad faith or failed to comply with any Court order, and indeed as discussed below Callaway Golf only seeks to introduce this testimony because it is highly relevant and cannot be replaced by the testimony of any other witness.

Acushnet has not made any specific objections to the Mickelson testimony, and there is no reason for a blanket exclusion order. As discussed below, the Court should conduct a new balancing test, weighing the relevance of Mr. Mickelson's testimony to damages issues not

present during the first trial, and it should consider whether playing (or even reading) that testimony lowers or even eliminates the prejudice to Acushnet. Because there is no evidence that playing Mr. Mickelson's deposition will disrupt these proceedings in any way, or that Mr. Mickelson's "celebrity" will unduly sway the jurors – indeed, he may not be well known (or known at all) to jurors who do not play or follow golf – Mr. Mickelson's testimony is admissible under Third Circuit law and should not be excluded..

**B.    Mr. Mickelson's testimony is clearly and indisputably relevant**

During the first trial Mr. Mickelson was only being offered to address secondary considerations of non-obviousness – specifically, the commercial success of the patented invention, the long-felt need in the golf industry, and praise of the invention by others. While Mr. Mickelson's testimony is still relevant to these secondary considerations of non-obviousness, the presence of damages adds a number of additional issues for which Mr. Mickelson is uniquely situated to testify, including demand for the patented product (a factor for lost profits), the utility and advantages of the patented property over the old modes or devices (*Georgia Pacific* factor 9), and the benefits to those who used the invention (*Georgia Pacific* factor 10).

Perhaps most critically, Acushnet's damages expert, Dr. William Kerr, has opined that Acushnet could have continued selling the wound Titleist Professional golf ball as a non-infringing alternative to the patents-in-suit. This was one of only two alleged non-infringing alternatives Acushnet presented during this trial, and it is the *only* alternative that relies on a golf ball that was commercially available at the time Acushnet was infringing. On this point, Mr. Mickelson's testimony is clear and unequivocal: he would not have continued playing a wound Titleist golf ball when other balls embodying the patented technology were available on the market. Specifically, Mr. Mickelson testified that he would not have renewed his contract with Titleist had it not released the Pro V1:

- "I said that I was going to leave [Titleist] to play another golf ball and that I didn't feel the two balls that Titleist offered, the Professional and Prestige [wound balls], gave me the best opportunity to compete on Tour. I felt like it was hindering my performance relative to other balls out there." [Mickelson Depo., 56:14-19.]

- "I could say with 100 percent certainty that I would not have re-signed with Titleist" if Titleist had continued selling only wound golf balls. [Mickelson Depo., 159:2-13.]

As the Court is aware, the balls that PGA Tour professionals play are considered critical to Acushnet's success – under the "Pyramid of Influence" marketing strategy, those Tour players impact the balls played by club professionals, who impact the balls played by high-ranking amateur players, who impact the balls played by every-day golfers. Acushnet has stated during this trial that this marketing strategy – and specifically, Acushnet's focus on maintaining its position as the company played by the majority of players on the professional tour – is critical to Acushnet's success. Only people at the top of the Pyramid of Influence – the PGA Tour professionals – can testify as to what they would have done had Acushnet actually relied on its "non-infringing alternative." Amateur golfers, who under Acushnet's own marketing model typically play what the professionals use, might not have the skill to appreciate the performance differences between the Professional wound ball and the infringing Pro V1. But Mr. Mickelson was able to appreciate that difference: he had played wound balls for years, and then tried the Callaway Golf Rule 35 ball when it was being developed; he testified that once the Rule 35 was released, he would not have continued playing wound balls. The performance difference was

simply too great. This directly rebuts Acushnet's position that it could have continued selling wound balls, and it is testimony that Callaway Golf can only get through Mr. Mickelson.[3]

### C. There is no *undue* prejudice in playing Mr. Mickelson's deposition

The only factor that the Court cited in its decision to exclude Mr. Mickelson during the first trial was the alleged prejudice caused by his celebrity status. [12/11/2007 Trial Tr. 995:20-23.] But Callaway Golf has agreed not to call Mr. Mickelson live during this trial, and there is no risk that he will be a distraction. Mr. Mickelson is not Tiger Woods – he has not been sensationalized by the media. Jurors may not know Mr. Mickelson, or at most may know him as one of many professional golfers. Acushnet has its own celebrity golfer (Davis Love III) whose testimony Acushnet could use if it so desires. Callaway Golf has even gone so far as to offer to *read* the deposition testimony of Mr. Mickelson without playing any video. In any event, as described above, any alleged risk of prejudice caused by Mr. Mickelson's "celebrity" is outweighed by the clear relevance of his testimony – specifically, to rebut positions taken by Acushnet.[4]

---

[3] Acushnet may argue that Callaway Golf's damages expert Brian Napper did not rely on Mr. Mickelson's testimony in his expert report, but Mr. Mickelson was not deposed until after Mr. Napper wrote his original and first supplemental reports. Also, whether or not Mr. Napper relied on Mr. Mickelson's testimony has nothing to do with either its relevance or the alleged prejudice, which is all that is relevant to a Rule 403 analysis. Finally, this would actually weigh in favor of allowing Mr. Mickelson's testimony, since it is fact testimony that Callaway Golf cannot get through any other witness.

[4] Acushnet has argued that it should have the opportunity to cross-examine Mr. Mickelson live, but Acushnet had that chance during his deposition – a deposition that Acushnet noticed. Mr. Mickelson is not available for this trial, and it is disingenuous for Acushnet to insist on calling him live when it fought so hard to keep him out of the courtroom during the first trial, where he was available to testify live. Since Mr. Mickelson is not available now, the use of his deposition testimony is entirely proper. *See* F.R.E. 804.

### D. The prejudice to Callaway Golf from excluding Mr. Mickelson is manifest

While the prejudice to Acushnet in allowing Mr. Mickelson to testify via deposition is minimal, the prejudice to Callaway Golf if Mr. Mickelson is excluded is substantial. Mr. Mickelson said that he tested the Rule 35 ball before Acushnet released the ProV1. [Mickelson Depo., 67:9-18.] His contract with Acushnet was set to expire at the end of 2000, and he said he informed Acushnet that he would not re-sign his contract unless they released a ball that could match the Rule 35 in terms of performance. [*Id.* at 56:8-57:19.] His testimony on this point was unequivocal: "I said that I was going to leave to play another golf ball and that I didn't feel the two balls that Titleist offered, the Professional and Prestige, gave me the best opportunity to compete on tour." [*Id.*] After Acushnet allowed Mr. Mickelson to test the ProV1, it informed him that it had decided not to release the ball because it was worried about the impact it would have on its wound ball sales. [*Id.* at 58:10-59:14.] Mr. Mickelson continued to press Acushnet to release the Pro V1, and after it did so Mr. Mickelson testified that Acushnet's Vice President of Tour Promotions, Bill Young, personally thanked him for pushing Acushet to release the ball:

> A   Well, I remember Bill Young specifically because it would happen every time I'd see him. It would be the opening line of our conversations.
> Q   And how would that go?
> A   "Thank you."
> Q   That's it? He just said thank you?
> A   No, then I'd go, "Come on." He says, "Seriously. Thank you. Without you, I don't know if we would have brought the Pro V1 to market. Without you, we wouldn't be experiencing our most profitable years ever at Acushnet."

[*Id.* at 176:1-20.] This is critical, relevant testimony from a fact witness who cannot be replaced, and there is no reason for it to be excluded, especially where the alleged undue prejudice to Acushnet is non-existent.

## II.  CONCLUSION

The balancing of factors during this trial is different from anything the Court considered during the first trial.  The relevance is more weighty, given Mr. Mickelson's key testimony concerning Acushnet's alleged non-infringing alternative.  The prejudice is minimal, given that Mr. Mickelson will not appear live.  The prejudice to Callaway Golf from excluding this testimony is manifest, as Mr. Mickelson's testimony cannot be replaced by any other witness.  The exclusion of a witness is an extreme sanction that should not be levied under these circumstances.  Callaway Golf, therefore, respectfully requests that the Court allow Mr. Mickelson's testimony to be presented through narrow, focused deposition designations.

Dated:  March 25, 2010              FISH & RICHARDSON P.C.

                                    By:  */s/ Thomas L. Halkowski*
                                         Thomas L. Halkowski (#4099)
                                         222 Delaware Avenue, 17th Floor
                                         P.O. Box 1114
                                         Wilmington, DE  19899-1114
                                         Tel:  (302) 652-5070
                                         Fax:  (302) 652-0607

                                         Frank E. Scherkenbach
                                         225 Franklin Street
                                         Boston, MA 02110-2804
                                         Tel:  (617) 542-5070
                                         Fax:  (617) 542-8906

                                         Roger A. Denning
                                         12390 El Camino Real
                                         San Diego, CA 92130
                                         Tel:  (858) 678-5070
                                         Fax:  (858) 678-5099

                                    **ATTORNEYS FOR PLAINTIFF**
                                    **CALLAWAY GOLF COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2010, I electronically filed with the Clerk of Court CALLAWAY GOLF'S MOTION TO INTRODUCE DEPOSITION TESTIMONY FROM PHIL MICKELSON using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the filing will also be sent via electronic mail:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>Potter Anderson & Corroon LLP<br>1313 North Market Street, 6th Floor<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE  19899-0951 | Attorneys for Defendant<br>ACUSHNET COMPANY |
| Alan M. Grimaldi<br>Joseph P. Lavelle<br>Brian A. Rosenthal<br>Howrey LLP - DC<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC  20004 | Attorneys for Defendant<br>ACUSHNET COMPANY |

/s/ *Thomas L. Halkowski*
Thomas L. Halkowski

1