IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALLAWAY GOLF COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-091-SLR |
| | ) |
| ACUSHNET COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**FINAL JURY INSTRUCTIONS**

Dated: March 26, 2010

## TABLE OF CONTENTS

GENERAL INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   JURORS' DUTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   EVIDENCE DEFINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . 5
   CONSIDERATION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   USE OF NOTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   CREDIBILITY OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   NUMBER OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   EXPERT WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   DEPOSITION TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

THE PARTIES AND THEIR CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   THE PARTIES' CONTENTIONS AND BURDENS OF PROOF . . . . . . . . . . . 14
   STIPULATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

THE PATENT CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   PATENT CLAIMS GENERALLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   CLAIM CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VALIDITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   ANTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
      GENERALLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
      INCORPORATION BY REFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . 22
   OBVIOUSNESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
      INDEPENDENT DEVELOPMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS . . . . . . 28

DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
   COMPENSATORY DAMAGES IN GENERAL . . . . . . . . . . . . . . . . . . . . . . . 31
   DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   LOST PROFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
      LOST PROFITS FROM LOST SALES – "BUT FOR" TEST . . . . . . . . . 34
      ESTABLISHING LOST PROFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
      MARKET SHARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
      ACCEPTABLE NONINFRINGING SUBSTITUTES . . . . . . . . . . . . . . . 37
      AMOUNT OF LOST PROFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

REASONABLE ROYALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
    FACTORS FOR DETERMINING A REASONABLE ROYALTY . . . . . . 41

DELIBERATION AND VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    UNANIMOUS VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    DUTY TO DELIBERATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
    COURT HAS NO OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

# GENERAL INSTRUCTIONS

## INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

## EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

3

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

5

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## USE OF NOTES

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember

8

other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## NUMBER OF WITNESSES

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## EXPERT WITNESSES

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field – he or she is called an expert witness – is permitted to state his or her opinion on those technical or financial matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

11

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## THE PARTIES AND THEIR CONTENTIONS

## THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiff is Callaway Golf Company, or "Callaway."

Defendant is Acushnet Company, or "Acushnet."

Callaway Golf is the owner of U.S. Patent No. 6,210,293, which I will refer to as "the '293 patent"; U.S. Patent 6,503,156, which I will refer to as "the '156 patent"; U.S. Patent 6,506,130, which I will refer to as "the '130 patent"; and U.S. Patent 6,595,873, which I will refer to as "the '873 patent."  I may refer to these patents collectively as "the Callaway patents."

Acushnet has made, marketed, and sold the "Pro V1" line of golf balls, including the Pro V1, Pro V1x and Pro V1*[star], under the Titleist brand.  I may refer to these balls collectively as "the Pro V1 balls."

13

## THE PARTIES' CONTENTIONS AND BURDENS OF PROOF

Acushnet contends in this trial that the asserted claims of the Callaway patents are invalid.  The "asserted claims" in this case include the following:

Claim 1 of the '293 patent;

Claim 1 of the '156 patent;

Claim 5 of the '130 patent; and

Claim 3 of the '873 patent.

Acushnet, as the defendant, has the burden of proving that each one of the asserted claims of the Callaway patents is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.  You must decide, as to each of the asserted claims, whether Acushnet has proven, by clear and convincing evidence, that the claim is invalid:  by reason of obviousness in light of the prior art and the ordinary skill of one in the art in 1995; or by reason of anticipation by U.S. Patent No. 4,431,193 to Nesbitt ("Nesbitt"), incorporating by reference U.S. Patent No. 4,274,637 to Molitor ("Molitor '637") (hereinafter "Nesbitt/Molitor '637").

If you find any of the asserted claims are not invalid, you are also asked to decide the amount of damages, if any, to be awarded to Callaway for Acushnet's patent infringement.  Callaway has the burden of proving its claim of damages by what is called a preponderance of the evidence.  That means that Callaway has to produce evidence which, when considered in light of all of the facts, leads you to believe that what it alleges is more likely true than not.  To put it differently, if you were to put Callaway's and Acushnet's evidence on opposite sides of a scale, the evidence

14

supporting Callaway's assertions would have to make the scales tip slightly to its side.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Acushnet has met its "clear and convincing" burden of proof or Callaway has met its "more likely than not" burden of proof.

15

## STIPULATION

A stipulation of fact is an agreement between the parties that a certain fact is true.  During the course of the trial, you heard that the parties have stipulated that Acushnet infringes claim 1 of the '293 patent, claim 1 of the '156 patent, claim 5 of the '130 patent, and claim 3 of the '873 patent.  Therefore, you will not be asked to determine the issue of infringement.

16

## THE PATENT CLAIMS

## PATENT CLAIMS GENERALLY

Before you can decide whether or not any of the asserted claims are invalid, you will have to understand what the patent "claims" are.  The patent claims are the numbered paragraphs at the end of a patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover.  The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

The claims define the patent owner's property rights and, therefore, how the invention is different from the prior art.  Each claim is a separate statement of the patented invention and each of the asserted claims must be considered individually.

## CLAIM CONSTRUCTION

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use the meaning of each claim for your decision on validity.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim term has the following definition:  an inner or outer "cover layer having a Shore D hardness" requires that the Shore D hardness be measured "on the ball."

## VALIDITY

### INTRODUCTION

As I stated previously, Acushnet contends that the asserted claims of the Callaway patents are invalid. I will now explain to you each of the grounds for invalidity that were presented by Acushnet at trial. If a claim is invalid on any one of these grounds, then it is invalid. In making your determination as to invalidity, you should consider each claim separately.

## ANTICIPATION

### GENERALLY

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when they have not been made, used, or disclosed before. In this case, Acushnet contends that each of the asserted claims of the Callaway patents is not new as anticipated by the Nesbitt/Molitor '637 prior art reference.

Invalidity by anticipation requires the presence in a single prior art disclosure of all requirements, or elements, of a claimed invention arranged as in the claim. For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference.

The requirement that the prior art elements themselves be "arranged as in the claim" means that claims cannot be treated as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.

Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated element. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.

If you find that Acushnet has proven, by clear and convincing evidence, that any

20

of the asserted claims are anticipated by the Nesbitt/Molitor '637 prior art reference,

then you must find that those claims are invalid.

## ANTICIPATION

## INCORPORATION BY REFERENCE

Material not explicitly contained in the single asserted prior art reference may still be considered for purposes of anticipation if that material is incorporated by reference into the document.  Incorporation by reference provides a method for integrating material from various documents into a host document – a patent or printed publication in an anticipation determination – by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.

In this case, you are instructed that the Nesbitt patent incorporates the entire list of foamable compounds ("a number of foamable compositions") disclosed by Molitor '637 as appropriate materials for use in golf ball cover layers, including polyurethane and ionomer resin blends.

## OBVIOUSNESS

Acushnet contends that the asserted claims are invalid as being obvious.  In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art.  This means that you should determine what prior art was reasonably pertinent to the particular problems the inventor faced.  The prior art in this case includes the following, all of which were part of the art known prior to the 1995 effective dates of the Callaway patents:

  (1)  The Nesbitt patent (DX-9);

  (2)  The Molitor '637 patent (DX-12);

  (3)  U.S. Patent No. 4,674,751 to Molitor (the "Molitor '751" patent) (DX-11);

  (4)  U.S. Patent No. 5,314,187 to Proudfit (the "Proudfit '187" patent) (DX-10);

  (5)  U.S. Patent No. 5,334,673 to Wu (the "Wu '673" patent) (DX-13);

  (6)  The Wilson Ultra Tour Balata golf ball (DX-1250); and

  (7)  The Titleist Professional golf ball (DX-1251).

23

You must next consider the differences, if any, between the prior art and each asserted claim.  Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include:

(1)     The educational level of the inventor and of others working in the field;

(2)     The types of problems encountered in the art at the time of the invention;

(3)     The prior art patents and publications;

(4)     The activities of others;

(5)     Prior art solutions to the problems encountered by the inventor; and

(6)     The sophistication of the technology.

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the claimed invention.  If you find that the available prior art shows each of the elements of the asserted claims, you must determine whether it then would have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the asserted claims.

A patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  You must determine whether a person of ordinary skill in the art has simply implemented a predictable variation of prior art elements or, conversely, whether he or she has made

an improvement that is more than the predictable use of prior art elements according to their established functions.  When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product, not of innovation, but of ordinary skill and common sense.  In that instance, the fact that a combination was obvious to try might show that it was obvious.

Any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed.  A person of ordinary skill in the art, however, is also a person of ordinary creativity.  In many cases, a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle.  However, where the art is unpredictable, a focus on known elements may still present a difficult hurdle for one of skill in the art because the results of potential solutions may be unknown or unexpected.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should not apply any rigid test or formula.  Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias, that is, of relying upon a hindsight combination of the prior art.  Rather, you must cast your mind back to the time of the invention and consider whether the invention as a

25

whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

## INDEPENDENT DEVELOPMENT

Just as the failure of others to make the invention can be evidence of non-obviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may, or may not, be an indication of obviousness when considered in light of all of the circumstances.

27

## OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)

In making your decision **only** as to the obviousness or non-obviousness of the

asserted claims, you should consider the following objective evidence which may tend

to show non-obviousness of the claims at issue:

(1)     Commercial success or lack of commercial success of products covered

by the asserted claims;

(2)     A long felt need in the art that was satisfied by the invention of the

asserted claims;

(3)     The failure of others to make the invention;

(4)     Unexpected results achieved by the invention; and

(5)     Praise of the invention by Acushnet or others in the field.

There must be a nexus or a connection between the evidence showing any of

these factors and the inventions of the asserted claims, if this evidence is to be given

weight by you in arriving at your conclusion on the obviousness issue.  For example, if

commercial success is due to market position, advertising, promotion, salesmanship or

the like, or is due to features of the products other than those described in the asserted

claims, then any commercial success may have no relation to the issue of obviousness.

In your determination of obviousness, then, you must consider whether Callaway

has demonstrated not only that such secondary considerations exist, but also whether

Callaway has proven that there is a sufficient nexus between the considerations and the

claimed invention – in other words, whether the claimed inventions of the Callaway

28

patents contributed to these secondary considerations rather than the considerations being due to other features of the Acushnet golf balls, the general status of Acushnet as a golf ball producer, or any other actions taken by Acushnet in producing and marketing the Acushnet golf balls.

In this case, Callaway has the burden of proving any secondary consideration issues by a preponderance of the evidence. That means that Callaway has to produce evidence which, when considered in the light of all the facts, leads you to believe that what Callaway claims is more likely true than not.

## DAMAGES

## INTRODUCTION

I have now instructed you on the law governing Acushnet's invalidity claims. We turn now to damages. If, after considering all of the evidence and the law as I have stated it, you find that each of the asserted claims of the Callaway patents is invalid, then Callaway is not entitled to any damages and you should not make any findings about damages. If, on the other hand, you find that at least one asserted claim of the Callaway patents is valid, then you must determine what damages Acushnet must pay to Callaway to compensate for its patent infringement.

The fact that I am instructing you about damages does not mean that Callaway is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that an asserted claim is valid.

## COMPENSATORY DAMAGES IN GENERAL

The patent laws provide that, in the case of infringement of a patent claim, the owner of a patent shall be awarded damages adequate to compensate for the infringement. These damages may not be less than what a reasonable royalty would be for the use made of the invention. In other words, damages are compensation for losses suffered by the patent owner as a result of the infringement. In determining damages, you must decide how much financial harm the patent owner has suffered by reason of the infringement. You must decide the amount of money that the patent owner would have made had the infringer not infringed.

Damages are only to compensate Callaway, to put Callaway into the position it would have been if there had been no infringement. You may not add anything to the amount to punish or to set an example.

## DAMAGES – BURDEN OF PROOF

Callaway has the burden of proving damages by the "preponderance of the evidence" standard I discussed earlier. Callaway is entitled to damages that it has proven with "reasonable certainty." Reasonable certainty does not require Callaway to prove its damages with absolute or mathematical precision. Mere difficulty in ascertaining damages is not fatal to Callaway. However, Callaway is not entitled to speculative damages. That is, you should not award damages for losses which, although possible, are wholly remote or left to conjecture or guess. If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against Acushnet.

There are two common methods for computing damages in a patent infringement case – "lost profits" damages and "reasonable royalty" damages. In this case, Callaway seeks lost profits for some of Acushnet's sales, and a reasonable royalty on the rest of Acushnet's sales. You, however, cannot award both lost profits and a reasonable royalty for the same sale. Lost profits consist of any actual reduction in business profits Callaway suffered as a result of Acushnet's infringement. A reasonable royalty is defined as the money amount Callaway and Acushnet would have agreed upon as a fee for use of the inventions at the time prior to when infringement began. I will now give more detailed instructions regarding these damages.

32

## LOST PROFITS – INTRODUCTION

One of the methods permitted by law for computing damages in patent cases is called "lost profits" damages.  Simply stated, lost profit damages are the profits Callaway would have earned had it not been for Acushnet's infringement.  They are not the profits Acushnet actually made.

## LOST PROFITS FROM LOST SALES – "BUT FOR" TEST

To prove that it lost sales, Callaway must prove that it is more probable than not that it would have made the sales that Acushnet made by selling an infringing product. This test is often called the "but for" test: that is, Callaway must show that, "but for" Acushnet's infringement, it would have made the sales and earned the profits that Callaway claims it lost. To apply the "but for" test, you must imagine the marketplace as it would have existed if the infringement had not occurred and consider what would have happened. In other words, you should determine what Callaway would have done if Acushnet's infringement had not occurred.

It is Callaway's burden to show a reasonable probability that "but for" Acushnet's infringement, Callaway would have made Acushnet's sales. To show causation and entitlement to lost profits, Callaway must reconstruct the market to show what would have happened if Acushnet had not infringed. This market reconstruction, although hypothetical, requires sound economic proof on the nature of the market.

## ESTABLISHING LOST PROFITS

Callaway is entitled to lost profits if it establishes each of the following by a preponderance of the evidence:

(1) That there was demand for the patented product;

(2) That there are no acceptable noninfringing substitutes;

(3) That the patentee had the manufacturing and marketing capability to meet the demand; and

(4) The amount of profit that it would have made.

In this case, Acushnet does not contest that, as of 2003, Callaway had the manufacturing and marketing capability to meet the demand (factor (3) above).

If you find that there were acceptable noninfringing substitutes (factor (2) above), Callaway is permitted to recover lost profits damages if it has proven, by a preponderance of the evidence, that Callaway has an established share in the market. That is, if Callaway establishes that it would have made some, but not all, of Acushnet's sales but for Acushnet's infringement, you may award Callaway a share of profits equal to its established market share and award a reasonable royalty on the remaining infringing sales. I will now explain these concepts in more detail.

35

## LOST PROFITS – MARKET SHARE

In determining Callaway's market share, the market must be established first, which requires determining what products are in that market.  Products are considered in the same market if they are considered "sufficiently similar" to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

## LOST PROFITS – ACCEPTABLE NONINFRINGING SUBSTITUTES

To determine whether there were any acceptable noninfringing substitutes, you must determine whether there were products that were both (1) available or on the market during the infringement, and (2) acceptable to the market. An alternative product is "available" if it is either on the market, for sale, or is a product that is technologically and economically capable of being produced during the time of the alleged infringement. In other words, a product need not actually be on the market to be an available alternative. To be "acceptable," the alternative must have the attributes of the product actually sold that were important to customers.

In determining whether Callaway lost sales due to Acushnet's infringement, you must consider whether or not, if Acushnet were not selling the Pro V1, Pro V1x, and Pro V1*[star] golf balls, some or all of the people who bought from Acushnet would have bought a different, noninfringing product from Acushnet or from somebody else, rather than buy a competing golf ball from Callaway.

## AMOUNT OF LOST PROFITS

If Callaway has proved that it lost profits due to infringement by Acushnet, then you are to determine the amount of profits that Callaway lost. As I have already instructed you, Callaway must prove the amount of its lost profits to a reasonable certainty, but mathematical precision is not required. The amount of lost profits damages, however, should not include amounts that are merely speculation.

### REASONABLE ROYALTY

If you find that Callaway has not shown that it is entitled to recover its lost profits on all or some portion of the infringing sales, then you must award Callaway no less than a reasonable royalty to compensate for any portion of Acushnet's infringing sales for which you have not awarded lost profits. The patent law specifically provides that the amount of damages that Acushnet must pay Callaway for infringing the Callaway patents may not be less than a reasonable royalty for the use that Acushnet made of the patented invention. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Callaway is entitled to a reasonable royalty for all infringing sales for which you have not awarded lost profits damages.

A reasonable royalty in this case is the amount of money that represents the value of the claimed invention to the parties and represents fair compensation for use of the claimed invention. One of the factors in determining the value of the claimed invention is the royalty that would be agreed to in a hypothetical arms-length negotiation between the patentee and the licensee, with both operating under the assumption that the negotiated patent is valid and is being infringed, i.e., that absent the "reasonable royalty" payment, the licensee would respect the patent by not selling infringing golf balls.

In determining a reasonable royalty, you should place yourself at the time just before the licensee's first sale of its infringing products, the period of time during which the hypothetical negotiation would have occurred. In the hypothetical negotiation, you must assume that the person negotiating on behalf of the licensee, who was willing to

39

take a license, would have known that the patents in suit were valid, enforceable and infringed. You should also assume that both the patentee and the licensee knew all pertinent information at the time of the hypothetical negotiation. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Acushnet's use of the patented inventions, including the opinion testimony of experts.

## FACTORS FOR DETERMINING A REASONABLE ROYALTY

In determining the value of a reasonable royalty, some of the factors that you may consider are:

1.      The royalties received by the patentee for licensing others under the patents in suit;

2.      The rates paid by the licensee for the use of other patents comparable to the patents in suit;

3.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory;

4.      Whether the patentee had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      The commercial relationship between the patentee and the licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.      The effect of selling the patented product in promoting sales of other products of the licensee, the existing value of the invention to the patetnee as a generator of sales of its non-patented items, and the extent of such collateral sales;

7.      The duration of the patents in suit and the term of the hypothetical license;

8.      The established profitability of the patented products, their commercial success, and their current popularity;

9.      The utility and advantages of the patented invention over the old

41

modes or devices, if any, that had been used for working out similar results;

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the patentee, and the benefits to those who have used the invention;

11.     The extent to which the licensee has made use of the invention, and any evidence probative of the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, business risks, or significant features or improvements added by the licensee;

14.     The opinion testimony of qualified experts; and

15.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## DELIBERATION AND VERDICT

## INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-5, or 6-3, or whatever your vote happens to be.  That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' claims. Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

44

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing

to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room and everyone on the jury is present.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

46

## COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.