IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CALLAWAY GOLF COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-91 (SLR) |
| | ) | |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) | **Public Version Dated: March 31, 2010** |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE SUE L. ROBINSON FROM RICHARD L. HORWITZ
DATED MARCH 23, 2010**

                                              Richard L. Horwitz (#2246)
                                              David E. Moore (#3983)
                                              POTTER ANDERSON & CORROON LLP
                                              Hercules Plaza 6th Floor
                                              1313 N. Market Street
                                              P.O. Box 951

cc: Clerk of the Court (via hand delivery)    Wilmington, DE  19899
    Counsel of Record (via electronic filing)    Tel:  (302) 984-6000
                                                           rhorwitz@potteranderson.com
                                                           dmoore@potteranderson.com

958238 / 30030                                    *Attorneys for Defendant Acushnet Company*



**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

March 23, 2010; Public Version Dated: March 31, 2010

The Honorable Sue L. Robinson              **PUBLIC VERSION**
United States District Court
844 North King Street, Lock Box 31
Wilmington, DE 19801

Re:   *Callaway Golf Company v. Acushnet Company*; C.A. No. 06-91-SLR

Dear Judge Robinson:

We write concerning objections to settlement documents under Rules 408, 402 and 403. First, Callaway seeks to admit settlement negotiations leading to a 2001 settlement to resolve a dispute (and the agreement itself) regarding certain Acushnet patents (including the "Hebert Patents") (PX571, 663, 296). Callaway *filed a motion in limine to exclude these very settlement negotiations* before the first trial in this matter. Callaway now reverses its position in an attempt to back-door the admission of the Hebert patents. Second, Callaway seeks to admit litigation settlement agreements, which this Court routinely excludes from evidence.

Before the 2007 trial, Callaway moved to exclude these very settlement negotiations under Rule 408. D.I. 334-13 at 1 (seeking to exclude "communications between representatives of Callaway Golf ... and of Acushnet ... in late 2000 and early 2001 similarly discussing disputed claims relating to the alleged infringement and invalidity of various patents"). In the 2007 pretrial conference, Callaway argued that the Hebert correspondence was inadmissible, noting that "everyone put the Rule 408 legend and so forth on it." D.I. 349 at 15:19-20. Acushnet agreed to not offer the evidence.





Settlement agreements are properly excluded when reached to resolve litigation or where litigation was probable. *Hanson v. Alpine Ski Area*, 718 F.2d 1075, 1078-79, 1083 (Fed. Cir. 1983) (upholding exclusion of settlement offers); *PharmaStem Therapeutics v. Viacell Inc*, 2003 U.S. Dist. LEXIS 27869, *7 (D. Del. 2003). Such evidence is unreliable because "license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." *Hanson*, 718 F.2d at 1079 (*citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164, n. 11 (6th Cir. 1978)). Moreover, otherwise inadmissible agreements are not admissible simply because a party's damages expert relies on them in reaching a reasonable royalty. *Therapeutics*, 2003 U.S. Dist. LEXIS 27869 at *8.

The probative value of this particular settlement agreement is even more diminished, since Mr. Napper cannot provide testimony comparing the technology licensed in the Hebert license with the patents-in-suit. Mr. Napper testified he knew nothing about the technology of the license other than that the patents relate somehow to golf balls, and he made no efforts to understand the licensed technology. Napper Tr. at 374:13-377:21. Indeed, the "Hebert license" is actually a cross license, including 11 Acushnet patents in 5 patent families. As argued in Acushnet's motion *in limine*, the Hebert license (and negotiations leading to it) should be excluded. *See* D.I. 571 at 11-12.

The Court has already broadly applied Rule 408 to exclude settlement negotiations even in the absence of pending litigation, and where the underlying dispute was different from that at issue in this case. The Court should similarly exclude the Callaway-Acushnet settlement negotiations and agreement.

Callaway seeks to admit two agreements entered settle ongoing litigation. PX-1027; PX-540. We understand this Court's practice to be that "royalty rates for litigation settlement agreements will not be admitted." D.I. 571, Ex. 22 at 8 (Feb. 3, 2010 Order). It is undisputed that both PX-1027 and PX-540 were settlements of ongoing litigation. Accordingly, these agreements should be excluded.

Mr. Napper recognizes that both agreements (PX-1027 and PX-540) are litigation settlement agreements. Supp. Napper Report at Rpt. At 2-3.

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH:mp/959605