IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLAWAY GOLF COMPANY,           )
                                 )
            Plaintiff,           )        C.A. No. 06-91-SLR
                                 )
      v.                         )
                                 )
ACUSHNET COMPANY,                )
                                 )
            Defendant.           )

## ACUSHNET COMPANY'S OPPOSITION TO CALLAWAY'S RULE 60 MOTION

### I.      INTRODUCTION

Callaway's Rule 60 motion to vacate the Court's dismissal of Callaway's contract claim

is untimely.  According to Callaway, the Parties' agreement contemplated filing the present Rule

60 motion after completion of the first appeal.  Yet Callaway delayed over a year after the

Federal Circuit remanded the case before seeking to file the present motion, after patent liability

and damages had been tried to a second jury.  Callaway's delay reveals its true intention—to

circumvent the Parties' stipulation that contract damages would be tried along with patent

damages.  In light of Callaway's lengthy and unexplained tactical delay, its suggestion that

Acushnet is trying to delay resolution of the contract claim strains credibility.

The Parties agreed in their joint June 29, 2009 motion (C.A. No. 1:96-cv-78-SLR, D.I.

38) that they would file a joint motion to vacate at a time that would allow patent damages and

contract damages to be tried together.  That time has passed; the trial on patent damages occurred

in March of 2010.  The Court should not allow Callaway to tactically delay filing this motion so

it can circumvent the stipulation of the Parties.

Callaway argues that it needs the breach of contract summary judgment order reinstated

to persuade the PTO to stop the reexaminations of the patents-in-suit.  Callaway never articulated

that reason when Acushnet questioned the timing of this motion before it was filed. In any event, Callaway's stated basis for filing the Rule 60 motion is futile. When Callaway first asked the PTO to stay or terminate the reexaminations of the patents-in-suit, the PTO concluded that even if Acushnet had breached the 1996 Agreement, the PTO would not stop the reexaminations of Callaway's patents. Thus, even if the summary judgment ruling is reinstated, the PTO has determined that it has not exceeded its statutory authority and will not stay or terminate reexamination. Indeed, if Callaway believed that the PTO would stop the reexaminations, one would have expected Callaway to petition the PTO after the summary judgment was granted in November 2007. It was almost an entire year before the summary judgment order was vacated in November 2008, so there was sufficient opportunity. Moreover, there is no explanation for Callaway's delay in filing the present motion during the year after the Federal Circuit remanded the case in 2009. Callaway's failure to do so casts doubt on its intentions with the present motion.

Callaway's motion should be denied until after post trial motions are decided and after the Federal Circuit has addressed any appeals from the patent case. Indeed, it is Acushnet's view that the intention of the Parties' agreement in 2009 was that the Parties would not seek to reinstate the contract claim until after resolution by the Federal Circuit of all patent liability issues, which has not yet occurred. However, in the interests of efficiency, if the Court grants Callaway's motion for a new trial (which Acushnet believes should be denied), Acushnet would not object to the present motion at that time.

## II.    CALLAWAY'S RULE 60 MOTION IS NOT TIMELY

On June 29, 2009, the Parties filed a joint motion to reopen proceedings in *Spalding & Evenflo Companies, Inc. and Lisco, Inc. v. Acushnet Company*, C.A. No. 96-73-MMS and *Acushnet Company v. Spalding & Evenflo Companies, Inc. and Lisco, Inc.*, C.A. No. 96-78-

MMS.  In that motion, the Parties requested that the Court reopen those cases to allow the Parties

to file modified dismissal stipulations, and to allow the Court to approve those stipulations by

entry of an affirmative order in the cases.

Also in that motion, the parties specified a framework that was to subsequently govern

Callaway's breach of contract claim:

> Also, and importantly, given that the judgment in the Golf Ball Patent Litigation
> is presently on appeal at the Federal Circuit, the Parties will *not* at this time
> request further action from this Court on the breach of contract claim.  Rather,
> following completion of the current appeal, and depending on how that appeal is
> decided, the Parties will submit a second joint motion to rehear in summary
> fashion Callaway Golf's breach of contract claim summary judgment motion, thus
> allowing this Court to reissue its original grant of summary judgment in Callaway
> Golf's favor on that claim.

C.A. No. 1:96-cv-78-SLR, D.I. 38 at 6.  On July 29, 2009, the Court so ordered the

stipulation accompanying the Parties motion.

If Callaway's interpretation of this stipulation is correct (*i.e.*, that the Parties agreed a

joint motion would be filed after a remand by the Federal Circuit) the instant motion should have

been filed in August or September of 2009, shortly after the remand.  Instead, Callaway delayed

by over a year, waiting until long after a new trial on liability and damages was held.  Given the

current posture of the case, it will be more efficient for the Court to wait until after post trial

motions and any appeals to the Federal Circuit have been resolved before addressing the breach

of contract claim.

Indeed, the main purpose of the parties' stipulation regarding how to handle the contract

claim was to allow the parties to resolve all damages issues—both patent and contract—at a

single trial.  Specifically, the Parties' June 26, 2009 motion states that:

> Furthermore, to insure an efficient resolution of the patent matter, Acushnet notes
> that to the extent it intends to appeal the Court's grant of summary judgment on
> Callaway Golf's contract claim, Acushnet will pursue that appeal after all other

remaining issues have been resolved by this Court in the Golf Ball Patent Litigation, including any damages relating to infringement and the breach of contract, <u>which the Parties agree will be heard jointly in any damages phase of the Golf Ball Patent Litigation</u>.

C.A. No. 1:96-cv-78-SLR, D.I. 38 at 6 (emphasis added).

Thus, the parties sought to avoid the need for a separate trial related to the breach of contract case. Callaway's long delay is an attempt to frustrate that purpose. Callaway had its chance to reinstate the breach of contract claim so damages could be tried in March 2010 along with patent damages. Having foregone that opportunity, Callaway should now wait until after resolution of post trial motions and appeal, if any, before proceeding with the breach of contract claim.

The only plausible explanation for Callaway's 15-month delay in seeking to file the instant motion is that Callaway tactically delayed the filing until after patent damages were tried. Perhaps Callaway did not want to deal with the discovery issues its breach of contract claim would entail. Perhaps it strategically chose to forego a trial on contract damages so that it could focus on its patent damages case and the jury would not be presented with evidence of the reexaminations. Whatever the reason, Callaway made the decision to delay proceeding with the breach of contract claim for over a year, and now the parties' agreement mandates that the post trial motions and appeal be resolved before proceeding with the breach of contract claim. Granting the Rule 60 motion now allows Callaway to circumvent the Parties' agreement and representations to the Court regarding the timing of this motion and when and how the resulting damages issues would be tried.[1]

---

[1] While Acushnet does not believe a new trial is warranted for the reasons stated in its opposition to Callaway's post-trial motion, if the Court were to order a new trial, Acushnet would not object to the present motion at that time, since the parties' agreement to try contract and patent damages together could then be enforced.

### III.     CALLAWAY'S ATTEMPT TO HALT THE REEXAMINATIONS IS FUTILE

As noted above, Callaway's purported reason for filing its motion now is that it needs a summary judgment order in hand to persuade the PTO to stay the reexaminations of the patents-in-suit. In support of its story, Callaway complains throughout its brief of the alleged "unfairness" that would result if the reexaminations won the so-called "race" with the Courts to decide the question of validity of the patents-in-suit. However, Callaway ignores the fact that its patents currently stand invalidated in both the Court and the Patent Office. Indeed, as the Court will remember, even Callaway asserted that the '293 patent was invalid before it acquired Spalding's assets, and thus can hardly complain that it is "unfair" if that patent and its progeny are declared invalid now.[2]

On the merits, Callaway's motion should be denied as it represents yet another futile attempt to derail the PTO's reexamination proceedings. Congress created reexamination proceedings to further the public interest in eliminating invalid patents. Thus, once the PTO has determined there is a valid basis to initiate a reexamination, the PTO has extremely limited discretion to stop that process. In this case, the PTO has repeatedly refused to halt the reexamination proceedings. Moreover, despite Callaway's insistence to the contrary, the fact that Callaway has prevailed on its breach of contract claim cannot impact the reexamination proceedings. The PTO has already addressed this precise issue. Specifically, the PTO explained

---

[2] Callaway has repeatedly argued to the Court that Acushnet is a bad actor for filing reexamination requests of the patents-in-suit. As Acushnet has made clear, to the extent filing these reexaminations was a breach (which Acushnet disputes), it was not an intentional or knowing breach. Acushnet believed in good faith that filing the reexaminations was not in breach of the contract. Although Callaway repeatedly suggests that Acushnet somehow acted improperly, it is Callaway that continues to assert these patents even after the Patent Office and the jury have rendered decisions questioning their validity (and indeed after Callaway wrote letters stating that the '293 patent was invalid over the Nesbitt patent).

that the settlement agreement between the parties cannot be binding on the PTO or prevent the PTO from conducting the reexaminations. Because the PTO would not halt the reexamination proceedings even if informed of the ruling on the breach of contract claim, there is no reason to grant Callaway's motion at the present time.

### A.   Reexamination Proceedings Must Be Conducted Promptly Absent Good Cause for Suspension, Which the PTO Has Determined Does Not Exist in These Circumstances

Callaway's declared goal in seeking to reinstate the summary judgment ruling is to "advise" the PTO of the ruling in an effort to convince the PTO to suspend or terminate the reexaminations. *See* D.I. 631 at 5. Callaway's efforts have been and continue to be seriously misguided; the statutes, regulations, and case law pertaining to reexaminations require the PTO to proceed with the reexaminations absent certain circumstances which are not present here.

The Supreme Court has long recognized the strong public interest in eliminating invalid patents. *See, e.g., Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892). In furtherance of that interest, Congress devised reexamination proceedings for the purpose of reexamining "patents thought 'doubtful.'" *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) (quoting H.R. Rep. No. 66-1307, at 3 (1980)). The Federal Circuit has explained that "Congress wanted to reinforce confidence in patents by providing a body having expertise to settle validity disputes more quickly and cheaply than would litigation." *In re Hiniker Co.*, 150 F.3d 1362, 1367 (Fed. Cir. 1998) (citations omitted).

The authority of the PTO to suspend reexamination proceedings is extremely limited. Once a reexamination has been initiated, the PTO must conduct the reexamination with "special dispatch." 35 U.S.C. §§ 305, 314. Moreover, the Federal Circuit has held that the PTO has no statutory authority to suspend pending *ex parte* examinations. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). With respect to *inter partes* reexaminations, however, the

6

PTO may at its own discretion suspend proceedings when there is "good cause" to do so. *See* 35 U.S.C. § 314(c); 37 C.F.R. §§ 1.937, 1.987; MPEP § 2686.04.

In the absence of good cause, the stay of reexamination proceedings would violate the Congressional mandate that reexamination proceedings be conducted with special dispatch. For example, in *Ethicon*, the Federal Circuit held that "the Commissioner's decision to stay a[n] [*ex parte*] reexamination proceeding pending the outcome of litigation in a district court violated the statutory requirement that reexamination proceedings be 'conducted with special dispatch.'" *Syntex (U.S.A.), Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1574 (Fed. Cir. 1989) (explaining the holding in *Ethicon*). Moreover, the PTO will not terminate a reexamination unless a court finds the patent at issue invalid and that decision is either upheld on appeal or not appealed. *See Ethicon*, 849 F.2d at 1429. Alternatively, an *inter partes* reexamination may be terminated by way of estoppel when a final decision regarding the validity of a patent has been entered against a third party requester. *See* 35 U.S.C. § 317(b).

None of the limited circumstances that would warrant suspension of reexamination proceedings exist in this case. As explained below, the PTO has already so held.

### B.      The PTO Has Repeatedly Rejected Callaway's Argument that Prevailing on Its Breach of Contract Claim Will Impact the Reexamination Proceedings

The PTO has repeatedly denied Callaway's attempts to sidetrack the reexamination proceedings.[3] Indeed, the PTO has already specifically rejected the argument Callaway intends

---

[3] On April 11, 2006, the PTO discarded Callaway's initial petition as improperly premature. Ex. 1. On July 19, 2006, the PTO again denied Callaway's petition to suspend the reexaminations. Ex. 2. Finally, on September 7, 2006, the PTO denied Callaway's petition for reconsideration of its previous decision to vacate the order for reexamination. Ex. 3. N.B.: Ex. 1-3 are the PTO decisions relating to U.S. Patent No. 6,506,130. However, the PTO's decisions relating to U.S. Patent Nos. 6,503,156; 6,210,293; and 6,595,873 are identical in content.

to make to the PTO, which Callaway has raised multiple times. Thus, Callaway's stated reason for filing the Rule 60 motion now lacks any foundation.

In rejecting Callaway's multiple petitions, the PTO relied on the legal framework described in the previous section. In its July 19, 2006 decision, the PTO explained at length why no good cause existed to suspend the reexaminations. *See* Ex. 2, July 19, 2006 PTO Decision at 9-14. Indeed, the PTO actually rejected the notion that a patentee even has the right to file a petition to suspend a reexamination: "Patent owner has not cited a regulation that authorizes the filing of a petition to suspend an *inter partes* reexamination proceeding. In fact, no regulation implementing the *inter partes* reexamination statutes authorizes such a petition." *Id.* at 6. Thus, even if Callaway's present motion were granted, there would be no procedural mechanism by which Callaway could seek to suspend or terminate the reexaminations.

In a subsequent rejection of Callaway's petitions, the PTO carefully examined Callaway's argument regarding the effect of a final judgment on Callaway's breach of contract claim with respect to the reexamination proceedings. The PTO concluded that, as the PTO was not a party to the 1996 settlement agreement, the PTO is neither bound by its provisions nor precluded from conducting the requested reexaminations. Specifically, the PTO made the following determinations:

> [A] settlement agreement between two private parties to which the Office is not a party also does not bind the Office so as to preclude the Office from carrying out its statutory mandate to reexamine a qualifying patent once a substantial new question of patentability for that patent has been determined to exist for that patent. Therefore, even if one assumes that [Acushnet] is in violation of the settlement agreement with [Callaway] such that [Acushnet] might be subject to sanctions by a court of competent jurisdiction for having filed the present request for *inter partes* reexamination, the settlement agreement would still not be binding on the Office so as to preclude the Office from conducting *inter partes* reexamination as requested, because the Office is not a party to that agreement.

Ex. 3, Sept. 7, 2006 PTO Decision at 9 (emphasis in original). In light of this determination, Callaway's stated plan to use the summary judgment order to influence the PTO lacks any legal basis. Callaway cannot rely on any statute, regulation, or precedent to argue that it has the right to present its argument to the PTO. Even if the PTO agrees to entertain Callaway's argument, the PTO has already explained that there is no merit to that argument. Accordingly, the only stated purpose behind Callaway's timing lacks any merit.

Callaway's inaction to date also casts doubt on the merit of Callaway's stated purpose in filing the present motion. The Court granted Callaway's summary judgment motion for breach of contract on November 20, 2007. D.I. 348. The Court did not vacate its judgment until November 11, 2008. D.I. 491. In other words, the judgment was in force for almost an entire year. During that time, Callaway did not petition the PTO to present the argument it now seeks to make. Callaway accuses Acushnet of delay, yet provides no explanation as to why it did not advise the PTO of the summary judgment ruling when presented with the opportunity in 2007 and 2008. While Callaway was certainly not obligated to ask the PTO to suspend reexamination after the PTO had already held that it would not, Callaway's failure to do so back then certainly casts doubt on the true intentions behind the timing of its present motion.

## IV.      CONCLUSION

Since the parties' agreement presented to the Court in 2009 would be circumvented by allowing Callaway to take advantage of its tactical delay and file the present motion now, and the only stated purpose behind its suspect timing is futile, Callaway's motion should be denied.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Henry C. Bunsow
Brian A. Rosenthal
Clinton H. Brannon
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 783-0800

Dated: November 29, 2010
991319/30030

By:   */s/ David E. Moore*
　　　Richard L. Horwitz (#2246)
　　　David E. Moore (#3983)
　　　Hercules Plaza 6th Floor
　　　1313 N. Market Street
　　　P.O. Box 951
　　　Wilmington, DE 19899
　　　Tel: (302) 984-6000
　　　rhorwitz@potteranderson.com
　　　dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 29, 2010, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 29, 2010, the attached document was Electronically Mailed to the following person(s):

Thomas L. Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
halkowski@fr.com

Frank E. Scherkenbach
Fish & Richardson P.C.
225 Franklin Street
Boston, MA  02110-2804
scherkenbach@fr.com

Robert A. Denning
W. Chad Shear
Fish & Richardson P.C.
12290 El Camino Real
San Diego, CA  92130
denning@fr.com
shear@fr.com

Jonathan J. Lamberson
Craig R. Compton
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
lamberson@fr.com
compton@fr.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

721869 / 30030